CHRISTOPHER L. BLANK (SBN 115450)
CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2973 Harbor Blvd. #506
Costa Mesa, CA 92626
Telephone:    (949) 250-4600
Email:        chris@chrisblanklaw.com

Attorney for Appellant Jamie Lynn Gallian

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re<br><br>JAMIE LYNN GALLIAN<br><br>             Debtor.<br><br>JAMIE LYNN GALLIAN, Appellant<br><br>vs.<br><br>JEFFREY GOLDEN, TRUSTEE, Appellee | )<br>)**District Court Case No.**<br>)<br>)**8:25-cv-00827-CV**<br>)<br>)**Bankruptcy Court Case No.**<br>)<br>)**8:21-bk-11710-SC**<br>)<br>)**APPELLANT'S APPENDEX OF**<br>)**DOCUMENTS DESIGNATED FOR**<br>)**APPEAL AND INDEX – VOLUME 1**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

TO THE COURT AND INTERESTED PARTIES: Debtor/Appellant, Jamie Lynn

Gallian, hereby submits her Appendix of Documents Designated for Record on Appeal which is

attached hereto.

Dated:  July 14, 2025                    CHRISTOPHER L. BLANK, ATTORNEY
                                          AT LAW, PC

                                By:  __/S/*Christopher L. Blank*_____
                                Christopher L. Blank, Attorney for Debtor
                                Jamie Lynn Gallian

| Filing Date | # | Docket Text | Bates Nos. |
|---|---|---|---|
| | | VOLUME 1 | |
| 01/31/2025 | 538<br>(89 pgs) | Motion for Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points and Authorities, Declaration of Jeffrey I. Golden and Request for Judicial Notice; proof of service* Filed by Trustee Jeffrey I Golden (TR) (Israel, Eric) (Entered: 01/31/2025) | ER 1 - 89 |
| 01/31/2025 | 539<br>(160 pgs;<br>3 docs) | Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) *Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption; Memorandum of Points and Authorities, Declarations of Jeffrey I. Golden and Greg Bingham and Request for Judicial Notice in Support Thereof, With Proof of Service.* Fee Amount $199, Filed by Trustee Jeffrey I Golden (TR) (Attachments: # 1 Exhibit Exhibits 1 to 12 # 2 Proof of Service) (Israel, Eric) (Entered: 01/31/2025) | ER 90 - 249 |
| 01/31/2025 | 542<br>(12 pgs) | Notice of Hearing *Trustee's Notice of Hearing on Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption, With Proof of Service* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)539 Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) *Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption; Memorandum of Points and Authorities, Declarations of Jeffrey I. Golden and Greg Bingham and Request for Judicial Notice in Support Thereof, With Proof of Service.* Fee Amount $199, Filed by Trustee Jeffrey I Golden (TR) (Attachments: # 1 | ER 250 - 261 |

| | | | |
|---|---|---|---|
| | | Exhibit Exhibits 1 to 12 # 2 Proof of Service)). (Israel, Eric) (Entered: 01/31/2025) | |
| 01/31/2025 | [543](#)<br>(9 pgs) | Notice of Hearing *Chapter 7 Trustee's Notice of Hearing on Motion for Order Compelling Debtor and any other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance, With Proof of Service* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)[538](#) Motion for Turnover of Property - *Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points and Authorities, Declaration of Jeffrey I. Golden and Request for Judicial Notice; proof of service* Filed by Trustee Jeffrey I Golden (TR)). (Israel, Eric) (Entered: 01/31/2025) | ER 262 – 270 |
| 02/13/2025 | [551](#)<br>(4 pgs) | Notice *Joinder in Support of Trustee's Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption; with Proof of Service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)[539](#) Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) *Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption; Memorandum of Points and Authorities, Declarations of Jeffrey I. Golden and Greg Bingham and Request for Judicial Notice in Support Thereof, With Proof of Service.* Fee Amount $199, Filed by Trustee Jeffrey I Golden (TR) (Attachments: # 1 Exhibit Exhibits 1 to 12 # 2 Proof of Service)). (Hays, D) (Entered: 02/13/2025) | ER 271 – 274 |
| 02/13/2025 | [552](#)<br>(12 pgs) | Notice *of Joinder in Support of Trustee's Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; with Proof of Service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)[538](#) Motion for | ER 275 – 286 |

| | | Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points and Authorities, Declaration of Jeffrey I. Golden and Request for Judicial Notice; proof of service Filed by Trustee Jeffrey I Golden (TR)). (Hays, D) (Entered: 02/13/2025)* | |
|---|---|---|---|
| 02/18/2025 | 553 (6 pgs) | Substitution of attorney Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 02/18/2025) | ER 287 – 292 |
| 02/18/2025 | 554 (52 pgs) | Opposition to (related document(s): 538 Motion for Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points a filed by Trustee Jeffrey I Golden (TR), 539 Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. filed by Trustee Jeffrey I Golden (TR), 551 Notice filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates, 552 Notice filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates) Filed by Debtor Jamie Lynn Gallian (Blank, Christopher) (Entered: 02/18/2025)* | ER 293 – 344 |
| 02/25/2025 | 558 (59 pgs) | Reply to (related document(s): 538 Motion for Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points a filed by Trustee Jeffrey I Golden (TR), 539 Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. filed by Trustee Jeffrey I Golden (TR)) Joint Omnibus Reply in Support of (1) Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of* | ER 345 – 403 |

| | | | |
|---|---|---|---|
| | | *Writ of Assistance; and (2) otion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption; with Proof of Service Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (Hays, D) (Entered: 02/25/2025)* | |
| 02/25/2025 | 559 (10 pgs) | Objection (related document(s): 554 Opposition filed by Debtor Jamie Lynn Gallian) *Joint Evidentiary Objections to Declaration of Jamie Lynn Gallian in Support of Debtor's Omnibus Opposition to Trustee's Motions to Sell and For Turnover of Property and Houser Joinders; with Proof of Service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (Barnhardt, Bradford) (Entered: 02/25/2025) | ER 404 – 413 |
| 02/28/2025 | 560 (8 pgs) | Supplemental *Supplemental Declaration Of Greg Bingham Re Receipt Of Overbid Re Chapter 7 Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free And Clear Of Liens And Homestead Exemption (Docket No. 539)* Filed by Trustee Jeffrey I Golden (TR). (Israel, Eric) (Entered: 02/28/2025) | ER 414 – 421 |
| 03/03/2025 | 562 (14 pgs) | Motion To Stay Pending Appeal (related documents 538 Motion for Turnover of Property, 539 Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) - Fee) Filed by Debtor Jamie Lynn Gallian (Blank, Christopher) (Entered: 03/03/2025) | ER 422 – 435 |
| 03/07/2025 | 565 (37 pgs) | Notice of lodgment *re: Proposed Findings of Fact and Conclusions of Law with Proof of Service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)538 Motion for Turnover of Property - *Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points a, 539 Motion to Sell Property of the Estate Free and Clear of Liens under* | ER 436 – 472 |

| | | | |
|---|---|---|---|
| | | *Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No.). (Barnhardt, Bradford) (Entered: 03/07/2025)* | |
| 03/07/2025 | [566](#) (8 pgs) | Declaration re: *Gregory A. Peplin re: Good Faith Purchaser with proof of service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)[539](#) Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) *Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No.). (Barnhardt, Bradford) (Entered: 03/07/2025)* | ER 473 – 480 |
| 03/07/2025 | [567](#) (14 pgs) | Notice of lodgment *Debtor's Proposed Findings of Fact and Conclusions of Law* Filed by Debtor Jamie Lynn Gallian (RE: related document(s)[538](#) Motion for Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points a,* [539](#) *Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No.). (Blank, Christopher) (Entered: 03/07/2025)* | ER 481 – 494 |
| 03/12/2025 | [568](#) (6 pgs) | Opposition to (related document(s): [566](#) Declaration filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates) Filed by Debtor Jamie Lynn Gallian (Blank, Christopher) (Entered: 03/12/2025) | ER 495 – 500 |
| 03/13/2025 | [569](#) (3 pgs) | Order Vacating Auction Results From March 4, 2025, Hearing And Setting New Auction Date Of March 27, 2025. IT IS ORDERED: The Solution To Ensure Undivided Loyalty, Avoid Conflicts And To Provide Full Transparency, Is To VACATE The Auction Results Of March 4, 2025, And Order That A SECOND AUCTION Shall Be Held On March 27, 2025, At 10:00 A.M. With Prior Full Disclosures Of Broker Representations Of Any Buyers And | ER 501 – 503 |

| | | | |
|---|---|---|---|
| | | Supporting Declarations Regarding Any Conversations That Have Occurred Between Any Buyer And/Or Broker. Any Further Disclosures And Supporting Evidence Must Be Filed By No Later Than March 20, 2025. (Hearing To Be Held In Courtroom 5C, Located At 411 West Fourth Street, Santa Ana, CA 92701) (SEE ORDER FOR FURTHER RULING) (BNC-PDF) (Related Doc # 539 ) Signed on 3/13/2025 (NB8) (Entered: 03/13/2025) | |
| 03/14/2025 | 570 (12 pgs) | Notice *Of Entry Of Order Vacating Auction Results And Rescheduling Auction (Docket No. 569)* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)569 Order Vacating Auction Results From March 4, 2025, Hearing And Setting New Auction Date Of March 27, 2025. IT IS ORDERED: The Solution To Ensure Undivided Loyalty, Avoid Conflicts And To Provide Full Transparency, Is To VACATE The Auction Results Of March 4, 2025, And Order That A SECOND AUCTION Shall Be Held On March 27, 2025, At 10:00 A.M. With Prior Full Disclosures Of Broker Representations Of Any Buyers And Supporting Declarations Regarding Any Conversations That Have Occurred Between Any Buyer And/Or Broker. Any Further Disclosures And Supporting Evidence Must Be Filed By No Later Than March 20, 2025. (Hearing To Be Held In Courtroom 5C, Located At 411 West Fourth Street, Santa Ana, CA 92701) (SEE ORDER FOR FURTHER RULING) (BNC-PDF) (Related Doc # 539) Signed on 3/13/2025 (NB8)). (Israel, Eric) (Entered: 03/14/2025) | ER 504 – 515 |
| 03/18/2025 | 573 (4 pgs) | Notice of sale of estate property (LBR 6004-2) Manufactured home described as a 2014 Skyline Custom Villa, Decal No. LBM1081, presently located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649. Filed by Trustee Jeffrey I Golden (TR). (Israel, Eric) (Entered: 03/18/2025) | ER 516 – 519 |
| 03/20/2025 | 577 (26 pgs) | Declaration re: *Supplemental Declaration Of Gregory A. Peplin Re Courts Order Vacating March 4, 2025 Auction Results And Re-Setting Auction For March 27, 2025 (Docket No. 569)* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)569 Order on Motion To Sell (BNC-PDF)). (Israel, Eric) (Entered: 03/20/2025) | ER 520 – 545 |

| | | | |
|---|---|---|---|
| 03/20/2025 | 578<br>(69 pgs) | Declaration re: *Supplemental Declaration Of Greg Bingham Re Marketing Efforts After Vacating March 4, 2025 Auction Results And Scheduling New Auction Re Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No. LBM1081 (Docket No. 569)* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)569 Order on Motion To Sell (BNC-PDF)). (Israel, Eric) (Entered: 03/20/2025) | ER 546 – 614 |
| 03/24/2025 | 580<br>(8 pgs) | Declaration re: *Declaration Of Lori Alvarez Re Courts Order Vacating March 4, 2025 Auction Results And Re-Setting Auction For March 27, 2025 (Docket No. 569)* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)569 Order on Motion To Sell (BNC-PDF)). (Israel, Eric) (Entered: 03/24/2025) | ER 615 – 622 |
| | | VOLUME 2 | |
| 03/25/2025 | 581<br>(28 pgs) | Supplemental *Compendium of Out of Circuit Cases re Trustee's Motion for Sale [Docket 539]* Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) - See docket entry no.: 582 for corrections Modified on 3/26/2025 (NB8). (Entered: 03/25/2025) | ER 623 – 650 |
| 03/26/2025 | 583<br>(5 pgs) | Notice *of Errata* Filed by Debtor Jamie Lynn Gallian (RE: related document(s)581 Supplemental *Compendium of Out of Circuit Cases re Trustee's Motion for Sale [Docket 539]* Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) - See docket entry no.: 582 for corrections Modified on 3/26/2025 (NB8).). (Blank, Christopher) (Entered: 03/26/2025) | ER 651 – 655 |
| 03/28/2025 | 585<br>(4 pgs) | Order Establishing Evidentiary Hearing For Interested Parties To Provide Further Evidence In Support Or Opposition To A Determination Of A Section 363(m) Finding With Respect To The Successful Buyer Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081. - IN PERSON ONLY NO ROMOTE HEARING. IT IS ORDERED: The Court Finds Good Cause, In The Interest Of The Bankruptcy Process, To Permit Any Party, Including Debtor, Additional Time To Further Address Their Positions And Present Evidence On This Particular Subject On The Record. For This | ER 656 - 659 |

| | | | |
|---|---|---|---|
| | | Reason, The Court Hereby Sets An EVIDENTIARY HEARING On The Matter Of The Request For A Section 363(m) Finding On APRIL 10, 2025, AT 1:30 P.M. In Courtroom 5C. THE HEARING Shall Be IN PERSON ONLY And No Remote Hearing Opportunities Will Be Afforded To The Parties Or Witnesses. The BRIEFING SCHEDULE Shall Be As Follows: 1. THE EVIDENTIARY HEARING Will Be Held On APRIL 10, 2025, AT 9:30 A.M. In Courtroom 5C. 2. An Evidentiary Hearing Brief Shall Be Filed And Served By All Parties Opposing The Trustee's Request For A Section 363(m) Good Faith Finding By April 4, 2025. 3. Any Brief(s) In Reply To The Opposition(s) May Be Filed And Served By No Later Than April 8, 2025. 4. If Any Witness To Be Presented By Any Party Is Not Physically Present In Courtroom 5C On April 10, 2025, At 9:30 A.M. Their Declaration, And Any Evidence Attached Thereto, Will Be Stricken. 5. No Further Briefing Shall Be Filed Without Good Cause Shown And Without Separate Written Application For Leave To File Further Pleadings. 6. Any Untimely Filed Pleading Will Be Stricken. 7. The Parties Are Cautioned That The Evidentiary Hearing Is Expressly Limited To The Issue Of Whether A Section 363(m) Good Faith Finding Can Be Made As To The Successful Bidder Of The Property, Mr. Peplin. (SEE ORDER FOR FURTHER RULING.) (BNC-PDF) (Related Doc # 584 ) Signed on 3/28/2025 (NB8) (Entered: 03/28/2025) | |
| 04/04/2025 | 589 (5 pgs) | Brief *Evidence and Argument re Good Faith* Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 04/04/2025) | ER 660 – 664 |
| 04/05/2025 | 590 (22 pgs) | Proof of service *and Exhibit 1 re Debtor's Evidence and Argument re Bad Faith* Filed by Debtor Jamie Lynn Gallian (RE: related document(s)589 Brief). (Blank, Christopher) (Entered: 04/05/2025) | ER 665 – 686 |
| 04/08/2025 | 591 (31 pgs) | Reply to (related document(s): 589 Brief filed by Debtor Jamie Lynn Gallian) *Joint Reply in Support of 11 U.S.C. Section 363(m) Finding re: Gregory A. Peplin; with proof of service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (Hays, D) (Entered: 04/08/2025) | ER 687 – 717 |
| 04/08/2025 | 592 (44 pgs) | Notice *of Unpublished Authority in Support of Joint Reply in Support of 11 U.S.C. Section 363(m)* | ER 718 – 761 |

| | | | |
|---|---|---|---|
| | | *Finding re: Gregory A. Peplin; with Proof of Service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)591 Reply to (related document(s): 589 Brief filed by Debtor Jamie Lynn Gallian) *Joint Reply in Support of 11 U.S.C. Section 363(m) Finding re: Gregory A. Peplin; with proof of service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates). (Hays, D) (Entered: 04/08/2025) | |
| 04/10/2025 | 593<br>(26 pgs) | ORDER RE: (1) Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turn Over Manufactured Home And Authorizing Issuance Of Writ Of Assistance (Docket 538 ). (2) Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free And Clear Of Liens And Homestead Exemption (Docket 539 ); And (3) Good Faith Finding Pursuant To Section 363(m). IT IS ORDERED: As Set Forth Above, Trustee May Sell The Property And Obtain Turnover Of The Property. Debtor's Objections Are Overruled. Mr. Peplin Is The Successful Bidder And Is Awarded The Finding Of A Good Faith Buyer Under Section 363(m). Debtor Has Requested A Denial Of A 6004(h) Waiver To Give Her Time To Preserve Her Appeal Rights, Which Is The Purpose Of 6004(h). However, Debtor, Prior To The Issuance Of This Memorandum Opinion, Has Filed Both A Notice Of Appeal And Motion For A Stay Pending Appeal. The Motion For Stay Pending Appeal Shall Be Addressed In A Separate Order. The Trustee's Request For A Waiver Of Rule 6004(h) Is Granted. (SEE ORDER FOR FURTHER RULING) (BNC-PDF) (Related Doc # 539 ) Signed on 4/10/2025 (NB8) (Entered: 04/10/2025) | ER 762 – 787 |
| 04/10/2025 | 594<br>(15 pgs) | ORDER Denying Motion For Stay Pending Appeal. IT IS ORDERED: For All The Foregoing Reasons, The Court Finds Good Cause To DENY The Motion For Stay Pending Appeal. The Parties Are Ordered To Submit (a) This Order Denying Motion For Stay Pending Appeal And (b) The Order RE (1) Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turnover Manufactured Home And Authorizing Issuance Of | ER 788 – 802 |

| | | | |
|---|---|---|---|
| | | Writ Of Assistance; (2) Trustee's Motion To Authorize Sale Of Manufactured Home; And (3) Good Faith Finding Pursuant To Section 363(m) Entered April 10, 2025 (Docket 593) To Any District Court Or Bankruptcy Appellate Panel That Further Considers Any Motion For Stay Pending Appeal. (SEE ORDER FOR FURTHER RULING) (BNC-PDF) Signed on 4/10/2025 (RE: related document(s)562 Motion To Stay Pending Appeal filed by Debtor Jamie Lynn Gallian). (NB8) (Entered: 04/10/2025) | |
| 04/14/2025 | 597 (13 pgs) | Declaration re: *Declaration Of Eric P. Israel Requesting Supplemental Orders On: (1) Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turn Over Of Manufactured Home And Authorizing Issuance Of Writ Of Assistance (Dk. 538); (2) Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free And Clear Of Liens And Homestead Exemption (Dk. 539)* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)538 Motion for Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points a,* 539 *Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No.).* (Israel, Eric) (Entered: 04/14/2025) | ER 803 - 815 |
| 04/14/2025 | 598 (3 pgs) | Supplemental Order Granting Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free And Clear Of Liens And Homestead Exemption. IT IS ORDERED: 1. The Sale Motion (Docket 539 ) Is GRANTED In Its Entirety. 2. The Proposed Overbid Procedures Are APPROVED. 3. The Sale By The Trustee Of The Entirety Of The Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081 (The "Property"), | ER 816 – 818 |

| | | | |
|---|---|---|---|
| | | Including The Interests Of J-Sandcastle, LLC, To Greg Peplin (The "Buyer") For $276,000.00, Is CONFIRMED On The Terms And Conditions Set Forth In The Sale Motion And In The Purchase And Sale Agreement Attached As Exhibit "1" To The Sale Motion. (SEE ORDER FOR FURTHER RULING) (BNC-PDF) (Related Doc # 539 ) Signed on 4/14/2025 (NB8) (Entered: 04/14/2025) | |
| 04/14/2025 | 599 (3 pgs) | Supplemental Order Granting Trustee's Motion For Order Compelling Turnover Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081 (Docket No. 538 ). IT IS ORDERED: 1. The Turnover Motion (Docket 538 ) Is GRANTED In Its Entirety. 2. Debtor And Any Other Occupants Of The Property Must Vacate And Turn Over All Possession, Custody And Control Of The Property To The Trustee By April 24, 2025. 3. The Debtor And Any Other Occupants Of The Property Must Leave The Property Vacant And In Its Present, Good, Broom-Swept Condition Without Any Refuse, Trash, Or Personal Belongings Remaining. 4. The Debtor And Any Occupants Of The Property Must Provide The Trustee With All Keys To The Property, Along With Any Security Codes And Garage Door And/Or Gate Openers, By April 24, 2025. 5. The Trustee Is Authorized To Prepare A Writ Of Assistance Consistent With This Order For Issuance By The Clerk Of The Court. The Trustee May Levy Or Execute On Such Writ Should The Debtor Or Any Other Occupants Fail To Timely Vacate The Property As Set Forth In This Order. (SEE ORDER FOR FUTHER RULING) (BNC-PDF) (Related Doc # 538 ) Signed on 4/14/2025 (NB8) (Entered: 04/14/2025) | ER 819 – 821 |
| 04/14/2025 | 600 (41 pgs) | Notice of Appeal and Statement of Election to U.S. District Court.(Official Form 417A) . Fee Amount $298 Filed by Debtor Jamie Lynn Gallian (RE: related document(s)593 Order on Motion To Sell (BNC-PDF), 598 Order on Motion To Sell (BNC-PDF), 599 Order on Motion for Turnover of Property (BNC-PDF)). Appellant Designation due by 04/28/2025. (Blank, Christopher) (Entered: 04/14/2025) | ER 822 – 862 |
| 04/14/2025 | 601 (1 pg) | Original Holographic signature page Notice of Appeal *Docket #600* Filed by Debtor Jamie Lynn | ER 863 |

| | | | |
|---|---|---|---|
| | | Gallian. (Blank, Christopher) - - See docket entry no.: 602 for corrections Modified on 4/15/2025 (NB8). (Entered: 04/14/2025) | |
| 04/15/2025 | 603 (6 pgs) | Original Holographic signature page Debtor's Notice of Appeal [Docket 600] Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 04/15/2025) | ER 864 – 869 |
| 04/15/2025 | 605 (61 pgs; 6 docs) | Notice Of Referral Of Appeal To United States District Court with certificate of mailing (RE: related document(s)600 Notice of Appeal and Statement of Election (Official Form 417A) filed by Debtor Jamie Lynn Gallian) (Attachments: # 1 Notice of Appeal and Statement of Election # 2 Holographic Signature of Debtor's Counsel on Debtor's Notice of Appeal # 3 Notice of Transcript(s) Designated for an Appeal # 4 Transcript Order Form # 5 Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit) (NB8) (Entered: 04/15/2025) | ER 870 – 930 |
| 04/21/2025 | 608 (2 pgs) | Notice Regarding Appeal from Bankruptcy Court. District Court Case 8:25cv00827CV. Originally Filed on 04/21/25. (RE: related document(s)605 Notice Of Referral Of Appeal To United States District Court with certificate of mailing (RE: related document(s)600 Notice of Appeal and Statement of Election (Official Form 417A) filed by Debtor Jamie Lynn Gallian) (Attachments: # 1 Notice of Appeal and Statement of Election # 2 Holographic Signature of Debtor's Counsel on Debtor's Notice of Appeal # 3 Notice of Transcript(s) Designated for an Appeal # 4 Transcript Order Form # 5 Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit) (NB8)). (DG) (Entered: 04/21/2025) | ER 931 – 932 |
| 04/22/2025 | 609 (2 pgs) | Assignment notice of USDC case/judge to appeal - Assigned USDC Case No.: 8:25-cv-00827-CV (filed at United States District Court on 4/21/2025) (RE: related document(s)600 Notice of Appeal and Statement of Election (Official Form 417A) filed by Debtor Jamie Lynn Gallian) (NB8) (Entered: 04/22/2025) | ER 933 – 934 |
| 04/28/2025 | 610 (1 pg) | Transcript Order Form related to an Appeal, regarding Hearing Date 03/04/2025 Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 04/28/2025) | ER 935 |

| | | | |
|---|---|---|---|
| 04/28/2025 | 611<br>(1 pg) | Transcript Order Form related to an Appeal, regarding Hearing Date 03/27/25 Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 04/28/2025) | ER 936 |
| 04/28/2025 | 612<br>(1 pg) | Transcript Order Form related to an Appeal, regarding Hearing Date 04/10/2025 Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 04/28/2025) | ER 937 |
| 04/28/2025 | 613<br>(6 pgs) | Notice of transcripts Filed by Debtor Jamie Lynn Gallian (RE: related document(s)600 Notice of Appeal and Statement of Election (Official Form 417A)). (Blank, Christopher) (Entered: 04/28/2025) | ER 938 - 943 |

1   ERIC P. ISRAEL (State Bar No. 132426)
    *eisrael@DanningGill.com*
2   DANNING, GILL, ISRAEL & KRASNOFF, LLP
    1901 Avenue of the Stars, Suite 450
3   Los Angeles, California 90067-6006
    Telephone: (310) 277-0077
4   Facsimile: (310) 277-5735

5   Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                        **SANTA ANA DIVISION**

11

12  In re                                Case No. 2:21-bk-11710-SC

13  JAMIE LYNN GALLIAN,                   Chapter 7

14          Debtor.                       **CHAPTER 7 TRUSTEE'S NOTICE OF
                                          MOTION AND MOTION FOR ORDER**
15                                        **COMPELLING DEBTOR AND ANY
                                          OTHER OCCUPANTS TO VACATE**
16                                        **AND TURN OVER MANUFACTURED
                                          HOME AND AUTHORIZING**
17                                        **ISSUANCE OF WRIT OF
                                          ASSISTANCE; MEMORANDUM OF**
18                                        **POINTS OF AUTHORITIES,
                                          DECLARATION OF JEFFREY I.**
19                                        **GOLDEN AND REQUEST FOR
                                          JUDICIAL NOTICE**
20
                                          Date:      March 4, 2025
21                                        Time:      11:00 a.m.
                                          Ctrm:      5C
22                                        Location:  411 W. 4TH STREET
                                                     SANTA ANA, CA
23

24

25

26

27

28

ES 001              ES 001              ES 001

1 | **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

2 | **JUDGE AND INTERESTED PARTIES:**

3 | PLEASE TAKE NOTICE that on March 4, 2025, at 11:00 a.m., in Courtroom "5C" of the

4 | United States Bankruptcy Court, for the Central District of California, located at 411 W. Fourth

5 | Street, Santa Ana, California, Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the

6 | bankruptcy estate (the "Estate") of Jamie Lynn Gallian (the "Debtor"), will and hereby does move

7 | the Court (the "Motion") under 11 U.S.C. §§ 521 and 541, for an order directing the Debtor and any

8 | other occupants to vacate and turnover to the Trustee the property described as a 2014 Skyline

9 | Custom Villa manufactured home, decal no. LBM1081 (the "Property") currently located at 16222

10 | Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space").

11 | This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of

12 | Points and Authorities, the Declaration of Jeffrey I. Golden and Request for Judicial Notice; the sale

13 | motion filed contemporaneously herewith; the papers and pleadings in the Debtor's bankruptcy case

14 | and related adversary proceedings; and such other evidence that may be presented at the hearing.

15 | Contemporaneously herewith, the Trustee is filing a motion to sell the Property (the "Sale

16 | Motion"). The Trustee incorporates by reference all of the evidence and arguments in support of the

17 | Sale Motion.

18 | **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f),

19 | each interested party opposing, joining in or responding to the Motion must, not less than **14 days**

20 | before the date of the hearing, file with the Clerk of the Bankruptcy Court and serve upon the

21 | Trustee's general counsel, Eric P. Israel, Esq., 1901 Avenue of the Stars, Suite 450, Los Angeles,

22 | California 90067, and the United States Trustee, 411 W. 4th Street, Suite 7160, Santa Ana,

23 | California, either: (i) a complete written statement of all reasons in opposition thereto or in support

24 | or joinder thereof, declarations and copies of all photographs and documentary evidence on which

25 | the responding party intends to rely, and any responding memorandum of points and authorities; or

26 | (ii) a written statement that the Motion will not be opposed.

27 | / / /

28 | / / /

1    Pursuant to Local Bankruptcy Rule 9013-1(h), failure to timely file and serve papers may be

2    deemed by the Court to be consent to the granting of the Motion.

3

4    DATED: January 3, 2025                    DANNING, GILL, ISRAEL & KRASNOFF, LLP

5

6                                             By: _____

7                                             ERIC P. ISRAEL
                                              Attorneys for Jeffrey I. Golden, Chapter 7 Trustee
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ES 003                    ES 003                    ES 003

1785058.3  27046

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Jamie Lynn Gallian ("Debtor"), seeks an order compelling the Debtor and any other occupants to turnover to the Trustee the 2014 Skyline Custom Villa manufactured home, decal no. LBM1081 (the "Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space"). The Trustee is not confident that Debtor will timely vacate the Property, given the Debtor's efforts to obstruct the administration of the Property to date. Concurrently herewith, the Trustee is filing a motion to sell the Property. The Trustee requires an enforceable order granting possession to give assurances to the buyer that possession of the Property can be delivered upon the close of the sale.

**1.      Summary of Argument**

A Chapter 7 debtor has a duty to turn over possession of estate property to his or her trustee so that it may be liquidated for the benefit of creditors. The Trustee has marketed the Property and found a buyer at a sales price of $275,000.00. The sale, if approved, would be beneficial to the Estate and would allow for payments of administrative claims and distributions to unsecured creditors. The buyer, however, needs assurances that the Buyer will actually be able to take possession of the Property upon closing. In this case, the Debtor has repeatedly endeavored to obstruct Estate administration, at one point retaining her own agent to market and sell the Property, filing a second bankruptcy case, and recently threatening on December 13, 2024, to remove the Property from the Space as quickly as possible. To ensure that the sale of the Property closes smoothly and timely, the Trustee files this motion seeking an order of the Court for possession of the Property, which can be enforced by the United States Marshals Service ("Marshals") if necessary. Contemporaneously herewith, the Trustee is filing a motion to confirm the sale of the Property (the "Sale Motion"). Unless otherwise noted, references below are to the evidence attached to the Sale Motion.

ES 004                          ES 004                          ES 004

1785058.3  27046

4

## II.

## FACTUAL BACKGROUND

A.    **Bankruptcy Background**

On July 9, 2021 (the "Petition Date"), Jamie Lynn Gallian (the "Debtor") filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Case"). Jeffrey I. Golden accepted appointment as the Trustee for the Debtor's estate (the "Estate") and continues to serve in that capacity.

Pursuant to an order entered on or about June 1, 2022, the Trustee retained the law firm of Danning, Gill, Israel, and Krasnoff, LLP ("Danning-Gill") as his general bankruptcy counsel. *Docket no. 108*. Effective as of February 1, 2025, the primary attorney at Danning-Gill who has been handling this file, Eric P. Israel, is leaving Danning-Gill and joining the firm of Levene, Neale, Bender, Yoo & Golubchik, L.L.P. The Trustee will be filing an application to employ the Levene Neale firm as his successor counsel and file an employment application thereon.

Pursuant to an order entered on or about September 5, 2024, the Trustee retained Coldwell Banker Realty ("Coldwell Banker") (agents William Friedman and Greg Bingham) as the Trustee's real estate broker to list, market and aid the Trustee in selling the Property described below (*docket no. 431*). A copy of the order employing Coldwell Banker is attached to the Sale Motion as Exhibit "2".

B.    **The Debtor's Schedules**

The Debtor has amended her schedules at least 13 times to date.[1] In her original schedules, she valued the Property at $235,000 and disclosed that title to the Property was vested in J-Sandcastle, LLC on the Petition Date, of which she was its sole member and its managing member. *Docket no. 1*. The Debtor's schedules further disclosed that the Property was subject to a lien in favor of J-Pad, LLC, and that she was its managing member. *Id*. A copy of pertinent pages from those schedules are attached to the Sale Motion as Exhibit "3". The Debtor later claimed a homestead exemption in the Property in the amount of $600,000. *Docket no. 72, p. 20.*

---

[1] *See docket nos. 15, 16, 17, 22, 37, 38, 39, 42, 72, 75, 94, 444, 468 and 519.*

1    As noted below, the Trustee commenced an adversary proceeding and recovered title to the

2    Property and avoided and preserved all of the consensual liens.

3    C.    **The Manufactured Home at Issue**

4         1.    The Property

5    On the Petition Date, the registered title owner of the manufactured home located at 16222

6    Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Property"), was vested in J-

7    Sandcastle Co, LLC ("J-Sandcastle"). *Docket no. 468 (*Exhibit "3" to the Sale Motion*)*. The Debtor was

8    not on title to the Property on the Petition Date.

9         2.    Liens Against the Property

10    The Property is subject to a consensual lien on the Property in favor of J-Pad, LLC ("J-Pad") in

11    the amount of $225,000, plus interest, and other voluntary liens and transfers in favor of the Debtor's

12    family members, ex-husband, and a former roommate as discussed below. *Docket no. 468.* As noted

13    below, the Trustee commenced an adversary proceeding and recovered title to the Property and

14    avoided and preserved all consensual liens thereon.

15    The following two judgment liens were also recorded against the Debtor (collectively the

16    "Abstracts of Judgment"):

17         a.    An abstract of judgment recorded on or after December 18, 2021, in favor of Janine

18    Jasso, Jennifer Paulin, Lori Burrett, Lee Gragnano, Lindy Beck, and Ted Phillips (collectively the

19    "Jasso Parties") in the sum of "at least $64,049.66 (not including additional interest, fees and other

20    costs)". See proof of claim no. 4-1 (Exhibit "9" to the Sale Motion); and

21         b.    A series of abstracts of judgment recorded on or about May 3, 2019, May 16, 2019,

22    and November 18, 2019, in favor of The Huntington Beach Gables Homeowners Association

23    ("Gables") in the sum of "at least $510,742.55 (not including additional interest, fees and other

24    costs)". See proof of claim no. 1-1 (Exhibit "10" to the Sale Motion).

25    As discussed in the Sale Motion, abstracts of judgment do not reach a manufactured home,

26    which is personal property – not real property. Moreover, title was not vested in the Debtor at the

27    time, and the avoided lien is senior to those Abstracts of Judgments.

28

ES 006            ES 006                        ES 006

1785058.3 27046                6

3.    The First Objection to the Debtor's Homestead Exemption, Appeal and Remand

On or about May 12, 2022, Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates, the homeowners association for the manufactured home park that includes the Space ("Houser Bros."), filed its Motion Objecting to Debtor's Claimed Homestead Exemption (the "Exemption Motion") (*docket no. 95*). The hearing on the Exemption Motion was held on June 2, 2022, and continued to July 21, 2022. At the continued hearing, the Court granted the Exemption Motion and disallowed any claim of exemption by the Debtor in the Property.

On or about July 26, 2022, the Debtor filed her Motion for Reconsideration from the Court's July 21, 2022, ruling (the "Motion for Reconsideration") (*docket no. 157*). The order granting the Exemption Motion was thereafter entered on or about August 5, 2022 (*docket no. 177*). The hearing on the Motion for Reconsideration was held on September 22, 2022, and the Court took the matter under submission.

On or about December 19, 2022, the Court entered its order granting the Debtor's Motion for Reconsideration, finding that the Debtor was entitled to a homestead exemption in the Property (even though she was not on title) in the amount of $600,000 (the "Order Granting the Motion for Reconsideration") (*docket no. 274*).

On or about December 29, 2022, Houser Bros. appealed the Order Granting the Motion for Reconsideration to the District Court (*docket no. 280*).

On or about November 1, 2023, the District Court entered an order that reversed and remanded the Order Granting the Motion for Reconsideration on the grounds that the Court did not make findings regarding the Debtor's interest in the Property including whether "Gallian ever acquired (and retained) an equitable interest in the Property" (the "Reversal and Remand Order") (*docket no. 387*).

On or about May 15, 2024, the Court entered a further order after remand (the "Remand Order") (*docket no. 393*). The Remand Order again found "that Debtor held a sufficient equitable interest in the Property to claim an automatic homestead exemption under Cal. Civ. Proc. Code § 704.720(a)."

Houser Bros. did not appeal the Remand Order, which is now final.

ES 007                    ES 007                    ES 007

1785058.3 27046

7

1      **4.**     <u>The Objection to the Debtor's Latest Exemption Claim</u>

2          On or about December 3, 2024, the Debtor amended her claim of exemption yet again.

3 *Docket no. 519.* The Second Exemption claimed an exemption in the ground lease for the "pad" (the

4 "Ground Lease"). A copy of that amendment is attached to the Sale Motion as Exhibit "4".

5          Houser Bros. timely objected to that amended exemption claim. *Docket no. 529.* The

6 Trustee joined in that objection (*docket no. 533*), as did Gables (*docket no. 531*). The hearing on that

7 motion is set for February 4, 2025, at 11:00 a.m.

8          The Ground Lease was never assumed, and hence was deemed rejected long ago. 11 U.S.C.

9 § 356(d)(1). In any event, the Trustee is not proposing via the Sale Motion to sell or assume and

10 assign the Ground Lease. Houser has agreed to issue a new ground lease to a new qualified buyer –

11 but not the Debtor.

12 **D.**    <u>Trustee's Avoidance and Recovery of Transfers of Title and Liens on the Property</u>

13          On or about June 30, 2023, the Trustee commenced an adversary proceeding, adv. No. 8:23-ap-

14 01064-SC, by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and*

15 *Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money*

16 *Had and Received; and (6) Unjust Enrichment* ("Complaint") against Ronald J. Pierpont, J-Pad LLC, J-

17 Sandcastle Co., LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E. J.

18 Gallian (collectively the "Defendants").

19      **1.**     <u>Stipulated Judgments</u>

20          Pursuant to stipulations with defendants Steven D. Gallian, Brian J. Gallian, Justin Barclay and

21 E. J. Gallian (collectively the "Family Defendants"), a stipulated judgment was entered against the

22 Family Defendants on or about October 3, 2023 (*adv. docket no. 47*). The judgment against the Family

23 Defendants avoided the liens on the Property in favor of the Family Defendants (the "Stipulated Family

24 Defendants Judgment"). The judgment also preserved those liens for the benefit of the Debtor's

25 estate pursuant to 11 U.S.C. § 551. A copy of the Stipulated Family Defendants Judgment is

26 attached to the Sale Motion as Exhibit "5".

27          Pursuant to a stipulation with defendant Robert J. McLelland ("Mr. McLelland") (*adv. docket*

28 *no. 52*), a stipulated judgment was entered against Mr. McLelland on or about March 29, 2024 (*adv.*

1  *docket no.* 66) (the "McLelland Stipulated Judgment"). The judgment against Mr. McLelland also

2  avoided his lien on the Property. The judgment also preserved his lien for the benefit of the Debtor's

3  estate pursuant to 11 U.S.C. § 551. A copy of the McClelland Stipulated Judgment is attached to the

4  Sale Motion as Exhibit "6".

5         2.   **Default Judgments**

6        Pursuant to motions for default judgment filed by the Trustee with respect to defendants, J-

7  Pad, J-Sandcastle, and Ronald J. Pierpont (collectively the "Defaulting Defendants"), default

8  judgments were entered against the Defaulting Defendants on or about May 10, 2024 (*adv. docket*

9  *nos.* 79, 81 and 83) (collectively the "Defaulting Defendants Judgments"). Copies of the Defaulting

10  Defendants Judgments are attached to the Sale Motion collectively as Exhibit "7".

11        The default judgment against J-Sandcastle avoided and preserved the Debtor's transfers of

12  title of the Property to J-Sandcastle and recovered legal title to and the beneficial interest in the

13  Property for the Debtor's bankruptcy estate in the name of the Trustee. The Debtor's schedules

14  disclosed that the Debtor was the sole member of J-Sandcastle.

15        The default judgment against defendant J-Pad avoided J-Pad's lien on the Property in the

16  amount of $225,000 and other liens on the Property in favor of J-Pad. The judgment also preserved

17  those liens for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 551. The

18  Debtor's schedules disclosed that the Debtor was the sole member of J-Pad.

19        The default judgment against defendant Ronald J. Pierpont determined that Mr. Pierpont does

20  not have any interest in the Property. It also avoided his liens on the Property and preserved those

21  liens for the benefit of the Debtor's estate pursuant to 11 U.S.C. § 551.

22        As a result of the above, title to the Property has been restored to the Estate, and the Property is

23  property of the Estate. In addition, the consensual lien in the original principal sum of $225,000 in favor

24  of J-Pad on the Property, and the other consensual liens and interests on the Property in favor of the

25  Family Defendants, Mr. Pierpont and Mr. McLelland, have been avoided and preserved for the

26  benefit of the Debtor's estate in the Trustee's name.

27        Although the Debtor has been allowed a homestead exemption in the Property, such

28  exemption is only payable from any equity following consensual liens, which liens include the

ES 009            ES 009            ES 009

1785058.3  27046

avoided and preserved J-Pad lien. *See* Cal. Code Civ. P. § 703.010. Exemptions may be claimed

only against involuntary liens, such as judgments, attachments and execution liens, and then only if

the procedures of section 522(f) are followed. *Id.* Thus, the consensual liens on the Property come

ahead of any allowed amount of the Debtor's homestead exemption. *See In re Roach*, 2019 WL

408628, at *3-5 (B.A.P. 9th Cir. 2019)[2]; *see also In re Bunn-Rodemann*, 491 B.R. 132, 134-35

(Bankr. E.D. Cal. 2013). To date, the Debtor has not succeeded on a 522(f) motion, but those

involuntary liens are junior to the avoided consensual liens in any event.

The Trustee contends that notwithstanding the Debtor's allowed homestead exemption, that

he is in a position to sell the Property for the benefit of the Estate and creditors. Specifically, the

Trustee avoided and preserved the transfer of title to J-Sandcastle, the consensual J-Pad lien in the

amount of $225,000 plus interest and other liens. The payoff on the J-Pad avoided lien is now

approximately $301,000. This amount and the other avoided liens are senior to the Debtor's

homestead exemption. As such, any distribution from the sales proceeds must be paid to the Trustee

first in connection with the consensual liens, and prior to any amount that the Debtor may be entitled

to in connection with her homestead exemption.

For example, the avoided and preserved consensual J-Pad lien of $225,000.00, plus interest,

which amount with interest the Trustee calculates to be not less than $301,011.14[3], as of January 9,

2025, at the contract interest rate of 5.5% (daily interest continues to accrue at $33.90 per day) must

be paid before any other junior liens and the Debtor's homestead exemption. Because most if not all

of the sales proceeds will be exhausted by the consensual liens that the Debtor recorded against the

Property, including the J-Pad lien, absent significant overbidding, it is anticipated that there will be

no proceeds available to pay to the Debtor on account of her exemption.

---

[2] A copy of *Roach* is attached to the Sale Motion as Exhibit "12".

[3] As of January 9, 2025, at the contract interest rate of 5.5% (daily interest continues to accrue at
$33.90) per day.

ES 010                    ES 010                    ES 010

1785058.3  27046

E.    **Marketing Efforts**

An order approving the Trustee's employment of Coldwell Banker to sell the Property and approving the listing agreement was entered on or about September 5, 2024. *Docket no. 431* (Exhibit "2" to the Sale Motion). The listing price was $320,000. With the aid of the broker, the Trustee has marketed the Property for sale, and the Buyer's offer is the best and only offer that the Trustee has received to date. The Buyer has conducted all due diligence that it needs to close the sale. The only remaining requirement to close the sale is Court approval, subject to qualified overbids made at the sale hearing.

F.    **Denial of the Debtor's Discharge and Appeal**

On or about October 18, 2021, Houser Bros. filed a complaint under 11 U.S.C.§ 727 to deny the Debtor's discharge, adversary no. 8:22-ap-01097-SC. *Adv. docket no. 1.* Pursuant to an order entered on or about May 23, 2023, the Court denied the Debtor's discharge (the "Discharge Judgment"). *Adv. docket no. 81.*

The Debtor appealed that ruling to the United States District Court, which affirmed the Discharge Judgment. *Adv. docket no. 131.* No further appeal was taken therefrom.

G.    **Insurance Placed on the Property**

The Trustee was unable to confirm that the Property was insured, and as a result obtained insurance from Trustee Insurance Services ("TIS"). As of this time, TIS is owed $1,691.80 for insurance premiums, plus $409.20 per month thereafter (collectively the "Insurance Advances"). The Trustee requests authority to pay TIS the Insurance Advances from the sale proceeds.

H.    **The Trustee's Marketing of the Property, and the Debtor's Efforts to Obstruct the Sale**

Shortly after entry of the order employing the Broker, the Property was listed for sale at $320,000. The Trustee has received one offer for the Property, the offer at bar in the Sale Motion for $275,000.00. The Trustee continues to market the Property for overbids otherwise.

Before the Trustee was able to list the Property for sale, on or about August 27, 2024, the Debtor filed a Motion to Avoid Lien under 11 U.S.C. § 522(f), which the Court denied by order entered on or about October 22, 2024 (*docket nos. 422, 474*). That motion sought to collaterally challenge the Trustee's final judgments avoiding various transfers by the Debtor.

On or about September 9, 2024, the Debtor filed another voluntary petition for relief – this one under Chapter 13 of the Bankruptcy Code, which was assigned case no. 8:24-11267-SC (the "Chapter 13 Case"). The Chapter 13 Case was dismissed on or about October 21, 2024. *Chapter 13 Docket no. 38.*

On or about September 11, 2024, the Debtor filed a motion to convert this Case to Chapter 13. *Docket no. 438.* Pursuant to an order entered on or about October 29, 2024, the Court denied the Debtor's motion to convert. *Docket no. 491.*

The Debtor further retained real estate agent Joseph Arroyo to market and sell the Property, which was property of the Estate. The Court accordingly entered an Order to Show Cause Why Debtor and Joseph Arroyo Should Not Be Found in Contempt of Court on September 12, 2024 (*docket no. 440*). After the Debtor withdrew the listing and agreed on the record to comply with her duties under the Bankruptcy Code to cooperate with the Trustee's efforts to list, market, and sell the Property, the Court entered an Order on Order to Show Cause Why Debtor and Joseph Arroyo Should Not Be Found in Contempt of Court (*docket no. 495*).

On or about December 13, 2024, the Trustee was copied on the following two emails in which the Debtor advised:

"Gentlemen, I am making arrangements to remove the 2014 Skyline Manufactured Home from the Rancho Del Rey Park and will inform you where it will be stored.." A copy of this email is attached to the Golden Declaration appended hereto as Exhibit "1".

"Please accept this as Notice the home will be removed from the park as quickly as possible to avoid accruing any further accrual of rent." A copy of this email is attached to the Golden Declaration appended hereto as Exhibit "2".

On or about December 17, 2024, the Trustee was copied on an email in which the Debtor advised: "In keeping with the spirit of the holidays, I respectfully request any Home Inspections and Termite Inspections be continued after January 2, 2025." A copy of this email is attached to the Golden Declaration appended hereto as Exhibit "3".

On or about January 1, 2025, the Trustee was copied on an email in which the Debtor advised: "I came home sick with the flu from work. Fever with severe headache and body aches

1    and bronchitis.  I will be in bed resting due to the severe pain and migraine headaches.  Please

2    inform your broker of the circumstances."  A copy of this email is attached to the Golden

3    Declaration appended hereto as Exhibit "4".

4         In sum, the Debtor has generally impeded the Trustee's attempts to administer the Property.

5                                              **III.**

6                                   **LEGAL ARGUMENT**

7         "Except as provided in subsection (c) or (d) of this section, an entity… shall deliver to the

8    trustee, and account for, such property or the value of such property, unless such property is of

9    inconsequential value or benefit to the estate."  11 U.S.C. § 542(a).  Moreover, a debtor has a duty to

10   cooperate with the Trustee and turn over all estate property.  11 U.S.C. § 521(a)(3)-(4).

11        **A.     The Property is Property of the Estate.**

12        Section 541(a) of the Bankruptcy Code provides that upon the filing of a bankruptcy case, an

13   estate is created.  11 U.S.C. § 541(a).  The estate is "comprised of all the following property,

14   wherever located and by whomever held: (1) . . . all legal or equitable interests of the debtor in

15   property as of the commencement of the case. . . . (3) Any interest in property that the trustee

16   recovers under section . . . 550 . . . ."  The bankruptcy court has exclusive jurisdiction over property

17   of the estate.  *See* 28 U.S.C. § 1334(e); *Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, 757

18   F.3d 1044, 1050 (9th Cir. 2014) (court has "exclusive *in rem* jurisdiction" over estate property).

19        As discussed above, the Trustee avoided and recovered title to the Property from J-

20   Sandcastle, and further avoided and recovered the consensual liens against the Property.  The

21   Property is accordingly property of the Estate.

22        **B.     The Court has Personal Jurisdiction over the Debtor.**

23        "[T]he district court shall have original and exclusive jurisdiction of all cases under title 11."

24   28 U.S.C. § 1334(a).  A debtor consents to personal jurisdiction of the bankruptcy court by filing a

25   bankruptcy petition.  *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 870 (9th Cir. 2005) ("The

26   debtor invoked bankruptcy subject matter and *in personam* jurisdiction by filing a voluntary petition

27   in bankruptcy."); *see, e.g., In re Malek*, 591 B.R. 420, 426 (Bankr. N.D. Cal. 2018) ("[Debtor]

28   consented to the equitable jurisdiction of the bankruptcy court by voluntarily filing a bankruptcy

1   petition."); *In re Kasl*, 2009 Bankr. LEXIS 2351 at *10-11 (Bankr. C.D. Cal. January 13, 2009)[4]

2   ("where the debtor voluntarily files a petition, the debtor submits to the personal jurisdiction of the

3   court sitting in the district in which he filed."); *In re Hunt*, 2014 U.S. Dist. LEXIS 189464 at *34

4   (C.D. Cal. July 25, 2014)[5] ("It is axiomatic that a bankruptcy court has personal jurisdiction over a

5   debtor who files a voluntary bankruptcy petition.") (citing *Securities and Exchange Comm'n v. Ross*,

6   504 F.3d 1130, 1149 (9th Cir. 2007)).

7        **C.**    **Property of the Estate Must be Turned over to the Trustee.**

8        Property of the estate must be accounted for and turned over to the trustee. 11 U.S.C.

9   § 542(a). "Bankruptcy Code § 542(a) grants a bankruptcy trustee the power to recover property of

10   the debtor's estate or such property's value." *Shapiro v. Henson*, 739 F.3d 1198, 1199 (9th Cir.

11   2014). Present possession of an interest which constitutes property of the estate is not a prerequisite

12   for the trustee seeking turnover of such property. *Id.* at 1204; *see, e.g., APJL Consulting, LLC v.*

13   *Treasures, Inc. (In re Treasures, Inc.)*, 2015 Bankr. LEXIS 662 at *59 (B.A.P. 9th Cir. 2015)[6]. A

14   Chapter 7 debtor has a statutory duty to "surrender to the trustee all property of the estate and any

15   recorded information, including books, documents, records, and papers, relating to property of the

16   estate." 11 U.S.C. § 521(a)(4); *see Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 764 F.3d

17   1168, 1174 (9th Cir. 2014) ("…the debtor has a duty to surrender to the trustee all estate property.");

18   *see also Starky v. Birdsell (In re Starky)*, 522 B.R. 220, 227 (B.A.P. 9th Cir. 2014); *see also, Mwangi*

19   *v. Wells Fargo Bank N.A. (In re Mwangi)*, 432 B.R. 812, 818, 822 (B.A.P. 9th Cir. 2010) (estate

20   property must be turned over to trustee; "the failure to return property of the estate with knowledge

21   of the bankruptcy is a violation of both the automatic stay and of the turnover requirements of the

22   Bankruptcy Code.") (*quoting Abrams v. Sw. Leasing & Rental, Inc. (In re Abrams)*, 127 B.R. 239,

23   242-43 (B.A.P. 9th Cir. 1991)).

24

25

26   ———————————

27   [4] A copy of *Kasl* is attached hereto as Exhibit "5".

      [5] A copy of *Hunt* is attached hereto as Exhibit "6".

28   [6] A copy of *APL Consulting* is attached hereto as Exhibit "7".

1   The Trustee requests an order of the Court providing a date certain (March 11, 2025) for the

2   Debtor and any occupants to be compelled to vacate the Property, which is enforceable by

3   application of the Trustee if the Debtor refuses to comply.

4       **D.     Procedures for Enforcement of Turnover Order.**

5         Bankruptcy courts have the power to authorize the issuance of a writ of execution or

6   assistance authorizing and directing the Marshals to compel the surrender of real property.  Fed. R.

7   Civ. P. 70 (made applicable to adversary proceedings by Fed. R. Bankr. P. 7070); *In re Kerlo*, 311

8   B.R. 256, 261 (Bankr. C.D. Cal. 2004) ("'a writ of assistance to deliver . . . possession [of real

9   property] . . . was agreeable to the usages and principals of law' and 'clearly lies under the express

10  terms of Fed. R. Civ. P. 70.'") (citing *Hamilton v. McDonald*, 503 F.2d 1138, 1148 (9th Cir. 1974)).

11  Indeed, the Court may issue any order that is necessary and appropriate to carry out the provisions of

12  the Bankruptcy Code.  11 U.S.C. § 105(a).  Section 105 also authorizes the Court to grant a trustee's

13  request for issuance of a writ of assistance.  Specifically, orders for possession of property may be

14  enforced through writs and orders under Section 105(a).  *See Kerlo*, 311 B.R. at 262.

15        As set forth above, good cause exists for the Court to provide the Trustee with the means to

16  enforce any turnover order under Fed. R. Bankr. P. 7070 and authorizing all efforts of the Trustee

17  and the Marshals to enforce the resulting turnover order should enforcement be necessary.  The

18  Trustee further requests that the Court authorize the Clerk of the Court to issue a writ of assistance

19  directing the Marshals to enforce any resulting turnover order, at Trustee's discretion.  Otherwise,

20  the Estate may suffer irreparable harm, especially if the Debtor or any occupants delays or frustrates

21  the closing of a sale of the Property.

22                                            **IV.**

23                                 **<u>CONCLUSION</u>**

24        The Trustee respectfully requests that the Court enter an order:

25       1.     Granting this Motion;

26       2.     Directing the Debtor and all occupants of the Property to vacate the Property by

27  March 11, 2025 (the "Turnover Deadline");

28

3.      Authorizing the United States Marshals Service to effectuate an eviction of all occupants and turn over possession of the Property to the Trustee or his agents should the Debtor and all occupants fail to vacate the Property by the Turnover Deadline;

4.      Authorizing Trustee and his agents to re-key and secure the Property upon turnover;

5.      Barring and prohibiting the Debtor from returning to the Property;

6.      Entitling the Trustee to enforce such order by issuance of a writ of assistance to the United States Marshals Service pursuant to Local Bankruptcy Rule 7064-1(e), which states as follows:

> Upon execution and entry of this Order, the United States Marshals Service [and any other executing officer authorized by the court] (collectively, the "U.S. Marshal") is immediately directed to assist Trustee to enforce the underlying order awarding possession. Trustee and his authorized agent(s) will act as substitute custodian of any and all items of personal property seized pursuant to this Order and the U.S. Marshal shall have no liability arising from any acts, incidents, or occurrences in connection with the seizure of the personal property located at the subject real property arising in the ordinary authorized scope of duties of the U.S. Marshal (which acts do not include acts arising from negligent or intentional tortious conduct), including any third party claims and the U.S. Marshal shall be discharged of his or her duties and responsibilities for safekeeping of the seized goods. The U.S. Marshal accomplishing such eviction or seizure shall use whatever reasonable force necessary to break open and enter the subject real property regardless of whether the premises or location is locked or unlocked, occupied or unoccupied and to inspect the contents of any room, closet, cabinet, vehicle, container, desk or documents. Anyone interfering with the execution of this Order is subject to arrest by law enforcement officials.

7.      For any such other and further relief as the Court deems just and proper.

DATED: January 3, 2025

DANNING, GILL, ISRAEL & KRASNOFF, LLP

By: _____

ERIC P. ISRAEL
Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

ES 016            ES 016            ES 016

1785058.3  27046

# DECLARATION OF

# JEFFREY I. GOLDEN

ES 017 ES 017 ES 017

## DECLARATION OF JEFFREY I. GOLDEN

I, Jeffrey I. Golden, declare as follows:

1.  I am the duly appointed and acting Chapter 7 trustee of the estate of Jamie Lynn Gallian (the "Debtor").

2.  I have personal knowledge of the facts in this declaration, or upon information and belief, and as to such matters I could testify competently thereto.

3.  I make this declaration in support of my motion for a court order compelling the turnover of the 2014 Skyline Custom Villa manufactured home, decal no. LBM 1081 (the "Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space"), which is currently in possession of Debtor (the "Motion"). I believe it is the best exercise of my business judgment to have the Debtor removed from the Property.

4.  Shortly after retaining the Broker, I listed the Property for sale at $330,000. I have received one offer for the Property, consisting after negotiations is for $275,000.00 for which I seek approval via a concurrently filed sale motion (the "Sale Motion"). I continue to market the Property for overbid otherwise.

5.  I incorporate by reference all testimony in my declaration in support of the Sale Motion for this declaration as well.

6.  I am informed that any purchaser of the Property, including the proposed buyer in the Sale Motion, will require that I deliver possession to the Property in connection with closing escrow. To maximize the value of the Property and incentivize overbids, I require an enforceable order for turnover of the Property to ensure that I can deliver possession of the Property and consummate a sale.

7.  I believe that the Debtor has sought to obstruct my administration of the Property by, *inter alia*, hiring her own agent to market the Property, moving to avoid my lien against the Property, filing a second bankruptcy case, and seeking to convert this case.

8.  Also on or about December 13, 2024, I was copied on the following two emails in which the Debtor advised:

"Gentlemen, I am making arrangements to remove the 2014 Skyline Manufactured Home

ES 018 50583 27046                    ES 018  17                    ES 018

1    from the Rancho Del Rey Park and will inform you where it will be stored." A true and correct

2    copy of this email is attached hereto, marked as Exhibit "1" and incorporated herein by this

3    reference.

4        "Please accept this as Notice the home will be removed from the park as quickly as possible

5    to avoid accruing any further accrual of rent." A true and correct copy of this email is attached

6    hereto, marked as Exhibit "2" and incorporated herein by this reference.

7        9.      On or about December 17, 2024, I was copied on an email in which the Debtor

8    advised: "In keeping with the spirit of the holidays, I respectfully request any Home Inspections and

9    Termite Inspections be continued after January 2, 2025." A true and correct copy of this email is

10    attached hereto, marked as Exhibit "3" and incorporated herein by this reference.

11        10.      On or about January 1, 2025, I was copied on an email in which the Debtor advised:

12    "I came home sick with the flu from work. Fever with severe headache and body aches and

13    bronchitis. I will be in bed resting due to the severe pain and migraine headaches. Please inform

14    your broker of the circumstances. ." A copy of this email is attached as Exhibit "4".

15        11.      I further request that any turnover order be enforceable by writ of assistance by the

16    United States Marshals Service.

17

18        I declare under penalty of perjury under the laws of the United States of America, that the

19    foregoing is true and correct.

20        Executed on January 3, 2025, at Los Angeles, California,

21

22

23                             JEFFREY I. GOLDEN

24

25

26

27

28

# REQUEST FOR JUDICIAL NOTICE

ES 020     ES 020     ES 020

1

<div align="center">

**REQUEST FOR JUDICIAL NOTICE**

</div>

2         Jeffrey I . Golden, solely in his capacity as Chapter 7 trustee ("Trustee") of the bankruptcy

3     estate (the "Estate") of Jamie Lynn Gallian (the "Debtor"), requests pursuant to Rule 201 of the

4     Federal Rules of Evidence, that this Court take judicial notice of the following:

5         1.  Copies of the following unpublished opinions are attached hereto:

6             A.  A copy of *In re Kasl*, 2009 Bankr. LEXIS 2351 at *10-11 (Bankr. C.D. Cal.

7     January 13, 2009) is attached hereto as Exhibit "5".

8             B.  A copy of *In re Hunt*, 2014 U.S. Dist. LEXIS 189464 at *34 (C.D. Cal. July 25,

9     2014) is attached hereto as Exhibit "6".

10            C.  A copy of *APJL Consulting, LLC v. Treasures, Inc.* (*In re Treasures, Inc.*), 2015

11    Bankr. LEXIS 662 at *59 (B.A.P. 9th Cir. 2015) is attached hereto as Exhibit "7".

12

13    DATED: January 31 2025        DANNING, GILL, ISRAEL & KRASNOFF, LLP

14

15

16    By _____

17            ERIC P. ISRAEL
              Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

18

19

20

21

22

23

24

25

26

27

28

ES 021          ES 021          ES 021

1785058.3  27046

# EXHIBIT 1

ES 022                    ES 022                    ES 022

**Gloria Ramos**

| | |
|---|---|
| **From:** | Jamie Gallian <jamiegallian@gmail.com> |
| **Sent:** | Friday, December 13, 2024 12:31 PM |
| **To:** | Eric Israel; Jeff Golden; Lori Werner |
| **Subject:** | Fwd: Minute Order December 12, 2024 30-2023-01316057 |
| **Attachments:** | 12.12.24 Minute Order.pdf |

Gentlemen,

I am making arrangements to remove the 2014 Skyline Manufactured Home from the Rancho Del Rey Park and will inform you where it will be stored.

You should have no problem with showing the home to potential purchasers.


Sincerely,


Jamie Gallian
714-321-3449
jamiegallian@gmail.com




---------- Forwarded message ---------
From: **Jamie Gallian** <jamiegallian@gmail.com>
Date: Fri, Dec 13, 2024 at 12:21 PM
Subject: Minute Order December 12, 2024 30-2023-01316057
To: Vivienne Alston <valston@aadlawyers.com>, Jeff Golden <jgolden@go2.law>, Eric Israel <EPI@danninggill.com>
Cc: Jamie Gallian <jamiegallian@gmail.com>


Ms Alston,

In light of the Court's 12.12.24 Minute Order, I will tender to your client, $31,384.00.

Please accept this as Notice the home will be removed from the park as quickly as possible to avoid accruing any further accrual of rent.

Sincerely,

**ES 023**                    **ES 023**          EXHIBIT 1          **ES 023**        20

Jamie Gallian
714-321-3449
jamiegallian@gmail.com

ES 024            ES 024            ES 024

21

# EXHIBIT 2

ES 025                    ES 025                    ES 025

**Eric Israel**

| | |
|---|---|
| **From:** | Jamie Gallian <jamiegallian@gmail.com> |
| **Sent:** | Friday, December 13, 2024 12:22 PM |
| **To:** | Vivienne Alston; Jeff Golden; Eric Israel |
| **Cc:** | Jamie Gallian |
| **Subject:** | Minute Order December 12, 2024 30-2023-01316057 |
| **Attachments:** | 12.12.24 Minute Order.pdf |

Ms Alston,

In light of the Court's 12.12.24 Minute Order, I will tender to your client, $31,384.00.

Please accept this as Notice the home will be removed from the park as quickly as possible to avoid accruing any further accrual of rent.

Sincerely,


Jamie Gallian
714-321-3449
jamiegallian@gmail.com

# EXHIBIT 3

**Gloria Ramos**

| | |
|---|---|
| **From:** | Jamie Gallian <jamiegallian@gmail.com> |
| **Sent:** | Tuesday, December 17, 2024 1:13 PM |
| **To:** | Jeff Golden; Eric Israel; Lori Werner; Bingham, Gregory |
| **Subject:** | Request to Continue Inspections after January 1, 2025 |

Mr. Golden, Mr. Israel,

In keeping with the spirit of the holidays, I respectfully request any Home Inspections and Termite Inspections be continued after January 2, 2025.

I am available on January 2 or January 3, for your Broker to schedule Termite Inspection and Home Inspection,

I just finished working almost 90 hours and the small amount of time home, to prepare for Christmas is precious to me.

I appreciate your cooperation and understanding.

Sincerely,


Jamie Gallian
714-321-3449
jamiegallian@gmail.com

ES 028                    ES 028            EXHIBIT 3            ES 028

23

# EXHIBIT 4

**Gloria Ramos**

| | |
|---|---|
| **From:** | Jamie Gallian <jamiegallian@gmail.com> |
| **Sent:** | Wednesday, January 1, 2025 3:44 PM |
| **To:** | Jeff Golden |
| **Cc:** | Lori Werner; Eric Israel |
| **Subject:** | Re: Questions regarding Inspections |

Mr. Golden,

I came home sick with the flu from work. Fever with severe headache and body aches and bronchitis.
I will be in bed resting due to the severe pain and migraine headaches.

Please inform your broker of the circumstances.

Jamie Gallian
Sent from my iPhone

> On Dec 27, 2024, at 5:42 AM, Jeff Golden <jgolden@go2.law> wrote:
>
> Thank you for confirming that you will be providing access on January 2 2025 at 11 am.
>
>
> Sent from my iPhone
>
>> On Dec 26, 2024, at 11:23 PM, Jamie Gallian <jamiegallian@gmail.com> wrote:
>>
>> Mr. Golden,
>> I have no information from you or your attorneys you are in "Escrow" to sell my personal property manufactured home LBM 1081.
>>
>> I will cooperate with the termite inspection your broker has requested scheduled on January 2, 2025, unless the Bankruptcy Court issues an Order otherwise.
>>
>> Sincerely,
>>
>> Jamie Gallian
>> Sent from my iPhone
>>
>>>> On Dec 26, 2024, at 6:36 PM, Eric Israel <EPI@danninggill.com> wrote:
>>>
>>> Ms. Gallian: As you know, the Trustee is in escrow to sell the property. After the buyer finishes inspections and due diligence, the Trustee will file a motion to sell the property. At that time, overbidders who qualify may bid per the procedures set forth in the sale motion, and as authorized by the Court.
>>>
>>> The buyer is doing due diligence and has requested a termite and other inspections, which are standard. The Trustee needs access for two hours for the buyer's inspection. If you do not confirm in writing by close of business tomorrow --- December 27, 2024, that you will cooperate and afford the buyer's inspectors access on January 2, 2025 at 11:00 a.m., and not move the property per my prior emails, the Trustee will be left with no choice but to ask the Court for immediate turnover and to evict you. Again, we hope that will not be necessary.

ES 030          ES 030          EXHIBIT 4    ES 030    24

>>>
>>> -----Original Message-----
>>> From: Jamie Gallian <jamiegallian@gmail.com>
>>> Sent: Thursday, December 26, 2024 5:07 PM
>>> To: Eric Israel <EPI@DanningGill.com>; Jeff Golden <jgolden@go2.law>; Lori Werner <lwerner@go2.law>
>>> Cc: Jamie Gallian <jamiegallian@gmail.com>
>>> Subject: Questions regarding Inspections
>>>
>>> Mr. Israel,
>>>
>>> I have a question regarding a Coldwell Broker requested Termite Inspection.
>>>
>>> Why would a Termite Inspection require an appearance by a potential purchaser?  Doesn't a motion to sell the home need to be approved by the Court.
>>>
>>> It appears to me that my home has only been viewed by two clients of Galaxy Homes formerly known as Five Star.
>>>
>>> It appears that the Newport  Beach real estate Broker Coldwell Banker is above marketing and bringing prospective purchasers to a personal property  manufactured home. I suspect the broker has a client list a mile long but refrained from advertising or even investing monies in photographs of the property.
>>>
>>> The listing agreement signed by the Trustee and Coldwell states "AS IS"
>>> The agents are not selling real property.
>>>
>>> Please kindly address the items above.
>>> I promised the court to cooperate however this seems to be one-sided, and I question what has the Broker proactively done to earn a 6% real estate commission on personal property. HCD fee to transfer title is less than $100.
>>>
>>> Sincerely,
>>>
>>> Jamie Gallian
>>> Sent from my iPhone
>>>

# EXHIBIT 5

ES 032                    ES 032                    ES 032

## *In re Kasl*

United States Bankruptcy Court for the Central District of California

January 13, 2009, Decided; March 20, 2009, Filed, Entered

Case No: SV-05-15311MT, Chapter: 13

**Reporter**

2009 Bankr. LEXIS 2351 *

In re: Vladimir Kasl, Vera Kasl, Debtor(s).

**Counsel: [*1]** For Vladimir Kasl, Debtor: Kevin T Simon, Simon & Resnik, LLP, Sherman Oaks, CA; Matthew D Resnik, Simon Resnik LLP, Beverly Hills, CA.

For Vera Kasl, Joint Debtor: Kevin T Simon, Simon & Resnik, LLP, Sherman Oaks, CA; Matthew D Resnik, Simon Resnik LLP, Beverly Hills, CA.

Trustee: Elizabeth (SV) Rojas, Sherman Oaks, CA.

**Judges:** Maureen Tighe.

**Opinion by:** Maureen Tighe

## Opinion

**MEMORANDUM OF LAW FINDING CREDITOR OBJECTS & POSTERS, GMBH & CO. IN VIOLATION OF THE AUTOMATIC STAY**

### I. Introduction

This Court determined that Respondents Objects & Posters, GMBH & Co. ("O&P") and Vladimir Mueller ("Mueller") (the "Respondents" or the "Creditors") were unsecured creditors in the bankruptcy case of debtors Vladimir Kasl and Vera Kasl (the "Debtors"). Debtors brought this Motion for Intentional Violation of the Automatic Stay Against Objects & Posters GMBH & Co. & Vladimir Mueller Jointly & Severally [hereinafter the "Motion"] upon learning that Respondents had commenced collections proceedings in the Czech Republic. This Motion considers whether Creditor O&P is subject to sanctions for its attempts to persuade a Czech Republic court to execute and enforce a California judgment on Debtors' real property located at Dolni Lukavice **[*2]** 46, county of Pilsen-South, Czech Republic (the "Property").

### II. Chronology of Events

Debtors commenced their bankruptcy case in this Court by filing a voluntary petition under Chapter 7 of the Bankruptcy Code [1] on August 3, 2005. The automatic stay went into effect on this date with the filing of the initial petition, continued when the case was converted from Chapter 7 to 13, and will continue to be in effect as to the bankruptcy estate until the Court discharges Debtors' remaining debts, if any, upon full performance of their duties

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, *11 U.S.C. §§ 101 - 1530*, the *Federal Rules of Bankruptcy Procedure 1001 - 9037*, and the Local Bankruptcy Rules of the United States Bankruptcy Court, Central District of California 1001-1 - 9075-1.

2009 Bankr. LEXIS 2351, *2

and obligations under the plan they filed pursuant to Chapter 13. On Schedule F of their initial petition, Debtors listed O&P, of which Mueller is the owner, as an unsecured non-priority creditor with a claim of $ 60,585.39 or a "pending" lawsuit. O&P is a German company in the business of printing and selling poster art. On October 12, 2006, the Court granted Debtors' motion to convert the case from a Chapter 7 to Chapter 13 proceeding. In accordance with *Fed. R. Bankr. P. 3015(b)*, Debtors submitted a plan under Chapter 13 of the Bankruptcy Code (the "Plan"), fifteen days after the conversion of the case. The Plan provided that Debtors would pay $ 563.00 [*3] a month for a period of 60 months, or 25% of the allowed claims of the general unsecured creditors. [2] Pursuant to the Plan, O&P, a general unsecured creditor, will be paid $ 21,554.00, or 25% of its claim for $ 86,216.00, as filed on November 13, 2006. O&P filed its Objection to the Confirmation of Chapter 13 Plan (the "Objection") and Proof of Claim (the "Claim") on November 13, 2006. The Claim stated that O&P held a secured claim in the amount of $ 86,216.00 as of November 13, 2006, for a judgment entered in O&P's favor in the Superior Court of the State of California, for the County of Los Angeles. O&P asserted in the Objection that the judgment was entered in *Objects & Posters GMBH & Co. v. Kasl*, Case No. LC053748 and that the judgment was secured by real property in the Czech Republic, where it was duly recorded and perfected.

Debtors objected to [*4] O&P's Claim, arguing that the evidence supporting O&P's Claim was (1) inadmissible on grounds of hearsay and lacking in foundation, authentication, personal knowledge and completeness; (2) that the Debtors' valuation of the Property was legal, admissible, and accurate; and (3) that O&P's debt was unsecured. Numerous continuances were given to allow O&P to submit further evidence in support of its claim. O&P was represented by counsel in this Court who fully briefed and argued the issue. On September 11, 2007, the Court heard and orally granted Debtors' Motion Objecting to Claim of Objects & Posters GMBH & Co., decreed O&P's Proof of Claim unsecured, and determined the value of the real property located at Dolni Lukavice 46, County of Pilsen-South, Czech Republic to be $ 50,466.54. The Court entered the order on September 19, 2007. At the same hearing, the Court also orally confirmed Debtors' amended Chapter 13 Plan, and the order was entered on September 24, 2007. Pursuant to the confirmed Plan, Debtors have been making their payments and are current.

On or about October 2008, Debtors learned that Respondents have been trying to persuade the District Court of Pilser-South, Czech Republic [*5] (the "CZR District Court"), to order the sale of Debtors' real property in the Czech Republic in order to pay its claim. In response, Debtors' attorney notified O&P's counsel of this development and gave a deadline by which time O&P was to stop its collection efforts. Debtors received no response from either O&P or opposing counsel, and thus Debtors filed and properly served this Motion on O&P, Mueller, and counsel, Mark Salzman, on November 7, 2008, requesting punitive damages and attorneys' fees in the amount of $ 10,000.00. Pursuant to LBR 9013-1(f), a response or opposition to this Motion should have been filed and properly served not later than December 2, 2008, or 14 days prior to the December 16, 2008, hearing date. Neither O&P nor Mueller submitted responses.

Debtors allege that O&P requests the CZR District Court to order Debtors to sell the Property and deliver the proceeds of such sale to O&P as judgment creditor. In the Motion, Debtors and their attorney declare and submit translated documents from the CZR District Court as exhibits alleging that O&P, with and through its owner, Mueller, intentionally misrepresented sections of the Bankruptcy Code and orders this Court issued [*6] in attempts to collect on its California Superior Court judgment in the Czech Republic. Specifically, Debtors file as part of Exhibit D a letter from O&P to the CZR District Court, dated January 23, 2008. In the letter, O&P refers to correspondence the CZR District Court sent to the Superior Court of California, Los Angeles, and the United States Bankruptcy Court as early as July 6, 2006, yet acknowledges that neither court received the correspondence. The letter also indicates O&P's belief that "Czech courts proceed in proceedings with an international element according to Czech legal rules and not according to those of the foreign state." Mot. at Ex. D. [3]

---

[2] First Am. Chapter 13 Plan, Section I(A).

[3] "I am of the opinion that in accordance with the provisions of § 48 of law no. 97/1963 Coll. regarding international private and procedural law, Czech courts proceed in proceedings with an international element according to Czech legal rules and not according to those of the foreign state." Mot. at Ex. C., Letter dated January 23, 2007, P5.

2009 Bankr. LEXIS 2351, *6

In a subsequent letter from O&P to the CZR District Court dated June 2, 2008, O&P characterized documents submitted by Debtor Vera Kasl as "forged documents," and stated there is "no law in California **[*7]** which would forbid a Czech court from carrying out execution against the property of an American citizen in accordance with a legally valid and enforceable judgment of a California court." The June 2, 2008 letter also reiterates a statement O&P made to the CZR District Court on May 14, 2008 [4]: "As far as the decision of the bankruptcy court is concerned, the basic amount of $ 85,216.00 was awarded to us, rather than $ 62,950.00." *Id.* The only finding regarding O&P's Claim that this Court made, however, was an implicit finding that O&P's Claim was an unsecured claim for $ 86,216.00. Order on Debtors' Objection to Claim of Objects & Posters GmbH & Co. (entered September 19, 2007).

The Court continued the hearing on this Motion until April 14, 2009, and issued an interim order (the "Order") on January 5, 2009, because there was no opposition or response to Debtors' counsel's requests to stop collection efforts in the Czech Republic. The interim order states, "It is hereby ordered, and adjudged and decreed that:

1. No individual, creditor or entity **[*8]** take any action that will affect the property located at Dolni Lukavice 46, County of Pilsen South in the Czech Republic, (the "Dolni Lukavice property"), including but not limited to selling and/or executing any judgments on the property, until further order of this United States Bankruptcy Court.

2. The automatic stay provided by Title *11, United States Code, section 362(a)* is in effect and applicable to Dolni Lukavice property.

3. The hearing is continued to January 13, 2009 at 12:00 p.m.

4. A copy of this order be mailed by Air Mail to the District Court for South Plezen by the debtors to each address known to them as courts or judges potentially involved in legal activity related to the Dolni Lukavice property."

## III. Applicable Law

### A. Extraterritorial Application of the Bankruptcy Code

"Congress has unquestioned authority to enforce its laws beyond the territorial boundaries of the United States … Whether Congress has exercised such authority in a particular case is a matter of statutory construction." *Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon), 153 F.3d 991, 996 (9th Cir. 1998)*, *cert. denied*, 525 U.S. 1141, 119 S. Ct. 1032, 143 L. Ed. 2d 41 (1999)[hereinafter *Simon*](citing *E.E.O.C. v. Arabian-American Oil Co., 499 U.S. 244, 248, 111 S. Ct. 1227, 113 L. Ed. 2d 274 (1991)*; **[*9]** *Stegeman v. United States, 425 F.2d 984, 986 (9th Cir. 1970)*(en banc)). The presumption is that Congress means for its legislation "to apply only within the territorial jurisdiction of the United States" absent contrary intent. *Id.* (quoting *Foley Bros., Inc. v. Filardo, 336 U.S. 281, 285, 69 S. Ct. 575, 93 L. Ed. 680 (1949)*). Where Congressional intent is indeterminable, the presumption is not applied if restricting application of the legislation to the territorial jurisdiction of the United States would "result in adverse effects within the United States," or if the "regulated conduct is 'intended to, and results in, substantial effects within the United States.'" *Id.* (quoting *Environmental Defense Fund, Inc. v. Massey, 986 F.2d 528, 531, 300 U.S. App. D.C. 65 (D.C. Cir. 1993)* and *Laker Airways, Ltd. v. Sabena Belgian World Airlines, 731 F.2d 909, 925, 235 U.S. App. D.C. 207 (D.C. Cir. 1982)).* The express language of the Bankruptcy Code rebuts the presumption that Congress intended to restrict jurisdiction of the bankruptcy court to the territorial jurisdiction of the United States. [5]

---

[4] The May 14, 2008 letter states that the judgment debt is $ 86,226.00, but the June 2, 2008 letter uses $ 85,216 as the amount of the award.

[5] Additionally, Congress granted extraterritorial jurisdiction to the bankruptcy court through the doctrine of *in rem* jurisdiction. *In rem* jurisdiction grants a court jurisdiction over a *res* or thing situated in the state or jurisdictional boundaries. The creation of the estate at the commencement of a case simultaneously creates the fiction that the property that comprises the estate is legally

2009 Bankr. LEXIS 2351, *9

The commencement of a case under §§ 301, 302, or 303 of the Bankruptcy Code creates an estate. 11 U.S.C. § 541(a). All legal or equitable interests of the debtor in property [*10] as of the commencement of the bankruptcy case comprise the estate, *wherever located and by whomever held. Id.*, (emphasis added). With this express language, Congress "intended extraterritorial application of the Bankruptcy Code as it applies to property of the estate." Simon, 153 F.3d at 996; see also 28 U.S.C. § 1334(e).

## B. Personal Jurisdiction

Congress has given the Bankruptcy Court authority to exercise jurisdiction over the extraterritorial interests of the bankruptcy estate, but the Bankruptcy Court must also have personal jurisdiction over the parties to the action. In a bankruptcy case where the debtor voluntarily files a [*11] petition, the debtor submits to personal jurisdiction of the court sitting in the district in which he filed. Similarly, a creditor who files a claim in a bankruptcy case commenced under the Bankruptcy Code pursuant to 11 U.S.C. § 501 submits to the general jurisdiction of the bankruptcy court presiding over the bankruptcy case and subjects itself to that court's equitable power. *See* Samuel L. Bufford, et al., *International Insolvency* 15 (Federal Judicial Center 2001)[hereinafter *Bufford*]; Langenkamp v. Culp, 498 U.S. 42, 44, 111 S. Ct. 330, 112 L. Ed. 2d 343 (1990). This applies to both domestic and foreign creditors who file claims. By filing a proof of claim, a creditor grants the bankruptcy court power to enforce its orders against the creditor with respect to assets of the debtor or estate both within and outside of the territorial jurisdiction of the United States. When a creditor files its claims, it "assumes certain risks" and forfeits certain legal claims. Simon, 153 F.3d at 997. One type of claim a creditor who submits to jurisdiction of the bankruptcy court forfeits is the right to "claim the court lacks power to enjoin … post-bankruptcy collection proceedings against the debtor." *Id.* Furthermore, since bankruptcy [*12] converts legal claims into an equitable claim to a pro rata share of the estate, a creditor who files a claim assumes the risk that it will not be able to collect the full amount of its claim. *Id.* (quoting Katchen v. Landy, 382 U.S. 323, 336, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966)).

## C. The Automatic Stay

### 1. Duration of the Automatic Stay

Commencement of a bankruptcy case invokes the automatic stay under 11 U.S.C. § 362(a), which protects the debtor and the property of the estate. Among other actions, the stay operates to prohibit "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). Where the debtor did not have a single or joint case pending within the previous year, the automatic stay "continues until such property is no longer property of the estate" and continues until the case is closed, dismissed, or a discharge is granted or denied. 11 U.S.C. § 362(c). In a Chapter 13 case, the debtor may file a plan with the petition, or within 15 days of converting a case to Chapter 13. Fed. R. Bankr. P. 3015. After the court confirms the plan pursuant to the requirements of 11 U.S.C. § 1325, the provisions of that plan are binding on the debtor [*13] and each creditor, regardless of whether or not the plan provides for the claim of a creditor. 11 U.S.C. § 1327(a). Furthermore, except as otherwise provided in the plan or order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor. 11 U.S.C. § 1327(b). Once the debtor completes making payments pursuant to the confirmed plan, the court shall grant the debtor a discharge of all remaining debts or under applicable bankruptcy law. 11 U.S.C. § 1328. If the court dismisses a debtor's debts, it will issue a discharge injunction "which permanently prohibits all creditors … from taking or continuing any activity to collect a debt from the debtor or the debtor's assets." *Bufford*, at 16. Until such time, however, the provisions of the automatic stay under 11 U.S.C. § 362(c) remain in effect. Taken together, the protection of the automatic stay under 11 U.S.C. § 362 applies to all legal and equitable interests of the bankruptcy estate. These interests include a debtor's foreign pre-petition assets automatically turned over to the bankruptcy estate when the case commences.

---

located within the jurisdictional boundaries of the district in which the court sits regardless of the actual location. *See* Simon, 153 F.3d at 996 (citations omitted).

2009 Bankr. LEXIS 2351, *13

## 2. Violation of the Automatic Stay

_Section 362(k)(1) of the Bankruptcy Code_ [*14] allows "an individual injured by any willful violation of a stay … [to] recover actual damages, including cost and attorneys' fees, and in appropriate circumstances, … recover[y of] punitive damages." Where the violator acts on the good faith belief the stay has terminated, a court shall limit recovery to actual damages. _11 U.S.C. § 362(k)(2)_. Violation of the automatic stay is actionable if it is willful. _In re Montgomery, 2008 Bankr. LEXIS 2211 (Bankr. D. Mont. Aug. 21, 2008)_. The test for willfulness requires that (1) the violator know that a stay is in effect and (2) that the actions which violate the stay are intentional. _See Morris v. Peralta, 317 B.R. 381, 388 (B.A.P. 9th Cir. 2004)_; _In re White, 2007 Bankr. LEXIS 2354, 14 (Bankr. D. Ariz. July 9, 2007)_(where the court characterized notice of the debtor's bankruptcy filing to constitute knowledge that a stay is in effect). Moreover, the offending party's good faith belief that it had a right to the property is irrelevant in determining "willful" or whether to award compensation. _Montgomery, at 16-17_ (quoting _In re INSLAW, Inc., 83 B.R. 89, 165 (Bankr. D.D.C. 1998)_). Thus, "any deliberate act taken in violation of a stay, which [*15] the violator knows to be in existence justifies an award of actual damages. An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages pursuant to [_11 U.S.C. § 362(k)_]." _Crysen/Montenay Energy Co. v. Esselen Associates, Inc., (In re Crysen/Monetenay Energy Co.), 902 F.2d 1098, 1104 (2nd Cir. 1990)_[hereinafter _Crysen_]. More to the point, the Ninth Circuit has held that "a creditor who attempts collection of pre-petition debt after it knows of the debtor's bankruptcy is subject to sanctions for willful violation of the automatic stay." _In re Del Mission Ltd., 98 F.3d 1147, 1151 (9th Cir. 1996)_.

## IV. Analysis

Debtors' foreign real property assets in the Czech Republic became property of the estate on August 3, 2005, as soon as Debtors filed their petition for bankruptcy. _Simon, at 996_; _see also In re Artimm, S.r.l._, 278 B.R. 832, 840 (Bankr. C.D. Cal 2002); _In re Lykes Bros. S.S. Co., Inc., 191 B.R. 935, 936 (Bankr. M.D. Fla. 1995)_. Likewise, the protections of the automatic stay under _11 U.S.C. § 362_ went into effect on August 3, 2005, and continued upon conversion of the case from Chapter 7 to Chapter 13. [*16] The automatic stay applied to all assets of the estate, including the Property. Although Debtors' Plan has been confirmed and Debtors are current in their payments to the Trustee pursuant to that Plan, the Court has yet to discharge Debtors' debts. Until the discharge is entered pursuant to _11 U.S.C. § 524_, the automatic stay is still in effect. _11 U.S.C. §§ 362(c)_ and _1328_.

This Court has power to enforce the automatic stay with respect to the Property and issue sanctions for violation thereof because there is no evidence of concurrent or prior main or ancillary insolvency proceedings outside the United States [6] involving Debtors, and Respondents failed to file either an objection to the instant Motion challenging the Court's jurisdiction over the Property or a motion for relief from the automatic stay. In enforcing the provisions of the automatic stay, the Court enjoins O&P from continuing to pursue enforcement of its judgment against Debtors outside this Court. O&P filed its Claim for $ 86,216.00 with this Court on November 13, 2006. By filing its claim, O&P voluntarily participated in Debtors' domestic bankruptcy case and submitted to this Court's jurisdiction. _See Langenkamp, 498 U.S. at 44_. [*17] Respondents may choose to begin collection proceedings in the Czech Republic, but in doing so after participating in Debtors' domestic case, Respondents assumed the risk of incurring bankruptcy court sanctions in the United States, just as O&P assumed certain risks by filing its Claim against Debtors in this Court. _See id. at 44-45_; _Simon, 153 F.3d at 997_. When O&P submitted to this Court's

---

[6] The doctrine of international comity does not require this Court to vacate the January 5, 2009 Order. International comity proposes that a "statute 'ought never to be construed to violate the law of nations, if any other possible construction remains.'" _See Simon, 153 F.3d at 998_ (quoting _Murray v. The Charming Betsy, 6 U.S. 64, 2 L. Ed. 208 (1804))_. Essentially, comity is "the recognition … one nationallows [*18] within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." _Id._, (quoting _Hilton v. Guyot, 159 U.S. 113, 16 S. Ct. 139, 40 L. Ed. 95 (1895))_. In this case, as in other matters of "international comity in transnational insolvency proceedings," the philosophy of "deference to the country where the primary insolvency proceeding is located" controls the Bankruptcy Code and this Court's reading of the Code. _Id._

jurisdiction, O&P voluntarily assumed the risk that Debtors' estate would not be large enough to satisfy fully O&P's Claim. Upon reviewing O&P's Claim and Objection to the Plan, this Court found that O&P's Claim was *not* secured by Debtors' Property in the Czech Republic. Thus, O&P is an unsecured creditor and must accept that it is unlikely to collect on its judgment against Debtors in the sum of $ 86,216.00.

O&P never sought relief from the automatic stay in this Court. After voluntarily participating in Debtors' bankruptcy case, O&P, presumably unsatisfied with the results of the proceedings, instead sought relief from the CZR District Court. Such act was a willful violation of the automatic stay. O&P had notice of Debtors' bankruptcy case and therefore knew or should have known that the automatic stay was in effect. By seeking relief as a judgment creditor in the CZR District Court, O&P acted with intent. Clearly, O&P's actions meet the willful violation test. The Court will impose sanctions and the main issue remaining is [*19] the appropriate amount. At the very least, Debtors should recover actual damages, namely, the costs associated with bringing the instant Motion, including attorneys' fees, and the costs incurred in defending the CZR District Court proceedings. The Court may even impose punitive damages since O&P's collection attempts were not based on a good faith belief that the automatic stay was not in effect or did not apply as to O&P. See _Crysen, 902 F.2d at 1104_. In light of O&P's willful violation in the absence of good faith, Debtors' request for punitive damages and attorneys' fees in the amount of $ 10,000.00 is reasonable.

It is important to note that the Court's injunctive powers do not restrain the CZR District Court, but enjoin creditor O&P from participating in proceedings in the CZR District Court to enforce a judgment entered against Debtors. [7] If the Court could not enjoin such proceedings or issue sanctions against O&P, the result would be akin to allowing foreign creditors or creditors with interests outside the territorial boundaries of the bankruptcy court to disregard its orders. Such result would have substantial effects within the United States, namely, domestic bankruptcy proceedings [*20] would prove ineffective in protecting debtors and estates with foreign contacts. The bankruptcy courts would be powerless to "control and marshal the assets of the debtor." _Simon, 153 F.3d at 996_ (quoting _Underwood, 98 F.3d at 961_). This type of effect within the United States would also operate to rebut the presumption that extraterritorial effect of a statute does not apply. _Id. at 997_.

## V. Conclusion

Debtors commenced this case in this Court, and O&P submitted to the general jurisdiction of this Court by participating in Debtors' bankruptcy proceedings. The Court therefore grants Debtors' Motion for Intentional Violation of the Automatic Stay, enjoins O&P from seeking relief in the District Court of Plzen-South, and awards $ 10,000.00 for actual and punitive damages and attorneys' fees to Debtors.

### NOTE TO USERS OF THIS FORM:

**1)** Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.

**2)** The title of the judgment or order and all service information must be filled in by the party lodging the order.

**3) Category I.** below: The United States trustee and case trustee (if any) will always be in this category.

**4)Category II.** below: [*21] List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

---

[7] This Court's *in rem* jurisdiction over the bankruptcy estate serves as "sufficient basis to restrain another court's proceedings," including "foreign proceedings." _Simon, 153 F.3d at 996_ (citations omitted). In fact, the Seventh Circuit expressly held in _Underwood v. Hilliard (In re Rimsat, Ltd.), 98 F.3d 956, 961 (7th Cir. 1996)_, that "the bankruptcy court's *in rem* jurisdiction over estate property allows an international proceeding to be enjoined pursuant to the automated stay," lest the international proceeding dilute the efficacy of the domestic bankruptcy proceedings. _Simon, 153 F.3d at 996_. However, such basis does not arise where O&P participated in the U.S. bankruptcy proceeding and thus submitted to this Court's jurisdiction.

Case 8:25-bk-00820-SC   Doc 568   Filed 01/31/25   Entered 01/31/25 14:30:47   Desc
Main Document   #213   Page 39 of 89
Page 7 of 8

2009 Bankr. LEXIS 2351, *21

**NOTICE OF ENTERED ORDER AND SERVICE LIST**

Notice is given by the court that a judgment or order entitled (*specify*) Memorandum of Law was entered on the date indicated as AEntered@ on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of March 11, 2009, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

. Matthew D Resnik matt@resniklaw.com

. Elizabeth (SV) Rojas cacb_ecf@ch13wla.com

. Kevin T Simon kevin@ktsimonlaw.com

. Gilbert B Weisman notices@becket-lee.com

[]Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL**:  **[*22]** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail to the following person(s) and/or entity(ies) at the address(es) indicated below:

Portfolio Recovery Associates, LLC.

PO BOX 41067

Norfolk, VA 23541


Vladimir & Vera Kasl

6215 Mary Ellen Avenue

Van Nuys, CA 91401

XService information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an AEntered@ stamp, the party lodging the judgment or order will serve a complete copy bearing an AEntered@ stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

[]Service information continued on attached page

**ADDITIONAL SERVICE INFORMATION** (if needed):

Category I (Served by the Court via Notice of Electronic Filing ("NEF").

Category II (Served by Court via U.S. mail).

**Objects and Posters GMBH & Co**.
Mainzlarer Street 6

2009 Bankr. LEXIS 2351, *22

35460 Staufenberg 1 (Hessen)
Germany

**Vladimir Mueller**
6528 Firmament Avenue
Van Nuys, CA 91406

**Vladimir Mueller**

**V Dymaku 177**

**250 90  [*23] Jirmy Czech Republic E**

**Vladimir Mueller**

**Mainslarer Strasse 6**

**35460 Staufenberg**

**Germany**
Category III (To be served by the lodging party).

---

End of Document

# EXHIBIT 6

## *In re Hunt*

United States District Court for the Central District of California

July 25, 2014, Decided; July 25, 2014, Filed

CASE NO. CV 12-08439 MMM; CASE NO. CV 14-00440 MMM

**Reporter**
2014 U.S. Dist. LEXIS 189464 *

IN RE: PELI POPOVICH HUNT, DEBTOR.PELI POPOVICH HUNT, Appellant, vs. ELISSA D. MILLER, Chapter 7 Trustee, et al., Appellees.PELI POPOVICH HUNT, Trustee, Appellant, vs. ELISSA D. MILLER, Chapter 7 Trustee, et al., Appellees.

**Prior History:**  [*1] BANKRUPTCY NO. BK 11-58222 ER.

**Counsel:** For Peli Popovich Hunt, Appellant (2:12cv8439): Franklin P Jeffries, Jeffries P Franklin Law Offices, Los Angeles, CA USA.

For Elissa D. Miller, Chapter 7 Trustee, Appellee (2:12cv8439): Daniel A Lev, Sulmeyer Kupetz APC, Los Angeles, CA USA.

For David M. Goodrich, Appellee (2:12cv8439): David Gould, Gould and Gould LLP, Calabasas, CA USA.

For Daniel A. Capen, Creditor doctor, Timothy J. Hunter, Creditor doctor, Adrew R. Jaminski, Creditor doctor, Howard J. Marans, Creditor doctor, Mary Aziz, Creditor doctor, Khiem D. Doa, Creditor doctor, Robert A. Rafael, Creditor doctor, Appellees (2:12cv8439): James R Selth, Weintraub & Selth APC, Los Angeles, CA USA; Paul R Pearlson, Cameron Pearlson & Gale, Long Beach, CA USA.

For 2007 Restated Robert And Peli Hunt Living Trust, Appellant (2:14cv440): Franklin P Jeffries, LEAD ATTORNEY, Jeffries P Franklin Law Offices, Los Angeles, CA USA; Kelly Leon Pexton, LEAD ATTORNEY, Pexton Law APC, Redlands, CA USA.

For Elissa D. Miller, Chapter 7 Trustee, Appellee (2:14cv440): Daniel A Lev, LEAD ATTORNEY, Sulmeyer Kupetz APC, Los Angeles, CA USA.

**Judges:** MARGARET M. MORROW, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MARGARET M. MORROW

# Opinion

ORDER AFFIRMING DECISIONS OF THE [*2] BANKRUPTCY COURT

Pending before the court are appeals of two orders of the bankruptcy court. The first approved the sale of a commercial office building located at 3661-3663 Torrance Boulevard, Torrance, California 90503 ("the Torrance property") and overruled objections appellant filed in her personal capacity to the claim of Daniel Capen, Timothy Hunt, Andrew Jarminski, Howard Marans, Amir Azizi, Maryam Azizi, Khiem Dao, and Robert Rafael (collectively the "Creditor Doctors"). The second is a nearly identical appeal of the sale order filed by Hunt in her capacity as Trustee for the 2007 Restated Robert and Peli Hunt Living Trust (the "Trust").[1] Appellee Elissa Miller, Hunt's

---

[1] Notice of Appeal, Case No. CV 12-08439, Docket No. 2 (Oct. 2, 2012); Notice of Appeal, Case No. CV 14-00440, Docket No. 2 (Jan. 21, 2014).

Chapter 7 trustee, opposes both appeals of the sale order.[2] The Creditor Doctors oppose the appeal of the order overruling Hunt's objection to their claim.[3]

Pursuant to [*3] *Rule 78 of the Federal Rules of Civil Procedure* and *Local Rule 7-15*, the court finds this matter appropriate for decision without oral argument. The hearing calendared for July 28, 2014 is therefore vacated and the matter is taken off calendar.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Creditor Doctors' Bankruptcy Claim

The Creditor Doctors are former employees of Robert W. Hunt, M.D., a Medical Corporation, dba Intercommunity Medical Group ("RWH"). In 2008, the Creditor Doctors filed suit in Los Angeles Superior Court against RWH, Hunt in her individual capacity, and Hunt in her capacity as trustee of the Trust, alleging breach of contract and violations of the California Labor Code; the lawsuit sought to hold Hunt liable as an alter ego of RWH.[4] RWH and Hunt cross-complained against the Creditor Doctors for breach of contract, intentional interference with contractual advantage, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, conversion, and intentional infliction of emotional distress.[5] The case was tried to a jury, which returned a verdict in favor of the Creditor Doctors against Hunt and RWH on the Creditor Doctors' claims for unpaid wages, and on Hunt's and RWH's cross-claims. [*4] During a second phase of the trial, the court found for the Creditor Doctors and against Hunt and RWH on the Creditor Doctors' waiting time penalties claims, and on Hunt's alter ego liability individually and in her capacity as trustee.[6] A $3,509,617.23 judgment was entered on October 14, 2011.[7]

On November 23, 2011, Hunt filed a voluntary Chapter 11 bankruptcy petition.[8] On May 4, 2012, the Creditor Doctors filed a proof of claim for $3,537,513.38 (the "claim"), which reflected the $3,509,617.23 judgment in their favor, plus $27,996.15 in post-judgment interest.[9] On July 9, 2012, Hunt filed an objection to the claim,[10] together with a supporting declaration.[11] On August 17, 2012, the Creditor Doctors opposed Hunt's objection,[12] and [*5] asserted evidentiary objections to her declaration.[13] On September 5, 2012, the bankruptcy court issued a tentative

---

[2] Appellee's Reply Brief, Case No. CV 12-08439, Docket No. 51 (May 13, 2014); Appellee's Reply Brief, Case No. CV 14-00440, Docket No. 34 (May 14, 2014).

[3] Appellee's Reply Brief, Case No. CV 12-08439, Docket No. 49 (May 12, 2014).

[4] Appellants' Supplemental Excerpt of Record ("ASER"), Case No. CV 12-08439, Docket No. 50 (May 12, 2014) at 14.

[5] ASER at 14-15, 17-34.

[6] ASER at 37-57. The trial was bifurcated, with most matters tried to a jury in an initial phase; whether RWH was Hunt's alter ego, and whether the Creditor Doctors were entitled to waiting time penalties were tried to the court in a second phase. (*Id.* at 49.)

[7] Appellant's Excerpts of Record ("12-08439 AER"), Case No. CV 12-08439, Docket No. 30-2 (Mar. 27, 2014) at 48-113; see also *id.* at 116.

[8] *Id.* at 6.

[9] *Id.* at 25, 116.

[10] *Id.* at 35-40.

[11] *Id.* at 117-147.

[12] ASER at 3-59.

2014 U.S. Dist. LEXIS 189464, *5

order, sustaining many of the Creditor Doctors' evidentiary objections to Hunt's evidence and overruling her objection.[14] It issued a final order overruling the objection on September 24, 2012.[15]

**B. The Torrance Property and the Trust**

The Hunts created the Trust, which was a revocable living trust, on May 8, 2006.[16] They amended the Trust on September 17, 2007.[17] The 2007 amendment identified the Hunts as settlors and trustees of the Trust.[18] The restated trust agreement provided that upon the death of Robert Hunt, Peli Hunt, as trustee, was to distribute the residue of Robert Hunt's estate, which included the Torrance property "and the identifiable proceeds of the sale of such real property," to a "Survivor's Trust" and a "Credit Bypass Trust."[19] The Credit Bypass Trust was to consist of "a pecuniary amount equal to the maximum sum which can be allocated to a trust which does not qualify for the federal estate tax marital deduction."[20] The Survivor's Trust was to receive the balance of the residue, including any community and separate property and accrued income not distributed [*6] to the Credit Bypass Trust.[21] Following her husband's death, Hunt had the power to amend and/or revoke the Survivor's Trust; she could not amend the Credit Bypass Trust, which became irrevocable.[22]

As the successor trustee of the Trust,[23] however, Hunt retained the power to sell all trust property, real and personal, without first obtaining a court order;[24] and to pay to or apply for her benefit "such sums out of the income and principal of the Survivor's Trust as [she] . . . consider[ed] necessary or appropriate for [her] proper health, support and maintenance in [ ] her accustomed manner of living."[25] If the assets of the Survivor's Trust and other resources had been exhausted, moreover, she also had authority to "pay to or apply for [her] benefit . . . as much of the income and principal of the Credit Bypass Trust as [she], in [her] discretion, consider[ed] appropriate for [ ] her accustomed manner of living."[26] There was an exception to this provision, however, which authorized Hunt, as successor [*7] trustee, to make distributions from the Credit Bypass Trust even if the assets of the Survivor's Trust

---

[13] AER at 151-164.

[14] *Id.* at 25-34.

[15] ASER at 60-61.

[16] Notice of Opposition and Request for a Hearing by the Trust ("Trust Opposition"), Case No. BK 11-58222, Docket No. 135 (June 1, 2012), at 1.

[17] *Id.*

[18] *Id.*, Exh. 2 (The Trust, ¶ 1).

[19] *Id.*, ¶ 4.4.

[20] *Id.*, ¶ 4.4(a).

[21] *Id.*, ¶ 4.4(b).

[22] *Id.*, ¶ 23.3.

[23] *Id.*, ¶ 9.

[24] *Id.*, ¶ 7.4.

[25] *Id.*, ¶ 4.6.

[26] *Id.*, ¶ 6.1.

2014 U.S. Dist. LEXIS 189464, *7

and other resources had not been exhausted, so long as she "consider[ed] it reasonable to do so under the circumstances."[27]

In November 2007, Hunt filed an *ex parte* petition in Los Angeles Superior Court, seeking a declaration under *California Probate Code § 850(a)(3)(B)* that the Trust owned stock in RWH; record legal title to the stock was held by Robert Hunt in his individual capacity.[28] The probate court granted the petition on December 4, 2007, holding that "all issued and outstanding shares of Robert W. Hunt, M.D., a Medical Corporation (the "Shares") . . . are assets of [the Trust], and Peli Popovich Hunt, as the current trustee of the Trust, and any successor trustees, are vested with full beneficial and legal title to the shares."[29]

## C. Hunt Institutes Chapter 11 Bankruptcy Proceedings and the Court Appoints a Trustee

On November 23, 2011, Hunt filed a bankruptcy petition because the Creditor Doctors were attempting to enforce their state court judgment against the Torrance property.[30] Hunt's bankruptcy schedules identified the Torrance property as her property, held in fee simple, with an estimated value of $1,300,000.[31]

On February 9, 2012, the Creditor Doctors filed a motion to convert Hunt's case to Chapter 7, dismiss the Chapter 11 case, or alternatively, to appoint a Chapter 11 trustee.[32] The bankruptcy court granted the motion on March 1, 2012, and approved the appointment of a trustee.[33] The court found that Hunt "ha[d] failed to timely file documents and information required under the [Bankruptcy] [*9] [C]ode and reasonably requested by the [U.S. Trustee]."[34] The court also found that Hunt

"ha[d] [ ] attempted to conceal assets of the estate and preferential transfers from creditors and the [U.S. Trustee]. Specifically, [Hunt] is the record holder of certain property located in Texas. [Hunt] failed to identify these properties in her schedules and initially disclaimed any interest in any properties not listed in the schedules during the *§ 341(a)* meeting. When confronted with the deeds of trust for the properties, [Hunt] conceded that she is the record owner."[35]

The court also found that

"during the *§ 341(a)* meeting, [Hunt] attested under oath that she did not make any transfers within one year of the meeting; however, [Hunt's] own operating reports and testimony demonstrate that [Hunt] transferred real and personal property within a year of the petition date and post-petition. Specifically, [Hunt] divested the estate of approximately $8,000 of estate funds in December 2011 alone in the form of Christmas gifts (which

---

[27] *Id.*

[28] Ex Parte Petition for Order Establishing Title to Trust Property, Case No. BK 11-58222, Docket No. 179 (July 25, 2012). *Section 850(a)(3)(B)* permits a trustee of a trust to petition the probate court for a finding that the trust owns property held in another party's name. *Cal. Prob. Code § 850(a)(3)(B)* ("The following persons may file a petition requesting that the [probate] court make an order under this [*8] part: . . . The trustee or any interested person in . . . the following case[ ]: Where the trustee has a claim to real or personal property, title to or possession of which is held by another").

[29] AER at 262-263 (Order Granting Ex Parte Petition for Order Establishing Title to Trust Property).

[30] Case No. BK 11-58222, Docket No. 116 (May 11, 2012) at 2 (Amended Disclosure Statement).

[31] Summary of Schedules, Case No. BK 11-58222, Docket No. 25 (Jan. 5, 2012).

[32] Case No. BK 11-58222, Docket No. 54 (Feb. 9, 2012) (Motion of Creditor-Doctors to Convert, Dismiss, or Appoint a Trustee).

[33] Case No. BK 11-58222, Docket No. 83 (Mar. 1, 2012) (Order Granting Motion to Appoint Chapter 11 Trustee).

[34] *Id.*

[35] *Id.*

2014 U.S. Dist. LEXIS 189464, *8

appear to be cash disbursements) ranging from $500 to $1000 per individual and rent payments for [Hunt's] sister. Such misuse of estate funds is a clear violation of [Hunt's] fiduciary duty to creditors [*10] of the estate as debtor-in-possession. [Hunt's] assurances that further transfers will not occur are unpersuasive in light of [Hunt's] prior efforts to conceal these transfers and demonstrated willingness to perjure herself to do so."[36]

On March 8, 2012, Elissa Miller was appointed as trustee.[37] On April 5, 2012, Miller moved to convert Hunt's case to a Chapter 7 proceeding pursuant to _11 U.S.C. §§ 706(a)_ or _1112(a)_.[38] On May 17, 2012, the Creditor Doctors joined Miller's motion, arguing that conversion was necessary under _§ 1112(b)_ because Hunt had continued to misuse estate assets despite Miller's appointment as Chapter 11 trustee by amending her schedules to remove the estate's largest asset - the Torrance property — and by submitting a plan that omitted their approved claims.[39] On July 11, 2012, the bankruptcy court converted the case to Chapter 7.[40]

#### D. The Sale of the Torrance Property

On May 17, 2012, Miller filed an application seeking authority to employ William Stimming, a real estate broker at Coldwell Banker, to sell the Torrance property.[41] Hunt opposed the motion, arguing that the Torrance property belonged to the Trust, not to her, and was therefore not property of the estate.[42] Hunt filed a separate opposition in her capacity as trustee of the Trust, which advanced the same argument.[43]

In a one-paragraph order, the court approved Miller's application to employ Stimming and held that the property belonged to the estate. It stated:

"Based on the Notice of Application and Application, the declarations in support thereof, the oppositions thereto, the documents and pleadings on file herein, all judicially noticeable facts, the arguments and representations of counsel, and after finding that notice of the hearing on the Application was proper, and after further finding that [the Torrance property] is property of the estate pursuant to _11 U.S.C. § 541(a)_, and after further finding that the employment of Coldwell Banker is in the best interests of the estate, and for good cause . . . , it is hereby ordered, adjudged and decreed as follows: [ ] the Application is granted."[44]

---

[36] _Id._

[37] Case No. BK 11-58222, Docket No. 86 (Mar. 5, 2012) (Order Directing the Appointment of a Chapter 11 Trustee; Case No. BK 11-58222, Docket No. 88 [*11] (Mar. 8, 2012) 103 (Notice of Appointment of Chapter 11 Trustee).

[38] Case No. BK 11-58222, Docket No. 165 (July 11, 2012);(Order Granting Motion to Convert Case); Case No. BK 11-58222, Docket No. 96 (Apr. 5, 2012) (Notice of Chapter 11 Trustee's Motion to Convert Case).

[39] Order Granting Motion to Convert Case; Case No. BK 11-58222, Docket No. 124 (May 17, 2012) (Joinder of Creditor-Doctors in Motion to Convert Case).

[40] Order Granting Motion to Convert Case.

[41] Chapter 11 Trustee's Application for Authority to Employ Real Estate Broker, Case No. BK 11-58222, Docket No. 122 (May 17, 2012).

[42] Debtor's Opposition and Request for a Hearing on Chapter 11 Trustee's Application, Case No. BK 11-58222, Docket No. 134 (June 1, 2012).

[43] Notice of Opposition and Request for Hearing, [*12] Case No. BK 11-58222, Docket No. 135 (June 1, 2012).

[44] Order Granting Chapter 11 Trustee's Application for Authority to Employ Real Estate Broker, Case No. BK 11-58222, Docket No. 169 (July 17, 2012).

On August 2, 2012, Miller filed a motion for an order, *inter alia*, authorizing a sale of the Torrance Property for $3,000,000 to Soon K. Rim, or to the highest bidder at auction.[45] Hunt opposed the motion on August 17, 2012, arguing, [*13] *inter alia*, that the Torrance Property was not property of the bankruptcy estate.[46] Hunt also asserted that the property's value exceeded $3,000,000, and disputed the property's valuation on the grounds that Coldwell Banker had not provided an appraisal of the property, and that Miller had failed to consider the value accruing from the property's "air space" and the income generated by its parking structure.[47] Hunt attached to her opposition listings for purportedly comparable properties with values ranging from $3.02 million to $383.7 million.[48] On September 5, 2012, the bankruptcy court held a hearing at which it issued a tentative ruling authorizing the sale of the Torrance Property.[49] During the hearing, Kelly Pexton, counsel for the Trust, attempted to introduce in evidence copies of title records that purportedly showed the Torrance property was owned by the Trust.[50] Bankruptcy Judge Ernest Robles declined to consider the document, because it had not been offered as evidence prior to the hearing and had not been authenticated.[51]

On September 11, 2012, Hunt filed a motion for a stay of the September 5 sale order pending appeal.[52] The bankruptcy court denied Hunt's request, stating that Hunt had

> "not demonstrated a likelihood of success on the merits. In granting the Trustee's application for authority to employ a real estate broker and to sell the Property, the Court considered and denied Debtor's argument that the Property was not property of the estate pursuant to *11 U.S.C. § 541(a)*. Debtor provided no credible evidence in support of the argument, and Debtor's case was converted from a Chapter 11 to a Chapter 7 based in part on the Debtor's bad faith attempts to conceal assets of the estate."[53]

On September 14, 2012, the bankruptcy court issued a final order authorizing the sale of the bankruptcy estate's interest in the Torrance Property to the highest bidder at auction.[54] Specifically, it approved a sale of the property to Blue Sky Capital Partner, LP ("Blue Sky") for $4,050,000 and deemed Blue Sky a good faith purchaser under *11 U.S.C. § 363(m)*.[55]

## E. Bankruptcy Judge Robles Declines to Recuse Himself

In an apparent reference to Judge Robles' refusal to consider the purported title documents at the September 5 hearing despite the fact that no party objected, Hunt argued in her motion to stay that "[t]he ('thinkers pose') if, that is a form of objection is a new form of objection, which was not recorded on the forthcoming transcript to be

---

[45] AER 265-329.

[46] *Id.* 335-364.

[47] *Id.*

[48] *Id.* at 355-363.

[49] Order Authorizing Sale of Real Property, Case No. BK 11-58222, Docket No. 239 (Sept. 5, 2012).

[50] Transcript Regardign Hearing Held 09/05/12, Case No. [*14] BK 11-58222, Docket No. 285 (Oct. 3, 2012) at 6:11-23.

[51] *Id.* at 6:24-7:18. Pexton said he had not filed the exhibit earlier because he had been retained only the previous day. (*Id.* at 7:5-7.)

[52] Notice of Non-Emergency [*15] Motion and Non-Emergency Motion for Stay of September 5, 2012 Orders Pending Appeal, Case No. BK 11-58222, Docket No. 249 (Sept. 11, 2012).

[53] Order Denying Emergency Motion for Stay Pending Appeal, Case No. BK 11-58222, Docket No. 252 (Sept. 12, 2012), at 2.

[54] AER at 18-24.

[55] *Id.*

ordered, and 'recusal motion,' if, necessary as Judge Ernest M Robles may U.S.C. _§ 455 (a) sua sponte_ recuse, himself."[56] Judge Robles construed this statement as a request that he recuse himself, and scheduled a hearing on the matter for November 14, 2012.[57] Hunt filed a brief on November 1, 2012 arguing that the bankruptcy court had made erroneous evidentiary rulings, had rejected evidence without soliciting objections, had not cited precedent supporting its decisions, had refused to grant continuances, had not ensured she was served court filings, and had [*16] accepted misinformation from litigants, requiring that she file five separate appeals and evidencing the court's bias and prejudice against her.[58] The bankruptcy court observed that Hunt's arguments, while difficult to follow, might concern its refusal to admit the purported deed of trust in evidence at the September 5 hearing.[59] The court denied Hunt's recusal motion on the grounds that it failed clearly to identify the basis for recusal, and failed to identify any extrajudicial source of bias.[60]

### F. Hunt Appeals the Bankruptcy Court's Orders

On September 12, 2012, Hunt, in her personal capacity, appealed the bankruptcy court's orders overruling her objection [*17] to the Creditor Doctors' claim, and authorizing the sale of the Torrance Property to the district court.[61] Hunt filed a second appeal on October 9, 2012, in her capacity as trustee of the Trust.[62] Unlike her first appeal, Hunt appealed the sale order only, and elected to have the appeal heard by the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP").[63] On November 16, 2012, the court dismissed Hunt's first appeal for lack of prosecution.[64] On November 29, 2012, Hunt filed a motion to vacate the dismissal of her appeal,[65] which the court granted on December 23, 2013.[66] On January 21, 2014, with Hunt's first appeal reinstated, the BAP transferred Hunt's second appeal to this court under Ninth Circuit BAP Rule 8001(e)-1(a).[67]

## II. DISCUSSION

[56] Notice of Non-Emergency Motion and Non-Emergency Motion for Stay of September 5, 2012 Orders Pending Appeal, Case No. BK 11-58222, Docket No. 249 (Sept. 11, 2012) at 6.

[57] Amended Order Setting Peli Popovich Hunt's Request for Sua Sponte Recusal for Hearing, Case No. BK 11-58222, Docket No. 298 (Sept. 11, 2012).

[58] Supplemental Brief on Sua Sponte Recusal, Case No. BK 11-58222, Docket No. 324 (Nov. 1, 2012).

[59] Hearing Re Order Setting Peli Popovich Hunt's Request for Sua Sponte Recusal, Case No. BK 11-58222, Docket No. 332 (Nov. 14, 2012) at 5.

[60] _Id._

[61] Notice of Appeal, Case No. CV 12-08439; Notice of Election to Transfer, Docket no. 3 (Oct. 2, 2012); Notice of Referral of Appeal, Docket No. 4 (Oct. 2, 2012).

[62] Notice of Appeal, Case No. CV 14-00440, Docket No. 2 (Jan. 21, 2014); see also Docket No. 2-1 (Jan. 21, 2014).

[63] Notice of Referral of Appeal, Case No. CV 14-00440, Docket No. 3 (January 21, 2014).

[64] Order of Dismissal for Lack of Prosecution, Case No. CV 12-08439, Docket No. 9 (Oct. 16, 2012).

[65] Motion to Vacate Dismissal of Appeal, Docket No. 10 (Nov. 29, [*18] 2012).

[66] Order Granting Motion to Vacate Dismissal of Appeal, Docket No. 23 (Dec. 23, 2013).

[67] Order Transferring Appeal to the United States District Court, Docket No. 4 (Jan. 21, 2014). Rule 8001(e)-1(a) provides: "The Panel may transfer an appeal to the district court to further the interests of justice, such as when a timely statement of election has filed in a related appeal, or for any other reason the Panel deems appropriate." The BAP determined that transfer would be in the interest of justice due to the pendency of Hunt's appeal of the same order that was pending before the court. (_Id._ at 3.)

## A. Jurisdiction

The district court has jurisdiction to hear appeals from "final judgments, orders, and decrees; [and] with leave of the court, from other interlocutory orders and decrees" of the bankruptcy court. 28 U.S.C. § 158(a)(1), (3). The Ninth Circuit has "developed a 'pragmatic' approach to deciding whether orders in bankruptcy cases are final, 'recognizing that certain proceedings in a bankruptcy case are so distinct and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right.'" In re City of Desert Hot Springs, 339 F.3d 782, 788 (9th Cir. 2003) (citing In re Mason, 709 F.2d 1313, 1317 (9th Cir. 1983)). This "flexible finality" approach [*19] to appellate jurisdiction under § 158(a) "focuses upon whether the order affects substantive rights and finally determines a discrete issue." In re Belli, 268 B.R. 851, 854 (9th Cir. BAP 2001). The parties have not challenged the court's jurisdiction to hear this appeal, but the court "ha[s] an independent duty to examine [such] issues." In re McCarthy, Nos. CC-07-1083-MoPaD, CC-07-1263-MoPaD, SV 05-18622-GM, 2008 Bankr. LEXIS 4688, 2008 WL 8448338, *10 (9th Cir. BAP Feb. 19, 2008).

Applying the flexible finality approach, courts often find orders authorizing the sale of property of the bankruptcy estate and overruling an objection to a claim final and appealable. See In re Prestige Ltd. Partnership-Concord, 234 F.3d 1108, 1113 (9th Cir. 2000) ("The district court's order disposed of all the issues in the case by overruling Prestige's objections to East Bay's claim and was thus sufficiently conclusive to be appealable"); In re Green, Nos. CC-11-1374-MkHHa, ND 09-11614-RR, 2012 Bankr. LEXIS 4884, 2012 WL 4857552, *5-6 (9th Cir. BAP Oct. 15, 2012) (concluding that an order overruling an objection to a claim was final and appealable); In re PW, LLC, 391 B.R. 25 (9th Cir. BAP 2008) (a sale order was final and appealable). Thus, the sale order and order overruling Hunt's objection to the Creditor Doctors' claim are appealable.

Local Rule 8001-2 states that "[a] notice of appeal must designate the judgment, order, or part thereof from which the appeal is taken and attach a copy of the judgment or order, if available." C.D. Cal. Bankr. L.R. 8001-2. Hunt's [*20] appeal in her capacity as trustee of the Trust attaches an ex parte application for an extension of time to appeal the September 14, 2012 sale order.[68] She also asserts as one ground for her appeal that the BAP improperly denied her request for leave to file an untimely appeal.[69]

A denial of a motion for an extension of time to appeal is a final, appealable order that is itself appealable. See In re Cahn, 188 B.R. 627, 628, 633 (9th Cir. BAP 1995) (concluding that the BAP had jurisdiction to hear a party's appeal of the bankruptcy court's denial of its motion to extend the time for filing a notice of appeal). The bankruptcy court did not rule on Hunt's application for an extension of time, however;[70] in fact, it appears the application was never [*21] filed prior to October 9, 2012, when Hunt filed the document as her "appeal" to the BAP of the sale order.[71] The court therefore construes Hunt's appeal in her capacity as trustee as an appeal of a decision on the ex parte application that was never rendered and dismisses it for lack of jurisdiction. See 28 U.S.C. § 158(a)(1), (3)

---

[68] The text on the caption page that references an application for an extension of time to appeal is crossed out, so that the caption states it is an appeal of the sale order, rather than an application for an extension of to file such an appeal. The only pleading attached, however, is the application for an extension of time. No order from the bankruptcy court approving the sale is attached.

[69] Appellant's Opening Brief ("Hunt Opening Trustee Brief"), Case No. CV 14-00440, Docket No. 30 (Apr. 24, 2014) at 12.

[70] Order Transferring Appeal to the United States District Court, Case No. CV 14-00440, Docket No. 24-2 (Jan. 21, 2014) at 2.

[71] The document appears twice on the bankruptcy court's docket, once on October 9, 2012 as an appeal to the BAP, and again on October 10, 2012 as a notice of appeal. (Notice of Appeal to BAP Court, Case No. BK 11-58222, Docket No. 287 (Oct. 9, 2012); Notice of Appeal September 14, 2012, Case No. BK 11-58222, Docket No. 292 (Oct. 10, 2012).) Also on October 9, 2012, Hunt filed an application for an order setting a hearing on shortened notice on her ex parte application. (Application for Order Setting Hearing on Shortened Notice, Case No. BK 11-58222, Docket [*22] No. 290 (Oct. 9, 2012).) The bankruptcy court denied Hunt's application on the next day, stating that the motion could be brought on regular notice. (Order Re: Denying Application for Order Setting Hearing on Shortened Notice, Case No. BK 11-58222, Docket No. 292 (Oct. 10, 2012).)

(stating that the district court has jurisdiction to hear appeals from "final judgments, orders, and decrees; [and] with leave of the court, from other interlocutory orders and decrees" of the bankruptcy court).

**B. Whether Hunt's Appeal in her Capacity as Trustee is Timely**

As noted, Hunt filed an appeal in her individual capacity on September 18, 2012. She purported to file a notice of appeal in her capacity as trustee of the Trust twenty-one days later, on October 9, 2012. A notice of appeal must be filed within fourteen days of the date of entry of the order from which the appeal is taken. _Fed.R.Bank.Proc. 8002(a)_. Thus, the September 18 appeal was timely filed. Once a notice of appeal is timely filed by a party, "any other party may file a notice of appeal within 14 days of the date on which the first notice of appeal was filed[.]" _Fed.R.Bank.Proc. 8002(a)_. Hunt, therefore, was required to file her appeal in her capacity as trustee of the Trust no later than October 2, 2012. Because the appeal was not filed until October 9, it was untimely.

The failure to file a timely appeal under _Rule 8002(a)_ deprives the court of jurisdiction to hear the appeal. _In re Wiersma, 483 F.3d 933, 938 (9th Cir. 2007)_ ("Generally, a party to [*23] a bankruptcy action must file a notice of appeal within ten days after entry of the order being appealed. The timely appeal requirement is jurisdictional"). See _In re D'Alfonso, 539 Fed. Appx. 729, 729 (9th Cir. Aug. 21, 2013)_ (Unpub. Disp.) ("The BAP properly dismissed the appeal because Beristain filed her notice of appeal more than fourteen days after entry of the bankruptcy court's order denying her motion for a new trial or to alter or amend a judgment," citing _Wiersma_). Hunt argues that she was unable to file a timely appeal because she was not served the September 14 order approving the sale of the Torrance property.[72] She states that she was able to file the first appeal in her personal capacity only because the bankruptcy court denied her motion for stay, but that the Trust was not a party to the stay motion.[73] The court finds this argument unavailing, as Hunt, by her own admission, had notice of the bankruptcy court's September 14 order, which she timely appealed in her individual capacity. More fundamentally, Hunt's argument does not overcome the jurisdictional bar to her appeal. See _Key Bar Invs. v. Cahn (In re Cahn), 188 B.R. 627, 632 (9th Cir. BAP 1995)_ ("It is well-settled that failure to receive notice of entry of judgment or order is not an excuse for an untimely appeal because it is the party's affirmative [*24] duty to monitor the dockets"). Accordingly, the court dismisses Hunt's appeal in her capacity as trustee of the Trust on this basis as well.

**C. Standard of Review**

When reviewing a bankruptcy court decision, a district court functions as an appellate court and applies the standard of review generally applied in the federal courts of appeal. _In re Webb, 954 F.2d 1102, 1103-04 (5th Cir. 1992)_. The district court must accept the bankruptcy court's findings of fact unless they are clearly erroneous. A finding is clearly erroneous "'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" _In re Banks, 263 F.3d 862, 869 (9th Cir. 2001)_ (quoting _Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)_. Stated differently, "[a] court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record." _Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir.2010)_ (citing _United States v. Hinkson, 585 F.3d 1247, 1261-62 & n. 21 (9th Cir.2009)_ (en banc)).

The district court reviews the bankruptcy court's conclusions of law _de novo_. _Laws v. Sony Music Entertainment, Inc., 448 F.3d 1134, 1137 (9th Cir. 2006)_; _In re Cohen, 300 F.3d 1097, 1101 (9th Cir. 2002)_. "De novo review is independent, with no deference given to the trial court's conclusion." _Allen v. U.S. Bank, N.A. (In re Allen), 472 B.R. 559, 564 (9th Cir. BAP 2012)_.

---

[72] Notice of Appeal, Case No. CV 14-00440, Docket No. 2 (Jan. 21, 2014) at 9-10.

[73] _Id._ at 11.

2014 U.S. Dist. LEXIS 189464, *24

"Under the abuse of discretion standard of review, we first determine de novo whether the bankruptcy court identified [*25] the correct legal rule to apply to the relief requested. If the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" *In re Khan, Nos. CC-11-1542-HPaD, 11-36527, 2012 Bankr. LEXIS 2574, 2012 WL 2043074, *4 (9th Cir. BAP June 6, 2012)* (citing *United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)* (en banc)).

"Whether property is included in a bankruptcy estate is a question of law, subject to *de novo* review." *In re Cogliano, 355 B.R. 792, 800 (9th Cir. BAP 2006)* (citing *In re Kim, 257 B.R. 680, 684 (9th Cir. BAP 2000)*, aff'd, *35 Fed. Appx. 592 (9th Cir. 2002)*. An order authorizing a sale of property of the bankruptcy estate other than in the ordinary course of business under *11 U.S.C. § 363* is reviewed for abuse of discretion. *In re Clark, 266 B.R. 163, 168 (9th Cir. BAP 2001)*.

Where the bankruptcy court's decision whether to overrule an objection to a claim is based on an issue of law, the appellate court reviews the order *de novo*. Where the decision is based on factual issues, the review is for clear error. A bankruptcy court's decision can also rest on legal and factual issues, which the appellate court reviews separately under the respective standards. *In re Rader, 488 B.R. 406, 409 (9th Cir. BAP 2013)*. See *In re Godfrey, Nos. CC-07-1413-BMdK, LA 05-18335-TD, 2008 Bankr. LEXIS 4735, 2008 WL 8444813, *1 (9th Cir. BAP Mar. 21, 2008)* ("The bankruptcy court's ruling was [*26] based on its interpretation of California law and, implicitly, the Bankruptcy Code. We review issues of statutory construction de novo"). Evidentiary rulings are reviewed for abuse of discretion and support reversal only where prejudicial. *In re Mbunda, 484 B.R. 344, 351 (9th Cir. 2012)* ("[W]e review a bankruptcy court's evidentiary rulings for abuse of discretion, and then only reverse if any error would have been prejudicial to the appellant"); see *id. at 355* ("Generally speaking, we ignore harmless error. Specifically with respect to erroneous evidentiary rulings, such rulings do not constitute reversible error unless it is more likely than not that the rulings changed the outcome of the lawsuit" (internal citations omitted)); cf. *Harper v. City of Los Angeles, 533 F.3d 1010, 1030 (9th Cir. 2008)* ("We afford broad discretion to a district court's evidentiary rulings. To reverse such a ruling, we must find that the district court abused its discretion and that the error was prejudicial. A reviewing court should find prejudice only if it concludes that, more probably than not, the lower court's error tainted the verdict"). Finally, an order denying a motion to recuse is reviewed for abuse of discretion. *In re Goodwin, 194 B.R. 214, 220 (9th Cir. BAP 1996)*.

The court cannot reverse for errors that do not affect the substantial rights of the parties. It may, [*27] moreover, affirm for any reason supported by the record. *FED.R.BANKR.PROC. 9005; In re Maximus Computers, Inc., 278 B.R. 189, 195 (9th Cir. BAP 2002)*.

**D. Arguments Raised for the First Time on Appeal**

The court generally does not decide issues raised for the first time on appeal; such arguments are deemed to have been waived. *In re Kelly, 499 B.R. 844, 857 (S.D. Cal. 2013)* (holding that a district court reviewing a bankruptcy court's order would not consider arguments raised for the first time on appeal, and stating that "[b]ecause the Kellys failed to raise their consideration argument in the proceeding below, it is waived"); *In re Khoe, 255 B.R. 581, 585-86 (E.D. Cal. 2000)* ("[A]s a general rule, an appellate court will not consider arguments that are raised for the first time on appeal").

"The Ninth Circuit recognizes three exceptions to the general rule that the court will not consider an issue raised for the first time on appeal: 'in the "exceptional" case in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, when a new issue arises while appeal is pending because of a change in the law, or when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.' The court 'will only excuse a failure to comply [*28] with this rule when necessary to avoid a manifest injustice.'" *Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006)* (citing *Bolker v. C.I.R., 760 F.2d 1039, 1042 (9th Cir. 1985)*, and *Meanel v. Apfel, 172 F.3d 1111,*

2014 U.S. Dist. LEXIS 189464, *28

*1115 (9th Cir. 1999))* see also *In re Khoe, 255 B.R. at 585-86* ("A court may review an issue raised for the first time on appeal only to prevent a miscarriage of justice or when a change in the law raises a new issue while an appeal is pending, or when the issue is purely one of law"). "The decision to consider an issue not raised below is discretionary, and such an issue should not be decided if it would prejudice the other party." *In re Khoe, 255 B.R. at 586.*

Hunt argues for the first time on appeal that the bankruptcy court did not have jurisdiction to determine the ownership of the Torrance property because the probate court previously exercised jurisdiction over the property.[74] Although Hunt did not raise this argument below, whether a court has subject matter jurisdiction is not an affirmative defense that can be waived, and the court has a continuing obligation to consider its jurisdiction. See *Guzman-Andrade v. Gonzales, 407 F.3d 1073, 1077 (9th Cir. 2005)* ("The parties' agreement [ ] cannot create subject matter jurisdiction nor waive its absence. We are obliged independently to assess whether we have jurisdiction to review [a matter]"); *City of South Pasadena v. Mineta, 284 F.3d 1154, 1157 (9th Cir. 2002)* ("[O]bjections to subject-matter jurisdiction [ ] may be raised at any time, even on appeal"); **[*29]** *Reis v. D'Braunstein, No. SA CV 08-0754-AG (ANx), 2008 U.S. Dist. LEXIS 79498, 2008 WL 4326717, *1 (C.D. Cal. Sept. 22, 2008)* ("Because it affects the court's very power to adjudicate, delay in raising lack of subject matter jurisdiction does not waive the ground. The objection can be raised initially at trial, or even on appeal"). The court therefore addresses this argument.

It has long been held that under the exclusive jurisdiction doctrine, "[i]n proceedings *in rem* or *quasi in rem*, the forum first assuming custody of the property at issue has exclusive jurisdiction to proceed." *40235 Washington Street Corp. v. Lusardi, 976 F.2d 587, 589 (9th Cir. 1992)*; see *Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S. Ct. 1579, 12 L. Ed. 2d 409 (1964)* ("Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. . . . An exception has been made in cases where a court has custody of property, that is, proceedings in rem or quasi in rem. In such cases, this Court has said that the state or federal court having custody **[*30]** of such property has exclusive jurisdiction to proceed," citing *Princess Lida v. Thompson, 305 U.S. 456, 465-68, 59 S. Ct. 275, 83 L. Ed. 285 (1939))*; *Chapman v. Deutsche Bank National Trust Co., 651 F.3d 1039, 1043 (9th Cir. 2011)* ("The prior exclusive jurisdiction doctrine holds that 'when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same res,'" quoting *Marshall v. Marshall, 547 U.S. 293, 311, 126 S. Ct. 1735, 164 L. Ed. 2d 480 (2006))*; *Federal Home Loan Mortgage Corp. v. Ha, 145 F.3d 1337, 1998 U.S. App. LEXIS 11643, 1998 WL 340118, *1 (9th Cir. June 1, 1998)* (Unpub. Disp.) ("Although the existence of a case in one forum does not generally defeat jurisdiction in another, there is a firmly-rooted exception to this rule: in cases concerning real property, whichever court assumes control over the property first has exclusive jurisdiction to proceed"). This is because *in rem* and *quasi in rem* actions require the court to have "possession" or "control of the property which is the subject of the litigation." *Princess Lida, 305 U.S. at 466.* The jurisdiction of the second court to deal with the same *res* must therefore "yield to that" of the first court. *Id.*

Even assuming both the probate and the bankruptcy actions are *in rem* (a question the court need not resolve), Hunt's argument that the federal court lacks jurisdiction over the property fails because there is no evidence in the record that there are any proceedings currently pending before the probate court, and because the probate court's decision did not involve **[*31]** the Torrance property. The prior exclusive jurisdiction doctrine applies only when "a state court has previously exercised jurisdiction over that same property and retains that jurisdiction in a separate, concurrent proceeding." *Sexton v. NDEX West, LLC, 713 F.3d 533, 537 (9th Cir. 2013)*; see *id.* (holding that "[b]ecause the state court did not retain jurisdiction over the Sextons' property [at the time the federal court obtained jurisdiction over it], the doctrine of prior exclusive jurisdiction is inapplicable"); *United States v. One 1977 Mercedes Benz, 450 SEL, VIN 11603302064538, 708 F.2d 444, 450 n. 5 (9th Cir. 1983)* (holding that "[w]hen [a state court action is] dismissed, the [state] courts ha[ve] no further practical reason for retaining jurisdiction over [property]. Any federal seizure [of that property], therefore, does not impose upon any legal or practical interests the courts of the state . . . could have"); *Rice v. Citibank, NA, No. C13-5371 BHS, 2013 U.S. Dist. LEXIS 87692, 2013 WL 3187026,*

---

[74] Appellant's Opening Brief ("Hunt Opening Brief"), Case No. CV 12-08439, Docket No.46 at 7-8. Hunt filed a nearly identical brief in her capacity as Trustee in Case No. CV 14-00440. For simplicity, the court's citations refer only to the brief filed in Case No. CV 12-08439, except where the brief in Case No. CV 14-00440 differs materially.

*4 (W.D. Wash. June 20, 2013) (noting that where state court jurisdiction had ended before the federal court obtained jurisdiction over property, "the doctrine of prior exclusive jurisdiction [was] inapplicable").

The probate court issued an order on Hunt's *ex parte* petition on December 4, 2007, almost three years before Hunt sought bankruptcy protection, and more than four years **[*32]** before the bankruptcy court determined that the Torrance property belonged to Hunt in her individual capacity and was property of her estate. The only documents related to these proceedings in the record are Hunt's petition and the probate court's order granting that petition. As neither document indicates that there are ongoing proceedings before the probate court, it appears the probate court's jurisdiction over any res has long since terminated. Moreover, as the court noted in its order affirming one of the bankruptcy court's prior orders in Hunt's case,[75] the probate court decided only that the Trust was the owner of the shares in Robert Hunt's professional corporation. It did not decide anything concerning, and thus could not have exercised control over, the Torrance property.[76] For these reasons, the bankruptcy court was not barred by the doctrine of prior exclusive jurisdiction from determining ownership of the Torrance property. The doctrine is simply inapplicable here.[77]

Hunt raises another jurisdictional argument for the first time on appeal, arguing that the bankruptcy court failed to make a finding that it acquired personal jurisdiction from the state court.[78] While a court must have personal jurisdiction over a litigant to issue enforceable orders, there is no requirement that a court make explicit findings concerning this fact. There is no indication that Hunt — in either her individual capacity or her capacity as trustee of the Trust — raised lack of personal jurisdiction as a defense to either of the motions from which she now appeals. There was thus no reason for the bankruptcy court to have explicitly considered and decided the issue. Accordingly, it did not **[*34]** err in failing to do so. This jurisdictional challenge to the orders therefore provides no basis for overturning them.

Moreover, to the extent Hunt's argument implies that the bankruptcy court could not exercise personal jurisdiction over her, she is clearly incorrect. It is axiomatic that a bankruptcy court has personal jurisdiction over a debtor who files a voluntary bankruptcy petition. Personal jurisdiction, "simply stated, is the power to enter judgment against a person." S.E.C. v. Ross, 504 F.3d 1130, 1138 (9th Cir. 2007). "[A] party has consented to personal jurisdiction when the party took some kind of affirmative act — accepting a forum selection clause, submitting a claim, *filing an action* — that fairly invited the court to resolve the dispute between the parties." Id. at 1149 (emphasis added); Romero v. Citibank USA, National Association, 551 F.Supp.2d 1010, 1014 (E.D. Cal. 2008) ("This court has personal jurisdiction over Plaintiff by Plaintiff's appearance and commencing the initial action"); see also Stroud Productions and Enterprises, Inc. v. Castle Rock Entertainment, Inc. No. 09-cv-03796 JSW (NC), 2014 U.S. Dist. LEXIS 45706, 2014 WL 1306050, *8 (N.D. Cal. Mar. 31, 2014) ("[T]he Court has personal jurisdiction over plaintiffs. . . . Here, plaintiffs initiated this action for copyright infringement and unfair competition in the Southern District of New York, and moved to transfer **[*35]** venue to this Court. . . . Plaintiffs further moved for reconsideration of the Court's orders leading to the entry of default, and opposed the pending default judgment motion without raising an objection based on personal jurisdiction").

Hunt raises a related argument in her capacity as trustee of the Trust, asserting in her reply brief that the Creditor Doctors have not satisfied their burden of showing that the state court could exercise personal jurisdiction over Hunt.[79] The argument fails because Hunt failed to argue lack of personal jurisdiction as an affirmative defense in

---

[75] Order Affirming Decision of the Bankruptcy Court, Case No. CV 13-02705, Docket No. 15 (Sept. 24, 2013), at 8 n. 34.

[76] There is no evidence in the record that the corporation owned the Torrance property.

[77] Hunt also argues **[*33]** that the probate court retained exclusive jurisdiction to dissolve or disburse trust assets. None of the bankruptcy court orders challenged in these appeals effected a dissolution of the trust. While the court did authorize a sale of the Torrance property, it did so not in the guise of ordering a disbursement of trust assets, but because it determined that because of the powers Hunt retained under the terms of the Trust, the Torrance property was in fact property of her bankruptcy estate.

[78] Hunt Opening Brief at 5, 15.

[79] Reply ("Hunt Trustee Reply"), Case No. CV 14-00440, Docket No. 36 (July 1, 2014) at 10-13.

her answer to the state court complaint.[80] As a result, she waived this defense. _Roy v. Superior Court of County of San Bernardino, 127 Cal.App.4th 337, 341, 25 Cal. Rptr. 3d 488 (2005)_ ("[I]t has long been the rule in California that a party waives any objection to the court's exercise of personal jurisdiction when the party makes a general appearance in the action. An answer, of course, is such an appearance").

## E. Whether the Bankruptcy Court Abused its Discretion in Denying Hunt's Recusal Motion

The disqualification of [*36] bankruptcy judges is governed by _28 U.S.C. § 455_. See _In re Goodwin, 194 B.R. at 221_. Under _28 U.S.C. § 455(a)_, "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The substantive standard under this statute is "[w]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." _Pesnell v. Arsenault, 543 F.3d 1038, 1043 (9th Cir. 2008)_ (citing _United States v. Hernandez, 109 F.3d 1450, 1453 (9th Cir. 1997))_.

"The test for disqualification under _section 455(a)_ is an objective one"; courts consider whether disqualification is required from the perspective of a reasonable person. _United States v. Nelson, 718 F.2d 315, 321 (9th Cir. 1983)_. "The 'reasonable person' in this context means a 'well-informed, thoughtful observer,' as opposed to a 'hypersensitive or unduly suspicious person.'" _Clemens v. United States District Court for the Central District of California, 428 F.3d 1175, 1178 (9th Cir. 2005)_ (quoting _In re Mason, 916 F.2d 384, 385 (7th Cir. 1990))_. If a reasonable person would question the judge's impartiality, "the judge must recuse himself; but there is as much an obligation for a judge not to recuse himself when there is no occasion for him to do so as there is for him to do so when there is." _United States v. West Productions, Ltd., No. 95 Civ. 1424(CSH), 2003 WL 328307, *1 (S.D.N.Y. Feb. 13, 2003)_.

The bias or prejudice that must be shown to merit recusal is not merely a favorable or unfavorable disposition toward a party, but rather a "favorable or unfavorable disposition or opinion that is somehow _[*37]_ wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess." _Liteky v. United States, 510 U.S. 540, 550, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)_ (emphasis original). For this reason, "the alleged bias and prejudice . . . must stem from an extrajudicial source." _Id. at 544_. See _United States v. Johnson, 610 F.3d 1138, 1147 (9th Cir. 2010)_ ("We have described the extrajudicial source factor as involving 'something other than rulings, opinions formed or statements made by the judge during the course of trial,'" quoting _United States v. Holland, 519 F.3d 909, 914 (9th Cir. 2008))_. "[O]pinions formed by the judge on the basis of facts introduced or evidence presented during the course of the proceedings are not grounds for disqualification unless there is evidence of such deep-seated favoritism or antagonism that fair judgment would be impossible." _Liteky, 510 U.S. at 555_; see also _United States v. Studley, 783 F.2d 934, 939 (9th Cir. 1986)_.

In her motion, Hunt argued that Judge Robles had exhibited bias by making purportedly erroneous evidentiary rulings, refusing to admit evidence despite the lack of any objection by the opposing party, failing to cite precedent supporting his decisions, refusing to grant continuances, failing to ensure that court filings were served on Hunt, and accepting misinformation from litigants. All of these things, Hunt maintained, demonstrated his bias and prejudice against her. As is evident, [*38] Hunt cited only rulings and alleged legal errors as evidence of bias, not prejudice flowing from an extrajudicial source. See _Liteky, 510 U.S. at 555_ ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); _id._ ("In and of themselves . . . [judicial rulings] cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal"); _Clemens v. U.S. District Court for the Central District of California, 428 F.3d 1175, 1178-79 (9th Cir. 2005)_ (noting that the fact that a judge issued adverse rulings against a party in the proceeding is not ordinarily sufficient to require recusal); _Leslie v. Grupo ICA_, 198 F.3d 1152, 1160 (9th Cir. 1999) ("Leslie's allegations stem entirely from the district judge's adverse rulings. That is not an adequate basis for

---

[80] See _Capen v. Hunt_, BC 397187, Answer of Peli Popovich Hunt to Unverified Second Amended Complaint) (May 6, 2009).

2014 U.S. Dist. LEXIS 189464, *38

recusal"); _Hasbrouck v. Texaco, Inc., 842 F.2d 1034, 1046 (9th Cir. 1987)_ ("Texaco supports its allegations of bias merely by pointing to alleged errors at trial. . . . Even if these rulings were erroneous, and we do not suggest that they were, they could not justify a finding of judicial bias [that would support recusal under _§ 455_]"); _Studley, 783 F.2d at 939_ (a judge's prior rulings adverse to a tax-protestor defendant were not a sufficient cause for recusal); _Hagans v. Andrus, 651 F.2d 622, 628 (9th Cir. 1981)_ ("It is not a ground **[*39]** for disqualification that the judge has ruled against the moving party or that he may have committed an error of law," citing _United States v. Conforte, 624 F.2d 869 (9th Cir. 1980))._

Hunt identified no extrajudicial source of bias, nor any interest that precluded Judge Robles from handling the case. Her assertions, which were unclear and unsupported, did not merit this disqualification. See _Palmieri v. United States, 286 F.Supp. 520, 523-24 (S.D.N.Y. 1968)_ ("Petitioner has failed to meet the statutory requirement of setting forth facts and reasons for his belief that bias or prejudice exists and, instead, has presented mere conclusions"). Accordingly, Judge Robles did not abuse his discretion in denying Hunt's motion for recusal.[81]

## F. Whether the Court Should Reverse the Bankruptcy Court's Order Approving the Sale of the Torrance Property

Although difficult to discern, Hunt appears to advance three arguments concerning the bankruptcy court's order approving the sale of the Torrance property: (1) the property was property of the Trust, and not of the estate; (2) the trust transfer deed is a contract over which the bankruptcy court, as an Article I court, lacked jurisdiction; and (3) the property was sold for below fair market value. The court addresses these arguments in turn.

### 1. Whether the Torrance Property Was Property of the Estate

Several of Hunt's arguments rest on the assertion that the Torrance property was **[*41]** not property of the bankruptcy estate. She argues that she lacked authority as trustee of the Trust to assign the property to the bankruptcy estate,[82] that the trust's procedures for transferring property out of the trust were not followed,[83] and that Miller failed to serve her with a turnover order prior to confiscating trust assets.[84] As he court noted in its order affirming one of the bankruptcy court's prior orders in Hunt's case, the Torrance property was property of the bankruptcy estate.[85] Nonetheless, because Hunt continues to raise the issue, the court addresses her argument once again.[86]

---

[81] The fact that Judge Robles decided the recusal motion was not error. Federal judges may rule on motions seeking to recuse them. See **Microsoft Corp. v. United States, 530 U.S. 1301, 1301-02, 121 S. Ct. 25, 147 L. Ed. 2d 1048 (2000)** (Statement of Rehnquist, C.J.) (discussing the fact that his son represented Microsoft in another matter, and declining to recuse himself because no "well-informed individual would conclude that an appearance of impropriety exists"); _Miles v. Ryan, 697 F.3d 1090, 1090 (9th Cir. 2012)_ ("Appellant's motion to recuse Judge Graber was, in its format, directed to all three judges on the three-judge panel in this case. Under this Circuit's procedures, however, each judge may decide for himself or herself **[*40]** whether recusal is appropriate"); _Perry v. Schwarzenegger, 630 F.3d 909, 912 (9th Cir. 2011)_ ("Proponents' contention that I should recuse myself due to my wife's opinions is based upon an outmoded conception of the relationship between spouses"); _In re Williams, BAP No. CC-04-1605-MaMoPa, 2006 Bankr. LEXIS 4856, 2006 WL 6817587, *6 (9th Cir. BAP Mar. 10, 2006)_ (Unpub. Disp.) (bankruptcy judge did not err in ruling on a motion to recuse him because then applicable Central District General Order 224 applied only to district court judges). Accordingly, Judge Robles acted within his authority and discretion in deciding Hunt's recusal motion.

[82] Hunt Opening Brief at 5.

[83] _Id._ at 6, 8

[84] _Id._ at 6.

[85] Order Affirming Decisions of the Bankruptcy Court, Case No. CV 12-06600, Docket No. 59 (Jan. 31, 2014) at 33-37.

2014 U.S. Dist. LEXIS 189464, *40

Under *11 U.S.C. §363*, a trustee is authorized to sell "property of the estate." Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *11 U.S.C. § 541(a)*. "A bankruptcy court may not allow the sale of property as 'property of the estate,' without first determining whether the debtor in fact owned the property." *In re Rodeo Canon Development Corp., 362 F.3d 603, 608-09 (9th Cir. 2004)*, opinion withdrawn on other grounds, *126 Fed. Appx. 353 (9th Cir. Mar. 8, 2005)* (Unpub. Disp.); see *In re Silver Beach, LLC, No. NV-09-1049, 2009 Bankr. LEXIS 4587, 2009 WL 7809002, *7 (9th Cir. BAP Nov. 3, 2009)* (Unpub. Disp.) ("Before the bankruptcy court may authorize a sale under authority of *section 363(b)(1)*, the court must determine whether the estate actually has an interest in the property to be sold"); *In re Cogliano, 355 B.R. 792, 804 (9th Cir. BAP 2006)* ("*Rule 7001(2)* requires an adversary proceeding 'to determine the validity, priority, or extent of a lien or other interest in property'"); *In re Popp, 323 B.R. 260, 266 (9th Cir. BAP 2005)* ("*Section 363(b)* . . . requires that the estate demonstrate that the property it proposes to sell is 'property of the estate'"); *In re Clark, 266 B.R. 163, 172 (9th Cir. BAP 2001)* (holding that "[t]he threshold question [—] is [the property] still property of the estate [—] must . . . be decided" before it can be sold free and clear under *§ 363(f)*); see also *In re Robertson, 203 F.3d 855, 863 (5th Cir. 2000)* ("Because the separate **[*44]** property home of [a non-debtor] was not included or owned in indivision with the property of the Debtor's bankruptcy estate, the Trustee lacked authority to sell her home . . . as property of the estate in which there is an interest of 'an entity other than the estate' under *section 363(f)*. . .'"); *In re Coburn, 250 B.R. 401, 403 (Bankr. M.D. Fla. 1999)* (finding it necessary to determine whether an asset was property of the estate in order to decide whether the trustee was entitled to sell it under *§ 363(f)*).

Hunt argues that the Torrance property is not her individual property because, as trustee, she never transferred title to herself in her individual capacity.[87] This statement is contradicted by her own filings in this case. As noted, Hunt's January 5, 2012 schedules listed the Torrance property as her individual property. The schedules were filed under penalty of perjury. *Fed.R.Bankr.Proc. 1008* ("All petitions, lists, schedules, statements and amendments thereto shall be verified"); *In re Bohrer, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001)* ("Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions," citing *In the Matter of Gervich, 570 F.2d 247, 253 (8th Cir. 1978)*); *id.* ("A debtor may not adopt a cavalier attitude toward [ ] his schedules by arguing that they are not precise and **[*45]** correct," citing *In re Duplante, 215 B.R. 444, 447 n. 8 (9th Cir. BAP 1997)*). As the court noted in its order on Hunt's prior appeal, because Hunt's schedules were executed under penalty of perjury, the statements they contain can be treated as judicial admissions. *In re Rolland, 317 B.R. 402, 421 (Bankr. C.D. Cal. 2004)* ("Statements in bankruptcy schedules are executed under penalty of perjury and, when offered against a debtor, are eligible for treatment as judicial admissions"). "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Id. at 421-22* (quoting *Am.*

---

[86] Hunt argues that the court can reconsider its decisions in Case Nos. CV 12-06600 (see *id.*) and CV 13-02705, in which the court found over Hunt's objections, respectively, that the Torrance property and another property in Glendale were property of the estate (see Order Affirming Decision of the Bankruptcy Court, Case No. CV 13-02705, Docket No. 15 (Sept. 24, 2013) at 8-12) either as an en banc panel or a merits panel reconsidering its prior decision. (Hunt Opening **[*42]** Brief at 23.) Although a district court functions as an appellate court when reviewing decisions of the bankruptcy court, en banc review is not available to a party in a district court. *Hanneman v. Nevada Attorney General, No. 3:05-cv-0284-ECR-VPC, 2010 U.S. Dist. LEXIS 55775, 2010 WL 1904826, *1 (D. Nev. May 10, 2010)* ("[T]here is no en banc review available for a district court decision"). See also *Cuesta v. Bertrand No. 04-C-645, 2006 U.S. Dist. LEXIS 36212, 2006 WL 1598409, *1 (E.D. Wis. June 1, 2006)* ("En banc review is not available to a party in a district court bur rather is limited to Courts of Appeals. See *28 U.S.C. § 46*; *Fed.R.App.P. 35*. Therefore, Cuesta's motion may be best regarded as a 'Motion to Reconsider Reconsideration'"); *Ryburn v. Ramos, No. 09-cv-1176, 2010 U.S. Dist. LEXIS 132417, 2010 WL 5344961, *1 (C.D. Ill. Dec. 15, 2010)* ("Petitioner filed a Motion for Rehearing en banc under *Federal Rule 60(b)*. En banc review is not available to a party in a district court, but rather is limited to courts of Appeals. Accordingly, the Court will treat this Motion as a motion for relief from judgment," internal citation and quotation omitted). The appropriate procedure to seek reconsideration of a district court decision reviewing a bankruptcy court order, moreover, is by filing a motion for rehearing under *Rule 8015 of the Federal Rules of Bankruptcy Procedure*. See *Fed.R.Bankr.Proc. 8015*. Hunt sought reconsideration of both orders discussed in this footnote, motions the court denied. (Order Denying Motion to Vacate Mandate; Recall Mandate and Petition for **[*43]** Rehearing, Case No. 13-02705, Docket No. 21 (Apr. 8, 2014); Order Denying Motion for Rehearing and to Recall Mandate, Case No. 12-06600, Docket No. 66 (Apr. 28, 2014).)

[87] Hunt Opening Brief at 6, 12.

2014 U.S. Dist. LEXIS 189464, *43

*Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988))*. "Judicial admissions are conclusively binding on the party who made them. Even when schedules are amended, [moreover,] the old schedules are subject to consideration by the court as evidentiary admissions." *Id. at 422* (internal citations omitted). See *In re Rollings, 451 Fed. Appx. 340, 348 (5th Cir. Oct. 12, 2011)* (Unpub. Disp.) ("'Admissions made in superseded pleadings are as a general rule considered to lose their binding force, and to have value only as evidentiary admissions,'" quoting *White v. ARCO/Polymers, Inc., 720 F.2d 1391, 1396 n. 5 (5th Cir. 1983))*.

Hunt argues that the statement that she owned the Torrance property in her individual capacity was the product of "unreasonable legal advice" by her prior attorney and that it should be disregarded [*46] for that reason.[88] The court disagrees. Hunt signed the schedule under penalty of perjury and had an independent duty to verify its accuracy. See *In re Rolland, 317 B.R. at 422* (rejecting debtors' argument that they should not be held responsible for alleged mistakes in their schedules because they relied on counsel). Additionally, it was only once her bankruptcy case was at risk of being converted to a Chapter 7 proceeding, leaving the property open for sale, that Hunt began to contest her ownership of it.

Even were the court to look past Hunt's admission and consider the evidence she proffered to the bankruptcy court to show that the property was held by her in her capacity as trustee of the Trust rather than in her individual capacity,[89] the court would still conclude that the interest is the property of Hunt's bankruptcy estate. This is true whether Hunt distributed the Torrance property to the Survivor's Trust or to the Credit Bypass Trust on her husband's death.[90]

Assuming she transferred the property to the Survivor's Trust, the property would be property of the estate because Hunt retains the power to revoke the trust. Under California law, "[i]f the settlor retains the power to revoke the trust in whole or in part, the trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor." *Cal. Prob. Code § 18200*; *In re Brooks-Hamilton, 348 B.R. 512, 519 (Bankr. N.D. Cal. 2006)* ("Under California law, when the settlor of a trust retains the power to revoke a trust, the trust res remains the settlor's property subject to his creditor's claims"); see also *In re Irwin, 338 B.R. 839, 854-53 (E.D. Cal. 2006)* (holding that property transferred to a revocable trust was property of the settlor's bankruptcy estate). Because Hunt is a settlor of the Trust, which directs her to distribute [*48] the Torrance Property to the Survivor's Trust[91] and because she retains the power to revoke that trust,[92] any assets in the Survivor's Trust are the property of her individual bankruptcy estate.

If, on the other hand, Hunt transferred the Torrance property to the Credit Bypass Trust despite the requirement that she distribute the property [*49] to the Survivor's Trust, the property would still be property of the estate because she retains power under that trust to pay to or apply for her benefit as much of the income and principal of the

---

[88] *Id.* at 5, 13, 18; Reply ("Hunt Miller Reply"), Case No. CV 12-08439, Docket No. 53 (May 28, 2014) at 3.

[89] As the court noted in a prior order, it is unclear whether Hunt owns the Torrance property in her individual capacity or as trustee of the Trust because the two grant [*47] deeds she and her late husband executed, dated the same day, conflict with one another. One transfers the property to Hunt and her husband as community property, while the other transfers it to them as trustees of the Trust. (Order Affirming Decisions of the Bankruptcy Court, Case No. CV 12-06600, Docket No. 59 (Jan. 31, 2014) at 5.)

[90] There is no information in the record regarding the trust to which the Torrance property was transferred.

[91] See Notice of Opposition and Request for a Hearing by the Trust ("Trust Opposition"), Case No. BK 11-58222, Docket No. 135 (June 1, 2012), Exh. 9 (Trust, ¶ 4.1(c)(2) ("The TRUSTEE shall distribute the residue of the Trust as provided in Paragraph 4.4 below, including but not limited to: . . . Real property improved with a medical building commonly known as 3661 Torrance Boulevard, Torrance, California (APN 7524-015-054) and the adjacent unimproved lot (APN 7524-015-075), and the identifiable proceeds of the sale of such property"); *id.*, ¶ 4.4(b) ("The Survivor's Trust shall consist of the residue of the Trust Estate . . . .").

[92] See *id.*, ¶ 23.3 ("On the Death of the Deceased Spouse, the Surviving Spouse shall have the power to amend, revoke, or terminate the Survivor's Trust in whole or in part; but the Credit Bypass Trust may not be amended or terminated")).

Credit Bypass Trust as she, in her discretion, considers appropriate and because that trust does not have a valid spendthrift clause. "[W]hile assets transferred to a trust do not ordinarily become property of the bankruptcy estate of the trust's trustee, powers that a debtor who is trustee of a trust may exercise for his or her own benefit become property of the estate." *In re Cutter, 398 B.R. 6, 19 (9th Cir. BAP 2008)* (citing *Askanase v. LivingWell, Inc., 45 F.3d 103, 106 (5th Cir. 1995)).* "Moreover, to the extent a debtor holds a beneficial interest in a trust, that beneficial interest becomes property of the estate, unless it is protected by a valid spendthrift provision." *Id.* (citing *11 U.S.C. § 541(a)(1)* and *(c)(2)).*

In *Cutter*, a Chapter 7 debtor created an irrevocable trust and named himself trustee. *Id. at 12.* The trust provided that the trustee could make distributions at his "sole discretion . . . in an amount to provide for the health, the education, or the support and maintenance in the customary manner of living of the trustor. . . ." *Id.* The court affirmed the bankruptcy court's conclusion that the debtor had an equitable interest [*50] in the trust assets, and thus that those assets were property of the bankruptcy estate. *Id. at 19*; see also *id. at 12* (noting the bankruptcy court's conclusion that, even though the trust "did not specifically identify [the debtor] as a primary beneficiary," he was in fact a primary beneficiary because he had the ability to invade the trust property for emergencies related to his health, education, support and/or maintenance). It also affirmed the bankruptcy court's conclusion that the trust property was property of the bankruptcy estate because the "[d]ebtor had access to potentially all of the Trust's assets and income in order to maintain his standard of living. Debtor possessed the power to 'invade' the corpus of the Trust for emergencies relating to his health, education, support and/or maintenance. Debtor possessed the right, at his sole discretion, to make distributions in order to provide for his health, education, or support and maintenance in [his] customary standard of living'" *Id. at 20* (internal citations omitted).

Like the debtor in *Cutter*, Hunt has the power to "pay to or apply for [her] benefit . . . as much of the income and principal of the Credit Bypass Trust as [she], in [her] discretion [as trustee], [*51] considers appropriate for [ ] her care, support, health and education and to maintain [ ] her accustomed manner of living."[93] While the trust instrument states that she cannot make principal or income distributions from the Credit Bypass Trust to herself unless the assets of the Survivor's Trust and other resources have been exhausted, it qualifies this prohibition by stating that even if assets of the Survivor's Trust and other resources remain, she may distribute the principal and income of the Credit Bypass Trust to herself if she "considers it reasonable to do so under the circumstances." Because Hunt, as settlor and trustee of the trust, has the power in her sole discretion to distribute the assets of the Credit Bypass Trust to herself, her interest in the Torrance property is property of the bankruptcy estate even if it was held in that trust. Accordingly, the bankruptcy court did not err when it held that the Torrance property was property of Hunt's personal bankruptcy estate.[94]

### 2. Whether the Bankruptcy Court Lacked Jurisdiction

Hunt next argues that the bankruptcy court lacked subject matter jurisdiction to issue an order authorizing a sale of the property by the trustee, apparently on the basis that a trust transfer deed is a contract, and that bankruptcy courts lack jurisdiction over contracts.[95] The Bankruptcy Code expressly provides for the sale of property of the estate by the trustee, however. *11 U.S.C. § 363(b)(1)* ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate"). The bankruptcy court's approval of such a sale is constitutional because the sale itself is authorized by statute, and its approval therefore constitutes

---

[93] *Id.*, Exh. 9 (Trust, ¶ 6.1).

[94] Hunt also argues that the bankruptcy court erred in denying her motion for stay pending appeal of the order authorizing sale of the property. (Hunt Opening Brief at 5-6.) The court [*52] finds Hunt's argument unavailing. The bankruptcy declined to grant Hunt's request for temporary stay pending appeal because it concluded that, *inter alia*, Hunt was unlikely to prevail on the merits of her claim that the property was not property of the estate. (AER at 242.) Because the court has now determined on several occasions that this conclusion was correct, the court affirms the bankruptcy court's denial of Hunt's motion for stay on this basis.

[95] Hunt Opening Brief at 14-15; Hunt Miller Reply at 10-15.

2014 U.S. Dist. LEXIS 189464, *52

the adjudication of a public right. [*53]  See, e.g., _Pusser's (2001) Ltd. v. HMX, LLC, No. 11 C 4659, 2012 U.S. Dist. LEXIS 43199, 2012 WL 1068756, *6 (N.D. Ill. Mar. 28, 2012)_ ("[T]he bankruptcy court was correct that it possessed subject matter jurisdiction to enter the Sale Order. The entry of orders approving the sale of the property of a debtor's estate outside the usual course of business is a 'core proceeding' within a bankruptcy court's subject matter jurisdiction, . . . Bankruptcy courts have the ability to enter final determinations on § 363 sales because such sales are a product of the Bankruptcy Code, and therefore are adjudications of 'public rights' that Congress can delegate to an Article I court without violating Article III," citing _Stern v. Marshall, 564 U.S. 462, 131 S. Ct. 2594, 2613, 180 L. Ed. 2d 475 (2011)_ (describing cases that fit within the "public rights exception" as those "in which the claim at issue derives from a federal regulatory scheme")); see also _In re Motors Liquidation Co., 428 B.R. 43, 56-57 (S.D.N.Y.2010)_ ("It is well-settled that bankruptcy courts have core jurisdiction to approve _section 363_ sales. . .").

To the extent Hunt argues that the bankruptcy court lacked authority to determine the ownership of the property — i.e., whether the property the trustee sought to sell was in fact property of the estate — she misstates the law. A bankruptcy court may "enter appropriate orders and judgments, subject [*54]  to review under" _28 U.S.C. § 158_ in core matters. _28 U.S.C. § 157(b)(1)_. In contrast, the bankruptcy court's power over non-core proceedings, or those "related to" a bankruptcy case, is limited, absent the parties' consent, to issuing proposed findings of fact and conclusions of law that are subject to _de novo_ review by the district court. _28 U.S.C. §§ 157(c)(1)_, _(2)_; _In re Stokes, No. MT-13-1097-TaPaJu, 2013 Bankr. LEXIS 4654, 2013 WL 5313412, *7 (9th Cir. BAP Sept. 23, 2013)_ ("[A] core proceeding refers to matters that the bankruptcy court may hear and determine, as opposed to non-core matters, where, absent consent, the bankruptcy court may hear but not finally adjudicate").

Whether property is property of the estate is a core matter within the bankruptcy court's jurisdiction. _In re Stokes, 2013 Bankr. LEXIS 4654, 2013 WL 5313412 at *8_ ("Indeed, '[p]roceedings to determine the nature and extent of property of the estate are fundamental to the administration of a bankruptcy case,' and, thus, are 'core' proceedings," quoting _Watson v. Kincaid (In re Kincaid), 96 B.R. 1014, 1017 (9th Cir. BAP 1989)_, rev'd on other grounds, _917 F.2d 1162 (9th Cir. 1990)_); _Olivie Development Grp. LLC v. Ki Chang Park, No. C11-1691Z, 2012 U.S. Dist. LEXIS 60299, 2012 WL 1536207, *3 & n. 2 (W.D. Wash. Apr. 30, 2012)_ (collecting cases). See also _Olivie Development Grp. LLC, 2012 U.S. Dist. LEXIS 60299, 2012 WL 1536207 at *4_ ("A bankruptcy court's finding regarding the parties' interests in property is necessarily a function of determining what constitutes property of the estate. Here, the Bankruptcy Court's Order makes a factual finding about the parties' interest in the security [*55] deposit so that the court could determine the issue of whether that deposit was part of the bankruptcy estate. This necessary finding does not convert the core issue of whether something is property of the estate into a non-core proceeding"). Accordingly, the court finds that the bankruptcy court acted within its authority in issuing an order authorizing the sale of Hunt's interest in the Torrance property.

### 3. Whether the Sale Price Was Fair Market Value

Hunt also challenges the sale on the grounds that it was sold below fair market value.[96] She asserts that a property's value must be determined at the time a petition is filed, and that she provided data on the value of comparable properties that Miller failed to consider.[97]

An appeal of an order authorizing the sale of assets of the bankruptcy estate to a good faith purchaser is moot in the absence of a stay. _In re Fearing, 143 Fed. Appx. 744, 745 (9th Cir. July 18, 2005)_ (Unpub. Disp.) ("[W]hen, in the absence of a stay of the order of sale, a sale to a 'good faith purchaser' has been concluded — an appellate court cannot undo the sale. Because the court cannot provide meaningful relief to the appellant under those circumstances, any appeal of the order of sale thereby becomes moot," [*56]  quoting _Dunlavey v. Ariz. Title Ins. & Trust Co. (In re Charlton), 708 F.2d 1449, 1454 (9th Cir. 1983)_ (in turn quoting _Taylor v. Lake (In re Cada Invs., Inc.), 664 F.2d 1158, 1160 (9th Cir.1981)_); _11 U.S.C. § 363(m)_ ("The reversal or modification on appeal of an

---

[96] Hunt Opening Brief at 9.

[97] _Id. at 20_.

2014 U.S. Dist. LEXIS 189464, *56

authorization under *subsection (b)* or *(c)* of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal"). "There are two exceptions to this rule: "(1) where real property is sold subject to a statutory right of redemption, and (2) where state law otherwise would permit the transaction to be set aside." *Id.* (quoting *Ewell v. Diebert (In re Ewell), 958 F.2d 276, 280 (9th Cir. 1992))*. Neither exception applies in this case.

The Ninth Circuit has defined a good faith purchaser as "one who buys 'in good faith' and 'for value.'" *Id. at 746* (quoting *In re Ewell, 958 F.2d at 281*). Lack of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *In re Ewell, 958 F.2d at 281*). A bankruptcy court's finding of good faith is reviewed for clear error. *In re Thorpe Insulation Co., 392 Fed. Appx. 549, 550 (9th Cir. Aug. 13, 2010)* (Unpub. Disp.).

Here, as noted, Hunt did not obtain a stay of the sale. Consequently, the court's review is limited to determining whether the **[*57]** bankruptcy court's finding that the buyer was a good faith purchaser was clearly erroneous. In her motion for an order authorizing the sale, Miller proffered a declaration stating that the proposed buyer had no relation to the debtor or trustee and was not a creditor of the estate, and that the sale was negotiated at arms length.[98]

In its September 5 order approving Miller's motion for an order authorizing the sale, the bankruptcy court found the sale was proposed in good faith and was the result of an arms-length transaction. The court cited Miller's declaration that the proposed sale was the result of an arms-length transaction, and that the $3,000,000 purchase offer exceeded Hunt's valuation by $1,000,000.[99] Hunt does not argue that Blue Sky was not a good faith purchaser, and she adduces no evidence that would support such a conclusion. She states that she provided "comps" for properties similar in value to the Torrance property, but provides no explanation and adduces no evidence that the listings — which range in value from $3.02 million **[*58]** to $383.7 million[100] — are actually comparable to the Torrance property.[101] Accordingly, the court concludes the bankruptcy court did not commit clear error in approving the sale. The court, therefore, dismisses Hunt's appeal of the sale order as moot.[102] See *In re Thorpe Insulation Co., 392 Fed. Appx. at 550-51* ("In support of its motion for approval of the settlement agreement, Thorpe submitted a declaration prepared and executed by its president Robert W. Fults, in which Fults attested that the agreement 'was negotiated at arms-length and in good faith.' . . . The court went on to find that Thorpe and General Insurance had negotiated 'extensively, at arm's-length, [and] in good faith.' On the basis of those and many other factors (including, as the district court pointed out, the bankruptcy court's own observations), the bankruptcy court approved the agreement. . . . As the record stands, therefore, Thorpe made a prima facie showing of good

---

[98] Motion for Order Authorizing Sale of Real Property, Case No. BK 11-58222, Docket No. 196 (Aug. 2, 2012) at 26 (Declaration of Elissa D. Miller, ¶ 9).

[99] Case No. BK 11-58222, Docket No. 239 (Sept. 5, 2012) (Order Authorizing Sale of Real Property) 4. In fact, Hunt initially scheduled the property at $1.3 million; thus, the $3,000,000 offer was more than twice this amount, and the final $4,050,000 sale price more than three times.

[100] AER at 357, 360.

[101] The wide range of values suggests the properties proffered by Hunt are not even comparable to each other.

[102] Hunt also argues that the failure to serve the September 14, 2012 sale order on her in her capacity as trustee of the Trust, or on her counsel, violated her due process rights and requires vacation of the order. (Hunt Opening Brief at 10-11.) "The standard for what amounts to constitutionally adequate notice . . . is fairly low; it[ ] [is] 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection.'" **Espinosa v. United Student Aid Funds, Inc., 553 F.3d 1193, 1202 (9th Cir. 2008)** (citing *Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950)*). As noted, Hunt, in her personal capacity, was on notice of the sale order because she timely appealed it just days later. Accordingly, the court finds that Hunt had adequate notice of the sale order. Moreover, as noted, Hunt's appeals of the **[*60]** sale order in both her individual capacity and her capacity as trustee of the Trust are moot.

2014 U.S. Dist. LEXIS 189464, *60

faith, and that showing went without rebuttal. Motor Vehicle and Central National proffered no evidence that would support a finding of bad faith or cast doubt on the integrity of the negotiations. The bankruptcy court's finding of good faith was, accordingly, supported by sufficient evidence, and the district [*59] court did not err in upholding it").

Even if Hunt's appeal were not moot, the court would deny it because the bankruptcy court's order was substantively correct. As noted, the Torrance property was property of the bankruptcy estate, the bankruptcy court had jurisdiction to approve a sale, and the bankruptcy court's finding that the sale was in good faith and at arms length was not clearly erroneous.

Although Hunt does not dispute the point, the court also finds that the order approving the sale was not an abuse of discretion under *11 U.S.C. § 363(b)*. *11 U.S.C. § 363(b)(1)* provides in relevant part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" Sales pursuant to *§ 363(b)* must be supported by a valid business justification. *240 N. Brand Partners, Ltd. v. Colony GFP Partners, 200 B.R. 653, 659 (9th Cir. BAP 1996)* (citing *In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983)*). The sale must also be in good faith. "'Good faith' encompasses fair value, and further speaks to the integrity of the transaction. Typical 'bad faith' or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers." *240 N. Brand Partners, 200 B.R. at 659* (quoting *In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991)*).

At the September 5, 2012 [*61] hearing, the bankruptcy court held that the "the sale is supported by a valid business justification and has been proposed in good faith," in that it would "yield a distribution for creditors."[103] Hunt does not challenge or address this finding in any way. Accordingly, she has abandoned any challenge to the findings that were necessary to support the sale under *§ 363(b)(1)*. Even if the appeal were not moot, therefore, it would fail on the merits.[104] This conclusion provides an alternative basis on which to find against Hunt on her appeal in her capacity as trustee of the Trust.

## G. Whether the Court Should Overturn the Bankruptcy Court's Order Overruling Hunt's Objection to the Creditor Doctors' Claim

"A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." *In re HWY Squared, Inc., 208 Fed. Appx. 581, 582 (9th Cir. Nov. 30, 2006)* (Unpub. Disp.) (quoting *Fed.R.Bankr.Proc. 3001(f)*). "The filing of an objection to a proof of claim 'creates a dispute which is a contested matter' within the meaning of *Bankruptcy Rule 9014* and must be resolved after notice and opportunity for hearing upon a motion for relief." *Lundell v. Anchor Const. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000)*. "Upon objection, the proof of claim provides 'some evidence as to its validity and amount' and is 'strong enough to carry over a mere formal objection without more.'" *Id.* (quoting *Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991)* (quoting *3 L. King, Collier on Bankruptcy § 502.02* at 502-22 (15th ed. 1991)); see also *Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.), 178 B.R. 222, 226 (9th Cir. BAP 1995)*, aff'd, *91 F.3d 151, 1996 WL 393533 (9th Cir. July 15, 1996)* (Unpub. Disp.)). "To defeat the claim, the objector must come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves.'" *Lundell, 223 F.3d at 1039* (quoting *In re Holm, 931 F.2d at 623*).

---

[103] Order Authorizing Sale of Real Property, Case No. BK 11-58222, Docket No. 239 (Sept. 5, 2012) at 4-5.

[104] Hunt challenges the sale order on the basis that the bankruptcy court denied a request for a hearing on an environmental impact study purportedly requested by Blue Sky. (Hunt Opening Brief at 10.) Hunt identifies nothing in the record supporting her contention that the request was denied, however. Nor does she explain how such a denial negatively impacted the sale or the bankruptcy court process approving the sale. The court thus finds the argument unavailing, particularly given its determination that Hunt's appeal is moot, and [*62] that the sale was conducted in good faith.

2014 U.S. Dist. LEXIS 189464, *62

"'If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the [*63] validity of the claim by a preponderance of the evidence.'" *Id.* (quoting *In re Consol. Pioneer Mort., 178 B.R. at 226* (in turn quoting *In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)).* "The ultimate burden of persuasion remains at all times upon the claimant." *Id.* (citing *In re Holm, 931 F.2d at 623*).

The only reference in Hunt's opening brief to the Creditor Doctors' claim is her assertion that a finding of successor liability was inappropriate because she is not a physician, and therefore could not have qualified as a shareholder under RWH's bylaws.[105] Hunt likely intends to object to the state court's finding of alter ego liability rather than successor liability, as the state court judgment found her liable only on the former theory.[106] Hunt raised a similar argument in the bankruptcy court; in her reply in support of her objection to the claim, Hunt argued that the corporate articles and bylaws for RWH precluded her from authorizing medical treatment after October 26, 2007, because she was not a licensed physician who owned stock.[107] Hunt's argument that she was not a shareholder, however, is contradicted by her sworn declaration filed in support of her objection to the Creditor Doctors' claim. There, Hunt states, under penalty of perjury: "I am the President, sole director, and sole shareholder of Robert [*64] W. Hunt, M.D., A Medical Corporation, as well as the above captioned debtor."[108]

Because Hunt's only argument as to why the bankruptcy court should have sustained her objection is contradicted by her own admissible sworn statement, she has failed to carry her burden of proffering "sufficient evidence and show[ing] facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell, 223 F.3d at 1039.* Accordingly, the court finds that the bankruptcy court did not err in overruling Hunt's objection to the Creditor Doctors' claim.

## III. CONCLUSION

For the reasons stated, the court affirms the decisions [*66] of the bankruptcy court.

DATED: July 25, 2014

/s/ Margaret M. Morrow

---

[105] Hunt Opening Brief at 11; Hunt Miller Reply at 9. In her reply brief, Hunt raises new arguments that (1) the court should have held an evidentiary hearing providing her the opportunity to introduce live testimony, (2) hearsay objections to her declaration should not have been sustained, and (3) her declaration demonstrates that she was not the alter ego of RWH. (Hunt Miller Reply at 10, 13, 17.) As noted, courts generally do not consider arguments raised for the first time in a reply brief, because it deprives the nonmoving party of an opportunity to respond. *United States v. Romm, 455 F.3d 990, 997 (9th Cir. 2006)* ("Finally, and for the first time in his reply brief, Romm argues the search of his laptop was too intrusive on his *First Amendment* interests to qualify as a 'routine' border search. We decline to consider this issue here because 'arguments not raised by a party in its opening brief are deemed waived,'" quoting *Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999)); Cedano-Viera v. Ashcroft, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003)* ("[W]e decline to consider new issues raised for the first time in a reply brief"); *Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir. 1996)* ("Issues raised for the first time in a reply brief are waived"); *State of Nev. v. Watkins, 914 F.2d 1545, 1560 (9th Cir. 1990)* ("[P]arties cannot raise a new issue of the first time in their reply briefs" (citations omitted)); *Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F.Supp.2d 1078, 1089 (E.D. Cal. 2006)* ("It is innapropriate [*65] to consider arguments raised for the first time in a reply brief"); *United States ex rel. Giles v. Sardie, 191 F.Supp.2d 1117, 1127 (C.D. Cal. 2000)* ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers"). Because Hunt raised these arguments for the first time in her reply brief, and because she provides no explanation for her failure to include them in her opening brief — which would have afforded appellees an opportunity to respond — the court declines to consider the arguments.

[106] Case No. BK 11-58222, Docket No. 216 (Aug. 17, 2012) at 39.

[107] AER at 178.

[108] *Id.* at 117, ¶ 1. This statement was one of the only statements deemed admissible by the bankruptcy court. (*Id.* at 33.)

2014 U.S. Dist. LEXIS 189464, *65

MARGARET M. MORROW

UNITED STATES DISTRICT JUDGE

**End of Document**

# EXHIBIT 7

_APJL Consulting, LLC v. Treasures, Inc. (In re Treasures, Inc.)_

United States Bankruptcy Appellate Panel for the Ninth Circuit

January 22, 2015, Argued and Submitted at Pasadena, California; March 3, 2015, Filed

BAP No. SC-13-1304-JuKiKu, BAP No. SC-13-1464-JuKiKu (related)

**Reporter**
2015 Bankr. LEXIS 662 *

In re: TREASURES, INC., Debtor. APJL CONSULTING, LLC, Appellant, v. TREASURES, INC.; LEONARD J. ACKERMAN, Chapter 7 Trustee, Appellees.

**Notice:** THIS DISPOSITION IS NOT APPROPRIATE FOR PUBLICATION. ALTHOUGH IT MAY BE CITED FOR WHATEVER PERSUASIVE VALUE IT MAY HAVE (SEE _FED. R. APP. P. 32.1_), IT HAS NO PRECEDENTIAL VALUE. SEE 9TH CIR. BAP RULE 8013-1.

**Prior History:** [*1] Appeal from the United States Bankruptcy Court for the Southern District of California. Bk. No. 12-06689-MM7. Honorable Margaret M. Mann, Bankruptcy Judge, Presiding.

_In re Treasures, Inc., 2013 Bankr. LEXIS 3885 (Bankr. S.D. Cal., Sept. 10, 2013)_

**Counsel:** Jeremy W. Faith of Margulies Faith, LLP argued for appellant APJL Consulting, LLC.

Dean T. Kirby, Jr. of Kirby & McGuinn argued for appellee Leonard J. Ackerman, Chapter 7 Trustee.

**Judges:** Before: JURY, KIRSCHER, and KURTZ, Bankruptcy Judges.

# Opinion

MEMORANDUM*

In BAP No. SC-13-1304, APJL Consulting, LLC (APJL) appeals from the bankruptcy court's order denying its compensation request for auctioneer services provided to Chapter 11[1] debtor, Treasures Inc., under a court-approved employment order (Compensation Order). For the reasons discussed below, we AFFIRM.

In BAP No. SC-13-1464, APJL appeals from the bankruptcy court's order finding APJL in contempt for willful violation of the automatic stay and award of damages (Damages [*2] Order). For the reasons discussed below, we AFFIRM the bankruptcy court's decision in all respects except for the award of actual damages in the amount of $68,598.49. We VACATE the award of actual damages and REMAND for further proceedings to determine the appropriate amount.

## I. FACTS

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see _Fed. R. App. P. 32.1_), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, _11 U.S.C. §§ 101-1532_, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2015 Bankr. LEXIS 662, *2

## A. The Parties

APJL is a Virginia based limited liability company. APJL and its related companies AP Consulting, LLC, and J&L Management Consultants, Inc., provide struggling furniture retailers with augmentation services by helping them acquire inventory when they have insufficient credit to do so. APJL would use its own credit lines to order furniture for its client/customers, assist with liquidation and going out of business sales, and provide personnel and consultation with the operation of such sales. APJL provided these services for set percentages on the sale proceeds and extension of credit. Allen A. Parvizian (Parvizian) is APJL's president.

Treasures, Inc. was a home furniture retailer with stores in San Diego and Irvine, California. By early 2011, debtor had fallen behind on numerous obligations, was subject to lawsuits and judgments, and was at risk of closing down.

## B. The Prepetition Agreement [*3] Between APJL and Treasures, Inc.

In July 2011, APJL and debtor entered into an agreement whereby APJL would assist debtor by providing augmentation services and consulting services, as well as conducting a "Closing of the Clearance Center" to raise funds, liquidate excess inventory, and improve debtor's financial condition. In the event this sale and "theme" did not achieve the objectives, APJL would conduct going out of business sales at debtor's San Diego store.

The agreement provided for APJL's augmentation services in several sections. Under ¶ 1(c), APJL agreed to, among other things, make available its contacts, credit lines and purchasing power to provide the going out of business sales with additional furniture and rugs (Additional Furniture) to be sold during the sale. APJL would order the Additional Furniture in debtor's name, but using its own credit lines. APJL charged a 3% fee (PMSI Fee) on all Additional Furniture based on invoice cost on any goods, material, or services that were placed on APJL's credit line.

Because debtor sold its own furniture inventory (Debtor's Furniture) in the sales along with the Additional Furniture, the agreement contemplated that the sale proceeds [*4] generated from Debtor's Furniture would be segregated from the sale proceeds generated from the Additional Furniture. As part of the segregation process, APJL used its own credit card machines for sales of the Additional Furniture so that proceeds generated from those sales went into an account designated by the parties as the augmentation account (Augmentation Account).

Paragraph 4 of the agreement provided for the establishment of the Augmentation Account:

> Consultant shall establish a bank account (Bank Account), which shall be controlled by Consultant. All proceeds from the Sale in relation to Additional Furniture shall be deposited into the Bank Account and distributed as provided under this Agreement. All other proceeds in relation to the Company Inventory shall be deposited into the Company's bank account.[2]

The parties further agreed that APJL would make weekly distributions to debtor from the Augmentation Account according to the priorities set forth in ¶ 7 of the agreement:

> Provided that Consultant establishes [*5] the Bank Account, proceeds of the Sale shall be distributed on a weekly basis in the following order: (i) first, to pay the Consultant Fee, (ii) second, if Additional Furniture is provided by Consultant to the Sale on a consignment basis, to pay for such Additional Furniture as it is sold and delivered; and if Additional Furniture is provided by Consultant other than on a consignment basis, to pay the invoice cost plus billed freight of such Additional Furniture, (iii) third, to pay for the PMSI Fee due to the Consultant, (iv) fourth, to pay back all monies advanced by the Consultant to the Sale, and (v) fifth, a draw from the Augment Account to the Company of 30% of all deposits during an Accounting Week; [and (vi)] sixth, the remainder to the Company.

---

[2] Debtor had its own separate bank account for the sale of its own furniture. This account was not involved in the accounting dispute between the parties which is described below.

Essentially then, the Augmentation Account was to contain proceeds from the sale of the Additional Furniture from which would be paid APJL's 5% commission, its 3% PMSI fee, and certain expenses. After payment of the expenses, APJL would advance funds to debtor on a weekly basis from the remaining Additional Furniture proceeds — referred to as draws — which provided debtor with regular cash flow.

Although the draw was an advance to debtor [*6] on the profit for the Additional Furniture sales, each week the parties conducted an accounting to make sure sufficient cash remained in the account to cover the payment of APJL's commission and other expenses. The draw was set at 30% of deposits but mutually agreed upon adjustments occurred each week that altered the amount actually distributed to debtor.

The reconciliation process involved debtor's accounting supervisor, Ms. Butryn, sending a spreadsheet of debtor's sales and expense information to Parvizian. In turn, Parvizian would send a spreadsheet to Ms. Butryn that detailed the cumulative accounting information for all the income and expenses associated with the Augmentation Account. APJL's reconciliation sheet contained running totals from the beginning of the sale, through the end of the given week (Reconciliation Sheet). It was designed to account for all receipts and disbursements from the Augmentation Account as well as the amounts "due to" and "due from" the parties so the amount of the draw could be determined.

The expenses which reduced the amount of the weekly draw to debtor, included, among others: (1) advertising; (2) minor store expenses; (3) delivery fees; (4) expense [*7] reimbursements; and (5) credit card chargebacks. APJL's 5% commission was also included in the Reconciliation Sheet and was paid directly from the Augmentation Account on a weekly basis. The Reconciliation Sheet further settled between the parties collected delivery fees and sales taxes on invoices issued by debtor.

Finally, adjustments were made to account for sales of Debtor's Furniture that were accidently charged on APJL's credit card machines and likewise to account for sales of Additional Furniture that were charged on debtor's credit card machines. Since debtor did not have an American Express account, APJL's American Express account was sometimes used to receive payments for Debtor's Furniture. Such amounts were applied and credited to the calculation of debtor's draw, less the fees charged by American Express. Once the parties agreed upon the figure, APJL would wire the draw amount to debtor's bank account.

During the course of the relationship, the cash flow from the sales was not sufficient to pay expenses and provide debtor with the necessary cash for payroll and advertising. As a result, Parvizian would occasionally defer deducting certain expenses.[3]

APJL opened the Augmentation Account at its bank in Virginia using its tax identification number, with a subtitle on the account of the store name, "Treasures Furniture San Diego." The address on the account was APJL's address in Virginia. APJL took control over the account under the terms of the agreement.

Paragraph 6 of the agreement addressed the sales tax:

> The Company shall solely be responsible for the payment of sales tax arising out of the Sale to applicable taxing authorities. If Consultant establishes the Bank Account, (a) Consultant shall forward to the Company the sales tax collected by Consultant, and the Company shall pay the sales tax to the applicable taxing authorities on a timely basis, and (b) from time to time, Consultant may, at the Company's request but at Consultant's sole and absolute discretion, provide the Company with an advance against moneys owed by Consultant to Company under the terms of this Agreement (the "Draw"); provided, however, that such Draw will be deemed first as an advance against sales tax collected [*9] by Consultant and due to Company and then the remaining as an advance against funds owed by Consultant to Company under the terms of this Agreement.

Finally, in ¶ 19, entitled <u>Security Interest</u>, debtor granted APJL a senior first priority security interest and lien in the Additional Furniture and their proceeds and all rights of [debtor] under the agreement, including, without limitation,

---

[3] Due to APJL's decision [*8] to defer charging certain expenses, the weekly Reconciliation Sheet could not have reflected the actual contractual amounts owed between the parties.

2015 Bankr. LEXIS 662, *8

amounts due or to become due to [debtor] under the terms of the agreement, all funds in the "Bank Account," and all the proceeds (including any insurance proceeds and credit card receivables).

## C. Bankruptcy Events

On May 8, 2012, debtor filed a voluntary chapter 11 petition. In Schedule B, debtor listed an account receivable owing from APJL in an amount to be determined. In Schedule G, debtor listed the agreement with APJL as an executory contract. Debtor's Schedules did not list the Augmentation Account as its personal property nor was APJL listed as a secured creditor in Schedule D.

There is no indication in the record that a final accounting of the Augmentation Account for the prepetition period was performed before the petition was filed. Nor is it clear what the Augmentation Account balance was on [*10] the petition date. The parties simply continued to operate under the agreement as if there had been no bankruptcy filing, with APJL providing consultation and augmentation services to debtor and receiving payment for those services under the contract terms. Proceeds from the postpetition sales of Additional Furniture continued to be deposited into the Augmentation Account. The parties never sought approval for the arrangement from the bankruptcy court, although at various times in the record APJL and the court referred to the agreement as being "approved."[4]

In late June 2012, the Chief Restructuring Officer (CRO), James Emmitt, and debtor conducted a cost-benefit analysis of operations at the San Diego store and determined that it was in the best interests of the estate to [*11] close the store by the end of July 2012. Debtor reached an agreement with its landlord to surrender the premises and decided to conduct an auction of its equipment and furniture inventory during the period July 19 through July 25, 2012. Debtor requested APJL to act as auctioneer.

## 1. The Court-Approved Auction And Employment Of APJL

Although debtor did not think court approval of the auction was necessary because it thought the auction was ordinary course, debtor filed a motion to shorten time on its notice of intended action to auction property on July 18, 2012. The next day, debtor filed an ex parte application seeking bankruptcy court approval of the auction. In the application, debtor proposed using APJL as auctioneer under the terms set forth in an attached summary.

On July 20, 2012, the bankruptcy court granted debtor's motion to shorten time and scheduled a hearing on July 26, 2012. At the July 26, 2012 hearing, the bankruptcy court continued the matter to August 23, 2012, and required debtor to file a supplemental declaration explaining the circumstances as to how the emergency arose and provide information on the results of the auction.

On August 2, 2012, debtor filed a supplemental [*12] application seeking nunc pro tunc approval of the auction since the auction had concluded. Debtor explained that its portion of the net proceeds from the auction was approximately $70,000 which amounted to 40% of the gross proceeds generated from the sale.

At the August 23, 2012 hearing, the bankruptcy court orally granted debtor's request for approval of the auction. On the same day, debtor filed an application to employ APJL as the auctioneer nunc pro tunc. Parvizian filed a perfunctory "Declaration of Disinterest" in support, stating that "to the best of his knowledge," APJL did not have any connection with debtor "other than its liquidation and augmentation services" and did not represent any interest that was adverse to the estate.

---

[4] In its September 10, 2013 Memorandum Decision, the bankruptcy court stated that its "earlier approval of the Agreement" did not relieve APJL from its obligation to turn over the funds when the dispute arose. We found no court approval of the agreement in the record. Rather, the bankruptcy court approved APJL's employment in connection with the postpetition auction based on different terms than those in the agreement.

2015 Bankr. LEXIS 662, *12

The United States Trustee (UST) objected to the employment application, contending that additional disclosures were required: specifically, APJL's connections with debtor, creditors or any other party in interest; the nature of APJL's relationship with debtor since July 2011; whether APJL was a creditor of debtor; whether APJL received payments from debtor since the filing of the bankruptcy; and the amount of payments debtor made to APJL one year preceding [*13] the bankruptcy. The UST also requested further information regarding APJL's affiliate, HFR Rugs, and arrangements regarding APJL's consignment of furniture for the auction.

Debtor responded by explaining APJL's augmentation services and disclosing that APJL had received $224,613.99 in commissions from the Augmentation Account since July 2011.

Parvizian filed a supplemental declaration on August 23, 2012, stating that as of the petition date, APJL was not a creditor of debtor, and that, "to the best of his knowledge" APJL had no interest adverse to debtor, its estate or creditors. Parvizian explained that APJL continued to provide debtor with augmentation and liquidation services since the petition date under the terms of the agreement and had received postpetition payments totaling $368,499.16 from all accounts. He also declared that prior to debtor's bankruptcy filing, APJL invoiced and received payment for all services it provided to debtor under the terms of the agreement (this statement would later come under scrutiny). Finally, Parvizian declared that the auction term sheet authorized APJL to supplement Debtor's Furniture with its own furniture, and with rugs provided by APJL's [*14] affiliate, HFR Rugs, and that APJL paid debtor a 10% royalty on the gross sales for the consigned furniture and a 12% royalty on the gross sales for the HFR-consigned rugs.

The bankruptcy court entered the orders approving the auction and APJL's employment as the auctioneer nunc pro tunc on August 28, 2012.

About two weeks later, pursuant to the bankruptcy court's local rule 2002-2(a)(6), debtor filed a notice of intended action and opportunity for hearing seeking allowance of $37,649.34 in compensation for APJL's auctioneer services.

**2. The Late September Reconciliation Dispute**

By late September, debtor had closed its retail stores and was out of business. APJL performed an internal audit and reconciliation to determine where the parties stood under their agreement. Critical to the audit was a determination of the amount of profit that was available to debtor during its final weeks of operation.[5] The record shows that APJL deviated from its previous protocol and did not exchange information with debtor regarding the late September reconciliations or conduct the settle up discussions.[6]

According to APJL, the audit revealed that it had excluded $75,759 in credit card fees (CC Fees) and a $28,000 manager's salary (Manager's Salary) from the weekly Reconciliation Sheet calculations. Thus, APJL included the unaccounted for portion of the Manager's Salary, along with the CC Fees, in the Reconciliation Sheet for September 21, 2012 (September 21 Reconciliation). This resulted in an adjusted draw for debtor of $11,942.50,

---

[5] From a final accounting perspective, if APJL had intentionally or inadvertently not included expenses in the previous reconciliations, [*15] theoretically the draws on the front end of the agreement could have been overfunded. Therefore, at the end of the agreement, debtor's draws would have to be reduced to account for those omitted expenses.

[6] Emmitt declared that APJL gave no notice to debtor nor did it receive debtor's consent before reducing the late September disbursements. There is nothing in the agreement that required such notice or consent, but that is how the parties had been operating up until this time.

2015 Bankr. LEXIS 662, *15

when debtor anticipated a draw closer to $110,000 which was based on a 40% gross sales figure.[7] Debtor asserted that APJL owed it an additional $99,000 for that week.

In the September 26, 2012 reconciliation (September 26 Reconciliation), debtor calculated it was entitled to $85,000 from gross proceeds, without any deduction for expenses. APJL had assessed charges against that amount resulting in a $36,601.04 net disbursement to debtor.

After receiving the September 21 Reconciliation, debtor requested a full reconciliation of the Augmentation Account and expressed concern over the sudden inclusion of the CC Fees and Manager's Salary. Debtor's counsel sent an email to APJL's corporate attorney, Jeffrey Wolf, on September 25, 2012, which states in relevant part:

> Treasures has ceased operations and is closing its retail stores. Treasures and APJL are currently in the process of completing the final accounting and reconciliation of the Treasures-APJL furniture transactions. APJL has recently provided transaction documentation to Treasures, which the Treasures CRO team is in the process of reviewing.
>
> As you may be aware, APJL manages a Treasure furniture-account bank account, [*17] which contains money that is property of the bankruptcy estate. It is in both parties' best interest to ensure the transparency, speed and accuracy of the final reconciliation process, as well as to protect property of the estate. Therefore, Treasures requests that all funds remain untouched in the bank account during the reconciliation process, and that APJL make no disbursements without Treasures' written consent until a final reconciliation is completed. Please confirm APJL's agreement to this arrangement, and thank you in advance for your cooperation.

On the same date, the CRO sent an email to Parvizian requesting Parvizian to seek written approval from him before making any disbursement from the account.

Having received no response from Mr. Wolf, debtor's counsel sent Mr. Wolf a follow-up letter on October 1, 2012 (October 1, 2012 Letter), which stated in relevant part:

> Treasures had determined that . . . APJL . . . has not provided the proper reconciliation documentation, and more significantly, appears to have made approximately $99,000 of unauthorized and inappropriate debits from the Treasures-liquidation bank account.
>
> Treasures demands that APJL provide no later than close of [*18] business tomorrow, October 2, 2012, (i) immediate delivery to Treasures of the requested QuickBooks reconciliation documentation flash drive, (ii) immediate freezing of the account with no disbursements made without written authorization from Treasures CRO, Mike Bergthold, which authorization will be granted for appropriate charges, and (iii) immediate payment to Treasures of $184,000, consisting of a $99,000 balance owed from the 9/20/12 weekly settlement and $85,000 owed from the 9/27/12 weekly settlements.
>
> Please be advised that . . . failure to meet these demands constitutes willful violation of the automatic stay and conversion of the property of the estate, which is punishable by sanctions.

### 3. Debtor's Ex Parte Application For Order To Show Cause

APJL did not comply with debtor's demands. Accordingly, on November 2, 2012, debtor filed an ex parte application for order to show cause (OSC) why APJL should not be held in contempt for violating the automatic stay and ordered to disgorge funds. Debtor argued that the Augmentation Account contained property of the estate because the account was used for the deposit of gross proceeds from some sales held at debtor's Irvine and San Diego [*19] retail locations and was also used for the deposit of gross proceeds from the San Diego auction. Debtor further asserted that APJL owed it at least $184,000 ($99,000 + $85,000) for the last two September reconciliations and that there were unexplained transactions related to prepetition services.

---

[7] Under the agreement, debtor was entitled to draws of 30% of the net profit. However, Parvizian later orally agreed to deviate [*16] from the agreement and allow debtor draws of 40% of the net profit. This oral agreement, however, did not change the final sums which would be due debtor under the terms of the agreement.

2015 Bankr. LEXIS 662, *16

APJL has no right to unilaterally withdraw funds from the account without complying with the reconciliation process and resolving any disputed charges with the Debtor. Moreover, withdrawing funds from and cashing checks against the Augmentation Account for amounts allegedly owed to APJL on a pre-petition basis is also a willful violation of the automatic stay.

Debtor also alleged that APJL had wrongfully withheld certain funds for delivery fees in the amount of $10,822 and sales taxes in the amount of $56,098 which were collected and deposited into the Augmentation Account. Debtor argued that APJL was required to release these funds to it under ¶ 6 of the agreement.

In connection with APJL's compensation for auctioneer services, debtor asserted that APJL, as a prepetiton creditor, was not disinterested when its employment as auctioneer was approved by the bankruptcy court and APJL also failed [*20] to disclose its relationship with a related entity furniture company called Cameron Michael. Debtor alleged that APJL diverted hundreds of thousands of dollars from the Augmentation Account to Cameron Michael.

Finally, debtor argued that $133,265 was in the Augmentation Account at the time it made the demand to freeze the account. Of that amount, $56,098 was collected for sales taxes and $10,822 was collected for delivery fees, which APJL refused to release to debtor, despite multiple demands to do so. Despite debtor's demand to freeze the account, APJL continued to cash checks and withdraw funds so that by the end of September 2012, the account balance was $88,840.20, and by the end of October 2012, the account balance was $48,395.19.

## 4. Debtor Objects To APJL's Compensation As Auctioneer

On October 15, 2012, debtor objected to its own notice of intended action regarding APJL's compensation for auctioneer services. Debtor essentially articulated the same problems it described in its ex parte application for an OSC and requested the bankruptcy court to order APJL to disgorge $37,649.34 in fees that APJL took as compensation for its auctioneer services.

APJL responded to the fee objection, [*21] asserting that debtor's contentions were false. APJL maintained that debtor did not own the Augmentation Account or APJL's Additional Furniture and was entitled to receive funds from the account only after the payment of all of APJL's expenses and overhead and the costs of goods and furniture. APJL also explained the reconciliation process for the September 21 Reconciliation and that it simply netted out the CC Fees and Manager's Salary that had been debited from the account since the beginning of the agreement. APJL stated that as to the September 26 Reconciliation, there were chargebacks, expense reimbursements, fees, advertising reimbursements and other reimbursements that were due to APJL that were netted out. APJL characterized the fees as "administrative" in nature as part of the parties' on going relations and because of the way the agreement was structured. APJL stated again that it was not a creditor of debtor.

On October 29, 2012, Parvizian filed a declaration in support of the opposition (October 29, 2012 Declaration), which stated in part:

> Debtor ceased operations in September 2012, and APJL reviewed its accounts for the September settlements in order to account for fees [*22] and expenses that had not been credited to APJL. As such, when APJL reviewed the amount to be settled for September 21, 2012 (incorrectly stated as 20th), it netted out the credit card fees that the Bank Account was debited from the beginning of the Agreement. The credit card fees totaled approximately $75,759 and were never included in the Debtor's weekly settlement documentation or paid by Debtor. In addition, APJL paid for the office manager who worked the Sale and deducted it from the proceeds ($28,000) as the Agreement provides that all expenses that APJL incurs are to be netted out of proceeds.

The bankruptcy court set the hearings on the OSC and debtor's objection to APJL's compensation for November 29, 2012.

## 5. The November 29, 2012 Hearing

2015 Bankr. LEXIS 662, *22

At the November hearing, the bankruptcy court decided that, based upon the language in the agreement and its understanding of the relationship between the parties, which the court characterized as a secured-creditor relationship, the monies in the Augmentation Account belonged to debtor.

The bankruptcy court also found that Parvizian willfully failed to disclose that APJL was a prepetition creditor in connection with APJL's employment application [*23] as auctioneer, and that had the court known APJL would use postpetition proceeds to offset a prepetition obligation, it would never have approved APJL's employment. The court denied APJL's application for compensation based on its failure to disclose prepetition creditor status or relationships.

In addressing debtor's application for the OSC, the bankruptcy court found there was no factual dispute that the Augmentation Account contained property of the estate, which was subject to APJL's security interest.[8] Therefore, the court did not think an evidentiary hearing was warranted on the property of estate issue. The bankruptcy court found APJL's offset of prepetition expenses (i.e., the CC Fees and Manager's Salary) was an improper violation of the automatic stay. Finally, the court ordered APJL to turn over the $75,759 and $28,000 amounts related to its offset and if APJL did not comply the court would hold APJL in contempt.[9]

APJL's counsel requested the opportunity to submit a supplemental declaration prior to entry of an order on the OSC to clarify the CC Fees and Manager's Salary issue. The bankruptcy court granted the request and ordered debtor's counsel to lodge orders on the auctioneer fee application and the OSC.

At the same hearing, the court considered debtor's motion to dismiss its chapter 11 case. Debtor's motion was mostly based on the fact that it had completed the orderly liquidation of its furniture inventory and ceased its retail operations at both the San Diego and Irvine retail stores. The bankruptcy court denied the motion and converted the case to one under chapter 7. On November 30, 2012, the case was converted and Leonard J. Ackerman was appointed the chapter 7 trustee (Trustee).

## 6. Post-Hearing Pleadings

Trustee's counsel did not lodge the orders on the auctioneer fee application and the OSC until February 15, 2013. Debtor's counsel, Christine Baur, later explained [*25] that there was some confusion as to whether she or Trustee's counsel was supposed to lodge the orders after the case was converted.

APJL filed an objection to Trustee's proposed form of order on the OSC along with Parvizian's declaration regarding the return of funds to the Augmentation Account. In his February 22, 2013 declaration (February 22, 2013 Declaration), Parvizian stated in relevant part:
> As opposed to any reimbursement as alleged in the OSC, the CC Fees and Manager Salary were debited regularly throughout the Agreement from the Augmentation Account. . . .
> The [Manager Salary] was paid directly from the Debtor's Augmentation Account. . . .
> The CC Fees were also automatically debited from the Debtor's Augmentation Account by Global Pay on behalf of the credit card companies and by American Express on a monthly basis. . . . Again, these amounts were paid directly from the Debtor's Augmentation Account.
> APJL never paid the CC Fees and was never reimbursed for such fees. . . .

Parvizian further declared that not all expenses were included in the weekly reconciliations and the draws did not account for all expenses paid through the Augmentation Account during the course of the relationship. [*26]

---

[8] As indicated below, APJL accepted the bankruptcy court's ruling that the funds in the Augmentation Account belonged to debtor and later adjusted Parvizian's description of the account as such.

[9] At the time the court ordered APJL to return the funds to the Augmentation [*24] Account, the court stated: "We need to restore the status quo so that the ownership of this account can be resolved." However, the bankruptcy court had already found that the funds in the account were property of the estate.

Parvizian concluded that due to the netting out of mutual debts, APJL should not be required to return any amounts to debtor.

Attached to Parvizian's declaration were copies of the Augmentation Account bank statements from March 2012 to September 2012 which showed the amounts for the CC Fees and Manager's Salary debited from the account. Also attached was the itemization for the debits to the account for the Manager's Salary for the time period March 8 through September 23, 2012, and the itemization for the debits to the account for the CC Fees for the time period May through September 2012. These itemizations show that most of the debits occurred postpetition.

Thereafter, the bankruptcy court issued a scheduling order requiring APJL to explain the perceived "inconsistent positions" adopted by APJL and setting the matter for further hearing on March 28, 2013. The inconsistency arose because it was difficult to discern whether APJL paid the disputed charges and then reimbursed itself as indicated in Parvizian's October 29, 2012 Declaration or whether the disputed charges had been automatically debited from the account as indicated in Parvizian's February 22, 2013 Declaration.

On March [*27] 4, 2013, Parvizian submitted a declaration in response to the bankruptcy court's scheduling order. Parvizian declared that his statements in the October 29, 2012 Declaration referred to an accounting of the funds for the September 2012 reconciliation of the Augmentation Account and not to any actual funds removed by APJL. At the time of that declaration, Parvizian testified that he believed the Augmentation Account belonged to APJL and, therefore, he referred to the payments as though they were made by APJL when they were made from the Augmentation Account. However, in the February 22, 2013 Declaration, Parvizian explained that he meant to show that the funds for the CC Fees and Manager's Salary were automatically deducted from the Augmentation Account each month. Recognizing that debtor owned the Augmentation Account, he no longer stated that APJL paid the expenses. Parvizian further declared that all debtor's expenses for the Additional Furniture, including the CC Fees and Manager's Salary, were paid regularly from the Augmentation Account and never reimbursed to APJL. Therefore, Parvizian again maintained that APJL owed debtor nothing under the agreement.

## 7. The March 28, 2013 Hearing [*28]

At the March 28, 2013 hearing, after considering the evidence presented by APJL, the bankruptcy court concluded that the deductions for the CC Fees and Manager's Salary were a "red herring" since those expenses had already been paid out of the Augmentation Account. The bankruptcy court concluded from the evidence that APJL had "double charged" the CC Fees and Manager's Salary since those monies had already been deducted from the Augmentation Account. The court further noted that the funds in the account belonged to debtor and that APJL failed to release the funds when debtor requested. The bankruptcy court also observed that although APJL's justification for holding back payment to debtor was the overfunding of debtor's draws prior to the September reconciliations, it found no evidence in the record to support that argument. In the end, the bankruptcy court ordered APJL to restore funds in the amount of $100,000 (roughly the amount of the CC Fees and Manager's Salary) to the Augmentation Account so that an accounting could be done and the funds properly allocated through an adversary proceeding.

## 8. The April 12, 2013 OSC

The bankruptcy court issued an OSC on April 2, 2013, which was amended [*29] on April 12, 2013, due to a typo. In the OSC, the court found that APJL was entrusted with control over property of the estate and APJL abused that trust by not accounting for the funds in the Augmentation Account and by giving incomplete and inconsistent explanations. The bankruptcy court ordered APJL to appear on May 2, 2013, to show cause why the court should not find APJL in contempt for its violation of the automatic stay and award damages to the estate.

The court also ordered APJL to (1) return the sum of $104,425.68 to the Augmentation Account for the CC Fees and the Manager's Salary, plus the unpaid sales taxes and delivery fees of $66,920.49 for a total of $171,346.17; (2) provide an accounting for its disposition of the funds in the Augmentation Account to the debtor; and (3) make

no further dispositions from the Augmentation Account pending resolution of the accounting adversary proceeding which must be brought by Trustee within thirty days of its order.

In response to the OSC, Parvizian filed a declaration on April 25, 2013, regarding the distribution of funds from the account. Parvizian declared that APJL was never paid more than the amounts set forth in the court-approved [*30] [10] agreement, which amounts were fixed contracted amounts of a 5% consulting fee on gross sales of the debtor (less sales tax and delivery fees), a 3% fee for all services connected with the provision of the Additional Furniture, and reimbursement of certain expenses paid on an ongoing basis during the entire course of the relationship. Parvizian also declared that once he discovered that the CC Fees and Manager's Salary were not shown in the weekly reconciliations, he realized that there was not enough money in the Augmentation Account to pay debtor's draws in the amounts debtor thought were due. As a result of the inadvertence, debtor had been receiving too much in weekly draw payments by the exact amount of $98,551.25 which would have otherwise been deducted from the draw payments on a weekly basis during the life of the agreement. This overpayment on the draws, according to Parvizian, explained the shortfall as of September 2012.

Parvizian also attached a copy of debtor's reconciliation for the week ended September 21, which showed $69,477.82 due, and not the $110,000 originally [*31] requested. Further, Parvizian pointed out that the amount debtor claimed due for the September 26 Reconciliation was $22,122.65, an amount that was $14,478.50 less than the $36,601.04 payment made by APJL to debtor for the period. Parvizian declared that one possible explanation for the difference was that debtor had asked him to increase its draws to 40% as the business was winding down. Parvizian agreed to increase the draws because he had estimated, incorrectly, that there would be sufficient funds in the Augmentation Account to cover such payments.

Finally, Parvizian pointed out that ¶ 6 of the agreement stated that draw payments will be deemed first as an advance against sales tax collected by APJL and due to debtor and then the remaining as an advance against funds owed by APJL to debtor under the terms of the agreement. Parvizian explained that since the final draw payment exhausted the funds in the Augmentation Account, debtor should have set aside monies sufficient to cover any applicable sales tax and delivery fees.[11] Parvizian attached back-up material and explanatory spreadsheets for the period of September 1, 2012 to April 2013.

On May 1, 2013, Trustee filed a reply to Parvizian's declaration. Trustee asserted that he was not satisfied with the explanations and documents proffered by APJL. Therefore, Trustee stated that he would file an adversary proceeding by the deadline set by the court.[12] Trustee also pointed out that APJL had failed to comply with the court's OSC, which required it to immediately turn over the sum of $171,346. Next, Trustee asserted that payments in the amount of $183,219 were made to Cameron Michael, one of APJL's largest vendors, in September and October 2012. According to Trustee, APJL never disclosed the relationship between Cameron Michael and APJL in its employment application for auctioneer. Finally, Trustee argued that the September and October 2012 payments in the amount of $115,678 to HFR Rugs did not contain appropriate back-up, and therefore these amounts should be returned to the Augmentation Account until an accounting was provided.

### 9. The May 2, 2013 Hearing On The OSC

On April 30, 2013, the bankruptcy court issued a tentative ruling for the May 2, 2013 hearing on the OSC. The court noted that it required APJL to restore the disputed funds to the estate until the dispute was resolved and Trustee

---

[10] As we noted earlier, despite the bankruptcy court's statements to the contrary, the agreement was never approved.

[11] The bankruptcy court later found that despite [*32] these provisions, the parties actually handled the sales taxes in a different manner. "APJL provided a weekly accounting of sales taxes collected and then Debtor provided an invoice to APJL for it to pay."

[12] Trustee filed the adversary proceeding on [*33] May 10, 2013, alleging claims for relief for turnover of and accounting for property of the estate under § 542; constructive trust; declaratory relief; avoidance and recovery of postpetition transfers and conversion.

2015 Bankr. LEXIS 662, *33

was obligated to commence an adversary proceeding by May 20, 2013, if he disputed APJL's accounting. The court also observed that there was no evidence before it regarding the damages sustained by the estate in dealing with the turnover order. The bankruptcy court continued the matter to May 30, 2013 to determine: (1) whether the chapter 7 trustee will file an adversary proceeding to account for the funds at issue in the OSC by May 10, 2013; (2) whether APJL had returned $171,346.17 to the Augmentation Account as ordered by the court, and if not, why it has not complied with the court's order; (3) whether APJL had any excuse or justification for its inconsistent explanations for its actions taken in regard to the [*34] Augmentation Account; (4) whether APJL withdrew and failed to return the compensation for auctioneer services which the court declined to award; and (5) the amount of damages sustained by the estate for APJL's action in not turning over the funds to the estate since September 2012.

When the court issued its tentative ruling the order denying APJL's auctioneer compensation had not yet been entered.

On May 21, 2013, the bankruptcy court entered a Scheduling Order Re Order To Show Cause. The court ordered APJL to immediately turn over $171,346.17 to Trustee or his counsel to be held in counsel's client trust account pending further order of the court. The court continued the hearing on the OSC to June 13, 2013.

On May 24, 2013, the bankruptcy court entered an Order Implementing Order Dated 4/12/13. The bankruptcy court noted that it had ordered APJL to return $171,346 to the Augmentation Account on April 12, 2013. Trustee sought an order to allow those funds to be kept in a client trust account of his attorney. The court granted Trustee's request and ordered APJL to immediately turn over to Trustee or his counsel all funds in the Augmentation Account.

On May 28, 2013, APJL turned over to [*35] Trustee the amount of $27,958.58 which remained in the Augmentation Account.

## 10. The June 10, 2013 Entry Of The Compensation Order

On June 10, 2013, the bankruptcy court entered the order denying APJL compensation for its auctioneer services. The court also ordered Parvizian to file a declaration regarding the disbursement of funds from the auction by June 14, 2013, and ordered the funds disgorged and turned over to Trustee by June 17, 2013.

In his declaration, Parvizian declared that $37,649 in auctioneer fees were paid to APJL at the conclusion of the auction which took place at the end of August 2012 (the record shows the San Diego auction was complete by the end of July 2012.) Parvizian explained that APJL was never instructed that such fees could not be paid, and debtor did not request that such fees be held with debtor.[13] APJL stated that it would make its best efforts to return the fees by June 17, 2013.

APJL complied with the bankruptcy court's order and filed a timely appeal.

## 11. The June 13, 2013 Hearing On The OSC

On June 6, 2013, APJL filed a brief re OSC. There, APJL continued to assert that all the accounting issues needed to be resolved in the context of the adversary proceeding and that the orders relative to the $171,346 and associated attorney's fees should be stayed. APJL maintained that if it was compelled to pay nearly $250,000, it would become insolvent.

---

[13] This statement was contrary to the order employing APJL as auctioneer. The order provided that payment of APJL's compensation and reimbursement of expenses would be made only after it complied with local **bankruptcy rule 6005** and notice to creditors. However, the employment order appears to have been [*36] entered after APJL had received payment for its services.

2015 Bankr. LEXIS 662, *36

APJL also explained that it did not return the $171,346 to the Augmentation Account since the CC Fees and Manager's Salary were paid directly to the creditors and thus any turnover of such funds should be made by the parties who received the monies. APJL again asserted that debtor received exactly what it was owed under the agreement and APJL did not double charge debtor for any fees, costs or taxes. APJL reiterated that under the agreement, debtor was to apply all draw payments to sales taxes first. APJL further maintained that the inconsistencies were previously explained in Parvizian's declaration filed on March 3, 2013. APJL stated that it had an "honest" misunderstanding [*37] of the nature of the Augmentation Account. Finally, APJL discussed its relationship with Cameron Michael and stated that Cameron Michael was not a creditor of debtor.

Parvizian submitted another declaration dated June 6, 2013. Parvizian mostly reiterated the explanation for the reconciliation process. He declared that APJL would occasionally defer deducting certain expenses because debtor did not have the necessary cash flow to support making payroll and paying for advertising. He explained that APJL had deferred deducting the Manager's Salary from debtor's draws to assist debtor with cash flow. Parvizian testified that other items also resulted in the overfunding of debtor's draws, including APJL's failure to include the CC Fees in its weekly settlement calculations. Finally, Parvizian declared that in no way did APJL wrongfully take funds from debtor.

Trustee filed a brief in support of the OSC on May 30, 2013. Trustee reported that he had filed an adversary proceeding against APJL and that APJL had not returned the $171,346 to the Augmentation Account nor had it returned the compensation the court declined to award.

Trustee requested damages of $29,000 in attorney's fees to remedy [*38] the violation of the stay and $13,112.50 connected with his attempt to obtain an accounting from APJL, preparing for the June 2013 hearing, and responding to APJL's supplemental briefing. The CRO requested fees of $15,662.50 and Christine Baur, attorney for debtor, requested $33,400.36 for the estate's pre-conversion attorney fees. The bankruptcy court issued a tentative ruling prior to the hearing finding that (1) the Augmentation Account was property of the estate, (2) APJL was obligated to seek relief from stay before undertaking unilateral offset, (3) APJL willfully violated the automatic stay, and (4) APJL violated the court's turnover order. The court ordered APJL to return $171,346 and for each day that it failed to do so, it would be assessed an additional fine of $250 per day.

At the hearing, the bankruptcy court essentially adopted its tentative ruling, but allowed APJL to submit further briefing on the issue why it was impossible for APJL to comply with the court's turnover order. The court took the matter under submission.

## 12. Supplemental Briefing By APJL

On July 17, 2013, APJL submitted a supplemental brief. There, APJL again provided an accounting, this time specifically [*39] with respect to the October 1, 2012 Letter in which debtor requested APJL to freeze the account. APJL identified numerous third party checks that had been issued before October 1 in the amount of $25,582.66. APJL explained that it had "frozen" the account on October 2, 2012, all those checks would have been returned for insufficient funds to a total of nine different third-party vendors and service providers. APJL argued that the writing of bad checks could have subjected it to both civil and criminal liability in California, where the debtor is located, and in Virginia, where APJL is located. APJL asserted that it would not have been reasonable or prudent for APJL to have stopped payment or frozen the account as it pertained to such outstanding checks. APJL further noted that debtor had not challenged the validity of any of the expenses associated with the payments made by APJL after the October 1, 2012 Letter.

Finally, APJL argued that it was impossible for it to comply with the court's turnover order since the CC Fees had been collected by the credit card companies and the funds were not in its possession. Likewise, the Manager's Salary had also been withdrawn and those funds were [*40] not in its possession. Finally, APJL argued that a turnover motion could not be used as a shortcut for a breach of contract dispute under the holding in _Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network), 332 B.R. 896, 914—916 (Bankr. D. Nev. 2005)_.

2015 Bankr. LEXIS 662, *40

### 13. The September 26, 2013 Entry Of The Damages Order

On September 10, 2013, the bankruptcy court issued its memorandum decision and civil contempt order against APJL for failing to turn over property of the estate and to pay damages. The court found APJL in violation of the automatic stay and awarded attorney's fees in the amount of $77,240 and actual damages in the sum of $68,598.49, for a total of $145,838.49.

In calculating the actual damages, the bankruptcy court used the time period from September 25, 2012 (the date debtor requested APJL to freeze the Augmentation Account) to October 1, 2012 (the date debtor informed APJL that it was in violation of the stay). According to the court, the balance in the Augmentation Account on October 1, 2012, was $116,702.74. Deposits after that date were made in the amount of $44,394.12. Therefore, the bankruptcy court found that the amount of $161,096.86 ($116,702.74 + $44,394.12) would have been preserved had APJL frozen the account.

Due to the fact APJL had paid debtor $36,601.04 on September [*41] 26, 2012, the bankruptcy court gave APJL credit for that amount. The court also gave APJL credit for the amount of $27,958.75[14] which it had turned over to Trustee on May 28, 2013. Therefore, the total credit given was $64,539.62,[15] to which the court added another credit of $27,958.75[16] leaving $68,598.49 unaccounted for ($161,096.86 - $64,539.62 - $27,958.75 = $68,598.49).

The order further provided that for each day that APJL refused to return $68,598.49 to Trustee, APJL would be assessed an additional fine of $100, plus additional attorney's fees incurred in rectifying its continuing contumacious conduct. The bankruptcy court entered the Damages Order on September 26, 2013. APJL timely appealed.

### II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(E) and (O). We have jurisdiction under 28 U.S.C. § 158.

### III. ISSUES

A. Whether the bankruptcy court erred by denying APJL compensation [*42] for its auctioneer services on the grounds that it was a prepetition creditor and therefore not "disinterested";

B. Whether the bankruptcy court erred in finding that the funds in the Augmentation Account were property of the estate;

C. Whether the bankruptcy court erred in finding that APJL had violated the automatic stay; and

D. Whether the bankruptcy court abused its discretion by awarding contempt damages for APJL's violation of the automatic stay without an evidentiary hearing.

### IV. STANDARDS OF REVIEW

---

[14] We could not find this exact amount in the record. Trustee's brief in support of the OSC filed May 30, 2013, indicates that APJL turned over $27,948.58 to Trustee.

[15] Using the bankruptcy court's numbers, the amount of the credit actually was $64,559.79.

[16] It appears that the court gave APJL double credit for the $27,958.49 amount.

2015 Bankr. LEXIS 662, *42

The abuse of discretion standard is applied to our review of the bankruptcy court's award of attorney's fees, the court's decision not to hold an evidentiary hearing, and its finding of civil contempt and imposition of sanctions. _Feder v. Lazar (In re Lazar), 83 F.3d 306, 308 (9th Cir. 1996)_ (attorney's fees); _Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1139 (9th Cir. 2004)_ (evidentiary hearing); _F.T.C. v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999)_ (civil contempt and imposition of sanctions).

The bankruptcy court abuses its discretion when it fails to identify and apply "the correct legal rule to the relief requested," _United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009)_ (en banc), or if its application of the correct legal standard was "(1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" _Id. at 1262_.

We review for clear error the bankruptcy court's **[*43]** findings of fact in connection with the civil contempt order. _Affordable Media, LLC, 179 F.3d at 1239_.

Whether property is property of the estate is a question of law reviewed de novo. _Collect Access LLC v. Hernandez (In re Hernandez), 483 B.R. 713, 719 (9th Cir. BAP 2012)_. Similarly, the applicability of the automatic stay and exceptions thereto are questions of law that we consider de novo. _Lockyer v. Mirant Corp., 398 F.3d 1098, 1107 (9th Cir. 2005)_. De novo means review is independent, with no deference given to the trial court's conclusion. _Barclay v. Mackenzie (In re AFI Holding, Inc.), 525 F.3d 700, 702 (9th Cir. 2008)_.

# V. DISCUSSION

## A. The Compensation Order

The denial of APJL's compensation for its auctioneer services raises questions regarding APJL's disinterestedness, adverse interest to the estate, and adequacy of its disclosures. These issues are relevant to whether the bankruptcy court abused is discretion in denying APJL compensation for its auctioneer services.

Under _§ 327(a)_, a debtor in possession may employ a professional with court approval only if (1) they are disinterested persons and (2) they do not hold or represent an interest adverse to the estate. See _Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis), 347 B.R. 679, 687 (9th Cir. BAP 2006)_. The two tests overlap. Id.

A "disinterested person" is defined as one who "is not a creditor" and "does not have an interest materially adverse to the interest of the estate or of any class of creditors . . . by reason of any direct or indirect relationship to, connection with, or interest **[*44]** in, the debtor . . . or for any other reason." _§ 101(14)(A),(C)_. A creditor is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." _§ 101(10)(A)_. A claim is defined as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." _§ 101(5)(A)_.

APJL's primary argument on appeal is that the bankruptcy court erroneously determined that it was a prepetition creditor of the bankruptcy estate and thus not disinterested. According to APJL, the error occurred because the bankruptcy court assumed that APJL had withdrawn and paid itself almost $100,000 in September 2012 to reimburse itself for the CC Fees and Manager's Salary. APJL asserts that the evidence shows those funds were debited directly from the Augmentation Account and thus APJL was not owed anything from debtor. APJL maintains it was not a prepetition creditor and therefore was a disinterested party.

We agree that APJL is not a prepetition creditor based upon the automatic debits for the CC Fees and Manager's Salary from the Augmentation Account prepetition. **[*45]** APJL had no "right to payment" from debtor for these expenses when they were automatically debited from the account. However, APJL has asserted throughout this record that it overfunded draws to debtor because it did not take into account the CC Fees and Manager's Salary. The record shows that some of the CC Fees and Manager's Salary were debited from the Augmentation Account

prepetition, but it is impossible to tell from this record whether APJL overfunded draws to debtor prepetition or whether the overfunding was limited to the postpetition period. If the draws were more than the expenses which were debited during the prepetition period, then it is possible APJL was owed money from debtor on the petition date. Most troubling is that APJL states that it was not a creditor even though it never conducted a final accounting as of the petition date that determined the rights and liabilities of the parties for the prepetition period.[17]

In any event, APJL overlooks that debtor granted APJL a security interest in the Additional Furniture and its proceeds under the terms of the agreement. Therefore, as of the petition date, APJL was a secured creditor and as the record shows, APJL continued to enforce its secured claims against debtor's funds in the Augmentation Account postpetition. APJL was thus not disinterested and failed to disclose its secured creditor status under the agreement in connection with its request for employment as auctioneer.

A professional may be disinterested if it does not have an "interest materially adverse to the interest of the estate . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason." _§ 101(14)(C)_. An "adverse interest" means "to possess or assert any economic interest that would tend to lessen the value of the bankrupt estate or that would [*47] create either an actual or potential dispute in which the estate is a rival claimant." _In re Tevis, 347 B.R. at 687_.

APJL had control of the Augmentation Account throughout the pre and postpetition relationship between the parties and offset pre and postpetition claims against debtor's postpetition draws. Moreover, during the postpetition period, APJL made payments from the account to entities that were insiders of APJL and those relationships were never disclosed in the context of its employment application. Further, since the parties continued to operate under the agreement postpetition, APJL was owed money on its commissions and reimbursement of other expenses on a recurring basis and therefore had postpetition creditor status. But this relationship was never disclosed.

The record shows that APJL clearly had an economic interest and connection to debtor under the terms of the agreement which were adverse to debtor as borne out by the present dispute. These facts were relevant and material to the bankruptcy court's scrutiny of the relationship between APJL and debtor for purposes of accessing whether APJL held an adverse interest or conflict of interest. Yet, APJL never disclosed these facts to the bankruptcy [*48] court.

_Rule 2014_ provides that the employment application "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest . . . ." The disclosure provisions of _Rule 2014_ are strictly applied with the burden on the applicant to come forward and make full, candid, and complete disclosure. _Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.), 63 F.3d 877, 881 (9th Cir. 1995)_.

> Even a negligent or inadvertent failure to disclose fully relevant information may result in a denial of all requested fees. . . . The duty of professional is to disclose all connections with the debtor, debtor-in-possession, insiders, creditors, and parties in interest. . . . They cannot pick and choose which connections are irrelevant or trivial. . . . No matter how old the connection, no matter how trivial it appears, the professional seeking employment must disclose it. _Id. at 882_.

The record shows that APJL failed to meet the duty of full and complete disclosure. Whether its failure to disclose was willful or not is irrelevant to strict application of the disclosure rules.

---

[17] Under the execution of the terms of the agreement described in Parvizian's declarations, a weekly reconciliation was done and checks issued to balance the account on Mondays for the period ending several days prior. Therefore, on any given Tuesday, APJL was [*46] owed money by debtor for transactions since the last reconciliation. The likelihood that APJL was owed money on the petition date — and therefore a creditor — was significant, even without taking into account that APJL was not factoring in all expenses when it gave draw checks to debtor.

A lack of disinterestedness does not mandate a denial of all compensation if the professional [*49] relies on the employment order. _First Interstate Bank of Nev. v. CIC Inv. Corp. (In re CIC Inv. Corp.), 192 B.R. 549, 553—54 (9th Cir. BAP 1996)_. In In re CIC Inv. Corp., the Panel held that the bankruptcy court had discretion to award compensation for services performed in reliance on the order authorizing employment, before that order was reversed on appeal. Unlike here, the professional in that case had "fully disclosed" its relevant connections and "all potential conflicts" at the outset. Furthermore, we cannot see how APJL relied upon the employment order for its compensation when the order was entered after the auction was complete and entered nunc pro tunc. In any event, APJL does not tell us how it relied upon the order approving its employment, which was entered after the fact.

In the end, the bankruptcy court has broad discretion in designing appropriate remedies to deal with violations of Rule 2014. _In re Park-Helena, 63 F.3d at 882_; see also _In re Film Ventures Int'l, Inc., 75 B.R. 250, 253 (9th Cir. BAP 1987)_; § 328(c). Considering the record as a whole, we conclude the bankruptcy court did not abuse its discretion when denying APJL's compensation request; the court applied the proper legal standards and its application of those standards to the facts is supported by the record. We thus affirm the Compensation Order.

## B. The Damages Order

The Damages Order involves the interplay between §§ 541, 542, 362, and 105(a).

### [*50] 1. Property of the Estate

"Property of the estate" is defined in § 541(a) as all of a debtor's legal or equitable interests in property, wherever located, as of the commencement of the case. "Any interest in property that the estate acquires after the commencement of the case" is property of the chapter 11 estate. § 541(a)(7). While § 541 sets forth what interests of the debtor must be transferred to the bankruptcy estate, it does not address "'the threshold questions of the existence and scope of the debtor's interest in a given asset.'" _Dumas v. Mantle (In re Mantle), 153 F.3d 1082, 1084 (9th Cir. 1998)_. Rather, the bankruptcy court must look to state property law to determine whether, and to what extent, the debtor has any legal or equitable interests in property as of the commencement of the case. _Id_. The party seeking to include property in the estate bears the burden of showing that the item is property of the estate. _Seaver v. Klein—Swanson (In re Klein—Swanson), 488 B.R. 628, 633 (8th Cir. BAP 2013)_. Whether the proceeds in the Augmentation Account were property of the estate would necessarily preface the determination of whether a stay violation occurred.

Trustee argues on appeal that APJL conceded that the funds were property of the estate and thus the doctrines of judicial admission or judicial estoppel should [*51] apply. Judicial admission does not apply since APJL did not admit facts, but only adopted the legal conclusion by the bankruptcy court that the funds were property of the estate. Judicial estoppel "is an equitable doctrine invoked by a court at its discretion" and "is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process." _Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)_. Since the bankruptcy court's decision that the funds in the Augmentation Account were property of the estate is reviewed de novo, we fail to see how APJL's alleged inconsistent position on appeal would have an adverse impact on the judicial process.

APJL points to impermissible burden shifting as grounds for reversal. We do not discern any improper burden shifting and, as further discussed below, the agreement controlled the rights of the parties to the funds in the Augmentation Account. Once the bankruptcy court interpreted the agreement as a matter of law, the court still gave APJL an opportunity to refute the court's interpretation through other evidence, which it did not do.

2015 Bankr. LEXIS 662, *51

The prepetition agreement between the parties controls the rights of the [*52] parties to the funds in the Augmentation Account that were generated from the postpetition sales of the Additional Furniture.[18] The interpretation of the agreement is governed by Virginia law. Under Virginia law, we review the bankruptcy court's interpretation of a contract de novo and "'have an equal opportunity to consider the words of the contract within the four corners of the instrument itself.'" *Uniwest Constr., Inc. v. Amtech Elevator Servs., 280 Va. 428, 699 S.E.2d 223, 229 (Va. 2010)*. We construe the contract as a whole, giving terms their ordinary meaning unless some other meaning is apparent from the context. *Id.* The various provisions are harmonized, giving effect to each when reasonably possible, and are construed considering the circumstances under which they were executed and the condition of the parties. *Id.*

"Contract language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time. However, a contract is not ambiguous merely [*53] because the parties disagree as to the meaning of the terms used." *Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 561 S.E.2d 663, 668 (Va. 2002)*. When a contract is ambiguous, the court will look to parol evidence to determine the intent of the parties. *Id. at 667—68*.

Relying on the language used by APJL and debtor in the agreement, the bankruptcy court found that the agreement was essentially a financing arrangement whereby APJL loaned money through its credit lines to debtor for the purpose of acquiring the Additional Furniture which was bought in debtor's name. The court did not find any provision that said anything about the account being "owned" by APJL, only that APJL had "control". Accordingly, the court concluded that the proceeds deposited into the Augmentation Account belonged to debtor, subject to APJL's security interest. Thus, it follows that the proceeds were property of the estate.

We agree with the bankruptcy court's assessment that the language in the agreement shows a financing arrangement and a creditor-debtor relationship. The agreement plainly states that debtor granted APJL a security interest in all the proceeds from the Additional Furniture and other rights it had under the agreement and that APJL would buy the Additional Furniture in debtor's name. [*54] Furthermore, although APJL's possession and control of the account are indicia of ownership, its possession and control was necessary to perfect its security interest under Virginia law. See *Va. Code § 8.9A—312(b)(1)* (a security interest in a deposit account can only be perfected by control as defined in *Va. Code § 8.9A—314*); *Va. Code § 8.9A—314* (perfection by control occurs when the secured party actually obtains actual control of the deposit account).

The agreement is not ambiguous about APJL's security interest in the proceeds from the Additional Furniture. As the bankruptcy court noted, it would be illogical for APJL to have a security interest in its own property. Likewise, it would be illogical for APJL to be paying its own expenses (such as the commissions) out of its own property.

On appeal, APJL focuses on the priority of the distributions under the agreement, pointing out that debtor was allowed to share in the sale proceeds only after the payment of expenses (among them the CC Fees and Manager's Salary as well as costs of goods sold and other expenses). Whether or not the distribution scheme was adhered to is a separate question from what constitutes property of debtor's estate.

APJL also argues on appeal that the Augmentation Account [*55] operated more like an escrow account and thus the funds were not property of the estate under the holding of *Dzikowski v. NASD Regulation, Inc. (In re Scanlon), 239 F.3d 1195, 1198 n.6 (11 Cir. 2011)* and *Carlson v. Farmers Home Admin. (In re Newcomb), 744 F.2d 621, 626-27 (8th Cir. 1984)*. Because APJL raises the escrow argument for the first time on appeal, we do not need to consider it. *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957 (9th Cir.1989)*. However, even if we did, APJL's escrow analogy is contrary to the language of the agreement. Accordingly, we affirm the bankruptcy court's decision that the funds in the Augmentation Account were property of debtor's estate.

---

[18] Since the proceeds due debtor from the court-approved auction were paid by APJL prior to this dispute, it does not appear that debtor is owed any money from the auction. Therefore, we attribute the funds in the account to the postpetition sales and not proceeds from the auction.

2015 Bankr. LEXIS 662, *55

## 2. Stay Violation

To assemble the bankruptcy estate, *§ 542* requires that, during bankruptcy proceedings, an entity "in possession, custody, or control" of certain property in the estate "shall deliver" that property to the trustee (subject to certain conditions not relevant here). *§ 542(a)*. While bankruptcy proceedings are pending, the automatic stay provisions of *§ 362* work with *§§ 541* and *542* to shelter the debtor's estate from action by creditors, enabling the debtor to get the relief and fresh start that are among the goals of the bankruptcy regime. Thus, under *§ 362*, filing a bankruptcy petition automatically effects a stay of "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." *§ 362(a)(3)*. Those who violate **[*56]** *§ 362* are liable for related damages and costs.

Since the funds in the Augmentation Account constituted estate property under *§ 541(a)(7)*, APJL was required to return the funds to debtor as soon as debtor notified it to return the property. Otherwise, it would be holding the funds in violation of the stay. See *United States v. Whiting Pools, Inc., 462 U.S. 198, 206-07, 103 S. Ct. 2309, 76 L. Ed. 2d 515 (1983)*. The record shows that debtor notified APJL to pay the amount of $184,000 (which represented the $99,000 and $85,000 shortfalls for the late September reconciliations) in the October 1, 2012 Letter and asserted that a stay violation would result if APJL failed to do so. The bankruptcy court found the October 1, 2012 Letter required APJL to "turn over the funds in the Augmentation Account under *§ 542* upon debtor's demand."

On appeal, APJL argues that the fundamental flaw in the bankruptcy court's finding is that the October 1, 2012 Letter never made a turnover request. Rather, according to APJL, the letter demanded that APJL "freeze" the account but that disbursements could be made with the CRO's written authorization. APJL further notes that in debtor's ex parte application for the OSC, debtor requested that APJL "disgorge" $184,000 as opposed to turnover.

We are not persuaded that these nuances change the **[*57]** outcome when considering the context of the letter as a whole. Debtor made a number of demands in the October 1, 2012 Letter, including requests for reconciliation documentation, freezing the account, and the immediate payment of $184,000. The letter also advised that failure to comply with these demands "constitutes willful violation of the stay and conversion of property of the estate which is punishable by sanctions." Importantly, by requesting the freezing of the account, limiting disbursements to those with written approval, and the return of $184,000, debtor sought to maintain the status quo, which is the purpose behind the automatic stay. See *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n, 997 F.2d 581, 585 (9th Cir. 1993)* (the automatic stay is designed to effect an immediate freeze of the status quo). "The stay requires the creditor to maintain the status quo ante and to remediate acts taken in ignorance of the stay." *Franchise Tax Bd. v. Roberts (In re Roberts), 175 B.R. 339, 345 (9th Cir. BAP 1994)*.

Regardless of whether debtor used the terminology "disgorge" or "turnover" later in the OSC, we conclude that the October 1, 2012 Letter was sufficient to put APJL on notice that its failure to freeze the account or its wrongful retention of funds would result in a violation of the automatic stay. Of course, APJL did not freeze the account **[*58]** nor did it seek written authorization from the CRO for any disbursements. It also never turned over any money to debtor. Had APJL re-established the status quo, its violation of the stay would have ended.[19]

APJL argues that by the time debtor demanded turnover of the $184,000, the expenses had already been disbursed to the credit card companies and the manager. The fact that APJL no longer had possession of the funds is irrelevant in a turnover analysis under *§ 542*. Section *542(a)* states in relevant part, "[A]n entity . . . in possession, custody, or control, **during the case**, of [property of the estate, or exempt property], shall deliver to the trustee, and account for, such property **or the value of such property**, unless such property is of inconsequential value or

---

[19] One consequence of APJL not freezing the account was chargebacks by the credit card companies which occurred after October 1, 2012. These chargebacks themselves may have been violations of the automatic stay, especially if they were for prepetition debits which is unclear from the record. Whether pre or postpetition, a credit card company must get relief from stay to charge back a debtor's merchant account.

2015 Bankr. LEXIS 662, *58

benefit to the estate." (Emphasis added). **[*59]** The Ninth Circuit has recently rejected the argument APJL makes on appeal.

> First, 'during the case' means that the trustee may bring a motion for turnover against an entity who has possession of the property of the estate, or had possession of that property at some point during the bankruptcy case. Second, the phrase "or the value of such property" indicates that the entity need not be in possession of the property itself when the trustee files the motion for turnover. Because *§ 542(a)* permits a trustee to recover 'the value of [the] property,' instead of just the property itself, possession cannot be required in order to bring the motion for turnover.

*Shapiro v. Henson, 739 F.3d 1198, 1201 (9th Cir. 2014)*; see also *Newman v. Schwartzer (In re Newman), 487 B.R. 193 (9th Cir. BAP 2013)*.

In sum, "the failure to return property of the estate with knowledge of the bankruptcy is a violation of both the automatic stay and of the turnover requirements of the Bankruptcy Code." *Abrams v. Sw. Leasing and Rental Inc. (In re Abrams), 127 B.R. 239, 241—43 (9th Cir. BAP 1991)* (creditor's continuing retention of repossessed vehicle after receiving notice of bankruptcy violated automatic stay). By its express terms, *§ 542(a)* is self-executing and does not require the debtor to take any action or commence a proceeding or obtain a court order to compel the turnover. See *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 432 B.R. 812, 823 (9th Cir. BAP 2010)*. Accordingly, we conclude that the bankruptcy court properly **[*60]** found that APJL violated the automatic stay by retaining property which was property of the estate.

The bankruptcy court also found APJL's offsets of prepetition expenses against debtor's postpetition draws violated the automatic stay. APJL does not address this finding with any specificity on appeal. To assert the right to setoff or pursue satisfaction of his or her claim, a creditor must seek relief from the automatic stay. *§ 362(d)(1)*. Further, "[t]he decision to award setoff rests squarely within the discretion of the Bankruptcy Court." *Hal Inc. v. United States (In re Hal, Inc.), 122 F.3d 851, 854 (9th Cir. 1997)*. Because no final accounting was completed in this record, we do not know if APJL did offset any prepetition expenses, but this has no effect on our decision to affirm.

### 3. The Contempt Order

Contempt damages under *§ 362(k)* are available to individuals, but because neither debtor as a corporation nor Trustee may seek contempt damages under *§ 362(k)*, contempt damages are available under *§ 105*. *Havelock v. Taxel (In re Pace), 67 F.3d 187, 192 (9th Cir.1995)*.

Under *§ 105*, "[t]he standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1190—91 (9th Cir. 2003)*. The movant must prove that the creditor (1) knew the automatic stay was **[*61]** applicable and (2) intended the actions which violated the injunction. *Id.*; *Zilog, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996, 1007-08 (9th Cir. 2006)*. "Knowledge of the injunction, which is a prerequisite to its willful violation, cannot be imputed; it must be found." *In re Zilog, Inc., 450 F.3d at 1008*; see also *In re Dyer, 322 F.3d at 1191—92* (contempt sanctions upheld where creditor admitted having notice of the automatic bankruptcy stay, yet took no steps to remedy his violation of the stay).

APJL does not mention these standards in this appeal. Rather, it argues that it should not be held in contempt because debtor's demand to pay $184,000 was not the proper subject of a "turnover" demand based on the holding in *In re Nat'l Audit Def. Network, 332 B.R. at 911* (citing *MCI Telecommunications Corp. v. Gurga (In re Gurga), 176 B.R. 196, 199 (9th Cir. BAP 1994)* ("turnover proceedings involve return of **undisputed** funds. . . .")). There, the bankruptcy court noted that "settled and controlling law holds that the presence of an active dispute over the amount owed takes the action out of the turnover area; one cannot shortcut a breach of contract action with a turnover demand." *Id.*

2015 Bankr. LEXIS 662, *61

Here, APJL argues that the parties were in a dispute over an accounting issue. However, APJL again confuses the accounting issue with the property of estate issue. The proper distribution of debtor's property is at issue in the pending adversary proceeding which includes [*62] a request for an accounting. We agree that there are material disputes with respect to the accounting, but that does not excuse APJL from turning over property of the estate for purposes of maintaining the status quo.

We are also not convinced that it was "impossible" for APJL to comply with debtor's demand for return of the $184,000. First, APJL contends that the return of these funds cannot be the subject of a turnover order since they related to the CC Fees and Manager's Salary and other expenses which involve breach of contract. This argument we already addressed.

APJL next argues that since the demand for the return of $184,000 was not tied to the funds actually in the Augmentation Account, all the pleadings and hearings thereafter were focused on accounting issues. According to APJL, the bankruptcy court's attempt to combine the two issues led to the illogical result that improperly punishes APJL for claims that were never raised in the pleadings. Thus, according to APJL, the court improperly held that APJL had the ability to comply with a court order.

These arguments have nothing to do with the impossibility defense to a contempt order. To successfully assert this defense, APJL [*63] as the alleged contemnor must establish "categorically and in detail" its inability to comply with the court's order. _Affordable Media, LLC, 179 F.3d at 1239_. As noted by the bankruptcy court, APJL did not meet its burden. There is nothing in the record that shows APJL lacked resources to turn over the funds from other sources. More significantly, APJL could have frozen the account on October 1, 2012, or requested debtor to assert the automatic stay against the credit card companies. See _Moratzka v. Visa USA (In re Calstar, Inc.), 159 B.R. 247 (Bankr. D. Minn. 1993)_ (recovery of chargebacks from postpetition deposit is a violation of _§ 549_ and the automatic stay). Instead, APJL conducted its late September reconciliations without notifying debtor and then ignored debtor's demand to freeze the account and return the funds associated with the previously undisclosed charges. Even setting aside whether APJL had the ability to return the disputed $184,000, it clearly could have turned over the funds in the account on October 1, 2012. As the bankruptcy court observed, APJL alone was "responsible for the inability to comply." _In re Count Liberty, LLC, 370 B.R. 259, 275 (Bankr. C.D. Cal. 2007)_.


## 4. Damages

APJL complains that the damages award was improperly calculated and inequitable.

The basis for the equitable argument is that the bankruptcy court is to blame for the accrued attorney's [*64] fees and the other damages. APJL maintains that the "focus" of the hearings shifted after November 29, 2012, to the accounting issues raised in the OSC application which resulted in three hearings, multiple tentative rulings and interim orders, multiple pleadings, and thousands of pages of accounting records that the parties all reviewed. At the end of all these hearings, the bankruptcy court calculated the damages based on the amount of money that was actually in the Augmentation Account, which was never the focus of the inquiry all along. As a result, the parties spent tens of thousands of dollars arguing over accounting issues, which the court specifically ordered to be dealt with in the adversary proceeding. APJL contends that "[t]he entire cost of the Bankruptcy court's flawed process has been imposed upon APJL [because] the determination of what funds were in the Augmentation Account could have been decided at the November 29, 2012 hearing."

At the November 29, 2012 hearing, the following discussion took place:

MR. FAITH: Right. Well, your honor, I guess from my standpoint, what I want to be able to communicate to the client is, look, if you put the money back in there, at least the [*65] relief from stay issue isn't still hanging over our head in terms of the OSC.

. . .

MR. FAITH: I don't know if you're saying that or not.

2015 Bankr. LEXIS 662, *65

THE COURT: Well, I am . . . . Damages for pursuing stay violations . . . don't continue to actually recover the money once the stay violation has ended, but they end when the stay violation ends. So basically the client's damages for stay violation are going to go until it puts the money back. So that's its choice. I'm not saying it's going to give them a free pass for its conduct today. I'm just telling you, you want more time, you want more process, you can have it. If you take that time, you're going to be faced with a potential consequence.

It was APJL's counsel that requested the opportunity for further briefing and it was Parvizian's February 22, 2013 declaration that was inconsistent with his previous declaration. That inconsistency raised further questions regarding the CC Fees and Manager's Salary which had been automatically deducted from the Augmentation Account. Further briefing ensued due to the new issues raised. Thus, the focus did shift from the initial inquiry as to whether APJL had reimbursed itself for the offset expenses. Nonetheless, [*66] the record shows that APJL never complied with any of debtor's demands set forth in the October 1, 2012 Letter. Had APJL frozen the account when debtor requested, it would have been unnecessary for the bankruptcy court to determine what the amount of the funds were in the Augmentation Account as of October 1, 2012. Moreover, APJL never complied with the bankruptcy court's ruling on November 29, 2012 when it ordered APJL to turn over the $75,759 and $28,000 amounts related to its offset, nor did APJL comply with the court's April 12, 2013 OSC which required APJL to return $171,346.17 to the Augmentation Account. Had APJL complied with either of the bankruptcy court's orders, the damages for its stay violation would have stopped accruing. In short, we are not persuaded by APJL's equitable argument, which also was raised for the first time on appeal. See *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 882 (9th Cir. 2003)* (arguments raised for the first time on appeal are waived).

Finally, APJL contends that the bankruptcy court's award of actual damages required an evidentiary hearing because the funds at issue were "unaccounted for." In its memorandum decision, the bankruptcy court found:

> APJL's noncompliance with its automatic stay obligations and expenditure [*67] of the funds in the Augmentation Account for its own purposes has also caused actual damages to the estate in the amount of the deficiency between the funds on hand on October 1, 2012 and what was left when the funds were finally turned over. In its Supplemental Briefing on July 17, 2013 in response to the OSC, APJL admitted $133,265.98 was in the Augmentation Account when counsel initially requested it be frozen on September 25, 2012, and $116,702.74 was in the Augmentation Account on October 1, 2012 when Debtor's counsel informed APJL that it was in violation of the automatic stay. After October 1, 2012, an additional $44,394.12 was also deposited in the Augmentation Account. Had APJL frozen the account on October 1, 2012, $161,096.86 of Debtor's funds would have been preserved. After October 2012, APJL paid Debtor $64,539.62. By June 17, 2013, when APJL turned over the remaining funds in the Augmentation Account to the Chapter 7 Trustee, the balance had dwindled to $27,958.75. Of the original $161,096.86 that was available and could have been turned over to Debtor as of October 1, 2012, $68,598.49 is unaccounted for. These are the actual damages the Court awards to the estate.

The [*68] narrow question APJL raises on appeal is whether there is evidence to support the $68,598.49 award. APJL argues that since the accounting of the funds is at issue in the adversary, it should have had the opportunity to respond by way of an evidentiary hearing. APJL contends that the unaccounted for funds are disputed.

However, the bankruptcy court awarded the amount of $68,598.49 because APJL failed to preserve those funds by freezing the account. While APJL tries to link the actual damages to an accounting dispute, APJL once again misses the point that the status quo is the policy behind the automatic stay. The fact that certain funds may be "unaccounted" for does not make debtor's actual damages any less. Under these circumstances, the lack of an evidentiary hearing was not an abuse of discretion.

Nonetheless, we conclude that the bankruptcy court's calculations regarding the actual damages are not supported by the record and thus clearly erroneous. The bankruptcy court apparently gave APJL double credit for the $27,958.75 it turned over to Trustee on May 28, 2013. In addition, although the court fixed the account balance from which it credited the monies paid over to debtor as of [*69] October 1, 2012, $36,000 of that credit was paid before October 1 and perhaps this credit was improperly given. Thus, the bankruptcy court's calculation of the damages award was clearly erroneous.

2015 Bankr. LEXIS 662, *69

## VI. CONCLUSION

For the reasons stated, we AFFIRM the Compensation Order and AFFIRM the Damages Order in all respects except for the award of actual damages. We VACATE the award of actual damages and REMAND for further proceedings to determine the appropriate amount.

**End of Document**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): **Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and any other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points and Authorities, Declaration of Jeffrey I. Golden and Request for Judicial Notice** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 31, 2025  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On January 31, 2025 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  January 31, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Debtor
Jamie Lynn Gallian
jamiegallian@gmail.com

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 31, 2025 | Gloria Ramos | /s/ Gloria Ramos |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
1785210.1  ES 087                ES 087                **F 9013-3.1.PROOF.SERVICE**
                                                        **ES 087**

<u>ADDITIONAL SERVICE INFORMATION (if needed):</u>

**1.** <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
eisrael@danninggill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1785210.1                              ES 088

ES 088

**F 9013-3.1.PROOF.SERVICE**
ES 088

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Laila Masud on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov


**2.  SERVED BY U.S. MAIL**

| | | |
|---|---|---|
| **Jamie Lynn Gallian, Debtor** | **The Honorable Scott C. Clarkson** | **Buyer** |
| 16222 Monterey Ln Unit 376 | U.S. Bankruptcy Court | Galaxy Homes |
| Huntington Beach, CA 92649 | Ronald Reagan Federal Building | Attn: Richard Herr |
| | 411 W. Fourth Street, Suite 5130 | 12852 Bubbling Well Road |
| | Santa Ana, CA 92701 | Santa Ana, CA  92705 |
| **Greg Bingham - Broker** | **William Friedman - Broker** | **Office of the United States Trustee** |
| Coldwell Banker Residential | Coldwell Banker Realty | 411 West Fourth Street, Suite 7160 |
| 840 Newport Center Dr Ste 100 | 840 Newport Center Dr Ste 100 | Santa Ana, CA  92701-4593 |
| Newport Beach, CA 92660-6377 | Newport Beach, CA 92660-6377 | |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**
1785210.1    **ES 089**                          **ES 089**                          **ES 089**

ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 2:21-bk-11710-SC |
| JAMIE LYNN GALLIAN, | Chapter 7 |
| Debtor. | **TRUSTEE'S NOTICE OF MOTION AND MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION; MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATIONS OF JEFFREY I. GOLDEN AND GREG BINGHAM AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF** |

Date:    March 4, 2025
Time:    11:00 a.m.
Place:   Courtroom 5C
         411 W. Fourth Street
         Santa Ana, California

///

///

///

///

1

**<u>TABLE OF CONTENTS</u>**

2

<div align="right"><u>Page</u></div>

3    MEMORANDUM OF POINTS AND AUTHORITIES ...................................................7

4    I.       FACTUAL STATEMENT ...................................................................................7

5            A.     Bankruptcy Background ...........................................................................7

6            B.     The Debtor's Schedules ...........................................................................7

7            C.     The Manufactured Home at Issue ...........................................................8

8                   1.     The Property ...........................................................................8

9                   2.     Liens Against the Property ......................................................8

10                  3.     The First Objection to the Debtor's Homestead Exemption, Appeal and Remand ..........................................................................9

11

12                  4.     The Objection to the Debtor's Latest Exemption Claim ................10

13            D.     Trustee's Avoidance and Recovery of Transfers of Title and Liens on the Property ..................................................................................................10

14                  1.     Stipulated Judgments ...........................................................10

15                  2.     Default Judgments ...............................................................11

16            E.     Marketing Efforts..................................................................................13

17            F.     Denial of Debtor's Discharge and Appeal..............................................13

18            G.     Debtor's Chapter 13 Filing.....................................................................13

19            H.     Debtor's Motion to Convert to Chapter 13 .............................................13

20            I.      Insurance Placed on the Property ...........................................................14

21   II.     PROPOSED OVERBID PROCEDURES ........................................................14

22   III.    PROPOSED TREATMENT OF LIENS AND HOMESTEAD EXEMPTION...................16

23   IV.    LEGAL ARGUMENT.........................................................................................17

24            A.     The Proposed Sale of the Property is Supported by the Trustee's Sound Business Judgment and is in the Best Interests of the Debtor's Estate and Its Creditors ..............................................................................................17

25

26            B.     The Proposed Sale May be Authorized Under Section 363 of the Bankruptcy Code........................................................................................................18

27

28

<div align="center">i</div>

ES 091                           ES 091                           ES 091

**<u>TABLE OF CONTENTS</u>**
**(Continued)**

**<u>Page</u>**

    C.    The Trustee Requests that the Court Find that the Buyer and Any Backup
Buyer Are Good Faith Purchasers Pursuant to Section 363(m) of the
Bankruptcy Code ......................................................................................................19

    D.    Waiver of Fed. R. Bankr. P. 6004(h) is Warranted ....................................................19

V.    CONCLUSION................................................................................................................20

DECLARATION OF JEFFREY I. GOLDEN..................................................................................22

DECLARATION OF GREG BINGHAM.......................................................................................24

REQUEST FOR JUDICIAL NOTICE...........................................................................................26

1785196.1  27064

ii

ES 092               ES 092               ES 092

1

# TABLE OF AUTHORITIES

2

Page

3
## CASES

4
*Ewell v. Diebert (In re Ewell)*,
  958 F.2d 276, 281 (9th Cir. 1992) ......................................................... 19

5

6
*In re Bunn-Rodemann*,
  491 B.R. 132, 134-35 (Bankr. E.D. Cal. 2013) .................................... 12

7
*In re Continental Air Lines, Inc.*,
  780 F.2d 1223 (5th Cir. 1986) ............................................................... 17

8

9
*In re Derivium Capital, LLC*,
  380 B.R. 392 (Bankr. D.S.C. 2007) ...................................................... 17

10
*In re Lahijani*,
  325 B.R. 282 (B.A.P. 9th Cir. 2005) .................................................... 17

11

12
*In re Lionel Corp.*,
  722 F.2d 1063 (2d Cir. 1983) ................................................................ 17

13
*In re Pine Coast Enters., Ltd.*,
  147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) ............................................... 19

14

15
*In re Roach*,
  2019 WL 408628, at *3-5 (B.A.P. 9th Cir. 2019) ................................ 12

16
*Stephens Indus., Inc. v. McClung*,
  789 F.2d 386 (6th Cir. 1986) ................................................................. 17

17

18
## STATUTES

19
11 U.S.C. § 356(d)(1) ................................................................................. 10

20
11 U.S.C. § 363(b)(1) ................................................................................. 17

21
11 U.S.C. § 363(f) ...................................................................................... 18

22
11 U.S.C. § 363(m) ..................................................................................... 19

23
11 U.S.C. § 522(f) ...................................................................................... 12

24
11 U.S.C. § 551 ........................................................................................... 11

25
11 U.S.C. § 704(a)(1) ................................................................................. 17

26
11 U.S.C. § 727 ........................................................................................... 13

27
Cal. Civ. Proc. Code § 704.720(a) ............................................................. 10

28
Cal. Code Civ. P. § 703.010 ....................................................................... 12

ES 093          ES 093          ES 093

1

**TABLE OF AUTHORITIES**
(Continued)

2                                                                                                    **Page**

3   Cal. Code Regs. tit. 25 § 5595 (2025) ................................................................ 16

4   Cal. Code. Civ. P. § 697.310(a) ......................................................................... 16

5
    **OTHER AUTHORITIES**
6
    10 Collier on Bankruptcy ¶ 6004.11 (2025) ....................................................... 19
7

8   **RULES**

9   Fed. R. Bankr. P 6004(h) ............................................................................. 19, 20

10  Local Bankruptcy Rules 6004-1(c) ...................................................................... 2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

2  **JUDGE AND INTERESTED PARTIES:**

3        PLEASE TAKE NOTICE that on March 4, 2025, at 11:00 a.m., in Courtroom "5C" of the

4  United States Bankruptcy Court, for the Central District of California, located at 411 W. Fourth

5  Street, Santa Ana, California, Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the

6  bankruptcy estate (the "Estate") of Jamie Lynn Gallian (the "Debtor"), will and hereby does move

7  the Court (the "Motion") under 11 U.S.C. § 363, and Local Bankruptcy Rules 6004-1(c) and 9013-

8  1, for an order authorizing the sale of the 2014 Skyline Custom Villa manufactured home, decal no.

9  LBM1081 (the "Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach,

10  California 92649 (the "Space"). The proposed sale is pursuant to a Purchase and Sale Agreement

11  and amendments (collectively the "PSA"), copies of which are attached collectively to the

12  Declaration of Jeffrey I. Golden (the "Golden Declaration") as Exhibit "1." The Trustee is

13  requesting authority to sell the Property free and clear of liens and interests pursuant to 11 U.S.C. §

14  363(f) and authorize the Trustee to disburse the amount of the avoided and preserved first lien to

15  the Trustee.

16        Pursuant to Local Bankruptcy Rule 6004-1(c), the Trustee provides the following

17  information:

18        A.     The date, time and place of the hearing on the Motion are set forth above.

19        B.     The Trustee has proposed the sale of the Property to Galaxy Homes, LLC (the

20  "Buyer"), subject to overbidding.

21        C.     The property to be sold consists of the Trustee's right, title, and interest in the

22  Property, with the following description:

23        Skyline, Custom Villa, 2014, net size 60x30. Serial Numbers
      AC7V710394GB/GA; DOH/HUD Numbers: PFS1130282 and PFS1130281;
24        Decal Number LBM1081 Year 2006.

25

26        The Property to be sold does not include the ground lease for the Space (the "Ground

27  Lease"), which was deemed rejected long ago. However, the Association (Houser Bros.) has

28  agreed to give any qualified buyer – but not the Debtor, a new ground lease.

D.      The Buyer has conducted all due diligence on the Property that the Buyer believes is necessary for the completion of this sale.  Any and all contingencies agreed to relating to the sale have been waived, and thus the sale will not be contingent upon any events or conditions other than Court approval and potential overbidding.

The Property will be sold for $275,000 (the "Proposed Sale Price") on an "as is," "where is" condition, with no warranty or recourse whatsoever.

E.      Based on records maintained by the California Department of Community Development (the "HCD"), which maintains title and lien records for manufactured homes, and proofs of claim filed in the Debtor's case, there are no known consensual encumbrances against the Property that have not been avoided, recovered and preserved for the benefit of the Estate.

The Trustee seeks to sell the Property free and clear of any and all liens and interests, including the Debtor's homestead exemption.  Because the consensual liens have been avoided, recovered and preserved, the Estate will realize the first approximate $301,011.14 from the sales proceeds on account of such liens.  Involuntary liens were not properly perfected, and in any event are junior to the avoided consensual liens.  Absent a significant increase in the sale price, the Debtor's homestead exemption is out of the money and will not be paid.

F.      The proposed sale is subject to higher and better bids and, by way of this Motion, the Trustee is requesting that the Court approve the overbid procedures described in the accompanying memorandum of points and authorities, summarized as follows:

1.      **Minimum initial overbid:**  $276,000.00 ($1,000.00 above the Buyer's current offer).

2.      **Minimum overbidding increments:**  $1,000.00.

3.      **Initial overbid deposit:**  $8,280.00 (*i.e.*, 3% of the minimum initial overbid price).

4.      **Qualification for overbidding:**  At least three (3) business days prior to the commencement of the hearing on this Motion, any party wishing to overbid on the Property must deliver to the Trustee's counsel, Eric P. Israel, Esq., 1901 Avenue of the Stars, Suiter 450, Los Angeles, California 90067:

1         (a) a cashier's check payable to "Jeffrey I. Golden, Trustee" in the amount of

2 $8,280.00, and

3         (b) a written, executed overbid in the form attached as Exhibit "8" to the Trustee's

4 declaration.

5         5.    The Trustee proposes that no party be allowed to bid on the Property absent

6 the timely delivery of the initial overbid deposit and the written, executed overbid form as set forth

7 above. The Trustee in his sole discretion may determine that a party desiring to bid is not qualified

8 due to insufficient documentation or financial qualifications. Accordingly, any party wishing to

9 bid is encouraged to contact the Trustee's counsel at least one week before the hearing to ensure

10 qualification.

11         6.    **Back-up bidders**: Any qualified overbidder who is not the successful

12 overbidder may opt to be a back-up bidder, subject to the Trustee's approval, in which case such

13 back-up bidder's initial deposit will be retained by the Trustee until the sale closes.

14         G.    **Estimated Net Sale Proceeds**: The opening sale price for the Property is

15 $275,000.00, subject to a 6% brokers' commission, liens, fees, and anticipated costs of sale, as

16 follows:

| Sale Price | $275,000 .00 |
|---|---|
| 3% Commission to Coldwell Banker (Trustee's Broker) | ($8,250.00) |
| Commission to Galaxy (3%) (Buyer's Broker) | ($8,250.00) |
| Trustee's Avoided J-Pad Lien | $301,011.14[1] |
| Insurance Advances | $1,691.80 + |
| **Estimated Net Sale Proceeds (before escrow fees)** | **$256,808.20** |
| | |

      Because the consensual lien now held by the Trustee exceeds the proposed sales price, the

Motion requests authority for the Trustee to not pay Debtor's allowed homestead because it is out

---

[1] As of January 9, 2025, at the contract interest rate of 5.5% (daily interest continues to accrue at $33.90) per day.

ES 097         ES 097         ES 097

1  of the money and the Debtor cannot claim an exemption in the recovered liens that the Debtor

2  voluntarily put on the Property pursuant to Section 522(g).

3     H.     The Trustee proposes to pay a real estate broker's commission of 6% of the sale

4  price of the Property to the brokers as follows: 3% to Trustee's broker Coldwell Banker Residential

5  Broker ("Coldwell Banker"), and 3% to Galaxy Homes, LLC ("Galaxy"), as the Buyer's broker in

6  connection with the closing of this sale.  If there is a successful overbidder (i.e., not the Buyer),

7  such successful overbidder's broker will receive the 3% allocated to the Buyer's broker.  If such

8  successful overbidder does not have a broker, the entire 6% commission will be paid to Coldwell

9  Banker, as Seller's broker.

10    I.     The Trustee obtained forced insurance for the Property and requests authority to pay

11 Trustee Insurance Agency ("TIA") $1.691.80 plus any additional accrued premiums before the sale

12 closes (collectively the "Insurance Advances").

13    J.     **Anticipated Taxes**: The Trustee is consulting with his accountant and will

14 supplement this motion with the estimated capital gain consequences of the sale, if any.

15    This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of

16 Points and Authorities, the Declarations of Jeffrey I. Golden and Greg Bingham and Request for

17 Judicial Notice; the papers and pleadings in the Debtor's bankruptcy case and related adversary

18 proceedings; and such other evidence that may be presented at the hearing.  Contemporaneously

19 herewith, the Trustee is filing a separate motion for turnover, and incorporates all evidence in

20 support thereof as well.

21    **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f),

22 each interested party opposing, joining in or responding to the Motion must, not later than **14 days**

23 before the date of the hearing, file with the Clerk of the Bankruptcy Court and serve upon the

24 Trustee's general counsel, Eric P. Israel, Esq., 1901 Avenue of the Stars, Suite 450, Los Angeles,

25 California 90067, and the United States Trustee, 411 W. 4th Street, Suite 7160, Santa Ana,

26 California, either: (i) a complete written statement of all reasons in opposition thereto or in support

27 or joinder thereof, declarations and copies of all photographs and documentary evidence on which

28

1 the responding party intends to rely, and any responding memorandum of points and authorities; or

2 (ii) a written statement that the Motion will not be opposed.

3      Pursuant to Local Bankruptcy Rule 9013-1(h), failure to timely file and serve papers may

4 be deemed by the Court to be consent to the granting of the Motion.

5

6 DATED: January 31, 2025          DANNING, GILL, ISRAEL & KRASNOFF, LLP

7

8                          By:

9                               ERIC P. ISRAEL
                               Attorneys for Jeffrey I. Golden, Chapter 7 Trustee
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ES 099                    ES 099                    ES 099

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## FACTUAL STATEMENT

### A.    Bankruptcy Background

On July 9, 2021 (the "Petition Date"), Jamie Lynn Gallian (the "Debtor") filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Case"). Jeffrey I. Golden accepted appointment as the Trustee for the Debtor's estate (the "Estate") and continues to serve in that capacity.

Pursuant to an order entered on or about June 1, 2022, the Trustee retained the law firm of Danning, Gill, Israel, and Krasnoff, LLP ("Danning-Gill") as his general bankruptcy counsel. *Docket no. 108*. Effective as of January 31, 2025, the primary attorney at Danning-Gill who has been handling this file, Eric P. Israel, is leaving Danning-Gill and joining the firm of Levene, Neale, Bender, Yoo & Golubchik, L.L.P. The Trustee will be filing an application to employ the Levene Neale firm as his successor counsel and file an employment application thereon.

Pursuant to an order entered on or about September 5, 2024, the Trustee retained Coldwell Banker Realty ("Coldwell Banker") (agents William Friedman and Greg Bingham) as the Trustee's real estate broker to list, market and aid the Trustee in selling the Property described below (*docket no. 431*). A copy of the order employing Coldwell Banker is attached to the Request for Judicial Notice (the "RJN") as Exhibit "2".

### B.    The Debtor's Schedules

The Debtor has amended her schedules at least 13 times to date.[2] In her original schedules, she valued the Property at $235,000 and disclosed that title to the Property was vested in J-Sandcastle, LLC on the Petition Date, of which she was its sole member and its managing member. *Docket no. 1*. The Debtor's schedules further disclosed that the Property was subject to a lien in favor of J-Pad, LLC, and that she was its managing member. *Id*. A copy of pertinent pages from

---

[2] *See docket nos. 15, 16, 17, 22, 37, 38, 39, 42, 72, 75, 94, 444, 468 and 519.*

1785196.1  27064

7

1　those schedules are attached to the RJN as Exhibit "3".　The Debtor later claimed a homestead

2　exemption in the Property in the amount of $600,000. *Docket no. 72, p. 20.*

3　　　　As noted below, the Trustee commenced an adversary proceeding and recovered title to the

4　Property and avoided and preserved all of the consensual liens.

5　C.　　**The Manufactured Home at Issue**

6　　　　1.　　　The Property

7　　　　On the Petition Date, the registered title owner of the manufactured home located at 16222

8　Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Property"), was vested in J-

9　Sandcastle Co, LLC ("J-Sandcastle"). *Docket no. 468 (*Exhibit "3"*).* The Debtor was not on title to the

10　Property on the Petition Date.

11　　　　2.　　　Liens Against the Property

12　　　　The Property is subject to a consensual lien on the Property in favor of J-Pad, LLC ("J-Pad") in

13　the amount of $225,000, plus interest, and other voluntary liens and transfers in favor of the Debtor's

14　family members, ex-husband, and a former roommate as discussed below. *Docket no. 468.* As noted

15　below, the Trustee commenced an adversary proceeding and recovered title to the Property and

16　avoided and preserved all consensual liens thereon.

17　　　　The following two judgment liens were recorded against the Debtor (collectively the

18　"Abstracts of Judgment"):

19　　　　a.　　　An abstract of judgment recorded on or after December 18, 2021, in favor of Janine

20　Jasso, Jennifer Paulin, Lori Burrett, Lee Gragnano, Lindy Beck, and Ted Phillips (collectively the

21　"Jasso Parties") in the sum of "at least $64,049.66 (not including additional interest, fees and other

22　costs)". See proof of claim no. 4-1 (Exhibit "9" to the RJN); and

23　　　　b.　　　A series of abstracts of judgment recorded on or about May 3, 2019, May 16, 2019,

24　and November 18, 2019, in favor of The Huntington Beach Gables Homeowners Association

25　("Gables") in the sum of "at least $510,742.55 (not including additional interest, fees and other

26　costs)". See proof of claim no. 1-1 (Exhibit "10" to the RJN).

27

28

1785196.1 27064

8

As discussed below, abstracts of judgment do not reach a manufactured home, which is personal property – not real property. Moreover, title was not vested in the Debtor at the time, and the involuntary liens are junior to the avoided consensual liens and out of the money.

        3.    <u>The First Objection to the Debtor's Homestead Exemption, Appeal and Remand</u>

On or about May 12, 2022, Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates, the homeowners association for the manufactured home park that includes the Space ("Houser Bros."), filed its Motion Objecting to Debtor's Claimed Homestead Exemption (the "Exemption Motion") (*docket no. 95*). The hearing on the Exemption Motion was held on June 2, 2022, and continued to July 21, 2022. At the continued hearing, the Court granted the Exemption Motion and disallowed any claim of exemption by the Debtor in the Property.

On or about July 26, 2022, the Debtor filed her Motion for Reconsideration from the Court's July 21, 2022, ruling (the "Motion for Reconsideration") (*docket no. 157*). The order granting the Exemption Motion was thereafter entered on or about August 5, 2022 (*docket no. 177*). The hearing on the Motion for Reconsideration was held on September 22, 2022, and the Court took the matter under submission.

On or about December 19, 2022, the Court entered its order granting the Debtor's Motion for Reconsideration, finding that the Debtor was entitled to a homestead exemption in the Property (even though she was not on title) in the amount of $600,000 (the "Order Granting the Motion for Reconsideration") (*docket no. 274*).

On or about December 29, 2022, Houser Bros. appealed the Order Granting the Motion for Reconsideration to the District Court (*docket no. 280*).

On or about November 1, 2023, the District Court entered an order that reversed and remanded the Order Granting the Motion for Reconsideration on the grounds that the Court did not make findings regarding the Debtor's interest in the Property including whether "Gallian ever acquired (and retained) an equitable interest in the Property" (the "Reversal and Remand Order") (*docket no. 387*).

On or about May 15, 2024, the Court entered a further order after remand (the "Remand Order") (*docket no. 393*). The Remand Order again found "that Debtor held a sufficient equitable

1    interest in the Property to claim an automatic homestead exemption under Cal. Civ. Proc. Code

2    § 704.720(a)."

3         Houser Bros. did not appeal the Remand Order, which is now final.

4         4.    The Objection to the Debtor's Latest Exemption Claim

5         On or about December 3, 2024, the Debtor amended her claim of exemption yet again.

6    *Docket no. 519*. The Second Exemption claimed an exemption in the ground lease for the "pad"

7    (the "Ground Lease"). A copy of that amendment is attached to the RJN as Exhibit "4".

8         Houser Bros. timely objected to that amended exemption claim. *Docket no. 529*. The

9    Trustee joined in that objection (*docket no. 533*), as did Gables (*docket no. 531*). The hearing

10   thereon is set for February 4, 2025, at 11:00 a.m.

11        The Ground Lease was never assumed, and hence was deemed rejected long ago. 11 U.S.C.

12   § 356(d)(1). In any event, the Trustee is not proposing via this Motion to sell or assume and assign

13   the Ground Lease. Houser has agreed to issue a new ground lease to a new qualified buyer – but

14   not the Debtor.

15   D.   **Trustee's Avoidance and Recovery of Transfers of Title and Liens on the Property**

16        On or about June 30, 2023, the Trustee commenced an adversary proceeding, adv. no. 8:23-ap-

17   01064-SC, by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and*

18   *Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money*

19   *Had and Received; and (6) Unjust Enrichment* ("Complaint") against Ronald J. Pierpont, J-Pad LLC, J-

20   Sandcastle Co., LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E. J.

21   Gallian (collectively the "Defendants").

22        1.    **Stipulated Judgments**

23        Pursuant to stipulations with defendants Steven D. Gallian, Brian J. Gallian, Justin Barclay and

24   E. J. Gallian (collectively the "Family Defendants"), a stipulated judgment was entered against the

25   Family Defendants on or about October 3, 2023 (*adv. docket no. 47*). The judgment against the Family

26   Defendants avoided the liens on the Property in favor of the Family Defendants (the "Stipulated Family

27   Defendants Judgment"). The judgment also preserved those liens for the benefit of the Debtor's

28

1   estate pursuant to 11 U.S.C. § 551.  A copy of the Stipulated Family Defendants Judgment is

2   attached to the RJN as Exhibit "5".

3          Pursuant to a stipulation with defendant Robert J. McLelland ("Mr. McLelland") (*adv.*

4   *docket no.* 52), a stipulated judgment was entered against Mr. McLelland on or about March 29,

5   2024 (*adv. docket no.* 66) (the "McLelland Stipulated Judgment").  The judgment against Mr.

6   McLelland also avoided his lien on the Property.  The judgment also preserved his lien for the

7   benefit of the Debtor's estate pursuant to 11 U.S.C. § 551.  A copy of the McClelland Stipulated

8   Judgment is attached to the RJN as Exhibit "6".

9          2.   **Default Judgments**

10         Pursuant to motions for default judgment filed by the Trustee with respect to defendants, J-

11  Pad, J-Sandcastle, and Ronald J. Pierpont (collectively, "Defaulting Defendants"), default

12  judgments were entered against the Defaulting Defendants on or about May 10, 2024 (*adv. docket*

13  *nos.* 79, 81 and 83) (collectively the "Defaulting Defendants Judgments").  Copies of the

14  Defaulting Defendants Judgments are attached to the RJN collectively as Exhibit "7".

15         The default judgment against J-Sandcastle avoided and preserved the Debtor's transfers of

16  title of the Property to J-Sandcastle and recovered legal title to and the beneficial interest in the

17  Property for the Debtor's bankruptcy estate in the name of the Trustee.  The Debtor's schedules

18  disclosed that the Debtor was the sole member of J-Sandcastle.

19         The default judgment against defendant J-Pad avoided J-Pad's lien on the Property in the

20  amount of $225,000 and other liens on the Property in favor of J-Pad.  The judgment also preserved

21  those liens for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 551.  The

22  Debtor's schedules disclosed that the Debtor was the sole member of J-Pad.

23         The default judgment against defendant Ronald J. Pierpont determined that Mr. Pierpont

24  does not have any interest in the Property.  It also avoided his liens on the Property and preserved

25  those liens for the benefit of the Debtor's estate pursuant to 11 U.S.C. § 551.

26         As a result of the above, title to the Property has been restored to the Estate, and the Property is

27  property of the estate.  In addition, the consensual lien in the original principal sum of $225,000 in

28  favor of J-Pad on the Property, and the other consensual liens and interests on the Property in favor of


1    against the Property, including the J-Pad lien, absent significant overbidding, it is anticipated that

2    there will be no proceeds available to pay to the Debtor on account of her exemption.

3    E.    **Marketing Efforts**

4          An order approving the Trustee's employment of Coldwell Banker to sell the Property and

5    approving the listing agreement was entered on or about September 5, 2024. *Docket no. 431*

6    (Exhibit "2"). The listing price was $320,000. With the aid of the broker, the Trustee has

7    marketed the Property for sale, and the Buyer's offer is the best and only offer that the Trustee has

8    received to date. The Buyer has conducted all due diligence that it needs to close the sale, and

9    indeed has waived its contingencies. The only remaining requirement to close the sale is Court

10    approval, subject to qualified overbids made at the sale hearing.

11    F.    **Denial of Debtor's Discharge and Appeal**

12          On or about October 18, 2021, Houser Bros. filed a complaint under 11 U.S.C.§ 727 to

13    deny the Debtor's discharge, adversary no. 8:22-ap-01097-SC. *Adv. docket no. 1.* Pursuant to an

14    order entered on or about May 23, 2023, the Court denied the Debtor's discharge (the "Discharge

15    Judgment"). *Adv. docket no. 81.*

16          The Debtor appealed that ruling to the United States District Court, which affirmed the

17    Discharge Judgment. *Adv. docket no. 131.* No further appeal was taken therefrom.

18    G.    **Debtor's Chapter 13 Filing**

19          On or about September 9, 2024, the Debtor filed another voluntary petition for relief – this

20    one under Chapter 13 of the Bankruptcy Code, which was assigned case no. 8:24-11267-SC (the

21    "Chapter 13 Case"). The Chapter 13 Case was dismissed on or about October 21, 2024. *Chapter*

22    *13 Docket no. 38.*

23    H.    **Debtor's Motion to Convert to Chapter 13**

24          On or about September 11, 2024, the Debtor filed a motion to convert this Case to Chapter

25    13. *Docket no. 438.* Pursuant to an order entered on or about October 29, 2024, the Court denied

26    the Debtor's motion to convert. *Docket no. 491.*

27

28

1    I.    **Insurance Placed on the Property**

2          The Trustee was unable to confirm that the Property was insured, and as a result obtained

3    insurance from Trustee Insurance Services ("TIS"). As of this time, TIS is owed $1,691.80 for

4    insurance premiums, plus $409.20 per month thereafter (collectively the "Insurance Advances").

5    The Trustee requests authority to pay TIS the Insurance Advances from the sale proceeds.

6

7                                        II.

8                          **PROPOSED OVERBID PROCEDURES**

9          The Trustee requests that the Court approve the following procedures for overbids:

10         1.    Any party wishing to present an overbid must deliver the following to the Trustee at

11   least three (3) business days prior to the commencement of the hearing on this Motion:

12               (a)    a deposit in the form of a cashier's check in the amount of $8,250.00 payable

13   to "Jeffrey I. Golden, Trustee" (the "Deposit");

14               (b)    a written offer on the form attached as Exhibit "8" to the Declaration of

15   Jeffrey I. Golden, without any changes or conditions; and

16               (c)    proof of ability to close acceptable in the sole discretion of the Trustee.

17         2.    A party's initial overbid must be no less than $276,000.00, representing $1,000.00

18   over the Proposed Sale Price.

19         3.    The acceptance of any overbid from a qualified bidder shall be in the Trustee's sole

20   discretion and may be made prior to or at the time of hearing to confirm the sale.

21         4.    If qualified overbids are received and accepted by the Trustee, an auction will be

22   held at and during the hearing on the Trustee's motion for approval of the proposed sale. The

23   Trustee proposes that each overbid be made during the hearing be at least $1,000.00 more than the

24   then-highest overbid. At the conclusion of the auction, the Trustee will have the right, based solely

25   on business judgment and his sole discretion, to reject bids that are non-conforming and

26   recommend to the Court for confirmation the offer that the Trustee determines is the highest and

27   best offer.

28

ES 107                          ES 107                          ES 107

5.      If the Court approves a sale to the bidding party (the "Successful Bidder"), the Successful Bidder will be bound by all of the terms of the Sale Agreement except as to price, without any contingencies (including no due diligence or financing contingencies). The Successful Bidder's Deposit will be retained by the Trustee and will be applied to the sale price. The Deposit will be non-refundable in the event that, for any reason whatsoever, the Successful Bidder fails to close the sale timely.

6.      The closing will take place as soon as practicable after the entry of the Court's order approving the sale (the "Sale Order"), but no later than the first business day after fourteen calendar days following entry of the Sale Order. The Trustee and the Successful Bidder may mutually agree in writing to extend the time for closing the sale, without the need to obtain Court approval of such extension(s).

7.      In his sole discretion, the Trustee may request that the Court confirm a "Back-Up Bidder" so that if the Successful Bidder does not close timely the Trustee may sell the Property to the Back-Up Bidder for the amount of such Back-Up Bidder's last bid. The Back-Up Bidder's Deposit will be retained by the Trustee. If the sale to the Successful Bidder does not close timely, the Trustee will advise the Back-Up Bidder accordingly. The closing will take place on or before fourteen (14) calendar days following the date on which the Trustee gives notice of the Successful Bidder's failure to close. The Back-Up Bidder will be bound by all the terms of the Sale Agreement except as to price, without contingencies (including any financing contingency). The Back-Up Bidder's Deposit will be retained by the Trustee and will be applied to the sale price. The Deposit will be non-refundable in the event that the Back-Up Bidder fails to close the sale timely.

8.      If a qualified overbidder is not the Successful Bidder or the Back-Up Bidder, the overbidder's Deposit will be returned to the overbidder within ten court days after the date of the hearing. If the sale to the Successful Bidder closes, the Back-Up Bidder's Deposit will be returned to the Back-Up Bidder within ten court days from the date of closing.

9.      Pursuant to the Court-approved listing agreement, the aggregate commission to be paid by the Trustee is an amount equal to 6.0% of the gross sales price (3% to Trustee's broker,

ES 108               ES 108               ES 108

1  Coldwell Banker, and 3% to Buyer's broker, Galaxy Homes (or the broker of the Successful

2  Bidder, as the case may be).

3

4                                    III.

5  **PROPOSED TREATMENT OF LIENS AND HOMESTEAD EXEMPTION**

6        The Trustee has avoided and preserved all of the consensual liens against the Property.  As

7  discussed, the Homestead Exemption is junior to the avoided consensual liens.  Hence, absent

8  significant overbidding, the homestead exemption is out of the money, and no funds will be paid on

9  account of the homestead exemption absent an overbid in a sufficient amount.

10       Because there are final judgments on the avoided and preserved liens, there is no need for

11 the liens and Homestead Exemption to attach to the sale proceeds, but the sale should be free and

12 clear of those liens and that interest.

13       Although the Abstracts of Judgment may have been recorded, Cal. Code. Civ. P. §

14 697.310(a) provides that an abstract of judgment only creates a lien on <u>real property</u> located in the

15 County where the abstract is recorded.  A manufactured home is <u>personal property</u>, and liens are

16 perfected by recording with the HCD – not the County Recorder.[5]  Moreover, the Abstracts of

17 Judgment are junior to the consensual liens,[6] and hence out of the money and unsecured.  11 U.S.C.

18 § 506.  For all these reasons, the Abstracts of Judgment need not attach to the sale proceeds or be

19 paid.

20

21

22

23

24

___

25 [5]  There is a limited exception for assessments of a manufactured home park, which may be
26 perfected by an abstract of judgment recorded with the County Recorder.  Cal. Code Regs. tit. 25 §
   5595 (2025).

27 [6]  The J-Pad lien was created on or about November 16, 2018 (*adv. docket no. 1 at ¶ 28*), whereas
   the judgments underlying the Abstracts of Judgment were entered on or about May 3, 2019
28 (Exhibit "9" at p.6) and December 4, 2018 (Exhibit "10" at p.4), respectively, so the Abstracts of
   Judgment were recorded later.

IV.

**LEGAL ARGUMENT**

A.    **The Proposed Sale of the Property is Supported by the Trustee's Sound Business
Judgment and is in the Best Interests of the Debtor's Estate and Its Creditors**

To enable the Trustee to fulfill his duty to "collect and reduce to money the property of the estate" (11 U.S.C. § 704(a)(1)), the trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  In this Circuit and others, courts will authorize sales where the trustee's decision to sell assets outside the ordinary course of business is based upon sound business judgment.  *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Derivium Capital, LLC*, 380 B.R. 392, 404 (Bankr. D.S.C. 2007) ("In determining whether to approve a sale proposed by a trustee, courts generally apply a business judgment test.").

Based on the Second Circuit's decision in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983), courts generally hold that the following four elements must exist to satisfy the "sound business judgment test": (1) sound business reasons; (2) accurate and reasonable notice to interested persons; (3) an adequate, fair and reasonable price; and (4) good faith.  *See Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (affirming sale of debtor's assets proposed by trustee as being supported by a sound business purpose); *Lionel*, 722 F.2d at 1071. "Ordinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection." *In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *Derivium*, 380 B.R. at 404 ("the Trustee's business judgment is to be given 'great judicial deference,' [however] the Court must scrutinize whether the Trustee has fulfilled his duty to 'maximize the value obtained from a sale'").

The Trustee believes that the proposed sale of the Property, subject to overbid at the hearing, is the best method by which to realize the Estate's interest in the avoided and preserved liens.  As detailed above, the Trustee retained a licensed real estate broker to list, market and aid him in selling the Property.  The Trustee marketed the Property to the world at large via the MLS (multiple listing service), for several months. The Trustee has obtained an offer subject to

17

1   overbidding and Bankruptcy Court approval, and the Buyer's offer is the highest and best offer

2   received to date – indeed the only offer received.  The price was arrived at with the Buyer

3   following arm's-length negotiations, and the Trustee believes that it represents a fair and adequate

4   price for the Property.

5        The proposed sale is subject to overbids, so any and all qualified parties wishing to

6   purchase the Property for a higher price will have an opportunity to do so.

7   B.   **The Proposed Sale May be Authorized Under Section 363 of the Bankruptcy Code**

8        Section 363(f) of the Bankruptcy Code provides that, upon certain conditions, the trustee

9   may sell property free and clear of a lien or interest in such property:

10           The trustee may sell property under subsection (b) or (c) of this
            section free and clear of any interest in such property of an entity

11           other than the estate, only if—

12           (1) applicable nonbankruptcy law permits sale of such property free
            and clear of such interest;

13

14           (2) such entity consents;

15           (3) such interest is a lien and the price at which such property is to be
            sold is greater than the aggregate value of all liens on such property;

16           (4) such interest is in bona fide dispute; or

17           (5) such entity could be compelled, in a legal or equitable
            proceeding, to accept a money satisfaction of such interest.

18

19   11 U.S.C. § 363(f).

20        The Trustee seeks to sell the Property free and clear of all liens, claims and interests. The

21   purchase price for the Property will be at least $275,000.  Aside from the liens the Trustee avoided

22   and recovered, discussed earlier, there are no other known liens or interests in the Property. The

23   Trustee consents to the sale of the Property free and clear of any portion of the liens for which

24   insufficient proceeds exist to pay the liens in full.  The Trustee further requests that the Court

25   approve payments of all sales costs from the Property sale proceeds, including broker commissions,

26   escrow fees and taxes, and to authorize the Trustee to reimburse the Insurance Advances.

27

28

**C.**  **The Trustee Requests that the Court Find that the Buyer and Any Backup Buyer Are**
**Good Faith Purchasers Pursuant to Section 363(m) of the Bankruptcy Code**

A purchaser of property is protected from the effects of reversal on appeal of the
authorization to sell or lease as long as the Court finds that the purchaser acted in good faith. *See*
11 U.S.C. § 363(m).  A good faith purchaser is one who buys in good faith and for value. *Ewell v.*
*Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992).  The Code does not define "good faith,"
but courts have provided guidance as to the appropriate factors to consider. *See id.* (lack of good
faith generally shown by fraud, collusion between the purchaser and other bidders or the trustee, or
an attempt to take grossly unfair advantage of other bidders); *In re Pine Coast Enters., Ltd.*, 147
B.R. 30, 33 (Bankr. N.D. Ill. 1992) (requirement that a purchaser act in good faith speaks to the
integrity of its conduct in the course of sale proceeding).

Here, with Court authority, the Trustee employed Coldwell Banker to list, market and aid
him in selling the Property.  Coldwell Banker listed the Property to the world at large, and
negotiations with the Buyer were made in an arm's-length fashion.  The Trustee will continue to
negotiate at arm's-length with potential overbidders, and intends to present further evidence to the
Court at or before the hearing supporting a finding of good faith as to any Successful Bidder or
Back-Up Bidder.  Prior to the Buyer's submission of an offer to the Trustee, neither the Trustee nor
the Estate had any preexisting relationship with the Buyer or Galaxy Homes.  Moreover, the
Trustee and his broker have submitted declarations supporting a finding of good faith.  As a result,
the Trustee requests that the Court make a finding that the party to whom the Court confirms the
sale, as well as any Back-Up Bidder, is a good faith purchaser of the Property within the meaning
of § 363(m) of the Code.

**D.**  **Waiver of Fed. R. Bankr. P. 6004(h) is Warranted**

Rule 6004(h) of the Federal Rules of Bankruptcy Procedure provides: "Unless the court
orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral)
is stayed for 14 days after the order is entered."  The purpose of Fed. R. Bankr. P 6004(h) is to
provide sufficient time for an objecting party to request a stay pending appeal before the order can
be implemented. 10 <u>Collier on Bankruptcy</u> ¶ 6004.11 (2025).

1     The Trustee respectfully requests a waiver of the 14-day stay of the effect of the sale order.

2  It would be beneficial to the estate and all creditors to complete the sale at the earliest possible

3  time, particularly after the Debtor's fraudulent transfers and obstreperous conduct have delayed

4  administration of the Property.  The Trustee prays that the Court enter such relief pursuant to Fed.

5  R. Bankr. P. 6004(h) to ensure an expeditious closing.

6

7                                         V.

8                                   **CONCLUSION**

9     For the foregoing reasons, the Trustee requests that the Court enter an order:

10         1.      authorizing the Trustee to sell all right, title and interest in and to the Property free

11  and clear of any and all liens, claims, and interests pursuant to 11 U.S.C. § 363(b) and (f);

12         2.      approving the proposed overbid procedures;

13         3.      directing that the sale be free and clear of all liens, claims and interests including the

14  Debtor's homestead exemption and the Abstracts of Judgment;

15         4.      authorizing the Trustee to pay Coldwell Banker and the broker for the Buyer (or

16  confirmed overbidder) an aggregate commission of 6% of the sale price;

17         5.      authorizing the Trustee to pay ordinary and customary costs of sale (including title

18  and escrow fees), and to reimburse the Insurance Advances;

19         6.      authorizing the Trustee to pay the Estate the balance of the avoided and preserved J-

20  Pad lien;

21         7.      determining that the Buyer and back-up bidder(s) (if any) are good faith purchasers

22  within the meaning of 11 U.S.C. § 363(m);

23         8.      waiving the 14-day stay of Fed. R. Bankr. P. 6004(h);

24         9.      approving the form and manner of notice provided by the Trustee of the sale; and

25         10.     for such further relief as the Court deems just and proper.

26

27

28

1785196.1 27064

20

ES 113                            ES 113                            ES 113

1   DATED: January 31, 2025          DANNING, GILL, ISRAEL & KRASNOFF, LLP

2

3                                    By:

4                                        ERIC P. ISRAEL
                                         Attorneys for Jeffrey I. Golden, Chapter 7 Trustee
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1785196.1  27064                        21

ES 114                  ES 114                                  ES 114

# DECLARATION OF
# JEFFREY I. GOLDEN

ES 115                    ES 115                    ES 115

## DECLARATION OF JEFFREY I. GOLDEN

I, Jeffrey I. Golden, declare as follows:

1.    I am the duly appointed and acting Chapter 7 trustee of the estate of Jamie Lynn Gallian (the "Debtor").

2.    I have personal knowledge of the facts in this declaration, or upon information and belief, and as to those matters I could testify competently thereto.

3.    I make this declaration in support of my Motion to Authorize Sale Free and Clear of Manufactured Home Decal No. LBM1081, Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Free and Clear of Liens and Homestead Exemption (the "Motion"). All capitalized terms not otherwise defined in this Declaration shall have the meaning ascribed to them in the Motion.

4.    I entered into a "Purchase and Sale Agreement" (the "PSA") with Richard Herr, who assigned the agreement to Galaxy Homes, LLC (the "Buyer"), pursuant to which I agreed to sell, and the Buyer agreed to purchase, for $275,000.00, subject to overbid and Court approval, the Estate's right, title and interest in the **2014 Skyline Custom Villa manufactured home, decal no. LBM108 (the "Property")** currently located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space"), with the following description:

> Skyline, Custom Villa, 2014, net size 60x30. Serial Numbers AC7V710394GB/GA; DOH/HUD Numbers: PFS1130282 and PFS1130281; Decal Number LBM1081 Year 2006.

5.    True and correct copies of the PSA and its amendments which I executed are attached hereto, marked collectively as Exhibit "1" and incorporated herein by this reference.

6.    The ground lease for the Space (the "Ground Lease") was deemed rejected long ago, and the proposed sale does not include a sale of, or assuming and assigning, the Ground Lease. However, Houser Bros.' counsel has informed me that Houser Bros. has agreed to execute a new ground lease in favor of a qualified buyer – but not the Debtor.

7.    Attached as Exhibit "8" is a true and correct copy of the form that I intend to require for the submission of overbids. I intend to request that my broker, Coldwell Banker ("Coldwell Banker"), forward a copy of the form to potential overbidders.

1785196.1  27064

22

ES 116                          ES 116                          ES 116

8.    I have marketed the Property to the world at large since the Court approved my application to employ Coldwell Banker, subject to periodic interference from and delays caused by the Debtor, and believe it was properly and sufficiently exposed to the market during that time. The Property was listed on the MLS. The Buyer's offer is the only one I have received to date for the Property. It is my business judgment based on many years of experience as a bankruptcy trustee and of many real property sales I have conducted, that my proposed sale of the Property on the terms set forth in the PSA is in the best interests of the Estate and its creditors. Based on the evaluation and advice from Coldwell Banker, I believe that $275,000.00, subject to overbid, is a fair and reasonable price for the Property. This price is particularly fair and reasonable in light of the contentious litigation surrounding the Property since before the Debtor filed her bankruptcy case, and which litigation has the potential to continue beyond the closing of the sale.

9.    My broker has assisted with marketing of the Property to potential overbidders. I have no independent knowledge or familiarity with the Buyer. I am informed and believe that the Buyer has no connection with the Debtor, or anyone else associated with this Estate or the administration of the Estate.

10.    I was unable to confirm that the Property was insured, and as a result obtained insurance from Trustee Insurance Services ("TIS"). As of this time, TIS is owed $1,691.80 for insurance premiums, plus $409.20 per month thereafter (collectively the "Insurance Advances"). I request authority to pay TIS the Insurance Advances from the sale proceeds.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 31, 2025, at Los Angeles, California.

Jeffrey I. Golden

1785196.1 27064

23

# DECLARATION OF
# GREG BINGHAM

ES 118                          ES 118                          ES 118

## DECLARATION OF GREG BINGHAM

I, Greg Bingham, declare as follows:

1.    I am a licensed real estate salesperson at Coldwell Banker Realty.

2.    I have personal knowledge of the facts in this Declaration, except those matters that are based upon information and belief and as to such matters, I believe such matters are true.  If called as a witness, I could testify competently to these facts.

3.    I am a California licensed real estate agent and I am experienced in selling residential and commercial properties..

4.    Pursuant to an order of the Court, Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the estate of Jaime Lynne Gallian (the "Debtor"), retained my firm to list, market and aid him in selling the real property commonly known as 2014 Skyline Custom Villa manufactured home, decal no. LBM 1081 (the "Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space").

5.    The Property has been marketed since approximately October 24, 2024, when the Court entered the order granting my firm's employment application and approving the listing agreement.

6.    The marketing that was done for the Property included:

    a.    listing the property in the Multiple Listing Service;

    b.    sending an e-mail blast to approximately 1100 real estate agents working in the area;

    c.    advertising the Property on third party websites: Zillow, Trulia, Realtor.com, etc.;

    d.    Direct mail to targeted residents in the area;

    e.    contacting all active buyers agents in the mobile home communities and neighboring senior residential neighborhoods; and

    f.    Placing targeted advertising on social media: Facebook, Instagram.

7.    In addition to listing the Property, I assisted the Trustee in obtaining the offer that

1785056.1  27046

24

ES 119                    ES 119                    ES 119

led to the agreement with Galaxy Homes, LLC, to purchase the Property for $275,000, for all cash and no contingencies.

8.    In order to obtain that offer, in addition to the marketing efforts above, my team and I held four accompanied Buyer tours of the Property. We received one offer.

9.    As well as the marketing actions described above, in order to encourage overbidding at the hearing on the motion to approve the sale, the date and time thereof will be published in the MLS and follow up calls to all agents and buyers inquiring about the Property..

10.    Based on my experience in the sale of properties in the area where the Property is located, and my familiarity with the Property, I believe that the $275,000 price offered by Galaxy Homes, LLC, reflects the current fair market value of the Property, subject to overbid.

11.    I believe Galaxy Homes, LLC, is not associated with the Debtor or any of the professionals employed by the estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Newport Beach, California on January 29, 2025.

*Gregory Bingham*

GREG BINGHAM

1785056.1  27046

25

**REQUEST FOR JUDICIAL NOTICE**

Jeffrey I . Golden, the Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Jamie Lynn Gallian (the "Debtor"), hereby respectfully requests that the Court take judicial notice of the following facts:

A.    **Bankruptcy Background**

1.    On July 9, 2021 (the "Petition Date"), Jamie Lynn Gallian filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code, commencing case number 8:21-bk-11710-SC (the "Case"). Jeffrey I. Golden accepted appointment as the Trustee for the Debtor's estate (the "Estate") and continues to serve in that capacity.

2.    Pursuant to an order entered on or about June 1, 2022, the Trustee retained the law firm of Danning, Gill, Israel, and Krasnoff, LLP ("Danning-Gill") as his general bankruptcy counsel. *Docket no. 108*.

3.    Pursuant to an order entered on or about September 5, 2024, the Trustee retained Coldwell Banker Realty ("Coldwell Banker") (agents William Friedman and Greg Bingham) as the Trustee's real estate broker to list, market and aid the Trustee in selling the Property described below. *Docket no. 431*. A copy of the order employing Coldwell Banker is attached hereto as Exhibit "2".

B.    **The Debtor's Schedules**

4.    The Debtor has amended her schedules at least 13 times to date.  In her original schedules, she valued the Property at $235,000 and disclosed that title to the Property was vested in J-Sandcastle, LLC on the Petition Date, of which she was its sole member and its managing member. Docket no. 1.  The Debtor's schedules further disclosed that the Property was subject to a lien in favor of J-Pad, LLC, and that she was its managing member.  Id.  A copy of pertinent pages from those schedules are attached to the RJN as Exhibit "3".  The Debtor later claimed a homestead exemption in the Property in the amount of $600,000.  Docket no. 72, p. 20.

ES 121                          ES 121                          ES 121

1   C.    **The Property at Bar**

2         Underline{The Property}

3         5.    On the Petition Date, the registered title owner of the manufactured home located at

4   16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Property"), was

5   vested in J-Sandcastle Co, LLC ("J-Sandcastle"). *Docket no. 468.* The Debtor was not on title to

6   the Property on the Petition Date.

7         Underline{Liens Against the Property}

8         6.    The Property was subject to a consensual lien on the Property in favor of J-Pad,

9   LLC ("J-Pad") in the amount of $225,000, plus interest, and other voluntary liens and transfers in

10  favor of the Debtor's family members, ex-husband, and former roommate as discussed below.

11  *Docket no. 468.*

12        Underline{The First Objection to the Debtor's Homestead Exemption, Appeal and Remand}

13        7.    On or about May 12, 2022, Houser Bros. Co., dba Rancho Del Rey Mobile Home

14  Estates ("Houser Bros."), filed its Motion Objecting to Debtor's Claimed Homestead Exemption

15  (the "Exemption Motion") (*docket no. 95*). The hearing on the Exemption Motion was held on

16  June 2, 2022, and continued to July 21, 2022. At the continued hearing, the Court granted the

17  Exemption Motion and disallowed any claim of exemption by the Debtor in the Property.

18        8.    On or about July 26, 2022, the Debtor filed her Motion for Reconsideration from the

19  Court's July 21, 2022, ruling (the "Motion for Reconsideration") (*docket no. 157*). The order

20  granting the Exemption Motion was thereafter entered on or about August 5, 2022 (*docket no. 177*).

21  The hearing on the Motion for Reconsideration was held on September 22, 2022, and the Court

22  took the matter under submission.

23        9.    On or about December 19, 2022, the Court entered its order granting the Debtor's

24  Motion for Reconsideration finding that the Debtor was entitled to a homestead exemption in the

25  Property (even though she was not on title) in the amount of $600,000 (the "Order Granting the

26  Motion for Reconsideration") (*docket no. 274*).

27        10.   On or about December 29, 2022, Houser Bros. appealed the Order Granting the

28  Motion for Reconsideration to the District Court (*docket no. 280*).

1    11.    On or about November 1, 2023, the District Court entered an order that reversed and

2  remanded the Order Granting the Motion for Reconsideration on the grounds that the Court did not

3  make findings regarding the Debtor's interest in the Property including whether "Gallian ever

4  acquired (and retained) an equitable interest in the Property" (the "Reversal and Remand Order")

5  (*docket no. 387*).

6    12.    On or about May 15, 2024, the Court entered a further order after remand (the

7  "Remand Order") (*docket no. 393*).  The Remand Order again found "that Debtor held a sufficient

8  equitable interest in the Property to claim an automatic homestead exemption under Cal. Civ. Proc.

9  Code § 704.720(a)."

10    13.    Houser Bros. did not appeal the Remand Order, which is now final.

11    The Objection to the Debtor's Latest Exemption Claim

12    14.    On or about December 3, 2024, the Debtor amended her claim of exemption yet

13  again. *Docket no. 519*.  The Second Exemption claimed an exemption in the ground lease of the

14  "pad" (the "Ground Lease").  A copy of that amendment is attached to the hereto, marked as

15  Exhibit "4" and incorporated herein by this reference.  The hearing thereon is set for February 4,

16  2025, at 11:00 a.m.

17    15.    Houser Bros. timely objected to that amended exemption claim (the "Objection").

18  *Docket no. 529*.  The Trustee joined in that objection (*docket no. 533*), as did the Huntington Beach

19  Gables Homeowners Association (*docket no. 531*).  The Debtor filed an untimely opposition to that

20  Objection on January 24, 2025.  *Docket no. 535*.

21    16.    The Ground Lease was never assumed, and hence was deemed rejected long ago.

22  D.    **Trustee's Avoidance and Recovery of Transfers of Title and Liens on the Property**

23    17.    On or about June 30, 2023, the Trustee commenced an adversary proceeding, adv.

24  no. 8:23-ap-01064-SC, by filing a Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2)

25  to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract;

26  (5) for Money Had and Received; and (6) Unjust Enrichment ("Complaint") against Ronald J.

27  Pierpont, J-Pad LLC, J-Sandcastle Co., LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay,

28  Robert J. McLelland, and E. J. Gallian (collectively, the "Defendants").

**Stipulated Judgments**

18.    Pursuant to stipulations with defendants Steven D. Gallian, Brian J. Gallian, Justin Barclay, and E. J. Gallian (collectively the "Family Defendants"), a stipulated judgment was entered against the Family Defendants on or about October 3, 2023 (*adv. docket no. 47*).  The judgment against the Family Defendants avoided the liens on the Property in favor of the Family Defendants (the "Stipulated Family Defendants Judgment").  The judgment also preserved those liens for the benefit of the Debtor's estate pursuant to 11 U.S.C. § 551.  A copy of the Stipulated Family Defendants Judgment is attached hereto, marked as Exhibit "5" and incorporated herein by this reference.

19.    Pursuant to a stipulation with defendant Robert J. McLelland ("Mr. McLelland") (*adv. docket no. 52*), a stipulated judgment was entered against Mr. McLelland on or about March 29, 2024 (*adv. docket no. 66*) (the "McLelland Stipulated Judgment").  The judgment against Mr. McLelland also avoided his lien on the Property.  The judgment also preserved those liens for the benefit of the Debtor's estate pursuant to 11 U.S.C. § 551.  A copy of the McClelland Stipulated Judgment is attached hereto, marked as Exhibit "6" and incorporated herein by this reference.

**Default Judgments**

20.    Pursuant to motions for default judgment filed by the Trustee with respect to defendants, J-Pad, J-Sandcastle, and Ronald J. Pierpont (collectively, "Defaulting Defendants"), default judgments were entered against the Defaulting Defendants on or about May 10, 2024 (*adv. docket nos. 79, 81 and 83*) (collectively the "Defaulting Defendants Judgments").  Copies of the Defaulting Defendants Judgments are attached hereto, marked as Exhibit "7" and incorporated herein by this reference.

21.    The default judgment against J-Sandcastle avoided and preserved the Debtor's transfers of title of the Property to J-Sandcastle and recovered legal title to and the beneficial interest in the Property for the Debtor's bankruptcy estate in the name of the Trustee.

22.    The default judgment against defendant J-Pad avoided J-Pad's lien on the Property in the amount of $225,000 and other liens on the Property in favor of J-Pad.  The judgment also preserved those liens for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 551.

23.     The default judgment against defendant Ronald J. Pierpont determined that Mr. Pierpont does not have any interest in the Property.  It also avoided his liens on the Property and preserved those liens for the benefit of the Debtor's estate pursuant to 11 U.S.C. § 551.

**E.     Denial of Debtor's Discharge and Appeal**

24.     On or about October 18, 2021, Houser Bros. filed a complaint under 11 U.S.C.§ 727 to deny the Debtor's discharge, adversary no. 8:22-ap-01097-SC.  *Adv. docket no. 1.*  Pursuant to an order entered on or about May 23, 2023, the Court denied the Debtor's discharge (the "Discharge Judgment").  *Adv. docket no. 81.*

25.     The Debtor appealed that ruling to the United States District Court, which affirmed the Discharge Judgment.  *Adv. docket no. 131.*  No further appeal was taken therefrom.

**F.     Debtor's Chapter 13 Filing**

26.     On or about September 9, 2024, the Debtor filed another voluntary petition for relief – this one under Chapter 13 of the Bankruptcy Code, which was assigned case no. 8:24-11267-SC (the "Chapter 13 Case").  The Chapter 13 Case was dismissed on or about October 21, 2024. *Chapter 13 Docket no. 38.*

**G.     Debtor's Motion to Convert to Chapter 13**

27.     On or about September 11, 2024, the Debtor filed a motion to convert the Case to Chapter 13.  *Docket no. 438.*  Pursuant to an order entered on or about October 29, 2024, the Court denied the Debtor's motion to convert.  *Docket no. 491.*

**H.     Proofs of Claim**

28.     A true and correct copy of claim no. 4-1 filed by the Jasso Parties is attached hereto, marked as Exhibit "9" and incorporated herein by this reference.

29.     A true and correct copy of claim no. 1-2 filed by Gables is attached hereto, marked as Exhibit "10" and incorporated herein by this reference.

30.     A true and correct copy of claim no. 7-1 filed by the Debtor is attached hereto, marked as Exhibit "11" and incorporated herein by this reference.

31.     A copy of the unpublished case of *In re Roach*, 2019 WL 408628, at *3-5 (B.A.P. 9th Cir. 2019) is attached hereto, marked as Exhibit "12" and incorporated herein by this reference.

1785196.1  27064

30

DATED: January 31, 2025

DANNING, GILL, ISRAEL & KRASNOFF, LLP

By:
ERIC P. ISRAEL
Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

1785196.1 27064

31

ES 126                    ES 126                    ES 126

# EXHIBIT 1

ES 127                    ES 127                    ES 127

**GALAXY HOMES**
2431 N Tustin Ave Unit L
Santa Ana, CA 92705
833.459.9467

# PURCHASE AGREEMENT - RESALE MANUFACTURED HOME
(Offer and Acceptance)

NOTICE: THIS FORM IS COPYRIGHTED BY M&M FORMS. REPRODUCTION OF ALL OR PART IS STRICTLY FORBIDDEN

_____ Hunt. Beach _____, California, dated 11-19-24

Received from   RICHARD HERR _____, hereinafter called Buyer, the sum of
_____ dollars ($ 1000.00 ) evidenced by ☐ Cash ☑ ) Check, or
☐ One Thousand Dollars _____ payable to  SELLERS CHOICE ____, as deposit on account of
purchase price of _____ ($ 275000 _____) for the purchase of manufactured home
located at 16222 Monterey Lane 376 _, City of Hunt. Beach _____, Zip Code 92649 _, County of Orange _,
California in  Rancho Del Rey _____ Mobilehome Park, Space # 376 ____. APN. Said deposit to be
increased to $_____ to a total of $_____ no later than _____.

## DESCRIPTION OF MANUFACTURED HOME

Make  SKYLINE ____, Model  CUSTOM VILLA _, Year 2014 _, Net size 60 _ x 30 _, Expando ____x____, Tag ____x____.
Screen Enclosure (not a habitable room) _____x_____. Other _____. This unit was measured ☑ Yes ☐ No
Serial Numbers:        DOH/HUD Numbers:              Decal Number LBM1081 ___ Year 2006
AC7V710394GB/GA        PFS1130282              or  LPT Decal Number _____
_____        PFS1130281

1. Together with all built-in appliances, heating units, water heater, and the following: ☑ skirting, ☑ awnings, ☑ steps, ☑ decks, ☑ porches, ☐ air conditioner, ☐ air cooler, ☑ shed(s), ☐ existing tacked down or permanent carpeting, ☐ window coverings, ☑ refrigerator, ☑ free-standing stove, ☑ washer, ☑ dryer, ☑ fire & smoke alarms, ☑ light fixtures, ☑ in-ground shrubs and trees, ☐ other _____.
2. ☑ This is a cash sale, or ☐ this offer is contingent upon Buyer providing Seller with evidence of loan approval within_____
working days from date of Seller's acceptance of this offer.
3. This offer is contingent upon the Buyer and Manufactured Home qualifying for park tenancy within _____ working days from date of
acceptance of this offer.
4. Buyer acknowledges that Registered Owner is not assigning or subletting the space occupied by the manufactured home in its
present location.
5. Buyer must negotiate a tenancy agreement with the Mobilehome Park Management. Failure of approval of tenancy shall terminate
this agreement.
Buyers'/Sellers' Initials
6. _____/_____ Health & Safety inspection: ☑ Yes ☐ No. Inspection fee to be paid by ☑ Buyer ☐ Seller ☐ Split 50/50.
7. _____/_____ Health & Safety repairs to be paid by seller.
8. _____/_____ Structural pest control inspection: ☑ Yes ☐ No. Inspection fee to be paid by: ☐ Buyer ☑ Seller ☐ Split 50/50.
9. _____/_____ Structural pest control repairs, Section One only, to be paid by seller.
10. _____/_____ Home warranty: ☐ Yes ☑ No  Company _____, To be paid for by: ☐ Buyer ☐ Seller ☐ Split 50/50.
11. _____/_____ Park-required upgrades to be paid by: ☑ Buyer ☐ Seller.
12. _____/_____ Escrow and title fees to be paid by: ☑ Buyer ☐ Seller ☐ Split 50/50.
13. Estimated date of close of escrow is  30 DAYS _____.
14. Possession shall be given to Buyer: ☑ On close of escrow, ☐ not later than _____ calendar days after close of escrow,
or ☐ _____.
15. Registered owner represents:  (a) the property and improvements thereon shall be in the same general condition on the date of
possession by Buyer as upon acceptance of this agreement and,  (b) that all appliances and mechanical apparatus are in working order,
(c) roof is free of leaks,  (d) all cracked or broken glass, including windows, mirrors and shower and tub enclosures will be replaced,
(e) Seller is responsible for the repair of any leaks of plumbing, showers and tub enclosures and for any permits and repairs for
alterations or modifications required by the Department of Housing and Community Development.
16. The wheels, wheelhubs, tires, towbars, and axles are NOT included in the sales price.
17. Title to be free of liens and encumbrances, recorded, filed, registered, or known to Seller.
18. Title vesting to be determined in escrow by Buyer.
19. Evidence of title shall be in the form of a duly endorsed, dated, and delivered Certificate of Ownership and delivery of current
Registration Certificate as required by the Department of Housing and Community Development.
20. A document fee, if charged, is not a government fee.
21. Buyer acknowledges that present or future movement of the manufactured home is subject to the then current regulations of the
Department of Transportation and the legal owner.
22. If the manufactured home is destroyed or materially damaged prior to close of escrow, on demand of Buyer any deposit made by
Buyer shall be returned to Buyer, except for _____, and this contract thereupon shall terminate.
23. If action is instituted to enforce this agreement, the prevailing party shall receive reasonable attorney's fees.
Buyers'/Sellers' Initials
_____/_____

Form 101, Rev. 7/2016 Page 1 of 2 pages

Manufactured Home Address  16222 Monterey Lane HB 92649

24. Space rent, utilities, license fees, and property tax shall be prorated: ☑ as of close of escrow, or ☐ _____

25. The total price listed on page one includes accessories, structures, and/or services to be supplied by dealer. Prices and descriptions

for each are:_____

26. The name, business address, and license number of the installation contractor, if any, are as follows:

27. The following agency relationships are hereby confirmed for this transaction:

Listing Office  COLDWELL BANKER  is the agent of:          Selling Office  Galaxy Homes  is the agent of:

☑ The Registered Owners exclusively, or                      ☑ The Buyers exclusively, or

☐ Both Registered Owners and Buyers.                         ☐ Both Registered Owners and Buyers.

28. Additional terms: Seller to provide clear termite report-Buyer to obtain property inspection-Buyer to obtain park approval-seller to

address all fire-health and safety-

## NOTICE TO BUYER:

**A. Do NOT sign the purchase agreement before you read it, or if it contains any blank spaces to be filled in.**
**B. You are entitled to a completely filled-in copy of this agreement and, if purchasing a manufactured home covered by a warranty, a copy of the warranty.**

Complaints concerning the purchase of the manufactured home shall be referred to the dealer and, if the complaint is not resolved, may be referred to the Department of Housing and Community Development, Division of Codes and Standards, Occupational Licensing, Post Office Box 278690, Sacramento, CA 95812, telephone (800) 952-5275.

Agent: David Guarino                  Dealership Galaxy Homes

Address 2431 N. Tustin Ave. L Santa Ana CA 92705                  Telephone 833-459-9467

**The undersigned Buyer offers and agrees to buy the above described manufactured home on the terms and conditions above stated and acknowledges receipt of a copy hereof.** Unless acceptance is signed by Registered Owner(s) and a signed copy delivered in person, by mail, or facsimile, and received by Buyer at the address below, or by David Guarino

who is authorized to receive it on behalf of Buyer, by _____ (date and time), this offer shall be deemed revoked and the deposit shall be returned. TIME IS OF THE ESSENCE IN THIS CONTRACT. This agreement and any supplement, addendum, or modification relating hereto, including any photocopy or facsimile thereof, may be executed in two or more counterparts, all of which shall constitute one and the same writing. ☐ YES ☑ NO  THE FOLLOWING ADDENDUMS ARE INCLUDED IN THIS AGREEMENT:_____

Buyer:_____  Address:_____

Buyer:_____  Telephone:_____  Email:_____

## REGISTERED OWNERS' ACCEPTANCE:

The undersigned Registered Owner accepts the foregoing offer and agrees to sell the manufactured home described thereon on the terms and conditions set forth, or if checked, ☐ SUBJECT TO ATTACHED COUNTER OFFER DATED_____

The undersigned has employed _____ (Listing Dealer) and _____ (Selling Dealer) and agrees to pay for services the sum of _____ dollars ($_____ ) as commission. Commission shall be split _____ to Listing Dealer and _____ to Selling Dealer, payable as follows: (a) upon close of escrow, or (b) if completion of sale is prevented by default of Registered Owner, upon Registered Owners' default. If action is instituted to enforce this agreement, the prevailing party shall receive reasonable attorney's fees.

Seller_____  Date _____  Seller _____  Date _____

Listing Agent_____  Selling Agent_____

Dealership_____  Dealership_____

ACKNOWLEDGEMENT OF RECEIPT: Buyer or authorized agent hereby acknowledges receipt of signed Acceptance on

(date) _____ at _____ AM/PM. (Initials) _____ .

**GALAXY HOMES**
2431 N Tustin Ave Unit L
Santa Ana, CA 92705
833.459.9467

**376**

NOTICE: THIS FORM IS COPYRIGHTED AND REPRODUCTION OF ALL OR PART IS STRICTLY FORBIDDEN.

## MANUFACTURED HOME PURCHASE ORDER AND FEDERAL DISCLOSURE STATEMENT

PURCHASER: Richard Herr    DATE: 8/24/2024

ADDRESS: 2431 N. Tustin Ave L    PHONE: (714) 397-4910

CITY: Santa Ana    STATE: CA    ZIP: 92705    SALESPERSON: David Guarino

Subject to the terms and conditions stated on both sides of this agreement Seller agrees to sell and Purchaser agrees to purchase the following MFD./MBL Home:

| MAKE | MODEL | B. ROOMS | APPROX. (NOT INCL. TOW BAR/SAVES) | ☐ NEW | SITUS |
|---|---|---|---|---|---|
| SKYLINE | CUSTOM VILLA | 2 | L. 60 W. 30 | ☑ USED | 16222 Monterey Lane Huntington Beach 92649 |

| SERIAL NUMBER | APPROX DEL. DATE | HUD OR HCD NO. | DT. OF MFG. |
|---|---|---|---|
| AC7V710394GB/GA | | LBM1081 | SPACE-376 |

THE COST OF THE MFD./MBL HOME EXCLUDES THE LISTED PRICES FOR THESE ITEMS:

$ 0 TOW BAR, $ 0 WHEELS, $ 0 WHEEL HUBS, $ 0 TIRES, $ 0 AXLES

SQ. FT. LIVING AREA 1,700

**MFD. HOME PRICE $ 270,000.00**

DATE MFD. ORD.    ESCROW OPEN    STK #/OTHER    USED HOME SALES TAX, IF ANY. (1ST SOLD PRIOR TO 7/1/80) $

ITEMIZED ACCESSORIES AND THEIR COSTS: (SEE ADDENDUMS)

| | |
|---|---|
| TOTAL ACCESSORIES (OUTSIDE HOME) | $ |
| TOTAL MFG. HOME & ACCESSORIES | $ |
| SALES TAX (ITEMS NOT INTEGRAL TO HOME) | $ |
| FOUNDATION SYSTEM / TIE DOWNS | $ |
| DELIVERY | $ |
| SET UP | $ |
| HCD FEES | $ 186.00 |
| INSURANCE PREMIUM (ONLY IF SOLD BY DEALER) | $ |
| ESCROW FEES | $ 750.00 |
| LENDER FEES | $ |
| OTHER / PRE PAID TAXES | $ |
| DOC. FEE (NOT A GOVERNMENTAL CHARGE) | $ |
| **1. TOTAL CASH PRICE** | $ 270,936.00 |

### DESCRIPTION OF TRADE-IN

| NAME | MODEL | BEDROOMS |
|---|---|---|
| TITLE NO. | SERIAL NO. | COLOR |
| AMOUNT OWING | | ACCOUNT NO. |

TO WHOM:

ADDRESS/PHONE

THE MANUFACTURER STATES THAT INSULATION HAS BEEN INSTALLED IN THIS HOME AS FOLLOWS: (NEW ONLY)

| | TYPE | THICKNESS | 'R' FACTOR |
|---|---|---|---|
| ROOF | | | |
| EXTERIOR WALLS | | | |
| FLOOR | | | |

**WARNING – Unless a charge is included in this Agreement for Public Liability or Property Damage Insurance, Payment for such Coverage is not provided by this agreement.**

"If the dealer is also licensed as a real estate broker, the sale of a manufactured home or mobilehome being installed on a foundation system pursuant to Section 18551 may be included in the purchase document for the underlying real property, provided that the requirements of HSC SEC. 18035.3 are met."

| | |
|---|---|
| ALLOWANCE ON TRADE-IN | $ |
| LESS BAL. DUE ABOVE | $ |
| NET ALLOWANCE | $ |
| PAID HEREWITH | $ |
| CASH BEFORE DEL. | $ |
| DESIGNATED DEPOSIT (INC. IN DN. PMT) | $ 1000.00 |
| **2. LESS BUYERS DOWN PAYMENT** | $ 1,000.00 |
| **3. UNPAID BAL. ON CASH SALES PRICE** | $ 269,936.00 |
| **4. FINANCE CHARGE** | $ |
| **5. ANNUAL PERCENTAGE RATE**   % | |
| **6. TOTAL PAYMENT AMOUNT (3+4)** | $ |
| **7. UNPAID BALANCE DUE PRIOR TO DEL.** | $ |
| **8. TOTAL DEFERRED PAYMENT PRICE (2+6)** | $ |

PAYABLE AS FOLLOWS:

THE DEALER CERTIFIES THAT THE
INSTALLATION CONTRACTOR IS:

NAME    LIC. #

BUSINESS ADDRESS

CITY    CA    ZIP

A Contractor is required by law to be licensed and regulated by the Contractors State License Board, P.O. Box 26000 Sacramento, CA 95827.

In the event the manufactured home cannot be delivered "and/or" inspection completed within the agreed delivery time due to nonperformance by the buyer, buyer agrees to one of the following at the option of the seller, either (1) to pay $ 0 charges per day until a manufactured home installation acceptance or certificate of occupancy is obtained in addition to all other consideration owing or (2) pay the sum of $ 0 in lieu of total consideration.

**NOTICE TO BUYER: (A) DO NOT SIGN THE PURCHASE AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (B) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THAT AGREEMENT AND, IF PURCHASING A MANUFACTURED/MOBILE HOME COVERED BY A WARRANTY, A COPY OF THE WARRANTY.** Complaints concerning the purchase shall be referred to the dealer and, if the complaint is not resolved, may be referred to the Department of Housing and Community Development, Division of Codes and Standards, Occupational Licensing, Post Office Box 278690, Sacramento, California 95827-6690 (telephone (800) 952-8356). A failure to disclose pursuant to this section shall not be the basis for recision of a conditional sale contract.

The Manufactured Home that I am purchasing will be used as a residence. I further certify that I understand that if subject Manufactured Home is used for any purpose other than a residence, I may be liable, to the State Board of Equalization, for the tax measured by the amount excluded pursuant to this certificate.

PURCHASER _____ DATE_____

**RECEIPT OF A FILLED-IN COPY OF THIS AGREEMENT IS HEREBY ACKNOWLEDGED BY PURCHASER**
The Purchase Order is subject to credit approval and is not binding unless signed by an authorized representative of lender. Purchaser certifies that he is of legal age, and agrees to sign a Security Agreement according to the terms herein. In the event payoff figures on a trade-in toward the purchase of a Manufactured or Mobile Home are more than quoted by the Purchaser, the Purchaser hereby agrees to pay this excess on demand.

**ALL TERMS AND CONDITIONS SET FORTH ON THE REVERSE OF THIS AGREEMENT ARE INCORPORATED HEREIN AND ARE FULLY APPLICABLE AS THOSE SET FORTH ON THE FRONT SIDE OF THIS AGREEMENT.**

| | |
|---|---|
| SELLER: _____ | PURCHASER: _____ |
| SELLER: _____ | PURCHASER: _____ |
| AUTHORIZED REPRESENTATIVE OF DEALER | DATE: _____ 20____ |

## PURCHASE AND SALE AGREEMENT

This agreement is intended to set forth a contract for the purchase by Richard Herr (the "Buyer"), from Jeffrey I. Golden, solely in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian (the "Trustee" or "Seller"), of the 2014 Skyline Custom Villa manufactured home, decal no. LBM 1081 (the "Property") currently located at 16222 Monterey Lane Space 376 Huntington Beach CA 92649 (the "Space"). When executed below, the agreement (the "Agreement") will constitute conclusive evidence of the contract for the sale and purchase of the Property and replace in its entirety the offer dated November 19, 2024, and any oral or written negotiations prior to or since then.

1.      The purchase price for the Property shall be $275,000. The initial deposit shall be $8,250.00 An executed copy of this Agreement shall be delivered to the Trustee upon acceptance of this Agreement by the Buyer. Escrow instructions corresponding to the terms of this agreement shall be signed by the parties within five (5) business days after the date of execution of this agreement. The deposit shall be non-refundable after the Due Diligence Date. The Buyer's deposit shall be fully refundable until the Due Diligence Date (defined below) and thereafter deemed liquidated damages if the transaction fails to close as a result of the Buyer's default and otherwise will be applied to the purchase price upon closing. Escrow holder shall be Erika Baker at West Coast Escrow, 840 Newport Center Drive, Suite 150, Newport Beach, CA 92660, phone (949) 759-7072, fax (303) 323-6638, email Erika.Baker@westcoastwescrow.com and teamnewport@westcoastescrow.com.

2.      The Trustee does not have a ground lease at the Space, but the homeowners association (the "HOA") advises that it will execute a new ground lease with any qualified buyer. The Buyer is to make arrangements directly with the HOA for the Space if needed.

3.      The sale shall not include any personal property within the Property. Without limitation, the following are not included in the sale: washing machine, drier, refrigerator, stove.

4.      The Buyer shall have 21 days from the date of execution of this Agreement to perform and complete all contingencies, inspections, investigations, tests and reviews of reports and complete all due diligence which the Buyer believes to be required for the purchase of the Property, including but not limited to any feasibility studies, financing contingencies (the "Due Diligence Date"). The sale is not contingent upon the acquisition of any financing by the Buyer. The Buyer at the end of the Due Diligence Period may advise the Seller in writing of his election to withdraw from this agreement and receive a full refund on the deposit; otherwise, silence shall be deemed acceptance. After expiration of that time period, the Seller shall file a motion to confirm this sale with the Bankruptcy Court for the Central District of California (the "Bankruptcy Court").

5.      The sale shall be "as is" and "where is" with no warranty or recourse whatsoever. Transfer of the Property shall be by Trustee's Quitclaim Deed. The Trustee has neither seen nor inspected the Property or determined its fitness for any particular use. It is acknowledged that Mr. Golden is a party to this agreement solely in his capacity as the Trustee and not in his personal capacity. The Trustee at close will deliver the Property to the Buyer without any occupants.

1781090.1 27064

6.     The Seller shall convey the Property free and clear of all liens, subject only to the terms of the within contract of sale. The Buyer shall be free to assign this contract to another, but in that event the Buyer shall remain liable hereunder in the event that the assignee fails to perform.

7.     The Buyer acknowledges that sale of the Property is subject to notice to creditors, entry of an order approving the sale by the Bankruptcy Court, and higher and better bids through and including the hearing to approve the sale. Payment of any and all real estate broker's commissions is also subject to notice to creditors and approval by the Bankruptcy Court. Payment of any commission to the Trustee's real estate broker is also subject to approval of the Bankruptcy Court. Unless both Parties waive in writing this provision, the closing shall take place not more than thirty (30) but not less than fifteen (15) calendar days after the date of entry of the order approving the sale.

8.     If any law or local ordinance requires as a condition of sale or transfer that the Property be brought into compliance with minimum energy conservation standards, that smoke detectors be installed or that water heaters be strapped, the Buyer shall comply with and pay for these requirements at the Buyer's sole expense. The Seller will not deliver to the Buyer a written statement of compliance with any applicable state and local law or sign any disclosures. The Buyer is responsible for any required government retrofitting. It is the Buyer's responsibility to complete any and all retrofitting or city reports if they are required. The Trustee will not pay for any termite report or repairs.

9.     All allowable assessments and real property taxes shall be prorated through the closing date to the applicable accounts of the Seller and the Buyer. The sale shall be free and clear of all real property taxes enforceable against the Property through the date of closing of the sale. Escrow fees shall be split between the Buyer and the Seller, and the Seller shall pay any real property transfer tax. Except as otherwise set forth herein, the Buyer shall bear the expense of all other reports or inspections.

10.     The Seller is represented by Coldwell Banker Realty (the "Seller's Broker"). The Buyer is represented by Galaxy Homes (the "Buyer's Broker"). The Seller's Broker and the Buyer's Broker are collectively referred to as the "Brokers." Subject to Court approval, the Seller will pay a real estate broker's commission of 6% of the sale price of the Property to the Brokers as follows: 3.0% to Coldwell Banker Realty, as Seller's Broker in connection with the closing of this sale; and 3.0% to Galaxy Homes, , as the Buyer's Broker in connection with the closing of this sale. No commission shall be due or payable except from the cash proceeds of an actual sale of the Property to the Buyer.

11.     The Parties each represent that they have the power and authority to enter into this agreement, except that the Trustee's authority is subject to Court approval.

17781090.1  27064

12.     The Buyer's sole remedy in the event that escrow fails to close as a result of the Seller's inability to close escrow shall be a refund of the deposit in full.  In the event the Buyer fails to perform by reason of the Buyer's default, the deposit of $8,550 may be retained by the Seller as liquidated damages without further legal action.

_____ [Buyer's initials]

13.     The Bankruptcy Court for the Central District of California shall have jurisdiction to interpret and enforce the terms of this agreement.  This agreement shall be construed pursuant to the laws of the State of California and the United States Bankruptcy Code.

14.     This Agreement shall expire if not accepted on or before December 3, 2024, at 5:00 p.m. Pacific Time.

15.     This Agreement is binding upon and shall inure to the benefit of the parties hereto, and their respective attorneys, agents, heirs, administrators, predecessors, successors and assigns.

16.     This Agreement constitutes the entire agreement between the Parties hereto pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and other writings between the parties.  No supplement, modification, waiver or termination of this Agreement shall be binding unless executed in writing by the Parties to be bound thereby

DATED: November ___, 2024                "SELLER"

Jeffrey I. Golden, Chapter 7 Trustee for the
Bankruptcy Estate of Jamie Lynn Gallian

AGREED AND ACCEPTED:

DATED: November ___, 2024                "BUYER"

Richard Herr

17810901 27064

Docusign Envelope ID: 4BB72358-FF50-402C-A9A4-3850A01924C2
Docusign Envelope ID: 430A71BF-E941-4552-92D8-CD71D66B0CD3

CALIFORNIA
ASSOCIATION
OF REALTORS®

# ASSIGNMENT OF AGREEMENT AMENDMENT
(C.A.R. Form AOAA, Revised 6/24)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☒ Other **Purchase and Sale Agreement**, dated **12/03/2024** ("Agreement"), on property known as **16222 Monterey Ln. #376, Huntington Beach, CA 92649** ("Property"), between **Richard Herr** ("Buyer") and **Jeffrey I. Golden, Chapter 7 Trustee** ("Seller").

Buyer and Seller are referred to as the "Parties."

In consideration, of the covenants contained herein, Buyer hereby assigns to assignee and assignee accepts the assignment, subject to Seller's consent if required by the Agreement, of all or a partial interest of Buyer's right, title, and interest under the Agreement, including without limitation, the right, title, and interest in any deposit or down payment upon the following terms and conditions:

1. **PARTIAL OR TOTAL ASSIGNMENT:**
   A. ☐ **Partial Assignment (Adding a buyer):** Buyer is adding the Assignee(s) named below to the Agreement and granting to such Assignee(s) a partial interest in the Agreement.
   OR B. ☒ **Total Assignment (New buyer(s) replaces all original Buyers):** Buyer is assigning all of Buyer's interest in the Agreement to the Assignee(s) named below.
   OR C. ☐ **Other Assignment (Replacing a Buyer and at least one original Buyer remaining; or Deleting a Buyer):** _____ (buyer(s) being removed) is assigning all of that buyer(s) interest in the Agreement to the new or remaining buyer(s) (Assignee(s)) named below.
   D. **Assignee(s) Names:** _Galaxy Homes_ , _____ , _____ .
   E. ☐ Assignee is Buyer's own trust or a wholly-owned entity of Buyer.

2. **PRIOR DOCUMENTS:** Assignee shall initial the first page of each document and Deliver to Seller all of the transaction documents previously approved by Buyer including, but not limited to, all contract documents, inspection reports, pamphlets, advisories, and disclosures ("Prior Documents") within the time specified below. Unless Otherwise Agreed, Assignee acknowledges that all time frames in the Agreement remain the same and no additional time shall be provided for any matter including, but not limited to, investigation, review of documents, or Close Of Escrow.
   A. **DELIVERY OF PRIOR DOCUMENTS:**
      (1) **Prior Documents already delivered to Assignee:** Assignee acknowledges that Buyer has already provided Assignee all Prior Documents.
   OR (2) ☐ **Prior Documents not yet delivered to Assignee:** Seller shall Deliver to Buyer and Assignee a seller-signed copy of this Assignment of Agreement Addendum ("Assignment"). Upon receipt of the seller-signed Assignment, Buyer shall immediately Deliver to Assignee all Prior Documents.
   B. **PREQUALIFICATION OR PREAPPROVAL OF ASSIGNEES:** Assignee has been prequalified or preapproved by Buyer's lender as per the Agreement and a copy is attached. This requirement applies even if 1E is checked.
   C. **TIME TO RETURN ASSIGNEE-INITIALED PRIOR DOCUMENTS:**
      (1) Initialed copies of all Prior Documents are attached to this Assignment.
   OR (2) ☐ Assignee shall Deliver initialed copies of all Prior Documents to Seller within 3 (or ____ ) Days after Seller Delivers to Assignee a Signed Copy of this Assignment.
      (3) If 1E is checked, Delivery and Return of Prior Documents is not required because Assignee is Buyer's own trust or a wholly-owned entity of Buyer.
   D. **EFFECT OF FAILURE TO RETURN OR ATTACH DOCUMENTS:** Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Assignment and the Assignment shall have no further force and effect:
      (1) **Prior Documents:** If Assignee does not Deliver to Seller all Prior Documents within the time specified in 2C.
      (2) **Prequalification or preapproval:** If Assignee does not attach same prequalification or preapproval from Buyer's lender as required by Buyer.

3. **CONSIDERATION FOR ASSIGNMENT:**
   A. Buyer has not received and will not receive any monetary consideration from Assignee for this Assignment.
   OR B. ☐ Buyer has received or will receive consideration from Assignee in the amount of $_____ (or ☐ _____ ).

4. Assignee represents for the benefit of Seller that Assignee ratifies and approves as Assignee's own acts all prior approvals and acts of Buyer pursuant to the Agreement up to and including the date of this Assignment.

5. Assignee assumes and agrees to perform and observe all of the obligations and covenants of Buyer in the Agreement to be performed after the date of this Assignment.

6. Buyer acknowledges and agrees that, notwithstanding Seller's agreement to this Assignment, Buyer is not released from any obligations or covenants under the Agreement.

7. Other terms: _____

© 2024, California Association of REALTORS®, Inc.

**AOAA REVISED 6/24 (PAGE 1 OF 2)**

## ASSIGNMENT OF AGREEMENT AMENDMENT (AOAA PAGE 1 OF 2)

ES 134      ES 134      ES 134

Docusign Envelope ID: 430A71BF-E941-4552-92D8-CD71D66B0CD3

8.   Without releasing Buyer from any obligations or covenants contained herein, Seller consents to the foregoing Assignment.
under the Agreement, in consideration of the covenants contained herein, Seller consents to the foregoing Assignment.

9.   The parties acknowledge and agree that they have been advised to review this Assignment with a qualified California real estate attorney and/or accountant prior to signing this Assignment. The Brokers and agents make no representation as to the propriety, adequacy, legality or tax consequences of this Assignment.

**By signing below, Buyer assigns the Agreement to Assignee, and Assignee accepts the assignment from Buyer, and Buyer and Assignee, acknowledge that each has read, understands, received a copy of and agrees to the terms of this Assignment of Agreement Amendment.**

12/13/2024

_Richard Herr_
Buyer *Richard Herr* ...............                                              Date

_____                                              _____
Buyer                                                                         Date

☒ **ENTITY ASSIGNEE: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**

(1)  One or more Assignees is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or
☐ Other: _____.

(2)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not for him/herself as an individual. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall Deliver to Seller and Escrow Holder, within **3 Days** of signing, evidence of authority to act in that capacity.

(3)  The name(s) of the Legally Authorized Signer(s) is: _Richard Herr_.

(4)  A.  If a trust, identify Assignee as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust).
     B.  If Property is sold under the jurisdiction of a probate court, identify Assignee as executor or administrator, or by a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).

(5)  The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____.

**ASSIGNEE SIGNATURE(S)** signed by:

(Signature) By, _Richard Herr_                                    Date: 12/13/2024
Printed name of ASSIGNEE: _Galaxy Homes_
☒ Printed Name of Legally Authorized Signer: _Richard Herr_    Title, if applicable: _President_

(Signature) By, _____              Date: _____
Printed name of ASSIGNEE: _____
☐ Printed Name of Legally Authorized Signer: _____  Title, if applicable: _____
☐ IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA)

**By signing below, Seller consents to the assignment and acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Assignment of Agreement Amendment.**

12/16/24

_____                                              _____
Seller *Jeffrey I. Golden, Chapter 7 Trustee*                                Date

_____                                              _____
Seller                                                                        Date

ASSIGNMENT NOT ACCEPTED: _____/_____. This assignment was NOT accepted by Seller on _____ (date).
                              Seller Initials

**Seller's right to disapprove an assignment, if applicable, is established in the Agreement.**

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.
Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
AOAA REVISED 6/24 (PAGE 2 OF 2)



**ASSIGNMENT OF AGREEMENT AMENDMENT (AOAA PAGE 2 OF 2)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com       16222 Monterey

# EXHIBIT 2

ES 136                          ES 136                          ES 136

Case 8:21-bk-11710-SC   Doc 483-1 Filed 09/05/24   Entered 09/05/25 14:59:44   Desc
Exhibit Exhibits 1 to 11   Page 1 of 2

1   ERIC P. ISRAEL (State Bar No. 132426)
       *eisrael@DanningGill.com*
2   DANNING, GILL, ISRAEL & KRASNOFF, LLP
    1901 Avenue of the Stars, Suite 450
3   Los Angeles, California 90067-6006
    Telephone:   (310) 277-0077
4   Facsimile:    (310) 277-5735

5   Attorneys for Jeffrey I. Golden,
    Chapter 7 Trustee
6

```
┌─────────────────────────────────┐
│       FILED & ENTERED           │
│                                 │
│         SEP 05 2024             │
│                                 │
│  CLERK U.S. BANKRUPTCY COURT    │
│  Central District of California │
│  BY bolte    DEPUTY CLERK       │
└─────────────────────────────────┘
```

7              UNITED STATES BANKRUPTCY COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9                    SANTA ANA DIVISION

10

11   In re                                Case No. 8:21-bk-11710-SC

12   JAMIE LYNN GALLIAN,                   Chapter 7

13                                         **ORDER GRANTING TRUSTEE'S
                                           APPLICATION TO EMPLOY REAL**
14          Debtor.                        **ESTATE BROKER COLDWELL
                                           BANKER REALTY AND AGENTS**
15                                         **WILLIAM FRIEDMAN AND GREG
                                           BINGHAM PURSUANT TO 11 U.S.C.**
16                                         **§§ 327 AND 328 (*DOCKET NO. 395*)**

17                                         Date:      August 27, 2024
                                           Time:      1:30 p.m.
18                                         Place:     Courtroom "5C"
                                                      411 W. 4th Street
19                                                    Santa Ana, CA

20

21          On August 27, 2024, at 1:30 p.m., there came before the Court for hearing the *Trustee's*

22   *Application to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman*

23   *and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328 (docket no. 395)* (the "Application")

24   filed by Jeffrey I. Golden, the Chapter 7 trustee herein (the "Trustee"), the Honorable Scott C.

25   Clarkson, United States Bankruptcy Judge, presiding.  Appearing for the Trustee was Eric P. Israel

26   of Danning, Gill, Israel & Krasnoff, LLP; the Trustee appeared; the Debtor appeared in pro per;

27   and Ed Hays of Marshack Hays LLP appeared for Houser Brothers Co. ("Houser").  No other

28   appearances were made.

1    The Court having read and considered the Application, the Debtor's opposition to the

2    Application (*docket nos. 401, 402 and 403*), the Trustee's reply thereto (*docket no. 408*), the Notice

3    of Joinder filed by Houser in the Application (*docket no. 409*), having heard the oral statements at

4    the hearing including by the Debtor, the Trustee's counsel, and the Trustee's real estate broker,

5    Greg Bingham (the "Trustee's Broker"), and for the reasons set forth by the Court on the record at

6    the hearing, it is hereby

7        ORDERED THAT:

8        1.    The Application is granted in its entirety.

9        2.    The Trustee is authorized to employ Coldwell Banker Realty ("Broker") and its

10   agents William Friedman and Greg Bingham as the bankruptcy estate's real estate agents herein

11   pursuant to the terms and conditions set forth in the Application.

12       3.    The Trustee is authorized to enter into the exclusive listing agreement with the

13   Broker upon the terms and conditions set forth in the Application.

14       4.    The Trustee is authorized to extend, modify (except no increase as to commission),

15   or terminate the agreement, in his sole discretion, without further notice or approval of the Court.

16       5.    The Debtor shall afford the Trustee's Broker unimpeded access to the Property upon

17   24 hours' advance notice to her cell phone.

18                                    ###

19

20

21

22

23

24   Date: September 5, 2024                    Scott C. Clarkson
                                                United States Bankruptcy Judge

25

26

27

28

ES 138          1776027.2  27064          ES 138       2          ES 138

# EXHIBIT 3

ES 139                    ES 139                    ES 139

Fill in this information to identify your case and this filing:

| | | | |
|---|---|---|---|
| Debtor 1 | **Jamie Lynn Gallian** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number _____      ☐ Check if this is an amended filing

## Official Form 106A/B
## Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes. Where is the property?

## Located on APN 178-011-16, Space No. 376

1.1

| | | |
|---|---|---|
| **16222 Monterey Ln Space #376** | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| Street address, if available, or other description | ☐ Single-family home | |
| | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| | ■ Manufactured or mobile home | |
| | ☐ Land | Current value of the entire property?    Current value of the portion you own? |
| **Huntington Beach   CA   92649-0000** | ☐ Investment property | **$235,000.00      $235,000.00** |
| City          State     ZIP Code | ☐ Timeshare | |
| | ☐ Other _____ | Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known. |
| | **Who has an interest in the property?** Check one | |
| **Orange** | ■ Debtor 1 only | **Fee simple** |
| County | ☐ Debtor 2 only | |
| **Personal Residence of Debtor since 11/1/2018** | ☐ Debtor 1 and Debtor 2 only | ☐ Check if this is community property (see instructions) |
| **2014 Skyline Custom Villa Manufactured Home** | ☐ At least one of the debtors and another | |
| **Decal No. LBM1081** | Other information you wish to add about this item, such as local | |
| **Serial Number AC7V710394GB 56'x15'2"** | property identification number: LPT APN  891-569-62 | |
| **Serial Number AC7V710394GA 60'x15'2"** | **Registered Title with HCD Debtor's single member LLC, J-Sandcastle Co, LLC** | |

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here......................................................................=>     **$235,000.00**

**Part 2:    Describe Your Vehicles**

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | **Jamie Lynn Gallian** | |
| | First Name — Middle Name — Last Name | |
| Debtor 2 | | |
| (Spouse if, filing) | First Name — Middle Name — Last Name | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | |
| Case number (if known) | | ☐ Check if this is an amended filing |

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property                     12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:**   **List All Secured Claims**

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|---|
| | | $0.00 | $235,000.00 | $0.00 |

**2.1** **Houser Bros. Co.**

Creditor's Name
**DBA Rancho Del Rey
Mobilehome Estates
16222 Monterey Ln
Huntington Beach, CA
92649**

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.

☑ Debtor 1 and another (J-Sandcastle Co, LLC)

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a community debt

Date debt was incurred   11/1/2018 ongoing

**Describe the property that secures the claim:**

**16222 Monterey Ln #376 Huntington Beach,
CA 92649  Orange County Registered HCD
Title held by Debtor's single member LLC -
J-Sandcastle Co, LLC**

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

☑ Other (including a right to offset)   **Unexpired term of 80-yr. Ground Leasehold - Tract No. 10542, Unit 4, Space 376.**

Last 4 digits of account number   0376

# EXHIBIT 4

ES 142                              ES 142                              ES 142

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>JAMIE LYNN GALLIAN<br>16222 MONTEREY LANE UNIT 376<br>HUNTINGTON BEACH, CA 92649<br>714-321-3449<br>JAMIEGALLIAN@GMAIL.COM<br><br>☒ *Individual appearing without attorney*<br>☐ *Attorney for Debtor* | FOR COURT USE ONLY |
|---|---|

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re:<br>JAMIE LYNN GALLIAN<br><br><br><br><br><br>Debtor(s) | CASE NO.: 8:21-BK-11710-SC<br>CHAPTER: 7<br><br>**SUMMARY OF AMENDED SCHEDULES,<br>MASTER MAILING LIST,<br>AND/OR STATEMENTS<br>[LBR 1007-1(c)]** |
|---|---|

A filing fee is required to amend Schedules D or E/F (see Abbreviated Fee Schedule on the Court's website www.cacb.uscourts.gov). A supplemental master mailing list (do not repeat any creditors on the original) is required as an attachment if creditors are being added to the Schedule D or E/F.
Are one or more creditors being added? ☐ Yes ☒ No

The following schedules, master mailing list or statements (check all that apply) are being amended:

☐ Schedule A/B    ☒ Schedule C    ☐ Schedule D    ☐ Schedule E/F    ☐ Schedule G

☐ Schedule H    ☐ Schedule I    ☐ Schedule J    ☐ Schedule J-2    ☐ Statement of Financial Affairs

☐ Statement About Your Social Security Numbers    ☐ Statement of Intention    ☐ Master Mailing List

☐ Other (*specify*) _____

I/we declare under penalty of perjury under the laws of the United States that the amended schedules, master mailing list, and/or statements are true and correct.

Date: 11/27/2024

*Jamie Lynn Gallian*
Debtor 1 Signature

_____
Debtor 2 (Joint Debtor) Signature (if applicable)

***NOTE***: It is the responsibility of the Debtor, or the Debtor's attorney, to serve copies of all amendments on all creditors listed in this Summary of Amended Schedules, Master Mailing List, and/or Statements, and to complete and file the attached Proof of Service of Document.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

December 2015    Page 1    F 1007-1.1.AMENDED.SUMMARY
ES 143        ES 143        ES 143

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
16222 MONTEREY LN UNIT 375 HUNTINGTON BEACH, CA 92649

A true and correct copy of the foregoing document entitled (*specify*): **SUMMARY OF AMENDED SCHEDULES, MASTER MAILING LIST, AND/OR STATEMENTS [LBR 1007-1(c)]** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _11/27/2024_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:** On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _11/27/24_ | _Joseph Clark_ | *Joseph Clark* |
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California

Case 8:21-bk-11710-SC   Doc 589   Filed 07/31/25   Entered 07/31/25 14:59:05   Desc
Main Document   Page 3 of 6

## ADDITIONAL SERVICE INFORMATION

## 1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,kfrederick@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,kfrederick@ecf.courtdrive.com

Aaron E. DE Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com

Jeffrey I Golden (TR)
lwerner@go2.law, jlg@trustesolutions.net;kadele@go2.law

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmend
oza@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmend
oza@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmend
oza@ecf.courtdrive.com

Brandon J Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
eisrael@DanningGill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Laila Masud on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

ES 145                               ES 145                               ES 145

F 9013-3.1.PROOF.SERVICE

Laila Masud on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

2. **SERVED BY U.S. MAIL**

The Honorable Scott C. Clarkson U.S. Bankruptcy Court
411 W. Fourth Street, Suite 5130 Santa Ana, CA  92701

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
ES 146            ES 146            ES 146

F 9013-3.1.PROOF.SERVICE

## Fill in this information to identify your case:

Debtor 1    JAMIE LYNN GALLIAN
            First Name          Middle Name          Last Name

Debtor 2
(Spouse, if filing)   First Name     Middle Name     Last Name

United States Bankruptcy Court for the: Central District of California

Case number   8:21-BK-11710-SC
(if known)

☑ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt                    04/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

### Part 1:   Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☑ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own Copy the value from *Schedule A/B* | Amount of the exemption you claim *Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| Brief description: 16222 Monterey Ln. UNIT 376<br>Line from *Schedule A/B*: 1.1 | $ 385,000.00 | ☑ $ 600,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | CCP § 704.930(a)<br>CCP § 704.720(a)<br>CCP § 704.930<br>11 U.S.C. 522(P)(2)(B) |
| Brief description: 16222 Monterey Ln. UNIT 376<br>Line from *Schedule A/B*: 1.2 | $ 185,000.00 | ☑ $ 185,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Rollover Sale Proceeds 11/1/2018 to purchase current homestead 2014 manufactured home LBM 1081 |
| Brief description: 16222 Monterey Ln. SPACE 376 "PAD"<br>Line from *Schedule A/B*: 1.3 | $ 200,000.00 | ☐ $ _____<br>☒☐ 100% of fair market value, up to any applicable statutory limit | 11 U.S.C. § 704.930<br>11 U.S.C.§ 704.930(a)<br>11 U.S.C.§ 704.720(a) |

3. **Are you claiming a homestead exemption of more than $189,050?**

   (Subject to adjustment on 04/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☐ No

   ☒ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

   ☐ No

   ☒ Yes  Previous Homestead acquired 3/22/2027 (Outside 1215 days) 4476 Alderport Huntington Beach, sold primary residence exempt homestead 10/31/18, transferred/rolled-over sale proceeds to purchase current .primary residence 11/1/2018 LBM 1081 2014 Skyline Custom Villa Serial No. AC 7V710394GB/GA 16222 Monterey Ln, Unit 376, 891-569-62

| | | | | |
|---|---|---|---|---|
| Debtor 1 | JAMIE LYNN GALLIAN | | Case number *(if known)* | 8:21-BK-11710-SC |
| | First Name   Middle Name   Last Name | | | |

## Part 2:    Additional Page

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | Check only one box for each exemption | |
| **Brief description:** HOUSEHOLD GOOD   **Line from Schedule A/B:** 6.1 | $ 3,500.00 | ☑ $ 3,500.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP §704.020 |
| **Brief description:** CRYSTAL GLASSES   **Line from Schedule A/B:** 6.2 | $ 1,000.00 | ☑ $ 1,000.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP §704.040 |
| **Brief description:** ELECTRONICS, COM   **Line from Schedule A/B:** 7.1 | $ 500.00 | ☑ $ 500.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP §704.020 |
| **Brief description:** FIGURINE COLLECT   **Line from Schedule A/B:** 8.1 | $ 1,900.00 | ☑ $ 1,900.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP §704.225 |
| **Brief description:** MISC CLOTHING   **Line from Schedule A/B:** 11.1 | $ 1,000.00 | ☑ $ 1,000.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP§ 704.220 |
| **Brief description:** EVERYDAY JEWELRY   **Line from Schedule A/B:** 12.1 | $ 1,000.00 | ☑ $ 1,000.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP§ 704.220 |
| **Brief description:** DOGS   **Line from Schedule A/B:** 13.1 | $ 50.00 | ☑ $ 50.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP §704.040 |
| **Brief description:** ALLIANT   **Line from Schedule A/B:** 17.1 | $ 3,793.00 | ☑ $ 3,793.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP § 704.020 |
| **Brief description:** ALLIANT   **Line from Schedule A/B:** 17.2 | $ 1,407.00 | ☑ $ 1,407.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP § 704.225 |
| **Brief description:** ALLIANT   **Line from Schedule A/B:** 17.3 | $ 2,600.00 | ☑ $ 2,600.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP §704.220 |
| **Brief description:** ALLIANT   **Line from Schedule A/B:** 17.3 | $ 2,600.00 | ☑ $ 2,600.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP §704.720 |
| **Brief description:** FIDELITY   **Line from Schedule A/B:** 21.1 | $ 7,400.00 | ☑ $ 7,400.00   ☐ 100% of fair market value, up to any applicable statutory limit | CCP §704.115(A)& (2)(B) |

Official Form 106C    Schedule C: The Property You Claim as Exempt    page 2 of 2

ES 148          ES 148          ES 148

# EXHIBIT 5

1 ERIC P. ISRAEL (State Bar No. 132426)
  eisrael@DanningGill.com
2 AARON E. DE LEEST (State Bar No. 216832)
  adeleest@DanningGill.com
3 DANNING, GILL, ISRAEL & KRASNOFF, LLP
  1901 Avenue of the Stars, Suite 450
4 Los Angeles, California 90067-6006
  Telephone: (310) 277-0077
5 Facsimile: (310) 277-5735

6 Attorneys for Plaintiff Jeffrey I. Golden,
  Chapter 7 Trustee

7

| FILED & ENTERED |
| --- |
| OCT 03 2023 |
| CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte    DEPUTY CLERK |

8                UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    SANTA ANA DIVISION

11

12 | In re                                    | Case No. 8:21-bk-11710-SC

13 | JAMIE LYNN GALLIAN,                       | Chapter 7

14 |          Debtor.

15 | JEFFREY I. GOLDEN, Chapter 7 Trustee,     | Adv. No. 8:23-ap-01064-SC

16 |          Plaintiff,                       | **STIPULATED JUDGMENT AGAINST
                                                 DEFENDANTS STEVEN D. GALLIAN,**
17 |                                          | **BRIAN J. GALLIAN, JUSTIN BARCLAY,**
   |     vs.                                  | **AND E. J. GALLIAN TO AVOID LIENS**
18 |
   | J-SANDCASTLE CO., LLC; J-PAD LLC;        | STATUS CONFERENCE
19 | STEVEN D. GALLIAN; BRIAN J.              | Date: September 26, 2023
   | GALLIAN; JUSTIN BARCLAY; RONALD          | Time: 1:30 p.m.
20 | J. PIERPONT; ROBERT J. MCLELLAND;        | Place: Courtroom 5C
   | AND E. J. GALLIAN,                       |        411 W. Fourth Street
21 |                                          |        Santa Ana, California 92701
   |          Defendants.
22

23        Plaintiff Jeffrey I. Golden, Chapter 7 Trustee (the "Plaintiff"), for the estate of

24 Jamie Lynn Gallian (the "Debtor"), and defendants Steven D. Gallian, Brian J. Gallian; Justin

25 Barclay, and E. J. Gallian (the "Stipulating Defendants"), having lodged on or about September 26,

26 2023 the Stipulation for Judgment Between Trustee and Defendants Steven D. Gallian, Brian J.

27 Gallian, Justin Barclay, and E. J. Gallian to Avoid Liens (the "Stipulation for Judgment") *(adv.*

28 *doc. no. 43);* good cause appearing; it is hereby

1       ORDERED, ADJUDGED AND DECREED THAT:

2       1.    The Stipulation for Judgment is approved in its entirety.

3       2.    Judgment is entered in favor of the Trustee and against the Stipulating Defendants

4   that the Stipulating Defendants are not parties to any security agreement or agreements that would

5   grant them a security interest in or lien on the manufactured home located at 16222 Monterey Lane,

6   Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA,

7   AC7V710394GB (the "Property").

8       3.    Judgment is entered in favor of the Trustee and against the Stipulating Defendants

9   that the Stipulating Defendants have no interest in the Property.

10      3.    Judgment is entered in favor of the Trustee and against Steven D. Gallian and Brian

11  J. Gallian that the "Statement to Encumber" (the "Statement to Encumber") that was executed and

12  submitted to the California Department of Housing and Community Development (the "HCD") on

13  or about August 20, 2020, adding Steven D. Gallian and Brian J. Gallian as legal owners (i.e.,

14  lienholders) on the certificate of title for the Property and any related lien is avoided and preserved

15  for the benefit of the Debtor's estate.

16      3.    Judgment is entered in favor of the Trustee and against the Stipulating Defendants

17  that the following UCC Financing Statement Amendments (UCC-3) and any related liens are

18  avoided and preserved for the benefit of the Debtor's estate.

19
20
21
22
23

| UCC Filing Date | UCC Type | Filing No. |
|---|---|---|
| 12/4/2020 | UCC-3 Amendment | U200034803831 |
| 9/8/2021 | UCC-3 Amendment | U210083394336 |
| 9/8/2021 | UCC-3 Amendment | U210083400018 |
| 9/12/2021 | UCC-3 Amendment | U210084251426 |
| 9/12/2021 | UCC-3 Amendment | U210084255728 |
| 9/12/2021 | UCC-3 Amendment | U210084256326 |
| 9/24/2021 | UCC-3 Amendment | U210088103629 |

24

25      4.    The Trustee and the Stipulating Defendants shall bear their own attorney's fees and

26  costs.

27

28

ES 151     1086.1  27064          ES 151 2          ES 151

5. The Stipulating Defendants shall cooperate in a timely manner with the Trustee to carry out the purpose and effect of the Stipulation for Judgment including executing any further documents that may be required.

6. Pursuant of Rule 54 of the Federal Rules of Civil Procedure there is no just reason for delay in entry of this judgment against the Stipulating Defendants.

<div align="center">###</div>

Date: October 3, 2023

Scott C. Clarkson
United States Bankruptcy Judge

# EXHIBIT 6

ES 153                    ES 153                    ES 153

<table>
<tr><td>1</td><td>AARON E. DE LEEST (State Bar No. 216832)<br>adeleest@DanningGill.com</td></tr>
</table>

1    AARON E. DE LEEST (State Bar No. 216832)
     *adeleest@DanningGill.com*
2    SHANTAL MALMED (State Bar No. 351496)
     *smalmed@DanningGill.com*
3    DANNING, GILL, ISRAEL & KRASNOFF, LLP
     1901 Avenue of the Stars, Suite 450
4    Los Angeles, California 90067-6006
     Telephone: (310) 277-0077
5    Facsimile: (310) 277-5735

6    Attorneys for Plaintiff Jeffrey I. Golden,
     Chapter 7 Trustee

7

```
┌─────────────────────────────────┐
│        FILED & ENTERED          │
│                                 │
│         MAR 29 2024             │
│                                 │
│   CLERK U.S. BANKRUPTCY COURT   │
│   Central District of California│
│   BY bolte     DEPUTY CLERK     │
└─────────────────────────────────┘
```

8            **UNITED STATES BANKRUPTCY COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10            **SANTA ANA DIVISION**

11

| | |
|---|---|
| 12   In re | Case No. 8:21-bk-11710-SC |
| 13   JAMIE LYNN GALLIAN, | Chapter 7 |
| 14       Debtor. | |
| 15 | |
| 16   JEFFREY I. GOLDEN, Chapter 7 Trustee, | Adv. No. 8:23-ap-01064-SC |
| 17       Plaintiff, | **STIPULATED JUDGMENT AGAINST DEFENDANT ROBERT J. MCLELLAND TO AVOID LIENS** |
| 18      vs. | |
| 19   J-SANDCASTLE CO., LLC; J-PAD LLC; STEVEN D. GALLIAN; BRIAN J. | **STATUS CONFERENCE**<br>Date: May 28, 2024 |
| 20   GALLIAN; JUSTIN BARCLAY; RONALD J. PIERPONT; ROBERT J. MCLELLAND; | Time: 1:30 p.m.<br>Place: Courtroom 5C |
| 21   AND E. J. GALLIAN, |        411 W. Fourth Street<br>       Santa Ana, California 92701 |
| 22       Defendants. | |

23

24        Plaintiff Jeffrey I. Golden, Chapter 7 Trustee (the "Plaintiff"), for the estate of

25   Jamie Lynn Gallian (the "Debtor"), and defendant Robert J. McLelland (the "Stipulating

26   Defendant"), having lodged on or about January 25, 2024 the Stipulation for Judgment Between

27   Trustee and Defendant Robert J. McLelland (the "Stipulation for Judgment") *(adv. doc. no. 52)*:

28

1.   Judgment is entered in favor of the Trustee and against the Stipulating Defendant that the Stipulating Defendant is not a party to any security agreement or agreements that would grant him a security interest in or lien on the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB (the "Property").

2.   Judgment is entered in favor of the Trustee and against the Stipulating Defendant that the Stipulating Defendant has no interest in the Property.

3.   Judgment is entered in favor of the Trustee and against Robert J. McLelland that the "Statement of Facts" (the "Statement of Facts") that was executed and submitted to the California Department of Housing and Community Development (the "HCD") on or about August 2, 2021, adding "J-Pad LLC or Robert McLelland" as the legal owners (i.e., lienholders) on the certificate of title for the Property and any related lien is avoided and preserved for the benefit of the Debtor's estate.

4.   Judgment is entered in favor of the Trustee and against the Stipulating Defendant that the following UCC Financing Statement Amendments (UCC-3) and any related liens are avoided and preserved for the benefit of the Debtor's estate.

| UCC Filing Date | UCC Type | Filing No. |
| --- | --- | --- |
| 9/8/2021 | UCC-3 Amendment | U210083394336 |
| 9/12/2021 | UCC-3 Amendment | U210084251426 |
| 9/12/2021 | UCC-3 Amendment | U210084255728 |
| 9/12/2021 | UCC-3 Amendment | U210084256326 |
| 9/12/2021 | UCC-3 Amendment | U210084251729 |
| 9/24/2021 | UCC-5 Amendment | U210088103427 |
| 9/24/2021 | UCC-3 Amendment | U210088103629 |

5.   The Trustee and the Stipulating Defendant shall bear their own attorney's fees and costs.

6.   The Stipulating Defendant shall cooperate in a timely manner with the Trustee to carry out the purpose and effect of the Stipulation for Judgment including executing any further documents that may be required.

1767746.2  27064     2

7.      Pursuant of Rule 54 of the Federal Rules of Civil Procedure there is no just reason for delay in entry of this judgment against the Stipulating Defendants.

### 

Date: March 29, 2024

Scott C. Clarkson
United States Bankruptcy Judge

# EXHIBIT 7

ES 157 ES 157 ES 157

ERIC P. ISRAEL (State Bar No. 132426)
eisrael@DanningGill.com
AARON E. DE LEEST (State Bar No. 216832)
adeleest@DanningGill.com
SHANTAL MALMED (State Bar No. 351496)
smalmed@DanningGill.com
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Plaintiff Jeffrey I. Golden,
Chapter 7 Trustee

FILED & ENTERED

MAY 10 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte       DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7 |
| JEFFREY I. GOLDEN, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>J-SANDCASTLE CO., LLC; J-PAD LLC;<br>STEVEN D. GALLIAN; BRIAN J.<br>GALLIAN; JUSTIN BARCLAY; RONALD<br>J. PIERPONT; ROBERT J. MCLELLAND;<br>AND E.J. GALLIAN,<br><br>Defendants. | Adv. No. 8:23-ap-01064-SC<br><br>**DEFAULT JUDGMENT AGAINST J-PAD<br>LLC**<br><br>Date: May 7, 2024<br>Time: 1:30 p.m.<br>Place: Courtroom 5C<br>     411 W. Fourth Street<br>     Santa Ana, California 92701 |

On April 5, 2024, Plaintiff Jeffrey I. Golden, as the Chapter 7 Trustee (the "Trustee" or

"Plaintiff") for the bankruptcy estate of Jamie Lynn Gallian (the "Debtor"), filed the Motion for

Default Judgment under LBR 7055-1 against Defendant J-Pad LLC (the "Motion") (*docket no. 76*),

which was heard by the Court on May 7, 2024. Default was previously entered against Defendant

1270829.1 27064
1

1   J-Pad LLC (the "Defendant") on August 22, 2023.  The Court having granted the Motion pursuant

2   to an order entered contemporaneously herewith, and good cause appearing:

3         IT IS ORDERED, ADJUDGED AND DECREED THAT:

4         1.      Default judgment is entered in favor of the Plaintiff and against the Defendant on

5   the Plaintiff's first and fifth claims for relief in the Complaint.

6         2.      The transfer to the Defendant of a lien on and security interest in the manufactured

7   home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal

8   # LBM1081, Serial # AC7V710394GA, AC7V710394GB (the "Property") reflected by the secured

9   promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant dated

10   November 16, 2018 and lien on the Property in the amount of $225,000 in favor of the Defendant

11   are avoided and preserved for the benefit of the Debtor's estate in the name of Jeffrey I. Golden,

12   Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian.

13         3.      The transfers to the Defendant relating to the Property, including the following UCC

14   Financing Statements (UCC-1) and UCC Financing Statement Amendments (UCC-3), and any

15   liens on the Property in favor of the Defendant are avoided and preserved for the benefit of the

16   Debtor's estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of

17   Jamie Lynn Gallian.

| UCC Filing Date | UCC Type | Filing No. |
| --- | --- | --- |
| 1/14/2019 | UCC-1 Financing Statement | 197691916827 |
| 1/14/2019 | UCC-1 Financing Statement | 197691915674 |
| 1/14/2019 | UCC-1 Financing Statement | 197691905279 |
| 12/4/2020 | UCC-3 Amendment | U200034803831 |
| 9/8/2021 | UCC-3 Amendment | U210083394336 |
| 9/8/2021 | UCC-3 Amendment | U210083400018 |
| 9/12/2021 | UCC-3 Amendment | U210084251426 |
| 9/12/2021 | UCC-3 Amendment | U210084255728 |
| 9/12/2021 | UCC-3 Amendment | U210084256326 |
| 9/24/2021 | UCC-3 Amendment | U210088103629 |

1      4.     The Debtor's transfers to the Defendant reflected by the "Statement of Facts"

2   submitted to the California Department of Housing and Community Development on or about

3   August 6, 2021, stating that the legal owner of the Property was the Defendant and that the

4   Defendant perfected its lien on January 14, 2019, and the "Statement to Encumber" executed on

5   January 14, 2019, reflecting that the "legal owner" of the Property was the Defendant and any liens

6   on the Property in favor of the Defendant are avoided and preserved for the benefit of the Debtor's

7   estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn

8   Gallian.

9      5.     Pursuant of Rule 54 of the Federal Rules of Civil Procedure there is no just reason

10  for delay in entry of this judgment against the Defendant.

11                                          ###

12

13

14

15

16

17

18

19

20

21

22

23

24   Date: May 10, 2024                         _Scott C. Clarkson_
                                               Scott C. Clarkson
                                               United States Bankruptcy Judge

25

26

27

28

1270829.1  27064

<table>
<tbody>
<tr><td>1</td><td>ERIC P. ISRAEL (State Bar No. 132426)<br><i>eisrael@DanningGill.com</i></td></tr>
</tbody>
</table>

1  ERIC P. ISRAEL (State Bar No. 132426)
   *eisrael@DanningGill.com*
2  AARON E. DE LEEST (State Bar No. 216832)
   *adeleest@DanningGill.com*
3  SHANTAL MALMED (State Bar No. 351496)
   *smalmed@DanningGill.com*
4  DANNING, GILL, ISRAEL & KRASNOFF, LLP
   1901 Avenue of the Stars, Suite 450
5  Los Angeles, California 90067-6006
   Telephone: (310) 277-0077
6  Facsimile: (310) 277-5735

7  Attorneys for Plaintiff Jeffrey I. Golden,
   Chapter 7 Trustee

8

| | FILED & ENTERED |
|---|---|
| | MAY 10 2024 |
| | CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY bolte    DEPUTY CLERK |

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                   **SANTA ANA DIVISION**

12

| 13 | In re | Case No. 8:21-bk-11710-SC |
|---|---|---|
| 14 | JAMIE LYNN GALLIAN, | Chapter 7 |
| 15 | Debtor. | |
| 16 | | |
| 17 | JEFFREY I. GOLDEN, Chapter 7 Trustee, | Adv. No. 8:23-ap-01064-SC |
| 18 | Plaintiff, | **DEFAULT JUDGMENT AGAINST J-SANDCASTLE CO., LLC** |
| 19 | vs. | Date: May 7, 2024 |
| 20 | J-SANDCASTLE CO., LLC; J-PAD LLC; STEVEN D. GALLIAN; BRIAN J. GALLIAN; JUSTIN BARCLAY; RONALD J. PIERPONT; ROBERT J. MCLELLAND; AND E.J. GALLIAN, | Time: 1:30 p.m.<br>Place: Courtroom 5C<br>411 W. Fourth Street<br>Santa Ana, California 92701 |
| 21 | | |
| 22 | | |
| 23 | Defendants. | |

24         On March 27, 2024, Plaintiff Jeffrey I. Golden, as the Chapter 7 Trustee (the "Trustee" or

25  "Plaintiff") for the bankruptcy estate of Jamie Lynn Gallian (the "Debtor"), filed the Motion for

26  Default Judgment under LBR 7055-1 against Defendant J-Sandcastle Co., LLC (the "Motion")

27  (*docket no. 59*), which was heard by the Court on May 7, 2024.  Default was previously entered

28  against Defendant J-Sandcastle Co., LLC (the "Defendant") on August 22, 2023.

1       The Court having granted the Motion pursuant to an order entered contemporaneously

2  herewith, and good cause appearing:

3       IT IS ORDERED, ADJUDGED AND DECREED THAT:

4       1.    Default judgment is entered in favor of the Plaintiff and against the Defendant on

5  the Plaintiff's first claim for relief in the Complaint.

6       2.    The Debtor's transfers of the manufactured home located at and commonly known

7  as 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial #

8  AC7V710394GA, AC7V710394GB (the "Property") to the Defendant, including transferring title

9  to the Property on or about November 15, 2018 and November 20, 2018, are hereby avoided and

10  legal title to the Property and the beneficial interest in the Property (collectively the "Subject

11  Transfers") is recovered for the benefit of the bankruptcy estate in the name of Jeffrey I. Golden,

12  Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian.

13       3.    The Subject Transfers are preserved for the benefit of the estate pursuant to 11

14  U.S.C. § 551.

15       4.    Pursuant of Rule 54 of the Federal Rules of Civil Procedure there is no just reason

16  for delay in entry of this judgment against the Defendant.

17                     ###

Date: May 10, 2024

Scott C. Clarkson
United States Bankruptcy Judge

<table>
<tr><td>1</td><td>ERIC P. ISRAEL (State Bar No. 132426)<br><i>eisrael@DanningGill.com</i></td><td rowspan="6"><div style="border:1px solid"><b>FILED & ENTERED</b><br><br>MAY 10 2024<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY bolte      DEPUTY CLERK</div></td></tr>
</table>

<table><tr></tr></table>

|  |  |  |
|---|---|---|
| 1 | ERIC P. ISRAEL (State Bar No. 132426) <br> *eisrael@DanningGill.com* | |
| 2 | AARON E. DE LEEST (State Bar No. 216832) <br> *adeleest@DanningGill.com* | **FILED & ENTERED** |
| 3 | SHANTAL MALMED (State Bar No. 351496) <br> *smalmed@DanningGill.com* | MAY 10 2024 |
| 4 | DANNING, GILL, ISRAEL & KRASNOFF, LLP <br> 1901 Avenue of the Stars, Suite 450 | |
| 5 | Los Angeles, California 90067-6006 <br> Telephone: (310) 277-0077 | CLERK U.S. BANKRUPTCY COURT <br> Central District of California |
| 6 | Facsimile: (310) 277-5735 | BY bolte     DEPUTY CLERK |

7  Attorneys for Plaintiff Jeffrey I. Golden,
   Chapter 7 Trustee

8

9          **UNITED STATES BANKRUPTCY COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

11              **SANTA ANA DIVISION**

12

| | | |
|---|---|---|
| 13 | In re | Case No. 8:21-bk-11710-SC |
| 14 | JAMIE LYNN GALLIAN, | Chapter 7 |
| 15 | Debtor. | |
| 16 | | |
| 17 | JEFFREY I. GOLDEN, Chapter 7 Trustee, | Adv. No. 8:23-ap-01064-SC |
| 18 | Plaintiff, | **DEFAULT JUDGMENT AGAINST RONALD J. PIERPONT** |
| 19 | vs. | Date: May 7, 2024 <br> Time: 1:30 p.m. |
| 20 | J-SANDCASTLE CO., LLC; J-PAD LLC; STEVEN D. GALLIAN; BRIAN J. GALLIAN; JUSTIN BARCLAY; RONALD J. PIERPONT; ROBERT J. MCLELLAND; AND E.J. GALLIAN, | Place: Courtroom 5C <br> 411 W. Fourth Street <br> Santa Ana, California 92701 |
| 21 | | |
| 22 | | |
| 23 | Defendants. | |

24          On March 27, 2024, Plaintiff Jeffrey I. Golden, as the Chapter 7 Trustee (the "Trustee" or

25  "Plaintiff") for the bankruptcy estate of Jamie Lynn Gallian (the "Debtor"), filed the Motion for

26  Default Judgment under LBR 7055-1 against Defendant Ronald J. Pierpont (the "Motion") (*docket*

27  *no. 58*), which was heard by the Court on May 7, 2024.  Default was previously entered against

28  Defendant Ronald J. Pierpont (the "Defendant") on August 22, 2023.

1    The Court having granted the Motion pursuant to an order entered contemporaneously

2   herewith, and good cause appearing:

3        IT IS ORDERED, ADJUDGED AND DECREED THAT:

4        1.    Default judgment is entered in favor of the Plaintiff and against the Defendant on

5   the Plaintiff's fifth and sixth claims for relief in the Complaint.

6        2.    The Defendant is not a party to any security agreement or agreements that would

7   grant Defendant a security interest in or lien on the manufactured home located at 16222 Monterey

8   Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA,

9   AC7V710394GB (the "Property").

10        3.    The Defendant has no interest in the Property.

11        4.    The Defendant does not have any valid, perfected, and/or unavoidable liens on the

12   Property.

13        5.    The transfers to the Defendant relating to the Property, including the following

14   UCC Financing Statement Amendments (UCC-3), and any liens on the Property in favor of the

15   Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of

16   Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian.

17

| UCC Filing Date | UCC Type | Filing No. |
|---|---|---|
| 12/4/2020 | UCC-3 Amendment | U200034803831 |
| 9/8/2021 | UCC-3 Amendment | U210083394336 |
| 9/8/2021 | UCC-3 Amendment | U210083400018 |
| 9/12/2021 | UCC-3 Amendment | U210084251426 |
| 9/12/2021 | UCC-3 Amendment | U210084255728 |
| 9/12/2021 | UCC-3 Amendment | U210084256326 |
| 9/24/2021 | UCC-3 Amendment | U210088103629 |

6.       Pursuant of Rule 54 of the Federal Rules of Civil Procedure there is no just reason for delay in entry of this judgment against the Defendant.

<div align="center">###</div>

Date: May 10, 2024

Scott C. Clarkson
United States Bankruptcy Judge

1655828.1  27064

3

# EXHIBIT 8

## OVERBID FOR PURCHASE OF MANUFACTURED HOME

The undersigned ("Offeror") hereby offers (the "Overbid") to purchase from Jeffrey I. Golden, the Chapter 7 trustee (the "Seller" or the "Trustee") for the estate of Jaime Lynne Gallian (the "Estate"), bankruptcy case no. 8:21-11710-SC, all of the Estate's right title and interest in and to the manufactured home described as follows (the "Subject Property"):

> Skyline, Custom Villa, 2014, net size 60x30. Serial Numbers AC7V710394GB/GA; DOH/HUD Numbers: PFS1130282 and PFS1130281; Decal Number LBM1081 Year 2006.

Offeror agrees to be bound by all of the terms and conditions of the sale set forth in the Purchase and Sale Agreement and its amendments (the "PSA") attached to the Trustee's Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption (*docket no. __*) filed on January 30, 2025. Offeror acknowledges receipt of a copy of the Sale Motion and the PSA, and agrees to be bound by all of their sale terms, subject to the following additional terms:

Offeror recognizes that the Trustee holds the sole discretion in accepting and rejecting overbids, subject to Court approval. There are no contingencies to this Overbid whatsoever. The sale is subject to acceptance by the Trustee in a Bankruptcy Court auction sale (the "Auction"). Offeror understands that the Seller is a Trustee appointed to liquidate assets of a bankruptcy estate. The Seller has neither seen nor inspected the Subject Property and has not determined its fitness for any particular use or the condition of the Subject Property. Offeror acknowledges that Offeror has done all due diligence which Offeror needs to make this Overbid and to conclude the purchase of the Subject Property. Offeror further understands that the sale is "as is" and "where is" without warranty or recourse whatsoever.

Offeror offers $_____ [at least $276,000] for the Subject Property. Offeror is providing herewith (or has already provided) account statements evidencing proof of funds sufficient to consummate the purchase, with delivery of the $8,280 deposit to Danning, Gill, Israel & Krasnoff, LLP, Attn: Eric P. Israel, 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067. If the Court confirms a sale of the Subject Property to the Offeror, the balance of the purchase price and any applicable sales or transfer tax shall be delivered to the Trustee in good funds within seven (7) calendar days after the date of entry of an order granting the Sale Motion.

Offeror agrees to pay any applicable sales taxes due from the sale and shall indemnify the Estate for any claim submitted for sales taxes thereon.

.

The Auction will be held on March 4, 2025 at 11:00 a.m., in Courtroom "5C", United States Bankruptcy Court, 411 W. Fourth Street, Santa Ana, California.  All parties wishing to participate in the Auction must appear personally, through an attorney or other expressly authorized agent.  Telephonic appearances, if and to the extent permitted by the Court, are subject to the Court's procedures.

In the event that Offeror for any reason fails to close the sale timely for any reason due to the Buyer's fault, Offeror will forfeit the Deposit to the Trustee as liquidated damages.

Offeror agrees that the Bankruptcy Court handling the Debtor's case shall have jurisdiction over any dispute arising under this Overbid or the sale contemplated hereby.  Offeror consents to the Court's resolution of such disputes as a core matter, waives any right to a jury trial and consents to the entry of a final order or judgment thereon.


Dated: _____     _____
                   (Name of Offeror)

                   _____
                   (street address)

                   _____
                   (city, state, zip code)

                   _____
                   (telephone number and email address)

                   _____
                   (signature of Offeror or authorized agent of Offeror, if applicable)

                   _____
                   (name and title of agent of Offeror, if applicable)


1785053.1 27046

**ES 168**          **ES 168**          **ES 168**

# EXHIBIT 9

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor 1</td><td>JAMIE LYNN GALLIAN</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>Central District of California</td></tr>
<tr><td>Case number</td><td>8:21-bk-11710-SC</td></tr>
</table>

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

### Part 1:    Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Janine Jasso, Jennifer Paulin, Lori Burrett, Lee Gragnano, Lindy Beck, and Ted Phillips<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes.  From whom? |

| | | |
|---|---|---|
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Robert P. Goe / Goe Forsythe & Hodges LLP<br>Name<br>17701 Cowan Ave, Suite 210<br>Number        Street<br>Irvine                    CA            92614<br>City                          State              ZIP Code<br><br>Contact phone 949-798-2460<br><br>Contact email  rgoe@goeforlaw.com | **Where should payments to the creditor be sent? (if different)**<br><br>Janine Jasso, Jennifer Paulin, et. al<br>Name<br>c/o Goe Forsythe & Hodges, 17701 Cowan Ave<br>Number        Street<br>Suite 210, Irvine          CA            92614<br>City                          State              ZIP Code<br><br>Contact phone 949-798-2460<br><br>Contact email  rgoe@goeforlaw.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ – __ __ __ __ – __ __ __ __ – __ __ __ __ | |

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____        Filed on _____ / _____ / _____<br>                                                                                                                MM   /  DD  /  YYYY |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

## Part 2:    Give Information About the Claim as of the Date the Case Was Filed

| | | |
|---|---|---|
| 6. | **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __3__ __9__ __3__ __6__ |

| | | |
|---|---|---|
| 7. | **How much is the claim?** | At least $64,049.66 (not including additional interest, fees and other costs)<br>$ _____64,049.66_____ **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | | |
|---|---|---|
| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>_Judgment_____ |

| | | |
|---|---|---|
| 9. | **Is all or part of the claim secured?** | ☐ No<br>☑ Yes.    The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a _Mortgage Proof of Claim Attachment_ (Official Form 410-A) with this _Proof of Claim._<br>☐ Motor vehicle<br>☑ Other. Describe:    _Abstract of judgment_____<br><br>**Basis for perfection:**    _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**             $ _Unknown_____<br>**Amount of the claim that is secured:**    $ _Unknown_____<br><br>**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ _____<br><br>**Annual Interest Rate** (when case was filed)_____%<br>☐ Fixed<br>☐ Variable |

| | | |
|---|---|---|
| 10. | **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $ _____ |

| | | |
|---|---|---|
| 11. | **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

**ES 171**                    **ES 171**                    **ES 171**

Case 8:21-bk-11710-SC    Doc 509-1    Filed 10/25/22    Entered 01/31/25 14:58:05    Desc
Case 8:21-bk-11710-SC    Claim 1-1    Filed 10/25/22    Desc Main Document    Page 3 of
Exhibit Exhibits 1 to 45    Page 46 of 120
186

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    10/25/2022
                    MM / DD / YYYY

/s/ Robert P. Goe
Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Robert P. Goe |
| | First name                Middle name                Last name |
| Title | Attorney |
| Company | Goe Forsythe & Hodges LLP |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 17701 Cowan Avenue, Suite 210 |
| | Number        Street |
| | Irvine                                    CA        92614 |
| | City                                      State      ZIP Code |
| Contact phone | (949) 798-2460                Email  rgoe@goeforlaw.com |

ES 172                          ES 172                          ES 172

Official Form 410                    **Proof of Claim**                    page 3

Case 8:21-bk-10718-SC   Doc 500   Filed 05/24/22   Entered 01/24/22 14:59:05   Page 45 of
Case 8:21-bk-11710-SC   Claim 4-1   Filed 10/28/22   Desc Main Document   Page 45 of
Exhibit Exhibits 1 to 117   Page 47 of 120
187

Creditors: Janine Jasso, Jennifer Paulin, Lori Burrett, Lee Gragnano, Lindy Beck, and Ted Phillips
(Individual Board Members of the Huntington Beach Gables Homeowners Association)
Claim Itemization under FRBP 3001(c)(2)
October 25, 2022

Table of Judgments in favor of the Individual Board Members of The Huntington Beach Gables
Homeowners Association against Debtor, Jamie Lynn Gallian

| OCSC Case Number | Case Name | Date of Abstract | Dollar Amount | Number of Pages |
|---|---|---|---|---|
| 30-2017-00913985 | The Huntington Beach Gables HOA v. Bradley, Gallian, et al.; Cross-Complaint Debtor filed against Individual Board Members | 12/13/2018 | $46,138; plus 10% per annum from 12/4/18 (date of judgment) | 6 pages |
| Total Amount | | | $64,049.66 | |

EJ-001

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, State bar number, and telephone number):*<br>Recording requested by and return to:<br>James E. Hawley (SBN: 299723)<br>GORDON REES SCULLY & MANSUKHANI<br>633 W. 5th Street, 52nd Floor<br>Los Angeles, CA 90071<br>TEL. NO.: (213) 576-5000    FAX NO. (Optional): (877) 306-0043<br>E-MAIL ADDRESS (Optional):<br>☒ ATTORNEY FOR  ☐ JUDGMENT CREDITOR  ☐ ASSIGNEE OF RECORD | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Orange**
STREET ADDRESS: 700 W. Civic Center Dr.
MAILING ADDRESS:
CITY AND ZIP CODE: Santa Ana, 92701
BRANCH NAME: Central Justice Center

*FOR RECORDER'S USE ONLY*

| PLAINTIFF: The Huntington Beach Gables Homeowners Association | CASE NUMBER:<br>30-2017-00913985-CU-CO-CJC |
|---|---|
| DEFENDANT: Sandra L. Bradley; Jamie L. Gallian et al. | |

| ABSTRACT OF JUDGMENT—CIVIL<br>AND SMALL CLAIMS    ☐ Amended | FOR COURT USE ONLY |
|---|---|

1. The  ☒ judgment creditor  ☐ assignee of record
   applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
       Name and last known address

   ```
   Jamie L. Gallian
   5782 Pinon Drive
   Huntington Beach, CA 92649
   ```

   b. Driver's license no. [last 4 digits] and state:  ☒ Unknown
   c. Social security no. [last 4 digits]: 3936  ☐ Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or mailed to (name and address):

   Jamie L. Gallian, 5782 Pinon Drive, Huntington Beach, CA 92649

Pursuant to California Government Code § 68150(f), the Clerk of the Court hereby certifies this document accurately reflects the official court record. The electronic signature and seal on this document have the same validity and legal force and effect as an original clerk's signature and court seal. California Government Code § 68150(g).

2. ☐ Information on additional judgment debtors is shown on page 2.
3. Judgment creditor *(name and address):*
   Janine Jasso
   4469 Chase Dr.
   Huntington Beach, CA 92649
   Date: December 7, 2018
   James E. Hawley
       (TYPE OR PRINT NAME)

4. ☒ Information on additional judgment creditors is shown on page 2.
5. ☐ Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:
   ▶     *(SIGNATURE OF APPLICANT OR ATTORNEY)*

6. Total amount of judgment as entered or last renewed:
   $46,138.00

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on *(date):* December 4, 2018
   b. Renewal entered on *(date):*

9. ☐ This judgment is an installment judgment.

[SEAL]

    David H. Yamasaki, Clerk of the Court

This abstract issued on *(date):*
12/13/2018

10. ☐ An ☐ execution lien ☐ attachment lien is endorsed on the judgment as follows:
   a. Amount: $
   b. In favor of *(name and address):*

11. A stay of enforcement has
   a. ☒ not been ordered by the court.
   b. ☐ been ordered by the court effective until *(date):*

12. a. ☒ I certify that this is a true and correct abstract of the judgment entered in this action.
   b. ☐ A certified copy of the judgment is attached.
   Clerk, by     S.Wilson Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 (Rev July 1, 2014)

**ABSTRACT OF JUDGMENT—CIVIL**
**AND SMALL CLAIMS**

Page 1 of 2
Code of Civil Procedure, §§ 488.400,
674, 700.190

ES 174               ES 174              ES 174

| PLAINTIFF: The Huntington Beach Gables Homeowners Association | COURT CASE NO.: |
|---|---|
| DEFENDANT: Sandra L. Bradley; Jamie L. Gallian et al. | 30-2017-00913985-CU-CO-CJC |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address)*:

Jennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649

14. Judgment creditor *(name and address)*:

Lori Burrett
16107 Warmington Lane
Huntington Beach, CA 92649

15. ☒ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.  Name and last known address

Driver's license no. [last 4 digits] and state:
☐ Unknown

Social security no. [last 4 digits]:
☐ Unknown

Summons was personally served at or mailed to *(address)*:

17.  Name and last known address

Driver's license no. [last 4 digits] and state:
☐ Unknown

Social security no. [last 4 digits]:
☐ Unknown

Summons was personally served at or mailed to *(address)*:

18.  Name and last known address

Driver's license no. [last 4 digits] and state:
☐ Unknown

Social security no. [last 4 digits]:
☐ Unknown

Summons was personally served at or mailed to *(address)*:

19.  Name and last known address

Driver's license no. [last 4 digits] and state:
☐ Unknown

Social security no. [last 4 digits]:
☐ Unknown

Summons was personally served at or mailed to *(address)*:

20. ☐ Continued on Attachment 20.

EJ-001 [Rev. January 1, 2014]

**ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**

Page 2 of 2

American LegalNet, Inc.
www.FormsWorkFlow.com

**ES 175**          **ES 175**          **ES 175**

MC-025

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| The Huntington Beach Gables HOA v. Bradley; Gallian | 30-2017-00913985-CU-CO-CJC |

ATTACHMENT *(Number):* 15

*(This Attachment may be used with any Judicial Council form.)*

Additional Judgment Creditors

Lee Gragnano
16062 Warmington Ave.
Huntington Beach, CA 92649

Lindy Beck
4443 Chase Drive
Huntington Beach, CA 92649

Ted Phillips
4447 Chase Drive
Huntington Beach, CA 92649

---

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Page 1 of 1

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
to Judicial Council Form


www.ceb.com

www.courtinfo.ca.gov

ES 176          ES 176          ES 176

Case 8:21-bk-11710-ES    Claim 1-1 Filed 07/23/22 Desc Main Document    Page 3 of

3728619

ELECTRONICALLY RECEIVED
Superior Court of California,
County of Orange
11/09/2018 at 10:23:23 AM
Clerk of the Superior Court
By sClerk, Deputy Clerk

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 04 2018

DAVID H. YAMASAKI, Clerk of the Court

BY:_____ DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

| | |
|---|---|
| THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, a California Nonprofit Mutual Benefit Corporation, | Case No. 30-2017-00913985-CU-CO-CJC |
| Plaintiff, | *Honorable James L. Crandall* |
| v. | [PROPOSED] JUDGMENT FOR ATTORNEYS' FEES |
| SANDRA L. BRADLEY, individually and as Trustee of the Sandra L. Bradley Trust; JAMIE L. GALLIAN, an individual; and DOES 1 through 25, inclusive, | FAC Filed: May 16, 2017 Trial Date: December 10, 2018 |
| Defendants. | |
| AND RELATED CROSS-ACTIONS. | |

-1-

[PROPOSED] JUDGMENT FOR ATTORNEYS' FEES

ES 178          ES 178          ES 178

1       The above-captioned matter came on regularly for hearing on Cross-Defendants Lee

2  Gragnano, Ted Phillips, Lindy Beck, Jennifer Paulin, Janine Jasso, and Lori Burrett's Motion for

3  Attorneys' Fees and Costs on November 1, 2018 and November 8, 2018, in Department C33 of

4  the Superior Court in and for the State of California, County of Orange, the Honorable James L.

5  Crandall presiding.

6       Cross-Defendants Lee Gragnano, Ted Phillips, Lindy Beck, Jennifer Paulin, Janine Jasso,

7  and Lori Burrett appeared by and through its attorneys, Brenda Radmacher of Gordon & Rees,

8  LLP.  Cross-Complainant Jamie L. Gallian, in pro per, appeared on behalf of herself.  After

9  hearing evidence and arguments, and good cause appearing;

10     **NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED** that Cross-

11  Defendants Lee Gragnano, Ted Phillips, Lindy Beck, Jennifer Paulin, Janine Jasso, and Lori

12  Burrett are awarded their attorneys' fees in the amount of $46,138.00 against Cross-Complainant

13  Jamie L. Gallian. Post-judgment interest at a rate of ten (10) percent annum from the date hereof,

14  till paid, shall accrue on the amount above.

15     **IT IS SO ORDERED, ADJUDGED AND DECREED.**

16

17

18  Dated: / 2 - 4 —, 2018                  Honorable James L. Crandall

19                                 Judge of the Superior Court

20

21

22

23

24

25

26

27

28

-2-

[PROPOSED] JUDGMENT FOR ATTORNEYS' FEES

# EXHIBIT 10

ES 180                    ES 180                    ES 180

**Fill in this information to identify the case:**

Debtor 1    JAMIE LYNN GALLIAN

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Central District of California

Case number    8:21-bk-11710-SC

---

## Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

The Huntington Beach Gables Homeowners Association
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Robert P. Goe / Goe Forsythe & Hodges LLP
Name

17701 Cowan Ave, Suite 210
Number    Street

Irvine                          CA          92614
City                          State        ZIP Code

Contact phone  949-798-2460

Contact email  rgoe@goeforlaw.com

Where should payments to the creditor be sent? (if different)

Huntington Beach Gables Homeowners Assn.
Name

c/o Goe Forsythe & Hodges, 17701 Cowan Ave
Number    Street

Suite 210, Irvine          CA          92610
City                          State        ZIP Code

Contact phone  949-798-2460

Contact email  rgoe@goeforlaw.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) Claim 1    Filed on 07/05/2022
                                                                                        MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☐ No
☐ Yes. Who made the earlier filing?

---

**ES 181**
Official Form 410

**ES 181**
Proof of Claim

**ES 181**
page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
| --- | --- |

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  3  9  3  6

**7. How much is the claim?**

At least $553,774.84 (not including additional interest, fees and other costs)

$ _____553,774.84_. **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Judgments, delinquent assessments, other charges

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe: Abstracts of judgment, ORAP lien

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ Unknown

**Amount of the claim that is secured:** $ Unknown

**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate (when case was filed)** _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

**ES 182**          **ES 182**          **ES 182**

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |
|---|---|

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  10/25/2022
                  MM / DD / YYYY

/s/ Robert P. Goe
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Robert P. Goe | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Goe Forsythe & Hodges LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 17701 Cowan Avenue, Suite 210 | | |
| | Number          Street | | |
| | Irvine | CA | 92614 |
| | City | State | ZIP Code |
| Contact phone | (949) 798-2460 | Email | rgoe@goeforlaw.com |

---

**ES 183**              **ES 183**              **ES 183**

Official Form 410      **Proof of Claim**              page 3

Creditor: Huntington Beach Gables Homeowners Association
Claim Itemization under FRBP 3001(c)(2)
October 25, 2022

Claim 1 - Table of Judgment in favor of The Huntington Beach Gables Homeowners Association against
Debtor Jamie Lynn Gallian

| OCSC Case Number | Case Name | Date of Abstract | Dollar Amount | Number of Pages |
|---|---|---|---|---|
| 30-2017-00962999 | The Huntington Beach Gables HOA v. Gallian | 4/30/2019 | $9265; plus 10% per annum from 03/21/19, which is the date of court ordered judgment | 4 pages |
| Total Amount | | | $12,590.25 | |

Claim 2 - Table of Judgment in favor of The Huntington Beach Gables Homeowners Association against
Debtor Jamie Lynn Gallian

| OCSC Case Number | Case Name | Date of Abstract | Dollar Amount | Number of Pages |
|---|---|---|---|---|
| 30-2017-00913985 | The Huntington Beach Gables HOA v. Bradley, Gallian, et al. | 5/14/2019 | $319,653.59; plus 10% per annum. Note, Item 8a of this abstract includes two judgments in one: first, the OC court's judgment order issued against Debtor for court's sanctions on 09/27/18 and the related abstract issued on 11/16/18 in the amount of $3070.00; second, the court's judgment amount of $316,583.59 issued on 5/6/2019 and related abstract issued on 5/14/19 | 12 pages |
| Total Amount | | | $430,535.95 | |

Case 8:21-bk-11710-SC    Doc 509    Filed 10/30/25    Entered 10/30/25 14:59:05    Desc
Exhibit Exhibits 1 to 19    Page 59 of 120
Case 8:21-bk-11710-SC    Claim 9-1    Filed 10/28/22    Desc Main Document    Page 55 of
212

Claim 3 - Table of Debtor's Unpaid Legal Fees, Assessments and Fines Owed to The Huntington Beach Gables Homeowners Association by Debtor, Jamie Lynn Gallian

| Dates of Unpaid Legal Fees, Delinquent Assessments, and Fines | Account number | Dollar Amount including Interest from date of assessment | |
|---|---|---|---|
| 02/20/18 | HOA account #21776 | $6,785.22; $5300.50 unpaid special assessment plus 6% interest per annum | |
| 2018 OC Recorder's Office Fees | HOA account #21776 | $680.00 | |
| Fines for Violations of the CC&Rs | HOA account #21776 | $23,140 | |
| Unpaid monthly HOA dues | HOA account #21776 | $1,586.90 ($1292.00 for 4 months of unpaid monthly assessments plus 6% interest per annum ) | |
| The Huntington Beach Gables HOA v. Nickel, Gallian, et al., OCSC Case No. 30-2020-01163055 | State court UVTA case re transfer of Debtor's condo to Nickel | $78,456.52, legal fees and costs (ongoing UVTA state court litigation so additional legal fees and costs in the future) | |
| Total Amount | | $110,648.64 | |

**Grand Total: $553,774.84**

Case 8:25-bk-00710-SC Doc 508-1 Filed 05/31/25 Entered 01/31/25 14:59:05 Desc
Case 8:21-bk-11710-SC Claim 2-1 Filed 05/28/25 Desc Main Document Page 59 of
Exhibit Exhibits 1 to 362    Page 60 of 120

105

**RECORDING REQUESTED BY:**

THE HUNTINGTON BEACH GABLES
HOMEOWNERS ASSOCIATION

**WHEN RECORDED MAIL TO:**

THE HUNTINGTON BEACH GABLES
HOMEOWNERS ASSOCIATION
Epsten Grinnell & Howell, APC
10200 Willow Creek Road, Suite 100
San Diego, CA  92131-1138

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

| | 103.00 |

\* \$ R 0 0 1 0 8 1 1 4 2 8 \$ \*

2019000148568 4:19 pm 05/03/19
105 417 A03   4
0.00 0.00 0.00 0.00 9.00 10.00 0.000.0075.00 3.00

**Title:**

ABSTRACT OF JUDGMENT

THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION

v.

JAMIE LYNN GALLIAN

**30-2017-00962999-CU-HR-CJC**

π
AO
FF
ICI
SO
OF

**ES 186**                    **ES 186**                    **ES 186**

EJ-001

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, address, and State Bar number):*
After recording, return to:
Joyce J. Kapsal/Pejman D.     SBN: 091950/279260
EPSTEN GRINNELL & HOWELL, APC
10200 WILLOW CREEK ROAD, SUITE 100,
SAN DIEGO, CA 92131
TEL NO: 858-527-0111    FAX NO. *(optional):* 858-527-1531
E-MAIL ADDRESS *(Optional):* jkapsal@epsten.com

[X] ATTORNEY FOR   [X] JUDGMENT CREDITOR   [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive W091950/esl/
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701-4045
BRANCH NAME: Central Justice Center

FOR RECORDER'S USE ONLY

PLAINTIFF: The Huntington Beach Gables Homeowners Association
DEFENDANT: Jamie Lynn Gallian

CASE NUMBER
30-2017-00962999-CU-HR-CJC

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS     [ ] Amended

FOR COURT USE ONLY

Pursuant to California Government Code § 68150(f), the Clerk of the Court hereby certifies this document accurately reflects the official court record. The electronic signature and seal on this document have the same validity and legal force and effect as an original clerk's signature and court seal. California Government Code § 68150(g).

1. The [X] judgment creditor  [ ] assignee of record
applies for an abstract of judgment and represents the following:
a. Judgment debtor's
   Name and last known address

   Jamie L. Gallian
   16222 Monterey Lane, #376
   Huntington Beach, CA  92649

b. Driver's license no. [last 4 digits] and state: 0742/CA   [ ] Unknown
c. Social security no. [last 4 digits]: xx-xx-3936            [ ] Unknown
d. Summons or notice of entry of sister-state judgment was personally served or mailed to *(name and address).*
   Jamie L. Gallian, 16222 Monterey Lane, #376
   Huntington Beach, CA  92649

2. [ ] Information on additional judgment debtors is shown on page 2.

3. Judgment creditor *(name and address):*
   The Huntington Beach Gables Homeowners Association
   C/o Epsten Grinnell & Howell, 10200 Willow Creek
   Road, San Diego, CA 92131
   Date: April 3, 2019

   Joyce J. Kapsal
   (TYPE OR PRINT NAME)

4. [ ] Information on additional judgment creditors is shown on page 2.

5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

   ▶ _____
   (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 9265.00

7. All judgment creditors and debtors are listed on this abstract.

8. a. Judgment entered on *(date):* March 21, 2019
   b. Renewal entered on *(date):*

9. [ ] This judgment is an installment judgment.

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF ORANGE

David H. Yamasaki, Clerk of the Court

This abstract issued on *(date):*
04/30/2019

10. [ ] An  [ ] execution lien  [ ] attachment lien is endorsed on the judgment as follows:
   a. Amount: $
   b. In favor of *(name and address):*

11. A stay of enforcement has
   a. [X] not been ordered by the court.
   b. [ ] been ordered by the court effective until *(date):*

12. a. [X] I certify that this is a true and correct abstract of the judgment entered in this action.
   b. [ ] A certified copy of the judgment is attached.

                          S.Wilson
   Clerk, by ___Sammy Ann Wilson___, Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. July 1, 2014]

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS

Page 1 of 2
Code of Civil Procedure, §§ 488.480, 674, 700.190
Westlaw Doc & Form Builder™

ES 187        ES 187        ES 187

| PLAINTIFF: The Huntington Beach Gables Homeowners Association | COURT CASE NO.: |
|---|---|
| DEFENDANT: Jamie Lynn Gallian | 30-2017-00962999-CU-HR-CJC |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13.  Judgment creditor *(name and address):*

14.  Judgment creditor *(name and address):*

15.  ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.          Name and last known address

Driver's license no. [last 4 digits] and state:
☐ Unknown

Social security no. [last 4 digits]:
☐ Unknown

Summons was personally served at or mailed to *(address):*

17.          Name and last known address

Driver's license no. [last 4 digits] and state:
☐ Unknown

Social security no. [last 4 digits]:
☐ Unknown

Summons was personally served at or mailed to *(address):*

18.          Name and last known address

Driver's license no. [last 4 digits] and state:
☐ Unknown

Social security no. [last 4 digits]:
☐ Unknown

Summons was personally served at or mailed to *(address):*

19.          Name and last known address

Driver's license no. [last 4 digits] and state:
☐ Unknown

Social security no. [last 4 digits]:
☐ Unknown

Summons was personally served at or mailed to *(address):*

20.  ☐ Continued on Attachment 20.

EJ-001 [Rev. July 1, 2014]

**ABSTRACT OF JUDGMENT—CIVIL**
**AND SMALL CLAIMS**

Page 2 of 2

ES 188          ES 188          ES 188

Document Number: 2019000148568 Page: 3 of 4

| | POS-050/EFS-050 |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 91950/ 279260<br>NAME: Joyce J. Kapsal / Pejman D. Kharrazian, Esq.<br>FIRM NAME: EPSTEN GRINNELL & HOWELL, APC<br>STREET ADDRESS: 10200 WILLOW CREEK ROAD, SUITE 100<br>CITY: SAN DIEGO STATE: CA ZIP CODE: 92131<br>TELEPHONE NO.: 858-527-0111 FAX NO. 858-527-1531<br>E-MAIL ADDRESS: jkapsal@epsten.com / pkharrazian@epsten.com<br>ATTORNEY FOR (name): Huntington Beach Gables Homeowners Association | FOR COURT USE ONLY |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE | |
|---|---|
| STREET ADDRESS: 700 Civic Center Drive West<br>MAILING ADDRESS: 700 Civic Center Drive West<br>CITY AND ZIP CODE: Santa Ana, CA 92701<br>BRANCH NAME: Central Justice Center | |

| PLAINTIFF/PETITIONER: The Huntington Beach Gables Homeowners Association<br>DEFENDANT/RESPONDENT: Jamie L. Gallian | CASE NUMBER:<br>2017-00962999-CU-HR-CJC |
|---|---|
| | JUDICIAL OFFICER:<br>Hon. Sherri Honer |
| **PROOF OF ELECTRONIC SERVICE** | DEPARTMENT:<br>C-66 |

1. I am at least 18 years old.
    a. My residence or business address is (specify): 10200 Willow Creek Road, Suite 100, San Diego, CA 92131

    b. My electronic service address is (specify): shart@epsten.com

2. I electronically served the following documents (exact titles): Abstract of Judgment – Civil and Small Claims

    ☐ The documents served are listed in an attachment. (Form POS-050(D)/EFS-050(D) may be used for this purpose.)

3. I electronically served the documents listed in 2 as follows:
    a. Name of person served: Steven A. Fink
       On behalf of (name or names of parties represented, if person served is an attorney):
       Jamie L. Gallian
    b. Electronic service address of person served : sfink@stevefinklaw.com

    c. On (date): April 19, 2019

       ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment.
       (Form POS-050(P)/EFS-050(P) may be used for this purpose.)

Date: April 19, 2019

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Stephanie Hart
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶ _____
(SIGNATURE OF DECLARANT)

Page 1 of 1

| Form Approved for Optional Use<br>Judicial Council of California<br>POS-050/EFS-050 [Rev. February 1, 2017] | **PROOF OF ELECTRONIC SERVICE**<br>(Proof of Service/Electronic Filing and Service) | Cal. Rules of Court, rule 2.251<br>www.courts.ca.gov<br>Westlaw Doc & Form Builder |
|---|---|---|

EJ-001

Recording Requested by and When Recorded Mail to

Recording Requested by and When Recorded Mail to

Joyce J. Kapsal / Pejman D.     SBN: 091950 / 279260
EPSTEN GRINNELL & HOWELL, APC
10200 Willow Creek Road, Suite 100
San Diego, CA 92131
TEL NO.: 858-527-0111     FAX NO. (optional): 858-527-1531
E-MAIL ADDRESS (Optional): jkapsal@epsten.com /

| X | ATTORNEY FOR | X | JUDGMENT CREDITOR | | ASSIGNEE OF RECORD |

**Recorded in Official Records, Orange County**
**Hugh Nguyen, Clerk-Recorder**

90.00

* $ R 0 0 1 0 8 3 8 3 3 9 $ *
2019000165259 12:56 pm 05/16/19
48 401 A03  3
0.00 0.00 0.00 0.00 6.00 0.00 0.000.0075.00 3.00

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

FOR RECORDER'S USE ONLY

PLAINTIFF: The Huntington Beach Gables Homeowners Association
DEFENDANT: Sandra Bradley, et al.

CASE NUMBER:
30-2017-00913985-CU-CO-CJC

| ABSTRACT OF JUDGMENT—CIVIL AND SMALL CLAIMS | X | Amended |

FOR COURT USE ONLY

Pursuant to California Government Code § 68150(f), the Clerk of the Court hereby certifies this document accurately reflects the official court record. The electronic signature and seal on this document have the same validity and legal force and effect as an original clerk's signature and court seal. California Government Code § 68150(g).

1. The [X] judgment creditor [ ] assignee of record applies for an abstract of judgment and represents the following:
   a. Judgment debtor's
      Name and last known address

   Jamie L. Gallian
   4476 Alderport Drive #53
   Huntington Beach, CA 92649

   b. Driver's license no. [last 4 digits] and state: 0742 / CA    [ ] Unknown
   c. Social security no. [last 4 digits]: xxx-xx-3936    [ ] Unknown
   d. Summons or notice of entry of sister-state judgment was personally served or mailed to (name and address):
      4476 Alderport Drive #53, Huntington Beach, CA 92649

2. [ ] Information on additional judgment debtors is shown on page 2.
3. Judgment creditor (name and address):
   The Huntington Beach Gables Homeowners Association
   c/o Epsten Grinnell & Howell, 10200 Willow
   Creek Rd, Ste 100, San Diego, CA 92131
   Date: May 8, 2019

   Joyce J. Kapsal
   (TYPE OR PRINT NAME)

4. [ ] Information on additional judgment creditors is shown on page 2.
5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

   ▶ Joyce Kapsal
   (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 319,653.59
7. All judgment creditors and debtors are listed on this abstract.
8. a. Judgment entered on (date): 5/6/2019 [9/27/2018 sanctions]
   b. Renewal entered on (date):

9. [ ] This judgment is an installment judgment.

[SEAL]

David H. Yamasaki, Clerk of the Court

This abstract issued on (date):
May 14, 2019

10. [ ] An [ ] execution lien [ ] attachment lien is endorsed on the judgment as follows:
    a. Amount: $
    b. In favor of (name and address):

11. A stay of enforcement has
    a. [X] not been ordered by the court.
    b. [ ] been ordered by the court effective until (date):

12. a. [X] I certify that this is a true and correct abstract of the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.

                                        Mary M Johnson

Clerk, by   Mary Johnson          , Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. July 1, 2014]

**ES 190**

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS

**ES 190**

Page 1 of 2
Code of Civil Procedure, §§ 488.480,
674, 700.190
Westlaw Doc & Form Builder

**ES 190**

| | |
|---|---|
| PLAINTIFF: The Huntington Beach Gables Homeowners Association<br>DEFENDANT: Sandra Bradley, et al. | COURT CASE NO.:<br>30-2017-00913985-CU-CO-CJC |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:**

13. Judgment creditor *(name and address):*

14. Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:**

16.      Name and last known address

Driver's license no. [last 4 digits] and state:
     ☐ Unknown
Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

17.      Name and last known address

Driver's license no. [last 4 digits] and state:
     ☐ Unknown
Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

18.      Name and last known address

Driver's license no. [last 4 digits] and state:
     ☐ Unknown
Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

19.      Name and last known address

Driver's license no. [last 4 digits] and state:
     ☐ Unknown
Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

EJ-001 [Rev. July 1, 2014]       **ABSTRACT OF JUDGMENT—CIVIL**       Page 2 of 2
**AND SMALL CLAIMS**

**ES 191**       **ES 191**       **ES 191**

POS-050/EFS-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 118830/091950 | FOR COURT USE ONLY |
|---|---|
| NAME: Rian W. Jones, Esq. / Joyce J. Kapsal, Esq. | |
| FIRM NAME: EPSTEN GRINNELL & HOWELL, APC | |
| STREET ADDRESS: 10200 WILLOW CREEK ROAD, SUITE 100 | |
| CITY: SAN DIEGO STATE: CA ZIP CODE: 92131 | |
| TELEPHONE NO.: 858-527-0111 FAX NO.: 858-527-1531 | |
| E-MAIL ADDRESS: rjones@epsten.com / jkapsal@epsten.com | |
| ATTORNEY FOR (name):The Huntington Beach Gables Homeowners Association | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE | |
|---|---|
| STREET ADDRESS: 700 Civic Center Drive West | |
| MAILING ADDRESS: 700 Civic Center Drive West | |
| CITY AND ZIP CODE: Santa Ana, CA 92701 | |
| BRANCH NAME: Central Justice Center | CASE NUMBER: |
| PLAINTIFF/PETITIONER: The Huntington Beach Gables Homeowners Association | 30-2017-00913985-CU-CO-CJC |
| DEFENDANT/RESPONDENT: Sandra Bradley, et al. | JUDICIAL OFFICER: Hon. James L. Crandall |
| **PROOF OF ELECTRONIC SERVICE** | DEPARTMENT: C-33 |

1. I am at least 18 years old.
    a. My residence or business address is *(specify)*: 10200 Willow Creek Road, Suite 100, San Diego, CA 92131

    b. My electronic service address is *(specify)*: dmorrow@epsten.com

2. I electronically served the following documents *(exact titles)*:
    ABSTRACT OF JUDGMENT

    ☐ The documents served are listed in an attachment. *(Form POS-050(D)/EFS-050(D) may be used for this purpose.)*

3. I electronically served the documents listed in 2 as follows:
    a. Name of person served: Steven A. Fink
       On behalf of *(name or names of parties represented, if person served is an attorney)*:
       Jamie L. Gallian
    b. Electronic service address of person served : sfink@stevefinklaw.com

    c. On *(date)*: May 8, 2019

       ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment. *(Form POS-050(P)/EFS-050(P) may be used for this purpose.)*

Date: May 8, 2019

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dominique Morrow
_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

Page 1 of 1

| Form Approved for Optional Use Judicial Council of California POS-050/EFS-050 [Rev. February 1, 2017] | **PROOF OF ELECTRONIC SERVICE** (Proof of Service/Electronic Filing and Service) | Cal. Rules of Court, rule 2.251 www.courts.ca.gov Westlaw Doc & Form Builder |

Case 8:25-bk-00001-SC Doc 569-1 Filed 05/24/25 Page 101 of 146
Case 8:21-bk-11710-SC Exhibit 1-2 Filed 05/24/25 Desc Main Document Page 93
Exhibit Exhibits 1 of 21 Page 67 of 120



THIS IS A CERTIFIED COPY OF THE
RECORD IF IT BEARS THE SEAL, AND
SIGNATURE OF THE ORANGE
COUNTY CLERK-RECORDER.

DATE: 05/20/2019

CERTIFICATION FEE: 4.00

COUNTY CLERK-RECORDER

ORANGE COUNTY
STATE OF CALIFORNIA

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

97.00

*SR001048049IS*

2018000435011 2:30 pm 11/19/18

7 413 A03   2

0.00 0.00 0.00 0.00 3.00 10.00 0.000.0075.00 3.00

EJ-001

Recording Requested by and When Recorded Mail to
Joyce J. Kapsal          SBN: 091950
Epsten Grinnell & Howell, APC
10200 WILLOW CREEK ROAD, SUITE 100
SAN DIEGO, CA 92131
TEL NO: 858-527-0111    FAX NO (optional): 858-527-1531
E-MAIL ADDRESS (Optional):
[X] ATTORNEY  [X] JUDGMENT    [ ] ASSIGNEE
    FOR          CREDITOR         OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

FOR RECORDER'S USE ONLY

PLAINTIFF: The Huntington Beach Gables Homeowners Association
DEFENDANT: Jamie L. Gallian

CASE NUMBER
30-2017-00913985-CU-CO-CJC

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS          [ ] Amended

FOR COURT USE ONLY

Pursuant to California Government
Code § 68150(f), the Clerk of the
Court hereby certifies this document
accurately reflects the official court
record. The electronic signature and
seal on this document have the
same validity and legal force and
effect as an original clerk's
signature and court seal. California
Government Code § 68150(g).

1. The [X] judgment creditor  [ ] assignee of record
   applies for an abstract of judgment and represents the following:
   a.  Judgment debtor's
                Name and last known address

   ┌─────────────────────────────────┐
   │ Jamie L. Gallian                │
   │ 4476 Alderport Drive #53        │
   │ Huntington Beach, CA 92649      │
   └─────────────────────────────────┘

   b.  Driver's license no. [last 4 digits] and state: 0742 / CA    [ ] Unknown
   c.  Social security no. [last 4 digits]: xxx-xx-3936             [ ] Unknown
   d.  Summons or notice of entry of sister-state judgment was personally served or mailed to (name and address):

       Jamie L. Gallian, 4476 Alderport Drive #53, Huntington Beach, CA 92649

2. [ ] Information on additional judgment debtors is
       shown on page 2.
3. Judgment creditor (name and address):
   The Huntington Beach Gables Homeowners Association
   c/o Epsten Grinnell & Howell, 10200 Willow
   Creek Rd, Ste 100, San Diego, CA 92131
Date: November 9, 2018
Joyce J. Kapsal
        (TYPE OR PRINT NAME)

4. [ ] Information on additional judgment creditors is
       shown on page 2.
5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

   ▶                          (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 3,070.00

7. All judgment creditors and debtors are listed on this abstract.

8. a.  Judgment entered on (date): 9/27/2018 [sanctions]
   b.  Renewal entered on (date):

9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien
        is endorsed on the judgment as follows:
    a. Amount: $
    b. In favor of (name and address):

11. A stay of enforcement has
    a. [X] not been ordered by the court.
    b. [ ] been ordered by the court effective until
           (date):

12. a. [X] I certify that this is a true and correct abstract of
           the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.

David H Yamasaki, Clerk of the Court

This abstract issued on (date):
11/16/2018

Clerk, by _Jorge Hamilton_                S.Wilson
                                        , Deputy

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev July 1, 2014]

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS

Page 1 of 2
Code of Civil Procedure, §§ 488.460,
674, 700.190
Westlaw Doc & Form Builder

ES 194          ES 194          ES 194

| PLAINTIFF: The Huntington Beach Gables Homeowners Association | COURT CASE NO.: |
|---|---|
| DEFENDANT: Jamie L. Gallian | 30-2017-00913985-CU-CO-CJC |

NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:

13. Judgment creditor (name and address):

14. Judgment creditor (name and address):

15. ☐ Continued on Attachment 15.

INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:

16.    Name and last known address

17.    Name and last known address

Driver's license no. [last 4 digits] and state: ☐ Unknown
Social security no. (last 4 digits): ☐ Unknown
Summons was personally served at or mailed to (address):

Driver's license no. [last 4 digits] and state: ☐ Unknown
Social security no. (last 4 digits): ☐ Unknown
Summons was personally served at or mailed to (address):

18.    Name and last known address

19.    Name and last known address

Driver's license no. [last 4 digits] and state: ☐ Unknown
Social security no. (last 4 digits): ☐ Unknown
Summons was personally served at or mailed to (address):

Driver's license no. [last 4 digits] and state: ☐ Unknown
Social security no. (last 4 digits): ☐ Unknown
Summons was personally served at or mailed to (address):

20. ☐ Continued on Attachment 20.

EJ-001 [Rev. July 1, 2014]    **ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS**    Page 2 of 2

**ES 195**                **ES 195**                **ES 195**

EJ-001

Recording Requested by and When Recorded Mail to
Joyce J. Kapsal / Pejman D.    SBN: 091950 / 279260
EPSTEN GRINNELL & HOWELL, APC
10200 Willow Creek Road, Suite 100
San Diego, CA 92131
TEL NO.: 858-527-0111    FAX NO. (optional): 858-527-1531
E-MAIL ADDRESS (Optional): jkapsal@epsten.com /
[X] ATTORNEY [X] JUDGMENT    [ ] ASSIGNEE
    FOR    CREDITOR    OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

FOR RECORDER'S USE ONLY

PLAINTIFF: The Huntington Beach Gables Homeowners Association
DEFENDANT: Sandra Bradley, et al.

CASE NUMBER:
30-2017-00913985-CU-CO-CJC

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS    [X] Amended

FOR COURT USE ONLY

Pursuant to California Government Code § 68150(f), the Clerk of the Court hereby certifies this document accurately reflects the official court record. The electronic signature and seal on this document have the same validity and legal force and effect as an original clerk's signature and court seal. California Government Code § 68150(g).

1. The [X] judgment creditor [ ] assignee of record
applies for an abstract of judgment and represents the following:
a. Judgment debtor's
   Name and last known address

   Jamie L. Gallian
   4476 Alderport Drive #53
   Huntington Beach, CA 92649

b. Driver's license no. [last 4 digits] and state: 0742 / CA [ ] Unknown
c. Social security no. [last 4 digits]: xxx-xx-3936 [ ] Unknown
d. Summons or notice of entry of sister-state judgment was personally served or mailed to (name and address):
   4476 Alderport Drive #53, Huntington Beach, CA 92649

2. [ ] Information on additional judgment debtors is shown on page 2.
3. Judgment creditor (name and address):
   The Huntington Beach Gables Homeowners Association
   c/o Epsten Grinnell & Howell, 10200 Willow
   Creek Rd, Ste 100, San Diego, CA 92131
Date: May 8, 2019
Joyce J. Kapsal
    (TYPE OR PRINT NAME)

4. [ ] Information on additional judgment creditors is shown on page 2.
5. [ ] Original abstract recorded in this county:
   a. Date:
   b. Instrument No.:

▶ [signature] Joyce Kapsal
    (SIGNATURE OF APPLICANT OR ATTORNEY)

6. Total amount of judgment as entered or last renewed:
   $ 319,653.59
7. All judgment creditors and debtors are listed on this abstract.
8. a. Judgment entered on (date): 5/6/2019 [9/27/2018 sanctions]
   b. Renewal entered on (date):
9. [ ] This judgment is an installment judgment.

10. [ ] An [ ] execution lien [ ] attachment lien
    is endorsed on the judgment as follows:
    a. Amount $
    b. In favor of (name and address):

11. A stay of enforcement has
    a. [X] not been ordered by the court.
    b. [ ] been ordered by the court effective until (date):
12. a. [X] I certify that this is a true and correct abstract of the judgment entered in this action.
    b. [ ] A certified copy of the judgment is attached.



[SEAL]

David H. Yamasaki, Clerk of the Court

This abstract issued on (date):
May 14, 2019

Clerk, by [signature] Mary Gohson    Deputy    Mary M Johnson

Form Adopted for Mandatory Use
Judicial Council of California
EJ-001 [Rev. July 1, 2014]

ABSTRACT OF JUDGMENT—CIVIL
AND SMALL CLAIMS

Page 1 of 2
Code of Civil Procedure, §§ 488.480, 674, 700.190
Westlaw Doc & Form Builder

ES 196        ES 196        ES 196

| PLAINTIFF: The Huntington Beach Gables Homeowners Association | COURT CASE NO.: |
|---|---|
| DEFENDANT: Sandra Bradley, et al. | 30-2017-00913985-CU-CO-CJC |

NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS:

13. Judgment creditor *(name and address):*

14. Judgment creditor *(name and address):*

15. ☐ Continued on Attachment 15.

INFORMATION ON ADDITIONAL JUDGMENT DEBTORS:

16. Name and last known address

17. Name and last known address

Driver's license no. [last 4 digits] and state: ☐ Unknown

Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

Driver's license no. [last 4 digits] and state: ☐ Unknown

Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

18. Name and last known address

19. Name and last known address

Driver's license no. [last 4 digits] and state: ☐ Unknown

Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

Driver's license no. [last 4 digits] and state: ☐ Unknown

Social security no. [last 4 digits]: ☐ Unknown

Summons was personally served at or mailed to *(address):*

20. ☐ Continued on Attachment 20.

ES 197          ES 197          ES 197

POS-050/EFS-050

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:  STATE BAR NO: 118830/ 091950<br>NAME: Rian W. Jones, Esq. / Joyce J. Kapsal, Esq.<br>FIRM NAME: EPSTEN GRINNELL & HOWELL, APC<br>STREET ADDRESS: 10200 WILLOW CREEK ROAD, SUITE 100<br>CITY: SAN DIEGO  STATE: CA  ZIP CODE: 92131<br>TELEPHONE NO: 858-527-0111  FAX NO: 858-527-1531<br>E-MAIL ADDRESS: rjones@epsten.com / jkapsal@epsten.com<br>ATTORNEY FOR (name): The Huntington Beach Gables Homeowners Association | FOR COURT USE ONLY |

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>STREET ADDRESS: 700 Civic Center Drive West<br>MAILING ADDRESS: 700 Civic Center Drive West<br>CITY AND ZIP CODE: Santa Ana, CA 92701<br>BRANCH NAME: Central Justice Center | |
| PLAINTIFF/PETITIONER: The Huntington Beach Gables Homeowners Association<br>DEFENDANT/RESPONDENT: Sandra Bradley, et al. | CASE NUMBER:<br>30-2017-00913985-CU-CO-CJC |
| | JUDICIAL OFFICER:<br>Hon. James L. Crandall |
| PROOF OF ELECTRONIC SERVICE | DEPARTMENT:<br>C-33 |

1. I am at least 18 years old.
   a. My residence or business address is (specify): 10200 Willow Creek Road, Suite 100, San Diego, CA 92131

   b. My electronic service address is (specify): dmorrow@epsten.com

2. I electronically served the following documents (exact titles):
   ABSTRACT OF JUDGMENT

   ☐ The documents served are listed in an attachment. (Form POS-050(D)/EFS-050(D) may be used for this purpose.)

3. I electronically served the documents listed in 2 as follows:
   a. Name of person served: Steven A. Fink
      On behalf of (name or names of parties represented, if person served is an attorney):
      Jamie L. Gallian
   b. Electronic service address of person served: sfink@stevefinklaw.com

   c. On (date): May 8, 2019

   ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment.
      (Form POS-050(P)/EFS-050(P) may be used for this purpose.)

Date:  May 8, 2019

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dominique Morrow
(TYPE OR PRINT NAME OF DECLARANT)  ▶  _____
(SIGNATURE OF DECLARANT)

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
POS-050/EFS-050 [Rev. February 1, 2017]

PROOF OF ELECTRONIC SERVICE
(Proof of Service/Electronic Filing and Service)

Cal. Rules of Court, rule 2.251
www.courts.ca.gov
Westlaw Doc & Form Builder

ES 198    ES 198    ES 198

ELECTRONICALLY RECEIVED
Superior Court of California,
County of Orange
04/02/2023 at 05:13:17 AM
Clerk of the Superior Court
by Natasha Dorfman, Deputy Clerk

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAY 06 2019

DAVID H. YAMASAKI, Clerk of the Court

BY:_____DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

| | |
|---|---|
| THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION, a California Nonprofit Mutual Benefit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SANDRA L. BRADLEY, individually and as Trustee of the Sandra L. Bradley Trust; JAMIE L. GALLIAN, an individual; and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO. 37-2017-00913985-CU-CO-CJC<br><br>Judge: James L. Crandall<br>Dept.: C33<br><br>[PROPOSED] JUDGMENT IN FAVOR OF PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS ASSOCIATION AND AGAINST DEFENDANT JAMIE L. GALLIAN<br><br>Complaint Filed: April 11, 2017<br>First Amended Complaint filed: May 16, 2017<br>Trial Date: September 9, 2019 |

In this action for Breach of Governing Documents (Architectural Violations) and Nuisance Defendant Jamie L. Gallian was personally served with the Summons and Complaint on May 24, 2017. Defendant Gallian filed an answer to the Complaint, and to the First Amended Complaint. Subsequently, due to her failure to timely respond to discovery, on February 13, 2019 the Court ordered that Defendant's Answer to the Plaintiff's First Amended Complaint be stricken, and on February 13, 2019 entered the default against Defendant. Pursuant to the Court's order of February 13, 2019, Plaintiff The Huntington Beach Gables Homeowners Association has presented evidence of its costs for abating the nuisance caused by Defendant Gallian, as alleged in the First Amended Complaint.

3000002v1

JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT JAMIE L. GALLIAN

1       Upon the Application of Plaintiff, The Huntington Beach Gables Homeowners

2    Association for judgment against Defendant, and upon having reviewed the evidence and

3    declarations, and proof having been made to the satisfaction of this Court, the Court finds in

4    favor of Plaintiff, The Huntington Beach Gables Homeowners Association ("Association"), and

5    against Defendant, Jamie L. Gallian ("Defendant") on all causes of action in the First Amended

6    Complaint filed herein on May 16, 2017.

7       IT IS HEREBY ADJUDGED, ORDERED AND DECREED, as follows:

8         1.    As to the First Cause of Action for Breach of Contract, the Court finds that

9    Defendant breached the Association's Governing Documents, including the "Declaration of

10   Covenants, Conditions and Restrictions for Huntington Beach Gables" containing the covenants,

11   conditions and restrictions which governing the properties located within the Association,

12   which was recorded on May 28, 1980, as Document No. 1980-28926 ("CC&Rs");

13       2.    At all times mentioned herein, Defendant was the tenant of, resident of, and/or

14   claimed some interest in the condominium unit located within the Association commonly known

15   as 4476 Alderport Drive, Unit 53, Huntington Beach, CA 92649 ("Subject Property");

16       3.    As a result of Defendant's breach of contract, Plaintiff's damages include the cost

17   of repairing damage to the Common Area caused by Defendant's failing to adhere to the

18   architectural guidelines and specifications with respect to the construction of the patio cover and

19   by constructing a concrete pad and installing an air conditioning unit on the exterior of

20   Defendant's Subject Property which encroached upon the Association's common area and

21   destroying the Association's landscaping;

22       4.    As the Second Cause of Action for Nuisance, the Court finds that Defendant

23   created conditions on the Subject Property that are an annoyance and nuisance to the Association

24   and its residents, and as a result, the Association has incurred attorneys' fees and costs in

25   connection with abating the nuisance;

26       5.    Plaintiff is entitled to recover its reasonable attorneys' fees and costs from

27   Defendant pursuant to Civil Code section 5975(c) and Article XIV, Section 14, 7 of the

28   Association's CC&Rs;

2

300s902v1            JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT JAMIE L. GALLIAN

ES 200             ES 200             ES 200

1  6.  Plaintiff is further entitled to recover its costs to repair damage to the Common

2  Area caused by unauthorized installation of the concrete pad and air conditioning unit, causing

3  extensive damage to the landscaping pursuant to the CC&Rs, Article XIV, Section 14.8 as well

4  as costs for removal of the concrete pad and landscaping repairs;

5  7.  Association as Plaintiff, as the prevailing party in the action and pursuant to Civil

6  Code section 5975(c) and Article XIV, Section 14.7 of the Association's CC&Rs, shall recover

7  from Defendant its legal costs in the amount of $ 10,693.12 and attorneys' fees in the amount of

8  $ 178,362. Plaintiff shall also recover concrete removal and landscaping repair costs in the

9  amount of $1,295.00;

10  8.  Association as Cross-Defendant, as the prevailing party in the action and

11  pursuant to Civil Code section 5975(c) and Article XIV, Section 14.7 of the Association's

12  CC&Rs, shall recover from Cross-Complainant its legal costs in the amount of $ 6,050.47

13  and attorneys' fees in the amount of $ 120,183

14  9.  Judgment is hereby entered in favor of Plaintiff The Huntington Beach Gables

15  Homeowners Association for recovery of its attorney's fees and costs, and costs for concrete

16  removal and landscaping repair costs, against Defendant Jamie L. Gallian, and Defendant is

17  ordered to pay said sums to Plaintiff;

18  10.  Plaintiff The Huntington Beach Gables Homeowners Association is awarded

19  judgment in the total amount of $ ~~315,188.59~~ $316,583.59, which will accrue interest at the rate of

20  ten (10%) per annum from the date judgment is entered herein, until paid in full; and

21  11.  Pursuant to Code of Civil Procedure §§ 685.040, 685.080, Defendant Jamie L.

22  Gallian shall pay to Plaintiff any and all sums reasonably incurred by Plaintiff in enforcing the

23  Judgment.

24  IT IS SO ORDERED.

25

26  Dated: 5-6-    , 2019

27  The Honorable James L. Crandall
Judge of the Superior Court

28

3800002v1

3
JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT JAMIE L. GALLIAN

# EXHIBIT 11

Case 8:21-bk-11710-SC   Claim 509-1 Filed 10/02/24   Desc Main Document   Page 1 of 8

**Fill in this information to identify the case:**

Debtor 1   Jamie Gallian

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number: **21–11710**

FILED

U.S. Bankruptcy Court
Central District of California

10/2/2024

Kathleen J. Campbell, Clerk

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Jamie Lynn Gallian

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Jamie Lynn Gallian

Name

16222 Monterey Ln #376
Huntington Beach, CA 92649

Contact phone   **714–321–3449**

Contact email
__JAMIEGALLIAN@GMAIL.COM__

Where should payments to the creditor be sent? (if different)

Name

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)          Filed on
                                                                                            MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                              Proof of Claim                                    page 1

**ES 203**                        **ES 203**                        **ES 203**

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  1116 |

**7. How much is the claim?**  $ 225000.00

**Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

LOAN TO CERTIFICATE OF LEGAL OWNER FOR REAL PROP
LEASEHOLD RESIDENCY APPLICANT SPACE 376 J–SANDCASTLE
11/18/2018

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.
   **Nature of property:**
   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
   ☐ Motor vehicle
   ☑ Other. Describe:

   SPACE 376 2014 SKYLINE CUSSTOM VILLA HOM

   **Basis for perfection:**    SEC.AGREE/PROM NOTE

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:**    $ 385000.00

   **Amount of the claim that is secured:**    $ 225000.00

   **Amount of the claim that is unsecured:**    $ 0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:**    $ 225000.00

   **Annual Interest Rate** (when case was filed)    5.5 %

   ☑ Fixed
   ☐ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

ES 204          ES 204          ES 204

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:   Sign Below

| **The person completing this proof of claim must sign and date it. FRBP 9011(b).**<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.** | Check the appropriate box:<br><br>☑ I am the creditor.<br>☐ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |
|---|---|

Executed on date     10/2/2024

            MM / DD / YYYY

/s/ JAMIE LYNN GALLIAN

Signature

Print the name of the person who is completing and signing this claim:

| Name | JAMIE LYNN GALLIAN |
|---|---|
| | First name     Middle name     Last name |
| Title | LENDER/HOLDER |
| Company | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 16222 MONTEREY LN. UNIT 376 |
| | Number  Street |
| | HUNTINGTON BEACH, CA 92649 |
| | City  State  ZIP Code |
| Contact phone | 714–321–3449     Email   JAMIEGALLIAN@GMAIL.COM |

**ES 205**                **ES 205**                **ES 205**

# Security Agreement

This security agreement is between J-SANDCASTLE CO. LLC, a(n) California limited liability company (the **"Borrower"**) and JAMIE LYNN GALLIAN, an individual (the **"Lender"**).

The Borrower is indebted to the Lender in the amount of $225000 (the **"Loan"**). The Loan is evidenced by a promissory note effective on the same date as this agreement (the **"Note"**), a copy of which is attached as **Exhibit A**. The Note and this agreement are collectively referred to as the **"Loan Documents."**

To induce the Lender to provide Loan to the Borrower as evidenced by the Note, the Borrower has agreed to enter into this security agreement for the benefit of the Lender and to grant the Lender a security interest in the Secured Property (as defined below) to secure the prompt payment, performance, and discharge in full of the Borrower's obligations under the Note.

The parties therefore agree as follows:

**1. GRANT OF SECURITY INTEREST.**

The Borrower grants to the Lender a security interest in the Secured Property (as defined in section 2 below) to secure payment of the Loan.

**2. SECURED PROPERTY.**

The secured property consists of all of the Borrower's interest as of the effective date of this agreement in the following properties and rights, wherever located, whether now owned or existing or later acquired and arising (the **"Secured Property"**): SERIAL NUMBER AC7V710394GB, AC7V710394GA; DECAL NUMBER LBM1081; ASSESSOR'S PARCEL NUMBER 891-569-62

**3. INDEBTEDNESS.**

This agreement is made to secure payment when due of the Loan. The Loan includes:

(a) all obligations of the Borrower to the Lender under the Note;

(b) all amendments, renewals, or extensions of the above;

(c) all costs incurred by the Lender in establishing, determining, continuing, or defending the validity or priority of its security interest, or in pursuing its rights under this agreement or any other Loan Document or in connection with any proceeding involving the Lender as a result of any financial accommodation to the Borrower; and

(d) all other costs of collecting the Loan, including attorneys' fees.

The Borrower shall reimburse the Lender for these expenses immediately on demand, and until paid all costs shall bear interest at the highest per year rate applicable to the Loan and permitted by law.

**4. REAFFIRMATION OF LOAN.**

The Borrower hereby reaffirms its obligation for the full and punctual payment and performance of the Note and all other obligations of the Borrower under the Note.

**5. BORROWER'S OBLIGATIONS.**

(a) The Borrower shall pay the Loan at the time and in the manner provided in the Note;

(b) The Borrower shall ensure that the Secured Property remains free of all security interests other than the rights of the Lender created by this agreement;

(c) The Borrower will defend the Lender's interest in the Secured Property against the claims of all other persons; and

(d) The Borrower may not transfer any Secured Property while this agreement is in effect without the prior written consent of the Lender, which consent may be withheld or given in the Lender's sole discretion.

**6. RECORDING OF AGREEMENT.**

On the effective date of this agreement, the Borrower will record this agreement and any security instrument creating a security interest on the Secured Property as required by law to protect the security interest of the Lender on the Secured Property. The Borrower shall pay all filing fees and associated expenses incident to this recordation.

Case 8:25-bk-DOCUMENTS SC   Document 599-1   Filed 05/04/25/05   Entered 05/04/25 14:59:05   Desc
Exhibit Exhibits 1 of 3   Page 70 of 620
Exhibit Part 2 of 3   Page 70 of 620

## 7. EVENTS OF DEFAULT.

The Borrower will be in default under this agreement if any of the following occurs:

(a) A default in the payment of the Loan or any of the obligations contained in this agreement or in the Loan Documents;

(b) Any representation made to the Lender by the Borrower proving to have been false in any material respect when made;

(c) Loss, theft, substantial damage, or destruction, or any sale or encumbrance to which the Lender did not consent in writing, of the Secured Property, or the making of a levy, seizure, or attachment on that property; or

(d) An Event of Default, as defined in the Note.

## 8. REMEDIES FOR EVENTS OF DEFAULT.

If an Event of Default occurs, the Lender may declare the Loan immediately due. In addition, the Lender will have all of the remedies set forth below, and these remedies are cumulative, so that the Lender may exercise one or more of these remedies until the Loan is paid in full without right of reinstatement, disgorgement, or repayment by reason of a preference, other creditor action, or by operation of law:

(a) cause all or any portion of the Secured Property to be registered in its name or the name of its nominee, designee, or assignee;

(b) have the exclusive right to receive all distributions with respect to the Secured Property;

(c) dispose of the Secured Property, at private or public sale, without advertisement of the time or place of the sale (or any adjournment), free of any right of redemption by the Borrower (this right of redemption being expressly waived by the Borrower), at the price, in the manner, and to the purchaser (including the Lender) that the Lender determines in its sole discretion. The proceeds of this sale will be applied to the Loan and the sale expenses (and the Borrower will remain liable for any deficiencies); or

(d) all other rights and remedies arising under this agreement or applicable law.

## 9. RESPONSIBILITY FOR SECURED PROPERTY.

The Borrower assumes all responsibility for the Secured Property, and the Loan will not be affected by the loss, destruction,

damage, or theft of any of the Secured Property or its unavailability for any reason. The Lender

(a) has no duty (either before or after an Event of Default) to collect any amounts related to the Secured Property or to preserve

any rights relating to the Secured Property, and

(b) has no obligation to clean up or otherwise prepare the Secured Property for sale.

The Borrower remains obligated under each agreement included in the Secured Property. The exercise of the Lender of any rights

under this agreement does not release the Borrower from its obligations under the agreements included in the Secured Property.

The Lender has no liability under the agreements included in the Secured Property.

**10. TERMINATION.**

This agreement and all rights of the Lender under this agreement will terminate when the Lender is satisfied that the Loan and all

other obligations of the Borrower under the Loan Documents are paid and performed in full without reinstatement, disgorgement, or

repayment by reason of a preference, other credit or action, or operation of law.

**11. INCONSISTENCIES.**

If any provision of this agreement is inconsistent with any provision in the Note, the provisions of this agreement will control.

**12. GOVERNING LAW.**

(a) **Choice of Law.** The laws of the state of California govern this agreement (without giving effect to its conflicts of law principles).

(b) **Choice of Forum.** Both parties consent to the personal jurisdiction of the state and federal courts in ORANGE, California.

**13. AMENDMENTS.**

No amendment to this agreement will be effective unless it is in writing and signed by both parties.

**14. ASSIGNMENT AND DELEGATION.**

(a) **No Assignment.** The Borrower may not assign any of its rights under this note. All voluntary assignments of rights are limited

by this subsection.

(b) **No Delegation.** The Borrower may not delegate any performance under this note.

(c) **Enforceability of an Assignment or Delegation.** If a purported assignment or purported delegation is made, or if both are made, in violation of this section, it is void and they are void.

## 15. COUNTERPARTS; ELECTRONIC SIGNATURES.

(a) **Counterparts.** The parties may execute this agreement in any number of counterparts, each of which is an original but all of which constitute one and the same instrument.

(b) **Electronic Signatures.** This agreement, agreements ancillary to this agreement, and related documents entered into in connection with this agreement are signed when a party's signature is delivered by facsimile, email, or other electronic medium. These signatures must be treated in all respects as having the same force and effect as original signatures.

## 16. SEVERABILITY.

If any one or more of the provisions contained in this agreement is, for any reason, held to be invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability will not affect any other provisions of this agreement, but this agreement will be construed as if those invalid, illegal, or unenforceable provisions had never been contained in this agreement, unless the deletion of those provisions would result in such a material change as to cause completion of the transactions contemplated by this agreement to be unreasonable.

## 17. NOTICES.

(a) **Writing; Permitted Delivery Methods.** Each party giving or making any notice, request, demand, or other communication required or permitted by this agreement shall give that notice in writing and use one of the following types of delivery, each of which is a writing for purposes of this agreement: personal delivery, mail (registered or certified mail, postage prepaid, return-receipt requested), nationally recognized overnight courier (fees prepaid), facsimile, or email.

(b) **Addresses.** A party shall address notices under this section to a party at the following addresses:

ES 210                              ES 210                              ES 210

Case 8:25-bk-00317-SC Doc 569-1 Filed 05/31/25 Entered 01/31/25 14:59:05 Desc
Exhibit Exhibits 1 to 5 Page 85 of 120
Exhibit Part 2 of 3 Page 93 of 326

If to the Borrower:

J-SANDCASTLE CO. LLC

5782 Pinon Drive

Huntington Beach, California 92649

jamiegallian@gmail.com

If to the Lender:

JAMIE LYNN GALLIAN

16222 Monterey Ln Sp. 376

Huntington Beach, California 92649

jamiegallian@gmail.com

(c) **Effectiveness.** A notice is effective only if the party giving notice complies with subsections (a) and (b) and if the recipient

receives the notice.

**18. WAIVER.**

No waiver of a breach, failure of any condition, or any right or remedy contained in or granted by the provisions of this agreement

will be effective unless it is in writing and signed by the party waiving the breach, failure, right, or remedy. No waiver of any breach,

failure, right, or remedy will be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, and no waiver

will constitute a continuing waiver, unless the writing so specifies.

**19. ENTIRE AGREEMENT.**

This agreement, together with the other Loan Documents, constitutes the final agreement of the parties. It is the complete and

exclusive expression of the parties' agreement with respect to the subject matter of this agreement. All prior and contemporaneous

communications, negotiations, and agreements between the parties relating to the subject matter of this agreement are expressly

merged into and superseded by this agreement. The provisions of this agreement may not be explained, supplemented, or qualified

by evidence of trade usage or a prior course of dealings. Neither party was induced to enter this agreement by, and neither party is

relying on, any statement, representation, warranty, or agreement of the other party except those set forth expressly in this

agreement. Except as set forth expressly in this agreement, there are no conditions precedent to this agreement's effectiveness.

## 20. HEADINGS.

The descriptive headings of the sections and subsections of this agreement are for convenience only, and do not affect this

agreement's construction or interpretation.

## 21. EFFECTIVENESS.

This agreement will become effective when all parties have signed it. The date this agreement is signed by the last party to sign it

(as indicated by the date associated with that party's signature) will be deemed the date of this agreement.

## 22. NECESSARY ACTS; FURTHER ASSURANCES.

Each party shall use all reasonable efforts to take, or cause to be taken, all actions necessary or desirable to consummate and

make effective the transactions this agreement contemplates or to evidence or carry out the intent and purposes of this agreement.

[SIGNATURE PAGE FOLLOWS]

Each party is signing this agreement on the date stated opposite that party's signature.

J-SANDCASTLE CO. LLC

Date:_____          By:_____

Name: JAMIE L GALLIAN
Title: MEMBER

ES 212                                   ES 212                          ES 212

## ATTACHEMENT

I, JAMIE L. GALLIAN, MEMBER of J-Sandcastle Co, LLC certify under

penalty of perjury that the contents of this Document are true.

I declare I am the person who executed this instrument in my capacity

as the sole Member of J-Sandcastle Co, LLC which execution is my act

and deed.

Signed this 16th day of November, 2018, at Huntington Beach, CA 92649

*[signature]*

Jamie L. Gallian

MEMBER, J-Sandcastle Co LLC

Date:_____  By:_____

                        Name: JAMIE LYNN GALLIAN

# ATTACHEMENT

I, JAMIE L. GALLIAN, certify under penalty of perjury,

that the contents of this Document are true.

I declare I am the person who executed this instrument, which execution

is my act and deed.

Signed this 16th day of November, 2018, at Huntington Beach, CA 92649


Jamie L. Gallian

EXHIBIT A

Attach copy of promissory note

# Secured Promissory Note (Fully Amortized)

$225000                                                                 11/16/2018

Huntington Beach, California

On or before 12/31/2048, for value received, the undersigned J-SANDCASTLE CO, LLC (the **"Borrower"**) promises to pay to the

order of JAMIE LYNN GALLIAN (the **"Holder"**), in the manner and at the place provided below, the principal sum of $225000.

## 1. PAYMENT.

All payments of principal and interest under this note will be made in lawful money of the United States, without offset, deduction, or

counterclaim, by wire transfer of immediately available funds to an account designated by the Holder in writing at least 10 days

after the effective date of this note or, if this designation is not made, by check mailed to the Holder at 16222 Monterey Ln Sp. 376,

Huntington Beach, California, 92649, or at such other place as the Holder may designate in writing.

## 2. MONTHLY INSTALLMENT PAYMENTS.

Principal and interest will be payable in 360 consecutive monthly installments of $1278.00, beginning on or before 12/15/2018 and

continuing on the 15th day of each month, until the principal and interest have been paid in full. Each payment will be credited first

to interest and then to principal, and interest will cease to accrue on any principal paid. Acceptance by the Holder of any payment

differing from the designated installment payment listed above does not relieve the Borrower of the obligation to honor the

requirements of this note.

## 3. INTEREST.

Interest on the unpaid principal balance of this note is payable from the date of this note until this note is paid in full, at the rate of

5.5% per year, or the maximum amount allowed by applicable law, whichever is less. Accrued interest will be computed on the

basis of a 365-day or 366-day year, as the case may be, based on the actual number of days elapsed in the period in which it

accrues.

## 4. PREPAYMENT.

The Borrower may prepay this note, in whole or in part, at any time before maturity without penalty or premium. Any partial

prepayment will be credited first to accrued interest, then to principal. No prepayment extends or postpones the maturity date of this

note.

## 5. SECURITY FOR PAYMENT.

This note is secured by certain assets of the Borrower in accordance with a separate security agreement dated 11/16/2018

between the Holder and the Borrower (the **"Security Agreement"**). If an Event of Default (defined below) occurs, the Holder will

have the rights set forth below and in the Security Agreement.

## 6. EVENTS OF DEFAULT.

Each of the following constitutes an **"Event of Default"** under this note:

(a) the Borrower's failure to make any payment when due under the terms of this note, including the final payment due under this

note when fully amortized;

(b) the filing of any voluntary or involuntary petition in bankruptcy by or regarding the Borrower or the initiation of any proceeding

under bankruptcy or insolvency laws against the Borrower;

(c) an assignment made by the Borrower for the benefit of creditors; or

(d) the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property.

## 7. ACCELERATION; REMEDIES ON DEFAULT.

If any Event of Default occurs, all principal and other amounts owed under this note will become immediately due without any

action by the Holder, the Borrower, or any other person. The Holder, in addition to any rights and remedies available to the Holder

under this note, may, in its sole discretion, pursue any legal or equitable remedies available to it under applicable law or in equity,

including taking any of the following actions:

Case 8:25-bk-10357-SC   Doc 569-1   Filed 05/31/25   Entered 05/31/25 14:50:05   Desc
Exhibit Exhibits 1 to 23   Page 93 of 620
Exhibit Part 2 of 3   Page 81 of 926

(a) personally, or by agents or attorneys (in compliance with applicable law), take immediate possession of the collateral. To that

end, the Holder may pursue the collateral where it may be found, and enter the Borrower's remises, with or without notice, demand,

process of law, or legal procedure if this can be done without breach of the peace. If the premises on which any part of the

collateral is located are not under the Borrower's direct control, the Borrower will exercise its best efforts to ensure that the Holder

is promptly provided right of access to those premises. To the extent that the Borrower's consent would otherwise be required

before a right of access could be granted, the Borrower hereby irrevocably grants that consent;

(b) require the Borrower to assemble the collateral and make it available to the Holder at a place to be designated by the Holder that

is reasonably convenient to both parties (it being acknowledged that the Borrower's premises are reasonably convenient to the

Borrower);

(c) sell, lease, or dispose of the collateral or any part of it in any manner permitted by applicable law or by contract; and

(d) exercise all rights and remedies of a secured party under applicable law.

**8. WAIVER OF PRESENTMENT; DEMAND.**

The Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of protest and

nonpayment, notice of costs, expenses or losses and interest on those, notice of interest on interest and late charges, and

diligence in taking any action to collect any sums owing under this note, including (to the extent permitted by law) waiving the

pleading of any statute of limitations as a defense to any demand against the undersigned. Acceptance by the Holder or any other

holder of this note of any payment differing from the designated payments listed does not relieve the undersigned of the obligation

to honor the requirements of this note.

**9. GOVERNING LAW.**

(a) **Choice of Law.** The laws of the state of California govern this note (without giving effect to its conflicts of law principles).

(b) **Choice of Forum.** Both parties consent to the personal jurisdiction of the state and federal courts in Orange, California.

**10. COLLECTION COSTS AND ATTORNEYS' FEES.**

The Borrower shall pay all expenses of the collection of indebtedness evidenced by this note, including reasonable attorneys' fees and court costs in addition to other amounts due.

**11. ASSIGNMENT AND DELEGATION.**

 **(a) No Assignment.** The Borrower may not assign any of its rights under this note. All voluntary assignments of rights are limited by this subsection.

 **(b) No Delegation.** The Borrower may not delegate any performance under this note.

 **(c) Enforceability of an Assignment or Delegation.** If a purported assignment or purported delegation is made in violation of this section, it is void.

**12. SEVERABILITY.**

If any one or more of the provisions contained in this note is, for any reason, held to be invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability will not affect any other provisions of this note, but this note will be construed as if those invalid, illegal, or unenforceable provisions had never been contained in it, unless the deletion of those provisions would result in such a material change so as to cause completion of the transactions contemplated by this note to be unreasonable.

**13. NOTICES.**

 **(a) Writing; Permitted Delivery Methods.** Each party giving or making any notice, request, demand, or other communication required or permitted by this note shall give that notice in writing and use one of the following types of delivery, each of which is a writing for purposes of this note: personal delivery, mail (registered or certified mail, postage prepaid, return-receipt requested), nationally recognized overnight courier (fees prepaid), facsimile, or email.

 **(b) Addresses.** A party shall address notices under this section to a party at the following addresses:

  If to the Borrower:

  J-Sandcastle Co. LLC

5782 Pinon Drive

Huntington Beach, California 92649

jamiegallian@gmail.com

If to the Holder:

Jamie Lynn Gallian

16222 Monterey Ln Sp. 376

Huntington Beach, California 92649

jamiegallian@gmail.com

(c) **Effectiveness.** A notice is effective only if the party giving notice complies with subsections (a) and (b) and if the recipient receives the notice.

## 14. WAIVER.

No waiver of a breach, failure of any condition, or any right or remedy contained in or granted by the provisions of this note will be effective unless it is in writing and signed by the party waiving the breach, failure, right, or remedy. No waiver of any breach, failure, right, or remedy will be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, and no waiver will constitute a continuing waiver, unless the writing so specifies.

## 15. HEADINGS.

The descriptive headings of the sections and subsections of this note are for convenience only, and do not affect this note's construction or interpretation.

[SIGNATURE PAGE FOLLOWS]

Each party is signing this agreement on the date stated opposite that party's signature.

J-Sandcastle Co. LLC

Date:_____     By:_____

Name: Jamie L Gallian

Title: Member

Date:_____     By:_____

Name: Jamie Lynn Gallian

## ATTACHEMENT

I, JAMIE L. GALLIAN, MEMBER of J-Sandcastle Co, LLC certify under

penalty of perjury that the contents of this Document are true.

I declare I am the person who executed this instrument in my capacity

as the sole Member of J-Sandcastle Co, LLC which execution is my act

and deed.

Signed this 16th day of November, 2018, at Huntington Beach, CA 92649

Jamie L. Gallian

MEMBER, J-Sandcastle Co LLC

## ATTACHEMENT

I, JAMIE L. GALLIAN, certify under penalty of perjury,

that the contents of this Document are true.

I declare I am the person who executed this instrument, which execution

is my act and deed.

Signed this 16th day of November, 2018, at Huntington Beach, CA 92649

Jamie L. Gallian

STATE OF CALIFORNIA - BUSINESS, CONSUMER SERVICES, AND HOUSING　　　　　　　　　　GAVIN NEWSOM, Governor

**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
.DIVISION OF CODES AND STANDARDS



## Title Search

Date Printed: Jan 18, 2019

| | | | |
|---|---|---|---|
| Decal #: | LBM1081 | Use Code: | SFD |
| Manufacturer: | SKYLINE HOMES INC | Original Price Code: | BVH |
| Tradename: | CUSTOM VILLA | Rating Year: | |
| Model: | | Tax Type: | LPT |
| Manufactured Date: | 05/29/2014 | Last ILT  Amount: | |
| Registration Exp: | | Date ILT Fees Paid: | |
| First Sold On: | 07/28/2014 | ILT Exemption: | NONE |

| Serial Number | HUD Label / Insignia | Length | Width |
|---|---|---|---|
| AC7V710394GA | PFS1130282 | 60' | 15' 2" |
| AC7V710394GB | PFS1130281 | 56' | 15' 2" |

Registered Owner:

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

| | |
|---|---|
| Last Title Date: | 09/10/2014 |
| Last Reg Card: | Pending Reg Card |
| Sale/Transfer Info: | Price $175,000.00 Transferred on 11/01/2018 |

Situs Address:

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649
Situs County: ORANGE

### ***END OF TITLE SEARCH***

## STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
### REGISTRATION CARD

Manufactured Home

Decal: **LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM | DFS | RY | Exp. Date |
|---|---|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC | CUSTOM VILLA | | | 05/29/2014 | 07/28/2014 | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued |
|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Jan 19, 2019 |
| AC7V710394GA | PFS1130282 | 25,058 | 60' | 15' 2" | |

Addressee

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649



Registered Owner(s)

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

Situs Address

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**********************************************
ATTENTION OWNER:

THIS IS THE REGISTRATION CARD FOR THE
UNIT DESCRIBED ABOVE. PLEASE KEEP THIS
CARD IN A SAFE PLACE WITHIN THE UNIT.

INSTRUCTIONS FOR RENEWAL:

REGISTRATION FOR THIS UNIT EXPIRES ON THE
DATE INDICATED ABOVE IN THE BOX LABELED
"Exp. Date". THERE ARE SUBSTANTIAL
PENALTIES FOR DELINQUENCY. IF YOU DO NOT
RECEIVE A RENEWAL NOTICE WITHIN 10 DAYS
PRIOR TO THE EXPIRATION DATE, CONTACT
H.C.D. FOR RENEWAL INSTRUCTIONS.
**********************************************

### IMPORTANT
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT. THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 10670236

01192019 - 1

## STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
### CERTIFICATE OF TITLE

Manufactured Home

Decal: **LBM1081**

| Manufacturer ID/Name<br>90002 SKYLINE HOMES INC | Trade Name<br>CUSTOM VILLA | Model<br>•• | | DOM<br>05/29/2014 | DFS<br>07/28/2014 | RV |
|---|---|---|---|---|---|---|
| Serial Number<br>AC7V710394GB<br>AC7V710394GA | Label/Insignia Number<br>PFS1130281<br>PFS1130282 | Weight<br>22,383<br>25,068 | Length<br>56'<br>60' | Width<br>15' 2"<br>15' 2" | Issued<br>Jan 19, 2019 | |

**Addressee**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**IMPORTANT**
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT. THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 10670236

01192019 - 2

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## STATEMENT TO ENCUMBER

**SECTION I.    DESCRIPTION OF UNIT**

This unit is a (check one):

[X] Manufactured Home, Mobilehome, Multifamily Manufactured Home  [ ] Commercial Modular  [ ] Truck Camper  [ ] Floating Home

The Decal (License) Number(s) is: LBM1081

The Trade Name is: SKYLINE HOMES CUSTOM VILLA

The Serial Number(s) is: AC7V710394GB/GA

**SECTION II.    LEGAL OWNER INFORMATION**

I/We are releasing legal owner interest in the above-described unit to encumber the title (record a lien) in
favor of:

Ronald J. Pierpont, Member JPad LLC
<br>(Name of New Legal Owner)

Address: 16222 MONTEREY LN. #376 HUNTINGTON BEACH, CA 92649
<br>  Street Address or P.O. Box                          City                               State        Zip

**SECTION III.    CERTIFICATION**

I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and
correct.

Executed on  8/20/2020     at    HUNTINGTON  BEACH, CALIFORNIA
<br>             Date                                City                      State

Signature of each registered owner:                Printed name of each registered owner:

_Jamie L. Gallian, member_        J-SANDCASTLE CO LLC JAMIE L.GALLIAN, MEMBER

Address: 16222 MONTEREY LN #376 HUNTINGTON BEACH, CA 92649
<br>  Street Address or P. O. Box                        City                               State       Zip

HCD 484.7 (Rev. 11/14)

# ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California

County of _____ ORANGE _____ )

On __AUG,28,2020_____ before me, ALEX MAJDPOUR NOTARY PUBLIC
_____
(insert name and title of the officer)

personally appeared __JAMIE LYNN GALLIAN_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (Seal)



DTN:                        **12153896**

Decal:                      **LBM1081**

Unit ID:                    252606085

Trans Type:                 L/O Assignment

Trans Date:                 02/01/2021

Trade Name:                 CUSTOM VILLA

Serial #:                   AC7V710394GA, AC7V710394GB

Insignia #                  PFS1130281, PFS1130282

Status Date:    02/23/2021        User Name:    SHAH, KIRAN

ES 230                      ES 230                      ES 230

STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## REGISTRATION CARD
Manufactured Home

Decal: LBM1081

| Manufacturer ID/Name | Trade Name | Model | DOM | DFS | RY | Exp. Date |
|---|---|---|---|---|---|---|
| 90002  SKYLINE HOMES INC | CUSTOM VILLA | | 05/29/2014 | 07/28/2014 | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued |
|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Feb 24, 2021 |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | |

Addressee

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649



Registered Owner(s)

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

Situs Address

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

Legal Owner(s)

RONALD J PIERPONT
JPAD LLC
Tenants in Common Or
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

Lien Perfected On:    08/20/20 11:58:00

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
## ATTENTION OWNER:

THIS IS THE REGISTRATION CARD FOR THE
UNIT DESCRIBED ABOVE.  PLEASE KEEP THIS
CARD IN A SAFE PLACE WITHIN THE UNIT.

INSTRUCTIONS FOR RENEWAL:

REGISTRATION FOR THIS UNIT EXPIRES ON THE
DATE INDICATED ABOVE IN THE BOX LABELED
"Exp. Date".  THERE ARE SUBSTANTIAL
PENALTIES FOR DELINQUENCY.  IF YOU DO NOT
RECEIVE A RENEWAL NOTICE WITHIN 10 DAYS
PRIOR TO THE EXPIRATION DATE, CONTACT
H.C.D. FOR RENEWAL INSTRUCTIONS.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## IMPORTANT
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 12153896

02242021 - 1

ES 231                    ES 231                    ES 231

STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

## CERTIFICATE OF TITLE

Manufactured Home                    Decal: **LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM 05/29/2014 | DFS 07/28/2014 | RY |
|---|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC | CUSTOM VILLA | | | | | |
| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued | |
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Feb 24, 2021 | |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | |

**Addressee**

RONALD J PIERPONT
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Legal Owner(s)**

RONALD J PIERPONT
JPAD LLC
Tenants in Common Or
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

Lien Perfected On:         08/20/20 11:58:00

**IMPORTANT**
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 12153896                                            02242021 - 2

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## LIEN SATISFIED

---

### SECTION I.        DESCRIPTION OF UNIT

This unit is a:

☑ Manufactured Home/Mobilehome ☐ Commercial Modular ☐ Floating Home ☐ Truck Camper

The Decal (License) No.(s) of the unit is: LBM1081

The Trade Name of the unit is: CUSTOM VILLA

The Serial No.(s) of the unit is: AC7V710394GB/AC7V710394GA

---

### SECTION II.       DEBTOR(S) NAME(S)

Name of Debtor(s): J-SANDCASTLE CO, LLC

---

### SECTION III.      LIENHOLDER'S CERTIFICATION

This is to certify that our/my lien in the name(s) of the debtor(s) shown above against the described unit has been fully satisfied and has not been assigned to any other party.

I/We certify under penalty of perjury that the foregoing is true and correct.

Print or Type Name of Legal Owner or Jr. Lienholder (Lender):

J-PAD LLC OR RONALD J. PIERPONT

Signature of Legal Owner, Jr. Lienholder (Lender) or their Authorized Agent:

_Ronald J. Pierpont_ (signature)                                    Date 7/9/2021

Address    16222 MONTEREY LN. #376          HUNTINGTON BEACH,    CA      92649
           Street Address or P.O. Box                City              State     Zip

HCD RT 475.3 (Rev. 07/16)

STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT

## CERTIFICATE OF TITLE

Manufactured Home                    Decal:    **LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM 05/29/2014 | DFS 07/28/2014 | RY |
|---|---|---|---|---|---|---|
| 90002    SKYLINE HOMES INC | CUSTOM VILLA | | | | | |
| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued | |
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Feb 24, 2021 | |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | |

**Addressee**

RONALD J PIERPONT
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

JUL 14 2021

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Legal Owner(s)**

RONALD J PIERPONT
JPAD LLC
Tenants in Common Or
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

Lien Perfected On:        08/20/20 11:58:00

12313525

### IMPORTANT
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT. THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 12153896                                                                02242021 - 2

ES 234                          ES 234                          ES 234



DTN:              **12313525**

Decal:            **LBM1081**

Unit ID:          252606085

Trans Type:       R/O Transfer - No Sale

Trans Date:       07/14/2021

Trade Name:       CUSTOM VILLA

Serial #:         AC7V710394GA, AC7V710394GB

Insignia #        PFS1130281, PFS1130282

Status Date:   08/02/2021      User Name:   SHAH, KIRAN

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## CERTIFICATE OF TITLE

Manufactured Home

Decal: **LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM 05/29/2014 | DFS 07/28/2014 | RV |
|---|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC | CUSTOM VILLA | | | | | |
| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued Aug 03, 2021 | |
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15'2" | | |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15'2" | | |

Addressee

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

Registered Owner(s)

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

Situs Address

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

I hereby certify that this copy is a true and correct copy of
the original document on file with the Department of
Housing & Community Development.

_____
Signature

**IMPORTANT**
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT. THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 12313525

08032021 - 2

ES 236          ES 236          ES 236

## STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
### REGISTRATION CARD

Manufactured Home

Decal: LBM1081

| Manufacturer ID/Name 90002   SKYLINE HOMES INC | Trade Name CUSTOM VILLA | Model | | DOM 05/29/2014 | DFS 07/28/2014 | RY | Exp. Date |
|---|---|---|---|---|---|---|---|
| Serial Number AC7V710394GB AC7V710394GA | Label/Insignia Number PFS1130281 PFS1130282 | Weight 22,383 25,068 | Length 56' 60' | Width 15' 2" 15' 2" | Issued Aug 03, 2021 | | |

**Addressee**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649



**Registered Owner(s)**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

*************************************************
### ATTENTION OWNER:

THIS IS THE REGISTRATION CARD FOR THE
UNIT DESCRIBED ABOVE. PLEASE KEEP THIS
CARD IN A SAFE PLACE WITHIN THE UNIT.

### INSTRUCTIONS FOR RENEWAL:

REGISTRATION FOR THIS UNIT EXPIRES ON THE
DATE INDICATED ABOVE IN THE BOX LABELED
"Exp. Date". THERE ARE SUBSTANTIAL
PENALTIES FOR DELINQUENCY. IF YOU DO NOT
RECEIVE A RENEWAL NOTICE WITHIN 10 DAYS
PRIOR TO THE EXPIRATION DATE, CONTACT
H.C.D. FOR RENEWAL INSTRUCTIONS.
*************************************************

I hereby certify that this copy is a true and correct copy of
the original document on file with the Department of
Housing & Community Development.

_____
Signature

### IMPORTANT
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT. THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 12313525

08032021 - 1



DTN:                13413446

Decal:              LBM1081

Unit ID:            252606085

Trans Type:         L/O Remove

Trans Date:         08/06/2024

Trade Name:         CUSTOM VILLA

Serial #:           AC7V710394GA, AC7V710394GB

Insignia #          PFS1130281, PFS1130282

Status Date:    08/08/2024    User Name:    GEREN, MARSHELLE

ES 238                    ES 238                    ES 238

Manufactured Home

**Decal: LBM1081**

| Manufacturer ID/Name | Trade Name | Model | | DOM 05/29/2014 | | DFS 07/28/2014 | RY | Exp. Date |
|---|---|---|---|---|---|---|---|---|
| 90002    SKYLINE HOMES INC - CLOSED | CUSTOM VILLA | | | | | | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued |
|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Aug 09, 2024 |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | |

**Addressee**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649



**Registered Owner(s)**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ATTENTION OWNER:**

THIS IS THE REGISTRATION CARD FOR THE
UNIT DESCRIBED ABOVE.  PLEASE KEEP THIS
CARD IN A SAFE PLACE WITHIN THE UNIT.

**INSTRUCTIONS FOR RENEWAL:**

REGISTRATION FOR THIS UNIT EXPIRES ON THE
DATE INDICATED ABOVE IN THE BOX LABELED
"Exp. Date".  THERE ARE SUBSTANTIAL
PENALTIES FOR DELINQUENCY.  IF YOU DO NOT
RECEIVE A RENEWAL NOTICE WITHIN 10 DAYS
PRIOR TO THE EXPIRATION DATE, CONTACT
H.C.D. FOR RENEWAL INSTRUCTIONS.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IMPORTANT**
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 13413446

08092024 - 1

**ES 239**          **ES 239**          **ES 239**

Manufactured Home                                    Decal:  **LBM1081**

| Manufacturer ID/Name | | Trade Name | Model | | DOM | DFS | RY |
|---|---|---|---|---|---|---|---|
| 90002 | SKYLINE HOMES INC - CLOSED | CUSTOM VILLA | | | 05/29/2014 | 07/28/2014 | |
| **Serial Number** | | **Label/Insignia Number** | **Weight** | **Length** | **Width** | **Issued** | |
| AC7V710394GB | | PFS1130281 | 22,383 | 56' | 15' 2" | Aug 09, 2024 | |
| AC7V710394GA | | PFS1130282 | 25,068 | 60' | 15' 2" | | |

**Addressee**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Registered Owner(s)**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**IMPORTANT**
**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE**
**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE**
**CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**

DTN:  13413446

08092024 - 2

ES 240                              ES 240                              ES 240

# EXHIBIT 12

ES 241                    ES 241                    ES 241

# *Roach v. Marshack (In re Roach)*

United States Bankruptcy Appellate Panel for the Ninth Circuit

January 24, 2019, Argued and Submitted at San Diego, California; January 29, 2019, Filed

BAP No. CC-18-1144-KuTaF, CC-18-1160-KuTaF (related)

**Reporter**
2019 Bankr. LEXIS 263 *

In re: ELAINE MARIE *ROACH*, Debtor.ELAINE MARIE *ROACH*, Appellant, v. RICHARD A. MARSHACK, Chapter 7 Trustee, Appellee.

**Notice:** THIS DISPOSITION IS NOT APPROPRIATE FOR PUBLICATION. ALTHOUGH IT MAY BE CITED FOR WHATEVER PERSUASIVE VALUE IT MAY HAVE (SEE *FED. R. APP. P. 32.1*), IT HAS NO PRECEDENTIAL VALUE. SEE 9TH CIR. BAP RULE 8013-1.

**Prior History:** [*1] Appeal from the United States Bankruptcy Court for the Central District of California. Bk. No. 8:17-bk-12091-TA. Honorable Theodor C. Albert, Bankruptcy Judge, Presiding.

**Counsel:** William Miles Burd of Ringstad & Sanders LLP argued for appellant.

Elaine Marie *Roach*; David Edward Hays of Marshack Hays LLP argued for appellee Richard A. Marshack, Chapter 7 Trustee.

**Judges:** Before: KURTZ, TAYLOR, and FARIS, Bankruptcy Judges.

**Opinion by:** KURTZ

# Opinion

## MEMORANDUM[*]

Chapter 7[1] debtor, Elaine Marie *Roach*, appeals from the bankruptcy court's orders approving the motions filed by the chapter 7 trustee, Richard A. Marshack (Trustee) to: (1) sell Ms. *Roach*'s property (Property) free and clear of liens (Sale Order) (BAP No. 18-1144) and (2) distribute the sale proceeds with payment in full to the first and second lien holders with the remaining proceeds split evenly between the estate and Mutual of Omaha Bank (Omaha Bank) pursuant to a court-approved compromise (Distribution Order) (BAP No. 18-1160). We AFFIRM both orders on appeal.

## FACTS

### A. Prebankruptcy Events

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see Fed. R. App. P. 32.1*, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, *11 U.S.C. §§ 101-1532*, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Ms. *Roach* was the president and owner of Sesa, Inc. (Sesa), a California corporation. In 2012, Sesa borrowed $937,000 from Omaha Bank. Ms. *Roach* signed a guaranty of Sesa's obligation [*2] which was secured by a third deed of trust against her Property. Sesa defaulted on the loan in November 2016 and soon after closed its doors.

## B. Bankruptcy Events

In May 2017, Ms. *Roach* filed a chapter 7 petition. Mr. Marshack was appointed chapter 7 trustee.

In amended schedules, Ms. *Roach* valued her Property at $1.2 million and listed four secured creditors who held liens against the Property in the total amount of $1,550,095.89: (1) Citimortgage, Inc. - $426,645.17; (2) Bank of America - $468,619.61; (3) Omaha Bank - $634,831.11; and (4) Merhab Robinson, Jackson & Clarkson (Merhab) - $20,000. In amended Schedule C, Ms. *Roach* claimed a homestead exemption in the amount of $75,000. The deadline for objecting to her homestead exemption passed without objection.

Ms. *Roach* did not schedule any litigation claims against Omaha Bank in either her original schedules or her amended schedules but testified at the initial meeting of creditors that she may have such claims against Omaha Bank or its attorney for alleged improper conduct and threats (Litigation Claims).

## 1. Trustee's Compromise With Omaha Bank

Trustee filed a motion seeking an order approving a compromise of the Litigation Claims with [*3] Omaha Bank under *Rule 9019*. The compromise included the following provisions:

3.1 Subordination of one-half of [Omaha Bank's] Claim: Pursuant to *§ 510(c)(1)*, [Omaha Bank] agrees to subordinate 50% of its [Omaha Bank] secured claim to be treated as a general unsecured claim. The other half of the secured [Omaha Bank] Claim shall retain the same validity, priority, and extent that would otherwise exist under California law. Upon a sale of the Property, and after all costs of sale have been paid, senior liens including the approximate $465,000 owed to Bank of America and the approximate $412,000 claim owed to Citimortgage will be paid with the balance otherwise owed to [Omaha Bank] to be split evenly between Omaha Bank and the Estate;

3.2 The lien securing the subordinated portion of [Omaha Bank's] Claim shall be transferred to the Estate. Pursuant to *§ 510(c)(2)*, the lien securing the subordinated half of the [Omaha] Bank's claim would be transferred to the Estate with the Estate receiving all associated rights held by [Omaha] Bank as to the subordinated half of [Omaha] Bank's claim.

. . .

3.4 Release of Estate Claim. In consideration of the subordination provisions of the Agreement, the Estate releases [Omaha Bank], [*4] its officers, directors, shareholders, representatives, employees, lawyers, including the law firm of Mirman, Bubman, & Nahmias, LLP and its attorneys, shareholders, officers, directors, and employees, of any liability arising out of or related to the alleged Litigation Claim.

In a footnote, Trustee explained that he did not believe the subordination provisions set forth in the agreement constituted a "carve-out" subject to the standards set forth in *In re KVN Corporation, 514 B.R. 1, 8 (9th Cir. BAP 2014)*. He asserted, however, that even if considered a carve-out, those standards were met; i.e.: (1) Trustee fulfilled his basic duties; (2) there was a benefit to the estate because up to $317,500 would be distributed; and (3) the terms of the carve-out agreement were fully disclosed to the bankruptcy court.

Although Ms. *Roach* did not file a written opposition to the compromise, her newly hired counsel appeared at the hearing. New counsel advised the bankruptcy court that Ms. *Roach* did not believe she had any claims against Omaha Bank or its counsel and, therefore, she did not object to the release of those claims. However, Ms. *Roach* argued that approval of a carve-out agreement with Omaha Bank was premature until there was an actual offer [*5]

2019 Bankr. LEXIS 263, *5

on the Property; only then could the court determine whether a meaningful distribution to unsecured creditors would be made.

In December 2017, the bankruptcy court approved the compromise. No appeal was taken, and the order became final.

## 2. Trustee's Motion to Sell Real Property and Motion to Distribute the Proceeds of the Sale

Trustee filed a motion to sell the Property for $1.3 million and a motion to distribute the proceeds of the sale. Trustee proposed to pay the senior first and second liens in full, current property taxes, a broker's commission, and title and escrow fees. He then proposed to split the remaining proceeds evenly between Omaha Bank and the bankruptcy estate based on the court-approved compromise. Trustee explained that the estate was projected to receive approximately $160,000 from the sale proceeds, which was sufficient to pay administrative claims capped at $100,000, priority claims of $31,700 in full, and to make pro rata distributions to general unsecured creditors. Trustee proposed to reduce his and his firm's administrative fees such that at least $18,520 or about 15% would be distributed to unsecured creditors.

Because the sale proceeds would be exhausted by [*6] the first three deeds of trust recorded against the Property, Trustee maintained that there would be no proceeds available to pay any portion of the fourth deed of trust held by Merhab or anything to Ms. *Roach* on account of her homestead exemption.

In addition, Trustee argued that Ms. *Roach* could not claim an exemption against the projected $160,000 recovered pursuant to the subordination agreement with Omaha Bank because such a claim would be prohibited by *§ 522(g)*. That statute provides that exemptions in property recovered by a trustee under *§ 510(c)(2)* may only be claimed where the recovered property was not voluntarily transferred by the debtor. Here, Ms. *Roach* had voluntarily transferred an interest in her Property to Omaha Bank as security for its loan made to Sesa.

Ms. *Roach* objected to Trustee's motions on the grounds, among others, that Trustee was improperly attempting to sell the Property without paying her on account of her homestead exemption and that the sale failed to meet the *KVN* standards for approval of a carve-out agreement. Ms. *Roach* further argued that the funds going to the estate as part of the carve-out were proceeds from the sale of her Property and subject to her homestead exemption [*7] under the holdings in *In re Wilson, 494 B.R. 502, 506 (Bankr. C.D. Cal. 2013)*, and *In re Reade, 2014 Bankr. LEXIS 1391, 2014 WL 1329808 (Bankr. C.D. Cal. 2014)*. Finally, Ms. *Roach* maintained that Trustee's *§ 522(g)* argument was "nonsensical" since that section applies to property which was voluntarily transferred by the debtor and has been recovered by the trustee. Here, Trustee had recovered nothing.

The bankruptcy court issued a tentative ruling, granting Trustee's motions. The court found that *In re Wilson* and *In re Reade* were factually and legally distinguishable from the instant case because in this case there was an assignment of Omaha Bank's lien to the estate as part of the court-approved compromise. The court noted that homesteads cannot be used to trump voluntary liens and there was no reason that should change just because a lien is assigned to the estate. The court further found that the previously approved compromise met all the requirements of *KVN* and noted that the 15% distribution to unsecured creditors was not de minimus. Finally, the bankruptcy court agreed with Trustee that Ms. *Roach* voluntarily liened the Property for far more than its value. Accordingly, there was no legal or equitable reason for allowing Ms. *Roach* to receive proceeds, at the expense of her creditors, that Trustee was able to pry out [*8] of the Property.

At the hearing on the matter, the court considered whether the subordination provisions constituted a carve-out agreement or an assignment of the money portion of Omaha Bank's lien. The court acknowledged that the agreement between the parties was unclear as to what portion of Omaha Bank's lien was subordinated, but the court did not find the agreement fatally vague. When reading all the motions and orders together, the bankruptcy court found that it was clear there was an assignment to the bankruptcy estate consisting of one-half of the money portion of Omaha Bank's lien such that monies owed to Omaha Bank would be evenly split between Omaha Bank and the estate. In the end, the court found the assignment of the lien made this case different from the carve-out

2019 Bankr. LEXIS 263, *8

cases. The bankruptcy court granted Trustee's motions and entered orders accordingly. Ms. *Roach* filed a single notice of appeal from those orders.

## C. Post-appeal Events

By order, the Panel required Ms. *Roach* to file a separate appeal and pay a separate filing fee for each order so that the appeals would proceed as separate matters. The appeal of the Distribution Order was assigned BAP No. 18-1160.

Trustee moved to **[*9]** dismiss the appeal of the Sale Order (BAP No. 18-1144), arguing that it was moot because escrow had closed, there was no stay pending appeal, and the buyers qualified as good faith purchasers under *§ 363(m)*. The Panel denied the motion, finding that effective relief could be granted because the Sale Order granted two types of relief: it approved a sale and it allocated the proceeds. The Panel found that the portion of the order concerning the actual sale transaction was moot since the sale of the Property was made to a good faith purchaser and was not stayed pending appeal. *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.) 163 F.3d 570, 576 (9th Cir. 1998)*. However, the Panel found that the appeal as to the second relief was not moot because the proceeds had not been distributed (and even if they had, such proceeds could be recovered). Accordingly, the Panel denied the motion without prejudice to reconsideration by the merits panel assigned to this appeal.[2]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to *28 U.S.C. §§ 1334* and *157(b)(2)(A)* and *(N)*. We have jurisdiction under *28 U.S.C. § 158*.

## ISSUE

Whether the bankruptcy court erred in concluding that Ms. *Roach* was not entitled to claim a homestead exemption in the estate's share of proceeds received from the sale of her Property due to Omaha Bank's assignment **[*10]** to the estate one-half of the money portion of its lien.

## STANDARD OF REVIEW

We review a bankruptcy court's interpretation of its own order for an abuse of discretion. *Rosales v. Wallace (In re Wallace), 490 B.R. 898, 906 (9th Cir. BAP 2013)* (citing *Arenson v. Chicago Mercantile Exch., 520 F.2d 722, 725 (7th Cir.1975))*; *see also Hallett v. Morgan, 296 F.3d 732, 739-40 (9th Cir. 2002)* (special consideration is given to the trial court's interpretation of its own orders); *Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 933, 941 (4th Cir.1997)* (the bankruptcy judge who has presided over a case from its inception is in the best position to clarify the court's rulings).

A bankruptcy court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011)*.

---

[2] Generally, a merits panel is not bound by the decisions of a motions panel. *Stagecoach Utils., Inc. v. Cty. of Lyon (In re Stagecoach Utilities, Inc.), 86 B.R. 229, 230 (9th Cir. BAP 1988)*. We see no reason to reconsider the decision made by the motions panel. The scope of our review in these related appeals is limited to the bankruptcy court's decision regarding the distribution of the sale proceeds.

2019 Bankr. LEXIS 263, *10

## DISCUSSION

These appeals are about Ms. **Roach**'s homestead exemption in proceeds received by the bankruptcy estate after the sale of her Property. In California, the homestead exemption may exceed home equity on the petition date. *Wilson v. Rigby (In re Wilson), 909 F.3d 306, 310 (9th Cir. 2018)*. The allowed amount of the debtor's homestead is determined when the subject property is sold rather than being fixed as of the date the debtor files bankruptcy. *Robertson v. Alsberg (In re Alsberg), 161 B.R. 680, 684 (9th Cir. BAP 1993)*, aff'd *68 F.3d 312 (9th Cir. 1995)*. In this case, the disbursement of proceeds is a result of the bankruptcy court's order approving the compromise between Omaha Bank and Trustee. That order became a final order after the time for appeal passed. Accordingly, we cannot address [*11] whether the approval of the compromise or the distribution of proceeds was appropriate or not.

Further, in ruling on Trustee's motions, the bankruptcy court re-examined the meaning of the compromise agreement to determine whether the subordination provisions constituted a carve-out agreement or an assignment of the money portion of Omaha Bank's lien. The bankruptcy court found that although the agreement was unclear as to what portion of Omaha Bank's lien (i.e., the unsecured portion or the secured portion) was subordinated, the agreement was not fatally vague. The bankruptcy court concluded that reading all the motions and orders together, it was clear that there was an assignment to the bankruptcy estate consisting of one-half of the money portion of Omaha Bank's lien such that monies owed to Omaha Bank would be evenly split between Omaha Bank and the estate.

"'We owe substantial deference to the bankruptcy court's interpretation of its own orders and will not overturn that interpretation unless we are convinced that it amounts to an abuse of discretion.'" *Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011)* (quoting *Ill. Inv. Trust No. 92-7163 v. Allied Waste Indus. (In re Res. Tech. Corp.), 624 F.3d 376, 386 (7th Cir. 2010)*). The bankruptcy court was in the best position to construe the subordination provisions [*12] in the compromise agreement. Considering the record and the plain text of the compromise, we are not convinced that the bankruptcy court's interpretation was an abuse of discretion. Because Omaha Bank assigned the money portion of its lien to the bankruptcy estate, the bankruptcy court properly determined that under the terms of the compromise, Ms. **Roach** was not entitled to claim a homestead exemption in the sale proceeds attributed to the transferred lien.

## CONCLUSION

For these reasons, we AFFIRM both orders on appeal.

**End of Document**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): **Trustee's Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption; Memorandum of Points and Authorities, Declarations of Jeffrey I. Golden and Grey Bingham and Request for Judicial Notice in Support Thereof** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 31, 2025 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On January 31, 2025 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

⊠ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) January 31, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Debtor
Jamie Lynn Gallian
jamiegallian@gmail.com

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 31, 2025 | Gloria Ramos | /s/ Gloria Ramos |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**
1785209.1  27064
**ES 247**                                **ES 247**                                **ES 247**

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
eisrael@danninggill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1785209.1  27064

**F 9013-3.1.PROOF.SERVICE**

ES 248          ES 248          ES 248

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Laila Masud on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

## 2. **SERVED BY U.S. MAIL**

| | | |
|---|---|---|
| **Jamie Lynn Gallian, Debtor**<br>16222 Monterey Ln Unit 376<br>Huntington Beach, CA 92649 | **The Honorable Scott C. Clarkson**<br>U.S. Bankruptcy Court<br>Ronald Reagan Federal Building<br>411 W. Fourth Street, Suite 5130<br>Santa Ana, CA 92701 | **Buyer**<br>Galaxy Homes<br>Attn: Richard Herr<br>12852 Bubbling Well Road<br>Santa Ana, CA 92705 |
| **Greg Bingham - Broker**<br>Coldwell Banker Residential<br>840 Newport Center Dr Ste 100<br>Newport Beach, CA 92660-6377 | **William Friedman - Broker**<br>Coldwell Banker Realty<br>840 Newport Center Dr Ste 100<br>Newport Beach, CA 92660-6377 | **Office of the United States Trustee**<br>411 West Fourth Street, Suite 7160<br>Santa Ana, CA 92701-4593 |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1785209.1  27064

**F 9013-3.1.PROOF.SERVICE**

1   ERIC P. ISRAEL (State Bar No. 132426)
    *eisrael@DanningGill.com*
2   DANNING, GILL, ISRAEL & KRASNOFF, LLP
    1901 Avenue of the Stars, Suite 450
3   Los Angeles, California 90067-6006
    Telephone: (310) 277-0077
4   Facsimile: (310) 277-5735

5   Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                        SANTA ANA DIVISION

11

12  In re                              Case No. 8:21-bk-11710-SC

13  JAMIE LYNN GALLIAN,                 Chapter 7

14          Debtor.                     **TRUSTEE'S NOTICE OF HEARING ON
                                        MOTION TO AUTHORIZE SALE OF
15                                      MANUFACTURED HOME CURRENTLY
                                        LOCATED AT 16222 MONTEREY LANE,
16                                      SPACE 376, HUNTINGTON BEACH, CA
                                        92649, DECAL NO. LBM1081, FREE AND
17                                      CLEAR OF LIENS AND HOMESTEAD
                                        EXEMPTION**
18
                                        Date:    March 4, 2025
19                                      Time:    11:00 a.m.
                                        Place:   Courtroom 5C
20                                               411 W. Fourth Street
                                                 Santa Ana, California
21

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1785208.1  27064                          1

ES 250              ES 250              ES 250

1  **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

2  **JUDGE AND INTERESTED PARTIES:**

3         PLEASE TAKE NOTICE that on March 4, 2025, at 11:00 a.m., in Courtroom "5C" of the

4  United States Bankruptcy Court, for the Central District of California, located at 411 W. Fourth

5  Street, Santa Ana, California, Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the

6  bankruptcy estate (the "Estate") of Jamie Lynn Gallian (the "Debtor"), will and hereby does move

7  the Court (the "Motion") under 11 U.S.C. § 363, and Local Bankruptcy Rules 6004-1(c) and 9013-

8  1, for an order authorizing the sale of the 2014 Skyline Custom Villa manufactured home, decal no.

9  LBM1081 (the "Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach,

10 California 92649 (the "Space").  The proposed sale is pursuant to a Purchase and Sale Agreement

11 and amendments (collectively the "PSA"), copies of which are attached collectively to the

12 Declaration of Jeffrey I. Golden (the "Golden Declaration") as Exhibit "1."  The Trustee is

13 requesting authority to sell the Property free and clear of liens and interests pursuant to 11 U.S.C. §

14 363(f) and authorize the Trustee to disburse the amount of the avoided and preserved first lien to

15 the Trustee.

16        Pursuant to Local Bankruptcy Rule 6004-1(c), the Trustee provides the following

17 information:

18        A.      The date, time and place of the hearing on the Motion are set forth above.

19        B.      The Trustee has proposed the sale of the Property to Galaxy Homes, LLC (the

20 "Buyer"), subject to overbidding.

21        C.      The property to be sold consists of the Trustee's right, title, and interest in the

22 Property, with the following description:

23        Skyline, Custom Villa, 2014, net size 60x30. Serial Numbers
          AC7V710394GB/GA; DOH/HUD Numbers: PFS1130282 and PFS1130281;
24        Decal Number LBM1081 Year 2006.

25

26        The Property to be sold does not include the ground lease for the Space (the "Ground

27 Lease"), which was deemed rejected long ago.  However, the Association (Houser Bros.) has

28 agreed to give any qualified buyer – but not the Debtor, a new ground lease.

ES 251                          ES 251                          ES 251

1      D.     The Buyer has conducted all due diligence on the Property that the Buyer believes is

2 necessary for the completion of this sale.  Any and all contingencies agreed to relating to the sale

3 have been waived, and thus the sale will not be contingent upon any events or conditions other than

4 Court approval and potential overbidding.

5      The Property will be sold for $275,000 (the "Proposed Sale Price") on an "as is," "where is"

6 condition, with no warranty or recourse whatsoever.

7      E.     Based on records maintained by the California Department of Community

8 Development (the "HCD"), which maintains title and lien records for manufactured homes, and

9 proofs of claim filed in the Debtor's case, there are no known consensual encumbrances against the

10 Property that have not been avoided, recovered and preserved for the benefit of the Estate.

11      The Trustee seeks to sell the Property free and clear of any and all liens and interests,

12 including the Debtor's homestead exemption.  Because the consensual liens have been avoided,

13 recovered and preserved, the Estate will realize the first approximate $301,011.14 from the sales

14 proceeds on account of such liens.  Involuntary liens were not properly perfected, and in any event

15 are junior to the avoided consensual liens.  Absent a significant increase in the sale price, the

16 Debtor's homestead exemption is out of the money and will not be paid.

17      F.     The proposed sale is subject to higher and better bids and, by way of this Motion,

18 the Trustee is requesting that the Court approve the overbid procedures described in the

19 accompanying memorandum of points and authorities, summarized as follows:

20      1.     **Minimum initial overbid**:  $276,000.00 ($1,000.00 above the Buyer's

21 current offer).

22      2.     **Minimum overbidding increments**:  $1,000.00.

23      3.     **Initial overbid deposit**:  $8,280.00 (*i.e.*, 3% of the minimum initial overbid

24 price).

25      4.     **Qualification for overbidding**:  At least three (3) business days prior to the

26 commencement of the hearing on this Motion, any party wishing to overbid on the Property must

27 deliver to the Trustee's counsel, Eric P. Israel, Esq., 1901 Avenue of the Stars, Suiter 450, Los

28 Angeles, California 90067:

1785208.1  27064

3

ES 252      ES 252      ES 252

1         (a) a cashier's check payable to "Jeffrey I. Golden, Trustee" in the amount of

2 $8,280.00, and

3         (b) a written, executed overbid in the form attached as Exhibit "8" to the Trustee's

4 declaration.

5         5.    The Trustee proposes that no party be allowed to bid on the Property absent

6 the timely delivery of the initial overbid deposit and the written, executed overbid form as set forth

7 above.  The Trustee in his sole discretion may determine that a party desiring to bid is not qualified

8 due to insufficient documentation or financial qualifications.  Accordingly, any party wishing to

9 bid is encouraged to contact the Trustee's counsel at least one week before the hearing to ensure

10 qualification.

11         6.    **Back-up bidders**:  Any qualified overbidder who is not the successful

12 overbidder may opt to be a back-up bidder, subject to the Trustee's approval, in which case such

13 back-up bidder's initial deposit will be retained by the Trustee until the sale closes.

14         G.    **Estimated Net Sale Proceeds**: The opening sale price for the Property is

15 $275,000.00, subject to a 6% brokers' commission, liens, fees, and anticipated costs of sale, as

16 follows:

| Sale Price | $275,000 .00 |
|---|---|
| 3% Commission to Coldwell Banker (Trustee's Broker) | ($8,250.00) |
| Commission to Galaxy (3%) (Buyer's Broker) | ($8,250.00) |
| Trustee's Avoided J-Pad Lien | $301,011.14[1] |
| Insurance Advances | $1,691.80 + |
| **Estimated Net Sale Proceeds** **(before escrow fees)** | **$256,808.20** |

        Because the consensual lien now held by the Trustee exceeds the proposed sales price, the

Motion requests authority for the Trustee to not pay Debtor's allowed homestead because it is out

---

[1] As of January 9, 2025, at the contract interest rate of 5.5% (daily interest continues to accrue at $33.90) per day.

ES 253                      ES 253                      ES 253

1 | of the money and the Debtor cannot claim an exemption in the recovered liens that the Debtor

2 | voluntarily put on the Property pursuant to Section 522(g).

3 |       H.      The Trustee proposes to pay a real estate broker's commission of 6% of the sale

4 | price of the Property to the brokers as follows: 3% to Trustee's broker Coldwell Banker Residential

5 | Broker ("Coldwell Banker"), and 3% to Galaxy Homes, LLC ("Galaxy"), as the Buyer's broker in

6 | connection with the closing of this sale.  If there is a successful overbidder (i.e., not the Buyer),

7 | such successful overbidder's broker will receive the 3% allocated to the Buyer's broker.  If such

8 | successful overbidder does not have a broker, the entire 6% commission will be paid to Coldwell

9 | Banker, as Seller's broker.

10 |       I.      The Trustee obtained forced insurance for the Property and requests authority to pay

11 | Trustee Insurance Agency ("TIA") $1.691.80 plus any additional accrued premiums before the sale

12 | closes (collectively the "Insurance Advances").

13 |       J.      **Anticipated Taxes**: The Trustee is consulting with his accountant and will

14 | supplement this motion with the estimated capital gain consequences of the sale, if any.

15 |       This Motion is based upon this Notice, the separately filed Motion and its attached

16 | Memorandum of Points and Authorities, Declarations of Jeffrey I. Golden and Greg Bingham and

17 | Request for Judicial Notice; the papers and pleadings in the Debtor's bankruptcy case and related

18 | adversary proceedings; and such other evidence that may be presented at the hearing.

19 |       Contemporaneously herewith, the Trustee is filing a separate motion for turnover, and

20 | incorporates all evidence and argument in support thereof as well.

21 |       **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f),

22 | each interested party opposing, joining in or responding to the Motion must, not less than **14 days**

23 | before the date of the hearing, file with the Clerk of the Bankruptcy Court and serve upon the

24 | Trustee's general counsel, Eric P. Israel, Esq., 1901 Avenue of the Stars, Suite 450, Los Angeles,

25 | California 90067, and the United States Trustee, 411 W. 4th Street, Suite 7160, Santa Ana,

26 | California, either: (i) a complete written statement of all reasons in opposition thereto or in support

27 | or joinder thereof, declarations and copies of all photographs and documentary evidence on which

28 |

ES 254             ES 254             ES 254

1  the responding party intends to rely, and any responding memorandum of points and authorities; or

2  (ii) a written statement that the Motion will not be opposed.

3       Pursuant to Local Bankruptcy Rule 9013-1(h), failure to timely file and serve papers may

4  be deemed by the Court to be consent to the granting of the Motion.

5

6  DATED:  January 31, 2025          DANNING, GILL, ISRAEL & KRASNOFF, LLP

7

8                          By:  _____

9                               ERIC P. ISRAEL
                                 Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ES 255                        ES 255                        ES 255

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): **Trustee's Notice Hearing on Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 31, 2025  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL:**
On January 31, 2025 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  January 31, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Debtor
Jamie Lynn Gallian
jamiegallian@gmail.com

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 31, 2025 | Gloria Ramos | /s/ Gloria Ramos |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1785216.1  27064

**F 9013-3.1.PROOF.SERVICE**

<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):

**1.  <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>**

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
eisrael@danninggill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                  **F 9013-3.1.PROOF.SERVICE**
1785216.1  27064
**ES 257**                                    **ES 257**                                    **ES 257**

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Laila Masud on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

## 2. SERVED BY U.S. MAIL  LIST OF ALL CREDITORS (MML)

| | | |
|---|---|---|
| Jamie Lynn Gallian<br>16222 Monterey Ln Unit 376<br>Huntington Beach, CA 92649 | The Honorable Scott C. Clarkson<br>U.S. Bankruptcy Court<br>Ronald Reagan Federal Building<br>411 W. Fourth Street, Suite 5130<br>Santa Ana, CA 92701 | Office of the United States Trustee<br>Santa Ana Division<br>411 West Fourth Street, Suite 5130<br>Santa Ana, CA 92701-4500 |
| Christopher L. Blank, Attorney at Law,<br>PC<br>2973 Harbor Blvd<br>Box 506<br>COSTA MESA, CA 92626-3912 | Coldwell Banker Realty<br>840 Newport Center Dr Ste 100<br>Newport Beach, CA   92660-6377 | 16222 MONTEREY LANE UNIT 376<br>HUNTINGTON BEACH, CA 92649-<br>2258 |
| Employment Development Dept.<br>Bankruptcy Group MIC 92E<br>P.O. Box 826880<br>Sacramento, CA 94280-0001 | Franchise Tax Board<br>Bankruptcy Section MS: A-340<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | Houser Bros. Co. dba Rancho Del Rey<br>Mobile H<br>c/o Marshack Hays LLP<br>870 Roosevelt<br>Irvine, CA 92620-3663 |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Association of Flight Attendants
625 No. River Road Ste. 4020
Rosemont, IL. 60018

BS Investors
Robert P. Warmington C/o
Gorden May Grant, Genovese &
Baratta
2030 Hain St. Ste. 1600
Irvine, CA 92614

County of Orange
P.O. Box 4515
Santa Ana CA 92702-4515

Patricia Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

David R. Flyer
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Feldsott & Lee
23161 Mill Creek Drive Ste 30O
Laguna Hills, CA 92653-7907

Frank Satalino
19 Velarde Ct.
Rancho Santa Margarita, CA 92688-8502

Gordon Rees Scully & Mansukhani
5 Park Plaza Ste. 1100
Irvine, CA 92614-8502

Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Houser Bros. Co.
DBA Rancho De1 Rey Estates
16222 Monterey Ln
Huntington Beachr CA 92649-6214

Houser Bros. Co.dba Rancho De1
Rey Mobile Home Estates
17610 Beach Blvd Ste. 32
Huntington Beach, CA 92647-6876

Houser Brothers Co.
dba Rancho Del Rey Mobilehome
Est.
17610 Beach Blvd. Ste. 32
Huntington Beach, CA 92647-6876

Huntington Beach Gables H0A
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300 Laguna
HIlls, CA 92653-7907

Huntington Beach Gables
Homeowners Associati
Epstein, Grinnel & Howell, APC
10200 Willow Creek Rd Ste 100
San Diego CA 92131-1655

Huntington Harbor Village
16400 Saybrook
Huntington Beach, CA 92649-2277

Huntington Hobile Home Inv. LLC.
430 S. San Dimas Ave.
San Dimasa CA 91773-4045

Huntington Mobile Home Investments
16400 Saybrook Lane
Huntington Beach, CA 92649-2277

Huntington Mobile Home Investments
LLC
1100 Newport Beach Blvd. Ste 1150
Newport Beach, CA 92560

Hyundai Capital America
PO B0X 269011
Plano, TX 75026-9011

Hyundal Capital America
P0 B0X 269011
Plano, TX 75026-9011

Internal Revenue Service
PO Box 7346
Philadelphia, 19101-7346

Internal Revenue Service Insolvency
P0 B0X 7346
Philadelphia, PA 19101-7346

J-Sandcastle Co, LLC
16222 Monterey Ln Unit 376
Huntington Beach CA 92649-2258

J-pad, LLC
21742 Anza Avenue
Torrance, CA 90503-6428

J-pad, LLC
2702 N Gaff Street
Orange, CA 92865-2417

James H Cosello
Casello & Lincoln,
525 N Cabrillo Park Dr. Ste 1O4
Santa Ana, CA 92701-5017

People of the St of CA
8141 13th St
Westminster CA 92683-4576

Janine Jasso
16025 Warmington Lane
Huntington Beach, CA 92649-2278

JANINE JASSO
PO BOX 370161
EL PASO TX 79937-0161

Janine Jasso
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Janine Jasso, Jennifer Paulin, Lori
Burrett
c/o Goe Forsythe & Hodges LLP
17701 Cowan, Suite 210
Irvine, CA 92614-6840

Jennifer Ann Paulin
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9013-3.1.PROOF.SERVICE

Jennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286

Kia Motors Finance
PO Box 20815
Fountain Valley, CA 92728-0815

Lee Gragnano
16062 Warmington Ave.
Huntington Beacha CA 92649-2285

Lee Gragrano
16062 Warmington Ave.
Huntington Beach, CA 92649-2285

Lee S. Gragnano
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Linda Jean "Lindy" Bec
c/o Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lindy Beck
4443 Chase Dr.
Huntington Beach, CA 92649-2297

Lisa T. Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

Lori Ann Burrett
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lori Burrett
16107 Harmington Lane
Huntington Beach, CA 92649-2281

Lori Burrett
16107 Sherlock Lane
Huntington Beach, CA 92649-2293

Mark A.Mellor Mellor Law Firm
c/o Randall Nickell
6800 Indiana Ave.
Riverside, CA 92506-4267

Zanine Jasso
16025 Harmington Lane
Huntington Beach CA 92649-2278

Michael S. Devereux
Wex Law
9171 Wilshire Blvd. Ste. 50O
Beverly Hills, CA 90210-5530

Nationwide Reconveyance, LLC
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 3O0
Laguna Hills, CA 92653-7908

Orange County Alternate Defender
600 Santa Ana Blvd, Ste 600
Santa Ana CA 92701-4552

Orange County Public Defender
801 Civic Center Dr
West Santa Ana, CA 92702

Orange County Superior Court
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300
Laguna Hills, CA 92653-7907

Randall Nickel
11619 Inwood Drive,
Riverside, CA 92503-5000

Randall Nickell
4476 Alderport Dr.
Huntington Beach. CA 92649-2288

Randell Nickel
c/o Mark Mellor, Esq.
6800 Indiana Ave. Ste. 220
Riverside, CA 92506-4267

Randell Nickel
c/o Mark Mellor, Esq. Ste. 220 6800
Indiana Ave.
Riverside, CA 92506

Raquel Flyer-Dashner
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228

Robert P. Warmington Co.
c/o BS Investors
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Robert P. Warmington Co.
c/o BS Investors LP
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Rutan & Tucker
18575 Jamboree Rd 9th Fl
Irvine CA 92612-2559

S4 A California Limited Partnership
1001 Cove St Ste 230
Newport Beach CA 92660

Sandra L. Bradley
18 Meadowwood
Coto De Caza, CA 92679-4738

Sardra Bradley
18 Meadow Hood
Coto De Caza, CA 92679-4738

Stanley Feldsott: Esq
Feldsott & Lee
23161 Mill Creek Drive
Laguna Hills, CA 92653-7907

Steven A. Fink
13 Corporate Plaza Ste. I50
Newport Beach, CA 92660-7919

Superior Court of CA
County of Orange
711 Civic Center Dr West
Santa Ana CA 92701-3907

Superior Default Services Inc
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 3O0
Laguna Hills, CA 92653-7908

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1785216.1  27064

**F 9013-3.1.PROOF.SERVICE**

**ES 260**                     **ES 260**                     **ES 260**

Suzanne Tague
Ross Wolcott, Teinert, Prout
3151 Airway Ave. S-1
Costa Mesa, CA 92626-4627

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell APC
10200 Willow Creek Road, Ste 10O
San Diego, CA 92131-1669

Theodore Phillips
17612 Sandea Lee
Huntington Beach CA 92649

Greg Bingham, Broker
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

William Friedman, Broker
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

Buyer
Galaxy Homes
Attn: Richard Herr
12852 Bubbling Well Road
Santa Ana, CA  92705

Ted Phillips
17162 Sandra Lee
Huntington Beach, CA 92649

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell,
APC 10200 Willow Creek Road,
Ste 1OO
San Diego, CA 92131

Theodore R "Ted" Phill
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

United Airlines
233 S. Hacker Dr.
Chicago, IL 60606-6462

Vivienne J Alston
Alston, Alston & Diebold
27201 Puerta Real Ste 3OO
Mission Viejo, CA 92691-7359

Michael Chulak)
Mchulak@MTcLaw.com
undeliverable

Ted Phillips
17912 Sandra Lee
Huntington Beach, CA 92649

The Huntington Beach Gables
Homeowners Assoc
c/o Goe Forsythe & Hodges LLP
18101 Von Karman Ave, Suite 1200
Irvine, CA 92612-7119

US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

United Airlines
P.O. Box 0675
Carol Stream, 60132-0675

Gennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1785216.1   27064

**F 9013-3.1.PROOF.SERVICE**

ES 261                                    ES 261                                    ES 261

1   ERIC P. ISRAEL (State Bar No. 132426)
    *eisrael@DanningGill.com*
2   DANNING, GILL, ISRAEL & KRASNOFF, LLP
    1901 Avenue of the Stars, Suite 450
3   Los Angeles, California 90067-6006
    Telephone: (310) 277-0077
4   Facsimile: (310) 277-5735

5   Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

6

7

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                      **SANTA ANA DIVISION**

11

12  In re                                  Case No.  821-bk-11710-SC

13  JAMIE LYNN GALLIAN,                    Chapter 7

14          Debtor.                        **CHAPTER 7 TRUSTEE'S NOTICE OF
                                           HEARING ON MOTION FOR ORDER**
15                                         **COMPELLING DEBTOR AND ANY
                                           OTHER OCCUPANTS TO VACATE**
16                                         **AND TURN OVER MANUFACTURED
                                           HOME AND AUTHORIZING**
17                                         **ISSUANCE OF WRIT OF ASSISTANCE**

18                                         Date:       March 4, 2025
                                           Time:       11:00 a.m.
19                                         Ctrm:       5C
                                           Location:   411 W. 4TH STREET
20                                                     SANTA ANA, CA

21

22

23

24  **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

25  **JUDGE AND INTERESTED PARTIES:**

26          PLEASE TAKE NOTICE that on March 4, 2025, at 11:00 a.m., in Courtroom "5C" of the

27  United States Bankruptcy Court, for the Central District of California, located at 411 W. Fourth

28  Street, Santa Ana, California, Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the

bankruptcy estate (the "Estate") of Jamie Lynn Gallian (the "Debtor"), will and hereby does move

the Court (the "Motion") under 11 U.S.C. §§ 521 and 541, for an order directing the Debtor and any

other occupants to vacate and turnover to the Trustee the property described as a 2014 Skyline

Custom Villa manufactured home, decal no. LBM1081 (the "Property") currently located at 16222

Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space").

      This Motion is based upon this Notice, the separately filed Motion and its attached

Memorandum of Points and Authorities, Declaration of Jeffrey I. Golden and Request for Judicial

Notice; the papers and pleadings in the Debtor's bankruptcy case and related adversary proceedings;

and such other evidence that may be presented at the hearing.

      Contemporaneously herewith, the Trustee is filing a motion to sell the Property (the "Sale

Motion"). The Trustee incorporates by reference all of the evidence and arguments in support of the

Sale Motion.

      **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f),

each interested party opposing, joining in or responding to the Motion must, not less than **14 days**

before the date of the hearing, file with the Clerk of the Bankruptcy Court and serve upon the

Trustee's general counsel, Eric P. Israel, Esq., 1901 Avenue of the Stars, Suite 450, Los Angeles,

California 90067, and the United States Trustee, 411 W. 4th Street, Suite 7160, Santa Ana,

California, either: (i) a complete written statement of all reasons in opposition thereto or in support

or joinder thereof, declarations and copies of all photographs and documentary evidence on which

the responding party intends to rely, and any responding memorandum of points and authorities; or

(ii) a written statement that the Motion will not be opposed.

///

///

///

///

///

///

1          Pursuant to Local Bankruptcy Rule 9013-1(h), failure to timely file and serve papers may be

2    deemed by the Court to be consent to the granting of the Motion.

3

4    DATED: January 3/, 2025              DANNING, GILL, ISRAEL & KRASNOFF, LLP

5

6                                        By:

7                                           ERIC P. ISRAEL
                                            Attorneys for Jeffrey I. Golden, Chapter 7 Trustee
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): **Chapter 7 Trustee's Notice of Hearing on Motion for Order Compelling Debtor and any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 31, 2025  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On January 31, 2025 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) January 31, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Debtor
Jamie Lynn Gallian
jamiegallian@gmail.com

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 31, 2025 | Gloria Ramos | /s/ Gloria Ramos |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1785218.1  27064

**F 9013-3.1.PROOF.SERVICE**

ES 265                     ES 265                     ES 265

<u>ADDITIONAL SERVICE INFORMATION</u> (if needed):

1.  <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u>

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
eisrael@danninggill.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ES 266**                    **ES 266**                    **ES 266**

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Laila Masud on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov


## 2. SERVED BY U.S. MAIL  LIST OF ALL CREDITORS (MML)

| | | |
|---|---|---|
| Jamie Lynn Gallian<br>16222 Monterey Ln Unit 376<br>Huntington Beach, CA 92649 | The Honorable Scott C. Clarkson<br>U.S. Bankruptcy Court<br>Ronald Reagan Federal Building<br>411 W. Fourth Street, Suite 5130<br>Santa Ana, CA 92701 | Office of the United States Trustee<br>Santa Ana Division<br>411 West Fourth Street, Suite 5130<br>Santa Ana, CA 92701-4500 |
| Christopher L. Blank, Attorney at Law, PC<br>2973 Harbor Blvd<br>Box 506<br>COSTA MESA, CA 92626-3912 | Coldwell Banker Realty<br>840 Newport Center Dr Ste 100<br>Newport Beach, CA  92660-6377 | 16222 MONTEREY LANE UNIT 376<br>HUNTINGTON BEACH, CA 92649-2258 |
| Employment Development Dept.<br>Bankruptcy Group MIC 92E<br>P.O. Box 826880<br>Sacramento, CA 94280-0001 | Franchise Tax Board<br>Bankruptcy Section MS: A-340<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | Houser Bros. Co. dba Rancho Del Rey<br>Mobile H<br>c/o Marshack Hays LLP<br>870 Roosevelt<br>Irvine, CA 92620-3663 |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1785218.1  27064
ES 267                              ES 267                              ES 267

**F 9013-3.1.PROOF.SERVICE**

Association of Flight Attendants
625 No. River Road Ste. 4020
Rosemont, IL. 60018

BS Investors
Robert P. Warmington C/o
Gorden May Grant, Genovese &
Baratta
2030 Hain St. Ste. 1600
Irvine, CA 92614

County of Orange
P.O. Box 4515
Santa Ana CA 92702-4515

Patricia Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

David R. Flyer
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Feldsott & Lee
23161 Mill Creek Drive Ste 30O
Laguna Hills, CA 92653-7907

Frank Satalino
19 Velarde Ct.
Rancho Santa Margarita, CA 92688-8502

Gordon Rees Scully & Mansukhani
5 Park Plaza Ste. 1100
Irvine, CA 92614-8502

Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Houser Bros. Co.
DBA Rancho De1 Rey Estates
16222 Monterey Ln
Huntington Beachr CA 92649-6214

Houser Bros. Co.dba Rancho De1
Rey Mobile Home Estates
17610 Beach Blvd Ste. 32
Huntington Beach, CA 92647-6876

Houser Brothers Co.
dba Rancho Del Rey Mobilehome
Est.
17610 Beach Blvd. Ste. 32
Huntington Beach, CA 92647-6876

Huntington Beach Gables H0A
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300 Laguna
HIlls, CA 92653-7907

Huntington Beach Gables
Homeowners Associati
Epstein, Grinnel & Howell, APC
10200 Willow Creek Rd Ste 100
San Diego CA 92131-1655

Huntington Harbor Village
16400 Saybrook
Huntington Beach, CA 92649-2277

Huntington Hobile Home Inv. LLC.
430 S. San Dimas Ave.
San Dimasa CA 91773-4045

Huntington Mobile Home Investments
16400 Saybrook Lane
Huntington Beach, CA 92649-2277

Huntington Mobile Home Investments
LLC
1100 Newport Beach Blvd. Ste 1150
Newport Beach, CA 92560

Hyundai Capital America
PO B0X 269011
Plano, TX 75026-9011

Hyundal Capital America
P0 B0X 269011
Plano, TX 75026-9011

Internal Revenue Service
PO Box 7346
Philadelphia, 19101-7346

Internal Revenue Service Insolvency
P0 B0X 7346
Philadelphia, PA 19101-7346

J-Sandcastle Co, LLC
16222 Monterey Ln Unit 376
Huntington Beach CA 92649-2258

J-pad, LLC
21742 Anza Avenue
Torrance, CA 90503-6428

J-pad, LLC
2702 N Gaff Street
Orange, CA 92865-2417

James H Cosello
Casello & Lincoln,
525 N Cabrillo Park Dr. Ste 1O4
Santa Ana, CA 92701-5017

People of the St of CA
8141 13th St
Westminster CA 92683-4576

Janine Jasso
16025 Warmington Lane
Huntington Beach, CA 92649-2278

JANINE JASSO
PO BOX 370161
EL PASO TX 79937-0161

Janine Jasso
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Janine Jasso, Jennifer Paulin, Lori
Burrett
c/o Goe Forsythe & Hodges LLP
17701 Cowan, Suite 210
Irvine, CA 92614-6840

Jennifer Ann Paulin
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Jennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286

Kia Motors Finance
PO Box 20815
Fountain Valley, CA 92728-0815

Lee Gragnano
16062 Warmington Ave.
Huntington Beacha CA 92649-2285

Lee Gragrano
16062 Warmington Ave.
Huntington Beach, CA 92649-2285

Lee S. Gragnano
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Linda Jean "Lindy" Bec
c/o Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lindy Beck
4443 Chase Dr.
Huntington Beach, CA 92649-2297

Lisa T. Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

Lori Ann Burrett
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lori Burrett
16107 Harmington Lane
Huntington Beach, CA 92649-2281

Lori Burrett
16107 Sherlock Lane
Huntington Beach, CA 92649-2293

Mark A.Mellor Mellor Law Firm
c/o Randall Nickell
6800 Indiana Ave.
Riverside, CA 92506-4267

Zanine Jasso
16025 Harmington Lane
Huntington Beach CA 92649-2278

Michael S. Devereux
Wex Law
9171 Wilshire Blvd. Ste. 50O
Beverly Hills, CA 90210-5530

Nationwide Reconveyance, LLC
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 3O0
Laguna Hills, CA 92653-7908

Orange County Alternate Defender
600 Santa Ana Blvd, Ste 600
Santa Ana CA 92701-4552

Orange County Public Defender
801 Civic Center Dr
West Santa Ana, CA 92702

Orange County Superior Court
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300
Laguna Hills, CA 92653-7907

Randall Nickel
11619 Inwood Drive,
Riverside, CA 92503-5000

Randall Nickell
4476 Alderport Dr.
Huntington Beach. CA 92649-2288

Randell Nickel
c/o Mark Mellor, Esq.
6800 Indiana Ave. Ste. 220
Riverside, CA 92506-4267

Randell Nickel
c/o Mark Mellor, Esq. Ste. 220 6800
Indiana Ave.
Riverside, CA 92506

Raquel Flyer-Dashner
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228

Robert P. Warmington Co.
c/o BS Investors
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Robert P. Warmington Co.
c/o BS Investors LP
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Rutan & Tucker
18575 Jamboree Rd 9th Fl
Irvine CA 92612-2559

S4 A California Limited Partnership
1001 Cove St Ste 230
Newport Beach CA 92660

Sandra L. Bradley
18 Meadowwood
Coto De Caza, CA 92679-4738

Sardra Bradley
18 Meadow Hood
Coto De Caza, CA 92679-4738

Stanley Feldsott: Esq
Feldsott & Lee
23161 Mill Creek Drive
Laguna Hills, CA 92653-7907

Steven A. Fink
13 Corporate Plaza Ste. I50
Newport Beach, CA 92660-7919

Superior Court of CA
County of Orange
711 Civic Center Dr West
Santa Ana CA 92701-3907

Superior Default Services Inc
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 3O0
Laguna Hills, CA 92653-7908

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1785218.1  27064
**ES 269**

**ES 269**

**F 9013-3.1.PROOF.SERVICE**

**ES 269**

Suzanne Tague
Ross Wolcott, Teinert, Prout
3151 Airway Ave. S-1
Costa Mesa, CA 92626-4627

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell APC
10200 Willow Creek Road, Ste 1OO
San Diego, CA 92131-1669

Theodore Phillips
17612 Sandea Lee
Huntington Beach CA 92649

Greg Bingham, Broker
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

William Friedman, Broker
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377


Buyer
Galaxy Homes
Attn: Richard Herr
12852 Bubbling Well Road
Santa Ana, CA  92705

Ted Phillips
17162 Sandra Lee
Huntington Beach, CA 92649

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell,
APC 10200 Willow Creek Road,
Ste 1OO
San Diego, CA 92131

Theodore R "Ted" Phill
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

United Airlines
233 S. Hacker Dr.
Chicago, IL 60606-6462

Vivienne J Alston
Alston, Alston & Diebold
27201 Puerta Real Ste 3OO
Mission Viejo, CA 92691-7359


Michael Chulak)
Mchulak@MTcLaw.com
undeliverable

Ted Phillips
17912 Sandra Lee
Huntington Beach, CA 92649

The Huntington Beach Gables
Homeowners Assoc
c/o Goe Forsythe & Hodges LLP
18101 Von Karman Ave, Suite 1200
Irvine, CA 92612-7119

US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

United Airlines
P.O. Box 0675
Carol Stream, 60132-0675

Gennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1785218.1  27064
**ES 270**

**ES 270**

**F 9013-3.1.PROOF.SERVICE**

**ES 270**

D. EDWARD HAYS, #162507
ehays@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Creditor,
HOUSER BROS. CO. dba RANCHO DEL
REY MOBILE HOME ESTATES

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:21-bk-11710-SC |
| JAMIE LYNN GALLIAN, | Chapter 7 |
| Debtor. | JOINDER IN SUPPORT OF TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION |
| | Date:   March 4, 2025<br>Time:  11:00 a.m.<br>Ctrm:  5C |

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

THE DEBTOR, AND ALL INTERESTED PARTIES:

Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") hereby joins

the motion of Chapter 7 Trustee, Jeffrey I. Golden ("Trustee"), under 11 U.S.C. § 363, and Local

Bankruptcy Rules 6004-1(c) and 9013-1, for an order authorizing the sale of the 2014 Skyline

Custom Villa manufactured home, decal no. LBM1081 ("Property") currently located at 16222

1

Monterey Lane, Space #376, Huntington Beach, CA 92649 ("Space"), filed on January 31, 2025, as

Dk. No. 539 ("Motion"), and fully incorporates the Trustee's arguments as fully set forth therein.

Houser Bros. does, however, seek to make one clarification to the Motion. The Motion

provides: "The Property to be sold does not include the ground lease for the Space (the 'Ground

Lease'), which was deemed rejected long ago. However, the Association (Houser Bros.) has agreed

to give any qualified buyer – but not the Debtor, a new ground lease." Motion at 6. That correctly

states Houser Bros.'s position with one clarification - any proposed buyer must contact Houser Bros.

and apply for and be approved for a lease. Houser Bros. agrees to cooperate, in good faith, with the

Trustee regarding the qualification process for any proposed buyer and intends to qualify potential

prospect(s) in accordance with its ordinary practices.

DATED: February 13, 2025          MARSHACK HAYS WOOD LLP

                                                    */s/ D. Edward Hays*

                                         By: _____
                                               D. EDWARD HAYS
                                               BRADFORD N. BARNHARDT
                                               Attorneys for Creditor,
                                               HOUSER BROS. CO. dba RANCHO DEL
                                               REY MOBILE HOME ESTATES

ES 272                    HOUSER BROS.'S JOINDER IN TRUSTEE SALE MOTION          ES 272

4880-1284-8131,v.1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **JOINDER IN SUPPORT OF TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 13, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **February 13, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR**
JAMIE LYNN GALLIAN
16222 MONTEREY LN UNIT 376
HUNTINGTON BEACH, CA 92649

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 13, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
411 WEST FOURTH STREET, SUITE 5130 /
COURTROOM 5C
SANTA ANA, CA 92701-4593

**VIA EMAIL:**
**DEBTOR**
JAMIE LYNN GALLIAN
jamiegallian@gmail.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 13, 2025 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

ES 273                    ES 273                    ES 273

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Bradford Barnhardt bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **CHAPTER 7 TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR) lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **INTERSTED PARTY COURTESY NEF: Shantal Malmed** shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
   - **INTERESTED PARTY COURTESY NEF: Shantal Malmed** , cheryl.caldwell@gmlaw.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

4903-7392-5900, v. 1

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

ES 274                              ES 274

**F 9013-3.1.PROOF.SERVICE**
ES 274

D. EDWARD HAYS, #162507
ehays@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Creditor,
HOUSER BROS. CO. dba RANCHO DEL
REY MOBILE HOME ESTATES

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| In re | Case No. 8:21-bk-11710-SC |
|---|---|
| JAMIE LYNN GALLIAN, | Chapter 7 |
| Debtor. | JOINDER IN SUPPORT OF CHAPTER 7 TRUSTEE'S NOTICE OF MOTION AND MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE |
| | Date:    March 4, 2025<br>Time:    11:00 a.m.<br>Ctrm:  5C |

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

THE DEBTOR, AND ALL INTERESTED PARTIES:

Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") hereby joins

the Chapter 7 Trustee, Jeffrey I. Golden's Motion for Order Compelling Debtor and Any Other

Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of

Assistance, filed on January 31, 2025, as Dk. No. 538 ("Motion"), and fully incorporates the

Trustee's arguments as fully set forth therein.

On October 29, 2024, the Court entered its Order re: Motion to Avoid Lien under 11 U.S.C.

§ 522(f) as Dk. No. 488. A true and correct copy of the Order is attached as Exhibit "1." In the

1

4880-1284-8131,v.1

lean so long.

Order, the Court notes that the Trustee is authorized to sell the Debtor's mobilehome to realize the

benefit of the avoided, recovered, and preserved liens she voluntarily placed against the property:

> Preliminarily, the Court notes that Debtor's actions suggest a lack of
> understanding regarding the impact of her actions prior to and throughout this
> case. Debtor engaged in a series of transfers regarding her homesteaded property
> prior to her bankruptcy filing, all of which, as detailed below, Trustee avoided,
> recovered, and preserved for the benefit of the Estate. Despite the foregoing,
> Debtor argues that the existence of her homestead prevents Trustee from selling
> her property. Debtor has repeatedly raised her homestead in various pleadings and
> in her arguments at various hearings, clearly not understanding that its existence
> is separate from whether the property can be sold, as was previously explained to
> Debtor. Debtor's homestead is not disputed or contested and cannot be, as it has
> been affirmed on appeal. As explained below, Debtor's homestead, however, does
> not prevent Trustee from administering the lien preserved for the benefit of the
> Estate.

Order, p. 1, l. 27 to p. 2, l. 10.

For the reasons already set forth in its Order, the Trustee can and should sell the Property to

realize the benefit of the avoided, recovered, and preserved liens. Under Section 542, any party in

possession of property that a trustee may use, sell, or lease must turn over such property to the

Trustee. To consummate any sale, the Trustee will need to deliver possession to the successful

/ / /
/ / /
/ / /
/ / /
/ / /

HOUSER BROS.'S JOINDER IN TRUSTEE TURNOVER MOTION

4880-1284-8131,v.1

1   buyer. Houser Bros. thus respectfully requests that the Court grant the Trustee's motion and order

2   the Debtor to vacate and turn over possession.

3

4

5   DATED: February 13, 2025          MARSHACK HAYS WOOD LLP

6                                                  */s/ D. Edward Hays*
                                     By: _____
7                                          D. EDWARD HAYS
                                           BRADFORD N. BARNHARDT
8                                          Attorneys for Creditor,
                                           HOUSER BROS. CO. dba RANCHO DEL
9                                          REY MOBILE HOME ESTATES

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ES 277   HOUSER BROS.'S JOINDER IN TRUSTEE TURNOVER MOTION   ES 277

4880-1284-8131,v.1

**EXHIBIT 1**

Case 8:21-bk-11710-SC    Doc 488    Filed 10/29/24    Entered 10/29/24 10:17:55    Desc
Main Document    Page 1 of 6



FILED & ENTERED

OCT 29 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>Jamie Lynn Gallian,<br><br><br><br><br><br><br>Debtor(s). | Case No.: 8:21-bk-11710-SC<br><br>CHAPTER 7<br><br>**ORDER RE: MOTION TO AVOID LIEN UNDER 11 U.S.C. § 522(f) [DK. 422] AND VACATING HEARING**<br><br><u>Vacated Hearing:</u><br>Date:        November 5, 2024<br>Time:        11:00 AM<br>Courtroom: 5C |

Having reviewed the Motion to Avoid Lien Under U.S.C. § 522(f) filed August 29, 2024 [Dk. 422] ("Motion"), the docket as a whole, and finding that this matter is appropriate for disposition without a hearing, for the reasons stated below, the Court finds good cause to enter this order denying the Motion and vacating the November 5, 2024, hearing.

**I.        Prefatory Statement**

Preliminarily, the Court notes that Debtor's actions suggest a lack of understanding regarding the impact of her actions prior to and throughout this case.

-1-

1  Debtor engaged in a series of transfers regarding her homesteaded property prior to her

2  bankruptcy filing, all of which, as detailed below, Trustee avoided, recovered, and

3  preserved for the benefit of the Estate. Despite the foregoing, Debtor argues that the

4  existence of her homestead prevents Trustee from selling her property. Debtor has

5  repeatedly raised her homestead in various pleadings and in her arguments at various

6  hearings, clearly not understanding that its existence is separate from whether the

7  property can be sold, as was previously explained to Debtor. Debtor's homestead is not

8  disputed or contested and cannot be, as it has been affirmed on appeal. As explained

9  below, Debtor's homestead, however, does not prevent Trustee from administering the

10  lien preserved for the benefit of the Estate.

11       The Court strongly encourages Debtor to take advantage of the Court's pro bono

12  clinics or to seek advice from another pro bono or low-cost legal provider for guidance.

13       **II.    Procedural Background Relevant to the Motion**

14       On August 27, 2024, Jamie Lynn Gallian ("Debtor") filed a Motion to Avoid Lien

15  Under 11 U.S.C. § 522(f) [Dk. 422] ("Motion") along with a Notice of Opportunity to

16  Request a Hearing on Motion [Dk. 423]. The Motion seeks to avoid the lien of "J-Pad,

17  LLC; Jeffrey Golden, Ch7 Trustee" and relates to Debtor's property located at 1622

18  Monterey Lane, Space 376, Huntington Beach, CA 92649 (the "Property") [Dk, 422,

19  ¶¶7, 10].

20       On September 10, 2024, Jeffrey I. Golden, the Chapter 7 trustee ("Trustee") filed

21  an Objection to and Request for Hearing on Motion [Dk. 437] ("Objection").[1] The

22  Objection expressly requested a hearing on the Motion pursuant to LBR 9013-

23  1(o)(1)(A)(ii). As Trustee filed a request for a hearing, Debtor was required to schedule

24  and give notice of a hearing on the Motion on or before September 24, 2024, per LBR

25  9013-1(o)(4). However, Debtor failed to do so and on October 14, 2024, Trustee filed

26  the Declaration of Eric P. Israel in support of an order denying the Motion [Dk. 465]. The

27

28  _____
[1] On September 10, 2024, Debtor filed a Declaration That No Party Requested a Hearing on Motion [Dk.
436]; however, the declaration was premature as the deadline to file an objection and request for hearing
was September 13, 2024, per Local Bankruptcy Rule 9013-1(o).

-2-

1    Court, on October 22, 2024, entered an Order Denying Debtor's Motion for failure to

2    timely schedule or give notice of any hearing [Dk. 474] ("Order Denying Debtor's

3    Motion").[2] The approval of this order, however, apparently crossed paths with Debtor's

4    untimely filing of a notice setting the matter for hearing. The Court thereafter placed the

5    matter on calendar.

6        The Court, considering the foregoing and the docket as a whole, finds good

7    cause to supplement its prior order and deny the Motion, as set forth herein.

8        **III.    Legal Standards**

9        The Motion seeks to avoid a lien under 11 U.S.C. § 522(f). To avoid a lien under

10    § 522(f), a debtor must show: (1) that they have an interest in the homestead property;

11    (2) they are entitled to a homestead exemption; (3) the asserted lien impairs that

12    exemption; and (4) the lien is a judicial lien. *See In re Morgan*, 149 B.R. 147, 151 (9th

13    Cir. BAP 1993); *In re Coy*, 552 B.R. 199, 202 (Bankr. C.D. Cal. 2016). The burden is on

14    Debtor, as movant. *Id.*

15        As noted, § 522(f)(1) allows a debtor to avoid "the fixing of a lien on an interest of

16    the debtor in property . . . if such lien is . . .  a Judicial lien . . . or a nonpossessory,

17    nonpurchase-money security interest in any . . . " Section 101(36) of the Bankruptcy

18    Code defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other

19    legal or equitable process or proceeding." Section 522(f), however, cannot be used to

20    avoid consensual liens. *Polk v. Cty. of Contra Costa*, 2014 U.S. Dist. LEXIS 111713, at

21    *21 (E.D. Cal. Aug. 11, 2014); *Huff v. Huff (In re Huff)*, 2019 Bankr. LEXIS 233, at *5

22    (Bankr. E.D. Wash. 2019).

23    ///

24

25

26    _____

27    [2] Debtor's notice was filed on October 21, 2024, at approximately 6:54 p.m. [Dk. 469]. The Court entered
its order denying the Motion on October 22, 2024. The denial of Debtor's Motion for the failure to comply
with the local rules, over which the Court has broad discretion and authority to enforce, remains

28    applicable. *Roskoski v. Brooks*, 1992 U.S. App. LEXIS 13544, at *2 (9th Cir. June 4, 1992); *Curtis v. BCI
Coca-Cola Enters. Bottling Cos.*, 2014 U.S. Dist. LEXIS 124447, at *9 (E.D. Cal. Sep. 5, 2014).
Notwithstanding the procedural defect, as set forth herein, the Motion still fails substantively.

1    **IV.    Discussion**

2    Debtor's Motion asserts that pursuant to § 522(f) she seeks to avoid the lien held

3    by "J-PAD, LLC; JEFFREY GOLDEN, Ch7 Trustee" ("J-PAD Lien") [Dk. 422, pg. 2,

4    ¶10]. The asserted lien is one that was obtained by Trustee after obtaining judgments

5    avoiding, recovering, and preserving liens in his favor in *Golden v. J-Sandcastle Co.,*

6    *LLC, et al.*, Adv. No. 8:23-ap-01064-SC.

7    Debtor has shown, as required, that she does have an interest in the homestead

8    property and is entitled to a homestead exemption. *In re Morgan*, 149 B.R. 147, 151

9    (9th Cir. BAP 1993); *See* Dk. 393 (Order by the Honorable Erithe Smith finding that

10   Debtor held a sufficient equitable interest in the Property to claim automatic homestead

11   exemption under Cal. Civ. Proc. Code § 704.720(a)). Trustee does not dispute Debtor's

12   entitlement to her homestead.

13   However, Debtor's exemption in the Property only comes from equity following

14   *consensual* liens, which here includes the J-Pad Lien. *See* Cal. Code Civ. P. § 703.010,

15   et seq. Exemptions may be claimed only against involuntary liens, such as judgments,

16   attachments, and execution liens, and then only if the procedures of section 522(f) are

17   followed. *Id.* Thus, the consensual liens on the Property come ahead of any allowed

18   amount of Debtor's homestead exemption. *See In re Roach*, 2019 Bankr. LEXIS 263

19   (B.A.P. 9th Cir. 2019); *see* also *In re Bunn Rodemann*, 491 B.R. 132, 134-35 (Bankr.

20   E.D. Cal. 2013). Here, while Debtor may perceive the lien in favor of Trustee as

21   involuntary and/or judicial, the underlying lien (which has been avoided, recovered and

22   preserved for the benefit of the Estate and is now being asserted by Trustee) is

23   consensual and may not be avoided.

24   On June 30, 2023, Trustee commenced an adversary proceeding (8:23-ap-

25   01064-SC), by filing a Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to

26   Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of

27   Contract; (5) for Money Had and Received; and (6) Unjust Enrichment against Ronald J.

28

-4-

1  Pierpont, J-Pad LLC, J-Sandcastle Co., LLC, Steven D. Gallian, Brian J. Gallian, Justin

2  Barclay, Robert J. McLelland, and E. J. Gallian ("Avoidance Action").

3        Through the Avoidance Action, Trustee, *inter alia*, obtained a default judgment

4  against defendant J-Pad, LLC ("J-Pad") which avoided J-Pad's lien on the Property in

5  the amount of $225,000 as well as other liens on the Property in favor of J-Pad. [*See*

6  Adv Dk. 79]. The judgment also preserved those liens for the benefit of Debtor's

7  bankruptcy Estate pursuant to 11 U.S.C. § 551[3].  "Upon avoidance of a lien or

8  fraudulent transfer, under § 551 the trustee 'steps into the shoes' of the former

9  lienholder or transferor and enjoys the same rights in the property that the original

10  lienholder or transferor enjoyed. *Giovanazzi v. Schuette (In re Lebbos)*, 2012 Bankr.

11  LEXIS 5962, at *42 (B.A.P. 9th Cir. Dec. 31, 2012) (citing *Morris v. St. John Nat'l Bank*

12  *(In re Haberman)*, 516 F.3d 1207, 1210 (10th Cir. 2008)).

13        As Trustee steps into the shoes of the former lienholder, Trustee enjoys the

14  same rights in the property that the original lienholder held. *Id.* As the J-PAD Lien

15  avoided by Trustee was a consensual lien, it cannot now be avoided under § 522(f) by

16  Debtor. *Polk v. Cty. of Contra Costa*, at *21.

17        Additionally, Debtor cannot show that the lien she seeks to avoid impairs her

18  homestead. California law provides that consensual liens must be paid ahead of

19  homestead exemptions. *Babaee v. Marshack (In re Babaee)*, 2023 U.S. App. LEXIS

20  24253, at *3 (9th Cir. 2023); *See* Cal. Civ. Proc. Code § 704.850; *see also Amin v.*

21  *Khazindar*, 112 Cal. App. 4th 582, 588 (Cal. 2003) (finding that homestead exemption

22  has no effect on liens created voluntarily by property owners, nor does it have any effect

23  on the claims of creditors secured by liens with priority). As noted *supra*, the lien Debtor

24  seeks to avoid is consensual and therefore possesses priority over her asserted

25  homestead exemption and cannot be said to impair her homestead exemption.

26  ///

27

28

---

[3] No appeal was taken, and the judgment is final.

                   EXHIBIT 1, PAGE 90

1    **V.    Conclusion**

2    Accordingly, Debtor's Motion is DENIED for failure to timely schedule and give

3    notice of a hearing and for the foregoing reasons. Further, the hearing set for November

4    5, 2024, at 11:00 a.m. is hereby VACATED.

5    **IT IS SO ORDERED.**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Date: October 29, 2024

Scott C. Clarkson
United States Bankruptcy Judge

26

27

28

-6-

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **JOINDER IN SUPPORT OF CHAPTER 7 TRUSTEE'S NOTICE OF MOTION AND MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 13, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**: On **February 13, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR**
JAMIE LYNN GALLIAN
16222 MONTEREY LN UNIT 376
HUNTINGTON BEACH, CA 92649

☐ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 13, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
411 WEST FOURTH STREET, SUITE 5130 /
COURTROOM 5C
SANTA ANA, CA 92701-4593

**VIA EMAIL:**
**DEBTOR**
JAMIE LYNN GALLIAN
jamiegallian@gmail.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 13, 2025 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**ES 285**                    **ES 285**                    **ES 285**

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Bradford Barnhardt bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **CHAPTER 7 TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR) lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **INTERSTED PARTY COURTESY NEF: Shantal Malmed** shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
   - **INTERESTED PARTY COURTESY NEF: Shantal Malmed** , cheryl.caldwell@gmlaw.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

4903-7392-5900, v. 1

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**ES 286**    **ES 286**    **ES 286**

**F 9013-3.1.PROOF.SERVICE**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Christopher L. Blank, SBN 115450<br>Christopher L. Blank, Attorney at Law, PC<br>2973 Harbor Blvd. #506<br>Costa Mesa, CA 92626<br>Ph.: 949-250-4600<br>Email: chris@chrisblanklaw.com | |
| *Attorney for:* JAMIE LYNN GALLIAN | |

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re:<br>JAMIE LYNN GALLIAN | CASE NO.: 8:21-bk-11710-SC |
|---|---|
| | ADVERSARY NO.: N/A<br>(*if applicable*) |
| | CHAPTER: 7 |
| Debtor(s). | |
| N/A | |
| Plaintiff(s),<br>vs.<br>N/A | **SUBSTITUTION OF ATTORNEY**<br>**[LBR 2091-1(b)]** |
| Defendant(s). | |

1.  The name(s) of the party(ies) making this Substitution of Attorney *(specify)*:
    JAMIE LYNN GALLIAN

2.  The name, address, telephone number, and email address of the new attorney are *(specify)*:

    Christopher L. Blank, SBN 115450; Christopher L. Blank, Attorney at Law, PC; 2973 Harbor Blvd. #506; Costa Mesa, CA 92626; Telephone: 949-250-4600; Email: chris@chrisblanklaw.com

3.  New attorney hereby appears in the following matters:   ☒ the bankruptcy case  ☐ the adversary proceeding

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. The new attorney is substituted as attorney of record in place instead of the present attorney. *(Specify name of present attorney)*:

JAMIE LYNN GALLIAN, Debtor, in Propria Persona

Date: 02/18/2025

_____
Signature of party

JAMIE LYNN GALLIAN
Printed name of party

_____
Signature of *third* party (if applicable)

_____
Printed name of *third* party (if applicable)

_____
Signature of *second* party (if applicable)

_____
Printed name of *second* party (if applicable)

_____
Signature of *fourth* party (if applicable)

_____
Printed name of *fourth* party (if applicable)

I consent to the above substitution.

Date: 02/18/2025

_____
Signature of present attorney

JAMIE LYNN GALLIAN, Debtor, in Propria Persona
Printed name of present attorney

I am duly admitted to practice in this district. The above substitution is accepted.

Date: 02/18/2025

/S/Christopher L. Blank
_____
Signature of new attorney

Christopher L. Blank
_____
Printed name of new attorney

**IMPORTANT NOTICE**

Filing of this Substitution of Attorney form does not replace the need to be employed pursuant to the Bankruptcy Code. See LBR 2014-1 regarding the requirements and procedures for making an application to employ an attorney.

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled: **SUBSTITUTION OF ATTORNEY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 02/18/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
See Attached

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/18/2025 | Christopher L. Blank | /S/Christopher L. Blank |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**SERVICE LIST**

8:21-bk-11710-SC Notice will be electronically mailed to:
Bradford  Barnhardt on behalf of Interested Party   Courtesy NEF
bbarnhardt@marshackhays.com,  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford  Barnhardt on behalf of Plaintiff   Houser Bros. Co.
bbarnhardt@marshackhays.com,  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney   Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff   Jeffrey I. Golden
adeleest@marshackhays.com,  adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com,  adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor   The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Interested Party   The Huntington Beach Gables Homeowners
Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Plaintiff   The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor   Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party   Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff   Houser Bros. Co.

ES 290                              ES 290                              ES 290

ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor   The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com,  kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff   The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com,  kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com,  danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com,  danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal  Malmed on behalf of Interested Party   Courtesy NEF
,  cheryl.caldwell@gmlaw.com

Shantal  Malmed on behalf of Plaintiff   Jeffrey I. Golden
shantal.malmed@gmlaw.com,  cheryl.caldwell@gmlaw.com

Shantal  Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com,  cheryl.caldwell@gmlaw.com

Laila  Masud on behalf of Creditor   Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila  Masud on behalf of Interested Party   Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila  Masud on behalf of Plaintiff   Houser Bros. Co.
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com,  mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party   Courtesy NEF
mail@mellorlawfirm.com,  mellormr79158@notify.bestcase.com

Valerie  Smith on behalf of Interested Party   Courtesy NEF
claims@recoverycorp.com

 United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

ES 291          ES 291          ES 291

8:21-bk-11710-SC Notice will not be electronically mailed to:
Greg  Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

 Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William  Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Jamie Lynn Gallian
16222 Monterey Ln Unit 376
Huntington Beach, CA 92649

Janine  Jasso
PO Box 370161
El Paso, CA 79937

Michael D Poole on behalf of Creditor   The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff   The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

1  CHRISTOPHER L. BLANK (SBN 115450)
   CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2  2973 Harbor Blvd. #506
   Costa Mesa, CA 92626
3  Telephone:    (949) 250-4600
   Email:    chris@chrisblanklaw.com
4
   Attorney for Debtor Jamie Lynn Gallian
5

6

7

8            **UNITED STATES BANKRUPTCY COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10 In Re                                )**BK Case No. 8:21-bk-11710-SC**
                                         )
11                                       )**Chapter 7**
                                         )
12 JAMIE LYNN GALLIAN                    )**DEBTOR'S OMNIBUS OPPOSITION TO**
                                         )**TRUSTEE'S MOTIONS TO SELL [Docket**
13                                       )**539] AND FOR TURNOVER OF**
                      Debtor.            )**PROPERTY [Docket 538] AND HOUSER**
14                                       )**JOINDERS [Docket 551 & 552];**
                                         )**DECLARATION OF JAMIE GALLIAN**
15                                       )
                                         )Date: March 4, 2025
16                                       )Time: 11:00 AM
                                         )Place: Courtroom 5C
17                                       )    411 West 4th Street
                                         )    Santa Ana, California
18 _____)

19
        Debtor, Jamie Lynn Gallian hereby submits her Omnibus Opposition to Trustee's Motions
20
   to Sell [Docket 538] and Motion for Turnover of Property [Docket 539] and Joinders submitted
21
   by Houser Bros. Co. [Docket 551 & 552]. This Opposition is based on the following Memorandum
22
   of Points and Authorities and Supporting Declaration(s) and Request for Judicial Notice, and such
23
   other evidence and argument as may properly come before the Court.
24
   Dated: February 18, 2025          CHRISTOPHER L. BLANK, ATTORNEY AT
25                                    LAW, PC

26                                    By:  /S/Christopher L. Blank
27                                         Christopher L. Blank, Attorney for Debtor
                                           Jamie Lynn Gallian
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Debtor Jamie Gallian lives in a manufactured home located at 16222 Monterey Lane, Space 376, Huntington Beach, California Decal No. LBM1081 (the "Property"). Gallian has an unassailable automatic exemption in her equitable interest in the Property ("Gallian's Exempt Interest") established by a Final Non-Appealable Order of this Court entered May 17, 2024 [Docket 394]. This Order is law of the case. Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), cert. denied 508 U.S. 951 (1993). Despite Gallian's Exempt Interest in the Property, Trustee Jeff Golden proposes to kick her out of her home and sell the Property on March 4, 2025, the date set for hearing on Golden's Motion to Sell [Docket 539] and Motion for Turnover [Docket 538]. Golden proposes to sell the Property free and clear of all liens and interests, including Gallian's Exempt Interest. Golden has accepted an opening bid of $275,000.00 from Richard Herr of Galaxy Homes, subject to overbid.

Golden acknowledges that there is no non-exempt equity in the Property. Golden acknowledges that the proposed sale will not generate sufficient proceeds to pay anything for Gallian's Exempt Interest in the Property. Nonetheless, Golden asserts that this Court should approve the sale because he holds a lien against the Property that will be paid from the proceeds of the proposed sale. Golden asserts that he avoided and preserved a valuable lien from J-Pad LLC (the "J-Pad Lien") for the benefit of the bankruptcy estate that sits in first position on the Property. Golden is incorrect about that. Golden asserts that the amount owed on the J-Pad lien exceeds $300,000.00. Golden is incorrect about that too. Furthermore, Golden is not proposing to foreclose on the J-Pad Lien, or sell the J-Pad Lien as an asset of the estate. Rather, he is proposing to sell the Property itself.

Indisputable evidence shows that J-Pad never lent any money to anyone to support the imposition of a lien on the Property. J-Pad is owed nothing and never had a valid lien on the Property. The J-Pad Lien that was avoided and preserved for the bankruptcy estate has no value

and is entitled to no payment from the proceeds of any sale of the Property.

Golden's Motion to Sell must be denied because the law does not authorize him to sell Gallian's homestead in derogation of her right to continued residence unless Gallian consents to the sale, or the sale will generate sufficient proceeds to pay Gallian the entire amount of Gallian's Exempt Interest in the Property. Gallian does NOT consent to the proposed sale. Even after discounting the value of the J-Pad Lien to zero, the proposed sale will not generate anything close to the $600,000.00 that would need to be paid in satisfaction of Gallian's Exempt Interest in the Property.

Because Golden has no right to sell Gallian's homestead, he has no right to kick her out of her home. Rather, in exercising his fiduciary duties to Gallian and the bankruptcy estate, he must abandon the Property to Gallian because it is of no value to the bankruptcy estate.

## II.    ARGUMENT

### a.    Burden of Proof.

As the moving party, the Trustee bears the burden of proving each and every element necessary to justify the relief he is seeking.

[14:715] **Noticed motion required:** Court authority to sell property free and clear of liens or other interests out of the ordinary course of business must be obtained by noticed motion. [11 USC § 363(b)(1); FRBP 6004(c), 9014; *see Ch. 19* re general motion practice].

Rutter, Cal. Prac. Guide Bankruptcy Ch. 14(I)-D, Selling Estate Property Outside Ordinary Course of Business.

[14:746] The DIP or trustee has the burden of proof on most issues, including the issue of adequate protection (*see ¶ 14:696 ff.*) in connection with a sale free and clear of liens. [See 11 USC § 363(p)(1)]

(b) [14:747] **Creditor's burden re validity of security interest:** The creditor has the burden of proving the "validity, priority or extent" of its interest in the property being sold. [See 11 USC § 363(p)(2); *In re Meill* (8th Cir. BAP 2010) 441 BR 610, 613-615.

1  *Id.*

2     To satisfy his burden in this case, Golden must show a valid business purpose

3  justifying the sale.  That is, Golden must prove that the sale will generate a substantial benefit to

4  the bankruptcy estate.  Additionally, because Golden is proposing to sell the Property free and

5  clear of Gallian's Exempt Interest in the Property, he must also prove that he is entitled to do so

6  under 11 U.S.C. Section 363(f).

7     b. **California Law Prohibits Golden's Sale of Jamie Gallian's Home for Less**

8       **than the Amount of her $600,000 Homestead Exemption.**

9     For bankruptcy purposes, California has opted out of federal exemptions, electing

10  to utilize exemptions enacted under state law. 11 U.S.C. § 522(b); Cal. Civ. Proc. Code§

11  703.130. Therefore, exemption questions in California bankruptcies require the application of

12  California law. *In re Tallerico*, 532 B.R. 774, 780 (Bankr. E.D. Cal. 2015). The California

13  legislature enacted homestead exemption laws "to protect the sanctity of the family home against

14  a loss caused by a forced sale by creditors ... [ and] ensure that insolvent debtors and their

15  families are not rendered homeless by virtue of an involuntary sale of the residential property

16  they occupy .... " *Amin v. Khazindar*, 112 Cal. App.4th 582, 588 (Cal. Ct. App. 2003). As such,

17  there is a strong public policy toward adopting "a liberal construction of the la and facts to

18  promote the beneficial purposes of the homestead legislation to benefit the debtor." *Id.*

19     In California, a debtor may obtain the benefits of a homestead exemption either

20  by recording a declaration of homestead (Cal. Civ. Proc. Code § 704.910 - § 704.995), or

21  through an automatic homestead exemption (Cal. Civ. Proc. Code§ 704.710 - §704.850). The

22  automatic homestead exemption protects a debtor from forced judicial sales of a debtor's

23  dwelling. *In re Diaz*, 547 B.R. 329,334 (B.A.P. 9th Cir. 2016). "The filing of a bankruptcy

24  petition constitutes a forced sale for purposes of the automatic homestead exemption." *Id.*

25     The declared homestead exemption statutes were created first. However, "the

26  Legislature was quite obviously concerned with the large number of homeowners who were not

27  receiving the benefits of the homestead because of their ignorance of the law or their failure to

28  satisfy the technical requirements for declaring a homestead." *In re Gilman*, 608 B.R. 714, 722

(Bankr. C.D. Cal. 2019) (citing *San Diego White Truck Co. v. Swift*, 96 Cal. App.3d 88, 92 (Cal. Ct. App. 1979)). To solve this problem, the legislature created the automatic homestead exemption. *Id*. California homestead statutes must be liberally construed. Cal. Civ. Proc. Code§ 704.710 et seq. Liberal construction of California's homestead statutes serves to effectuate the statutory goal of helping to prevent Californians from losing their homes through hyper-technical interpretation. Cal. Civ. Proc. Code§ 704.710 et seq.

Additionally, the California legislature sought to broaden the interests protected by the automatic homestead exemption as compared to the interests covered by its predecessor, the declared homestead. An examination of the differences between the two statutory exemptions further illustrates this intent. The declared homestead is expressly limited to an **"interest in real property (whether present or future, vested or contingent, legal or equitable)** that is a 'dwelling' as defined in Section 704.710, but does not include a leasehold estate with an unexpired term of less than two years or the interest of the beneficiary of a trust." Cal. Civ. Proc. Code §704.910(c) (West) (emphasis added). Unlike the former provisions, Section 704.720 does not specify the interest that is protected and does not limit the homestead in a leasehold to a long-term lease; [any interest] sought to be reached by the judgment creditor in the homestead is subject to the exemption. Legislative Committee Comment to Amended Cal. Civ. Proc. Code§ 704.720 (West) (emphasis added).

Substantive issues regarding the allowance or disallowance of the claimed exemption at issue are governed by California Law. *In re Diener,* 483 B.R. 196, 203 (9th Cir. B.A.P. 2012). Furthermore, "[u]nder the California Code of Civil Procedure, a debtor in bankruptcy's interest in her dwelling may not be sold to enforce a money judgment." *Id.* (citing Cal. Civ. Proc. Code§§ 704.720, 704.740(a)).

In 2020, effective January 1, 2021, California enacted further restrictions on a creditor's right to force a sale of a debtor's residence to satisfy a consumer debt. Cal. Civ. Proc. Code§699.730.  That section provides: "Notwithstanding any other law, the principal place of residence of a judgment debtor is not subject to sale under execution of a judgment lien based on a consumer debt unless the debt was secured by the debtor's principal place of residence at the

ES 297          ES 297          ES 297

time it was incurred." The statute goes on to define consumer debt and various exceptions to the

definition. The one case that has interpreted Section 699.730 determined that the law was

constitutional and that the wealth of the debtor and the size of the debt were immaterial to the

application of the statute. See, *Davis Boat Mfg.-Nordic, Inc. v. Smith*, 95 Cal. App. 5th 660, 670,

313 Cal. Rptr. 3d 673 (2023). The undersigned was unable to find a published case applying

Section 699.730 in the context of a bankruptcy case involving a debtor with primarily consumer

debts, such as the case at bar. However, the legislative history of Section 699.730 indicates that

the California legislature intended to increase the protections against forced sales of dwellings.

> "[F]orced home sales are no longer reserved for extreme cases, but
> instead are frequently used (or threatened) to satisfy extremely small
> debts." This practice "is especially problematic considering [California's]
> current housing and homelessness crisis" and "what is anticipated to be a
> historic amount of unpaid consumer debt as a result of the current
> COVID-19 epidemic." Furthermore, "[f]oreclosing on homes due to ...
> debt is disruptive to low income communities," "communities of color,"
> "seniors," and "people with disabilities." Assembly Bill No. 2463 was
> "crafted to accomplish the goal . . . of moving the state away from current
> law allowing a consumer's home to be *de facto* security for every debt they
> incur."

These reports reveal the primary objective of Assembly Bill No.

2463 is to curtail a particular method of debt collection that (1) has been

increasingly used in an abusive manner, i.e., to force or threaten a home

sale to satisfy even relatively small debts; (2) would exacerbate the state's

housing and homelessness crisis in the midst of a global pandemic; and (3)

has disproportionately affected marginalized communities. While these

reports list "a variety of sources" of "[d]ebts in collections," "including

medical bills, credit cards, auto loans, student loans, and utility bills," they

do not suggest—as Davis Boat would have us believe—that only a

1    homeowner who incurs debts "for goods or services reasonably necessary

2    for [his] support or maintenance or that of his dependents" or "to purchase

3    essential items" (italics omitted) may be entitled to protection from the

4    forced sale of his or her principal residence. [Footnote omitted] Moreover,

5    even though Smith unquestionably owes more than "a few thousand

6    dollars" and even if we assume, arguendo, he is a "wealthy judgment

7    debtor" who is not a member of one of the marginalized groups identified

8    in Assembly Bill No. 2463, "the fact that ' " 'a statute can be applied in

9    situations not expressly anticipated by [the Legislature] does not

10    demonstrate ambiguity. It demonstrates breadth.' " ' [Citations.]"

11    *Id*, at 675–76.

12    Golden cites the unpublished decision of *In re Roach*, No. 8:17-BK-12091-TA,

13    2019 WL 408628 (B.A.P. 9th Cir. Jan. 29, 2019) in support of his assertion that a debtor's

14    homestead can be sold without deference to the debtor's exemption as long as the bankruptcy

15    estate will benefit from the sale.  Golden overstates the holding of *Roach.*  By the time the case

16    got to the B.A.P. the subject property had been sold to a good faith buyer.  The debtor had not

17    sought or received a stay of the sale and therefore the propriety of the sale was no longer

18    contestable.  The B.A.P. decision only addressed the debtor's right to impose her exemption on

19    the proceeds of the sale that were split between a secured creditor and the bankruptcy estate

20    pursuant to a settlement agreement that had been approved by the Bankruptcy Court and was

21    final and non-appealable.  The B.A.P. decided her exemption rights did not attach to those

22    proceeds.

23    *In re Stark*, No. 20-CV-4766(EK), 2022 WL 2316176, at *5–6 (E.D.N.Y. June

24    28, 2022) is another unpublished opinion that goes the other way.  The *Stark* opinion states:

25    Thus the correct answer, in my view, is that in exchange for the

26    carve-out, the Trustee is delivering the sale of the Property outside a

27    foreclosure proceeding. Said differently, the Trustee is trading away, in

28    exchange for the carve-out, Stark's right to remain in the Property for an

1   extended period without making mortgage payments; her right to exclude

2   others during that period; and the like.

3   Having described the "value" at issue as such, it is clear that the

4   value resides in the homeowner's "property" rights in the house, and is

5   thus protected by the homestead exemption. Property rights in land are

6   commonly described, in our common law system, as a " 'bundle of sticks'

7   — a collection of individual rights which, in certain combinations,

8   constitute property." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct.

9   1921, 1937–38 (2019). And nestled among that bundle are the rights,

10  possessed by the debtor, that make the foreclosure process such a

11  headache for the secured creditor: the right to continue to reside in the

12  property and to exclude others (including the mortgage holder) from its

13  enjoyment. *E.g.*, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458

14  U.S. 419, 435 (1982) ("The power to exclude has traditionally been

15  considered one of the most treasured strands in an owner's bundle of

16  property rights.").

17  * * *

18  The Bankruptcy Court therefore ended the inquiry prematurely. At

19  the end of the day, the Trustee is monetizing part of the value of "a lot of

20  land with a dwelling thereon" that is "owned and occupied as a principal

21  residence." And that value is exempted by the New York homestead

22  exemption statute.

23  *Id.* at 5, 6.

24  In our case, we are not dealing with a secured lender who is offering a tip to the

25  Trustee in return for the Trustee selling the Property pursuant to 11 U.S.C. Section 363.  More

26  importantly, we are not at the stage of arguing over how the proceeds of a sale might be

27  distributed.  Here, the Court must deny Golden's requests to kick Gallian out of her house and

28  sell it because Golden has no right to force the sale of the Property without complying with

California law.  California law prohibits the sale of a homestead unless the sale proceeds will be sufficient to pay the entirety of Galian's Exempt Interest in the Property.

Cal. Civ. Proc. Code § 704.720 (West) provides: "(a) A homestead is exempt from sale under this division to the extent provided in Section 704.800."

Cal. Civ. Proc. Code § 704.730 (West) in effect on the date Gallian filed her bankruptcy petition provided:

> (a) The amount of the homestead exemption is the greater of the following:
>
> (1) The countywide median sale price for a single-family home in the calendar year prior to the calendar year in which the judgment debtor claims the exemption, not to exceed six hundred thousand dollars ($600,000).
>
> (2) Three hundred thousand dollars ($300,000).
>
> (b) The amounts specified in this section shall adjust annually for inflation, beginning on January 1, 2022, based on the change in the annual California Consumer Price Index for All Urban Consumers for the prior fiscal year, published by the Department of Industrial Relations.

The upper limit for homes in Orange County in 2021 was $600,000.00.  Golden cannot meet his burden of demonstrating that the Property can be sold for an amount sufficient to pay Gallian the entirety of Gallian's Exempt Interest in the Property.

Cal. Civ. Proc. Code § 704.800 (West) provides:

> (a) If no bid is received at a sale of a homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property, including but not limited to any attachment or judgment lien, the homestead shall not be sold and shall be released and is not thereafter subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year.

(b) If no bid is received at the sale of a homestead pursuant to a

court order for sale that is 90 percent or more of the fair market value

determined pursuant to Section 704.780, the homestead shall not be sold

unless the court, upon motion of the judgment creditor, does one of the

following:

(1) Grants permission to accept the highest bid that exceeds the

amount of the minimum bid required by subdivision (a).

(2) Makes a new order for sale of the homestead.

The Court Order and appraisal provisions California law imposes on sales of

homesteaded real property do not apply to sales of homesteaded personal property. See, Cal.

Civ. Proc. Code § 704.740 (West). However, the minimum bid requirements do apply, as do the

prohibition against selling a homesteaded dwelling for less than the amount necessary to clear all

liens, and pay the judgment debtor the total amount of the exemption. *See also*, Cal. Civ. Proc.

Code § 701.620 (West) applicable to execution sales of exempt personal property.

### c. Gallian's Exempt Interest in the Property is not Property of the Estate and Cannot be Sold by Golden.

The Court must determine what property Golden is proposing to sell, and whether

it property of the estate. Golden asserts that through default judgments and settlements in

Adversary Action 8:23-ap-01064-SC he has avoided and preserved various interests in the

Property. He asserts that he has avoided and preserved the J-Pad lien, but he is not asking for

permission to sell it. He also asserts that he has avoided and preserved the interests of J-

Sandcastle, Ron Pierpont, Robert J. McLelland, Steven D. Gallian, Brian J. Gallian, Justin

Barclay and E. J. Gallian. Golden has not described these other interests he avoided and

preserved, and he has not asked for permission to sell these interests. Rather, he is only asking

for permission to sell the Property itself.

Golden asserts that various creditors [Houser Bros. and the Jasso Parties] have

recorded abstracts in the Orange County land records, but those abstracts did not create liens on

the Property because the Property is personal property, not real property. Gallian does not

dispute this.  Because the abstracts never created liens on the Property, there is no need to avoid them, sell free and clear of them or provide adequate protection for them.  Furthermore, Gallian's Exempt Interest in the Property is unaffected by any judgment liens that might exist on the Property.  Neither Gallian nor Golden has any need to avoid judgment liens that never attached to the Property.  Golden's references to the Section 522(f) of the Bankruptcy Code in his Motion to Approve Sale [Docket 539] appear to be inapposite.  See, Motion to Approve Sale, at 12, lines 3 – 11.

Gallian's Exempt Interest in the Property is not property of the estate.  However, title to the Property, i.e. hypothetical non-exempt equity in the Property is property of the estate.  This is the interest that Golden is proposing to sell.  Because there is no non-exempt equity in the Property, unless Golden can sell the Property free and clear of Gallian's Exempt Interest in the Property, Golden's request to sell the Property must be denied.

> This case turns largely on the proper interpretation of California's homestead exemption statute. That statute defines "homestead" as a judgment debtor's principal dwelling place, Cal.Civ.Proc.Code § 704.710(c), and "homestead exemption" as a fixed dollar amount generated from the sale of the homestead. *Id.,* § 704.730. For the Hymans that amount is $45,000. *Id.,* § 704.730(a)(2). State law also provides that a judgment debtor's homestead may not be sold by judgment creditors unless the sale price of the homestead "exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property...." *Id.,* § 704.800(a). If the sale price does exceed these amounts, the homestead may be sold and the judgment debtor is entitled to a sum equal to his homestead exemption from the proceeds of the sale. *Id.,* § 704.720(b).

*In re Hyman,* 967 F.2d 1316, 1318–19 (9th Cir. 1992) [Footnotes omitted].

Because there is admittedly no non-exempt equity in the Property over and above Gallian's Exempt Interest, Golden has no right to sell the Property.

**d. Bankruptcy Law Prohibits Golden's Sale of the Property Free and Clear of Gallian's Exempt Interest in the Property Without Her Consent.**

Golden's Motions do not adequately address the requirements of 11 U.S.C. Section 363(f). He treats Gallian's Exempt Interest in the Property as though it is nothing more than a right to receive money upon the sale of the Property, i.e., as though it is merely a lien. He asserts that Gallian's Exempt Interest in the Property is junior to the J-Pad lien and the J-Pad lien is entitled to be paid more than $300,000.00 (an issue that will be addressed more fully below). He asserts that Gallian's Exempt Interest in the Property is out of the money and therefore he can sell the Property without paying Gallian anything or providing adequate protection for her interest in the Property. He is incorrect.

The automatic homestead exemption prohibits a forced sale of a homesteaded dwelling unless the sale generates sufficient proceeds to pay the entire amount of the debtor's exemption. It protects the debtor from being displaced and becoming homeless as the result of a forced sale of the debtor's dwelling. To a debtor, the most important aspect of the automatic homestead exemption is the right to continue to reside in the dwelling. Golden completely ignores this aspect of California's homestead law.

11 U.S.C. Section 363(f) provides:

(f) The trustee may sell property [of the estate] under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Gallian's Exempt Interest in the Property does not fit within any of the five categories listed in Section 363(f).  As detailed above, California law prohibits a forced sale of homesteaded property free and clear of the exemption for less than the amount necessary to pay the exemption and all liens in full – thus negating categories (1), (3) and (5).  Gallian has not consented to the sale.  In fact, Golden has not even requested her consent to the sale.  Thus, category (2) does not apply.  Gallian's Exempt Interest in the Property has been established in a Final Non-Appealable order of this Court [Docket 394].  Thus, category (4) does not apply.  Golden has cited no authority that allows a trustee to sell a debtor's homestead over the debtor's objection in these circumstances.

### e. Golden's Reliance on His Preservation of the J-Pad Lien does not Give Him the Right to Sell Gallian's Home.

Golden attempts to satisfy his burden of showing a business justification for selling the Property by arguing that the sale will generate $256,000 or more in proceeds payable on the J-Pad lien for the benefit of the bankruptcy estate.  Golden cites *Roach* and *In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517 (9th Cir. 1990) in support of this argument.  Both cases are distinguishable.  In *Roach*, the secured interest in the debtor's property was not disputed.  The issue resolved by the B.A.P. was the debtor's claim that her homestead exemption should be paid from the proceeds attributable to the secured interest that had been shared with the Trustee.  In *Van de Kamp*, the fight involved the priority of two different liens that were avoided by the Trustee.  One lien was for unpaid benefit contributions owed to the unions that represented the employees of the bakery business.  The other lien was a consensual lien involving the President of the company.  The unions argued that outside of bankruptcy, their lien would have priority over the President's lien.  The Court determined that because the Trustee had avoided and preserved the President's lien, which on its face had priority over the unions' lien, the preserved President's lien maintained its priority over the unions lien.

> Appellants do not dispute that the avoided interest was properly perfected
> prior in time to the asserted perfection of their lien. Under Washington
> law, a fraudulent conveyance is good as between the parties and passes

title. *Preston–Parton Milling Co. v. Dexter Horton & Co.,* 22 Wash. 236,

60 P. 412 (1900). Appellants could have brought an action in state court

prior to the commencement of the bankruptcy action to avoid the

fraudulent transfer but chose not to do so. Now they ask this court to

determine how such an action would have concluded, and to grant them a

status they might have attained absent the bankruptcy proceedings. This

we cannot do.

*In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990).

When a Trustee avoids and preserves an interest in property, the Trustee "steps

into the shoes" of the party whose interest was avoided and preserved.  The effect of preserving

an interest, does not enhance the interest.  The Trustee enjoys no better rights in the asset

preserved than did the original holder of those rights.  See, *In re Appalachian Energy Indus.,*

*Inc.,* 25 B.R. 515 (Bankr. M.D. Tenn. 1982) (in avoiding the unperfected lien of the seller, the

trustee preserved only such rights as the seller possessed in the collateral, and on the facts

presented, the only right the seller acquired in the forklift, and thus the only right preserved for

the benefit of the estate, was a security interest junior to the bank's properly perfected security

interest), *In re Tri-Sonic, Inc.,* 1 B.R. 138 (Bankr. N.D. Tex. 1979) (preservation would not

enhance status of trustee's lien so that if it would have been defeated by junior claimants while in

hands of the original lienholder it was also vulnerable in trustee's hands), *Matter of Woodworks*

*Contemp. Furniture, Inc.*, 44 B.R. 971 (Bankr. W.D. Wis. 1984) (however substantial are powers

of trustee to preserve avoided lien free of technical defects, when lien by its very nature is not

securing purchase money, lien cannot be reinvented as one securing purchase money loan),

*Connelly v. Marine Midland Bank, N.A.*, 61 B.R. 748 (W.D.N.Y. 1986) (trustee, upon avoiding

creditor's first-in-time but unperfected security interest, stepped into creditor's shoes as to its

unperfected security interest, and thus, bank's perfected security interest had priority over

trustee's unperfected security interest under New York law).

Our case does not involve a question of priority.  Our case involves the validity

and value of the J-Pad lien itself.  In his Motion to Approve Sale, Golden fails to address

California law regarding the validity, creation and satisfaction of liens and security interests.  We

must begin this analysis by recognizing that Golden has asserted that the J-Pad Lien that he

avoided and preserved is based on a 2019 Note and Security Agreement indicating that J-Pad is

owed $225,000.00 plus interest at the rate of 5.5%.  No such Note and Security Agreement are

attached as exhibits to Golden's Motion.  Golden attaches a copy of the Default Judgment

Avoiding the J-Pad lien to his Motion as part of **Exhibit 7** [Docket 539-1, pages 32 – 24].

Notably, it references various documents purporting to perfect the J-Pad lien, but does not

include a copy of any Note or Security Agreement.  A true and correct copy of the Complaint in

Avoidance Adversary Action, Case No. 8:23-ap-01064-SC, is attached hereto as **Exhibit 102**.

Notably it also fails to attach a copy of any Note or Security Agreement.

More importantly, in Paragraphs 30 and 31 of the Complaint in the Avoidance

Adversary Action, Golden alleges that:

> 30. Notwithstanding that the secured promissory notes were for
> $225,000, J-Sandcastle did not advance or loan any money to J-Pad at any
> point in time. The Debtor, however, advanced $175,000 to J-Pad at about
> the time of the First J-Pad Transfer, with the balance of $50,000 coming
> from the Debtor later (collectively, the "Third J-Pad Transfer").

> 31. Despite the two secured promissory notes, the $225,000 was
> not owed to J-Pad. Rather, the $225,000 was owed by J-Pad to the Debtor
> (who had in fact advanced the funds from her personal accounts).

**Exhibit 102**, at 6, lines 5 – 11.  These allegations were repeated in Golden's Motion for Default

Judgment against J-Pad and are the heart of Golden's argument for avoiding the J-Pad lien as a

fraudulent transfer [Docket 76 in the Avoidance Adversary Action].  That is, Golden has alleged

and proven that no money was ever lent by J-Pad to J-Sandcastle, and no debt was ever owed by

J-Sandcastle to J-Pad.  Gallian agrees that J-Pad did not lend any money to anyone and is not

owed any money.

Section 9203 of the California Commercial Code provides that:

(a) A security interest attaches to collateral when it becomes enforceable

1      against the debtor with respect to the collateral, unless an agreement

2      expressly postpones the time of attachment.

3      (b) Except as otherwise provided in subdivisions (c) to (i), inclusive, a

4      security interest is enforceable against the debtor and third parties with

5      respect to the collateral only if each of the following conditions is

6      satisfied:

7      (1) Value has been given.

8      (2) The debtor has rights in the collateral or the power to transfer rights in

9      the collateral to a secured party.

10     (3) One of the following conditions is met:

11     (A) The debtor has signed a security agreement that provides a description

12     of the collateral and, if the security interest covers timber to be cut, a

13     description of the land concerned.

14     * * *

15     Cal. Com. Code § 9203 (West).

16              According to the allegations and proof submitted by Golden in the Avoidance

17     Adversary Action, J-Pad gave no value in return for any security interest it was granted in the

18     Property by J-Sandcastle.  Golden has also failed to submit any evidence that J-Sandcastle ever

19     signed a security agreement providing a security interest in the Property to J-Pad or executed a

20     Note in favor of J-Pad.  As a result, no security interest ever attached to the Property in favor of

21     J-Pad and no debt is owed to J-Pad.  The Complaint in the Avoidance Adversary Action also

22     alleges that on July 9, 2021, the date that Gallian filed her bankruptcy petition, J-Pad and Ron

23     Pierpont released any interest in the Property.  See, **Exhibit 102**, paragraphs 35 & 36, at 6, lines

24     12 – 24.  Gallian does not dispute those allegations.  By avoiding and preserving the J-Pad Lien,

25     Golden steps into J-Pads shoes.  Golden's preservation did not enhance the rights of J-Pad.  The

26     lien never attached.  No debt is owed to J-Pad, or Golden as the holder of J-Pad's interest and no

27     money will inure to the benefit of the bankruptcy estate by Golden's sale of the Property.

28     Golden's Sale Motion must be denied.

  **f. Golden has no Right to Sell Gallian's Home; Therefore, he has no Right to Kick Her Out of Her Home.**

   Golden's Motion for Turnover is entirely based on his assertion that he is entitled to sell the Property without Gallian's consent.  That assertion is incorrect.  There is no non-exempt equity in the Property to sell.  There is no benefit to be gained from selling the Property because Golden's preserved J-Pad Lien has no value and no right to be paid from the proceeds of any Sale.  Gallian's right to continue to reside in the Property because she has an unassailable exemption in her equitable interest in the Property is indisputable.  Therefore, Golden's Motion for Turnover must be denied.

  **g. Waiver of Rule 6004(h) is Unjustified.**

   Golden has asked the Court to waive the stay imposed by Rule 6004(h) on the grounds that the estate will benefit if no party is able to effectively appeal an order granting his motions.  While that may be true, due process and justice will not be served by waiving the stay.  Gallian believes this opposition has forcefully demonstrated that Golden has no right to sell the Property or kick her out of her home.  However, if the Court were to disagree and grant Golden's Motions, the Court cannot deny that the effect on Gallian would be devastating, and that Gallian has at least made substantial colorable arguments calling into question Golden's right to the relief he seeks.  At the very least, Gallian should be afforded the opportunity to seek a stay to preserve her right to effectively appeal any adverse ruling.  That is what Rule 6004(h) is designed to provide, and it should not be subverted.

**III. CONCLUSION**

   Trustee Golden bears the burden of proving each and every fact necessary to support his Motions.  He has failed to do so.  Golden has failed to prove that the Property can be sold for enough to pay the entirety of Gallian's Exempt Interest in the Property.  Golden has failed to prove that he has the right to sell the Property free and clear of Gallian's Exempt Interest under 11 U.S.C. Section 363(f).  Golden has not and cannot prove that the J-Pad lien that he avoided and preserved for the estate ever attached to the Property.  Golden has not and cannot prove that

ES 309       ES 309       ES 309

1   any money was lent by J-Pad to anyone; therefore, Golden has not and cannot prove that the

2   estate will receive any benefit from his proposed sale of the Property.  Because Golden cannot

3   sell the Property, he has no right to kick Gallian out of her home.  Because the Property provides

4   no benefit to the estate, Golden must immediately abandon it to Gallian.

5   Dated:  February 18, 2025                    CHRISTOPHER L. BLANK, ATTORNEY AT
                                                 LAW, PC
6
                                                 By:  /S/*Christopher L. Blank*
7                                                Christopher L. Blank, Attorney for Debtor Jamie
                                                 Lynn Gallian
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF JAMIE LYNN GALLIAN

I, Jamie Lynn Gallian, declare that the facts set forth below are true and correct of my own personal knowledge and if called upon to do so, I could and would testify competently to them.

1.    I am the Debtor in this matter. I live in a manufactured home located at 16222 Monterey Lane, Space 376, Huntington Beach, California Decal No. LBM1081 (the "Property").

2.    I purchased the Property in 2018 and I have resided there continuously ever since.

3.    I have an unassailable automatic exemption in my equitable interest in the Property ("Gallian's Exempt Interest") established by a Final Non-Appealable Order of this Court entered May 17, 2024 [Docket 394].

4.    I am the sole manager of J-Pad, LLC ("J-Pad") and J-Sandcastle, LLC. I am familiar with all financial transactions involving these entities as I am the sole person responsible for those transactions.

5.    J-Pad has never lent any money to J-Sandcastle, LLC or anyone else. J-Pad has never provided any value to J-Sandcastle, LLC or anyone else.

6.    J-Pad has never had a security interest that **attached** to the Property.

7.    On February 25, 2021, months before I filed bankruptcy, I caused J-Sandcastle to transfer its interest in the Property to me individually. I submitted the transfer documents to the California Department of Housing and Community Development ("HCD"), the government agency that handles title recordation for manufactured homes, on that date.

8.    On July 9, 2021, the date I filed bankruptcy, Ron Pierpont and J-Pad released any interest they may have had as legal owners (holders of a security interest) in the Property.

9.    I believe the Property is worth much more than the $275,000.00 Trustee Jeff Golden is proposing to accept for the purchase of the Property, although far less than the $600,000 amount of my exempt interest in the Property.

10.    For the entire time I have lived in the Property, I have kept tabs on purchase and sale transactions in my neighborhood. My opinion of value is based on my awareness of those purchase and sale transactions in my neighborhood over the last 4 years.

11.     The Property is in better than average condition compared to other units in my neighborhood and is newer that many units in my neighborhood.

12.     The proposed buyer, Galaxy Homes, is a broker, wholesaler and flipper of homes in my neighborhood.  Galaxy typically buys homes in the neighborhood on the cheap, fixes them up, and sells them for a profit.  My home, the Property, is in good condition and does not need to be fixed up.

13.     In the past, I have received offers to purchase the Property in excess of $335,000.00.  Trustee Golden has prevented me from attempting to market and sell the Property to a retail buyer who might pay close to fair market value for the Property.

14.     Homes in my neighborhood are not typically sold by real estate brokers because the homes are not considered real property.  Rather, homes are sold like cars and other types of personal property, without paying commissions of 6%.

15.     I have insured the Property throughout the time I have owned and resided in it. Trustee Golden has not requested proof of current insurance.  A true and correct copy of my current insurance declaration page is attached as **Exhibit 101**.

16.     Attached hereto as **Exhibit 102** is a true and correct copy of the Complaint in Adversary Action 8:23-ap-01064-SC, the Avoidance Action by which Golden avoided and preserved the J-Pad lien.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the forgoing is true.

Executed on February 18, 2025 at Huntington Beach, California

                              /S/Jamie Lynn Gallian
                              Jamie Lynn Gallian

purchase and sale transactions in my neighborhood over the last 4 years.

11.     The Property is in better than average condition compared to other units in my neighborhood and is newer that many units in my neighborhood.

12.     The proposed buyer, Galaxy Homes, is a broker, wholesaler and flipper of homes in my neighborhood. Galaxy typically buys homes in the neighborhood on the cheap, fixes them up, and sells them for a profit. My home, the Property, is in good condition and does not need to be fixed up.

13.     In the past, I have received offers to purchase the Property in excess of $335,000.00. Trustee Golden has prevented me from attempting to market and sell the Property to a retail buyer who might pay close to fair market value for the Property.

14.     Homes in my neighborhood are not typically sold by real estate brokers because the homes are not considered real property. Rather, homes are sold like cars and other types of personal property, without paying commissions of 6%.

15.     I have insured the Property throughout the time I have owned and resided in it. Trustee Golden has not requested proof of current insurance. A true and correct copy of my current insurance declaration page is attached as **Exhibit 101**.

16.     Attached hereto as **Exhibit 102** is a true and correct copy of the Complaint in Adversary Action 8:23-ap-01064-SC, the Avoidance Action by which Golden avoided and preserved the J-Pad lien.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the forgoing is true.

Executed on 2/19/2025 at Huntington Beach, California

/S/Jamie Lynn Gallian
Jamie Lynn Gallian

21

# EXHIBIT 101

# EXHIBIT 101

# EXHIBIT 101

**FARMERS**
INSURANCE

**A Policy From**
**FOREMOST INSURANCE COMPANY    GRAND RAPIDS, MICHIGAN**

N EN  721530
103-0927110811

THERESA SIMES INSURANCE AGENCY, INC.
FARMERS INSURANCE GROUP
17165 NEWHOPE ST F
FOUNTAIN VALLEY CA 92708-4230

04

JAMIE GALLIAN
16222 MONTEREY LN  SPACE 376
HUNTINGTON BEACH CA 92649-2258

**THIS IS NOT A BILL**

Dear JAMIE GALLIAN:

Your policy packet is enclosed. Please take a few minutes to read through the enclosed documents. This contract is your assurance of protection in case of an insured loss. Copies of your current policy forms are available upon your request. If you have any questions, please contact us at the address shown above or call us at (714) 966-3000 .

Thank you for choosing us for your insurance. We appreciate the opportunity to provide you coverage.

Sincerely,

THERESA SIMES INSURANCE AGENCY, INC.
FARMERS INSURANCE GROUP
89-0017-231

**P.S.  Did you know . . . Electronic payments are available!**

To sign up for electronic payments, please go to **MyForemostAccount.com.** You may choose to have us automatically withdraw your premium payments electronically from your designated account as they come due, or go to **MyForemostAccount.com** to see your bill and make a payment. As always, simply call our billing service at 1-800-532-4221 with questions about your bill.

**Need to report a claim?**  The Claims Contact Center is available to take your call 24 hours a day, seven days a week at 1-800-527-3907, or you may report a claim online at **Foremost.com.**

103-0927110811-04
Form 7354 3/13    **ES 315**    **ES 315**

86914    103-0927110811



**FARMERS**
INSURANCE

Underwritten by: **Foremost Insurance Company**  Grand Rapids, Michigan
Home Office:  P.O. Box 2450, Grand Rapids, Michigan 49501

Policy Number:  **103 - 0927110811 - 04**

# DECLARATIONS PAGE

**YOU AS NAMED INSURED AND YOUR ADDRESS:**

JAMIE GALLIAN
16222 MONTEREY LN  SPACE 376
HUNTINGTON BEACH CA 92649-2258

| POLICY INFORMATION | Policy Period: From  08/30/24 To 08/30/25 **12:01 A.M. STANDARD TIME** |
|---|---|
| **Policy Number:**  103-0927110811-04 | **Renewal Of:** |

| DWELLING LOCATION | RANCHO DEL REY MH ESTATES | |
|---|---|---|
| **Address:** 16222 MONTEREY LN  SPACE 376 HUNTINGTON BEACH CA 92649-2258 | **In City Limits:** YES |
| | **County:** ORANGE |

| DWELLING INFORMATION | Width: 30 | Length: 60 | Serial Number: UNKNOWN |
|---|---|---|---|
| **Model Year:** 2014 | **Manufacturer/ Model:** SKYLINE CUSTOM VILLA | | |

| RATING INFORMATION | Use: PRIMARY | | Customer Age Group: 50 OR OVER |
|---|---|---|---|
| **Approved Park:** YES | **Auxiliary Heating Device:** YES | **Tied Down:** | **Age Of Dwelling:** 10 Years |

**YOUR POLICY IS SERVICED BY:**

**TELEPHONE:** (714) 966-3000
**Agency Code:** 89-0017-231-0

THERESA SIMES INSURANCE AGENCY, INC.
FARMERS INSURANCE GROUP
17165 NEWHOPE ST F
FOUNTAIN VALLEY CA 92708-4230

YOUR POLICY CHANGED EFFECTIVE 10/07/24. THIS REPLACES ANY PRIOR DECLARATIONS PAGE.

**ES 317**
Form 82997 08/15    01/26/25
86915   103-0927110811

**FARMERS**
INSURANCE

Underwritten by: **Foremost Insurance Company**  Grand Rapids, Michigan
Home Office:    P.O. Box 2450, Grand Rapids, Michigan 49501

Policy Number:   **103 - 0927110811 - 04**

**DECLARATIONS PAGE (CONTINUED)**

---

**COVERAGES:** This policy provides only the coverages as shown below and your additional coverages described in the policy.

---

**AGGREGATE LIMIT:** The most we will pay in any one Policy Period for any one insured Location for Coverage E - Personal Liability is $1,000,000 regardless of the number of claims, suits or accidents.

---

| SECTION I YOUR PROPERTY COVERAGES | AMOUNT OF INSURANCE* |
|---|---|
| A. DWELLING | $217,267 |
| B. OTHER STRUCTURES | $ 21,727 |
| C. PERSONAL PROPERTY | $108,634 |
| D. ADDITIONAL LIVING EXPENSE | $ 43,453 |

**\*REFER TO SECTION I "OUR PAYMENT METHODS" TO SEE HOW THESE AMOUNTS WILL BE APPLIED**

---

| SECTION II YOUR LIABILITY COVERAGES | LIMIT OF LIABILITY | |
|---|---|---|
| E. PERSONAL LIABILITY | EACH ACCIDENT | $100,000 |
| F. MEDICAL PAYMENTS TO OTHERS | EACH PERSON | $ 1,000 |

**TOTAL SECTION I AND II COVERAGES PREMIUM** $        965.00

---

**TOTAL SECTION I AND II COVERAGES ADDITIONAL PREMIUM** $        0.00

---

**SECTION I DEDUCTIBLE**
SECTION I LOSSES OR AMOUNTS OF INSURANCE ARE SUBJECT TO A DEDUCTIBLE OF $ 500 UNLESS STATED OTHERWISE IN YOUR POLICY AND ENDORSEMENTS.

---

| FORMS AND ENDORSEMENTS | | | ADDL/RETURN | POLICY PREMIUM |
|---|---|---|---|---|
| 4636 | 03/13 | HOMEOWNERS INSURANCE FOR MFG HOMES | | NO ADDED CHARGE |
| 5585 | 06/00 | WORKER COMP. & EMPLOYER'S LIABILITY | | NO ADDED CHARGE |
| 6493 | 11/21 | REQUIRED CHANGE - CALIFORNIA | | NO ADDED CHARGE |
| 6586 | 11/09 | ADDITIONAL NAMED INSURED | | NO ADDED CHARGE |
| 5112 | 05/21 | EXTENDED R/C PAYMENT METHOD | | $        20.00 |
| 4035 | 01/07 | ADDITIONAL COVERAGE ENDORSEMENTS | | $         5.00 |
| 5111 | 11/21 | REPLACEMENT COST PERSONAL PROPERTY | | $       111.00 |
| 6637 | 05/10 | $1500 WATER LOSS DEDUCTIBLE | | $       -32.00 |

**TOTAL FORMS AND ENDORSEMENTS PREMIUM** $        104.00

---

**TOTAL POLICY PREMIUM AND OTHER CHARGES** $      1,069.00

---

| TOTAL ADDITIONAL PREMIUM AND OTHER CHARGES RESULTING FROM THIS CHANGE | $        0.00 |
|---|---|

MINIMUM EARNED PREMIUM   $50

---

**SAVINGS INCLUDED IN YOUR POLICY PREMIUM**
| INSURED AGE DISCOUNT | $90 |
| AGE OF HOME | $368 |
| IN-PARK DISCOUNT | $464 |

---

**STATE SPECIFIC MESSAGES**
EARTHQUAKE COVERAGE NOT INCLUDED
THE LIMIT OF LIABILITY FOR THIS STRUCTURE (COVERAGE A) IS BASED ON AN ESTIMATE OF THE COST TO PURCHASE A COMPARABLE REPLACEMENT MOBILE HOME USING SPECIFIC

---

INFORMATION THAT YOU HAVE PROVIDED ABOUT YOUR HOME.
IT IS UP TO YOU TO CHOOSE THE COVERAGES AND LIMITS THAT MEET YOUR NEEDS.
YOU HAVE A RIGHT TO REQUEST A NEW ESTIMATE OF THE REPLACEMENT COST FOR YOUR
HOME. PLEASE NOTIFY YOUR AGENT IF YOU WOULD LIKE A NEW ESTIMATE OR IF THERE ARE
ANY CHANGES TO THE FEATURES OF YOUR HOME.
THIS POLICY DOES NOT INCLUDE BUILDING CODE UPGRADE COVERAGE UNLESS UNDER THE
FORMS/ENDORSEMENT SECTION IT SHOWS EXTENDED R/C PAYMENT METHOD.

**ADDITIONAL FEE INFORMATION**

In consideration of our agreement to allow you to pay in installments, the
following service fee(s) apply per installment:

| 1-PAY | 2-PAY | 4-PAY | 10-PAY | 12-PAY |
|-------|-------|-------|--------|--------|
| $0.00 | $4.00 | $4.00 | $4.00  | $2.00  |

If you have purchased a California Earthquake Authority ("CEA") companion policy
a $1.00 service fee will be applied per CEA installment.

**REASONS FOR THIS CHANGE**
- INFORMATION CONCERNING THE INSURED WAS CHANGED
- YOUR NAME OR ADDRESS HAS BEEN CHANGED





## ADDITIONAL NAMED INSURED
**6586** 11/09

**Name and Address of Additional Named Insured:**

J-PAD LLC
16222 MONTEREY LN #376
HUNTINGTON BEACH CA 92649-2258

**Insuring Agreement**

The following is added to the Insuring Agreement:

You, your and yours also means the additional person(s) named on this Additional Named Insured endorsement and that person's **family members**.

6586 11/09                    All other provisions of your policy apply.



86917    103-092711081l



# EXHIBIT 102

# EXHIBIT 102

# EXHIBIT 102

ERIC P. ISRAEL (State Bar No. 132426)
*eisrael@DanningGill.com*
AARON E. DE LEEST (State Bar No. 216832)
*adeleest@DanningGill.com*
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Plaintiff Jeffrey I. Golden,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>     Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>Adv. No. |
| JEFFREY I. GOLDEN, Chapter 7 Trustee,<br><br>     Plaintiff,<br><br>     vs.<br><br>J-SANDCASTLE CO., LLC; J-PAD LLC;<br>STEVEN D. GALLIAN; BRIAN J.<br>GALLIAN; JUSTIN BARCLAY; RONALD<br>J. PIERPONT; ROBERT J. MCLELLAND;<br>AND E. J. GALLIAN,<br><br>     Defendants. | CHAPTER 7 TRUSTEE'S COMPLAINT:<br>(1) TO AVOID AND RECOVER<br>FRAUDULENT TRANSFERS; (2) TO<br>AVOID AND RECOVER POSTPETITION<br>TRANSFERS; (3) FOR DECLARATORY<br>RELIEF; (4) FOR BREACH OF<br>CONTRACT; (5) FOR MONEY HAD AND<br>RECEIVED; AND (6) UNJUST<br>ENRICHMENT<br><br>Date:    [SEE SUMMONS]<br>Time:    [SEE SUMMONS]<br>Place:   [SEE SUMMONS] |

Plaintiff alleges:

## JURISDICTION

1.    This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.
§§ 157(b) and 1334(b).  This action is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A),
(E), (H), (K), and (O).  This adversary proceeding is brought pursuant to 11 U.S.C. §§ 542, 544,
548, 549, 550 and 551 and Rule 7001 of the Federal Rules of Bankruptcy Procedure.  This

1

ES 324            ES 324            ES 324

1  adversary proceeding arises in and under and relates to the bankruptcy case under Chapter 7 of the

2  Bankruptcy Code (the "Code") entitled *In Jamie Lynn Gallian,* Case No. 8:21-bk-11710-SC (the

3  "Bankruptcy Case"), which is presently pending before the United States Bankruptcy Court for the

4  Central District of California, Santa Ana Division.  Plaintiff consents to and the Court can and

5  should enter a final judgment herein.  If and to the extent that the Court determines that it lacks

6  jurisdiction or authority to enter a final judgment, Plaintiff requests that the Court submit findings

7  of fact and conclusions of law for consideration by the District Court.

8

9  ## **PARTIES**

10  2.      Plaintiff in this adversary proceeding is Jeffrey I. Golden, the Chapter 7 trustee

11  ("Plaintiff" or the "Trustee") of the bankruptcy estate of Jamie Lynn Gallian, the debtor in the

12  Bankruptcy Case (the "Debtor").  Plaintiff brings this adversary proceeding solely in his capacity

13  as the Chapter 7 Trustee of the Debtor's bankruptcy estate.

14  3.      Plaintiff is informed and believes, and based thereon alleges, that J-Sandcastle Co.,

15  LLC ("J-Sandcastle") was a California limited liability company, with its principal place of

16  business located in in the County of Orange, State of California.  The Debtor is the sole member

17  and manager of J-Sandcastle.

18  4.      Plaintiff is informed and believes, and based thereon alleges, that J-Pad LLC ("J-

19  Pad") was a California limited liability company, with its principal place of business located in in

20  the County of Orange, State of California.  The Debtor is the sole member and manager of J-Pad.

21  5.      Plaintiff is informed and believes, and based thereon alleges, that Steven D. Gallian

22  is an individual residing in the County of Orange, State of California.  Plaintiff is further informed

23  and believes that Steven D. Gallian is the Debtor's son.

24  6.      Plaintiff is informed and believes, and based thereon alleges, that Brian J. Gallian is

25  an individual residing in the County of Orange, State of California.  Plaintiff is further informed

26  and believes that Brian J. Gallian is the Debtor's son.

27

28

ES 325          ES 325          ES 325

7.      Plaintiff is informed and believes, and based thereon alleges, that E. J. Gallian is an individual residing in the County of Orange, State of California.  Plaintiff is further informed and believes that E. J. Gallian is the Debtor's granddaughter.

8.      Plaintiff is informed and believes, and based thereon alleges, that Justin Barclay is an individual residing in the County of Orange, State of California.  Plaintiff is further informed and believes that Justin Barclay is the Debtor's son.

9.      Plaintiff is informed and believes, and based thereon alleges, that Ronald J. Pierpont is an individual residing in the County of Orange, State of California.  Plaintiff is further informed and believes that Ronald J. Pierpont is the Debtor's ex-husband.

10.      Plaintiff is informed and believes, and based thereon alleges, that Robert J. McLelland is an individual residing in the County of Orange, State of California.  Plaintiff is further informed and believes that Robert J. McLelland is the Debtor's roommate.

11.      Plaintiff is further informed and believes, and based thereon alleges, that J-Sandcastle, J-Pad, Steven Gallian, Brian Gallian, Justin Barclay, and Ronald Pierpont are all "insiders" of the Debtor pursuant to § 101(31) of the Code.

**GENERAL ALLEGATIONS**

12.      On or about July 9, 2021 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the Code.

13.      Jeffrey I. Golden thereafter accepted appointment as the Chapter 7 trustee for the Debtor's bankruptcy estate and continues to serve in that capacity for the benefit of creditors.

The J-Sandcastle Transfer

14.      Up to and until about October 31, 2018, the Debtor lived at 4476 Alderport Drive, Unit 53, Huntington Beach, CA 92649 ("Alderport Property"), which she received as a gift in 2017 from her stepmother, Sandra Bradley ("Ms. Bradley").  The Debtor always held title to the Alderport Property in her own name.

15.      On or about October 31, 2018, the Debtor sold the Alderport Property to Randall Nickell for $379,000, which he paid for in two cashier's checks payable to the Debtor, individually.

16.     The Debtor deposited the funds from Mr. Nickell for the Alderport Property into a Chase Bank account in her name.

17.     Thereafter, the Debtor used $185,000 of the proceeds from the sale of the Alderport Property to purchase a manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649 (the "Property") from Lisa Ryan.

18.     The Debtor paid Ms. Ryan the first $10,000 on November 1, 2018, and the $175,000 balance of the purchase price for the Property on November 17, 2018.

19.     Even though the Debtor paid for the Property with proceeds of her Alderport Property deposited into a bank account in her own name, the Debtor transferred title to, and the beneficial interest in, the Property to J-Sandcastle.

20.     At the time Debtor transferred the Property to J-Sandcastle, she was being sued in multiple actions and judgments were later entered against her as follows:

a.     On November 8, 2018, in Case No. 30-2017-00913985, the Orange County Superior Court ("OCSC") granted a motion by the Huntington Beach Gables Homeowners Association ("HOA") for attorney's fees against the Debtor, and on December 4, 2018, the OCSC entered an order on the motion, which reflected that the HOA had been awarded $46,138 of attorney's fees against the Debtor, plus interest.

b.     On May 6, 2019, in Case No. 30-2017-00913985, the HOA obtained judgment against the Debtor in excess of $315,000.

c.     On September 27, 2018, in Case No. 30-2017-00962999, the OCSC imposed $3,070 of sanctions against the Debtor.

d.     On March 21, 2019, in Case No. 30-2017-00962999, the HOA obtained a money judgment against the Debtor for $9,265.

e.     To date, the Debtor has paid approximately $1,295 on account of all these judgments and orders.

21.     On November 1, 2018, Ms. Ryan executed a "Notice of Sale or Transfer" for the Property with the Debtor, "Jamie Lynn Gallian," identified as the "Purchaser/New Owner."

22.     On November 15, 2018, however, Ms. Ryan whited-out the Debtor's name and

1   replaced it with "J-Sandcastle Co, LLC Its Manager Jamie L. Gallian," pursuant to a discussion the

2   Debtor and Ms. Ryan had on that day (the "First J-Sandcastle Transfer").

3         23.    The fully executed "Notice of Sale or Transfer" of the Property reflecting that J-

4   Sandcastle was the owner of the Property was transmitted to the California Department of Housing

5   and Community Development (the "HCD"), which handles the registering and titling of

6   manufactured and mobilehomes, on or about November 20, 2018 (the "Second J-Sandcastle

7   Transfer").  The First J-Sandcastle Transfer and Second J-Sandcastle Transfer are, collectively, the

8   "J-Sandcastle Transfers".

9         24.    J-Sandcastle paid no consideration to the Debtor for the J-Sandcastle Transfers or in

10   connection with receiving title to and the beneficial interest in the Property. J-Sandcastle did not

11   have any business other than its ownership of the Property.

12         25.    On the Petition Date, title to the Property remained with J-Sandcastle, and not the

13   Debtor.

14         26.    On or about July 28, 2021 (postpetition), however, the Debtor caused J-Sandcastle

15   to transfer title to herself personally.  Accordingly, as of August 10, 2021, the HCD records were

16   changed to reflect that the Property's registered owner was "Jamie Lynn Gallian".  By receiving

17   this transfer from J-Sandcastle, the Debtor is a subsequent transferee that did not take for value, in

18   good faith, and without knowledge of the voidability of the initial fraudulent transfer to J-

19   Sandcastle.

20         The J-Pad Transfers

21         27.    At about the time that the Debtor purchased the Property, she sought to conceal the

22   equity in the Property by granting a lien for $225,000 on the Property in favor of J-Pad.

23         28.    Accordingly, on November 16, 2018, the Debtor, as the sole member of J-

24   Sandcastle the "borrower", executed a secured promissory note in the amount of $225,000 in favor

25   of J-Pad.  The secured promissory note is secured by a separate security agreement dated

26   November 16, 2018, reflecting a security interest in the Property between J-Sandcastle and J-Pad

27   (the "First J-Pad Transfer").

28         29.    In addition, on November 16, 2018, the Debtor, individually as the "borrower", also

1719769.2  27064

5

ES 328                              ES 328                              ES 328

executed a secured promissory note in the amount of $225,000 in favor of J-Pad.  The secured

promissory note with the Debtor also purports to be secured by a separate security agreement dated

November 16, 2018, between the Debtor and J-Pad (the "Second J-Pad Transfer").  It is unknown if

the separate security agreement exists.

30.    Notwithstanding that the secured promissory notes were for $225,000, J-Sandcastle

did not advance or loan any money to J-Pad at any point in time.  The Debtor, however, advanced

$175,000 to J-Pad at about the time of the First J-Pad Transfer, with the balance of $50,000 coming

from the Debtor later (collectively, the "Third J-Pad Transfer").

31.    Despite the two secured promissory notes, the $225,000 was not owed to J-Pad.

Rather, the $225,000 was owed by J-Pad to the Debtor (who had in fact advanced the funds from

her personal accounts).

32.    On January 14, 2019, the Debtor individually and through J-Pad filed not less than

three UCC-1 Financing Statements with the California Secretary of State listing J-Pad as the

secured party and the collateral as the Property (collectively, the "Fourth J-Pad Transfer"). A UCC

filing failed to perfect liens against the Property.

33.    Thereafter, on August 20, 2020, the Debtor signed a "Statement to Encumber" that

was submitted to the HCD to add the Debtor's ex-husband, Ronald J. Pierpont, and J-Pad as

lienholders on the certificate of title for the Property (the "Fifth J-Pad Transfer").

34.    Thereafter, as of February 24, 2021, the certificate of title to the Property reflected

that Mr. Pierpont and J-Pad were the "legal owners" (i.e., the lienholders) on the Property.

35.    On or about July 9, 2021, however, Mr. Pierpont submitted a signed "Lien

Satisfied" form to the HCD removing Mr. Pierpont and J-Pad as the lienholders on the Property.

36.    Thereafter, as of August 3, 2021, the certificate of title to the Property did not reflect

any "legal owners" (i.e., lienholders) on the Property.

37.    On or about August 6, 2021 (postpetition), the Debtor, individually, signed and

submitted a "Statement of Facts" to the HCD stating that the legal owner of the Property was J-Pad

and that J-Pad perfected its lien on January 14, 2019 (the "Sixth J-Pad Transfer").

38.    The Debtor also submitted with the August 6, 2021, Statement of Facts a "Statement

1    to Encumber" purportedly signed on January 14, 2019, reflecting that the "legal owner" of the

2    Property was only J-Pad (the "Seventh J-Pad Transfer").

3         39.    The First, Second, Third, Fourth, Fifth, Sixth, and Seventh J-Pad Transfers are

4    collectively referred to as the "J-Pad Transfers".

5         40.    J-Pad paid no consideration for the J-Pad Transfers.

6        <u>The Steven and Brian Gallian Transfers</u>

7         41.    On August 20, 2020, the Debtor, as the member of J-Sandcastle, signed a

8    "Statement to Encumber" that was submitted to the HCD to add her sons Steven Gallian and Brian

9    Gallian as legal owners (i.e., lienholders) on the certificate of title for the Property (the "First

10   Steven and Brian Transfer").

11        42.    In addition, on December 4, 2020, the Debtor, as the member of J-Pad, filed a UCC

12   Financing Statement Amendment (UCC3) with the California Secretary of State listing Steven and

13   Brian Gallian as additional secured parties with respect to the Property (the "Second Steven and

14   Brian Transfer").  The UCC filings failed to perfect liens against the Property. The First Steven and

15   Brian Transfer and the Second Steven and Brian Transfer are collectively, the "Steven and Brian

16   Transfers".

17        43.    Steven and Brian Gallian paid no consideration for the Steven and Brian Transfers.

18       <u>Additional Postpetition Liens</u>

19        44.    In addition to the UCC Financing Statement Amendment (UCC3) filed on

20   December 4, 2020, with respect to Steven and Brian Gallian, on September 8, 2021, September 12,

21   2021, and September 24, 2021, the Debtor, individually and/or through J-Pad or J-Sandcastle,

22   purported to perfect or create additional liens on the Property in favor of J-Pad, Steven Gallian,

23   Brian Gallian, Justin Barclay, Ronald J. Pierpont, Robert J. McLelland, and E. J. Gallian by filing

24   multiple UCC Financing Statement Amendments (UCC3) with the California Secretary of State

25   listing J-Pad, Steven Gallian, Brian Gallian, Justin Barclay, Mr. Pierpont, Robert J. Mclelland, and

26   E. J. Gallian as additional secured parties (collectively, the "Postpetition Transfers"). The UCC

27   filings failed to perfect liens against the Property.

28        45.    J-Pad, Steven Gallian, Brian Gallian, Justin Barclay, Mr. Pierpont, Robert J.

1  McLelland, and E. J. Gallian paid no consideration for Postpetition Transfers or to be added as

2  additional secured parties with respect to the Property.

3        46.     The J-Sandcastle Transfers, J-Pad Transfers, Steven and Brian Transfers, and the

4  Postpetition Transfers are collectively referred to as the "Transfers".

5        47.     The Trustee is informed and believes, and based thereon alleges, that on the Petition

6  Date, there existed in this case one or more creditors holding unsecured claims allowable under

7  § 502 of the Code or that are not allowable only under § 502(e), that could have avoided the

8  Transfers under applicable law.

9

10  **FIRST CLAIM FOR RELIEF**

11  **(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550,**

12  **and California Civil Code §§ 3439.04, 3439.07 and 3439.08)**

13  **(Against All Defendants)**

14        48.     Plaintiff refers to and incorporates herein by reference each and every allegation

15  contained in paragraphs 1 through 47, inclusive, of this Complaint as though fully set forth herein.

16        49.     Plaintiff is informed and believes, and based thereon alleges, that the Debtor made

17  the Transfers with the actual intent to hinder, delay, or defraud one or more of her creditors.

18        50.     Pursuant to 11 U.S.C. §§ 544 and/or 548, California Civil Code § 3439.04(a), and

19  other applicable law, Plaintiff is entitled to avoid the Transfers as not being perfected or as

20  fraudulent.

21        51.     Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the

22  Transfers from the initial transferees and any subsequent transferees.

23        52.     Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value

24  thereof, plus interest thereon at the maximum legal rate.

25        53.     Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-

26  Pad, plus interest thereon at the maximum legal rate.

27        54.     Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided

28  Transfers, including title to and liens against the Property, are preserved for the benefit of the

ES 331          ES 331          ES 331

1 | Debtor's estate.

2

3 | **SECOND CLAIM FOR RELIEF**

4 | **(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550,**

5 | **and California Civil Code §§ 3439.05, 3439.07 and 3439.08)**

6 | **(Against All Defendants)**

7 |       55.      Plaintiff refers to and incorporates herein by reference each and every allegation

8 | contained in paragraphs 1 through 47, inclusive, of this Complaint as though fully set forth herein.

9 |       56.      Plaintiff is informed and believes, and based thereon alleges, that the Debtor

10 | received less than a reasonably equivalent value in exchange for the Transfers.

11 |       57.      Plaintiff is informed and believes, and based thereon alleges, that at the time the

12 | Transfers were made, the Debtor was either insolvent or became insolvent as a result of the

13 | Transfers.

14 |       58.      Pursuant to Sections 544(b) and/or 548 of the Bankruptcy Code, California Civil

15 | Code California Civil Code §§ 3439.05 and 3439.07, and other applicable law, Plaintiff is entitled

16 | to avoid the Transfers as not being properly perfected or as fraudulent.

17 |       59.      Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the

18 | Transfers from the initial transferees and any subsequent transferees.

19 |       60.      Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value

20 | thereof, plus interest thereon at the maximum legal rate.

21 |       61.      Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-

22 | Pad, plus interest thereon at the maximum legal rate.

23 |       62.      Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided

24 | Transfers, including title to and liens against the Property, are preserved for the benefit of the

25 | Debtor's estate.

26

27

28

1719769.2  27064

9

**ES 332**                          **ES 332**                          **ES 332**

**THIRD CLAIM FOR RELIEF**

**(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550,**

**and California Civil Code §§ 3439.04(a), 3439.07, and 3439.08)**

**(Against all Defendants)**

63.    Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 47, inclusive, and paragraph 56, of this Complaint as though fully set forth herein.

64.    Plaintiff alleges that at the time of the Transfers, the Debtor was engaged, or was about to engage, in business or a transaction or transactions for which her remaining assets were unreasonably small in relation to the business or transaction.

65.    Pursuant to Sections 544(b) and/or 548 of the Bankruptcy Code, California Civil Code California Civil Code §§ 3439.05 and 3439.07, and other applicable law, Plaintiff is entitled to avoid the Transfers as either not being properly perfected or as fraudulent.

66.    Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the Transfers from the initial transferees and any subsequent transferees.

67.    Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value thereof, plus interest thereon at the maximum legal rate.

68.    Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-Pad, plus interest thereon at the maximum legal rate.

69.    Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided Transfers, including title to and liens against the Property, are preserved for the benefit of the Debtor's estate.


**FOURTH CLAIM FOR RELIEF**

**(To Avoid and Recover Fraudulent Transfers under 11 U.S.C. §§ 544(b) and/or 548 and 550,**

**and California Civil Code §§ 3439.04(a), 3439.07, and 3439.08)**

**(Against all Defendants)**

70.    Plaintiff refers to and incorporates herein by reference each and every allegation

ES 333                    ES 333                    ES 333

contained in paragraphs 1 through 47, inclusive, and paragraph 56, of this Complaint as though fully set forth herein.

71.     Plaintiff alleges that the Debtor intended to incur, or believed or reasonably should have believed that she would incur, debts that would be beyond her ability to pay as such debts became due.

72.     Pursuant to Sections 544(b) and/or 548 of the Bankruptcy Code, California Civil Code California Civil Code §§ 3439.04(a) and 3439.07, and other applicable law, Plaintiff is entitled to avoid the Transfers as either not being properly perfected or as fraudulent.

73.     Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover the Transfers from the initial transferees and any subsequent transferees.

74.     Specifically, Plaintiff may recover the Property from J-Sandcastle, or the value thereof, plus interest thereon at the maximum legal rate.

75.     Additionally, Plaintiff may recover the Third J-Pad Transfer (i.e., $225,000) from J-Pad, plus interest thereon at the maximum legal rate.

76.     Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, all avoided Transfers, including title to and liens against the Property, are preserved for the benefit of the Debtor's estate.

## FIFTH CLAIM FOR RELIEF

**(To Avoid and Recover Postpetition Transfers under 11 U.S.C. § 549(a))**

**(Against All Defendants)**

77.     Plaintiff hereby incorporates by this reference all of his allegations in Paragraphs 1 through 76, inclusive, of this Complaint as though fully set forth herein.

78.     The Sixth J-Pad Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers were not authorized under the Bankruptcy Code or by the Court.

79.     Pursuant to § 549 of the Code, the Trustee is entitled to avoid the Sixth J-Pad Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers.

80.     Pursuant to the provisions of § 550 and § 551 of the Bankruptcy Code, any liens

11

ES 334     ES 334     ES 334

1    relating to Sixth J-Pad Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers are

2    preserved for the benefit of the Debtor's estate.

3

4                              **SIXTH CLAIM FOR RELIEF**

5                                 **(For Declaratory Relief)**

6                                **(Against All Defendants)**

7          81.    Plaintiff hereby incorporates by this reference all of his allegations in Paragraphs

8    1 through 80, inclusive, of this Complaint as though fully set forth herein.

9          82.    An actual controversy exists in that Plaintiff contends that the Defendants do not

10   have valid, perfected, and unavoidable liens on the Property.

11         83.    Pursuant to 11 U.S.C. § 544(a)(2) and other applicable law, the Trustee is entitled to

12   a judgment determining that the Defendants do not have valid, perfected, and unavoidable liens on

13   the Property.

14

15                            **SEVENTH CLAIM FOR RELIEF**

16                            **(For Turnover – 11 U.S.C. § 542)**

17                                **(Against all Defendants)**

18         84.    Plaintiff refers to and incorporates herein by reference each and every allegation

19   contained in paragraphs 1 through 83, inclusive, of this Complaint as though fully set forth herein.

20         85.    Upon avoidance, recovery, and preservation, the Property will be property of the

21   Debtor's bankruptcy estate.

22         86.    The Trustee may use, sell, or lease the Property under 11 U.S.C. § 363.

23         87.    Pursuant to 11 U.S.C. § 542, the Trustee is entitled to the turnover by the

24   Defendants of the Property.

25

26

27

28

**EIGHTH CLAIM FOR RELIEF**

**(For Breach of Contract)**

**(Against J-Pad)**

88.  Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 87, inclusive, of this Complaint as though fully set forth herein.

89.  Plaintiff alleges that the Debtor loaned $225,000 to J-Pad.

90.  Plaintiff alleges that the Debtor performed all of the terms and obligations on her part to be performed with respect to the terms of such loan.

91.  Plaintiff alleges that J-Pad has defaulted under the terms of the loan including, without limitation, its failure to repay all amounts owed.

92.  As of the date hereof, the outstanding principal balance owed to the Debtor by J-Pad is $225,000, plus interest.

**NINTH CLAIM FOR RELIEF**

**(To Avoid Unjust Enrichment)**

**(Against J-Pad)**

93.  Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 92, inclusive, of this Complaint as though fully set forth herein.

94.  Plaintiff alleges that as a result of the J-Pad Transfers, J-Pad has been unjustly enriched, so that Plaintiff is entitled to recover from J-Pad money, in a sum of not less than $225,000, plus interest.

**TENTH CLAIM FOR RELIEF**

**(To Avoid Unjust Enrichment)**

**(Against J-Pad)**

95.  Plaintiff refers to and incorporates herein by reference each and every allegation contained in paragraphs 1 through 94, inclusive, of this Complaint as though fully set forth herein

96.  J-Pad owes the Debtor the principal sum of $225,000 for money had and received

1719769.2  27064

13

1  by J-Pad from the Debtor.

2      97.    The Trustee is entitled to recover damages from J-Pad in the sum of not less than

3  $225,000, plus interest.

4

5      WHEREFORE, the Plaintiff prays for judgment against the Defendants as follows:

6  ON THE FIRST THROUGH FOURTH CLAIMS FOR RELIEF:

7      1.    For judgment in favor of the Plaintiff and against the Defendants avoiding the

8  Transfers;

9      2.    For a judgment in favor of the Plaintiff and against all transferees for the Trustee to

10  recover the transferred property;

11      3.    For a judgment in favor of the Plaintiff and against J-Sandcastle for the Trustee to

12  recover the Property from J-Sandcastle;

13      4.    For a judgment in favor of the Plaintiff and against J-Pad for the Trustee to recover

14  the Third J-Pad Transfer (i.e., $225,000) from J-Pad;

15      5.    For a judgment in favor of the Plaintiff and against the Defendants preserving any

16  avoided Transfers, including title to and liens against the Property, for the benefit of the Debtor's

17  estate.

18      6.    For an award of interest at the legal rate on all sums awarded to Plaintiff from

19  and after the date of the Transfers.

20  ON THE FIFTH CLAIM FOR RELIEF:

21      7.    For judgment in favor of the Plaintiff and against the Defendants avoiding and

22  recovering the Sixth J-Pad Transfer, Seventh J-Pad Transfer, and the Postpetition Transfers;

23      8.    For a judgment in favor of the Plaintiff and against the Defendants preserving any

24  liens relating to the J-J-Pad Transfers, Steven and Brian Transfers, and the Postpetition Transfers

25  for the benefit of the Debtor's estate.

26  ON THE SIXTH CLAIM FOR RELIEF:

27      9.    For a judgment determining that the Defendants do not have valid liens on the

28  Property.

ES 337                    ES 337                    ES 337

1    <u>ON THE SEVENTH CLAIM FOR RELIEF</u>:

2          10.    For a judgment for turnover of the Property to the Trustee.

3    <u>ON THE EIGHTH, NINTH, AND TENTH CLAIMS FOR RELIEF</u>:

4          11.    For the sum of $225,000, together with interest thereon as allowed by contract and

5    law.

6    <u>ON ALL CLAIMS FOR RELIEF</u>:

7          12.    For costs of suit incurred herein; and

8          13.    For all other and further relief as the Court deems just and proper.

9

10    DATED:  June 30, 2023          DANNING, GILL, ISRAEL & KRASNOFF, LLP

11

12                      By:      /s/ Aaron E. de Leest

13                             AARON E. DE LEEST

14                             Attorneys for Plaintiff Jeffrey I. Golden, Chapter 7
                                   Trustee

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ES 338                    ES 338                    ES 338

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| **PLAINTIFFS** <br> JEFFREY I. GOLDEN, Chapter 7 Trustee | **DEFENDANTS** J-SANDCASTLE CO., LLC; J-PAD LLC; STEVEN D. GALLIAN; BRIAN J. GALLIAN; JUSTIN BARCLAY; RONALD J. PIERPONT; ROBERT J. MCLELLAND; AND E. J. GALLIAN |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) <br> DANNING, GILL, ISRAEL & KRASNOFF, LLP <br> 1901 AVENUE OF THE STARS, SUITE 450 <br> LOS ANGELES, CA  90067-6006        310-277-0077 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) <br> ☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin <br> ☐ Creditor       ☐ Other <br> ☒ Trustee | **PARTY** (Check One Box Only) <br> ☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin <br> ☒ Creditor       ☐ Other <br> ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

(1)TO AVOID AND RECOVER FRAUDULENT TRANSFERS; (2) TO AVOID AND RECOVER POSTPETITION TRANSFERS; (3) FOR DECLARATORY RELIEF; (4) FOR BREACH OF CONTRACT; (5) FOR MONEY HAD AND RECEIVED; AND (6) UNJUST ENRICHMENT

| NATURE OF SUIT |
|---|

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer  [1]
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property  [2]

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
      (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment  [3]

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)  [4]

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $  225,000 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>JAMIE LYNN GALLIAN | BANKRUPTCY CASE NO.<br>8:21-bk-11710-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISION OFFICE<br>SANTA ANA | NAME OF JUDGE<br>SCOTT C. CLARKSON |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Aaron E. de Leest | | |
| DATE<br><br>JUNE 30, 2023 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Aaron E. de Leest | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*):

**DEBTOR'S OMNIBUS OPPOSITION TO TRUSTEE'S MOTIONS TO SELL [Docket 539] AND FOR TURNOVER OF PROPERTY [Docket 538] AND HOUSER JOINDERS [Docket 551 & 552]; DECLARATION OF JAMIE GALLIAN**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 18, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 18, 2025 | Christopher L. Blank | /S/Christopher L. Blank |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## SERVICE LIST

8:21-bk-11710-SC Notice will be electronically mailed to:
Bradford  Barnhardt on behalf of Interested Party   Courtesy NEF
bbarnhardt@marshackhays.com,  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford  Barnhardt on behalf of Plaintiff   Houser Bros. Co.
bbarnhardt@marshackhays.com,  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney   Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff   Jeffrey I. Golden
adeleest@marshackhays.com,  adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com,  adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor   The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Interested Party   The Huntington Beach Gables Homeowners
Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Plaintiff   The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor   Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party   Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff   Houser Bros. Co.

ES 342                          ES 342                          ES 342

ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor   The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com,  kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff   The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com,  kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com,  danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com,  danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal  Malmed on behalf of Interested Party   Courtesy NEF
,  cheryl.caldwell@gmlaw.com

Shantal  Malmed on behalf of Plaintiff   Jeffrey I. Golden
shantal.malmed@gmlaw.com,  cheryl.caldwell@gmlaw.com

Shantal  Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com,  cheryl.caldwell@gmlaw.com

Laila  Masud on behalf of Creditor   Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila  Masud on behalf of Interested Party   Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila  Masud on behalf of Plaintiff   Houser Bros. Co.
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com,  mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party   Courtesy NEF
mail@mellorlawfirm.com,  mellormr79158@notify.bestcase.com

Valerie  Smith on behalf of Interested Party   Courtesy NEF
claims@recoverycorp.com

 United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

ES 343                              ES 343                              ES 343

8:21-bk-11710-SC Notice will not be electronically mailed to:
Greg  Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

 Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William  Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Jamie Lynn Gallian
16222 Monterey Ln Unit 376
Huntington Beach, CA 92649

Janine  Jasso
PO Box 370161
El Paso, CA 79937

Michael D Poole on behalf of Creditor   The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff   The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

ERIC P. ISRAEL, #132426
EPI@LNBYG.COM
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Phone: 310-229-1234

Attorneys for JEFFREY I. GOLDEN, Trustee

D. EDWARD HAYS, #162507
ehays@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Creditor,
HOUSER BROS. CO. dba RANCHO DEL
REY MOBILE HOME ESTATES

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:21-bk-11710-SC |
| JAMIE LYNN GALLIAN, | Chapter 7 |
| Debtor. | JOINT OMNIBUS REPLY IN SUPPORT OF CHAPTER 7 TRUSTEE'S: |
| | (1) MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE (DOCKET NO. 358); AND |
| | (2) MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY |

1

REPLY IN SUPPORT OF TURNOVER MOTION AND SALE MOTION

4880-1284-8131,v.1

1

2

3

4

5

6

7  / / /

8  / / /

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION (DOCKET NO. 539)

Date:   March 4, 2025
Time:   11:00 a.m.
Ctrm:   5C

4880-1284-8131,v.1

ES 346    ES 346    ES 346

1

**TABLE OF CONTENTS**

2

1.      Summary of Argument ........................................................................................3

2.      Factual Background ...........................................................................................4

3.      Legal Argument ................................................................................................4

        A.      The Debtor's Homestead Exemption does not preclude the Trustee's sale of
                the Property. ...........................................................................................4

        B.      The proposed sales price is adequate, fair, and reasonable....................12

        C.      The Trustee is entitled to turnover of the Property. ...............................14

4.      Conclusion ......................................................................................................14

Declaration of Janine Jasso .........................................................................................16

REQUEST FOR JUDICIAL NOTICE ..........................................................................17

**TABLE OF AUTHORITIES**

**Cases**

*Data Mountain Solutions, Inc. v. Giordano,*
    680 F. Supp. 2d 110, 125 (D.D.C. 2010) .......................................................... 10

*Elemary v. Holzmann A.G.,*
    533 F. Supp. 2d 116, 125 n.6 (D.D.C. 2008) ..................................................... 10

*Heintz v. Carey (In re Heintz),*
    198 B.R. 581, 586 (B.A.P. 9th Cir. 1996)........................................................... 12

*In re Bunn-Rodemann,*
    491 B.R. 132, 136 (Bankr. E.D. Cal. 2013).......................................................... 5

*In re Carvell,*
    222 B.R. 178, 180 (B.A.P. 1st Cir. 1998) ........................................................... 12

*In re Van de Kamp's Dutch Bakeries,*
    908 F.2d 517, 518-20 (9th Cir. 1990) ................................................................ 11

*Morris v. St. John Nat'l Bank (In re Haberman),*
    516 F.3d 1207, 1210 (10th Cir. 2008) ............................................................... 12

*New Hampshire v. Maine,*
    532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) ............................... 10

i

ES 347                    ES 347                    ES 347

*Roach v. Marshack (In re Roach)*,
  2019 Bankr. LEXIS 263 (B.A.P. 9th Cir. Jan. 29, 2019) ........................................ 5, 6, 7

*Swenson v. Bushman Inv. Props.*,
  2013 U.S. Dist. LEXIS 104002, at *61 (D. Idaho July 22, 2013) ................................. 10

*Wisdom v. Gugino*,
  649 Fed.Appx. 583, 584 (9th Cir. 2016) ..................................................................... 14

**Statutes**

11 U.S.C. § 363(b)(1) ..................................................................................................... 7

11 U.S.C. 363(f) ............................................................................................................. 7

11 U.S.C. § 510(c)(2) ...................................................................................................... 6

11 U.S.C. § 522(f) ........................................................................................................... 9

11 U.S.C. § 522(g) .......................................................................................................... 6

11 U.S.C. § 541(a)(3) and (a)(4) .................................................................................... 7

11 U.S.C. § 548 ........................................................................................................ 11, 12

11 U.S.C. § 551 ........................................................................................................ 11, 12

Cal. Code Civ. P. § 704.850(a) ....................................................................................... 5

**Other Authorities**

*See* 5 COLLIER ON BANKRUPTCY P 551.02[2] (2024)....................................................... 6

ii

REPLY IN SUPPORT OF TURNOVER MOTION AND SALE MOTION

4880-1284-8131,v.1

ES 348                                    ES 348                                    ES 348

1   TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

2   THE DEBTOR AND HER COUNSEL OF RECORD, AND ALL INTERESTED PARTIES:

3          Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") and Jeffrey I.

4   Golden solely in his capacity as Chapter 7 Trustee ("Trustee") submit this Joint Omnibus Reply

5   ("Reply") in support of the following motions filed by the Trustee on January 31, 2025: (1) Motion

6   for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured

7   Home and Authorizing Issuance of Writ of Assistance, Docket No. 538 ("Turnover Motion"); and

8   (2) Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane,

9   Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and

10  Homestead Exemption, Docket No. 539 ("Sale Motion").[1]

11  **1.      Summary of Argument**

12         Under Section 542, "an entity…in possession, custody, or control, during the case, of

13  property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may

14  exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or

15  the value of such property, unless such property is of inconsequential value or benefit to the estate."

16  In this case, the Debtor is in possession of the subject manufactured home which became property of

17  the estate upon the filing of the bankruptcy petition (the "Property"). The Property may be sold by

18  the Trustee under Section 363 to realize the benefit of the transfers of title and liens which the

19  Debtor fraudulently placed against the Property and which the Trustee avoided, recovered, and

20  preserved.

21         The Debtor's opposition contends that the Trustee may not sell the Property because the

22  proposed sale price is insufficient to fully pay her allowed homestead. This is wrong because a

23  homestead exemption is junior in priority to voluntary liens and Section 522(g) prohibits a debtor

24

25  _____
    [1] All capitalized terms not otherwise defined in this Reply shall have the meaning ascribed to them

26  in the Sale Motion.

27                                            3
    _____
           REPLY IN SUPPORT OF TURNOVER MOTION AND SALE MOTION
28  4880-1284-8131,v.1

ES 349                        ES 349                        ES 349

from claiming an exemption in the Property which she voluntarily transferred but which the Trustee

recovered. As such, the proceeds of sale subject to the recovered liens are not subject to the allowed

homestead. Instead, the homestead would only attach to the value, if any, in excess of the avoided,

recovered, and preserved liens. Because the fraudulent liens exhaust the value of the property

rendering the homestead out of the money, the Debtor has no one to blame but herself for voluntarily

encumbering her home with fraudulent liens.[2]

## 2.    Factual Background

On January 31, 2025, the Trustee filed the Turnover Motion and Sale Motion as Docket Nos.
538 and 539, respectively.

On February 13, 2025, Houser Bros. filed a joinder in support of the Turnover Motion,
Docket No. 552, and a joinder in support of the Sale Motion, Docket No. 551.

On February 18, 2025, the Debtor substituted in counsel [Docket No. 553] and filed an
"Omnibus Opposition to Trustee's Motions to Sell . . . and for Turnover of Property . . . and Houser
Joinders" ("Opposition"), with a supporting "Declaration of Jamie Lynn Gallian" ("Gallian
Declaration").[3] Docket No. 554.

## 3.    Legal Argument

### A.    The Debtor's Homestead Exemption does not preclude the Trustee's sale of the Property.

The Debtor, throughout her Opposition, highlights her "unassailable automatic homestead
exemption in her equitable interest in the Property." Opposition at 2. The Debtor's homestead

---

[2] Similarly, the Debtor's discharge was denied based on her fraudulent concealment of her interest in the Property.

[3] Evidentiary objections have been separately filed to the Gallian Declaration. Even if the Court does not sustain the evidentiary objections, the Debtor's representations are unavailing for the reasons articulated herein.

ES 350                    ES 350                    ES 350

1   exemption in the Property (*i.e.*, the mobilehome) is final and not challenged by any party.[4]

2          However, Debtor claims that her homestead exemption precludes the Trustee's

3   administration of the Property unless she consents or the sale generates sufficient proceeds to pay the

4   entirety of her homestead exemption, Opposition at 3, 9. This contention is unfounded. Consensual

5   liens have priority over exemptions. *See* Cal. Code Civ. P. § 704.850(a) ("The levying officer shall

6   distribute the proceeds of sale of a homestead in the following order: (1) To the discharge of all liens

7   and encumbrances, if any, on the property. (2) To the judgment debtor in the amount of any

8   applicable exemption of proceeds pursuant to Section 704.720."); *see also In re Bunn-Rodemann*,

9   491 B.R. 132, 136 (Bankr. E.D. Cal. 2013) (noting that exemptions may be claimed "only against

10  involuntary liens").

11         In *Roach v. Marshack (In re Roach)*, 2019 Bankr. LEXIS 263 (B.A.P. 9th Cir. Jan. 29, 2019),

12  the Bankruptcy Appellate Panel affirmed an order entered by the Hon. Judge Theodor C. Albert, that

13  approved a trustee's sale of a debtor's home to realize the benefit of a consensual lien recovered by

14  the estate where the debtor received no proceeds on account of her allowed homestead exemption.

15  There, Elaine Marie Roach ("Ms. Roach") filed a Chapter 7 bankruptcy petition in May 2017, with

16  the property of the estate including real property encumbered by a third deed of trust in favor of

17  Mutual of Omaha Bank ("Omaha Bank"). *Id.* at *1-2. The Chapter 7 trustee obtained court approval

18  of a compromise with Omaha Bank that, *inter alia*, subordinated one-half of Omaha Bank's claim

19  that was secured by the deed of trust. Under Section 510(c)(2), a lien securing a subordinated claim

20  is transferred to the estate. As such, the court approved the trustee's sale to realize the benefit of 50%

21  of the funds otherwise subject to the deed of trust.

22

23

24

25  [4] On February 20, 2025, the Court entered an "Order Granting Houser Bros. Co. DBA Rancho Del
26  Rey Mobilehome Estates's Motion Objecting to Debtor's Claimed Homestead Exemption in 'Pad'
    Located at 16222 Monterey Ln., Space 376, Huntington Beach, CA 92649." Docket No. 555.

27                                                    5

28  4880-1284-8131,v.1

No proceeds of sale were paid to the debtor because the voluntary liens exceeded the value of the property.[5] *Id.* at *5-6. Ms. Roach objected to the trustee's motions on the grounds, among others, that the trustee was improperly trying to sell the property without paying her on account of her homestead exemption. *Id.* at *6. The bankruptcy court granted the trustee's motions, reasoning that homesteads are junior in priority to voluntary liens, even where the lien is recovered by the estate. *Id.* at *7. The bankruptcy court highlighted that there was no legal or equitable reason for Ms. Roach to receive proceeds on account of her homestead exemption at the expense of her creditors when she consented to a lien against the property for more than its value. *Id.* at *7-8.

Ms. Roach appealed the rulings on both motions to the 9th Circuit Bankruptcy Appellate Panel ("BAP"). *Id.* at *8. After finding that the appeal of the sale order regarding the actual sale transaction was moot following the sale to a good faith purchaser, the BAP affirmed the bankruptcy court's decision that Ms. Roach was not entitled to claim a homestead exemption in the proceeds of sale. *Id.* at *9-10.

In this case, just as in *Roach*, the Trustee may sell the Property with no distribution to Debtor on account of her homestead exemption because Debtor granted J-Pad a consensual lien against the Property. That consensual lien has been avoided, recovered, and preserved for the benefit of the Estate by this Court. Under 11 U.S.C. § 522(g), the Debtor may not claim any exemption in the amounts subject to avoided and recovered liens. *See* 5 COLLIER ON BANKRUPTCY P 551.02[2] (2024) ("[Section 522(g)], however, does not allow a debtor to exempt property subject to the trustee's preserved lien position, unless such preserved lien was otherwise avoidable under section 522. Thus, generally, property that was voluntarily transferred by the debtor and recovered by the trustee under section 550 and preserved under section 551 cannot be exempted."). Because Debtor has no claim of

---

[5] The trustee highlighted that Ms. Roach could not claim an exemption against the proceeds from the sale of the property pursuant to the subordination agreement because such a claim would be prohibited by 11 U.S.C. § 522(g), which provides that exemptions in property recovered by a trustee under 11 U.S.C. § 510(c)(2) may only be claimed where the recovered property was not voluntarily transferred by the debtor. *Id.* at *6.

1  exemption in the proceeds from the sale of the Property subject to the avoided and recovered liens,

2  her arguments that California law prohibits the sale unless the proceeds will be sufficient to pay the

3  entirety of her exempt interest, Opposition at 9-10, or that 11 U.S.C. § 363(f) prohibits a sale free

4  and clear of her exempt interest, Opposition at 12-13, fail.

5      *In re Roach*, *supra*, also illustrates that a trustee may sell property to realize the benefit of a

6  recovered lien, in contravention of Debtor's argument, that Trustee "is not asking for permission to

7  sell [the J-Pad lien]" (or any of the other avoided, recovered, and preserved liens). Opposition at 10.

8  As discussed in more detail below, the avoided, recovered, and preserved liens became property of

9  the Estate upon recovery and preservation. 11 U.S.C. § 541(a)(3) and (a)(4). Plus, the Trustee may

10  sell the Property because it became property of the estate upon the Debtor's filing of the voluntary

11  petition. *See* 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease,

12  other than in the ordinary course of business, property of the estate . . . .").

13      Debtor next claims that Trustee cannot sell the Property because J-Pad's lien never attached

14  to it, and therefore no money will inure to the Estate from the sale of the Property. Opposition at 16.

15  In making this argument, Debtor overlooks that the Court has already found that J-Pad held a lien to

16  secure the principal balance of a loan in the amount of $225,000.00:

17      As noted previously, J-Pad was the holder of a $22[5],000 promissory note. Defendant

18      herself executed the promissory note on JPad's behalf, knowing full well of the asset.

19      It is this Court's view that $225,000 is a significant amount of money, and Defendant's

20      failure to properly schedule her interest in J-Pad, the note and lienholder of a significant

21      asset, is a material, false oath made knowingly and fraudulently. So too was

22      Defendant's failure to schedule a value for J-Pad, who held a significant asset in the

23      form of the aforementioned note and lien on the mobile home. The foregoing, coupled

24      with the evidence presented by Plaintiff of Defendant's other glaring omissions and

25      false oaths, are sufficient to demonstrate that Plaintiff is entitled to judgment against

26      Defendant on its § 727(a)(4) cause of action.

27

28  4880-1284-8131,v.1

ES 353            ES 353            ES 353

1  *Houser Bros. Co. v. Gallian (In re Gallian)*, Case No. 8:21-ap-01097-SC, Docket No. 81 at 16

2  (footnote omitted); *accord In re Gallian*, District Court Appeal No. 8:23-cv-00961-WLH, Docket

3  No. 26 ("The secured promissory note stated that J-Sandcastle was a borrower promising to pay

4  $225,000 to J-Pad, LLC."). This finding is law of the case. *See United States v. Lummi Nation*, 763

5  F.3d 1180, 1185 (9th Cir. 2014) (indicating that under the doctrine of law of the case, a court is

6  generally precluded from reconsidering an issue previously decided by the same court, or a higher

7  court in the identical case).

8      The Court's finding stems from Debtor's own testimony. During the April 26, 2023, trial on

9  Houser Bros.'s claims under 11 U.S.C. § 727, Debtor gave the following responses to questioning by

10  Houser Bros.'s counsel:

11      BY MR. HAYS:

12      Q And is the $225,000 that you're transferring here separate and apart from the $185,000

13          transferred to Ms. Ryan?

14       A Yes, sir.

15      Q Okay. And the promissory note, however, reflects that J-Sandcastle is the borrower, and that

16          J-Pad is the holder that is owed the $225,000, correct?

17      A That's correct, sir.

18      Q And this promissory note is dated November 16 of 2018, as reflected on page 115?

19      A That's correct.

20      Q Okay. Did J-Pad, in fact, loan any money to J-Sandcastle?

21      A No, they did not.

22      Q But the promissory note requires J-Sandcastle to pay J-Pad the money, correct?

23      A They are the holder of the note, yes, with me.

24      . . .

25      Q The collateral that was the subject of the security agreement was the manufactured home in

26          Space 376, correct?

27                                          8
                      REPLY IN SUPPORT OF TURNOVER MOTION AND SALE MOTION

28  4880-1284-8131,v.1

1  A That's correct.

2  Q Okay. And so J-Sandcastle, who was on title, pledged a security interest in the mobile home

3  to secure repayment of this $225,000 we're talking about. That's what these documents were

4  accomplishing, correct?

5  A Yes.

6  Q Okay. Did J-Sandcastle ever pay $225,000 to J-Pad?

7  A No, sir.

8  Q Okay. Was the money ever paid to you individually?

9  A No, sir.

10  Q Was there ever any lawsuit filed to enforce payment under this note obligation?

11  A No, sir. It's not due yet.

12  *See* AP Docket No. 72 at 66-67, 69 (trial transcript).

13  A few months before the trial, on January 13, 2023, Debtor filed a "Motion to Avoid Lien

14  Under 11 U.S.C. § 522(f)" ("Lien Avoidance Motion"), in which she represented under penalty of

15  perjury that J-Pad held a lien against in the Property in the original amount of $225,000.00 and

16  current amount of $175,000.00.[6] Docket No. 297 at 2-3.

17  Debtor made multiple representations to the California Department of Housing and

18  Community Development that J-Pad was the legal owner (*i.e.*, lienholder) against the Property. True

19  and correct copies of Debtor's HCD submissions are attached to the Declaration of Janine Jasso as

20  **Exhibit 1** and were attached to the Trustee's DJ Motion (defined below) as Exhibit 4. *See Golden v.*

21  *J-Pad LLC, et al.*, Case No. 8:23-ap-01064-SC, Docket No. 76 at 110, 112, 114.

22  Debtor filed multiple versions of Schedule D identifying a secured claim held by J-Pad

23  against the Property. *See* Docket No. 1 (listing a $175,000 secured claim of J-Pad against the

24

25  [6] The Lien Avoidance Motion contains an admission that the J-Pad lien trumps the homestead

26  exemption by listing the lien as senior in priority to the amount of Debtor's exemption. Docket No.
    297 at 4.

27
REPLY IN SUPPORT OF TURNOVER MOTION AND SALE MOTION

28  4880-1284-8131,v.1

ES 355                    ES 355                    ES 355

Property); Docket No. 17 (including a $175,000 secured claim of J-Pad against the Property);

Docket No. 22 (including a $225,000 secured claim of J-Pad against the Property). Debtor's

admissions, that J-Pad held a $225,000.00 lien against the Property, now bind her. *See Am. Title Ins.*

*Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (defining "judicial admissions" as factual

assertions in pleadings and pretrial orders that, unless amended, are conclusively binding on the

party who made them).

Debtor even filed a proof of claim in her own case representing under penalty of perjury that

the J-Pad lien was due and owing with no right of setoff.  Proof of claim no. 7-1 (Exhibit "11" to

Sale Motion).  Attached to that proof of claim is both the security agreement and promissory note.

Judicial estoppel further defeats the Debtor's claim that the lien is worthless. Judicial

estoppel is an equitable doctrine "that prevents parties from abusing the legal system by taking a

position in one legal proceeding that is inconsistent with a position taken in an earlier proceeding."

*Swenson v. Bushman Inv. Props.*, 2013 U.S. Dist. LEXIS 104002, at *61 (D. Idaho July 22, 2013)

(quoting *Data Mountain Solutions, Inc. v. Giordano*, 680 F. Supp. 2d 110, 125 (D.D.C. 2010) (citing

*New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001));

*Elemary v. Holzmann A.G.*, 533 F. Supp. 2d 116, 125 n.6 (D.D.C. 2008). The doctrine of judicial

estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately

changing positions according to the exigencies of the moment." *Elemary*, 533 F. Supp. 2d at 125 n.6

(quoting *New Hampshire v. Maine*, 532 U.S. at 749-50) (internal quotation marks omitted). Here, the

Debtor asserted that the title to and liens against the Property precluded the Trustee from employing

a broker to sell it. Dk. No. 208.  The Court adopted this position by denying the Trustee's application

to employ a broker unless or until the liens were avoided. Dk. No. 241.

While Debtor endeavors to the Trustee for providing insufficient evidence of the amount of

the J-Pad lien, the proof of claim she filed admits both liability and amount.  Proof of Claim no. 7-1

(claim filed for $225,000 plus interest).  She also overlooks the ample evidence supporting Trustee's

motion for default judgment against J-Pad ("DJ Motion"). *See Golden v. J-Pad LLC, et al.*, Case No.

10

ES 356                                        ES 356                                        ES 356

1  8:23-ap-01064-SC, Docket No. 76. The DJ Motion attached as Exhibit 2 a copy of a "Secured

2  Promissory Note (Fully Amortized)" ("Secured Note") containing the following language: "On or

3  before 12/16/2048, for value received, the undersigned J-SANDCASTLE CO LLC (the 'Borrower')

4  promises to pay to the order of J-PAD, LLC (the 'Holder'), in the manner and at the place provided

5  below, the principal sum of $225000." *See Golden v. J-Pad LLC, et al.*, Case No. 8:23-ap-01064-SC,

6  Docket No. 76 at 87. The Secured Note was "secured by certain assets of the Borrower in

7  accordance with a separate security agreement dated 11/16/2018 between the Holder and the

8  Borrower." *Id.* at 88. DJ Motion Exhibit 3 contains UCC Financing Statements identifying J-Pad as

9  the "Secured Party" with the Property as the collateral. *Id.* at 97-100. The Trustee has calculated

10  interest thereunder, and again, Debtor attaches the security agreement itself to proof of claim no. 7-1.

11        Based on the evidence Trustee submitted, the Court's default judgment against J-Pad

12  specifies that the "transfer to the Defendant [J-Pad] of a lien on and security interest in the [Property]

13  reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and

14  the Defendant dated November 16, 2018 and lien on the Property in the amount of $225,000 in favor

15  of the Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of

16  Jeffrey I. Golden, Chapter 7 Trustee . . . ." *See Golden v. J-Pad LLC, et al.*, Case No. 8:23-ap-01064-

17  SC, Docket No. 79 at 2.

18        To the extent Debtor claims that the fraudulent nature of the J-Pad lien she granted means

19  that it cannot serve as a basis for Trustee's sale of the Property, this argument also fails. Based on

20  the plain language of 11 U.S.C. § 551, *any* transfer avoided under 11 U.S.C. § 548 is automatically

21  preserved for the benefit of the Estate. *See* 11 U.S.C. § 551 ("Any transfer avoided under

22  section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of

23  this title, is preserved for the benefit of the estate but only with respect to property of the estate.");

24  *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 518-20 (9th Cir. 1990) (rejecting the

25  argument that a trustee can preserve a transfer of a lien under § 551 only to the extent that the

26  interest is otherwise valid under state law); *accord Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 586

27  <div align="center">11</div>

28  <div align="center">REPLY IN SUPPORT OF TURNOVER MOTION AND SALE MOTION</div>

4880-1284-8131,v.1

1  (B.A.P. 9th Cir. 1996) ("§ 551 does not exclude exempt property from preservation. An avoided

2  interest or lien encumbering exempt property is automatically preserved for the benefit of the estate

3  under § 551."). Given that 11 U.S.C. § 548 provides authority for a trustee to avoid "*Fraudulent*

4  transfers and obligations" (emphasis added), § 551 clearly envisions preservation of purely

5  fraudulent liens. Without this automatic preservation under Section 551, avoiding a lien would only

6  result in a windfall to junior lienholders or interest holders at the expense of the estate and unsecured

7  creditors. *Morris v. St. John Nat'l Bank (In re Haberman)*, 516 F.3d 1207, 1210 (10th Cir. 2008); *In

8  re Carvell*, 222 B.R. 178, 180 (B.A.P. 1st Cir. 1998).

9      Debtor also makes an erroneous argument, without any supporting authority, that the Trustee

10  is limited to state law procedures to foreclosure on the recovered lien.  Opposition at pp.8-10.

11  Debtor admits that not a single case has applied those provisions as against a bankruptcy trustee.

12  Moreover, the Trustee also obtained a judgment avoiding the transfer of title to the Property, so title

13  is now vested in the Trustee's name.  Exhibit "7" to Sale Motion.  Because title is vested in the

14  Trustee, under section 363 he may sell the Property, subject to Court approval.  This argument too is

15  without merit.

16          **B.      The proposed sales price is adequate, fair, and reasonable.**

17      In the Sale Motion, the Trustee notes that he retained a licensed real estate broker to list,

18  market, and aid him in selling the Property. Sale Motion at 21. The Trustee marketed the Property to

19  the world at large via the MLS for several months, and he obtained an offer subject to overbidding

20  and Court approval. *Id.* at 21-22. The Buyer's offer is the highest and best offer—and the only

21  offer—received to date. *Id.* at 22. The Trustee and Buyer agreed on the price following arm's-length

22  negotiations, and the Trustee believes that the price represents a fair and adequate price for the

23  Property. *Id.* at 22. Further, the proposed sale is subject to overbids. *Id.* at 18-20. For a complete

24  discussion of the marketing of the Property and the negotiations with the Buyer, *see* the Declarations

25  of Jeffrey I. Golden and Greg Bingham submitted in support of the Sale Motion. Docket No. 539 at

26  27-28, 30-31.

27                                                 12
                    REPLY IN SUPPORT OF TURNOVER MOTION AND SALE MOTION

28  4880-1284-8131,v.1

Despite the Trustee having marketed the Property to the world at large for several months and only receiving one offer, the Debtor—in her declaration rather than in the Opposition itself— suggests that the sales price is too low. *See* Gallian Decl., ¶¶ 9-14. The Debtor seems to base her argument primarily on her hearsay representation that she has previously received offers to purchase the Property in excess of $335,000.00. *Id.* ¶ 13. The Debtor does not identify who these offerors are nor any other terms of the offers.

The Debtor also seems to challenge the 6% real estate agent commission proposed in the Sale Motion. According to her: "Homes in my neighborhood are not typically sold by real estate brokers because the homes are not considered real property. Rather, homes are sold like cars and other types of personal property, without paying commissions of 6%." Gallian Decl., ¶ 14. The Court has already entered an "Order Granting Trustee's Application to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328" ("Employment Order"), which, *inter alia*, authorized the Trustee to employ Coldwell Banker Realty and its agents, William Friedman and Greg Bingham as the Estate's real estate agents pursuant to the terms and conditions set forth in the employment application. Docket No. 431. The Employment Order is not subject to a stay pending appeal. The "Application to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328," Docket No. 395, attached as Exhibit 1 a "Residential Listing Agreement" with a 6% commission payable to Coldwell Banker Residential. To the extent the Debtor challenges the Sale Motion's proposal to pay the Estate's real estate professionals a 6% commission, her challenge amounts to an improper attack on the Court's final Employment Order.

Debtor's suggestion, that the Property should not be sold by a real estate broker, is especially disingenuous given that she was recently subjected to contempt proceedings for her own retention of a real estate agent, Joseph Arroyo, to market the Property. *See* Docket No. 440 (September 12, 2024, "Order to Show Cause Why Debtor Jamie Lynn Gallian and Joseph Arroyo Should Not Be Found in Contempt of Court"); *see also* Docket No. 495 (October 30, 2024, "Order on Order to Show Cause

13

REPLY IN SUPPORT OF TURNOVER MOTION AND SALE MOTION

4880-1284-8131,v.1

1   Why Debtor Jamie Lynn Gallian and Joseph Arroyo Should Not Be Found in Contempt of Court").

2   The fact that the Debtor now faults the Trustee for retaining a real estate agent to market and sell the

3   Property when she did the same just months ago is hypocritical and nothing more than a desperate

4   attempt to get the Sale Motion denied. And, the Debtor overlooks the fact that this Property is in

5   bankruptcy proceedings such that the Trustee has a duty to achieve the highest and best price for the

6   benefit of the Estate's creditors. *See Wisdom v. Gugino*, 649 Fed.Appx. 583, 584 (9th Cir. 2016) ("A

7   bankruptcy trustee is a representative and fiduciary of the estate, [citations], charged primarily with

8   conserving estate assets and maximizing distributions to creditors[.]"). Employment of a real estate

9   broker to market the Property to the world at large furthers the Trustee's duties.

### C.    The Trustee is entitled to turnover of the Property.

11      Debtor's entire Opposition to the Turnover Motion derives from her contention that Trustee

12   cannot sell the Property. Opposition at 17. But, as set forth in this Reply and in the Sale Motion,

13   Trustee *can* sell the Property. Thus, Debtor's Opposition to the Turnover Motion must fail. It bears

14   repeating that the Trustee and Houser Bros. lack confidence that Debtor will timely vacate the

15   Property given her past efforts to obstruct Estate administration. To ensure that the sale of the

16   Property closes smoothly and timely, a turnover order as requested in the Turnover Motion is

17   necessary.

### 4.    Conclusion

19      Since 2018, the Debtor has unlawfully resided without a lease in the park owned by Houser

20   Bros. The bankruptcy was filed in 2021 to stop the unlawful detainer proceedings filed against her

21   by Houser Bros. Because the Debtor fraudulently subjected the property to liens and secreted title in

22   a third party, she further delayed payments to creditors because it took time for the Trustee to avoid,

23   recover, and preserve the liens and title transfer. The Opposition is another attempt by Debtor to

24   continue to hinder, delay and defraud her creditors by attempting to argue that the Trustee may not

25   sell property of the estate to realize the benefit of the fraudulent liens he recovered.

4880-1284-8131,v.1

1    For the reasons set forth above and in the Sale Motion and Turnover Motion, Houser Bros.

2    requests that the Court overrule the Opposition and grant the Sale Motion and Turnover Motion in

3    their entirety.

4

5    DATED: February 25, 2025          LEVENE, NEALE, BENDER, YOO & GOLUBCHIK
                                       L.L.P.
6

7                                      By: _____
8                                          ERIC P. ISRAEL
                                           Attorneys for JEFFREY I. GOLDEN,
9                                          Trustee

10   DATED: February 25, 2025          MARSHACK HAYS WOOD LLP

11                                          /s/ D. Edward Hays
                                       By: _____
12
                                           D. EDWARD HAYS
13                                         BRADFORD N. BARNHARDT
                                           Attorneys for Creditor,
14                                         HOUSER BROS. CO. dba RANCHO DEL
                                           REY MOBILE HOME ESTATES
15

16

17

18

19

20

21

22

23

24

25

26

27                                         15
                          REPLY IN SUPPORT OF TURNOVER MOTION AND SALE MOTION
28   4880-1284-8131,v.1

1 **Declaration of Janine Jasso**

2     I, JANINE JASSO, say and declare as follows:

3     1.    I am an individual over 18 years of age and competent to make this Declaration.

4     2.    If called upon to do so, I could and would competently testify as to the facts set forth

5 in this Declaration.

6     3.    The facts set forth below are true of my personal knowledge.

7     4.    I make this Declaration in support of Houser Bros. Co. dba Rancho Del Rey Mobile

8 Home Estates's Reply in Support of the Chapter 7 Trustee's Turnover Motion and Sale Motion

9 ("Reply"). All capitalized terms not otherwise defined in this Declaration shall have the meaning

10 ascribed to them in the Reply.

11     5.    Via FOIA request I have obtained certain documents from the California Department

12 of Housing and Community Development ("HCD") regarding J-Pad LLC's lien against the Property.

13 True and correct copies of these HCD documents are attached as **Exhibit 1**.

14     I declare under penalty of perjury that the foregoing is true and correct. Executed on

15 February 25, 2025.

16

17             _____

18             JANINE JASSO

19

20

21

22

23

24

25

26

27

28

**REQUEST FOR JUDICIAL NOTICE**

Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") and Jeffrey I. Golden solely in his capacity as Chapter 7 Trustee ("Trustee") request pursuant to Rule 201 of the Federal Rules of Evidence, that this Court take judicial notice of the following in support of the Joint Omnibus Reply ("Reply") in support of the Trustee's Turnover Motion and Sale Motion. All capitalized terms not otherwise defined in this Request for Judicial Notice shall have the meaning ascribed to them in the Reply.

1.      On January 31, 2025, the Trustee filed the Turnover Motion and Sale Motion as Docket Nos. 538 and 539, respectively.

2.      On February 13, 2025, Houser Bros. filed a joinder in support of the Turnover Motion, Docket No. 552, and a joinder in support of the Sale Motion, Docket No. 551.

3.      On February 18, 2025, the Debtor substituted in counsel [Docket No. 553] and filed an "Omnibus Opposition to Trustee's Motions to Sell . . . and for Turnover of Property . . . and Houser Joinders" ("Opposition"), with a supporting "Declaration of Jamie Lynn Gallian" ("Gallian Declaration"). Docket No. 554.

4.      On February 20, 2025, the Court entered an "Order Granting Houser Bros. Co. DBA Rancho Del Rey Mobilehome Estates's Motion Objecting to Debtor's Claimed Homestead Exemption in 'Pad' Located at 16222 Monterey Ln., Space 376, Huntington Beach, CA 92649." Docket No. 555.

5.      On April 26, 2023, the Court held a trial on Houser Bros.'s 11 U.S.C. § 727 claims in *Houser Bros. Co. v. Gallian (In re Gallian)*, Case No. 8:21-ap-01097-SC.

6.      During the trial, the Debtor gave the following responses to questioning by Houser Bros.'s counsel:

BY MR. HAYS:

Q And is the $225,000 that you're transferring here separate and apart from the $185,000 transferred to Ms. Ryan?

 A Yes, sir.

REQUEST FOR JUDICIAL NOTICE

ES 363                    ES 363                    ES 363

Q Okay. And the promissory note, however, reflects that J-Sandcastle is the borrower, and that J-Pad is the holder that is owed the $225,000, correct?

A That's correct, sir.

Q And this promissory note is dated November 16 of 2018, as reflected on page 115?

A That's correct.

Q Okay. Did J-Pad, in fact, loan any money to J-Sandcastle?

A No, they did not.

Q But the promissory note requires J-Sandcastle to pay J-Pad the money, correct?

A They are the holder of the note, yes, with me.

. . .

Q The collateral that was the subject of the security agreement was the manufactured home in Space 376, correct?

A That's correct.

Q Okay. And so J-Sandcastle, who was on title, pledged a security interest in the mobile home to secure repayment of this $225,000 we're talking about. That's what these documents were accomplishing, correct?

A Yes.

Q Okay. Did J-Sandcastle ever pay $225,000 to J-Pad?

A No, sir.

Q Okay. Was the money ever paid to you individually?

A No, sir.

Q Was there ever any lawsuit filed to enforce payment under this note obligation?

A No, sir. It's not due yet.

*See* AP Docket No. 72 at 66-67, 69 (trial transcript).

7.    On May 23, 2023, the Court entered "(1) Order Denying Motion to Amend and Vacating Hearing; (2) Memorandum Decision After Trial Regarding § 727 Claims; and (3) Setting Status Conference on Remaining §523 Claims" ("Memorandum Decision"). *Houser Bros. Co. v. Gallian (In re Gallian)*, Case No. 8:21-ap-01097-SC, Docket No. 81.

18

8.    The Memorandum Decision contains the following finding:

As noted previously, J-Pad was the holder of a $22[5],000 promissory note. Defendant herself executed the promissory note on JPad's behalf, knowing full well of the asset. It is this Court's view that $225,000 is a significant amount of money, and Defendant's failure to properly schedule her interest in J-Pad, the note and lienholder of a significant asset, is a material, false oath made knowingly and fraudulently. So too was Defendant's failure to schedule a value for J-Pad, who held a significant asset in the form of the aforementioned note and lien on the mobile home. The foregoing, coupled with the evidence presented by Plaintiff of Defendant's other glaring omissions and false oaths, are sufficient to demonstrate that Plaintiff is entitled to judgment against Defendant on its § 727(a)(4) cause of action.

*Houser Bros. Co. v. Gallian (In re Gallian)*, Case No. 8:21-ap-01097-SC, Docket No. 81 at 16 (footnote omitted).

9.    On July 31, 2024, the U.S. District Court for the Central Court of California entered an Order on Appeal containing the following finding: "The secured promissory note stated that J-Sandcastle was a borrower promising to pay $225,000 to J-Pad, LLC." *In re Gallian*, District Court Appeal No. 8:23-cv-00961-WLH, Docket No. 26.

10.    On January 13, 2023, Debtor filed a "Motion to Avoid Lien Under 11 U.S.C. § 522(f)" ("Lien Avoidance Motion"), in which she represented under penalty of perjury that J-Pad held a lien against in the Property in the original amount of $225,000.00 and current amount of $175,000.00. Docket No. 297 at 2-3.

11.    The Lien Avoidance Motion lists the J-Pad lien as senior in priority to the amount of Debtor's exemption. Docket No. 297 at 4.

12.    Debtor filed multiple versions of Schedule D identifying a secured claim held by J-Pad against the Property. *See* Docket No. 1 (listing a $175,000 secured claim of J-Pad against the Property); Docket No. 17 (including a $175,000 secured claim of J-Pad against the Property); Docket No. 22 (including a $225,000 secured claim of J-Pad against the Property).

19

13.     On October 2, 2024, Debtor filed a proof of claim in her own case representing under penalty of perjury that the J-Pad lien was due and owing with no right of setoff. Proof of Claim No. 7-1. Attached to that proof of claim is both the security agreement and promissory note. *Id.*

14.     On August 30, 2022, the Debtor filed an "Opposition to Application of the Chapter 7 Trustee to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S. [sic] §§ 327 and 328," in which she asserted that the title to and liens against the Property precluded the Trustee from employing a broker to sell it. Docket No. 208.

15.     The Court adopted this position by denying the Trustee's application to employ a broker unless or until the liens were avoided. Docket No. 241.

16.     On April 5, 2024, the Trustee filed a "Motion for Default Judgment Under LBR 7055-1" ("DJ Motion") as Docket No. 76 in *Golden v. J-Pad LLC, et al.*, Case No. 8:23-ap-01064-SC.

17.     The DJ Motion attached as Exhibit 2 a copy of a "Secured Promissory Note (Fully Amortized)" ("Secured Note") containing the following language: "On or before 12/16/2048, for value received, the undersigned J-SANDCASTLE CO LLC (the 'Borrower') promises to pay to the order of J-PAD, LLC (the 'Holder'), in the manner and at the place provided below, the principal sum of $225000." *See Golden v. J-Pad LLC, et al.*, Case No. 8:23-ap-01064-SC, Docket No. 76 at 87. The Secured Note was "secured by certain assets of the Borrower in accordance with a separate security agreement dated 11/16/2018 between the Holder and the Borrower." *Id.* at 88.

18.     DJ Motion Exhibit 3 contains UCC Financing Statements identifying J-Pad as the "Secured Party" with the Property as the collateral. *Id.* at 97-100.

19.     The Court's default judgment against J-Pad, entered on May 10, 2024, specifies that the "transfer to the Defendant [J-Pad] of a lien on and security interest in the [Property] reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018 and lien on the Property in the amount of $225,000 in favor of the Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of Jeffrey I. Golden, Chapter 7 Trustee . . . ." *See Golden v. J-Pad LLC, et al.*, Case No. 8:23-ap-01064-SC, Docket No. 79 at 2.

REQUEST FOR JUDICIAL NOTICE

ES 366     ES 366     ES 366

20.    On July 1, 2024, the Trustee filed an "Application to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328," Docket No. 395, which attached as Exhibit 1 a "Residential Listing Agreement" with a 6% commission payable to Coldwell Banker Residential.

21.    On September 5, 2024, the Court entered an "Order Granting Trustee's Application to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328" ("Employment Order"), which, *inter alia*, authorized the Trustee to employ Coldwell Banker Realty and its agents, William Friedman and Greg Bingham as the Estate's real estate agents pursuant to the terms and conditions set forth in the employment application. Docket No. 431.

22.    The Employment Order is not subject to a stay pending appeal.

23.    On September 12, 2024, the Court entered an "Order to Show Cause Why Debtor Jamie Lynn Gallian and Joseph Arroyo Should Not Be Found in Contempt of Court." Docket No. 440.

24.    On October 30, 2024, the Court entered an "Order on Order to Show Cause Why Debtor Jamie Lynn Gallian and Joseph Arroyo Should Not Be Found in Contempt of Court." Docket No. 495.

DATED: February 25, 2025

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By:    _____
ERIC P. ISRAEL
Attorneys for JEFFREY I. GOLDEN, Trustee

REQUEST FOR JUDICIAL NOTICE

ES 367          ES 367          ES 367

DATED: February 25, 2025

MARSHACK HAYS WOOD LLP

*/s/ D. Edward Hays*

By: _____

D. EDWARD HAYS
BRADFORD N. BARNHARDT
Attorneys for Creditor,
HOUSER BROS. CO. dba RANCHO DEL
REY MOBILE HOME ESTATES

4926-5059-8173, v. 4

**EXHIBIT 1**



| DTN: | 12153896 |
|---|---|
| Decal: | LBM1081 |
| Unit ID: | 252606085 |
| Trans Type: | L/O Assignment |
| Trans Date: | 02/01/2021 |
| Trade Name: | CUSTOM VILLA |
| Serial #: | AC7V710394GA, AC7V710394GB |
| Insignia # | PFS1130281, PFS1130282 |

Status Date: 02/23/2021     User Name: SHAH, KIRAN

## STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
### CERTIFICATE OF TITLE

Manufactured Home          Decal:    **LBM1081**

| Manufacturer ID/Name<br>90002    SKYLINE HOMES INC | Trade Name<br>CUSTOM VILLA | Model<br>** | | DOM<br>05/29/2014 | DFS<br>07/28/2014 | RY |
|---|---|---|---|---|---|---|
| Serial Number<br>AC7V710394GB<br>AC7V710394GA | Label/Insignia Number<br>PFS1130281<br>PFS1130282 | Weight<br>22,383<br>25,068 | Length<br>56'<br>60' | Width<br>15' 2"<br>15' 2" | Issued<br>Jan 19, 2019 | |

**Addressee**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA  92649

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA  92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649

**IMPORTANT**
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 10670236                                                      01192019 - 2

ES 372                          ES 372          EXHIBIT 1, PAGE 373

EXHIBIT 1, PAGE 376

*Copy*

## SECTION A - SMOKE DETECTOR AND WATER HEATER SEISMIC BRACING CERTIFICATION

California Health and Safety Code (HSC) Sections 18029.6 and 18031.7 require that on the date of transfer of title all used manufactured homes, used mobilehomes, and used multifamily manufactured homes: 1) be equipped with an operable smoke detector in each room designed for sleeping, and 2) all fuel-gas-burning water heater appliances be seismically braced, anchored, or strapped pursuant to existing codes. A declaration may be signed within 45 days prior to the date of transfer of title stating that these requirements have been met.

I/We further agree to indemnify and save harmless the Director of the State of California, Department of Housing and Community Development, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the unit in California or from issuance of a California Certificate of Title covering the same. I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _____    _____ State _____

Signature

## SECTION B - RELEASING SIGNATURES

1a. _____
    Signature of Registered Owner

1b. _____             Date of Release _____

2. _____        ☐ Release  ☐ Retain   Assign Interest
    Legal Owner of Record (if any) sign and check appropriate box           * If Assign Interest is checked, Complete New Legal Owner Below)

## SECTION C - NEW OWNER INFORMATION

### NEW REGISTERED OWNER - Please Print or Type Clearly

3a. _____     3c. _____
    New Registered Owners Name            New Registered Owners Name

3b. _____     3d. _____
    New Registered Owners Name            New Registered Owners Name

If more than one New Owner going onto title, please check the appropriate Co-owner term here below.

☐ Joint Tenants with Right of Survivorship    ☐ Tenants In Common OR   *☐ Trust/Trustee(s)
                                                     (* If this box is checked-Complete HCD 476.6B)

☐ Tenants In Common AND        ☐ Community Property      ☐ Community Property with Right of Survivorship

4. _____                                 
    Mailing Address of New Registered Owner        City/State            Zip Code

5. _____
    Actual Location Address of Unit            City/State            Zip Code

6. _____
    Purchase Price or check box if Gift ☐          Purchase Date or Transfer Date

7a. _____            _____
    Signature of New Registered Owners         Signature of New Registered Owners

7b. _____        7d. _____
    Signature of New Registered Owners         Signature of New Registered Owners

### NEW LEGAL OWNER - Please Print or Type Clearly

8a. **BRIAN J. GALLIAN**      8b. **Steven D. Gallian**
    New Legal Owners Name            New Legal Owners Name

If more than one New Lender going onto title, please check the appropriate Co-owner term here below.

☒ Joint Tenants with Right of Survivorship    ☐ Tenants In Common OR   *☐ Trust/Trustee(s)
                                                     (* If this box is checked-Complete HCD 476.6B)

☐ Tenants In Common AND        ☐ Community Property      ☐ Community Property with Right of Survivorship

9. **16222 Monterey Ln #376**      **Huntington Beach, CA**    **92649**
    Mailing Address of New Legal Owner        City/State            Zip Code

### NEW JUNIOR LIENHOLDER - Please Print or Type Clearly

10a. _____   10b. _____
    New Junior Lienholder Name          New Junior Lienholder Name

11. _____
    Mailing Address of New Junior Lienholder    City/State           Zip Code

## SECTION D - RELEASE OF DEALERS

12. _____
    Signature of Selling Dealer            Print Dealers Name and Dealer Number

OSP 09 112819

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## REGISTRATION CARD

Manufactured Home

### Decal: LBM1081

| Manufacturer ID/Name | Trade Name | Model | DOM | DFS | RY | Exp. Date |
|---|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC | CUSTOM VILLA | | 05/29/2014 | 07/28/2014 | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued |
|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Jan 19, 2019 |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | |



**Addressee**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA  92649

**Registered Owner(s)**

J-SANDCASTLE CO LLC
16222 MONTEREY LANE ROOM 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**************************************************
### ATTENTION OWNER:

THIS IS THE REGISTRATION CARD FOR THE
UNIT DESCRIBED ABOVE.  PLEASE KEEP THIS
CARD IN A SAFE PLACE WITHIN THE UNIT.

### INSTRUCTIONS FOR RENEWAL:

REGISTRATION FOR THIS UNIT EXPIRES ON THE
DATE INDICATED ABOVE IN THE BOX LABELED
"Exp. Date".  THERE ARE SUBSTANTIAL
PENALTIES FOR DELINQUENCY.  IF YOU DO NOT
RECEIVE A RENEWAL NOTICE WITHIN 10 DAYS
PRIOR TO THE EXPIRATION DATE, CONTACT
H.C.D. FOR RENEWAL INSTRUCTIONS.
**************************************************

### IMPORTANT
THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.

DTN: 10670236                                                          01192019 - 1

**ES 377**                    **ES 377**                    EXHIBIT 1, PAGE 377

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## STATEMENT OF FACTS

This unit is a: ☑ Manufactured Home / Mobilehome ☐ Commercial Modular ☐ Floating Home ☐ Truck Camper

| Decal (License) No.(s): | Trade Name: | Serial No.(s): |
|---|---|---|
| LBM 1081 | | |

I/We, the undersigned, hereby state:

*The original paperwork to add legal owner was lost in the mail. Customer sent photocopies of the application. Representative for J-Sandcastle CO LLC, Jamie Gallian states the Legal owner is Joint Ronald J. Pierpont and JPad LLC at the same address: 16222 Monterey Ln # 376 Huntington Beach CA 92649*

I/We further agree to indemnify and save harmless the Director of the Department of Housing and Community Development, State of California, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the above-described unit in California, or from issuance of a California Certificate of Title covering the same.

I/We certify under penalty of perjury that the foregoing is true and correct.

Executed on __02/22/2021__ at __Sacramento__, __CA__
          *Date*                 *City*           *State*

Signature(s): *Rebecca O'Laughlin*     Printed name(s): *Rebecca O'Loughlin, Program Tech III*

Address _____

City _____  State _____

HCD RT 476.6 (Rev. 07/16)

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## STATEMENT TO ENCUMBER

**SECTION I.       DESCRIPTION OF UNIT**

This unit is a (check one):

[X] Manufactured Home, Mobilehome, Multifamily Manufactured Home   ☐ Commercial Modular   ☐ Truck Camper   ☐ Floating Home

The Decal (License) Number(s) is: __LBM1081__

The Trade Name is: __SKYLINE HOMES CUSTOM VILLA__

The Serial Number(s) is: __AC7V710394GB/GA__

**SECTION II.       LEGAL OWNER INFORMATION**

I/We are releasing legal owner interest in the above-described unit to encumber the title (record a lien) in
favor of:

_Ronald J. Pierpont, Member  J Pad LLC_
<div align="center">(Name of New Legal Owner)</div>

*Address:* __16222 MONTEREY LN, #376 HUNTINGTON BEACH, CA 92649__
<div>Street Address or P.O. Box                                              City                                    State            Zip</div>

**SECTION III.       CERTIFICATION**

I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and
correct.

Executed on  __8/20/2020__        at    __HUNTINGTON  BEACH, CALIFORNIA__
<div>Date                                    City                             State</div>

Signature of each registered owner:              Printed name of each registered owner:

_Jamie L Gallian, Member_              J-SANDCASTLE CO LLC JAMIE L.GALLIAN, MEMBER

Address: __16222 MONTEREY LN #376 HUNTINGTON BEACH, CA 92649__
<div>Street Address or P. O. Box                                          City                                  State              Zip</div>

HCD 484.7 (Rev. 11/14)

EXHIBIT 1, PAGE 384

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## STATEMENT OF FACTS

This unit is a: ☒ Manufactured Home / Mobilehome   ☐ Commercial Modular   ☐ Floating Home   ☐ Truck Camper

| Decal (License) No.(s): | Trade Name: | Serial No.(s): |
|---|---|---|
| LBM1081 | Custom Villa | AC7V710394GB AC7V710394GA |

I/We, the undersigned, hereby state:

*J-Sandcastle wishes to disregard former Statement to Encumber/Lien Assignment for favor of NEW legal owner J-Pad LLC Ronald J. Pierpont. The New legal owner is J-PAD LLC, Ronald S Pierpont, Member.*

I/We further agree to indemnify and save harmless the Director of the Department of Housing and Community Development, State of California, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the above-described unit in California, or from issuance of a California Certificate of Title covering the same.

I/We certify under penalty of perjury that the foregoing is true and correct.

Executed on __8/20/2020__ at __Huntington Beach__, __CA__
             Date            City              State

| Signature(s): | Printed name(s): |
|---|---|
| *J-Sandcastle Co LLC By Janie L Gillman JANIEL GILLIAN* | J-Sandcastle Co LLC |

Address __16222 Monterey Ln #376__

City __Huntington Beach__  State __CA__

HCD RT 476.6 (Rev. 07/16)

EXHIBIT 1, PAGE 396

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## STATEMENT OF FACTS

This unit is a: ☑ Manufactured Home / Mobilehome  ☐ Commercial Modular  ☐ Floating Home  ☐ Truck Camper

| Decal (License) No.(s): | Trade Name: | Serial No.(s): |
|---|---|---|
| LBM 1081 | SKYLINE HOMES | AC7V710394GB/GA |

I/We, the undersigned, hereby state: J-Sandcaste Co LLC made errors on the Certificate of Title. The only change to the Certificate of Title is the addition of two names as Legal Owners as indicated on the Statement to Encumber dated 8/20/2020. The Legal Owners to be added to the Certificate of Title are Steven D. Gallian, Brian J. Gallian

I/We further agree to indemnify and save harmless the Director of the Department of Housing and Community Development, State of California, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the above-described unit in California, or from issuance of a California Certificate of Title covering the same.

I/We certify under penalty of perjury that the foregoing is true and correct.

Executed on  08/20/2020  at  HUNTINGTON BEACH , CA
　　　　　　　　Date　　　　　　　　　　　City　　　　　　　　　　State

Signature(s): _James L. Gallian_

Printed name(s):
J-SANDCASTLE CO LLC JAMIE GALLIAN MEMBER

Address  16222 MONTEREY LN. #376

City  HUNTINGTON BEACH          State  CA

HCD.RT 476.6 (Rev. 07/16)

*Copy*

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## STATEMENT TO ENCUMBER

---

**SECTION I.     DESCRIPTION OF UNIT**

This unit is a (check one):

☒ Manufactured Home, Mobilehome, Multifamily Manufactured Home ☐ Commercial Modular ☐ Truck Camper ☐ Floating Home

The Decal (License) Number(s) is: __LBM1081__

The Trade Name is: __SKYLINE HOMES CUSTOM VILLA__

The Serial Number(s) is: __AC7V710394GB/GA__

---

**SECTION II.     LEGAL OWNER INFORMATION**

I/We are releasing legal owner interest in the above-described unit to encumber the title (record a lien) in favor of:

STEVEN D GALLIAN   AND   BRIAN J. GALLIAN  JOINT TENANTS Right of Survivorship

*(Name of New Legal Owner)*

*Address:* __16222 MONTEREY LN. #376 HUNTINGTON BEACH, CA 92649__

*Street Address or P.O. Box* — *City* *State* *Zip*

---

**SECTION III.     CERTIFICATION**

I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on __8/20/2020__   at   HUNTINGTON  BEACH, CALIFORNIA

*Date* *City* *State*

Signature of each registered owner:                Printed name of each registered owner:

*Jamie L Gallian, member*                J-SANDCASTLE CO LLC JAMIE L.GALLIAN, MEMBER

Address: __16222 MONTEREY LN #376 HUNTINGTON BEACH, CA 92649__

*Street Address or P. O. Box* *City* *State* *Zip*

HCD 484.7 (Rev. 11/14)

---

EXHIBIT 1, PAGE 340



STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM

## LIEN ASSIGNMENT

| SECTION I. | DESCRIPTION OF UNIT |
|---|---|

This unit is a (check one):

☒ Manufactured Home, Mobilehome, Multifamily Manufactured Home   ☐ Commercial Modular   ☐ Truck Camper   ☐ Floating Home

The Decal (License) Number(s) is: __LBM 1081__

The Trade Name is: __SKYLINE HOMES CUSTOM VILLA__

The Serial Number(s) is: __AC7V710394GB/GA__

| SECTION II. | NAME AND ADDRESS OF PARTY ASSIGNING LIEN (ASSIGNOR) |
|---|---|

Name of Assignor: __J-SANDCASTLE CO LLC, JAMIE L. GALLIAN, MEMBER__

Mailing Address of Assignor: __16222 Monterey Ln. #376 Huntington Beach CA 92649__
<span style="font-size:smaller">Street Address or P.O. Box      City     State   Zip</span>

| SECTION III. | DEBTOR(S) NAME AND ADDRESS |
|---|---|

Name of Debtor(s): __J-SANDCASTLE CO LLC , JAMIE L. GALLIAN, MEMBER__

Mailing Address of Debtor(s): __16222 MONTEREY LN #376 HUNTINGTON BEACH, CA 92649__
<span style="font-size:smaller">Street Address or P.O. Box      City     State   Zip</span>

Location Address: __16222 MONTEREY LN. #376 HUNTINGTON BEACH, CA 92649__
<span style="font-size:smaller">Street Address      City     County   State</span>

| SECTION IV. | NAME AND ADDRESS OF PARTY TO WHICH LIEN HAS BEEN ASSIGNED (ASSIGNEE) |
|---|---|

Name of Assignee: __STEVEN D. GALLIAN AND BRIAN J. GALLIAN, JOINT TENANTS Right of Survivorship__

Mailing Address of Assignee: __16222 MONTEREY LN. #376 HUNTINGTON BEACH, CA 92649__
<span style="font-size:smaller">Street Address or P.O. Box      City     State   Zip</span>

| SECTION V. | ASSIGNOR'S CERTIFICATION |
|---|---|

I/We the assignor certify under penalty of perjury under the laws of the State of California that the
foregoing is true and correct that my/our lien in the name of the debtor(s), for the described unit, has
been transferred to the assignee on __8/20/2020__.
<span style="font-size:smaller">Date of Lien Assignment</span>

Executed on __8/20/2020__ at __HUNTINGTON BEACH, CA__
<span style="font-size:smaller">Date      City     State</span>

Signature of Authorized Agent: _Jamie L. Gallian_

HCD 485.1 (Rev. 12/14)

EXHIBIT 1, PAGE 342

## ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ORANGE_____ )

On __AUG,28,2020_____ before me, __ALEX MAJDPOUR NOTARY PUBLIC_____
                                           (insert name and title of the officer)

personally appeared __JAMIE LYNN GALLIAN_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.


Signature _____              (Seal)

EXHIBIT 1, PAGE 394



DTN:                    **12339739**

Decal:                  **LBM1081**

Unit ID:                252606085

Trans Type:             L/O Addition

Trans Date:             08/10/2021

Trade Name:             CUSTOM VILLA

Serial #:               AC7V710394GA, AC7V710394GB

Insignia #              PFS1130281, PFS1130282

Status Date:    08/11/2021    User Name:    CRUZ, SYLVIA

## STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
### CERTIFICATE OF TITLE
Manufactured Home         **Decal:**   LBM1081

| Manufacturer ID/Name | Trade Name | Model | | DOM | DFS | RY |
|---|---|---|---|---|---|---|
| 90002   SKYLINE HOMES INC | CUSTOM VILLA | | | 05/29/2014 | 07/28/2014 | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued | |
|---|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Aug 03, 2021 | |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | | |

**Addressee**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649


**Registered Owner(s)**

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**Situs Address**

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

**IMPORTANT**
**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE**
**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE**
**CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**

DTN: 12313525                                                     08032021 - 2

AUG 1 0 2021

ES 394                                          ES 394             EXHIBIT 1, PAGE 397

ES 394

## SECTION A - SMOKE DETECTOR AND WATER HEATER SEISMIC BRACING CERTIFICATION

California Health and Safety Code (HSC) Sections 18029.6 and 18031.7 require that on the date of transfer of title all used manufactured homes, used mobilehomes, and used multifamily manufactured homes: 1) be equipped with an operable smoke detector in each room designed for sleeping, and 2) all fuel-gas-burning water heater appliances be seismically braced, anchored, or strapped pursuant to existing codes. A declaration may be signed within 45 days prior to the date of transfer of title stating that these requirements have been met.

I/We further agree to indemnify and save harmless the Director of the State of California, Department of Housing and Community Development, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the unit in California or from issuance of a California Certificate of Title covering the same. I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on_____ at_____                                                   .
            Date                        City                              State

_____                _____
            Signature                                                  Printed Name

## SECTION B - RELEASING SIGNATURES

1a. _____                Date of Release _____
            Releasing Signature of Registered Owner

1b. _____                Date of Release _____
            Releasing Signature of Registered Owner

2. _____   ☐ Release   ☐ Retain   * ☐ Assign Interest
            Legal Owner of Record (if any) sign and check appropriate box        (* If Assign Interest is checked - Complete New Legal Owner Below)

## SECTION C - NEW OWNER INFORMATION

### NEW REGISTERED OWNER - Please Print or Type Clearly

3a. _____        3c. _____
            New Registered Owners Name                             New Registered Owners Name

3b. _____        3d. _____
            New Registered Owners Name                             New Registered Owners Name
                    If more than one New Owner going onto title, please check the appropriate Co-owner term box.

☐ Joint Tenants with Right of Survivorship     ☐ Tenants In Common OR     * ☐ Trust/Trustee(s)
                                                                              (* If this box is checked-Complete HCD 476.6B)

☐ Tenants In Common AND     ☐ Community Property     ☐ Community Property with Right of Survivorship

4. _____   _____   _____
            Mailing Address of New Registered Owner          City/State                Zip Code

5. _____   _____   _____
            Actual Location Address of Unit                 City/State                Zip Code

6. _____   _____
            Purchase Price or check box if Gift-☐       Purchase Date or Transfer Date

7a. _____        7c. _____
            Signature of New Registered Owners                     Signature of New Registered Owners

7b. _____        7d. _____
            Signature of New Registered Owners                     Signature of New Registered Owners

### NEW LEGAL OWNER - Please Print or Type Clearly

8a. _____        8b. _____
            New Legal Owners Name                                  New Legal Owners Name
                    If more than one New Lender going onto title, please check the appropriate Co-owner term box below.

☐ Joint Tenants with Right of Survivorship     ☐ Tenants In Common OR     * ☐ Trust/Trustee(s)
                                                                              (* If this box is checked-Complete HCD 476.6B)

☐ Tenants In Common AND     ☐ Community Property     ☐ Community Property with Right of Survivorship

9. _____   _____   _____
            Mailing Address of New Legal Owner              City/State                Zip Code

### NEW JUNIOR LIENHOLDER - Please Print or Type Clearly

10a. _____        10b. _____
            New Junior Lienholder Name                             New Junior Lienholder Name

11. _____   _____   _____
            Mailing Address of New Junior Lienholder        City/State                Zip Code

## SECTION D – RELEASE OF DEALERS

12. _____   _____
            Signature of Selling Dealer                     Print Dealers Name and Dealer Number

OSP 20 149325

ES 395                    ES 395                    EXHIBIT 1, PAGE 409

# STATE OF CALIFORNIA - DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
## REGISTRATION CARD

Manufactured Home

**Decal: LBM1081**

| Manufacturer ID/Name | Trade Name | Model | DOM | DFS | RY | Exp. Date |
|---|---|---|---|---|---|---|
| 90002    SKYLINE HOMES INC | CUSTOM VILLA | | 05/29/2014 | 07/28/2014 | | |

| Serial Number | Label/Insignia Number | Weight | Length | Width | Issued |
|---|---|---|---|---|---|
| AC7V710394GB | PFS1130281 | 22,383 | 56' | 15' 2" | Aug 03, 2021 |
| AC7V710394GA | PFS1130282 | 25,068 | 60' | 15' 2" | |



### Addressee

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA  92649

### Registered Owner(s)

JAMIE LYNN GALLIAN
16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

### Situs Address

16222 MONTEREY LN SPACE 376
HUNTINGTON BEACH, CA 92649

```
*************************************************
            ATTENTION OWNER:

THIS IS THE REGISTRATION CARD FOR THE
UNIT DESCRIBED ABOVE.  PLEASE KEEP THIS
CARD IN A SAFE PLACE WITHIN THE UNIT.

        INSTRUCTIONS FOR RENEWAL:

REGISTRATION FOR THIS UNIT EXPIRES ON THE
DATE INDICATED ABOVE IN THE BOX LABELED
"Exp. Date".  THERE ARE SUBSTANTIAL
PENALTIES FOR DELINQUENCY.  IF YOU DO NOT
RECEIVE A RENEWAL NOTICE WITHIN 10 DAYS
PRIOR TO THE EXPIRATION DATE, CONTACT
H.C.D. FOR RENEWAL INSTRUCTIONS.
*************************************************
```

### IMPORTANT
**THE OWNER INFORMATION SHOWN ABOVE MAY NOT REFLECT ALL LIENS RECORDED WITH THE
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT AGAINST THE DESCRIBED UNIT.  THE
CURRENT TITLE STATUS OF THE UNIT MAY BE CONFIRMED THROUGH THE DEPARTMENT.**

DTN: 12313525

08032021 - 1

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## STATEMENT OF FACTS

This unit is a: ☑ Manufactured Home / Mobilehome  ☐ Commercial Modular  ☐ Floating Home  ☐ Truck Camper

| Decal (License) No.(s): | Trade Name: | Serial No.(s): |
|---|---|---|
| LBM1081 | CUSTOM VILLA | AC7V710394GB/GA |

I/We, the undersigned, hereby state:

Jamie L. Gallian, say that J-Pad, LLC is the Legal Owner and perfected their lien 1/14/2019. ✗

The correct Address for the Legal Owner - J-Pad LLC 21742 Anza Ave, Torrance, CA 90503

I/We further agree to indemnify and save harmless the Director of the Department of Housing and Community Development, State of California, and subsequent purchasers of said unit, for any loss they may suffer resulting from registration of the above-described unit in California, or from issuance of a California Certificate of Title covering the same.

I/We certify under penalty of perjury that the foregoing is true and correct.

Executed on  8/6/2021  at  Huntington Beach  ,  CA
         *Date*                 *City*         *State*

Signature(s): _[signature]_

Printed name(s):

Jamie Lynn Gallian

Address  16222 Monterey Ln #376

City  Huntington Beach      State  CA 92649

HCD RT 476.6 (Rev. 07/16)

ES 398          ES 398          EXHIBIT 1, PAGE 398

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT
DIVISION OF CODES AND STANDARDS
REGISTRATION AND TITLING PROGRAM



## STATEMENT TO ENCUMBER

---

**SECTION I.        DESCRIPTION OF UNIT**

This unit is a (check one):

☑ Manufactured Home, Mobilehome, Multifamily Manufactured Home    ☐ Commercial Modular    ☐ Truck Camper    ☐ Floating Home

The Decal (License) Number(s) is: __LBM1081__

The Trade Name is: __SKYLINE HOMES-CUSTOM VILLA__

The Serial Number(s) is: __AC7V710394GB; AC7V710394GA__

---

**SECTION II.        LEGAL OWNER INFORMATION**

I/We are releasing legal owner interest in the above-described unit to encumber the title (record a lien) in favor of:

J-PAD, LLC - SOS ENTITY NO. 201804010750

<div align="center">(Name of New Legal Owner)</div>

*Address:*   2702 N. GAFF STREET                    ORANGE,              CA           92865
<div>       Street Address or P.O. Box                                    City                          State           Zip</div>

---

**SECTION III.        CERTIFICATION**

I/We certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on __1/14/2019__    at    HUNTINGTON BEACH,   CALIFORNIA, CO. OF ORANGE
<div>         Date                                    City                          State</div>

Signature of each registered owner:                Printed name of each registered owner:

*Janice L. Gillian, its Member*            J-SANDCASTLE CO LLC

Address:   16222 MONTEREY LN  376    HUNTINGTON BEACH,        CA        92649
<div>       Street Address or P.O. Box                                    City                          State           Zip</div>

HCD 484.7 (Rev. 11/14)

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **JOINT OMNIBUS REPLY IN SUPPORT OF CHAPTER 7 TRUSTEE'S: (1) MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE (DOCKET NO. 358); AND (2) MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION (DOCKET NO. 539)**
 will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 25, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 25, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
411 WEST FOURTH STREET, SUITE 5130 /
COURTROOM 5C
SANTA ANA, CA 92701-4593

**VIA EMAIL and OVERNIGHT DELIVERY:**
**DEBTOR**
JAMIE LYNN GALLIAN
jamiegallian@gmail.com
16222 MONTEREY LN UNIT 376
HUNTINGTON BEACH, CA 92649

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 25, 2025 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**ES 402**

**ES 402**

**F 9013-3.1.PROOF.SERVICE**

**ES 402**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Bradford Barnhardt bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **CHAPTER 7 TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR) lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **INTERSTED PARTY COURTESY NEF: Shantal Malmed** shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
   - **INTERESTED PARTY COURTESY NEF: Shantal Malmed** , cheryl.caldwell@gmlaw.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

4903-7392-5900, v. 1

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
**ES 403**         **ES 403**         **F 9013-3.1.PROOF.SERVICE**
**ES 403**

1   ERIC P. ISRAEL, #132426
    EPI@LNBYG.COM
2   LEVENE, NEALE, BENDER, YOO &
    GOLUBCHIK L.L.P.
3   2818 La Cienega Avenue
    Los Angeles, CA 90034
4   Telephone: (310) 229-1234

5   Attorneys for Chapter 7 Trustee,
    JEFFREY I. GOLDEN
6
    D. EDWARD HAYS, #162507
7   ehays@marshackhays.com
    BRADFORD N. BARNHARDT, #328705
8   bbarnhardt@marshackhays.com
    MARSHACK HAYS WOOD LLP
9   870 Roosevelt
    Irvine, California 92620
10  Telephone: (949) 333-7777
    Facsimile: (949) 333-7778
11
    Attorneys for Creditor,
12  HOUSER BROS. CO. dba RANCHO DEL
    REY MOBILE HOME ESTATES
13

14              UNITED STATES BANKRUPTCY COURT

15       CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

16  In re                          Case No: 8:21-bk-11710-SC

17  JAMIE LYNN GALLIAN,            Chapter 7

18                                 JOINT EVIDENTIARY OBECTIONS TO
                                   DECLARATION OF JAMIE LYNN GALLIAN
19                                 IN SUPPORT OF DEBTOR'S OMNIBUS
                                   OPPOSITION TO TRUSTEE'S MOTIONS TO
20            Debtor.              SELL AND FOR TURNOVER OF PROPERTY
                                   AND HOUSER JOINDERS
21
                                    Date:   March 4, 2025
22                                  Time:  11:00 a.m.
                                    Ctrm:  5C
23                                  Location: 411 West Fourth Street
                                             Santa Ana, CA 92701
24

25
26  TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

27  THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

28

                                    1
ES 404    EVIDENTIARY OBJECTIONS TO DECLARATION OF JAMIE LYNN GALLIAN    ES 404
          ES 404
4855-1819-7586

Jeffrey I. Golden, solely in his capacity as Chapter 7 Trustee of the Bankruptcy Estate ("Estate") of Jamie Lynn Gallian ("Debtor"), and Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros.," and together with Trustee, the "Parties"), hereby submit these Joint Evidentiary Objections ("Evidentiary Objections") to the Declaration of Jamie Lynn Gallian ("Declaration") submitted in response to the Debtor's Omnibus Opposition to Trustee's Motions to Sell and for Turnover of Property and Houser Joinders ("Opposition"), filed on February 18, 2025, as Docket No. 554. Page number references are to the top-pages within the Opposition. All capitalized terms not otherwise defined in these Evidentiary Objections shall have the meaning ascribed to them in the Parties' reply ("Reply") to the Opposition submitted concurrently herewith.

## OBJECTIONS TO DECLARATION OF JAMIE LYNN GALLIAN

| Page, ¶, and Line | TESTIMONY | OBJECTIONS |
|---|---|---|
| Pg. 19, ¶ 3, Lns. 8-10 | I have an unassailable automatic exemption in my equitable interest in the Property ("Gallian's Exempt Interest") established by a Final Non-Appealable Order of this Court entered May 17, 2024 [Docket 394]. | 1) Improper Legal Conclusion/Opinion Testimony – Fed. R. Evid.[1] 701-02 <br> 2) Argumentative <br><br> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701 ("Opinion Testimony by Lay Witness"); *see also* Fed. R. Evid. 702 ("Testimony by Expert Witnesses"). Further, an evidentiary objection may be sustained based on argumentative testimony. *See Redwind v. W. Union, LLC*, 2016 U.S.Dist.LEXIS 57793, at *13-14 (D. Or. May 2, 2016) (sustaining an objection to a portion of |

---

[1] The Federal Rules of Evidence apply in cases under the Bankruptcy Code. Fed. R. Bankr. P. 9017.

ES 405        ES 405        ES 405
EVIDENTIARY OBJECTIONS TO DECLARATION OF JAMIE LYNN GALLIAN
4855-1819-7586

| Page, ¶, and Line | TESTIMONY | OBJECTIONS |
|---|---|---|
| | | a declaration as "argumentative and . . . more suitable for inclusion in a motion or memorandum in support"). <br><br> Here, the Debtor's homestead exemption in the Property (*i.e.*, the mobilehome) is final and not challenged by any party. That said, the Parties object to the Debtor's use of the word "unassailable" to the extent she seeks to establish that her homestead exemption defeats the Trustee's ability to administer the Property. Not only is such a representation improperly argumentative and conclusory, but for the reasons articulated in the Parties' Reply, the Debtor is also incorrect that her homestead exemption precludes the sale of the Property. |
| Pg. 19, ¶ 5, Lns. 14-15 | J-Pad has never lent any money to J-Sandcastle, LLC or anyone else. J-Pad has never provided any value to J-Sandcastle, LLC or anyone else. | 1)  Relevance – Fed. R. Evid. 401-02 <br><br> Irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. <br><br> Paragraph 5 relates to Debtor's argument that the J-Pad lien is invalid. As set forth in the Reply, the validity of J-Pad's lien is ultimately irrelevant to the issue of Trustee's authority to sell the Property, because it has no consequence in determining the action. Specifically, *any* transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. *See* 11 U.S.C. § 551 ("Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is |

ES 406                    ES 406                    ES 406

| Page, ¶, and Line | TESTIMONY | OBJECTIONS |
|---|---|---|
| | | preserved for the benefit of the estate but only with respect to property of the estate."); *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 518-20 (9th Cir. 1990) (rejecting the argument that a trustee can preserve a transfer of a lien under § 551 only to the extent that the interest is otherwise valid under state law); *accord Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 586 (B.A.P. 9th Cir. 1996) ("§ 551 does not exclude exempt property from preservation. An avoided interest or lien encumbering exempt property is automatically preserved for the benefit of the estate under § 551."). Because Trustee's preservation of the J-Pad lien was automatic, 11 U.S.C. § 551, Debtor's attack on the validity of the J-Pad lien is irrelevant to this action. |
| Pg. 19, ¶ 6, Ln. 16 | J-Pad has never had a security interest that attached to the Property. | 1) Improper Legal Conclusion/Opinion Testimony – Fed. R. Evid. 701-02<br>2) Argumentative<br>3) Relevance – Fed. R. Evid. 401-02<br><br>If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701 ("Opinion Testimony by Lay Witness"); *see also* Fed. R. Evid. 702 ("Testimony by Expert Witnesses"). Further, an evidentiary objection may be sustained based on argumentative testimony. *See Redwind v. W. Union,* |

4

ES 407    ES 407    ES 407

4855-1819-7586

| Page, ¶, and Line | TESTIMONY | OBJECTIONS |
|---|---|---|
| | | *LLC*, 2016 U.S.Dist.LEXIS 57793, at *13-14 (D. Or. May 2, 2016) (sustaining an objection to a portion of a declaration as "argumentative and . . . more suitable for inclusion in a motion or memorandum in support"). |
| | | Here, the Declaration improperly contains argument and a legal conclusion attacking the validity of the J-Pad lien. |
| | | Further, irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. As set forth in the Reply, the validity of J-Pad's lien is ultimately irrelevant to the issue of Trustee's authority to sell the Property, because it has no consequence in determining the action. Specifically, *any* transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. *See* 11 U.S.C. § 551 ("Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate."); *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 518-20 (9th Cir. 1990) (rejecting the argument that a trustee can preserve a transfer of a lien under § 551 only to the extent that the interest is otherwise valid under state law); *accord Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 586 (B.A.P. 9th Cir. 1996) ("§ 551 does not exclude exempt property from preservation. An avoided interest or lien |

ES 408   ES 408   ES 408

| Page, ¶, and Line | TESTIMONY | OBJECTIONS |
|---|---|---|
| | | encumbering exempt property is automatically preserved for the benefit of the estate under § 551."). Because Trustee's preservation of the J-Pad lien was automatic, 11 U.S.C. § 551, Debtor's attack on the validity of the J-Pad lien is irrelevant to this action.<br><br>The debtor is judicially estopped from making this statement, as she has argued successfully otherwise to the Court.  Docket nos. 208 (debtor's objection to trustee's first application to employ real estate broker), 241 (order denying that application as premature pending avoidance of the lien).  See also Debtor's proof of claim no. 7-1 acknowledging debt and lien based thereon. |
| Pg. 19, ¶ 8, Lns. 21-22 | On July 9, 2021, the date I filed bankruptcy, Ron Pierpont and J-Pad released any interest they may have had as legal owners (holders of a security interest) in the Property. | 1)  Relevance – Fed. R. Evid. 401-02<br><br>Irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.<br><br>Paragraph 8 relates to Debtor's argument that the J-Pad lien is invalid. As set forth in the Reply, the validity of J-Pad's lien is ultimately irrelevant to the issue of Trustee's authority to sell the Property, because it has no consequence in determining the action. Specifically, *any* transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. *See* 11 U.S.C. § 551 ("Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate |

ES 409                    ES 409                                                                ES 409
EVIDENTIARY OBJECTIONS TO DECLARATION OF JAMIE LYNN GALLIAN

4855-1819-7586

| Page, ¶, and Line | TESTIMONY | OBJECTIONS |
|---|---|---|
| | | but only with respect to property of the estate."); *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 518-20 (9th Cir. 1990) (rejecting the argument that a trustee can preserve a transfer of a lien under § 551 only to the extent that the interest is otherwise valid under state law); *accord Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 586 (B.A.P. 9th Cir. 1996) ("§ 551 does not exclude exempt property from preservation. An avoided interest or lien encumbering exempt property is automatically preserved for the benefit of the estate under § 551."). Because Trustee's preservation of the J-Pad lien was automatic, 11 U.S.C. § 551, Debtor's attack on the validity of the J-Pad lien is irrelevant to this action. |
| Pg. 20, ¶ 13, Lns. 7-8 | In the past, I have received offers to purchase the Property in excess of $335,000.00. | 1) Hearsay – Fed. R. Evid. 802 <br> 2) Relevance -- – Fed. R. Evid. 401-02 <br><br> Herasay is not admissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802; *see also* Fed. R. Evid. 801(c) (defining "hearsay"). <br><br> The past offers – dates unspecified -- the Debtor references are not statements being made by the offerors in the context of the current proceeding, and the Debtor is offering this evidence to prove the truth of the matter asserted in her statement: that she has received the offers, and by implication the Property is worth in excess of $335,000.00. <br><br> Further, irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if: (a) it has any |

ES 410    ES 410    ES 410

EVIDENTIARY OBJECTIONS TO DECLARATION OF JAMIE LYNN GALLIAN

4855-1819-7586

| Page, ¶, and Line | TESTIMONY | OBJECTIONS |
|---|---|---|
| | | tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. As set forth in the Reply, the validity of J-Pad's lien is ultimately irrelevant to the issue of Trustee's authority to sell the Property, because it has no consequence in determining the action. Specifically, an offer at an unspecified prior point in time does not establish value at this time |

DATED: February 25, 2025        MARSHACK HAYS WOOD LLP


                                          /s/ Bradford N. Barnhardt
                                By: _____
                                    D. EDWARD HAYS
                                    BRADFORD N. BARNHARDT
                                    Attorneys for Creditor,
                                    HOUSER BROS. CO. dba RANCHO DEL REY
                                    MOBILE HOME ESTATES


DATED: February 25, 2025        LEVENE, NEALE, BENDER, YOO & GOLUBCHIK
                                L.L.P.

                                By: _____
                                    ERIC P. ISRAEL
                                    Attorneys for Chapter 7 Trustee,
                                    JEFFREY I. GOLDEN

ES 411
4855-1819-7586

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **JOINT EVIDENTIARY OBECTIONS TO DECLARATION OF JAMIE LYNN GALLIAN IN SUPPORT OF DEBTOR'S OMNIBUS OPPOSITION TO TRUSTEE'S MOTIONS TO SELL AND FOR TURNOVER OF PROPERTY AND HOUSER JOINDERS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 25, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 25, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
411 WEST FOURTH STREET, SUITE 5130 /
COURTROOM 5C
SANTA ANA, CA 92701-4593

**VIA EMAIL and OVERNIGHT DELIVERY:**
**DEBTOR**
JAMIE LYNN GALLIAN
jamiegallian@gmail.com
16222 MONTEREY LN UNIT 376
HUNTINGTON BEACH, CA 92649

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

February 25, 2025  Layla Buchanan                    /s/ Layla Buchanan
_Date_                    _Printed Name_                    _Signature_

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
**ES 412**          **ES 412**          **F 9013-3.1.PROOF.SERVICE**
                                         **ES 412**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Bradford Barnhardt bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **CHAPTER 7 TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR) lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **INTERSTED PARTY COURTESY NEF: Shantal Malmed** shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
   - **INTERESTED PARTY COURTESY NEF: Shantal Malmed**, cheryl.caldwell@gmlaw.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

4903-7392-5900, v. 1

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

ERIC P. ISRAEL (State Bar No. #132426)
*EPI@LNBYG.COM*
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Phone: 310-229-1234

Attorneys for Jeffrey I. Golden, Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:21-bk-11710-SC |
| JAMIE LYNN GALLIAN, | Chapter 7 |
| Debtor. | **SUPPLEMENTAL DECLARATION OF GREG BINGHAM RE RECEIPT OF OVERBID RE CHAPTER 7 TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION (DOCKET NO. 539)** |
| | Date:  March 4, 2025<br>Time:  11:00 a.m.<br>Ctrm:  5C |

## SUPPLEMENTAL DECLARATION OF GREG BINGHAM

I, Greg Bingham, declare as follows:

1.     I am an individual over 18 years of age and competent to make this Declaration.

2.     The facts set forth below are true of my personal knowledge.  If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

1

3.      I am a licensed real estate salesperson at Coldwell Banker Realty ("Coldwell Banker"), the duly employed real estate broker for Jeffrey I. Golden, the Chapter 7 trustee herein (the "Trustee") with respect to a manufactured home, decal no. LBM 1081 (the "Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space").

4.       Since the Trustee accepted the stalking horse offer, I have continued marketing the Property for overbids.

5.      On or about February 26, 2025, I received an overbid from Gregory Alan Peplin ("Peplin") for $276,000 (the "Overbid").  The overbid is for all cash with no contingencies.  A true and correct copy of the executed overbid form is attached hereto, marked as Exhibit "A" and incorporated herein by this reference.  Peplin also provided a bank statement reflecting enough funds to pay cash at that price.

6.      I make the following disclosure in connection with the Overbid.

7.      Bill Friedman and I were also salespersons representing Jason M. Rund, solely in his capacity as Chapter 7 trustee for the estate of Gregory A. Peplin, case no. 2:24-bk-13645-DS (the "Peplin Trustee").  In that case, the Peplin Trustee sold Peplin's real property to a third party, and Peplin received money on account of his homestead exemption.  I understand that Peplin needs to reinvest those proceeds in another home in order to preserve their exempt character.

8.      In any event, Mr. Friedman and I are not representing Peplin in the proposed sale of the Property at bar.  We are only representing the Trustee.  I understand that Peplin is represented by the same real estate broker who represents the stalking horse buyer – Galaxy Homes LLC.  Galaxy is also the stalking horse buyer.

2

ES 415                    ES 415                    ES 415

1      9.      I otherwise have no familiarity with Peplin.

2

3      I declare under penalty of perjury under the laws of the United States of America that the

4  foregoing is true and correct.

5      Executed at Newport Beach, California, on February 28, 2025.

6

7                        GREG BINGHAM

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          3

# EXHIBIT "A"

## OVERBID FOR PURCHASE OF MANUFACTURED HOME

The undersigned ("Offeror") hereby offers (the "Overbid") to purchase from Jeffrey I. Golden, the Chapter 7 trustee (the "Seller" or the "Trustee") for the estate of Jaime Lynne Gallian (the "Estate"), bankruptcy case no. 8:21-11710-SC, all of the Estate's right title and interest in and to the manufactured home described as follows (the "Subject Property"):

Skyline, Custom Villa, 2014, net size 60x30. Serial Numbers AC7V710394GB/GA; DOH/HUD Numbers: PFS1130282 and PFS1130281; Decal Number LBM1081 Year 2006.

Offeror agrees to be bound by all of the terms and conditions of the sale set forth in the Purchase and Sale Agreement and its amendments (the "PSA") attached to the Trustee's Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption (*docket no. __*) filed on January 30, 2025. Offeror acknowledges receipt of a copy of the Sale Motion and the PSA, and agrees to be bound by all of their sale terms, subject to the following additional terms:

Offeror recognizes that the Trustee holds the sole discretion in accepting and rejecting overbids, subject to Court approval. There are no contingencies to this Overbid whatsoever. The sale is subject to acceptance by the Trustee in a Bankruptcy Court auction sale (the "Auction"). Offeror understands that the Seller is a Trustee appointed to liquidate assets of a bankruptcy estate. The Seller has neither seen nor inspected the Subject Property and has not determined its fitness for any particular use or the condition of the Subject Property. Offeror acknowledges that Offeror has done all due diligence which Offeror needs to make this Overbid and to conclude the purchase of the Subject Property. Offeror further understands that the sale is "as is" and "where is" without warranty or recourse whatsoever.

Offeror offers $ 276,000 __ [at least $276,000] for the Subject Property. Offeror is providing herewith (or has already provided) account statements evidencing proof of funds sufficient to consummate the purchase, with delivery of the $8,280 deposit to Danning, Gill, Israel & Krasnoff, LLP, Attn: Eric P. Israel, 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067. If the Court confirms a sale of the Subject Property to the Offeror, the balance of the purchase price and any applicable sales or transfer tax shall be delivered to the Trustee in good funds within seven (7) calendar days after the date of entry of an order granting the Sale Motion.

ES 418          ES 418          ES 418

Offeror agrees to pay any applicable sales taxes due from the sale and shall indemnify the Estate for any claim submitted for sales taxes thereon.

The Auction will be held on March 4, 2025 at 11:00 a.m., in Courtroom "5C", United States Bankruptcy Court, 411 W. Fourth Street, Santa Ana, California. All parties wishing to participate in the Auction must appear personally, through an attorney or other expressly authorized agent. Telephonic appearances, if and to the extent permitted by the Court, are subject to the Court's procedures.

In the event that Offeror for any reason fails to close the sale timely for any reason due to the Buyer's fault, Offeror will forfeit the Deposit to the Trustee as liquidated damages.

Offeror agrees that the Bankruptcy Court handling the Debtor's case shall have jurisdiction over any dispute arising under this Overbid or the sale contemplated hereby. Offeror consents to the Court's resolution of such disputes as a core matter, waives any right to a jury trial and consents to the entry of a final order or judgment thereon.

Dated: 2/26/25      Greg Peplin
                    (Name of Offeror)

                    4616 Calle de Grande
                    (street address)

                    La Verne, CA. 91750
                    (city, state, zip code)

                    909-261-6577    Greg@ARDMARKETING.com
                    (telephone number and email address)

                    Greg Peplin
                    (signature of Offeror or authorized agent of Offeror, if applicable)

                    (name and title of agent of Offeror, if applicable)

1785053.1  27046

73

ES 419            ES 419            ES 419

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **SUPPLEMENTAL DECLARATION OF GREG BINGHAM RE RECEIPT OF OVERBID RE CHAPTER 7 TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION (DOCKET NO. 539)** will be served or was served **(a)** on the judge  in  chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 28, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Bradford Barnhardt    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- Christopher L Blank    chris@chrisblanklaw.com
- Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- Jeffrey I Golden (TR)    lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com
- D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- Brandon J. Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- Shantal Malmed    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
- Shantal Malmed    , cheryl.caldwell@gmlaw.com
- Laila Masud    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- Mark A Mellor    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- Valerie Smith    claims@recoverycorp.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **February 28, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson                          Jaime Lynn Gallian
U.S. Bankruptcy Court                                   16222 Monterey Ln Unit 376
411 West Fourth Street, Suite 5130 / Courtroom 5C      Huntington Beach, CA 92649
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                          ES 420                   **F 9013-3.1.PROOF.SERVICE**

ES 420                                                          ES 420

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 28, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 28, 2025 | D. Woo | /s/ D. Woo |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

ES 421                          ES 421                          F 9013-3.1.PROOF.SERVICE

ES 421

1  CHRISTOPHER L. BLANK (SBN 115450)
   CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2  2973 Harbor Blvd. #506
   Costa Mesa, CA 92626
3  Telephone:    (949) 250-4600
   Email:       chris@chrisblanklaw.com
4
   Attorney for Debtor Jamie Lynn Gallian
5

6

7

8                UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10
   In Re                                )BK Case No. 8:21-bk-11710-SC
11                                       )
                                         )Chapter 7
12                                       )
   JAMIE LYNN GALLIAN                    )
13                                       )MOTION FOR STAY PENDING APPEAL
                                         )OF ORDER GRANTING SALE AND
14              Debtor.                  )TURNOVER OF HOMESTEAD PROPERTY
                                         )
15                                       )Date:  March 4, 2025
                                         )Time:  11:00 AM
16                                       )Ctrm: 5C Virtual
                                         )
17                                       )

18

19        TO THE COURT AND INTERESTED PARTIES: Debtor Jamie Lynn Gallian ("Gallian")

20  hereby moves for a stay pending appeal of this Court's orders granting the Motions of Trustee

21  Jeffrey Golden ("Golden") for Approval of Sale and Turnover of Homestead Property pursuant to

22  Federal Rules of Bankruptcy Procedure, Rule 8007.  This Motion is based on the attached

23  Memorandum of Points and Authorities, the Declaration of Jamie Lynn Gallian and such other

24  matter as may properly come before the Court.

25  Dated:  March 3, 2025           CHRISTOPHER L. BLANK, ATTORNEY
                                    AT LAW, PC
26

27                                  By:   /S/Christopher L. Blank
                                    Christopher L. Blank, Attorney for Debtor
28                                  Jamie Lynn Gallian

1

ES 422                    ES 422                    ES 422

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The Court's Tentative Ruling published on Saturday, March 1, 2025 says "The Court is inclined to grant the Motion[s for approval of the Trustee's sale of the Debtor's home and for turnover of the Property]."  If the Court's final ruling is consistent with its tentative ruling, Debtor Jamie Gallian, the holder of an unassailable $600,000.00 exempt equitable interest in the home, will become homeless.  Furthermore, the right to appeal the Court's decision to allow Golden to sell her home and kick her out of it will be destroyed.  If a stay is denied, Gallian will be irreparably harmed.  On the other hand, if a stay is granted, the Trustee will suffer minimal delay while the Court's decision is under review.

### II.  ARUGMENT

#### a.  Law Applicable to Stays Pending Appeal.

"Unless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered."  Fed. R. Bankr. P. Rule 6004(h).  Golden has asked the Court to waive the 14-day stay without providing any compelling evidence to support that request.  Based on the evidence and argument below, not only should the Court deny the waiver, the Court should grant and extend the stay in this case pending Gallian's appeal.

A motion for stay pending appeal may first be sought from the Bankruptcy Court, before or after the filing of a Notice of Appeal.  Fed. R. Bankr. P. Rule 8007(a)(1)(A) and (2).  In ruling on a motion for stay pending appeal:

> a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

*Nken v. Holder*, 556 U.S. 418, 426, 129 S. Ct. 1749, 1756, 173 L. Ed. 2d 550 (2009).

ES 423
ES 423
ES 423

The fact that the issuance of a stay is left to the court's discretion "does not mean that no legal standard governs that discretion .... '[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' " *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 139, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005) (quoting *United States v. Burr,* 25 F.Cas. 30, 35 (No. 14,692d) (CC Va. 1807) (Marshall, C.J.)).

*Id.* at 434.

The first two factors of the traditional standard are the most critical. It is not enough that the chance of success on the merits be "better than negligible." *Sofinet v. INS,* 188 F.3d 703, 707 (C.A.7 1999) (internal quotation marks omitted). Even petitioner acknowledges that "[m]ore than a mere 'possibility' of relief is required." Reply Brief for Petitioner 21 (quoting Brief for Respondent 47). By the same token, simply showing some "possibility of irreparable injury," *Abbassi v. INS,* 143 F.3d 513, 514 (C.A.9 1998), fails to satisfy the second factor. As the Court pointed out earlier this Term, the "'possibility' standard is too lenient." *Winter, supra,* at 22, 129 S.Ct., at 375.

\*\*\*

Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest.

*Id.* at 434, 435.

While the power to maintain the status quo pending appeal "should always be exercised when any irremediable injury may result from the effect of the decree as rendered" (*Hovey v. McDonald*, supra, 109 U.S. 161, 3 S.Ct. 143), both federal and California Courts hold that ". . . this power should be sparingly employed and reserved for the exceptional situation." *People*

*v. Emeryville*, 69 Cal.2d 533, 72 Cal.Rptr. 790, 793, 446 P.2d 790, 793 (1961).

The accepted standards for discretionary stays are described in *Schwartz v. Covington*, 341 F.2d 537 (9th Cir. 1965):

    1. Appellant is likely to succeed on the merits of the appeal.

    2. Appellant will suffer irreparable injury.

    3. No substantial harm will come to appellee.

    4. The stay will do no harm to the public interest.

*In re Wymer*, 5 B.R. 802, 806 (B.A.P. 9th Cir. 1980).

    In this case, absent a stay, if a sale is approved, particularly if the Court were to find the purchase to have been in good faith, appeal of the sale itself would be moot. Furthermore, if Gallian is forced out of her home, the appellate Court's ability to restore her to possession of her residence is doubtful. As set forth below, Gallian can make a strong showing on Element number one, she is likely to succeed on the merits of her appeal. Element number two is indisputable -- if no stay is granted Gallian will suffer irreparable injury. Gallian can make a strong showing on Element number three – no substantial harm will come to the Trustee if a stay is granted. As to Element number four, not only would a stay do no harm to the public interest, it would promote the strong public policy of the State of California to avoid having judgment debtors become homeless at the hands of overzealous judgment creditors or a bankruptcy trustee who stands in their shoes.

### b.  Gallian has a High Likelihood of Prevailing on Appeal.

    Gallian has made four simple and straightforward arguments in opposition to Golden's Motions. She argues that a Trustee may only sell a homestead if there is non-exempt equity in the property. She argues that her exempt interest in the property includes her right to continued possession of the property, and that right is not property of the estate and may not be sold by the Trustee. She also argues that her exempt interest in the property. and the right to possess it. are not rights that a Trustee can sell free and clear of. She argues that the judgment avoiding and preserving the J-Pad lien does not give Golden the right to sell the property.

1       The Court's tentative ruling indicates the Court does not intend to consider any of

2   the arguments made in Gallian's Opposition because the Court views those arguments as a

3   collateral attack on the Judgment (the "J-Pad Judgment") in Adversary Action 8:23-ap-01064-SC

4   in which the J-Pad lien was avoided and preserved for the benefit of the estate (the "J-Pad

5   Action").  This view is incorrect for several reasons.  First, three of the arguments made by

6   Gallian have nothing to do with the J-Pad lien or the J-Pad Judgment avoiding and preserving it.

7   Gallian's first argument is based on California exemption law that recognizes the sanctity of an

8   equitable interest in homestead property and the right to be free from threats of dispossession.

9   Gallian's second and third arguments are based on bankruptcy law and the rule that a Trustee

10  may not generally sell the exempt portion of property, or free and clear of that exempt portion

11  and the rights appurtenant thereto.

12      Finally, contrary to the Court's statement in its tentative ruling, Gallian is not

13  *collaterally* attacking the J-Pad Judgment.  Gallian is not *attacking* the J-Pad Judgment at all.

14  Rather, Gallian is arguing that avoidance and preservation of an asset does not change the

15  fundamental characteristics of the asset that has been recovered and preserved.  It does not

16  enhance those characteristics.  That is, the Trustee obtains no more through avoidance and

17  preservation than the defendant previously had in the preserved asset.

18      Collateral attack is an attack that seeks to void a previous order, not by appeal or

19  motion for reconsideration, but by a separate lawsuit.  *Crosby v. Mills*, 413 F.2d 1273 (10th Cir.

20  1969).  It is usually a challenge to the Court's jurisdiction to make the order the attacker seeks to

21  overturn.  Gallian does not seek to overturn the judgment in the J-Pad Adversary.  Gallian does

22  not assert that the Bankruptcy Court was without jurisdiction to enter the J-Pad Judgment.

23  Rather, Gallian simply asserts that the J-Pad lien in the hands of Golden has the same

24  characteristics as the J-Pad lien had before it was avoided and preserved.

25      In the J-Pad Adversary, the Court was not required to determine if the J-Pad lien

26  was valuable.  The value of a lien a trustee seeks to avoid is not an element of the trustee's cause

27  of action under 11 U.S.C. Section 548 or 544.  In the J-Pad Adversary, Golden asserted, without

28  contradiction, that J-Pad made no loan and was owed no money.  The J-Pad Judgment does not

1  hold otherwise.  Rather, it is based on that uncontradicted assertion.  The consequences of J-Pad

2  not lending any money to anyone and not being owed anything is that the J-Pad lien never

3  attached to anything and has no value.  Another way to put it is that the J-Pad lien can be fully

4  satisfied and the lien extinguished by paying ZERO dollars, since that's all that is owed.

5          Consider a Home Equity Line of Credit ("HELOC") that is supported by a

6  recorded deed of trust that indicates the amount of the line of credit is for $400,000.00.  The

7  recording of the deed of trust does not create the debt.  The lending of money pursuant to the

8  HELOC creates the debt.  If no money is lent or borrowed, no money is owed.  If a trustee were

9  to avoid and preserve a deed of trust supporting an unfunded HELOC, the trustee would not

10  magically be entitled to collect $400,000.00 upon the sale of the liened property.  The trustee

11  would be entitled to collect no more than the HELOC lender could have collected upon such a

12  sale.  That is ZERO.

13          The same is true in this case.  Golden successfully avoided and preserved the J-

14  Pad lien.  Gallian does not dispute this.  But Golden is entitled to no proceeds from the sale of

15  Gallian's home on account of the J-Pad lien because J-Pad lent no money and is owed no money.

16  This is not a collateral attack. It is simply the undeniable consequence of the true state of affairs

17  as alleged by Golden without contradiction.

18          It is also somewhat ironic that the Court Is concerned about Gallian's purported

19  collateral attack on the J-Pad Judgment when Gallian attempted to participate in that action by

20  filing an answer.  An answer that the Court struck on the grounds that Gallian's rights would not

21  be affected by the action since the Trustee was not seeking any relief against Gallian in the J-Pad

22  Action.  Fundamental due process requires parties to be provided with an opportunity to be

23  heard.  Having denied Gallian the opportunity to be heard in the J-Pad Action on the grounds that

24  her rights would not be affected by that action, the Court cannot now decide that Gallian is

25  precluded from making an argument that does NOT attack the judgment in that action, but

26  merely points out that the judgment in the J-Pad action does not have the effect that Golden

27  wishes it had.

28  /////

**c. Gallian Will Suffer Irreparable Harm if a Stay is not Granted.**

Gallian will suffer irreparable harm in two ways if a stay is not granted. First, if a stay is not granted and the sale of her homestead proceeds, she will be denied the ability to effectively appeal. Once the sale closes and possession changes hands, the ability to reverse the sale becomes moot and unavailable. 11 U.S.C. Section 363(m). Second, if the sale closes and she is forced to leave her home she will become homeless. Gallian's ability to obtain replacement rental housing is severely curtailed by the continued pendency of this bankruptcy case.

**d. The Trustee will Suffer Minimal Harm if a Stay is Granted.**

Although the Trustee has requested a waiver of Fed. Rules of Bankruptcy Procedure, Rule 6004(h), he has made no showing that a 14 day stay or longer will have any significant effect on the bankruptcy estate. This bankruptcy case has been pending since July of 2021. The Trustee did not even begin to market the Property until September of 2024, more than three years after the bankruptcy case began. Surely, a few more months delay does not compare to the catastrophe that will befall Ms. Gallian if no stay is granted.

**e. The Public Interest Favors Imposition of a Stay.**

The legislatively and explicitly expressed public policy of the State of California is to protect debtors from becoming homeless at the hands of aggressive judgment creditors. This is why real property homesteads cannot even be put up for sale without a Court first determining that a sale is likely to generate sufficient proceeds to pay all consensual liens, plus the debtor's homestead exemption, with something left over for the judgment creditor. Impositions of a stay fosters, rather than detracts from this public policy.

Federal public policy favors preservation of the right to appeal. Where an appeal may become moot in the absence of a stay, a stay should be imposed to preserve the right to an effective appeal.

**III. CONCLUSION**

Once her exempt equitable interest in the property was vindicated by a final non-appealable order, that interest was no longer property of the estate. While a theoretical non-

exempt interest in the property remained property of the estate, given the likely value of the

property and the amount of Gallian's exemption, the Truste should have immediately abandoned

it and closed this case.  As has been explained above and in Gallian's Opposition to Golden's

Motions, based on Golden's own undisputed allegations that J-Pad never lent anyone any money

and was owed no money, it was a futile and wasteful act to sue to avoid and preserve the J-Pad

lien.  It was also a futile and wasteful act to hire a broker to market and sell unsaleable property.

It was also a futile and wasteful act to harass Gallian by insisting on showing the property and

threatening to kick her out of her home.  This bullying and abuse of the bankruptcy system by

the Trustee has to stop.  The best way to stop it is to deny the Trustee's Motions, but if the Court

remains "inclined" to grant them, at the very least, the Court should stay any order approving a

sale.  The Court should allow Gallian to remain in place until she has been afforded an adequate

opportunity to appeal.

Dated:  March 3, 2025                    CHRISTOPHER L. BLANK, ATTORNEY
                                        AT LAW, PC

                                        By:    /S/*Christopher L. Blank*
                                        Christopher L. Blank, Attorney for Debtor Jamie
                                        Lynn Gallian

### DECLARATION OF JAMIE LYNN GALLIAN

I, Jamie Lynn Gallian, declare that the facts set forth below are true and correct of my own personal knowledge and if called upon to testify, I could and would testify competently to them.

1.  I am the Debtor in this action.  After my exempt equitable interest in my home was vindicated in a final non-appealable order of this Court, because of threats from the owner of the mobile home park where my home is located, I began to attempt to sell my home.

2.  My attempts to sell my home were thwarted by threats from Trustee Jeffrey Golden and this Court to hold me in contempt.  Because of those threats, I ceased trying to sell my home and cooperated with the Trustee's broker to show it, even though I believed and still believe the Trustee has no right to sell my home and kick me out of it.

3.  Nevertheless, I have packed up much of my personal property belongings and I have been attempting to find replacement housing for the past several months.  So far, despite my diligent attempts to find replacement housing, I have been completely unsuccessful in that endeavor.

4.  I am presently employed as a bus driver and make sufficient income to qualify for a lease of a modest residence.  However, each time I apply, I am told that I do not qualify because my bankruptcy is still pending.

5.  I do not have friends or relatives who have offered me replacement housing, even on a temporary basis.

6.  If I am forced out of my home, I believe I will become homeless.  Homelessness will have a devastating effect on my life.  I am unsure how I will be able to continue my employment if I have no place to live.

/////
/////
/////
/////
/////

1       7.      The possibility of losing my home and becoming homeless has also had a

2 devastating effect on my mental health.

3        I declare under penalty of perjury under the laws of the State of California and the United

4 States of America that the foregoing is true and correct.

5        Signed on March 3, 2025 at Huntington Beach California.

6

7                          Jamie Lynn Gallian

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*):

## MOTION FOR STAY PENDING APPEAL

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 3, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 3, 2025 | Christopher L. Blank | /S/Christopher L. Blank |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    ES 432    ES 432    **F 9013-3.1.PROOF.SERVICE**    ES 432

<u>SERVICE LIST</u>

8:21-bk-11710-SC Notice will be electronically mailed to:

Bradford Barnhardt on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home
Estates
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Christopher L Blank on behalf of Debtor Jamie Lynn Gallian
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

ES 433                                ES 433                                ES 433

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Laila Masud on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF

mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

8:21-bk-11710-SC Notice will not be electronically mailed to:

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Janine Jasso
PO Box 370161
El Paso, CA 79937

Michael D Poole on behalf of Creditor The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>ERIC P. ISRAEL, #132426<br>EPI@LNBYG.COM<br>LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.<br>2818 La Cienega Avenue<br>Los Angeles, CA 90034<br>Telephone: 310-229-1234<br><br>Attorneys for JEFFREY I. GOLDEN, Trustee<br><br>D. EDWARD HAYS, #162507<br>ehays@marshackhays.com<br>LAILA MASUD, #311731<br>lmasud@marshackhays.com<br>BRADFORD N. BARNHARDT, #328705<br>bbarnhardt@marshackhays.com<br>MARSHACK HAYS WOOD LLP<br>870 Roosevelt<br>Irvine, CA 92620<br>Telephone: (949) 333-7777<br>Facsimile: (949) 333-7778<br>☐ Individual *appearing without an attorney*<br>☒ *Attorney for:* Movant and Creditor,<br>HOUSER BROS. CO. dba RANCHO DEL REY MOBILE HOME ESTATES | FOR COURT USE ONLY |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>JAMIE LYNN GALLIAN,<br><br><br><br><br>Debtor(s) | CASE NO.: 8:21-bk-11710-SC<br>CHAPTER: 7<br><br>**NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE RE:** (*title of motion[1]*):<br><u>CHAPTER 7 TRUSTEE'S (1) MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE; AND (2) MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION)</u> |

PLEASE TAKE NOTE that the order titled <u>[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: CHAPTER 7 TRUSTEE'S (1) MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE; AND (2) MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION</u> was lodged on (*date*) <u>March 7, 2025</u>, and is attached. This order relates to the motions which are docket numbers <u>538-39</u>.

---

[1] Please abbreviate if title cannot fit into text field.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*
131740v1/9999-403 | ES 436 | Page 1 | ES 436 | F 9021-1.2.BK.NOTICE.LODGMENT



# Lodged Order

ERIC P. ISRAEL, #132426
EPI@LNBYG.COM
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Phone: 310-229-1234
Facsimile: 310-229-1244

Attorneys for JEFFREY I. GOLDEN, Trustee

D. EDWARD HAYS, #162507
ehays@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Creditor,
HOUSER BROS CO. dba RANCHO DEL
REY MOBILE HOME ESTATES

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: ORDERS GRANTING CHAPTER 7 TRUSTEE'S (1) MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE; AND (2) MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION<br><br>Date: March 4, 2025<br>Time: 11:00 a.m.<br>Crtrm: 5C<br>Location: 411 W. Fourth St.<br>Santa Ana, CA 92701 |

On March 4, 2025, at 11:00 a.m., the Court, the Honorable Scott C. Clarkson, United States Bankruptcy Judge presiding, heard the following motions filed by Jeffrey I. Golden, solely in his capacity as Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Jamie Lynn Gallian ("Debtor"), on January 31, 2025: (1) Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance ("Turnover Motion"), Docket No. 538; and (2) Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption ("Sale Motion"), Docket No. 539. Eric P. Israel, Esq., of Levene, Neale, Bender, Yoo & Golubchik L.L.P., appeared on behalf of the Trustee, who was personally present in the Courtroom. D. Edward Hays, Esq., of Marshack Hays Wood LLP, appeared on behalf of Creditor, Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") which had joined in both the Turnover Motion and Sale Motion. Christopher L. Blank, Esq., appeared on behalf of the Debtor. Robert P. Goe, Esq., of Goe Forsythe & Hodges, LLP, appeared on behalf of the Huntington Beach Gables Homeowners Association. All other appearances were as noted on the record. At the conclusion of the hearing, the Court took the Turnover Motion and Sale Motion under submission.

After considering all pleadings and papers filed in this case and its related adversary proceedings, the oral arguments during the hearing, and for good cause appearing, the Court enters the following findings of fact and conclusions of law:

## Legal Standard

### A. Sale Motion

To enable the Trustee to fulfill his duty to "collect and reduce to money the property of the estate" (11 U.S.C. § 704(a)(1)), the trustee "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In this Circuit and others, courts will authorize sales where the trustee's decision to sell assets outside the ordinary course of business is based upon sound business judgment. *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Derivium Capital, LLC*, 380 B.R. 392, 404 (Bankr. D.S.C.

1  2007) ("In determining whether to approve a sale proposed by a trustee, courts generally apply a

2  business judgment test.").

3          Based on the Second Circuit's decision in *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983),

4  courts generally hold that the following four elements must exist to satisfy the "sound business

5  judgment test": (1) sound business reasons; (2) accurate and reasonable notice to interested persons;

6  (3) an adequate, fair and reasonable price; and (4) good faith. *See Stephens Indus., Inc. v. McClung*,

7  789 F.2d 386, 390 (6th Cir. 1986) (affirming sale of debtor's assets proposed by trustee as being

8  supported by a sound business purpose); *Lionel*, 722 F.2d at 1071. "Ordinarily, the position of the

9  trustee is afforded deference, particularly where business judgment is entailed in the analysis or

10  where there is no objection." *In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); *Derivium*,

11  380 B.R. at 404 ("the Trustee's business judgment is to be given 'great judicial deference,'

12  [however] the Court must scrutinize whether the Trustee has fulfilled his duty to 'maximize the

13  value obtained from a sale'").

14          **i.    Sales Free and Clear**

15          Section 363(f) of the Bankruptcy Code provides that, upon certain conditions, the trustee

16  may sell property free and clear of a lien or interest in such property:

17

18          The trustee may sell property under subsection (b) or (c) of this section
        free and clear of any interest in such property of an entity other than
        the estate, only if—

19

20          (1) applicable nonbankruptcy law permits sale of such property free
        and clear of such interest;

21          (2) such entity consents;

22          (3) such interest is a lien and the price at which such property is to be
        sold is greater than the aggregate value of all liens on such property;

23

24          (4) such interest is in bona fide dispute; or

25          (5) such entity could be compelled, in a legal or equitable proceeding,
        to accept a money satisfaction of such interest.

26

27  11 U.S.C. § 363(f).

28

ES 440                          ES 440                          ES 440

3

## ii.    Good Faith Finding

A purchaser of property is protected from the effects of reversal on appeal of the authorization to sell or lease as long as the Court finds that the purchaser acted in good faith. *See* 11 U.S.C. § 363(m). A good faith purchaser is one who buys in good faith and for value. *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992). The Code does not define "good faith," but courts have provided guidance as to the appropriate factors to consider. *See id.* (lack of good faith generally shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders); *In re Pine Coast Enters., Ltd.*, 147 B.R. 30, 33 (Bankr. N.D. Ill. 1992) (requirement that a purchaser act in good faith speaks to the integrity of its conduct in the course of sale proceeding).

## iii.    Consensual Liens Have Priority Over Exemptions

Consensual liens have priority over exemptions. See Cal. Code Civ. P. § 704.850(a) ("The levying officer shall distribute the proceeds of sale of a homestead in the following order: (1) To the discharge of all liens and encumbrances, if any, on the property. (2) To the judgment debtor in the amount of any applicable exemption of proceeds pursuant to Section 704.720."); *see also Roach v. Marshack (In re Roach)*, 2019 Bankr.LEXIS 263 (B.A.P. 9th Cir. Jan. 29, 2019) (holding that no proceeds from the sale of a debtor's house were payable on account of the debtor's homestead exemption because the Chapter 7 trustee had recovered a consensual lien against the home that exceeded in value the proceeds); *In re Bunn-Rodemann*, 491 B.R. 132, 136 (Bankr. E.D. Cal. 2013) (noting that exemptions may be claimed "only against involuntary liens").

Under 11 U.S.C. § 522(g), a debtor may not claim any exemption in amounts recovered by a trustee after a debtor's voluntary transfer. *See* 5 COLLIER ON BANKRUPTCY P 551.02[2] (2024) ("[Section 522(g)], however, does not allow a debtor to exempt property subject to the trustee's preserved lien position, unless such preserved lien was otherwise avoidable under section 522. Thus, generally, property that was voluntarily transferred by the debtor and recovered by the trustee under section 550 and preserved under section 551 cannot be exempted.").

Based on the plain language of 11 U.S.C. § 551, any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. *See* 11 U.S.C. § 551 ("Any transfer avoided

1  under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section

2  506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the

3  estate."); *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 518-20 (9th Cir. 1990)

4  (rejecting the argument that a trustee can preserve a transfer of a lien under § 551 only to the extent

5  that the interest is otherwise valid under state law); *accord Heintz v. Carey (In re Heintz)*, 198 B.R.

6  581, 586 (B.A.P. 9th Cir. 1996) ("§ 551 does not exclude exempt property from preservation. An

7  avoided interest or lien encumbering exempt property is automatically preserved for the benefit of

8  the estate under § 551."); *see also* 11 U.S.C. § 541(a)(3) (defining property of the estate to include

9  any interest in property that the trustee recovers under 11 U.S.C. § 550); 11 U.S.C. § 541(a)(4)

10  (defining property of the estate to include any interest in property preserved for the benefit of or

11  ordered transferred to the estate under 11 U.S.C. § 551).

12       In other words, the law is clear that Section 551 lien avoidance permits the estate to succeed

13  to the entirety of the lien's priority and rights with respect to other competing interests under

14  applicable state law; preservation puts "the estate in the shoes of the creditor whose lien is avoided."

15  *In re Carvell*, 222 BR 178, 180 (1st Cir. B.A.P. 1998). Without this automatic preservation under

16  Section 551, avoiding a lien would only result in a windfall to junior lienholders or interest holders

17  at the expense of the estate and unsecured creditors. *In re Haberman*, 516 F.3d 1207, 1210 (10th Cir.

18  2008); see also *In re Carvell* at 180. As set forth in *Van de Kamp*, preservation prevents any

19  creditors from challenging that the avoided lien was otherwise unenforceable.

20       The fraudulent nature of the voluntariy transfer made by the Debtor also prevents her from

21  attacking the enforceability of the avoided and preserved lien. The California Supreme Court has

22  held that a fraudulent transfer is enforceable as between transferor and transferee.

23       "The grantor in a deed made for the purpose of defrauding, hindering, or delaying

24       his creditors cannot be relieved against its operation. As to him, it is valid."

25  *Moore v. Schneider*, 196 Cal. 380, 385, 238 P. 81, 82 (1925).

26       California's Uniform Voidable Transactions Act (CCP §§ 3439 et seq.) does not replace

27  common law regarding fraudulent transfers. Instead, they supplement common law. CCP § 3439.12.

28  See also, *Cortez v. Vogt*, 52 Cal.App.4th 917, 60 Cal. Rptr. 2d 841 (Cal. Ct. App. 1997). As such, the

Trustee, standing in the shoes of the avoided, recovered, and preserved lien, has the right to enforce it as against any challenge by the Debtor.

## B. Turnover Motion

Section 542(a) of the Bankruptcy Code requires: "Except as provided in subsection (c) or (d) of this section, an entity… shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). Moreover, a debtor has an affirmative duty to cooperate with the Trustee and turn over all estate property to the Trustee. 11 U.S.C. § 521(a)(3)-(4).

### i.   Property of the Estate

Section 541(a) of the Bankruptcy Code provides that upon the filing of a bankruptcy case, an estate is created. 11 U.S.C. § 541(a). The estate is "comprised of all the following property, wherever located and by whomever held: (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case. . . . (3) Any interest in property that the trustee recovers under section . . . 550 . . . .; (4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title…." The bankruptcy court has exclusive jurisdiction over property of the Estate. *See* 28 U.S.C. § 1334(e); *Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, 757 F.3d 1044, 1050 (9th Cir. 2014) (court has "exclusive *in rem* jurisdiction" over estate property).

Property of the estate must be accounted for and turned over to the trustee. 11 U.S.C. § 542(a). "Bankruptcy Code § 542(a) grants a bankruptcy trustee the power to recover property of the debtor's estate or such property's value." *Shapiro v. Henson*, 739 F.3d 1198, 1199 (9th Cir. 2014). Present possession of an interest which constitutes property of the estate is not a prerequisite for the trustee seeking turnover of such property. *Id.* at 1204; *see, e.g.*, *APJL Consulting, LLC v. Treasures, Inc. (In re Treasures, Inc.)*, 2015 Bankr. LEXIS 662 at *59 (B.A.P. 9th Cir. 2015). A Chapter 7 debtor has a statutory duty to "surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate." 11 U.S.C. § 521(a)(4); *see Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 764 F.3d 1168, 1174 (9th Cir. 2014) ("…the debtor has a duty to surrender to the trustee all estate property.");

1    *see also Starky v. Birdsell (In re Starky),* 522 B.R. 220, 227 (B.A.P. 9th Cir. 2014); *see also*, *Mwangi*

2    *v. Wells Fargo Bank N.A.* (*In re Mwangi*), 432 B.R. 812, 818, 822 (B.A.P. 9th Cir. 2010) (estate

3    property must be turned over to trustee; "the failure to return property of the estate with knowledge

4    of the bankruptcy is a violation of both the automatic stay and of the turnover requirements of the

5    Bankruptcy Code") (*quoting Abrams v. Sw. Leasing & Rental, Inc.* (*In re Abrams*), 127 B.R. 239,

6    242-43 (B.A.P. 9th Cir. 1991)).

7    ### ii.    Personal Jurisdiction

8    "[T]he district court shall have original and exclusive jurisdiction of all cases under title 11."

9    28 U.S.C. § 1334(a). A debtor consents to personal jurisdiction of the bankruptcy court by filing a

10    bankruptcy petition. *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 870 (9th Cir. 2005) ("The

11    debtor invoked bankruptcy subject matter and *in personam* jurisdiction by filing a voluntary petition

12    in bankruptcy."); *see, e.g., In re Malek*, 591 B.R. 420, 426 (Bankr. N.D. Cal. 2018) ("[Debtor]

13    consented to the equitable jurisdiction of the bankruptcy court by voluntarily filing a bankruptcy

14    petition."); *In re Kasl*, 2009 Bankr. LEXIS 2351 at *10-11 (Bankr. C.D. Cal. January 13, 2009)

15    ("where the debtor voluntarily files a petition, the debtor submits to the personal jurisdiction of the

16    court sitting in the district in which he filed."); *In re Hunt*, 2014 U.S. Dist. LEXIS 189464 at *34

17    (C.D. Cal. July 25, 2014) ("It is axiomatic that a bankruptcy court has personal jurisdiction over a

18    debtor who files a voluntary bankruptcy petition.") (citing *Securities and Exchange Comm'n v. Ross*,

19    504 F.3d 1130, 1149 (9th Cir. 2007)).

20    ### iii.    Procedures for Enforcement of Turnover Order

21    Bankruptcy courts have the power to authorize the issuance of a writ of execution or

22    assistance authorizing and directing the Marshals to compel the surrender of real property. *See* Fed.

23    R. Civ. P. 70 (made applicable to adversary proceedings by Fed. R. Bankr. P. 7070); *In re Kerlo*, 311

24    B.R. 256, 261 (Bankr. C.D. Cal. 2004) ("'a writ of assistance to deliver . . . possession [of real

25    property] . . . was agreeable to the usages and principals of law' and 'clearly lies under the express

26    terms of Fed. R. Civ. P. 70.'") (citing *Hamilton v. McDonald*, 503 F.2d 1138, 1148 (9th Cir. 1974)).

27    Indeed, the Court may issue any order that is necessary and appropriate to carry out the provisions of

28    the Bankruptcy Code. *See* 11 U.S.C. § 105(a). Section 105 also authorizes the Court to grant a

trustee's request for issuance of a writ of assistance. Specifically, orders for possession of property

may be enforced through writs and orders under Section 105(a). *See In re Kerlo*, 311 B.R. at 262.

### Findings of Fact

### A.  Bankruptcy Filing, the Property, and Debtor's HCD Submissions

1.  On July 9, 2021 ("Petition Date"), Debtor filed a voluntary petition under Chapter 7

of Title 11 of the United States Code. The filing of the petition commenced *In re Gallian*, 8:21-bk-

11710-SC ("Bankruptcy Case").[1]

### i.  The Property

2.  Since the Petition Date, most of the litigation in this case has centered around

Debtor's manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach,

California 92649, described as a 2014 Skyline Custom Villa, decal no. LBM1081 ("Property").

3.  In late 2018, while Debtor was engaged in state-court lawsuits that could have

possibly resulted in money judgments against her, she sold a residence held in her own name and

used the proceeds from that sale to purchase the Property. *See Houser Bros. Co. v. Jamie Lynn*

---

[1] During oral argument, Debtor's counsel raised an issue regarding the Court's consideration of the record in this Bankruptcy Case. Rule 201 of the Federal Rules of Evidence ("FRE"), made applicably by Rule 9017 of the Federal Rules of Bankruptcy Procedure ("FRBP"), allows the Court to take judicial notice of adjudicative facts "at any stage of the proceeding." Fed. R. Evid. 201(a), (d). The Court may, on its own or upon request of a party, judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b), (c); *see also Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 826, 837 (9th Cir. 2021) (noting that FRE 201 allows the court to judicially notice adjudicative facts—that is, the facts of the particular case that normally go to the jury in a jury case—at "any time"). Although the existence of court filings in another case is a proper subject of judicial notice, it is "unnecessary to judicially notice the existence of a filing already on the docket in this case, as it is already before the Court." *Kanaway Seafoods, Inc. v. Pac. Predator*, 2024 U.S. Dist. LEXIS 213502, at *2, 4 (D. Alaska Sept. 20, 2024); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). Although not necessary, the Court, for good measure, takes judicial notice of all facts on the docket set forth in these Findings of Fact. The Court does not, however, take judicial notice of the veracity of any judicially noticed facts. *See Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 973 n.5 (9th Cir. 2020) (noting that the district court was free to take judicial notice of the existence of certain policies that a party introduced in parallel litigation, but not the veracity of any disputed facts contained therein).

*Gallian (In re Jamie Lynn Gallian)*, Adv. Proc. No. 8:21-ap-01097-SC, Docket No. 81 at 10 (Memorandum Decision After Trial Regarding § 727 Claims).

4.      Despite using proceeds that belonged to her individually, Debtor directed the seller to replace her name with the name of her solely owned and managed company, J-Sandcastle Co., LLC ("J-Sandcastle"), on the notice of sale documentation. *See id.*

5.      Debtor directed the replacement of her name with J-Sandcastle on November 15, 2018, just days after a state court granted a motion for attorney's fees against her. *See id.*

6.      On the Petition Date, the Property was still being held in the name of J-Sandcastle. *See id.* at 10-11.

7.      In late 2018, Debtor also executed a promissory note and security agreement on the Property by and between two entities that she managed: J-Sandcastle and J-Pad, LLC ("J-Pad"). *Id.* at 11.

8.      Under this promissory note and security agreement, J-Sandcastle was the borrower and J-Pad the lender. *Id.*

9.      The agreement required J-Sandcastle to pay J-Pad $225,000.00 for a purported loan, although J-Pad did not loan any money to J-Sandcastle. *Id.*

10.     Rather, Debtor herself made the loan to J-Sandcastle, initially in the amount of $175,000.00, with the balance of the $225,000.00 loan funded approximately six months later. *Id.*

## ii.   **Debtor's HDC Submissions**

11.     Debtor has submitted multiple documents to the California Department of Housing and Community Development ("HDC")[2] listing J-Pad as the lienholder against the Property.

12.     On January 14, 2019, Debtor executed a "Statement to Encumber" under penalty of perjury, listing J-Pad as the legal owner (*i.e.*, lienholder) of the Property. *See* Docket No. 558 at 56 ("Statement to Encumber" attached as Exhibit 1 to the Declaration of Janine Jasso).

13.     On August 20, 2020, Debtor executed a "Statement to Encumber" under penalty of perjury listing "Ronald J. Pierpont, Member JPad LLC" as the legal owner of the Property. *See*

---

[2] The HCD issues certificates of title for manufactured/mobile homes.

1  Docket No. 558 at 36 ("Statement to Encumber" attached as Exhibit 1 to the Declaration of Janine

2  Jasso).

3      14.    On August 20, 2020, Debtor executed a "Statement of Facts" certifying under penalty

4  of perjury that the "new legal owner is J-Pad LLC, Ronald J. Pierpont, member." *See* Docket No.

5  558 at 38 ("Statement of Facts" attached as Exhibit 1 to the Declaration of Janine Jasso).

6      15.    On or about February 22, 2021, Debtor advised the HCD that the legal owner of the

7  Property was jointly Ronald J. Pierpont and J-Pad. *See* Docket No. 558 at 34 ("Statement of Facts"

8  attached as Exhibit 1 to the Declaration of Janine Jasso).

9      16.    On August 6, 2021 (after the Petition Date), Debtor executed a "Statement of Facts"

10  certifying under penalty of perjury that: "J-Pad, LLC is the Legal Owner and perfected their lien

11  1/14/2019. The correct address for the Legal Owner – J-Pad LLC 21742 Anza Ave, Torrance, CA

12  90503." *See* Docket No. 558 at 54 ("Statement of Facts" attached as Exhibit 1 to the Declaration of

13  Janine Jasso).

14  **B. Debtor's Schedules**

15      17.    In the Bankruptcy Case, Debtor has filed 15 sets of schedules, each of which she

16  signed under penalty of perjury.

17              **i.    Original Schedules**

18      18.    On July 9, 2021, as Docket No. 1, Debtor filed her original schedules.

19      19.    In Debtor's Schedule A/B, she scheduled a fee simple interest in the Property worth

20  $235,000, noting: "Registered Title with HCD Debtor's single member LLC, J-Sandcastle Co,

21  LLC." Docket No. 1 at 12.

22      20.    Debtor Scheduled a 100% interest in J-Sandcastle, the stated purpose of which was to

23  "hold Registered title with HCD, to Debtor's primary residence." Docket No. 1 at 14.

24      21.    Debtor scheduled a 33.33% interest in J-Pad, the "only purpose" of which was to "to

25  hold a note and UCC-1 filing on Debtor's primary residence": the Property. Docket No. 1 at 15.

26      22.    Debtor's Schedule D disclosed a $175,000.00 secured claim held by J-Pad against the

27  Property. Docket No. 1 at 21.

28

23.    Debtor's original Schedule D advised: "UCC-1 File NO. 19-7691905279 Filing Date: 1/14/2019; Encumbrance; HCD Lien perfected 8/20/2020, Ronald J. Pierpont (Loan WJC 8/7/2019, 1/27/2020)." Docket No. 1 at 21.

### ii.    First Amended Schedules

24.    On September 7, 2021, as Docket No. 15, Debtor filed her first amended schedules.

25.    Debtor's Schedule A/B discloses a $235,000.00 interest in the Property, indicating: "Registered Owner, Jamie Lynn Gallian with HCD perfected 2/25/2021." Docket No. 15 at 3.

26.    Debtor scheduled a 100% interest in J-Sandcastle. According to Debtor: "Original purpose of LLC was to hold HCD Registration to Debtor's residence. HCD Registration was transferred to debtor on 2/25/2021." Docket No. 15 at 6.

27.    Debtor scheduled a 33.33% interest in J-Pad, with the following information: "Entity Assets include . . . Certificate of Title with HCD, perfected 1/14/2019, LBM 1081; 2014 Skyline Custom Villa Manufactured Home UCC-1 Manufactured Home Financing Statement perfected 1/14/2019, against personal property located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649." Docket No. 15 at 6.

28.    Debtor did not submit an amended Schedule D with her first amended schedules.

### iii.    Second Amended Schedules

29.    On September 22, 2021, as Docket No. 16, Debtor filed her second amended schedules.

30.    Debtor scheduled a $235,000.00 interest in the Property, indicating: "HCD COT Registration transferred 2/25/2021, from JSandcastle Co LLC Debtor's single member LLC, to Debtor . . . . Debtor Homestead Declaration filed with OC Clerk Recorder 7/9/2021@12:48 p.m." Docket No. 16 at 3.

31.    Debtor scheduled a 100% interest in J-Sandcastle, indicating: "Debtor Purchased home on 11/1/2018 . . . .  HCD Registered to JSandcastle Co LLC. . . . JSandcastle Co LLC transferred Registration to Jamie Lynn Gallian, perfected with HCD 2/25/2021 . . . ." Docket No. 16 at 6.

32.     Debtor scheduled a 1/7 interest in J-Pad, LLC, noting: "Only purpose is to hold HCD Certificate of Title, perfected 1/14/2019 of debtors [sic] primary residence 2014 Skyline Custom Villa, Decal No. LBM 1081; Serial no. 7V710394GB/GA to protect purchase of 2014 Manufactured Home as debtors [sic] primary residence and qualification 1/1/2006 Ryan Ground Leasehold Assigned to Debtor, located on APN 178-011-01 Tract 10542, Unit 4, Lot 376, pending litigation; preservation." Docket No. 16 at 6.

33.     Debtor did not submit an amended Schedule D with her second amended schedules.

### iv.     Third Amended Schedules

34.     On September 22, 2021, as Docket No. 17, Debtor filed her third amended schedules.

35.     Debtor did not submit an amended Schedule A/B with her third amended schedules.

36.     Debtor's Schedule D included a $175,000.00 secured claim held by J-Pad, Steven and Brian Gallian, EJ Gallian, Justin Barclay, Ronald J. Pierpont, and herself, against the Property, indicating: "Holder of UCC 1 Perfected 1/14/2019; HCD Registration Jamie Lynn Gallian perfected 2-25-2021." Docket No. 17 at 2.

### v.     Fourth Amended Schedules

37.     On October 14, 2021, as Docket No. 22, Debtor filed her fourth amended schedules.

38.     Debtor scheduled a $275,000.00 interest in the Property, indicating: "Title/Registration through HCD; LBM 1081 to Debtor." Docket No. 22 at 3.

39.     Debtor scheduled a 100% interest in J-Sandcastle, adding: "Note payable in the approximate amount of $225,000.00, dated 11/16/2018, secured by UCC-1, perfected 1/14/2019. . . ." Docket No. 22 at 5.

40.     Debtor scheduled a 70% interest in J-Pad, indicating: "J-Pad, LLC holds COT perfected with HCD. Holder of UCC-1, perfected 1/14/2019, secured Note receivable $225,000.00. ($175,000 & $88,000.00 Less note $225,000.00 = $38,000.00. Promissory Note payable to Ron Pierpont; Robert McLelland vs equity in LLC + protection [sic]." Docket No. 22 at 6.

41.     Debtor's Schedule D included a $225,000.00 secured claim of J-Pad, LLC, and Steven and Brian Gallian against the Property, indicating: "UCC-1 perfected 1/14/2019." Docket No. 22 at 13.

### vi.   Fifth Amended Schedules

42.   On November 16, 2021, as Docket No. 37, Debtor filed her fifth amended schedules.

43.   Debtor scheduled a $235,000.00 interest in the Property. Docket No. 37 at 3.

44.   Debtor scheduled a 100% interest in J-Sandcastle, indicating: "Original purpose of LLC was to hold HCD Registration to Debtor's residence. HCD Registration was transferred to debtor on 2/25/2021 . . . ." Docket No. 37 at 6.

45.   Debtor scheduled a 33-1/3% interest in J-Pad, noting: "J-Pad, LLC Holder of COTA perfected 1/14/2019. UCC-1 AD filed 1/14/2019, 30yr. Manufactured Home Transaction secured by LBM1081, located on APN 178-011-16, Tract 10542, Unit 4, Lot 376. J-Pad, LLC Holder of Security Agreement, dated 11/16/18, Promissory Note ($175,000 & $88,000). Matures 2048. . . . Debtor manages 100%." Docket No. 37 at 6.

46.   Debtor did not submit an amended Schedule D with her fifth amended schedules.

### vii.   Sixth Amended Schedules

47.   On November 22, 2021, as Docket No. 38, Debtor filed her sixth amended schedules.

48.   Debtor scheduled a $235,000 interest in the Property, indicating that the Property was "Registered to Debtor" with "HCD COTA perfected 1/14/2019." Docket No. 38 at 3.

49.   Debtor scheduled a 100% interest in J-Sandcastle, adding: "Original purpose of LLC was to hold HCD Registration to Debtor's residence. HCD Registration was transferred to debtor on 2/25/2021 . . . ." Docket No. 38 at 6.

50.   Debtor scheduled a 100% interest in J-Pad, noting: "J-Pad, LLC, Holder of COTA perfected 1/14/2019." Docket No. 38 at 6.

51.   Debtor did not submit an amended Schedule D with her sixth amended schedules.

### viii.   Seventh Amended Schedules

52.   On November 23, 2021, as Docket No. 39, Debtor filed her seventh amended schedules.

53.   Debtor scheduled a $235,000.00 interest in the property, stating that the Property was "Registered to Debtor. HCD COTA perfected 1/14/2019." Docket No. 39 at 6.

54.    Debtor scheduled a 100% interest in J-Sandcastle, adding: "Original purpose of LLC was to hold HCD Registration to Debtor's residence. HCD Registration was transferred to debtor on 2/25/2021 . . . ." Docket No. 39 at 9.

55.    Debtor scheduled a 100% interest in J-Pad, noting: "J-Pad, LLC, Holder of COTA perfected 1/14/2019." Docket No. 39 at 9.

56.    Debtor did not submit an amended Schedule D with her seventh amended schedules.

### ix.    Eighth Amended Schedules

57.    On December 1, 2021, as Docket No. 42, Debtor filed her eighth amended schedules.

58.    Debtor did not submit an amended Schedule A/B with her eighth amended schedules.

59.    In Debtor's Schedule D, she listed a $225,000.00 secured claim held by herself, Steven Gallian, and Brian Gallian against the Property. Docket No. 42 at 4.

### x.    Ninth Amended Schedules

60.    On March 11, 2022, as Docket No. 72, Debtor filed her ninth amended schedules.

61.    Debtor scheduled a $235,000.00 interest in the Property. Docket No. 72 at 13.

62.    Debtor scheduled a 100% interest in J-Sandcastle, noting, among other things, "Debtors [sic] primary residence is 16222 Monterey Ln. Unit 376 . . . ." Docket No. 72 at 16.

63.    Debtor scheduled a 100% interest in J-Pad, which she valued at $500. Docket No. 72 at 16.

64.    Debtor did not submit an amended Schedule D with her ninth amended schedules.

### xi.    Tenth Amended Schedules

65.    On March 15, 2022, as Docket No. 75, Debtor filed her tenth amended schedules.

66.    Debtor did not submit an amended Schedule A/B with her tenth amended schedules.

67.    Debtor scheduled a $0.00 claim against the Property held by the Orange County Assessor; a $46,138.00 claim against the Property held by Janine Jasso regarding an Orange County Superior Court ("OCSC") judgment; $0.00 claims against the Property held by Jennifer Paulin, Lindy Beck, Lori Burrett, Lee Gragnano, and Theodore Phillips, regarding OCSC judgments; a $9,265.00 claim against the Property held by the Huntington Beach Gables Homeowners Association regarding an OCSC judgment; a $319,653.59 claim against the Property held by the

Huntington Beach Gables Homeowners Association regarding an OCSC judgment; a $0.00 claim against the Property held by BS Investors LP; a $0.00 claim against the Property held by Houser Bros.; a $0.00 claim against the Property held by S4, a California Limited Partnership; a $46,138.00 claim against the Property held by Huntington Beach Gables Homeowners Association regarding an OCSC judgment; $319,653.19 claim against the Property held by the Huntington Beach Gables Homeowners Association regarding an OCSC judgment; a $3,070.00 claim against the Property held by the Huntington Beach Gables Homeowners Association regarding an OCSC judgment; a $13,229.34 claim against the Property held by the People of the State of California regarding an OCSC judgment; and a $13,229.34 claim against the Property held by Janine Jasso for civil attorney's fees regarding an OCSC judgment. Docket No. 75 at 6-14.

### xii.    Eleventh Amended Schedules

68.    On May 12, 2022, as Docket No. 94, Debtor filed her eleventh amended schedules.

69.    Debtor did not submit amended Schedules A/B or D with her eleventh amended schedules.

### xiii.    Twelfth Amended Schedules

70.    On September 16, 2024, as Docket No. 444, Debtor filed her twelfth amended schedules.

71.    Debtor scheduled a $539,000.00 interest in the Property with a "80yr unexpired Recorded Gr. Lease." Docket No. 444 at 4.

72.    Debtor scheduled a 100% interest in J-Sandcastle and J-Pad, noting that both were "Terminated – Cancelled – w/ CA Sec. of ST [sic]." Docket No. 444 at 8.

73.    Debtor did not submit an amended Schedule D with her twelfth amended schedules.

### xiv.    Thirteenth Amended Schedules

74.    On October 21, 2024, as Docket No. 468, Debtor filed her thirteenth amended schedules.

75.    Debtor scheduled $539,000.00 interest in the Property with an "80yr unexpired Recorded Gr. Lease." Docket No. 468 at 4.

76.     Debtor scheduled $0.00 interests in J-Sandcastle and J-Pad, with no specified ownership percentage, noting that both were "Terminated – Cancelled CA SOS 11/22/21." Docket No. 468 at 8.

77.     Debtor did not submit an amended Schedule D with her thirteenth amended schedules.

### xv.     Fourteenth Amended Schedules

78.     On December 3, 2024, as Docket No. 519, Debtor filed her fourteenth amended schedules.

79.     Debtor did not submit amended Schedules A/B or D with her fourteenth amended schedules.

## C.    First Objection to Debtor's Homestead Exemption, Appeal, and Remand

80.     Since the filing of her first amended schedules on September 7, 2021, Debtor has consistently claimed a $600,000.00 homestead exemption in the Property pursuant to § 704.030 of the California Code of Civil Procedure ("CCP"). Docket No. 15 at 10; Docket No. 16 at 10; Docket No. 22 at 9; Docket No. 37 at 10; Docket No. 38 at 10; Docket No. 39 at 10; Docket No. 72 at 20; *see also* Docket No. 519 at 5 (amended Schedule C filed on December 3, 2024, claiming a $600,000.00 exemption in the Property pursuant to CCP §§ 704.930(a), 704.720(a), and 704.930).

81.     On May 12, 2022, Houser Bros. filed a "Motion Objecting to Debtor's Claimed Homestead Exemption" ("Exemption Motion"). Docket No. 95.

82.     The hearing on the Exemption Motion was held on June 2, 2022, and continued to July 21, 2022.

83.     During the continued hearing, the Court, the Hon. Erithe Smith presiding, granted the Exemption Motion and disallowed any claim of exemption by the Debtor in the Property.

84.     On July 26, 2022, Debtor filed a motion for reconsideration of the Court's July 21, 2022, ruling ("Motion for Reconsideration"). Docket No. 157.

85.     On August 5, 2022, as Docket No. 177, the Court entered its order granting the Exemption Motion.

86.     On September 22, 2022, the Court held a hearing on the Motion for Reconsideration and, at the conclusion of the hearing, took the matter under submission.

87.     On December 19, 2022, the Court entered an order granting the Motion for Reconsideration, finding that the Debtor was entitled to a homestead exemption in the Property (even though she was not on title) in the amount of $600,000.00 ("Order Granting Motion for Reconsideration"). Docket No. 274.

88.     On December 29, 2022, Houser Bros. appealed the Order Granting Motion for Reconsideration to the District Court. Docket No. 280.

89.     On November 1, 2023, the District Court entered an order reversing and remanding the Order Granting Motion for Reconsideration on the grounds that the Court did not make findings regarding the Debtor's interest in the Property including whether "Gallian ever acquired (and retained) an equitable interest in the Property" ("Reversal and Remand Order"). Docket No. 387.

90.     On or about May 15, 2024, the Court entered a further order after remand ("Remand Order"). Docket No. 393.

91.     The Remand Order again found that "Debtor held a sufficient equitable interest in the Property to claim an automatic homestead exemption under Cal. Civ. Proc. Code § 704.720(a)." Docket No. 393 at 6.

92.     Houser Bros. did not appeal the Remand Order, which is now final.

**D. Objection to Debtor's Latest Exemption Claim**

93.     On December 3, 2024, Debtor filed an amended Schedule C to claim an exemption in a ground lease ("Ground Lease") for the "pad;" *i.e.*, the space on which the mobilehome sits. Docket No. 519.

94.     On January 2, 2025, Houser Bros. filed a motion objecting to Debtor's claimed exemption in the Ground Lease. Docket No. 529.

95.     After a hearing held on February 4, 2025, the Court, on February 20, 2025, entered an order sustaining Houser Bros.'s objection to Debtor's claims of exemption in the Ground Lease. Docket No. 555.

96.     The Court highlighted in its ruling that the Debtor had already admitted, and the Court had previously found, that the Debtor was not a party to any ground lease. Docket No. 555 at 4.

**E.     Houser AP and Denial of Debtor's Discharge**

97.     On October 18, 2021, Houser Bros. filed a "Complaint to (1) Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6); (2) Deny Discharge Pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5)."

98.     The filing of the complaint commenced *Houser Bros. Co. v. Jamie Lynn Gallian (In re Jamie Lynn Gallian)*, Adversary Proceeding No. 8:21-ap-01097-SC ("Houser AP").

99.     On October 22, 2021, as Houser AP Docket No. 3, Plaintiff filed an amended complaint ("Houser Complaint").

100.     On April 26, 2023, the Court held a bifurcated trial on Houser Bros.'s 11 U.S.C. § 727 claims. D. Edward Hays, Esq., and Bradford N. Barnhardt, Esq., appeared on behalf of Houser Bros. Debtor appeared *pro se*. All other appearances were as noted on the record.

101.     During the trial, Debtor gave the following responses to questioning by Houser Bros.'s counsel:

BY MR. HAYS:

Q And is the $225,000 that you're transferring here separate and apart from the $185,000 transferred to Ms. Ryan?

A Yes, sir.

Q Okay. And the promissory note, however, reflects that J-Sandcastle is the borrower, and that J-Pad is the holder that is owed the $225,000, correct?

A That's correct, sir.

Q And this promissory note is dated November 16 of 2018, as reflected on page 115?

A That's correct.

Q Okay. Did J-Pad, in fact, loan any money to J-Sandcastle?

A No, they did not.

Q But the promissory note requires J-Sandcastle to pay J-Pad the money, correct?

1    A They are the holder of the note, yes, with me. . . .

2    Q The collateral that was the subject of the security agreement was the manufactured home

3    in Space 376, correct?

4    A That's correct.

5    Q Okay. And so J-Sandcastle, who was on title, pledged a security interest in the mobile

6    home to secure repayment of this $225,000 we're talking about. That's what these documents

7    were accomplishing, correct?

8    A Yes.

9    Q Okay. Did J-Sandcastle ever pay $225,000 to J-Pad?

10    A No, sir.

11    Q Okay. Was the money ever paid to you individually?

12    A No, sir.

13    Q Was there ever any lawsuit filed to enforce payment under this note obligation?

14    A No, sir. It's not due yet.

15    *See* Houser AP Docket No. 72 at 66-67, 69 (trial transcript).

16        102.    Following post-trial briefing, the Court, on May 23, 2023, issued a "Memorandum

17    Decision After Trial Regarding § 727 Claims" ("727 Decision"). Houser AP Docket No. 81.

18        103.    In the 727 Decision, the Court found, *inter alia*, that Debtor's discharge should be

19    denied pursuant to 11 U.S.C. § 727(a)(2)(A) for concealing her equity in the Property:

20        Additionally, facts were presented to the Court demonstrating that Defendant further

21        concealed her equity in the property through the granting of liens to her business

22        entities and family members, which liens existed during the relevant time period. For

23        example, in late 2018, Defendant also executed a promissory note and security

24        agreement on the mobile home by and between two entities that she managed,

25        JSandcastle and J-Pad, LLC. ("J-Pad"). J-Sandcastle was the borrower and J-Pad the

26        lender. The agreement required J-Sandcastle to pay J-Pad $225,000 for a purported

27        loan; however, J-Pad did not loan any money to J-Sandcastle. Trial Transcript, Dk. 72,

28        Pg. 66. Defendant herself made the loan to J-Sandcastle, though the loan was initially

1     in the amount of $175,000 Defendant did not fund the balance of the $225,000 loan

2     until approximately 6 months later. Trial Transcript, Dk. 72, Pg. 65-66.10 None of the

3     foregoing information regarding the timing of funding, or source of funding, was

4     reflected in the executed documents. In her petition, Defendant scheduled J-Pad as a

5     secured creditor, continuing the ongoing concealment of her true interest in the loan.

6     Additionally, within the year prior to the petition, liens in favor of Defendant's two

7     adult sons, Steven and Brian Gallian, were placed on the property, despite the fact that

8     neither had paid any consideration. Trial Transcript, Dk. 72, Pg. 72-73.

9 Houser AP Docket No. 81 at 11-12.

10     104.    The Court further found that based on Debtor's trial testimony, she was the 100%

11 owner of J-Pad as of October 30, 2018, and that her explanation of scheduling varying interests in J-

12 Pad based on a mistake or owing people money was "wholly unbelievable." Houser AP Docket No.

13 18 at 15-16.

14     105.    Regarding Houser Bros.'s 11 U.S.C. § 727(a)(4) claim, the Court found as follows:

15     As noted previously, J-Pad was the holder of a $22[5],000 promissory note.

16     Defendant herself executed the promissory note on J-Pad's behalf, knowing full well

17     of the asset. It is this Court's view that $225,000 is a significant amount of money, and

18     Defendant's failure to properly schedule her interest in J-Pad, the note and lienholder

19     of a significant asset, is a material, false oath made knowingly and fraudulently. So too

20     was Defendant's failure to schedule a value for JPad, who held a significant asset in

21     the form of the aforementioned note and lien on the mobile home.

22     The foregoing, coupled with the evidence presented by Plaintiff of Defendant's

23     other glaring omissions and false oaths, are sufficient to demonstrate that Plaintiff is

24     entitled to judgment against Defendant on its § 727(a)(4) cause of action.

25 Houser AP Docket No. 81 at 16.

26     106.    On May 29, 2023, Debtor appealed the 727 Decision to the District Court,

27 commencing *In re Jamie Lynn Gallian*, District Court Appeal No. 8:23-cv-00961-WLH ("727

28 Appeal"). Houser AP Docket No. 83.

107.    On July 7, 2023, the Court entered a "Judgment Denying Debtor's Discharge Pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(4), and (a)(5)" ("727 Judgment"). Houser AP Docket No. 100.

108.    On July 31, 2024, the District Court entered an "Order on Appeal" in which it affirmed the Bankruptcy Court's judgment regarding all § 727 claims against Debtor ("727 District Court Order"). 727 Appeal Docket No. 26.

109.    In its order, the District Court found, *inter alia*: "The secured promissory note stated that J-Sandcastle was a borrower promising to pay $225,000 to J-Pad, LLC." 727 Appeal Docket No. 26 at 3.

110.    Debtor did not appeal the 727 District Court Order, and the 727 Judgment is now final.

## F.    Trustee's Avoidance and Recovery of Transfers of Title and Liens on the Property

111.    On June 30, 2023, the Trustee commenced an adversary proceeding, Adv. Proc. No. 8:23-ap-01064-SC ("Trustee AP"), by filing a "Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment" ("Trustee Complaint"), against Ronald J. Pierpont, J-Pad, J-Sandcastle, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E.J. Gallian (collectively, the "Defendants"). The Trustee AP included claims for relief under CCP §§ 3439 et seq.

### i.    Stipulated Judgments

112.    Pursuant to stipulations with Steven D. Gallian, Brian J. Gallian, Justin Barclay, and E.J. Gallian (collectively, the "Family Defendants"), a stipulated judgment was entered against the Family Defendants on October 3, 2023. Trustee AP Docket No. 47.

113.    The judgment against the Family Defendants avoided the liens on the Property in favor of the Family Defendants, and preserved those liens for the benefit of the Estate pursuant to 11 U.S.C. § 551. Trustee AP Docket No. 47.

114.     Pursuant to a stipulation with Robert J. McLelland ("Mr. McLelland"), Trustee AP Docket No. 52, a stipulated judgment was entered against him on March 29, 2024. Trustee AP Docket No. 66.

115.     The stipulated judgment against Mr. McLelland also avoided his lien on the Property and preserved the lien for the benefit of the Estate pursuant to 11 U.S.C. § 551. Trustee AP Docket No. 66.

### ii.    Default Judgments

116.     Pursuant to motions for default judgment filed by the Trustee regarding J-Pad, J-Sandcastle, and Ronald J. Pierpont (collectively, "Defaulting Defendants"), default judgments were entered against the Defaulting Defendants on May 10, 2024. Trustee AP Docket Nos. 79, 81, 83.

117.     The default judgment against J-Sandcastle avoided and preserved the Debtor's transfers of title of the Property to J-Sandcastle and recovered legal title to and the beneficial interest in the Property for the Debtor's bankruptcy estate in the name of the Trustee. Trustee AP Docket No. 81.

118.     The default judgment against defendant J-Pad avoided J-Pad's lien on the Property in the amount of $225,000.00 and other liens on the Property in favor of J-Pad, and preserved the J-Pad lien for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 551. Trustee AP Docket No. 79.

119.     The default judgment against defendant Ronald J. Pierpont determined that Mr. Pierpont did not have any interest in the Property, and avoided his liens on the Property and preserved those liens for the benefit of the Estate pursuant to 11 U.S.C. § 551. Trustee AP Docket No. 83.

120.     As a result of the above, title to the Property has been restored to the Estate and the Property is property of the estate.

121.     In addition, the consensual lien in the original principal sum of $225,000.00 in favor of J-Pad on the Property, and the other consensual liens and interests in the Property in favor of the Family Defendants, Mr. Pierpont, and Mr. McLelland, have been avoided and preserved for the benefit of the Estate in the Trustee's name.

## G.    Employment of Real Estate Broker; Debtor's Efforts to Obstruct Sale

122.    On July 28, 2022, the Trustee filed an "Application . . . to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328" regarding the Property ("2022 Employment App"). Docket No. 162.

123.    On August 30, 2022, Debtor filed an opposition to the 2022 Employment App, asserting that the title to and liens against the Property precluded the Trustee from employing a broker to sell it. Docket No. 208 at 1-2, 19-20.

124.    The Court adopted this position by denying the Trustee's 2022 Employment App unless or until the liens were avoided. Docket No. 241.

125.    On July 1, 2024, after successfully obtaining judgments concluding the Trustee AP, the Trustee filed an "Application to Employ Real Estate Broker Coldwell Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and 328" regarding the Property ("2024 Employment App"). Docket No. 395.

126.    On July 16, 2024, Debtor filed an opposition to the 2024 Employment Application. Docket No. 401.

127.    On September 5, 2024, the Court entered an order granting the 2024 Employment App. Docket No. 431.

### i.    Motion to Avoid Lien

128.    On August 27, 2024, Debtor filed a "Motion to Avoid Lien under 11 U.S.C. § 522(f)" ("Motion to Avoid Lien") regarding a $225,000.00 lien held by J-Pad/Trustee. Docket No. 422.

129.    The Motion to Avoid Lien sought to collaterally challenge the Trustee's final judgments discussed above avoiding the various transfers by the Debtor.

130.    On October 22, 2024, the Court entered an order denying the Motion to Avoid Lien. Docket No. 474.

### ii.    Chapter 13 Case

131.    On or about September 9, 2024, Debtor filed another voluntary petition for relief – this one under Chapter 13 of Title 11 of the United States Code, which was assigned Case No. 8:24-11267-SC ("Chapter 13 Case").

132.   The Chapter 13 Case was dismissed on or about October 21, 2024. Chapter 13 Case, Docket No. 38.

### iii.   Motion to Convert Bankruptcy Case to Chapter 13

133.   On or about September 11, 2024, the Debtor filed a motion to convert this Bankruptcy Case to Chapter 13. Docket No. 438.

134.   Pursuant to an order entered on or about October 29, 2024, the Court denied the Debtor's motion to convert. Docket No. 491.

### iv.   Order to Show Cause

135.   On September 12, 2024, the Court entered an "Order to Show Cause Why Debtor Jamie Lynn Gallian and Joseph Arroyo Should Not Be Found in Contempt of Court" ("OSC"), based on Debtor's indication on the record at the August 27, 2024, hearings, that she and real estate agent Joseph Arroyo had listed the Property. Docket No. 440.

136.   On October 30, 2024, the Court entered an "Order on Order to Show Cause Why Debtor Jamie Lynn Gallian and Joseph Arroyo Should Not Be Found in Contempt of Court," which, *inter alia*, ordered as follows:

(1) Jamie Lynn Gallian is ordered to cease (a) exercising control over property of this estate including all efforts to market, sell, or otherwise transfer or encumber the Property, (b) interfering with the Trustee's administration of property of the estate or taking any action to damage property of the estate, (c) violating the automatic stay set forth in 11 U.S.C. § 362(a) in any manner, and (d) violating her duties under 11 U.S.C. § 521(a).

(2) Jamie Lynn Gallian is ordered to appear at the Property on October 23, 2024, at 4:30 p.m., and to cooperate with the Trustee and his real estate broker in all respects including, without limitation, by providing access to the Property in order to inspect, take pictures, and conduct any other efforts needed for the Trustee and his real estate broker to list, market, and sell the Property.

(3) Until otherwise ordered, Jamie Lynn Gallian is ordered to take all actions necessary to provide the Trustee and/or his real estate broker access to the

Property on 24 hours' oral notice to her via her cell phone without regard to whether she will be physically present at the Property.

(4) If Jamie Lynn Gallian fails to comply with this order, she will be in civil contempt of this order and may be subjected to further orders of the Court to coerce her to purge her contempt and to comply with the Court's orders including, but not limited to, being fined, incarcerated through an order of body detention, and/or removed from the Property by the U.S. Marshal Service or other authorized agent.

(5) The OSC is vacated as to Joseph Arroyo.

(6) The hearing on the OSC is continued to November 5, 2024, at 11:00 a.m., in Courtroom 5C located at 411 W. Fourth Street, Santa Ana, California 92701-4593. The purpose of the hearing will be to determine if the Debtor is in compliance or violation of any of the Court's orders. . . .

Docket No. 495.

137.    Following a continued hearing on the OSC on November 5, 2024, the Court discharged the OSC. Docket No. 503.

### v.    Proof of Claim

138.    On October 2, 2024, Debtor filed Proof of Claim No. 7-1 in the amount of $225,000.00, with 5.5% interest and no right to setoff, and secured against the Property, based on a "LOAN TO CERTIFICATE OF LEGAL OWNER FOR REAL PROP LEASEHOLD RESIDENCY APPLICANT SPACE 376 J-SANDCASTLE 11/18/2018."

139.    Debtor signed Proof of Claim No. 7-1 under penalty of perjury.

140.    Attached to Proof of Claim No. 7-1 are both the J-Pad security agreement and promissory note.

## H.    Marketing of the Property, and Sale and Turnover Motions

141.    On or about October 24, 2024, the Trustee's real estate agent, Greg Bingham ("Mr. Bingham") of Coldwell Banker Realty, listed the Property. Docket No. 539 at 30 (Declaration of Greg Bingham, ¶ 5).

1      142.    The marketing that Mr. Bingham did for the Property included: (a) listing the

2 Property in the Multiple Listing Service; (b) sending an email blast to approximately 1,100 real

3 estate agents working in the area; (c) advertising the Property on third-party websites such as Zillow,

4 Trulia, and Realtor.com; (d) sending direct mail to targeted residents in the area; (e) contacting all

5 active buyers agents in the mobilehome communities and neighboring senior residential

6 neighborhoods; and (f) placing targeted advertising on social media, such as Facebook and

7 Instagram. Docket No. 539 at 30 (Declaration of Greg Bingham, ¶ 6).

8      143.    In marketing the Property, the Trustee experienced periodic interference from and

9 delays caused by the Debtor. Docket No. 539 at 28 (Declaration of Jeffrey I. Golden in support of

10 the Sale Motion, ¶ 8).

11      144.    This interference included a December 13, 2024, email from the Debtor on which the

12 Trustee was copied, advising: "Gentlemen, I am making arrangements to remove the 2014 Skyline

13 Manufactured Home from the Rancho Del Rey Park and will inform you where it will be stored."

14 *See* Docket No. 438 at 23 (Exhibit 1 to the Declaration of Jeffrey I. Golden in support of the

15 Turnover Motion).

16      145.    On December 13, 2024, the Trustee was copied on a second email from the Debtor

17 indicating: "Please accept this as Notice the home will be removed from the park as quickly as

18 possible to avoid accruing any further accrual of rent." *See* Docket No. 438 at 26 (Exhibit 2 to the

19 Declaration of Jeffrey I. Golden in support of the Turnover Motion).

20      146.    On December 17, 2024, the Trustee was copied on an email in which the Debtor

21 advised: "In keeping with the spirit of the holidays, I respectfully request any Home Inspections and

22 Termite Inspections be continued after January 2, 2025." *See* Docket No. 438 at 28 (Exhibit 3 to the

23 Declaration of Jeffrey I. Golden in support of the Turnover Motion).

24      147.    On or about January 1, 2025, the Trustee was copied on an email in which the Debtor

25 advised: "I came home sick with the flu from work. Fever with severe headache and body aches and

26 bronchitis. I will be in bed resting due to the severe pain and migraine headaches. Please inform your

27 broker of the circumstances." *See* Docket No. 438 at 30 (Exhibit 4 to the Declaration of Jeffrey I.

28 Golden in support of the Turnover Motion).

148.    Despite these delays, Mr. Bingham and his team held four accompanied buyer tours of the Property. Docket No. 539 at 31 (Declaration of Greg Bingham, ¶ 8).

149.    As of January 31, 2025, the Trustee had received one offer for the Property: a $275,000.00 offer, subject to overbid, from Galaxy Homes, LLC ("Galaxy"). Docket No. 539 at 27-28 (Declaration of Jeffrey I. Golden, ¶¶ 4, 8).

150.    On January 31, 2025, Trustee filed the Turnover Motion and Sale Motion as Docket Nos. 538-39, respectively.

151.    On February 13, 2025, Houser Bros. filed joinders to the Sale Motion and Turnover Motion as Docket Nos. 551-52, respectively.

152.    On February 18, 2025, through attorney Christopher L. Blank, Esq., Debtor filed an omnibus opposition to the Turnover Motion and Sale Motion, and to Houser Bros.'s joinders thereto ("Opposition"). Docket No. 554.

153.    In support of the Opposition, Debtor filed a "Declaration of Jamie Lynn Gallian" ("Gallian Declaration").

154.    On February 25, 2025, the Trustee and Houser Bros. filed a joint omnibus reply in support of the Turnover Motion and Sale Motion ("Reply"). Docket No. 558.

155.    Concurrently with the Reply, the Trustee and Houser Bros. filed evidentiary objections to the Gallian Declaration ("Evidentiary Objections"). Docket No. 559.

156.    On February 28, 2025, the Trustee filed a "Supplemental Declaration of Greg Bingham Re Receipt of Overbid . . . ," which indicated that on or about February 26, 2025, Mr. Bingham received an overbid from Gregory Alan Peplin ("Mr. Peplin") for $276,000.00, for all cash with no contingencies (the "Supplemental Bingham Declaration"). Docket No. 560 at 2.

157.    On or about March 1, 2025, the Court issued tentative rulings to grant both the Turnover Motion and the Sale Motion, approve the Sale Motion's overbid procedures, and permit the Trustee to conduct an auction.

158.    On March 3, 2025, Debtor filed a "Motion for Stay Pending Appeal of Order Granting Sale and Turnover of Homestead Property" ("Stay Motion"), which she purported to set for

1  hearing on March 4, 2025, at 11:00 a.m.—the same time scheduled for the hearings on the Turnover

2  Motion and Sale Motion.[3]

3       159.    On March 4, 2025, at 11:00 a.m., the Court held a hearing on the Turnover Motion

4  and the Sale Motion. *See* Docket No. 564 (audio of hearing).

5       160.    Appearances at the hearing were as noted above.

6       161.    During the hearing, the Trustee conducted an auction on the sale of the Property,

7  during which Mr. Peplin prevailed with a $276,000.00 all cash bid to purchase the Property, with no

8  contingencies whatsoever.  Also during the hearing, the Trustee withdrew his request for a waiver of

9  the stay provided by Fed. R. Bankr. P. 6004(h).

10      162.    At the conclusion of the hearing, the Court took the Turnover Motion and Stay

11  Motion under submission and requested that each party file and lodge proposed findings of fact and

12  conclusions of law by March 7, 2025, at 5:00 p.m.

13      163.     The Court has considered the arguments set forth in the Turnover Motion and Sale

14  Motion, Houser Bros.'s joinders thereto, Debtor's Opposition, the Trustee and Houser Bros.'s Reply,

15  Debtor's Stay Motion the Supplemental Bingham Declaration and all other pleadings filed in the

16  Bankruptcy Case and its adversary proceedings, the arguments of counsel on the record during the

17  hearing, and the proposed findings of fact and conclusions of law submitted by the parties, and

18  issues these findings of fact and conclusions of law.

19

20

---

21  [3] Debtor did not properly notice the Stay Motion for hearing on less than 48 hours' notice as required
by Local Bankruptcy Rule 9075-1. Further, the plain language of Federal Rule of Bankruptcy

22  Procedure 8007(a)(1)(A) requires an order to be entered before a party may move the bankruptcy
court for a stay of that order. As such, the Court construes the Stay Motion as a thinly-veiled sur-

23  reply to the Sale Motion and Turnover Motion. Sur-replies are unauthorized and need not be
considered. *See, e.g., Jimenez v. ARCPE 1, LLP (In re Jimenez)*, 2021 Bankr.LEXIS 3100, at *4

24  (B.A.P. 9th Cir. Nov. 4, 2021) (indicating that a debtor's sur-reply to a motion to dismiss was
"unauthorized"); *In re Martin*, 2019 Bankr.LEXIS 4028, at *12 (Bankr. C.D. Cal. Nov. 12, 2019)

25  (noting that parties' sur-replies were unauthorized); *see also* Loc. Bankr. R. 9013-1 ("Motion
Practice and Contested Matters," authorizing the filing of a motion, an opposition, and a reply, but

26  not a sur-reply). Parties cannot skirt this prohibition by couching sur-replies as pleadings seeking
other relief. Rather, courts look to substance over form and treat a sur-reply as a sur-reply, even if

27  presented otherwise. *See Peery v. Escobar (In re Peery)*, 2019 Bankr.LEXIS 2441, at *15 (B.A.P.
9th Cir. Aug. 2, 2019) (noting that a party's sanctions motion "reads like an unauthorized surreply"

28  used "primarily to refute the arguments raised in the reply brief" in a "thinly-veiled attempt to get in
the last word in this appeal"). Nonetheless, the Court has considered the arguments set forth in the
Stay Motion and finds them unavailing as set forth herein.

# Conclusions of Law

1.    The Trustee properly noticed the Sale Motion and Turnover Motion on all required parties. Docket No. 542-43.

2.    The Trustee properly set the Sale Motion and Turnover Motion for hearing. Docket No. 540-41.

3.    The Evidentiary Objections are overruled, and the Court gives the evidence submitted the weight it deserves.

## A. Sale Motion

4.    The Property constitutes property of the Estate.

5.    Based on the 727 Decision and the 727 District Court Order, it is law of the case that J-Pad held a lien against the Property as of the Petition Date.

6.    Debtor admitted that J-Pad held a consensual lien against the Property in various pleadings filed with the Court. *See* Docket No. 1 (Original Schedule D, listing a $175,000.00 secured claim of J-Pad against the Property); Docket No. 17 (amended Schedule D, including a $175,000.00 secured claim of J-Pad against the Property); Docket No. 22 (amended Schedule D, including a $225,000.00 secured claim of J-Pad against the Property); Docket No. 297 at 2-3 ("Motion to Avoid Lien Under 11 U.S.C. § 522(f)," in which Debtor represented under penalty of perjury that J-Pad held a lien against in the Property in the original amount of $225,000.00 and current amount of $175,000.00); Houser AP Docket No. 72 at 66-67, 69 (trial testimony); Debtor's opposition to 2022 Employment App  Docket No. 241; Proof of Claim No. 7-1 (representing under penalty of perjury that the J-Pad debt was due and owing with no right to setoff, that it was secured by a lien against the Property and attaching both the security agreement and promissory note).

7.    Debtor further admitted that J-Pad was the legal owner of the Property in multiple submissions to the HCD. *See* Docket No. 558 at 34, 36, 38, 54, 56 (Exhibit 1 to the Declaration of Janine Jasso submitted in support of the Reply).

8.    Debtor is judicially estopped from claiming that the J-Pad is worthless because she asserted in opposition to the 2022 Employment App that the title to and liens against the Property precluded the Trustee from employing a broker to sell it, Docket No. 208, which position the Court

1  adopted in denying the Trustee's application to employ a broker unless or until the liens were

2  avoided. Docket No. 241.

3       9.      To the extent Debtor disavows her past representations regarding the J-Pad lien, the

4  Court overrules her Opposition.

5       10.     The Debtor's argument that any party can challenge the avoided lien as worthless and

6  unenforceable is wrong as a matter of law. *See, Van de Kamp, supra.*

7       11.     The Debtor is further barred from attacking the enforceability of the lien because she

8  voluntarily made the fraudulent transfer. *See, Moore, supra.*

9       12.     The Debtor is further barred from challenging the lien because she may not

10  collaterally attack the final judgments in the Trustee AP.

11       13.     The Trustee avoided, recovered, and preserved J-Pad's lien against the Property

12  pursuant to 11 U.S.C. §§ 548, 550, and 551.

13       14.     The Trustee further avoided, recovered, and preserved title to the Property pursuant to

14  11 U.S.C. §§ 548, 550, and 551.

15       15.     Sound business reasons exist for the sale of the Property. Specifically, the Trustee

16  avoided, recovered, and preserved the consensual J-Pad lien against the Property, in the amount of

17  $225,000.00, plus interest, totaling $301,011.14 as of January 9, 2025, as set forth in the Sale

18  Motion. Daily interest of $33.90 continues to accrue until the lien is paid.  Docket No. 539 at p.16.

19       16.     The avoided, recovered, and preserved J-Pad lien is senior in priority to Debtor's

20  homestead exemption in the Property.

21       17.     The sales price of $276,000 will generate significant proceeds for the benefit of the

22  Estate.

23       18.     The Trustee gave accurate and reasonable notice of the sale to interested persons.

24  Specifically, the Trustee retained a licensed real estate broker who marketed the Property to the

25  world at large for several months and obtained an overbidder for the Property. Notice of the hearing

26  on the Sale Motion was properly given to all required parties. *See* Docket No. 542 (proof of service

27  attached to the notice of the hearing).

28

19.     The $276,000.00 sales price is adequate, fair, and reasonable. After months of marketing the Property, the Trustee had obtained one offer in the amount of $275,000.00 as of January 31, 2025. The sales price is especially adequate, fair, and reasonable in light of the steps Debtor took to obstruct the sales process, as detailed in the above Findings of Fact.

20.     The Trustee's overbid procedures are approved as fair and reasonable and not designed to chill overbids. The fact that the Trustee received an overbid substantiates that the overbid procedures were appropriate.

21.     The Property is being sold to the Buyer in good faith. Specifically, the Trustee negotiated the terms of the sale to Galaxy in an arm's length transaction after retaining a licensed real estate broker who marketed the Property to the world at large. *See generally* Docket No. 539 at 27-28, 30-31 (declarations of Trustee and Greg Bingham in support of the Sale Motion). Mr. Peplin is the debtor in a bankruptcy case pending as *In re Gregory A. Peplin*, Case No. 2:24-bk-13645-DS, wherein Mr. Peplin's home was sold to a third party, and Mr. Peplin received money on account of his homestead exemption. *See* Docket No. 560 at 2 (supplemental declaration of Greg Bingham). Mr. Peplin qualified as an overbidder and successfully bid on the Property at the auction in the amount of $276,000.00.

22.     Mr. Peplin is a good faith purchaser for purposes of 11 U.S.C. § 363(m) for the same reasons as set forth in Conclusions of Law ¶ 21.

23.     The Property is sold free and clear of all liens, claims, and interests, including Debtor's homestead exemption, pursuant to 11 U.S.C. § 363(f)(1) and (2). Specifically, under applicable nonbankruptcy law, the avoided, recovered, and preserved consensual liens against the Property are senior in priority to any claimed exemptions in the Property. And, the Trustee consents to the sale of the Property free and clear of any portion of the liens for which insufficient proceeds exist to pay the liens in full.

24.     The abstracts of judgment identified in the sale motion did not attach to the Property because it is personal property.  The holders of those abstracts did not oppose the Trustee's request in the Sale Motion to sell free and clear of their liens.

25.     All sales costs may be paid from the Property sales proceeds, including broker commissions, escrow fees and taxes, and reimbursement for the Insurance Advances as defined in the Sale Motion are approved.

26.     The Sale Motion is granted, and the Trustee is authorized to sell all right, title and interest of the Trustee in and to the Property free and clear of all liens, claims, and interests pursuant to 11 U.S.C. § 363(b) and (f), including the Debtor's homestead exemption. The Trustee may pay the Estate the balance of the avoided and preserved J-Pad lien from the proceeds of the sale of the Property.

**B. Turnover Motion**

27.     As discussed above, the Property is property of the Estate. The Trustee avoided, recovered, and preserved title to the Property from J-Sandcastle, and further avoided, recovered, and preserved the consensual liens against the Property, including the J-Pad lien.

28.     This Court has exclusive *in rem* jurisdiction over the Property as property of the Estate.

29.     The Court has personal jurisdiction over the Debtor, who consented to this Court's jurisdiction by filing a voluntary bankruptcy petition.

30.     The Debtor is in possession of the Property.

31.     The Property is of the type that the Trustee can sell pursuant to 11 U.S.C. § 363 as discussed above.

32.     The Property is not of inconsequential value or benefit to the Estate. Rather, Mr. Peplin is the purchaser of the Property for the price of $276,000, all cash with no contingencies, which amount is payable to the estate on account of the avoided, recovered, and preserved J-Pad lien.

33.     Pursuant to 11 U.S.C. § 542, Debtor and all occupants of the Property must vacate the Property and turn over possession of the Property to the Trustee.

34.     Should the Debtor or any occupants fail to turn over the Property as required by the Court's order, good cause exists for the Court to authorize the issuance of a writ of execution or assistance authorizing and directing the Marshals to compel the surrender of the Property.

Otherwise, the Estate may suffer irreparable harm, especially if the Debtor or any other occupants delay or frustrate the closing of the sale of the Property.

      35.    Any finding of fact that is determined to be a conclusion of law shall be deemed a conclusion of law. Any conclusion of law that is deemed a finding of fact shall be deemed a finding of fact.

# # #

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **NOTICE OF LODGMENT OF ORDER IN BANKRUPTCY CASE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 7, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On March 7, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| DEBTOR | SECURED CREDITOR |
|---|---|
| JAMIE LYNN GALLIAN | J-PAD, LLC |
| 16222 MONTEREY LN UNIT 376 | ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR |
| HUNTINGTON BEACH, CA 92649 | TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT |
| | OR LAW TO RECEIVE SERVICE OF PROCESS |
| | 4519 PONDEROSA WAY |
| | YORBA LINDA, CA 92886 |

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 7, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 7, 2025 | Cynthia Bastida | */s/ Cynthia Bastida* |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Page 2
ES 471

**F 9021-1.2.BK.NOTICE.LODGMENT**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO.:** Bradford Barnhardt
     bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEBTOR:** Christopher L Blank     chris@chrisblanklaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Aaron E DE Leest adeleest@DanningGill.com,
     danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS'
     ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **CHAPTER 7 TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com,
     jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO.
     DBA RANCHO DEL REY MOBILE HOME ESTATES:** D Edward Hays ehays@marshackhays.com,
     ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com;
     cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS'
     ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com,
     danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **INTERESTED PARTY:** Shantal Malmed     shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO.
     DBA RANCHO DEL REY MOBILE HOME ESTATES:** Laila Masud lmasud@marshackhays.com,
     lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com,
     mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                                          Page 3                              **F 9021-1.2.BK.NOTICE.LODGMENT**
ES 472                                                   ES 472                              ES 472

1   ERIC P. ISRAEL, #132426
    EPI@LNBYG.COM
2   LEVENE, NEALE, BENDER, YOO &
    GOLUBCHIK L.L.P.
3   2818 La Cienega Avenue
4   Los Angeles, CA 90034
    Phone: 310-229-1234
5

6   Attorneys for JEFFREY I. GOLDEN, Trustee

7   D. EDWARD HAYS, #162507
    ehays@marshackhays.com
8   BRADFORD N. BARNHARDT, #328705
    bbarnhardt@marshackhays.com
9   MARSHACK HAYS WOOD LLP
10  870 Roosevelt
    Irvine, CA 92620
11  Telephone: (949) 333-7777
    Facsimile: (949) 333-7778
12

13  Attorneys for Creditor,
    HOUSER BROS. CO. dba RANCHO DEL
14  REY MOBILE HOME ESTATES

15              UNITED STATES BANKRUPTCY COURT

16      CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

17  In re                              Case No. 8:21-bk-11710-SC

18  JAMIE LYNN GALLIAN,                Chapter 7

19          Debtor.                    DECLARATION OF GREGORY A.
                                       PEPLIN RE GOOD FAITH PURCHASER
20                                     FINDING ON CHAPTER 7 TRUSTEE'S
                                       MOTION TO AUTHORIZE SALE OF
21                                     MANUFACTURED HOME CURRENTLY
                                       LOCATED AT 16222 MONTEREY LANE,
22                                     SPACE 376, HUNTINGTON BEACH, CA
                                       92649, DECAL NO. LBM1081, FREE AND
23                                     CLEAR OF LIENS AND HOMESTEAD
                                       EXEMPTION (DOCKET NO. 539)
24
25                                     Date:   March 4, 2025
                                       Time:   11:00 a.m.
26                                     Ctrm:   5C

27  / / /

28
                            1

1  TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

2  THE DEBTOR AND HER COUNSEL OF RECORD, AND ALL INTERESTED PARTIES:

3           Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") and Jeffrey I.

4  Golden solely in his capacity as Chapter 7 Trustee ("Trustee") of the bankruptcy estate of Jamie

5  Lynn Gallian, jointly submit the attached Declaration of Gregory A. Peplin re: Good Faith Purchaser

6  Finding on Chapter 7 Trustee's Motion to Authorize Sale of Manufactured Home currently located

7  at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and

8  Clear of Liens and Homestead Exemption (Docket No. 539).

9  DATED: March 7, 2025               MARSHACK HAYS WOOD LLP

10

11                                    By:   /s/ Bradford N. Barnhardt
                                            _____
12                                          D. EDWARD HAYS
                                            BRADFORD N. BARNHARDT
13                                          Attorneys for Creditor,
                                            HOUSER BROS. CO. dba RANCHO DEL
14                                          REY MOBILE HOME ESTATES

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF GREGORY A. PEPLIN RE: GOOD FAITH PURCHASER

# DECLARATION

ES 475          ES 475          ES 475

ERIC P. ISRAEL (State Bar No. #132426)
*EPI@LNBYG.COM*
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Phone: 310-229-1234

Attorneys for Jeffrey I. Golden, Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>**DECLARATION OF GREGORY A. PEPLIN RE GOOD FAITH PURCHASER FINDING ON CHAPTER 7 TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION (DOCKET NO. 539)**<br><br>Date:   March 4, 2025<br>Time:  11:00 a.m.<br>Ctrm:  5C |

<u>**DECLARATION OF GREGORY A. PEPLIN**</u>

I, Gregory A. Peplin, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      The facts set forth below are true of my personal knowledge.  If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      I make this declaration in support of the request by Jeffrey I. Golden, the Chapter 7 Trustee (the "Trustee") for the estate of Jamie Lynn Gallian (the "Debtor"), for a good faith purchaser finding in the Trustee's Motion to Authorize Sale of Manufactured Home Currently

1  Located at 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No. LBM1081,

2  Free and Clear of Liens and Homestead Exemption (Docket No. 539) (the "Sale Motion").

3       4.     On or about February 26, 2025, I made an overbid at $276,000 (the "Overbid"),

4  through Coldwell Banker Realty ("Coldwell Banker"), the Trustee's real estate brokers, for a 2014

5  Skyline Custom Villa manufactured home, decal no. LBM 1081 (the "Property") currently located at

6  16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space"). The

7  Overbid was for all cash with no contingencies. I also provided the Trustee with a bank statement

8  reflecting enough funds to pay cash at that price.

9       5.     I have received and review a copy of the Sale Motion. I understand that the sale will

10 be subject to all of the terms and conditions in that motion other than price. I also understand that

11 the Trustee is not selling the Space and that I will need to apply to the park association for a new

12 lease.

13      6.     I attended by Zoom the sale hearing on March 4, 2025, at 11:00 a.m. The Trustee

14 called for overbidders, and I understand that my Overbid was the highest bid for the Property. The

15 Court ultimately took the Sale Motion under submission.

16      7.     I make the following disclosures in connection with the Trustee's request for a good

17 faith purchaser finding for the Overbid:

18          a.  Bill Friedman and Greg Bingham of Coldwell Banker Realty were also salespersons

19              representing Jason M. Rund, solely in his capacity as Chapter 7 trustee for the estate

20              of Gregory A. Peplin, case no. 2:24-bk-13645-DS (the "Peplin Trustee"). In that

21              case, the Peplin Trustee sold my real property to a third party, and I received money

22              on account of my homestead exemption in that case. I understand that I must reinvest

23              those proceeds in another home by April 30, 2025, in order to preserve their exempt

24              character.

25          b.  Mr. Friedman and Mr. Bingham are not representing me in the proposed sale by the

26              Trustee of the Property at bar – they instead are only representing the Trustee.

27              Instead, I am represented by Galaxy Homes LLC ("Galaxy"). Galaxy was also the

28              stalking horse buyer.

1

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

8. Except for my interest in overbidding on the Property, and the matters disclosed in paragraph 7 above, I have no relationship with the Debtor, the Trustee or any of the professionals in this case. I was advised of the Property by the Brokers and my real estate broker, David Guarino of Galaxy Homes. Before being referred to the Property, I had no knowledge of or dealings with the Debtor, this bankruptcy case or the Trustee.

9. There are no undisclosed terms to the sale.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at La Verne, California, on March __, 2025.

GREGORY A. PEPLIN

5

ES 478            ES 478            ES 478

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: DECLARATION OF GREGORY A. PEPLIN RE GOOD FAITH PURCHASER FINDING ON CHAPTER 7 TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION (DOCKET NO. 539) will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 7, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On March 7, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| **DEBTOR** | **SECURED CREDITOR** |
|---|---|
| JAMIE LYNN GALLIAN | J-PAD, LLC |
| 16222 MONTEREY LN UNIT 376 | ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR |
| HUNTINGTON BEACH, CA 92649 | TO ANY OTHER AGENT AUTHORIZED BY APPOINTMENT |
|  | OR LAW TO RECEIVE SERVICE OF PROCESS |
|  | 4519 PONDEROSA WAY |
|  | YORBA LINDA, CA 92886 |

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 7, 2025, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
**VIA PERSONAL DELIVERY**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 7, 2025 | Cynthia Bastida | */s/ Cynthia Bastida* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 2                    **F 9021-1.2.BK.NOTICE.LODGMENT**
**ES 479**                         **ES 479**                **ES 479**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO.:** Bradford Barnhardt
     bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEBTOR:** Christopher L Blank    chris@chrisblanklaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Aaron E DE Leest adeleest@DanningGill.com,
     danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS'
     ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **CHAPTER 7 TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com,
     jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO.
     DBA RANCHO DEL REY MOBILE HOME ESTATES:** D Edward Hays ehays@marshackhays.com,
     ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com;
     cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS'
     ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com,
     danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **INTERESTED PARTY:** Shantal Malmed    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO.
     DBA RANCHO DEL REY MOBILE HOME ESTATES:** Laila Masud lmasud@marshackhays.com,
     lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com,
     mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

CHRISTOPHER L. BLANK (SBN 115450)
CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2973 Harbor Blvd. #506
Costa Mesa, CA 92626
Telephone:    (949) 250-4600
Email:    chris@chrisblanklaw.com

Attorney for Debtor Jamie Lynn Gallian

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | ) BK Case No. 8:21-bk-11710-SC |
| | ) |
| | ) Chapter 7 |
| | ) |
| JAMIE LYNN GALLIAN | ) DEBTOR'S NOTICE OF LODGMENT OF |
| | ) [PROPOSED] FINDINGS OF FACT AND |
| | ) CONCLUSIONS OF LAW RE TRUSTEE'S |
| Debtor. | ) MOTIONS FOR SALE AND TURNOVER |
| | ) OF HOMESTEAD PROPERTY |
| | ) |
| | ) Date:  March 4, 2025 |
| | ) Time:  11:00 AM |
| | ) Ctrm: 5C Virtual |
| | ) |

TO THE COURT AND INTERESTED PARTIES: Please take notice that Debtor Jamie

Lynn Gallian ("Gallian") hereby lodges and submits the attached proposed Findings of Fact and

Conclusions of Law in support of denial of the Motions of Trustee Jeffrey Golden ("Golden") for

Approval of Sale and Turnover of Homestead.

Gallian requests that the Court deny both motions based on the proposed findings and

conclusions.  However, Gallian also suggests that the Court consider entering an Order

conditionally denying Trustee Golden's Motion for Sale of the Property that provides that if

Golden negotiates and obtains a stipulation from Gallian consenting to a Sale within two weeks

of entry of the Order, the Court will then set a hearing and provide an opportunity for parties

/////

/////

ES 481                    ES 481                    ES 481

1  in interest to consent or oppose the stipulation for entry of an Order approving a sale on the terms

2  in the stipulation.

3  Dated:  March 7, 2025                    CHRISTOPHER L. BLANK, ATTORNEY
4                                           AT LAW, PC

5                                           By:  ___/S/*Christopher L. Blank*_____
6                                                Christopher L. Blank, Attorney for Debtor
                                                 Jamie Lynn Gallian

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## I. FINDINGS OF FACT

1. Debtor Jamie Gallian ("Gallian") filed a voluntary chapter 7 bankruptcy on July 9, 2021, Case No. 8:21-bk-11710 SC.

2. Jeffrey Golden is the duly appointed and acting Trustee in Case No. 8:21-11710 SC.

3. Gallian lives in a manufactured home located at 16222 Monterey Lane, Space 376, Huntington Beach, California Decal No. LBM1081 (the "Property") that was purchased in 2018.

4. As of the filing date of her bankruptcy, Gallian was the equitable owner of the Property, J-Sandcastle LLC was the registered owner of the Property and Ron Pierpont and J-Pad LLC were shown on title as legal owners (lien holders) of the Property.

5. As of August 3, 2021, based on papers filed with the California Department of Housing and Community Development ("HCD") on February 25, 2021, Gallian was shown as registered owner of the Property.

6. As of August 3, 2021, based on papers filed with the HCD on July 9, 2021 showing satisfaction of their lien, Pierpont and J-Pad had been removed as legal owners (lien holders) of the Property.

7. Gallian has an unassailable automatic exemption of $600,000.00 in her equitable interest in the Property ("Gallian's Exempt Interest") established by a Final Non-Appealable Order of this Court entered May 17, 2024 [Docket 394] (the "Exemption Order").

8. At the hearing on March 4, 2025, Trustee Golden tentatively accepted an overbid of $276,000.00 from Gregory Alan Peplin.

9. The Property is personal property, not real property.

10. Prior to the filing of this bankruptcy case, no judgment creditor attempted to levy on the Property.

11. There are no judgment liens on the Property.

12. J-Pad never lent any money to J-Sandcastle or anyone else.

13. Gallian has consistently and repeatedly testified that J-Pad never lent any money

to J-Sandcastle or anyone else.

14.     In his adversary action to avoid and preserve the J-Pad lien. Adv. No. 8:23-ap-1064 SC (the "J-Pad Adversary"), Trustee Golden alleged and submitted proof that J-Pad never lent any money to J-Sandcastle.

15.     Trustee Golden's avoidance and preservation of the J-Pad lien was based on Golden's allegations and proof that J-Pad did not lend any money to J-Sandcastle.

16.     In Houser Bros. adversary action to avoid Gallian's discharge. Adv. No. 8:21-ap-01097-SC, (the "Discharge Adversary"), Houser Bros. alleged and submitted proof that J-Pad never lent any money to J-Sandcastle.

17.     In the Discharge Adversary, this Court specifically found that J-Pad never lent any money to J-Sandcastle.  See, (1) ORDER DENYING MOTION TO AMEND AND VACATING HEARING; (2) MEMORANDUM DECISION AFTER TRIAL REGARDING §727 CLAIMS; AND (3) SETTING STATUS CONFERENCE ON REMAINING § 523 CLAIMS, Entered 5/23/23, Adv. Docket 81 at 11, line 19. "J-Pad did not loan any money to J-Sandcastle."

18.     J-Pad is owed nothing.

19.     J-Pad never had a validly lien on the Property.

20.     J-Pad's purported lien never attached to the Property.

21.     The J-Pad Lien that was avoided and preserved for the bankruptcy estate has no value and is entitled to no payment from the proceeds of any sale of the Property.

22.     Trustee Golden has not proposed to sell or asked for permission to sell the J-Pad lien itself.

23.     Golden is not proposing to foreclose on the J-Pad Lien, or sell the J-Pad Lien as an asset of the estate.

24.     There are no valid consensual liens attached to the Property.

25.     There are no judgment liens attached to the Property.

26.     There is no non-exempt equity in the Property.

27.     The proposed sale will not generate sufficient proceeds to pay off any liens plus

the entirety of Gallian's $600,000.00 Exempt Interest in the Property.

28.     Gallian has not consented to the proposed sale of the Property.

**II. CONCLUSIONS OF LAW**

1.     As the moving party, the Trustee bears the burden of proving each and every element necessary to justify the relief he is seeking.

2.     Court authority to sell property free and clear of liens or other interests out of the ordinary course of business must be obtained by noticed motion. [11 USC § 363(b)(1); FRBP 6004(c), 9014; *see Ch. 19* re general motion practice].

3.     The trustee has the burden of proof on most issues in connection with a sale free and clear of liens. 11 USC § 363(p)(1).

4.     The creditor has the burden of proving the "validity, priority or extent" of its interest in the property being sold. 11 USC § 363(p)(2); *In re Meill* (8th Cir. BAP 2010) 441 BR 610, 613-615.

5.     All evidence supporting the motion must be submitted with the moving papers.

6.     Evidence submitted with reply papers cannot be considered by the Court without giving the opposing party an opportunity to respond to that evidence.

7.     The Court cannot grant a motion based on any evidence that was not submitted with the moving papers without giving the opposing party an opportunity to respond to that evidence.

8.     To satisfy his burden in this case, Golden must show a valid business purpose justifying the sale.  That is, Golden must prove that the sale will generate a substantial benefit to the bankruptcy estate.

9.     Trustee Golden has failed to submit evidence showing a valid business purpose justifying the sale of the Property.

10.     Trustee Golden has failed to submit evidence that the bankruptcy estate is entitled to receive any sale proceeds as a result of the avoided and preserved J-Pad lien.

11.     The proposed sale will generate no non-exempt proceeds.

12.     A Trustee may only sell a homestead if there is non-exempt equity in the property

or the Debtor consents.

      13.     Gallian's exempt interest in the property includes her right to continued possession of the Property.

      14.     Gallian's right to continued possession of the Property is not property of the estate.

      15.     For bankruptcy purposes, California has opted out of federal exemptions, electing to utilize exemptions enacted under state law. 11 U.S.C. § 522(b); Cal. Civ. Proc. Code §703.130.

      16.     The provisions of California's Enforcement of Judgments laws relating to exemptions are not preempted by the Bankruptcy Code. *In re Applebaum*, 422 B.R. 684 (B.A.P. 9th Cir. 2009).

      17.     Therefore, exemption questions in California bankruptcies require the application of California law. *In re Tallerico*, 532 B.R. 774, 780 (Bankr. E.D. Cal. 2015).

      18.     The California legislature enacted homestead exemption laws "to protect the sanctity of the family home against a loss caused by a forced sale by creditors ... [ and] ensure that insolvent debtors and their families are not rendered homeless by virtue of an involuntary sale of the residential property they occupy .... " *Amin v. Khazindar*, 112 Cal. App.4th 582, 588 (Cal. Ct. App. 2003). As such, there is a strong public policy toward adopting "a liberal construction of the law and facts to promote the beneficial purposes of the homestead legislation to benefit the debtor." *Id.*

      19.     In California, a debtor may obtain the benefits of a homestead exemption either by recording a declaration of homestead (Cal. Civ. Proc. Code § 704.910 - § 704.995), or through an automatic homestead exemption (Cal. Civ. Proc. Code§ 704.710 - §704.850).

      20.     The automatic homestead exemption protects a debtor from forced judicial sales of a debtor's dwelling. *In re Diaz*, 547 B.R. 329,334 (B.A.P. 9th Cir. 2016).

             "However, the filing of the petition serves as both a hypothetical levy and as the operative date of the exemption. *See Wolfe v. Jacobson (In re Jacobson),* 676 F.3d 1193, 1199 (9th Cir.2012)('bankruptcy exemptions

are fixed at the time of the bankruptcy petition'); *Nadel v. Mayer (In re Mayer),* 167 B.R. 186, 189 (9th Cir. BAP 1994)('[t]he filing of the petition constitutes an attempt by the trustee to levy on the property. It is this hypothetical levy the court must focus on in analyzing [the debtor's] entitlement to a homestead exemption.').)" *Id.* at 335.

21.     Gallian does not have a declared homestead interest in the Property because declared homesteads only apply to real property. Rather, Gallian has an automatic homestead interest in the Property.

22.     Substantive issues regarding the allowance or disallowance of the claimed exemption at issue are governed by California Law. *In re Diener,* 483 B.R. 196, 203 (9th Cir. B.A.P. 2012). Furthermore, "[u]nder the California Code of Civil Procedure, a debtor in bankruptcy's interest in her dwelling may not be sold to enforce a money judgment." *Id.* (citing Cal. Civ. Proc. Code§§ 704.720, 704.740(a)).

23.     Because Golden is proposing to sell the Property free and clear of Gallian's Exempt Interest in the Property, he must also prove that he is entitled to do so under 11 U.S.C. Section 363(f).

24.     Gallian's exempt interest in the property, and the right to possess it. are not rights that a Trustee can sell free and clear of pursuant to 11 U.S.C. Section 363(f).

25.     Applicable nonbankruptcy law does not allow a Debtor's exempt interest in a homestead dwelling to be sold free and clear of that interest unless the sale exceeds the total liens against the property plus the entire amount of the homestead exemption. Section 363(f)(1).

26.     Gallian has not consented to the sale of the Property. Section 363(f)(2).

27.     Gallian's exempt interest in the Property is not a lien. Section 363(f)(3).

28.     Gallian's exempt interest in the Property is not in bona fide dispute. Section 363(f)(4).

29.     Gallian could not be compelled, in a legal or equitable proceeding, to accept a monetary satisfaction of her exempt interest in the Property unless she were paid the entire amount of her homestead exemption. Section 363(f)(5).

30. The Property may only be sold by the Trustee Golden (1) with Gallian's consent or (2) if the sale generates sufficient proceeds to pay all liens plus the entirety of Gallian's $600,000.00 exemption.

31. Because the Property is personal property, not real property recordation of abstracts of judgment in the Orange County land records did not create a judgment liens on the Property.

32. Judgment liens on personal property, such as the Property, are created by levy of execution on the personal property.

33. There are no judgment liens on the Property.

34. To the extent that the filing of a bankruptcy is the equivalent of the Trustee levying on the Property and creating a judgment lien on the Property in favor of the bankruptcy estate, that lien is junior to Gallian's Automatic Homestead Exemption and subject to the Exemption provisions of California's Enforcement of Judgments Law.

35. The judgment avoiding and preserving the J-Pad lien does not give Trustee Golden the right to sell the Property pursuant to 11 U.S.C. Section 363.

36. By avoiding and preserving the J-Pad lien, Trustee Golden obtained the same rights that J-Pad had with respect to that lien.

37. When a Trustee avoids and preserves an interest in property, the Trustee "steps into the shoes" of the party whose interest was avoided and preserved. The effect of preserving an interest, does not enhance the interest.

38. The Trustee enjoys no better rights in the asset preserved than did the original holder of those rights. See *In re Appalachian Energy Indus., Inc.,* 25 B.R. 515 (Bankr. M.D. Tenn. 1982) (in avoiding the unperfected lien of the seller, the trustee preserved only such rights as the seller possessed in the collateral, and on the facts presented, the only right the seller acquired in the forklift, and thus the only right preserved for the benefit of the estate, was a security interest junior to the bank's properly perfected security interest), *In re Tri-Sonic, Inc.*, 1 B.R. 138 (Bankr. N.D. Tex. 1979) (preservation would not enhance status of trustee's lien so that if it would have been defeated by junior claimants while in hands of the original lienholder it was

8

also vulnerable in trustee's hands), *Matter of Woodworks Contemp. Furniture, Inc.*, 44 B.R. 971 (Bankr. W.D. Wis. 1984) (however substantial are powers of trustee to preserve avoided lien free of technical defects, when lien by its very nature is not securing purchase money, lien cannot be reinvented as one securing purchase money loan), *Connelly v. Marine Midland Bank, N.A.*, 61 B.R. 748 (W.D.N.Y. 1986) (trustee, upon avoiding creditor's first-in-time but unperfected security interest, stepped into creditor's shoes as to its unperfected security interest, and thus, bank's perfected security interest had priority over trustee's unperfected security interest under New York law).

39.    Creation and attachment of security interests in personal property, such as the Property, are governed by Article 9 of the California Commercial Code.

40.    Perfection and foreclosure of security interests in manufacture homes, such as the Property, are governed by the California Health & Safety Code.

41.    Section 9203 of the California Commercial Code provides that:

> (a) A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment.

> (b) Except as otherwise provided in subdivisions (c) to (i), inclusive, a security interest is enforceable against the debtor and third parties with respect to the collateral only if each of the following conditions is satisfied:

> (1) Value has been given.

> (2) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party.

> (3) One of the following conditions is met:

> (A) The debtor has signed a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned.

Cal. Com. Code § 9203 (West).

42.    Because J-Pad provided no value in exchange for the J-Pad lien, the J-Pad lien did not attach to the Property.

43.    Because J-Pad provided no value in exchange for the J-Pad lien, no money is owed on the J-Pad lien.

44.    Because the J-Pad lien never attached to the Property, attempts to perfect the invalid lien, such as documents recorded with the California Secretary of State and HCD are null and void.

45.    The holder of a valid lien that has attached to a manufactured home, such as the Property, could only sell the Property in compliance with foreclosure procedures specified in California Health & Safety Code. § 18037.5.

46.    Trustee Golden has not proposed to foreclose on the J-Pad lien in compliance with foreclosure procedures specified in California Health & Safety Code. § 18037.5 or otherwise.

47.    Golden's Motion for Sale of the Property must be denied absent consent by Gallian.

48.    Golden's Motion for Turnover is entirely based on his assertion that he is entitled to sell the Property without Gallian's consent.  That assertion is incorrect.

49.    There is no non-exempt equity in the Property to sell.

50.    There is no benefit to be gained from selling the Property because Golden's preserved J-Pad Lien has no value and no right to be paid from the proceeds of any Sale.

51.    Gallian's right to continue to reside in the Property because she has an unassailable exemption in her equitable interest in the Property is indisputable.

52.    Therefore, Golden's Motion for Turnover must be denied.

Respectfully submitted:

Dated:  March 7, 2025                    CHRISTOPHER L. BLANK, ATTORNEY
                                        AT LAW, PC

                                        By:    /S/*Christopher L. Blank*
                                        Christopher L. Blank, Attorney for Debtor Jamie
                                        Lynn Gallian

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*):

## NOTICE OF LODGMENT OF PROPOSED FINDINGS AND CONCLUSIONS

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 7, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 7, 2025 | Christopher L. Blank | /S/Christopher L. Blank |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

SERVICE LIST

8:21-bk-11710-SC Notice will be electronically mailed to:

Bradford Barnhardt on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home
Estates
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Christopher L Blank on behalf of Debtor Jamie Lynn Gallian
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Laila Masud on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF

mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

8:21-bk-11710-SC Notice will not be electronically mailed to:

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Janine Jasso
PO Box 370161
El Paso, CA 79937

Michael D Poole on behalf of Creditor The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

1  CHRISTOPHER L. BLANK (SBN 115450)
   CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2  2973 Harbor Blvd. #506
   Costa Mesa, CA 92626
3  Telephone:    (949) 250-4600
   Email:        chris@chrisblanklaw.com
4
   Attorney for Debtor Jamie Lynn Gallian
5

6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10
   In Re                              ) BK Case No. 8:21-bk-11710-SC
11                                     )
                                       ) Chapter 7
12                                     )
   JAMIE LYNN GALLIAN                  ) DEBTOR'S OPPOSITION TO PROPOSED
13                                     ) FINDING OF GOOD FAITH PURCHASE
                                       )
14                     Debtor.         ) Date:  March 4, 2025
                                       ) Time:  11:00 AM
15                                     ) Ctrm: 5C Virtual
                                       )
16                                     )
                                       )
17                                     )

18        TO THE COURT AND INTERESTED PARTIES: Debtor Jamie Lynn Gallian hereby

19 opposes Trustee Jeffrey Golden's Request for Finding of Good Faith Purchase [Docket 566] as

20 follows.

21        Gallian requests that the Court deny Trustee Golden's Motion for Approval of Sale of her

22 homestead, but if the Court is inclined to grant that Motion, Gallian opposes Golden's request for

23 a finding that a sale to Mr. Peplin be found in good faith pursuant to 11 U.S.C. Section 363(m).

24        Trustee Golden has submitted a declaration from Mr. Peplin in support of the good faith

25 finding.  Mr. Peplin testifies that the original stalking horse bidder is Galaxy Homes.  Galaxy

26 Homes buys and sells homes within the mobile home park where Ms. Gallian's homestead is

27 located.  Galaxy's initial bid was $275,000.00.  Mr. Peplin bid $276,000.00 prior to the hearing

28 held on March 4, 2025.  Mr. Peplin confirmed his overbid in that amount during the hearing on

March 4, 2025.  Galaxy chose not to offer a competing overbid at the hearing on March 4, 2025.

Ms. Gallian attempted to credit bid using her homestead exemption, which was refused.

Mr. Peplin testifies that he is represented by Galaxy in his efforts to buy Ms. Gallian's homestead.  That is, Galaxy was both the stalking horse bidder and the broker for Mr. Peplin as competing bidder.  The purpose of holding an auction is to motivate potential purchasers to bid up the price in the hope of generating the best price for the property being auctioned.  It is unrealistic to expect spirited bidding where the competing bidder's broker is the only other cash buyer at the auction.  Galaxy makes money whether they purchase the property, or their client purchases the property.  Galaxy has a great incentive, perhaps even a fiduciary duty, to avoid harming their client, Mr. Peplin, by bidding up the price.

The situation in this case appears to be the opposite of what Congress had in mind when it enacted Section 363(m), protecting good faith sales from being undone in the event of a reversal on appeal.  Trustee Golden's request for a good faith finding should be denied.

Dated:  March 12, 2025                    CHRISTOPHER L. BLANK, ATTORNEY
                                          AT LAW, PC

                                          By:    /S/*Christopher L. Blank*
                                          Christopher L. Blank, Attorney for Debtor
                                          Jamie Lynn Gallian

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*):

**DEBTOR'S OPPOSITION TO TRUSTEE'S REQUEST FOR GOOD FAITH FINDING**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 12, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 12, 2025 | Christopher L. Blank | /S/Christopher L. Blank |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

<u>SERVICE LIST</u>

8:21-bk-11710-SC Notice will be electronically mailed to:

Bradford Barnhardt on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Christopher L Blank on behalf of Debtor Jamie Lynn Gallian
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Laila Masud on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF

mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

8:21-bk-11710-SC Notice will not be electronically mailed to:

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Janine Jasso
PO Box 370161
El Paso, CA 79937

Michael D Poole on behalf of Creditor The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

FILED & ENTERED

MAR 13 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>Jamie Lynn Gallian,<br><br><br><br><br>Debtor(s). | Case No.: 8:21-bk-11710-SC<br><br>CHAPTER 7<br><br>**ORDER VACATING AUCTION RESULTS FROM MARCH 4, 2025, HEARING AND SETTING NEW AUCTION DATE OF MARCH 27, 2025**<br><br>Original Sale Hearing:<br>Date:        March 4, 2025<br>Time:        11:00 AM<br>Courtroom: 5C |

On March 4, 2024, the Court permitted the Chapter 7 Trustee to conduct an auction with respect to the Chapter 7 Trustee's Motion to Sell property of the Estate Free and Clear of Liens [Dk. 539]. Mr. Gregory A. Peplin was the successful bidder. At the hearing, the Court declined to make a good faith finding as Mr. Peplin was not the original buyer and permitted the Chapter 7 Trustee to submit a supplemental declaration in support of his request for a good faith finding under § 363(m) for the Court's review.

Accordingly, pursuant to the Court's instructions, the Declaration of Gregory A. Peplin was filed on March 7, 2025 [Dk. 566] attesting to his good faith status to support

a good faith finding under 11 U.S.C. § 363(m). On March 12, 2025 [Dk. 568], Debtor filed an Opposition to Mr. Peplin's declaration. The Opposition asserts that a single broker, Galaxy Homes LLC ("Galaxy") represented the two potential buyers appearing at the March 4, 2025, sale auction.[1]

The Court, having reviewed the Opposition and undertaking further research, has several concerns and risks to consider:

**1. Conflict of Interest Between Buyers**

Each buyer wants to acquire the property at the lowest possible price, creating a direct competition between them. The broker has a duty to act in each client's best interest, but representing both may result in an inability to fully advocate for either or advise either.

**2. Duty of Loyalty and Confidentiality**

A broker must keep one client's bidding strategy, valuation analysis, and negotiation tactics confidential from the other. There is a risk of improper disclosure (even inadvertently), which could undermine one buyer's competitive position.

**3. Risk of Auction Manipulation**

If both buyers are aware that they share a broker, it could lead to collusive behavior or bid rigging.

**4. Reduced Leverage for Clients**

A broker negotiating for multiple bidders may be limited in their ability to push aggressively for the best deal for either party.

**5. Disclosure and Legal Risks**

When the broker is a licensed professional, disclosure of the dual representation may be required. In this case, disclosure was made at the March 4, 2025 hearing, but not before to all parties-in-interest. The failure to disclose earlier has now raised the

---

[1] Further, Galaxy was not only the broker, but also the stalking horse buyer. Accordingly, whether Galaxy itself or the other bidder were successful, Galaxy would be getting a commission fee.

conflict issue (waivable or not between the potential buyers, but not waived by other

parties-in- interest).

**6. Creditor and Court Scrutiny**

This Court insists on full transparent and a competitive bidding process in

Section 363 sales. While full disclosure and consent may have been provided to both

buyers, the Court and other parties-in-interest must have that information earlier than

provided to evaluate the efficacy of the sales process, and the Court should have been

provided an opportunity to consider and make necessary adjustments.

In this instance, the solution to ensure undivided loyalty, avoid conflicts and to

provide full transparency, is to vacate the auction results of March 4, 2025, and order

that a second auction shall be held on March 27, 2025, at 10 a.m. with prior full

disclosures of broker representations of any buyers and supporting declarations

regarding any conversations that have occurred between any buyer and/or broker.  Any

further disclosures and supporting evidence must be filed by no later than March 20,

2025.

The Court recommends that potential buyers have separate representations by

brokers, and if necessary, counsel.

**IT IS SO ORDERED.**

Date: March 13, 2025

Scott C. Clarkson
United States Bankruptcy Judge

1  ERIC P. ISRAEL (State Bar No. #132426)
   *EPI@LNBYG.COM*
2  LEVENE, NEALE, BENDER, YOO &
   GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
   Los Angeles, CA 90034
4  Phone: 310-229-1234

5  Attorneys for Jeffrey I. Golden, Trustee

6

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        SANTA ANA DIVISION

11

12  In re                              Case No. 8:21-bk-11710-SC

13  JAMIE LYNN GALLIAN,                 Chapter 7

14            Debtor.                   **NOTICE OF ENTRY OF ORDER
                                        VACATING AUCTION RESULTS AND
15                                      RESCHEDULING AUCTION (*DOCKET
                                        NO. 569*)**

16                                      Date:   March 27, 2025
                                        Time:   10:00 a.m.
17                                      Ctrm:   5C
                                                411 West Fourth Street
18                                              Santa Ana, CA 92701

19

20        TO ALL CREDITORS, THE DEBTOR AND HER COUNSEL:

21        PLEASE TAKE NOTICE THAT on March 13, 2025, the Court entered an order vacating the

22  results of the auction held on March 4, 2025 (*docket no. 569*).  A copy of that order is attached

23  hereto as Exhibit "A".  Accordingly, an auction by Jeffrey I. Golden, the Chapter 7 Trustee (the

24  "Trustee") for the estate of Jamie Lynn Gallian (the "Debtor"), of the manufactured home currently

25  located at 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No. LBM1081

26  will occur on March 27, 2025, at 10:00 a.m., in Courtroom "5C".  The auction will be subject to all

27  of the terms and conditions set for in the Trustee's Motion to Sell Manufactured Home Currently

28                                       1

Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081,

Free and Clear of Liens and Homestead Exemption (*docket no. 539*) (the "Sale Motion"), which

was previously noticed to creditors.  Any party wishing to make an overbid must comply with the

procedures set forth in the Sale Motion.

DATED:  March 14, 2025                 LEVENE, NEALE, BENDER, YOO & GOLUBCHIK
                                       L.L.P.


                                       By:  _____/s/ Eric P. Israel_____
                                            ERIC P. ISRAEL
                                            Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

# EXHIBIT "A"

Case 8:21-bk-11710-SC    Doc 569    Filed 03/13/25    Entered 03/13/25 14:44:27    Desc
Main Document    Page 1 of 3

**FILED & ENTERED**

**MAR 13 2025**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte          DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Jamie Lynn Gallian,<br><br><br><br><br><br>Debtor(s). | Case No.: 8:21-bk-11710-SC<br><br>CHAPTER 7<br><br>**ORDER VACATING AUCTION RESULTS FROM MARCH 4, 2025, HEARING AND SETTING NEW AUCTION DATE OF MARCH 27, 2025**<br><br>Original Sale Hearing:<br>Date:        March 4, 2025<br>Time:        11:00 AM<br>Courtroom:  5C |

On March 4, 2024, the Court permitted the Chapter 7 Trustee to conduct an auction with respect to the Chapter 7 Trustee's Motion to Sell property of the Estate Free and Clear of Liens [Dk. 539]. Mr. Gregory A. Peplin was the successful bidder.  At the hearing, the Court declined to make a good faith finding as Mr. Peplin was not the original buyer and permitted the Chapter 7 Trustee to submit a supplemental declaration in support of his request for a good faith finding under § 363(m) for the Court's review.

Accordingly, pursuant to the Court's instructions, the Declaration of Gregory A. Peplin was filed on March 7, 2025 [Dk. 566] attesting to his good faith status to support

-1-

1  a good faith finding under 11 U.S.C. § 363(m). On March 12, 2025 [Dk. 568], Debtor

2  filed an Opposition to Mr. Peplin's declaration. The Opposition asserts that a single

3  broker, Galaxy Homes LLC ("Galaxy") represented the two potential buyers appearing

4  at the March 4, 2025, sale auction.[1]

5        The Court, having reviewed the Opposition and undertaking further research, has

6  several concerns and risks to consider:

7        **1. Conflict of Interest Between Buyers**

8        Each buyer wants to acquire the property at the lowest possible price, creating a

9  direct competition between them. The broker has a duty to act in each client's best

10  interest, but representing both may result in an inability to fully advocate for either or

11  advise either.

12        **2. Duty of Loyalty and Confidentiality**

13        A broker must keep one client's bidding strategy, valuation analysis, and

14  negotiation tactics confidential from the other. There is a risk of improper disclosure

15  (even inadvertently), which could undermine one buyer's competitive position.

16        **3. Risk of Auction Manipulation**

17        If both buyers are aware that they share a broker, it could lead to collusive

18  behavior or bid rigging.

19        **4. Reduced Leverage for Clients**

20        A broker negotiating for multiple bidders may be limited in their ability to push

21  aggressively for the best deal for either party.

22        **5. Disclosure and Legal Risks**

23        When the broker is a licensed professional, disclosure of the dual representation

24  may be required. In this case, disclosure was made at the March 4, 2025 hearing, but

25  not before to all parties-in-interest. The failure to disclose earlier has now raised the

26

27

28

---

[1] Further, Galaxy was not only the broker, but also the stalking horse buyer. Accordingly, whether Galaxy itself or the other bidder were successful, Galaxy would be getting a commission fee.

Case 8:21-bk-11710-SC    Doc 569    Filed 03/13/25    Entered 03/13/25 14:44:27    Desc
Main Document    Page 3 of 3

conflict issue (waivable or not between the potential buyers, but not waived by other

parties-in- interest).

### 6. Creditor and Court Scrutiny

This Court insists on full transparent and a competitive bidding process in

Section 363 sales. While full disclosure and consent may have been provided to both

buyers, the Court and other parties-in-interest must have that information earlier than

provided to evaluate the efficacy of the sales process, and the Court should have been

provided an opportunity to consider and make necessary adjustments.

In this instance, the solution to ensure undivided loyalty, avoid conflicts and to

provide full transparency, is to vacate the auction results of March 4, 2025, and order

that a second auction shall be held on March 27, 2025, at 10 a.m. with prior full

disclosures of broker representations of any buyers and supporting declarations

regarding any conversations that have occurred between any buyer and/or broker.  Any

further disclosures and supporting evidence must be filed by no later than March 20,

2025.

The Court recommends that potential buyers have separate representations by

brokers, and if necessary, counsel.

**IT IS SO ORDERED.**

Date: March 13, 2025

Scott C. Clarkson
United States Bankruptcy Judge

# PROOF OF SERVICE OF DOCUMENT

1

2  I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

3

4  A true and correct copy of the foregoing document entitled **NOTICE OF ENTRY OF ORDER VACATING AUCTION RESULTS AND RESCHEDULING AUCTION (DOCKET NO. 569)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

5

6  **1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 14, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

7

8

9  •    Bradford Barnhardt    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
   •    Christopher L Blank    chris@chrisblanklaw.com

10  •    Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

11  •    Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@g

12  oeforlaw.com
   •    Jeffrey I Golden (TR)    lwerner@go2.law,

13  jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com
   •    D Edward Hays    ehays@marshackhays.com,

14  ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmend oza@ecf.courtdrive.com

15  •    Brandon J. Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
   •    Shantal Malmed    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

16  •    Shantal Malmed    , cheryl.caldwell@gmlaw.com
   •    Laila Masud    lmasud@marshackhays.com,

17  lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
   •    Mark A Mellor    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

18  •    Valerie Smith    claims@recoverycorp.com
   •    United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

19

20  **2.   SERVED BY UNITED STATES MAIL**: On **March 14, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and

21  addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

22

23  **Buyer**                                                    **Overbidder**
   Galaxy Homes                                          Greg Peplin

24  Attn: Richard Herr                                    4616 Calle de Grande
   12852 Bubbling Well Road                        La Verne, CA  91750

25  Santa Ana, CA 92705

26  ☐ Service information continued on attached page

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

ES 510          June 2012                    ES 510                    **F 9013-3.1.PROOF.SERVICE**   ES 510

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 14, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 14, 2025 | D. Woo | /s/ D. Woo |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                     F 9013-3.1.PROOF.SERVICE

Label Matrix for local noticing
0973-8
Case 8:21-bk-11710-SC
Central District of California
Santa Ana
Fri Mar 14 11:14:55 PDT 2025

Houser Bros. Co. dba Rancho Del Rey Mobile H
c/o Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620-3663

Association of Flight Attendants
625 No. River Road Ste. 4020
Rosemont, IL. 60018

County of Orange Treasurer-Tax Collector
P.O. Box 4515
Santa Ana CA 92702-4515

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Gordon Rees Scully & Mansukhani
5 Park Plaza Ste. 1100
Irvine, CA 92614-8502

Houser Bros. Co.dba Rancho Del
Rey Mobile Home Estates
17610 Beach Blvd Ste. 32
Huntington Beach, CA 92647-6876

Huntington Beach Gables Homeowners Associati
Epstein, Grinnel & Howell, APC
10200 Willow Creek Rd Ste 100
San Diego CA 92131-1655

Huntington Mobile Home Investments
16400 Saybrook Lane
Huntington Beach, CA 92649-2277

Hyundal Capital America
PO BOX 269011
Plano, TX 75026-9011

2973 Harbor Blvd
Box 506
COSTA MESA, CA 92626-3912

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

BS Investors
Robert P. Warmington C/o
Gorden May Grant, Genovese & Baratta
2030 Hain St. Ste. 1600
Irvine, CA 92614

Danning, Gill, Israel & Krasnoff, LLP
1901 Ave of The Stars, Ste 450
Los Angeles CA 90067-6006

Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7907

Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Houser Brothers Co.
dba Rancho Del Rey Mobilehome Est.
17610 Beach Blvd. Ste. 32
Huntington Beach, CA 92647-6876

Huntington Harbor Village
16400 Saybrook
Huntington Beach, CA 92649-2277

Huntington Mobile Home Investments LLC
1100 Newport Beach Blvd. Ste 1150
Newport Beach, CA 92560

Internal Revenue Service
PO Box 7346
Philadelphia, 19101-7346

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA    92660-6377

16222 MONTEREY LANE UNIT 376
HUNTINGTON BEACH, CA 92649-2258

County of Orange
P.O. Box 4515
Santa Ana CA 92702-4515

David R. Flyer
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228

Frank Satalino
19 Velarde Ct.
Rancho Santa Margarita, CA 92688-8502

Houser Bros. Co.
DBA Rancho Del Rey Estates
16222 Monterey Ln
Huntington Beachr CA 92649-6214

Huntington Beach Gables H0A
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300 Laguna
Hllls, CA 92653-7907

Huntington Hobile Home Inv. LLC.
430 S. San Dimas Ave.
San Dimasa CA 91773-4045

Hyundai Capital America
PO BOX 269011
Plano, TX 75026-9011

Internal Revenue Service Insolvency
PO BOX 7346
Philadelphia, PA 19101-7346

**ES 512**          **ES 512**          **ES 512**

J-Sandcastle Co, LLC
16222 Monterey Ln Unit 376
Huntington Beach CA 92649-2258

James H Cosello
Casello & Lincoln,
525 N Cabrillo Park Dr. Ste 104
Santa Ana, CA 92701-5017

(p)JANINE JASSO
PO BOX 370161
EL PASO TX 79937-0161

Jennifer Ann Paulin
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lee Gragnano
16062 Warmington Ave.
Huntington Beacha CA 92649-2285

Linda Jean ''Lindy'' Bec
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lori Ann Burrett
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Mark A.Mellor Mellor Law Firm
c/o Randall Nickell
6800 Indiana Ave.
Riverside, CA 92506-4267

Orange County Superior Court
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300
Laguna Hills, CA 92653-7907

Randall Nickel
11619 Inwood Drive,
Riverside, CA 92503-5000

J-pad, LLC
21742 Anza Avenue
Torrance, CA 90503-6428

Jamie Lynn Gallian
16222 Monterey Ln #376
Huntington Beach, CA 92649-2258

Janine Jasso
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Jennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286

Lee Gragnano
16062 Warmington Ave.
Huntington Beach, CA 92649-2285

Lindy Beck
4443 Chase Dr.
Huntington Beach, CA 92649-2297

Lori Burrett
16107 Harmington Lane
Huntington Beach, CA 92649-2281

Michael S. Devereux
Wex Law
9171 Wilshire Blvd. Ste. 500
Beverly Hills, CA 90210-5530

Patricia Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

Randall Nickell
4476 Alderport Dr.
Huntington Beach. CA 92649-2288

J-pad, LLC
2702 N Gaff Street
Orange, CA 92865-2417

Janine Jasso
16025 Warmington Lane
Huntington Beach, CA 92649-2278

Janine Jasso, Jennifer Paulin, Lori Burrett
c/o Goe Forsythe & Hodges LLP
17701 Cowan, Suite 210
Irvine, CA 92614-6840

Kia Motors Finance
PO Box 20815
Fountain Valley, CA 92728-0815

Lee S. Gragnano
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lisa T. Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

Lori Burrett
16107 Sherlock Lane
Huntington Beach, CA 92649-2293

Nationwide Reconveyance, LLC
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7908

People of the St of CA
8141 13th St
Westminster CA 92683-4576

Randell Nickel
c/o Mark Mellor, Esq.
6800 Indiana Ave. Ste. 220
Riverside, CA 92506-4267

**ES 513**          **ES 513**          **ES 513**

Randell Nickel
c/o Mark Mellor, Esq. Ste. 220 6800
Indiana Ave.
Riverside, CA 92506

Ragan Dyer-Parker
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228

Robert P. Warmington Co.
c/o BS Investors
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Robert P. Warmington Co.
c/o BS Investors LP
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Rutan & Tucker
18575 Jamboree Rd 9th Fl
Irvine CA 92612-2559

S4 A California Limited Partnership
1001 Cove St Ste 230
Newport Beach CA 92660

Sandra L. Bradley
18 Meadowwood
Coto De Caza, CA 92679-4738

Sardra Bradley
18 Meadow Hood
Coto De Caza, CA 92679-4738

Stanley Feldsott: Esq
Feldsott & Lee
23161 Mill Creek Drive
Laguna Hills, CA 92653-7907

Steven A. Fink
13 Corporate Plaza Ste. 150
Newport Beach, CA 92660-7919

Superior Court of CA
County of Orange
711 Civic Center Dr West
Santa Ana CA 92701-3907

Superior Default Services Inc
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7908

Suzanne Tague
Ross Wolcott, Teinert, Prout
3151 Airway Ave. S-1
Costa Mesa, CA 92626-4607

Ted Phillips
17162 Sandra Lee
Huntington Beach, CA 92649

Ted Phillips
17912 Sandra Lee
Huntington Beach, CA 92649

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell APC
10200 Willow Creek Road, Ste 100
San Diego, CA 92131-1669

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell,
APC 10200 Willow Creek Road,
Ste 100
San Diego, CA 92131

The Huntington Beach Gables Homeowners Assoc
c/o Goe Forsythe & Hodges LLP
18101 Von Karman Ave, Suite 1200
Irvine, CA 92612-7119

Theodore Phillips
17612 Sandea Lee
Huntington Beach CA 92649

Theodore R ''Ted'' Phill
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

United Airlines
233 S. Hacker Dr.
Chicago, IL 60606-6462

United Airlines
P.O. Box 0675
Carol Stream, 60132-0675

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Vivienne J Alston
Alston, Alston & Diebold
27201 Puerta Real Ste 300
Mission Viejo, CA 92691-7359

qennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286

zanine Jasso
16025 Harmington Lane
Huntington Beacha CA 92649-2278

Christopher L Blank
Christopher L Blank, Esq
2973 Harbor Blvd #506
92626
Costa Mesa, CA 92626-2912

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

Jamie Lynn Gallian
16222 Monterey Ln Unit 376
Huntington Beach, CA 92649-2258

Jeffrey I Golden (TR)
Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, CA 92626-3067

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Janine Jasso
P.O. Box 370161
El Paso, TX 79937

US Bank
P O Box 5229
Cincinnati OH 45201-5229

(d)US Bank NA
PO Box 64799
Saint Paul, MN 55164

(d)Janine Jasso
PO Box 370161
El Paso, CA 79937

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)The Huntington Beach Gables Homeowners Ass

(u)Michael Chulak-tunknown
Mchulak@MTcLaw.com

(d)People of the St of CA
8141 13th Street
Westminster, CA 92683-4576

End of Label Matrix
Mailable recipients    91
Bypassed recipients     4
Total                  95

**ES 515**                                **ES 515**                                **ES 515**

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ERIC P. ISRAEL (State Bar No. 132426)<br>EPI@LNBYG.COM<br>LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.<br>2818 La Cienega Ave.<br>Los Angeles, CA 90034<br>Telephone: (310) 229-1234<br>Facsimile: (310) 229-1244<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Jeffrey I. Golden, Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>JAMIE LYNN GALLIAN<br><br><br><br><br>Debtor(s). | CASE NO.: 8:21-11710-SC<br>CHAPTER: 7<br><br><br>**NOTICE OF SALE OF ESTATE PROPERTY** |
|---|---|

| **Sale Date:** 03/27/2025 | **Time:** 10:00 am |
|---|---|
| **Location:** Courtroom 5C, | |

**Type of Sale**: ☒ Public   ☐ Private       **Last date to file objections**: 03/18/2025 _____

**Description of property to be sold**:
Manufactured home described as a 2014 Skyline Custom Villa, Decal No. LBM1081, presently located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649. Sale does not include the ground lease for the pad, but the association advises that it will issue a new ground lease to any qualified buyer (but not the debtor).


**Terms and conditions of sale**:
"As is" and "where is" with no warrantees or recourse whatsoever. All cash, no contingencies. Subject to overbid and Court approval. For further information, see sale motion (docket no. 539) (the "Sale Motion").



**Proposed sale price**: $ 275,000.00 _____

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                  *Page 1*                  F 6004-2.NOTICE.SALE

ES 516                         ES 516                              ES 516

**Overbid procedure (*if any*):**
 Minimum initial overbid of $276,000.  Overbids in increments of $1,000. To overbid, a cashiers check payable to "Jeffrey I. Golden, Trustee" must be delivered at 3 days before the auction with proof of ability to close the sale and overbid on approved form without changes attached as Exhibit "8" to sale motion.  For further information, see the Sale Motion.

**If property is to be sold free and clear of liens or other interests, list date, time and location of hearing:**
 Auction to be held March 27, 2025, at 10:00 a.m. in Courtroom "5C", 411 W. Fourth St., Santa Ana, CA.

**Contact person for potential bidders (*include name, address, telephone, fax and/or email address*):**
 Greg Bingham at Coldwell Banker Realty.  (949) 759-3760, Gregory.Bingham@camoves.com.

Date: 03/18/2025

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*    Page 2    F 6004-2.NOTICE.SALE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **NOTICE OF SALE OF ESTATE PROPERTY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 18, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Bradford Barnhardt    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- Christopher L Blank    chris@chrisblanklaw.com
- Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- Jeffrey I Golden (TR)    lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com
- D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- Brandon J. Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- Shantal Malmed    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
- Shantal Malmed    , cheryl.caldwell@gmlaw.com
- Laila Masud    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- Mark A Mellor    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- Valerie Smith    claims@recoverycorp.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **March 18, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Jaime Lynn Gallian
16222 Monterey Ln Unit 376
Huntington Beach, CA 92649

☐ Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 18, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 18, 2025 | D. Woo | /s/ D. Woo |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                            F 9013-3.1.PROOF.SERVICE

ERIC P. ISRAEL (State Bar No. #132426)
*EPI@LNBYG.COM*
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Phone:      310-229-1234
Facsimile: 310-229-1244

Attorneys for Jeffrey I. Golden, Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>    Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>**SUPPLEMENTAL DECLARATION OF GREGORY A. PEPLIN RE COURT'S ORDER VACATING MARCH 4, 2025 AUCTION RESULTS AND RE-SETTING AUCTION FOR MARCH 27, 2025 (*DOCKET NO. 569*)**<br><br>Date:  March 27, 2025<br>Time:  10:00 a.m.<br>Ctrm:  5C<br>          411 West Fourth Street<br>          Santa Ana, California |

I, Gregory A. Peplin, declare as follows:

1.      I am an individual over 18 years of age.

2.      The facts set forth below are true of my personal knowledge.  If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      Jason Rund as trustee ("Rund") sold my home in La Verne, California.  From that sale, I received money on account of my homestead exemption.  I was told that I needed to reinvest

1

the proceeds of my homestead exemption in order to retain my right to those exempt homestead

proceeds.

4.     I looked around and was interested in the park in Huntington Beach (the "Park")

where the manufactured home described as a 2014 Skyline Custom Villa, decal no. LBM 1081 (the

"Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach, California

92649 (the "Space") (the "Property") is located.  I looked at the Multiple Listing Service (the

"MLS") online and noticed the Property and that the listing was with Greg Bingham and Bill

Friedman of Coldwell Banker.  Greg Bingham and Bill Friedman of Coldwell Banker were the real

estate brokers who sold my home for Rund, so I had some familiarity with them.  As a result, I

called Greg Bingham.  Greg Bingham told me about the Property, including that the seller was

Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the estate of Jamie Lynne Gallian (the

"Debtor").  Obviously, I also had some recent familiarity with the bankruptcy process as a result of

the sale of my home in La Verne.

5.     Also while looking online, I saw another manufactured home in the Park.  I noticed

that David Guarino was the listing broker on that other property, and I contacted him.  He and I

subsequently went out to see the other manufactured home.  Because I had previously noticed the

Property in the MLS and had spoken with Greg Bingham about it, I asked David about it and told

him I might be interested in it.  He said he would arrange a tour of the Property.  After several weeks

of the Property being unavailable, we found a window of opportunity to tour the Property.  David

Guarino was out of town that weekend, but Greg Bingham met me at the Property and arranged

access for my wife and me.  The Debtor was also present.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

2

6.      David Guarino helped me put together the overbid package and arranged communication with Park management to get me approved for a ground lease at the Park.  Mr. Guarino told me that Galaxy Homes was the stalking horse buyer.  I mentioned the potential of a conflict to both Mr. Bingham and Mr. Guarino, and both felt the situation would be fine, but I didn't understand the dual representation ramifications at that time.  I never had a written document actually retaining Galaxy Homes.

7.      I attended by Zoom the hearing on the Sale Motion and the auction on March 4, 2025, at 11:00 a.m., and no one overbid my bid at $276,000.  The Court took the matter under submission, but later Mr. Guarino contacted me and provided me with a copy of the Court's order vacating the auction (the "Auction Vacating Order").  Mr. Bingham also reached out to me to confirm that I was aware that the first auction had been vacated and a new auction set.  This supplemental declaration is submitted to respond to the Court's directive in the Auction Vacating Order that declarations concerning any discussions between any buyers and brokers be filed.

8.      I have discussed the issues raised in the Auction Vacating Order with both Mr. Bingham and with David Guarino.  I asked Bingham if he could represent me, but he said he could not represent me since he represents the Trustee – the seller.  I have decided to terminate Galaxy Homes as my real estate broker.  I have contacted Lori Alvarez at Real Estate Resolved to represent me in this transaction, and we formalized that representation on March 19, 2025.   A true and correct copy of the documentation I signed with Ms. Alvarez is attached hereto, marked as Exhibit "B" and incorporated herein by this reference.

9.      Except as discussed above, I previously had no familiarity with Galaxy Homes, David Guarino, Greg Bingham or Bill Friedman.  Until this case, I had no familiarity at all with Jeff Golden, Eric Israel or Jamie Lynn Gallian.  I have never met or spoken with Richard Herr, who I understand tendered the original offer to the Trustee for the Property through David Gaurino on behalf of Galaxy Homes, although I believe Mr. Herr was also on Zoom for the sale hearing on March 4, 2025.

/ / /

3

1         10.    My overbid will remain open to the Trustee regarding the Property, and I intend to

2    participate in the re-set auction on March 27, 2025.

3

4         I declare under penalty of perjury under the laws of the United States of America that the

5    foregoing is true and correct.

6         Executed at La Verne, California, on March 2⁰, 2025.

7

8

9                                GREGORY A. PEPLIN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                      4

ES 523                    ES 523                    ES 523

# EXHIBIT "A"



CALIFORNIA
ASSOCIATION
OF REALTORS®

**DISCLOSURE REGARDING
REAL ESTATE AGENCY RELATIONSHIP**
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/24)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code §§ 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. This includes a Buyer's agent under a buyer-broker representation agreement with the Buyer. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
   (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
   (b)  A duty of honest and fair dealing and good faith.
   (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
   (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
   (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of §§ 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

**Note: Real estate broker commissions are not set by law and are fully negotiable.**

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

Buyer/Seller/Landlord/Tenant _Gregory Peplin_____ Date 3/19/2025 | 3:45 PM PDT
                 _Gregory Peplin_ 74C1...
Buyer/Seller/Landlord/Tenant _____ Date _____

Agent _Real Estate Resolved_____ DRE Lic. # _02014153_
              Real Estate Broker (Firm)
By _Lori Alvarez_____ DRE Lic. # _01794115_ Date 3/19/2025 | 3:08 PM PDT
      5C423E88D63B4(Salesperson or Broker-Associate, if any)
_Lori Alvarez_

**AD REVISED 12/24 (PAGE 1 OF 2)**

EQUAL HOUSING
OPPORTUNITY

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Real Estate Resolved, 2138 Bonita Ave, Ste B, La Verne, CA 91750-4915           Phone: (909) 227-4196      Fax:
Lori Alvarez

Docusign Envelope ID: B791A8E7-E096-41A4-A692-80FD952988F6

<div align="center">

**CIVIL §§ 2079.13 - 2079.24 (2079.16 APPEARS ON THE FRONT)**
</div>

**2079.13.** As used in this section and §§ 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
**(a)** "Agent" means a person acting under provisions of Title 9 (commencing with § 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with § 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes a vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with § 1940) of Title 5, (3) a mobilehome, as defined in § 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in § 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction, **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell that real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of § 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in § 18007 of the Health and Safety Code, or a mobilehome as defined in § 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in § 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Single-family residential property" or "single-family residential real property" means any of the following: (1) Real property improved with one to four dwelling units, including a leasehold exceeding one year's duration. (2) A unit in a residential stock cooperative, condominium, or planned unit development. (3) A mobilehome or manufactured home when offered for sale or sold through a real estate broker pursuant to § 10131.6 of the Business and Professions Code. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of § 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(o)** "Buyer's agent" means an agent who represents a buyer in a real property transaction. **(p)** "Buyer-broker representation agreement" means a written contract between a buyer of real property and a buyer's agent by which the buyer's agent has been authorized by the buyer to provide services set forth in subdivision (a) of § 10131 of the Business and Professions Code for or on behalf of the buyer for which a real estate license is required pursuant to the terms of the contract.
**2079.14** **(a)** A copy of the disclosure form specified in § 2079.16 shall be provided in a real property transaction as follows: (1) The seller's agent, if any, shall provide the disclosure form to the seller before entering into a listing agreement. (2) The buyer's agent shall provide the disclosure to the buyer as soon as practicable before the execution of a buyer-broker representation agreement and execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer. **(b)** The agent providing the disclosure form specified in § 2079.16 shall obtain a signed acknowledgement of receipt from the buyer or seller except as provided in § 2079.15.
**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to § 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
**2079.16** Reproduced on Page 1 of this AD form.
**2079.17 (a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller. **(c)** The confirmation required by subdivision (a) and (b) shall be in the following form:

| | | |
|---|---|---|
| Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
| Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent) | |
| Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
| Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agents. (dual agent) | |
| Buyer's Brokerage _____ DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
| Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent) | |
| Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY | License Number _____ |
| Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agents. (dual agent) | |

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by § 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
**2079.18** (Repealed pursuant to AB-1289)
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of § 2079.14 and § 2079.17 are complied with.
**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
**2079.23 (a)** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship. **(b)** A lender or an auction company retained by a lender to control aspects of a transaction of real property subject to this part, including validating the sales price, would not require, as a condition of receiving the lender's approval of the transaction, the homeowner or listing agent to defend or indemnify the lender or auction company from any liability alleged to result from the actions of the lender or auction company. Any clause, provision, covenant, or agreement purporting to impose an obligation to defend or indemnify a lender or an auction company in violation of this subdivision is against public policy, void, and unenforceable.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*

**AD REVISED 12/24 (PAGE 2 OF 2)**



<div align="center">

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**
</div>

**ES 526**        **ES 526**        **ES 526**

Docusign Envelope ID: B791A8E7-E096-41A4-A692-80FD952988F6



# FAIR HOUSING AND DISCRIMINATION ADVISORY
### (C.A.R. Form FHDA, Revised 12/24)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996, 12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race (and race traits) | Color | Ancestry | National Origin | Religion |
|---|---|---|---|---|
| Age | Sex, Sexual Orientation | Gender, Gender Identity; Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any arbitrary characteristic |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(l)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, disability, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords/Housing Providers
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (i) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime, or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;
   E. Inquiring about protected characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

© 2024, California Association of REALTORS®, Inc.

**FHDA REVISED 12/24 (PAGE 1 OF 2)**



**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

Docusign Envelope ID: B791A8E7-E096-41A4-A692-80FD952988F6

**F.** Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;
**G.** Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);
**H.** Denying a home loan or homeowner's insurance;
**I.** Offering inferior terms, conditions, privileges, facilities or services;
**J.** Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;
**K.** Harassing a person;
**L.** Taking an adverse action based on protected characteristics;
**M.** Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a tenant who uses a wheelchair to install, at their expense, a ramp over front or rear steps, or refusing to allow a tenant with a disability from installing, at their own expense, grab bars in a shower or bathtub);
**N.** Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
    **(i)** Failing to allow that person to keep the service animal or emotional support animal in rental property,
    **(ii)** Charging that person higher rent or increased security deposit, or
    **(iii)** Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;
**O.** Retaliating for asserting rights under fair housing laws.

**10. EXAMPLES OF POSITIVE PRACTICES:**
**A.** Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/ neighborhood, property features, and price range and other considerations, to all prospects.
**B.** Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.
**C.** Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.
**D.** Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").
**E.** Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

**11. FAIR HOUSING RESOURCES:** If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.
**A.** Federal: **https://www.hud.gov/program_offices/fair_housing_equal_opp**
**B.** State: **https://calcivilrights.ca.gov/housing/**
**C.** Local: local Fair Housing Council office (non-profit, free service)
**D.** DRE: **https://www.dre.ca.gov/Consumers/FileComplaint.html**
**E.** Local Association of REALTORS®. List available at: **https://www.car.org/en/contactus/rosters/localassociationroster**
**F.** Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

**12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.**
**A.** Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;
**B.** An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental;
**C.** An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED **(i) no real estate licensee is involved** in the sale or rental and **(ii)** no discriminatory advertising is used, and **(iii)** the owner owns no more than three single-family residences. Other restrictions apply;
**D.** An owner of residential property with one to four units who resides at the property, may be exempt from FHA for rental purposes, PROVIDED **no real estate licensee is involved** in the rental; and
**E.** Both FHA and FEHA do not apply to roommate situations. See, *Fair Housing Council v Roommate.com LLC*, 666 F.3d 1216 (2019).
**F.** Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race; the FHA and FEHA exemptions do not extend to discrimination based on race.

**Buyer/Tenant and Seller/Housing Provider have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.**

Buyer/Tenant _Gregory Peplin_ _____ *Gregory Peplin* _____ Date 3/19/2025 | 3:45 PM PDT
    ─861059EB27D74C1

Buyer/Tenant _____ Date _____

Seller/Housing provider _____ Date _____

Seller/Housing provider _____ Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
**FHDA REVISED 12/24 (PAGE 2 OF 2)**



Docusign Envelope ID: B791A8E7-E096-41A4-A692-80FD952988F6



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**BUYER REPRESENTATION
AND BROKER COMPENSATION AGREEMENT
(Non-Exclusive unless Exclusive is checked and initialed)**
(C.A.R. Form BRBC, Revised 12/24)

**Date Prepared:** _03/19/2025_

1. **RIGHT TO REPRESENT:** _Gregory Peplin_ ("Buyer")
   grants _Real Estate Resolved_ ("Broker")
   the non-exclusive right (unless **Exclusive** is checked in **paragraph 2A(2)** and initialed in **paragraph 15**) to represent Buyer in acquiring
   real property or a manufactured home ("Property") for the Representation Period specified in **paragraph 2A(1).**

2. **TERMS OF REPRESENTATION:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide
   further explanation.  This form is 5 pages.  Buyer is advised to read all 5 pages.

| | Para. # | Paragraph Title or Contract Term | Terms and Conditions |
|---|---|---|---|
| **A** | | Representation | |
| A(1) | | Representation Period | Beginning: _03/19/2025_ (date) Ending at 11:59 P.M. on _06/19/2025_ (date) OR upon completion of a resulting transaction, whichever occurs first.<br><br>(Not to exceed 3 months.  If Representation Period exceeds 3 months, this Agreement is void unless Buyer is a corporation, LLC or partnership.) |
| A(2) | | Type of Representation | Non-exclusive, OR ☐ Exclusive (valid only if checked AND initialed in **paragraph 15**). |
| **B** | | Property to be Acquired ("Property") | Broker, including any associate licensee working through Broker on behalf of Buyer, provides services for the types of properties and in the locations specified below. |
| B(1) | | Property type: | Single family residential (OR, if checked, ☐ SFR is excluded from this Agreement), including condominiums and manufactured homes (SFR),<br><br>☐ Multi-family residential with two to four units, ☐ with 5 or more units,<br><br>☐ Industrial, ☐ Vacant Land, ☐ Commercial, ☐ Tenancy in common,<br><br>☒ The following specified property(ies) only:  _Manufactured or Mobile Home_ |
| B(2) | | Location | ☐ County(ies): <br>☐ City(ies): |
| B(3) | | Additional Description | |
| **C** | | ☐ Additional Buyer Preferences and Priorities | See attached Buyer Identification of Preferences and Priorities (C.A.R. Form BIPP). |
| **D** | 7 | Properties Excluded from Representation | <br>OR ☐ The Properties identified on the attached list. |
| **E** | | Broker Compensation: NOTICE: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Buyer and Broker.  See attached Broker Compensation Advisory (C.A.R. Form BCA). | |
| E(1) | 4B | Amount of Compensation | _3_% of the acquisition price AND, if any, $ _____;  _$_ <br>OR ☐ $ _____;<br>OR ☐ see attached Broker-created compensation schedule. |
| E(2) | 4G | Payments received by Broker from Seller or others | If Broker receives compensation from Seller or others, for Broker's representation of Buyer, the amount shall be credited against Buyer's obligation to pay Broker.<br><br>Broker shall not receive any amount in excess of **paragraph 2E(1)**. |
| E(3) | 4C | Continued Right to Payment for Broker Involved Properties | The Continuation Period shall be _180_ calendar days after the Representation Period or any extension ("Continuation Period"). |
| **F** | 5 | Cancellation Rights and Notice | **Non-exclusive:** Cancellation effective upon receipt OR ☐ _____ days after receipt;<br><br>**Exclusive:** Cancellation effective 30 OR ☐ _____ (not to exceed 30) days after receipt. |
| **G** | | Buyer Financial/Personal Information | |
| G(1) | 9B(1) | Time to deliver Buyer personal/ financial information | Within 5 (or _____ ) calendar days from the execution of this Agreement.<br><br>☐ C.A.R. Form BFPI attached. |
| G(2) | 9B(2) | ☐ Buyer does not have sufficient funds to pay Broker. | Buyer's Broker's obligation to represent Buyer in a transaction is contingent upon a seller's agreement to pay the amount of compensation in **paragraph 2E(1)**. |
| **H** | | Other Terms | _this is subject to cancelation of previous BRBC with David Guarino_ |

© 2024, California Association of REALTORS®, Inc.
**BRBC REVISED 12/24 (PAGE 1 OF 5)**

Buyer's Initials  _____ / _____    Broker/Agent Initials _____ / _____


EQUAL HOUSING
OPPORTUNITY

**3. ADVISORIES, ADDENDA AND DISCLOSURES:** The following advisories, addenda and disclosures are attached:

☑ Broker Compensation Advisory (C.A.R. Form BCA)   ☐ Other _____

**4. COMPENSATION TO BROKER:**

**Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Buyer and Broker.**

**A. ADVISORY:** Real estate commissions include all compensation and fees to Broker and are fully negotiable.

**B. BROKER RIGHT TO COMPENSATION:** Broker shall be entitled to compensation specified in **paragraph 2E(1)** from Buyer if during the Representation Period, or any extension, Buyer enters into an agreement to purchase, lease, or otherwise acquire any Property described in **paragraph 2B**, and the seller thereafter completes the transaction or is prevented from doing so by default of Buyer as follows:

   (1) **NON-EXCLUSIVE REPRESENTATION; BROKER INVOLVEMENT:** Compensation is payable only if there was Broker Involvement with the Property.

   (2) **EXCLUSIVE REPRESENTATION; BUYER ACQUISITION:** If Exclusive is checked in **paragraph 2A(2)** and initialed in **paragraph 15**, Broker is entitled to compensation if Buyer acquires Property during the Representation Period or any extension with or without Broker Involvement, even if another broker is also entitled to be paid for representing Buyer.

   (3) **BUYER INCLUDES** any person or entity, other than Buyer, related to Buyer or who in any manner acts on Buyer's behalf to acquire Property described in **paragraph 2B**.

   (4) **BROKER INVOLVEMENT**, wherever used in this Agreements means any of the following:
   • Buyer physically entered and was shown the Property by Broker;
   • Broker showed the Property to Buyer virtually;
   • Broker submitted to seller a signed, written offer from Buyer to acquire, lease, exchange or obtain an option on the Property;
   • Broker performed a market analysis related to the Property or reviewed property specific documents or disclosures with Buyer; or
   • The Property was introduced to Buyer by Broker or one for which Broker acted on Buyer's behalf. However, merely sending Buyer a list of properties shall not be deemed Broker Involvement without documented action on the part of Broker analyzing the Property for Buyer, specifically, or assisting Buyer in the potential acquisition of the Property, or communicating with seller or seller's agent regarding Buyer's potential acquisition of the Property.

**C. CONTINUATION OF RIGHT TO COMPENSATION FOR BROKER INVOLVED PROPERTIES:**

   (1) Broker shall be entitled to the compensation provided for in **paragraph 2E(1)** if, during the Continuation Period specified in **paragraph 2E(3)**, Buyer enters into an agreement to acquire Property for which there was Broker Involvement. The timing of such payment is subject to the terms of **paragraph 4D**.

   (2) Broker's right to compensation pursuant to this paragraph shall only apply if, prior to expiration of this Agreement or any extension, Broker delivers Buyer a written notice of those properties for which there was Broker Involvement (C.A.R. Form NBIP).

**D. TIMING OF COMPENSATION:** Compensation is payable:

   (1) Upon completion of any resulting transaction, and through escrow. Broker shall be entitled to compensation whether any escrow resulting from this Agreement closes during or after the Representation Period.

   (2) If acquisition is prevented by default of Buyer, upon Buyer's default.

   (3) If acquisition is prevented by a party to the transaction other than Buyer, when Buyer collects damages, or obtains specific performance, by suit, settlement or otherwise. If damages are recovered, compensation shall equal one-half of the damages recovered, not to exceed the compensation provided for in **paragraph 2E(1)**, after first deducting the unreimbursed payments, credits and expenses of collection and suit, if any.

**E. PAYMENT THROUGH ESCROW:** Buyer hereby irrevocably assigns to Broker the compensation provided for in this Agreement from Buyer's funds in escrow. Buyer agrees to submit to escrow any funds needed to compensate Broker under this Agreement. Broker may submit this Agreement, as instructions to compensate Broker, to any escrow regarding Property involving Buyer and a seller or other transferor.

**F. ACCOUNTING FOR PAYMENTS TO BROKER IF BROKER ALSO REPRESENTS SELLER:** If Broker has a signed listing agreement with the seller of the Property to be purchased, Buyer shall not receive a credit for the compensation seller owes broker for representing Seller.

**G. PAYMENTS RECEIVED FROM OTHERS LESS THAN BUYER COMPENSATION OBLIGATION:**

   (1) Broker and Buyer should discuss whether it would be beneficial to include a term in any offer Buyer makes obligating the seller to pay Broker, directly or through escrow, for some or all of the compensation that Buyer owes Broker.

   (2) If seller does not pay as contractually required, Buyer assigns to Broker, as a third-party beneficiary, any rights Buyer has to pursue the seller for such compensation.

**H. DISCLOSURE OF PAYMENTS TO BROKER:** Broker, independently or through escrow, will disclose the final compensation Broker receives from anyone other than Buyer.

**5. CANCELLATION OF BUYER REPRESENTATION AGREEMENT:**

**A.** Either Buyer or Broker may cancel this Agreement by giving written notice, at any time, to the other within the time specified in **paragraph 2F**.

BRBC REVISED 12/24 (PAGE 2 OF 5)   Buyer's Initials _GP_ / ____   Broker/Agent Initials _U_ / ____

**BUYER REPRESENTATION AND BROKER COMPENSATION AGREEMENT (BRBC PAGE 2 OF 5)**

ES 530                              ES 530                              ES 530

**B.** Broker shall still be entitled to compensation if, during the Representation Period or the Continuation Period specified in **paragraph 2E(3)**, Buyer enters into contract to acquire Property for which there was Broker Involvement provided Broker delivers to Buyer a written list of those properties for which there was Broker Involvement. The written list of Broker Involvement properties shall be delivered to Buyer within **5 calendar days** after the effective date of the cancellation. The timing of such payment is subject to the terms of **paragraph 4D**.

**C.** Buyer is advised to notify any other broker of Broker's rights under this paragraph.

**6. AGENCY RELATIONSHIPS:**

**A. DISCLOSURE:** Buyer acknowledges receipt of the ☑ "Disclosure Regarding Real Estate Agency Relationship" (C.A.R. Form AD).

**B. POSSIBLE DUAL AGENCY WITH SELLER:** Broker will represent Buyer in any resulting transaction. Broker may act as an agent for both Buyer and a seller. Broker, in writing, shall confirm the agency relationship with only Buyer, or both Buyer and seller, prior to or concurrent with Buyer's execution of a contract to acquire a Property. Buyer acknowledges receipt of a ☑ Possible Representation of More Than One Buyer or Seller – Disclosure and Consent (C.A.R. Form PRBS).

**7. PROPERTIES EXCLUDED FROM REPRESENTATION:**

**A. ADVISORY REGARDING BUYER SIGNING MULTIPLE BUYER REPRESENTATION AGREEMENTS:**

(1) Buyer shall inform Broker in writing if Buyer has signed any other buyer representation agreements, whether exclusive or non-exclusive, with any other Broker for any Property described in **paragraph 2B**.

(2) Buyer shall disclose to Broker if another broker showed Buyer such Property virtually or in-person, or wrote an offer on, or otherwise acted on Buyer's behalf for, such Property. Buyer may owe compensation to that broker if Buyer purchases such Property.

(3) If Buyer has signed an exclusive buyer representation agreement with another broker that has not expired or been terminated, Buyer may owe compensation to that broker if Buyer purchases such Property even if that other broker had no involvement with the Property.

(4) Buyer shall disclose in **paragraph 2D** any Property for which Buyer is obligated to pay another broker.

**B. CONFLICTS WITH OTHER BROKER:** Unless otherwise notified by Buyer, Buyer acknowledges that for the Property identified in **paragraph 2B**, excluding any Property specified in **paragraph 2D** Buyer: **(i)** has not entered into an exclusive representation agreement with another broker; and **(ii)** has no obligation, even under a non-exclusive representation agreement, to pay compensation to any other broker arising out of the acquisition of the Property.

**C. LIMITATION ON BROKER REPRESENTATION:** If a property is excluded in **paragraph 2D**, during the time Buyer is obligated to compensate another broker, Broker is not obligated to assist Buyer with respect to that property, and Buyer shall not owe Broker compensation under this Agreement for that property.

**8. BROKER AUTHORIZATIONS AND OBLIGATIONS:**

**A.** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement.

**B.** Broker will assist Buyer by:

(1) Locating and presenting selected properties to Buyer, presenting offers authorized by Buyer, assisting Buyer in negotiating for acceptance of such offers and, as applicable, terms and conditions following such acceptance, and facilitating the escrow process for such accepted offers;

(2) As directed by or agreed with Buyer, ordering reports and Investigations, and scheduling and attending meetings and appointments with professionals chosen by Buyer;

(3) Upon request, providing Buyer with a list of professionals who perform the services described in the attached Buyer's Investigation Advisory, provided Broker has a referral list for such requested services; and

(4) Upon request, assisting Buyer with the financing process by making referrals to lenders known to Broker, and assisting Buyer in obtaining loan pre-qualification, to the extent Broker can do so without acting as a Mortgage Loan Broker.

**C.** If the Property contains residential property with one to four dwelling units, Broker will conduct a reasonably competent and diligent, visual inspection of the accessible areas of the one to four Property (excluding any common areas) and disclose to Buyer all facts materially affecting the value or desirability of such Property that are revealed by this inspection.

**D.** Broker shall deliver or communicate to Buyer any disclosures, materials or information received by, in the personal possession of or personally known to the individual signing for Broker during the Representation Period. Unless otherwise specified in writing, any information provided through Broker, while representing Buyer, has not been and will not be verified by Broker.

**E.** Broker's services are performed in compliance with federal, state and local anti-discrimination laws.

**9. BUYER OBLIGATIONS:**

**A. GOOD FAITH:** Buyer agrees: **(i)** to timely view and consider properties selected by Broker; **(ii)** negotiate in good faith to acquire a Property; and **(iii)** Buyer further agrees to act in good faith toward the completion of any contract entered into for a Property.

**B. FINANCIAL AND PERSONAL INFORMATION:**

(1) Within the time specified in **paragraph 2G(1)**, Buyer shall provide relevant personal and financial information, including, but not limited to, proof of funds needed to complete the purchase of Property and satisfy the obligation to pay Broker, and a preapproval/prequalification letter, to Broker to assure Buyer's ability to acquire Property. If Buyer fails to provide such information, or if Buyer does not qualify financially to acquire Property, then Broker may cancel this Agreement in writing.

**BRBC REVISED 12/24 (PAGE 3 OF 5)**

Buyer's Initials _GP_ / ____    Broker/Agent Initials _U_ / ____

Docusign Envelope ID: B791A8E7-E096-41A4-A692-80FD952988F6

(2) If the box is checked in **paragraph 2G(2)**, for any Property for which Buyer writes an offer to purchase:
   (A) Buyer agrees to include a term in Buyer's offer requesting seller to compensate Buyer's Broker; and
   (B) For a transaction, this Agreement is contingent upon seller, or others, or both, agreeing to pay Broker the full amount that Buyer is contractually obligated to pay Broker. This contingency is in favor of the Broker, and Broker may elect to cancel this Agreement related to representation on that specific property, if the seller does not agree to pay the full amount that Buyer is contractually obligated to pay Broker. Broker shall inform Buyer, seller and listing agent that Buyer is proceeding without representation and that they shall complete a new Agency Confirmation removing Broker as representing Buyer.

**C. REASONABLE CARE AND OTHER PROFESSIONAL ASSISTANCE:**
   (1) Buyer is obligated, and agrees, to read all documents provided to Buyer.
   (2) Buyer agrees to seek desired assistance from appropriate professionals, selected by Buyer, such as those referenced in the attached Buyer's Investigation Advisory.
   (3) Buyer is advised to read the attached Buyer's Investigation Advisory for a list of items and other concerns that may warrant investigation by Buyer or other professionals.

**D. REPORTS/INVESTIGATIONS:** Buyer agrees to pay for reports, Investigations and meetings arranged by Broker for Buyer.

**E. BUYER MATERIAL ISSUES:** For any Property for which Buyer has made an offer or are considering making an offer, Buyer shall notify or update Broker in writing of any material issue to Buyer for that Property such as, but not limited to, Buyer requests for information on, or concerns regarding, any subject of interest or importance to Buyer (C.A.R. Form BMI-SP). If Buyer does not provide such information for a Property for which Buyer makes an offer, that Property shall be deemed to satisfy Buyer's material considerations notwithstanding any preferences and priorities identified in C.A.R. Form BIPP, if one has been completed.

**F. INCORRECT, INCOMPLETE OR INACCURATE INFORMATION:** Buyer agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments, and costs arising from any incorrect information supplied by Buyer, or from any material issues that Buyer fails to disclose in writing to Broker.

**10. ATTORNEY FEES:** In any action, proceeding or arbitration between Buyer and Broker arising out of this Agreement, Buyer and Broker are each responsible for paying their own attorney fees and costs, except as otherwise specified in **paragraph 12A.**

**11. MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, Broker or Manager has the right to cancel this Agreement, in writing, within **5 days** after its execution.

**12. DISPUTE RESOLUTION:**

**A. MEDIATION:** Buyer and Broker agree to mediate any dispute or claim arising between them under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party **(i)** commences an action without first attempting to resolve the matter through mediation, or **(ii)** before commencement of an action, refuses to mediate after a request has been made, then if that party is the losing party in any such action, the prevailing party shall be entitled to recover attorney's fees from the non-mediating party, notwithstanding the terms in **paragraph 10.** Exclusions from the mediation agreement are specified in **paragraph 12B.**

**B. ADDITIONAL MEDIATION TERMS:** The following matters are excluded from mediation: **(i)** a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil code § 2985; **(ii)** an unlawful detainer action; **(iii)** the filing or enforcement of a mechanic's lien; and **(iv)** any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation provisions, provided the filing party, concurrent with or immediately after such filing, makes a request to the court for a stay of litigation pending any mediation proceeding.

**13. LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer, identified in the signature block below, appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer **(i)** represents that the entity for which that person is acting already exists and is in good standing to do business in California and **(ii)** shall deliver to Broker, within **3 days** after execution of this Agreement, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**14. ENTIRE AGREEMENT:** All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. This Agreement may not be extended, amended, modified, altered or changed, except in writing signed by Buyer and Broker. In the event that any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy, facsimile, or electronic, may be executed in counterparts.

**BRBC REVISED 12/24 (PAGE 4 OF 5)**    Buyer's Initials _GP_ / _____    Broker/Agent Initials _M_ / _____

**BUYER REPRESENTATION AND BROKER COMPENSATION AGREEMENT (BRBC PAGE 4 OF 5)**

ES 532        ES 532        ES 532

Docusign Envelope ID: B791A8E7-E096-41A4-A692-80FD952988F6

---

**15. EXCLUSIVE REPRESENTATION: If "Exclusive" is checked in paragraph 2A(2) and initialed by Buyer here:**

    **A.** This Agreement shall be exclusive. Broker will devote time and resources to assist Buyer in finding and acquiring the Property in the expectation of being paid for Broker's services. **Buyer shall not enter into another representation agreement in conflict with this Agreement.**

    **B. COMPENSATION:** Broker is entitled to compensation if Buyer acquires Property during the Representation Period with or without Broker Involvement, even if another broker is also entitled to be paid for representing Buyer.

    **C. CANCELLATION:** Either Buyer or Broker may unilaterally cancel this Agreement by giving the other 30 days written notice (or as otherwise specified in **paragraph 2F**). If, within **5 days** after the effective date of the cancellation, Broker provides Buyer a list of properties for which there was Broker Involvement, Broker may still be entitled to compensation if Buyer purchases one of the properties on the list during the Representation Period or the Continuation Period specified in **paragraph 2E(3)**.

Buyer's Initials *GP* / _____

---

**Buyer acknowledges that Buyer has read, understands, received a copy of and agrees to the terms of this Agreement.**

☐ **ENTITY BUYERS: (Note: If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)**
(1) **Non-Individual (entity) Buyers:** One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.
(2) **Full entity name:** The following is the full name of the entity (if a trust, enter the complete trust name; if under probate, enter full name of the estate, including case #): _____
_____.
(3) **Contractual Identity of Buyer:** For purposes of this Agreement, when the name described below is used, it shall be deemed to be the full entity name.
    (A) If a trust, the trustee(s) of the trust or a simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust);
    (B) If Property is sold under the jurisdiction of a probate court: The name of the executor or administrator, or a simplified probate name (John Doe, executor, or Estate (or Conservatorship) of John Doe).
(4) **Legally Authorized Signer:**
    (A) This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See **paragraph 13** for additional terms.
    (B) The name(s) of the Legally Authorized Signer(s) is/are: _____, _____.

**BUYER SIGNATURE(S):**
Signed by:
(Signature) By *Gregory Peplin*                                Date: _____   3/19/2025 | 3:45 PM PDT
    8E1059EB27D74C1
Printed name of Buyer: *Gregory Peplin*

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____

(Signature) By, _____ Date: _____

Printed name of Buyer: _____

☐ Printed Name of Legally Authorized Signer: _____ Title, if applicable, _____
☐ Additional Signature Addendum attached (C.A.R. Form ASA)

**BROKER SIGNATURE(S):**

Real Estate Broker (Firm) *Real Estate Resolved* _____ DRE Lic# *02014153* _____
    DocuSigned by:
Address *2138 Bonita Ave, Ste B* _____ City *La Verne* \_\_\_\_\_ State *CA* \_ Zip *91750-4915*
By (Broker/Agent) *Lori Alvarez*            *Lori Alvarez*         Date *3/19/2025 | 3:08 PM PDT*
    5C423E88D63B4E0
Tel. *(909) 227-4196* \_\_\_\_\_ E-mail *lori@myrealestateresolved.com* \_\_\_\_\_ DRE Lic# *01794115* \_\_\_\_\_
By (Broker/Agent) _____ Date _____
Tel. _____ E-mail _____ DRE Lic# _____
☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
☐ Two Brokers with different companies are representing the Buyer. Co-Buyer Brokers information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA)

---

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC. *a subsidiary of the California Association of REALTORS®*
**BRBC REVISED 12/24 (PAGE 5 OF 5)**



**BUYER REPRESENTATION AND BROKER COMPENSATION AGREEMENT (BRBC PAGE 5 OF 5)**

**ES 533**                        **ES 533**                        **ES 533**

Docusign Envelope ID: B791A8E7-E096-41A4-A692-80FD952988F6



**BUYER TRANSACTIONAL ADVISORY**
(C.A.R. Form BTA, 12/22)

1. **GENERAL INFORMATION:** Buying real property is a process that has many different aspects to it. The information below will help you evaluate your role and the roles of others in the buying process.
2. **BUYER OBLIGATIONS:**
   A. **REASONABLE CARE AND OTHER PROFESSIONAL ASSISTANCE:** Buyers have an affirmative duty to take steps to protect themselves, including discovery of the legal, practical and technical implications of discovered or disclosed facts, and investigation of information and facts which are known to them or are within their diligent attention and observation. Buyers are obligated to read all documents provided to them. Buyers should seek desired assistance from appropriate professionals, selected by them, such as those referenced in the attached Buyer's Investigation Advisory (C.A.R. Form BIA). Buyers are advised to read the attached Buyer's Investigation Advisory for a list of items and other concerns that may warrant investigation by them or other professionals.
   B. **COMMUNICATING IMPORTANT ISSUES:** Buyers need to notify their Agent in writing of any important or material issue to them (C.A.R. Form BMI). If buyer's circumstances or interests change during the property buying process, buyers should notify their Agent, in writing.
3. **AGENT DUTIES AND LIMITATIONS:** Agents perform many services for buyers during the course of the home buying process. The sophistication of the buyers, the experience of others involved in a transaction, and the requirements of the specific transaction will all impact the Agent's duties.
   A. **AGENT AUTHORIZATIONS, OBLIGATIONS AND LIMITATIONS:** For property transactions of which Agent is aware and not precluded from participating in by buyers, during the representation period, Agents are authorized to **(i)** provide and review forms to create a property contract for the acquisition of a specific property; **(ii)** deliver or communicate to buyers any disclosures, materials or information received by, in the personal possession of, or personally known to, the individual Agent signing below; and **(iii)** if the property contains at least one but not more than four residential units, perform a reasonably competent and diligent, visual inspection of the accessible areas of the 1-4 units and disclose to buyers any material facts concerning the value or desirability of the property that was observable in the inspection. Unless otherwise specified in writing, any information provided through Agent in the course of representing buyers has not been and will not be verified by Agent. Agent's services are performed in compliance with federal, state and local anti-discrimination laws. Agent owes no duty to inspect for common environmental hazards, earthquake weaknesses, or geologic and seismic hazards.
   B. **SCOPE OF AGENT DUTIES:** Buyers acknowledges and agree that Agent: **(i)** does not decide what price buyers should pay or a seller will accept; **(ii)** does not guarantee the condition of the property; **(iii)** does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by seller or others; **(iv)** does not have an obligation to conduct an inspection of common areas or areas off the site of the property; **(v)** shall not be responsible for identifying defects on the property, in common areas or offsite unless such defects are visually observable by an inspection of reasonable accessible areas of the property or are known to Agent; **(vi)** shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** shall not be responsible for identifying the location of boundary lines, easements, or other encroachments on title; **(viii)** shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by buyers or seller; and **(x)** shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyers are advised to, and agree to, see legal, tax, insurance, title and other desired assistance from appropriate professionals.
   C. **BUYER REPRESENTATION AGREEMENT ALLOWS DUAL AGENCY:** The Buyer Representation and Broker Compensation Agreement (C.A.R. Form BRBC) permits Broker to act as a dual agent for both buyer and seller in a transaction. Under California law, even though one individual real estate agent may be the only licensee in direct contact with a buyer on a property transaction and another individual agent may be the only licensee in direct contact with a seller for that same transaction, since both agents work for the same firm the brokerage firm, the brokerage firm and its agents are all dual agents in that transaction. It is also legally permissible for one real estate agent to be in direct contact with both buyer and seller, in which case a dual agency will also be established for both the brokerage firm and the agent in that transaction. If Buyer does not want to allow dual agency, then Buyer should discuss with Broker the implications of such a request and then come to an agreement with Broker.

By signing below, Buyer acknowledges that they have read, understand, and have received a Copy of this Buyer Transactional Advisory.

Buyer _Gregory Peplin_     *Gregory Peplin*     Date 3/19/2025 | 3:45 PM PDT
    —8B1059EB27D74C1—

Buyer _____ Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020



**BTA 12/22 (PAGE 1 OF 1)**

**BUYER TRANSACTIONAL ADVISORY (BTA PAGE 1 OF 1)**

ES 534      ES 534      ES 534



## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _____ Date _____

Seller _____ Date _____

Buyer _____ *Gregory Peplin* _____ Date 3/19/2025 | 3:45 PM PDT
    861059EB27D74C1   *Gregory Peplin*

Buyer _____ Date _____

Buyer's Brokerage Firm *Real Estate Resolved* _____ DRE Lic # *02014153* _____

By _____ *Lori Alvarez* _____ DRE Lic # *01794115* _____ Date 3/19/2025 | 3:08 PM PDT
    D63B4E0   *Lori Alvarez*

Seller's Brokerage Firm _____ DRE Lic # _____

By _____ DRE Lic # _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS REVISED 12/21 (PAGE 1 OF 1)**



Docusign Envelope ID: B791A8E7-E096-41A4-A692-80FD952988F6



### BROKER COMPENSATION ADVISORY
(C.A.R. Form BCA, 7/24)

1. **WHEN SELLERS LIST THEIR PROPERTY FOR SALE THROUGH A REAL ESTATE BROKER THEY AGREE TO PAY THE SELLER'S BROKER WHEN ESCROW CLOSES.**

   A. **LISTING AGREEMENT COMPENSATION IS FULLY NEGOTIABLE:** When a seller enters into a listing agreement with a broker, the seller authorizes the broker to find a buyer for the seller's property and agrees to pay the seller's broker if a buyer is found who purchases the property. Compensation amounts are not fixed by law and are fully negotiable between the seller and the seller's broker. When negotiating compensation, the parties may discuss factors such as the broker's expertise and experience, the type of broker services to be performed, and the broker's time and expenses, among other considerations.

   B. **OPTIONAL ADDITIONAL COMPENSATION IF BUYER IS UNREPRESENTED:** A listing agreement may include optional additional compensation amounts owed to the seller's broker for situations where the broker takes on additional responsibilities or workload. Sometimes a buyer may not be working with nor want to be represented by a real estate broker. When that happens, the seller's broker is not required to represent the buyer, and the seller and seller's broker may decide that they do not want to create such a relationship. In those situations, the seller's broker is advised to use a Buyer Non-Agency (C.A.R. Form BNA) to inform the buyer that the seller's broker will be acting on behalf of the seller only, and not act as the buyer's agent, throughout the transaction. However, because the buyer is unrepresented, the seller's agent will inevitably have to do more work to facilitate the transaction. A seller may agree to compensate their broker for the additional work in such cases.

   C. **BROKER MAY REPRESENT BOTH BUYER AND SELLER; DUAL AGENCY:** California law allows a brokerage company to represent both seller and buyer in a real estate transaction. At the time the agent, on behalf of a brokerage, obtains the signature of a seller on a listing agreement, the agent will not, in most cases, know who the eventual buyer will be for a seller's property. Similarly, at the time an agent, on behalf of a brokerage, obtains the signature of a buyer on a buyer representation agreement, the agent will not, in most cases, know who the eventual seller will be for a property the buyer wants to buy. Because many individual licensees may work through one brokerage company, and some individual licensees work with many buyers and sellers, there is a possibility that the same brokerage company will represent both buyer and seller in a transaction. If licensees working through broker represent both seller and buyer, broker is allowed to receive compensation from each, provided the seller and buyer are advised of the relationship and the total amount of compensation the broker will receive.

2. **BROKER AGREEMENTS WITH BUYERS:**

   A. **BUYER REPRESENTATION COMPENSATION IS FULLY NEGOTIABLE:** When a buyer enters into a representation agreement with a broker, the buyer authorizes the broker to locate properties for the buyer to buy and agrees to pay the buyer's broker if a transaction is completed. Compensation amounts are not fixed by law and are fully negotiable. When negotiating compensation, the parties may discuss factors such as the broker's expertise and experience, the type of broker services to be performed, and the broker's time and expenses, among other considerations.

   B. **REQUIREMENT FOR WRITTEN AGREEMENTS:** Pursuant to a nationwide class action settlement reached by the National Association of REALTORS® (NAR), participants in Multiple Listing Services are required to have a written agreement with a buyer prior to showing a buyer a residential property or giving a buyer a tour of such a property. The agreement must identify the amount of compensation to be paid to the broker for services provided and require that the broker cannot receive any compensation in excess of the amount specified in the agreement. Pursuant to legislation expected to become law in California on January 1, 2025, all licensees showing a buyer any type of property will be required to have a written agreement with that buyer prior to the showing.

---

**BCA 7/24 (PAGE 1 OF 2)**

Seller's Initials _____/_____     Buyer's Initials ___*GP*___/_____

Real Estate Resolved, 2138 Bonita Ave, Ste B, La Verne, CA 91750-4915          Phone: (909) 227-4196          Fax:
Lori Alvarez

**BROKER COMPENSATION ADVISORY (BCA PAGE 1 OF 2)**

**ES 536**          **ES 536**          **ES 536**

Docusign Envelope ID: B791A8E7-E096-41A4-A692-80FD952988F6

**C. ADVANTAGES OF WRITTEN AGREEMENTS:** Buyers and their brokers benefit when the terms of their relationship and respective duties are in writing. A written agreement establishes clear, mutual expectations and helps avoid misunderstandings over the buyer and broker's duties and the amount of compensation the buyer's agent is to be paid.

**3. WHEN ENLISTING A REAL ESTATE BROKER TO REPRESENT THEM, BUYERS AGREE TO PAY THE BUYER'S BROKER WHEN ESCROW CLOSES, BUT THE PERSON RESPONSIBLE FOR PAYMENT MAY BE NEGOTIATED IN THE TRANSACTION:**

**A. BUYER PAYS THE COMPENSATION PURSUANT TO A BUYER REPRESENTATION AGREEMENT:** A buyer's broker may negotiate the amount of compensation directly with the Buyer and then document that agreement in a buyer representation agreement (C.A.R. Form BRBC or PSRA). The buyer then becomes contractually obligated to pay the broker by providing funds to escrow prior to the closing of a transaction.

**B. SELLER PAYS THE COMPENSATION:**

(1) **Buyer negotiates for Seller to Compensate Buyer's Broker:** A buyer may make a conditional offer to the seller by including a term in the purchase offer asking the seller to pay the buyer's broker if the buyer has already agreed to pay their own broker pursuant to a buyer representation agreement. If such a term is included in the purchase offer, the request will become one term among many that a seller may accept, reject, or negotiate by way of a counter offer. The possibility of asking the seller to pay the buyer's contractual compensation obligation option should be discussed when creating a buyer representation agreement and prior to an offer being made.

(2) **Buyer's Agent negotiates an agreement directly with Seller:** If a seller is unrepresented or does not have an exclusive agency relationship with another broker, a buyer's broker may approach that seller asking the seller to sign an agreement (C.A.R. Form SP, Single Party Compensation Agreement) to pay the buyer's broker. In this situation, the seller agrees to pay the buyer's broker compensation without necessarily creating an agency relationship with the broker. When that happens, the buyer's broker is advised to use a Seller Non-Agency (C.A.R. Form SNA) to inform the seller that the buyer's broker will be acting on behalf of the buyer only, and not act as the seller's agent, throughout the transaction. However, because the seller is unrepresented, the buyer's agent will inevitably have to do more work to facilitate the transaction, which may be factored into the negotiation of the single party compensation agreement.

**C. CHANGING PRACTICE RELATED TO A SELLER'S BROKER'S OFFER OF COMPENSATION:**

Historically, in California, many seller's brokers used a Multiple Listing Service (MLS) to make a unilateral offer to compensate a buyer's broker who procured a buyer for the seller's property. However, the nationwide NAR settlement prohibits the seller's broker from using an MLS to make such an offer of compensation. The California Association REALTORS®' (C.A.R.) listing agreement forms no longer provide for such offers of cooperating broker compensation nor does C.A.R. include other forms in its library of forms that might facilitate such offers. Buyers and sellers must separately negotiate compensation with their respective brokers, as specified above.

**By signing below, Seller or Buyer acknowledges that they have read, understand, and have received a Copy of this Broker Compensation Advisory. Seller or Buyer acknowledges they have been advised of their various options regarding compensation to be paid to real estate brokers and that any written agreement they have signed with a seller's or buyer's broker reflects a mutual understanding.**

Seller/Buyer _Gregory Peplin_ _____ *Gregory Peplin* _____ Date 3/19/2025 | 3:45 PM PDT
861059EB27D74C1

Seller/Buyer _____ Date _____

© 2024, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®.

Published and Distributed by: REAL ESTATE BUSINESS SERVICES, LLC, *a subsidiary of the California Association of REALTORS®*

**BCA 7/24 (PAGE 2 OF 2)**



Docusign Envelope ID: B791A8E7-E096-41A4-A692-80FD952988F6

CALIFORNIA ASSOCIATION OF REALTORS®

# BUYER'S INVESTIGATION ADVISORY

**(C.A.R. Form BIA, Revised 12/21)**

**Property Address** *To be determined*

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.
2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.
3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMIITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**
   - A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.
   - B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.
   - C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.
   - D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.
   - E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS;WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
   - F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).
   - G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.
   - H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.
   - I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.
   - J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.
   - K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.

EQUAL HOUSING OPPORTUNITY

Real Estate Resolved, 2138 Bonita Ave, Ste B, La Verne, CA 91750-4915 Phone: (909) 227-4196 Fax:
Lori Alvarez

Docusign Envelope ID: B791A8E7-E096-41A4-A692-80FD952988F6

**L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _Gregory Peplin_____ Date 3/19/2025 | 3:45 PM PDT

Buyer _____ Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**BIA REVISED 12/21 (PAGE 2 OF 2)**



EQUAL HOUSING OPPORTUNITY

**ES 539    BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)    ES 539**

ES 539

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **SUPPLEMENTAL DECLARATION OF GREGORY A. PEPLIN RE COURT'S ORDER VACATING MARCH 4, 2025 AUCTION RESULTS AND RE-SETTING AUCTION FOR MARCH 27, 2025 (DOCKET NO. 569)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 20, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Bradford Barnhardt    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- Christopher L Blank    chris@chrisblanklaw.com
- Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- Jeffrey I Golden (TR)    lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com
- D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- Brandon J. Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- Eric P Israel    epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- Shantal Malmed    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
- Shantal Malmed    , cheryl.caldwell@gmlaw.com
- Mark A Mellor    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- Laila Rais    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- Valerie Smith    claims@recoverycorp.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

2. **SERVED BY UNITED STATES MAIL**: On **March 20, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 20, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                    F 9013-3.1.PROOF.SERVICE

ES 540                    ES 540                                        ES 540

1    None.

2    I declare under penalty of perjury under the laws of the United States of America that the foregoing is
     true and correct.

3

     March 20, 2025                    D. Woo                              /s/ D. Woo
4    _____  _____  _____
     Date                             Type Name                          Signature

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

ES 541          June 2012          ES 541          F 9013-3.1.PROOF.SERVICE
                                                   ES 541

Label Matrix for local noticing
0973-8
Case 8:21-bk-11710-SC
Central District of California
Santa Ana
Thu Mar 20 14:12:38 PDT 2025

Christopher F. Blank, Attorney at Law, PC
2973 Harbor Blvd
Box 506
COSTA MESA, CA 92626-3912

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA   92660-6377

Houser Bros. Co. dba Rancho Del Rey Mobile H
c/o Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620-3663

Levene Neale Bender Yoo & Golubchik L.L.P.
2818 La Cienega Ave
Los Angeles, CA 90034-2618

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

16222 MONTEREY LANE UNIT 376
HUNTINGTON BEACH, CA 92649-2258

Association of Flight Attendants
625 No. River Road Ste. 4020
Rosemont, IL. 60018

BS Investors
Robert P. Warmington C/o
Gorden May Grant, Genovese & Baratta
2030 Hain St. Ste. 1600
Irvine, CA 92614

County of Orange
P.O. Box 4515
Santa Ana CA 92702-4515

County of Orange Treasurer-Tax Collector
P.O. Box 4515
Santa Ana CA 92702-4515

Danning, Gill, Israel & Krasnoff, LLP
1901 Ave of The Stars, Ste 450
Los Angeles CA 90067-6006

David R. Flyer
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7907

Frank Satalino
19 Velarde Ct.
Rancho Santa Margarita, CA 92688-8502

Gordon Rees Scully & Mansukhani
5 Park Plaza Ste. 1100
Irvine, CA 92614-8502

Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Houser Bros. Co.
DBA Rancho Del Rey Estates
16222 Monterey Ln
Huntington Beachr CA 92649-6214

Houser Bros. Co.dba Rancho Del
Rey Mobile Home Estates
17610 Beach Blvd Ste. 32
Huntington Beach, CA 92647-6876

Houser Brothers Co.
dba Rancho Del Rey Mobilehome Est.
17610 Beach Blvd. Ste. 32
Huntington Beach, CA 92647-6876

Huntington Beach Gables HOA
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300 Laguna
Hllls, CA 92653-7907

Huntington Beach Gables Homeowners Associati
Epstein, Grinnel & Howell, APC
10200 Willow Creek Rd Ste 100
San Diego CA 92131-1655

Huntington Harbor Village
16400 Saybrook
Huntington Beach, CA 92649-2277

Huntington Hobile Home Inv. LLC.
430 S. San Dimas Ave.
San Dimasa CA 91773-4045

Huntington Mobile Home Investments
16400 Saybrook Lane
Huntington Beach, CA 92649-2277

Huntington Mobile Home Investments LLC
1100 Newport Beach Blvd. Ste 1150
Newport Beach, CA 92560

Hyundai Capital America
PO BOX 269011
Plano, TX 75026-9011

Hyundal Capital America
PO BOX 269011
Plano, TX 75026-9011

Internal Revenue Service
PO Box 7346
Philadelphia, 19101-7346

**ES 542**                    **ES 542**                    **ES 542**

Internal Revenue Service Insolvency
PO BOX 7346
Philadelphia, PA 19101-7346

J-pad, LLC
2702 N Gaff Street
Orange, CA 92865-2417

Janine Jasso
16025 Warmington Lane
Huntington Beach, CA 92649-2278

Janine Jasso, Jennifer Paulin, Lori Burrett
c/o Goe Forsythe & Hodges LLP
17701 Cowan, Suite 210
Irvine, CA 92614-6840

Kia Motors Finance
PO Box 20815
Fountain Valley, CA 92728-0815

Lee S. Gragnano
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lisa T. Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

Lori Burrett
16107 Sherlock Lane
Huntington Beach, CA 92649-2293

Nationwide Reconveyance, LLC
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7908

People of the St of CA
8141 13th St
Westminster CA 92683-4576

J-pad, LLC
16222 Monterey Ln Unit 376
Huntington Beach CA 92649-2258

James H Cosello
Casello & Lincoln,
525 N Cabrillo Park Dr. Ste 104
Santa Ana, CA 92701-5017

(p)JANINE JASSO
PO BOX 370161
EL PASO TX 79937-0161

Jennifer Ann Paulin
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lee Gragnano
16062 Warmington Ave.
Huntington Beacha CA 92649-2285

Linda Jean ''Lindy'' Bec
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lori Ann Burrett
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Mark A.Mellor Mellor Law Firm
c/o Randall Nickell
6800 Indiana Ave.
Riverside, CA 92506-4267

Orange County Superior Court
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300
Laguna Hills, CA 92653-7907

Randall Nickel
11619 Inwood Drive,
Riverside, CA 92503-5000

J-pad, LLC
21742 Anza Avenue
Torrance, CA 90503-6428

Jamie Lynn Gallian
16222 Monterey Ln #376
Huntington Beach, CA 92649-2258

Janine Jasso
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Jennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286

Lee Gragrano
16062 Warmington Ave.
Huntington Beach, CA 92649-2285

Lindy Beck
4443 Chase Dr.
Huntington Beach, CA 92649-2297

Lori Burrett
16107 Harmington Lane
Huntington Beach, CA 92649-2281

Michael S. Devereux
Wex Law
9171 Wilshire Blvd. Ste. 500
Beverly Hills, CA 90210-5530

Patricia Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

Randall Nickell
4476 Alderport Dr.
Huntington Beach. CA 92649-2288

**ES 543**          **ES 543**          **ES 543**

Randell Nickel
c/o Mark Mellor, Esq.
6800 Indiana Ave. Ste. 220
Riverside, CA 92506-4267

Randell Nickel
c/o Mark Mellor, Esq. Ste. 220 6800
Indiana Ave.
Riverside, CA 92506

Raquel Flyer-Dashner
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228


Robert P. Warmington Co.
c/o BS Investors
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Robert P. Warmington Co.
c/o BS Investors LP
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Rutan & Tucker
18575 Jamboree Rd 9th Fl
Irvine CA 92612-2559


S4 A California Limited Partnership
1001 Cove St Ste 230
Newport Beach CA 92660

Sandra L. Bradley
18 Meadowwood
Coto De Caza, CA 92679-4738

Sardra Bradley
18 Meadow Hood
Coto De Caza, CA 92679-4738


Stanley Feldsott: Esq
Feldsott & Lee
23161 Mill Creek Drive
Laguna Hills, CA 92653-7907

Steven A. Fink
13 Corporate Plaza Ste. 150
Newport Beach, CA 92660-7919

Superior Court of CA
County of Orange
711 Civic Center Dr West
Santa Ana CA 92701-3907


Superior Default Services Inc
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7908

Suzanne Tague
Ross Wolcott, Teinert, Prout
3151 Airway Ave. S-1
Costa Mesa, CA 92626-4607

Ted Phillips
17162 Sandra Lee
Huntington Beach, CA 92649


Ted Phillips
17912 Sandra Lee
Huntington Beach, CA 92649

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell APC
10200 Willow Creek Road, Ste 100
San Diego, CA 92131-1669

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell,
APC 10200 Willow Creek Road,
Ste 100
San Diego, CA 92131


The Huntington Beach Gables Homeowners Assoc
c/o Goe Forsythe & Hodges LLP
18101 Von Karman Ave, Suite 1200
Irvine, CA 92612-7119

Theodore Phillips
17612 Sandea Lee
Huntington Beach CA 92649

Theodore R ''Ted'' Phill
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005


(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

United Airlines
233 S. Hacker Dr.
Chicago, IL 60606-6462

United Airlines
P.O. Box 0675
Carol Stream, 60132-0675


United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Vivienne J Alston
Alston, Alston & Diebold
27201 Puerta Real Ste 300
Mission Viejo, CA 92691-7359

qennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286


zanine Jasso
16025 Harmington Lane
Huntington Beacha CA 92649-2278

Christopher L Blank
Christopher L Blank, Esq
2973 Harbor Blvd #506
92626
Costa Mesa, CA 92626-3912

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

ES 544       ES 544       ES 544

Jamie Lynn Gallian
16222 Monterey Ln Unit 376
Huntington Beach, CA 92649-2258

Jeffrey I. Golden (TR)
Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, CA 92626-3067

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Janine Jasso
P.O. Box 370161
El Paso, TX 79937

US Bank
P O Box 5229
Cincinnati OH 45201-5229

(d)US Bank NA
PO Box 64799
Saint Paul, MN 55164

(d)Janine Jasso
PO Box 370161
El Paso, CA 79937

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)The Huntington Beach Gables Homeowners Ass

(u)Michael Chulak-tunknown)
Mchulak@MTcLaw.com

(d)People of the St of CA
8141 13th Street
Westminster, CA 92683-4576

End of Label Matrix
Mailable recipients    92
Bypassed recipients     4
Total                  96

**ES 545**                    **ES 545**                    **ES 545**

ERIC P. ISRAEL (State Bar No. #132426)
*EPI@LNBYG.COM*
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Phone:    310-229-1234
Facsimile: 310-229-1244

Attorneys for Jeffrey I. Golden, Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>**SUPPLEMENTAL DECLARATION OF GREG BINGHAM RE MARKETING EFFORTS AFTER VACATING MARCH 4, 2025 AUCTION RESULTS AND SCHEDULING NEW AUCTION RE MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081 (DOCKET NO. 569)**<br><br>Date:    March 27, 2025<br>Time:    10:00 a.m.<br>Ctrm:    5C |

I, Greg Bingham, declare as follows:

1.      I am an individual over 18 years of age.

2.      The facts set forth below are known to be true of my personal knowledge.  If called upon to do so, I could and would competently testify thereto.

3.      I am a licensed real estate salesperson at Coldwell Banker Realty ("Coldwell Banker"), the duly employed real estate broker for Jeffrey I. Golden, the Chapter 7 trustee herein

1

ES 546                    ES 546                    ES 546

1  (the "Trustee"), with respect to a manufactured home, decal no. LBM 1081 (the "Property")

2  currently located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the

3  "Space").

4       4.    The Trustee's counsel (Eric P. Israel) forwarded to me the Court's order entered on

5  or about March 13, 2025 (*docket no. 569*) (the "Auction Vacating Order").  I have had several

6  conversations with Mr. Israel since then about compliance with the Auction Order.

7       5.    The Association of Realtors/Multiple Listing Service maintains a Multiple Listing

8  Service ("MLS") for licensed real estate brokers and salespersons.  As a licensed real estate

9  salesperson, I am subject to the rules of the MLS.

10       6.    Promptly after being advised that the auction had been vacated and re-set, I changed

11  the listing for the Property to "Active under Contract" on the MLS.  A true and correct copy of the

12  listing is attached hereto, marked as Exhibit "A" and incorporated herein by this reference.  As can

13  be seen, the listing reflects all of the original terms of the auction:  $275,000 price, $276,000

14  minimum overbid, $1,000 minimum bidding increments, but the date, time and place of the new

15  auction hearing.  I will leave the sale listing on the MLS as "Active under Contract" until the Court

16  confirms the sale.

17       7.    Under the Rule and Policies of the MLS, "active under contract" includes a situation

18  like this where there is an accepted offer subject to Court approval.  A true and correct copy of

19  pertinent Rules are attached hereto collectively as Exhibit "B".  See pages 24-25.  There are strict

20  penalties for violating rules of the MLS.

21       8.    I have spoken about the Auction Order with David Guarino, the agent for Richard

22  Herr, the principal for the original buyer – Galaxy Homes.  I am advised that David Guarino is a

23  salesperson with Galaxy Homes, although he also has a broker license with another company.  I have

24  also spoken with the overbidder, Greg Peplin ("Peplin").  Galaxy Homes and Peplin have advised

25  me that they have agreed that Galaxy will no longer be the real estate broker for Peplin.  Mr. Peplin

26  advises that he never signed a written contract with Galaxy Homes.  If I timely receive an overbid, I

27  will immediately advise the Trustee.

28                    2

1        9.     As previously stated, Coldwell Banker will remain the real estate broker for the

2  Trustee only.  Subject to Court approval, 3% of the sale price is to be paid to Coldwell Banker as a

3  commission upon closing the sale of the Property.  Since the listing agreement provided for an

4  aggregate commission of 6% and Peplin advises that he has obtained another real estate broker,

5  subject to Court approval, the other 3% would be paid to his new real estate broker.

6       10.    I intend to be present for the rescheduled auction on March 27, 2025, and will answer

7  any further questions the Court may have.

8

9       I declare under penalty of perjury under the laws of the United States of America that the

10  foregoing is true and correct.

11       Executed at Newport Beach, California, on March 20, 2025.

12

13                                         GREG BINGHAM

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                  3

# EXHIBIT "A"

**16222 Monterey Ln # 376, Huntington Beach 92649**

STATUS: **Active Under Contract**          LIST PRICE: **$276,000** ↓

Edinger to Monterey Ln, enter through Guard Gate





Rec **03/20/2025 : ACT UC : P->U**

Listing has Supplements

BED / BATH: **2/1,1,0,0**
SQFT(src): **1,700 (E)**
PRICE PER SQFT: **$162.35**
LOT(src):
LEVELS: **One**
GARAGE: **0**
YEAR BLT(src): **2014 (EST)**
BODY TYPE:
DOM / CDOM: **147/147**
SLC: **Bankruptcy Property**
PARCEL #:
LISTING ID: **PW24187211**

**Submit Offer**

### DESCRIPTION

Beautifully upgraded and customized 2 bedroom, 2 bath home in the sought after Rancho Del Rey Mobile Home Estates 55+ community in the Huntington Harbour area of Huntington Beach. Spacious kitchen with designer touches, wood cabinets and stone counter tops with an expansive kitchen island for casual dining and entertaining. The adjacent formal dining room with French doors, can be converted to a den or office. The primary suite with a large sitting area and walk in closet. The ensuite bath delivers a relaxing resort spa feel including dual sinks, a soaking tub and separate shower. Added convenience with a separate laundry room. Manufactured wood floors, fireplace in the living room and raised ceilings add warmth and esthetics to the home. A wrap around balcony and ample outdoor space lets you enjoy the ocean breezes. Covered carport for your vehicles with a large storage area. This 55+ community home is convenient to beaches, water sports, wetland hiking trails, shopping, restaurants, Coast Highway and much more. Community features include guard gated entry, onsite property management, two clubhouses with heated pools, spas, sauna, banquet facilities, billiard tables, outside barbeque areas.

EXCLUSIONS: Chandelier, Televisions, Appliances          INCLUSIONS:

AREA: **17 - Northwest Huntington Beach**
SUBDIVISION: **Other (OTHR)/Rancho Del Rey**
COUNTY: **Orange**
55+: **Yes**
PETS ALLOWED: **Yes**
MANAGEMENT CO.: **Mr. Houser**
MANAGEMENT CO. PH: **714-846-1429**
MANAGER APPROVAL?: **Yes**

LIST $ ORIG.: **$320,000**
PARKING: **Attached Carport**
PARK NAME: **Rancho Del Rey**
MOBILE LENGTH: **60**
MOBILE WIDTH: **30**
MOBILE HOME REMAINS?: **Yes**
PROBATE AUTHORITY:

SELLER WILL CONSIDER CONCESSIONS IN OFFER:
ROOMS: **Kitchen, Laundry, Living Room, Main Floor Bedroom, Main Floor Primary Bedroom, Primary Bathroom, Primary Bedroom, Primary Suite, Walk-In Closet**
UTILITIES:
ELECTRIC:
WATER SOURCE: **Public**

COOLING: **None**
HEATING: **Central, Fireplace(s), Forced Air**
VIEW: **Panoramic**
WATERFRONT:
LAUNDRY: **Individual Room**

### INTERIOR

INTERIOR: **Ceiling Fan(s), Coffered Ceiling(s), Granite Counters, High Ceilings, Living Room Deck Attached, Pantry, Stone Counters, Storage**
ACCESSIBILITY: **None**
KITCHEN FEATURES: **Granite Counters, Stone Counters, Walk-In Pantry**

APPLIANCES: **Gas Water Heater**
FLOOR:
BATHROOM FEATURES: **Bathtub, Shower, Double Sinks in Primary Bath, Granite Counters, Stone Counters, Vanity area, Walk-in shower**

ENTRY/LEVEL: **1/1**

### EXTERIOR

EXTERIOR: **Awning(s)**
FENCING:
DIRECTION FACES:

SECURITY:
SEWER: **Public Sewer**

LOT: **0-1 Unit/Acre**
POOL: **Community, In Ground**

PATIO: **Covered, Deck, Patio Open, Porch, Front Porch**
SPA: **Community, In Ground**

### BUILDING

BUILDER NAME:
MAKE:
BUILDER MODEL:

DOORS:
WINDOWS:
SKIRT:

ROOFING:
FOUNDATION:
PROP. CONDITION:

CONSTRUCTION:
OTHER STRUCTURES: **Storage**

### GARAGE AND PARKING

# OF PADS:
UNCOVERED SPACES:

ATTACHED GARAGE?:
PARKING TOTAL: **0**

GARAGE SPACES: **0**
RV PARKING FEE:

CARPORT SPACES:
NUMBER OF SHEDS:

### GREEN

GREEN ENERGY GENERATION:
WALKSCORE:

GREEN ENERGY EFFICIENT:

GREEN SUSTAINABILITY:

GREEN WATER CONSERVATION:

### POWER PRODUCTION

POWER PRODUCTION: **No**

GREEN VERIFICATION: **No**

### COMMUNITY

HOA FEE:
HOA FEE 2:
HOA FEE 3:
COMMUNITY FEATURES: **Biking , Street Lights** ES 550

HOA NAME:
HOA NAME 2:
HOA NAME 3:
HOA MANAGEMENT NAME:

HOA PHONE:
HOA PHONE 2:
HOA PHONE 3:
HOA MANAGEMENT NAME 2:          ES 550

HOA AMENITIES: **Pool, Spa/Hot Tub, Sauna, Barbecue, Billiard Room, Recreation Room, Meeting Room**
STORIES TOTAL: **1**

HOA MANAGEMENT NAME 3:          ES 550

### SCHOOL

SCHOOL DISTRICT: **Huntington Beach Union High** | ELEMENTARY: | MIDDLE/JR HIGH: | HIGH SCHOOL:
HIGH SCH DIST SOURCE: | ELEM SOURCE: | MIDDLE SOURCE: | HIGH SOURCE:
| ELEMENTARY OTHER: | MIDDLE/JR HIGH OTHER: | HIGH SCHOOL OTHER:

## SERIALS AND LICENSE

SERIAL(U): **Ac7v71-0394-g-B/A** | INSIGNIA/LICENSE1: **0** | DOH1: **0**
SERIAL(X): | INSIGNIA/LICENSE2: | DOH2:
SERIAL(XX): | INSIGNIA/LICENSE3: | DOH3:

## LAND

LAND LEASE?: **Yes** | LAND LEASE $ FREQ.: **Monthly** | LOT SIZE DIM: | TAX BLOCK:
LAND LEASE AMOUNT: **$2,150.00** | ASSESSMENTS: **Buyer to Verify** | TAX LOT: **000** | TAX TRACT #: **000**
PARCEL #:
ADDITIONAL PARCEL(s): **No**

## LISTING / DATES

B.A. COMPENSATION: | LIST TERMS: **Cash, Cash to New Loan** | LIST CONTRACT DATE: **10/24/24**
BAC REMARKS: | LIST AGRMT: **Exclusive Right To Sell** | START SHOWING DATE:
DUAL/VARI. COMP?: **No** | LIST SERVICE: **Full Service** | ON MARKET DATE: **10/24/24**
CURRENT FINANCING: | AD NUMBER: | PRICE CHG TSTP: **02/04/25**
POSSESSION: **Close Of Escrow** | DISCLOSURES: **Bankruptcy, CC And R's,** | STATUS CHG TSTP: **03/20/25**
SIGN ON PROPERTY?: | **Homeowners Association, Manufactured** | MODIFIED TSTP: **03/20/25**
POINTS: | **Homes Allowed** | EXPIRATION DT: **03/31/25**
CONTINGENCY LIST: **See Remarks** | INTERNET, AVM?/COMM?: **Yes/Yes** | PURCH CONTRACT DATE: **03/14/25**
| INTERNET?/ADDRESS?: **Yes/Yes** | EST. CLOSE DATE: **05/25/25**
| NEIGHBORHOOD MARKET REPORT YN?: **Yes**

CONTINGENCY: **Bankruptcy Sale, subject to Court approval. Buyer must qualify for space lease with park management. See Supplements for Bankruptcy Sale Process and information for Prospective Homeowners for Rancho Del Rey.**

PRIVATE REMARKS: **Interested Parties can overbid in Bankruptcy Court (Teleconference may be available if and to the extent permitted by the Court, subject to Court procedures) on 3/27/25 at 10:00am. No later than 3 business days prior to the Hearing date, you must deliver: 1. Cashier's Check in the amount of $8,280 payable to Jeffrey I. Golden, Chapter 7 Trustee; 2. A written offer for not less than $276,000 on form attached to Sale Motion as "Exhibit 8"; 3. Written proof of financial ability to close escrow unconditionally acceptable in sole discretion of Trustee; 4. Executed affirmation to be bound by the terms of the Purchase Agreement and waive all contingencies. Sale does not include ground lease, however Park Management will provide a new ground lease for a new qualified buyer; Park Management approval is the responsibility of overbidder/buyer. Contact the Listing Agent for copy of Trustee's Motion Authorizing Sale. Listing Agent: email greg.bingham@camoves.com or call/text 562-335-0145**

## SHOWING INFORMATION

SHOW CONTACT TYPE: **Agent** | LOCK BOX LOCATION: **No Lock Box** | OCCUPANT TYPE: **Owner**
SHOW CONTACT NAME: **Greg Bingham** | LOCK BOX DESCRIPTION: **None, Seller** | OWNER'S NAME:
SHOW CONTACT PHONE: **562-335-0145** | **Providing Access** | 🗓 **Schedule a Showing**

SHOWING INSTRUCTIONS: **Showing by appointment only. Minimum 36 hours notice for showing appointment. Showing days and times: M-F after 4pm, Sat/Sun 10am-5pm.**
DIRECTIONS: **Edinger to Monterey Ln, enter through Guard Gate**

## AGENT / OFFICE / CONTACT PRIORITY

LA: **(PBINGREG) Greg Bingham** | LA STATE LIC: **01309137** | 1.LA CELL: **562-335-0145**
CoLA: | CoLA STATE LIC: | 2.LA CELL: **562-335-0145**
LO: **(PB14622) Coldwell Banker Realty** | LO STATE LIC: **00616212** | 3.LA DIRECT:
LO PHONE: **949-644-1600Ext:0** | LO FAX: **949-644-1690** | 4.LA TOLL FREE:
CoLO: | CoLO STATE LIC: | 5.LA VOICEMAIL: **000-0000**
CoLO PHONE: | CoLO FAX: | 6.LA EMAIL: **greg.bingham@camoves.com**
| OFFERS EMAIL: **greg.bingham@camoves.com**

## COMPARABLE INFORMATION

CLOSE PRICE: | BA: **()** | CoBA: **()** | CONCESS FINANCING COSTS $:
LIST PRICE: **$276,000** | BO: | CoBO: | CONCESS PROP IMPROV COSTS $:
LIST $ ORIGINAL: | BA STATE LIC: | CoBA STATE LIC: | CONCESS BUYER BROKER FEE $:
PURCH CONTRACT DT: **03/14/25** | BO STATE LIC: | CoBO STATE LIC: | CONCESS CLOSING COSTS $:
EST. COE: **05/25/25** | | | CONCESS OTHER COSTS $:
DOM/CDOM: **147/147** | | | CONCESS AMOUNT **(TOTAL)** $:
BUYER FINANCING: | | | CONCESSION CMTS:

## ESTIMATED SELLING INFORMATION

EST BUYER AGENT: **YOUTSIDE** | EST BUYER OFFICE: **Outside Office** | EST. CLOSE DATE: **05/25/25**
EST BA STATE LICENSE: **0** | EST BO STATE LICENSE:
EST CO BUYER AGENT: | EST CO BUYER OFFICE:
EST CO BA STATE LICENSE: | EST CO BO STATE LICENSE:



**ES 551**          **ES 551**          **ES 551**



  

AGENT FULL: Manufactured In Park    LISTING ID: PW24187211                    Printed by Greg Bingham, State Lic: 01309137 on 03/20/2025 7:06:01 AM

ES 552                                    ES 552                                    ES 552

# EXHIBIT "B"



# CRMLS Rules & Policies

Effective January 13, 2025



# CRMLS Rules & Policy Changes

## Effective January 13, 2025

### Rules Changes:

**Rule 7.15 - No Offers of Compensation in the MLS** has been revised and now reads:

A Listing Broker may not input, or otherwise use the MLS in any capacity, or in any field, media or document uploaded to the MLS, to offer or convey any amount or any willingness of Listing Broker to share a commission with a Buyer Broker, or for a Seller to offer a specific compensation amount to a Buyer Broker. Nothing in this rule shall prevent the Listing Broker from inputting any amount or invitation from Seller to consider any concessions that may be requested by a Buyer in an offer, as long as any such communication of a concession does not limit or condition the concession on being used to pay any Buyer Broker or other buyer representative. Listing Brokers must place any such amount or invitation regarding seller concessions in the Public Remarks/Property Description field.

**Rule 10.2(e) - Reporting of Sales** has been revised and now reads:

The MLS may accept the reporting of sales information for comparable purposes about other properties which were not otherwise eligible for input into the MLS but are located in the MLS's service area and "sold" by a Participant who represented a party in the transaction (i.e. broker who represented the seller or broker who represented the buyer), as long as such reporting is authorized by a party in the transaction to the broker who represented it, (if requested by the MLS documentation must be presented to MLS within 2 days), and the circumstances of the representation are disclosed on the Service by the reporting participant or subscriber. Any submission of sales information must occur within 30 days after close of escrow.

### Citation Policy Changes:

**Rule 8.3 - Inaccurate Information (Auto Sold):** Violations of the auto sold (Matrix users only) portion of Rule 8.3 will no longer be given a warning.

**Rule 11.5(e) - Branded Media:** The fine imposed for violations of the Branded Media rule has been revised from $100 to $250.

**Rule 12.5 - Misuse of Public Remarks:** Violations of this rule where any agent or broker contact information is included in the Public Remarks will no longer be given a warning, and the fine for this specific violation will be $250.

Effective January 13, 2025

   

# Contents

1.   AUTHORITY. ................................................................................................................... 8
2.   PURPOSE. ........................................................................................................................ 8
3.   THE AOR/MLS COMMITTEE. ..................................................................................... 8
4.   PARTICIPATION AND AUTHORIZED ACCESS. ...................................................... 8
   4.1   Participant. ............................................................................................................ 8
      4.1.1   Broker Participant. ..................................................................................... 8
      4.1.2   Appraiser Participant. ................................................................................ 9
      4.1.3   Redundant Participant Qualifications. ...................................................... 9
   4.2   Subscriber. ............................................................................................................ 9
      4.2.1   R.E. Subscriber. ........................................................................................ 9
      4.2.2   Appraiser Subscriber. ............................................................................. 10
      4.2.3   Redundant Subscriber Qualifications. .................................................... 10
   4.3   Clerical Users. .................................................................................................... 10
   4.4   Registered Assistant Access. .............................................................................. 10
      4.4.1   Assistant Fees. ........................................................................................ 10
      4.4.2   Assistant Written Agreement. ................................................................ 10
      4.4.3   Assistant Information. ............................................................................. 11
      4.4.4   Assistant Identification. .......................................................................... 11
      4.4.5   Assistant Eligibility. ............................................................................... 11
   4.5   Notification of Licensees. ................................................................................... 11
   4.6   Participation Not Transferable. .......................................................................... 11
   4.7   Listing Broker Defined. ...................................................................................... 11
   4.8   Buyer Broker Defined. ....................................................................................... 11
   4.9   Appraiser Defined. ............................................................................................. 11
   4.10   Authorization for Mandatory Training. ............................................................ 12
   4.11   Subject to MLS Rules. ...................................................................................... 12
5.   MLS FEES AND CHARGES. ....................................................................................... 12
   5.1   Service Fees and Charges. .................................................................................. 12
      5.1.1   Initial Participation and/or Application Fee. .......................................... 12
      5.1.2   Recurring Participation Fee. ................................................................... 12
      5.1.3   Listing Fee. ............................................................................................. 13
      5.1.4   Computer Access Fees. ........................................................................... 13
      5.1.5   Certification of Nonuse. ......................................................................... 13
      5.1.6   Other Fees. .............................................................................................. 13
   5.2   Responsibility for Fees. ...................................................................................... 13
6.   REGIONAL AND RECIPROCAL AGREEMENTS. ................................................... 13
7.   LISTING PROCEDURES. ............................................................................................. 13

ES 556           ES 556           ES 556

| | | |
|---|---|---|
| 7.1 | Listings Subject to Rules and Policies of the MLS. | 13 |
| 7.2 | Property Already Listed by Another Agent/Broker. | 13 |
| 7.3 | Listing and Co-Listing Agents/Brokers. | 14 |
| 7.4 | Range Pricing. | 14 |
| 7.5 | Types of Listings; Responsibility for Classification. | 14 |
| 7.5.1 | Scope of Service; Limited Service Listings. | 14 |
| 7.5.2 | Scope of Service; MLS Entry-Only Listings. | 15 |
| 7.5.3 | Scope of Service; Legal Obligations. | 15 |
| 7.6 | Types of Properties; Responsibility for Classification. | 15 |
| 7.7 | Compliance with California and Federal Law. | 16 |
| 7.8 | Mandatory Delivery of Listing Agreement. | 16 |
| 7.8.1 | Registered Listings. | 16 |
| 7.9 | Mandatory Submission upon Marketing. | 16 |
| 7.9.1 | No Cooperation Listing. | 17 |
| 7.10 | Service Area. | 17 |
| 7.11 | Change of Listing Information. | 17 |
| 7.12 | Withdrawal of Listing Prior to Expiration. | 17 |
| 7.13 | Contingencies. | 18 |
| 7.14 | Detail on Listings Filed With the MLS. | 18 |
| 7.15 | No Offers of Compensation in the MLS. | 18 |
| 7.16 | Disclosure of Compensation. | 18 |
| 7.17 | Consent to Act as Dual Agent. | 18 |
| 7.18 | Auction and New Construction Listings. | 18 |
| 7.18.1 | Auction Listings. | 18 |
| 7.18.2 | New Construction Listings. | 19 |
| 7.19 | No Disclosure of Listing Broker or Total Commission. | 19 |
| 7.20 | Broker Participant or R.E. Subscriber as Principal. | 19 |
| 7.21 | Multiple Unit Properties. | 20 |
| 7.22 | Expiration, Extension, and Renewal of Listings. | 20 |
| 7.22.1 | Extension for Protected Buyer. | 20 |
| 7.23 | Listings of Participants or Subscribers Suspended, Expelled, or Resigned | 20 |
| 7.23.1 | Failure to Pay MLS Fees; Resignation. | 20 |
| 7.23.2 | Violations of MLS Rules. | 20 |
| 7.24 | No Control of Commission Rates or Fees Charged by Participants | 21 |
| 7.25 | Dual Rate Commission Arrangements (Listing Broker Advantage). | 21 |
| 7.26 | Right of Listing Broker and Presentation of Counter-Offers. | 21 |
| 7.27 | REO Disclosure. | 21 |
| 8. | DOCUMENTATION; PERMISSION; ACCURACY OF INFORMATION. | 21 |

ES 557          ES 557          ES 557

8.1    Listing Agreement and Seller's Permission.................................................................21

8.2    Written Documentation ..............................................................................................22

8.3    Accuracy of Information; Responsibility for Accuracy ...............................................22

8.4    Input Defined .............................................................................................................22

8.5    Buyer, Seller, Purchase, and Sale Defined..................................................................22

9.    SELLING PROCEDURES. .................................................................................................. 23

9.1    Showings......................................................................................................................23

9.2    Disclosing the Existence of Offers ..............................................................................23

9.3    Availability to Show or Inspect....................................................................................23

9.4    Presentation of Offers ..................................................................................................23

9.5    Submission of Offers and Counter-Offers ...................................................................23

9.6    Right of Buyer Broker in Presentation of Offer ..........................................................24

9.7    Removed. ......................................................................................................................24

9.8    Listing Broker Approval Showings and Negotiations...................................................24

9.9    Buyer Broker as a Buyer ..............................................................................................24

9.10   Physical Presence of Participant or Subscriber.............................................................24

10.    REPORTING SALES AND OTHER INFORMATION TO THE MLS. .............................. 24

10.1   Statuses. .......................................................................................................................24

10.2   Reporting of Sales........................................................................................................25

10.3   Removal of Listings for Refusal/Failure to Timely Report Status Changes..................26

10.4   Reporting Cancellation of Pending Sale .......................................................................26

10.5   Refusal to Sell ..............................................................................................................26

11.    OWNERSHIP OF MULTIPLE LISTING SERVICE COMPILATIONS AND COPYRIGHTS............ 26

11.1   MLS Compilation Defined ...........................................................................................26

11.2   Active Listing MLS Compilation Defined ...................................................................26

11.3   Comparable Data MLS Compilation Defined ..............................................................26

11.4   Authority to Put Listings in MLS Compilation ...........................................................26

11.5   Media on the MLS........................................................................................................27

   11.5.1   Mandatory submission Photograph/Rendering ...................................................... 27

   11.5.2   Removal of Media ................................................................................................. 28

11.6   Copyright Ownership ...................................................................................................28

11.7   Leasing of MLS Compilations .....................................................................................28

11.8   Removal of Historical Records .....................................................................................28

11.9   Removal of and Responsibility for Content...................................................................28

11.10  Indemnification; Limitation of Liability ......................................................................28

11.11  Pursuing Complaints of Unauthorized Use of Listing Content....................................29

   11.12   Participant Access and Entitlement to Their Own Listing Information; Data Portability............ 29

12.    PROHIBITIONS AND REQUIREMENTS.......................................................................... 30

- 3 -

12.1     Notification of California Department of Real Estate (DRE) or California Bureau of Real Estate Appraisers (BREA) Action .............................................................................................................30

12.2     Violations of the Law .............................................................................................................30

12.3     Supervision of R.E. Licensees and Appraisers ......................................................................30

12.4     Solicitation of Listing Filed With the MLS ............................................................................30

12.5     Misuse of Public Remarks .....................................................................................................30

    12.5.1     Misuse of Other Remarks and Media ............................................................................ 31

12.6     "For Sale" Signs ....................................................................................................................31

12.7     "Sold" Signs and Use of the Term "Sold." ............................................................................31

12.8     Advertising of Listing Filed With the MLS ............................................................................31

12.9     Limitations on Use of MLS Information in Advertising ..........................................................32

12.10    False or Misleading Advertising and Representations; True Picture Standard of Conduct. ..................33

12.11    Use of MLS Information .........................................................................................................33

12.12    Confidentiality of MLS Information .......................................................................................33

    12.12.1    Clerical Users ............................................................................................................... 34

12.13    Access to Comparable and Statistical Information ..................................................................34

12.14    Display ..................................................................................................................................34

12.15    Reproduction .........................................................................................................................34

    12.15.1    Copies to Prospective Buyers ....................................................................................... 34

    12.15.2    Information Reproduced ................................................................................................ 35

    12.15.3    Copies for Appraisals ................................................................................................... 35

    12.15.4    Downloading into Computers ........................................................................................ 35

    12.15.5    Sold Information ........................................................................................................... 35

12.16    RELOCATED. ......................................................................................................................35

12.17    Applicability of Rules to MLS ..............................................................................................35

12.18    Listing Broker's Right to Opt Out of Internet Advertising of MLS Information .......................36

12.19    Website Name and Status Disclosure .....................................................................................36

12.20    Use of the Terms MLS and Multiple Listing Services .............................................................36

12.21    Participant and Subscriber Standards of Conduct ...................................................................36

12.22    Required Email Address .........................................................................................................36

12.23    Definition of Calendar Days/Business Days. ..........................................................................36

13.    LOCKBOXES. ...........................................................................................................................37

13.1     Eligibility for Lockboxes .......................................................................................................37

13.2     Key Use and Service ..............................................................................................................37

13.3     Accountability. ......................................................................................................................37

13.4     Deemed Unaccountable. .........................................................................................................37

13.5     Written Authority ..................................................................................................................37

13.6     Lockbox Requirements ...........................................................................................................37

- 4 -

    13.6.1    Approved Lockboxes ............................................................. 38
  13.7    Listing Broker's Permission............................................................38
  13.8    Unaccountable Keys ...................................................................38
  13.9    Removal ..................................................................................38
  13.10   Rules Violations.........................................................................38
  13.11   Right to Limit Access ..................................................................38
14.    VIOLATIONS OF RULES AND POLICIES. ..................................... 38
  14.1    Grounds for Disciplinary Action and Sanctions ............................. 38
  14.2    Sanctions ................................................................................39
  14.3    Citations ..................................................................................39
    14.3.1    Mandatory Hearing for Multiple Citations .......................... 39
  14.4    Duty to Correct and Cooperate. .................................................. 39
  14.5    MLS Modification of Information. ..................................................40
  14.6    Abusive Conduct. .......................................................................40
  14.7    Disclosure Limitations.................................................................40
15.    PROCEDURES FOR MLS RULES HEARINGS. ............................. 40
16.    ARBITRATION. .......................................................................... 40
  16.1    Mandatory Arbitration. ............................................................... 40
  16.2    Other Arbitration Agreements ..................................................... 40
  16.3    Arbitration Between Association Members...................................... 40
  16.4    Arbitration Involving Non-Association Members ............................41
  16.5    Same Firm ................................................................................41
  16.6    Timing .....................................................................................41
17.    NONPAYMENT OF MLS FEES. .................................................... 41
  17.1    Nonpayment of MLS Fees ...........................................................41
  17.2    Disputed Amounts .....................................................................41
  17.3    Reinstatement ..........................................................................42
18.    CHANGE IN RULES AND POLICIES. ............................................ 42
19.    PARTICIPANT DATA ACCESS......................................................42
  19.1    Participant Definition and Requirements for MLS Data Use Outside MLS Front End .........................42
  19.2    Internet Data Exchange ("IDX").................................................43
    19.2.1    Authorization. .............................................................. 43
    19.2.2    Consent. ......................................................................44
    19.2.3    Control. ........................................................................44
    19.2.4    Display Content. ............................................................44
    19.2.5    Listing Credit. ...............................................................44
    19.2.6    Source. ........................................................................45
    19.2.7    Usage. .........................................................................45

ES 560                    ES 560                    ES 560

19.2.8     Security......................................................................................................... 45

19.2.9     Display Purpose.............................................................................................. 45

19.2.10     Restricted Display........................................................................................ 45

19.2.11     Restricted Access and Distribution.............................................................. 45

19.2.12     Excluded Listings.......................................................................................... 45

19.2.13     Website Identification.................................................................................... 45

19.2.14     Removed......................................................................................................... 45

19.2.15     Third Party Comments and Automated Value Estimates.............................. 46

19.2.16     Making Corrections....................................................................................... 46

19.2.17     Compliance.................................................................................................... 46

19.2.18     Notification by Authorized Participants and Subscribers............................. 46

19.2.19     Right to Charge for Download....................................................................... 46

19.2.20     Modifications and Augmentations................................................................. 47

19.2.21     No Display of Offers of Compensation......................................................... 47

19.3     Virtual Office Websites ("VOW")................................................................................. 47

19.3.1     VOW Definitions............................................................................................ 47

19.3.2     VOW Operating Parameters.......................................................................... 48

19.3.3     VOW Registrant Access Requirements.......................................................... 48

19.3.4     VOW Contact Requirements.......................................................................... 49

19.3.5     VOW Data Security........................................................................................ 49

19.3.6     VOW Listing Display Restrictions................................................................. 49

19.3.7     Posting Consumer Comments and Automated Value Estimate...................... 50

19.3.8     Correction of VOW Listing Information........................................................ 51

19.3.9     VOW Mandatory Listing Refresh.................................................................. 51

19.3.10     VOW MLS Listing Distribution Limitations................................................ 51

19.3.11     VOW Privacy Policy..................................................................................... 51

19.3.12     VOW Selective Listing Display.................................................................... 51

19.3.13     Notification of MLS of Intent to Operate a VOW......................................... 51

19.3.14     Operation of Multiple VOWs........................................................................ 51

19.3.15     VOW Data Display Limitations.................................................................... 51

19.3.16     Changes to Listing Content.......................................................................... 51

19.3.17     Listing Accuracy Disclaimer....................................................................... 52

19.3.18     Listing Broker or Agent Identification......................................................... 52

19.3.19     Listing Search Result Limitation................................................................. 52

19.3.20     Mandatory Registrant Password Change..................................................... 52

19.3.21     VOW Co-Branding and Advertising............................................................. 52

19.3.22     Identifying Listing Source........................................................................... 52

19.3.23     Separate Source Listing Search................................................................... 52

19.3.24    MLS Licensing Agreement for VOW. ........................................................... 52

19.3.25    Seller's Direction to Withhold from Internet. .................................................. 52

19.3.26    No Display of Offers of Compensation .......................................................... 53

20.    REJECTION OF APPLICATION. .................................................................................. 53

ES 562                              ES 562                              ES 562

1. **AUTHORITY.**

The Associations of REALTORS® (AOR)/Multiple Listing Service may maintain a Multiple Listing Service ("MLS") or other "Services" for the use of licensed real estate Brokers and Salespersons and licensed or certified Appraisers under the terms of these rules as from time to time amended.

2. **PURPOSE.**

CRMLS as a Multiple Listing Service is in the business of operating a broker cooperative by providing information and services to real estate brokers, agents, or appraisers for use in their professional activities by:

   a) Collecting from real estate agents, brokers or appraisers real-estate information and data, including but not limited to listing information.
   b) Enhancement and organization of that information and data with other property information to create property records.
   c) Distribution and display of those collected property records to real estate brokers and appraisers for their use in listing, selling, leasing, and valuing real estate for the benefit of consumers.
   d) Distribution of those collected property records to non-broker entities that use the property records to support real estate transactions or the real estate industry.
   e) Providing services, rules and systems that facilitate the cooperation between different brokers, and agents to represent clients in real estate transactions.

3. **THE AOR/MLS COMMITTEE.**

The AOR/MLS shall be governed by its board of directors (hereinafter "Board of Directors") in accordance with its articles of incorporation and its bylaws. Committees may be established to perform such functions as may be delegated, but all actions of committees shall be subject to the approval and confirmation of the Board of Directors.

4. **PARTICIPATION AND AUTHORIZED ACCESS.**

   4.1    **Participant**. A Participant is any individual who applies and is accepted by the MLS, and meets and continues to meet all of the following requirements of either a Broker Participant or an Appraiser Participant as defined below in Sections 4.1.1 and 4.1.2.

   The membership requirement shall be applied on a nondiscriminatory manner to all Participants and potential Participants.

   4.1.1    **Broker Participant.** A Broker Participant is a Participant who meets all the following requirements:

   a) The individual or corporation, for whom the individual acts as a Broker/officer, holds a valid California Real Estate Broker's license;
   b) The individual is a principal, partner, corporate officer, or branch office manager acting on behalf of a principal;
   c) The individual or corporation for whom the individual acts as a Broker/officer agrees to cooperate with other Participant Brokers in the capacity of a Real

- 8 -

Estate Broker;

d) The individual has signed a written agreement to abide by the rules of the MLS in force at that time and as from time to time amended;

e) The individual pays all applicable MLS fees; and

f) The individual has completed any required orientation program of no more than eight (8) classroom hours within ninety (90) days after access has been provided <u>said program to be attended in-person or through remote means</u>. Failure to complete the required orientation shall result in termination of all MLS privileges unless extensions have been granted by applicant's service center or AOR/MLS.

**4.1.2    Appraiser Participant.** An Appraiser Participant is a Participant who meets all the following requirements:

a) The individual holds a valid California Appraiser's certification or license issued by the Bureau of Real Estate Appraisers ("BREA") (also referred to as "Office" of Real Estate Appraisers or OREA);

b) The individual is a principal, partner, corporate officer, or branch office manager acting on behalf of a principal;

c) The individual has signed a written agreement to abide by the rules of the MLS in force at that time and as from time to time amended;

d) The individual pays all applicable MLS fees; and

e) The individual has completed any required orientation program of no more than eight (8) classroom hours within ninety (90) days after access has been provided <u>said program to be attended in-person or through remote means</u>. Failure to complete the required orientation shall result in termination of all MLS privileges unless extensions have been granted by applicant's service center or AOR/MLS.

**4.1.3    Redundant Participant Qualifications.** Participant type (Broker or Appraiser) must be selected during application for participation. A Participant with both a California Real Estate Broker's license and a California Appraiser's certification or license must join as a "Broker Participant" to be a Listing Broker (see Section 4.7), or Buyer Broker (see Section 4.8).

**4.2    Subscriber.** A Subscriber is an individual who applies and is accepted by the AOR/MLS, and meets and continues to meet all of the following requirements of either a R.E. Subscriber or Appraiser Subscriber as defined below in sections 4.2.1 and 4.2.2:

**4.2.1    R.E. Subscriber.** A R.E. Subscriber is a Subscriber who meets all the following requirements:

a) The individual holds a valid California real estate salesperson's or broker's license;

b) The individual is employed by or affiliated as an independent contractor with a Broker Participant;

c) The individual agrees to cooperate with other Subscriber Agents and Participant Brokers in the handling of any real estate transaction;

ES 564                              ES 564                              ES 564

d) The individual has signed a written agreement to abide by the rules and regulation of the service in force at that time and as from time to time amended;

e) The individual pays all applicable MLS fees; and

f) The individual has completed any required orientation program of no more than eight (8) classroom hours within ninety (90) days after access has been provided said program to be attended in-person or through remote means.

**4.2.2    Appraiser Subscriber.** An Appraiser Subscriber is a Subscriber who meets all of the following requirements:

a) The individual holds a valid California real estate appraiser's certification or license issued by the BREA;

b) The individual is employed by or affiliated as an independent contractor with an Appraiser Participant;

c) The individual has signed a written agreement to abide by the rules and policies of the service in force at that time and as from time to time amended;

d) The individual pays all applicable MLS fees; and

e) The individual has completed any required orientation program of no more than eight (8) classroom hours within thirty (30) days after access has been provided said program to be attended in-person or through remote means.

**4.2.3    Redundant Subscriber Qualifications.** Subscriber type (R.E. or Appraiser) must correlate to the participant type. A Subscriber who is both a California Real Estate Licensee and a California certified or licensed Appraiser must join as a "R.E. Subscriber," unless the employing or affiliated Participant is an Appraiser Participant.

**4.3    Clerical Users.** Individuals (whether licensed or unlicensed) under the direct supervision of an MLS Participant or Subscriber that perform only administrative and clerical tasks that do not require a real estate license or an Appraiser's certificate or license. Each Participant and Subscriber shall provide the AOR/MLS with a list of all Clerical Users employed by or affiliated as independent contractors with the Participant or Subscriber and shall immediately notify the AOR/MLS of any changes, additions, or deletions from the list.

**4.4    Registered Assistant Access.** Individuals (whether licensed or unlicensed) that use the MLS for clerical tasks such as entering listings and/or searching the database and are under the direct supervision of a Participant, Subscriber or Appraiser, may be given access to the MLS by a unique and individual passcode. The Assistant passcode will be directly linked to the Assistant's employer and will be terminated if said employer should become inactive in the MLS. An Assistant must adhere to the following requirements:

**4.4.1    Assistant Fees.** The Assistant fees will be up to date as set forth by the service center or AOR/MLS that the Assistant's employer participates at;

**4.4.2    Assistant Written Agreement.** The Assistant will have signed a written agreement to abide by the rules and policies of the service center or AOR/MLS and will be required to either attend MLS orientation or pass a standardized test administered by staff covering the service center or AOR/MLS rules and policies;

- 10 -

ES 565                                        ES 565                                        ES 565

    **4.4.3**  **Assistant Information.** The Assistant will only relay MLS information to his/her employer and not to members of the public, other service centers, and/or other AOR/MLS participants, subscribers or appraisers (this does not prohibit licensed assistants from performing duties of a real estate licensee or appraiser licensee outside of the MLS as long as the duties performed do not involve data retrieved from the service center or AOR/MLS database);

    **4.4.4**  **Assistant Identification.** The Assistant may not be identified as an agent or contact person for a property listed with the service center or AOR/MLS;

    **4.4.5**  **Assistant Eligibility.** Assistants may be eligible for lockbox access services, unless otherwise prohibited, and are prohibited from using any other Participant, Subscriber or Appraiser's access device.

**4.5**  **Notification of Licensees.** Each Participant shall provide the AOR/MLS with a list of all real estate licensees or certified or licensed Appraisers employed by or affiliated as independent contractors with such Participant or with such Participant's firm and shall immediately notify the AOR/MLS of any changes, additions, or deletions from the list. This list shall include any licensees under any Broker associate affiliated with the Participant.

**4.6**  **Participation Not Transferable.** Participation in the MLS is on an individual basis and may not be transferred or sold to any corporation, firm, or other individual. Any reimbursement of MLS fees is a matter of negotiation between those transferring the business or determined by internal contract arrangement within the firm. However, providing the first Participant consents, the AOR/MLS shall allow a firm to designate a different person as a Participant within the firm without additional initial participation fees. The AOR/MLS may charge an administrative fee for this service of reassigning Participants within a firm.

**4.7**  **Listing Broker Defined.** For purposes of these MLS rules, a Listing Broker is a Broker Participant who is also a listing agent in accordance with California Civil Code Section 1086, et. seq., who has obtained a written listing agreement by which the Listing Broker has been authorized to act as an agent to sell or lease the property or to find or obtain a buyer(s) or tenant(s). Whenever these rules refer to the Listing Broker, the term shall include a Subscriber in addition to the Participant or a licensee retained by the Listing Broker but shall not relieve the Listing Broker of responsibility for the act or rule specified.

**4.8**  **Buyer Broker Defined.** For purposes of these MLS rules, a Buyer Broker is a Broker Participant who is also a buyer's agent as defined in California Civil Code Section 1086, et. seq., who acts in cooperation with a Listing Broker to find or obtain a buyer(s) or tenant(s) for a listed property. The Buyer Broker may be the agent of the buyer(s) or, if subagency is offered and accepted, may be the agent of the seller(s). Whenever these rules refer to the Buyer Broker, the term shall include a Subscriber in addition to the Participant or licensee retained by the Buyer Broker but shall not relieve that Broker Participant of responsibility for the act or rule specified.

**4.9**  **Appraiser Defined.** For purposes of these MLS rules, an Appraiser is an Appraiser Participant, Appraiser Subscriber, or a licensed or certified Appraiser acting for the Appraiser Participant or Appraiser Subscriber. Whenever these rules refer to the Appraiser, the term

<div align="center">- 11 -</div>

shall also include the Appraiser Subscriber, or a licensed or certified Appraiser employed by or affiliated as an independent contractor with the firm that employs the Appraiser but shall not relieve that Appraiser Participant of responsibility for the act or rule specified.

**4.10**    **Authorization for Mandatory Training.** Participants and Subscribers may be required, at the discretion of the MLS, to complete additional training of not more than four (4) classroom hours in any twelve (12) month period when deemed necessary by the MLS to familiarize Participants and Subscribers with system changes or enhancements, and/or changes to MLS rules or policies. Participants and Subscribers must be given the opportunity to complete any mandated additional training remotely.

**4.11**    **Subject to MLS Rules.** By becoming and remaining a Participant, Subscriber or Clerical User, each Participant, Subscriber and Clerical User agrees to be subject to these MLS Rules and Policies.

## 5.    MLS FEES AND CHARGES.

**5.1**    **Service Fees and Charges.** The AOR/MLS Board of Directors shall establish a schedule of MLS fees applicable to the MLS, which may include the following service fees and charges:

     **5.1.1**    **Initial Participation and/or Application Fee.** Applicants for MLS services may be assessed initial participation and/or application fees.

     **5.1.2**    **Recurring Participation Fee.** The recurring participation fee of each Broker Participant shall be an amount equal to the fee set for each individual times the total number of (1) the Broker Participant, plus (2) the number of Salespersons who have access to and use of the MLS, whether licensed as Brokers or as Salespersons, who are employed by or affiliated as independent contractors with such Participant or the Participant's firm. If more than one principal Broker in the same firm elects to be a Participant, the number of Salespersons in the firm will only be used once in calculating the recurring participation fees. A Broker Participant is not obligated to pay recurring participation fees or other MLS fees and charges for real estate licensees affiliated with the Participant or the Participant's firm if such licensees work out of a branch office of the Participant or the Participant's firm that does not participate in or otherwise use the MLS.

     The recurring participation fee of each Appraiser Participant shall be an amount times the total number of (1) the Appraiser Participant, plus (2) the number of Appraisers who have access to and use of the MLS, who are employed by or affiliated as independent contractors with such Participant or the Participant's firm. If more than one principal Appraiser in the same firm elects to be a Participant, the number of Appraisers in the firm will only be used once in calculating the recurring participation fees. An Appraiser Participant is not obligated to pay recurring participation fees or other MLS fees and charges for licensed or certified Appraisers affiliated with the Participant or the Participant's firm if such Appraisers work out of a branch office of the Participant or the Participant's firm that does not participate in or otherwise use the MLS.

- 12 -

5.1.3 **Listing Fee.** A listing fee may be charged for each listing submitted to the MLS.

5.1.4 **Computer Access Fees.** The recurring computer access fee for each Participant shall be an amount established and approved by the AOR/MLS Board of Directors equal to the total number of Subscribers and Salespersons licensed or certified as Appraisers, Brokers, or Salespersons, who are employed by or affiliated as independent contractors with such Participant.

5.1.5 **Certification of Nonuse.** Participants may be relieved from payment under Sections 5.1.2 and 5.1.5 hereunder by certifying to the AOR/MLS that a licensed or certified person in the office is engaged solely in activities that do not require a real estate license or certification (clerical, etc.), or that the real estate Licensee or licensed or certified Appraiser will not use the MLS or MLS compilation in any way. In the event a real estate Licensee or Appraiser is found in violation of the nonuse certification, the Participant shall be subject to all MLS fees dating back to the date of the certification. The Participant and Subscriber may also be subject to any other sanction imposed for violation of MLS rules, including, but not limited to, a citation and suspension or termination of Participation rights and access to the MLS.

5.1.6 **Other Fees.** Other fees that are reasonably related to the operation of the MLS may be adopted.

5.2 **Responsibility for Fees.** In the event the AOR/MLS allows for direct billing or payment by a Subscriber for fees under these rules, such fees shall be the exclusive obligation of that Subscriber regardless of whether such Subscriber becomes affiliated with a different Participant. If the MLS does not allow for direct billing or payment by a Subscriber for MLS fees, such fees shall be the responsibility of the Participant with whom the Subscriber was affiliated with at the time the MLS fees were incurred. This section does not preclude in any way the ability of Participants to pursue reimbursement of MLS fees from current or past Subscribers or to establish agreements with Subscribers regarding payment or reimbursement of MLS fees.

## 6. REGIONAL AND RECIPROCAL AGREEMENTS.

The AOR/MLS Board of Directors may approve and enter into regional or reciprocal agreements with AORs or MLS corporations owned or governed solely by AORs or licensed real estate brokers to allow the other MLS participants and subscribers access to the MLS in exchange for comparable benefits to the Participants and Subscribers of this MLS. In the event of such agreements, the Participants and Subscribers agree to abide by the respective rules of the other MLSs receiving and publishing a listing pursuant to such agreements and to abide by such rules when accessing the other databases or datasets.

## 7. LISTING PROCEDURES.

7.1 **Listings Subject to Rules and Policies of the MLS.** Any listing filed with the MLS by a Listing Broker are subject to the rules of the MLS.

7.2 **Property Already Listed by Another Agent/Broker.** The MLS allows one listing per

- 13 -

property type for a specific property. There may be situations where more than one Broker believes they have a valid listing agreement for the same property. The MLS and/or Association cannot determine the validity of claims of competing contracts. It is the responsibility of the Brokers and seller to resolve the validity question prior to entering a listing into the MLS. Entering a listing into the MLS without a valid listing agreement is a violation of MLS Rules. Failure to remove a listing from the MLS following cancelation or expiration is a violation of MLS Rules.

7.3    **Listing and Co-Listing Agents/Brokers.** Only the listings of Participants and Subscribers will be accepted by the MLS. Inclusion of co-listings where the co-listing broker/agent is not a Participant or Subscriber in the MLS, or a Participant or Subscriber of a datashare partner MLS, is prohibited.

7.4    **Range Pricing.** If a listing is specified as a Range Price Listing, the Listing Agent or Broker must enter a valid range for the list price of that listing. In all cases, the default List Price shall be the high end of the range and the low end of the range can be no less than 85% of this price.

7.5    **Types of Listings; Responsibility for Classification.** The MLS shall accept exclusive right to sell, seller reserved, open, and probate listings in accordance with California Civil Code Section 1086, et seq., and auction listings that satisfy the requirements of these MLS rules. As used in these rules, "probate" includes conservatorships, guardianships, and similar protective proceedings in the Superior Court of California. Exclusive right to sell listings that contain any exceptions whereby the owner need not pay a commission if the property is sold to particular individuals shall be classified for purposes of these rules as an exclusive right to sell listing, but the Listing Broker shall notify all of the exceptions. It shall be the responsibility of the Listing Broker to properly classify the type of listing, and if necessary, obtain a legal opinion to determine the correct classification. By classifying the type of listing, the Listing Broker certifies that the listing falls under the legal classification designated. The MLS shall have no affirmative responsibility to verify the listing type of any listing filed with the MLS. However, the MLS shall have the right to have legal counsel make a determination as to the classification of the listing type, and if the Listing Broker does not reclassify it accordingly, the MLS shall have the right to reject or remove any such listing that the MLS determines falsely represents the classification of listing type.

7.5.1    **Scope of Service; Limited Service Listings.** Limited Service listings are listings whereby the Listing Broker, pursuant to the listing agreement, will not provide one, or more, of the following services:

a)    Provide Buyer Brokers with any additional information regarding the property not already displayed in the MLS, but instead gives Buyer Brokers authority to contact the seller(s) directly for further information;

b)    Accept and present to the seller(s) offers to purchase procured by Buyer Brokers, but instead gives Buyer Brokers authority to present offers to purchase directly to the seller(s);

c)    Advise the seller(s) as to the merits of offers to purchase;

d)    assist the seller(s) in developing, communicating, or presenting counter-offers; or

- 14 -

ES 569                          ES 569                          ES 569

e) Participate on the seller's(s') behalf in negotiations leading to the sale of the listed property.

Said Limited Service listings will be identified with an appropriate code or symbol (e.g., "LS") in MLS compilations so potential Buyer Brokers will be aware of the extent of the services the Listing Broker will provide to the seller(s), and any potential for Buyer Brokers being asked to provide some or all of these services to Listing Broker's clients, prior to initiating efforts to show or sell the property.

**7.5.2    Scope of Service; MLS Entry-Only Listings.** MLS Entry-Only listings are listings whereby the Listing Broker, pursuant to the listing agreement, will not provide any of the following services:

a) Provide Buyer Brokers with any additional information regarding the property not already displayed in the MLS, but instead gives Buyer Brokers authority to contact the seller(s) directly for further information;

b) Accept and present to the seller(s) offers to purchase procured by Buyer Brokers, but instead gives Buyer Brokers authority to present offers to purchase directly to the seller(s);

c) Advise the seller(s) as to the merits of offers to purchase;

d) Assist the seller(s) in developing, communicating, or presenting counter-offers; or

e) Participate on the seller's(s') behalf in negotiations leading to the sale of the listed property.

Said MLS Entry-Only listings will be identified with an appropriate code or symbol (e.g. "EO") in MLS compilations so potential Buyer Brokers will be aware of the extent of the services the Listing Broker will provide to the seller(s), and any potential for Buyer Brokers being asked to provide some or all of these services to Listing Broker's clients, prior to initiating efforts to show or sell the property.

**7.5.3    Scope of Service; Legal Obligations.** The scope of service classifications set forth in these Rules do not alter any obligations otherwise imposed on real estate licensees under California law, including Department of Real Estate Policies, statutory law and/or common law. The MLS's acceptance or publication of listings eligible for MLS submission in no way constitutes a validation that said obligations have been met.

**7.6    Types of Properties; Responsibility for Classification.** The MLS shall accept listings that satisfy the requirements of these rules on the following types of property:

a) Residential
b) Residential Lease
c) Residential Income
d) Lots and Land
e) Mobile Home
f) Commercial
g) Commercial Lease
h) Business Opportunity

- 15 -

It shall be the responsibility of the Listing Broker to properly classify the type of property listed, and if necessary, obtain a legal opinion to determine the correct classification. By classifying the type of property listed, the Listing Broker certifies that the listing falls under the classification designated. The MLS shall have no affirmative responsibility to verify the property type of any listing filed with the MLS. However, the MLS shall have the right to have legal counsel decide as to the classification of the property type, and if the Listing Broker does not reclassify it accordingly, the MLS shall have the right to reject or remove any such listing that it determines falsely represents the classification of property type listing.

**7.7**   **Compliance with California and Federal Law.** Notwithstanding any other provision of these MLS rules to the contrary, the MLS shall accept any listing that it is required to accept under California or federal law.

**7.8**   **Mandatory Delivery of Listing Agreement.** Listing Broker shall input into the MLS all properties located in the MLS Service Area within two (2) Days of the Effective Date of any listing agreement on any exclusive right to sell/lease or seller reserved listing agreement on one to four-unit residential property and vacant lots. The Effective Date of a listing agreement is the later of all necessary signatures of the seller(s) have been obtained, or at the beginning date of the listing as specified in the contract. All necessary signatures are those needed to create an enforceable listing, which generally means all named signatories to the listing agreement. In the event there are known additional property owners not made a signatory to the listing, the Listing Broker shall disclose said fact to the MLS and state whether the listed seller will make the sale contingent on the consent of the additional property owners. In the event the listing agent is prevented from complying with the 2-day time period due to seller's delay in returning the signed listing agreement, the Listing Broker must deliver the listing to the MLS within 2 days of receipt back from seller. The AOR/MLS may require the Listing Broker to present documentation to the AOR/MLS evidencing the seller's delayed transmission. Only those listings that are within the service area of the MLS must be input. Open listings or listings of property located outside the MLS's service area (see Section 7.10) are not required by the MLS but may be input at the Broker Participant's option. Violations of this Rule may result in modifications being made to the DOM count of any listing at issue as provided for in Rule 14.5.

> **7.8.1**   **Registered Listings.** Listings that are subject to the above identified listing agreements, but which have not been placed in the MLS for cooperation must be Registered with the MLS in accordance with the requirements of Rule 7.8. Registered listings shall not be made available for viewing, or cooperation in the MLS database to cooperating Participants and DOM shall not calculate on a Registered listing. Registered listings are by definition subject to the requirements of Rule 7.9.

**7.9**   **Mandatory Submission upon Marketing.** Within one (1) business day of marketing or advertising a residential property to any member of the public for sale which contains one to four units, or is a residential vacant land lot which is subject to any exclusive right to sell or seller reserved listing agreement, the Listing Broker must submit the property into the MLS for cooperation with other CRMLS participants. Marketing and advertising includes, but is not limited to, any information about the property or its availability for sale displayed on any: signs, websites, social media, brokerage or franchise operated websites, communications

- 16 -

ES 571                          ES 571                          ES 571

(verbal or written), multi-brokerage or franchise listing sharing networks, flyers or written material, on any applications, or by conducting an open house. Any individual or entity that has signed, within the previous year a Disclosure Regarding Real Estate Agency Relationship form in compliance with CA Civil Code section 2079.16 that identifies the Listing Broker shall not be considered a "member of the public" under this rule. Violations of this Rule may result in modifications being made to the DOM count of any listing at issue as provided for in Rule 14.5.

> **7.9.1    No Cooperation Listing.** If the seller in writing refuses to permit the property listing to be marketed or advertised as defined by Rule 7.9, and also instructs the Listing Broker to not disseminate the listing in the MLS , the Listing Broker shall obtain a written instruction from the seller  instructing the Listing Broker to do no marketing or advertising and refuses to authorize the listing to be disseminated by the MLS. The instruction shall include an advisory to seller that, in keeping the listing off the MLS, (1) No marketing or advertising of any kind will occur, (2) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to the MLS may not be aware seller's property is for sale, (3) seller's property will not be included on any   real estate Internet sites or applications that are used by the public to search for property listings, (4) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which seller is marketing the property, and (5) the reduction in exposure of the listing may lower the number of offers made on the property and may adversely impact the overall price.

**7.10    Service Area.** The MLS shall service the area which shall include the entire county that contains any of the territorial jurisdiction of (1) any member association, or (2) any data share partner AOR/MLS. At the option of the AOR/MLS, the MLS may adopt a policy to accept listings of properties located outside the territorial jurisdiction of the AOR/MLS. At the option of the AOR/MLS, the MLS may adopt a policy to accept listings of properties located outside the territorial jurisdiction of the AOR/MLS. If the AOR/MLS have entered into regional MLS agreements or a regional MLS corporation with other MLSs and have enlarged the service area as part of the agreement, submission of listings is mandatory for the enlarged service area covered by the combined territorial jurisdictions of the AOR's signatories to the regional MLS agreement or part of the regional MLS corporation.

**7.11    Change of Listing Information.** Listing Brokers shall submit any change in listing information, including the listed price or other change in the original listing agreement, to the MLS within 2 days after the authorized change is received by the Listing Broker. By submitting such changes to the MLS, the Listing Broker represents that the listing contract has been modified in writing to reflect such change or that the Listing Broker has obtained other legally sufficient written authorization to make such change.

**7.12    Withdrawal of Listing Prior to Expiration.** Listings of property must be withdrawn from the MLS by the Listing Broker before the expiration date of the listing agreement if the Listing Broker has received written instructions from the seller to withdraw the listing from the MLS. Listing Broker may withdraw any listing from the MLS 48 hours after providing seller with written notice of the broker's intention to withdraw the listing based on a dispute with the seller regarding the terms of the listing agreement. The MLS may require the Listing Broker to provide a copy of any notice of dispute or any written instructions from the seller. Sellers do

ES 572                                    ES 572                                    ES 572

not have the unilateral right to require the MLS to cancel any listing. However, the MLS reserves the right to remove a listing from the MLS data base if the seller can document that his or her listing agreement with the Listing Broker has been terminated or is invalid. Withdrawal from the MLS with the seller's consent does not relieve the obligation of the Listing Broker to report the sale and sales price if it closes escrow while the seller is represented by the Listing Broker.

**7.13**    **Contingencies.** Any contingency or condition of any term in a listing shall be specified and noticed to the participants.

**7.14**    **Detail on Listings Filed With the MLS.** Electronically input data or a property data form, when filed with the MLS by the Listing Broker, shall be complete in every detail as specified on the property data form, including full gross listing price, termination date, , and any other item required to be included as determined by the AOR/MLS Board of Directors. Property data forms may be returned if incomplete, and if not completed and returned within 2 days from the day the incomplete property data form was returned to the Listing Broker, the Broker Participant and R.E. Subscriber may be subject to penalties for failure to submit the completed property data form in a timely manner.

**7.15**    **No Offers of Compensation in the MLS.** A Listing Broker may not input, or otherwise use the MLS in any capacity, or in any field, media or document uploaded to the MLS, to offer or convey any amount or any willingness of Listing Broker to share a commission with a Buyer Broker, or for a Seller to offer a specific compensation amount to a Buyer Broker. Nothing in this rule shall prevent the Listing Broker from inputting any amount or invitation from Seller to consider any concessions that may be requested by a Buyer in an offer, as long as any such communication of a concession does not limit or condition the concession on being used to pay any Buyer Broker or other buyer representative. Listing Brokers must place any such amount or invitation regarding seller concessions in the Public Remarks/Property Description field.

**7.16**    **Disclosure of Compensation.** Listing Broker must disclose to prospective sellers or landlords that broker compensation is not set by law and is fully negotiable. This must be included in conspicuous language as part of any listing agreement. Listing Broker must conspicuously disclose in writing to sellers, and obtain seller's authority, for any payments or offer of payment that the Listing Broker or seller will make to another broker, agent or other representative (e.g., real estate attorney) acting for buyers. The disclosure must include the amount or rate of any such payment and be made in writing in advance of any payment or agreement to pay.

**7.17**    **Consent to Act as Dual Agent.** By listing a property and offering to cooperate with Buyer Broker, the Listing Broker is <u>not</u> automatically representing that the seller(s) have consented to the Buyer Broker acting as a dual agent representing both the buyer(s) and the seller(s). No Buyer Broker shall act as both an agent of the buyer(s) and the seller(s) without first contacting the Listing Broker and ascertaining that the seller(s) have consented to such dual agency.

**7.18**    **Auction and New Construction Listings**.

**7.18.1  Auction Listings.** Only auction listings which comply with these MLS Rules and

- 18 -

Policies, including, but not limited to Sections 7.12 and 7.13, may be submitted to the Service. Auction listings entered into the MLS system shall have listing contracts as required under these Rules, be clearly labeled as auction listings, and provide all the terms and conditions of the auction. Reserve auctions are not permitted on the MLS. Auction listings shall further specify the following:

a) The list price, which shall be seller's minimum acceptable bid price;
b) The date, time and place of the auction;
c) All required procedures for Buyer's Broker to register their representation of a potential bidder;
d) The amount of the buyer's premium, if any;
e) The time or manner in which potential bidders may inspect the listed property;
f) Whether or not the seller will accept a purchase offer prior to the scheduled auction; and
g) Any other material rules or procedures for the auction, and;
h) Upon acceptance of any bid that concludes the auction such that no additional bids are accepted, the listing status shall be changed to Pending.

Subsections (b) through (g) above shall not appear in a listing's Public Remarks.

### 7.18.2 New Construction Listings.

a) Any Residential Property listed in the MLS that requires the disclosure of a Final Public Report pursuant to the Subdivided Lands Law prior to a sale of the property, or that requires a new construction building permit, shall be designated a NEW CONSTRUCTION LISTING (NCL). All MLS Rules shall apply to an NCL except as modified as follows:
b) Submitting an NCL shall cause to be exempted from the Mandatory Delivery Rule 7.8 each individual lot within the subdivision covered by the same Final Public Report as the NCL.
c) NCL's may remain in a Coming Soon status until such time as a certificate of occupancy is issued.

Upon final closing of any property subject to the same Final Public Report as the NCL, Listing Broker shall report or input in the MLS as "sold" and report the selling price within 2 days of the final closing date.

**7.19** **No Disclosure of Listing Broker or Total Commission.** Listing Broker may not in any field, media or document inputted into the MLS disclose the Listing Broker's commission or the total amount of commission charged by the Listing Broker to the Seller. Nothing in this rule shall limit the ability of the Listing Broker to report the fact that a Seller has paid an amount either directly to or through the Listing Broker to a Buyer's Broker for a specific property. MLS will not collect the total amount charged or collected by a Buyer Broker but will only collect the amount paid by a Seller to a Buyer's Broker.

**7.20** **Broker Participant or R.E. Subscriber as Principal.** If a Listing Broker, including any Subscriber has any interest in a property, the listing which is disseminated through the MLS shall contain a disclosure of that interest on the MLS.

- 19 -

ES 574                    ES 574                    ES 574

**7.21    Multiple Unit Properties.** All properties which are to be sold or which may be sold separately must be indicated individually in the MLS and will be published separately. When part of a listed property has been sold, the Listing Broker shall input the appropriate changes on the MLS within 2 days.

**7.22    Expiration, Extension, and Renewal of Listings.**

a) Listings shall be changed to the appropriate off-market status on the expiration date specified on the listing unless the listing is extended or renewed by the Listing Broker.

b) The Listing Broker shall obtain written authorization from the seller(s) before filing any extension or renewal of a listing.

c) The Listing Broker may modify the status of an expired listing within seven (7) days of the Expiration date. At any time and for any reason, the MLS has the right to request a copy of the seller's written authorization to extend or renew a listing.

d) The calculation of Days on Market (DOM) is based on the MLS #.  The calculation of Cumulative Days on Market (CDOM) is based on APN # or address and will accumulate until a change of ownership has occurred or the property is not available for sale and no listing agreement is in effect for a period of 90 days or more.

e) At any time and for any reason, the MLS has the right to request a copy of the seller's(s') written authorization to extend or renew a listing.  If a Listing Broker is requested to provide a copy of such authorization and does not do so within 1 day of the request, the listing shall be subject to immediate removal from the MLS.

**7.22.1    Extension for Protected Buyer.** In the event a Listing Broker's listing has Expired or been Canceled, but a commission extension right for a protected buyer has been timely activated in the listing agreement and Listing Broker represents seller in said transaction, Listing Broker may be considered the "listing broker" for MLS reporting of sale so long as satisfactory documentation is presented to MLS.

**7.23    Listings of Participants or Subscribers Suspended, Expelled, or Resigned.**

**7.23.1    Failure to Pay MLS Fees; Resignation**. When a Participant or Subscriber of the MLS is suspended or expelled from the MLS for failure to pay MLS fees or charges, or if the Participant or Subscriber resigns from the MLS, the MLS shall cease to provide services to such Participant or Subscriber, including continued inclusion of listings in the MLS compilation of current listing information. In the event listings are removed from the MLS pursuant to this section, it shall be the sole responsibility of the Participant to notify the sellers(s) that the property is no longer listed in the MLS.

**7.23.2    Violations of MLS Rules**. When a Participant or Subscriber is suspended or expelled from the MLS for a violation of the MLS Rules, the AOR/MLS shall cease to provide MLS services to such Participant or Subscriber except that the listings in the MLS at the time of suspension or expulsion shall, at the suspended or expelled Participant's option, be retained in the MLS compilation of current listing information until sold, withdrawn, or expired, and shall not be renewed or extended by the MLS beyond the termination date of the listing agreement in effect when the expulsion became effective. In the event listings are removed from the MLS pursuant to this section, it

- 20 -

shall be the responsibility of the Participant to notify the seller(s) that the property is no longer listed in the MLS.

**7.24    No Control of Commission Rates or Fees Charged by Participants.** The AOR/MLS shall not fix, control, recommend, suggest, or maintain commission rates or fees for services to be rendered by Participants. Further, the AOR/MLS shall not fix, control, recommend, suggest, or maintain the division of commissions or fees between cooperating Participants or between Participants and non-participants.

**7.25    Dual Rate Commission Arrangements (Listing Broker Advantage).** The existence of a dual commission arrangement shall be disclosed by the Listing Broker by a key, code, or symbol as required by the MLS. A dual rate commission arrangement is one in which the seller agrees to pay Listing Broker one set rate of commission if the Buyer is represented by a Buyer Broker, and a different commission rate if the buyer is unrepresented or if the transaction occurs because of the efforts of the seller instead of the Listing Broker. The Listing Broker shall, in response to inquiries from potential Buyer Brokers, disclose the differential that would result in either a cooperative transaction or, alternatively, in a sale that results through the efforts of the seller(s) or owner. If the Buyer Broker is representing a buyer(s) or lessee(s), the Buyer Broker must then disclose such information to his or her client before the client makes an offer to purchase or lease.

**7.26    Right of Listing Broker and Presentation of Counter-Offers.** The Listing Broker has the right to participate in the presentation of any counter-offer made by the seller(s) or lessor(s). The Listing Broker does not have the right to be present at any discussion or evaluation of a counter-offer by the buyer(s) or lessee(s) (except where the Buyer Broker is a subagent). However, if the buyer(s) or lessee(s) give written instructions to the Buyer Broker that the Listing Broker not be present when a counter-offer is presented, the Listing Broker has the right to a copy of the buyer's(s') or lessee's(s') written instructions.

**7.27    REO Disclosure.** Listing Brokers submitting foreclosure, bank-owned or real estate owned ("REO") listings to the service shall disclose said status upon submission of the listing to the service.

**8.    DOCUMENTATION; PERMISSION; ACCURACY OF INFORMATION.**

**8.1    Listing Agreement and Seller's Permission.** Prior to submitting a listing to the MLS, the Listing Broker shall obtain the written agreement of the seller(s) expressly granting the Listing Broker authority to:

   a)  file the listing with the MLS for publication and dissemination to those authorized by the MLS;
   b)  act as an agent for the seller(s);
   c)  abide by the rules of the MLS;
   d)  provide timely notice of status changes of the listing to the MLS;
   e)  provide sales information, including selling price, to the MLS upon sale of the property for publication and dissemination to those authorized by the MLS; and
   f)  publish sales information after the final closing of a sales transaction in accordance with these MLS rules (See Section 10.1).

- 21 -

### 8.2 Written Documentation.

a) Any Listing Broker filing any property as a listing with the MLS shall have a written listing agreement with all necessary signatures in their possession. Only listings that create an agency relationship between the seller(s) and the Listing Broker are eligible for submission to the MLS. By submitting a listing to the MLS, Listing Broker represent that they have in their possession such written agreements establishing agency and the represented type of listing agreement.

b) The AOR/MLS shall have the right to demand a copy of written documentation to verify the adequacy, and the information reported to the MLS, at any time.

c) The AOR/MLS shall also have the right to demand a copy of any written authorization required under these rules.

d) If the Participant or Subscriber fails to provide documentation requested by the AOR/MLS within 1 day, the AOR/MLS shall have the right to immediately remove the listing from the database.

### 8.3 Accuracy of Information; Responsibility for Accuracy.

By inputting information into the MLS computer database, the Listing Broker represents that the information input is accurate to the best of the Listing Broker's knowledge. The Listing Broker shall use good faith efforts to determine the accuracy of the information and shall not submit or input information which the Listing Broker knows to be inaccurate. Upon receipt of the first publication or electronic transfer by the MLS of such information, the Listing Broker shall make all necessary corrections. The MLS merely publishes the MLS information and has no affirmative responsibility to verify the accuracy of the MLS information. The AOR/MLS, however, reserves the right to require Participants and Subscribers to change their MLS information if the AOR/MLS is made aware of alleged inaccuracies in the MLS information and the AOR/MLS determines that such inaccuracies do in fact exist. The MLS also reserves the right to remove a listing that contains said inaccurate information from the MLS compilation of current listings should Participant or Subscriber refuse or fail to timely correct. A Participant or Subscriber is required to correct inaccurate information within 2 days after being notified of the inaccuracies by the MLS. If a Participant or Subscriber fails to make necessary or required corrections to their MLS information, the Participant and Subscriber shall indemnify and hold harmless the AOR/MLS for any claims, cost, damage, or losses, including reasonable attorney fees and court costs, incurred by the MLS as a result of such failure. The AOR/MLS also reserves the right to remove information and listings from the database when it is clear that inaccurate data has been entered, in addition to disciplining the Participant and Subscriber for violations of the MLS rules. In no event will the AOR/MLS be liable to any Participant, Subscriber, or any other party for any indirect, special, or consequential damages arising out of any information published in the MLS, and all other damages shall be limited to an amount not to exceed the MLS fees paid by the Listing Broker.

### 8.4 Input Defined.

All references or uses of the word "input" shall also include information which is submitted to the MLS for input in the MLS database by the AOR/MLS staff, whether such information was provided to the AOR/MLS staff on a "property data form" or otherwise.

### 8.5 Buyer, Seller, Purchase, and Sale Defined.

All references to the buyer(s) shall also include tenant(s) and lessee(s). All references to the seller(s) shall also include landlord(s) and lessor(s). All references to a purchase shall also include a lease. All references to a sale shall

- 22 -

ES 577                          ES 577                          ES 577

also include a lease.

## 9.    SELLING PROCEDURES.

**9.1    Showings.** Buyer Broker shall follow all showing instructions as set forth in the MLS. Buyer Broker shall only provide access for showing, touring or inspecting a listed property to a client with whom the Buyer Broker has a written agreement that includes the following in a conspicuous location: a) a specific, objectively ascertainable compensation amount or rate, including how any such amount will be determined and the amount of compensation may not be open-ended such as "buyer broker fee shall be whatever amount a seller or listing broker is offering to pay buyer broker or buyer" and b) a term that prohibits Buyer Broker from receiving any fee or compensation that exceeds the amount or rate in the agreement with the buyer, regardless of the source of the payment of the fee and c) a statement that broker fees and commissions are not set by law and are fully negotiable. Nothing in this policy shall impose any restriction or requirement upon the Listing Broker.

**9.2    Disclosing the Existence of Offers.** Listing Brokers, in response to inquiries from buyers or Buyer Brokers, shall, with the seller's approval, disclose the existence of offers on the property. Where disclosure is authorized, the Listing Broker shall also disclose whether offers were obtained by the listing licensee, by another licensee in the listing firm, or by a Buyer Broker only if asked.

**9.3    Availability to Show or Inspect.** Listing Brokers shall not misrepresent the availability of access to show or inspect a listed property. For any property in which Listing Broker selected a status of Coming Soon or Hold, Listing Broker represents that the property shall have no showings or tours, whether conducted by Listing Broker or otherwise, until such time as the Property is placed in the Active or Active Under Contract status.

**9.4    Presentation of Offers**. The Listing Broker must make arrangements to present the offer as soon as possible or give the Buyer Broker a satisfactory reason for not doing so. If a seller(s)/landlord(s) has directed that offers from Buyer Brokers are not to be presented for any length of time, seller's direction authorizing such arrangement shall be in writing and Listing Broker shall provide clear and accurate notice of the date of presentation of offers to Participants and Subscribers in the MLS. In the event the Listing Broker will not be participating in the presentation of offers, the Listing Broker shall clearly indicate this fact in the listing information published by the MLS.

**9.5    Submission of Offers and Counter-Offers.** The Listing Broker shall submit to the seller(s) all offers and counter-offers until closing unless precluded by law, governmental rule, or expressly instructed in writing by the seller(s)/landlord(s) otherwise. If requested by Buyer Broker in writing, Listing Broker shall provide Buyer Broker with Listing Broker's written verification that Buyer Broker's offer was presented (or a written notification that the seller has waived the obligation to have the offer presented), said verification to be provided to Buyer Broker within 3 days of Buyer Broker's written request. The Buyer Broker acting for a buyer(s)/tenant(s), shall submit to buyer/tenant all offers and counter- offers until acceptance unless precluded by law, governmental rule, or expressly instructed by the buyer(s)/tenant(s) otherwise.

ES 578            ES 578            ES 578

9.6     **Right of Buyer Broker in Presentation of Offer.** The Buyer Broker has the right to participate in the presentation of any offer to purchase he or she secures. The Buyer Broker does not have the right to be present at any discussion or evaluation of that offer by the seller(s) and the Listing Broker. However, if the seller(s) give written instructions to the Listing Broker requesting that the Buyer Broker not be present when an offer the Buyer Broker secured is presented, the Buyer Broker shall convey the offer to the Listing Broker for presentation. In such event, the Buyer Broker shall have the right to receive a copy of the seller's(s') written instructions from the Listing Broker. Nothing in this section diminishes or restricts the Listing Broker's right to control the establishment of appointments for offer presentations.

9.7     **Removed.**

9.8     **Listing Broker Approval Showings and Negotiations.** Appointments for showings and negotiations with the seller(s) for the purchase of listed property filed with the MLS shall be conducted through the Listing Broker except under the following circumstances:

   a)   The Listing Broker gives the Buyer Broker specific authority to show and/or negotiate directly with the seller(s), or;
   b)   After reasonable effort and no less than 24 hours, the Buyer Broker cannot contact the Listing Broker or his or her representative. However, the Listing Broker, at his or her option, may preclude such direct negotiations by the Buyer Broker by giving notice to all Participants through the MLS. In the event all showings and negotiations will be conducted solely by the seller(s), the Listing Broker shall clearly set forth such fact in the listing information published by the MLS.

9.9     **Buyer Broker as a Buyer.** If a Buyer Broker wishes to acquire an interest in property listed with a Listing Broker, such contemplated interest shall be disclosed to the Listing Broker prior to the time an offer to purchase is submitted to the Listing Broker.

9.10    **Physical Presence of Participant or Subscriber.** A Participant or Subscriber must be physically present on the property at all times when providing access to a listed property unless the Seller has consented otherwise.

10.   **REPORTING SALES AND OTHER INFORMATION TO THE MLS.**

10.1    **Statuses.** The following statuses shall apply to listings on the MLS and Listing Broker shall place a listing in the correct status:

Coming Soon:  A valid listing contract exists, and no offer has been accepted. The Listing Broker is in possession of a seller signed instruction to submit the listing as "Coming Soon". Marketing and Advertising as defined in Rule 7.9 is permitted and shall include language that the property is "Coming Soon" and shall include the date the property will become Active. The property is not available for showings consistent with Rule 9.3.

Active:  A valid listing contract exists, and no offer (with or without contingencies) has been accepted. Marketing and Advertising as defined in Rule 7.9 is permitted.

- 24 -

ES 579                          ES 579                          ES 579

Active Under Contract: Offer accepted and either: 1) seller requests that property remain in an On-Market status and is looking for back-up offers, or; 2) the sale is subject to court or other third -party approval. Marketing and Advertising as defined in Rule 7.9 is permitted.

Hold: A valid listing contract exists, and no offer has been accepted. The Listing Broker is in possession of a seller written instruction to submit the listing as "Hold" This instruction may be due to various reasons such as multiple quality offers already received, repairs, illness, guests, etc. Marketing and Advertising as defined in Rule 7.9 is permitted. The property is not available for showings consistent with Rule 9.3.

Withdrawn: A valid listing contract is in effect. However, the property is no longer being marketed and as such no Marketing or Advertising shall occur consistent with Rule 7.9.

Pending: The seller has accepted an offer and is not soliciting offers through the MLS. Any Marketing or Advertising of the property while in Pending status will not be considered a violation of Rule 7.9.

Canceled: The listing agreement has been canceled.

Expired: The listing agreement has expired. The time frame of the existing listing contract has run out.

Sold: Escrow has closed.

Leased: The property has been leased.

**10.2    Reporting of Sales.**

a) Listings with accepted offers shall be reported to the MLS or input into the MLS database as "pending" or "active under contract" within 2 days of the acceptance by the Listing Broker unless the negotiations were carried on under Section 9.1 (a) or (b), in which case, the Buyer Broker shall notify the Listing Broker of the "pending" or "active under contract" status within 2 business days after acceptance, whereby the Listing Broker shall then report or input the status change to the MLS within 2 days of receiving notice from the Buyer Broker.

b) The listing shall be published on the MLS as "pending" or "active under contract" with no price or terms prior to the final closing.

c) Upon final closing, the Listing Broker shall report or input the listing in the MLS as "sold" and report the selling price within 2 days of the final closing date unless the negotiations were carried on under Section 9.1 (a) or (b), in which case, the Buyer Broker shall notify the Listing Broker of the "sold" status and selling price within 2 days after the final closing date, whereby the Listing Broker shall then report or input the status change and selling price to the MLS within 2 days of receiving notice from the Buyer Broker.

d) Listings which were not input into the MLS for cooperation as a result of the seller's instructions may be input into the MLS "sold" data at the Listing Broker's option. However, listings which were input into the MLS but subsequently withdrawn must still be reported under this section if the seller is represented by the Listing Broker when it closes.

- 25 -

e) The MLS may accept the reporting of sales information for comparable purposes about other properties which were not otherwise eligible for input into the MLS but are located in the MLS's service area and "sold" by a Participant who represented a party in the transaction (i.e. broker who represented the seller or broker who represented the buyer), as long as such reporting is authorized by a party in the transaction to the broker who represented it, (if requested by the MLS documentation must be presented to MLS within 2 days), and the circumstances of the representation are disclosed on the Service by the reporting participant or subscriber. Any submission of sales information for comparable purposes must occur within 30 days after close of escrow.

**10.3 Removal of Listings for Refusal/Failure to Timely Report Status Changes.** The AOR/MLS is authorized to remove any listing from the MLS compilation of current listings where the Listing Broker has refused or failed to timely report status changes. Prior to the removal of any listing from the MLS, the Listing Broker shall be advised of the intended removal so the Listing Broker can advise his or her client(s).

**10.4 Reporting Cancellation of Pending Sale.** The Listing Broker shall report to the MLS within 2 days the cancellation of any pending sale and the listing shall be reinstated immediately so long as there is still a valid listing.

**10.5 Refusal to Sell.** If the seller(s) of any listed property filed with the MLS refuses to accept a written offer satisfying the terms and conditions stated in the listing, such fact shall be transmitted immediately to the MLS and to all Participants.

## 11. OWNERSHIP OF MULTIPLE LISTING SERVICE COMPILATIONS AND COPYRIGHTS.

**11.1 MLS Compilation Defined.** The term "MLS compilation" includes, but is not limited to, the MLS computer database, all printouts of data from the MLS computer database, and all MLS publications.

**11.2 Active Listing MLS Compilation Defined.** "Active listing MLS compilation" shall mean that portion of the MLS compilation which includes listings currently for sale and all other indexes and other information relating to the current listing information.

**11.3 Comparable Data MLS Compilation Defined.** "Comparable Data MLS compilation" shall mean that portion of the MLS compilation that includes the off-market data, sold and appraisal information regarding properties that are not currently for sale, and all indexes and information relating to the sold information compilation.

**11.4 Authority to Put Listings in MLS Compilation.** By submitting any property listing content (e.g., photographs, images, graphics, audio and video recordings, virtual tours, drawings, renderings or any other representation, descriptions, remarks, narratives, pricing information, and other details or information related to listed property) to the MLS or inputting listing information into the MLS compilation, Participants and Subscribers represent and warrant that they have been authorized to grant license and also thereby do grant authority for and license the MLS to include the property listing content in its copyrighted MLS compilation. By submitting any property listing content to the MLS, Participants and Subscribers represent and warrant that they have been authorized to report information about the sales, price and

- 26 -

ES 581                          ES 581                          ES 581

terms of a listing, have authority to grant and also thereby do grant authority for the MLS to include the sold information in its copyrighted MLS compilation.

11.5    **Media on the MLS**. Media is defined as any depiction or expression of works including, but not limited to, photographs, images, drawings, renderings, audio, video, and virtual tours. The Participant/Subscriber submitting Media to the MLS grants CRMLS an irrevocable, unrestricted, transferable, perpetual, royalty-free, non-exclusive license (with right to sublicense) to use, store, reproduce, compile, display and distribute the media as part of its compilation. Submitted Media is any content placed in a listing, or content that is accessible by external links placed in a listing. Media submitted to the MLS is subject to the following:

a)    **Content Restrictions.** Content of Media submitted to the MLS shall be limited to visual representations of the property, anything included in the sale of the property, and/or any amenities or features related to the property. Inclusion of text or written communication, content that may be determined to create a safety hazard or concern, or content that is otherwise deemed to be inappropriate by MLS staff is prohibited. MLS staff shall have the right to remove from the MLS any Media that is in violation of any MLS rule, including but not limited to this section.

b)    **Prior Authorization.** By submitting any media to the MLS, the Participant and Subscriber represent and warrant that they own the right to reproduce and display the media or they have procured such rights and all necessary licenses from appropriate parties. Rights that have been obtained by the Participant/Subscriber from another party shall be fully set forth in a writing that must be in place prior to the submission of the subject Media to the MLS.

c)    **Truthful Representation.** Media submitted to the MLS must be a truthful representation of the property in all respects, including but not limited to the interiors of and views from the property and anything included in the sale of the property. Photos depicting views that are not of the property or from the property, or that are depicting HOA amenities must be captioned as such.

d)    **Subsequent Use of Media.** Use of Media that is included in the MLS Compilation by any subsequent Participant/Subscriber requires prior written authorization from the Participant/Subscriber who previously submitted the Media and any party with the legal right to grant such authorization. Notwithstanding the foregoing, subsequent use of Media which results in double watermarks appearing in the Media is prohibited.

e)    **Branded Media.** Branding of any Media submitted to the MLS is prohibited. Branding is defined as the inclusion of any content in media that can be used to identify any person or entity including but not limited to the listing broker or agent or any franchise or company the broker or agent are affiliated with, contact information for the broker or agent et al, or any other material that is or may be associated with the broker or agent et al. Media content that may be considered Branding includes, but is not limited to: signs, contact information, identifiable persons, logos, slogans, catchphrases, external links or references, team names, or any other items related to the broker or agent et al.

**11.5.1  Mandatory submission Photograph/Rendering**

a)    At least one photograph or rendering accurately depicting a substantial portion of the exterior of the subject property must be submitted to the MLS within two (2) days of entry of listing and must remain in the listing at all times for all statuses.

- 27 -

      b) Exemptions
        i. Business Opportunity entries are exempted from 11.5.1.
        ii. If applicable, a seller's written instruction to the listing broker expressly directing that photographs/renderings of the subject property not appear in the MLS compilation must be provided to the MLS/AOR within two (2) days of listing entry.
      c) The MLS/AOR reserves the right, after notice has been given to the Participant and Subscriber, to remove any listing from the database for failing to comply with this section.

**11.5.2 Removal of Media.** The MLS/AOR reserves the right, without notice, to remove any Media that does not comply with the MLS Rules and Policies.

**11.6**    **Copyright Ownership.** Notwithstanding 11.5, the MLS may brand any media submitted as part of a listing entry to protect its rights under this section. All right, title, and interest in each copy of every MLS compilation created and copyrighted by the MLS, and in the copyrights therein, shall at all times remain vested in the MLS. The MLS shall have the right to license such compilations or portions thereof to any entity pursuant to terms agreed upon by the Board of Directors. All right, title, and interest in each copy of every compilation created by any technology solution aggregator, shall, pursuant to agreement with the MLS, at all times remain vested in the aggregator.

**11.7**    **Leasing of MLS Compilations.** Each Participant shall be entitled to lease from the MLS the number of copies of each MLS compilation of active listing information sufficient to provide the Participant and Subscriber with one copy of such MLS compilation. Participants and Subscribers shall acquire by such lease only the right to use the MLS compilations in accordance with these rules. Clerical Users may have access to the information solely under the direction and supervision of the Participant or Subscriber. Clerical Users may not provide any MLS compilation or information to persons other than the Participant or the Subscriber under whom the Clerical User is registered.

**11.8**    **Removal of Historical Records.** The removal of history information from the MLS compilation is forbidden. No exceptions are to be made at any time.

**11.9**    **Removal of and Responsibility for Content**. The MLS has the right, but not the obligation, to reject, pull down, restrict publication of, access to or availability of content the MLS in good faith considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, unlawful or otherwise objectionable. Participants and Subscribers remain solely responsible and liable for the content they provide. In no case will any monitoring or removal of Participants' or Subscribers' content by the MLS make it responsible or liable for such content.

**11.10**    **Indemnification; Limitation of Liability**. Participant and Subscriber shall defend, indemnify and hold harmless the service and every other Participant and Subscriber for from and against any liability, claims, costs, damage or losses, including reasonable attorney fees and court costs, resulting from or arising out of any content Participant and/or Subscriber submit to or in any way wrongfully reproduce from the Service. In no event will the MLS be liable to any MLS Participant, Subscriber or any other party for any indirect, special or

- 28 -

consequential damages arising out of any information published in the MLS and all other damages shall be limited to an amount not to exceed the MLS fees paid by the Listing Broker.

**11.11 Pursuing Complaints of Unauthorized Use of Listing Content.** MLS Participants and Subscribers may not take legal action against another Participant or Subscriber for alleged rules violation(s) unless the complaining Participant or Subscriber has first exhausted the remedies provided in these rules.

    a) **Notice.** Any Participant or Subscriber who believes another Participant or Subscriber has engaged in the unauthorized use or display of listing content, including photographs, images, audio or video recordings, and virtual tours, shall send notice of such alleged unauthorized use to the MLS. Such notice shall be in writing, specifically identify the allegedly unauthorized content, and be delivered to the MLS not more than sixty (60) days after the alleged misuse was first identified. No Participant or Subscriber may pursue action over the alleged unauthorized use and display of listing content in a court of law without first completing the notice and response procedures outlined in this section of the MLS rules.

    b) **Response.** Upon receiving a notice, the applicable Committee/Board of Directors will send the notice to the Participant or Subscriber who is accused of unauthorized use. Within ten (10) days from receipt, the Participant or Subscriber must either: 1) remove the allegedly unauthorized content, or 2) provide proof to the Committee/Board of Directors that the use is authorized. Any proof submitted will be considered by the Committee/Board of Directors, and a decision of whether it establishes authority to use the listing content will be made within thirty (30) days.

    c) **Determination.** If the Committee/Board of Directors determines that the use of the content was unauthorized, the Committee/Board of Directors may issue sanctions pursuant to the MLS rules, including a request to remove and/or stop the use of the unauthorized content within ten (10) days after transmittal of the decision. If the unauthorized use stems from a violation of the MLS rules, that too will be considered at the time of establishing an appropriate sanction.

    d) **Court Action If Uncured.** If after ten (10) days following transmittal of the Committee's/Board of Director's determination the alleged violation remains uncured (i.e., the content is not removed or the rules violation remains uncured), then the complaining party may seek action through a court of law.

**11.12 Participant Access and Entitlement to Their Own Listing Information; Data Portability.** The Service must, upon request, promptly provide a Participant (or the Participant's designee) a data feed containing, at minimum, all active MLS listing content input into the MLS by or on behalf of the Participant and all the Participant's off-market listing content available in the MLS system. The delivery charges for the Participant's listing content shall be reasonably related to the actual costs incurred by the MLS. The data feed must be in compliance with the prevailing RESO (Real Estate Standards Organization) standards required by NAR MLS Policy. The Service will not limit the use of the Participant's listing content by the Participant or Participant's designee.

ES 584           ES 584           ES 584

## 12.    PROHIBITIONS AND REQUIREMENTS.

**12.1    Notification of California Department of Real Estate (DRE) or California Bureau of Real Estate Appraisers (BREA) Action.** Participants and Subscribers are required to notify the AOR/MLS within 24 hours of any final action taken by the DRE or the Bureau of Real Estate Appraisers (BREA) against the Participant, Subscriber, or any licensee affiliated with the Participant or Subscriber, including, but not limited to, any final decisions restricting, suspending, or revoking a real estate license or Appraiser's certification or license of a Participant, the Participant's firm or corporation under which the Participant or Subscriber acts, or any licensee affiliated with the Participant or the Participant's firm or licensee or Appraiser who was affiliated with the Participant or Participant's firm at the time of the underlying act.

**12.2    Violations of the Law.** If a Participant, Subscriber, Appraiser, or a licensee affiliated with a Participant or Subscriber commits a felony or a crime involving moral turpitude or violates the Real Estate Law or the laws relating to Appraisers, the Participant and Subscriber shall be in violation of this section. However, a Participant or Subscriber shall not be found to have violated this section unless the Participant, Subscriber, Appraiser, or salesperson licensed to the Participant has been convicted, adjudged, or otherwise recorded as guilty by a final judgment of any court of competent jurisdiction of (1) a felony, or (2) a crime involving moral turpitude, or (3) on a determination by any court of competent jurisdiction, or official of the State of California authorized to make the determination, that the Participant or Subscriber violated a provision of the California Real Estate Law or a Regulation of the Real Estate Commissioner or law relating to Appraisers.

**12.3    Supervision of R.E. Licensees and Appraisers.** In addition to the notification requirements of Section 12.1, a Participant may not allow any licensee, under the Participant's license, whose license has been revoked, suspended or restricted by the DRE to use the MLS in any manner while the DRE discipline is in effect except that the licensee may use the MLS under a restricted license providing such use is consistent with and does not violate such license restrictions.

**12.4    Solicitation of Listing Filed With the MLS.** Participants and Subscribers shall not solicit a listing filed with the MLS unless such solicitation is consistent with Article 16 of the N.A.R. Code of Ethics, its Standards of Practice, and its Case Interpretations. The purpose of this section is to encourage sellers to permit their properties to be filed with the MLS by protecting them from being solicited through unwanted phone calls, visits, and communications, prior to expiration of the listing, by Brokers and salespersons seeking the listing upon its expiration. This section is also intended to encourage Brokers to participate in the MLS by assuring them that other Participants and Subscribers will not attempt to persuade the seller(s) to breach the listing agreement or to interfere with the Listing Broker's attempts to market the property. This section does not preclude solicitation of listings under circumstances otherwise permitted under Article 16 of the N.A.R. Code of Ethics, its Standards of Practice, and its Case Interpretations.

**12.5    Misuse of Public Remarks.** Information in the public remarks shall only relate to the description, features and condition of the property and related amenities. The following types of information may not be included in the public remarks:

- 30 -

ES 585                              ES 585                              ES 585

- Contact information of any kind;
- Branded content (as defined in Rule 11.5(e));
- Links to external websites of any kind, including but not limited to, agent or broker sites, video tours, virtual showing or open house tools, vendor sites, or offer submission/application/auction platforms;
- Showing instructions or open house information;
- Information regarding lockboxes, alarms, gate or other security codes, or occupancy status of the property (a statement that the property shall be delivered vacant is not a violation of this section).
- Information deemed to create an unsafe or unsecure circumstance related to the listed property, property occupants, real estate practitioners, or the public;
- Information directed toward agents or brokers, including but not limited to, references to compensation, commission sharing or bonuses;
- Solicitations or invitations for the public to contact the listing agent or broker or any third parties affiliated with the listing agent or broker, and;
- Content that violates Fair Housing law or that is deemed discriminatory, illegal, defamatory, offensive, or otherwise inappropriate. CRMLS reserves the right to remove and issue citations for any inappropriate content.

By submitting remarks to the MLS, Participant and/or Subscriber represents and warrants he or she has the authority to grant, and hereby grants the MLS and the other Participants and Subscribers the right to reproduce and display the remarks in accordance with these rules. Copying of remarks by a subsequent listing agent for use in his or her own listing requires prior written authorization from the originating listing agent or other appropriate party with the legal right to reproduce and display such remarks.

**12.5.1 Misuse of Other Remarks and Media.** Participants and Subscribers may not use any remarks or other media fields in a property data profile sheet or listing submitted to the MLS or inputted directly into the MLS database for purposes of disparaging other real estate agents or conveying information about other offices or for conveying any other information that does not directly relate to the marketing of the listing.

**12.6    "For Sale" Signs.** Only the "For Sale" signs of the Listing Broker may be placed on the property.

**12.7    "Sold" Signs and Use of the Term "Sold."** Only Real Estate Brokers or R.E. Subscribers who participated in the transaction as the Listing Broker or Buyer Broker may claim to have "sold" the property. Prior to closing, a Buyer Broker may post a "sold" sign on a property only with the consent of the Listing Broker. This section does not, however, prohibit any Broker from advertising the addresses and prices of the properties that have sold in a neighborhood after the information regarding the properties has been published as long as the advertisement does not imply the agent was involved in the transaction unless such is the case and as long as the advertisement otherwise presents a `true picture' as is meant under Article 12 of the N.A.R. Code of Ethics, its Standards of Practice, and its Case Interpretations.

**12.8    Advertising of Listing Filed With the MLS.** A listing shall not be advertised in any media or used for any advertising purposes, including the Internet, by any Participant or Subscriber

ES 586                          ES 586                          ES 586

other than the Listing Broker, without the prior consent of the Listing Broker except as provided in Section 19.2 relating to display of listings on the Internet.

**12.8.1 Advertising of Listing in Printed Neighborhood Market Report**. Subject to the conditions set forth in (a) through (c) below, as well as throughout these Rules, Participants and Subscribers may include the listings of others in their printed "Neighborhood Market Reports." The "Neighborhood Market Report" is defined as an advertising and/or information sheet (typically appearing in the form of a postcard, flier or newsletter) compiled by and/or for use by a licensee which sets forth a list of home activity in a particular neighborhood area. Advertising appearing in newspapers, magazines or other classified forms is not included in the definition of "Neighborhood Market Report" and is not authorized by this Rule 12.8.1.

a) **Consent**. The listing brokers' consent for such advertising is presumed, in satisfaction of Rule 12.8, unless a listing broker affirmatively notifies the MLS that the listing broker refuses to permit others to advertise his listing in the "Neighborhood Market Report" (i.e. "opts-out") either on a blanket or listing by listing basis. Listing brokers that refuse to permit other Broker Participants or Subscribers to advertise their listings on a blanket basis may not display the listings of the other brokers' listings in their own "Neighborhood Market Reports". Even where Listing Brokers have given blanket authority for other Broker Participants and Subscribers to advertise their listings in the "Neighborhood Market Report", such consent may be withdrawn on a listing-by-listing basis where the seller has prohibited it. Participants and Subscribers are not permitted to include listings in their Neighborhood Market Report from which listing broker has opted out and will be responsible for verifying that they have permission to advertise all listings contained in their Neighborhood Market Reports.

b) **Listing Attribution**. All On-Market listings in the "Neighborhood Market Report" must identify the name of the listing firm(s) and the name of the listing agent(s) in a manner designed to easily identify such listing firm(s) or agent(s). Such identification shall be in a reasonably prominent location and in a readily visible color and typeface not smaller than the median used in the display of listing data.

c) **Allowable Listing Content**. Broker Participants and Subscribers may include only those portions of the MLS compilation consisting of the following: property address (and whether attached or detached), status, price, , number of bedrooms, number of bathrooms, number of garages (and whether attached or detached), square footage, lot size, year built, tract or development name, and if there's a pool. Display of other fields, as well as confidential information and photographs, is prohibited.

**12.9    Limitations on Use of MLS Information in Advertising.** Except as provided in Sections 12.7, 12.8, 12.11 and 12.15, truthful use of information from the MLS compilation of current listing information, from the MLS' "statistical report," or from any "sold" or "comparable" report of the MLS for public mass media advertising by an MLS Participant or Subscriber or in other public representations for purposes of demonstrating market share is not prohibited. However, any print or non-print forms of advertising or other forms of public representations

ES 587                         ES 587                         ES 587

must clearly demonstrate the period of time over which such claims are based and must include the following, or substantially similar, notice in a manner readily visible to consumers but not less than 7pt type:

> *"Based on information from California Regional Multiple Listing Service, Inc. as of [date the AOR/MLS data was obtained] and /or other sources. All data, including all measurements and calculations of area, is obtained from various sources and has not been, and will not be, verified by broker or MLS. All information should be independently reviewed and verified for accuracy. Properties may or may not be listed by the office/agent presenting the information".*

**12.10  False or Misleading Advertising and Representations; True Picture Standard of Conduct.** Participants and Subscribers may not engage in false or misleading advertising, including, but not limited to, advertisements or representations regarding the Participant's or Subscriber's relationship to the MLS, about the MLS itself, or about any property listed with the MLS. MLS Participants and Subscribers shall present a true picture in their advertising and representations to the public, including internet content, images and the URLs and domain names they use, and Participants and Subscribers may not:

**12.10.1** Engage in deceptive or unauthorized framing of real estate brokerage websites;

**12.10.2** Manipulate (e.g., presenting content developed by others) listing content and other content in any way that produces a deceptive or misleading result;

**12.10.3** Deceptively use metatags, keywords or other devices/methods to direct, drive or divert Internet traffic;

**12.10.4** Present content developed by others without either attribution or without permission, or;

**12.10.5** Otherwise mislead consumers, including use of misleading images.

**12.11  Use of MLS Information.** In recognition that the purpose of the MLS is to operate a broker cooperative and to market properties for cooperation with other Broker Participants and R.E. Subscribers for the sole purpose of selling the property, and that sellers of properties filed with the MLS have not given permission to disseminate the information for any other purpose, Participants and Subscribers are expressly prohibited from using MLS information for any purpose other than to market property to bona fide prospective buyers or to support market evaluations or appraisals as specifically allowed by Sections 12.14, 12.15 and 19.2. MLS information may also be used to develop Statistics, Market Condition Reports, and Broker or Agent Metrics. Any use of MLS information inconsistent with these sections is expressly prohibited. Nothing in this section, however, shall limit the MLS from entering into licensing agreements with MLS Participants and Subscribers or other third parties for use of the MLS information.

**12.12  Confidentiality of MLS Information.** Any information provided by the MLS to the Participants and Subscribers shall be considered and treated as confidential by Participants and Subscribers and shall be for the exclusive use of the Participants and Subscribers for

ES 588                              ES 588                              ES 588

purposes described in Sections 2, 12.7, 12.11, 12.14, 12.15, 19.2 and this section. Participants and Subscribers shall at all times maintain control over and responsibility for each copy of any MLS compilation leased to them by the MLS and shall not distribute any such copies to persons other than Participants and Subscribers. Participants and Subscribers are responsible for the security of their pass codes and shall not give or allow use of or make available their pass codes to any person. Participants and Subscribers may reproduce or display the information as provided in these rules.

**12.12.1 Clerical Users.** Clerical Users may have access to MLS information solely under the direction and supervision of the Participant or Subscriber. Clerical Users are expressly prohibited from displaying or distributing MLS information to anyone other than the Participant or Subscriber under whom they are registered. Access by Clerical Users to the database is solely for clerical and administrative functions for the Participant or Subscriber under whom the Clerical User is registered.

**12.13  Access to Comparable and Statistical Information.** AOR/MLS members who are actively engaged in real estate brokerage, management, mortgage financing, appraising, land development, or building, but who do not participate in the MLS, are nonetheless entitled to receive, by purchase or lease, all information other than current listing information that is generated wholly or in part by the MLS, including "comparable" information, "sold" information, and statistical reports. This information is provided for the exclusive use of AOR/MLS members and individuals affiliated with AOR/MLS members who are also engaged in the real estate business and may not be transmitted, retransmitted, or provided in any manner to any unauthorized individual, office, or firm except as otherwise specified in these rules.

**12.14  Display.** Subject to Sections 12.15 and 19.2, Broker Participants and R.E. Subscribers shall be permitted to display the MLS compilation in either electronic or printed format to specifically identify and bona fide prospective buyers only in conjunction with their ordinary business activities of attempting to locate ready, willing, and able buyers for the properties described in said MLS compilation. Broker Participants and R.E. Subscribers shall be permitted to display the MLS compilation in either electronic or printed format to specifically identified and bona fide sellers or prospective sellers only in conjunction with their ordinary business activities in listing properties. Appraiser Participants and Appraiser Subscribers shall be permitted to display the MLS compilation to the person requesting the appraisal only in conjunction with their ordinary business activities of producing a written appraisal. Such displays under this section shall be only in the immediate presence of the MLS Participant or Subscriber.

**12.15  Reproduction.** "Reproduction" shall include, but not be limited to, making photocopies, computer printouts, electronic transfers (including email), or downloading of MLS data or compilations. Participants and Subscribers or their affiliated licensees shall not reproduce any MLS compilation or any portion thereof except as provided in Section 19.2 and in the following limited circumstances:

**12.15.1 Copies to Prospective Buyers**. Broker Participants and R.E. Subscribers may reproduce from the MLS compilation, and distribute to prospective real estate buyers, copies of those portions of the MLS compilation consisting only of a description of

- 34 -

the property, including the address, features, financing, and price, as well as photographic images and recordings of the property.

**12.15.2 Information Reproduced**. Unless the Participant or Subscriber obtains prior written consent from the Listing Broker, the information reproduced pursuant to this section shall not include the following:

  a) Property owner's name, phone number, and address (if different than the listed property);
  b) Instructions or remarks intended for Buyer Brokers, including, but not limited to, showing instructions or security references (ex: lock box, burglar alarm, or security system, vacancies) regarding the listed property;
  c) Type of listing; and.
  d) Other information which goes beyond a description of the property.

**12.15.3  Copies for Appraisals.** Participants and Subscribers may reproduce from the MLS compilation and attach to an appraisal as supporting documentation copies of those portions of the MLS compilation consisting only of such information on properties necessary to support a written appraisal or estimate of value on a particular property.

**12.15.4  Downloading into Computers.** Participants and subscribers may download MLS information into a computer or computer system as long as:

  a) Access to the computer or computer system receiving the information is strictly limited to authorized Participants, Subscribers, and Clerical Users as defined in these rules; and
  b) The information is only retransmitted to the Participants, Subscribers, and Clerical Users authorized to access the computer or computer system by these rules; and
  c) The information is not reformatted or used to create another product except as may be used by the Participant who downloaded the data and such use strictly complies with Sections 12.7, 12.11, 12.15 and 19.2.

**12.15.5  Sold Information.** Individuals legitimately in possession of current listing information, "sold" information, "comparable" or statistical information may utilize such information to support an estimate of value on a particular property for a particular client. However, only such information that the MLS has deemed to be non-confidential and necessary to support the estimate of value may be reproduced and attached to the report as supporting documentation. Any other use of such information is unauthorized and prohibited by these rules with the exception of usage as defined under Section 19.2.

**12.16  RELOCATED.** Refer to Section 19.2.

**12.17  Applicability of Rules to MLS.** These Rules are binding on the MLS Participants and Subscribers. Nothing in these Rules shall limit the right of the MLS to enter into licensing agreements with third parties for use of the MLS compilations or any portion thereof in accordance with terms approved by the Association or MLS Board of Directors.

- 35 -

**12.18  Listing Broker's Right to Opt Out of Internet Advertising of MLS Information.** If the MLS advertises MLS information on the Internet or licenses MLS information for advertising on the Internet, the Listing Broker shall have the right to opt out of such advertising in accordance with the MLS's procedures for opting out. The Listing Broker shall have the right to refuse to have listings displayed on a blanket basis or on a listing- by-listing basis in accordance with Section 19.2 by affirmatively notifying the AOR/MLS in accordance with the MLS procedures for opting out.  Notwithstanding anything in these Rules to the contrary, the AOR/MLS Board of Directors reserve the right to determine whether to provide Internet advertising services and whether such services are to be made available to non-REALTOR® members.

**12.19  Website Name and Status Disclosure.** MLS Participants' firm websites shall disclose the firm's name and state(s) of licensure in a reasonable and readily apparent manner. Websites of Subscribers affiliated with a Participant's firm shall disclose the firm's name and the Subscriber's state(s) of licensure in a reasonable and readily apparent manner.

**12.20  Use of the Terms MLS and Multiple Listing Services.** No MLS Participant or Subscriber shall, through the name of their firm, their URLs, their e-mail addresses, their website addresses, or in any other way represent, suggest, or imply that the individual or firm is an MLS, or that they operate an MLS. Participants and Subscribers shall not represent, suggest, or imply that consumers or others have direct access to MLS databases, or that consumers or others are able to search MLS databases available only to Participants and Subscribers. This does not prohibit Participants and Subscribers from representing that any information they are authorized under MLS rules to provide to clients or customers is available on their websites or otherwise.

**12.21  Participant and Subscriber Standards of Conduct.** The services which MLS Participants provide to their clients and customers shall conform to the standards of practice and competence which are reasonably expected in the specific real estate disciplines in which they engage; specifically, residential real estate brokerage, real property management, commercial and industrial real estate brokerage, real estate appraisal, real estate counseling, real estate syndication, real estate auction, and international real estate.
MLS participants shall not undertake to provide specialized professional services concerning a type of property or service that is outside their field of competence unless they engage the assistance of one who is competent on such types of property or service, or unless the facts are fully disclosed to the client. Any persons engaged to provide such assistance shall be so identified to the client and their contribution to the assignment should be set forth.

**12.22  Required Email Address.** Every MLS Participant/Subscriber shall be required to maintain on file with the AOR/MLS a current, accurate, and active email address at which they may be contacted.

**12.23  Definition of Calendar Days/Business Days.** For purposes of this Ruleset: All references to Days shall mean Calendar Days, which is defined as any day Monday through Sunday, excluding holidays. Where the term Business Days is used, the term is defined as any day Monday through Friday, excluding holidays.

- 36 -

## 13.    LOCKBOXES.

13.1    **Eligibility for Lockboxes.** MLS Participants and Subscribers are eligible for lockbox privileges if they otherwise qualify under this section. Clerical Users are not eligible for lockbox privileges. MLS Participants and Subscribers shall be eligible to hold a lockbox key provided:

   a)   The key holder signs a lease agreement with the lockbox provider.
   b)   The Participant to which the key holder is licensed cosigns the lease agreement with the lockbox provider.
   c)   The key holder continues to comply with all MLS rules relating to lockbox keys.
   d)   The key holder and Participant to whom the key holder is licensed remain eligible for MLS services.

13.2    **Key Use and Service.** Keys may not be used under any circumstances by anyone other than the key holder, including, but not limiting to, lending, borrowing, or sharing keys with others. Access codes may not be provided to third-parties without the consent of the seller. The AOR/MLS is not obligated to provide service on keys or lockboxes to an individual who is not the registered lessee or owner of the component. The key will only be used for the purpose of facilitating the sale/lease of a property.

13.3    **Accountability.** Key holders must account for keys upon request by the AOR/MLS. Key holders who cease to participate or subscribe to the MLS shall return all keys in their possession to the MLS.

13.4    **Deemed Unaccountable.** Keys shall be deemed unaccounted for if a key holder refuses or is unable to demonstrate that the key is within the key holder's physical control.

13.5    **Written Authority.** Participants and Subscribers shall not place a lockbox on a property without written authority from the seller(s) and occupant if other than the seller(s). A lockbox shall be removed from a listed property within 1 day after the close of escrow or upon expiration/cancellation of the listing (unless written agreement to the contrary is obtained from all parties). Inclusion in MLS compilations cannot be required as a condition of placing lockboxes on listed property.

13.6    **Lockbox Requirements.** If any lockbox or other device giving access to an On- Market listed property for Participants, Subscribers, and/or real estate professionals is authorized by the seller and/or occupant and is placed on or present on property listed through the MLS, such lockbox or device must be one that is approved by the MLS where the listing has been submitted. The authorized lockboxes sold by, leased by or otherwise offered through the local Association or MLS where the listing is submitted have been approved by the MLS. Unless expressly indicated otherwise by the MLS, for any other lockbox or device to be considered "MLS-approved," use of it must provide reasonable, timely access to listed property such that (1) it allows all Participants and Subscribers timely access to listed property by reliance solely on data submitted to and residing on the MLS; (2) complete, accurate and stand-alone instructions are provided for accessing the listed property in the appropriate agent section on the MLS; and (3) it ensures that the lockbox or device will provide reasonable access to listed property with any information, code or key needed to access the contents of the lockbox or

- 37 -

device to be made available or access to the property otherwise scheduled within 4 hours of initial contact in the event the lockbox or device requires the participating member to obtain additional information to enable access (ex: "call listing agent for entry code") with said 4 hour response obligation in effect every day from 8am to 6pm. The MLS reserves the right to require that the device be submitted in advance for approval. The MLS also may revoke the approval and/or subject the Participant to discipline if the device is used in a manner that fails to continue to satisfy this requirement. Failure to provide reasonable and timely access as required by this section will subject the listing agent to discipline and potential fines. More than one lockbox or access device may be used on a property as long as one of them is MLS-approved where the listing is submitted. It is incumbent upon the MLS Participant or Subscriber to verify the validity of the requesting party prior to providing the access information.

      **13.6.1 Approved Lockboxes.** The following are approved lockboxes: Supra, Sentrilock, Combo Lockbox, Programmable Electronic Deadbolt and all AOR/MLS contracted lockboxes.

**13.7    Listing Broker's Permission.** No MLS Participant or Subscriber may enter a property or open a lockbox without the Listing Broker's permission. Such permission may be granted by the Listing Broker by specifying permission to use the lockbox through the MLS. Appraiser Participants are expressly prohibited from using lockbox keys to enter a property without either the owner's or Listing Broker's permission.

**13.8    Unaccountable Keys.** Key holders and Participants cosigning with a key holder shall immediately report lost, stolen, or otherwise unaccountable keys to the AOR/MLS.

**13.9    Removal.** The lockbox must be removed with 1 day after the close of escrow or expiration/cancellation of the listing.

**13.10   Rules Violations.** Failure to abide by Rules relating to lockboxes as set forth in this section or failure to abide by the key lease agreement may result in discipline as provided in Sections 14 and 15 of these Rules, in addition to loss of or restriction on all lockbox and key privileges.

**13.11   Right to Limit Access.** The AOR/MLS reserves the right to refuse to issue a key or limit access to lockboxes if, in its sole discretion, it determines the security of the system would be compromised by issuing such keys or granting access to lockboxes.

## 14.    VIOLATIONS OF RULES AND POLICIES.

All references to *California Code of Ethics and Arbitration Manual* refer to the publication of the California Association of REALTORS® as amended from time to time.

**14.1    Grounds for Disciplinary Action and Sanctions.** After a hearing by a hearing panel as provided in the *California Code of Ethics and Arbitration Manual*, the Association or MLS Board of Directors may take disciplinary action and impose sanctions against any Participant and Subscriber:

      a)   For violation of any MLS rule.

- 38 -

    b) On the Participant's or Subscriber's being convicted, adjudged, or otherwise recorded as guilty by a final judgment of any court of competent jurisdiction of (1) a felony, or (2) a crime involving moral turpitude, or (3) on a determination by any court of competent jurisdiction, or official of the State of California authorized to make the determination, that the Participant or Subscriber violated a provision of the California Real Estate Law or a Regulation of the Real Estate Commissioner or the laws relating to Appraisers or a Regulation of the Office of Real Estate Appraisers (OREA).

    c) For any violation of subsection (a) by any person, including, but not limited to, a Clerical User or a salesperson, who is not a Participant or Subscriber but is employed by or affiliated with such Participant or Subscriber and was providing real estate related services within the scope of the Participant's or Subscriber's license. Lack of knowledge by the Participant or Subscriber of such salesperson's conduct shall only go to mitigation of discipline imposed.

    d) For any violation of the N.A.R. Code of Ethics while a member of any Association of REALTORS®.

**14.2**    **Sanctions.** Sanctions or disciplinary action for violation of an MLS Rule may consist of one or more of those specified in the *California Code of Ethics and Arbitration Manual.*

**14.3**    **Citations**. The AOR/MLS may implement a schedule of fines (as outlined in the MLS Citation Policy) for certain MLS Rules violations and direct staff to issue citations for the specified MLS rules violations and implement a procedure whereby the Participant and Subscriber receiving the citation may either pay the amount specified on the citation or request a full hearing in accordance with the procedures set forth in the California Code of Ethics and Arbitration Manual.

    **14.3.1**  **Mandatory Hearing for Multiple Citations.** For any MLS Rule violation that would result in a fourth (or further) Citation in any calendar year, the violator and the violator's Office Manager or Designated Broker, if applicable, shall appear before a Professional Standards hearing panel to: 1) adjudicate the alleged MLS Rule violation(s), 2) determine additional sanctions the panel deems appropriate for the violator's continuing failure to follow the MLS Rules, and 3) determine sanctions the panel deems appropriate for the Office Manager or Designated Broker's failure to properly supervise and correct the violator's continuing failure to follow the MLS Rules. If the violator is the Designated Broker, determination of sanctions for failure to supervise shall not apply.

**14.4**    **Duty to Correct and Cooperate**.

    a) A Participant and Subscriber, within 1 day of a Citation, must correct any violation of the Rules and Policies and bring the listing into compliance.

    b) Failure to correct violations or cooperate with an investigation under the Rules and Policies within the 1-day correction period may subject a non- conforming listing to removal from the MLS database.

    c) Any fines levied against a Participant under this Section as a result of the actions of a Subscriber under the Participant may be transferred to an appropriate manager under the Participant at Participant's discretion. Copies of all notices related to such fines shall be retained by the Participant.

ES 594          ES 594          ES 594

**14.5 MLS Modification of Information.** In connection with the enforcement of MLS Rules and Policies or as otherwise needed to correct listing information, MLS Staff may modify any field or data point within any listing.

**14.6 Abusive Conduct.** Participants or Subscribers shall not engage in abusive conduct towards MLS or Association staff at any time in any interaction by any method of communication. Abusive conduct includes, but is not limited to, issuing threats or intimidation, using profanity or insulting language, harassment, bullying, coercion, shouting or otherwise behaving in a manner that creates apprehension in the recipient of the conduct.

**14.7 Disclosure Limitations.** Any information received by the MLS in response to an investigation that results in a "no violation" ruling may be shared with any reporting party.

## 15. PROCEDURES FOR MLS RULES HEARINGS.

All MLS Rules hearings shall be processed in accordance with the *California Code of Ethics and Arbitration Manual* as from time to time amended which is hereby incorporated by reference. Failure to abide by the procedures of the *California Code of Ethics and Arbitration Manual* shall be a violation of these MLS rules.

## 16. ARBITRATION.

**16.1 Mandatory Arbitration.** By becoming and remaining a Participant or Subscriber in the MLS, each Participant and Subscriber agrees to submit disputes arising out of the real estate business which also arises out of, or is in conjunction with, any listing filed with the MLS or any appraisal, to binding arbitration with any other Participant or Subscriber of this MLS, or participants or subscribers of any other MLS who are authorized to have access to this MLS under Section 6 of these rules. Such arbitrations shall be governed by the *California Code of Ethics and Arbitration Manual* as from time to time amended which is hereby incorporated by reference. This shall be deemed an arbitration agreement within the meaning of Part 3, Title 9 of the California Code of Civil Procedure. Failure to submit to arbitration and abide by the arbitration award, including but not limited to timely payment of the arbitration award as provided herein shall be a violation of these MLS Rules and subjects Participants and Subscribers to possible suspension from the MLS and/or other penalties.

**16.2 Other Arbitration Agreements.** Notwithstanding any other provision of these Rules, if any Participant or Subscriber enters into an agreement (either before or after a dispute arises) with another Participant or Subscriber to arbitrate a dispute utilizing non-MLS facilities, such persons are not bound to arbitrate the dispute covered by such agreement under these rules utilizing the AOR/MLS facilities.

**16.3 Arbitration Between Association Members.** Notwithstanding any other provision of these Rules:

a) If all disputants are members of the same AOR, they shall arbitrate under that AOR in accordance with its rules.

b) If the disputants are members of different AORs, they shall arbitrate in accordance with

ES 595                    ES 595                    ES 595

any applicable regional or shared professional standards agreement. In the absence of such an agreement, the disputants remain obligated to arbitrate in accordance with the Interboard Arbitration Rules of the California Association of REALTORS® ("C.A.R.").

**16.4    Arbitration Involving Non-Association Members.** Notwithstanding any other provision of these Rules:

a) If one of more of the disputants are non-AOR members and all disputants receive MLS services through the same AOR, they shall arbitrate at the AOR unless the AOR participates in a regional MLS, in which case, they shall arbitrate in accordance with any applicable regional agreements between the AOR and the regional MLS

b) If one or more of the disputants are non-AOR members and the disputants receive MLS services through different AORs and the AORs participate in a regional MLS, they shall arbitrate in accordance with any applicable regional agreements between the AORs and the regional MLS.

c) In the absence of a regional agreement regarding the location of the arbitration, any dispute under subsection (a)-(c) may be conducted at any AOR where the respondent(s) holds AOR membership or receives MLS services.

**16.5    Same Firm.** Arbitration between persons from the same firm shall not be available and is not mandated by these Rules unless covered by arbitration rules relating to the obligations of AOR members to arbitrate.

**16.6    Timing.** For purposes of this Section 16, the duty to arbitrate shall be determined when facts giving rise to the dispute occurred. Therefore, a Participant or Subscriber shall have a duty to arbitrate if the person was an MLS Participant or Subscriber when facts giving rise to the dispute occurred. Termination of MLS participation or subscription shall not relieve the arbitration duty under this section for disputes that arose when the person was an MLS Participant or Subscriber. Requests for arbitration must be filed within one hundred and eighty (180) days after the closing of the transaction, if any, or after the facts constituting the matter could have been known in the exercise of reasonable diligence, whichever is later.

## 17.    NONPAYMENT OF MLS FEES.

**17.1    Nonpayment of MLS Fees.** If MLS fees, fines, charges, or other amounts owed the MLS are not paid on the due date specified on the invoice, the nonpaying Participant and/or Subscriber's MLS services shall be subject to suspension until such outstanding amounts are paid in full. The MLS may suspend MLS services under this section provided the MLS gives the Participant and/or Subscriber at least twenty (20) calendar days' prior notice of the proposed suspension date. Such notice may be included with the original billing statement for MLS fees, fines, or charges or any time thereafter. In the event the amounts owed remain unpaid for three months after the due date, the nonpaying Participant and/or Subscriber's MLS services shall automatically terminate regardless if notice of such termination is given.

**17.2    Disputed Amounts.** If a Participant and/or Subscriber disputes the accuracy of amount owed, the Participant and/or Subscriber may request a hearing before the Association or MLS Board of Directors. In order to request such a hearing, the Participant and/or Subscriber must first pay the disputed amount in whole which may be refunded in whole or part in accordance with

- 41 -

ES 596                                    ES 596                                    ES 596

the Board of Directors' determination. Hearings under this section shall be conducted in accordance with the *California Code of Ethics and Arbitration Manual*. In the event the Board of Directors confirms the accuracy of the amount owed, the Participant and/or Subscriber shall also be subject to paying interest at the rate of ten (10%) per annum on such past due amounts.

**17.3    Reinstatement.** Any Participant and/or Subscriber whose MLS services have been terminated for nonpayment of MLS fees may reapply for participation in the MLS. However, prior to being granted access, such Participant and/or Subscriber must pay all fees applicable to new applicants and all past due amounts owed, including paying interest at the rate of ten (10%) per annum on such past due amounts.

## 18.    CHANGE IN RULES AND POLICIES.

The Rules of the MLS may be amended by a majority vote of the CRMLS Board of Directors based on recommendations from a Rules and Policies subcommittee made up of members from each participating AOR/MLS. Any changes to these rules which are mandated by the National Association of REALTORS® shall automatically be incorporated into these rules and do not require subcommittee or CRMLS Board of Directors approval. All changes to the rules shall be submitted to all reciprocating MLS.

## 19.    PARTICIPANT DATA ACCESS.

**19.1    Participant Definition and Requirements for MLS Data Use Outside MLS Front End.**

a)  **Representation.** These rules govern the use of MLS data by a Participant outside of the Participants use and access to the MLS provided front end search and add/edit systems. Participant use of any MLS Data outside of the subscribed to front end systems licensed by MLS, and that is provided through a data feed of any portion of the MLS compilation is limited to Participants that are actively engaged in the direct representation, with all legally applied fiduciary duties as the agent of 1) buyers or tenant that show and make offers on properties listed in the MLS Database, or 2) Sellers or landlords that list properties in the MLS Database. Participants shall comply with all California Department of Real Estate (DRE) regulations related to the representation of buyers and sellers including but not limited to the signing of written agreements, conducting agent visual inspections and providing all disclosures.

b)  **Actively Engaged.** Mere possession of a Broker's License is not sufficient to qualify for MLS data access participation. Rather, the requirement is that an individual or firm provides actual real estate brokerage services that requires a valid California license directly to clients   The Participant is actively engaged when they endeavor during the operation of its real estate business to list real property on the MLS including making information and the property available for showings when in the client's best interest and/or to represent buyers or tenants in showing and making offers on MLS listed properties. "Actively" means on a continual and on-going basis during the operation of the Participant's real estate business. The "actively" requirement is not intended to preclude MLS data access participation by a Participant or potential Participant that operates a real estate business on part time, seasonal, or similarly time-limited basis or that has its business interrupted by periods of relative inactivity occasioned by market

- 42 -

ES 597                        ES 597                        ES 597

conditions. Similarly, the requirement is not intended to deny MLS data access participation to a Participant or potential Participant who has not achieved a minimum number of transactions despite good faith efforts, nor is it intended to permit an MLS to deny MLS data access participation based on the level of service provided by the Participant or Potential Participant as long as the level of service satisfies state law.

The key is that the Participant or potential Participant actively endeavors to provide licensed real estate brokerage services directly to clients by cooperating with one another in respect to properties of the type that are listed on the MLS in which participation is sought. An MLS may evaluate whether a Participant or potential Participant meets the Representation and Actively Engaged standards above only if the MLS has a reasonable basis to believe that the Participant or potential Participant is in fact not doing so.

    c) **Referral Activity.** Note that solely engaging in referral activities is not sufficient to qualify for MLS data access, but if a broker Participant is actively engaged in providing brokerage services as described above and to an extent that does permit MLS data access, it may also engage in making some referrals to others. Nothing in this rule shall prohibit or limit the ability of MLS to grant access or a data license to an entity or person that does not qualify under these Participant Data Use Rules.

**19.2 Internet Data Exchange ("IDX").** "Internet Data Exchange" is a means by which each Participant subscribing to the program (IDX) permits the limited electronic display of Participant's listings appearing in Internet Data Exchange Database on each Participant's IDX Internet websites and on applications for mobile devices that said participating Broker Participants and. Subscribers control. The "Internet Data Exchange Database" (IDX Data) is the current aggregate compilation of all Marketed or Advertised listings information as defined in Section 10.1, Pending and Sold/Leased listings of all Internet Data Exchange Participants except those listings where the property seller has opted out of Internet publication by so indicating on the listing contract. The intent of IDX is to allow Participants that represent real estate sellers or buyers (or both) to permit other such Participants to advertise their listings in electronic displays including, but not limited to: websites, mobile applications, audio devices, and additional technologies. IDX is only available to Participants and Subscribers. MLS Participants may use the IDX data feed to advertise listings in any digital medium. Any participant, including any Subscriber affiliated with the Participant, that inputs a listing into the MLS consistent with the MLS rules is a "Listing Broker." An "Advertising Broker" means any Participant, including any Subscriber affiliated with that Participant, that uses the data feed to electronically display any information about a property filed with the MLS for which that Participant is not the Listing Broker.

    **19.2.1 Authorization.** Subject to sections 19.2.2 through 19.2.15 below, and notwithstanding anything in these rules and policies to the contrary, Participants and Subscribers may electronically display aggregated MLS listing information in a status of Coming Soon, Active, Active Under Contract, Pending and Sold/Leased statuses through either downloading or by framing such information on the MLS or association public access website (if such a site is available). The download will include Publicly Accessible sold listing data closed after January 1, 2012. "Publicly Accessible" sold information as used in the IDX policy and rules, means data that is available electronically or in a hard copy to the public from city, county, state and

- 43 -

other government records. The downloading of raw data will be through the Participant only.

19.2.2    **Consent.** The Listing Brokers' consent for such Internet display is presumed, in satisfaction of Rule 12.8, unless a Listing Broker affirmatively notifies the MLS that the Listing Broker refuses to permit display on either a blanket or on a listing-by-listing basis. Listing Brokers that refuse to permit other MLS Participants or Subscribers to display their listing information on a blanket basis may not display MLS listing information of other Brokers' listings. Even where Listing Brokers have given blanket authority for other Broker Participants and R.E. Subscribers to partake in IDX display of their listings, such consent may be withdrawn on a listing-by-listing basis where the seller has prohibited all Internet display.

19.2.3    **Control.** Broker Participants and R.E. Subscribers may only partake in IDX display on websites and applications for mobile devices which they control. Under IDX policy, "control" means that Broker Participants and R.E. Subscribers must have the ability to add, delete, modify and update information as required by the IDX policy. All displays of IDX listings must also be under the actual and apparent control of the Broker Participant and/or R.E. Subscriber and must be presented to the public as being that Broker Participant's and/or R.E. Subscriber's display. Actual control requires that Broker Participants and R.E. Subscribers have developed the display or caused the display to be developed for themselves pursuant to an agreement giving the Broker Participant and/or R.E. Subscriber authority to determine what listings will be displayed, and how those listing will be displayed. Apparent control requires that a reasonable consumer viewing the Broker Participant's and/or R.E. Subscriber's display will understand the display is the Broker Participant's and/or R.E. Subscriber's, and that the display is controlled by the Broker Participant and/or R.E. Subscriber.

19.2.4    **Display Content.** Participants and Subscribers shall not display confidential information fields, as determined by the MLS in the MLSs' sole discretion, such as that information intended for Buyer Brokers rather than consumers.

19.2.5    **Listing Credit.** All Listing Brokers grant permission for any Advertising Broker to display any listing submitted to the service by the Listing Broker only if the listing display or advertisement is clear so that a reasonable real estate consumer understands:

a)   Who is the Listing Agent and Broker;
b)   Who is the Advertising Broker, and;
c)   How to contact that Listing Agent or Broker.

MLS may develop business rules to establish Advertising Attribution Fields for a Listing Brokers use during listing input that are required to be displayed by Advertising Brokers. MLS may provide Standards of Practice that assist in the interpretation of this rule which may contain examples and additional details to assist Advertising Brokers in understanding the Listing Credit rule.

ES 599                         ES 599                         ES 599

19.2.6   **Source.** Information displayed shall indicate the source MLS of the information being displayed and the most recent date updated. Participants and Subscribers shall update all downloads and refresh all MLS downloads and IDX displays fed by those downloads of data at least once every 7 days.

19.2.7   **Usage.** Participants and Subscribers shall indicate on their displays that the information being provided is for consumers' personal, non-commercial use and may not be used for any purpose other than to identify prospective properties consumers may be interested in purchasing. Displays of minimum information (e.g. a one-line thumbnail search result, text messages, "tweets", etc. of two hundred (200) characters or less) are exempt from this requirement but only when linked directly to a display that includes all required disclosures.

19.2.8   **Security.** Participants' and Subscribers' websites must protect MLS data from misappropriation by employing reasonable efforts to monitor for and prevent "scraping" and other unauthorized accessing, reproduction or use of the MLS database.

19.2.9   **Display Purpose.** Broker Participants and R.E. Subscribers may not use IDX-provided listings for any purpose other than display as provided in these rules. This does not require Broker Participants and R.E. Subscribers to prevent indexing of IDX listings by recognized search engines.

19.2.10   **Restricted Display.** Listings, including property addresses, can be included in IDX displays except where sellers have directed their Listing Brokers to withhold their listing or the listing's property address from all display on the Internet (including, but not limited to publicly accessible websites or VOWs). This does not preclude listing Participants or Subscribers from displaying on their IDX sites or their other website(s) the listing or property address of consenting sellers.

19.2.11   **Restricted Access and Distribution.** Sharing of the MLS compilation with any third party not authorized by the MLS is prohibited. Except as provided in the IDX policy and these rules, an IDX site or a Participant or user operating an IDX site or displaying IDX information as otherwise permitted may not distributed, provide or make any portion of the MLS database available to any person or entity.

19.2.12   **Excluded Listings.** Not all listings from the MLS must be displayed on the Participant's and/or Subscriber's IDX sites so long as any exclusions are based on objective criteria, e.g., type of property, listed price or geographical location. Selection of listings displayed on any IDX site must be independently made by each Participant.

19.2.13   **Website Identification.** Any IDX display controlled by a Broker Participant or R.E. Subscriber must clearly identify the name of the brokerage firm under which they operate and the subscriber's name, if applicable, in a readily visible type font and color.

19.2.14   **Removed.**

- 45 -

ES 600                     ES 600                     ES 600

**19.2.15  Third Party Comments and Automated Value Estimates.** Any IDX display controlled by a Broker Participant or RE Subscriber that:

    a)  Allows third-parties to write comments or reviews about particular listings or displays a hyperlink to such comments or reviews in immediate conjunction with particular listings, or

    b)  Displays an automated estimate of the market value of the listing (or hyperlink to such estimate) in immediate conjunction with the listing, shall disable or discontinue either or both of those features as to the seller's listing at the request of the seller. The Listing Broker or agent shall communicate to the MLS that the seller has elected to have one or both these features disabled or discontinued on all displays controlled by Broker Participants and R.E. Subscribers. Except for the foregoing and subject to section 19.2.15 below, a Broker Participant's or R.E. Subscriber's IDX site may communicate the Broker Participant's or R.E. Subscriber's professional judgment concerning any listing. Nothing shall prevent an IDX site from notifying its viewers that a particular feature has been disabled at the request of the seller.

**19.2.16  Making Corrections.** Broker Participants and R.E. Subscribers shall maintain a means (e.g., e-mail address, telephone number) to receive comments about the accuracy of any data or information that is added by or on behalf of Broker Participants and R.E. Subscribers beyond that supplied by the MLS and that relates to a specific property displayed on the IDX site. Broker Participants and R.E. Subscribers shall correct or remove any false data or information relating to a specific property upon receipt of a communication from the Listing Broker or listing agent for that property explaining why the data or information is false. However, the Broker Participants and R.E. Subscribers shall not be obligated to remove or correct any data or information that simply reflects good faith opinion, advice, or professional judgment.

**19.2.17  Compliance.** All IDX sites are subject to ongoing compliance auditing by the AOR/MLS. Changes to an IDX site necessary to cure a violation of MLS Rules must be accomplished within ten (10) calendar days of the transmittal of notice from the AOR/MLS of such violation. Violations may subject a Participant to sanctions as defined in the MLS Citation Policy, including but not limited to the immediate termination of the download agreement to receive or republish the IDX information.

**19.2.18  Notification by Authorized Participants and Subscribers.** Participants and Subscribers partaking in the display of MLS On-Market, Pending and/or Sold/Leased listing information of other Brokers' listings pursuant to Section 19.2 must notify the MLS before displaying said MLS active listing information and must give the MLS direct access as well as allow access for other Participants for purposes of monitoring/ensuring compliance with applicable rules and policies.

**19.2.19  Right to Charge for Download.** The MLS has the right to charge the costs of adding or enhancing its downloading capacity to Participants and Subscribers who request downloading of listing information pursuant to Section 19.2.

ES 601                              ES 601                              ES 601

19.2.20 **Modifications and Augmentations.** Participants and Subscribers shall not modify or manipulate information relating to other participants listings. Participants and Subscribers may augment their IDX display of MLS data with applicable property information from other sources to appear on the same webpage or display, clearly separated by the data supplied by the MLS. The source(s) of the information must be clearly identified in the immediate proximity to such data. This requirement does not restrict the format of MLS data display or display of fewer than all of the available listings or fewer authorized fields.

19.2.21 **No Display of Offers of Compensation.** Participants and Subscribers shall not display on ay IDX website or application controlled or operated by Participant or Subscriber, any offers of compensation from either a Listing Broker or seller to any Buyer Broker or buyer representative on any property listing that is provided in the IDX data feed, other than an advertisement of potential sharing of compensation on a property subject to an exclusive listing agreement with the displaying Participant only.

19.3 **Virtual Office Websites ("VOW").**

19.3.1 **VOW Definitions.**

a) A Virtual Office Website ("VOW") is a Participant's Internet website, or a feature of a Participant's website, through which the Participant is capable of providing real estate brokerage services to consumers with whom the Participant has first established a broker-consumer relationship (as defined by state law) where the consumer has the opportunity to search MLS Listing Information, subject to the Participant's oversight, supervision, and accountability. A non-principal Broker or sales licensee affiliated with a Participant may, with his or her Participant's consent, operate a VOW. Any VOW of a non-principal broker or sales licensee is subject to the Participant's oversight, supervision, and accountability.

b) As used in Section 19 of these Rules, the term "Participant" includes a Participant's affiliated non-principal Brokers and sales licensees – except when the term is used in the phrases "Participant's consent" and "Participant's oversight, supervision, and accountability". References to "VOW" and "VOWs" include all VOWs, whether operated by a Participant, by a non-principal Broker or sales licensee, or by an Affiliated VOW Partner ("AVP") on behalf of a Participant.

c) "Affiliated VOW Partner" ("AVP") refers to an entity or person designated by a Participant to operate a VOW on behalf of the Participant, subject to the Participant's supervision, accountability and compliance with the VOW Policy. No AVP has independent participation rights in the MLS by virtue of its right to receive information on behalf of a Participant. No AVP has the right to use MLS Listing Information except in connection with operation of a VOW on behalf of one or more Participants. Access by an AVP to MLS Listing Information is derivative of the rights of the Participant on whose behalf the AVP operates a VOW.

d) As used in Section 19 of these Rules, the term "MLS Listing Information" refers to active listing information and non-confidential pending and sold data provided

- 47 -

by Participants to the MLS and aggregated and distributed by the MLS to Participants.

### 19.3.2    VOW Operating Parameters.

a) The right of a Participant's VOW to display MLS Listing Information is limited to that supplied by the MLS(s) in which the Participant has participatory rights. However, a Participant with offices participating in different MLSs may operate a master website with links to the VOWs of the other offices.

b) Subject to the provisions of the VOW Policy and these Rules, a Participant's VOW, including any VOW operated on behalf of a Participant by an AVP, may provide other features, information, or functions, e.g., Internet Data Exchange ("IDX").

c) Except as otherwise provided in the VOW Policy or in these Rules, a Participant need not obtain separate permission from other MLS Participants whose listings will be displayed on the Participant's VOW.

### 19.3.3    VOW Registrant Access Requirements.

a) Before permitting any consumer to search for or retrieve any MLS Listing Information on his or her VOW, the Participant must take each of the following steps:

    i.   The Participant must first establish with that consumer a lawful broker-consumer relationship (as defined by state law), including completion of all actions required by state law in connection with providing real estate brokerage services to clients and customers (hereinafter "Registrants"). Such actions shall include, but are not limited to, satisfying all applicable agency, non-agency, and other disclosure obligations, and execution of any required agreements.

    ii.   The Participant must obtain the name of, and a valid email address for, each Registrant. The Participant must send an email to the address provided by the Registrant confirming that the Registrant has agreed to the Terms of Use (described in subsection (d) below). The Participant must verify that the email address provided by the Registrant is valid and that the Registrant has agreed to the Terms of Use.

    iii.   The Participant must require each Registrant to have a user name and a password, the combination of which is different from those of all other Registrants on the VOW. The Participant may, at his or her option, supply the user name and password or may allow the Registrant to establish its user name and password. The Participant must also assure that any email address is associated with only one user name and password.

b) The Participant must assure that each Registrant's password expires on a date certain but may provide for renewal of the password. The Participant must at all times maintain a record of the name, email address, user name, and current password of each Registrant. The Participant must keep such records for not less than 180 days after the expiration of the validity of the Registrant's password.

c) If the MLS has reason to believe that a Participant's VOW has caused or permitted a breach in the security of MLS Listing Information or a violation of

- 48 -

MLS rules, the Participant shall, upon request of the MLS, provide the name, email address, user name, and current password, of any Registrant suspected of involvement in the breach or violation. The Participant shall also, if requested by the MLS, provide an audit trail of activity by any such Registrant.

d)  The Participant shall require each Registrant to review, and affirmatively to express agreement (by mouse click or otherwise) to, a "Terms of Use" provision that provides at least the following:

    i.  That the Registrant acknowledges entering into a lawful consumer-broker relationship with the Participant;

    ii.  That all information obtained by the Registrant from the VOW is intended only for the Registrant's personal, non-commercial use;

    iii.  That the Registrant has a bona fide interest in the purchase, sale, or lease of real estate of the type being offered through the VOW;

    iv.  That the Registrant will not copy, redistribute, or retransmit any of the information provided except in connection with the Registrant's consideration of the purchase or sale of an individual property;

    v.  That the Registrant acknowledges the MLS's ownership of, and the validity of the MLS's copyright in, the MLS database.

e)  The Terms of Use Agreement may not impose a financial obligation on the Registrant or create any representation agreement between the Registrant and the Participant. Any agreement entered into at any time between the Participant and Registrant imposing a financial obligation on the Registrant or creating representation of the Registrant by the Participant must be established separately from the Terms of Use, must be prominently labeled as such, and may not be accepted solely by mouse click.

f)  The Terms of Use Agreement shall also expressly authorize the MLS, and other MLS Participants or their duly authorized representatives, to access the VOW for the purposes of verifying compliance with MLS rules and monitoring display of Participants' listings by the VOW. The Agreement may also include such other provisions as may be agreed to between the Participant and the Registrant.

**19.3.4    VOW Contact Requirements.** A Participant's VOW must prominently display an email address, telephone number, or specific identification of another mode of communication (e.g., live chat) by which a consumer can contact the Participant to ask questions, or get more information, about any property displayed on the VOW. The Participant, or a non-principal broker or sales licensee licensed with the Participant, must be willing and able to respond knowledgeably to inquiries from Registrants about properties within the market area served by that Participant and displayed on the VOW.

**19.3.5    VOW Data Security.** A Participant's VOW must employ reasonable efforts to monitor for, and prevent, misappropriation, "scraping", and other unauthorized use of MLS Listing Information. A Participant's VOW shall utilize appropriate security protection such as firewalls as long as this requirement does not impose security obligations greater than those employed concurrently by the MLS.

**19.3.6    VOW Listing Display Restrictions.**

ES 604                    ES 604                    ES 604

a) A Participant's VOW shall not display listings or property addresses of any seller who has affirmatively directed the Listing Broker to withhold the seller's listing or property address from display on the Internet. The Listing Broker shall communicate to the MLS that the seller has elected not to permit display of the listing or property address on the Internet. Notwithstanding the foregoing, a Participant who operates a VOW may provide to consumers via other delivery mechanisms, such as email, fax, or otherwise, the listings of sellers who have determined not to have the listing for their property displayed on the Internet.

b) A Participant who lists a property for a seller who has elected not to have the property listing or the property address displayed on the Internet shall cause the seller to execute a document that includes the following (or a substantially similar) provision:

### Seller Opt-Out Form

1. Please check either Option a or Option b
   a. [  ] I have advised my broker or sales agent that I do not want the listed property to be displayed on the Internet.

      OR

   b. [  ] I have advised my broker or sales agent that I do not want the address of the listed property to be displayed on the Internet.
2. I understand and acknowledge that, if I have selected option a, consumers who conduct searches for listings on the Internet will not see information about the listed property in response to their search.

   _____
   Initials of Seller

c) The Participant shall retain such forms for at least one year from the date they are signed, or one year from the date the listing goes off the market, whichever is greater.

**19.3.7   Posting Consumer Comments and Automated Value Estimate.**

a) Subject to subsection (b), a Participant's VOW may allow third-parties:
   i. to write comments or reviews about particular listings or display a hyperlink to such comments or reviews in immediate conjunction with particular listings, or
   ii. display an automated estimate of the market value of the listing (or hyperlink to such estimate) in immediate conjunction with the listing.

b) Notwithstanding the foregoing, at the request of a seller the Participant shall disable or discontinue either or both of those features described in subsection (a) as to any listing of the seller. The Listing Broker or agent shall communicate to the MLS that the seller has elected to have one or both of these features disabled or discontinued on all Participants' websites. Subject to the foregoing and to Section 19.8, a Participant's VOW may communicate the Participant's professional judgment concerning any listing. A Participant's VOW may notify its customers that a particular feature has been disabled "at the request of the

- 50 -

seller."

**19.3.8**   **Correction of VOW Listing Information.**  A Participant's VOW shall maintain a means (e.g., email address, telephone number) to receive comments from the Listing Broker about the accuracy of any information that is added by or on behalf of the Participant beyond that supplied by the MLS and that relates to a specific property displayed on the VOW. The Participant shall correct or remove any false information relating to a specific property within 2 days following receipt of a communication from the Listing Broker explaining why the data or information is false. The Participant shall not, however, be obligated to correct or remove any data or information that simply reflects good faith opinion, advice, or professional judgment.

**19.3.9**   **VOW Mandatory Listing Refresh.**  A Participant shall cause the MLS Listing Information available on its VOW to be refreshed at least once every three (3) days.

**19.3.10**   **VOW MLS Listing Distribution Limitations.**  Except as provided in these rules, the NATIONAL ASSOCIATION OF REALTORS® VOW Policy, or any other applicable MLS rules or policies, no Participant shall distribute, provide, or make accessible any portion of the MLS Listing Information to any person or entity.

**19.3.11**   **VOW Privacy Policy.**  A Participant's VOW must display the Participant's privacy policy informing Registrants of all of the ways in which information that they provide may be used.

**19.3.12**   **VOW Selective Listing Display.**  A Participant's VOW may exclude listings from display based only on objective criteria, including, but not limited to, factors such as geography, list price, type of property, and whether the listing broker is a REALTOR®.

**19.3.13**   **Notification of MLS of Intent to Operate a VOW.**  A Participant who intends to operate a VOW to display MLS Listing Information must notify the MLS of its intention to establish a VOW and must make the VOW readily accessible to the MLS and to all MLS Participants for purposes of verifying compliance with these Rules, the VOW Policy, and any other applicable MLS rules or policies.

**19.3.14**   **Operation of Multiple VOWs.**  A Participant may operate more than one VOW himself or herself or through an AVP. A Participant who operates his or her own VOW may contract with an AVP to have the AVP operate other VOWs on his or her behalf. However, any VOW operated on behalf of a Participant by an AVP is subject to the supervision and accountability of the Participant.

**19.3.15**   **VOW Data Display Limitations.** NOT ADOPTED.

**19.3.16**   **Changes to Listing Content.** A Participant shall not change the content of any MLS Listing Information that is displayed on a VOW from the content as it is provided in the MLS. The Participant may, however, augment MLS Listing Information with additional information not otherwise prohibited by these Rules or by other applicable

- 51 -

MLS rules or policies so long as the source of such other information is clearly identified. This rule does not restrict the format of display of MLS Listing Information on VOWs or the display on VOWs of fewer than all of the listings or fewer than all of the authorized information fields.

19.3.17    **Listing Accuracy Disclaimer.** A Participant shall cause to be placed on his or her VOW in a manner readily visible to consumers but not less than 7pt type, the following, or substantially similar notice: "Based on information from California Regional Multiple Listing Service, Inc. as of [date the AOR/MLS data was obtained] and/or other sources. All data, including all measurements and calculations of area, is obtained from various sources and has not been, and will not be, verified by broker or MLS. All information should be independently reviewed and verified for accuracy. Properties may or may not be listed by the office/agent presenting the information."

19.3.18    **Listing Broker or Agent Identification.** NOT ADOPTED.

19.3.19    **Listing Search Result Limitation.** A Participant shall limit the number of listings that a Registrant may view, retrieve, or download to not more than 500 current listings and not more than 500 sold listings in response to any inquiry.

19.3.20    **Mandatory Registrant Password Change.** A Participant shall require that Registrants' passwords be reconfirmed or changed every 90 days.

19.3.21    **VOW Co-Branding and Advertising.** A Participant may display advertising and the identification of other entities ("co-branding') on any VOW the Participant operates or that is operated on his or her behalf. However, a Participant may not display on any such VOW deceptive or misleading advertising or co-branding. For purposes of this Section, co-branding will be presumed not to be deceptive or misleading if the Participant's logo and contact information (or that of at least one Participant, in the case of a VOW established and operated on behalf of more than one Participant) is displayed in immediate conjunction with that of every other party, and the logo and contact information of all Participants displayed on the VOW is as large as the logo of the AVP and larger than that of any third party.

19.3.22    **Identifying Listing Source.** A Participant shall cause any listing displayed on his or her VOW that is obtained from other sources, including from another MLS or from a broker not participating in the MLS, to identify the source of the listing.

19.3.23    **Separate Source Listing Search.** A Participant shall cause any listing displayed on his or her VOW obtained from other sources, including from another MLS or from a broker not participating in the MLS, to be searched separately from listings in the MLS.

19.3.24    **MLS Licensing Agreement for VOW.** Participants and the AVPs operating VOWs on their behalf must execute the license agreement required by the MLS.

19.3.25    **Seller's Direction to Withhold from Internet.** Where a seller affirmatively directs their listing broker to withhold either the seller's listing or the address of the seller's

**ES 607**                    **ES 607**                    **ES 607**

listing from display on the Internet, a copy of the seller's affirmative direction shall be provided to the MLS within 2 days.

**19.3.26  No Display of Offers of Compensation.** Participants and Subscribers shall not display on any VOW they control or for which they receive a data feed, any offers of compensation from either a Listing Broker or seller to any Buyer Broker or buyer representative on any property listing that is provided in the VOW data feed, other than an advertisement of potential sharing of compensation on a property subject to an exclusive listing agreement with the displaying Participant only.

## 20.    REJECTION OF APPLICATION.

In the event an application for participation in the MLS, whether as a licensee or as a clerical support, is rejected by the Association, the applicant, and his or her broker, if any, will be promptly notified in writing of the reason for the rejection. The broker shall have the right to respond in writing, and to request a hearing before a panel selected from the Board of Directors. The hearing will be held in accordance with rules adopted from time to time by the Board of Directors, which will make provision for adequate notice of the time and place of the hearing and shall provide that the parties involved shall have the right to appear and present evidence, both oral and written, and be represented by legal counsel.

ES 608              ES 608              ES 608

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **SUPPLEMENTAL DECLARATION OF GREG BINGHAM RE MARKETING EFFORTS AFTER VACATING MARCH 4, 2025 AUCTION RESULTS AND SCHEDULING NEW AUCTION RE MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081 (DOCKET NO. 569)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 20, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Bradford Barnhardt    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- Christopher L Blank    chris@chrisblanklaw.com
- Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- Jeffrey I Golden (TR)    lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com
- D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- Brandon J. Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- Eric P Israel    epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- Shantal Malmed    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
- Shantal Malmed    , cheryl.caldwell@gmlaw.com
- Mark A Mellor    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- Laila Rais    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- Valerie Smith    claims@recoverycorp.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL**: On **March 20, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 20, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                    ES 609                    **F 9013-3.1.PROOF.SERVICE**

**ES 609**                                              **ES 609**

1 | None.
2 |
3 | I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
4 |

| March 20, 2025 | D. Woo | /s/ D. Woo |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                      ES 610                          F 9013-3.1.PROOF.SERVICE

ES 610                                          ES 610                                        ES 610

Label Matrix for local noticing
0973-8
Case 8:21-bk-11710-SC
Central District of California
Santa Ana
Thu Mar 20 14:12:38 PDT 2025

Christopher J. Blank; Attorney at Law, PC
2973 Harbor Blvd
Box 506
COSTA MESA, CA 92626-3912

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA   92660-6377

Houser Bros. Co. dba Rancho Del Rey Mobile H
c/o Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620-3663

Levene Neale Bender Yoo & Golubchik L.L.P.
2818 La Cienega Ave
Los Angeles, CA 90034-2618

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

16222 MONTEREY LANE UNIT 376
HUNTINGTON BEACH, CA 92649-2258

Association of Flight Attendants
625 No. River Road Ste. 4020
Rosemont, IL. 60018

BS Investors
Robert P. Warmington C/o
Gorden May Grant, Genovese & Baratta
2030 Hain St. Ste. 1600
Irvine, CA 92614

County of Orange
P.O. Box 4515
Santa Ana CA 92702-4515

County of Orange Treasurer-Tax Collector
P.O. Box 4515
Santa Ana CA 92702-4515

Danning, Gill, Israel & Krasnoff, LLP
1901 Ave of The Stars, Ste 450
Los Angeles CA 90067-6006

David R. Flyer
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7907

Frank Satalino
19 Velarde Ct.
Rancho Santa Margarita, CA 92688-8502

Gordon Rees Scully & Mansukhani
5 Park Plaza Ste. 1100
Irvine, CA 92614-8502

Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Houser Bros. Co.
DBA Rancho Del Rey Estates
16222 Monterey Ln
Huntington Beachr CA 92649-6214

Houser Bros. Co.dba Rancho Del
Rey Mobile Home Estates
17610 Beach Blvd Ste. 32
Huntington Beach, CA 92647-6876

Houser Brothers Co.
dba Rancho Del Rey Mobilehome Est.
17610 Beach Blvd. Ste. 32
Huntington Beach, CA 92647-6876

Huntington Beach Gables HOA
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300 Laguna
Hllls, CA 92653-7907

Huntington Beach Gables Homeowners Associati
Epstein, Grinnel & Howell, APC
10200 Willow Creek Rd Ste 100
San Diego CA 92131-1655

Huntington Harbor Village
16400 Saybrook
Huntington Beach, CA 92649-2277

Huntington Hobile Home Inv. LLC.
430 S. San Dimas Ave.
San Dimasa CA 91773-4045

Huntington Mobile Home Investments
16400 Saybrook Lane
Huntington Beach, CA 92649-2277

Huntington Mobile Home Investments LLC
1100 Newport Beach Blvd. Ste 1150
Newport Beach, CA 92560

Hyundai Capital America
PO BOX 269011
Plano, TX 75026-9011

Hyundal Capital America
PO BOX 269011
Plano, TX 75026-9011

Internal Revenue Service
PO Box 7346
Philadelphia, 19101-7346

ES 611              ES 611              ES 611

Internal Revenue Service Insolvency
PO BOX 7346
Philadelphia, PA 19101-7346

J-pad, LLC
2702 N Gaff Street
Orange, CA 92865-2417

Janine Jasso
16025 Warmington Lane
Huntington Beach, CA 92649-2278

Janine Jasso, Jennifer Paulin, Lori Burrett
c/o Goe Forsythe & Hodges LLP
17701 Cowan, Suite 210
Irvine, CA 92614-6840

Kia Motors Finance
PO Box 20815
Fountain Valley, CA 92728-0815

Lee S. Gragnano
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lisa T. Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

Lori Burrett
16107 Sherlock Lane
Huntington Beach, CA 92649-2293

Nationwide Reconveyance, LLC
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7908

People of the St of CA
8141 13th St
Westminster CA 92683-4576

J-pad, LLC
16222 Monterey Ln Unit 376
Huntington Beach CA 92649-2258

James H Cosello
Casello & Lincoln,
525 N Cabrillo Park Dr. Ste 104
Santa Ana, CA 92701-5017

(p)JANINE JASSO
PO BOX 370161
EL PASO TX 79937-0161

Jennifer Ann Paulin
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lee Gragnano
16062 Warmington Ave.
Huntington Beacha CA 92649-2285

Linda Jean ''Lindy'' Bec
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lori Ann Burrett
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Mark A.Mellor Mellor Law Firm
c/o Randall Nickell
6800 Indiana Ave.
Riverside, CA 92506-4267

Orange County Superior Court
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300
Laguna Hills, CA 92653-7907

Randall Nickel
11619 Inwood Drive,
Riverside, CA 92503-5000

J-pad, LLC
21742 Anza Avenue
Torrance, CA 90503-6428

Jamie Lynn Gallian
16222 Monterey Ln #376
Huntington Beach, CA 92649-2258

Janine Jasso
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Jennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286

Lee Gragrano
16062 Warmington Ave.
Huntington Beach, CA 92649-2285

Lindy Beck
4443 Chase Dr.
Huntington Beach, CA 92649-2297

Lori Burrett
16107 Harmington Lane
Huntington Beach, CA 92649-2281

Michael S. Devereux
Wex Law
9171 Wilshire Blvd. Ste. 500
Beverly Hills, CA 90210-5530

Patricia Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

Randall Nickell
4476 Alderport Dr.
Huntington Beach. CA 92649-2288

**ES 612**                    **ES 612**                    **ES 612**

Randell Nickel
c/o Mark Mellor, Esq.
6800 Indiana Ave. Ste. 220
Riverside, CA 92506-4267

Randell Nickel
c/o Mark Mellor, Esq. Ste. 220 6800
Indiana Ave.
Riverside, CA 92506

Raquel Flyer-Dashner
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228

Robert P. Warmington Co.
c/o BS Investors
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Robert P. Warmington Co.
c/o BS Investors LP
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Rutan & Tucker
18575 Jamboree Rd 9th Fl
Irvine CA 92612-2559

S4 A California Limited Partnership
1001 Cove St Ste 230
Newport Beach CA 92660

Sandra L. Bradley
18 Meadowwood
Coto De Caza, CA 92679-4738

Sardra Bradley
18 Meadow Hood
Coto De Caza, CA 92679-4738

Stanley Feldsott: Esq
Feldsott & Lee
23161 Mill Creek Drive
Laguna Hills, CA 92653-7907

Steven A. Fink
13 Corporate Plaza Ste. 150
Newport Beach, CA 92660-7919

Superior Court of CA
County of Orange
711 Civic Center Dr West
Santa Ana CA 92701-3907

Superior Default Services Inc
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7908

Suzanne Tague
Ross Wolcott, Teinert, Prout
3151 Airway Ave. S-1
Costa Mesa, CA 92626-4607

Ted Phillips
17162 Sandra Lee
Huntington Beach, CA 92649

Ted Phillips
17912 Sandra Lee
Huntington Beach, CA 92649

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell APC
10200 Willow Creek Road, Ste 100
San Diego, CA 92131-1669

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell,
APC 10200 Willow Creek Road,
Ste 100
San Diego, CA 92131

The Huntington Beach Gables Homeowners Assoc
c/o Goe Forsythe & Hodges LLP
18101 Von Karman Ave, Suite 1200
Irvine, CA 92612-7119

Theodore Phillips
17612 Sandea Lee
Huntington Beach CA 92649

Theodore R ''Ted'' Phill
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

United Airlines
233 S. Hacker Dr.
Chicago, IL 60606-6462

United Airlines
P.O. Box 0675
Carol Stream, 60132-0675

United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Vivienne J Alston
Alston, Alston & Diebold
27201 Puerta Real Ste 300
Mission Viejo, CA 92691-7359

qennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286

zanine Jasso
16025 Harmington Lane
Huntington Beacha CA 92649-2278

Christopher L Blank
Christopher L Blank, Esq
2973 Harbor Blvd #506
92626
Costa Mesa, CA 92626-3912

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

Jamie Lynn Gallian
16222 Monterey Ln Unit 376
Huntington Beach, CA 92649-2258

Jeffrey I. Golden (TR)
Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, CA 92626-3067

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Janine Jasso
P.O. Box 370161
El Paso, TX 79937

US Bank
P O Box 5229
Cincinnati OH 45201-5229

(d)US Bank NA
PO Box 64799
Saint Paul, MN 55164

(d)Janine Jasso
PO Box 370161
El Paso, CA 79937

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)The Huntington Beach Gables Homeowners Ass

(u)Michael Chulak-tunknown)
Mchulak@MTcLaw.com

(d)People of the St of CA
8141 13th Street
Westminster, CA 92683-4576

End of Label Matrix
Mailable recipients    92
Bypassed recipients     4
Total                  96

**ES 614**                    **ES 614**                    **ES 614**

1  ERIC P. ISRAEL (State Bar No. #132426)
   *EPI@LNBYG.COM*
2  LEVENE, NEALE, BENDER, YOO &
   GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
   Los Angeles, CA 90034
4  Phone:      310-229-1234
   Facsimile: 310-229-1244
5

6  Attorneys for Jeffrey I. Golden, Trustee

7

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                 SANTA ANA DIVISION

12 | In re | Case No. 8:21-bk-11710-SC |
13 | JAMIE LYNN GALLIAN, | Chapter 7 |
14 | Debtor. | **DECLARATION OF LORI ALVAREZ RE** |
15 | | **COURT'S ORDER VACATING MARCH 4,** |
   | | **2025 AUCTION RESULTS AND RE-** |
16 | | **SETTING AUCTION FOR MARCH 27, 2025** |
   | | **(*DOCKET NO. 569*)** |
17 | | Date:  March 27, 2025 |
18 | | Time:  10:00 a.m. |
   | | Ctrm:  5C |
19 | | 411 West Fourth Street |
   | | Santa Ana, California |
20

21    I, Lori Alvarez, declare as follows:[1]

22    1.      I am an individual over 18 years of age.

23    2.      The facts set forth below are true of my personal knowledge.  If called upon to do so,

24 I could and would competently testify as to the facts set forth in this Declaration.

25

26 ────────────────────

27 [1] Although I understand that the Court asked for declarations of conversations between buyers and brokers to be filed by March 20, 2025, since I was not retained by Mr. Peplin until March 19, 2025, I was unable to submit this declaration sooner, but am filing it as soon as possible thereafter.

28                          1

3.      I am a licensed real estate salesperson with Real Estate Resolved ("RE Resolved").

4.      I was recently contacted by Greg Peplin to represent him as overbidder to purchase the manufactured home described as a 2014 Skyline Custom Villa, decal no. LBM 1081 (the "Property") currently located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Space") (the "Property") from Jeffrey I. Golden, the Chapter 7 trustee for Jamie Lynn Gallian (the "Debtor").  I just signed a written agreement with Mr. Peplin on March 19, 2025.

5.      Until this week when I spoke with Mr. Peplin, I have had no dealings with Mr. Peplin.  I have never met or spoken with Jamie Lynn Gallain or Jeff Golden.  I only spoke on March 21, 2025 with Eric Israel in order to prepare this declaration.

6.      I have had no conversations with David Guarino, Richard Herr or anyone else from Galaxy Homes.  I have not spoken with any other potential overbidders and do not intend to do so at any time through the March 27, 2025 auction hearing.

7.      I understand that if Mr. Peplin is the successful bidder and the Court confirms the sale to him, a 3% commission would be payable to me, subject to Court approval.  I have not agreed to share any commission I receive with any party other than my real estate brokerage – RE Resolved.

8.      I intend to appear at the auction hearing on March 27, 2025, at 10:00 a.m. ***Honchariw*** and will be available to answer any questions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at La Verne, California, on March 22, 2025.

_____

LORI ALVAREZ

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **DECLARATION OF LORI ALVAREZ RE COURT'S ORDER VACATING MARCH 4, 2025 AUCTION RESULTS AND RE-SETTING AUCTION FOR MARCH 27, 2025 (DOCKET NO. 569)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 24, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Bradford Barnhardt    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- Christopher L Blank    chris@chrisblanklaw.com
- Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- Jeffrey I Golden (TR)    lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com
- D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- Brandon J. Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- Eric P Israel    epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- Shantal Malmed    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
- Shantal Malmed    , cheryl.caldwell@gmlaw.com
- Mark A Mellor    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- Laila Rais    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- Valerie Smith    claims@recoverycorp.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**: On **March 24, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 24, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                ES 617                        F 9013-3.1.PROOF.SERVICE

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 24, 2025 | D. Woo | /s/ D. Woo |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

Label Matrix for local noticing
0973-8
Case 8:21-bk-11710-SC
Central District of California
Santa Ana
Mon Mar 24 09:16:29 PDT 2025

Christopher L Blank, Attorney at Law, PC
2973 Harbor Blvd
Box 506
COSTA MESA, CA 92626-3912

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA    92660-6377

Houser Bros. Co. dba Rancho Del Rey Mobile H
c/o Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620-3663

Levene Neale Bender Yoo & Golubchik L.L.P.
2818 La Cienega Ave
Los Angeles, CA 90034-2618

Santa Ana Division
411 West Fourth Street, Suite 2030,
Santa Ana, CA 92701-4500

16222 MONTEREY LANE UNIT 376
HUNTINGTON BEACH, CA 92649-2258

Association of Flight Attendants
625 No. River Road Ste. 4020
Rosemont, IL. 60018

BS Investors
Robert P. Warmington C/o
Gorden May Grant, Genovese & Baratta
2030 Hain St. Ste. 1600
Irvine, CA 92614

County of Orange
P.O. Box 4515
Santa Ana CA 92702-4515

County of Orange Treasurer-Tax Collector
P.O. Box 4515
Santa Ana CA 92702-4515

Danning, Gill, Israel & Krasnoff, LLP
1901 Ave of The Stars, Ste 450
Los Angeles CA 90067-6006

David R. Flyer
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7907

Frank Satalino
19 Velarde Ct.
Rancho Santa Margarita, CA 92688-8502

Gordon Rees Scully & Mansukhani
5 Park Plaza Ste. 1100
Irvine, CA 92614-8502

Gordon Rees Scully & Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Houser Bros. Co.
DBA Rancho Del Rey Estates
16222 Monterey Ln
Huntington Beachr CA 92649-6214

Houser Bros. Co.dba Rancho Del
Rey Mobile Home Estates
17610 Beach Blvd Ste. 32
Huntington Beach, CA 92647-6876

Houser Brothers Co.
dba Rancho Del Rey Mobilehome Est.
17610 Beach Blvd. Ste. 32
Huntington Beach, CA 92647-6876

Huntington Beach Gables HOA
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300 Laguna
Hllls, CA 92653-7907

Huntington Beach Gables Homeowners Associati
Epstein, Grinnel & Howell, APC
10200 Willow Creek Rd Ste 100
San Diego CA 92131-1655

Huntington Harbor Village
16400 Saybrook
Huntington Beach, CA 92649-2277

Huntington Hobile Home Inv. LLC.
430 S. San Dimas Ave.
San Dimasa CA 91773-4045

Huntington Mobile Home Investments
16400 Saybrook Lane
Huntington Beach, CA 92649-2277

Huntington Mobile Home Investments LLC
1100 Newport Beach Blvd. Ste 1150
Newport Beach, CA 92560

Hyundai Capital America
PO BOX 269011
Plano, TX 75026-9011

Hyundal Capital America
PO BOX 269011
Plano, TX 75026-9011

Internal Revenue Service
PO Box 7346
Philadelphia, 19101-7346

ES 619                          ES 619                          ES 619

Internal Revenue Service Insolvency
PO BOX 7346
Philadelphia, PA 19101-7346

J-Sandcastle Co., LLC
16222 Monterey Ln Unit 376
Huntington Beach CA 92649-2258

J-pad, LLC
21742 Anza Avenue
Torrance, CA 90503-6428


J-pad, LLC
2702 N Gaff Street
Orange, CA 92865-2417

James H Cosello
Casello & Lincoln,
525 N Cabrillo Park Dr. Ste 104
Santa Ana, CA 92701-5017

Jamie Lynn Gallian
16222 Monterey Ln #376
Huntington Beach, CA 92649-2258


Janine Jasso
16025 Warmington Lane
Huntington Beach, CA 92649-2278

(p)JANINE JASSO
PO BOX 370161
EL PASO TX 79937-0161

Janine Jasso
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005


Janine Jasso, Jennifer Paulin, Lori Burrett
c/o Goe Forsythe & Hodges LLP
17701 Cowan, Suite 210
Irvine, CA 92614-6840

Jennifer Ann Paulin
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Jennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286


Kia Motors Finance
PO Box 20815
Fountain Valley, CA 92728-0815

Lee Gragnano
16062 Warmington Ave.
Huntington Beacha CA 92649-2285

Lee Gragrano
16062 Warmington Ave.
Huntington Beach, CA 92649-2285


Lee S. Gragnano
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Linda Jean ''Lindy'' Bec
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lindy Beck
4443 Chase Dr.
Huntington Beach, CA 92649-2297


Lisa T. Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239

Lori Ann Burrett
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005

Lori Burrett
16107 Harmington Lane
Huntington Beach, CA 92649-2281


Lori Burrett
16107 Sherlock Lane
Huntington Beach, CA 92649-2293

Mark A.Mellor Mellor Law Firm
c/o Randall Nickell
6800 Indiana Ave.
Riverside, CA 92506-4267

Michael S. Devereux
Wex Law
9171 Wilshire Blvd. Ste. 500
Beverly Hills, CA 90210-5530


Nationwide Reconveyance, LLC
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7908

Orange County Superior Court
c/o Feldsott & Lee
23161 Mill Creek Dr. Ste. 300
Laguna Hills, CA 92653-7907

Patricia Ryan
20949 Lassen St. Apt 208
Chattsworth, CA 91311-4239


People of the St of CA
8141 13th St
Westminster CA 92683-4576

Randall Nickel
11619 Inwood Drive,
Riverside, CA 92503-5000

Randall Nickell
4476 Alderport Dr.
Huntington Beach. CA 92649-2288


**ES 620**                    **ES 620**                    **ES 620**

Randell Nickel
c/o Mark Mellor, Esq.
6800 Indiana Ave. Ste. 220
Riverside, CA 92506-4267

Randall Nickel
c/o Mark Mellor, Esq. Ste. 220 6800
Indiana Ave.
Riverside, CA 92506

Raquel Flyer-Dashner
4120 Birch St. Ste. 101,
Newport Beach, CA 92660-2228


Robert P. Warmington Co.
c/o BS Investors
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Robert P. Warmington Co.
c/o BS Investors LP
18201 Von Karmen Ste. 450
Irvine, CA 92612-1195

Rutan & Tucker
18575 Jamboree Rd 9th Fl
Irvine CA 92612-2559


S4 A California Limited Partnership
1001 Cove St Ste 230
Newport Beach CA 92660

Sandra L. Bradley
18 Meadowwood
Coto De Caza, CA 92679-4738

Sardra Bradley
18 Meadow Hood
Coto De Caza, CA 92679-4738


Stanley Feldsott: Esq
Feldsott & Lee
23161 Mill Creek Drive
Laguna Hills, CA 92653-7907

Steven A. Fink
13 Corporate Plaza Ste. 150
Newport Beach, CA 92660-7919

Superior Court of CA
County of Orange
711 Civic Center Dr West
Santa Ana CA 92701-3907


Superior Default Services Inc
c/o Feldsott & Lee
23161 Mill Creek Drive Ste 300
Laguna Hills, CA 92653-7908

Suzanne Tague
Ross Wolcott, Teinert, Prout
3151 Airway Ave. S-1
Costa Mesa, CA 92626-4607

Ted Phillips
17162 Sandra Lee
Huntington Beach, CA 92649


Ted Phillips
17912 Sandra Lee
Huntington Beach, CA 92649

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell APC
10200 Willow Creek Road, Ste 100
San Diego, CA 92131-1669

The Huntington Beach Gables
Homeowners Association
c/o Epsten Grinnell & Howell,
APC 10200 Willow Creek Road,
Ste 100
San Diego, CA 92131


The Huntington Beach Gables Homeowners Assoc
c/o Goe Forsythe & Hodges LLP
18101 Von Karman Ave, Suite 1200
Irvine, CA 92612-7119

Theodore Phillips
17612 Sandea Lee
Huntington Beach CA 92649

Theodore R ''Ted'' Phill
c/o Gordon Rees Scully &
Mansukhani
633 W 5th Street, 52nd Floor
Los Angeles, CA 90071-2005


(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

United Airlines
233 S. Hacker Dr.
Chicago, IL 60606-6462

United Airlines
P.O. Box 0675
Carol Stream, 60132-0675


United States Trustee (SA)
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4500

Vivienne J Alston
Alston, Alston & Diebold
27201 Puerta Real Ste 300
Mission Viejo, CA 92691-7359

qennifer Paulin
4446 Alderport Dr.
Huntington Beach, CA 92649-2286


zanine Jasso
16025 Harmington Lane
Huntington Beacha CA 92649-2278

Christopher L Blank
Christopher L Blank, Esq
2973 Harbor Blvd #506
92626
Costa Mesa, CA 92626-3912

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

Jamie Lynn Gallian
16222 Monterey Ln Unit 376
Huntington Beach, CA 92649-2258

Jeffrey I Golden (TR)
Golden Goodrich LLP
3070 Bristol Street, Suite 640
Costa Mesa, CA 92626-3067

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660-6377

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Janine Jasso
P.O. Box 370161
El Paso, TX 79937

US Bank
P O Box 5229
Cincinnati OH 45201-5229

(d)US Bank NA
PO Box 64799
Saint Paul, MN 55164

(d)Janine Jasso
PO Box 370161
El Paso, CA 79937

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF

(u)The Huntington Beach Gables Homeowners Ass

(u)Michael Chulak-tunknown)
Mchulak@MTcLaw.com

(d)People of the St of CA
8141 13th Street
Westminster, CA 92683-4576

End of Label Matrix
Mailable recipients    92
Bypassed recipients     4
Total                  96

**ES 622**          **ES 622**          **ES 622**