1  CHRISTOPHER L. BLANK (SBN 115450)
   CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2  2973 Harbor Blvd. #506
   Costa Mesa, CA 92626
3  Telephone:    (949) 250-4600
   Email:       chris@chrisblanklaw.com
4
   Attorney for Appellant Jamie Lynn Gallian
5

6

7
                    UNITED STATES BANKRUPTCY COURT
8
                    CENTRAL DISTRICT OF CALIFORNIA
9

10
   In Re                          )
11                                ) **District Court Case No.**
                                  )
12                                ) **8:25-cv-00827-CV**
   JAMIE LYNN GALLIAN             )
13                                ) **Bankruptcy Court Case No.**
                                  )
14                Debtor.         ) **8:21-bk-11710-SC**
                                  )
15 _____) **APPELLANT'S APPENDEX OF**
                                  ) **DOCUMENTS DESIGNATED FOR**
16 JAMIE LYNN GALLIAN, Appellant  ) **APPEAL AND INDEX – VOLUME 2**
                                  )
17 vs.                            )
                                  )
18 JEFFREY GOLDEN, TRUSTEE, Appellee )
                                  )
19                                )
                                  )
20 _____)

21

22       TO THE COURT AND INTERESTED PARTIES: Debtor/Appellant, Jamie Lynn

23 Gallian, hereby submits her Appendix of Documents Designated for Record on Appeal which is

24 attached hereto.

25 Dated: July 14, 2025              CHRISTOPHER L. BLANK, ATTORNEY
                                     AT LAW, PC
26

27                                   By:   __/S/*Christopher L. Blank*_____
                                           Christopher L. Blank, Attorney for Debtor
28                                         Jamie Lynn Gallian

                                    1

| Filing Date | # | Docket Text | Bates Nos. |
|---|---|---|---|
| | | VOLUME 1 | |
| 01/31/2025 | 538<br>(89 pgs) | Motion for Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points and Authorities, Declaration of Jeffrey I. Golden and Request for Judicial Notice; proof of service* Filed by Trustee Jeffrey I Golden (TR) (Israel, Eric) (Entered: 01/31/2025) | ER 1 - 89 |
| 01/31/2025 | 539<br>(160 pgs;<br>3 docs) | Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) *Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption; Memorandum of Points and Authorities, Declarations of Jeffrey I. Golden and Greg Bingham and Request for Judicial Notice in Support Thereof, With Proof of Service.* Fee Amount $199, Filed by Trustee Jeffrey I Golden (TR) (Attachments: # 1 Exhibit Exhibits 1 to 12 # 2 Proof of Service) (Israel, Eric) (Entered: 01/31/2025) | ER 90 - 249 |
| 01/31/2025 | 542<br>(12 pgs) | Notice of Hearing *Trustee's Notice of Hearing on Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption, With Proof of Service* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)539 Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) *Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption; Memorandum of Points and Authorities, Declarations of Jeffrey I. Golden and Greg Bingham and Request for Judicial Notice in Support Thereof, With Proof of Service.* Fee Amount $199, Filed by Trustee Jeffrey I Golden (TR) (Attachments: # 1 | ER 250 - 261 |

| | | | |
|---|---|---|---|
| | | Exhibit Exhibits 1 to 12 # 2 Proof of Service)). (Israel, Eric) (Entered: 01/31/2025) | |
| 01/31/2025 | [543](#)<br>(9 pgs) | Notice of Hearing *Chapter 7 Trustee's Notice of Hearing on Motion for Order Compelling Debtor and any other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance, With Proof of Service* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)[538](#) Motion for Turnover of Property - *Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points and Authorities, Declaration of Jeffrey I. Golden and Request for Judicial Notice; proof of service* Filed by Trustee Jeffrey I Golden (TR)). (Israel, Eric) (Entered: 01/31/2025) | ER 262 – 270 |
| 02/13/2025 | [551](#)<br>(4 pgs) | Notice *Joinder in Support of Trustee's Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption; with Proof of Service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)[539](#) Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) *Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption; Memorandum of Points and Authorities, Declarations of Jeffrey I. Golden and Greg Bingham and Request for Judicial Notice in Support Thereof, With Proof of Service.* Fee Amount $199, Filed by Trustee Jeffrey I Golden (TR) (Attachments: # 1 Exhibit Exhibits 1 to 12 # 2 Proof of Service)). (Hays, D) (Entered: 02/13/2025) | ER 271 – 274 |
| 02/13/2025 | [552](#)<br>(12 pgs) | Notice *of Joinder in Support of Trustee's Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; with Proof of Service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)[538](#) Motion for | ER 275 – 286 |

| | | | |
|---|---|---|---|
| | | Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points and Authorities, Declaration of Jeffrey I. Golden and Request for Judicial Notice; proof of service Filed by Trustee Jeffrey I Golden (TR)). (Hays, D) (Entered: 02/13/2025)* | |
| 02/18/2025 | 553 (6 pgs) | Substitution of attorney Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 02/18/2025) | ER 287 – 292 |
| 02/18/2025 | 554 (52 pgs) | Opposition to (related document(s): 538 Motion for Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points a filed by Trustee Jeffrey I Golden (TR), 539 Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. filed by Trustee Jeffrey I Golden (TR), 551 Notice filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates, 552 Notice filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates) Filed by Debtor Jamie Lynn Gallian (Blank, Christopher) (Entered: 02/18/2025)* | ER 293 – 344 |
| 02/25/2025 | 558 (59 pgs) | Reply to (related document(s): 538 Motion for Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points a filed by Trustee Jeffrey I Golden (TR), 539 Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. filed by Trustee Jeffrey I Golden (TR)) Joint Omnibus Reply in Support of (1) Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of* | ER 345 – 403 |

| | | | |
|---|---|---|---|
| | | *Writ of Assistance; and (2) otion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption; with Proof of Service Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (Hays, D) (Entered: 02/25/2025)* | |
| 02/25/2025 | 559 (10 pgs) | Objection (related document(s): 554 Opposition filed by Debtor Jamie Lynn Gallian) *Joint Evidentiary Objections to Declaration of Jamie Lynn Gallian in Support of Debtor's Omnibus Opposition to Trustee's Motions to Sell and For Turnover of Property and Houser Joinders; with Proof of Service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (Barnhardt, Bradford) (Entered: 02/25/2025) | ER 404 – 413 |
| 02/28/2025 | 560 (8 pgs) | Supplemental *Supplemental Declaration Of Greg Bingham Re Receipt Of Overbid Re Chapter 7 Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free And Clear Of Liens And Homestead Exemption (Docket No. 539)* Filed by Trustee Jeffrey I Golden (TR). (Israel, Eric) (Entered: 02/28/2025) | ER 414 – 421 |
| 03/03/2025 | 562 (14 pgs) | Motion To Stay Pending Appeal (related documents 538 Motion for Turnover of Property, 539 Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) - Fee) Filed by Debtor Jamie Lynn Gallian (Blank, Christopher) (Entered: 03/03/2025) | ER 422 – 435 |
| 03/07/2025 | 565 (37 pgs) | Notice of lodgment *re: Proposed Findings of Fact and Conclusions of Law with Proof of Service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)538 Motion for Turnover of Property - *Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points a,* 539 Motion to Sell Property of the Estate Free and Clear of Liens under* | ER 436 – 472 |

| | | | |
|---|---|---|---|
| | | *Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No.). (Barnhardt, Bradford) (Entered: 03/07/2025)* | |
| 03/07/2025 | 566<br>(8 pgs) | Declaration re: *Gregory A. Peplin re: Good Faith Purchaser with proof of service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)539 Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) *Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No.). (Barnhardt, Bradford) (Entered: 03/07/2025)* | ER 473 – 480 |
| 03/07/2025 | 567<br>(14 pgs) | Notice of lodgment *Debtor's Proposed Findings of Fact and Conclusions of Law* Filed by Debtor Jamie Lynn Gallian (RE: related document(s)538 Motion for Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points a, 539 Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No.). (Blank, Christopher) (Entered: 03/07/2025)* | ER 481 – 494 |
| 03/12/2025 | 568<br>(6 pgs) | Opposition to (related document(s): 566 Declaration filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates) Filed by Debtor Jamie Lynn Gallian (Blank, Christopher) (Entered: 03/12/2025) | ER 495 – 500 |
| 03/13/2025 | 569<br>(3 pgs) | Order Vacating Auction Results From March 4, 2025, Hearing And Setting New Auction Date Of March 27, 2025. IT IS ORDERED: The Solution To Ensure Undivided Loyalty, Avoid Conflicts And To Provide Full Transparency, Is To VACATE The Auction Results Of March 4, 2025, And Order That A SECOND AUCTION Shall Be Held On March 27, 2025, At 10:00 A.M. With Prior Full Disclosures Of Broker Representations Of Any Buyers And | ER 501 – 503 |

| | | | |
|---|---|---|---|
| | | Supporting Declarations Regarding Any Conversations That Have Occurred Between Any Buyer And/Or Broker. Any Further Disclosures And Supporting Evidence Must Be Filed By No Later Than March 20, 2025. (Hearing To Be Held In Courtroom 5C, Located At 411 West Fourth Street, Santa Ana, CA 92701) (SEE ORDER FOR FURTHER RULING) (BNC-PDF) (Related Doc # 539 ) Signed on 3/13/2025 (NB8) (Entered: 03/13/2025) | |
| 03/14/2025 | 570<br>(12 pgs) | Notice *Of Entry Of Order Vacating Auction Results And Rescheduling Auction (Docket No. 569)* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)569 Order Vacating Auction Results From March 4, 2025, Hearing And Setting New Auction Date Of March 27, 2025. IT IS ORDERED: The Solution To Ensure Undivided Loyalty, Avoid Conflicts And To Provide Full Transparency, Is To VACATE The Auction Results Of March 4, 2025, And Order That A SECOND AUCTION Shall Be Held On March 27, 2025, At 10:00 A.M. With Prior Full Disclosures Of Broker Representations Of Any Buyers And Supporting Declarations Regarding Any Conversations That Have Occurred Between Any Buyer And/Or Broker. Any Further Disclosures And Supporting Evidence Must Be Filed By No Later Than March 20, 2025. (Hearing To Be Held In Courtroom 5C, Located At 411 West Fourth Street, Santa Ana, CA 92701) (SEE ORDER FOR FURTHER RULING) (BNC-PDF) (Related Doc # 539) Signed on 3/13/2025 (NB8)). (Israel, Eric) (Entered: 03/14/2025) | ER 504 – 515 |
| 03/18/2025 | 573<br>(4 pgs) | Notice of sale of estate property (LBR 6004-2) Manufactured home described as a 2014 Skyline Custom Villa, Decal No. LBM1081, presently located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649. Filed by Trustee Jeffrey I Golden (TR). (Israel, Eric) (Entered: 03/18/2025) | ER 516 – 519 |
| 03/20/2025 | 577<br>(26 pgs) | Declaration re: *Supplemental Declaration Of Gregory A. Peplin Re Courts Order Vacating March 4, 2025 Auction Results And Re-Setting Auction For March 27, 2025 (Docket No. 569)* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)569 Order on Motion To Sell (BNC-PDF)). (Israel, Eric) (Entered: 03/20/2025) | ER 520 – 545 |

| | | | |
|---|---|---|---|
| 03/20/2025 | 578<br>(69 pgs) | Declaration re: *Supplemental Declaration Of Greg Bingham Re Marketing Efforts After Vacating March 4, 2025 Auction Results And Scheduling New Auction Re Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No. LBM1081 (Docket No. 569)* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)569 Order on Motion To Sell (BNC-PDF)). (Israel, Eric) (Entered: 03/20/2025) | ER 546 – 614 |
| 03/24/2025 | 580<br>(8 pgs) | Declaration re: *Declaration Of Lori Alvarez Re Courts Order Vacating March 4, 2025 Auction Results And Re-Setting Auction For March 27, 2025 (Docket No. 569)* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)569 Order on Motion To Sell (BNC-PDF)). (Israel, Eric) (Entered: 03/24/2025) | ER 615 – 622 |
| | | VOLUME 2 | |
| 03/25/2025 | 581<br>(28 pgs) | Supplemental *Compendium of Out of Circuit Cases re Trustee's Motion for Sale [Docket 539]* Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) - See docket entry no.: 582 for corrections Modified on 3/26/2025 (NB8). (Entered: 03/25/2025) | ER 623 – 650 |
| 03/26/2025 | 583<br>(5 pgs) | Notice *of Errata* Filed by Debtor Jamie Lynn Gallian (RE: related document(s)581 Supplemental *Compendium of Out of Circuit Cases re Trustee's Motion for Sale [Docket 539]* Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) - See docket entry no.: 582 for corrections Modified on 3/26/2025 (NB8).). (Blank, Christopher) (Entered: 03/26/2025) | ER 651 - 655 |
| 03/28/2025 | 585<br>(4 pgs) | Order Establishing Evidentiary Hearing For Interested Parties To Provide Further Evidence In Support Or Opposition To A Determination Of A Section 363(m) Finding With Respect To The Successful Buyer Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081. - IN PERSON ONLY NO ROMOTE HEARING. IT IS ORDERED: The Court Finds Good Cause, In The Interest Of The Bankruptcy Process, To Permit Any Party, Including Debtor, Additional Time To Further Address Their Positions And Present Evidence On This Particular Subject On The Record. For This | ER 656 - 659 |

| | | | |
|---|---|---|---|
| | | Reason, The Court Hereby Sets An EVIDENTIARY HEARING On The Matter Of The Request For A Section 363(m) Finding On APRIL 10, 2025, AT 1:30 P.M. In Courtroom 5C. THE HEARING Shall Be IN PERSON ONLY And No Remote Hearing Opportunities Will Be Afforded To The Parties Or Witnesses. The BRIEFING SCHEDULE Shall Be As Follows: 1. THE EVIDENTIARY HEARING Will Be Held On APRIL 10, 2025, AT 9:30 A.M. In Courtroom 5C. 2. An Evidentiary Hearing Brief Shall Be Filed And Served By All Parties Opposing The Trustee's Request For A Section 363(m) Good Faith Finding By April 4, 2025. 3. Any Brief(s) In Reply To The Opposition(s) May Be Filed And Served By No Later Than April 8, 2025. 4. If Any Witness To Be Presented By Any Party Is Not Physically Present In Courtroom 5C On April 10, 2025, At 9:30 A.M. Their Declaration, And Any Evidence Attached Thereto, Will Be Stricken. 5. No Further Briefing Shall Be Filed Without Good Cause Shown And Without Separate Written Application For Leave To File Further Pleadings. 6. Any Untimely Filed Pleading Will Be Stricken. 7. The Parties Are Cautioned That The Evidentiary Hearing Is Expressly Limited To The Issue Of Whether A Section 363(m) Good Faith Finding Can Be Made As To The Successful Bidder Of The Property, Mr. Peplin. (SEE ORDER FOR FURTHER RULING.) (BNC-PDF) (Related Doc # 584 ) Signed on 3/28/2025 (NB8) (Entered: 03/28/2025) | |
| 04/04/2025 | 589 (5 pgs) | Brief *Evidence and Argument re Good Faith* Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 04/04/2025) | ER 660 – 664 |
| 04/05/2025 | 590 (22 pgs) | Proof of service *and Exhibit 1 re Debtor's Evidence and Argument re Bad Faith* Filed by Debtor Jamie Lynn Gallian (RE: related document(s)589 Brief). (Blank, Christopher) (Entered: 04/05/2025) | ER 665 – 686 |
| 04/08/2025 | 591 (31 pgs) | Reply to (related document(s): 589 Brief filed by Debtor Jamie Lynn Gallian) *Joint Reply in Support of 11 U.S.C. Section 363(m) Finding re: Gregory A. Peplin; with proof of service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (Hays, D) (Entered: 04/08/2025) | ER 687 – 717 |
| 04/08/2025 | 592 (44 pgs) | Notice *of Unpublished Authority in Support of Joint Reply in Support of 11 U.S.C. Section 363(m)* | ER 718 – 761 |

| | | | |
|---|---|---|---|
| | | *Finding re: Gregory A. Peplin; with Proof of Service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates (RE: related document(s)591 Reply to (related document(s): 589 Brief filed by Debtor Jamie Lynn Gallian) *Joint Reply in Support of 11 U.S.C. Section 363(m) Finding re: Gregory A. Peplin; with proof of service* Filed by Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates). (Hays, D) (Entered: 04/08/2025) | |
| 04/10/2025 | 593 (26 pgs) | ORDER RE: (1) Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turn Over Manufactured Home And Authorizing Issuance Of Writ Of Assistance (Docket 538 ). (2) Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free And Clear Of Liens And Homestead Exemption (Docket 539 ); And (3) Good Faith Finding Pursuant To Section 363(m). IT IS ORDERED: As Set Forth Above, Trustee May Sell The Property And Obtain Turnover Of The Property. Debtor's Objections Are Overruled. Mr. Peplin Is The Successful Bidder And Is Awarded The Finding Of A Good Faith Buyer Under Section 363(m). Debtor Has Requested A Denial Of A 6004(h) Waiver To Give Her Time To Preserve Her Appeal Rights, Which Is The Purpose Of 6004(h). However, Debtor, Prior To The Issuance Of This Memorandum Opinion, Has Filed Both A Notice Of Appeal And Motion For A Stay Pending Appeal. The Motion For Stay Pending Appeal Shall Be Addressed In A Separate Order. The Trustee's Request For A Waiver Of Rule 6004(h) Is Granted. (SEE ORDER FOR FURTHER RULING) (BNC-PDF) (Related Doc # 539 ) Signed on 4/10/2025 (NB8) (Entered: 04/10/2025) | ER 762 – 787 |
| 04/10/2025 | 594 (15 pgs) | ORDER Denying Motion For Stay Pending Appeal. IT IS ORDERED: For All The Foregoing Reasons, The Court Finds Good Cause To DENY The Motion For Stay Pending Appeal. The Parties Are Ordered To Submit (a) This Order Denying Motion For Stay Pending Appeal And (b) The Order RE (1) Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turnover Manufactured Home And Authorizing Issuance Of | ER 788 – 802 |

| | | | |
|---|---|---|---|
| | | Writ Of Assistance; (2) Trustee's Motion To Authorize Sale Of Manufactured Home; And (3) Good Faith Finding Pursuant To Section 363(m) Entered April 10, 2025 (Docket 593) To Any District Court Or Bankruptcy Appellate Panel That Further Considers Any Motion For Stay Pending Appeal. (SEE ORDER FOR FURTHER RULING) (BNC-PDF) Signed on 4/10/2025 (RE: related document(s)562 Motion To Stay Pending Appeal filed by Debtor Jamie Lynn Gallian). (NB8) (Entered: 04/10/2025) | |
| 04/14/2025 | 597<br>(13 pgs) | Declaration re: *Declaration Of Eric P. Israel Requesting Supplemental Orders On: (1) Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turn Over Of Manufactured Home And Authorizing Issuance Of Writ Of Assistance (Dk. 538); (2) Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free And Clear Of Liens And Homestead Exemption (Dk. 539)* Filed by Trustee Jeffrey I Golden (TR) (RE: related document(s)538 Motion for Turnover of Property -*Chapter 7 Trustee's Notice of Motion and Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance; Memorandum of Points a,* 539 *Motion to Sell Property of the Estate Free and Clear of Liens under Section 363(f) Trustees Notice of Motion and Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No.).* (Israel, Eric) (Entered: 04/14/2025) | ER 803 - 815 |
| 04/14/2025 | 598<br>(3 pgs) | Supplemental Order Granting Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free And Clear Of Liens And Homestead Exemption. IT IS ORDERED: 1. The Sale Motion (Docket 539 ) Is GRANTED In Its Entirety. 2. The Proposed Overbid Procedures Are APPROVED. 3. The Sale By The Trustee Of The Entirety Of The Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081 (The "Property"), | ER 816 – 818 |

| | | | |
|---|---|---|---|
| | | Including The Interests Of J-Sandcastle, LLC, To Greg Peplin (The "Buyer") For $276,000.00, Is CONFIRMED On The Terms And Conditions Set Forth In The Sale Motion And In The Purchase And Sale Agreement Attached As Exhibit "1" To The Sale Motion. (SEE ORDER FOR FURTHER RULING) (BNC-PDF) (Related Doc # 539 ) Signed on 4/14/2025 (NB8) (Entered: 04/14/2025) | |
| 04/14/2025 | 599 (3 pgs) | Supplemental Order Granting Trustee's Motion For Order Compelling Turnover Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081 (Docket No. 538 ). IT IS ORDERED: 1. The Turnover Motion (Docket 538 ) Is GRANTED In Its Entirety. 2. Debtor And Any Other Occupants Of The Property Must Vacate And Turn Over All Possession, Custody And Control Of The Property To The Trustee By April 24, 2025. 3. The Debtor And Any Other Occupants Of The Property Must Leave The Property Vacant And In Its Present, Good, Broom-Swept Condition Without Any Refuse, Trash, Or Personal Belongings Remaining. 4. The Debtor And Any Occupants Of The Property Must Provide The Trustee With All Keys To The Property, Along With Any Security Codes And Garage Door And/Or Gate Openers, By April 24, 2025. 5. The Trustee Is Authorized To Prepare A Writ Of Assistance Consistent With This Order For Issuance By The Clerk Of The Court. The Trustee May Levy Or Execute On Such Writ Should The Debtor Or Any Other Occupants Fail To Timely Vacate The Property As Set Forth In This Order. (SEE ORDER FOR FUTHER RULING) (BNC-PDF) (Related Doc # 538 ) Signed on 4/14/2025 (NB8) (Entered: 04/14/2025) | ER 819 – 821 |
| 04/14/2025 | 600 (41 pgs) | Notice of Appeal and Statement of Election to U.S. District Court.(Official Form 417A) . Fee Amount $298 Filed by Debtor Jamie Lynn Gallian (RE: related document(s)593 Order on Motion To Sell (BNC-PDF), 598 Order on Motion To Sell (BNC-PDF), 599 Order on Motion for Turnover of Property (BNC-PDF)). Appellant Designation due by 04/28/2025. (Blank, Christopher) (Entered: 04/14/2025) | ER 822 – 862 |
| 04/14/2025 | 601 (1 pg) | Original Holographic signature page Notice of Appeal *Docket #600* Filed by Debtor Jamie Lynn | ER 863 |

| | | | |
|---|---|---|---|
| | | Gallian. (Blank, Christopher) - - See docket entry no.: 602 for corrections Modified on 4/15/2025 (NB8). (Entered: 04/14/2025) | |
| 04/15/2025 | 603 (6 pgs) | Original Holographic signature page Debtor's Notice of Appeal [Docket 600] Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 04/15/2025) | ER 864 – 869 |
| 04/15/2025 | 605 (61 pgs; 6 docs) | Notice Of Referral Of Appeal To United States District Court with certificate of mailing (RE: related document(s)600 Notice of Appeal and Statement of Election (Official Form 417A) filed by Debtor Jamie Lynn Gallian) (Attachments: # 1 Notice of Appeal and Statement of Election # 2 Holographic Signature of Debtor's Counsel on Debtor's Notice of Appeal # 3 Notice of Transcript(s) Designated for an Appeal # 4 Transcript Order Form # 5 Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit) (NB8) (Entered: 04/15/2025) | ER 870 – 930 |
| 04/21/2025 | 608 (2 pgs) | Notice Regarding Appeal from Bankruptcy Court. District Court Case 8:25cv00827CV. Originally Filed on 04/21/25. (RE: related document(s)605 Notice Of Referral Of Appeal To United States District Court with certificate of mailing (RE: related document(s)600 Notice of Appeal and Statement of Election (Official Form 417A) filed by Debtor Jamie Lynn Gallian) (Attachments: # 1 Notice of Appeal and Statement of Election # 2 Holographic Signature of Debtor's Counsel on Debtor's Notice of Appeal # 3 Notice of Transcript(s) Designated for an Appeal # 4 Transcript Order Form # 5 Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit) (NB8)). (DG) (Entered: 04/21/2025) | ER 931 – 932 |
| 04/22/2025 | 609 (2 pgs) | Assignment notice of USDC case/judge to appeal - Assigned USDC Case No.: 8:25-cv-00827-CV (filed at United States District Court on 4/21/2025) (RE: related document(s)600 Notice of Appeal and Statement of Election (Official Form 417A) filed by Debtor Jamie Lynn Gallian) (NB8) (Entered: 04/22/2025) | ER 933 – 934 |
| 04/28/2025 | 610 (1 pg) | Transcript Order Form related to an Appeal, regarding Hearing Date 03/04/2025 Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 04/28/2025) | ER 935 |

| | | | |
|---|---|---|---|
| 04/28/2025 | 611 (1 pg) | Transcript Order Form related to an Appeal, regarding Hearing Date 03/27/25 Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 04/28/2025) | ER 936 |
| 04/28/2025 | 612 (1 pg) | Transcript Order Form related to an Appeal, regarding Hearing Date 04/10/2025 Filed by Debtor Jamie Lynn Gallian. (Blank, Christopher) (Entered: 04/28/2025) | ER 937 |
| 04/28/2025 | 613 (6 pgs) | Notice of transcripts Filed by Debtor Jamie Lynn Gallian (RE: related document(s)600 Notice of Appeal and Statement of Election (Official Form 417A)). (Blank, Christopher) (Entered: 04/28/2025) | ER 938 - 943 |

CHRISTOPHER L. BLANK (SBN 115450)
CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2973 Harbor Blvd. #506
Costa Mesa, CA 92626
Telephone:    (949) 250-4600
Email:    chris@chrisblanklaw.com

Attorney for Debtor Jamie Lynn Gallian

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | ) BK Case No. 8:21-bk-11710-SC |
| | ) |
| | ) **Chapter 7** |
| | ) |
| JAMIE LYNN GALLIAN | ) **DEBTOR'S COMPENDIUM OF OUT OF** |
| | ) **CIRCUIT CASES RE TRUSTEE'S SALE** |
| | ) **MOTION** |
| Debtor. | ) |
| | ) **Date:  March 27, 2025** |
| | ) **Time:  11:00 AM** |
| | ) **Ctrm: 5C Virtual** |
| | ) |
| | ) |
| | ) |

TO THE COURT AND INTERESTED PARTIES: Debtor Jamie Lynn Gallian hereby offers this Compendium of Out of Circuit Case Pertinent to the Trustee's Sale Motion.  The Cases are:

*In re Traverse*, 753 F.3d 19 (1st Cir. 2014) and

*In re Carmichael*, 439 B.R. 884 (Bankr. D. Kan. 2010).

These cases did not come to the undersigned counsel's attention until today; however, because of their close factual similarity to the case at bar and the significance of their holdings, counsel is providing them to the Court and counsel for whatever benefit they might provide.

/////

/////

1    Dated:  March 25, 2025                    CHRISTOPHER L. BLANK, ATTORNEY

2                                              AT LAW, PC

3                                              By:  __/S/*Christopher L. Blank*_____

4                                                   Christopher L. Blank, Attorney for Debtor
                                                     Jamie Lynn Gallian
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KeyCite Yellow Flag - Negative Treatment

Declined to Extend by Rivera Mercado, 1st Cir.BAP (P.R.), April 17, 2019

753 F.3d 19
United States Court of Appeals, First Circuit.

In re Virginia A. TRAVERSE, Debtor.
Mark G. DeGiacomo, Chapter 7 Trustee for the
Estate of Virginia A. Traverse, Appellee,
v.
Virginia A. Traverse, Appellant.

No. 13–9002
|
May 23, 2014.

**Synopsis**

**Background:** Chapter 7 trustee filed adversary complaint, seeking to avoid assignee's unrecorded first mortgage on debtor's home and to preserve the mortgage lien for the benefit of the bankruptcy estate. Debtor filed counterclaim, seeking declaration that, even should trustee successfully avoid and preserve mortgage lien, he could not sell home without first foreclosing mortgage in accordance with state law. Trustee moved for summary judgment on his claims and on debtor's counterclaim. The United States Bankruptcy Court for the District of Massachusetts, William C. Hillman, J., granted the motion, and debtor appealed. The Bankruptcy Appellate Panel, Haines, J., 485 B.R. 815, affirmed. Debtor appealed.

**[Holding:]** The Court of Appeals, Howard, Circuit Judge, held that trustee's powers of sale did not justify selling debtor's home where no equity remained for estate beyond senior claims of secured creditors and debtor's own exempt interest.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (26)

**[1]**  **Bankruptcy** ⚬ Scope of review in general
**Bankruptcy** ⚬ Conclusions of law; de novo review
**Bankruptcy** ⚬ Clear error

On appeal from the Bankruptcy Appellate Panel, the Court of Appeals trains its analysis on the underlying bankruptcy court decision, reviewing factual findings for clear error and conclusions of law de novo.

2 Cases that cite this headnote

**[2]**  **Bankruptcy** ⚬ Conclusions of law; de novo review
**Bankruptcy** ⚬ Review of Appellate Panel

Under the de novo standard, the Court of Appeals does not defer to the bankruptcy court's ruling, but considers the matter anew as though no decision were rendered below; neither does the Court of Appeals cede any deference to the conclusions of the Bankruptcy Appellate Panel.

1 Case that cites this headnote

**[3]**  **Bankruptcy** ⚬ Legal or equitable interests in general

All of the debtor's legal and equitable interests in property at the time of her bankruptcy petition automatically become the property of the bankruptcy estate. 11 U.S.C.A. § 541(a)(1).

1 Case that cites this headnote

**[4]**  **Homestead** ⚬ Acquisition and selection of property in general

In re Traverse, 753 F.3d 19 (2014)

Bankr. L. Rep. P 82,648

**Homestead** ☞ Value

Under the Massachusetts Homestead Act, a debtor may claim an interest of up to $500,000 in a home being used by the debtor as her principal residence. M.G.L.A. c. 188, §§ 1, 3(b).

More cases on this issue

**[5]**　**Bankruptcy** ☞ Application of Proceeds
**Bankruptcy** ☞ Mortgages
**Homestead** ☞ Proceeds of Homestead

Under the Massachusetts Homestead Act, when a debtor declares a property as her homestead, proceeds realized from the sale of that property must be used first to pay off any secured claims and subsequently to satisfy the debtor's claimed exemption before, at last, being turned over to her bankruptcy estate. 11 U.S.C.A. § 522; M.G.L.A. c. 188, §§ 1, 3(b).

More cases on this issue

**[6]**　**Bankruptcy** ☞ Operation and effect
**Bankruptcy** ☞ Sale or Assignment of Property

A bankruptcy trustee is not empowered to sell exempted interests because a debtor's exempted property interests are effectively removed from the estate. 11 U.S.C.A. §§ 363, 522.

2 Cases that cite this headnote

**[7]**　**Bankruptcy** ☞ Encumbered property; limited or joint interests

A bankruptcy trustee ordinarily does not sell property solely for the benefit of secured

creditors. 11 U.S.C.A. § 363.

3 Cases that cite this headnote

**[8]**　**Bankruptcy** ☞ Property pledged or encumbered; redemption rights
**Bankruptcy** ☞ Operation and effect
**Bankruptcy** ☞ Encumbered property; limited or joint interests

Where a debtor claims a homestead exemption in her home, a bankruptcy trustee will typically sell the home only where its value exceeds both the mortgage liens on the property and the debtor's homestead exemption; this excess benefit for the unsecured creditors, calculated as the value of the estate minus any secured claims and exemptions, represents the bankruptcy estate's remaining "equity" in the property. 11 U.S.C.A. § 363.

9 Cases that cite this headnote

**[9]**　**Bankruptcy** ☞ Encumbered property; limited or joint interests

Where a property fails to yield any remaining equity for the bankruptcy estate beyond the value of its secured encumbrances and the debtor's homestead exemption, a trustee generally should not sell the home, but should leave the secured creditors to their own legal means of recovering their claims.

4 Cases that cite this headnote

**[10]**　**Bankruptcy** ☞ Property pledged or encumbered; redemption rights
**Bankruptcy** ☞ Mortgages and pledges
**Mortgages and Deeds of Trust** ☞ Power and

In re Traverse, 753 F.3d 19 (2014)

Bankr. L. Rep. P 82,648

Right to Foreclose; Grounds
**Mortgages and Deeds of Trust**←Default or
Breach of Condition

If a debtor continues to satisfy her contractual obligations to the benefit of the creditor, the mortgagee has no grounds to foreclose and the debtor may retain her home through the bankruptcy proceedings.

[11]    **Bankruptcy**←Preservation of lien for benefit of estate
**Bankruptcy**←Operation and effect
**Bankruptcy**←Encumbered property; limited or joint interests

Trustee's powers of sale did not justify selling debtor's home where no equity remained for estate beyond senior claims of secured creditors and debtor's own exempt interest; although trustee avoided and preserved creditor's mortgage for benefit of bankruptcy estate, and inherited standing of secured creditor, preserved mortgage could not double as unsecured equity to trigger trustee's sale powers to capture proceeds of sale for estate up to amount of security interest where debtor was current on all mortgage payments. 11 U.S.C.A. §§ 363, 522, 544, 551; M.G.L.A. c. 188, §§ 1, 3(b).

7 Cases that cite this headnote

[12]    **Bankruptcy**←Core or related proceedings

Trustee's complaint which arose out of his avoidance and preservation strong-arm powers, and debtor's counterclaim disputing bankruptcy estate's rights to her real property, stemmed directly from debtor's bankruptcy filing, as required for bankruptcy court to exercise jurisdiction in entering final order on all claims. 11 U.S.C.A. §§ 551, 554.

[13]    **Bankruptcy**←Liens and security interests in general
**Bankruptcy**←Trustee as representative of debtor or creditors
**Bankruptcy**←Preservation of lien for benefit of estate

Where a creditor has an unperfected lien on a debtor's property, the Bankruptcy Code empowers a trustee to avoid and preserve the lien for the benefit of the estate. 11 U.S.C.A. §§ 544, 551.

12 Cases that cite this headnote

[14]    **Bankruptcy**←Security Interests in General
**Bankruptcy**←Bona fide purchasers and rights thereof

A bankruptcy trustee's right of avoidance vests the trustee with the powers of a bona fide purchaser of real property for value, and allows the trustee to invalidate unperfected security interests. 11 U.S.C.A. § 544.

3 Cases that cite this headnote

[15]    **Bankruptcy**←Preservation of lien for benefit of estate

A bankruptcy trustee's right of preservation automatically preserves the benefit of the avoided interest for the estate by putting the estate in the shoes of the creditor whose lien is avoided. 11 U.S.C.A. § 551.

9 Cases that cite this headnote

ES 627          ES 627          ES 627

**[16]    Bankruptcy** ⊸ Liens and security interests in general
**Bankruptcy** ⊸ Trustee as representative of debtor or creditors

A bankruptcy trustee may eliminate unperfected liens on a debtor's property and subsequently apply the value represented by those liens to the general estate, bypassing any junior lienholders, to benefit unsecured creditors. 11 U.S.C.A. §§ 544, 551.

3 Cases that cite this headnote

**[17]    Bankruptcy** ⊸ Reaffirmation

A debtor who remains current on her loan payments must also enter into a valid reaffirmation agreement in order to prevent a mortgagee from foreclosing on its security interest after she has filed for bankruptcy. 11 U.S.C.A. § 524(c).

**[18]    Bankruptcy** ⊸ Preservation of lien for benefit of estate

Preservation through a bankruptcy trustee's strong-arm powers may give the bankruptcy estate an exclusive interest in an avoided lien, but it does not give the estate any current ownership interest in the underlying asset. 11 U.S.C.A. §§ 544, 551.

3 Cases that cite this headnote

**[19]    Bankruptcy** ⊸ Trustee as representative of debtor or creditors

**Bankruptcy** ⊸ Preservation of lien for benefit of estate
**Bankruptcy** ⊸ Sale or Assignment of Property

Avoidance and preservation through a bankruptcy trustee's strong-arm powers empower a bankruptcy trustee to sell a newly avoided mortgage as property of the estate, but if the underlying property has been exempted and withdrawn from the "property of the estate," the preservation of a mortgage does not resurrect the trustee's powers over that property itself. 11 U.S.C.A. §§ 363, 544, 551.

8 Cases that cite this headnote

**[20]    Bankruptcy** ⊸ Operation and effect
**Bankruptcy** ⊸ Sale or Assignment of Property

A debtor's exemption cannot prevent a bankruptcy trustee from selling the underlying asset when that asset's value surpasses the exemption amount, and creates additional equity for the bankruptcy estate. 11 U.S.C.A. §§ 522, 363, 544, 551.

2 Cases that cite this headnote

**[21]    Homestead** ⊸ Construction of homestead laws in general

The established policy behind the Massachusetts homestead exemption favors preservation of the family home regardless of the householder's financial condition and inclines courts to construe the exemption liberally in favor of debtors. M.G.L.A. c. 188, §§ 1, 3(b).

**[22]    Bankruptcy** ⊸ Preservation of lien for benefit of

ES 628          ES 628          ES 628

estate
**Mortgages and Deeds of Trust**➤Nature of interest conveyed or created; title or lien

In itself, a mortgage carried neither a right of immediate ownership of the property, nor a right of immediate payment of the secured loan's outstanding value, but only a right to foreclose on the property in the event that debtor defaults on her loan or to receive payment in full when the home is sold through other means; that is the extent of the rights gained by the estate through the trustee's preservation through his strong-arm powers. 11 U.S.C.A. § 551.

[23]    **Bankruptcy**➤Preferences and fraudulent conveyances; avoided transfers
**Bankruptcy**➤Sale or Assignment of Property

To the extent that an avoided fraudulent or post-petition transfer of a debtor's home allows a bankruptcy trustee to sell the underlying property, it does so precisely by permitting the trustee to include the putatively transferred asset in the estate: the home. 11 U.S.C.A. §§ 548, 549.

[24]    **Bankruptcy**➤Trustee as representative of debtor or creditors
**Bankruptcy**➤Preservation of lien for benefit of estate

The objective behind a bankruptcy trustee's powers of avoidance and preservation is to change the priority of creditors' claims to property falling under a debtor's estate, boosting the standing of unsecured creditors against both illegitimate secured claims and junior secured creditors. 11 U.S.C.A. §§ 544, 551.

2 Cases that cite this headnote

[25]    **Bankruptcy**➤Trustee as representative of debtor or creditors
**Bankruptcy**➤Preservation of lien for benefit of estate

Absent a separate agreement to the contrary, avoidance and preservation of a security interest do not entitle a bankruptcy trustee to payments on the underlying debt.

[26]    **Bankruptcy**➤Property pledged or encumbered; redemption rights
**Bankruptcy**➤Preservation of lien for benefit of estate
**Bankruptcy**➤Operation and effect
**Bankruptcy**➤Sale or Assignment of Property

The preservation of a lien entitles a bankruptcy estate to the full value of the preserved lien; where this lien is an undefaulted mortgage on otherwise exempted property, the trustee may for the benefit of the estate enjoy the liquid market value of that mortgage, claim the first proceeds from a voluntary sale, or wait to exercise the rights of a mortgagee in the event of a default, but the trustee may not repurpose the mortgage to transform otherwise exempted assets, to which neither the estate nor the original mortgagee boasted any ownership rights, into the property of the bankruptcy estate. 11 U.S.C.A. §§ 363, 544, 551.

7 Cases that cite this headnote

**Attorneys and Law Firms**

**\*22** David G. Baker for appellant.

Tara Twomey, National Consumer Bankruptcy Rights Center, and Ray DiGuiseppe on brief for the National

ES 629          ES 629          ES 629

In re Traverse, 753 F.3d 19 (2014)
Bankr. L. Rep. P 82,648

Association of Consumer Bankruptcy Attorneys, Amicus Curiae.

Mark G. DeGiacomo, with whom Keri L. Wintle and Murtha Cullina LLP were on brief, for appellee.

Before TORRUELLA, HOWARD, and KAYATTA, Circuit Judges.

**Opinion**

HOWARD, Circuit Judge.

This case requires us to explore the contours of a bankruptcy trustee's lien avoidance and preservation powers under 11 U.S.C. §§ 544 and 551 when a debtor's state-law homestead exemption has been invoked.

In 2005, six years before filing a petition for Chapter 7 bankruptcy, Virginia Traverse **\*23** secured a loan with a mortgage on her home. In the years before her bankruptcy and continuing since filing her petition, Traverse has remained current on all mortgage payments on the property. Because Traverse's home is subject to a homestead exemption under Massachusetts law, in these circumstances the Bankruptcy Code would ordinarily allow Traverse to pass through bankruptcy in possession of her home. Yet because Traverse's bank failed to record the mortgage with the appropriate registry, the bankruptcy trustee contends that his power to avoid and preserve the mortgage justifies him in selling Traverse's home as property of the bankruptcy estate. The bankruptcy judge and Bankruptcy Appellate Panel accepted the trustee's view. We reverse.

**I. Facts and Background**

Virginia A. Traverse resides in a home in Lynn, Massachusetts. She has been the title owner of the property since April 30, 1999, when she recorded her ownership with the Essex County South District Registry of Deeds. On July 11, 2005, Traverse executed a mortgage on the home in favor of Washington Mutual Bank to secure a loan of $200,000. On September 25, 2008, JP Morgan Chase acquired this mortgage as part of its blanket acquisition of Washington Mutual's assets. At no point did either mortgagee record the mortgage on Traverse's home with the Registry of Deeds. Meanwhile, in March of 2007, Traverse executed a second mortgage in favor of Citibank to secure a loan of $31,000, which Citibank recorded in due course. Traverse has kept

current on her mortgage payments to both JP Morgan and Citibank.

On August 14, 2011, Traverse filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. On her bankruptcy schedules, Traverse valued her home at $223,500.[1] She listed the remaining claim secured by JP Morgan's mortgage as $185,777.30 and the claim secured by Citibank's mortgage as $29,431.04. Finally, pursuant to the Massachusetts Homestead Act, Traverse claimed a homestead exemption in the property in the amount of $500,000. Traverse's homestead exemption, which Traverse had formally recorded in a Declaration of Homestead in January 2009, went unchallenged by any interested party.

On December 15, 2011, Mark D. DeGiacomo, acting as the Chapter 7 trustee of Traverse's bankruptcy estate, filed a complaint to avoid JP Morgan's unrecorded mortgage and to preserve it for the benefit of the estate. In response, Traverse filed a counterclaim seeking a declaratory judgment that, even if he preserved the mortgage, DeGiacomo could sell only the mortgage itself and not her underlying property. Traverse argued that because the trustee's preservation of JP Morgan's mortgage gave the estate only the rights of the original mortgagee, it created no right to sell her home until she defaulted on her payments and triggered the right of foreclosure. After DeGiacomo moved for summary judgment, the bankruptcy court granted summary judgment in his favor on all counts and the Bankruptcy Appellate Panel (BAP) affirmed. Both tribunals concluded that, having preserved JP Morgan's interest in Traverse's home for the bankruptcy estate, the trustee was entitled to sell the home in order to liquidate that interest. While not disputing **\*24** that Traverse's current mortgage payments prevented DeGiacomo from foreclosing on her home in his capacity as mortgagee, the bankruptcy court and the BAP concluded that DeGiacomo could nevertheless sell the home pursuant to his core powers as a trustee administering a debtor's property under the Bankruptcy Code.

Traverse now challenges that conclusion as a matter of law.

**II. Standard of Review**

[1] [2] On appeal from the BAP, we train our analysis on the underlying bankruptcy court decision, reviewing factual findings for clear error and conclusions of law de novo. In re Canning, 706 F.3d 64, 68–69 (1st Cir.2013).

Under the *de novo* standard, we do not defer to the bankruptcy court's ruling, but consider the matter anew as though no decision were rendered below. *Id.* at 69. Neither do we cede any deference to the conclusions of the BAP. In re *Hill,* 562 F.3d 29, 32 (1st Cir.2009).

### III. Discussion

**[3] [4] [5]** Under § 541 of the Bankruptcy Code, all of the debtor's legal and equitable interests in property at the time of her bankruptcy petition automatically become the property of the bankruptcy estate. 11 U.S.C. § 541(a)(1); In re *Barroso–Herrans,* 524 F.3d 341, 344 (1st Cir.2008) ("When an individual files for bankruptcy, all of his property ... becomes property of the estate."). Nevertheless, § 522 of the Code allows a debtor to exempt certain property, based either on an enumerated list of federal exemptions or on any alternate exemptions provided by her state. *See* 11 U.S.C. § 522(b); In re *Cunningham,* 513 F.3d 318, 323 (1st Cir.2008); In re *Hildebrandt,* 320 B.R. 40, 43 (1st Cir. BAP 2005). Among the state exemptions incorporated by § 522 is the Massachusetts Homestead Act, which allows a debtor to claim an interest of up to $500,000 in a home being used by the debtor as her principal residence. In re *Peirce,* 483 B.R. 368, 376 (Bankr.D.Mass.2012); *see also* Mass. Gen. Laws ch. 188, § 1. A debtor's declared homestead exemption is insulated from conveyance, sale, or levy to help satisfy the debtor's debts in bankruptcy, with the exception of (as relevant here) a debt secured by a lien on the property, such as a mortgage. Mass. Gen. Laws ch. 188, § 3(b); In re *Swift,* 458 B.R. 8, 15 (Bankr.D.Mass.2011) ("[A] debtor's homestead exemption is not effective against a mortgagee where the mortgage in question was executed before the debtor recorded a declaration of homestead."). The final working of the scheme is that, when a debtor declares a property as her homestead, proceeds realized from the sale of that property must be used first to pay off any secured claims and subsequently to satisfy the debtor's claimed exemption before, at last, being turned over to her bankruptcy estate.

**[6] [7] [8]** A core power of a bankruptcy trustee under § 363(b) of the Code is the right to sell "property of the estate" for the benefit of a debtor's creditors. 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...."). Because a debtor's exempted property interests are effectively removed from the estate, however, see *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), § 363

not empower the trustee to sell exempted interests. In re *Carmichael,* 439 B.R. 884, 890 (Bankr.D.Kan.2010) ("[W]here the debtor's interest is exempted, the estate no longer has an interest that it may sell." (quoting Collier on Bankruptcy ¶ 363.08[3] (16th ed.2012))); *see also* **\*25** In re *Parker,* 142 B.R. 327, 330 (Bankr.W.D.Ark.1992) ("The trustee abandons property of the estate in a chapter 7 case usually because there is no equity in the property or the property is exempt."). Nor does a bankruptcy trustee ordinarily sell property solely for the benefit of secured creditors. *See* In re *Scimeca Found., Inc.,* 497 B.R. 753, 781 (Bankr.E.D.Pa.2013) ("[A] bankruptcy trustee should not liquidate fully encumbered assets, for such action yields no benefit to unsecured creditors."); Collier on Bankruptcy ¶ 725.01 ("It is not the proper function of the trustee to liquidate property solely for the benefit of secured creditors.").[2] Consequently, where a debtor claims a homestead exemption in her home, a trustee will typically sell the home only where its value exceeds both the mortgage liens on the property and the debtor's homestead exemption. In re *Ellerstein,* 105 B.R. 214, 216 (Bankr.W.D.N.Y.1989) ("[Where] [t]he debtors' interest is subject to a mortgage ... and the debtors' equity is significantly more than the amount of the homestead exemption ... the trustee would sell the property...."); In re *Early,* Bankr. No. 05–01354, 2008 WL 2569408, at \*3 (Bankr.D.D.C. June 23, 2008) ("[I]f the amount of the debtor's exemption was less than the value of the property, ... a trustee is free to sell the property," so long as she "distribute[s] the proceeds first to the debtor in payment of the debtor's claimed exemption...."). This excess benefit for the unsecured creditors, calculated as the value of the estate minus any secured claims and exemptions, represents the bankruptcy estate's remaining "equity" in the property. In re *Hyman,* 123 B.R. 342, 344 (9th Cir. BAP 1991), *aff'd,* 967 F.2d 1316 (9th Cir.1992) ("[T]he equity available for the estate would be any amount exceeding ... encumbrances ... plus the homestead exemption...."); In re *McKeever,* 132 B.R. 996, 999 (Bankr.N.D.Ill.1991) (defining the estate's "equity" as that "which would be left for unsecured creditors after payment of secured claims and the debtors' homestead exemption").

**[9] [10]** Where, on the other hand, a property fails to yield any remaining equity for the estate beyond the value of its secured encumbrances and the debtor's homestead exemption, a trustee generally should not sell the home, but should leave the secured creditors to their own legal means of recovering their claims. *See* *Scimeca Found.,* 497 B.R. at 781 ("[I]t is appropriate for a chapter 7 bankruptcy trustee to ... allow the secured creditors to exercise their right to recover possession of their collateral."). This is because, by definition, "[a] secured

ES 631                    ES 631                    ES 631

creditor can protect its own interests in the collateral subject to the security interest." U.S. Department of Justice, Executive Office for United States Trustees, Handbook for Chapter 7 Trustees at 8–20 (2002). If a debtor defaults on her mortgage payments, the secured creditor's options include its contractual right to foreclose on the debtor's home. If, however, a debtor continues to satisfy her contractual obligations to the benefit of the creditor, the mortgagee has no grounds to foreclose and the debtor may retain her home through the bankruptcy proceedings. *See Ellerstein,* 105 B.R. at 216 ("[If] [t]he debtors' home is subject to a mortgage which is not in default and the debtors' equity is less than the properly claimed homestead exemption **\*26** ... the trustee would abandon the interest and the debtors would retain the home.").

[11] Traverse's homestead exemption leaves no residual equity for her unsecured creditors, and her lack of default on her monthly payments precludes both Citibank and JP Morgan from foreclosing on her property. There is consequently no dispute that, if Traverse's mortgages remained with their respective banks, the foregoing analysis would dispose of the case: the bankruptcy trustee would have no claim to sell Traverse's property and Traverse would retain possession of her home. Indeed, this appears to be the trustee's precise position with regard to Citibank's second mortgage. In the case of JP Morgan, however, the trustee notes a further wrinkle: neither Washington Mutual nor JP Morgan perfected the first mortgage on Traverse's home by recording the lien with the Registry of Deeds.

[12] [13] [14] [15] [16] Where a creditor has an unperfected lien on a debtor's property, the Bankruptcy Code empowers a trustee to avoid and preserve the lien for the benefit of the estate. The trustee exercises this power through two strong-arm provisions. First, the trustee's right of avoidance under 11 U.S.C. § 544 "vests the trustee with the powers of a bona fide purchaser of real property for value, and allows the trustee to invalidate unperfected security interests." *In re Sullivan,* 387 B.R. 353, 357 (1st Cir. BAP 2008). Second, his right of preservation under 11 U.S.C. § 551 automatically preserves the benefit of the avoided interest for the estate by "put[ting] the estate in the shoes of the creditor whose lien is avoided." *In re Carvell,* 222 B.R. 178, 180 (1st Cir. BAP 1998). Together, these provisions benefit the unsecured creditors by allowing the trustee to eliminate unperfected liens on a debtor's property and subsequently to apply the value represented by those liens to the general estate, bypassing any junior lienholders. *See In re French,* 440 F.3d 145, 154 (4th Cir.2006) ("[T]he Code's avoidance provisions protect creditors by preserving the bankruptcy estate

against illegitimate depletions."); *In re Nistad,* Bankr. No. 10–17453, 2012 WL 272750, at *5 (Bankr.D.Mass. Jan. 30, 2012) ("The purpose of 11 U.S.C. § 551 is to allow a trustee to preserve the avoided interest for the estate so that junior interest holders do not benefit from the avoidance to the detriment of the estate and its creditors."). In this case, the trustee exercised his strong-arm powers to avoid and preserve JP Morgan's mortgage on Traverse's home.[3] He now argues that, by preserving the mortgage lien, he may sell the property that is subject to the lien in order to realize the value of the mortgage for the bankruptcy estate.

**\*27** [17] Before addressing the trustee's argument, it is important to clarify what the trustee does not argue. First, he does not suggest that his preservation of JP Morgan's mortgage empowers him to sell Traverse's home in his position as mortgagee. Nor could he, since Traverse correctly notes that her current payments on her mortgage insulate her property from foreclosure.[4] Rather, the trustee suggests that, even in the absence of default, his preservation of the mortgage has given the bankruptcy estate an equity interest in the home that triggers his core power of sale as bankruptcy trustee.

Second, the trustee does not argue that the preserved mortgage freed up equity in Traverse's home for the bankruptcy estate by eliminating a secured debt to be satisfied before the home's value can begin accruing to unsecured creditors. Nor, again, could he do so, because Traverse's unchallenged exemption of $500,000 swallows the full $223,500 value of her home regardless of whether the sale's proceeds are first used to satisfy the $185,777.30 mortgage claim. Rather, the trustee insists that the preserved mortgage itself, as a senior lien on the home, has created equity in the home for the estate. He suggests, in short, that the preserved mortgage has turned some corresponding share of the home's value into the "property of the estate" to be liquidated through sale.

[18] [19] The trouble with the trustee's argument is that his preservation of an undefaulted mortgage on Traverse's home for the benefit of the bankruptcy estate is not co-extensive with an ownership right over the underlying property. Under § 551, the trustee preserves any liens or transfers avoided under § 544 by claiming those liens for the benefit of the estate, but he preserves the benefit of only that which has been avoided—in this case, the mortgage. "When the Trustee avoided the lien granted by Debtor ..., the avoided lien and only the avoided lien became property of the estate under § 541(a)(4)." *Carmichael,* 439 B.R. at 890; *cf. In re Haberman,* 516 F.3d 1207, 1208 (2008) ("[A] bankruptcy trustee who successfully avoids a lien pursuant to 11 U.S.C. §§ 544

ES 632                    ES 632                    ES 632

and 551 preserves for the bankruptcy estate the value of the avoided lien...."). Preservation gives the bankruptcy estate an exclusive interest in the avoided lien, but it does not give the estate any current ownership interest in the underlying asset. *See Early,* 2008 WL 2569408, at *3 ("[T]he only interest recovered via avoidance is the avoided lien, not an ownership interest in the property."). As far as the trustee's § 363 powers are concerned, avoidance and preservation thus empower the trustee to sell the newly avoided *mortgage* as property of the estate. But if the underlying property has been exempted and withdrawn from the "property of the estate" for the purposes of § 363, the preservation of a mortgage does not resurrect the trustee's § 363 powers over that property itself. *See* <mark>Carmichael,</mark> 439 B.R. at 890 ("The only property interest which the Trustee may sell under § 363(b) is the estate's one-half interest in the unperfected lien...."); **\*28** *In re Early,* Bankr. No. 05–01354, 2008 WL 2073917, at *4 (Bankr.D.D.C. May 12, 2008), *order amended and supplemented,* 2008 WL 2569408, at *4 ("[T]he avoided lien here does not give the trustee a right to sell the debtor's interest in the Property itself.").[5]

The trustee makes much of the Supreme Court's holding in *Schwab v. Reilly,* in which the Court held that exemptions claimed under the Code remove only a monetary "interest" in a debtor's asset, rather than the asset itself, from the property of the bankruptcy estate. 560 U.S. 770, 782, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010). Various courts have applied this same principle to state-created homestead exemptions, including that in Massachusetts. *See Peirce,* 483 B.R. at 376 ("Mass. Gen. Laws ch. 188 only protects the owner's interest in the home to the extent of the monetary exemption."); *In re Gebhart,* 621 F.3d 1206, 1210 (9th Cir.2010) ("The homestead exemptions available to the debtors ... do not permit the exemption of entire properties, but rather specific dollar amounts."). The trustee reasons that, if Traverse's home remains part of the bankruptcy estate despite Traverse's homestead exemption, he may dispose of it like any other property so long as he repays Traverse the value of her exemption from the proceeds.

[20] [21] As a preliminary matter, we note that the rule articulated in *Schwab* does not apply directly to this case. In each of the cases above, the debtor's exemption could not prevent the trustee from selling the underlying asset because that asset's value surpassed the exemption amount, creating additional equity for the bankruptcy estate. *Schwab,* 560 U.S. at 776, 130 S.Ct. 2652; *Peirce,* 483 B.R. at 376; *Gebhart,* 621 F.3d at 1210. By contrast, where a debtor's homestead exemption equals or surpasses the total value of her property, the bankruptcy court has construed the Massachusetts homestead

exemption to protect the debtor's physical ownership of as well as her financial rights in her home. *Peirce,* 483 B.R. at 376 ("[S]o long as the available monetary exemption is greater than or equal to the value of that property, the owner's possessory and pecuniary interests are both fully protected."). This reading accords with the established policy behind the Massachusetts homestead exemption, which "favors preservation of the family home regardless of the householder's financial condition" and inclines courts to construe the exemption "liberally in favor of debtors." *Shamban v. Masidlover,* 429 Mass. 50, 705 N.E.2d 1136, 1138 (1999); *see also Hildebrandt,* 320 B.R. at 44 ("Homestead laws are designed to benefit the homestead declarant and his or her family by protecting the family residence from the claims of creditors." (internal quotation marks omitted)). We decline to depart from that practice today.

More to the point, neither *Schwab* nor its progeny address the precise legal question before us. The issue raised by this case is not whether Traverse's homestead exemption withdrew her home or merely the right to its proceeds from the property of the estate. The issue is whether a trustee's powers of sale under § 363 justify selling a debtor's asset where no equity remains for the estate beyond the senior claims of secured creditors and the debtor's own exempt interest. The distinction may best be illustrated by the fact that the issue facing us today could arise even **\*29** if there were no homestead exemption involved. Imagine, for example, a case in which a debtor fails to claim any homestead exemption, but the full value of her home falls short of her undefaulted mortgages on the property. In this scenario, even absent any debates about whether the debtor had withdrawn her home or merely an "interest" in her home from the bankruptcy estate, the trustee's § 363 powers would not justify selling the asset, because there would be no residual equity in the property for unsecured creditors. The trustee himself admits as much, as he acknowledges that he would not sell Traverse's home if both her mortgages remained with their banks—even though, under his own reading of *Schwab,* the home is technically "property" of the estate.

[22] The trustee suggests that his preservation of Traverse's first mortgage for the bankruptcy estate makes this case different. He insists that the preserved mortgage empowers him to sell Traverse's home because, with the bankruptcy estate now standing in the shoes of the secured lienholder, the sale would directly benefit the unsecured creditors. Just because the preserved mortgage entitles the estate to benefit from the sale of Traverse's property, however, does not mean that the trustee is by that fact empowered to sell the property so as to

ES 633                    ES 633                    ES 633

immediately realize that benefit. In itself, a mortgage carries neither a right of immediate ownership of Traverse's property, nor a right of immediate payment of the secured loan's outstanding value, but only a right to foreclose on Traverse's property in the event that she defaults on her loan or to receive payment in full when the home is sold through other means. And that is the extent of the rights gained by the estate through the trustee's preservation. *See Haberman,* 516 F.3d at 1210 ("[T]he trustee, on behalf of the entire bankruptcy estate, in some sense steps into the shoes of the former lienholder, with the same rights in the collateralized property that the original lienholder enjoyed."); *Carvell,* 222 B.R. at 180 ("Preservation is just that. It simply puts the estate in the shoes of the creditor whose lien is avoided."). We make this observation not to revive the red herring argument that the trustee would need to exercise a mortgagee's power of foreclosure in order to sell Traverse's home; of course he could accomplish such a sale, when appropriate, simply in the exercise of his powers under § 363. We make the observation simply to clarify that, as far as the trustee's § 363 powers are concerned, the trustee may only sell "property of the estate," and the preserved mortgage in this case carries no immediate ownership rights that might be seen to turn Traverse's home into the property of the estate.

To put it another way, contrary to the trustee's assertions, just because the preserved mortgage promises the bankruptcy estate a benefit from the sale of Traverse's home does not mean that the preserved mortgage creates "equity" for the estate. Bankruptcy courts have defined the equity that justifies a sale of property, consistently and explicitly, in one way: the value remaining for unsecured creditors above any secured claims and the debtor's exemption. *See, e.g., Hyman,* 123 B.R. at 344; *In re White,* 409 B.R. 491, 495 (2009); *McKeever,* 132 B.R. at 999. It is this equity for unsecured creditors that authorizes a trustee to liquidate the property in the first place, as the trustee should not exercise his § 363 powers for the benefit of secured creditors alone. *See Scimeca Found.,* 497 B.R. at 781; U.S. Department of Justice, Executive Office for United States Trustees, Handbook for Chapter 7 Trustees at 8–20 (2002); Collier on Bankruptcy ¶ 725.01. Here, having avoided and preserved JP Morgan's mortgage for the benefit of the bankruptcy estate, the trustee **\*30** has inherited the standing of the secured creditor. *Haberman,* 516 F.3d at 1210; *In re Kors, Inc.,* 819 F.2d 19, 23 (2d Cir.1987); *Carvell,* 222 B.R. at 180. But he has not changed the status of the lien as a secured lien, to be subtracted from the value of the asset before any remaining equity may be calculated. In this sense, for the very reason that the preserved mortgage entitles the bankruptcy estate to any proceeds from

Traverse's property, as a senior secured claim overriding Traverse's claimed homestead exemption, it cannot double as the unsecured equity triggering the trustee's sale powers under § 363.

The trustee, in essence, would have the preserved mortgage function as both the senior secured interest that entitles the bankruptcy estate to derive value from Traverse's property ahead of junior lienholders *and* the unsecured equity interest that excuses him from leaving the secured creditors to satisfy their claims contractually.[6] Yet precisely because of their contractual means of protecting their interests, the bankruptcy scheme typically entrusts secured creditors such as mortgagees to vindicate their claims based on their privately negotiated terms. That in some cases a mortgagee will have no immediate means for claiming the value of its collateral—for example, when the mortgagor remains current on her mortgage payments pursuant to the contractual agreement—is not a flaw in the system, but rather reflects Congress's intent not to augment the mortgagee's rights over a compliant mortgagor simply because the mortgagor enters the world of bankruptcy. *Cf. Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (noting the rule, valid since the Bankruptcy Act of 1898, that "a lien on real property passe[s] through bankruptcy unaffected").[7]

[23] [24] Our holding today comports not only with the most coherent reading we can make of the trustee's powers under the Bankruptcy Code, but also with any sense of fairness on these facts. As noted above, there is no dispute that if Traverse's first mortgage remained with JP Morgan she would retain her home in these exact same circumstances. We see no reason why the trustee's preservation of the mortgage under § 551 should alter that result. The objective behind the trustee's powers of avoidance and preservation is to change the priority of creditors' claims to property falling under a debtor's estate, boosting the standing of unsecured creditors against both illegitimate secured claims and junior secured creditors. *See French,* 440 F.3d at 154; *Connelly v. Marine Midland Bank, N.A.,* 61 B.R. 748, 750 (W.D.N.Y.1986). It remains a mystery to us why a provision clearly aimed at regulating the distribution of a debtor's estate among her creditors should exacerbate the debtor's substantive obligations and vulnerabilities in bankruptcy. That is especially the case here, where the trustee's ability to preserve JP Morgan's mortgage derives exclusively from the failure of two banking corporations to perform due diligence **\*31** and record their mortgage on Traverse's home. To sanction the sale of the debtor's home in this case would be to punish an individual consumer for the administrative oversights of the banks.[8]

[25] [26] We affirm today the principle that the preservation of a lien entitles a bankruptcy estate to the full value of the preserved lien—no more and no less. Where this lien is an undefaulted mortgage on otherwise exempted property, the trustee may for the benefit of the estate enjoy the liquid market value of that mortgage, claim the first proceeds from a voluntary sale, or wait to exercise the rights of a mortgagee in the event of a default.[9] But the trustee may not repurpose the mortgage to transform otherwise exempted assets, to which neither the estate nor the original mortgagee boasted any ownership rights, into the property of the bankruptcy estate.

**IV. Conclusion**

In the end, we see the matter differently than did the lower courts. Accordingly, we reverse the decision of the BAP and remand to that tribunal with directions to vacate the bankruptcy court's judgment and to remand the matter to the bankruptcy court for further proceedings consistent with this opinion.

**All Citations**

753 F.3d 19, Bankr. L. Rep. P 82,648

---

**Footnotes**

1    As of March 2012, the City of Lynn assessed Traverse's home as having a fair market value of $236,200. Because the approximate $13,000 dollar difference between these estimates does not change the legal analysis, the remainder of this opinion relies on Traverse's schedules.

2    The U.S. Department of Justice instructs that, "[g]enerally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors." U.S. Department of Justice, Executive Office for United States Trustees, Handbook for Chapter 7 Trustees at 8–20 (2002).

3    In addition to objecting to the sale, Traverse also challenges the bankruptcy court's jurisdiction to enter a final order approving the trustee's avoidance and preservation in light of the Supreme Court's decision in *Stern v. Marshall,* ––– U.S. ––––, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). Traverse suggests that *Stern* strips the bankruptcy court of jurisdiction because the trustee's complaint seeks to augment the bankruptcy estate and depends on Massachusetts state law.

     Under *Stern,* a bankruptcy court's jurisdiction to enter final judgments is limited by Article III to issues in bankruptcy that "stem[ ] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 2618. Both the trustee's complaint in this case, arising out of his § 554 and § 551 powers, and Traverse's counterclaim, disputing the bankruptcy estate's rights to her real property, stem directly from Traverse's bankruptcy filing. The bankruptcy court correctly exercised jurisdiction in entering a final order on all claims.

4    Under 11 U.S.C. § 524(c), a debtor who remains current on her loan payments must also enter into a valid reaffirmation agreement in order to prevent a mortgagee from foreclosing on its security interest after she has filed for bankruptcy. *Id.; see also In re Golladay,* 391 B.R. 417, 421 (Bankr.C.D.Ill.2008). Although the record does not reveal whether Traverse properly reaffirmed her mortgage, because the trustee makes no claims to Traverse's property based on his position as mortgagee we find no reason to challenge her reaffirmation in this case.

5    Although the bankruptcy court in *Early* ultimately concluded that the issue of the trustee's power of sale was not

ES 635                    ES 635                    ES 635

ripe before it, withdrawing without repudiating its observations on the matter, *see* 2008 WL 2569408, at *3, we believe that the court's reasoning is precisely on point.

[6]    The secured creditors' contractual remedies would, of course, be subject to any lien enforcement procedures set by statute.

[7]    Our analysis here is limited to a trustee's attempts to benefit unsecured creditors by avoiding a security interest on fully exempt property, selling that property, and then capturing the proceeds of the sale for the estate up to the amount of the security interest. We do not decide whether a trustee may sell fully-secured property to benefit the estate in other scenarios, for example, when selling secured property as part of a package with unsecured property would increase the value of the unsecured property itself. *See* Handbook for Chapter 7 Trustees at 8–20.

[8]    We note that, in general, our interpretation enhances predictability and lower transaction costs. Under the trustee's view, without first paying to confirm the perfection of the mortgage, no homeowner contemplating bankruptcy could predict whether the family will lose its residence merely because of a quirk in the bank's practices that no one could view as adverse to the debtor.

We also note that, to be sure, a bankruptcy trustee's avoidance powers extend to far less blameless and sympathetic scenarios, such as avoidance of fraudulent transfers under 11 U.S.C. § 548 or post-petition transfers under 11 U.S.C. § 549. None of these other circumstances is implicated by our opinion, however, in that none of them overrides a debtor's homestead exemption under § 522. Furthermore, to the extent that an avoided fraudulent or post-petition transfer of a debtor's home allows a trustee to sell the underlying property, it does so precisely by permitting the trustee to include in the estate the putatively transferred asset: the home.

[9]    The parties in this case have presented to us no issue regarding who is entitled to Traverse's post-petition payments. Absent a separate agreement to the contrary, avoidance and preservation of a security interest do not entitle the trustee to payments on the underlying debt. *In re Rubia,* 257 B.R. 324, 327 (10th Cir. BAP 2001), *aff'd,* 23 Fed.Appx. 968 (10th Cir.2001); *In re Trible,* 290 B.R. 838, 845 (Bankr.D.Kan.2003).

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ES 636                              ES 636                              ES 636

439 B.R. 884
United States Bankruptcy Court, D. Kansas.

In re Melinda Sue CARMICHAEL, Debtor.
Edward J. Nazar, Trustee, Plaintiff,
v.
Melinda Sue Carmichael, Matthew Milligan, and
Equity One, Inc., by Popular Mortgage Servicing,
Inc., Defendants.

Bankruptcy No. 06–10952.
|
Adversary No. 09–5291.
|
Sept. 21, 2010.

**Synopsis**
**Background:** Chapter 7 trustee brought action for turnover and for sale of co-tenant's interest, seeking to sell debtor's homestead to recover value of unperfected lien on debtor's manufactured home that was previously avoided and preserved for benefit of estate. Debtor moved for summary judgment.

**Holdings:** The Bankruptcy Court, Dale L. Somers, J., held that:

[1] statute addressing trustee's sale of property in which co-owners also had interest did not empower trustee to sell exempt homestead property to recover value of avoided lien on manufactured home located on property, and

[2] irregularities in debtor's motion for summary judgment did not warrant denial of motion.

Motion granted.

**Procedural Posture(s):** Motion for Summary Judgment.

West Headnotes (11)

**[1]    Bankruptcy**⚷**Encumbered property;  limited or joint interests**

Bankruptcy statute addressing trustee's sales of property where co-owners also have interest in property to be sold allows sale of estate's interest and co-owner's interest in property only when estate has an interest in property, such as when the estate succeeds to debtor's partial interest. 11 U.S.C.A. § 363(h).

1 Case that cites this headnote

**[2]    Bankruptcy**⚷**Operation and effect**

Once property has come into bankruptcy estate, debtor is entitled to claim exemptions in such property permitted by the Bankruptcy Code. 11 U.S.C.A. § 541(a).

**[3]    Bankruptcy**⚷**Exemptions**
**Bankruptcy**⚷**Operation and effect**

An "exemption" is an interest withdrawn from the bankruptcy estate for the benefit of the debtor.

**[4]    Bankruptcy**⚷**Time**

Property that Chapter 7 debtor had claimed as her exempt homestead was not estate property, given absence of objection to claimed exemption. 11 U.S.C.A. § 522(*l* ).

In re Carmichael, 439 B.R. 884 (2010)
64 Collier Bankr.Cas.2d 820

**[5]    Bankruptcy**⚬Operation and effect

Where debtor's interest in property is exempted, the bankruptcy estate no longer has an interest that it may sell. 11 U.S.C.A. § 363.

1 Case that cites this headnote

**[6]    Bankruptcy**⚬Adequate protection; sale free of liens

Chapter 13 debtor may not sell exempt homestead property, which is not estate property, under statute permitting sale of estate property free and clear of any interest in property of entity other than estate. 11 U.S.C.A. § 363(f).

**[7]    Bankruptcy**⚬Encumbered property; limited or joint interests

Statute addressing trustee's sale of property in which co-owners also had interest did not empower Chapter 7 trustee to sell debtor's exempt homestead property to recover value of unperfected lien on manufactured home located on property, which had previously been avoided and preserved for benefit of estate. 11 U.S.C.A. § 363(h).

**[8]    Bankruptcy**⚬Preferences and fraudulent conveyances; avoided transfers

When Chapter 7 trustee avoided lien granted by debtor in manufactured home, only the avoided lien became property of bankruptcy estate, and was the only property interest that trustee could sell. 11 U.S.C.A. §§ 363(b), 541(a)(4).

1 Case that cites this headnote

**[9]    Bankruptcy**⚬Preservation of lien for benefit of estate

Bankruptcy statute providing for automatic preservation of avoided transfer for the benefit of bankruptcy estate preserves only transfers and liens, and related ancillary rights held by the party whose lien has been avoided are not preserved for the benefit of the estate. 11 U.S.C.A. § 551.

**[10]    Bankruptcy**⚬Trustee as representative of debtor or creditors

Upon lien avoidance, trustee receives only the bundle of rights given him by Congress in the Bankruptcy Code, the status of a holder of an unperfected lien. 11 U.S.C.A. § 551.

**[11]    Bankruptcy**⚬Judgment or Order

Irregularities in Chapter 7 debtor's motion for summary judgment in trustee's action for turnover and for sale of co-tenant's interest in property, which did not comply with requirements of local rule, did not warrant denial of motion; facts material to resolution of issue of law presented by motion were uncontroverted and revealed in the record of proceeding, debtor's bankruptcy case, and related lien avoidance adversary proceeding, parties presented their legal arguments in straightforward manner, and procedural irregularities did not create impediment to

ES 638                    ES 638                    ES 638

64 Collier Bankr.Cas.2d 820

trustee's response to motion or to court's consideration of merits of motion. U.S.Dist.Ct.Rules D.Kan., Rule 56.1(a).

1 Case that cites this headnote

**Attorneys and Law Firms**

**\*885** James P. Rupper, Powell, Brewer & Reddick L.L.P., Wichita, KS, for Debtor.

Jeffrey W. Rockett, Redmond & Nazar, LLP, Wichita, KS, for Plaintiff.

January M. Bailey, Eron Law Office, P.A., Wichita, KS, for Defendants.

Matthew Milligan, pro se.

**MEMORANDUM OPINION AND ORDER GRANTING MELINDA SUE CARMICHAEL'S MOTION FOR SUMMARY JUDGMENT**

DALE L. SOMERS, Bankruptcy Judge.

The matter before the Court is Defendant–Debtor Melinda Sue Carmichael's **\*886** Motion for Summary Judgment on the Plaintiff–Trustee's Complaint for Turnover and Complaint for Sale of Co–Tenant's Interest, by which the Trustee seeks to sell the Debtor's homestead in an effort to recover the value of an unperfected lien in Debtor's manufactured home which was previously avoided and preserved for the benefit of the estate. The Plaintiff, Chapter 7 Trustee Edward J. Nazar, appears by Jeffrey W. Rockett of Redmond & Nazar, L.L.P. The Defendant–Debtor, Melinda Sue Carmichael, appears by January M. Bailey of the Eron Law Office, P.A. Defendant 21 Asset Management Holding, LLC, successor and assign of Defendant Popular Mortgage Servicing, Inc., appears by Steven M. Leigh of Martin, Leigh, Laws & Fritzlen, P.C. There are no other appearances. The Court has jurisdiction.[1] There is no filed objection to venue or jurisdiction over the parties, but the

Court finds no basis in the record for the exercise of jurisdiction over Defendant Matthew Milligan.[2]

**Findings of Fact.**

The material facts are established by the record in this proceeding, the main case, and the lien avoidance adversary proceeding. On May 25, 2005, Matthew Milligan, but not Debtor, executed an adjustable-rate note for $70,000 with lender Popular Financial Services, LLC, which note was later assigned to Equity One, Inc. It appeared in Debtor's bankruptcy case by Popular Mortgage Servicing, Inc., whose interest has now been assigned to 21 Asset Management Holding, LLC (for convenience, these four companies are hereafter referred to as "Lender"). The note was secured by a mortgage on property located at 10311 Lori Drive, Mulvane, Kansas (hereafter "Mortgaged Property"), executed by Matthew Milligan, Debtor Melinda Sue Carmichael, and Danny Carmichael, whom the Court believes is the husband of Debtor. The mortgage was properly recorded. The improvements on the Mortgaged Property included a 1999 Duchess Limited manufactured home (hereafter "Manufactured Home"), which is personal property under Kansas law. The lien in the personal property described in the mortgage was not perfected.

Debtor Melinda Sue Carmichael filed for relief under Chapter 7 on June 16, 2006. Her Schedule A includes her interest as joint tenant of the Mortgaged Property, with a value of $120,000 and subject to a secured claim of $70,000. The property is claimed as her exempt homestead on Schedule C. Schedule D includes the claim of Lender secured by the mortgage, and Schedule H lists Matthew Milligan as a codebtor as to Lender's claim.

On March 13, 2007, Lender filed a motion for relief from stay to foreclose its mortgage, alleging that the promissory note was in default.[3] On May 18, 2007, the Chapter 7 Trustee filed a Complaint for Avoidance of Non–Perfected Security Interest in the Manufactured Home, asserting that under Kansas law Lender's interest in Debtor's interest in the Manufactured **\*887** Home was not perfected on the date of filing.[4] An agreed journal entry and order was filed in the lien avoidance action on June 28, 2008,[5] finding that one-half[6] of Lender's lien interest in the Manufactured Home was avoided and preserved for the benefit of the estate. On August 1, 2008, an order granting Lender's motion for relief from stay was filed.[7] That order recites that one-half of Lender's lien in the Manufactured Home had been avoided and preserved for the benefit of the estate and allows Lender

ES 639    ES 639    ES 639

to commence foreclosure proceedings in state court as to the Mortgaged Property, with the Trustee being an *in rem* defendant with respect to the avoided lien interest in the Manufactured Home.

On December 3, 2009, the Trustee filed his Complaint in the instant proceeding. The Complaint alleges that the Manufactured Home is titled in the names of Debtor and Matthew Milligan, and that Mr. Milligan claims a one-half interest in the home.[8] After alleging that he has successfully avoided the unperfected lien granted by Debtor to Lender in the Manufactured Home, the Trustee asserts that "[u]nder the provisions of 11 U.S.C. § 363(h),[9] the trustee is empowered and allowed to sell the co-tenant's interest in real property." The relief requested by the Trustee is stated in paragraph 14, as follows:

> The trustee requests the Court for an order of turnover, requiring the avoided interest be turned over to the trustee, that the Court order the sale of real property, including the interest of both the debtor and the co-tenant, that such order provide for the allocation of proceeds that the sale of co-tenant's interest will encompass the sale of 100% of the real property, including the real property interest secured by Equity One, Inc. Popular Mortgage Servicing, Inc. Upon the sale, the trustee will allocate the respective proceeds to the respective parties, including Equity One, Inc., Popular Mortgage Servicing, Inc. to the extent of the value of its interest, to the value of the interest of the co-tenant and to the bankruptcy estate.[10]

The relief sought is in accord with a proposed settlement agreement filed in the Trustee's lien avoidance action to which the Debtor objected.[11] That proposed agreement, which was not approved by the Court, provides in part:

> The Trustee will subsequently prepare and file a Complaint to Sell Homestead Interest under Fed. R. Bankr.P. 7001(3) and 11 U.S.C. § 363(h) by Agreement of the Trustee and Popular Mortgage [Lender] with service upon Melinda Sue **\*888** Carmichael and Matthew Milligan, co-owners of the homestead.[12]

Debtor, pro se, answered the Complaint.[13] She requested the Court to "deny any order for turnover or sale of the property." Included in the answer is the allegation that "Matthew Milligan is not mentioned on the title of the manufactured home, has NEVER been on the manufactured home title, was briefly on the property title of the land, but released any rights to this property." The answer also alleges that the real property "is owned by Melinda Carmichael and Daniel Carmichael who have lived on the property since 1997."[14] The Court therefore finds that there are controversies of fact as to who held

ownership interests in both the real and personal property interests of the Mortgaged Property on the date of filing and at the present time. However, the dispute is not material because, for the reasons stated below, the Court finds as a matter of law that the relief requested by the Trustee is not authorized by § 363(h).

Lender also answered the Complaint, praying that the relief sought by the Trustee be denied.[15] Among other things, Lender's answer asserts that: The Trustee has avoided only the lien in a one-half interest in the Manufactured Home; Lender retains a lien in the real property and a one-half interest in the manufactured home; and having obtained relief from stay, Lender is entitled to sell the real property and the Manufactured Home pursuant to non-bankruptcy law in a state court proceeding.

On June 30, 2010, Debtor, through counsel, filed a motion for summary judgment, contending that the Trustee has no legal basis to sell the property under § 363(h).[16] She asserts that judgment should be entered in her favor because the Trustee has failed to recognize that the estate's interest is limited to the avoided interest and since there was no objection to her claim of exemption of the Mortgaged Property as her homestead, it is no longer property of the estate. The Trustee responds[17] that the motion should be denied because it does not conform to the requirements of Federal Rule of Civil Procedure 56. Further, the Trustee asserts that the exemption of the homestead is irrelevant and because, upon avoidance of the mortgage lien on Debtor's interest in the Manufactured **\*889** Home, he stands in the shoes of the avoided lien holder, he has "every legal right to seek relief from the defendant as the party in possession of the real estate and the manufactured home."[18] Lender's response to the motion for summary judgment takes no position on the merits, asserting that because the motion seeks no relief from Lender, no response to the motion is required.[19]

## ANALYSIS AND CONCLUSIONS OF LAW.

The basis for Debtor's motion for summary judgment is the legal position that the estate's interest is limited to a one-half interest in the lien on the Manufactured Home and this interest is not sufficient to force a sale of the entire Mortgaged Property under § 363(h). The Court agrees.

[1] A trustee's power to sell estate property is addressed by § 363. Subsection (b) provides that, upon notice and

ES 640                              ES 640                              ES 640

In re Carmichael, 439 B.R. 884 (2010)
64 Collier Bankr.Cas.2d 820

hearing, the Trustee may sell property of the estate other than in the ordinary course of business. The sale is this case is clearly not in the ordinary course. Subsection (c) provides for the Trustee to sell estate property in the ordinary course of business of the debtor without notice or hearing. Subsection 363(h) addresses sales under (b) and (c) when co-owners also have an interest in the property to be sold. It provides:

> (h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
>> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>>
>> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>>
>> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>>
>> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

The introductory phrase of § 363(h) defines the scope of the subsection by referring to the trustee's sale of property under § 363(b) and (c). As discussed above, both of these subsections provide for the sale of estate property. Therefore subsection (h) allows sale of the estate's interest and a co-owner's interest only when the estate has an interest in the property, such as when the estate succeeds to the debtor's partial interest.[20]

[2] [3] [4] [5] [6] When a case is commenced, the estate is comprised of all interests of the debtor in property.[21] However, once property has come into the estate, the debtor is entitled to claim those exemptions permitted by the Code. "An exemption is an interest withdrawn from the estate ... for the benefit of the debtor."[22] If an exemption **890 is claimed and there is not an objection, the exemption is allowed, and the property is no longer property of the estate.[23] In this case, Debtor claimed the Mortgaged Property as her exempt homestead. There was no objection. The Mortgaged Property is not property of

the estate. As stated by a leading commentator addressing sales under § 363(h), "where the debtor's interest is exempted, the estate no longer has an interest that it may sell."[24] Likewise, a Chapter 13 debtor may not sell her homestead under § 363(f).[25] "Since the [homestead] property is no longer property of the estate, § 363 in general and § 363(f) in particular are not applicable to the debtor's sale."[26]

[7] [8] Subsection 363(h) therefore does not empower the Trustee to sell the homestead property. The Trustee's argument in opposition to Debtor's motion for summary judgment that the exempt status of the homestead is irrelevant is misplaced. When the Trustee avoided the lien granted by Debtor in the Manufactured Home, the avoided lien and only the avoided lien became property of the estate under § 541(a)(4). The only property interest which the Trustee may sell under § 363(b) is the estate's one-half interest in the unperfected lien in the Manufactured Home. The Trustee has no authority under § 363(h) to sell the entire homestead as a method to realize the value of that avoided lien.[27]

[9] [10] The Trustee's problem, which he is attempting to solve by this adversary proceeding, is how to realize the value of the avoided lien for the benefit of creditors. The Court holds that the method chosen by the Trustee in this case is not authorized by the Code. It is the combined effect of the exemption of the homestead and the limited consequences of lien avoidance which create the difficulty. If the Mortgaged Property were not the exempt homestead, Debtor's interest on the Mortgaged Property, including the Manufactured Home, would be property of the estate and subject to sale by the Trustee under § 363(b). However, since Debtor's interest in the property the Trustee seeks to sell is Debtor's exempt homestead, § 363(b) does not authorize the sale and § 363(h) is unavailable. As to lien avoidance, under § 544, the Code provides the Trustee no specific remedies other than automatic lien preservation under § 551.[28] "Section 551 preserves only 'transfers' and 'liens.' Related ancillary rights held by the party whose lien has been avoided are not preserved for the benefit of the estate."[29] Hence, upon lien avoidance, the trustee "receives only the bundle of rights given him by Congress in the Bankruptcy **891 Code,"[30] the status of a holder of an unperfected lien.

The consequences of that status have been frequently litigated. In the Tenth Circuit, the leading case as to the trustee's rights following lien avoidance is *Haberman*.[31] The trustee in *Haberman* contended that upon avoidance pursuant to § 544 of an unperfected lien in a vehicle, he was entitled to all of the rights of the creditor whose lien had been avoided, including the right to enforce the

ES 641          ES 641          ES 641

In re Carmichael, 439 B.R. 884 (2010)
64 Collier Bankr.Cas.2d 820

debtor's contractual promises to the creditor. The Tenth Circuit rejected this position. The court held the trustee is entitled to only the "same rights in the collateralized property that the original lender enjoyed,"[32] and these rights do not include contractual promises to future payments.[33] Before *Haberman* was decided, the Tenth Circuit BAP in *Rubia*[34] considered the consequences of the Chapter 7 trustee's avoidance of a preferential perfection of a lien in a motor vehicle. It held that the fact of avoidance does not entitle the trustee to collect postpetition loan payments from the debtor and that the value of the estate's lien interest is the value of the creditor's lien on the petition date. It is measured by the value of the collateral, but is limited by the amount of the debtor's debt to the creditor on the petition date. The *Rubia* court expressly did "not explain how the estate realizes its claim against" the collateral.[35] The bankruptcy courts in this district have held that the trustee is not permitted to enforce the estate's lien by foreclosure if the debtors have not defaulted on an agreement to pay the lien amount to the trustee.[36] Granting the Trustee the relief he seeks under § 363(h) would be similar to allowing foreclosure.

The result of these rulings applied to the facts of this case illustrates that avoidance under § 544 of a lien in exempt property based upon failure to perfect under applicable state law may operate, at least during the bankruptcy case, to benefit primarily the debtor. Since the transfer of the lien in the Manufactured Home by Debtor to Lender has been avoided, the value of Lender's secured claim is reduced by the value of the avoided lien, and Debtor may be entitled to discharge of the unsecured portion of Lender's claim.[37] The Trustee holds an unperfected lien in the Manufactured Home, but there is no readily available means to realize that value. Although this result may not have been intended by Congress, it is Congress that must provide a remedy.

In the circumstances of this case, the Trustee appears to have at least three alternatives, none of which include sale under § 363(h). First, the Trustee could sell the estate's lien interest to a third party, such as Lender or another entity. Second, the Trustee could enter into an **\*892** agreement with Debtor for release of the lien upon receipt of a lump sum or periodic payments. Third, the Trustee could await foreclosure by Lender, during which process the estate would receive the value of its interest.

For the foregoing reasons, the Court holds as a matter of

law that the Trustee may not sell the Mortgaged Property pursuant to § 363(h).

**[11]** The Trustee also opposes the Motion for Summary Judgment on the ground that the memorandum in support does not comply with District of Kansas Local Rule 56.1,[38] which provides in part:

> The memorandum or brief in support of a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts must be numbered and refer with particularity to those portions of the record upon which movant relies.

The Trustee argues that Debtor's memorandum does not include a separate statement of facts and argument is mingled with facts. The Court agrees that the memorandum does not conform to the rule, but rejects the irregularities as a basis to deny the motion. The only facts which are material to resolution of the issue of law presented by the motion are uncontroverted and revealed in the record in this proceeding, Debtor's bankruptcy case, and the related lien avoidance adversary proceeding. The parties have presented their legal arguments in a straightforward manner. The procedural irregularities did not create an impediment to the Trustee's response to the motion or the Court's consideration of the merits of the motion.

The Court therefore grants Debtor's Motion for Summary Judgment on the Plaintiff–Trustee's Complaint for Turnover and Complaint for Sale of Co–Tenant's Interest.

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 7058 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

**All Citations**

439 B.R. 884, 64 Collier Bankr.Cas.2d 820

---

**Footnotes**

ES 642          ES 642          ES 642

In re Carmichael, 439 B.R. 884 (2010)
64 Collier Bankr.Cas.2d 820

1   This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (N).

2   A review of the docket sheet does not show service on Defendant Matthew Milligan, and he has not appeared in this action.

3   Doc. 23.

4   *Nazar v. Equity One, Inc.,* Case no. 06–10952, Adv. no. 07–5176, doc. 1 (Bankr.D.Kan. May 18, 2007) (hereafter cited as *Lien Avoidance Action,* Adv. no. 07–5176).

5   *Id.,* doc. 34.

6   The Trustee appears to have assumed that Debtor owned a one-half interest in the Mortgaged Property. The record does not include evidence supporting this position.

7   Doc. 70.

8   There is indication in the body of the Complaint, paragraph 10, that the Trustee intended to join Debtor's "former spouse, Danny Carmichael," as a defendant, but he is not named in the caption and the record does not indicate that a summons was issued to him.

9   Future references in the text to Title 11 of the United States Code shall be to the section number only.

10  Doc. 1.

11  *Lien Avoidance Action,* Adv. no. 07–5176, doc. 22 (Proposed settlement agreement between Lender and Trustee) and doc. 24 (Debtor's objection).

ES 643                          ES 643                          ES 643

In re Carmichael, 439 B.R. 884 (2010)

64 Collier Bankr.Cas.2d 820

[12] *Id.,* doc. 22. The proposed settlement agreement also provides:

(d) Popular assents to the Trustee selling the entire homestead constituting the Debtor's and non-Debtor's entire interests (real property and improvements) pursuant to 11 U.S.C. § 363(h);

(e) the Trustee will by a complaint pursuant to Fed. R. Bankr.P. 7001(3) and 11 U.S.C. § 363(h) sell the Debtor's and non-Debtor co-tenant's interests in the homestead;

(f) the parties will divide the proceeds of such sale by initially deducting from the gross proceeds the Trustee's fees and costs for selling the homestead, then allocating 16.2834% of the after costs proceeds to Popular for the value of the real property portion of the homestead, and then finally dividing the remaining proceeds between the Trustee and Popular for the value of the improvement portion of the homestead;

(g) any net proceeds remaining after satisfying the lien interests between the Trustee and Popular will be held pending further order of the Court.

[13] Doc. 5.

[14] *See also Lien Avoidance Action,* Adv. no. 07–5176, doc. 24 (Debtor's Objection to Proposed Settlement Agreement between Trustee and Popular Mortgage Services, Inc., stating, "Matt Milligan transferred by Quit Claim deed his interest to Mrs. Carmichael on March 31, 2008.").

[15] Doc. 7.

[16] Doc. 27.

[17] Doc. 30.

[18] *Id.,* p. 5.

[19] Doc. 34.

[20] 3 *Collier on Bankruptcy* ¶ 363.08[3] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2010).

[21] 11 U.S.C. § 541(a).

ES 644              ES 644              ES 644

In re Carmichael, 439 B.R. 884 (2010)

64 Collier Bankr.Cas.2d 820

[22]    *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).

[23]    11 U.S.C. § 522(*l* ).

[24]    3 *Collier on Bankruptcy* ¶ 363.08.

[25]    *In re Penniston,* 206 B.R. 948, 949 (Bankr.D.Minn.1997).

[26]    *Id.*

[27]    In so holding, the Court leaves for another day the question whether the Trustee under 11 U.S.C. § 363(h) could sell the entire lien interest in the Manufactured Home, including the Lender's remaining one-half interest. The Trustee is not seeking this relief.

[28]    As to some avoided transfers, § 551 permits the recovery of property or a judgment against the transferee of the avoided transfer, but the Tenth Circuit has held that the § 550 remedy is available in the court's discretion only when preservation of the lien is inadequate to restore the estate. *Rodriguez v. Drive Financial Services, L.P. (In re Trout),* 609 F.3d 1106 (10th Cir.2010).

[29]    5 *Collier on Bankruptcy* § 551.02.

[30]    *Morris v. St. John Nat. Bank (In re Haberman),* 516 F.3d 1207, 1212 (10th Cir.2008).

[31]    *Id.*

[32]    *Id.* at 1210.

[33]    *Id.* at 1211.

[34]    *Morris v. Vulcan Chemical Credit Union (In re Rubia),* 257 B.R. 324 (10th Cir. BAP 2001).

[35]    *Id.* at 328, n. 5.

[36]    *See Morris v. Citifinancial (In re Trible),* 290 B.R. 838, 846 (Bankr.D.Kan.2003) (stating that the calculation of the value of the estate's avoided lien in a mobile home "should in some manner reflect what the estate would recover if

ES 645          ES 645          ES 645

64 Collier Bankr.Cas.2d 820

it were legally permitted to enforce its lien by foreclosure"); *Morris v. Becker (In re Becker),* Case no. 99–14430, Adv. no. 04–5101, Memorandum and Order on Trustee's Complaint to Determine Rights Following Lien Avoidance, at note 10 (Bankr. D. Kan. June 2, 2005).

[37]    *See Rubia,* 257 B.R. at 327.

[38]    D. Kan. Rule 56.1(a) (2010).

---

**End of Document**                                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

ES 646                              ES 646                              ES 646

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*):

### DEBTOR'S COMPENDIUM OF OUT OF CIRCUIT CASES RE SALE MOTION

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 25, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 25, 2025 | Christopher L. Blank | /S/Christopher L. Blank |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## SERVICE LIST

**8:21-bk-11710-SC Notice will be electronically mailed to:**

Bradford Barnhardt on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home
Estates
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Christopher L Blank on behalf of Debtor Jamie Lynn Gallian
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Laila Masud on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF

mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

**8:21-bk-11710-SC Notice will not be electronically mailed to:**

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Janine Jasso
PO Box 370161
El Paso, CA 79937

Michael D Poole on behalf of Creditor The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

CHRISTOPHER L. BLANK (SBN 115450)
CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2973 Harbor Blvd. #506
Costa Mesa, CA 92626
Telephone:     (949) 250-4600
Email:     chris@chrisblanklaw.com

Attorney for Debtor Jamie Lynn Gallian

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In Re | ) BK Case No. 8:21-bk-11710-SC |
| | ) |
| | ) **Chapter 7** |
| | ) |
| JAMIE LYNN GALLIAN | ) **NOTICE OF ERRATA RE DEBTOR'S** |
| | ) **COMPENDIUM OF OUT OF CIRCUIT** |
| | ) **CASES RE TRUSTEE'S SALE MOTION** |
| Debtor. | ) |
| | ) **Date:  March 27, 2025** |
| | ) **Time:  10:00 AM** |
| | ) **Ctrm: 5C Virtual and In Person** |
| | ) |
| | ) |
| | ) |

TO THE COURT AND INTERESTED PARTIES: Please take notice that Jamie Lynn Gallian's Compendium of Out of Circuit Case Pertinent to the Trustee's Sale Motion [Docket 581], erroneously indicated that the hearing would be at 11:00 AM on March 27. 2025 Virtual.  The actual time set for the hearing is 10:00 AM on March 27, 2025 in Courtroom 5C and it will be both virtual and in person.

Dated:  March 26, 2025                    CHRISTOPHER L. BLANK, ATTORNEY
                                                                AT LAW, PC

                                                                By:    /S/*Christopher L. Blank*
                                                                        Christopher L. Blank, Attorney for Debtor
                                                                        Jamie Lynn Gallian

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*):

**NOTICE OF ERRATA RE DEBTOR'S COMPENDIUM OF OUT OF CIRCUIT CASES RE SALE MOTION**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 26, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 26, 2025 | Christopher L. Blank | /S/Christopher L. Blank |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## SERVICE LIST

**8:21-bk-11710-SC Notice will be electronically mailed to:**

Bradford Barnhardt on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Christopher L Blank on behalf of Debtor Jamie Lynn Gallian
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Laila Masud on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF

mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

**8:21-bk-11710-SC Notice will not be electronically mailed to:**

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Janine Jasso
PO Box 370161
El Paso, CA 79937

Michael D Poole on behalf of Creditor The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

FILED & ENTERED

MAR 28 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

In re:

Jamie Lynn Gallian,

Debtor(s).

Case No.: 8:21-bk-11710-SC

CHAPTER 7

**ORDER RE: ESTABLISHING EVIDENTIARY HEARING FOR INTERESTED PARTIES TO PROVIDE FURTHER EVIDENCE IN SUPPORT AND OPPOSITION TO A DETERMINATION OF A SECTION 363(M) FINDING WITH RESPECT TO THE SUCCESSFUL BUYER OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081**

**IN PERSON APPEARANCES ONLY**
**NO REMOTE HEARING**

Date:  April 10, 2025
Time:  9:30 a.m.
Courtroom: 5C

On March 27, 2025, at 11:00 am, the Court held a continued hearing to permit the Chapter 7 Trustee to conduct an auction with reference to the Trustee's Motion To

1    Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane,

2    Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free And Clear Of

3    Liens And Homestead Exemption filed January 31, 2025 [Dk. 539] ("Sale Motion").

4    The auction was conducted by the Chapter 7 Trustee on that date and time.

5         Upon the Trustee's request for the finding of good faith of the successful buyer

6    under section 363(m),[1] Counsel for the Debtor objected to a finding of good faith and

7    requested that Debtor be permitted to supplement the record and be provided with an

8    opportunity to submit evidence that the buyer is not a good faith purchaser under that

9    provision of the Bankruptcy Code.

10        While the Court was hesitant to delay the sales process further, the Court

11   permitted Debtor to file and serve additional briefing and evidence in support of her

12   contention that the successful buyer is not one in good faith. The Court now considers

13   that it provided too little time for Debtor to prepare and present evidence in support of

14   her position that the successful buyer is not a good faith purchaser.

15        The Court finds good cause, in the interest of the bankruptcy process, to permit

16   any party, including Debtor, additional time to further address their positions and

17   present evidence on this particular subject on the record.

18        The Ninth Circuit Bankruptcy Appellate Panel has held that "[w]hile a finding of

19   'good faith' is not an essential element for approval of a sale under section 363(b), such

20   a determination becomes important with respect to potential mootness when an appeal

21   is taken from the order authorizing the sale." *Fitzgerald v. Ninn Worx SR, Inc. (In re*

22   *Fitzgerald), 428 B.R. 872, 880-81* (9th Cir. BAP 2010) (citing *Thomas v. Namba (In re*

23   *Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002)).

24        The BAP in *Fitzgerald* continues, "[t]he boilerplate 'good faith' finding in the Sale

25   Order does not suffice under section 363(m), and the bankruptcy court should not have

26

27   _____

     [1] A bankruptcy court does not abuse its discretion in approving the sale of the property pursuant to 11
28   U.S.C.S. § 363 because the bankruptcy court may find that the property had been adequately marketed
     and the sale was proposed and negotiated in good faith and at arm's length and was in the best interests
     of the estate and its creditors. *Baroni v. Seror (In re Baroni),* 2021 Bankr. LEXIS 1896, *1 (9th Cir. BAP
     2021).

**ES 657**                    **ES 657**                    **ES 657**
                              2

signed such an order without an evidentiary foundation. *Id.* at 881 (citing *T.C. Investors v. Joseph (In re M Capital Corp.),* 290 B.R. 743, 752 (9th Cir. BAP 2003)). "'Unless and until 'good faith' has been determined, the appeal is not moot under section 363(m).'" *Id.* (citing *In re Thomas*, 287 B.R. at 785).

In order to allow an appellate court to determine conclusively the mootness of any appeal, the record of the bankruptcy court must be very clear.

Under § 363(m), when a "sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal." *Paulman v. Gateway Venture Partners III, LP (In re Filtercorp, Inc.),* 163 F.3d 570, 576 (9th Cir. 1998); 11 U.S.C. § 363(m). An "[a]bsence of good faith is 'typically shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Adeli v. Barclay (In re Berkeley Del. Court, LLC),* 834 F.3d 1036, 1041 (9th Cir. 2016) (quoting *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),* 163 F.3d 570, 577 (9th Cir. 1998)). And the relevant focus of inquiry is good faith during the course of the sale proceedings. *Cmty. Thrift & Loan v. Suchy (In re Suchy),* 786 F.2d 900, 902 (9th Cir. 1985).

*Lind v. Spacone (In re Lind),* 2019 Bankr. LEXIS 2052, *7-8 (9th Cir. BAP 2019).

For this reason, the Court hereby sets an evidentiary hearing on the matter of the request for a section 363(m) finding on April 10, 2025, at 1:30 pm in Courtroom 5C. The hearing shall be in person only and no remote hearing opportunities will be afforded to the parties or witnesses. The briefing schedule shall be as follows:

1) The evidentiary hearing will be held on April 10, 2025, at 9:30 a.m. in Courtroom 5C.

2) An evidentiary hearing brief shall be filed and served by all parties opposing the Trustee's request for a section 363(m) good faith finding by April 4, 2025.[2] The evidentiary hearing brief shall contain all legal and factual arguments of the presenting party, a list of all witnesses to be presented at the hearing with a summary of each witnesses' proposed testimony, and copies of all

---

[2] The Court's prior ruling issued at the March 27, 2025, hearing that supplemental pleadings in opposition by Debtor are due April 1, 2025, is vacated and superseded by the provisions of this order.

proposed documents to be introduced into evidence affixed to supporting sworn declarations. The Court shall also consider the previous evidence submitted by the proponent of the section 363(m) good faith finding, which should be addressed by the opposing party.

3) Any brief(s) in reply to the opposition(s) may be filed and served by no later than April 8, 2025. Any reply brief(s) shall contain the same legal and factual arguments, witness identification (with summary of testimony), and documents, as set out in paragraph 2, above. The brief(s) in reply may reference or repeat any earlier evidence of arguments presented.

4) If any witness to be presented by any party is not physically present in Courtroom 5C on April 10, 2025, at 9:30 a.m., their declaration, and any evidence attached thereto, will be stricken.

5) No further briefing shall be filed without good cause shown and without separate written application for leave to file further pleadings. The failure to adhere to the foregoing will result in the pleading being stricken.

6) Any untimely filed pleading will be stricken.

7) The parties are cautioned that the evidentiary hearing is expressly limited to the issue of whether a section 363(m) good faith finding can be made as to the successful bidder of the Property, Mr. Peplin.

**IT IS SO ORDERED.**

Date: March 28, 2025

Scott C. Clarkson
United States Bankruptcy Judge

CHRISTOPHER L. BLANK (SBN 115450)
CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2973 Harbor Blvd. #506
Costa Mesa, CA 92626
Telephone:    (949) 250-4600
Email:        chris@chrisblanklaw.com

Attorney for Debtor Jamie Lynn Gallian

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | ) BK Case No. 8:21-bk-11710-SC |
| | ) |
| | ) **Chapter 7** |
| | ) |
| JAMIE LYNN GALLIAN | ) **DEBTOR'S EVIDENCE AND ARGUMENT** |
| | ) **IN OPPOSITION TO PROPOSED FINDING** |
| | ) **OF GOOD FAITH PURCHASE** |
| Debtor. | ) |
| | ) **Date:  April 10, 2025** |
| | ) **Time:  9:30 AM** |
| | ) **Ctrm: 5C In-person** |
| | ) |
| | ) |
| | ) |

TO THE COURT AND INTERESTED PARTIES: Debtor Jamie Lynn Gallian hereby

presents evidence and argument in opposition to Trustee Jeffrey Golden's Request for Finding of

Good Faith Purchase [Docket 566] as follows.

Gallian has requested and submitted compelling argument and evidence, as well as

proposed findings of fact and conclusions of law demonstrating that the Court should deny

Trustee Golden's Motion for Approval of Sale of her homestead.  Gallian has also indicated that

if the Court is inclined to grant that Motion, that the Court stay its order to allow Gallian to

pursue an effective appeal.  If the Court denies the Trustee's sale motion, or grants the sale

motion but also grants a stay pending appeal, any finding of good faith becomes moot.

However, if the Court grants the sale motion, and denies the sale motion Gallian opposes

Golden's request for a finding that a sale to Mr. Peplin be found in good faith pursuant to 11

U.S.C. Section 363(m).

At the hearing that was held on March 4, 2025, after announcing that the Court was taking the sale motion under submission, rather than immediately granting or denying that motion, the Court had the Trustee conduct an auction involving the original stalking horse bidder, Galaxy Homes and a competing bidder, Mr. Peplin.  In that auction, Peplin reiterated his overbid of $276,000.00, and Galaxy indicated that it was content to allow Mr. Peplin to purchase the Property at that price.  That is, Galaxy refused to overbid Peplin or further participate in the auction.  Peplin's offer was accepted, conditioned on the Court approving the Trustee's sale motion.  At that hearing, the Trustee requested a finding that Mr. Peplin was a good faith purchaser entitled to the protections of 11 U.S.C. Section 363(m).  Gallian objected and the Court offered the Trustee to submit evidence to support the good faith finding.

The Trustee submitted a declaration from Mr. Peplin explaining that he was a debtor in bankruptcy, that the Trustee's broker had been involved in the sale of his homestead in his bankruptcy, that he needed to reinvest his exempt proceeds from that sale in another homestead in order to maintain an exemption in those funds.  He further explained that he was represented in his efforts to purchase Gallian's homestead by David Guarino and that Guarino is a licensed real estate agent employed by stalking horse bidder Galaxy Homes.

Gallian filed further opposition to the Trustee's request for a good faith finding arguing that having hired the stalking horse bidder as his broker, he had chilled any chance for a competitive bidding process at the auction that took place on March 4, 2025.  Apparently recognizing that evidence supplied by the Trustee regarding the auction that took place on March 4 could not support a finding of good faith, and still holding the grant or denial of the Trustee's sale motion under submission, the Court vacated the March 4 auction and ordered a redo to take place on March 27.  The Court also offered/orderd the Trustee, Mr. Peplin and his broker the to submit further evidence regarding his employment of Galaxy as his broker and other details, but did not offer Gallian the same opportunity to submit evidence or argument in opposition to a good faith finding.

The Trustee submitted an additional declaration from his broker, Coldwell Banker, an

2

1   additional declaration from Mr. Peplin, and an additional declaration from Mr. Peplin's "new"

2   broker describing what transpired before the initial auction on March 4, and between March 4

3   and the submission of the additional declarations.  That additional evidence indicates that

4   Coldwell Banker did not represent Peplin, something that was already obvious.  That additional

5   evidence also indicated that Peplin hired Guarino apparently without a written representation

6   agreement.  That additional evidence also indicated that Peplin had dismissed Guarino and hired

7   another broker who was not employed by Galaxy.  The new broker's declaration indicated that

8   she had a written representation agreement, but it was contingent on termination of Peplin's

9   contract with Guarino and Galaxy.  No writing was produced indicating that Galaxy or Guarino

10   had accepted Peplin's termination of their agreement.  Therefore, it is unclear whether Peplin

11   may still owe Guarino and Galaxy compensation if he ultimately purchases Gallian's homestead,

12   nor is it clear that the new broker has actually been hired by Peplin to pursue the purchase or

13   what if any services the new broker has rendered to Peplin or anyone else connected to the sale.

14        Gallian contends that the evidence already before the Court conclusively proves that

15   Peplin's offer to purchase Gallian's homestead does NOT qualify as a good faith purchase.

16   Gallian has argued that because Galaxy was both the stalking horse bidder and the broker for Mr.

17   Peplin as competing bidder the Trustee's proposed sale to Peplin is irretrievably imbued with bad

18   faith.  The Court's attempt to overcome this problem by vacating the original auction and

19   holding another auction does not fix the problem.

20        The purpose of holding an auction is to motivate potential purchasers to bid up the price

21   in the hope of generating the best price for the property being auctioned.  It is unrealistic to

22   expect spirited bidding where the competing bidder's broker is the only other cash buyer at the

23   auction.  Galaxy may make money on this transaction whether they purchase the property, or Mr.

24   Peplin purchases the property.  More importantly, Galaxy has a fiduciary duty to avoid harming

25   their client, Mr. Peplin, by bidding up the price.  That duty did not go away just because Peplin

26   now claims he is no longer represented by Guarino.  It's not just that Guarino represented both

27   stalking horse bidder and overbidder, it is that Guarino is employed by the stalking horse bidder.

28   As such, when he agreed to represent the overbidder, he created a fiduciary duty owed by the

3

ES 662                ES 662                ES 662

1  stalking horse bidder not to harm the overbidder.  The only way to do that would be to back out

2  of the bidding.  Conducting a second auction did not free the stalking horse bidder from its

3  obligation not to harm Peplin.  Peplin's dismissal of Guarino did not free the stalking horse

4  bidder from its obligation not to harm Peplin.

5       A California real estate broker has a fiduciary duty to their client, which includes the

6  obligation of utmost care, integrity, honesty, and loyalty in dealings with the client. *Lazar v.*

7  *Bishop*, 107 Cal.App.5th 668 (2024)). This fiduciary duty precludes the broker from assuming a

8  position adverse to that of their principal unless the principal consents. *Timmsen v. Forest E.*

9  *Olson, Inc.*, 6 Cal.App.3d 860 (1970). Specifically, a broker representing a seller may breach

10 their duty of honesty and fair dealing by secretly competing with the purchaser. *Nguyen v. Scott*,

11 206 Cal.App.3d 725 (1988). This duty of loyalty and undivided service means that the broker

12 must act in the highest good faith towards their principal and disclose all material facts

13 concerning the transaction that might affect the principal's decision. *Jorgensen v. Beach 'N' Bay*

14 *Realty, Inc.*, 125 Cal.App.3d 155 (1981), *Montoya v. McLeod*, 176 Cal.App.3d 57 (1985).

15 Therefore, a real estate broker in California has a fiduciary duty not to bid against their client, as

16 doing so would constitute a position adverse to the client's interests and could be seen as a breach

17 of the duty of loyalty and good faith. *Timmsen*.

18      Common sense and decades of experience possessed by this Court and all counsel

19 involved also show that this sale has been infected by bad faith.  When has a stalking horse

20 bidder ever made an initial bid that was the maximum price the stalking horse bidder was willing

21 to pay.  Overbidding only required $1,000 increments.  Can the Trustee seriously argue that

22 $275k was the most that Galaxy was willing to pay for the Debtor's homestead?  Can the Court

23 seriously believe that if someone unrelated to Galaxy had offered $276k, that Galaxy would not

24 even consider bidding $277k?  The fact that no one on behalf of stalking horse bidder and dual

25 broker Galaxy showed up for the March 27 hearing is additional evidence suggesting bad faith

26      Prior to the hearing, Gallian was not offered the opportunity to submit evidence or

27 argument regarding the declarations submitted by the Trustee.  Gallian was not offered the

28 opportunity to cross-examine Peplin or any of the declarants.  Trustee's counsel's suggestion that

Gallian could have conducted discovery between the submission of the declarations and the

second auction on March 27 is ridiculous.  The Court's suggestion that Gallian's counsel could

have submitted evidence of bad faith absent the Court's invitation to do so, and the tone and

tenor of the Court's comments toward Gallian's counsel suggest that the Court bears some

animosity toward Gallian and her counsel.  The Court's announcement that it was going to make

a finding of good faith before giving Gallian's counsel an adequate opportunity to finish making

his arguments to the Court or submit contrary evidence and argument in writing suggests that the

Court may have been inclined to prejudge the issues presented.  Holding an evidentiary hearing

does not fix those problems.  Rather, the Court must take a fresh open-minded look at the

evidence already before the Court.  Upon doing so, Gallian suggests that making a finding of

good faith would be manifest and reversible error.

Gallian does not intend to submit any affirmative testimony regarding the question of

good faith.  Rather, Gallian intends to cross-examine the witnesses presented by the Trustee and

provide impeachment evidence and rebuttal for any false testimony they may offer.  In that

regard, Gallian points out that the Trustee has argued, but not submitted any direct evidence that

Peplin actually qualifies to be a tenant at the Rancho Del Rey mobile home park.  On the

contrary, the rules and regulations of the Park indicate that they will not accept anyone who has

filed bankruptcy within the last five years as a tenant.  Mr. Peplin's bankruptcy was filed in

2024.  He does not appear to qualify as a tenant and therefore fails to qualify as a purchaser of

Gallian's homestead.  See, Exhibit 1 attached.

Dated:  April 4, 2025                    CHRISTOPHER L. BLANK, ATTORNEY
                                         AT LAW, PC

                                         By:    /S/*Christopher L. Blank*
                                              Christopher L. Blank, Attorney for Debtor
                                              Jamie Lynn Gallian

1  CHRISTOPHER L. BLANK (SBN 115450)
   CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2  2973 Harbor Blvd. #506
   Costa Mesa, CA 92626
3  Telephone:    (949) 250-4600
   Email:    chris@chrisblanklaw.com
4
   Attorney for Debtor Jamie Lynn Gallian
5

6

7                          UNITED STATES BANKRUPTCY COURT
8
                           CENTRAL DISTRICT OF CALIFORNIA
9

10 In Re                              )BK Case No. 8:21-bk-11710-SC
11                                    )
                                      )Chapter 7
12                                    )
   JAMIE LYNN GALLIAN                 )PROOF OF SERVICE OF DEBTOR'S
13                                    )EVIDENCE AND ARGUMENT IN
                                      )OPPOSITION TO PROPOSED FINDING
14                     Debtor.        )OF GOOD FAITH PURCHASE AND
                                      )EXHIBIT 1 THERETO
15                                    )
                                      )Date:  April 10, 2025
16                                    )Time:  9:30 AM
                                      )Ctrm: 5C In-person
17 _____)

18         TO THE COURT AND INTERESTED PARTIES:

19         Please see the attached Exhibit 1 which was to be attached to Debtor's Evidence and

20 Argument in Opposition to Proposed Finding of Good Faith, as well as Proof of Service of that

21 document.

22 Dated:  April 5, 2025              CHRISTOPHER L. BLANK, ATTORNEY
                                      AT LAW, PC
23

24                                    By:  __/S/Christopher L. Blank_____
25                                         Christopher L. Blank, Attorney for Debtor
                                           Jamie Lynn Gallian
26

27

28

ES 665                          ES 665            1            ES 665

# EXHIBIT 1

# EXHIBIT 1

# EXHIBIT 1

ES 666                          ES 666                          ES 666

**From:** Vivienne Alston <valston@aadlawyers.com>
**Subject: FW: Scan Data from [XRX9C934E629521]**
**Date:** April 11, 2019 at 9:58:35 AM PDT
**To:** Jamie Gallian <jamiegallian@gmail.com>

Here is the application packet  for a new buyer.  The  space rent doe the lot is  on the Information for Prospective Homeowners.

Sincerely,
Vivienne J. Alston
Alston, Alston & Diebold
27201 Puerta Real, Suite 300
Mission Viejo, CA 92691
Telephone: (714) 556-9400

**From:** info2@aadlawyers.com <info2@aadlawyers.com>
**Sent:** Thursday, April 11, 2019 1:37 AM
**To:** Vivienne Alston <valston@aadlawyers.com>
**Subject:** Scan Data from [XRX9C934E629521]

*Rancho Del Rey*

**MOBILE HOME ESTATES**
16222 MONTEREY LANE
HUNTINGTON BEACH, CA 92649
PHONE: (714) 846-1429

# Application Qualification Requirements

The below listed criteria must be meet for approval of Rancho Del Rey Mobile Home Estates tenancy.

- Proof of monthly income must be greater than three (3) times the monthly rent which varies by space.

- FICO credit score must be above 650.

- No evictions in the past 5 years.

- No bankruptcy in the past 5 years.

- Application is evaluated on the ability of applicant to conform to the (MRL) Mobile Home Residency Law and the park Rules and Regulations.

- General/Criminal background checks and references of past tenancy information are required and evaluated to confirm applicant will comply with the Rules and Regulations.

- Restrictions are placed on pets. Limit is two (2) small pets per space. Dogs must be approved by management and must be no greater than 15 inches at the shoulders or weigh less then 22 pounds.

Rancho Del Rey Management

ES 668                    ES 668                    ES 668

# MOBILEHOME PARK RENTAL AGREEMENT DISCLOSURE



**Western Manufactured Housing Communities Association**

THIS DISCLOSURE STATEMENT CONCERNS THE MOBILEHOME PARK KNOWN AS <u>Rancho Del Rey Mobile Home Estates</u> LOCATED AT
<u>16222 Monterey Ln.</u> IN THE CITY OF <u>Huntington Beach</u> COUNTY OF <u>Orange</u>, STATE OF CALIFORNIA.
THIS STATEMENT IS A DISCLOSURE OF THE CONDITION OF THE PARK AND PARK COMMON AREAS AS OF <u>4/10/2019</u> IN COMPLIANCE WITH SECTION 798.75.5 OF THE CIVIL CODE.
IT IS NOT A WARRANTY OF ANY KIND BY THE MOBILEHOME PARK OWNER OR PARK MANAGEMENT AND IS NOT A SUBSTITUTE FOR ANY INSPECTION BY THE PROSPECTIVE HOMEOWNER/LESSEE OF THE SPACE TO BE RENTED OR LEASED OR OF THE PARK, INCLUDING ALL COMMON AREAS REFERENCED IN THIS STATEMENT. THIS STATEMENT DOES NOT CREATE ANY NEW DUTY OR NEW LIABILITY ON THE PART OF THE MOBILEHOME PARK OWNER OR MOBILEHOME PARK MANAGEMENT OR AFFECT ANY DUTIES THAT MAY HAVE EXISTED PRIOR TO THE ENACTMENT OF SECTION 798.75.5 OF THE CIVIL CODE, OTHER THAN THE DUTY TO DISCLOSE THE INFORMATION REQUIRED BY THE STATEMENT.

Are you (the mobilehome park owner/mobilehome park manager) aware of any of the following:

| A. Park or common area facilities | B. Does the park contain this facility? | | C. Is the facility in operation? | | D. Does the facility have any known substantial defects? | | E. Are there any uncorrected park citations or notices of abatement relating to the facilities issued by a public agency? | | F. Is there any substantial, uncorrected damage to the facility from fire, flood, earthquake, or landslides? | | G. Are there any pending lawsuits by or against the park affecting the facilities or alleging defects in the facilities? | | H. Is there any encroachment, easement, non-conforming use, or violation of setback requirements regarding this park's common area facility? | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| Clubhouse | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Walkways | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Streets, roads and access | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Electric utility system | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Water utility system | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Gas utility system | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Common area lighting system | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Septic or sewer system | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Playground | | ✗ | | | | | | | | | | | | |
| RV storage | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Parking areas | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Swimming pool | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Spa pool | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Laundry | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |
| Other common area facilities* | ✗ | | ✗ | | | ✗ | | ✗ | | ✗ | | ✗ | | ✗ |

*If there are other important park or common area facilities, please specify (attach additional sheets if necessary):
<u>Other Common Areas Include: Car Washing Facility, Pool Showers and Saunas.</u>
If any item in C is checked "no", or any item in D, E, F, G, or H is checked "yes", please explain (attach additional sheets if necessary):

The mobilehome park owner/park manager states that the information herein has been delivered to the prospective homeowner/lessee a minimum of three days prior to execution of a rental agreement and is true and correct to the best of the park owner/park manager's knowledge as of the date signed by the park owner/manager.

Park Owner/Manager:
<u>Chris Houser</u> By:_____ Date:_____
print name                          signature

I/WE ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE PARK OWNER/MANAGER STATEMENT.
Prospective Homeowner
Lessee:_____ Park Owner/Manager:_____, Title:_____
Date:_____

Prospective Homeowner
Lessee:_____ Park Owner/Manager:_____, Title:_____
Date:_____

Copyright © 2014. WMA.

Printed Using formsRus.com On-Line Forms Software 1/14

## INFORMATION FOR PROSPECTIVE HOMEOWNERS



Western
Manufactured Housing Communities
Association

As a prospective homeowner you are being provided with certain information you should know prior to applying for tenancy in a mobilehome park. This is not meant to be a complete list of information.

Owning a home in a mobilehome park incorporates the dual role of "homeowner" (the owner of the home) and park resident or tenant (also called a "homeowner" in the Mobilehome Residency Law). As a homeowner under the Mobilehome Residency Law, you will be responsible for paying the amount necessary to rent the space for your home, in addition to other fees and charges described below. You must also follow certain rules and regulations to reside in the park.

If you are approved for tenancy, and your tenancy commences within the next 30 days, your beginning monthly rent will be $ _1372.00___ (must be completed by the management) for space number _376___ (must be completed by the management). Additional information regarding future rent or fee increases may also be provided.

In addition to the monthly rent, you will be obligated to pay to the park the following additional fees and charges listed below. Other fees or charges may apply depending upon your specific requests. Metered utility charges are based on use.
Average Park Utility Charges from 2017 (Charges Vary on usage):
Gas:$29.61, Electric:$68.75, Water:$22.20, Trash:$17.67, Sewer:$23.38
<span>(Management shall describe the fee or charge and a good faith estimate of each fee or charge.)</span>

Some spaces are governed by an ordinance, rule, regulation, or initiative measure that limits or restricts rents in mobilehome parks. These laws are commonly known as "rent control." Prospective purchasers who do not occupy the mobilehome as their principal residence may be subject to rent levels which are not governed by these laws. (Civil Code Section 798.21) Long-term leases specify rent increases during the term of the lease. By signing a rental agreement or lease for a term of more than one year, you may be removing your rental space from a local rent control ordinance during the term, or any extension, of the lease if a local rent control ordinance is in effect for the area in which the space is located.

A fully executed lease or rental agreement, or a statement signed by the park's management and by you stating that you and the management have agreed to the terms and conditions of a rental agreement, is required to complete the sale or escrow process of the home. You have no rights to tenancy without a properly executed lease or agreement or that statement. (Civil Code Section 798.75)

If the management collects a fee or charge from you in order to obtain a financial report or credit rating, the full amount of the fee or charge will be either credited toward your first month's rent or, if you are rejected for any reason, refunded to you. However, if you are approved by management, but, for whatever reason, you elect not to purchase the mobilehome, the management may retain the fee to defray its administrative costs. (Civil Code Section 798.74)

We encourage you to request from management a copy of the lease or rental agreement, the park's rules and regulations, and a copy of the Mobilehome Residency Law. Upon request, park management will provide you a copy of each document. We urge you to read these documents before making the decision that you want to become a mobilehome park resident.

Dated: _____

Acknowledge Receipt by Prospective Homeowner(s): _____

Signature of Park Manager: _____

🏠

Printed Using formsRus.com On-Line Forms Software 1/14

Copyright © 2014, WMA

**ES 672**                    **ES 672**                    **ES 672**

ES 673  ES 673  ES 673

# APPLICATION FOR RESIDENCY



**Western Manufactured Housing Communities Association**

(Each person desiring residency must complete a separate application.)

IN _____ Rancho Del Rey Mobile Home Estates _____
                                        (Community Name)

## Personal

Name of Person Making Application: _____

Phone Number: _____

Date (of application): _____

Present Address: _____
                                                                  City                State        Zip

Social Security Number: _____ Driver's License Number: _____

Email: _____ Date of birth: _____

Name(s) of Other Person(s) Who Will Be Occupying Homesite: _____

_____

Relationship(s): _____

Social Security Number(s): _____

Driver's License Number(s) _____

## Previous Residency

Present Landlord or Mortgage Co.: _____ Yrs. _____

Address: _____ Phone: _____
                              (City)            (State)     (Zip)

Monthly Rent or Mortgage Payment: _____

Prior Landlord or Mortgage Co.: _____ Yrs. _____

Address: _____ Phone: _____
                              (City)            (State)     (Zip)

Monthly Rent or Mortgage Payment: _____

Have you ever been asked to terminate your residency elsewhere or have you ever been evicted? ☐ Yes ☐ No

If yes, please explain: _____

Have you ever lived in a mobilehome park before? ☐ Yes   ☐ No

If yes, please explain: _____

_____

Address: _____

Dates of Residency: _____

Amount of Last Rent: _____



Copyright © 2017. WMA.

# APPLICATION FOR RESIDENCY
**Page 2**

## Vehicles

Number of Automobile(s): _____ Boat(s): _____ Other _____

We must have complete descriptions of all vehicles:

Make: _____ Model: _____ Year: _____ License No.: _____ State: _____

Financed By: _____ Address: _____ Phone: _____

Make: _____ Model: _____ Year: _____ License No.: _____ State: _____

Financed By: _____ Address: _____ Phone: _____

Make: _____ Model: _____ Year: _____ License No.: _____ State: _____

Financed By: _____ Address: _____ Phone: _____

## Employment

Employer: _____ Phone: _____

Address: _____ City_____ State/ZIP: _____

Position: _____ Gross Monthly Salary: $ _____

Immediate Supervisor: _____ Length of Employment: Yrs. _____ Mos. _____

If not employed, please provide source and amount of means of financial support:

_____        _____

_____        _____

## Financial

Name of Bank: _____ City: _____ Acct. No.: _____

☐ Checking  ☐ Savings  ☐ Loan

Name of Bank: _____ City: _____ Acct. No.: _____

☐ Checking  ☐ Savings  ☐ Loan

Credit Card: _____ Acct. No.: _____ How Long: _____

Credit Card: _____ Acct. No.: _____ How Long: _____

Credit Card: _____ Acct. No.: _____ How Long: _____

Net Worth (from back page):_____ 0.00

## References

Business: Name: _____ City: _____ Phone: _____

Name: _____ City: _____ Phone: _____

Personal: Name: _____ City: _____ Phone: _____

Name: _____ City: _____ Phone: _____



Copyright © 2017. WMA.

**ES 675**                         **ES 675**                         **ES 675**

# APPLICATION FOR RESIDENCY
**Page 3**

## Emergency

Person(s) to notify in case of an emergency (other than co-resident):
Name: _____ Relationship: _____
Address: _____ City: _____
State/ZIP: _____ Phone Number: _____

## Approved Animals

If you have dogs and/or cats, please provide the following information:

| Name | Age | Type | Color/Description | Height | Weight |
|------|-----|------|-------------------|--------|--------|
|      |     |      |                   |        |        |
|      |     |      |                   |        |        |

## Home or Recreational Vehicle to Occupy Homesite

Make/Model: _____ Net Size:  Length: _____ Width: _____ Height: _____
Year: _____ Breaker Size: _____ amps.  License or Decal No.: _____
Serial No.: _____ Value: _____
Financed by: _____
Current Location: _____
Legal Owner Name/Address: _____
Registered Owner Name/Address: _____
Junior Lienholder Name/Address (if any): _____

The following paragraph should be completed by management and initialed by the prospective resident in the event the park has established minimum age requirements. If there are no age requirements for occupancy, the paragraph should be crossed out.

**The undersigned understands and acknowledges that this Park is a "housing for older persons" park with a minimum age requirement of ___55___ years of age or older for at least one resident and a minimum age requirement of ___18___ years of age or older for all other residents. The undersigned hereby represents that the person(s) making application to reside in the park meet the age requirement.**

The undersigned requests the management to check the above credit references and representations. The undersigned acknowledges that in the event a rental agreement is executed by both the management and the undersigned, it is subject to approval by the management of the undersigned's mobilehome or recreational vehicle as provided in the Rental Agreement.

The undersigned represents and warrants that the above information is true and correct and has been made for the purpose of informing the management of the park. The management has permission to verify any and all information offered on this application. In the event of any misrepresentation by applicant, management will have grounds to cancel any agreement entered in reliance upon the misrepresentation.



Copyright © 2017. WMA.

ES 676                          ES 676                          ES 676

## APPLICATION FOR RESIDENCY
Page 4

The undersigned understands that in the event that any of the above information cannot be verified by the management of the Park, the management of the Park has the right to deny the application. The undersigned further understands that Prospective Resident(s) shall have no rights of tenancy until a Rental Agreement has been signed by the Park management and the prospective resident(s).

APPLICANT _____

DATE _____

# NET WORTH STATEMENT

| ASSETS | | IN DOLLARS | LIABILITIES | | AMOUNT |
|---|---|---|---|---|---|
| CASH | Bank Office Name & No. | (Omit Cents) | NOTES PAYABLE TO BANKS | Bank Office Name & No. | (Omit Cents) |
| STOCKS AND BONDS | | | OTHER NOTES & ACCOUNTS PAYABLE | Mobilehome Loans | |
| | | | | Sales Contracts | |
| | | | | Loans of Life Ins. Policies | |
| NOTES RECEIVABLE (COLLECT-IBLE) | Relatives & Friends | | TAXES PAYABLE | Current Yr's Income Taxes Unpaid | |
| | Trust Deeds & Mortgages | | | Prior Yr's Income Taxes Unpaid | |
| | Other | | | Property Taxes Unpaid | |
| REAL ESTATE | Improved | | OTHER LIABILITIES | Unpaid Interest | |
| | Unimproved | | | | |
| | Leasehold Interest Owned | | | Total Liabilities | |
| LIFE INSURANCE | Cash Surrender Value | | NET WORTH CALCU-LATION | TOTAL ASSETS | |
| OTHER PERSONAL PROPERTY | Vehicles | | | TOTAL LIABILITIES | |
| | Other | | | NET WORTH | |
| | TOTAL ASSETS | | | | |

Copyright © 2017. WMA.

ES 677          ES 677          ES 677

# PRIVACY STATEMENT FORM



**Western
Manufactured Housing Communities
Association**

At

_____Rancho Del Rey Mobile Home Estates_____
(Name of Community)

we are committed to safeguarding all nonpublic personal information that we may collect during the application process or at any time during your tenancy. We use this information initially for the sole purpose of evaluating your application for residency. Occasionally we use nonpublic personal information in order to collect a debt, for example, when a resident fails to pay the rent.

We collect nonpublic personal information about you from the following sources:

> Information we receive directly from you, on forms, and in other communications to or with us, whether in writing, in person, by telephone or any other means.

> Information we receive from other sources such as current and former landlords, current employers credit reporting agencies and resident screening services.

The community values your privacy and does not disclose nonpublic personal information to anyone, except as permitted or required by law, or as reasonably necessary in order to establish your identity when communicating with others as discussed above.

We restrict access to nonpublic personal information about you to only those persons who need to know that information in order to perform their job duties. Further, we maintain physical, electronic and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

The undersigned Resident, or prospective Resident, hereby acknowledges receipt of a copy of this notice.

DATED: _____        _____

DATED: _____        _____

ES 678                              ES 678                              ES 678

## CONSENT TO OBTAIN
## CONSUMER CREDIT REPORT



**Western
Manufactured Housing Communities
Association**

The undersigned hereby authorizes _____ Rancho Del Rey Mobile Home Estates _____ to obtain a credit report
<span style="font-size:smaller">(Name of park)</span>
based upon the information provided in the undersigned's *Application for Tenancy*, and to share any necessary
personal information from the undersigned's application documents with any credit reporting agency or their
affiliates.

SO AGREED:

Dated: _____

_____
(Applicant)

Dated: _____

_____
(Applicant)

Dated: _____

_____
(Applicant)

Copyright © 2014. WMA.



Printed Using formsRus.com On-Line Forms Software 1/14

**ES 680**                 **ES 680**                 **ES 680**

ES 681 ES 681 ES 681

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*):

## DEBTOR'S EVIDENCE AND ARGUMENT IN OPPOSITION TO PROPOSED FINDING OF GOOD FAITH PURCHASE AND EXHIBIT 1

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 4, 2025 Brief and April 5, 2025 Exhibit 1, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 5, 2025 | Christopher L. Blank | /S/Christopher L. Blank |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* ES 682                ES 682                **F 9013-3.1.PROOF.SERVICE** ES 682

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

SERVICE LIST

8:21-bk-11710-SC Notice will be electronically mailed to:

Bradford Barnhardt on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home
Estates
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Christopher L Blank on behalf of Debtor Jamie Lynn Gallian
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

ES 684                    ES 684                    ES 684

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Laila Rais on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Rais on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Rais on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com,

lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

8:21-bk-11710-SC Notice will not be electronically mailed to:

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Janine Jasso
PO Box 370161
El Paso, CA 79937

Levene Neale Bender Yoo & Golubchik L.L.P.
2818 La Cienega Ave
Los Angeles, CA 90034

Michael D Poole on behalf of Creditor The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

1  ERIC P. ISRAEL, #132426
   EPI@LNBYG.COM
2  LEVENE, NEALE, BENDER, YOO &
   GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
4  Los Angeles, CA 90034
   Telephone: 310-229-1234
5  Fascimile:  310-229-1244

6  Attorneys for JEFFREY I. GOLDEN, Trustee

7  D. EDWARD HAYS, #162507
8  ehays@marshackhays.com
   BRADFORD N. BARNHARDT, #328705
9  bbarnhardt@marshackhays.com
   MARSHACK HAYS WOOD LLP
10 870 Roosevelt
11 Irvine, CA 92620
   Telephone: (949) 333-7777
12 Facsimile: (949) 333-7778

13 Attorneys for Creditor,
14 HOUSER BROS. CO. dba RANCHO DEL
   REY MOBILE HOME ESTATES

15              UNITED STATES BANKRUPTCY COURT

16      CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

17

18

19 | In re | Case No. 8:21-bk-11710-SC |
20 | JAMIE LYNN GALLIAN, | Chapter 7 |
21 | Debtor. | JOINT REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN |
22
23 | | Date:   April 10, 2025 |
24 | | Time:  9:30 a.m. |
   | | Ctrm:  5C |
25

26

27                            1
   REPLY IN SUPPORT OF TURNOVER MOTION AND SALE MOTION
28 4880-1284-8131,v.1

ES 687                    ES 687                    ES 687

1

## TABLE OF CONTENTS

2    1.    Summary of Argument ................................................................................2

3    2.    Factual Background ....................................................................................3

4

5    3.    List of Witnesses........................................................................................8

6    4.    Legal Argument ..........................................................................................8

7          A.    Debtor cannot rebut the overwhelming evidence supporting a good faith

8                purchaser finding. .............................................................................8

9          B.    Debtor lacks standing to challenge the § 363(m) finding on the basis of

10               overbids.............................................................................................12

11
         C.    Houser Bros. has approved Mr. Peplin and his wife as park tenants....................15
12

13   5.    Conclusion ................................................................................................16

14   Declaration of Chris Houser ........................................................................................18

15

16

17

## TABLE OF AUTHORITIES

18   **Cases**

19   *Ctr. for Biological Diversity v. Kempthorne*,

20       588 F.3d 701, 707 (9th Cir. 2009) ................................................... 13

21   *Cty. of Imperial Treasurer-Tax Collector v. RW Meridian, LLC (In re RW Meridian LLC)*,

22       2017 Bankr. LEXIS 4172, at *4 (B.A.P. 9th Cir. Dec. 6, 2017) .................................... 13

23   *Duckor Spradling & Metzger v. Baum Tr. (In re P.R.T.C., Inc.)*,

24       177 F.3d 774, 778 n.2 (9th Cir. 1999) ................................................. 13

25   *Ewell v. Diebert (In re Ewell)*,

26       958 F.2d 276, 281 (9th Cir. 1992) ....................................................... 9

27                                                    i

ES 688                          ES 688                          ES 688

1  *Filtercorp,*

2      163 F.3d at 577 ........................................................................................................... 9

3  *In re Fondiller,*

4      707 F.2d 441, 442 (9th Cir. 1983) ............................................................................... 13

5  *In re Peplin,*

6      Case No. 2:24-bk-13645-DS, ECF No. 73 (Bankr. C.D. Cal. Aug. 19, 2024) ............................... 16

7  *In re Teligent,*

8      417 B.R. at 210 ........................................................................................................... 13

9  *In re Wilde Horse Enterprises, Inc.,*

10     136 B.R. 830, 842 (Bankr. C.D. Cal. 1991)................................................................... 9

11 *In re Zhang,*

12     Case No. 6:22-bk-10523-SY, ECF No. 166 (Bankr. C.D. Cal. Feb. 13, 2024)............................ 11

13 *Lahijani,*

14     325 B.R. at 288-89 ..................................................................................................... 14

15 *Licata v. Coan,*

16     2015 U.S. Dist. LEXIS 160333, at *14-15 (D. Conn. Sept. 22, 2015)........................... 13

17 *Lujan v. Defenders of Wildlife,*

18     504 U.S. 555, 560 (1992)............................................................................................ 12

19 *Nev. Bus. Credit, LLC v. Kavanaugh (In re Golden Empire Air Rescue, Inc.),*

20     2007 Bankr.LEXIS 4880, at *21-22 (B.A.P. 9th Cir. Oct. 25, 2007)............................ 14

21 *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),*

22     163 F.3d 570, 577 (9th Cir. 1998) ............................................................................... 8

23 *Republic of the Marsh. Is. v. United States,*

24 865 F.3d 1187, 1199 (9th Cir. 2017) ............................................................................ 12

25 *Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.),*

26     417 B.R. 197, 209 (Bankr. S.D.N.Y. 2009)................................................................. 12

27                                              ii

28 4880-1284-8131,v.1

ES 689                          ES 689                          ES 689

*Thomas v. Namba (In re Thomas),*

   287 B.R. 782, 785 (B.A.P. 9th Cir. 2002)......................................................................... 9

*United States v. 7501 N.W. 210th St.,*

   437 Fed.Appx. 754, 757-58 (10th Cir. 2011) .................................................. 13

*Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal),*

   450 B.R. 897, 907 n.11 (B.A.P. 9th Cir. 2011) .............................................. 13

*Warth v. Seldin,*

   422 U.S. 490, 498 (1975).................................................................... 12, 13

*Wood v. Borland (In re Borland),*

   2009 Bankr. LEXIS 5648, at *16-17 (Bankr. E.D. Cal. July 23, 2009) ......................... 11

**Statutes**

11 U.S.C. § 363(b) ................................................................................ 8

11 U.S.C. § 363(m) ........................................................................ 11, 15, 16

iii

4880-1284-8131,v.1

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR AND HER COUNSEL OF RECORD, AND ALL INTERESTED PARTIES:

Jeffrey I. Golden, solely in his capacity as Chapter 7 Trustee ("Trustee") for the bankruptcy estate ("Estate") of Jamie Lynn Gallian ("Debtor"), and Creditor, Houser Bros. Co., dba Rancho Del Rey Mobile Home Estates ("Houser Bros."), and submit this Joint Reply ("Reply") in Support of the 11 U.S.C. § 363(m) Finding Re: Gregory A. Peplin ("Mr. Peplin").

## 1. Summary of Argument

A good faith buyer is one who buys in good faith and for value. There is no dispute that Mr. Peplin is buying for value; he submitted a $276,000.00 all cash, no contingency offer. Further, Mr. Peplin is buying in good faith. He submitted the highest offer received after months of marketing and had severed all ties with the stalking horse bidder by the time of the March 27, 2025, auction. While Debtor suggests that the stalking horse bidder did not engage in a bidding war because of collusion with Mr. Peplin, the facts are that the stalking horse bidder did not want to tie up additional capital in an investment where the debtor had already filed a premature motion for stay pending appeal *before the initial auction had even occurred*. Plus, the stalking horse bidder could have closed on the property and re-sold it to Peplin for a profit but instead stepped aside to allow the estate to receive the higher price.

Debtor also lacks standing to challenge a good faith finding because she lacks a pecuniary interest in the outcome – in other words, her homestead is out of the money based on the fraudulent lien she put against the property and that the trustee avoided, recovered, and preserved. In bankruptcy, Chapter 7 debtors generally lack a sufficient pecuniary interest in estate administration to create standing to object to or appeal from orders of the bankruptcy court. Debtor makes no showing that the value of the Property or that any other sales or overbid process would yield sufficient proceeds to exceed the Trustee's avoided lien against the property, which now exceeds $304,000.00.

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN
4880-1284-8131,v.1

ES 691          ES 691          ES 691

1    Finally, Debtor's argument regarding Houser Bros.'s tenant approval procedures conflates

2 two totally separate issues: (1) the § 363(m) good faith purchaser standard to sell the manufactured

3 home; and (2) Houser Bros.'s internal policy for approval of applicants to lease the underlying

4 mobilehome park space. The evidence produced by the Debtor was the policy in effect in 2019. But,

5 Houser Bros. has changed its policy since that time. Under its current policy, Houser Bros. has

6 approved Mr. Peplin and his wife. In short, Mr. Peplin is a good faith purchaser that tendered the

7 highest price after months of marketing and his application to lease in the park has been approved.

8    For the reasons set forth in this brief, along with the entirety of the record in this case, Houser

9 Bros. and the Trustee jointly request that the Court find Mr. Peplin to be a good faith purchaser for

10 purposes of 11 U.S.C. § 363(m).

11 **2.    Factual Background**

12    On July 1, 2024, the Trustee filed an "Application to Employ Real Estate Broker Coldwell

13 Banker Realty and Agents William Friedman and Greg Bingham Pursuant to 11 U.S.C. §§ 327 and

14 328" ("2024 Employment App") regarding the mobilehome located at 16222 Monterey Lane, Space

15 376, Huntington Beach, CA 92649 ("Property"). Docket No. 395.

16    On September 5, 2024, the Court entered an order granting the 2024 Employment App.

17 Docket No. 431.

18    On or about October 24, 2024, the Trustee's real estate agent, Greg Bingham ("Mr.

19 Bingham") of Coldwell Banker Realty, listed the Property. Docket No. 539 at 30 (Declaration of

20 Greg Bingham, ¶ 5). The marketing that Mr. Bingham did for the Property included: (a) listing the

21 Property in the Multiple Listing Service; (b) sending an email blast to approximately 1,100 real

22 estate agents working in the area; (c) advertising the Property on third-party websites such as Zillow,

23 Trulia, and Realtor.com; (d) sending direct mail to targeted residents in the area; (e) contacting all

24 active buyers agents in the mobilehome communities and neighboring senior residential

25 neighborhoods; and (f) placing targeted advertising on social media, such as Facebook and

26 Instagram. *Id.* (Declaration of Greg Bingham, ¶ 6).

27

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN

28    4880-1284-8131,v.1

ES 692                          ES 692                          ES 692

In marketing the Property, the Trustee experienced periodic interference from, and delays caused by, the Debtor. Docket No. 539 at 28 (Declaration of Jeffrey I. Golden in support of the Sale Motion, ¶ 8). This interference included:

(1) On December 13, 2024, the Debtor sent an email on which the Trustee was copied, advising: "Gentlemen, I am making arrangements to remove the 2014 Skyline Manufactured Home from the Rancho Del Rey Park and will inform you where it will be stored." *See* Docket No. 438 at 23 (Exhibit 1 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

(2) On December 13, 2024, the Trustee was copied on a second email from the Debtor indicating: "Please accept this as Notice the home will be removed from the park as quickly as possible to avoid accruing any further accrual of rent." *See* Docket No. 438 at 26 (Exhibit 2 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

(3) On December 17, 2024, the Trustee was copied on an email in which the Debtor advised: "In keeping with the spirit of the holidays, I respectfully request any Home Inspections and Termite Inspections be continued after January 2, 2025." *See* Docket No. 438 at 28 (Exhibit 3 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

(4) On or about January 1, 2025, the Trustee was copied on an email in which the Debtor advised: "I came home sick with the flu from work. Fever with severe headache and body aches and bronchitis. I will be in bed resting due to the severe pain and migraine headaches. Please inform your broker of the circumstances." *See* Docket No. 438 at 30 (Exhibit 4 to the Declaration of Jeffrey I. Golden in support of the Turnover Motion).

Despite these delays, Mr. Bingham and his team held four accompanied buyer tours of the Property. Docket No. 539 at 31 (Declaration of Greg Bingham, ¶ 8). As of January 31, 2025, the Trustee had received one offer for the Property: a $275,000.00 offer, subject to overbid, from Galaxy Homes, LLC ("Galaxy"). Docket No. 539 at 27- 28 (Declaration of Jeffrey I. Golden, ¶¶ 4, 8).

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN
4880-1284-8131,v.1

ES 693                ES 693                ES 693

On January 31, 2025, the Trustee filed:

(1) A "Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance" ("Turnover Motion"), Docket No. 538; and

(2) A "Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption" ("Sale Motion"), Docket No. 539.

On February 13, 2025, Houser Bros. filed a joinder in support of the Turnover Motion, Docket No. 552, and a joinder in support of the Sale Motion, Docket No. 551.

On February 18, 2025, the Debtor substituted in counsel, Docket No. 553, and filed an "Omnibus Opposition to Trustee's Motions to Sell . . . and for Turnover of Property . . . and Houser Joinders," with a supporting "Declaration of Jamie Lynn Gallian" ("2/18 Gallian Declaration"). Docket No. 554.

On February 25, 2025, the Trustee and Houser Bros. filed a joint omnibus reply in support of the Turnover Motion and Sale Motion ("Turnover/Sale Reply"). Docket No. 558.

On February 28, 2025, the Trustee filed a "Supplemental Declaration of Greg Bingham Re Receipt of Overbid . . ." ("2/18 Bingham Declaration"), which indicated that on or about February 26, 2025, Mr. Bingham received an overbid from Mr. Peplin for $276,000.00, for all cash with no contingencies. Docket No. 560 at 2.

On or about March 1, 2025, the Court issued tentative rulings to grant both the Turnover Motion and the Sale Motion, approve the Sale Motion's overbid procedures, and permit the Trustee to conduct an auction.

On March 3, 2025, Debtor filed a "Motion for Stay Pending Appeal of Order Granting Sale and Turnover of Homestead Property" ("Stay Motion"), which she purported to set for hearing on March 4, 2025, at 11:00 a.m.—the same time scheduled for the hearings on the Turnover Motion and Sale Motion.

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN
4880-1284-8131,v.1

ES 694          ES 694          ES 694

On March 4, 2025, at 11:00 a.m., the Court held a hearing on the Turnover Motion and the Sale Motion. *See* Docket No. 564 (audio of hearing). Appearances were as set forth on the record. The Court stated that it would treat the premature Stay Motion as a sur-reply. During the hearing, the Trustee conducted an auction on the sale of the Property, during which Mr. Peplin prevailed with a $276,000.00 all-cash bid to purchase the Property, with no contingencies whatsoever. Also, during the hearing, the Trustee withdrew his request for a waiver of the stay provided by Fed. R. Bankr. P. 6004(h).

At the conclusion of the hearing, the Court took the Turnover Motion and Stay Motion under submission and requested that each party file and lodge proposed findings of fact and conclusions of law and any supporting good faith declarations by March 7, 2025, at 5:00 p.m.

On March 7, 2025:

1)  Houser Bros. and the Trustee filed and lodged their joint findings of fact and conclusions of law in support of the Turnover Motion and Sale Motion, Docket No. 565;

2)  Houser Bros. and the Trustee filed a "Declaration of Gregory A. Peplin Re Good Faith Purchaser Finding on Chapter 7 Trustee's Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free and Clear of Liens and Homestead Exemption" ("3/7 Peplin Declaration"), Docket No. 566; and

3)  Debtor filed and lodged her findings of fact and conclusions of law in opposition to the Turnover Motion and Sale Motion, Docket No. 567.

On March 12, 2025, Debtor filed an "Opposition to Proposed Finding of Good Faith Purchase." Docket No. 568.

On March 13, 2025, the Court entered an "Order Vacating Auction Results from March 4, 2025, Hearing and Setting New Auction Date of March 27, 2025." Docket No. 569.

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN
4880-1284-8131,v.1

ES 695                                ES 695                                ES 695

On March 20, 2025, the Trustee filed:

1) A "Supplemental Declaration of Gregory A. Peplin Re Court's Order Vacating March 4, 2025, Auction Results and Re-Setting Auction for March 27, 2025" ("3/20 Peplin Declaration"), Docket No. 577; and

2) A "Supplemental Declaration of Greg Bingham Re Marketing Efforts After Vacating March 4, 2025, Auction Results and Scheduling New Auction Re Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081" ("3/20 Bingham Declaration"), Docket No. 578.

On March 24, 2025, the Trustee filed a "Declaration of Lori Alvarez Re Court's Order Vacating March 4, 2025, Auction Results and Re-Setting Auction for March 27, 2025" ("Alvarez Declaration"). Docket No. 580.

On March 25, 2025, Debtor filed a "Compendium of Out of Circuit Cases Re Trustee's Sale Motion," citing *In re Traverse*, 753 F.3d 19 (1st Cir. 2014), and *In re Carmichael*, 439 B.R. 884 (Bankr. D. Kan. 2010).

On March 27, 2025, the Court held a continued hearing on the auction for the Sale Motion. Appearances were as noted on the record. During the auction, Mr. Peplin appeared and prevailed with a $276,000.00 overbid for the Property.

On March 28, 2025, the Court entered an "Order Re: Establishing Evidentiary Hearing for Interested Parties to Provide Further Evidence in Support and Opposition to a Determination of a Section 363(m) Finding with Respect to the Successful Buyer of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081" ("3/28 Order"). Docket No. 585.

On April 4, 2025, Debtor filed her "Evidence and Argument in Opposition to Proposed Finding of Good Faith Purchase." Docket No. 589.

7

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN
4880-1284-8131,v.1

ES 696                          ES 696                          ES 696

Houser and the Trustee file this joint pleading pursuant to the 3/28 Order.

**3.   List of Witnesses**

The Trustee and Houser Bros. intend to offer the following witnesses in support of the § 363(m) finding:

(1) Gregory A. Peplin, the successful overbidder, who will testify regarding the facts as set forth in his declarations submitted in support of the Sale Motion, including his terminated relationship with Galaxy.

(2) The Trustee, who will offer rebuttal testimony to Debtor's arguments regarding the good faith purchaser finding.

(3) Chris Houser, who will testify regarding Houser Bros.'s requirements for approval of prospective tenants at the mobilehome park, as well as the approval of Mr. Peplin and his wife as tenants.

(4) Greg Bingham, who will testify about the facts set forth in his declarations submitted in support of the Sale Motion, including the marketing of the Property.

(5) Lori Alvarez, who will testify about the facts set forth in her declaration, including her representation of Mr. Peplin.

The Trustee reserves the right to call David Guarino of Galaxy as a witness regarding Galaxy's role in this transaction. The Trustee further reserves the right to question the Debtor as he deems appropriate.

**4.   Legal Argument**

**A.   Debtor cannot rebut the overwhelming evidence supporting a good faith purchaser finding.**

"A good faith buyer is one who buys in good faith and for value." *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 577 (9th Cir. 1998) (internal quotation marks omitted). "[A]n actual finding of good faith is not an essential element for approval of a sale under § 363(b)." *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (B.A.P. 9th Cir.

8

ES 697                    ES 697                    ES 697

2002). "Good faith encompasses fair value, and further speaks to the integrity of the transaction." *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991) (internal quotation marks omitted). "Lack of good faith is typically shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Filtercorp*, 163 F.3d at 577 (citing *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992)); *see also Thomas*, 287 B.R. at 785.

Here, Mr. Peplin is purchasing the Property for value; namely, $276,000.00, all cash, with no contingencies whatsoever. Mr. Peplin tendered the highest and best price after months of marketing.

The various declarations submitted by Trustee in support of the Sale Motion as listed above establish that Mr. Peplin is buying the Property in good faith. Specifically, on or about October 24, 2024, the Trustee's real estate agent, Mr. Bingham, listed the Property. Docket No. 539 at 30 (Declaration of Greg Bingham in support of the Sale Motion, ¶ 5). Despite Debtor's efforts to obstruct the marketing as set forth above, Mr. Bingham continued marketing the Property to the world at large through the date of the second auction conducted on March 27, 2025. *See* Docket No. 578 (3/20 Bingham Declaration). During this period exceeding 5 months, Mr. Bingham received two offers: Galaxy's $275,000.00 offer and Mr. Bingham's $276,000.00 overbid.

Mr. Peplin submitted his $276,000.00 overbid on or about February 26, 2025. Docket No. 560 at 2 (2/28 Bingham Decl. ¶ 5); Docket No. 566 at 5 (3/7 Peplin Decl. ¶ 4). Mr. Peplin learned of this Property through Mr. Bingham, who represented the bankruptcy trustee in selling Mr. Peplin's home in Mr. Peplin's separate bankruptcy case. Docket No. 560 at 2 (2/28 Bingham Decl. ¶¶ 7-8); Docket No. 566 at 5 (3/7 Peplin Decl. ¶ 7). Galaxy was under no obligation to ever represent Mr. Peplin as his buyer's agent, but it did so nonetheless. Docket No. 566 at 5 (3/7 Peplin Decl. ¶ 7). The fact that it did so underscores Galaxy's lack of interest in purchasing the Property for more than $275,000.00 (or by trying to conceal the property from Mr. Peplin to flip it and realize the higher price for itself).

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN
4880-1284-8131,v.1

ES 698          ES 698          ES 698

1    To the extent Debtor suggests that Galaxy only declined to participate in the overbid process

2    due to collusion with Mr. Peplin, Docket No. 589 at 2, 4, she lacks even a modicum of supporting

3    evidence. Galaxy was purchasing this Property as an investment and intended to immediately try to

4    sell the Property to another purchaser for a profit. A better explanation for Galaxy's decision to not

5    submit an overbid is Debtor's litigiousness in opposing the Sale Motion and Turnover Motion,

6    including the filing of a premature motion for stay pending appeal *before the initial hearing on the*

7    *Sale Motion and auction had occurred*. Docket No. 562. If anything chilled overbids, it was

8    Debtor's brash advertisement that she intended to gum up the sale of the Property, even if it meant

9    skirting the procedural rules with improperly filed pleadings and indefinitely delaying closing with a

10   stay pending appeal. In contrast to Galaxy, Mr. Peplin has a need to purchase replacement property

11   as a reinvestment of his homestead proceeds, Docket No. 566 at 5 (3/7 Peplin Decl. ¶ 7), and intends

12   to live in the Property with his wife. As such, Mr. Peplin was motivated to pay a higher price for the

13   Property.

14      Debtor's argument, that "Galaxy has a fiduciary duty to avoid harming their client, Mr.

15   Peplin, by bidding up the price," Docket No. 589, is unavailing. It is undisputed that as of the March

16   27, 2025, auction, Mr. Peplin was represented by licensed real estate agent Lori Alvarez of Real

17   Estate Resolved. *See* Docket No. 580 (Alvarez Declaration). Lori Alvaraz has no connections with

18   Debtor, Trustee, or Galaxy. *Id.* It is also beyond dispute that Mr. Peplin terminated his agency

19   relationship with Galaxy before the March 27, 2025, auction. *See* Docket No. 577 at 3 (3/20 Peplin

20   Declaration, ¶ 8: "I have decided to terminate Galaxy Homes as my real estate broker. I have

21   contacted Lori Alvarez at Real Estate Resolved to represent me in this transaction, and we

22   formalized that representation on March 19, 2025."). Plus, Galaxy never had a written contract with

23   Mr. Peplin.

24

25

26

27                                                            10

28   4880-1284-8131,v.1

**ES 699**                                    **ES 699**                                    **ES 699**

1    Debtor cites no authority that real estate agents owe ongoing duties to their *former* clients,

2    and in fact the termination of the agency relationship terminates the fiduciary relationship, other than

3    the continuing fiduciary obligation not to disclose confidential information. *See Wood v. Borland (In*

4    *re Borland)*, 2009 Bankr. LEXIS 5648, at *16-17 (Bankr. E.D. Cal. July 23, 2009) (noting that the

5    fiduciary relationship between two individuals had terminated upon the termination of their real

6    estate agency relationship, other than the continuing fiduciary obligation not to disclose confidential

7    information). As such, as of the March 27, 2025, hearing, Galaxy was free to compete with its

8    *former* client in bidding for the Property.

9    Courts within this District regularly make § 363(m) findings even in the absence of overbids.

10   *See, e.g.*, *In re Zhang*, Case No. 6:22-bk-10523-SY, ECF No. 166 (Bankr. C.D. Cal. Feb. 13, 2024)

11   (order approving sale with a § 363(m) finding, despite no overbids having been received). Debtor

12   cites no authority that overbids are actually required for a § 363(m) finding, because that is not the

13   law.

14   Finally, Debtor claims that she was "not offered the opportunity to cross-examine [Mr.]

15   Peplin or any of the declarants," Docket No. 589 at 4, but the upcoming evidentiary hearing will

16   provide her with just such an opportunity. And, her suggestion, that she did not submit evidence of

17   bad faith based the Court's lack of "invitation" for her to do so, *id.* at 5, is laughable. Debtor has

18   submitted numerous unauthorized filings in this case, many since the Trustee filed the Sale Motion

19   and Turnover Motion. *See, e.g.*, Docket No. 562 (March 3, 2025, motion for stay pending appeal);

20   Docket No. 581 (compendium of supplemental out of circuit authority regarding 2010 and 2014

21   decisions, filed on March 25, 2025—just two days before the March 27, 2025, hearing). If Debtor

22   seriously had evidence to submit, the Trustee and Houser Bros. have no doubt that she would have

23   done so in advance of the March 27, 2025, auction. But, as Debtor's counsel acknowledged on the

24   record at the hearing, Debtor had no evidence to submit at the time. Notably, Debtor submitted one

25   exhibit by the April 4, 2025, deadline the Court granted her in its 3/28 Order, which exhibit is

26   completely irrelevant for the reasons set forth below.

27

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN

28   4880-1284-8131,v.1

1    The Property has been extensively marketed and advertised for many months. There is not

2    even a scintilla of evidence of fraud, collusion between the purchaser and other bidders or the

3    trustee, or an attempt to take grossly unfair advantage of other bidders, collusion, or abuse of the

4    process. Mr. Peplin qualifies as a good faith purchaser. The fact that one bidder dropped out of

5    bidding to allow the estate to receive the higher price does not change that fact. The Court should

6    make an express finding thereon pursuant to section 363(m).

7    **B.    Debtor lacks standing to challenge the § 363(m) finding on the basis**

8    **of overbids.**

9    Standing is a threshold issue in every federal litigation. *Savage & Assocs., P.C. v. Mandl (In*

10    *re Teligent, Inc.)*, 417 B.R. 197, 209 (Bankr. S.D.N.Y. 2009). The question of standing is "whether

11    the litigant is entitled to have the court decide the merits of the dispute <u>or of the particular issues</u>."

12    *Id.* at 209-10 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) (emphasis added by Bankruptcy

13    Court). The inquiry involves both constitutional limitations on federal-court jurisdiction and

14    prudential limitations on its exercise. *Id.* at 210 (citing *Warth*, 422 U.S. at 498). Constitutional

15    standing "imports justiciability:" whether the plaintiff has made out a "case or controversy" between

16    himself and the defendant within the meaning of Article III. *Id.* (quoting *Warth*, 422 U.S. at 498). To

17    establish Article III standing, a party must show: 1) an injury in fact that is actual or imminent rather

18    than conjectural or hypothetical; 2) the injury is "fairly traceable" to the conduct complained of; and

19    3) it is likely, as opposed to "speculative," that the injury will be redressed by a favorable decision.

20    *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Republic of the Marsh.*

21    *Is. v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) (noting that constitutional standing is

22    derived from the "case and controversy" requirement of Article III of the Constitution and requires a

23    plaintiff to demonstrate "injury in fact, causation, and redressability").

24

25

26

27

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN

28    4880-1284-8131,v.1

1      Prudential standing refers to the requirement that even when the plaintiff has alleged injury

2 sufficient to meet the "case or controversy" requirement, the plaintiff generally must assert his own

3 legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

4 parties. *In re Teligent*, 417 B.R. at 210 (citing *Warth*, 422 U.S. at 499).

5      The party asserting that it has standing bears the burden of establishing both constitutional

6 and prudential standing. *Cty. of Imperial Treasurer-Tax Collector v. RW Meridian, LLC (In re RW*

7 *Meridian LLC)*, 2017 Bankr. LEXIS 4172, at *4 (B.A.P. 9th Cir. Dec. 6, 2017); *see also Veal v. Am.*

8 *Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 907 n.11 (B.A.P. 9th Cir. 2011) (same). The

9 "jurisdictional issue of standing can be raised at any time." *Ctr. for Biological Diversity v.*

10 *Kempthorne*, 588 F.3d 701, 707 (9th Cir. 2009); *see also United States v. 7501 N.W. 210th St.*, 437

11 Fed.Appx. 754, 757-58 (10th Cir. 2011) (explaining that constitutional standing is a "threshold

12 jurisdictional question" that the court may raise "at any time").

13      In bankruptcy, the "general rule" is that, unlike creditors, Chapter 7 debtors lack standing to

14 object to or appeal from orders of the bankruptcy court because the commencement of liquidation

15 proceeding "extinguishes any pecuniary interests that they formerly held in property of the estate."

16 *Licata v. Coan*, 2015 U.S. Dist. LEXIS 160333, at *14-15 (D. Conn. Sept. 22, 2015); *see also*

17 *Duckor Spradling & Metzger v. Baum Tr. (In re P.R.T.C., Inc.)*, 177 F.3d 774, 778 n.2 (9th Cir.

18 1999) (noting that ordinarily, a debtor cannot challenge a bankruptcy court's order unless there is

19 likely to be a surplus after bankruptcy); *In re Fondiller*, 707 F.2d 441, 442 (9th Cir. 1983) (noting

20 that a "hopelessly insolvent debtor" lacks standing to appeal orders affecting the size of the estate,

21 because such an order would not diminish the debtor's property, increase his or her burdens, or

22 detrimentally affect his or her rights).

23

24

25

26

27

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN

28 4880-1284-8131,v.1

1    The idea of an overbid procedure is to ensure the best price given the trustee's fiduciary duty

2    to maximize the value to the estate. As the Ninth Circuit BAP explained:

3        The main issue with respect to the sale of estate assets is whether the trustees obtained

4        the best possible price in light of their fiduciary duty to maximize the value to the

5        estates. A sale that is well advertised and subject to overbids is usually the preferred

6        method to achieve the best possible price. However, the guiding principle is that the

7        "court's obligation in section 363(b) sales is to assure that optimal value is realized by

8        the estate under the circumstances." *Lahijani*, 325 B.R. at 288-89 (emphasis added).

9    *Nev. Bus. Credit, LLC v. Kavanaugh (In re Golden Empire Air Rescue, Inc.)*, 2007 Bankr.LEXIS

10    4880, at *21-22 (B.A.P. 9th Cir. Oct. 25, 2007).

11        Here, Debtor has not, and cannot, argue that there will be a surplus estate given the enormous

12    cost of administering this Estate due in large part to her fraud and litigiousness. Further, Debtor has

13    no pecuniary interest in the overbid process based on her homestead exemption. As set forth in the

14    Sale Motion, as of January 9, 2025, the payoff on the Trustee's avoided lien totaled $301,011.14,

15    with daily interest accruing at $33.90 per day. By April 10, 2025, the payoff on the Trustee's

16    avoided lien will total no less than $304,096.04.

17        Mr. Bingham obtained two offers for the Property after months of marketing: one for

18    $275,000.00, and one for $276,000.00. Debtor does not suggest that the Property should be sold for

19    more than $304,096.04 such that there will be surplus funds available to distribute to her on account

20    of her homestead exemption. A nearly $30,000.00 increase to the purchase price on a $276,000.00

21    property is significant. Accordingly, Debtor has not met her burden of showing that she has a

22    sufficient pecuniary interest in the overbid process to establish standing.

23    / / /

24    / //

25

26

27                                                14

**C.      Houser Bros. has approved Mr. Peplin and his wife as park tenants.**

Debtor submitted one exhibit with her § 363(m) brief: the Houser Bros. application packet, as of April 11, 2019. Docket No. 590.

As an initial note, the Court's 3/28 Order required "copies of all proposed documents to be introduced into evidence" to be "affixed to supporting sworn declarations" and filed and served by April 4, 2025. Docket No. 585 at 3-4. Debtor filed her "Exhibit 1" untimely and unauthenticated. Debtor has no excuse for doing so. She is represented by counsel, who, despite having an entire week to submit argument and evidence, chose to file a brief at 11:55 p.m. on April 4, 2025—just five minutes before the deadline. Debtor then submitted her Exhibit 1 untimely, a day later - on April 5, 2025. This Court expressly cautioned the parties in its 3/28 Order that any pleading filed untimely or otherwise in violation of the requirements of the 3/28 Order would be stricken. Docket No. 585 at 4. Debtor and her attorney have repeatedly flouted the procedural rules and Court orders since the filing of the Sale Motion, including the submission of multiple unauthorized sur-replies. Houser Bros. and the Trustee request that the Court not countenance their continuing disregard for the rules by declining to consider the untimely Exhibit 1.

Even if the Court does consider Debtor's Exhibit 1, her argument relating thereto is a total red herring. Debtor claims that this evidence shows that Mr. Peplin "does not appear to qualify as a

/ / /

/ / /

---

15

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN

4880-1284-8131,v.1

1   tenant." Docket No. 589 at 5. Whether Mr. Peplin qualifies as a good faith purchaser of the Property

2   for purposes of 11 U.S.C. § 363(m), and whether Mr. Peplin meets Houser Bros.'s standards for

3   approval for a leasehold interest in the mobilehome park, are two entirely separate issues.

4           In any event, since April 2019, Houser Bros. has updated its application requirements across

5   the board. Currently, the policy requires only that the "Applicant(s) must not have a *non-discharged*

6   bankruptcy in the past 5 years" (emphasis added). True and correct copies of Houser Bros.'s current

7   Prospective Homeowner Qualification Requirements are attached to the Declaration of Chris Houser

8   ("Houser Declaration") as **Exhibit 1**. Because the Bankruptcy Court granted Mr. Peplin a discharge

9   on August 19, 2024, *In re Peplin*, Case No. 2:24-bk-13645-DS, ECF No. 73 (Bankr. C.D. Cal. Aug.

10  19, 2024) ("Order of Discharge – Chapter 7"), and he and his wife otherwise jointly met the

11  standards for approval, Houser Bros. approved Mr. Peplin's application for residency at the park.

12  True and correct copies of the Prospective Purchaser Evaluations for Mr. Peplin and his wife, Ashley

13  Peplin, with limited redactions to protect confidential financial information, are attached as **Exhibit**

14  **2**.

15  **5.    Conclusion**

16          For the reasons stated above, Houser Bros. and the Trustee respectfully request that the Court

17  find Mr. Peplin to be a good faith purchaser for purposes of 11 U.S.C. § 363(m) based on the

18  existing record and any additional evidence admitted during the evidentiary hearing.

19

20  DATED: April 8, 2025              LEVENE, NEALE, BENDER, YOO & GOLUBCHIK
                                      L.L.P.
21

22                                    By: _____

23                                    ERIC P. ISRAEL
                                      Attorneys for JEFFREY I. GOLDEN,
24                                    Trustee

25

26

27                                         16
        REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN
28  4880-1284-8131,v.1

DATED: April 8, 2025                    MARSHACK HAYS WOOD LLP

                                            /s/ D. Edward Hays
                                  By: _____
                                        D. EDWARD HAYS
                                        BRADFORD N. BARNHARDT
                                        Attorneys for Creditor,
                                        HOUSER BROS. CO. dba RANCHO DEL
                                        REY MOBILE HOME ESTATES

17

REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN

4880-1284-8131,v.1

ES 706                    ES 706                    ES 706

# Declaration of Chris Houser

I, CHRIS HOUSER, say and declare as follows:

1.    I am an individual over 18 years of age and competent to make this Declaration.

2.    If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.    The facts set forth below are true of my personal knowledge.

4.    I am the Park Operations Manager for Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros.").

5.    I make this Declaration in support of the Joint Reply ("Reply") in Support of the 11 U.S.C. § 363(m) Finding Re: Gregory A. Peplin ("Mr. Peplin"). All capitalized terms not otherwise defined in this Declaration shall have the meaning ascribed to them in the Reply.

6.    Houser Bros. owns the pad on which the Property is situated. Houser Bros.'s business model is to lease space (pads) to residents of the mobilehome park ("MHP"), who generally own their respective mobilehomes/manufactured homes.

7.    Over the course of my involvement in this case, I have become much more familiar with bankruptcy law than I was before. Given my increased knowledge of bankruptcy law, I believe that a person who receives a discharge and has adequate income and credit would be able to afford rent in the MHP. As such, Houser Bros. has amended its approval requirements not only for Mr. Peplin and his wife, but for all applicants for residency at the MHP. Houser Bros.'s current policies do not disqualify an applicant who has filed bankruptcy but received a discharge. True and correct copies of Houser Bros.'s current Prospective Homeowner Qualification Requirements are attached as **Exhibit 1**.

8.    On or about December 16, 2024, I transmitted an application for residency at the MHP to Mr. Peplin.

9.    On or around December 17, 2024, Houser Bros. received the applications for residency from Mr. Peplin and his wife.

10.    On or around December 23, 2024, Houser Bros. advised Mr. Peplin and his wife that they were jointly approved for residency in the park, contingent on their purchase of the Property. True and correct copies of the Prospective Purchaser Evaluations for Mr. Peplin and his wife, Ashley Peplin, with limited redactions to protect confidential financial information, are attached as **Exhibit 2**.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 8, 2025.

CHRIS HOUSER

EXHIBIT 1

# TENANCY INFORMATION
# AND STANDARDS

[Civil Code Section 798.74]



Dear Homeowner or Prospective Homeowner:

The following are the items of information management will require, and the standards that will be utilized in determining if the prospective homeowner will be is acceptable as a homeowner in the park:

**Information required:**

- Fully executed purchase agreement for a mobilehome in the park.
- Fully executed Application for each person applying for tenancy.
- Fully executed additional forms: Consent to Obtain Consumer Credit, Information for Prospective Homeowners, Mobilehome Rental Agreement Disclosure and Privacy Statement Form.
- Color copy of applicant(s) State issued ID or Driver's License
- Two months of bank statements showing income deposits.
- Two months of income supporting documents (Pay stubs, SSA Letter etc.)

**Standards to be applied:**

- Applicant(s) must be at least 55 years of age. Additional occupants must be 18 years or older.
- Co-applicant must be a spouse or an equivalent status financial unit.
- Monthly Income must be at least three (3) times the monthly rent. Co-applicant income may be combined. A guarantor may be considered if income is below the requirement.
- FICO credit score must be 650 or higher. Applicant/Co-applicant FICO scores are combined with the mean score used.
- No evictions in the past 5 years.
- Applicant(s) must not have a non-discharged bankruptcy in the past 5 years.
- Application is evaluated on the ability of applicant(s) to conform to the (MRL) Mobile Home Residency Law and the Park's Rules and Regulations.
- References of past tenancy information and personal references are required and evaluated to confirm applicants will comply with the Rules and Regulations and MRL.
- Restrictions are placed on pets. The limit is two (2) small pets per space. Dogs must be approved by management and must be no greater than 15 inches at the shoulders or weigh less than 22 pounds. Service Animals are exempt.

Within fifteen (15) business days of receiving all of the information requested from an applicant, we will notify the seller and the applicant in writing of either acceptance or rejection as required by Civil Code Section 798.74(a).

Dated:_____

_____
Management

**EXHIBIT 2**

FROM
Rancho Del Rey Mobile Home Estates
16222 Monterey Ln OFC
Huntington Beach, CA 92649
(714) 846-1429



**Western**
**Manufactured Housing Communities**
**Association**

TO
Gregory Peplin
1429 Via Sevilla
La Verne, CA 91750

## PROSPECTIVE PURCHASER EVALUATION — NOTICE TO PROSPECTIVE PURCHASER

<u>Rancho Del Rey Mobile Home Estates</u>

On __12/18/2024__, management received all of the information necessary to determine if you will be acceptable as a homeowner in the park, located at <u>16222 Monterey Ln **SPC 376** Huntington Beach, CA 92649.</u>

This is to advise prospective homeowner that the prospective homeowner is:

__X__    **APPROVED FOR RESIDENCY IN THE PARK, provided that the prospective homeowner complies with the requirements of Section 798.75 of the California Civil Code, executes a rental agreement with management and satisfies any additional conditions listed below.** In the event the prospective homeowner fails to execute the rental agreement, that person shall have no rights of tenancy. The prospective homeowner should contact management immediately to sign a rental agreement. You are also advised that any escrow, sale or transfer agreement for the mobilehome must contain a copy of either a fully executed rental agreement or a statement signed by both the management and you that the parties have agreed to the terms and conditions of the rental agreement.

__X__    **ADDITIONAL CONDITIONS for approval:** Approval contingent on purchase of Space 376.

_____    ~~DISAPPROVED, because:~~

___    ~~You have not demonstrated that you have the financial ability to pay the rent and charges of the park.~~

___    ~~Management has determined that, based on your prior tenancies, you will not comply with the rules and regulations of the park.~~

___    ~~Management has determined that you cannot comply with the requirements of the park's rules and regulations limiting residency to housing for older persons.~~

___    ~~Other:~~

___    ~~This disapproval includes the following reason(s):~~

___    ~~Consumer Credit Report (check appropriate box below)~~

___    ~~Information contained in a consumer credit report obtained from the consumer credit reporting agency named in the paragraph on page two of this form.~~

___    ~~A consumer credit report containing insufficient information obtained from the consumer credit reporting agency named in the paragraph on page two of this form.~~

You have a right to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report provided by AmRent Inc. if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to the consumer reporting agency.

1142P2A3ECEF1580242220241223

Copyright © 2014. WMA.



**ES 712**                    **ES 712**              EXHIBIT 2, PAGE 24**ES 712**

  X    Your credit score from the consumer reporting agency named in the paragraph below. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

Your credit score: ████████████████████████████████████████

Key factors that adversely affected your credit score:

1. SERIOUS DELINQUENCY, AND PUBLIC RECORD OR COLLECTION FILED
2. NUMBER OF ACCOUNTS WITH DELINQUENCY
3. LACK OF RECENT REVOLVING ACCOUNT INFORMATION
4. LACK OF RECENT INSTALLMENT LOAN INFORMATION

If you have any questions regarding your credit score, you should contact the agency named in the paragraph below.

The consumer reporting agency that provided the report and/or credit score (if applicable) that influenced our decision in whole or in part is listed below. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you.

**Reporting Agency:**
Trans Union
PO Box 740241
Atlanta, GA 30374-0241
(800) 685-1111

**Report Provided By:**
AmRent Consumer Assistance
PO Box 530091
Atlanta, GA 30353
(888) 898-6196

You may have additional rights under the credit reporting or consumer protection laws of California. For further information, you can contact the California Department of Consumer Affairs, or the California State Attorney General's office.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, religion, national origin, gender, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

Dated: 12/23/2024

_Chris Houser - Park Management_



FROM
Rancho Del Rey Mobile Home Estates
16222 Monterey Ln OFC
Huntington Beach, CA 92649
(714) 846-1429

TO
Ashley Peplin
1429 Via Sevilla
La Verne, CA 91750

## PROSPECTIVE PURCHASER EVALUATION — NOTICE TO PROSPECTIVE PURCHASER

<u>Rancho Del Rey Mobile Home Estates</u>

On <u>12/18/2024</u>, management received all of the information necessary to determine if you will be acceptable as a homeowner in the park, located at <u>16222 Monterey Ln **SPC 376** Huntington Beach, CA 92649.</u>

This is to advise prospective homeowner that the prospective homeowner is:

<u>X</u>  **APPROVED FOR RESIDENCY IN THE PARK, provided that the prospective homeowner complies with the requirements of Section 798.75 of the California Civil Code, executes a rental agreement with management and satisfies any additional conditions listed below.** In the event the prospective homeowner fails to execute the rental agreement, that person shall have no rights of tenancy. The prospective homeowner should contact management immediately to sign a rental agreement. You are also advised that any escrow, sale or transfer agreement for the mobilehome must contain a copy of either a fully executed rental agreement or a statement signed by both the management and you that the parties have agreed to the terms and conditions of the rental agreement.

<u>X</u>  **ADDITIONAL CONDITIONS for approval:** Approval contingent on purchase of Space 376.

_____  ~~DISAPPROVED, because:~~

___  ~~You have not demonstrated that you have the financial ability to pay the rent and charges of the park.~~

___  ~~Management has determined that, based on your prior tenancies, you will not comply with the rules and regulations of the park.~~

___  ~~Management has determined that you cannot comply with the requirements of the park's rules and regulations limiting residency to housing for older persons.~~

___  ~~Other:~~

___  ~~This disapproval includes the following reason(s):~~

___  ~~Consumer Credit Report (check appropriate box below)~~

___  ~~Information contained in a consumer credit report obtained from the consumer credit reporting agency named in the paragraph on page two of this form.~~

___  ~~A consumer credit report containing insufficient information obtained from the consumer credit reporting agency named in the paragraph on page two of this form.~~

You have a right to know the information contained in your credit file at the consumer reporting agency. You also have a right to a free copy of your report provided by AmRent Inc. if you request it no later than 60 days after you receive this notice. In addition, if you find that any information contained in the report you receive is inaccurate or incomplete you have the right to dispute the matter with the reporting agency. Any questions regarding such information should be directed to the consumer reporting agency.

1142P2A3ECEF1580242220241223

Copyright © 2014. WMA.



**ES 714**                    **ES 714**                    EXHIBIT 2, PAGE 714

  X   Your credit score from the consumer reporting agency named in the paragraph below. Your credit score is a number that reflects the information in your credit report. Your credit score can change, depending on how the information in your credit report changes.

Your credit score: ████████████████████████████████

Key factors that adversely affected your credit score:

1. PROPORTION OF LOAN BALANCES TO LOAN AMOUNTS IS TOO HIGH
2. INSUFFICIENT LENGTH OF CREDIT HISTORY
3. TOO MANY ACCOUNTS WITH BALANCES
4. TOO MANY INQUIRIES IN THE LAST 12 MONTHS

If you have any questions regarding your credit score, you should contact the agency named in the paragraph below.

The consumer reporting agency that provided the report and/or credit score (if applicable) that influenced our decision in whole or in part is listed below. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you.

| **Reporting Agency:** | **Report Provided By:** |
|---|---|
| Trans Union | AmRent Consumer Assistance |
| PO Box 740241 | PO Box 530091 |
| Atlanta, GA 30374-0241 | Atlanta, GA 30353 |
| (800) 685-1111 | (888) 898-6196 |

You may have additional rights under the credit reporting or consumer protection laws of California. For further information, you can contact the California Department of Consumer Affairs, or the California State Attorney General's office.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, religion, national origin, gender, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

Dated: 12/23/2024

Chris Houser - Park Management

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **JOINT REPLY IN SUPPORT OF 11 U.S.C.
§ 363(M) FINDING RE: GREGORY A. PEPLIN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 8, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**: On **April 8, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR**
JAMIE LYNN GALLIAN
16222 MONTEREY LN UNIT 376
HUNTINGTON BEACH, CA 92649

☐  Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 8, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
411 WEST FOURTH STREET, SUITE 5130 /
COURTROOM 5C
SANTA ANA, CA 92701-4593

**VIA EMAIL:**
**DEBTOR**
JAMIE LYNN GALLIAN
jamiegallian@gmail.com

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 8, 2025 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

ES 716                                ES 716

**F 9013-3.1.PROOF.SERVICE**
ES 716

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Bradford Barnhardt bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEBTOR JAMIE LYNN GALLIAN:** Christopher L Blank    chris@chrisblanklaw.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **CHAPTER 7 TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **INTERSTED PARTY COURTESY NEF: Shantal Malmed**    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
   - **INTERESTED PARTY COURTESY NEF: Shantal Malmed**    , cheryl.caldwell@gmlaw.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

4903-7392-5900, v. 1

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**ES 717**              **ES 717**              **F 9013-3.1.PROOF.SERVICE**
                                                **ES 717**

ERIC P. ISRAEL, #132426
EPI@LNBYG.COM
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Telephone: 310-229-1234
Fascimile: 310-229-1244

Attorneys for JEFFREY I. GOLDEN, Trustee

D. EDWARD HAYS, #162507
ehays@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, CA 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Creditor,
HOUSER BROS. CO. dba RANCHO DEL
REY MOBILE HOME ESTATES

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>     Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>NOTICE OF UNPUBLISHED AUTHORITY IN SUPPORT OF JOINT REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN<br><br>Date:   April 10, 2025<br>Time:  9:30 a.m.<br>Ctrm:  5C |

1

4880-1284-8131,v.1

ES 718                    ES 718                    ES 718

1  TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

2  THE DEBTOR AND HER COUNSEL OF RECORD, AND ALL INTERESTED PARTIES:

3        Jeffrey I. Golden, solely in his capacity as Chapter 7 Trustee ("Trustee") for the bankruptcy

4  estate ("Estate") of Jamie Lynn Gallian ("Debtor"), and Creditor, Houser Bros. Co., dba Rancho Del

5  Rey Mobile Home Estates ("Houser Bros."), attach copies of the following unpublished decisions

6  cited in Joint Reply ("Reply") in Support of the 11 U.S.C. § 363(m) Finding Re: Gregory A. Peplin

7  ("Mr. Peplin").

8                              **Unpublished Case**

9        1.    *Wood v. Borland (In re Borland)*, 2009 Bankr. LEXIS 5648 (Bankr. E.D. Cal. July

10  23, 2009).

11       2.    *In re Zhang*, Case No. 6:22-bk-10523-SY, ECF No. 166 (Bankr. C.D. Cal. Feb. 13,

12  2024).

13       3.    *Cty. of Imperial Treasurer-Tax Collector v. RW Meridian, LLC (In re RW Meridian*

14  *LLC)*, 2017 Bankr. LEXIS 4172 (B.A.P. 9th Cir. Dec. 6, 2017).

15       4.    *Licata v. Coan*, 2015 U.S. Dist. LEXIS 160333 (D. Conn. Sept. 22, 2015).

16       5.    *Nev. Bus. Credit, LLC v. Kavanaugh (In re Golden Empire Air Rescue, Inc.)*, 2007

17  Bankr.LEXIS 4880 (B.A.P. 9th Cir. Oct. 25, 2007).

18

19  DATED: April 8, 2025                 MARSHACK HAYS WOOD LLP

20

21                                       /s/ D. Edward Hays
                                   By: _____
22                                       D. EDWARD HAYS
                                         BRADFORD N. BARNHARDT
23                                       Attorneys for Creditor,
                                         HOUSER BROS. CO. dba RANCHO DEL
24                                       REY MOBILE HOME ESTATES

25

26

27                              2
28  4880-1284-8131,v.1

ES 719                    ES 719                    ES 719

**EXHIBIT 1**

## *Wood v. Borland (In re Borland)*

United States Bankruptcy Court for the Eastern District of California

July 23, 2009, Decided; July 23, 2009, Filed

Case No. 07-13741, Adv. No. 08-1042

**Reporter**
2009 Bankr. LEXIS 5648 *; 2009 WL 9084773

In re ROBERT LLOYD BORLAND, Debtor.RAMONA WOOD, Plaintiff, vs. ROBERT LLOYD BORLAND, Defendant.

**Notice:** NOT FOR PUBLICATION

**Counsel:** **[*1]** For Robert Lloyd Borland (07-13741), Debtor: D. Max Gardner, Bakersfield, CA.

For Jeanette Lenore Borland (07-13741), Joint Debtor: D. Max Gardner, Bakersfield, CA.

For Trustee (07-13741): Randell Parker, Arvin, CA.

For Ramona Wood, fka Ramona Koster (08-01042), Plaintiff: Leo Mark Hinds, Bakersfield, CA; Robert S. Williams, LEAD ATTORNEY, Bakersfield, CA.

For Robert Lloyd Borland (08-01042), Defendant: D. Max Gardner, LEAD ATTORNEY, Bakersfield, CA.

**Judges:** WHITNEY RIMEL, United States Bankruptcy Judge.

**Opinion by:** WHITNEY RIMEL

# Opinion

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Trial in this adversary proceeding was held on February 11 and 12, 2009, and continued to March 18, 2009. Closing briefs were filed May 1, 2009, and the court then took the matter under submission.

This memorandum contains findings of fact and conclusions of law required by *Federal Rule of Bankruptcy Procedure 7052* and *Federal Rule of Civil Procedure 52*. This is a core proceeding as defined in *28 U.S.C. §157(b)(2)(I)*.

The adversary proceeding seeks a determination of nondischargeability of debt under *Bankruptcy Code sections 523(a)(2)*; *523(a)(4)*; and *523(a)(6)*. All the evidence at trial went to the claim for nondischargeability under § *523(a)(4)*.

Joint **[*2]** Statement of Undisputed Facts.

On March 12, 2009, plaintiff and defendant filed a Joint Statement of Undisputed Facts. Those facts are set forth below, and are adopted by the court as findings of fact in this adversary proceeding.

1. Plaintiff met defendant while working at Frito-Lay in Bakersfield, California. Defendant was one of the individuals who interviewed plaintiff for the position of Crewing Coordinator.

2. As a Crewing Coordinator, plaintiff worked under an equal level supervisor of defendant named Marcos, who was the Fritos unit supervisor.

3. On or about April of 2004, defendant acquired his real estate broker's license and started the real estate firm known as Christian Realty.

4. On or about December of that same year, Defendant quit his job at Frito Lay and became the president of the start-up company known as Kleenerz, Inc. ("Kleenerz"). As president of Kleenerz, defendant understood his duties to do everything in his power within reason to allow Kleenerz to succeed.

5. Kleenerz sought financing via an SBA type bank loan and found out that, due to being in existence for less than two years, it was next to impossible to get such a loan.

6. On or about February 17, 2005, **[\*3]** plaintiff engaged defendant as her real estate broker to sell her residence located at 11402 Garrick Ct., Bakersfield, California.

7. Such real estate brokerage relationship was successful in the sale of plaintiff's residence in approximately June 2005. The proceeds of sale were approximately $300,000.

8. Tim Denari, a shareholder and officer in Kleenerz, asked defendant if he knew of anyone that might be interested in loaning money to Kleenerz.

9. Defendant placed plaintiff on a list of five people that he thought could be potential investors interested in investing in Kleenerz. Such potential investors were defendant's cousin Danny Aldrich, a coworker Brent Fowler, defendant's aunt and uncle Dan and Elaine Aldrich, and Jeremy Jessup.

10. Mr. and Mrs. Aldrich, Mr. Fowler, and Mr. Jessup declined to invest in Kleenerz.

12. Defendant telephoned Ms. Wood about investing in Kleenerz. The next step was a meeting among defendant, Ms. Wood and Tim Denari. Defendant does not recall what financial information was provided to plaintiff. After such meeting, defendant understood that plaintiff had her money with Wells Fargo Bank.

13. Plaintiff loaned Kleenerz $300,000 on or about September 23, 2005. **[\*4]** The loan was personally guaranteed by defendant and by Tim Denari. Interest payments were made as set forth in the payment history admitted into evidence.

14. The principal balance and accrued interest remains unpaid.

15. Defendant, and his wife, Mrs. Borland, subsequently signed a note for $300,000 in connection with pledging deeds of trust in an attempt to secure plaintiff's loan.

Additional Findings of Fact.

As set forth above, the parties agree that defendant Borland acted as a real estate broker in selling plaintiff's residence. The sale resulted in proceeds of about $300,000, which plaintiff Ramona Wood placed in a Wells Fargo Account.

In the meantime, Robert Borland had become a shareholder and officer in the start-up company called Kleenerz. Kleenerz needed capital. After Ramona Wood met with Robert Borland and the other officer and shareholder in Kleenerz, Tim Denari, she agreed to lend Kleenerz $300,000 and in fact did lend Kleenerz $300,000 on or about September 23, 2005. Kleenerz made some interest payments but ultimately the business failed. Both Kleenerz and Robert Borland filed bankruptcy. Borland and Denari had guaranteed the loan. Also, Borland and his wife had signed a **[\*5]** second note for $300,000 to Wood and secured that note with deeds of trust. This was done after the initial loan.

Wood and Borland had worked together at Frito-Lay. They knew each other as casual work acquaintances. However, when Wood decided to sell her house, she selected Borland as a real estate broker because she had known about him through Frito-Lay. Borland did not receive a commission on the loan made to Kleenerz.

Wood looked up to Borland and Denari. She thought they were responsible people. She was interested in the loan to Kleenerz because they told her they would give her 9% interest, which was better than the 3% she was getting at Wells Fargo. Initially, no collateral was offered or requested. Wood was interested in getting a better return on her $300,000 because she wanted to stay home with her child.

The testimony was inconclusive about whether Borland told Denari that Wood had $300,00 to invest before he obtained Wood's permission to make this disclosure.

When Wood, Denari, and Borland met, Denari explained to Wood how the Kleenerz business operated. Denari also gave her a personal guarantee, which was the only one he executed for any of the loans to Kleenerz. No documents [*6] about the financial condition of Kleenerz were given to Wood. However, Denari did discuss the risk of the investment with Wood. He explained to her that the cleaning business was subject to seasonal factors; that competitors were an issue; and that there were financing issues. He testified that he ran through the basic business risks with her. He also discussed with her the risk of entering into an unsecured loan and how unsecured lending works. No disclosures were made in writing to her.

Wood was interested in lending money to Kleenerz, not in being an investor in Kleenerz for an equity share. She was interested in obtaining regular interest payments.

Kleenerz had a business plan and initially did well. A number of people in the Bakersfield area invested in Kleenerz. Both Denari and Borland themselves invested substantial sums in Kleenerz. After Wood invested, Kleenerz continued to grow. Subsequently, a problem arose that caused Kleenerz to file its own bankruptcy case.

About three to six months after Wood lent Kleenerz $300,000, she became an employee of the company. Eventually she said to Borland that she didn't need the interest payment each month, and asked them to hold the interest [*7] payment.

Three years after the loan, Borland gave Wood deeds of trust on his rental properties. He did this because in his mind the rental property equity was her "failsafe." Borland caused a proof of claim to be filed for Wood in the Kleenerz chapter 11 case.

Borland believes that Wood lent the $300,000 to Kleenerz in part because she trusted him through their friendship and not specifically because he had been the real estate broker for the sale of her house.

Judgment on *11 U.S.C. sections 523(a)(2)* and (a)(6).

As no evidence was introduced about whether the obligation is nondischargeable under *§ 523(a)(2)* or *§ 523(a)(6)*, judgment on those claims will be issued for defendant.

Conclusions of Law.

*11 USC 523(a)(4)*

Under *11 USC 523(a)(4)*, a debt is not discharged if the debt is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." In this case, there is no question of embezzlement. "Fraud" for purposes of *§ 523(a)(4)* requires intentional deceit, rather than implied or constructive fraud. 4 Collier on Bankruptcy ¶ 523.17 (15th Ed. 2009). "Defalcation refers to a failure to produce funds entrusted to a fiduciary and applies to conduct that

does not necessarily **[\*8]** reach the level of fraud, embezzlement, or misappropriation." *Id.* In the Ninth Circuit, an individual may be liable for defalcation without having the intent to defraud. *In re Lewis, 97 F.3d 1182, 1187 (9th Cir. 1996).*

The Ninth Circuit has also set forth three requirements for a debt to be nondischargeable under *§ 523(a)(4).*

> "A debt is nondischargeable under *11 U.S.C. § 523(a)(4)* where 1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created."

*In re Niles, 106 F.3d 1456, 1459 (9th Cir. 1997)* (citation and internal quotations omitted).

Once the creditor establishes that a fiduciary duty exists, the debtor has the burden to explain the transaction. *Id. at 1461.*

A debtor is only a fiduciary for purposes of *§ 523(a)(4)* where state law imposes an express or statutory trust on the funds at issue. *Id. at 1463, In re Lewis, supra, at 1185.*

A real estate agent can be a fiduciary for purposes of *§ 523(a)(4). In re Niles, supra, at 1459.* Niles was a broker and property manager who collected rents and purchased and sold property at the direction of Otto, an investor. Niles borrowed money from **[\*9]** the collected rents, and later filed a chapter 7 petition. Otto filed an adversary proceeding under *§ 523(a)(4),* alleging defalcation. The court concluded that Niles was a fiduciary within the meaning of *523(a)(4).* Niles collected rents for the Ottos in her capacity as a licensed real estate broker. She was required either to pay the funds directly to the Ottos or to hold them in a trust fund account in accordance with her instructions from the Ottos. Thus, she was the trustee of an express trust. *Id.* The court observed that the law imposes on a real estate agent the same obligation of undivided service and loyalty that it imposes on a trustee in favor of his beneficiary. *Id.* Thus, the fiduciary relationship arose from an express or technical trust that was imposed before and without reference to the wrong doing that caused the debt." *Id.* (citations and internal quotations omitted).

In *In re Woosley, 117 B.R. 524 (9th Cir. BAP 1990),* the court concluded that real estate agents licensed in California were fiduciaries under *§ 523(a)(4)* as a matter of law, with respect to carrying out licensed activities. In that case, an unsophisticated creditor loaned money to a real estate agent's partnership **[\*10]** at the behest of the agent. The creditor and agent engaged in several transactions that involved the creditor lending the agent's partnership money in exchange for security interests, and exchanging security interests in certain pieces of real property for other security interests. Consequently, the court held that the agent was a fiduciary. The court held that the debtor was acting in his licensed capacity as construed under California law and, as such, he was a fiduciary under California law. *Id. at 530.*

Another relevant case is *In re Hooper, 112 B.R. 1009 (9th Cir. BAP 1990).* In that case, an investor lent $100,000.00 to a real estate agent, which the agent invested in a real estate development project. In partial consideration for the loan, the agent agreed to counsel the investor regarding her marriage dissolution. The facts do not state whether the investor received a security interest in return for the investment. The bankruptcy court held that the facts were insufficient to create a fiduciary duty.

The Appellate Panel stated that it did not believe the lower court had committed clear error.

> "Even if the requisite trust relationship can arise solely by virtue of a broker-client **[\*11]** relationship, although there is evidence that Hooper acted as a real estate broker in assisting Schieber in the sale or purchase of real property, there is no evidence that Hooper acted as Scheiber's real estate broker with respect to the transactions giving rise to the debt at issue. Rather, the evidence indicates that Hooper counseled Schieber with respect to certain investment decisions and induced Schieber to loan money to him or his company. Hooper's actions in borrowing money from Schieber do not fall within the scope of the acts of a real estate

broker as defined by *Cal. Bus. & Prof. Code § 10131*. . . . The mere fact that Schieber may have employed Hooper to counsel her with respect to investment matters is not sufficient to create the requisite fiduciary capacity under the narrow standard discussed above."

*Id. at 1013-1014*.

Even where a real estate agent is a fiduciary, the agent's misconduct must be in the context of the agent's licensed capacity for the debt to be nondischargeable. Bankruptcy courts have been willing to treat real estate brokers as fiduciaries when they perform tasks within the scope of their agency. Courts have only found debts nondischargeable pursuant to **[*12]** *§ 523(a)(4)* when the loss is related to tasks that the agent performed that are typical of a real estate broker. Thus, subsequent transactions between a broker and client will not support a nondischargeability claim unless the broker was acting in his or her capacity as a broker during the transaction that gave rise to the debt.

Admissibility of Expert Witness Testimony.

In this case, both plaintiff and defendant called expert witnesses about the scope of a real estate broker's fiduciary duties. Neither party objected to the admission of such evidence. The court asked the parties to brief whether such testimony should be admissible in their closing briefs. Not surprisingly, both parties argue in their closing statements that such testimony is admissible. Whether such testimony is admissible depends on whether the testimony is about ultimate issues of fact or issues of law.

*Federal Rules of Evidence 702* and *704* authorize expert witnesses to testify about ultimate issues of fact. *Rule 702* provides that:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, **[*13]** skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case."

*Federal Rule of Evidence 704* states:
"Except as provided in subdivision (b) [addressing mental condition in a criminal matter], testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Of course, expert testimony on issues of law is not admissible because an issue of law is to be determined by the court. See *In re Haberern v. Kaupp Vascular Surgeons, 812 F. Supp. 1376 (E.D. Pa. 1992)*. In that case, a former employee sued her employer, alleging breach of fiduciary duties under ERISA. One of the employee's claims was that the employer's requirement that employees sign a general release before receiving pension benefits was arbitrary and capricious. The employer sought to have a labor attorney testify that such a practice was reasonable. The court stated that **[*14]** the Federal Rules of Evidence allow testimony on ultimate issues of fact, but not law.

The testimony from Greg Hanvey, plaintiff's expert witness, and from Temmy Walker, defendant's expert witness, was consistent. Both testified that real estate brokers have a fiduciary duty to their clients. Walker testified that a real estate broker owes the same duty as does a trustee. This duty includes full disclosure to the client if the broker is going to use confidential information to his or her advantage. The duty to keep information confidential provides survives the agency. Walker also testified that other than the duty of nondisclosure, the fiduciary duty ends when the agency ends.

Wood and Borland entered into a written agreement for sale of her house. The agreement states that the agent has a fiduciary duty to seller "of utmost care, integrity, honesty, and loyalty in dealing with the Seller." [1]

Additionally, the expert witnesses testified about the standards of practice of the National Association of Realtors. Standard of Practice 1-9 states:

"The obligation of REALTORS to preserve confidential information (as **[*15]** defined by state law) provided by their clients in the course of any agency relationship or non-agency relationship recognized by law continues after termination of agency relationships or any non-agency relationships recognized by law." [2]

According to Standard of Practice 1.9, realtors shall not during or following the termination of a professional relationship with a client, reveal confidential information of the client without permission. Realtors are also prohibited from using confidential information of clients for the advantage of the realtor or the advantage of third parties unless the client consents after full disclosure.

Generally, it was this obligation under Standard of Practice 1-9 to which the two expert witnesses testified. The Code of Ethics is admissible as evidence of the standard of care of members of the real estate industry. Miller & Starr, 3 Cal. Real Estate § 3:26 at p. 130 (3rd ed. 2000).

Borland agreed that as a realtor estate broker he had a fiduciary obligation to Wood. It was his understanding that except for the duty not to disclose confidential information, that fiduciary duty terminated when the agency relationship terminated. Borland was a member **[*16]** of the Bakersfield and the National Associations of Realtors. Thus, the Code of Ethics was applicable to him.

That real estate brokers in California have a fiduciary duty to their clients is an issue of law. Whether specific acts taken by the broker violate that duty is a matter of fact. The testimony of both expert witnesses focused on the existence of the duty and its extent. To the extent that testimony explicates an issue of law, the court will not consider it. To the extent it goes to facts, the court has considered it. Neither party objected to the admission of the testimony.

Conclusion.

At the time Borland solicited the loan from Wood for Kleenerz, their real estate agency relationship had terminated. However, his duty of nondisclosure continued. If he had told Denari about Wood's $300,000 prior to obtaining permission from her to do so, that would have violated his duty of nondisclosure.

The evidence on this point conflicts. At his deposition, Borland testified that he did tell Denari that Wood had $300,000. At trial, he testified the opposite.

However, Wood's damages, if any, did not result from any disclosure by Borland. Rather, they resulted from her making a loan to a business **[*17]** that ultimately failed and was unable to repay her.

To be nondischargeable under *§ 523(a)(4)*, it is not enough that the debtor be acting in a fiduciary capacity. Additionally, the debt must be for "fraud or defalcation." As set forth above, fraud in this context requires intentional deceit. There is no evidence that Borland intended to deceive Wood. In fact, all the evidence is that Borland was an officer and 50% shareholder in a start-up business that he very much wished to succeed. If things had gone otherwise, Wood would have been paid in full. Further, not only was there no intentional deceit, at the time the loan was made, Borland was not any longer in a fiduciary relationship with Wood.

---

[1] Disclosure regarding real estate agency relationships, admitted as Exhibit 9.

[2] Exhibit 11.

Defalcation refers to a failure to produce funds entrusted to a fiduciary and applies to conduct that does not necessarily reach the level of fraud, embezzlement, or misappropriation. Because the fiduciary relationship between the parties had terminated by the time Wood made the loan, the only possible way the court could find defalcation is if it was in connection with the continuing fiduciary obligation not to disclose confidential information.

First, the court finds most credible Borland's testimony  [*18] at trial that he did not disclose Wood's $300,000 to Denari before they met. Second, even if Borland did disclose to Denari that Wood had $300,000 she might be willing to invest in Kleenerz, without receiving her permission to make that disclosure, the court does not find, on these facts, that such disclosure and the subsequent investment were a "defalcation" so as to make the obligation nondischargeable under *§ 523(a)(4)*.

From the testimony, the court is persuaded that Wood made the loan because she wanted to earn a higher interest rate so she could stay home with her child. She listened to Denari and Borland describe the business to her. There has been no suggestion that she was misled in any manner. Her damages resulted from Kleenerz's failing, not from any disclosure of confidential information without her permission. Even if Borland did disclose confidential information without her permission (and the court finds he did not), such disclosure did not lead directly to - was not the cause of - her making the loan.

For the foregoing reasons, judgment will be entered for defendant on the claim under *§ 523(a)(4)*, as well as the other claims for relief.

Counsel for defendant may submit  [*19] an appropriate form of judgment.

DATED: July 23, 2009

/s/ Whitney Rimel

WHITNEY RIMEL, Judge

United States Bankruptcy Court

---

**End of Document**

**ES 727**                    **ES 727**                    EXHIBIT 1, PAGE 29

# EXHIBIT 2

1  CHAD V. HAES, #267221
   chaes@marshackhays.com
2  BRADFORD N. BARNHARDT, #328705
   bbarnhardt@marshackhays.com
3  MARSHACK HAYS WOOD LLP
   870 Roosevelt
4  Irvine, CA 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 7 Trustee,
   CHARLES W. DAFF

7

8

FILED & ENTERED

FEB 13 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Mason    DEPUTY CLERK

CHANGES MADE BY COURT

9            **UNITED STATES BANKRUPTCY COURT**

10       **CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

11   In re:                              Case No. 6:22-bk-10523-SY

12   TOM ZHANG,                          Chapter 7

13            Debtor.                    **ORDER GRANTING TRUSTEE'S**
                                         **MOTION FOR ORDER AUTHORIZING**
14                                       **SALE OF REAL PROPERTY: (A)**
                                         **OUTSIDE THE ORDINARY COURSE OF**
15                                       **BUSINESS; (B) FREE AND CLEAR OF**
                                         **LIENS; (C) SUBJECT TO OVERBIDS;**
16                                       **AND (D) FOR DETERMINATION OF**
                                         **GOOD FAITH PURCHASER UNDER §**
17                                       **363(M)**

18                                       Hearing:
                                          Date:     February 1, 2024
19                                        Time:     9:30 a.m.
                                          Ctrm:     302
20                                        Address:  3420 Twelfth Street
                                                    Riverside, CA 92501
21

22       On February 1, 2023 at 9:30 a.m., the court conducted a hearing on the Trustee's Motion for

23   Order Authorizing Sale of Real Property: (A) Outside the Ordinary Course of Business; (B) Free and

24   Clear of Liens; (C) Subject to Overbids; and (D) For Determination of Good Faith Purchaser Under

25   § 363(m) ("Motion") filed on January 11, 2024 as Docket No. 156 by Charles W. Daff, solely in his

26   capacity as the duly appointed, qualified, and acting chapter 7 trustee ("Trustee") of the bankruptcy

27   estate of Tom Zhang ("Estate"), seeking an order authorizing the sale of real property located at and

28   commonly known as 13561 Wild Maple Court, Rancho Cucamonga, California 91739-9164

                                          1

1  ("Property"). Bradford N. Barnhardt, Esq., appeared on behalf of the Trustee, who was also present

2  in the courtroom. All other appearances were as noted on the record.

3        After consideration of the Motion, the declarations and exhibits in support of the Motion,

4  the lack of any timely filed written opposition, the amended conditional non-opposition

5  ("Conditional Non-Opposition") to the Motion filed by Wells Fargo Bank, N.A. ("Wells Fargo") on

6  January 30, 2024 as Docket No. 162, and the arguments and representations of counsel during the

7  hearing, the court found good cause to grant the Motion for the reasons stated on the record.

8  Accordingly, finding that proper and adequate notice of the Motion has been given,

9        IT IS ORDERED that:

10       1.    The Motion is granted.

11       2.    The Property, which is wholly property of the Estate, may be sold by the Trustee.

12       3.    Hany Mohamed Seyam ("Buyer") is determined to be the successful bidder for the

13  purchase of the Property.

14       4.    The Property sold is legally described as follows:

15       LOT 19 OF TRACT NO. 17651, AS DEPICTED ON THAT CERTAIN MAP

16       RECORDED MARCH 14, 2011, IN BOOK 334, PAGES 84 THROUGH 89,

17       INCLUSIVE, OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY

18       RECORDER OF THE AFORESAID COUNTY IN SUCH AFORESAID STATE.

19       APN: 0225-032-02-0-000

20       5.    Trustee is authorized to sell the Property under 11 U.S.C. § 363 and is further

21  authorized to pay, pursuant to demands submitted to escrow, all unpaid and outstanding *ad valorem*

22  property taxes, and the following liens pursuant to demand submitted to escrow:

23            a.    Consensual trust deed in favor of K. Hovnanian American Mortgage, LLC

24                  and any subsequent assignments; and

25            b.    Consensual trust deed in favor of East West Bank and any subsequent

26                  assignments.

27

28

ES 730              ES 730              EXHIBIT 2, PAGE 30
ES 730

6.      Trustee is authorized to sign all documents necessary to consummate the sale and close escrow including, but not limited to, the purchase and sale agreement, grant deed, and escrow instructions.

7.      Trustee is authorized to pay all customary costs of sale out of escrow.

8.      Trustee is authorized to pay a broker's commission equal to 5% of the sale price, to be divided between seller's broker and buyer's broker according to customary practices.

9.      Trustee is authorized to reimburse Clarence Yoshikane of Berkshire Hathaway HomeServices California Properties ("Agent") for out-of-pocket costs paid by Agent up to $5,000 out of escrow.

10.      The proposed overbid procedures are approved.

11.      The $1,410,000 sale price is fair and reasonable and represents a fair market value for the Property.

12.      The sale is made in good faith and for value.

13.      The Buyer is a good faith purchaser entitled to protection under 11 U.S.C. § 363(m).

14.      The Property is sold free and clear of all liens, claims, and interests of any creditor or interest-holder that consents to the sale under 11 U.S.C. § 363(f)(2).

15.      The Property is sold free and clear of all liens, claims, and interests of GSRF (as successor to and assignee of BMO Harris Bank N.A.), JPMorgan Chase Bank, N.A., Jiang Qi/Anthony Chu, Dilip Vithlani, Comdata Inc., SolarCity Corporation, and Tesla Inc. because those liens are subject to bona fide disputes under 11 U.S.C. § 363(f)(4).

///

///

///

ES 731                    ES 731                    EXHIBIT 2, PAGE 731

1    16.    The sale of the Property is "as-is" and "where-is" with all faults and without

2    warranty, representation, or recourse whatsoever.

3    17.    The 14-day stay regarding the effectiveness of this order is waived.

4    18.    This court retains jurisdiction: (a) to interpret, enforce, and implement the terms and

5    provisions of this sale; and (b) to resolve any disputes arising under or related to this order.

6    ###

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    Date: February 13, 2024

24    Scott H. Yun
     United States Bankruptcy Judge

25

26

27

28

4

**EXHIBIT 3**

## *Cty. of Imperial Treasurer-Tax Collector v. RW Meridian, LLC (In re RW Meridian LLC)*

United States Bankruptcy Appellate Panel for the Ninth Circuit

November 30, 2017, Argued and Submitted, at Pasadena, California; December 6, 2017, Filed

BAP No. SC-16-1419-SAKu

**Reporter**
2017 Bankr. LEXIS 4172 *

In re: RW MERIDIAN LLC, Debtor.COUNTY OF IMPERIAL TREASURER-TAX COLLECTOR, Appellant, v. RW MERIDIAN, LLC; RONALD E. STADTMUELLER, Trustee, Appellees.

**Notice:** This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see *Fed. R. App. P. 32.1*), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

**Subsequent History:** Appeal dismissed by *in Re RW Meridian, LLC v. RW Meridian, LLC, 2018 U.S. App. LEXIS 38961 (9th Cir., May 9, 2018)*

**Prior History:** [*1] Appeal from the United States Bankruptcy Court for the Southern District of California. Bk. No. 3:16-bk-00629. Honorable Margaret M. Mann, Bankruptcy Judge, Presiding.

**Counsel:** Laurel Lee Hyde of Schwartz Hyde & Garfield argued for appellant.

Brian A. Kretsch argued for appellee Ronald E. Stadtmueller, Trustee.

**Judges:** Before: SPRAKER, ALSTON[*] and KURTZ, Bankruptcy Judges.

## Opinion

### INTRODUCTION

The Imperial County Treasurer-Tax Collector appeals from an order authorizing the chapter 7[1] trustee to sell real property encumbered by Imperial County's tax lien. As a result of the bankruptcy sale, the tax lien has been paid in full.

Because Imperial County lacks standing, we must DISMISS this appeal.

### FACTS

The facts and procedural history set forth below are undisputed. RW Meridian owned 58.53 acres of undeveloped land located in Imperial County, California. In order to satisfy roughly $167,000 in delinquent property taxes, Imperial County scheduled an auction of the property to commence on Saturday, February 6, 2016.

---

[*] Hon. Christopher M. Alston, United States Bankruptcy Judge for the Western District of Washington, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, *11 U.S.C. §§ 101-1532*.

Although the auction duly commenced on that date, it was not completed until Tuesday, February 9, 2016, when Imperial County accepted the winning bid of American Pacific Investments, LLC in the amount of $343,000. [*2] In the interim, on Monday, February 8, 2016, RW Meridian filed its chapter 7 petition.

Imperial County believed that, by virtue of the scheduled auction, RW Meridian's interest in the property was extinguished under California law at 5:00 p.m. on Friday, February 5, 2016. Even so, on Thursday, February 11, 2016, Imperial County filed a precautionary relief from stay motion to confirm that RW Meridian and its bankruptcy estate had no interest in the property at the time of its bankruptcy filing. The bankruptcy court disagreed with Imperial County, denied relief from the stay, and further held that the tax sale completed postpetition was void as a violation of the stay. *In re RW Meridian LLC, 553 B.R. 807, 814 (Bankr. S.D. Cal. 2016)*.

On appeal from the ruling declaring the tax sale void, we affirmed. *Cnty. of Imperial Treasurer-Tax Collector v. Stadtmueller (In re RW Meridian LLC), 564 B.R. 21, 25 (9th Cir. BAP 2017)*. Agreeing with the bankruptcy court, we held that, at the time of its petition filing, RW Meridian still had both legal and equitable interests in the property. Thus, we also concluded that the postpetition completion of the tax sale was void. Imperial County has appealed our affirmance to the Ninth Circuit Court of Appeals (Court of Appeals Dkt. No. 17-60020). That appeal is still pending.

In October 2016, while Imperial County's relief from stay appeal [*3] was still pending before this panel, Ronald E. Stadtmueller, as trustee of RW Meridian's chapter 7 bankruptcy estate, filed a motion to sell the property. In his motion, Stadtmueller proposed to sell the property to third parties James and Leann Lin for $500,000. Imperial County and American Pacific Investments both opposed Stadtmueller's proposed sale based on the tax sale that the bankruptcy court (and later this Panel) declared void.

At the hearing on the sale motion, the bankruptcy court overruled Imperial County's and American Pacific's objections. In essence, the bankruptcy court held that all of their key objections were premised on a tax sale that the court already had declared void.

More importantly for this appeal, the bankruptcy court pointed out that Imperial County's tax lien was going to be satisfied either way. The bankruptcy court's sale order specifically provided either for payment of Imperial County's tax lien through the sale escrow or for its lien to attach to the sale proceeds. Imperial County has admitted on appeal that it has received full payment of its tax lien from Stadtmueller.[2]

The bankruptcy court entered its order approving the sale of the property on November [*4] 29, 2016, and Imperial County timely appealed.[3]


## JURISDICTION

The bankruptcy court had jurisdiction pursuant to *28 U.S.C. §§ 1334* and *157(b)(2)(N)*, and we have jurisdiction under *28 U.S.C. § 158*, subject to the standing discussion set forth below.


## ISSUE

Does Imperial County have standing?


## STANDARDS OF REVIEW

---

[2] Counsel for Imperial County confirmed this fact at oral argument.

[3] American Pacific Investments also appealed the sale order, but it later voluntarily dismissed its appeal.

We review de novo whether Imperial County has standing. See *Giesbrecht v. Fitzgerald (In re Giesbrecht), 429 B.R. 682, 687 (9th Cir. BAP 2010)*.

## DISCUSSION

Stadtmueller has filed a motion to dismiss this appeal, asserting that the appeal is moot and Imperial County lacks standing. Imperial County has opposed the motion. We address the standing issue first.

### A. Standing Issue

In order to determine whether Imperial County has standing we must consider both constitutional and prudential standing doctrines. Constitutional standing is derived from the case and controversy requirement of Article III of the Constitution and requires a plaintiff to demonstrate "injury in fact, causation and redressability." *Republic of Marshall Islands v. United States, 865 F.3d 1187, 1199 (9th Cir. 2017)* (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386, 188 L. Ed. 2d 392 (2014))*. On the other hand, prudential standing, is a set of "'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 906 (9th Cir. BAP 2011)* (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 289, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008))*.

Imperial County bears the burden of establishing both constitutional standing and prudential standing. *In re Veal, 450 B.R. at 907 n.11*. At its core, the standing inquiry, in all its forms, "is an inherently factual inquiry into the nature **[\*5]** of the rights asserted." Id.

### 1. Constitutional Standing

In order to satisfy the "injury in fact" element of constitutional standing, Imperial County must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Bishop Paiute Tribe v. Inyo Cnty., 863 F.3d 1144, 1153 (9th Cir. 2017)* (citing *Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992))*. To establish causation, Imperial County needs to show that its injury is "fairly traceable" to the challenged action - in this instance, the bankruptcy court's sale order. See *Lujan, 504 U.S. at 560*. And finally, to prove redressability, Imperial County has to persuade us that a favorable decision by this panel likely would redress its injury. *Id. at 560-61*.

Here, Imperial County has not identified any particularized or concrete injury arising from the bankruptcy court's sale order. To the contrary, Imperial County has admitted on appeal that its lienholder interest in the subject property has been fully satisfied from the proceeds of the court-approved sale. This admission also undermines any attempt by Imperial County to show causation. The sale order did not cause Imperial County any injury as a lienholder because the sale order directly resulted in Imperial County being paid in full. For the same **[\*6]** reason, Imperial County cannot show redressability. It is axiomatic that you cannot redress an injury that does not exist. See C. Wright, A. Miller & E. Cooper, 13A F. Prac. & Proc. Juris., § 3531.4 (3d ed. 2017) ("a remedy addressed to actions that have not caused the injury will not alleviate the injury").

Imperial County posits that it has an independent, institutional interest as a taxing authority that has been injured by the sale order because that order conflicts with the prior tax sale of the same property. Furthermore, Imperial County claims that the sale order indirectly threatens other, future tax sales by way of the precedent it sets. The sale order does no such thing. Imperial County is conflating the impact of the sale order with the impact of the bankruptcy court's order denying relief from stay. The relief from stay denial order declared void the prior tax sale. As a result of that order, the tax sale never occurred. *Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571*

ES 736        ES 736        EXHIBIT 3, PAGE 736

*(9th Cir. 1992)* (holding that actions taken in violation of the automatic stay are void). Thus, by the time Stadtmueller filed his sale motion, there was no tax sale to interfere with.[4]

Imperial County nonetheless insists that, as long as it has an appeal pending from the relief **[*7]** from stay denial order, there is a chance the tax sale might be reinstated. It argues that its interest in a potentially-reinstated tax sale, on a lien for which it has already been paid in full, was injured by the sale order. This alleged injury is not an injury in fact for standing purposes. As stated above, an injury in fact must be "actual or imminent, not conjectural or hypothetical." *Bishop Paiute Tribe, 863 F.3d at 1153*. Given that its interest in a potentially-reinstated tax sale only will arise if it prevails in its Ninth Circuit appeal from the relief from stay denial order, its injury is hypothetical.

Imperial County's argument also is based on a false legal premise. It assumes that the relief from stay denial order is ineffective while it is the subject of a pending appeal. This assumption is incorrect. While an appeal is pending, federal judgments and orders are fully effective and enforceable absent a stay pending appeal. *Bennett v. Gemmill (In re Combined Metals Reduction Co.), 557 F.2d 179, 190 (9th Cir. 1977)*.

In sum, Imperial County has not established that it meets the constitutional standing requirements of injury in fact, causation and redressability.

## 2. Prudential Standing - Standing to Appeal

Even if we somehow could conclude that Imperial County has constitutional standing, it also would **[*8]** need to show standing to pursue a bankruptcy appeal. This facet of prudential standing often is referred to as the "person aggrieved" standard: an appellant seeking appellate review of a bankruptcy court's judgment or order must be a "person aggrieved" by the order appealed. *Lehman Commercial Paper, Inc. v. Palmdale Hills Prop., LLC (In re Palmdale Hills Prop., LLC), 423 B.R. 655, 662 (9th Cir. BAP 2009)*, aff'd, *654 F.3d 868 (9th Cir. 2011)*.

Under this standard, only "those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court" have standing to appeal. *Id.* (quoting *Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442 (9th Cir. 1983))*. At bottom, the person aggrieved standard presents a question of fact. *Int'l Ass'n of Firefighters, Local 1186 v. City of Vallejo (In re City of Vallejo), 408 B.R. 280, 299 (9th Cir. BAP 2009)* (citing *Paine v. Dickey (In re Paine), 250 B.R. 99, 104 (9th Cir. BAP 2000))*. Thus, Imperial County needs to show that the order on appeal diminished its property, increased its burdens or otherwise detrimentally affected its rights. See *In re Fondiller, 707 F.2d at 442-43*.

Imperial County cannot show that its pecuniary interests have been directly and adversely affected by the bankruptcy court's sale order. Instead, the sale order bestowed a monetary benefit on Imperial County. Imperial County has admitted that as a result of the sale order its tax lien has been paid in full. In fact, Imperial County has conceded that it has no direct pecuniary interest at stake in this appeal:

---

[4] We are aware that, in each of its appeals, and in every court, Imperial County has been unsuccessful in obtaining a stay pending appeal. The courts repeatedly have denied its stay motions because it has not shown a likelihood of success on the merits. In addition, we understand that Imperial County's arguments regarding its institutional interest in clarifying the efficacy of its tax sale procedures against the filing of a bankruptcy petition might be pertinent to mootness and standing issues raised in its Ninth Circuit appeal from the relief from stay denial order. We express no opinion on the merits of these arguments with respect to the Ninth Circuit appeal. We also understand that, in large part, the appeal from the sale order appears to have been aimed at protecting and preserving whatever rights it might have to prosecute its Ninth Circuit appeal. Indeed, Imperial County has suggested that the decision in this appeal simply be stayed pending resolution of the Ninth Circuit appeal on the relief from stay motion. This fails, however, to alter our conviction that Imperial County's institutional interest in clarifying the efficacy of its tax sale procedures is not implicated by the sale order at issue.

The County does not have to be at risk of monetary harm to have an interest in the appeal. **[*9]** The County has never argued that it is at risk of not being paid, but that it has a vital interest in establishing the validity of its official actions, not only in connection with this particular sale but as to all future sales.
Response In Opposition to Appellee's Motion to Dismiss Appeal, BAP Dkt. No. SC-16-1419, Doc. No 24, p. 19.[5]

As for Imperial County's argument regarding its "vital interest in establishing the validity of its official actions," we already addressed and rejected this argument as part of our consideration of constitutional standing. The sale order did nothing to any such interest. It was the relief from stay denial order that potentially impacted this interest. In any event, by its own admission, Imperial County's interest in its official actions was not a pecuniary interest directly and adversely affected by the sale order.

Accordingly, Imperial County lacks standing, and this appeal must be dismissed.

## B. Mootness Issue

Because we have concluded that Imperial County lacks standing, we decline to address the mootness issue.

## CONCLUSION

For the reasons set forth above, we DISMISS this appeal for lack of standing.

---

End of Document

---

[5] Counsel for Imperial County confirmed this position at oral argument.

**EXHIBIT 4**

# *Licata v. Coan*

United States District Court for the District of Connecticut

September 22, 2015, Decided

No. 3:14-cv-1754 (MPS)

**Reporter**

2015 U.S. Dist. LEXIS 160333 *

James J. Licata, Appellant, v. Richard M. Coan, as Chapter 7 Trustee, Ronald I. Chorches, as Chapter 7 Trustee, Appellees.

**Subsequent History:** Affirmed by *Licata v. Coan (In re Licata), 2016 U.S. App. LEXIS 16307 (2d Cir. Conn., Sept. 2, 2016)*

**Prior History:** *In re First Conn. Consulting Group, Inc., 2014 Bankr. LEXIS 4317 (Bankr. D. Conn., Oct. 9, 2014)*

**Counsel:** **[\*1]** For James J. Licata, Appellant: John F. Carberry, LEAD ATTORNEY, Cummings & Lockwood - Stmfd, Stamford, CT USA; Scott S. Markowitz, LEAD ATTORNEY, Tarter Krinsky & Drogin LLP, New York, NY USA.

For US Trustee, Notice: US Trustee, LEAD ATTORNEY, U.S. Trustee Office, New Haven, CT USA.

For Richard M. Coan, Chapter 7 Trustee, Appellee: Joanna Malgorzata Kornafel, Ronald I. Chorches, LEAD ATTORNEYS, Law Offices of Ronald I. Chorches, Wethersfield, CT USA; Timothy D. Miltenberger, LEAD ATTORNEY, Coan, Lewendon, Gulliver & Miltenberger, New Haven, CT USA.

For Reclaimed Holdings, Llc, Intervenor: Marc Stuart Goldberg, Marc Stuart Goldberg, LLC, Scarsdale, NY USA.

**Judges:** Michael P. Shea, United States District Judge.

**Opinion by:** Michael P. Shea

# Opinion

### Opinion and Order

James Licata, a chapter 7 debtor, challenges the bankruptcy court's decision to approve a settlement of disputed claims entered into between the chapter 7 trustees ("the Trustees") and third parties referred to as the "Mocco Parties." The bankruptcy court found that Licata lacked a pecuniary interest in the settlement and thus lacked standing, having failed to demonstrate a reasonable possibility that a surplus would remain in his estate after all creditors **[\*2]** were paid. *In re First Connecticut Consulting Group, Inc., et al., Nos. 02-50852, 02-51167, 2014 Bankr. LEXIS 4317, 2014 WL 5092269 (Bankr. D. Conn. Oct. 9, 2014)* ("Bankruptcy Decision"). Because I agree that Licata failed to shoulder his burden of proving that there is any reasonable possibility of a surplus in his bankruptcy estate, and thus that there is any reasonable possibility that the bankruptcy court's decision to approve the settlement would adversely affect him, I find that he lacks standing to prosecute this appeal.

### I. Background

The history of this bankruptcy is long and complicated, stretching back more than thirteen years. Because this appeal challenges only the decision by the bankruptcy court to approve a settlement of disputed claims under *Rule 9019 of the Federal Rules of Bankruptcy Procedure*, only the facts relevant to that decision are set forth below.

The bankruptcy case is a procedural consolidation of the now-chapter 7 bankruptcies of James Licata and companies sharing the name "First Connecticut." The bankruptcies were consolidated in July of 2002. *See* Bankr. Doc. 86 (ordering joint administration for procedural purposes only).[1] Many lawsuits related to the assets involved in this bankruptcy have been filed in other jurisdictions, both state and federal. The litigation most relevant **[*3]** to the bankruptcy court's *Rule 9019* settlement approval is a fifteen-year-old dispute between Licata and his affiliates and an individual named Peter Mocco and his affiliates in New Jersey Superior Court ("the New Jersey Ownership Dispute"). The New Jersey Ownership Dispute is a consolidation of lawsuits arising out of the parties' disputed claims of ownership of a group of real estate holding companies and a Joint Venture Agreement ("JVA"). *Mocco, et al. v. Licata, et al.*, Consol. Case No. ESX-L-7709-13.

After Licata filed chapter 11 bankruptcy in 2002 (the bankruptcy was later converted to chapter 7), Mocco filed a motion to dismiss in the bankruptcy court, asserting that he, not Licata, owned many of the assets Licata had claimed in the bankruptcy estate. Bankr. Doc. 154. The motion to dismiss was transferred to the **[*4]** District of Vermont in December 2003. Bankr. Doc. 478. Judge Colleen Brown held an eight-day trial and ultimately granted Mocco's motion to dismiss with regard to the specific assets challenged. *In re First Connecticut Consulting Group, Inc., et al., Case No. 04-101, 2004 Bankr. LEXIS 2692, 2004 WL 1676211 (Bankr. Vt. July 27, 2004)*. Both Licata and Mocco testified at the trial. *2004 Bankr. LEXIS 2692, [WL] at *2*. In summarizing her findings, Judge Brown concluded,

> Licata had no ownership interest in the LLCs as of the date he filed the LLC bankruptcy petitions. Licata's title to the subject properties were always as Mocco's nominee only; the LLCs served merely as a conduit into which Mocco transferred his real property for later reconveyance to him or his designee.

*2004 Bankr. LEXIS 2692, [WL] at *16*. Judge Brown found Licata's testimony to be "both disturbing and disingenuous" with regard to a factual issue relevant to the question of ownership. *2004 Bankr. LEXIS 2692, [WL] at *4*. The bankruptcy court decision was affirmed by the United States District Court for the District of Vermont, *340 B.R. 210 (D. Vt. 2006)*, and the United States Court of Appeals for the Second Circuit, *254 Fed. Appx. 64 (2d Cir. 2007)*. The Vermont bankruptcy court decision did not, however, dismiss all of the bankruptcy cases started by Licata and his related entities. The remaining bankrupt estates continued their dispute with Mocco over ownership of certain assets, which the parties and the bankruptcy court refer to as the "Disputed Claims." The Disputed Claims form part of the New Jersey Ownership Dispute and **[*5]** underlie the bankruptcy court's decision at issue in this appeal.

*A. Attempts to Sell the Disputed Claims*

Between 2003 and 2006, Licata, then a chapter 11 debtor-in-possession, attempted to sell the Disputed Claims. These attempts culminated in the bankruptcy court's March 2006 approval of an $11.25 million sale to SWJ Holdings, LLC. Bankr. Doc. 917. As discussed below, that sale was not completed. In June of 2006, the bankruptcy court converted the consolidated bankruptcies from chapter 11 to chapter 7, Bankr. Doc. 1073, and as a result, responsibility for managing the bankruptcy estate shifted from Licata to the trustees of the Licata and First Connecticut estates. *In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 10 (1st Cir. 1993)* ("The chapter 7 trustee, not the chapter 7 debtor, is responsible for collecting all property of the estate and reducing it to money.").

---

[1] For simplicity, all citations to the bankruptcy court docket will refer to *In re First Connecticut Consulting Group, Inc.*, Bankruptcy Case No. 02-50852 (AHWS) (Bankr. D. Conn.), and will be styled as "Bankr. Doc. __." References to this Court's appellate docket, *In re Connecticut Consulting Group, Inc., et al.*, Case No. 14-cv-1754 (D. Conn.), will be styled as "Dist. Doc. __."

SWJ Holdings failed to perform its obligations under the purchase agreement. Under the agreement, SWJ Holdings was required to pay $5.4 million at the closing, and the remaining portion of the price was due in December 2006 pursuant to a collateralized Note. *Bankruptcy Decision, 2014 Bankr. LEXIS 4317, [WL] at *2 n.13*. In December 2006, SWJ Holdings defaulted by failing to pay the money due under the Note. *Id.* The Trustees of the chapter 7 estates filed **[*6]** an adversary action against SWJ Holdings seeking to recover on the promissory note SWJ Holdings had provided as part of the purchase agreement. The bankruptcy court entered judgment in favor of the Trustees. *Coan et al. v. SWJ Holdings, LLC*, Bankr. Case No. 07-5010, Doc. 14. After SWJ Holdings failed to satisfy that judgment, the Trustees attempted to foreclose the assets previously conveyed to SWJ Holdings. Bankr. Doc. 1268. An auction of the foreclosed assets yielded no bidders, and as a result, the Trustees reacquired the assets. *Bankruptcy Decision, 2014 Bankr. LEXIS 4317, [WL] at *2 n.13*.

The Trustees were unable to find another purchaser of these assets until July 2013, when CB3 Acquisitions, LLC ("CB3"), paid $75,000 for an option to purchase the assets for an initial price of $7.7 million. Bankr. Doc. 2235, at ¶ 25. Within the option period another bidder, the Cardillo Group, expressed interest in purchasing the assets, so the Trustees held an auction. *Id. at ¶ 30*. CB3 emerged with the highest bid at $12.6 million. *Id. at ¶ 32*. The bankruptcy court approved this sale in an order in which the court stated its approval was subject to the condition that the Trustees not transfer any assets until CB3 paid the $12.6 million in full. *Id.* at **[*7]** ¶ E. The bankruptcy court also ordered that if CB3 did not ultimately purchase the assets, the Cardillo Group would then have an opportunity to purchase the assets at its bid price of $12.5 million. *Id.* at ¶ F. Neither CB3 nor the Cardillo Group ultimately purchased the assets and CB3 filed for bankruptcy soon after, *In re CB3 Acquisitions, LLC*, Bankr. Case No. 14-50524 (AHWS) (Bankr. Conn.). The Trustees once again sought a purchaser in the market.

Meanwhile, the Trustees were litigating the New Jersey Ownership Dispute. At some point, the New Jersey court found that although the Vermont bankruptcy court's decision in favor of Mocco would not be accorded res judicata or collateral estoppel effect in the New Jersey litigation, evidence from the Vermont trial was admissible and would be considered by the New Jersey court. *Bankruptcy Decision, 2014 Bankr. LEXIS 4317, [WL] at *2*. The Trustees, unable to find a buyer for the Disputed Claims and perhaps concerned about their chances at the upcoming New Jersey trial, decided to settle the Disputed Claims with Mocco for $1.5 million. In January 2014, the Trustees submitted a motion under *Fed. R. Bankr. P. 9019* asking the bankruptcy court to approve their settlement with Mocco and his affiliates. Bankr. Doc. 2321. After **[*8]** a round of amendments, the final proposal was presented to the bankruptcy court in August 2014. Bankr. Doc. 2464.

No creditor objected to the amended settlement proposal. Only Licata objected.[2] Bankr. Doc. 2470; *see also Bankruptcy Decision, 2014 Bankr. LEXIS 4317, [WL] at *1* ("Licata, a chapter 7 debtor with no standing . . . is the only party who objected to the Amended 9019 Motion."). In his objection, Licata argued that the $1.5 million settlement agreement did not reflect the actual value of the Disputed Claims, which, in his view, was considerably higher. In support of his objection, Licata submitted a one-page letter from an individual named Judy Morris. Dist. Doc. 10-3 (the "Morris letter"). The Morris letter was the only piece of evidence Licata submitted with his objection to the settlement. In the letter, Morris stated that her real estate company was familiar with "the real estate properties in Sayreville, Jersey City and Bergenwood, New Jersey," and that based on valuations done by developers with whom she had communicated, she estimated the value of the properties to be $1 billion dollars in total. Licata did not attach any affidavit purporting to authenticate the letter. The letter does not describe any of Morris's qualifications. **[*9]** Nor does the letter clearly identify which property it purports to value, but rather refers vaguely to the "Liberty Harbor development."

*B. Liabilities of Licata and First Connecticut Estates*

---

[2] Other parties filed objections to the original proposed settlement, Bankr. Doc. 2331, 2333, 2340, 2402, but these objections were not renewed upon filing of the amended settlement proposal. *See Bankruptcy Decision, 2014 Bankr. LEXIS 4317, [WL] at *1 n.5*.

At the time of the bankruptcy court's order, the claim registers for Licata and First Connecticut's estates each listed over $200 million in claims. In the twelve years between the filing of the bankruptcy and the issuance of the order on appeal, only two sets of objections — neither of which was ultimately successful — were raised against these claims. First, Licata, acting as debtor-in-possession,[3] filed an objection on October 28, 2005, challenging a series of claims totaling over $117 million. Bankr. Doc. 853. The bankruptcy court denied this objection on November 14, 2005, because Licata's objection failed to meet the procedural requirements for contested matters. Bankr. Doc. 859. Licata never renewed this objection, nor did he submit any other objection. Second, after conversion, the Trustees objected **[\*10]** to a $7.5 million claim made by Metropolitan Management, LLC. Bankr. Doc. 2136. According to the bankruptcy case docket, a hearing on this objection was scheduled, Bankr. Doc. 2137, but was canceled soon thereafter, *see* Non-Numbered Docket Entry, April 9, 2013. The bankruptcy court docket reflects that no action has since been taken with regard to that objection.[4]

In his objections to the original and amended proposed settlement filed with the bankruptcy court, the only assertion Licata made regarding the liabilities of the estate was the following: "Here, while there are millions of dollars of filed claims, many of these claims have been resolved and/or paid." Bankr. Doc. 2398, ¶ 19. Licata did not attach any evidence to his objection to bolster this argument that certain claims were invalid. Further, during the eight month span between the filing of the original settlement proposal and the final hearing on the amended proposal, Licata did not file a single objection to any of the claims. During one of the hearings on the settlement proposal, the Trustees informed the bankruptcy court that they viewed some of the claims to be invalid, and provided their estimate of the actual total estate[5] liabilities:

> As I stand here today the clerk's office reports that the **[\*12]** claims against these bankruptcy estates exceeds [sic] $200 million. The trustees have done some analysis of the claims register.
> We think that the claims should drop down to a number that would be no more than $120 million. And there maybe other claims that can be resolved as well. But as we stand here today, and on the record before this Court, the amount of claims filed against the bankruptcy cases are in the $100 million range.

May 6 Hearing Transcript, Bankr. Doc. 2423, at 12. Licata's counsel's only response to the Trustees' remarks was, "I don't think there's $100 million in good claims against this estate." *Id. at 49.*

## C. Hearings on the Settlement Proposal

The bankruptcy court held hearings regarding the original **[\*13]** and amended settlement proposal on February 26, 2014, March 11, 2014, May 6, 2014, and November 23, 2014. Licata's counsel requested that the bankruptcy court

---

[3] Before the estate was converted to chapter 7, Licata was responsible as the chapter 11 debtor-in-possession for making objections to claims. *See, e.g.,* *11 U.S.C. § 1107(a)*; *In re C.H. Stuart, Inc., 28 B.R. 360, 361 (Bankr. W.D.N.Y. 1983)* ("*Section 704(4) of the Bankruptcy Code* enunciates a duty, applicable to debtor-in-possession by virtue of *11 U.S.C. §§ 1106(a)(1)* and *1107(a)* of the Code, to 'if a purpose would be served, examine *proofs of claims* and object to the allowance of any claim that is improper.'" (emphasis in original)).

[4] Although neither party has brought this to the Court's attention, the bankruptcy court docket reflects that during the pendency of this appeal, the Trustees have made further objections in the bankruptcy court. The bankruptcy court sustained an objection to a $10,453.26 claim on April 7, 2015. Bankr. Doc. 2582. The bankruptcy court denied the claim priority status, but allowed it as a general unsecured claim. The Trustees also objected to a series **[\*11]** of claims totaling $205,378.91 on May 18, 2015. Bankr. Doc. 2600, 2602, 2604. The bankruptcy court held a hearing on those objections on June 23, 2015, but has not yet ruled on the objection. These claims' relatively small amount renders their potential invalidity immaterial to this ruling.

[5] The record is unclear as to which estate(s) the Trustees were referring when making this statement. A review of the claims registers in both cases, however, reflects that both Licata's (No. 02-51167) and First Connecticut's (No. 02-50852) claim register totals exceeded $200 million at the time the bankruptcy court rendered its decision on appeal. Thus, this uncertainty does not impact this Court's determination that the finding that Licata lacked standing was not clearly erroneous.

hold an evidentiary hearing with regard to the settlement, but the bankruptcy court declined to do so. *See, e.g.*, November 23 Hearing Transcript, Bankr. Doc. 2510, at 50. On October 9, 2014, the bankruptcy court entered an order approving the settlement. In that order, the bankruptcy court ruled that Licata lacked standing to object to the settlement and that the settlement was fair and equitable. *Bankruptcy Decision, 2014 Bankr. LEXIS 4317, [WL] at *4.* With regard to standing, the bankruptcy court found as follows:

> [Licata's] attempt to establish a colorable basis for standing to object is unavailing. To do so, he would have had to proffer evidence that after the sale of the Assets and payment in full to holders of allowed unsecured claims, there would then be a surplus for him. His only proffer to support that scenario was a real estate broker's opinion letter, which was both vague and of insignificant probative value. Moreover, as Licata's counsel acknowledged, taking evidence on a *Rule 9019* motion is not required. . . .

> The record demonstrates that there are approximately $120 million[] **[*14]** of unsecured claims. There is nothing in the record to suggest that the sale of the Assets will generate enough money to satisfy those claims. Those findings warrant the conclusion that Licata has no pecuniary interest in these Cases and, therefore, no standing to object.

*Id.* Licata filed a timely notice of appeal and requested that the bankruptcy court stay its order pending this appeal. Bankr. Doc. 2492. The bankruptcy court denied that motion. Bankr. Doc. 2512. Licata then filed a motion for a stay in this Court pending the decision on its appeal. Dist. Doc. 7.

## II. Discussion

On appeal, Licata argues that the bankruptcy court erred in finding both that Licata lacked standing to object to the settlement and that the settlement was fair and equitable. Because I find that Licata lacks standing to appeal for the same reason he lacked standing in the bankruptcy court, I do not reach the second claim of error.

*A. Applicable Legal Standards*

### i. A Chapter 7 Debtor Generally Lacks Standing

"[T]he general rule is that, unlike creditors, Chapter 7 debtors lack standing to object to or appeal from orders of the bankruptcy court because the commencement of liquidation proceeding extinguishes any pecuniary **[*15]** interests that they formerly held in the property of the estate." *In re Rybka, 339 B.R. 464, 467 (Bankr. N.D. Ill. 2006)*. "Debtors generally lack standing because bankruptcy proceedings absolve the debtor of any liability to the creditors and the debtor has no interest in the distribution of the estate's property since the property has passed to the trustee." *In re Hope 7 Monroe Street Ltd. P'ship, 743 F.3d 867, 871, 408 U.S. App. D.C. 347 (D.C. Cir. 2014)*. "The rule is based on the assumption that the success of the debtor's objection cannot affect him because the debtor receives a distribution only after all creditors have been paid in full, and an estate will rarely have enough assets to do even that." *Pascazi v. Fiber Consultants, Inc., 445 B.R. 124, 127 (S.D.N.Y. 2011)* (citations and internal quotation marks omitted). To defeat this "assumption," a debtor must provide sufficient evidence to the bankruptcy court to prove a "reasonable possibility" of a surplus exists in order to demonstrate his or her standing. *In re 60 E. 80th Street Equities, Inc., 218 F.3d 109, 116 (2d Cir. 2000)*. When there is "no evidence that a surplus is a reasonable possibility," the bankruptcy court must find the debtor lacks standing. *See id.*

### ii. Standard of Review

On appeal, a district court reviews the bankruptcy court's legal determinations *de novo* and factual findings for clear error. *In re Robert Plan Corp., 777 F.3d 594, 596 (2d Cir. 2015)* (citing *In re Colony Hill Assocs., 111 F.3d 269, 273*

*(2d Cir. 1997))*.[6] A bankruptcy court's finding that a reasonable possibility of a surplus does not **[\*16]** exist is a finding of fact reviewed for clear error. *60 E. 80th Street Equities, 218 F.3d at 116* ("Both the Bankruptcy Court and the District Court in this case found that there was 'no evidence that a surplus is a reasonable possibility in these proceedings,' . . . . These findings of fact are not clearly erroneous."); *Pascazi, 445 B.R. at 127* ("Pascazi only has standing to object to the Claim as a debtor if he can demonstrate a reasonable possibility of a surplus once all claims are paid. This is a question of fact." (citations and internal quotation marks omitted)). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *New York Progress and Prot. PAC v. Walsh, 733 F.3d 483, 486 (2d Cir. 2013)* (citation and internal quotations marks omitted).

### iii. Burden of Proof

It was Licata's burden **[\*17]** to prove to the bankruptcy court that a reasonable possibility of a surplus existed in the estate, i.e., that the estate assets were greater than the total amount of liabilities. *See Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995)* ("The burden to establish standing remains with the party claiming that standing exists."); *Drake v. United States, No. 13-cv-1136, 2014 U.S. Dist. LEXIS 167924, 2014 WL 6883104, at \*2 (N.D.N.Y. Dec. 4, 2014)* (noting that in order to "participate in litigation surrounding the assets of the estate," a chapter 7 debtor must have standing, and that the debtor "bears the burden of showing a reasonable possibility that a surplus will exist at the conclusion of the bankruptcy proceedings" (internal quotation marks and citations omitted)); *Rybka, 339 B.R. at 468* ("[T]he debtor must *show* that a surplus is a reasonable possibility, not just that there is a theoretical chance of a surplus." (emphasis added)). In reviewing the bankruptcy court's finding, I consider the evidence (or lack of evidence) Licata presented to the bankruptcy court in seeking to meet that burden.

Licata also must prove his standing to appeal the bankruptcy court's decision. Demonstrating appellate standing in this context requires meeting the same standard already discussed — Licata must demonstrate a reasonable possibility of a surplus. *60 E. 80th Street Equities, 218 F.3d at 116* **[\*18]** . As a result, if the bankruptcy court's finding that Licata failed to demonstrate a reasonable possibility of a surplus was not clearly erroneous, Licata also lacks standing to prosecute this appeal.

*B. Estate Assets: Value of the Disputed Claims*

In his objection to the *Rule 9019* settlement, Licata argued that the settlement price grossly underestimated the value of the Disputed Claims. He asserted that the assets held "meritorious title to, at a minimum, the hundreds of millions of dollars worth of New Jersey real properties," and as a result, "[t]he trustees propose, in effect, to sell these properties to the Mocco parties for 1.6 million dollars, a mere pittance." Bankr. Doc. 2346, at ¶ 1. To bolster his argument, Licata submitted the one-page Morris letter. In its order approving the settlement, the bankruptcy court found the Morris letter to be "both vague and of insignificant probative value." *Bankruptcy Decision, 2014 Bankr. LEXIS 4317, [WL] at \*4*. Under the circumstances, the bankruptcy court's determination not to accord probative value to the Morris letter was not clearly erroneous.

First, the letter is inadmissible — it is unauthenticated, consists of hearsay (sometimes double hearsay, *see, e.g.*, Dist. Doc. 10-3 ("The developers have evaluated **[\*19]** the original 20 acres, which actually may include more land based on preliminary site work, at between $300 and $475 million dollars.")), and expresses an opinion unsupported by any indication of methodology, the qualifications of the author, or any other indicia of reliability. Licata provided no evidence supporting a finding that the letter is what Licata claimed it was, thus failing to meet the

---

[6] While the December 2014 amendments to the Federal Rules of Bankruptcy Procedure removed the previous Rule 8013 language setting out expressly the appellate standards of review, the amendments did not alter substantively those standards. *See* 10 Alan N. Resnick & Henry J. Summers, Collier on Bankruptcy ¶ 8014.02 (16th ed.); *Robert Plan Corp., 777 F.3d at 596-97* (maintaining the previously stated standards of review after the 2014 amendments).

authentication requirements of the Federal Rules of Evidence. *See* Fed. R. Evid. 901(a). Most of the statements in the letter are a recitation of statements made by unnamed developers. Licata offered those statements in the letter to prove the truth of the matter asserted by the developers, i.e., their valuation estimates. They are therefore inadmissible hearsay. *See* Fed. R. Evid. 801, 802. Finally, the opinion on valuation does not meet the requirements of Fed. R. Evid. 702: the letter does not set forth the author's qualifications, and provides no information allowing the reader to ascertain whether the opinion expressed is the product of reliable principles and methods. In short, the letter did not constitute admissible evidence of the value of the Disputed Claims, and Licata failed to present any other admissible evidence in support of his valuation **[*20]** of the Disputed Claims.

In addition, during the settlement hearings, Judge Shiff raised several other concerns about the letter: "[The letter] didn't break out the separate 19 acres [i.e., the real estate actually pertinent to the Disputed Claims], and it didn't discuss the need for redevelopment agency approval. . . . It didn't discuss that [the real estate is] landlocked and needed to be extensively reconstructed because there were hazardous waste — it didn't discuss any of that." September 23 Hearing Transcript, at 57-58. Furthermore, the letter did not actually value property of the bankruptcy estates. That property consisted of the Disputed Claims, i.e., disputed interests in holding companies and a joint venture that owned the underlying real estate. A proper valuation of that property would incorporate not only valuation of the pertinent real estate, but also an assessment of the chances of success on the Disputed Claims.

The only actual evidence in the record of the value of the Disputed Claims supported the bankruptcy court's determination of value. That evidence, of course, was the saga of the Trustees' (and before them, Licata's) unsuccessful efforts to sell the Disputed Claims **[*21]** — a saga that unfolded in, and was thus well known to, the bankruptcy court. The Trustees placed the assets on the market multiple times throughout an eight-year period, and the highest bid price they could achieve was $12.6 million. *See* Appellee's Br. 22-24 (describing the Trustees' attempts to auction the Disputed Claims). Worse, none of the potential purchasers had the funds to support their offers — both SWJ Holdings and CB3 Acquisitions went bankrupt shortly after making their offers.[7] No wonder, then, that the bankruptcy court was skeptical that the SWJ and CB3 offers provided a reliable indication of the assets' true value: "[y]ou could get somebody walking across [the street] to bid on something." September 23 Transcript, at 39; *see also* id. at 38 ("[W]hat it's worth is what somebody's willing to pay for it. Nobody wants to pay for it."). Also weighing against Licata's assertion that the assets are worth hundreds of millions of dollars are his own actions. When acting as a chapter 11 debtor-in-possession, Licata agreed to sell the Disputed Claims for at most $11.25 million.[8]

Without any reliable evidence that the assets were worth anywhere near the value Licata asserted, the bankruptcy court concluded that the assets could not make up for the claims against the bankrupt estate. Bankruptcy Decision, 2014 Bankr. LEXIS 4317, [WL] at *4 ("There is nothing in the record to suggest that the sale of the Assets will generate enough money to satisfy those claims."). Licata has failed to show that that finding was clearly erroneous.

Licata argues In re Brutsche, 500 B.R. 62 (Bankr. N.M. 2013), is analogous to this case and weighs in his favor. In *Brutsche*, the bankruptcy court found a reasonable probability of surplus and therefore ruled that the chapter 7 debtor had standing to object to the settlement. The bankruptcy court noted that standing was a separate issue from the reasonableness of the Rule 9019 settlement, and a chapter 7 debtor could show a reasonable possibility of a surplus while **[*23]** at the same time failing to demonstrate that the settlement itself is unreasonable. Id. at 72. But the bankruptcy court in *Brutsche* relied on the debtor's "extensive evidence on both liability and damages" regarding the disputed claims. *Id.* In contrast, Licata has provided no reliable evidence of the value of the Disputed Claims.

---

[7] As noted above, the Cardillo Group tendered a competing bid against CB3 Acquisition's original option purchase. When CB3 decided **[*22]** not to purchase the assets after outbidding the Cardillo Group, the Trustees offered the Cardillo Group the option to purchase the assets at the Cardillo Group's bid price, $12.5 million. The Cardillo Group chose not to act on that offer.

[8] Appellees assert (though, without any citation to the record) that this sale included assets not covered by the Disputed Claims. Appellee's Br. 7-8.

*C. Estate Liabilities: Claims Against the Estate*

In determining that Licata lacked standing, the bankruptcy court also considered the total value of the claims filed against the estate. In its decision, the bankruptcy court found that the estate was liable for "approximately $120 million[] of unsecured claims." *Bankruptcy Decision, 2014 Bankr. LEXIS 4317, [WL] at *4.* Licata has failed to show that this approximation of estate liabilities was clearly erroneous.

At the time of the bankruptcy court's decision, there were over $200 million worth of claims listed in each of Licata's and First Connecticut's claims registers. In the now thirteen-year history of the bankruptcy case, Licata has never raised a proper objection to any claims made against the estate. As discussed above, Licata filed an objection to a group of claims totaling approximately $117 million while acting as debtor-in-possession. Bankr. Doc. 853. This objection, **[*24]** however, was never sustained. Licata states that these objections did not move forward because "[a]s is customary in a chapter 11 case, these claims objections were never finally resolved because of the conversion to chapter 7." Appellant's Reply Br. 3. But the bankruptcy court docket suggests otherwise. On November 14, 2005, the bankruptcy court denied the objection for failure to comply with contested matter procedure. Bankr. Doc. 859. Licata has not indicated that his objection was ever renewed, nor can the Court find a renewed objection on the bankruptcy court docket. Furthermore, even if these objections had prevailed, approximately $80 million in claims would have remained.

The only other objection that had been raised at the time the bankruptcy court considered the amended settlement proposal was a $7.5 million claim objection filed by the Trustees. Bankr. Doc. 2136. Even discounting the claim objected to by the Trustees, at the time the bankruptcy court rendered its decision there were nearly $200 million in claims against the estate to which no objection was made. During the hearing, the Trustees conceded that the total amount in the register was higher than the actual amount in **[*25]** valid claims, characterizing the actual amount in the range of $120 million. Hearing 4, at 12. Licata's only response was his counsel's statement, "I don't think there's $100 million in good claims against this estate." *Id. at 49.* Despite the fact that Licata had the burden to *prove* his standing to object to the settlement, Licata presented no evidence challenging the validity of any claim against the estate.

In a reply brief filed in support of his motion to stay the bankruptcy court's decision pending this appeal, Licata points this Court to a series of claims in the register that he asserts are duplicative, frivolous, or otherwise invalid. Dist. Doc. 12, at 3-4 (challenging Claim Nos. 13, 23, 31, 32, 33, 34, 60, 62, and 76). This Court rejects Licata's effort to challenge the claims in this fashion. First, Licata never raised these arguments in the bankruptcy court. Licata cannot challenge the bankruptcy court's decision that he lacked standing on the basis of arguments or evidence he submits for the first time on appeal. Licata would apparently have this Court sift through each claim in the register to determine whether it was properly filed, after he failed to ask the bankruptcy court **[*26]** to do so during the twelve years he had the full opportunity to object to claims. Licata had the burden to demonstrate to the bankruptcy court that he had standing to object to the proposed settlement. It is not up to this Court, on appeal, to inspect claims that he never previously challenged.

Second, Licata did not include these new "objections" in his appeal briefs, instead burying them in a reply brief filed in connection with a motion to stay. A reply brief to a motion to stay is not the place for an appellant to raise substantive arguments for the first time. Third, besides vaguely referencing a 2003 district court decision that allegedly makes Claims 23, 31, 32, 33 and 34 invalid, Licata presents no evidence of the claims' invalidity. While he asserts that many of the claims are duplicative, he presents no evidence that they were filed improperly. If a claim is filed pursuant to the procedures set forth in the Federal Rules of Bankruptcy Procedure, the claim enjoys presumptive facial validity. *Fed. R. Bankr. P. 3001(f)* ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."). "To overcome this prima facie evidence, **[*27]** the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *In re Reilly, 245 B.R. 768, 773 (2d. Cir. BAP 2000).* Thus, Licata must

provide actual evidence that the claims were filed improperly or that they are substantively invalid to mount a successful challenge.

Fourth, the bankruptcy court considered the Trustee's position that many of the claims in the register were duplicative, and the bankruptcy court relied on that information in arriving at its own discounted approximation of estate liabilities. It is noteworthy that the bankruptcy court's estimation of $120 million in liabilities was not far from the total amount in liabilities that would remain if all claims challenged by Licata were removed from the register. If one were to remove each claim Licata challenges from the $200 million total in the claims register at the time of the bankruptcy court's decision, the estate would still have $80 million remaining in liabilities.

In his reply brief, Licata argues that he cannot be faulted for failing to make claim objections during his eight years as chapter 7 debtor because it was never determined that he had standing to do so. Licata argues it would have [*28] been wasteful for him to object to claims without such a ruling — one that he apparently never sought: "[u]ntil there [was] a determination that surplus funds [would] be available to Licata there is simply no reason, nor should the Court require Licata to incur legal fees prosecuting objections to claims as a precondition to having standing to object to the settlement." Appellant's Reply Br. 3. This amounts to an argument that this Court should not hold Licata to his burden of demonstrating a reasonable possibility of a surplus because the bankruptcy court never determined that there was such a possibility. This is circular at best and borders on an admission that the bankruptcy court's decision was correct.

The bankruptcy court's finding that the estate liabilities in this case are approximately $120 million was not clearly erroneous. The record suggests that the Disputed Claims are worth at most $12.6 million, and probably closer to the $1.5 million the estates actually netted in the only completed sale. Thus, the bankruptcy court's finding that there was no reasonable possibility of surplus was not clearly erroneous.

### D. The Bankruptcy Court's Decision Not to Hold an Evidentiary Hearing

As [*29] a final matter, the bankruptcy court did not err in refusing to hold an evidentiary hearing before making its finding that Licata lacked standing.[9] When a debtor's arguments regarding valuation of assets and liabilities are "inadequate on their face," the bankruptcy court is not required to hold an evidentiary hearing in considering a *Rule 9019* settlement. *In re Turner Spares, Ltd., Inc., 210 B.R. 235, 237 (S.D.N.Y. 1997)*. In addition, if the bankruptcy court's "particularized knowledge of the facts of the bankruptcy proceeding" and material already existing in the record are sufficiently helpful, the bankruptcy court need not take additional testimony via an evidentiary hearing. *Alford v. Dribusch, No. 14-cv-558, 2014 U.S. Dist. LEXIS 175329, 2014 WL 7243321, at *3 (N.D.N.Y. Dec. 19, 2014)*; *see also In re SageCrest II, LLC, No. 10-cv-979, 2011 U.S. Dist. LEXIS 3517, 2011 WL 134893, at *10 (D. Conn. Jan. 14, 2011)* (ruling Judge Shiff's decision not to hold an evidentiary hearing in approving a settlement was not an abuse of discretion given the sufficiency of the evidence in the record, "especially when combined with his general knowledge of the facts of the bankruptcy proceeding"). Here, the bankruptcy court's close familiarity with a case over which it had presided for over a decade — including the abortive efforts to sell the Disputed Claims and the limited number of proper objections to the claims made [*30] against the estates — enabled it to make a proper standing determination without holding an evidentiary hearing. Licata never gave the bankruptcy court any reason to doubt its understanding of the assets and liabilities of the estate. The bankruptcy court's decision not to take additional evidence was therefore not error.

### III. Conclusion

---

[9] Although Licata challenges the decision not to hold an evidentiary hearing in connection with his attack on the approval of the settlement, I construe his appeal to make the same point with regard to the bankruptcy court's standing determination.

EXHIBIT 4, PAGE 748

For the reasons stated above, the bankruptcy court's determination that Licata failed to prove a reasonable possibility of a surplus was not clearly erroneous. On appeal, Licata presents no reason to question that determination. As a result, I find that Licata lacks standing to appeal the bankruptcy court's approval of the *Rule 9019* settlement. The appeal is therefore DISMISSED. As a result of this ruling, the Motion for Stay and Expedited Appeal is DENIED as moot. The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

/s/ Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

September 22, 2015

---

**End of Document**

**EXHIBIT 5**

# *Nev. Bus. Credit, LLC v. Kavanagh (In re Golden Empire Air Rescue, Inc.)*

United States Bankruptcy Appellate Panel for the Ninth Circuit

September 21, 2007, Argued and Submitted at Pasadena, California; October 25, 2007, Filed

BAP Nos. EC-07-1086-JuMkPa, EC-07-1087-JuMkPa

**Reporter**
2007 Bankr. LEXIS 4880 *

In re: GOLDEN EMPIRE AIR RESCUE, INC. Debtor, In re: GOLDEN EMPIRE AMBULANCE, INC. Debtor, PETER MOSESIAN; NEVADA BUSINESS CREDIT, LLC, Appellants, v. PATRICK KAVANAGH, Chapter 7 Trustee; ROGERS HELICOPTERS, INC., Appellees. PETER MOSESIAN; NEVADA BUSINESS CREDIT, LLC., Appellants, v. ROSSANA A. ZUBRZYCKI-BLANCO, Chapter 7 Trustee; ROGERS HELICOPTERS, INC., Appellees.

**Notice:** THIS DISPOSITION IS NOT APPROPRIATE FOR PUBLICATION. ALTHOUGH IT MAY BE CITED FOR WHATEVER PERSUASIVE VALUE IT MAY HAVE (SEE *FED. R. APP. P. 32.1*), IT HAS NO PRECEDENTIAL VALUE. SEE 9TH CIR. BAP RULE 8013-1.

**Prior History:** [*1] Appeal from the United States Bankruptcy Court for the Eastern District of California. Bk. Nos. 05-18746, 05-19955. Honorable Whitney Rimel, Bankruptcy Judge, Presiding.

*In re Golden Empire Air Rescue, Inc., 2006 Bankr. LEXIS 2508 (Bankr. E.D. Cal., Sept. 25, 2006)*

**Judges:** Before: JURY, MARKELL and PAPPAS, Bankruptcy Judges.

# Opinion

**MEMORANDUM**

**I. INTRODUCTION**

The Chapter 7[2] trustees of the related debtors sought approval of a compromise between the bankruptcy estates and Rogers Helicopters, Inc. Peter Mosesian and Nevada Business Credit, LLC ("NBC") objected on the grounds that the compromise was a "disguised sale" subject to overbids and the record contained no evidence that Rogers gave reasonable value. The bankruptcy court approved the compromise over their objections.

Mosesian filed a motion for reconsideration under *Rule 9023*.[3] On reconsideration, [*2] the bankruptcy court found that, even if the compromise was a sale, the requirements under *§ 363* were met and overbids were not required. Mosesian and NBC timely appealed.

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, *11 U.S.C. §§ 101-1330*, and to the *Federal Rules of Bankruptcy Procedure, Rules 1001-9036*, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, **Pub. L. 109-8, 119 Stat. 23**, because the cases from which this appeal arises were filed before its effective date (generally October 17, 2005).

[3] NBC filed a motion requesting the bankruptcy court to amend its Findings of Fact and Conclusions of Law under *Rule 7052*. The bankruptcy court granted the motion to clarify that Rogers could pursue the estates' causes of action only against Mosesian,

We find that some of the claims that the trustees sought to settle were decided by the bankruptcy court prior to the time the motion for compromise was heard. Thus, these claims were no longer in dispute. Further, the trustees failed to submit any evidence in support of their motion to approve the compromise with Rogers. The record contains only conclusory statements with respect to the factors set forth in *Martin v. Kane (In re A & C Props.), 784 F.2d 1377, 1380 (9th Cir. 1986)*. Finally, because the compromise disposes of property which belongs to the bankruptcy estates, the sale provisions of *§ 363* are implicated. We find that the possibility **[*3]** of overbids from Mosesian and NBC triggered the prospect of an auction and, therefore, procedures for overbids should have been established. We REVERSE and REMAND.

## II. FACTS

Golden Empire Air Rescue, Inc. ("GEAR") filed its Chapter 7 petition on October 7, 2005, and Patrick M. Kavanah was appointed trustee. Golden Empire Ambulance, Inc. ("GEA") filed its Chapter 7 petition on October 13, 2005, and Rossana A. Zubrzycki-Blanco was appointed trustee.[4] The debtors are closely-held corporations owned and controlled by Mosesian or related entities. NBC is also owned by Mosesian or his family trust.

Mosesian and NBC filed claims in both bankruptcy cases.[5] Mosesian's claims are unsecured, while NBC's claims are secured.[6] Rogers filed an unsecured claim in both cases for almost $1 million.[7]

Mosesian and Rogers have a history of litigation that began in 2002. Their dispute arose out of a joint venture formed by Rogers and GEA in 1994 to operate an air ambulance service. GEA thereafter created GEAR to carry out its obligations under the joint venture agreement. Debtors and Rogers were to split the profits. In 1999, Rogers asked for an accounting. Debtors either failed to provide one or produced an accounting that did not satisfy Rogers.[8]

### The State Court Lawsuit

In 2002, Rogers sued the debtors, Mosesian and Penrose[9] in superior court, seeking an accounting and alleging fraud, breach of fiduciary duty and conversion by all defendants (the "Kern County Action").[10] The superior court

---

John Penrose ("Penrose") and any entity owned or controlled by them. In other words, Rogers could not pursue any other third party.

[4] Hereinafter, GEA and GEAR are collectively referred to as the "debtors" and Kavanah and Blanco are collectively referred to as the "trustees.".

[5] There is no indication in the record that the trustees filed objections to the claims. Therefore, the claims are "deemed allowed" pursuant to *§ 502(a)*.

[6] NBC attached a UCC-1 filing to its proof of claims that shows it holds a security interest in all of the debtors' **[*4]** assets, including general intangibles.

[7] The claims registers for both cases show other creditors besides Mosesian, NBC and Rogers. Those creditors include the Franchise Tax Board, IRS, John Wright and Richard Monje. In essence, though, these bankruptcy cases are a two party dispute.

[8] In 1999, GEA sold its ambulance permit. In 2001, GEAR sold its air permit. The trustees were investigating how the proceeds of these two sales were used or disbursed. The debtors have not conducted any business since 2001.

[9] Penrose was the debtors' president and has not appeared in these matters. Although he may remain a defendant in the Kern County Action, there are no further references to Penrose herein.

[10] Rogers also sued Williams & Brown, the accountant for debtors and their joint venture. After debtors filed their chapter 7 petitions, Rogers settled the action and was paid $500,000 by Camico Mutual Insurance Co., Williams & Brown's insurance

**[*5]** found debtors liable to Rogers for more than $700,000 in connection with the accounting. The remaining causes of action[11] were set for trial on October 17, 2005, which did not commence due to debtors' Chapter 7 filings. GEAR also asserted a counterclaim that is still pending.

Because the alter ego claims against Mosesian were unresolved, **[*6]** Mosesian began to take steps to minimize his liability to Rogers.

### The Pre-Petition Settlements With the Debtors

Mosesian first entered into settlement agreements with the debtors prior to their Chapter 7 filings. Mosesian believed, or at least hoped, that the alter ego claims would be property of the prospective bankruptcy estates. Mosesian agreed to pay the debtors $145,000 in return for settlement of any and all of their claims against him. A condition to consummation, however, was the entry of a court order finding that the releases contained in the settlements would protect Mosesian.

### The Removal of the Kern County Action

After the bankruptcies were filed, Mosesian sought to enforce the settlements with the debtors by removing the Kern County Action to the bankruptcy court. However, the court remanded the action to state court and granted Rogers' motion for relief from stay to allow the Kern County Action to proceed.

### The Adversary Proceedings

Mosesian also commenced an adversary proceeding in each of the two bankruptcy cases, against Rogers, the trustees, and others seeking declaratory relief that the alter ego claims asserted in the Kern County Action against him were property of the **[*7]** two bankruptcy estates and were settled upon the payment of $145,000. Thus, the issue of whether the alter ego claims were property of the bankruptcy estates was squarely before the bankruptcy court. The defendants moved to dismiss.

At a hearing on July 26, 2006, the bankruptcy court examined the complaint in the Kern County Action and found that "the claims that Rogers asserts in its state court action are individual, particular, and specific to Rogers" and granted its motions to dismiss. The bankruptcy court further noted that even if its ruling was incorrect, the alter ego claims were not brought by the proper party which would be the bankruptcy trustees. Therefore, the court also granted the trustees' motions to dismiss.

### The Compromise

Prior to the bankruptcy court's hearing and decision on the motions to dismiss, the trustees and Rogers disputed whether the alter ego claims and "other claims[12]" were property of the bankruptcy estates. The trustees and Rogers were also wary of duplicating efforts if they each pursued their respective claims against Mosesian. Specifically, the trustees were concerned that they would be collecting money that would in large part go right back to Rogers, **[*8]** which had asserted a substantial claim in both estates.

---

carrier. Camico received a first-position lien on the Kern County Action. Camico then commenced an action against the debtors, Mosesian, and Penrose for indemnity and asserted alterego causes of action against Mosesian and Penrose.

[11] The remaining causes of action against Mosesian include fraud, breach of fiduciary duty, conversion and form alter ego allegations. Hereinafter, collectively referred to as the "alter ego claims."

[12] As discussed _infra_ the record does not provide much guidance as to what the "other claims" may be.

Rather than litigate over ownership of the various claims, the trustees agreed that Rogers would pursue Mosesian on all claims, including those that arose because of the filings (defined in the settlement agreement as the "Trustees' Causes of Action"). In exchange, Rogers agreed to pay an immediate deposit of $30,000 to each estate and 5% of the gross recovery that exceeded $1.2 million from any judgment obtained in any court, to be equally divided between the two estates.[13]

The trustees moved for authority to enter into the compromise.[14] Mosesian and NBC objected to the compromise, contending it was a sale disguised as a compromise for the purpose of preventing overbids. NBC maintained that it had a security interest in the estates' causes of action and, therefore, was entitled to credit bid under *§ 363(k)*. Mosesian and NBC also objected on the ground that there was no evidence before the court that demonstrated the value offered by **[*9]** Rogers was reasonable.

After hearing oral argument, the bankruptcy court took the matter under submission and issued Findings of Fact and Conclusions of Law approving the compromise. On reconsideration, the court found that even if the compromise was a sale, the requirements under *§ 363* were met.

### III. JURISDICTION

The bankruptcy court had jurisdiction pursuant to *28 U.S.C. §§ 1334* and *157(b)(1)*. We have jurisdiction under *28 U.S.C. § 158*.

### IV. ISSUES

1. Whether the court erred in finding that the assignment of the Trustees' Causes of Action did not constitute a sale?

2. Whether the court erred in finding that even if the compromise was a sale, all the requirements of a sale were met and no overbidding was required?

3. Whether the court abused its discretion in approving the trustees' settlement with Rogers pursuant to *Rule 9019*?

### V. STANDARDS OF REVIEW

The panel reviews a bankruptcy court's order approving a trustee's application to compromise a controversy for abuse of discretion. *In re A & C Props., 784 F.2d at 1380*. **[*10]** The reviewing court must "determine whether the settlement entered into by the trustee was reasonable, given the particular circumstances of the case." *Id. at 1381*.

Sales under *§ 363* are reviewed for abuse of discretion. *Moldo v. Clark (In re Clark), 266 B.R. 163, 168 (9th Cir. BAP 2001)*.

We review the denial of a motion for reconsideration for abuse of discretion. *In re Weiner, 161 F.3d 1216, 1217 (9th Cir. 1998)*.

### VI. DISCUSSION

---

[13] The Settlement Agreement reflects the date of "May__, 2006," but was not signed by the parties.

[14] The motion was noticed for June 21, 2006, on shortened time. A hearing was held and the bankruptcy court authorized further briefing and continued the hearing until August 30, 2006.

ES 754    ES 754    EXHIBIT 5, PAGE 754    ES 754

This appeal involves the overlap of *§ 363* and *Rules 6004* and *9019(a)*.

When examining a compromise pursuant to *Rule 9019*, it is necessary to distinguish between a true settlement and the sale of estate property. "[T]he disposition by way of 'compromise' of a claim that is an asset of the estate is the equivalent of a sale of the intangible property represented by the claim, which transaction simultaneously implicates the 'sale' provisions under *section 363* as implemented by *Rule 6004* and the 'compromise' procedure of *Rule 9019(a)*." *Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.), 292 B.R. 415, 421 (9th Cir. BAP 2003)*(citations omitted). However, not "every compromise of a bona fide controversy presented to a bankruptcy court **[*11]** under *Rule 9019* must pass muster as a sale under *§ 363*." *Id. at 422 n.7*.

The standards for approving a compromise are well settled. "In determining the fairness, reasonableness and adequacy of a proposed compromise, a bankruptcy court must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expenses, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premise[s]." *Id. at 420*. (citation omitted). Additionally, "a bankruptcy court is obliged to consider, as part of the 'fair and equitable' analysis, whether any property of the estate that would be disposed of in connection with the settlement might draw a higher price through a competitive process and be the proper subject of a section 363 sale." *Id. at 422*.

### A. Analysis of the Compromise: True Settlement or Sale?

"By its very nature, a settlement resolves adversarial claims *prior* to their definitive determination by the court, whereas a 'sale' effects a '[t]ransfer of ['the title. . .'] [to] property **[*12]** for a consideration." See *Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 49 (1st Cir. 1998)*(emphasis in original). The settlement of conflicting claims to property is not the equivalent of a sale when there has been no determination of whether the property was property of the estate. *In re Fidelity Am. Fin. Corp., 43 B.R. 74, 77 (Bankr. E.D. Pa. 1984)*. On the other hand, causes of action owned by the trustee are intangible items of property of the estate that may be sold. *Lahijani v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 287 (9th Cir. BAP 2005)*.

### 1. The Alter Ego Claims: No Dispute over Whether they Were Property of the Estates After Court Ruled On the Motions to Dismiss

Any dispute over whether the alter ego claims were property of the estates was resolved on July 26, 2006, prior to the hearing on the compromise. When ruling on Rogers' motions to dismiss, the bankruptcy court found that the claims Rogers asserts in its state court action are individual, particular, and specific to Rogers. When ruling on the trustees' motions to dismiss, the bankruptcy court found "as the court has concluded that the state court claims are not property of **[*13]** the bankruptcy estate, it must, therefore, lack jurisdiction." The bankruptcy court granted all motions to dismiss without leave to amend.

Generally, an order granting a motion to dismiss without leave to amend is a final order. *Lopez v. City of Needles, Cal., 95 F.3d 20, 22 (9th Cir. 1996)*(a dismissal without leave to amend is final); *Grover v. Riggsby (In re Riggsby), 745 F.2d 1153, 1154 (7th Cir. 1984)*(a bankruptcy court's grant of a motion to dismiss an adversary proceeding is a final order). Although the orders on the motions to dismiss were not part of the record on appeal, at minimum, the law of the case doctrine would apply. Under this doctrine, when the court decides upon a rule of law - for example, that the alter ego claims were not property of the estates - that decision should continue to govern the same issues in subsequent stages of the same case. "[A] court is ordinarily precluded from reexamining an issue previously decided by the same court . . . in the same case." *Wiersma v. Bank of the W. (In re Wiersma), 483 F.3d 933, 941 (9th Cir. 2007)*.

On reconsideration, the bankruptcy court essentially acknowledged that there was no longer a dispute over the ownership of the  **[*14]** alter ego claims in light of its prior ruling. Thus, at the time the hearing on the compromise took place, there was nothing for Rogers and the trustees to settle in connection with the alter ego claims. Cf. *Mickey Thompson, 292 B.R. at 421 n.5* (noting that while the settlement might have met the standards of A & C Properties when it was agreed upon and when the motion was filed, the trustee's post-agreement departure from the overbid procedures meant the compromise failed to meet the fair and equitable standards); *Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3rd Cir. 1996)*(finding that a trustee did not breach settlement agreement by informing the court of changed circumstances that would warrant withdrawal of trustee's support).

## 2. "Other Claims:" No Evidence They Were Property of the Estates

After acknowledging that it had already decided whether the alter ego claims were estate property, the bankruptcy court noted at the hearing on reconsideration that the trustees may hold other claims. The court further stated that because the estates and Rogers agreed that Rogers may pursue these claims, this resolves a dispute between Rogers and the estates about who owns the claims. The  **[*15]** record does not support this conclusion.

The record does not provide much guidance as to what the "other claims" may be. If the "other claims" were those involved in the Kern County Action, any dispute over whether they were property of the estates was resolved in the context of the motions to dismiss. Moreover, at the hearing for the approval of the compromise, Rogers' attorney characterized the so-called dispute with the trustees over the "other claims" as a battle over how to define, or characterize, certain claims. For example, the attorney expressed concern that in the Kern County Action, Mosesian would take the position that the fraud, conversion or breach of fiduciary duty claim cannot be pursued by Rogers because it is "really a fraudulent transfer." He further argued that the trustees and Rogers don't want to "argue over how to define - not who owns, but who wants to define the cause of action that is being asserted in the Kern County trial. And that's what's being compromised[.]" (emphasis added). How to "define" a breach of fiduciary duty claim versus a fraudulent transfer claim is well settled and cannot properly be characterized as a bona fide controversy.

Accordingly, the  **[*16]** record before us raises more questions than it answers in connection with the "other claims" because the trustees neither identify the "other claims" nor evaluate them pursuant to the factors set forth in A & C Properties. We remand to the bankruptcy court to determine what the "other claims" are and whether settlement of them is in the best interests of the estate.

## 3. The Assignment of the Trustees' Causes of Action Constitutes a Sale

The trustees assign the Trustees' Causes of Action in paragraph 3 of the settlement.[15] The Ninth Circuit does not prohibit such assignments. *Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774 (9th Cir. 1999)*. It is undisputed that the Trustees' Causes of Action are property of the estates and the bankruptcy court acknowledged that the settlement agreement made clear that causes of action that arose upon the filing, such as preferential or fraudulent transfers, are general causes of action belonging to the two bankruptcy estates.

---

[15] Paragraph 3 provides: "Blanco and Kavanagh on behalf of the Chapter 7 estate [sic] of GEA and GEAR shall assign the Trustees' Causes of Action held by the two Chapter 7 estates against Peter Mosesian . . .,  **[*17]** and other entities related to GEA and GEAR or related to or controlled by Peter Mosesian . . . . This assignment is to be treated in its broadest possible sense to include any and all causes of action held by either of the two bankruptcy estates against any entity that arise only upon the filing and as a result of the filing of the two Chapter 7 cases of GEA and GEAR."

The trustees also purport to assign general causes of action (in paragraph 4) of the agreement in the event any court determines that a Rogers' Cause of Action is not particular, but general. However, this assignment appears unnecessary in light of the bankruptcy court's ruling on the motions to dismiss.

A review of the agreement also demonstrates that the assignment of the Trustees' Causes of Action is the equivalent of a sale. Not only are the Trustees' Causes of Action property of the estates, but the trustees relinquished all control over those causes of action to Rogers. *Healthco Int'l, Inc., 136 F.3d at 49* (holding that "a 'sale' effects a '[t]ransfer of ['the title. . .'] [to] property for a consideration.") (citation omitted). At the same time, Rogers took all the risks of ownership because the trustees made no **[\*18]** representations regarding the existence or validity of any such causes of action, yet Rogers was willing to pay for them. Notably, Rogers is also not giving up any portion of its claim against the estates. Thus, this aspect of the compromise involves a sale subject to *§ 363(b)*. See *Lahijani, 325 B.R. at 287* (noting that causes of action owned by the trustee are intangible items of property of the estate that may be sold); see also *In re Telesphere Commc'ns, Inc., 179 B.R. 544 (Bankr. N.D. Ill. 1994)*(settlement of cause of action held by bankruptcy estate is plainly equivalent of "sale" of that claim under *§ 363(b)* subject to judicial approval where there is objection to settlement; there is no difference in effect on bankruptcy estate between sale of claim by way of assignment to third party and settlement of claim with adverse party).

## B. The Fair and Equitable Analysis

The bankruptcy court could only approve or deny the compromise as a whole. "The court must find that the compromise is fair and equitable." *A&C Props., 784 F.2d at 1381*. "[W]hile a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter, the trustee 'has the burden of persuading **[\*19]** the bankruptcy court that the compromise is fair and equitable and should be approved.'" Id. The trustees failed to carry their burden in these cases.

## 1. Issues Regarding the Compromise

The bankruptcy court's analysis of the factors set forth in A&C Properties only pertained to the dispute over whether the alter ego claims in the Kern County Action were property of the estates. The trustees apparently were content to rest upon the conclusory statements in their declarations and supplemental declarations, filed in support of the compromise, rather than submit any evidence.

The record contains no evidence regarding the Trustees' Causes of Action or a discussion of the *A&C Properties* factors in relation to those claims, which is required under *Mickey Thompson, 292 B.R. at 420-21*. The evidence in the record did not identify the Trustees' Causes of Action which were being assigned nor weigh the likelihood of recovery. There was no cost-benefit analysis of the merits of pursuing or assigning the Trustees' Causes of Action. In short, there was no evaluation at all, making it impossible to determine whether the price to be paid by Rogers for the opportunity to pursue the Trustees' Causes of Action **[\*20]** was reasonable under the circumstances.

Moreover, the potential value of the 5% premium was not analyzed by the trustees. Rogers is not giving up any portion of its claims against these estates. More troubling is the lack of any evidence regarding GEAR's counterclaim against Rogers in the Kern County Action which is an asset of GEAR's estate and possibly an offset to Rogers' claims.

There was also no evidence regarding the probability of Rogers obtaining a judgment(s) in excess of $1.2 million or, more importantly, collecting such a judgment(s)in order to place a value on the 5% premium offered by Rogers.[16] Although Mosesian may have assets, the trustees presented no analysis of what those assets might be or the likely recovery.

---

[16] Since the accounting award to Rogers, even with accrued interest, was only worth about $1 million, an argument could be made that the 5% premium was worthless.

The aspect of delay should also have been considered. No evidence was offered to show how long the estates would remain open before receiving the 5% premium.

Lastly, the interests of the creditors, although possibly hard to ascertain in these cases, was not discussed. The handful of creditors that exist **[*21]** — save Rogers, NBC and Mosesian — have remained silent. Although Rogers has large claims in both estates, its support cannot predominate over the interests of the creditors as a whole.

The trustees failed to present any evidence to substantiate their argument that the compromise was in the best interests of the estates. Therefore, the bankruptcy court abused its discretion in approving the compromise.

### 2. Issues Regarding the Sale

The bankruptcy court found that if the compromise was a sale, the sale requirements under *§ 363(b)* were met, notice was adequate, and no overbidding was required.

#### a. Notice

Mosesian and NBC challenge the notice given by the trustees because it did not mention the assets being sold. Mosesian and NBC received adequate notice of the compromise and the merits of their objections were heard by the bankruptcy court. Assuming the trustees mislabeled the motion, there is no resulting harm because the requirements of notice and a hearing pursuant to *Rules 6004* and *9019* are the same.

#### b. Bidding

The main issue with respect to the sale of estate assets is whether the trustees obtained the best possible price in light of their fiduciary duty to maximize the value to the estates. **[*22]** A sale that is well advertised and subject to overbids is usually the preferred method to achieve the best possible price. However, the guiding principle is that the "court's obligation in section 363(b) sales is to assure that optimal value is realized by the estate under the circumstances." *Lahijani, 325 B.R. at 288-89* (emphasis added).

The bankruptcy court concluded that even if compromise did involve the sale of estate property, no overbidding was required under the circumstances since Mosesian would not be bidding on the same thing as Rogers. However, the bankruptcy court did not recognize that assignment of the Trustees' Causes of Action involved a sale of estate property. Whether sold to creditors such as NBC or Rogers, or a defendant such as Mosesian, the rights sold would have been identical. Compare *Lahijani, 325 B.R. 282* (cause of action was being sold to present/potential defendant over creditors' objection). Thus, although the bankruptcy court considered the possibility of overbids and found that they were not required, its analysis did not recognize that the compromise involved the sale of estate property, which had a value that could be maximized by overbid. *Mickey Thompson, 292 B.R. at 422* **[*23]** ("The possibility that someone else may be willing to pay a higher price triggers the prospect of an auction that could yield an even higher price.").

Although the bankruptcy court has discretion whether to impose formal sale procedures, it abused its discretion under the circumstances. Mosesian was interested in bidding on the avoidance actions. Setting up formal bidding procedures and allowing the bidding process to play out would have helped assure that the highest and best price was received for the benefit of the silent creditors.

#### c. NBC's Rights, if any, to Credit Bid Under 363(k)

NBC argued that it had the right to credit bid. The bankruptcy court did not acknowledge NBC as an objecting party and did not discuss or determine what rights, if any, NBC had to credit bid. On remand, the bankruptcy should determine whether NBC has any right to credit bid and, if so, what impact that right has on the compromise. *In re Hung Tan Pham, 250 B.R. 93, 99 (9th Cir. BAP 2000)*(finding that an appellate court may remand when there is an absence of findings of fact and conclusions of law that prevents review on appeal)(citation omitted).


## VII. CONCLUSION

In sum, the bankruptcy court abused its discretion **[*24]** by approving the compromise without any evidence to establish, at minimum, the factors set forth in *A & C Properties*. The court also did not properly analyze the settlement as a sale of estate assets. On this record, the trustees failed to meet their burden of showing that the compromise was "fair and equitable." On remand, the bankruptcy court should review the compromise in light of the relevant criteria enumerated above in order to determine whether the compromise is in the best interest of the estates or sale criteria should be imposed.

The order of the bankruptcy court approving the compromise is REVERSED. REVERSED AND REMANDED for further proceedings consistent with this memorandum decision.

---

End of Document

ES 759
ES 759
EXHIBIT 5, PAGE 759
ES 759

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **NOTICE OF UNPUBLISHED AUTHORITY** IN SUPPORT OF JOINT REPLY IN SUPPORT OF 11 U.S.C. § 363(M) FINDING RE: GREGORY A. PEPLIN will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 8, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **April 8, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

DEBTOR
JAMIE LYNN GALLIAN
16222 MONTEREY LN UNIT 376
HUNTINGTON BEACH, CA 92649

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 8, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>VIA PERSONAL DELIVERY:</u>
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
411 WEST FOURTH STREET, SUITE 5130 /
COURTROOM 5C
SANTA ANA, CA 92701-4593

<u>VIA EMAIL:</u>
DEBTOR
JAMIE LYNN GALLIAN
jamiegallian@gmail.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 8, 2025 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Bradford Barnhardt bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEBTOR JAMIE LYNN GALLIAN:** Christopher L Blank    chris@chrisblanklaw.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Aaron E DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Robert P Goe kmurphy@goeforlaw.com, rgoe@goeforlaw.com; goeforecf@gmail.com
   - **CHAPTER 7 TRUSTEE JEFFREY I GOLDEN (TR):** Jeffrey I Golden (TR lwerner@wgllp.com, jig@trustesolutions.net; kadele@wgllp.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF THE HUNTINGTON BEACH GABLES HOMEOWNERS' ASSOCIATION:** Brandon J Iskander biskander@goeforlaw.com, kmurphy@goeforlaw.com
   - **ATTORNEY FOR TRUSTEE JEFFREY I GOLDEN (TR):** Eric P Israel eisrael@DanningGill.com, danninggill@gmail.com; eisrael@ecf.inforuptcy.com
   - **INTERSTED PARTY COURTESY NEF: Shantal Malmed**    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
   - **INTERESTED PARTY COURTESY NEF: Shantal Malmed**    , cheryl.caldwell@gmlaw.com
   - **ATTORNEY FOR CREDITOR AND PLAINTIFF HOUSER BROS. CO. and CREDITOR HOUSER BROS. CO. DBA RANCHO DEL REY MOBILE HOME ESTATES:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
   - **ATTORNEY FOR DEFENDANT RANDALL L NICKEL:** Mark A Mellor mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
   - **INTERESTED PARTY COURTESY NEF:** Valerie Smith claims@recoverycorp.com
   - **U.S. TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

4903-7392-5900, v. 1

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

FILED & ENTERED

APR 10 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

In re:

Jamie Lynn Gallian,

Debtor.

Case No.: 8:21-bk-11710-SC

CHAPTER 7

**ORDER RE:**

**(1) CHAPTER 7 TRUSTEE'S MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE [DK. 538];**

**(2) TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION [DK. 539]; AND,**

**(3) GOOD FAITH FINDING PURSUANT TO SECTION 363(M).**

On March 4, 2025, the Court held hearings on the (1) *Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turn Over Manufactured Home And Authorizing Issuance Of Writ Of Assistance,* filed January 31, 2025 [Dk. 538] ("Turnover Motion"), and the (2) *Trustee's Motion To Authorize Sale Of*

1   *Manufactured Home Currently Located At 16222 Monterey Lane, Space 376,*

2   *Huntington Beach, CA 92649, Decal No. LBM1081, Free And Clear Of Liens And*

3   *Homestead Exemption* filed January 31, 2025 [Dk. 539] ("Sale Motion") (collectively,

4   "Motions"). Prior to the March 4, 2025, hearing, in response to the tentative rulings,

5   Debtor filed a *Motion to Stay Pending Appeal* on March 3, 2025 [Dk. 562]. Appearances

6   for the March 4, 2025, hearing are as noted in the record.

7           During the March 4, 2025, hearing, the Court permitted an auction to occur with

8   respect to the manufactured home located at 16222 Monterey Lane, Space 376,

9   Huntington Beach, CA 92649, Decal No. LBM1081 ("Property"), and an overbidding

10  party, Mr. Gregory A. Peplin ("Mr. Peplin" or "Buyer"), was the successful bidder. On the

11  evidence presented before it, however, the Court was not prepared to make a good faith

12  finding with respect to Mr. Peplin. The Court permitted the Chapter 7 Trustee to submit

13  a supplemental declaration in support of his request for a good faith finding under §

14  363(m) for the Court's review. Accordingly, the Declaration of Gregory A. Peplin was

15  filed on March 7, 2025 [Dk. 566], attesting to his good faith status to support a good

16  faith finding under 11 U.S.C. § 363(m). On March 12, 2025 [Dk. 568], Debtor filed an

17  Opposition to Mr. Peplin's declaration. The Opposition asserts that a single broker (who

18  was also the stalking horse bidder), Galaxy Homes LLC ("Galaxy") represented the two

19  potential buyers appearing at the March 4, 2025, sale auction. Although this Court

20  believed that the objection raised by Debtor was unmeritorious, instead of sustaining or

21  overruling the objection, the Court issued an order on March 13, 2025 [Dk. 569],

22  vacating the auction results and setting a new auction date of March 27, 2025. The

23  Trustee conducted a new auction at that time,[1] with appearances as noted in the record.

24  Mr. Peplin was again the successful bidder. The Court then set an evidentiary hearing

25  on the matter of the section 363(m) good faith purchaser determination, which was held

26

27

28  _____

[1] At the March 27, 2025, auction, Mr. Peplin was no longer represented by Galaxy Homes, but instead
was represented by a different broker, Lori Alvarez of Real Estate Resolved. *See* Declaration of Lori
Alvarez filed 3/24/25 [Dk. 580].

on April 10, 2025.[2]  Appearances for the April 10, 2025, hearing are as noted in the record.

The Court, having considered the various Motions, all relevant pleadings, including the Motion for Stay Pending Appeal (which is denied by separate order but is incorporated into this Order by reference), the docket as a whole including those of the adversary proceedings of this case, and for the reasons set forth, finds good cause to GRANT the Motions for Sale, Turnover, and for a good faith purchaser finding under 11 U.S.C. § 363(m).

Following an evidentiary hearing held on April 10, 2025, on the sole subject of addressing the Trustee's request to consider and decide the good faith purchaser status of the Buyer, the Court finds that the successful purchaser was a good faith purchaser and finds that the factual and legal requirements of section 363(m) are met. The objections presented to the § 363(m) determination by Debtor are overruled.

The Trustee and the Buyer were required to present competent evidence of the status as a good faith purchaser of the Buyer, and they have met and exceeded their burden. Debtor has presented no evidence of her own, although she was permitted the opportunity to examine all declarants during the § 363(m) evidentiary hearing. She examined one declarant. Debtor has not disturbed Trustee's and Buyer's demonstrations of good faith.

## I.    Preliminary Statement

Before the filing of this voluntary Chapter 7 bankruptcy proceeding, Jamie Lynn Gallian ("Debtor" or "Gallian") engaged in certain fraudulent conduct with respect to the placement of a number of fraudulent liens on the Property in an attempt to shelter the Property from her creditors. She also submitted to this Court numerous false sworn statements under penalty of perjury throughout this case.

---

[2] § 363(m) provides that "[t]he reversal or modification or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

Debtor has the right to assert her homestead, which was awarded to her by the Bankruptcy Court. Her current problem is, by a combination of her own fraud and the Trustee's actions to avoid the fraudulent liens she originally placed on the mobile home, she put into motion the Trustee's duty to recover the fraudulent lien (in the amount of $225,000), the recovery of which by operation of law is positioned in front of (higher in priority) her homestead rights.

This result is seen often in bankruptcy courts, as the Bankruptcy Code and its recovery and avoidance statutes, specifically sections 551, 548 and 522(g)[3] *are designed to encourage debtors and others not to engage in fraudulent conduct before they file their bankruptcy petition.*[4] These sections of the Bankruptcy Code are also designed to provide recovery to the estate by a chapter 7 trustee's ability to avoid fraudulently or illegally placed liens onto property prior to the filing of the bankruptcy petition.

Additionally, when Debtor placed the fraudulent lien totaling $225,000[5] on the Property, purportedly held by the LLC, she also gave various family members and friends more liens on top of the $225,000 lien. These liens encumbered the Property without legitimate obligations and were avoided at considerable expense by the Trustee.[6]  Ironically in this matter, Debtor's opposition and collateral attack of the earlier judgment is (as the Court interpreted it) "I know that it was a fraudulent lien, and even though I swore under oath to the value of $225,000 of the lien on several occasions,

---

[3] Based on the plain language of 11 U.S.C. § 551, any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. Further, Section 522(g) prohibits her from claiming an exemption in the equity in the Property which she voluntarily transferred but which Trustee recovered.
[4] It usually works like this: a potential individual debtor asks their potential bankruptcy lawyer "[w]hy can't I put a fake lien on my house in favor of my son or cousin so that the bankruptcy trustee won't sell my home?"  The lawyer (at least a competent one) explains "[B]ecause if you do this, and the trustee avoids the lien, you might have your possible homestead subordinated to the avoided lien amount, whether the lien was actual or not. Don't do it."
[5] Debtor originally scheduled the obligation in favor of J-Pad as $175,000; she subsequently amended her schedules to falsely increase the amount to $225,000.
[6] Debtor's discharge was denied after a trial by a decision issued May 23, 2023, in which the Court found that Debtor had concealed her equity in the Property by issuing fraudulent liens, including the $225,000 J-Pad lien. *See* Adv. No. 8:21-ap-01097-SC, Dk. 81. That decision was affirmed on appeal and is now final.

since it was a fake lien, the Trustee recovered nothing." This Court notes that "nothing"

would have resulted in a windfall payment of $225,000 to Debtor's company J-Pad LLC,

of whom Debtor was the sole member.

      The Court also notes that Debtor has maintained her ruse as to the validity of the

lien up to, and even after, the Court avoided the fraudulent lien.

      In summary, through costly adversary proceedings in this case, the Chapter 7

Trustee avoided, recovered and preserved both the fraudulent transfers of the Property

and Debtor's fraudulent liens for the benefit of the estate. No party appealed those

judgments, and they are final. The entirety of the opposition filed by Debtor on the

present issue of the sale is a collateral attack on the previous avoidance actions.[7]

      The Trustee now seeks to sell the Property and obtain its turnover, despite

Debtor's objections. Although Debtor has, until this point, always maintained that the at-

issue liens were legitimate, she now apparently contends that the liens lacked value.[8]

Therefore, Debtor argues that, since the liens lacked value, Trustee cannot sell the

Property over her objection. However, such a position would reward Debtor's fraudulent

conduct, undermining the Bankruptcy Code's provisions that are designed to prevent

such abuses and at the same time protect the interests of honest debtors and creditors

alike.[9] In other words, Debtor's position is that a debtor, pre-petition, may place

fraudulent liens on her property to obfuscate any equity, and after she is caught and a

trustee avoids, recovers and preserves those fraudulent liens (in whatever amount they

---

[7] The Order on avoidance of the $225,000 lien is found at Adv. No. 8:23-ap-01064-SC, Dk. 79. The Order
specifically sets forth the recovered value of the $225,000, which cannot now be challenged by a
collateral attack in this proceeding.

[8] The Court observes that this attempted concession is being made by Debtor not to right her wrongs, but
to circumvent the consequences of having a lien avoided, recovered, and preserved by the Trustee for
the benefit of an estate. As set out in this Memorandum Opinion, this argument is (1) too clever by half,
(2) permits this Court to directly infer the intentional wrongdoing and bad faith of the Debtor (where the
earlier and common prevarications by the Debtor, until the last moment, have insisted that the lien in
question was legitimate), and (3) is an impermissible collateral attack on a final (un-appealed) judgment
of this Court.

[9] A central purpose of the Code is to provide individual debtors with a procedure to reorder their affairs
and make peace with their creditors, but the Bankruptcy Code limits this opportunity of a "fresh start" to
*honest* but unfortunate debtors. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

were recorded or asserted to be at the time), she can turn around and admit that they

were fraudulent and worthless. This is the argument that the trustee has not recovered

anything of value. What's missing is that the transferee (her own company) of a

fraudulent lien would have been paid $225,000 in the event of a sale. In the end,

Debtor's counsel's argument is, she can commit fraud with impunity. Of course this is a

collateral attack on the specific, un-appealed, and final judgment entered by the Court

assigning value to the avoided lien.

## II. General Relevant Background

Who is this Debtor? Her voluntary chapter 7 case was commenced on July 9,

2021 ("Petition Date"). This case is atypical given the number of disputes which have

arisen surrounding Debtor's residence in what should have been a simple, straight

forward case and, which as noted throughout this opinion, have resulted in the denial of

Debtor's discharge.[10]

In her initial filing, Debtor scheduled an interest in the Property (a mobile home)

at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649. She valued the

Property at $235,000, stating: "title held by Debtor's single member LLC – J-Sandcastle

Co., LLC," with a lien on it held by J-Pad, LLC in the amount of $175,000, which amount

was later increased to $225,000. **Debtor subsequently amended her schedules or

petition no less than 13 times.[11]** After significant litigation involving objections to her

homestead, and appeals, Debtor now possesses an allowed homestead in the amount

of approximately $600,000 on the Property.

On October 18, 2021, Creditor Houser Bros. Co. dba Rancho Del Rey Mobile

Home Estates ("Houser Bros.") initiated an adversary proceeding, Adv. No. 8:21-ap-

01097-SC, against Debtor asserting claims under 11 U.S.C. §§ 523(a)(2) and (a)(6) and

---

[10] The disputes are, for the most part, in furtherance of Debtor's bid to keep the Property. For instance, Debtor has filed several motions to avoid the liens of Huntington Beach Gables Homeowners Association and of the Trustee, in place of J-Pad, a motion seeking to abandon the Estate's interest in her residence, an application to compel Trustee to cancel his transfer title to the Property, a motion to convert her case, and several appeals. The Court equates Debtor's oppositions to the sale of the Property in the same vein.
[11] *See* dockets 15, 16, 17, 22, 37, 38, 39, 42, 72, 75, 94, 444, 468, and 519.

11 U.S.C. § 727.[12] The Court bifurcated the claims and conducted a trial on the § 727 claim. After a trial, which occurred on April 26, 2023, and having considered post-trial briefing, the Court issued a decision on May 23, 2023, as Docket No. 81 in Adv. No. 8:21-ap-01097-SC, **denying Debtor's discharge ("727 Decision")**. In the 727 Decision, the Court specifically found as follows:

> Additionally, facts were presented to the Court demonstrating that Defendant further concealed her equity in the property through the granting of liens to her business entities and family members, which liens existed during the relevant time period. For example, in late 2018, Defendant also executed a promissory note and security agreement on the mobile home by and between two entities that she managed, JSandcastle and J-Pad, LLC. ("J-Pad"). J-Sandcastle was the borrower and J-Pad the lender. The agreement required J-Sandcastle to pay J-Pad $225,000 for a purported loan; however, J-Pad did not loan any money to J-Sandcastle. Trial Transcript, Dk. 72, Pg. 66. Defendant herself made the loan to J-Sandcastle, though the loan was initially in the amount of $175,000 Defendant did not fund the balance of the $225,000 loan until approximately 6 months later. Trial Transcript, Dk. 72, Pg. 65-66.10 None of the foregoing information regarding the timing of funding, or source of funding, was reflected in the executed documents. In her petition, Defendant scheduled J-Pad as a secured creditor, continuing the ongoing concealment of her true interest in the loan. Additionally, within the year prior to the petition, liens in favor of Defendant's two adult sons, Steven and Brian Gallian, were placed on the property, despite the fact that neither had paid any consideration. Trial Transcript, Dk. 72, Pg. 72-73.
>
> ….
>
> As noted previously, J-Pad was the holder of a $22[5],000 promissory note. Defendant herself executed the promissory note on J-Pad's behalf, knowing full well of the asset. It is this Court's view that $225,000 is a significant amount of money, and Defendant's failure to properly schedule her interest in J-Pad, the note and lienholder of a significant asset, is a material, false oath made knowingly and fraudulently. So too was Defendant's failure to

---

[12] The Court may take judicial notice of its own records in the same case. *See In re Abbatiello*, 484 B.R. 655, 658 (Bankr. M.D. Pa 2013) ("A bankruptcy judge may take judicial notice of his or her own docket"); *In re Martell*, 349 B.R. 233, 234 n.1 (Bankr. D. Idaho 2005) ("[T]he Court takes judicial notice of its file in this matter."). Further, the Court's rulings with respect to Debtor's behavior in connection with the Property, which form the basis for the 727 Decision, constitute law of the case. Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.) (cert. denied 508 U.S. 951 (1993)).

schedule a value for JPad, who held a significant asset in the form of the aforementioned note and lien on the mobile home.

The foregoing, coupled with the evidence presented by Plaintiff of Defendant's other glaring omissions and false oaths, are sufficient to demonstrate that Plaintiff is entitled to judgment against Defendant on its § 727(a)(4) cause of action.

727 Decision, pgs. 11-12, 16. Debtor appealed this decision, which was affirmed by the United States District Court on July 31, 2024. *See* Adv. No. 8:21-ap-01097-SC, Dk. 131. After the denial of her discharge, Debtor sought to dismiss her case by a motion filed June 27, 2023 [Dk. 345], which was denied by an order entered July 26, 2023 [Dk. 368].

On June 30, 2023, Trustee commenced an adversary proceeding, Adv. No. 8:23-ap-01064-SC, by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment* ("Avoidance Complaint") against Ronald J. Pierpont, J-Pad LLC, J-Sandcastle, LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E.J. Gallian (collectively, "Defendants"). Trustee recovered title to the Property (which pre-petition she had placed not in her name, but of her LLC) and avoided, recovered and preserved all of the consensual liens. The final judgment as to the J-Pad lien issued in Trustee's adversary on May 10, 2024, provides as follows:

The transfer to the Defendant of a lien on and security interest in the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB (the "Property") reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018 and lien on the Property in the amount of $225,000 in favor of the Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian.

See Adv. No. 8:23-ap-01064-SC, Dk. 79.

Following the recovery of the Property (from J-Sandcastle, LLC) along with the avoidance, recovery, and preservation of the consensual liens on the Property, Trustee

filed an application to retain a broker to market and sell the Property on June 1, 2024 [Dk. 395], which Debtor opposed [Dks. 401-403]. The motion was granted by an order entered September 5, 2024 [Dk. 431]. Of note, however, at the hearing on Trustee's application to retain a broker, Debtor admitted to listing the Property on her own, which resulted in the Court's issuance of an order to show cause for contempt on September 12, 2024 [Dk. 440], which was discharged after a hearing held on November 5, 2024, when Debtor removed her broker.

In addition, shortly after the Court's approval of Trustee's broker's employment, Debtor filed a motion to convert the case to Chapter 13 on September 11, 2025 [Dk. 438]. That motion was denied by an order entered October 29, 2024 [Dk. 491].

Debtor subsequently amended her schedules again on December 3, 2024 [Dk. 519] and asserted an exemption in the "pad" underneath the mobile home, to which Houser Bros. objected on January 2, 2025 [Dk. 529]. Houser Bros.' objection was sustained by an order entered February 20, 2025 [Dk. 555].

On January 31, 2025, the Turnover Motion and the Sale Motion were filed [Dks. 538 and 539]. The Court conducted hearings on both motions on March 4, 2025, and then, after noting possible issues with respect to the dual representation of the two competing buyers[13], vacating the auction as discussed above, and conducted another auction on March 27, 2025. At the March 27, 2025, auction, Mr. Peplin appeared, again overbid on the Property, and became the successful buyer. He was represented by a broker, Lori Alvarez of the real estate brokerage RE Resolved.

---

[13] The Court notes that the original auction was vacated by the Court, *sua sponte*, and re-performed on March 27, 2025, not because of any actual problem observed by the Court **but only in an abundance of caution regarding a disclosure that both active bidders were represented by the same real estate broker. The Court observed that there might be an appearance of impropriety (although the Court found no impropriety) and decided that the auction should be held again with no dual representation present.** It is noted that the Court finds no issues arising from that alleged dual representation. This matter is further discussed with this Court's analysis of the Fifth Circuit Court of Appeals' compelling decision, *Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019), which addressed almost exactly this situation. The Court also notes that the final bid for the Property was over the amount of the listed value of the Property by Debtor in her schedules.

### III.    Discussion – Summary of the Positions Presented

By these Motions, Trustee seeks approval of a sale under § 363 and turnover of the Property under § 542, free and clear of all liens and interests, including Debtor's $600,000 homestead.[14] Trustee asserts that there are no known encumbrances against the Property that have not been avoided, recovered, and preserved for the benefit of the Estate. Trustee asserts that any involuntary liens reflected by Abstract of Judgments were not properly perfected, and thus do not prevent the sale (and in any event are junior to the avoided consensual liens). Trustee further asserts that because all consensual liens have been avoided and recovered, the Estate will realize approximately $301,011.14 from the sales proceeds on account of such liens. With the result of the auction approved by this order, Debtor's homestead exemption is out of the money and most likely will not be paid unless there are sufficient funds. If any funds are available on account of her homestead after payment of the avoided consensual liens, they will be distributed in accordance with the Bankruptcy Code's priority system.

Debtor's opposition contends that Trustee may not sell the Property because she has not consented to such sale and the proposed sale price is insufficient to fully pay her allowed homestead. Debtor further asserts that it is indisputable that J-Pad never lent any money to anyone to support the imposition of a lien on the Property. Therefore, Debtor argues Debtor may benefit from her and that the J-Pad lien the Trustee holds is worth $0.

As set forth below, Debtor is incorrect that Trustee may not sell the Property. Her homestead exemption is junior in priority to the avoided consensual liens.[15] Further, to the extent Debtor claims that the fraudulent nature of the J-Pad lien she granted

---

[14] The sale does not include the ground lease for the underlying space, which was rejected long ago, but Houser Bros. asserts that it has agreed to give any qualified buyer - but not Debtor, a new ground lease.
[15] Consensual liens have priority over exemptions. *See* Cal. Code Civ. P. § 704.850(a) ("The levying officer shall distribute the proceeds of sale of a homestead in the following order: (1) To the discharge of all liens and encumbrances, if any, on the property. (2) To the judgment debtor in the amount of any applicable exemption of proceeds pursuant to Section 704.720."); *see also In re Bunn-Rodemann*, 491 B.R. 132, 136 (Bankr. E.D. Cal. 2013) (noting that exemptions may be claimed "only against involuntary liens").

means that it cannot serve as a basis for Trustee's sale of the Property, this argument
also fails. Trustee avoided, recovered and preserved the J-Pad lien in the amount of
$225,000. Based on the plain language of 11 U.S.C. § 551, any transfer avoided under
11 U.S.C. § 548 is automatically preserved for the benefit of the Estate.[16] And, Section
522(g) prohibits her from claiming an exemption in the equity in the Property which she
voluntarily transferred but which Trustee recovered.[17]

As such, the recovered liens are senior to her allowed homestead exemption and
Trustee may sell the Property to realize such funds for the benefit of the Estate. Further,
as the Property is one that Trustee may sell, as described below, the Trustee is entitled
to turnover.

### A. Sale of the Property, Free and Clear of Liens

Under 11 U.S.C. § 704(a)(1), a trustee shall "collect and reduce to money the
property of the estate…."  Debtor's property is property of the Estate which Trustee may
sell.[18] Under § 363(b), the Court may authorize a trustee to "use, sell, or lease, other
than in the ordinary course of business, property of the estate," provided the movant
establishes the following: "(1) a sound business purpose exists for the sale; (2) the sale
is in the best interest of the estate, i.e., the sale price is fair and reasonable; (3) notice
to creditors [and interested parties] was proper; and (4) the sale is made in good faith."

---

[16] Section 551 reads: "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this
title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only
with respect to property of the estate."

[17] See *In re Bethea*, 275 B.R. 127, 129 (Bankr D.C. 2002) ("And, even if the exemption was claimed after
the avoidance, the exemption would be invalid. Under 11 U.S.C.S. § 522(g)(1)(A), the debtor could only
exempt a recovered lien if the transfer of the lien interest was not a voluntary transfer by the debtor. The
avoided lien remained an encumbrance in favor of the estate, thus reducing the equity subject to the
exemption.").

[18] *See e.g. In re Neal*, 424 B.R. 235,237 (Bankr. E.D. Mich 2010) (In discussing trustee's options to
administer property with avoided lien, the court noted trustee's option to sell under § 363(b) or enforce
trustee's rights as a lien creditor and when seeking to sell the property, trustee was acting as a trustee,
and not a lien creditor). Further, while there is a general prohibition against selling a fully encumbered
asset, trustee may rebut the presumption. In addressing whether to permit a carve-out, the court in *KVN
Corp. v. Green (In re KVN Corp.),* 514 B.R. 1, 5-8 (9th Cir. BAP 2014) set forth a 3-part test to rebut
presumption against trustee selling a fully encumbered asset). If applicable, this test is satisfied: (1)
Trustee is fulfilling the trustee's basic duties; (2) Trustee has demonstrated "a benefit to the estate; i.e.,
prospects for a meaningful distribution to unsecured creditors"; and (3) and Trustee has fully disclosed
the terms of the sale agreement to the bankruptcy court. *See KVN Corp.,* 514 B.R. at 8.

1    *In re Slates*, 2012 WL 5359489 (B.A.P. 9th Cir. Oct. 31, 2012) (unpublished) (citing *In re*

2    *Lionel*, 722 F.2d 1063, 1070 (2nd Cir. 1983); *In re Wilde Horse Enterprises, Inc.*, 136

3    B.R. 830, 841 (Bankr. C.D. Cal 1991)); *see also In re 240 North Brand Partners, Ltd.*,

4    200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr.

5    S.D.N.Y. 2012); *WBQ Ptnr. v. Va. Dep't of Med. Assistance Servs. (In re WBQ Ptnr.)*,

6    189 B.R. 97, 102 (Bankr. E.D. Va. 1995).  As further discussed herein, Trustee has

7    submitted adequate evidence that (a) a sound business purpose exists for the sale,

8    which is realizing the fraudulently concealed equity for the benefit of the Estate's

9    creditors; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and

10   reasonable, as demonstrated by not one, but two auctions; (3) notice to creditors [and

11   interested parties] was proper; and (4) the sale is made in good faith.

12        Under 363(f), "[t]he trustee may sell property under subsection (b) or (c) of this

13   section free and clear of any interest in such property" only if: (1) applicable non-

14   bankruptcy law permits sale of such property free and clear of such interest; (2) such

15   entity consents; (3) such interest is a lien and the price at which such property is to be

16   sold is greater than the aggregate value of all liens on such property; (4) such interest is

17   in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable

18   proceeding, to accept a money satisfaction of such interest. Trustee asserts, and has

19   provided evidence, that all known liens have been avoided.

20        **B.  Debtor's Homestead and the Avoided Liens**

21        None of Debtor's arguments pertaining to the assertion of her homestead, or the

22   fraudulent nature of the avoided liens, serve as a bar to Trustee's sale of the Property.[19]

23        Trustee successfully avoided the consensual liens on the Property, which were

24   recovered for the benefit of the Estate, and which take priority over Debtor's homestead

25   exemption. *See In re Roach*, 2019 Bankr. LEXIS 263 (B.A.P. 9th Cir. 2019); *see also In*

26

27   _____

28   [19] Debtor raised another argument recently, that a successful buyer was required to be eligible to hold a lease in the mobile home park. That is incorrect. First, anyone could purchase the mobile home at auction from the Estate; being allowed to have a lease in the mobile home park was not a condition of the sale. Second, and more ironically, Debtor herself never had a lease with the mobile home park.

1    re Bunn-Rodemann*, 491 B.R. 132, 134-35 (Bankr. E.D. Cal. 2013). Exemptions may be

2    claimed only against involuntary liens, such as judgments, attachments, and execution

3    liens, and then only if the procedures of section 522(f) are followed. *See In re Roach*,

4    2019 Bankr. LEXIS 263 (B.A.P. 9th Cir. 2019).[20]

5         Further, Debtor's argument that the value of the avoided lien is $0.00 is

6    misguided, inaccurate, and a collateral attack on a final judgment. As noted above, the

7    final judgment as to the J-Pad lien issued in Trustee's adversary on May 10, 2024,

8    provides as follows:

9         The transfer to the Defendant of a lien on and security interest in the
10        manufactured home located at 16222 Monterey Lane, Space #376, Huntington
          Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB
11        (the "Property") reflected by the secured promissory note and security agreement
          between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018
12        and lien on the Property in the **amount of $225,000** in favor of the Defendant are
          avoided and preserved for the benefit of the Debtor's estate in the name of
13        Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn
          Gallian.
14

15    See Adv. No. 8:23-ap-01064-SC, Dk. 79 (**emphasis added**). Thus, $225,000 in equity

16    was avoided and preserved. Debtor's admission now that the lien is fraudulent does not

17    help her.[21]   As set forth above, but merits repeating, Debtor's opposition and collateral

18    _____

19    [20] *See also Polk v. Cty. of Contra Costa*, 2014 U.S. Dist. LEXIS 111713, at *22 (E.D. Cal. Aug. 11, 2014)
      ("Case law is clear that a homestead exemption is not superior to a consensual lien. *See In re Patterson*,
20    139 B.R. 229, 232 (B.A.P. 9th Cir. 1992) (stating that a consensual lien "cannot be defeated by a
      homestead exemption."); *see in re Pavich*, 191 B.R. 838, 847 (Bankr. E.D. Cal. 1996) ("[E]xemption laws
21    do not protect property from enforcement of consensual liens."); *see In re Bunn-Rodemann*, 491 B.R.
      132, 136 (Bankr. E.D. Cal. 2013) ("[T]he [d]ebtor cannot claim an exemption in the value of the property
22    subject to the creditor's consensual lien. Exemptions may be claimed only against involuntary liens, such
      as judgments, attachments, and execution liens.")); and *Babaee v. Marshack (In re Babaee),* 2023 U.S.
23    App. LEXIS 24253, at *3 (9th Cir. Sep. 13, 2023) ("California law provides that consensual liens must be
      paid ahead of homestead exemptions. *See* Cal. Civ. Proc. Code § 704.850; *see also Amin v. Khazindar*,
24    112 Cal. App. 4th 582, 588, 5 Cal. Rptr. 3d 224 (Cal. 2003) (finding that homestead exemption has no
      effect on liens created voluntarily by property owners, nor does it have any effect on the claims of
25    creditors secured by liens with priority).").
      [21] Judicial estoppel also prevents Debtor from benefitting from her admission that the liens are fraudulent.
26    "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting
      one position, and then later seeking an advantage by taking a clearly inconsistent position. The doctrine
27    is aimed at not only preventing a party from gaining an advantage by asserting inconsistent positions, but
      also ensuring "the orderly administration of justice and . . . the dignity of judicial proceedings," and to
28    "protect against a litigant playing fast and loose with the courts."" *Daff v. Wallace (In re Cass)*, 2013
      Bankr. LEXIS 4653 (B.A.P. 9th Cir. 2013) (cleaned up).

attack of the earlier judgment is (as interpreted by this Court) "I know that it was a fraudulent lien, and even though I swore under oath to the value of $225,000 of the lien on several occasions, since it was a fake lien, the Trustee recovered nothing." This Court continues to observe that "nothing" would have resulted in a fraudulent payment to Debtor's company of $225,000 had the Property been sold by the Trustee and had the lien not been avoided. It is apparently only worth $0.00 if the creditors are entitled to the money.

As a result of Trustee's avoidance of the fraudulent liens, equity in the Property was created, which escalates to the benefit of the Estate. 11 U.S.C. § 551 provides that any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. *See* 11 U.S.C. § 551 ("Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate."); *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 518-20 (9th Cir. 1990) (rejecting the argument that a trustee can preserve a transfer of a lien under § 551 only to the extent that the interest is otherwise valid under state law); *accord Heintz v. Carey (In re Heintz)*, 198 B.R. 581, 586 (9th Cir. B.A.P. 1996) ("§ 551 does not exclude exempt property from preservation. An avoided interest or lien encumbering exempt property is automatically preserved for the benefit of the estate under § 551."); *see also* 11 U.S.C. § 541(a)(3) (defining property of the estate to include any interest in property that the trustee recovers under 11 U.S.C. § 550); 11 U.S.C. § 541(a)(4) (defining property of the estate to include any interest in property preserved for the benefit of or ordered transferred to the estate under 11 U.S.C. § 551).[22]

---

[22] Further, the Supreme Court's ruling in *Schwab v. Reilly,* 560 U.S. 770, 778-89 (2010) supports this assertion. In *Schwab*, the Supreme Court delineated between "in-kind" exemptions and "dollar amount" exemptions. *Id.* The Court held that the "provisions in § 522(d) ... permit debtors to exempt certain property in kind or in full regardless of value." *Id.* at 784. In the federal exemption scheme, in-kind exemptions include "professionally prescribed health aids, . . . disability benefits, [and] unmatured life insurance contracts." *Id.* Unlike in-kind exemptions, dollar-amount exemptions are exemptions that allow the debtor to exempt some portion of the exempt property's value. *Id.* at 800, n.5. While the effect of an allowed in-kind exemption is to remove the exempt property from the estate, for an allowed dollar-amount exemption, as is the case here, "title to the asset will remain with the estate pursuant to § 541." *Id.* at 792.

"Section 551 is intended to prevent the windfall to junior lienors that would

otherwise result when a trustee in bankruptcy successfully avoids a senior lien on

property." *In re Appalachian Energy Indus., Inc.,* 25 BR. 515, 516 (Bankr. M.D. Tenn.

1982). "The section as a whole prevents junior lienors from improving their position at

the expense of the estate when a senior lien is avoided."[23]  The same results occur for

homestead possessors (and in this case caused the fraudulent liens to be asserted in

the first place, although that is not a requirement).

Finally, Debtor may not reach equity achieved by the estate, as under 11 U.S.C.

§ 522(g) a debtor may not claim any exemption in amounts recovered by a trustee after

a debtor's voluntary transfer.

As explained by the court in *In re Bethea*:

Under § 522(c), property exempted generally remains liable for a debt secured
by a lien. *In re Granati,* 271 B.R. 89, 95 (Bankr. E.D. Va. 2001) ("[V]alid liens,
even against exempt property, pass through bankruptcy and may be enforced
against the collateral ...."). Accordingly, § 522 treats a debtor's interest in real
property as distinct from a mortgagee's lien on that property. Unless the debtor
specifically listed the lien as being exempted, his exemption of the real property
alone did not suffice to claim an exemption of the lien (that upon avoidance by
the trustee would be property of the estate and exemptible under § 522(g) if the
debtor met certain conditions).

*In re Bethea*, 275 BR. 127, 129-130 (Bankr. D.D.C. 2002). Similarly, in the present

case, Debtor may not claim an exemption in the avoided equity and the assertion of her

homestead does not prevent Trustee's sale.

## C.  Buyer as Good-Faith Purchaser Under § 363(m)[24]

§ 363(m) provides that:

The reversal or modification or modification on appeal of an authorization under
subsection (b) or (c) of this section of a sale or lease of property does not affect
the validity of a sale or lease under such authorization to an entity that purchased
or leased such property in good faith, whether or not such entity knew of the
pendency of the appeal, unless such authorization and such sale or lease were
stayed pending appeal.

---

[23] S. REP. No. 95-989, at 91 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5877; H.R. REP. No. 95-595,
at 376 (1977), reprinted in 1978 U.S.C.C.A.N. 5963.
[24] On appeal, a good faith finding under § 363(m) is reviewed for clear error. *Thomas v. Namba (In re
Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002).

ES 776                            ES 776                            ES 776

Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys "in good faith" and "for value." *In re M Capital Corporation*, 290 B.R. 743, 746 (9th Cir. BAP 2003). *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3rd Cir.1986). Typically, lack of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (quoting *In re Suchy,* 786 F.2d 900, 902 (9th Cir.1985)); *In re M Capital Corp.,* 290 B.R. at 746-47, 752 ("Where good faith has been challenged, facts must be established to obtain the safety that section offers.").

"The choice of whether to make a finding of 'good faith' as part of the initial sale process belongs, in this circuit, to the bankruptcy court. Because findings of 'good faith' made at the time of the sale may be premature because they are made before the really interesting facts emerge, the Ninth Circuit does not require that a finding of 'good faith' be made at the time of sale." *In re Thomas*, 287 B.R. 782, 785 (9th Cir. B.A.P. 2002). The relevant focus of inquiry is good faith during the sale proceedings. *Cmty. Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985).

The original auction was conducted on March 4, 2025. The stalking horse bidder (the original bidder) and an over-bidder appeared. The over-bidder won the auction. The Court received an objection by Debtor to the Court's announced section 363(m) finding made at the sale hearing on March 4, 2025.  That objection asserted that a single broker represented the two potential buyers appearing at the sale auction, and in fact the broker was also the stalking horse bidder. The Court was first advised of the potential dual broker representation at the time of the hearing. Reviewing the objection and undertaking further research, the Court had several concerns and risks to consider, including (1) conflict of interest between buyers, (2) the duty of loyalty and confidentiality, (3) a

risk of auction manipulation, (4) a possible reduced leverage for the clients, (5) possible disclosure and legal risks, and (6) creditor considerations and court scrutiny requirements.

This Court has always insisted on full transparency and a competitive bidding process in Section 363 sales. While full disclosure & consent may have been provided to both buyers, the Court and other parties in interest must have that information earlier than provided to evaluate the efficacy of the sales process, and the Court should have been provided an opportunity to consider and make any necessary adjustments, if required.

In this instance, the after-the-fact solution to ensure undivided loyalty, avoid conflicts and to provide full transparency, was to vacate the auction results of March 4, 2025, and order a new, second auction to be held on March 25, 2025, with prior full disclosures of broker representations of any buyers.

On March 27, 2025, at 11:00 am, the Court held a continued hearing to permit the Chapter 7 Trustee to conduct a new auction, which was conducted by the Chapter 7 Trustee on that date and time.

During the new auction hearing, upon the Trustee's request for the finding of good faith of the successful buyer under section 363(m), Debtor through counsel objected to a finding of good faith and requested that Debtor be permitted to supplement the record and be provided with an opportunity to submit evidence that the buyer is not a good faith purchaser under that provision of the Bankruptcy Code.[25] The Court permitted Debtor to file and serve additional

---

[25] During the April 10, 2025 hearing, Debtor's counsel asserted that the evidentiary hearing was not requested by Debtor's counsel. However, a review of the transcript from the March 27, 2025 hearing, reflects the following:

> Mr. Blank: Your honor, I just want to make a record that you have not allowed me to a fulsome opportunity to present evidence and that I have asked for that opportunity and you have denied it  .....
> Court: Do you have any evidence?
> Mr. Blank: ... and I have more to say and yet you have cut me off....
> Court: Yes, Mr. Blank, I have a very busy ...
> Mr. Blank: ...which I understand...

briefing and evidence in support of her contention that the successful buyer is not one in good faith, *See* Order, Dk. 585, which provided additional time to further address their positions and present evidence on this subject. Debtor, through counsel, filed no evidence but stated that counsel would cross-examine any witnesses provided by the Trustee and Buyer, and further argued that the successful bidder at the March 25, 2025, auction be disqualified.

The Ninth Circuit Bankruptcy Appellate Panel has held that "[w]hile a finding of 'good faith' is not an essential element for approval of a sale under section 363(b), such a determination becomes important with respect to potential mootness when an appeal is taken from the order authorizing the sale." *Fitzgerald v. Ninn Worx SR, Inc. (In re Fitzgerald),* 428 B.R. 872, 880-81 (9th Cir. BAP 2010) (citing *Thomas v. Namba (In re Thomas),* 287 B.R. 782, 785 (9th Cir. BAP 2002)).

The BAP in *Fitzgerald* continues, "[t]he boilerplate 'good faith' finding in the Sale Order does not suffice under section 363(m), and the bankruptcy court should not have signed such an order without an evidentiary foundation. Id. at 881 (citing *T.C. Investors v. Joseph (In re M Capital Corp.*), 290 B.R. 743, 752 (9th Cir. BAP 2003)). "'Unless and until 'good faith' has been determined, the appeal is not moot under section 363(m).'" Id. (citing In re Thomas, 287 B.R. at 785).

In order to allow an appellate court to determine conclusively the mootness of any appeal, the record of the bankruptcy court must be very clear.

---

> Court: Mr. Blank, I have a very busy calendar today and I understand that you file things without permission, without leave of Court constantly and I am asking you one more time do you have any evidence that you can tell me now with respect to countering the evidence that this Court has with respect to a 363(m) finding? Do you have any evidence?
> Mr. Blank: The evidence before the Court, I believe, contradicts what the Court is saying about granting a 363(m) finding.
> Court: Thank you very much. Do you have anything else?
> Mr. Blank: No.
> Hearing Transcript from 3/27/25 at 10:14:17 a.m. - 10:15:16 a.m.

That is because, under § 363(m), when a "sale of assets is made to a good faith

purchaser, it may not be modified or set aside unless the sale was stayed

pending appeal." *Paulman v. Gateway Venture Partners III, LP (In re Filtercorp,*

*Inc.),* 163 F.3d 570, 576 (9th Cir. 1998); 11 U.S.C. § 363(m).

> An "[a]bsence of good faith is 'typically shown by fraud, collusion between
> the purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.'" *Adeli v. Barclay* (In re Berkeley
> Del. Court, LLC), 834 F.3d 1036, 1041 (9th Cir. 2016) (quoting *Paulman v.*
> *Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),* 163 F.3d 570,
> 577 (9th Cir. 1998)). And the relevant focus of inquiry is good faith during
> the course of the sale proceedings. *Cmty. Thrift & Loan v. Suchy (In re*
> *Suchy*), 786 F.2d 900, 902 (9th Cir. 1985).

*Lind v. Spacone (In re Lind),* 2019 Bankr. LEXIS 2052, *7-8 (9th Cir. BAP 2019).

This is the reason that the Court established and conducted an evidentiary

hearing on the request for a section 363(m) finding.  Within its Order for the

conduct of an evidentiary hearing, the Court cautioned the parties that the

evidentiary hearing is expressly limited to the issue of whether a section 363(m)

good faith finding can be made as to the successful bidder of the Property, Mr.

Peplin. Notwithstanding this Order, Debtor's counsel continued to argue matters

outside the scope of the hearing, and the Court listened.

**The Findings and Conclusions regarding Good Faith of the Buyer**

**under Section 363(m).**

First, the determination of a finding of good faith under Section 363(m)

does not impact at all the determination of a sale result under Section 363. This

proceeding only addresses whether the buyer at the auction is a good faith

purchaser for purposes of implementing the provisions of Section 363(m). The

latest request of Debtor to disqualify the buyer is outside the scope of the

proceedings here.[26]

---

[26] *As set forth in the earlier footnote,* fn. 19, Debtor raised another argument recently, that a successful
buyer was required to be eligible to hold a lease in the mobile home park. That is incorrect. First, anyone
could purchase the mobile home at auction from the Estate; being allowed to have a lease in the mobile

Section 363 of the Bankruptcy Code generally allows the trustee to use, sell, or lease property of an estate, other than in the ordinary course of business, after notice and a hearing. 11 U.S.C. § 363. Under § 363(m), the validity of a "sale or lease of property" executed under the terms of section 363 cannot be challenged on appeal "unless [the bankruptcy court's] authorization and such sale or lease were stayed pending appeal." *Id.* § 363(m). This is why, in almost all sales proceedings, the Trustee asks for a good faith finding with respect to the successful purchaser. It is the Trustee's burden to demonstrate good faith. The Trustee has presented significant evidence to support the assertion and basis for a good faith finding under § 363(m).

For purposes of a full appreciation of this Court's understanding of its duties with respect to its § 363(m) finding, the standards of review of its decision follow.

A reviewing court analyzes a bankruptcy court's determination of a good faith purchaser pursuant to 11 U.S.C. § 363(m) under the clear error standard of review. *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002). The "clear error" standard of review is a deferential standard used by appellate courts when reviewing findings of fact made by a trial court or lower tribunal, particularly in bench trials (trials without a jury) or in certain administrative or bankruptcy proceedings.

It means that the appellate court will not overturn a factual finding unless it has a "definite and firm conviction that a mistake has been committed." *In re Banks*, 263 F.3d 862, 869 (9th Cir. 2001) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).

The appellate court gives great deference to the trial court, which had the opportunity to see the witnesses, hear the testimony, and evaluate credibility.

It applies to findings of fact, not legal conclusions (which are reviewed de novo). It further does not mean the appellate court must be convinced the lower court was correct — just that the finding wasn't clearly wrong, and it is often phrased like this:

---

home park was not a condition of the sale. Second, and more ironically, Debtor herself never had a lease with the mobile home park.

A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*United States v. U.S. Gypsum Co.,* 333 U.S. 364 (1948).

The Ninth Circuit has always adopted this standard of review. For example, and recently:

> [T]he bankruptcy court did not clearly err by finding that the purchaser of the real property was a bona fide good faith purchaser. *See Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.),* 846 F.2d 1170, 1173-74 (9th Cir. 1988) (discussing good faith requirement for operation of mootness rule in bankruptcy; explaining that good faith does not depend on value); *see also Decker v. Tramiel (In re JTS Corp.),* 617 F.3d 1102, 1109 (9th Cir. 2010) (standard of review for bankruptcy court's findings of fact).

*Lind v. Spacone (In re Lind),* 840 Fed. Appx. 988, 989 (9th Cir. 2021). This standard mandates that the bankruptcy court look to the facts to determine the good faith purchaser, which includes the sales process undertaken by the bankruptcy estate.

At the March 27, 2025, auction, Mr. Peplin overbid on the Property and was the successful buyer. The stalking horse bidder remained as the first bidder and it did not overbid Mr. Peplin's overbid. As noted above, Mr Peplin was represented by a separate broker.

On April 10, 2025, the Court conducted an evidentiary hearing on the issue of § 363(m). Eight declarations from five parties were offered into evidence and considered by this Court. Those declarations are as follows: Jeffrey Golden, Chapter 7 Trustee [Dk. 539], Greg Bingham [Dks. 539, 560, 579], Greg Peplin the successful buyer [Dks. 566, 577], Lauri Alvarez [Dk. 580], and Chris Houser [Dk. 591]. Combined, each of these declarations establish a prima facie case that the standards by the Ninth Circuit for a finding of good faith under § 363(m) have been met. Those standards are set forth above.

Debtor was offered the opportunity to cross-examine each of these declarants, but Debtor only requested that declarant Peplin be placed under oath and submit to cross-examination. Debtor's counsel inquired whether Mr. Peplin ever told Galaxy that they were free to overbid Mr. Peplin (paraphrased). Mr. Peplin responded, "not specifically."[27] The only other question Debtor's counsel posed was whether Mr. Peplin ever received anything from Galaxy, written, orally, or otherwise, stating that Galaxy waived any right to any commission that may have been earned by representing Mr. Peplin in the sale (paraphrased). Mr. Peplin responded, "no."

Trustee's attorney, Mr. Israel, questioned Mr. Peplin and asked whether Mr. Peplin had a conversation with David Guarino of Galaxy and advised him that he was no longer Mr. Peplin's broker (paraphrased). Mr. Peplin responded that he had that conversation and confirmed he told Guarino that he was no longer his broker. However, Debtor's counsel objected to Mr. Peplin's responses as "hearsay." The Court overruled the objection. Trustee's attorney also asked Mr. Peplin whether his statement, that he told Mr. Guarino that he was no longer his broker, was a correct one, which Mr. Peplin answered in the affirmative. Debtor's counsel again objected to the response asserting hearsay. The Court again overruled the objection and finds that they are party admissions (Mr. Peplin being a party to this § 363(m) finding). Nevertheless, the Court is not considering the responses to Trustee's questions of Mr. Peplin at the April 10, 2025 evidentiary hearing with respect to this decision, as they are irrelevant.

The Court is mindful that the original purpose of its evidentiary hearing was because of the March 27 demand of Debtor's counsel to offer evidence and argument.[28]

---

[27] Counsel did not object to his own questions as hearsay.
[28] *See* fn. 25.

The Court has carefully considered all of the evidence presented, and further has carefully considered all of the policy and economic arguments presented by Debtor with respect to the conduct of the auction and this Court's analysis under section 363(m).

Absence of good faith is "typically shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Filtercorp, Inc.,* 163 F.3d 570, 577 (9th Cir. 1998).

The Court has found the 2019 Fifth Circuit Court of Appeals decision *Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019) quite helpful, as it directly addressed the issue of dual broker representation of two potential buyers involved in a trustee section 363 sale. In reviewing a District Court's dismissal of a debtor's appeal, the Fifth Circuit set out what this Court believes are excellent guidelines to assist in consideration of Debtor's objections. Addressing the same objections as this Debtor presents, the Fifth Circuit said:

> Rai primarily argues that Hawkins, the real estate broker, violated ethical and fiduciary duties, which Rai believes precludes a finding of good faith. This allegation is based on Hawkins's representing the purchasers and, through an agent of his firm, another bidder, meaning that Hawkins would have earned a commission if either bidder bought the property. But Rai does not show that Hawkins failed to disclose this conflict or to obtain consent to represent both parties. More fundamentally, as the district court observed, that Hawkins's firm represented two bidders does not show collusion. Because Hawkins would receive a commission from the sale to either of these bidders, he had no incentive to collude and depress the price; a reduction in the sales price would have adversely affected his pocketbook. Neither evidence nor common sense supports Rai's collusion allegation.
>
> Rai next argues that Taylor inadequately marketed the auction, resulting in suppression of the bidding. It is true that some ads were ineffective, but that is typically true of marketing efforts; some strategies work better than others. That is why marketeers try different approaches, which Taylor did. The result was a well-attended and competitive auction. Rai complains that only bidders from Mississippi attended. But a host of reasons might explain why there was only local interest despite national marketing efforts. None of this undermines the compelling evidence that the real estate sold for a market price. It is brazen for Rai to contend otherwise

when the company he helped run tried to sell Tract 4 just a couple years earlier for less than 1/3 of what it sold for at auction.

Lastly, Rai argues that Taylor might not have been a disinterested auctioneer because the trustee's son works for him "[f]rom time to time." It is unclear how this additional conjecture amounts to fraud that undermines the competitive nature of the auction or otherwise casts doubt on the economic evidence that the land was sold for value at a competitive auction.

*Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019).

Based upon the evidence before the Court arising throughout this proceeding, the Court makes the following findings of fact and conclusions of law: The auction was properly and adequately marketed; the auction had adequate participation; the auction encouraged competitive bidding that increased the sale price; there was no collusion even though during the first auction (now vacated) one broker may have represented different auction bidders (this has now been corrected by the new auction with no dual representation); the sale was an arm's length transaction; the price was adequate under the circumstances (the price was over the amount of the value of the Property listed in Debtor's schedules); and the Buyer is a good-faith purchaser under 11 U.S.C. § 363(m).

The broker's dual representation at the first auction did not suggest collusion, because the bidding was competitive. There was no dual representation at the second auction. It is also noted that the final sale price was as high or higher than the value placed on the Property by Debtor in her schedules. This Court has received evidence of a fair, non-collusive, honest auction, and has not been presented with evidence of any collusion, dishonesty, or untoward actions in this process. The Buyer is determined to be in good faith under the standards within the Ninth Circuit.

### D. Waiver of Rule 6004(h) Stay

Bankruptcy Rule 6004(h) provides that an "order authorizing the ... sale ... of property ... is stayed until the expiration of 14 days after entry of the order, <u>unless the court orders otherwise</u>." The 1999 Advisory Committee Note to Bankruptcy Rule 6004 states that the rule is intended "to provide sufficient time for a party to request a stay pending appeal of an order authorizing the ... sale ... of property under § 363(b) of the Code before the order is implemented." *In re Verity Health Sys. of California, Inc.*, 598 B.R. 283, 296 (Bankr. C.D. Cal. 2018).

In this matter, the Court declines to waive the 6004(h) stay. Debtor has prematurely filed a Motion for Stay Pending Appeal, which will be resolved under separate order.

### E. Turnover

Trustee seeks turnover of the Property. Section 542(a) of the Bankruptcy Code requires: "Except as provided in subsection (c) or (d) of this section, an entity… shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). Moreover, a debtor has an affirmative duty to cooperate with the Trustee and turn over all estate property to the Trustee. 11 U.S.C. § 521(a)(3)-(4).

Trustee asserts that he is not confident Debtor will timely vacate and requires an enforceable order granting possession to give assurances to the buyer that possession can be delivered upon the close of sale. Having reviewed the entire history of this case, the Court agrees. Bankruptcy courts have the power to authorize the issuance of a writ of execution or assistance authorizing and directing the Marshals to compel the surrender of real property. *See* Fed. R. Civ. P. 70 (made applicable to adversary proceedings by Fed. R. Bankr. P. 7070); *In re Kerlo*, 311 B.R. 256, 261 (Bankr. C.D. Cal. 2004) ("'a writ of assistance to deliver . . . possession [of real property] . . . was agreeable to the usages and principals of law' and 'clearly lies under the express terms of Fed. R. Civ. P. 70.'") (citing *Hamilton v. McDonald*, 503 F.2d 1138, 1148 (9th Cir.

1974)); *In re Bolden*, 327 B.R. 657, 668 (Bankr. C.D. Cal. 2005) (determining that debtor was uncooperative and "trustee needs a turnover order to market and sell the property"). Indeed, the Court may issue any order that is necessary and appropriate to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). Section 105 also authorizes the Court to grant a trustee's request for issuance of a writ of assistance. Specifically, orders for possession of property may be enforced through writs and orders under Section 105(a). *See In re Kerlo*, 311 B.R. at 262.

## IV.    Motion for Stay Pending Appeal

As noted above, one day prior to the March 4, 2025, hearings, Debtor filed a Motion to Stay Pending Appeal on March 3, 2025 [Dk. 562] ("Motion for Stay"). At the hearing, the Court treated the Motion for Stay as both a sur-reply and a Motion for Stay. Under separate order, this Court shall resolve the Motion for Stay Pending Appeal.

## V.    Conclusion

As set forth above, Trustee may sell the Property and obtain turnover of the Property. Debtor's objections are overruled. Mr. Peplin is the successful bidder and is awarded the finding of a good faith buyer under § 363(m).

Debtor has requested a denial of a 6004(h) waiver to give her time to preserve her appeal rights, which is the purpose of 6004(h). However, Debtor, prior to the issuance of this Memoraudum Opinion, has filed both a Notice of Appeal and Motion for a Stay Pending Appeal. The Motion for Stay Pending Appeal shall be addressed in a separate order. The Trustee's request for a waiver of rule 6004(h) is granted.

**IT IS SO ORDERED.**

Date: April 10, 2025

Scott C. Clarkson
United States Bankruptcy Judge

FILED & ENTERED

APR 10 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Jamie Lynn Gallian,<br><br><br><br><br><br>Debtor. | Case No.: 8:21-bk-11710-SC<br><br>CHAPTER 7<br><br>**ORDER DENYING MOTION FOR STAY PENDING APPEAL** |

One day *prior* to the first hearings on the Trustee's two Motions entitled (1) Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turn Over Manufactured Home And Authorizing Issuance Of Writ Of Assistance [Dk. 538] ("Turnover Motion"), and the (2) Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM1081, Free And Clear Of Liens And Homestead Exemption [Dk. 539] ("Sale Motion"), Debtor in this case filed a motion for stay pending appeal [Dk. 562] ("Motion"). For all of the reasons stated below, the Court DENIES the Motion for Stay Pending Appeal.

## I.    Preliminary Statement

Before the filing of this voluntary Chapter 7 bankruptcy proceeding, Jamie Lynn Gallian ("Debtor" or "Gallian") engaged in certain fraudulent conduct with respect to the placement of a number of fraudulent liens on the Property in an attempt to shelter the Property from her creditors. She also submitted to this Court numerous false sworn statements under penalty of perjury throughout this case.

Debtor has the right to assert her homestead, which was awarded to her by the Bankruptcy Court. Her current problem is, by a combination of her own fraud and the Trustee's actions to avoid the fraudulent liens she originally placed on the mobile home, she initiated the Trustee's duty to recover the fraudulent lien (in the amount of $225,000), the recovery of which by operation of law is positioned higher in priority than her homestead rights.

This result is seen often in bankruptcy courts. The Bankruptcy Code and its recovery and avoidance statutes, specifically sections 551, 548 and 522(g)[1] *are designed to encourage debtors and others not to engage in fraudulent conduct before they file their bankruptcy petition.*[2] These sections of the Bankruptcy Code are also designed to provide recovery to the estate by a chapter 7 trustee's ability to avoid fraudulently or illegally placed liens onto property prior to the filing of the bankruptcy petition.

Additionally, when Debtor placed the fraudulent lien totaling $225,000[3] on the Property, purportedly held by her LLC, she also gave various family members and friends more liens on top of the $225,000 lien. These liens encumbered the Property

---

[1] Based on the plain language of 11 U.S.C. § 551, any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. Further, Section 522(g) prohibits her from claiming an exemption in the equity in the Property which she voluntarily transferred but which Trustee recovered.

[2] It usually works like this: a potential individual debtor asks their potential bankruptcy lawyer "[w]hy can't I put a fake lien on my house in favor of my son or cousin so that the bankruptcy trustee won't sell my home?"  The lawyer (at least a competent one) explains "[B]ecause if you do this, and the trustee avoids the lien, you might have your possible homestead subordinated to the avoided lien amount, whether the lien was actual or not. Don't do it."

[3] Debtor originally scheduled the obligation in favor of J-Pad as $175,000; she subsequently amended her schedules to falsely increase the amount to $225,000.

without legitimate obligations and were avoided at considerable expense by the
Trustee.[4]  Ironically in this matter, Debtor's opposition and collateral attack of the earlier
judgment is (as the Court interpretes it) "I know that it was a fraudulent lien, and even
though I swore under oath to the value of $225,000 of the lien on several occasions,
since it was a fake lien, the Trustee recovered nothing."  This Court notes that "nothing"
would have resulted in a windfall payment of $225,000 to Debtor's company J-Pad LLC,
of whom Debtor was the sole member.

The Court also notes that Debtor has maintained her ruse as to the validity of the
lien up to, and even after, the Court avoided the fraudulent lien.

In summary, through costly adversary proceedings in this case, the Chapter 7
Trustee avoided, recovered and preserved both the fraudulent transfers of the Property
and Debtor's fraudulent liens for the benefit of the estate. No party appealed those
judgments, and they are final. The entirety of the opposition filed by Debtor related to
the Sale and Turnover Motions were a collateral attack on the previous avoidance
actions.[5]

The Trustee, by its Turnover and Sale Motions, proceeded despite Debtor's
ongoing and sometimes (recurringly) untimely filed objections. The Order approving the
Sale and Turnover has now been entered, as well as a finding under Section 363(m),
and Debtor's Motion for Stay Pending Appeal is now ripe for this Court to rule upon.

Although Debtor has, until this point, always maintained that the at-issue liens
were legitimate, she now contends that the liens lacked value.[6] Therefore, Debtor

---

[4] Debtor's discharge was denied after a trial by a decision issued May 23, 2023, in which the Court found
that Debtor had concealed her equity in the Property by issuing fraudulent liens, including the $225,000 J-
Pad lien. *See* Adv. No. 8:21-ap-01097-SC, Dk. 81. That decision was affirmed on appeal and is now final.
[5] The Order on avoidance of the $225,000 lien is found at Adv. No. 8:23-ap-01064-SC, Dk. 79. The Order
specifically sets forth the recovered value of the $225,000, which cannot now be challenged by a
collateral attack in this proceeding.
[6] The Court observes that this attempted concession is being made by Debtor not to right her wrongs, but
to circumvent the consequences of having a lien avoided, recovered, and preserved by  the Trustee for
the benefit of an estate. As set out in this Memorandum Opinion, this argument is (1) too clever by half,
(2) permits this Court to directly infer the intentional wrongdoing and bad faith of Debtor (where the earlier
and common prevarications by Debtor, until the last moment, have insisted that the lien in question was
legitimate), and (3) is an impermissible collateral attack on a final (un-appealed) judgment of this Court.

argues that since the liens lacked value, Trustee cannot sell the Property over her objection. However, such a position would reward Debtor's fraudulent conduct, undermining the Bankruptcy Code's provisions that are designed to prevent such abuses and at the same time protect the interests of honest debtors and creditors alike.[7] In other words, Debtor's position is that a debtor, pre-petition, may place fraudulent liens on her property to obfuscate any equity, and after she is caught and a trustee avoids, recovers and preserves those fraudulent liens (in whatever amount they were recorded or asserted to be at the time), she can turn around and admit that they were fraudulent and worthless. This is the argument that the Trustee has not recovered anything of value. What's missing is that the transferee (her own company) of a fraudulent lien would have been paid $225,000 in the event of a sale. In the end, Debtor's counsel's argument is, she can commit fraud with impunity. Of course this is a collateral attack on the specific, un-appealed, and final judgment entered by the Court assigning value to the avoided lien.

## II.    General Relevant Background

Who is this Debtor? Her voluntary chapter 7 case was commenced on July 9, 2021 ("Petition Date"). This case is atypical given the number of disputes which have arisen surrounding Debtor's residence in what should have been a simple, straight forward case and, which as noted throughout this opinion, have resulted in the denial of Debtor's discharge.[8]

In her initial filing, Debtor scheduled an interest in the Property (a mobile home) at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649. She valued the Property at $235,000, stating: "title held by Debtor's single member LLC – J-Sandcastle

---

[7] A central purpose of the Code is to provide individual debtors with a procedure to reorder their affairs and make peace with their creditors, but the Bankruptcy Code limits this opportunity of a "fresh start" to *honest* but unfortunate debtors. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

[8] The disputes are, for the most part, in furtherance of Debtor's bid to keep the Property. For instance, Debtor has filed several motions to avoid the liens of Huntington Beach Gables Homeowners Association and of the Trustee, in place of J-Pad, a motion seeking to abandon the Estate's interest in her residence, an application to compel Trustee to cancel his transfer title to the Property, a motion to convert her case, and several appeals. The Court equates Debtor's oppositions to the sale of the Property in the same vein.

Co., LLC," with a lien on it held by J-Pad, LLC in the amount of $175,000, which amount was later increased to $225,000. **Debtor subsequently amended her schedules or petition no less than 13 times.[9]** After significant litigation involving objections to her homestead, and appeals, Debtor now possesses an allowed homestead in the amount of approximately $600,000 on the Property.

On October 18, 2021, Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") initiated an adversary proceeding, Adv. No. 8:21-ap-01097-SC, against Debtor asserting claims under 11 U.S.C. §§ 523(a)(2) and (a)(6) and 11 U.S.C. § 727.[10] The Court bifurcated the claims and conducted a trial on the § 727 claim. After a trial, which occurred on April 26, 2023, and having considered post-trial briefing, the Court issued a decision on May 23, 2023, as Docket No. 81 in Adv. No. 8:21-ap-01097-SC, **denying Debtor's discharge ("727 Decision")**. In the 727 Decision, the Court specifically found as follows:

> Additionally, facts were presented to the Court demonstrating that Defendant further concealed her equity in the property through the granting of liens to her business entities and family members, which liens existed during the relevant time period. For example, in late 2018, Defendant also executed a promissory note and security agreement on the mobile home by and between two entities that she managed, JSandcastle and J-Pad, LLC. ("J-Pad"). J-Sandcastle was the borrower and J-Pad the lender. The agreement required J-Sandcastle to pay J-Pad $225,000 for a purported loan; however, J-Pad did not loan any money to J-Sandcastle. Trial Transcript, Dk. 72, Pg. 66. Defendant herself made the loan to J-Sandcastle, though the loan was initially in the amount of $175,000 Defendant did not fund the balance of the $225,000 loan until approximately 6 months later. Trial Transcript, Dk. 72, Pg. 65-66.10 None of the foregoing information regarding the timing of funding, or source of funding, was reflected in the executed documents. In her petition, Defendant scheduled J-Pad as a secured creditor, continuing the ongoing concealment of her true

---

[9] *See* dockets 15, 16, 17, 22, 37, 38, 39, 42, 72, 75, 94, 444, 468, and 519.

[10] The Court may take judicial notice of its own records in the same case. *See In re Abbatiello*, 484 B.R. 655, 658 (Bankr. M.D. Pa 2013) ("A bankruptcy judge may take judicial notice of his or her own docket"); *In re Martell*, 349 B.R. 233, 234 n.1 (Bankr. D. Idaho 2005) ("[T]he Court takes judicial notice of its file in this matter."). Further, the Court's rulings with respect to Debtor's behavior in connection with the Property, which form the basis for the 727 Decision, constitute law of the case. Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.) (cert. denied 508 U.S. 951 (1993).

interest in the loan. Additionally, within the year prior to the petition, liens in favor of Defendant's two adult sons, Steven and Brian Gallian, were placed on the property, despite the fact that neither had paid any consideration. Trial Transcript, Dk. 72, Pg. 72-73.

….

As noted previously, J-Pad was the holder of a $22[5],000 promissory note. Defendant herself executed the promissory note on J-Pad's behalf, knowing full well of the asset. It is this Court's view that $225,000 is a significant amount of money, and Defendant's failure to properly schedule her interest in J-Pad, the note and lienholder of a significant asset, is a material, false oath made knowingly and fraudulently. So too was Defendant's failure to schedule a value for JPad, who held a significant asset in the form of the aforementioned note and lien on the mobile home.

The foregoing, coupled with the evidence presented by Plaintiff of Defendant's other glaring omissions and false oaths, are sufficient to demonstrate that Plaintiff is entitled to judgment against Defendant on its § 727(a)(4) cause of action.

727 Decision, pgs. 11-12, 16. Debtor appealed this decision, which was affirmed by the United States District Court on July 31, 2024. *See* Adv. No. 8:21-ap-01097-SC, Dk. 131. After the denial of her discharge, Debtor sought to dismiss her case by a motion filed June 27, 2023 [Dk. 345], which was denied by an order entered July 26, 2023 [Dk. 368].

On June 30, 2023, Trustee commenced an adversary proceeding, Adv. No. 8:23-ap-01064-SC, by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment* ("Avoidance Complaint") against Ronald J. Pierpont, J-Pad LLC, J-Sandcastle, LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E.J. Gallian (collectively, "Defendants"). Trustee recovered title to the Property (which pre-petition she had placed not in her name, but of her LLC) and avoided, recovered and preserved all of the consensual liens. The final judgment as to the J-Pad lien issued in Trustee's adversary on May 10, 2024, provides as follows:

The transfer to the Defendant of a lien on and security interest in the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB

(the "Property") reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018 and lien on the Property in the amount of $225,000 in favor of the Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian.

See Adv. No. 8:23-ap-01064-SC, Dk. 79.

Following the recovery of the Property (from J-Sandcastle, LLC) along with the avoidance, recovery, and preservation of the consensual liens on the Property, Trustee filed an application to retain a broker to market and sell the Property on June 1, 2024 [Dk. 395], which Debtor opposed [Dks. 401-403]. The motion was granted by an order entered September 5, 2024 [Dk. 431]. Of note, at the hearing on Trustee's application to retain a broker, Debtor admitted to listing the Property on her own, which resulted in the Court's issuance of an order to show cause for contempt on September 12, 2024 [Dk. 440], which was discharged after a hearing held on November 5, 2024, when Debtor removed her broker.

In addition, shortly after the Court's approval of Trustee's broker's employment, Debtor filed a motion to convert the case to Chapter 13 on September 11, 2025 [Dk. 438]. That motion was denied by an order entered October 29, 2024 [Dk. 491].

Debtor subsequently amended her schedules again on December 3, 2024 [Dk. 519] and asserted an exemption in the "pad" underneath the mobile home, to which Houser Bros. objected on January 2, 2025 [Dk. 529]. Houser Bros.' objection was sustained by an order entered February 20, 2025 [Dk. 555].

On January 31, 2025, the Turnover Motion and the Sale Motion were filed [Dks. 538 and 539]. The Court conducted hearings on both motions on March 4, 2025, and then, after noting possible issues with respect to the dual representation of the two competing buyers,[11] vacating the auction as discussed above, and conducted another

---

[11] The Court notes that the original auction was vacated by the Court, *sua sponte*, and re-performed on March 27, 2025, not because of any actual problem observed by the Court **but only in an abundance of caution regarding a disclosure that both active bidders were represented by the same real estate broker. The Court observed that there might be an appearance of impropriety (although the Court found no impropriety) and decided that the auction should be held again with no dual**

auction on March 27, 2025. At the March 27, 2025, auction, Mr. Peplin appeared, again overbid on the Property, and became the successful buyer. He was represented by a broker, Lori Alvarez of the real estate brokerage RE Resolved.

Finally, Debtor through counsel requested that the Court not make a Section 363(m) finding of good faith. An evidentiary hearing on this matter was held on April 10, 2025, and after carefully consideration of the evidence, the Court found that the Buyer of the Property was a good faith purchaser.

### III.    Discussion Regarding the Request for Stay Pending Appeal

As noted above, one day prior to the March 4, 2025, hearings, Debtor filed a Motion to Stay Pending Appeal on March 3, 2025 [Dk. 562]. At that hearing, the Court treated the Motion for Stay as a sur-reply as well as a Motion for Stay. However, until the order re the Turnover Motion and Sale Motion was entered, the Motion for Stay was premature. *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1241 (C.D. Cal. 2007) (citing *Nikon, Inc. v. Ikon Corp.,* 1992 U.S. Dist. LEXIS 19386, at *8 (S.D.N.Y. 1992) ("In the absence of a pending appeal, a request for relief under Rule 62(c) is premature.")).

A request for a stay pending appeal is committed to the exercise of judicial discretion. *Doe v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (citation omitted). The Court, when considering whether to issue a stay pending appeal, must consider the following factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

---

**representation present.** It is noted that the Court finds no issues arising from that alleged dual representation. This matter is further discussed with this Court's analysis of the Fifth Circuit Court of Appeals' compelling decision, *Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019), which addressed almost exactly this situation. The Court also notes that the final bid for the Property was over the amount of the listed value of the Property by Debtor in her schedules.

1    *Guzman v. Shewry*, 2008 U.S. Dist. LEXIS 138862, at *2 (C.D. Cal. 2008) (citations

2    omitted). The first two factors of the traditional standard are the most critical. *Nken v.*

3    *Holder*, 556 U.S. at 434.  The Court addresses each of these standards, in turn.

4              (1) Whether the stay applicant has made a strong showing that he is likely to

5              succeed on the merits

6              Debtor argues that she is likely to prevail on the merits as Trustee may only sell a

7    homestead if there is non-exempt equity. In addition, Debtor argues: 1)  Debtor's

8    exempt interest in the Property includes her right to continued possession of the

9    Property;  2) Debtor's exempt interest is not property of the Estate and may not be sold

10   by Trustee (Debtor also argues that her exempt interest in the Property, and the right to

11   possess it, are not rights that a Trustee may sell free and clear of); 3) Debtor argues

12   that the judgment avoiding and preserving the J-Pad lien does not give Trustee the right

13   to sell the Property; and 4) Finally, contrary to the Court's statement in its tentative

14   ruling, Debtor is not collaterally attacking the J-Pad Judgment.

15             Debtor's first argument states that the California exemption law recognizes the

16   sanctity of an equitable interest in homestead property and the right to be free from

17   threats of dispossession. That's hokum. The California exemptions provide that when

18   proper procedures are used for an involuntary sale (such as a bankruptcy trustee sale

19   or a judgment lien sheriff sale) voluntary liens, including those avoided and preserved

20   for the debtor's creditors by a bankruptcy trustee, are paid before a homestead

21   exemption. The homestead exemption takes a senior position only to involuntary liens

22   such as judgment liens. If it didn't work that way, no secured lender would lend a dime

23   to a homeowner. Debtor's assertion is simply a misstatement of the law.

24             Debtor's second and third arguments are based on assertions that bankruptcy

25   law and the applicable rules do not permit a trustee to sell the exempt portion of

26   property, or free and clear of that exempt portion and the rights appurtenant thereto.

27   Again, the arguments presented by Debtor are mere sophistry. The bankruptcy law and

28   rules allow the sale of a Chapter 7 debtor's property and require the trustee to make the

proper distributions in order of priority. Again, in this case, the Property was sold, and the proper distributions will be to holders of voluntary liens (including those avoided for the benefit of the bankruptcy estate) and then to any homestead funds, if any funds remain following the distribution to senior voluntary lien holders (including the bankruptcy estate in this instance).

In this matter, on the Petition Date, title to the Property was not in Debtor's name but held in the name of J-Sandcastle Co, LLC ("J-Sandcastle"). The Court notes that Debtor has amended her schedules at least 13 times to date. In her original schedules, Debtor valued the Property at $235,000 and disclosed that title to the Property was vested in J-Sandcastle, LLC (of which she was its managing member). Further, she scheduled the Property as being subject to a consensual lien in favor of J-Pad LLC, first in the amount of $175,000, and then later $225,000, plus interest, as well as other voluntary liens in favor of Debtor's family members, ex-husband, and a former roommate.

Trustee has recovered title to the Property and avoided the consensual liens on the Property.[12]

It is undisputed that Debtor has a homestead exemption on the Property. However, "California law provides that consensual liens must be paid ahead of homestead exemptions. *See* Cal. Civ. Proc. Code § 704.850; *see also Amin v. Khazindar*, 112 Cal. App. 4th 582, 588, 5 Cal. Rptr. 3d 224 (Cal. 2003) (finding that homestead exemption has no effect on liens created voluntarily by property owners, nor does it have any effect on the claims of creditors secured by liens with priority)." *Babaee v. Marshack (In re Babaee)*, 2023 U.S. App. LEXIS 24253, at *3 (9th Cir. Sep. 13, 2023).

---

[12] Pursuant to motions for default judgment filed by Trustee with respect to defendants J-Pad, J-Sandcastle, and Ronald J. Pierpoint, default judgments were entered against the defendants [Adv. Dks. 79, 81, 83] and avoided and preserved Debtor's transfers of title of the Property to J-Sandcastle and recovered legal title to the beneficial interest in the Property for Debtor's Estate in the name of Trustee. Stipulated judgments were also entered into with defendants Steven Gallian, Brian Gallian, Justin Barclay, and E.J. Gallian, which avoided, recovered, and preserved their liens for the benefit of the Estate as well. It appears that Debtor's family did not want any part of this fraudulent enterprise.

Generally, an over-encumbered property will not be sold by a trustee, but "there are a variety of circumstances where a sale of over encumbered property would be in the best interests of the estate." *See e.g., In re Canonigo*, 276 B.R. 257, 262 (Bankr. N.D. Cal. 2002) (discussing the sale of over-encumbered property and avoided liens).

Through the Sale Motion, the Trustee sought to sell property of the Estate, which is his primary job. Trustee has avoided, recovered and preserved the consensual liens against the Property for the benefit of the Estate. Debtor's homestead exemption is junior to the recovered lien, now controlled by the Trustee, and Trustee can consent to a sale even if the amount received will not pay off the obligation secured by the avoided lien. *In re Ellis*, 2011 Bankr. LEXIS 89, at *7 (Bankr. D. Idaho Jan. 7, 2011). Debtor cannot exempt this lien either. *See In re Bethea*, 275 B.R. 127, 133 (Bankr. D.D.C. 2002) ("Finally, even if the debtor were to amend his schedule C after the lien is avoided to claim the lien as exempt property, the claimed exemption would be invalid.").

Despite the foregoing, Debtor argues that no money was transferred in connection with J-Pad's lien and that the recovered lien is worth $0.[13] This argument is absurd. If the Court deemed Debtor's argument valid, any person could put "fake liens" on their property to shield equity from creditors and then claim later that the lien was worth $0 once the Trustee discovered fraud. This would encourage any homeowner to place fraudulent liens on their property to shield equity and then admit such action once a trustee initiated an avoidance action, which would render fraudulent transfer sections of the code toothless. In this matter, Debtor's actions in attempting to shield equity in the Property is impermissible. *See e.g., Ezra v. Seror (In re Ezra)*, 537 B.R. 924, 927 (B.A.P. 9th Cir. 2015). As noted in the Sale Order, Debtor forgets that if a sale were to occur with the J-Pad lien, un-avoided, J-Pad, LLC (of which she is the sole member) would have been paid $225,000 before her homestead.

---

[13] While it is undisputed that no funds were transferred in connection with the J-Pad lien, in Debtor's Amended Schedule D [Dk. 22], Debtor scheduled the J-Pad Lien in the amount of $225,000.

Due to the foregoing, Trustee may sell the Property free and clear under § 363, which logically terminates any possessory rights Debtor held in the Property. *See* § 542 and § 363. Further, Trustee is empowered to sell the property not simply because he is the holder of an avoided lien, but because the sale of the Property would result in a benefit to the Estate.

Additionally, to the extent that Debtor argued that the final J-Pad judgment is worth $0, this clearly is an indirect collateral attack. The Final Judgment provides:

> The transfer to the Defendant of a lien on and security interest in the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB (the "Property") reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018 and lien on the Property in the amount of $225,000 in favor of the Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian.

[Dk. 79, ¶ 2, 4]. The judgment explicitly provides that the lien is avoided in the amount of $225,000, not $0. Moreover, as previously noted, Debtor scheduled, under penalty of perjury, the amount due to J-Pad as $225,000.

Finally, Debtor's arguments regarding a HELOC loan are not persuasive as HELOC's are a specific type of loan with specific provisions controlling their governance. The argument is not relevant here.

Other than unpersuasive general arguments, Debtor has not provided any legal authority to support the assertions in the Motion to demonstrate that Debtor would prevail on the merits of an appeal.

(2) Whether the applicant will be irreparably injured absent a stay

Debtor argues she will suffer irreparable harm in two ways if a stay is not granted. Ironically, by her identified intentional fraud (which cost her bankruptcy discharge in the first place), she has been able to keep her creditors at bay for over four years, living free in her mobile home. The irreparable harm at this juncture falls squarely on the creditors of this Estate, the Trustee, and his counsel who have diligently

uncovered and dismantled Debtor's fraud. She is correct that if a stay is not granted,
now that the Sale Motion has been approved, she will be denied the ability to effectively
appeal and continue to delay the bankruptcy case management and recovery to her
creditors. The harm as to Debtor is not irreparable. She will obtain replacement housing,
or perhaps stay with some of the relatives to whom she granted fraudulent liens on the
Property.

While Debtor's situation might be unfortunate, it is one of her own making and of
no surprise. As noted by *Senate Permanent Subcom. on Investigations. v. Ferrer*, 2016
U.S. Dist. LEXIS 200309, at \*13 (D.D.C. Sep. 30, 2016):

> It is well-settled that a party requesting the extraordinary equitable relief of a stay
> pending appeal "does not satisfy the irreparable harm criterion when the alleged
> harm is self-inflicted." *Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C.
> 2012) (internal quotation marks and citation omitted) (addressing the factor of
> irreparable harm in the context of a preliminary injunction); see also *Pennsylvania
> v. New Jersey*, 426 U.S. 660, 664, 96 S. Ct. 2333, 49 L. Ed. 2d 124 (1976) (per
> curiam) (holding that a litigant cannot "be heard to complain about damage inflicted
> by its own hand"); *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674, 244 U.S. App. D.C.
> 349 (D.C. Cir. 1985); Safari Club Int'l v. Jewell, 47 F. Supp. 3d 29, 36 (D.D.C.
> 2014), appeal dismissed, No. 14-5152, 2014 U.S. App. LEXIS 21304, 2014 WL
> 5838221 (D.C. Cir. Nov. 7, 2014).

In this matter, Debtor fraudulently attempted to shield equity in her Property. Had
Debtor not granted the consensual liens subjected to avoidance, the Property would
have only been subjected to Debtor's homestead exemption of approximately $600,000
with no liens in front. Fraud will out.[14] Accordingly, the asserted "irreparable harm"
Debtor may face is the result of her own actions and so this factor weighs against the
granting of a stay pending appeal.

<u>(3) Whether issuance of the stay will substantially injure the other parties
interested in the proceeding</u>

If the Court grants the Motion, the sale may not close due to the delay which
would result in a loss of net recovery to the Estate to pay Debtor's creditors. Further, as

---

[14] "Fraud will out" is modeled after the older proverbial expression "Murder will out," which means that the
truth about a serious wrongdoing will eventually be revealed, no matter how well it is concealed.

Trustee observes, Debtor's fraudulent transfers and conduct thus far have already

delayed the sale of the Property for years. *In re Frantz, 534 B.R. 378, 390* (Bankr. D.

Idaho 2015) (holding that because closing the present sale is in the best interests of the

estate and its creditors, and that if stayed there would be a risk of loss of that sale as

well as additional expenses incurred by the estate pending resolution of the appeal,

substantial harm will come to trustee and the bankruptcy estate if a stay is imposed).

Thus, this factor weighs against granting the Motion.

### (4) Where the public interest lies

Under the facts and circumstances of this case, this factor weighs against

granting the Motion for Stay. As explained by the Court in *In re Frantz,* 534 B.R. 378,

390 (Bankr. D. Idaho 2015), the public has an interest in prompt resolution of the

bankruptcy process, which has already been circumvented in this case:

> [A]s to the fourth factor, the Court concludes public interest is not especially
> implicated by the dispute between Debtors and Trustee. To the extent it is,
> imposition of a stay on appeal retards the legitimate public interest in seeing the
> bankruptcy process not just run its course but to do so with due speed. Assets
> should be promptly gathered and administered, and creditors paid. Congress
> intended a deliberate and orderly process and charged trustees with the duty to
> "collect and reduce to money the property of the estate . . . as expeditiously as is
> compatible with the best interest of parties in interest." *See* § 704(a)(1). Staying
> the order of sale does not serve that interest.
>
> There is also public interest in due process. Debtors have been afforded the
> opportunity to have their objections heard and evaluated by the Court. They were
> given one prior opportunity to prove up their alternative proposal and failed to do
> so. The denial of a second opportunity, and the overruling of their objections,
> followed full consideration of their written submissions and oral argument. While
> disappointed in the outcome, Debtors were afforded due process.
>
> Though this factor of "public interest" is not significantly implicated in the present
> case, it does not tilt toward the imposition of stay.

*In re Frantz,* 534 B.R. 378, 390 (Bankr. D. Idaho 2015).

Debtor, in the Motion, argues that the California's public policy is to protect

debtors from becoming homeless at the hands of aggressive judgment creditors.

However, the only aggression here is Debtor's four-year onslaught to impede the

bankruptcy process. There is no judgment creditor involved in this matter. The Trustee avoided fraudulent transfers after a voluntary petition was filed by Debtor in 2021 and is completing his duties to administer the Estate for the benefit of creditors.

**IV.    Conclusion**

For all of the foregoing reasons, the Court finds good cause to DENY the Motion for Stay Pending Appeal. The parties are ordered to submit (a) this Order Denying Motion for Stay Pending Appeal and (b) the Order Re (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turnover Manufactured Home and Authorizing Issuance of Writ of Assistance; (2) Trustee's Motion to Authorize Sale of Manufactured Home; and (3) Good Faith Finding Pursuant to Section 363(m), entered April 10, 2025 [Dk. 593] to any District Court or Bankruptcy Appellate Panel that further considers any motion for stay pending appeal.

**IT IS SO ORDERED.**

Date: April 10, 2025

Scott C. Clarkson
United States Bankruptcy Judge

ERIC P. ISRAEL (State Bar No. #132426)
*EPI@LNBYG.COM*
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034
Phone:       310-229-1234
Facsimile: 310-229-1244

Attorneys for Jeffrey I. Golden, Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>JAMIE LYNN GALLIAN,<br><br>        Debtor. | Case No. 8:21-bk-11710-SC<br><br>Chapter 7<br><br>**DECLARATION OF ERIC P. ISRAEL REQUESTING SUPPLEMENTAL ORDERS ON: (1) CHAPTER 7 TRUSTEE'S MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER OF MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE (DK. 538); (2) TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM 1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION (DK. 539)**<br><br>Date:  April 10, 2025<br>Time:  9:30 a.m.<br>Ctrm:  5C<br>       411 West Fourth Street<br>       Santa Ana, California |

I, Eric P. Israel, declare as follows:

1

1.      I am an individual over 18 years of age.

2.      The facts set forth below are true of my personal knowledge.  If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      I am a partner in the law firm of Levene, Neale, Bender, Yoo & Golubchik L.L.P., the duly employ attorneys for Jeffrey I. Golden, the Chapter 7 trustee (the "Trustee") for the estate of Jamie Lynn Gallian (the "Debtor").

4.      I personally attended the evidentiary hearing on April 10, 2025, at 9:30 a.m.  I have also read the Court's Order on: (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance (Dk. 538); (2) Trustee's Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free and Clear of Liens and Homestead Exemption (Dk. 539); and (3) for Good Faith Purchaser Finding (Dk. 593) (the "Omnibus Order").

5.      The Trustee requests supplemental orders on the Omnibus Order for the following reasons:

    a.   The Trustee understands that the title company may want specific language authorizing the Trustee to sign the assignment document(s) on behalf of the estate and also assign the interest of record of J-Sandcastle;

    b.   The Sale Motion sought authority to allow and pay real estate broker commissions;

    c.   The Trustee believes that the Omnibus Order should have a date certain by which Debtor must vacate and turn over possession to the Trustee;

    d.   Pursuant to the Local Bankruptcy Rules, and I understand per the requirements of the U.S. Marshal, the turnover provisions of the Omnibus Order need to expressly authorize the U.S. Marshal to take certain actions for an eviction; and

    e.   Just to be clear, the Trustee withdrew his request for a waiver of the stay provided in Fed. R. Bankr. P. 6004(h).

2

6.    I believe that the above provisions all comport with the underlying sale motion (Dk. 539) and the turnover motion (Dk. 538).

7.    A true and correct copy of the proposed supplemental orders are attached hereto, marked as Exhibits "1" and "2" and incorporated herein by this reference.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Los Angeles, California, on April 14, 2025.


*/s/ Eric P. Israel*
ERIC P. ISRAEL

3

# EXHIBIT "1"

1  ERIC P. ISRAEL (State Bar No. 132426)
   *EPI@LNBYG.COM*
2  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Ave.
   Los Angeles, California 90034
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5
6  Attorneys for Jeffrey I. Golden, Trustee
7
8
                 UNITED STATES BANKRUPTCY COURT
9
                 CENTRAL DISTRICT OF CALIFORNIA
10
11                       SANTA ANA DIVISION
12 In re                              Case No. 8:21-bk-11710-SC
13 JAIME LYNN GALLIAN,                Chapter 7
14        Debtor.                     **SUPPLEMENTAL ORDER GRANTING**
15                                    **TRUSTEE'S MOTION FOR ORDER**
                                      **COMPELLING TURNOVER OF**
16                                    **MANUFACTURED HOME CURRENTLY**
                                      **LOCATED AT 16222 MONTEREY LANE,**
17                                    **SPACE 376, HUNTINGTON BEACH, CA**
                                      **92649, DECAL NO. LBM1081 (DOCKET**
18                                    **NO. 538)**
19                                    Date:   April 10, 2025
20                                    Time:   9:30 a.m.
                                      Place:  Courtroom "5C"
21                                            411 W. 4th Street,
                                              Santa Ana, California
22
23
24        On April 10, 2025, 9:30 a.m., the Court held an evidentiary hearing on the Trustee's Motion
25 for Order Compelling Turnover of Manufactured Home Currently Located at 16222 Monterey Lane,
26 Space 376, Huntington Beach, Ca 92649, Decal No. LBM 1081 (Dk. 538).  The Court on April 10,
27 2025, having entered its Order re: (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and
28 Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of

ES 807                      ES 807                         ES 807
1

Writ of Assistance (Dk. 538); (2) Trustee's Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No. LBM 1081, Free and Clear of Liens and Homestead Exemption (Dk. 539); and, (3) Good Faith Finding Pursuant to Section 363(M) on April 10, 2025 (Dk. 593) (the "Omnibus Order"), having read and considered the Declaration of Eric P. Israel Requesting Supplemental Orders on: (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance (Dk. 538); and (2) Trustee's Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free and Clear of Liens and Homestead Exemption (Dk. 539) (Dk. ___), good cause appearing, it is

ORDERED THAT:

1.    The Turnover Motion (Dk. 538) is granted in its entirety.

2.    The Debtor and any other occupants of the Property must vacate and turn over all possession, custody and control of the Property to the Trustee by April 24, 2025.

3.    The Debtor and any other occupants of the Property must leave the Property vacant and in its present, good, broom-swept condition without any refuse, trash, or personal belongings remaining.

4.    The Debtor and any occupants of the Property must provide the Trustee with all keys to the Property, along with any security codes and garage door and/or gate openers, by April 24, 2025.

5.    The Trustee is authorized to prepare a writ of assistance consistent with this order for issuance by the Clerk of the Court.  The Trustee may levy or execute on such writ should the Debtor or any other occupants fail to timely vacate the Property as set forth in this order.

6.    The United States Marshals Service (the "U.S. Marshal") is authorized to effectuate an eviction of all occupants and turn over possession of the Property to the Trustee or his agents should any occupants fail to timely comply with the deadline stated in this order, including the use of any reasonable force necessary to enforce this order.  Pursuant to Local Bankruptcy Rule 7064-1(e):

Upon execution and entry of this Order, the United States Marshals Service [and any other executing officer authorized by the court] (collectively, the "U.S. Marshal") is immediately directed to assist Trustee to enforce the underlying order awarding possession. Trustee and his authorized agent(s) will act as substitute custodian of any and all items of personal property seized pursuant to this Order and the U.S. Marshal shall have no liability arising from any acts, incidents, or occurrences in connection with the seizure of the personal property located at the subject real property arising in the ordinary authorized scope of duties of the U.S. Marshal (which acts do not include acts arising from negligent or intentional tortious conduct), including any third party claims and the U.S. Marshal shall be discharged of his or her duties and responsibilities for safekeeping of the seized goods. The U.S. Marshal accomplishing such eviction or seizure shall use whatever reasonable force necessary to break open and enter the subject real property regardless of whether the premises or location is locked or unlocked, occupied or unoccupied and to inspect the contents of any room, closet, cabinet, vehicle, container, desk or documents. Anyone interfering with the execution of this Order is subject to arrest by law enforcement officials

7.    The Trustee is authorized without further Court order to remove or destroy any items of personal property remaining at the Property.  The Trustee and his agents are deemed to have satisfied all obligations they may have under applicable law relating to the removal and/or abandonment of the personal property.

###

ES 809          ES 809          ES 809

3

# EXHIBIT "2"

1  ERIC P. ISRAEL (State Bar No. 132426)
   *EPI@LNBYG.COM*
2  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Ave.
3  Los Angeles, CA 90034
   Telephone: (310) 229-1234
4  Facsimile: (310) 229-1244

5  Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

6

7                **UNITED STATES BANKRUPTCY COURT**

8                **CENTRAL DISTRICT OF CALIFORNIA**

9                     **SANTA ANA DIVISION**

10  In re                                    Case No. 8:21-bk-11710-SC

11  JAMIE LYNN GALLIAN,                      Chapter 7

12          Debtor.

13                                           **SUPPLEMENTAL ORDER GRANTING
                                             TRUSTEE'S MOTION TO AUTHORIZE
14                                           SALE OF MANUFACTURED HOME
                                             CURRENTLY LOCATED AT 16222
15                                           MONTEREY LANE, SPACE 376,
                                             HUNTINGTON BEACH, CA 92649,
16                                           DECAL NO. LBM 1081, FREE AND
                                             CLEAR OF LIENS AND HOMESTEAD
17                                           EXEMPTION**

18                                           Date:    April 10, 2025
                                             Time:    9:30 a.m.
19                                           Crtrm.:  Courtroom "5C"

20          On April 10, 2025, 9:30 a.m., the Court held an evidentiary hearing on the Trustee's Motion

21  for Order Compelling Turnover of Manufactured Home Currently Located at 16222 Monterey

22  Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081 (Dk. 538); and the Trustee's

23  Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane,

24  Space 376, Huntington Beach, CA 92649 (Dk. 539).  The Court on April 10, 2025, having entered

25  its Order re: (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other

26  Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of

27  Assistance [Dk. 538]; (2) Trustee's Motion to Authorize Sale of Manufactured Home Currently

28  Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081,

                                             1

1  Free and Clear of Liens and Homestead Exemption [Dk. 539]; and, (3) Good Faith Finding

2  Pursuant to Section 363(M) on April 10, 2025 (Dk. 593) (the "Omnibus Order"), having read and

3  considered the Declaration of Eric P. Israel Requesting Supplemental Orders on: (1) Chapter 7

4  Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over

5  Manufactured Home and Authorizing Issuance of Writ of Assistance (Dk. 538); and (2) Trustee's

6  Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane,

7  Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free and Clear of Liens and

8  Homestead Exemption (Dk. 539), good cause appearing, it is

9       ORDERED THAT:

10      1.    The Sale Motion (Dk. 539) is granted in its entirety.

11      2.    The proposed overbid procedures are approved.

12      3.    The sale by the Trustee of the entirety of the Manufactured Home Currently Located

13  at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081 (the

14  "Property"), including the interests of J-Sandcastle, LLC, to Greg Peplin (the "Buyer") for

15  $276,000.00, is confirmed on the terms and conditions set forth in the Sale Motion and in the

16  Purchase and Sale Agreement attached as Exhibit "1" to the Sale Motion.

17      4.    The sale shall be free and clear of any and all liens, claims or interests pursuant to

18  11 U.S.C. § 363(b), (f) and (h), "as is," "where is," with no warranty or recourse whatsoever.  The

19  Trustee having avoided and preserved the senior lien on the Property, the sale proceeds are free and

20  clear funds of the estate.

21      5.    The Trustee is authorized to pay brokerage commissions, ordinary and customary

22  costs of sale (including title and escrow fees), and undisputed amounts owed to the Lender through

23  escrow.  Brokers commissions are allowed and authorized for payment as follows:

24          (b)    3% ($8,280.00) to Coldwell Banker Realty; and

25          (c)    3$ ($8,280.00) to Real Estate Resolved.

26      6.    The Buyer, Gregory A. Peplin, is found to be good faith purchaser within the

27  meaning of 11 U.S.C. § 363(m).

28

7.     The Trustee is authorized to execute all documents and otherwise take all actions he deems necessary and appropriate to close the sale of the Property.

8.     There shall be no liability to the Trustee, in any capacity, by virtue of the sale of the Property hereinabove approved.  In the event the Trustee cannot consummate the sale for any reason, the sole remedy of the Buyer shall be limited to a return of the deposit.

9.     Upon closing of the sale, the escrow company closing the sale shall turn over promptly to the Trustee the balance of the proceeds of sale remaining after payment of costs and allowed sums under this order, as appropriate.

10.    The filing of this order with the California Department of Housing and Community Development shall constitute a discharge, termination and cancellation as to the Property of all liens, without the need for reconveyance or release of such liens, encumbrances, or other interests.

11.    The 14-day stay imposed by FRBP 6004(h) is not waived, because the Trustee withdrew the request that it be waived at the initial hearing on March 4, 2025.

###

ES 813                              ES 813                              ES 813

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034.

A true and correct copy of the foregoing document entitled **DECLARATION OF ERIC P. ISRAEL REQUESTING SUPPLEMENTAL ORDERS ON: (1) CHAPTER 7 TRUSTEE'S MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER OF MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE (DK. 538); (2) TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM 1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION (DK. 539)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 14, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Bradford Barnhardt    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- Christopher L Blank    chris@chrisblanklaw.com
- Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- Jeffrey I Golden (TR)    lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com
- D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- Brandon J. Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
- Eric P Israel    epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- Shantal Malmed    shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
- Shantal Malmed    , cheryl.caldwell@gmlaw.com
- Mark A Mellor    mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- Laila Rais    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- Valerie Smith    claims@recoverycorp.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**2.   SERVED BY UNITED STATES MAIL**: On **April 14, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

None.

☐ Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 14, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 14, 2025 | D. Woo | /s/ D. Woo |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

ES 815                                    ES 815                F 9013-3.1.PROOF.SERVICE
ES 815                                                                                        ES 815

1  ERIC P. ISRAEL (State Bar No. 132426)
   *EPI@LNBYG.COM*
2  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Ave.
3  Los Angeles, CA 90034
   Telephone: (310) 229-1234
4  Facsimile: (310) 229-1244

5  Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

6

FILED & ENTERED

APR 14 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte       DEPUTY CLERK

7          **UNITED STATES BANKRUPTCY COURT**

8          **CENTRAL DISTRICT OF CALIFORNIA**

9          **SANTA ANA DIVISION**

10  In re                                          Case No. 8:21-bk-11710-SC

11  JAMIE LYNN GALLIAN,                            Chapter 7

12          Debtor.

13                                                 **SUPPLEMENTAL ORDER GRANTING
                                                   TRUSTEE'S MOTION TO AUTHORIZE
14                                                 SALE OF MANUFACTURED HOME
                                                   CURRENTLY LOCATED AT 16222
15                                                 MONTEREY LANE, SPACE 376,
                                                   HUNTINGTON BEACH, CA 92649,
16                                                 DECAL NO. LBM 1081, FREE AND
                                                   CLEAR OF LIENS AND HOMESTEAD
17                                                 EXEMPTION**

18                                                 Date:    April 10, 2025
                                                   Time:    9:30 a.m.
19                                                 Crtrm.:  Courtroom "5C"

20          On April 10, 2025, 9:30 a.m., the Court held an evidentiary hearing on the Trustee's Motion

21  for Order Compelling Turnover of Manufactured Home Currently Located at 16222 Monterey

22  Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081 (Dk. 538); and the Trustee's

23  Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane,

24  Space 376, Huntington Beach, CA 92649 (Dk. 539).  The Court on April 10, 2025, having entered

25  its Order re: (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other

26  Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of

27  Assistance [Dk. 538]; (2) Trustee's Motion to Authorize Sale of Manufactured Home Currently

28  Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081,

Free and Clear of Liens and Homestead Exemption [Dk. 539]; and, (3) Good Faith Finding

Pursuant to Section 363(M) on April 10, 2025 (Dk. 593) (the "Omnibus Order"), having read and

considered the Declaration of Eric P. Israel Requesting Supplemental Orders on: (1) Chapter 7

Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over

Manufactured Home and Authorizing Issuance of Writ of Assistance (Dk. 538); and (2) Trustee's

Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane,

Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free and Clear of Liens and

Homestead Exemption (Dk. 539), good cause appearing, it is

ORDERED THAT:

1.      The Sale Motion (Dk. 539) is granted in its entirety.

2.      The proposed overbid procedures are approved.

3.      The sale by the Trustee of the entirety of the Manufactured Home Currently Located

at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081 (the

"Property"), including the interests of J-Sandcastle, LLC, to Greg Peplin (the "Buyer") for

$276,000.00, is confirmed on the terms and conditions set forth in the Sale Motion and in the

Purchase and Sale Agreement attached as Exhibit "1" to the Sale Motion.

4.      The sale shall be free and clear of any and all liens, claims or interests pursuant to

11 U.S.C. § 363(b), (f) and (h), "as is," "where is," with no warranty or recourse whatsoever.  The

Trustee having avoided and preserved the senior lien on the Property, the sale proceeds are free and

clear funds of the estate.

5.      The Trustee is authorized to pay brokerage commissions, ordinary and customary

costs of sale (including title and escrow fees), and undisputed amounts owed to the Lender through

escrow.  Brokers commissions are allowed and authorized for payment as follows:

(b)      3% ($8,280.00) to Coldwell Banker Realty; and

(c)      3$ ($8,280.00) to Real Estate Resolved.

6.      The Buyer, Gregory A. Peplin, is found to be good faith purchaser within the

meaning of 11 U.S.C. § 363(m).

7.      The Trustee is authorized to execute all documents and otherwise take all actions he deems necessary and appropriate to close the sale of the Property.

8.      There shall be no liability to the Trustee, in any capacity, by virtue of the sale of the Property hereinabove approved.  In the event the Trustee cannot consummate the sale for any reason, the sole remedy of the Buyer shall be limited to a return of the deposit.

9.      Upon closing of the sale, the escrow company closing the sale shall turn over promptly to the Trustee the balance of the proceeds of sale remaining after payment of costs and allowed sums under this order, as appropriate.

10.     The filing of this order with the California Department of Housing and Community Development shall constitute a discharge, termination and cancellation as to the Property of all liens, without the need for reconveyance or release of such liens, encumbrances, or other interests.

11.     The 14-day stay imposed by FRBP 6004(h) is not waived, because the Trustee withdrew the request that it be waived at the initial hearing on March 4, 2025.

###

Date: April 14, 2025

Scott C. Clarkson
United States Bankruptcy Judge

ES 818              ES 818              ES 818

1  ERIC P. ISRAEL (State Bar No. 132426)
   *EPI@LNBYG.COM*
2  LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Ave.
   Los Angeles, California 90034
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5
6  Attorneys for Jeffrey I. Golden, Trustee

FILED & ENTERED

APR 14 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte    DEPUTY CLERK

7

8

9                  **UNITED STATES BANKRUPTCY COURT**

10                  **CENTRAL DISTRICT OF CALIFORNIA**

11                       **SANTA ANA DIVISION**

12  In re                                    Case No. 8:21-bk-11710-SC

13  JAIME LYNN GALLIAN,                      Chapter 7

14          Debtor.                          **SUPPLEMENTAL ORDER GRANTING**
                                             **TRUSTEE'S MOTION FOR ORDER**
15                                           **COMPELLING TURNOVER OF**
                                             **MANUFACTURED HOME CURRENTLY**
16                                           **LOCATED AT 16222 MONTEREY LANE,**
                                             **SPACE 376, HUNTINGTON BEACH, CA**
17                                           **92649, DECAL NO. LBM1081 (DOCKET**
                                             **NO. 538)**
18
19
                                             Date:    April 10, 2025
20                                           Time:    9:30 a.m.
                                             Place:   Courtroom "5C"
21                                                    411 W. 4th Street,
                                                      Santa Ana, California
22

23

24          On April 10, 2025, 9:30 a.m., the Court held an evidentiary hearing on the Trustee's Motion

25  for Order Compelling Turnover of Manufactured Home Currently Located at 16222 Monterey Lane,

26  Space 376, Huntington Beach, Ca 92649, Decal No. LBM 1081 (Dk. 538).  The Court on April 10,

27  2025, having entered its Order re: (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and

28  Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of

ES 819                        ES 819                        ES 819
                                 1

Writ of Assistance (Dk. 538); (2) Trustee's Motion to Authorize Sale of Manufactured Home

Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No.

LBM 1081, Free and Clear of Liens and Homestead Exemption (Dk. 539); and, (3) Good Faith

Finding Pursuant to Section 363(M) on April 10, 2025 (Dk. 593) (the "Omnibus Order"), having

read and considered the Declaration of Eric P. Israel Requesting Supplemental Orders on: (1)

Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and

Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance (Dk. 538); and (2)

Trustee's Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey

Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free and Clear of Liens and

Homestead Exemption (Dk. 539) (Dk. 597), good cause appearing, it is

ORDERED THAT:

1.      The Turnover Motion (Dk. 538) is granted in its entirety.

2.      The Debtor and any other occupants of the Property must vacate and turn over all possession, custody and control of the Property to the Trustee by April 24, 2025.

3.      The Debtor and any other occupants of the Property must leave the Property vacant and in its present, good, broom-swept condition without any refuse, trash, or personal belongings remaining.

4.      The Debtor and any occupants of the Property must provide the Trustee with all keys to the Property, along with any security codes and garage door and/or gate openers, by April 24, 2025.

5.      The Trustee is authorized to prepare a writ of assistance consistent with this order for issuance by the Clerk of the Court.  The Trustee may levy or execute on such writ should the Debtor or any other occupants fail to timely vacate the Property as set forth in this order.

6.      The United States Marshals Service (the "U.S. Marshal") is authorized to effectuate an eviction of all occupants and turn over possession of the Property to the Trustee or his agents should any occupants fail to timely comply with the deadline stated in this order, including the use of any reasonable force necessary to enforce this order.  Pursuant to Local Bankruptcy Rule 7064-1(e):

ES 820                          ES 820                          ES 820

Upon execution and entry of this Order, the United States Marshals Service [and any other executing officer authorized by the court] (collectively, the "U.S. Marshal") is immediately directed to assist Trustee to enforce the underlying order awarding possession. Trustee and his authorized agent(s) will act as substitute custodian of any and all items of personal property seized pursuant to this Order and the U.S. Marshal shall have no liability arising from any acts, incidents, or occurrences in connection with the seizure of the personal property located at the subject real property arising in the ordinary authorized scope of duties of the U.S. Marshal (which acts do not include acts arising from negligent or intentional tortious conduct), including any third party claims and the U.S. Marshal shall be discharged of his or her duties and responsibilities for safekeeping of the seized goods. The U.S. Marshal accomplishing such eviction or seizure shall use whatever reasonable force necessary to break open and enter the subject real property regardless of whether the premises or location is locked or unlocked, occupied or unoccupied and to inspect the contents of any room, closet, cabinet, vehicle, container, desk or documents. Anyone interfering with the execution of this Order is subject to arrest by law enforcement officials

7.      The Trustee is authorized without further Court order to remove or destroy any items of personal property remaining at the Property.  The Trustee and his agents are deemed to have satisfied all obligations they may have under applicable law relating to the removal and/or abandonment of the personal property.

###

Date: April 14, 2025

Scott C. Clarkson
United States Bankruptcy Judge

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Christopher L. Blank, SBN 115450<br>CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC<br>2973 Harbor Blvd. #506<br>Costa Mesa, CA 92626<br>chris@chrisblanklaw.com<br><br><br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor, Jamie Lynn Gallian | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>JAMIE LYNN GALLIAN<br><br><br><br><br><br>Debtor(s). | CASE NO.: 8:21-bk011710-SC<br><br>ADVERSARY NO.: N/A<br>(*if applicable*)<br><br>CHAPTER: 7**Select Chapter** |
|---|---|
| N/A<br><br><br><br>Plaintiff(s) (*if applicable*).<br>vs.<br>N/A<br><br><br><br>Defendant(s) (*if applicable*). | **NOTICE OF APPEAL**<br>**AND STATEMENT OF ELECTION** |

**Part 1:  Identify the appellant(s)**

1.  Name(s) of appellant(s):  DEBTOR, JAMIE LYNN GALLIAN

2.  Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐ Plaintiff
☐ Defendant
☐ Other (*describe*):

For appeals in a bankruptcy case and not in an  adversary proceeding.
☒ Debtor
☐ Creditor
☐ Trustee
☐ Other (*describe*):

**Part 2:  Identify the subject of this appeal**

1.  Describe the judgment—or the appealable order or decree—from which the appeal is taken:
    Order re Trustee's Motion for Sale, Turnover and Good Faith. Docket No. 593, Ent. 4/10/25, Exh. 1.
    Supplemental Order re Sale, Docket No. 598, Ent. 4/14/25, Exh. 2.
    Supplemental Order re Turnover, Docket No. 599, Ent. 4/14/25, Exh. 3.
2.  State the date on which the judgment—or the appealable order or decree—was entered: 04/10/2025

**Part 3:  Identify the other parties to the appeal**

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1.  Party:  Trustee, Jeffrey Golden

    Attorney:

    Eric P. Israel
    LEVENE, NEALE, BENDER, YOO & GOLUBCHICK, L.L.P.
    2818 La Cienega Ave.
    Los Angeles, CA 90034
    EPI@LNBYG.com

2.  Party:  Creditor, Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates

    Attorney:

    D. Edward Hays
    MARSHACK HAYS WOOD LLP
    870 Roosevelt
    Irvine, CA 92620
    ehays@marshackhays.com

**Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒  Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5:  Sign below**

 Christopher L. Blank                                    Date: 04/14/2025
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

# EXHIBIT 1

# EXHIBIT 1

# EXHIBIT 1

FILED & ENTERED

APR 10 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte          DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>Jamie Lynn Gallian,<br><br><br><br><br>Debtor. | Case No.: 8:21-bk-11710-SC<br><br>CHAPTER 7<br><br>**ORDER RE:**<br><br>**(1) CHAPTER 7 TRUSTEE'S MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE [DK. 538];**<br><br>**(2) TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION [DK. 539]; AND,**<br><br>**(3) GOOD FAITH FINDING PURSUANT TO SECTION 363(M).** |

On March 4, 2025, the Court held hearings on the (1) *Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turn Over Manufactured Home And Authorizing Issuance Of Writ Of Assistance,* filed January 31, 2025 [Dk. 538] ("Turnover Motion"), and the (2) *Trustee's Motion To Authorize Sale Of*

*Manufactured Home Currently Located At 16222 Monterey Lane, Space 376,*
*Huntington Beach, CA 92649, Decal No. LBM1081, Free And Clear Of Liens And*
*Homestead Exemption* filed January 31, 2025 [Dk. 539] ("Sale Motion") (collectively,
"Motions"). Prior to the March 4, 2025, hearing, in response to the tentative rulings,
Debtor filed a *Motion to Stay Pending Appeal* on March 3, 2025 [Dk. 562]. Appearances
for the March 4, 2025, hearing are as noted in the record.

During the March 4, 2025, hearing, the Court permitted an auction to occur with
respect to the manufactured home located at 16222 Monterey Lane, Space 376,
Huntington Beach, CA 92649, Decal No. LBM1081 ("Property"), and an overbidding
party, Mr. Gregory A. Peplin ("Mr. Peplin" or "Buyer"), was the successful bidder. On the
evidence presented before it, however, the Court was not prepared to make a good faith
finding with respect to Mr. Peplin. The Court permitted the Chapter 7 Trustee to submit
a supplemental declaration in support of his request for a good faith finding under §
363(m) for the Court's review. Accordingly, the Declaration of Gregory A. Peplin was
filed on March 7, 2025 [Dk. 566], attesting to his good faith status to support a good
faith finding under 11 U.S.C. § 363(m). On March 12, 2025 [Dk. 568], Debtor filed an
Opposition to Mr. Peplin's declaration. The Opposition asserts that a single broker (who
was also the stalking horse bidder), Galaxy Homes LLC ("Galaxy") represented the two
potential buyers appearing at the March 4, 2025, sale auction. Although this Court
believed that the objection raised by Debtor was unmeritorious, instead of sustaining or
overruling the objection, the Court issued an order on March 13, 2025 [Dk. 569],
vacating the auction results and setting a new auction date of March 27, 2025. The
Trustee conducted a new auction at that time,[1] with appearances as noted in the record.
Mr. Peplin was again the successful bidder. The Court then set an evidentiary hearing
on the matter of the section 363(m) good faith purchaser determination, which was held

---

[1] At the March 27, 2025, auction, Mr. Peplin was no longer represented by Galaxy Homes, but instead was represented by a different broker, Lori Alvarez of Real Estate Resolved. *See* Declaration of Lori Alvarez filed 3/24/25 [Dk. 580].

on April 10, 2025.[2]  Appearances for the April 10, 2025, hearing are as noted in the record.

The Court, having considered the various Motions, all relevant pleadings, including the Motion for Stay Pending Appeal (which is denied by separate order but is incorporated into this Order by reference), the docket as a whole including those of the adversary proceedings of this case, and for the reasons set forth, finds good cause to GRANT the Motions for Sale, Turnover, and for a good faith purchaser finding under 11 U.S.C. § 363(m).

Following an evidentiary hearing held on April 10, 2025, on the sole subject of addressing the Trustee's request to consider and decide the good faith purchaser status of the Buyer, the Court finds that the successful purchaser was a good faith purchaser and finds that the factual and legal requirements of section 363(m) are met. The objections presented to the § 363(m) determination by Debtor are overruled.

The Trustee and the Buyer were required to present competent evidence of the status as a good faith purchaser of the Buyer, and they have met and exceeded their burden. Debtor has presented no evidence of her own, although she was permitted the opportunity to examine all declarants during the § 363(m) evidentiary hearing. She examined one declarant. Debtor has not disturbed Trustee's and Buyer's demonstrations of good faith.

## I.    Preliminary Statement

Before the filing of this voluntary Chapter 7 bankruptcy proceeding, Jamie Lynn Gallian ("Debtor" or "Gallian") engaged in certain fraudulent conduct with respect to the placement of a number of fraudulent liens on the Property in an attempt to shelter the Property from her creditors. She also submitted to this Court numerous false sworn statements under penalty of perjury throughout this case.

---

[2] § 363(m) provides that "[t]he reversal or modification or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

Debtor has the right to assert her homestead, which was awarded to her by the Bankruptcy Court. Her current problem is, by a combination of her own fraud and the Trustee's actions to avoid the fraudulent liens she originally placed on the mobile home, she put into motion the Trustee's duty to recover the fraudulent lien (in the amount of $225,000), the recovery of which by operation of law is positioned in front of (higher in priority) her homestead rights.

This result is seen often in bankruptcy courts, as the Bankruptcy Code and its recovery and avoidance statutes, specifically sections 551, 548 and 522(g)[3] *are designed to encourage debtors and others not to engage in fraudulent conduct before they file their bankruptcy petition.*[4] These sections of the Bankruptcy Code are also designed to provide recovery to the estate by a chapter 7 trustee's ability to avoid fraudulently or illegally placed liens onto property prior to the filing of the bankruptcy petition.

Additionally, when Debtor placed the fraudulent lien totaling $225,000[5] on the Property, purportedly held by the LLC, she also gave various family members and friends more liens on top of the $225,000 lien. These liens encumbered the Property without legitimate obligations and were avoided at considerable expense by the Trustee.[6]  Ironically in this matter, Debtor's opposition and collateral attack of the earlier judgment is (as the Court interpreted it) "I know that it was a fraudulent lien, and even though I swore under oath to the value of $225,000 of the lien on several occasions,

---

[3] Based on the plain language of 11 U.S.C. § 551, any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. Further, Section 522(g) prohibits her from claiming an exemption in the equity in the Property which she voluntarily transferred but which Trustee recovered.

[4] It usually works like this: a potential individual debtor asks their potential bankruptcy lawyer "[w]hy can't I put a fake lien on my house in favor of my son or cousin so that the bankruptcy trustee won't sell my home?"  The lawyer (at least a competent one) explains "[B]ecause if you do this, and the trustee avoids the lien, you might have your possible homestead subordinated to the avoided lien amount, whether the lien was actual or not. Don't do it."

[5] Debtor originally scheduled the obligation in favor of J-Pad as $175,000; she subsequently amended her schedules to falsely increase the amount to $225,000.

[6] Debtor's discharge was denied after a trial by a decision issued May 23, 2023, in which the Court found that Debtor had concealed her equity in the Property by issuing fraudulent liens, including the $225,000 J-Pad lien. *See* Adv. No. 8:21-ap-01097-SC, Dk. 81. That decision was affirmed on appeal and is now final.

since it was a fake lien, the Trustee recovered nothing." This Court notes that "nothing" would have resulted in a windfall payment of $225,000 to Debtor's company J-Pad LLC, of whom Debtor was the sole member.

The Court also notes that Debtor has maintained her ruse as to the validity of the lien up to, and even after, the Court avoided the fraudulent lien.

In summary, through costly adversary proceedings in this case, the Chapter 7 Trustee avoided, recovered and preserved both the fraudulent transfers of the Property and Debtor's fraudulent liens for the benefit of the estate. No party appealed those judgments, and they are final. The entirety of the opposition filed by Debtor on the present issue of the sale is a collateral attack on the previous avoidance actions.[7]

The Trustee now seeks to sell the Property and obtain its turnover, despite Debtor's objections. Although Debtor has, until this point, always maintained that the at-issue liens were legitimate, she now apparently contends that the liens lacked value.[8] Therefore, Debtor argues that, since the liens lacked value, Trustee cannot sell the Property over her objection. However, such a position would reward Debtor's fraudulent conduct, undermining the Bankruptcy Code's provisions that are designed to prevent such abuses and at the same time protect the interests of honest debtors and creditors alike.[9] In other words, Debtor's position is that a debtor, pre-petition, may place fraudulent liens on her property to obfuscate any equity, and after she is caught and a trustee avoids, recovers and preserves those fraudulent liens (in whatever amount they

---

[7] The Order on avoidance of the $225,000 lien is found at Adv. No. 8:23-ap-01064-SC, Dk. 79. The Order specifically sets forth the recovered value of the $225,000, which cannot now be challenged by a collateral attack in this proceeding.

[8] The Court observes that this attempted concession is being made by Debtor not to right her wrongs, but to circumvent the consequences of having a lien avoided, recovered, and preserved by the Trustee for the benefit of an estate. As set out in this Memorandum Opinion, this argument is (1) too clever by half, (2) permits this Court to directly infer the intentional wrongdoing and bad faith of the Debtor (where the earlier and common prevarications by the Debtor, until the last moment, have insisted that the lien in question was legitimate), and (3) is an impermissible collateral attack on a final (un-appealed) judgment of this Court.

[9] A central purpose of the Code is to provide individual debtors with a procedure to reorder their affairs and make peace with their creditors, but the Bankruptcy Code limits this opportunity of a "fresh start" to *honest* but unfortunate debtors. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

were recorded or asserted to be at the time), she can turn around and admit that they were fraudulent and worthless. This is the argument that the trustee has not recovered anything of value. What's missing is that the transferee (her own company) of a fraudulent lien would have been paid $225,000 in the event of a sale. In the end, Debtor's counsel's argument is, she can commit fraud with impunity. Of course this is a collateral attack on the specific, un-appealed, and final judgment entered by the Court assigning value to the avoided lien.

## II.    General Relevant Background

Who is this Debtor? Her voluntary chapter 7 case was commenced on July 9, 2021 ("Petition Date"). This case is atypical given the number of disputes which have arisen surrounding Debtor's residence in what should have been a simple, straight forward case and, which as noted throughout this opinion, have resulted in the denial of Debtor's discharge.[10]

In her initial filing, Debtor scheduled an interest in the Property (a mobile home) at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649. She valued the Property at $235,000, stating: "title held by Debtor's single member LLC – J-Sandcastle Co., LLC," with a lien on it held by J-Pad, LLC in the amount of $175,000, which amount was later increased to $225,000. **Debtor subsequently amended her schedules or petition no less than 13 times.[11]** After significant litigation involving objections to her homestead, and appeals, Debtor now possesses an allowed homestead in the amount of approximately $600,000 on the Property.

On October 18, 2021, Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") initiated an adversary proceeding, Adv. No. 8:21-ap-01097-SC, against Debtor asserting claims under 11 U.S.C. §§ 523(a)(2) and (a)(6) and

---

[10] The disputes are, for the most part, in furtherance of Debtor's bid to keep the Property. For instance, Debtor has filed several motions to avoid the liens of Huntington Beach Gables Homeowners Association and of the Trustee, in place of J-Pad, a motion seeking to abandon the Estate's interest in her residence, an application to compel Trustee to cancel his transfer title to the Property, a motion to convert her case, and several appeals. The Court equates Debtor's oppositions to the sale of the Property in the same vein.
[11] *See* dockets 15, 16, 17, 22, 37, 38, 39, 42, 72, 75, 94, 444, 468, and 519.

11 U.S.C. § 727.[12] The Court bifurcated the claims and conducted a trial on the § 727 claim. After a trial, which occurred on April 26, 2023, and having considered post-trial briefing, the Court issued a decision on May 23, 2023, as Docket No. 81 in Adv. No. 8:21-ap-01097-SC, **denying Debtor's discharge ("727 Decision")**. In the 727 Decision, the Court specifically found as follows:

> Additionally, facts were presented to the Court demonstrating that Defendant further concealed her equity in the property through the granting of liens to her business entities and family members, which liens existed during the relevant time period. For example, in late 2018, Defendant also executed a promissory note and security agreement on the mobile home by and between two entities that she managed, JSandcastle and J-Pad, LLC. ("J-Pad"). J-Sandcastle was the borrower and J-Pad the lender. The agreement required J-Sandcastle to pay J-Pad $225,000 for a purported loan; however, J-Pad did not loan any money to J-Sandcastle. Trial Transcript, Dk. 72, Pg. 66. Defendant herself made the loan to J-Sandcastle, though the loan was initially in the amount of $175,000 Defendant did not fund the balance of the $225,000 loan until approximately 6 months later. Trial Transcript, Dk. 72, Pg. 65-66.10 None of the foregoing information regarding the timing of funding, or source of funding, was reflected in the executed documents. In her petition, Defendant scheduled J-Pad as a secured creditor, continuing the ongoing concealment of her true interest in the loan. Additionally, within the year prior to the petition, liens in favor of Defendant's two adult sons, Steven and Brian Gallian, were placed on the property, despite the fact that neither had paid any consideration. Trial Transcript, Dk. 72, Pg. 72-73.
>
> ….
>
> As noted previously, J-Pad was the holder of a $22[5],000 promissory note. Defendant herself executed the promissory note on J-Pad's behalf, knowing full well of the asset. It is this Court's view that $225,000 is a significant amount of money, and Defendant's failure to properly schedule her interest in J-Pad, the note and lienholder of a significant asset, is a material, false oath made knowingly and fraudulently. So too was Defendant's failure to

---

[12] The Court may take judicial notice of its own records in the same case. *See In re Abbatiello*, 484 B.R. 655, 658 (Bankr. M.D. Pa 2013) ("A bankruptcy judge may take judicial notice of his or her own docket"); *In re Martell*, 349 B.R. 233, 234 n.1 (Bankr. D. Idaho 2005) ("[T]he Court takes judicial notice of its file in this matter."). Further, the Court's rulings with respect to Debtor's behavior in connection with the Property, which form the basis for the 727 Decision, constitute law of the case. Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.) (cert. denied 508 U.S. 951 (1993)).

schedule a value for JPad, who held a significant asset in the form of the aforementioned note and lien on the mobile home.

The foregoing, coupled with the evidence presented by Plaintiff of Defendant's other glaring omissions and false oaths, are sufficient to demonstrate that Plaintiff is entitled to judgment against Defendant on its § 727(a)(4) cause of action.

727 Decision, pgs. 11-12, 16. Debtor appealed this decision, which was affirmed by the United States District Court on July 31, 2024. *See* Adv. No. 8:21-ap-01097-SC, Dk. 131. After the denial of her discharge, Debtor sought to dismiss her case by a motion filed June 27, 2023 [Dk. 345], which was denied by an order entered July 26, 2023 [Dk. 368].

On June 30, 2023, Trustee commenced an adversary proceeding, Adv. No. 8:23-ap-01064-SC, by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment* ("Avoidance Complaint") against Ronald J. Pierpont, J-Pad LLC, J-Sandcastle, LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E.J. Gallian (collectively, "Defendants"). Trustee recovered title to the Property (which pre-petition she had placed not in her name, but of her LLC) and avoided, recovered and preserved all of the consensual liens. The final judgment as to the J-Pad lien issued in Trustee's adversary on May 10, 2024, provides as follows:

The transfer to the Defendant of a lien on and security interest in the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB (the "Property") reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018 and lien on the Property in the amount of $225,000 in favor of the Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian.

See Adv. No. 8:23-ap-01064-SC, Dk. 79.

Following the recovery of the Property (from J-Sandcastle, LLC) along with the avoidance, recovery, and preservation of the consensual liens on the Property, Trustee

1   filed an application to retain a broker to market and sell the Property on June 1, 2024

2   [Dk. 395], which Debtor opposed [Dks. 401-403]. The motion was granted by an order

3   entered September 5, 2024 [Dk. 431]. Of note, however, at the hearing on Trustee's

4   application to retain a broker, Debtor admitted to listing the Property on her own, which

5   resulted in the Court's issuance of an order to show cause for contempt on September

6   12, 2024 [Dk. 440], which was discharged after a hearing held on November 5, 2024,

7   when Debtor removed her broker.

8       In addition, shortly after the Court's approval of Trustee's broker's employment,

9   Debtor filed a motion to convert the case to Chapter 13 on September 11, 2025 [Dk.

10  438]. That motion was denied by an order entered October 29, 2024 [Dk. 491].

11      Debtor subsequently amended her schedules again on December 3, 2024 [Dk.

12  519] and asserted an exemption in the "pad" underneath the mobile home, to which

13  Houser Bros. objected on January 2, 2025 [Dk. 529]. Houser Bros.' objection was

14  sustained by an order entered February 20, 2025 [Dk. 555].

15      On January 31, 2025, the Turnover Motion and the Sale Motion were filed [Dks.

16  538 and 539]. The Court conducted hearings on both motions on March 4, 2025, and

17  then, after noting possible issues with respect to the dual representation of the two

18  competing buyers[13], vacating the auction as discussed above, and conducted another

19  auction on March 27, 2025. At the March 27, 2025, auction, Mr. Peplin appeared, again

20  overbid on the Property, and became the successful buyer. He was represented by a

21  broker, Lori Alvarez of the real estate brokerage RE Resolved.

22

23

24

---

25  [13] The Court notes that the original auction was vacated by the Court, *sua sponte,* and re-performed on March 27, 2025, not because of any actual problem observed by the Court **but only in an abundance of caution regarding a disclosure that both active bidders were represented by the same real estate broker. The Court observed that there might be an appearance of impropriety (although the Court found no impropriety) and decided that the auction should be held again with no dual representation present.** It is noted that the Court finds no issues arising from that alleged dual representation. This matter is further discussed with this Court's analysis of the Fifth Circuit Court of Appeals' compelling decision, *Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019), which addressed almost exactly this situation. The Court also notes that the final bid for the Property was over the amount of the listed value of the Property by Debtor in her schedules.

26

27

28

### III.    Discussion – Summary of the Positions Presented

By these Motions, Trustee seeks approval of a sale under § 363 and turnover of the Property under § 542, free and clear of all liens and interests, including Debtor's $600,000 homestead.[14] Trustee asserts that there are no known encumbrances against the Property that have not been avoided, recovered, and preserved for the benefit of the Estate. Trustee asserts that any involuntary liens reflected by Abstract of Judgments were not properly perfected, and thus do not prevent the sale (and in any event are junior to the avoided consensual liens). Trustee further asserts that because all consensual liens have been avoided and recovered, the Estate will realize approximately $301,011.14 from the sales proceeds on account of such liens. With the result of the auction approved by this order, Debtor's homestead exemption is out of the money and most likely will not be paid unless there are sufficient funds. If any funds are available on account of her homestead after payment of the avoided consensual liens, they will be distributed in accordance with the Bankruptcy Code's priority system.

Debtor's opposition contends that Trustee may not sell the Property because she has not consented to such sale and the proposed sale price is insufficient to fully pay her allowed homestead. Debtor further asserts that it is indisputable that J-Pad never lent any money to anyone to support the imposition of a lien on the Property. Therefore, Debtor argues Debtor may benefit from her and that the J-Pad lien the Trustee holds is worth $0.

As set forth below, Debtor is incorrect that Trustee may not sell the Property. Her homestead exemption is junior in priority to the avoided consensual liens.[15] Further, to the extent Debtor claims that the fraudulent nature of the J-Pad lien she granted

---

[14] The sale does not include the ground lease for the underlying space, which was rejected long ago, but Houser Bros. asserts that it has agreed to give any qualified buyer - but not Debtor, a new ground lease.

[15] Consensual liens have priority over exemptions. *See* Cal. Code Civ. P. § 704.850(a) ("The levying officer shall distribute the proceeds of sale of a homestead in the following order: (1) To the discharge of all liens and encumbrances, if any, on the property. (2) To the judgment debtor in the amount of any applicable exemption of proceeds pursuant to Section 704.720."); *see also In re Bunn-Rodemann*, 491 B.R. 132, 136 (Bankr. E.D. Cal. 2013) (noting that exemptions may be claimed "only against involuntary liens").

means that it cannot serve as a basis for Trustee's sale of the Property, this argument
also fails. Trustee avoided, recovered and preserved the J-Pad lien in the amount of
$225,000. Based on the plain language of 11 U.S.C. § 551, any transfer avoided under
11 U.S.C. § 548 is automatically preserved for the benefit of the Estate.[16] And, Section
522(g) prohibits her from claiming an exemption in the equity in the Property which she
voluntarily transferred but which Trustee recovered.[17]

As such, the recovered liens are senior to her allowed homestead exemption and
Trustee may sell the Property to realize such funds for the benefit of the Estate. Further,
as the Property is one that Trustee may sell, as described below, the Trustee is entitled
to turnover.

### A. Sale of the Property, Free and Clear of Liens

Under 11 U.S.C. § 704(a)(1), a trustee shall "collect and reduce to money the
property of the estate…."  Debtor's property is property of the Estate which Trustee may
sell.[18] Under § 363(b), the Court may authorize a trustee to "use, sell, or lease, other
than in the ordinary course of business, property of the estate," provided the movant
establishes the following: "(1) a sound business purpose exists for the sale; (2) the sale
is in the best interest of the estate, i.e., the sale price is fair and reasonable; (3) notice
to creditors [and interested parties] was proper; and (4) the sale is made in good faith."

---

[16] Section 551 reads: "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate."

[17] See *In re Bethea*, 275 B.R. 127, 129 (Bankr D.C. 2002) ("And, even if the exemption was claimed after the avoidance, the exemption would be invalid. Under 11 U.S.C.S. § 522(g)(1)(A), the debtor could only exempt a recovered lien if the transfer of the lien interest was not a voluntary transfer by the debtor. The avoided lien remained an encumbrance in favor of the estate, thus reducing the equity subject to the exemption.").

[18] *See e.g. In re Neal*, 424 B.R. 235,237 (Bankr. E.D. Mich 2010) (In discussing trustee's options to administer property with avoided lien, the court noted trustee's option to sell under § 363(b) or enforce trustee's rights as a lien creditor and when seeking to sell the property, trustee was acting as a trustee, and not a lien creditor). Further, while there is a general prohibition against selling a fully encumbered asset, trustee may rebut the presumption. In addressing whether to permit a carve-out, the court in *KVN Corp. v. Green (In re KVN Corp.),* 514 B.R. 1, 5-8 (9th Cir. BAP 2014) set forth a 3-part test to rebut presumption against trustee selling a fully encumbered asset). If applicable, this test is satisfied: (1) Trustee is fulfilling the trustee's basic duties; (2) Trustee has demonstrated "a benefit to the estate; i.e., prospects for a meaningful distribution to unsecured creditors"; and (3) and Trustee has fully disclosed the terms of the sale agreement to the bankruptcy court. *See KVN Corp.,* 514 B.R. at 8.

*In re Slates*, 2012 WL 5359489 (B.A.P. 9th Cir. Oct. 31, 2012) (unpublished) (citing *In re Lionel*, 722 F.2d 1063, 1070 (2nd Cir. 1983); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal 1991)); *see also In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); *In re MF Glob. Inc.,* 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012); *WBQ Ptnr. v. Va. Dep't of Med. Assistance Servs. (In re WBQ Ptnr.*), 189 B.R. 97, 102 (Bankr. E.D. Va. 1995).  As further discussed herein, Trustee has submitted adequate evidence that (a) a sound business purpose exists for the sale, which is realizing the fraudulently concealed equity for the benefit of the Estate's creditors; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and reasonable, as demonstrated by not one, but two auctions; (3) notice to creditors [and interested parties] was proper; and (4) the sale is made in good faith.

Under 363(f), "[t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property" only if: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. Trustee asserts, and has provided evidence, that all known liens have been avoided.

### B.  Debtor's Homestead and the Avoided Liens

None of Debtor's arguments pertaining to the assertion of her homestead, or the fraudulent nature of the avoided liens, serve as a bar to Trustee's sale of the Property.[19]

Trustee successfully avoided the consensual liens on the Property, which were recovered for the benefit of the Estate, and which take priority over Debtor's homestead exemption. *See In re Roach*, 2019 Bankr. LEXIS 263 (B.A.P. 9th Cir. 2019); *see also In*

---

[19] Debtor raised another argument recently, that a successful buyer was required to be eligible to hold a lease in the mobile home park. That is incorrect. First, anyone could purchase the mobile home at auction from the Estate; being allowed to have a lease in the mobile home park was not a condition of the sale. Second, and more ironically, Debtor herself never had a lease with the mobile home park.

*re Bunn-Rodemann*, 491 B.R. 132, 134-35 (Bankr. E.D. Cal. 2013). Exemptions may be

claimed only against involuntary liens, such as judgments, attachments, and execution

liens, and then only if the procedures of section 522(f) are followed. *See In re Roach*,

2019 Bankr. LEXIS 263 (B.A.P. 9th Cir. 2019).[20]

Further, Debtor's argument that the value of the avoided lien is $0.00 is

misguided, inaccurate, and a collateral attack on a final judgment. As noted above, the

final judgment as to the J-Pad lien issued in Trustee's adversary on May 10, 2024,

provides as follows:

> The transfer to the Defendant of a lien on and security interest in the
> manufactured home located at 16222 Monterey Lane, Space #376, Huntington
> Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB
> (the "Property") reflected by the secured promissory note and security agreement
> between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018
> and lien on the Property in the **amount of $225,000** in favor of the Defendant are
> avoided and preserved for the benefit of the Debtor's estate in the name of
> Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn
> Gallian.

See Adv. No. 8:23-ap-01064-SC, Dk. 79 (**emphasis added**). Thus, $225,000 in equity

was avoided and preserved. Debtor's admission now that the lien is fraudulent does not

help her.[21]  As set forth above, but merits repeating, Debtor's opposition and collateral

---

[20] *See also Polk v. Cty. of Contra Costa*, 2014 U.S. Dist. LEXIS 111713, at *22 (E.D. Cal. Aug. 11, 2014)
("Case law is clear that a homestead exemption is not superior to a consensual lien. *See In re Patterson*,
139 B.R. 229, 232 (B.A.P. 9th Cir. 1992) (stating that a consensual lien "cannot be defeated by a
homestead exemption."); *see In re Pavich*, 191 B.R. 838, 847 (Bankr. E.D. Cal. 1996) ("[E]xemption laws
do not protect property from enforcement of consensual liens."); *see In re Bunn-Rodemann*, 491 B.R.
132, 136 (Bankr. E.D. Cal. 2013) ("[T]he [d]ebtor cannot claim an exemption in the value of the property
subject to the creditor's consensual lien. Exemptions may be claimed only against involuntary liens, such
as judgments, attachments, and execution liens.")); and *Babaee v. Marshack (In re Babaee)*, 2023 U.S.
App. LEXIS 24253, at *3 (9th Cir. Sep. 13, 2023) ("California law provides that consensual liens must be
paid ahead of homestead exemptions. *See* Cal. Civ. Proc. Code § 704.850; *see also Amin v. Khazindar*,
112 Cal. App. 4th 582, 588, 5 Cal. Rptr. 3d 224 (Cal. 2003) (finding that homestead exemption has no
effect on liens created voluntarily by property owners, nor does it have any effect on the claims of
creditors secured by liens with priority).").
[21] Judicial estoppel also prevents Debtor from benefitting from her admission that the liens are fraudulent.
"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting
one position, and then later seeking an advantage by taking a clearly inconsistent position. The doctrine
is aimed at not only preventing a party from gaining an advantage by asserting inconsistent positions, but
also ensuring "the orderly administration of justice and . . . the dignity of judicial proceedings," and to
"protect against a litigant playing fast and loose with the courts."" *Daff v. Wallace (In re Cass)*, 2013
Bankr. LEXIS 4653 (B.A.P. 9th Cir. 2013) (cleaned up).

1  attack of the earlier judgment is (as interpreted by this Court) "I know that it was a

2  fraudulent lien, and even though I swore under oath to the value of $225,000 of the lien

3  on several occasions, since it was a fake lien, the Trustee recovered nothing."  This

4  Court continues to observe that "nothing" would have resulted in a fraudulent payment

5  to Debtor's company of $225,000 had the Property been sold by the Trustee and had

6  the lien not been avoided. It is apparently only worth $0.00 if the creditors are entitled to

7  the money.

8          As a result of Trustee's avoidance of the fraudulent liens, equity in the Property

9  was created, which escalates to the benefit of the Estate. 11 U.S.C. § 551 provides that

10  any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of

11  the Estate. *See* 11 U.S.C. § 551 ("Any transfer avoided under section 522, 544, 545,

12  547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is

13  preserved for the benefit of the estate but only with respect to property of the estate.");

14  *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 518-20 (9th Cir. 1990)

15  (rejecting the argument that a trustee can preserve a transfer of a lien under § 551 only

16  to the extent that the interest is otherwise valid under state law); *accord Heintz v. Carey*

17  *(In re Heintz)*, 198 B.R. 581, 586 (9th Cir. B.A.P. 1996) ("§ 551 does not exclude

18  exempt property from preservation. An avoided interest or lien encumbering exempt

19  property is automatically preserved for the benefit of the estate under § 551."); *see also*

20  11 U.S.C. § 541(a)(3) (defining property of the estate to include any interest in property

21  that the trustee recovers under 11 U.S.C. § 550); 11 U.S.C. § 541(a)(4) (defining

22  property of the estate to include any interest in property preserved for the benefit of or

23  ordered transferred to the estate under 11 U.S.C. § 551).[22]

24  _____

25  [22] Further, the Supreme Court's ruling in *Schwab v. Reilly,* 560 U.S. 770, 778-89 (2010) supports this
   assertion. In *Schwab*, the Supreme Court delineated between "in-kind" exemptions and "dollar amount"

26  exemptions. *Id.* The Court held that the "provisions in § 522(d) ... permit debtors to exempt certain
   property in kind or in full regardless of value." *Id.* at 784. In the federal exemption scheme, in-kind

27  exemptions include "professionally prescribed health aids, . . . disability benefits, [and] unmatured life
   insurance contracts." *Id.* Unlike in-kind exemptions, dollar-amount exemptions are exemptions that allow

28  the debtor to exempt some portion of the exempt property's value. *Id.* at 800, n.5. While the effect of an
   allowed in-kind exemption is to remove the exempt property from the estate, for an allowed dollar-amount
   exemption, as is the case here, "title to the asset will remain with the estate pursuant to § 541." *Id.* at 792.

"Section 551 is intended to prevent the windfall to junior lienors that would
otherwise result when a trustee in bankruptcy successfully avoids a senior lien on
property." *In re Appalachian Energy Indus., Inc.,* 25 BR. 515, 516 (Bankr. M.D. Tenn.
1982). "The section as a whole prevents junior lienors from improving their position at
the expense of the estate when a senior lien is avoided."[23]  The same results occur for
homestead possessors (and in this case caused the fraudulent liens to be asserted in
the first place, although that is not a requirement).

Finally, Debtor may not reach equity achieved by the estate, as under 11 U.S.C.
§ 522(g) a debtor may not claim any exemption in amounts recovered by a trustee after
a debtor's voluntary transfer.

As explained by the court in *In re Bethea*:

> Under § 522(c), property exempted generally remains liable for a debt secured
> by a lien. *In re Granati*, 271 B.R. 89, 95 (Bankr. E.D. Va. 2001) ("[V]alid liens,
> even against exempt property, pass through bankruptcy and may be enforced
> against the collateral ...."). Accordingly, § 522 treats a debtor's interest in real
> property as distinct from a mortgagee's lien on that property. Unless the debtor
> specifically listed the lien as being exempted, his exemption of the real property
> alone did not suffice to claim an exemption of the lien (that upon avoidance by
> the trustee would be property of the estate and exemptible under § 522(g) if the
> debtor met certain conditions).

*In re Bethea*, 275 BR. 127, 129-130 (Bankr. D.D.C. 2002). Similarly, in the present
case, Debtor may not claim an exemption in the avoided equity and the assertion of her
homestead does not prevent Trustee's sale.

### C.  Buyer as Good-Faith Purchaser Under § 363(m)[24]

§ 363(m) provides that:

> The reversal or modification or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property does not affect
> the validity of a sale or lease under such authorization to an entity that purchased
> or leased such property in good faith, whether or not such entity knew of the
> pendency of the appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

---

[23] S. REP. No. 95-989, at 91 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5877; H.R. REP. No. 95-595,
at 376 (1977), reprinted in 1978 U.S.C.C.A.N. 5963.
[24] On appeal, a good faith finding under § 363(m) is reviewed for clear error. *Thomas v. Namba (In re
Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002).

1        Though the Bankruptcy Code and Rules do not provide a definition of good faith,

2    courts generally have followed traditional equitable principles in holding that a good faith

3    purchaser is one who buys "in good faith" and "for value." *In re M Capital Corporation*,

4    290 B.R. 743, 746 (9th Cir. BAP 2003). *See, e.g., In re Abbotts Dairies of Pennsylvania,*

5    *Inc.,* 788 F.2d 143, 147 (3rd Cir.1986). Typically, lack of good faith is shown by "fraud,

6    collusion between the purchaser and other bidders or the trustee, or an attempt to take

7    grossly unfair advantage of other bidders." *In re Ewell*, 958 F.2d 276, 281 (9th Cir.

8    1992) (quoting *In re Suchy,* 786 F.2d 900, 902 (9th Cir.1985)); *In re M Capital Corp.,*

9    290 B.R. at 746-47, 752 ("Where good faith has been challenged, facts must be

10    established to obtain the safety that section offers.").

11        "The choice of whether to make a finding of 'good faith' as part of the initial

12    sale process belongs, in this circuit, to the bankruptcy court. Because findings of

13    'good faith' made at the time of the sale may be premature because they are

14    made before the really interesting facts emerge, the Ninth Circuit does not

15    require that a finding of 'good faith' be made at the time of sale." *In re Thomas*,

16    287 B.R. 782, 785 (9th Cir. B.A.P. 2002). The relevant focus of inquiry is good

17    faith during the sale proceedings. *Cmty. Thrift & Loan v. Suchy (In re Suchy)*, 786

18    F.2d 900, 902 (9th Cir. 1985).

19        The original auction was conducted on March 4, 2025. The stalking horse

20    bidder (the original bidder) and an over-bidder appeared. The over-bidder won

21    the auction. The Court received an objection by Debtor to the Court's announced

22    section 363(m) finding made at the sale hearing on March 4, 2025.  That

23    objection asserted that a single broker represented the two potential buyers

24    appearing at the sale auction, and in fact the broker was also the stalking horse

25    bidder. The Court was first advised of the potential dual broker representation at

26    the time of the hearing. Reviewing the objection and undertaking further

27    research, the Court had several concerns and risks to consider, including (1)

28    conflict of interest between buyers, (2) the duty of loyalty and confidentiality, (3) a

risk of auction manipulation, (4) a possible reduced leverage for the clients, (5) possible disclosure and legal risks, and (6) creditor considerations and court scrutiny requirements.

This Court has always insisted on full transparency and a competitive bidding process in Section 363 sales. While full disclosure & consent may have been provided to both buyers, the Court and other parties in interest must have that information earlier than provided to evaluate the efficacy of the sales process, and the Court should have been provided an opportunity to consider and make any necessary adjustments, if required.

In this instance, the after-the-fact solution to ensure undivided loyalty, avoid conflicts and to provide full transparency, was to vacate the auction results of March 4, 2025, and order a new, second auction to be held on March 25, 2025, with prior full disclosures of broker representations of any buyers.

On March 27, 2025, at 11:00 am, the Court held a continued hearing to permit the Chapter 7 Trustee to conduct a new auction, which was conducted by the Chapter 7 Trustee on that date and time.

During the new auction hearing, upon the Trustee's request for the finding of good faith of the successful buyer under section 363(m), Debtor through counsel objected to a finding of good faith and requested that Debtor be permitted to supplement the record and be provided with an opportunity to submit evidence that the buyer is not a good faith purchaser under that provision of the Bankruptcy Code.[25] The Court permitted Debtor to file and serve additional

---

[25] During the April 10, 2025 hearing, Debtor's counsel asserted that the evidentiary hearing was not requested by Debtor's counsel. However, a review of the transcript from the March 27, 2025 hearing, reflects the following:

    Mr. Blank: Your honor, I just want to make a record that you have not allowed me to a fulsome opportunity to present evidence and that I have asked for that opportunity and you have denied it  .....

    Court: Do you have any evidence?

    Mr. Blank: ... and I have more to say and yet you have cut me off....

    Court: Yes, Mr. Blank, I have a very busy ...

    Mr. Blank: ...which I understand...

1  briefing and evidence in support of her contention that the successful buyer is not

2  one in good faith, *See* Order, Dk. 585, which provided additional time to further

3  address their positions and present evidence on this subject. Debtor, through

4  counsel, filed no evidence but stated that counsel would cross-examine any

5  witnesses provided by the Trustee and Buyer, and further argued that the

6  successful bidder at the March 25, 2025, auction be disqualified.

7       The Ninth Circuit Bankruptcy Appellate Panel has held that "[w]hile a

8  finding of 'good faith' is not an essential element for approval of a sale under

9  section 363(b), such a determination becomes important with respect to potential

10  mootness when an appeal is taken from the order authorizing the sale."

11  *Fitzgerald v. Ninn Worx SR, Inc. (In re Fitzgerald),* 428 B.R. 872, 880-81 (9th Cir.

12  BAP 2010) (citing *Thomas v. Namba (In re Thomas),* 287 B.R. 782, 785 (9th Cir.

13  BAP 2002)).

14       The BAP in *Fitzgerald* continues, "[t]he boilerplate 'good faith' finding in

15  the Sale Order does not suffice under section 363(m), and the bankruptcy court

16  should not have signed such an order without an evidentiary foundation. Id. at

17  881 (citing *T.C. Investors v. Joseph (In re M Capital Corp.*), 290 B.R. 743, 752

18  (9th Cir. BAP 2003)). "'Unless and until 'good faith' has been determined, the

19  appeal is not moot under section 363(m).'" Id. (citing In re Thomas, 287 B.R. at

20  785).

21       In order to allow an appellate court to determine conclusively the

22  mootness of any appeal, the record of the bankruptcy court must be very clear.

---

24      Court: Mr. Blank, I have a very busy calendar today and I understand that you file things
25  without permission, without leave of Court constantly and I am asking you one more time
do you have any evidence that you can tell me now with respect to countering the
26  evidence that this Court has with respect to a 363(m) finding? Do you have any
evidence?
27      Mr. Blank: The evidence before the Court, I believe, contradicts what the Court is saying
about granting a 363(m) finding.
    Court: Thank you very much. Do you have anything else?
28      Mr. Blank: No.
Hearing Transcript from 3/27/25 at 10:14:17 a.m. - 10:15:16 a.m.

That is because, under § 363(m), when a "sale of assets is made to a good faith

purchaser, it may not be modified or set aside unless the sale was stayed

pending appeal." *Paulman v. Gateway Venture Partners III, LP (In re Filtercorp,*

*Inc.),* 163 F.3d 570, 576 (9th Cir. 1998); 11 U.S.C. § 363(m).

> An "[a]bsence of good faith is 'typically shown by fraud, collusion between
> the purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.'" *Adeli v. Barclay* (In re Berkeley
> Del. Court, LLC), 834 F.3d 1036, 1041 (9th Cir. 2016) (quoting *Paulman v.*
> *Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),* 163 F.3d 570,
> 577 (9th Cir. 1998)). And the relevant focus of inquiry is good faith during
> the course of the sale proceedings. *Cmty. Thrift & Loan v. Suchy (In re*
> *Suchy*), 786 F.2d 900, 902 (9th Cir. 1985).

*Lind v. Spacone (In re Lind),* 2019 Bankr. LEXIS 2052, *7-8 (9th Cir. BAP 2019).

This is the reason that the Court established and conducted an evidentiary

hearing on the request for a section 363(m) finding.  Within its Order for the

conduct of an evidentiary hearing, the Court cautioned the parties that the

evidentiary hearing is expressly limited to the issue of whether a section 363(m)

good faith finding can be made as to the successful bidder of the Property, Mr.

Peplin. Notwithstanding this Order, Debtor's counsel continued to argue matters

outside the scope of the hearing, and the Court listened.

**The Findings and Conclusions regarding Good Faith of the Buyer**

**under Section 363(m).**

First, the determination of a finding of good faith under Section 363(m)

does not impact at all the determination of a sale result under Section 363. This

proceeding only addresses whether the buyer at the auction is a good faith

purchaser for purposes of implementing the provisions of Section 363(m). The

latest request of Debtor to disqualify the buyer is outside the scope of the

proceedings here.[26]

---

[26] *As set forth in the earlier footnote,* fn. 19, Debtor raised another argument recently, that a successful
buyer was required to be eligible to hold a lease in the mobile home park. That is incorrect. First, anyone
could purchase the mobile home at auction from the Estate; being allowed to have a lease in the mobile

Case 8:21-bk-10710-SC    Doc 500 Filed 04/10/25    Entered 04/10/25 15:36:50    Desc
Main Document    Page 203 of 261

1    Section 363 of the Bankruptcy Code generally allows the trustee to use, sell, or

2 lease property of an estate, other than in the ordinary course of business, after notice

3 and a hearing. 11 U.S.C. § 363. Under § 363(m), the validity of a "sale or lease of

4 property" executed under the terms of section 363 cannot be challenged on appeal

5 "unless [the bankruptcy court's] authorization and such sale or lease were stayed

6 pending appeal." *Id.* § 363(m). This is why, in almost all sales proceedings, the Trustee

7 asks for a good faith finding with respect to the successful purchaser. It is the Trustee's

8 burden to demonstrate good faith. The Trustee has presented significant evidence to

9 support the assertion and basis for a good faith finding under § 363(m).

10    For purposes of a full appreciation of this Court's understanding of its duties with

11 respect to its § 363(m) finding, the standards of review of its decision follow.

12    A reviewing court analyzes a bankruptcy court's determination of a good faith

13 purchaser pursuant to 11 U.S.C. § 363(m) under the clear error standard of review.

14 *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002). The "clear

15 error" standard of review is a deferential standard used by appellate courts when

16 reviewing findings of fact made by a trial court or lower tribunal, particularly in bench

17 trials (trials without a jury) or in certain administrative or bankruptcy proceedings.

18    It means that the appellate court will not overturn a factual finding unless it has a

19 "definite and firm conviction that a mistake has been committed."  *In re Banks*, 263 F.3d

20 862, 869 (9th Cir. 2001) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).

21    The appellate court gives great deference to the trial court, which had the

22 opportunity to see the witnesses, hear the testimony, and evaluate credibility.

23    It applies to findings of fact, not legal conclusions (which are reviewed de novo).

24 It further does not mean the appellate court must be convinced the lower court was

25 correct — just that the finding wasn't clearly wrong, and it is often phrased like this:

26

27

28
_____

home park was not a condition of the sale. Second, and more ironically, Debtor herself never had a lease
with the mobile home park.

A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*United States v. U.S. Gypsum Co.,* 333 U.S. 364 (1948).

The Ninth Circuit has always adopted this standard of review. For example, and recently:

> [T]he bankruptcy court did not clearly err by finding that the purchaser of the real property was a bona fide good faith purchaser. *See Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.),* 846 F.2d 1170, 1173-74 (9th Cir. 1988) (discussing good faith requirement for operation of mootness rule in bankruptcy; explaining that good faith does not depend on value); *see also Decker v. Tramiel (In re JTS Corp.),* 617 F.3d 1102, 1109 (9th Cir. 2010) (standard of review for bankruptcy court's findings of fact).

*Lind v. Spacone (In re Lind),* 840 Fed. Appx. 988, 989 (9th Cir. 2021). This standard mandates that the bankruptcy court look to the facts to determine the good faith purchaser, which includes the sales process undertaken by the bankruptcy estate.

At the March 27, 2025, auction, Mr. Peplin overbid on the Property and was the successful buyer. The stalking horse bidder remained as the first bidder and it did not overbid Mr. Peplin's overbid. As noted above, Mr Peplin was represented by a separate broker.

On April 10, 2025, the Court conducted an evidentiary hearing on the issue of § 363(m). Eight declarations from five parties were offered into evidence and considered by this Court. Those declarations are as follows: Jeffrey Golden, Chapter 7 Trustee [Dk. 539], Greg Bingham [Dks. 539, 560, 579], Greg Peplin the successful buyer [Dks. 566, 577], Lauri Alvarez [Dk. 580], and Chris Houser [Dk. 591]. Combined, each of these declarations establish a prima facie case that the standards by the Ninth Circuit for a finding of good faith under § 363(m) have been met. Those standards are set forth above.

Debtor was offered the opportunity to cross-examine each of these declarants, but Debtor only requested that declarant Peplin be placed under oath and submit to cross-examination. Debtor's counsel inquired whether Mr. Peplin ever told Galaxy that they were free to overbid Mr. Peplin (paraphrased). Mr. Peplin responded, "not specifically." [27] The only other question Debtor's counsel posed was whether Mr. Peplin ever received anything from Galaxy, written, orally, or otherwise, stating that Galaxy waived any right to any commission that may have been earned by representing Mr. Peplin in the sale (paraphrased). Mr. Peplin responded, "no."

Trustee's attorney, Mr. Israel, questioned Mr. Peplin and asked whether Mr. Peplin had a conversation with David Guarino of Galaxy and advised him that he was no longer Mr. Peplin's broker (paraphrased). Mr. Peplin responded that he had that conversation and confirmed he told Guarino that he was no longer his broker. However, Debtor's counsel objected to Mr. Peplin's responses as "hearsay." The Court overruled the objection. Trustee's attorney also asked Mr. Peplin whether his statement, that he told Mr. Guarino that he was no longer his broker, was a correct one, which Mr. Peplin answered in the affirmative. Debtor's counsel again objected to the response asserting hearsay. The Court again overruled the objection and finds that they are party admissions (Mr. Peplin being a party to this § 363(m) finding). Nevertheless, the Court is not considering the responses to Trustee's questions of Mr. Peplin at the April 10, 2025 evidentiary hearing with respect to this decision, as they are irrelevant.

The Court is mindful that the original purpose of its evidentiary hearing was because of the March 27 demand of Debtor's counsel to offer evidence and argument.[28]

---

[27] Counsel did not object to his own questions as hearsay.
[28] *See* fn. 25.

The Court has carefully considered all of the evidence presented, and further has carefully considered all of the policy and economic arguments presented by Debtor with respect to the conduct of the auction and this Court's analysis under section 363(m).

Absence of good faith is "typically shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Filtercorp, Inc.,* 163 F.3d 570, 577 (9th Cir. 1998).

The Court has found the 2019 Fifth Circuit Court of Appeals decision *Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019) quite helpful, as it directly addressed the issue of dual broker representation of two potential buyers involved in a trustee section 363 sale. In reviewing a District Court's dismissal of a debtor's appeal, the Fifth Circuit set out what this Court believes are excellent guidelines to assist in consideration of Debtor's objections. Addressing the same objections as this Debtor presents, the Fifth Circuit said:

> Rai primarily argues that Hawkins, the real estate broker, violated ethical and fiduciary duties, which Rai believes precludes a finding of good faith. This allegation is based on Hawkins's representing the purchasers and, through an agent of his firm, another bidder, meaning that Hawkins would have earned a commission if either bidder bought the property. But Rai does not show that Hawkins failed to disclose this conflict or to obtain consent to represent both parties. More fundamentally, as the district court observed, that Hawkins's firm represented two bidders does not show collusion. Because Hawkins would receive a commission from the sale to either of these bidders, he had no incentive to collude and depress the price; a reduction in the sales price would have adversely affected his pocketbook. Neither evidence nor common sense supports Rai's collusion allegation.
>
> Rai next argues that Taylor inadequately marketed the auction, resulting in suppression of the bidding. It is true that some ads were ineffective, but that is typically true of marketing efforts; some strategies work better than others. That is why marketeers try different approaches, which Taylor did. The result was a well-attended and competitive auction. Rai complains that only bidders from Mississippi attended. But a host of reasons might explain why there was only local interest despite national marketing efforts. None of this undermines the compelling evidence that the real estate sold for a market price. It is brazen for Rai to contend otherwise

when the company he helped run tried to sell Tract 4 just a couple years earlier for less than 1/3 of what it sold for at auction.

Lastly, Rai argues that Taylor might not have been a disinterested auctioneer because the trustee's son works for him "[f]rom time to time." It is unclear how this additional conjecture amounts to fraud that undermines the competitive nature of the auction or otherwise casts doubt on the economic evidence that the land was sold for value at a competitive auction.

*Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019).

Based upon the evidence before the Court arising throughout this proceeding, the Court makes the following findings of fact and conclusions of law: The auction was properly and adequately marketed; the auction had adequate participation; the auction encouraged competitive bidding that increased the sale price; there was no collusion even though during the first auction (now vacated) one broker may have represented different auction bidders (this has now been corrected by the new auction with no dual representation); the sale was an arm's length transaction; the price was adequate under the circumstances (the price was over the amount of the value of the Property listed in Debtor's schedules); and the Buyer is a good-faith purchaser under 11 U.S.C. § 363(m).

The broker's dual representation at the first auction did not suggest collusion, because the bidding was competitive. There was no dual representation at the second auction. It is also noted that the final sale price was as high or higher than the value placed on the Property by Debtor in her schedules. This Court has received evidence of a fair, non-collusive, honest auction, and has not been presented with evidence of any collusion, dishonesty, or untoward actions in this process. The Buyer is determined to be in good faith under the standards within the Ninth Circuit.

### D. Waiver of Rule 6004(h) Stay

Bankruptcy Rule 6004(h) provides that an "order authorizing the ... sale ... of property ... is stayed until the expiration of 14 days after entry of the order, <u>unless the court orders otherwise</u>." The 1999 Advisory Committee Note to Bankruptcy Rule 6004 states that the rule is intended "to provide sufficient time for a party to request a stay pending appeal of an order authorizing the ... sale ... of property under § 363(b) of the Code before the order is implemented." *In re Verity Health Sys. of California, Inc.*, 598 B.R. 283, 296 (Bankr. C.D. Cal. 2018).

In this matter, the Court declines to waive the 6004(h) stay. Debtor has prematurely filed a Motion for Stay Pending Appeal, which will be resolved under separate order.

### E. Turnover

Trustee seeks turnover of the Property. Section 542(a) of the Bankruptcy Code requires: "Except as provided in subsection (c) or (d) of this section, an entity… shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). Moreover, a debtor has an affirmative duty to cooperate with the Trustee and turn over all estate property to the Trustee. 11 U.S.C. § 521(a)(3)-(4).

Trustee asserts that he is not confident Debtor will timely vacate and requires an enforceable order granting possession to give assurances to the buyer that possession can be delivered upon the close of sale. Having reviewed the entire history of this case, the Court agrees. Bankruptcy courts have the power to authorize the issuance of a writ of execution or assistance authorizing and directing the Marshals to compel the surrender of real property. *See* Fed. R. Civ. P. 70 (made applicable to adversary proceedings by Fed. R. Bankr. P. 7070); *In re Kerlo*, 311 B.R. 256, 261 (Bankr. C.D. Cal. 2004) ("'a writ of assistance to deliver . . . possession [of real property] . . . was agreeable to the usages and principals of law' and 'clearly lies under the express terms of Fed. R. Civ. P. 70.'") (citing *Hamilton v. McDonald*, 503 F.2d 1138, 1148 (9th Cir.

1974)); *In re Bolden*, 327 B.R. 657, 668 (Bankr. C.D. Cal. 2005) (determining that debtor was uncooperative and "trustee needs a turnover order to market and sell the property"). Indeed, the Court may issue any order that is necessary and appropriate to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). Section 105 also authorizes the Court to grant a trustee's request for issuance of a writ of assistance. Specifically, orders for possession of property may be enforced through writs and orders under Section 105(a). *See In re Kerlo*, 311 B.R. at 262.

## IV.    Motion for Stay Pending Appeal

As noted above, one day prior to the March 4, 2025, hearings, Debtor filed a Motion to Stay Pending Appeal on March 3, 2025 [Dk. 562] ("Motion for Stay"). At the hearing, the Court treated the Motion for Stay as both a sur-reply and a Motion for Stay. Under separate order, this Court shall resolve the Motion for Stay Pending Appeal.

## V.    Conclusion

As set forth above, Trustee may sell the Property and obtain turnover of the Property. Debtor's objections are overruled. Mr. Peplin is the successful bidder and is awarded the finding of a good faith buyer under § 363(m).

Debtor has requested a denial of a 6004(h) waiver to give her time to preserve her appeal rights, which is the purpose of 6004(h). However, Debtor, prior to the issuance of this Memoraudum Opinion, has filed both a Notice of Appeal and Motion for a Stay Pending Appeal. The Motion for Stay Pending Appeal shall be addressed in a separate order. The Trustee's request for a waiver of rule 6004(h) is granted.

**IT IS SO ORDERED.**

Date: April 10, 2025

Scott C. Clarkson
United States Bankruptcy Judge

# EXHIBIT 2

# EXHIBIT 2

# EXHIBIT 2

1    ERIC P. ISRAEL (State Bar No. 132426)
     *EPI@LNBYG.COM*
2    LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
     2818 La Cienega Ave.
3    Los Angeles, CA 90034
     Telephone: (310) 229-1234
4    Facsimile: (310) 229-1244

5    Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

6

FILED & ENTERED

APR 14 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

7                    **UNITED STATES BANKRUPTCY COURT**

8                     **CENTRAL DISTRICT OF CALIFORNIA**

9                            **SANTA ANA DIVISION**

10   In re                                    Case No. 8:21-bk-11710-SC

11   JAMIE LYNN GALLIAN,                      Chapter 7

12              Debtor.

13                                            **SUPPLEMENTAL ORDER GRANTING
                                              TRUSTEE'S MOTION TO AUTHORIZE
14                                            SALE OF MANUFACTURED HOME
                                              CURRENTLY LOCATED AT 16222
15                                            MONTEREY LANE, SPACE 376,
                                              HUNTINGTON BEACH, CA 92649,
16                                            DECAL NO. LBM 1081, FREE AND
                                              CLEAR OF LIENS AND HOMESTEAD
17                                            EXEMPTION**

18                                            Date:    April 10, 2025
                                              Time:    9:30 a.m.
19                                            Crtrm.:  Courtroom "5C"

20          On April 10, 2025, 9:30 a.m., the Court held an evidentiary hearing on the Trustee's Motion

21   for Order Compelling Turnover of Manufactured Home Currently Located at 16222 Monterey

22   Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081 (Dk. 538); and the Trustee's

23   Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane,

24   Space 376, Huntington Beach, CA 92649 (Dk. 539).  The Court on April 10, 2025, having entered

25   its Order re: (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other

26   Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of

27   Assistance [Dk. 538]; (2) Trustee's Motion to Authorize Sale of Manufactured Home Currently

28   Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081,

                                              1

ES 852                        ES 852                        ES 852

1    Free and Clear of Liens and Homestead Exemption [Dk. 539]; and, (3) Good Faith Finding

2    Pursuant to Section 363(M) on April 10, 2025 (Dk. 593) (the "Omnibus Order"), having read and

3    considered the Declaration of Eric P. Israel Requesting Supplemental Orders on: (1) Chapter 7

4    Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over

5    Manufactured Home and Authorizing Issuance of Writ of Assistance (Dk. 538); and (2) Trustee's

6    Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane,

7    Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free and Clear of Liens and

8    Homestead Exemption (Dk. 539), good cause appearing, it is

9      ORDERED THAT:

10     1.  The Sale Motion (Dk. 539) is granted in its entirety.

11     2.  The proposed overbid procedures are approved.

12     3.  The sale by the Trustee of the entirety of the Manufactured Home Currently Located

13   at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081 (the

14   "Property"), including the interests of J-Sandcastle, LLC, to Greg Peplin (the "Buyer") for

15   $276,000.00, is confirmed on the terms and conditions set forth in the Sale Motion and in the

16   Purchase and Sale Agreement attached as Exhibit "1" to the Sale Motion.

17     4.  The sale shall be free and clear of any and all liens, claims or interests pursuant to

18   11 U.S.C. § 363(b), (f) and (h), "as is," "where is," with no warranty or recourse whatsoever.  The

19   Trustee having avoided and preserved the senior lien on the Property, the sale proceeds are free and

20   clear funds of the estate.

21     5.  The Trustee is authorized to pay brokerage commissions, ordinary and customary

22   costs of sale (including title and escrow fees), and undisputed amounts owed to the Lender through

23   escrow.  Brokers commissions are allowed and authorized for payment as follows:

24       (b)  3% ($8,280.00) to Coldwell Banker Realty; and

25       (c)  3$ ($8,280.00) to Real Estate Resolved.

26     6.  The Buyer, Gregory A. Peplin, is found to be good faith purchaser within the

27   meaning of 11 U.S.C. § 363(m).

28

7.     The Trustee is authorized to execute all documents and otherwise take all actions he deems necessary and appropriate to close the sale of the Property.

8.     There shall be no liability to the Trustee, in any capacity, by virtue of the sale of the Property hereinabove approved.  In the event the Trustee cannot consummate the sale for any reason, the sole remedy of the Buyer shall be limited to a return of the deposit.

9.     Upon closing of the sale, the escrow company closing the sale shall turn over promptly to the Trustee the balance of the proceeds of sale remaining after payment of costs and allowed sums under this order, as appropriate.

10.     The filing of this order with the California Department of Housing and Community Development shall constitute a discharge, termination and cancellation as to the Property of all liens, without the need for reconveyance or release of such liens, encumbrances, or other interests.

11.     The 14-day stay imposed by FRBP 6004(h) is not waived, because the Trustee withdrew the request that it be waived at the initial hearing on March 4, 2025.

###

Date: April 14, 2025

Scott C. Clarkson
United States Bankruptcy Judge

# EXHIBIT 3

# EXHIBIT 3

# EXHIBIT 3

ERIC P. ISRAEL (State Bar No. 132426)
*EPI@LNBYG.COM*
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Ave.
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Jeffrey I. Golden, Trustee

FILED & ENTERED

APR 14 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte      DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:21-bk-11710-SC |
| JAIME LYNN GALLIAN, | Chapter 7 |
| Debtor. | **SUPPLEMENTAL ORDER GRANTING TRUSTEE'S MOTION FOR ORDER COMPELLING TURNOVER OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081 (DOCKET NO. 538)** |
| | Date:    April 10, 2025 |
| | Time:    9:30 a.m. |
| | Place:   Courtroom "5C" |
| |          411 W. 4th Street, |
| |          Santa Ana, California |

On April 10, 2025, 9:30 a.m., the Court held an evidentiary hearing on the Trustee's Motion for Order Compelling Turnover of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No. LBM 1081 (Dk. 538). The Court on April 10, 2025, having entered its Order re: (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of

ES 856             ES 856             ES 856

1

1   Writ of Assistance (Dk. 538); (2) Trustee's Motion to Authorize Sale of Manufactured Home

2   Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No.

3   LBM 1081, Free and Clear of Liens and Homestead Exemption (Dk. 539); and, (3) Good Faith

4   Finding Pursuant to Section 363(M) on April 10, 2025 (Dk. 593) (the "Omnibus Order"), having

5   read and considered the Declaration of Eric P. Israel Requesting Supplemental Orders on: (1)

6   Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and

7   Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance (Dk. 538); and (2)

8   Trustee's Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey

9   Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free and Clear of Liens and

10  Homestead Exemption (Dk. 539) (Dk. 597), good cause appearing, it is

11        ORDERED THAT:

12        1.      The Turnover Motion (Dk. 538) is granted in its entirety.

13        2.      The Debtor and any other occupants of the Property must vacate and turn over all

14  possession, custody and control of the Property to the Trustee by April 24, 2025.

15        3.      The Debtor and any other occupants of the Property must leave the Property vacant

16  and in its present, good, broom-swept condition without any refuse, trash, or personal belongings

17  remaining.

18        4.      The Debtor and any occupants of the Property must provide the Trustee with all keys

19  to the Property, along with any security codes and garage door and/or gate openers, by April 24,

20  2025.

21        5.      The Trustee is authorized to prepare a writ of assistance consistent with this order for

22  issuance by the Clerk of the Court.  The Trustee may levy or execute on such writ should the Debtor

23  or any other occupants fail to timely vacate the Property as set forth in this order.

24        6.      The United States Marshals Service (the "U.S. Marshal") is authorized to effectuate

25  an eviction of all occupants and turn over possession of the Property to the Trustee or his agents

26  should any occupants fail to timely comply with the deadline stated in this order, including the use of

27  any reasonable force necessary to enforce this order.  Pursuant to Local Bankruptcy Rule 7064-1(e):

28

ES 857                          ES 857                          ES 857

1    Upon execution and entry of this Order, the United States Marshals Service [and any other

2    executing officer authorized by the court] (collectively, the "U.S. Marshal") is immediately

3    directed to assist Trustee to enforce the underlying order awarding possession. Trustee and

4    his authorized agent(s) will act as substitute custodian of any and all items of personal

5    property seized pursuant to this Order and the U.S. Marshal shall have no liability arising

6    from any acts, incidents, or occurrences in connection with the seizure of the personal

7    property located at the subject real property arising in the ordinary authorized scope of duties

8    of the U.S. Marshal (which acts do not include acts arising from negligent or intentional

9    tortious conduct), including any third party claims and the U.S. Marshal shall be discharged

10   of his or her duties and responsibilities for safekeeping of the seized goods. The U.S. Marshal

11   accomplishing such eviction or seizure shall use whatever reasonable force necessary to

12   break open and enter the subject real property regardless of whether the premises or location

13   is locked or unlocked, occupied or unoccupied and to inspect the contents of any room,

14   closet, cabinet, vehicle, container, desk or documents. Anyone interfering with the execution

15   of this Order is subject to arrest by law enforcement officials

16   7.    The Trustee is authorized without further Court order to remove or destroy any items

17   of personal property remaining at the Property.  The Trustee and his agents are deemed to have

18   satisfied all obligations they may have under applicable law relating to the removal and/or

19   abandonment of the personal property.

20                                  ###

21

22

23

24   Date: April 14, 2025

Scott C. Clarkson
United States Bankruptcy Judge

25

26

27

28

ES 858                     ES 858                     ES 858

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled: **NOTICE OF APPEAL AND STATEMENT OF ELECTION**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
 <u>04/14/2025</u> , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☒ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) _____ , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| <u>4/14/2025</u> | <u>Christopher L. Blank</u> | <u>/S/Christopher L. Blank</u> |
| *Date* | *Printed Name* | *Signature* |

December 2023
**ES 859**

Page 3
**ES 859**

Official Form 417A
**ES 859**

## SERVICE LIST

8:21-bk-11710-SC Notice will be electronically mailed to:

Bradford Barnhardt on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home
Estates
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Christopher L Blank on behalf of Debtor Jamie Lynn Gallian
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

ES 860                          ES 860                          ES 860

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Laila Rais on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Rais on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Rais on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com,

lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

8:21-bk-11710-SC Notice will not be electronically mailed to:

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Janine Jasso
PO Box 370161
El Paso, CA 79937

Levene Neale Bender Yoo & Golubchik L.L.P.
2818 La Cienega Ave
Los Angeles, CA 90034

Michael D Poole on behalf of Creditor The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

**Part 2: Identify the subject of this appeal**

1.  Describe the judgment—or the appealable order or decree—from which the appeal is taken:
    Order re Trustee's Motion for Sale, Turnover and Good Faith. Docket No. 593, Ent. 4/10/25, Exh. 1.
    Supplemental Order re Sale, Docket No. 598, Ent. 4/14/25, Exh. 2.
    Supplemental Order re Turnover, Docket No. 599, Ent. 4/14/25, Exh. 3.

2.  State the date on which the judgment—or the appealable order or decree—was entered: 04/10/2025

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1.  Party: Trustee, Jeffrey Golden

    Attorney:

    Eric P. Israel
    LEVENE, NEALE, BENDER, YOO & GOLUBCHICK, L.L.P.
    2818 La Cienega Ave.
    Los Angeles, CA 90034
    EPI@LNBYG.com .

2.  Party: Creditor, Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates

    Attorney:

    D. Edward Hays
    MARSHACK HAYS WOOD LLP
    870 Roosevelt
    Irvine, CA 92620
    ehays@marshackhays.com

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign below**

Christopher L. Blank                                    Date: 04/14/2025

Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

ES 863                                    ES 863                                    ES 863

CHRISTOPHER L. BLANK (SBN 115450)
CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2973 Harbor Blvd. #506
Costa Mesa, CA 92626
Telephone:    (949) 250-4600
Email:        chris@chrisblanklaw.com

Attorney for Debtor Jamie Lynn Gallian

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | ) BK Case No. 8:21-bk-11710-SC |
| | ) |
| | ) Chapter 7 |
| | ) |
| JAMIE LYNN GALLIAN | ) HOLOGRAPHIC SIGNATURE OF |
| | ) DEBTOR'S COUNSEL ON DEBTOR'S |
| | ) NOTICE OF APPEAL [Docket 600] |
| Debtor. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

TO THE COURT AND INTERESTED PARTIES: Please see the attached holographic

signature of Debtor's Counsel on Debtor's Notice of Appeal.


Dated:  April 15, 2025                    CHRISTOPHER L. BLANK, ATTORNEY
                                          AT LAW, PC

                                          By:    /S/*Christopher L. Blank*
                                          Christopher L. Blank, Attorney for Debtor
                                          Jamie Lynn Gallian

**Part 2: Identify the subject of this appeal**

1.  Describe the judgment—or the appealable order or decree—from which the appeal is taken:
    Order re Trustee's Motion for Sale, Turnover and Good Faith. Docket No. 593, Ent. 4/10/25, Exh. 1.
    Supplemental Order re Sale, Docket No. 598, Ent. 4/14/25, Exh. 2.
    Supplemental Order re Turnover, Docket No. 599, Ent. 4/14/25, Exh. 3.
2.  State the date on which the judgment—or the appealable order or decree—was entered: 04/10/2025

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1.  Party:  Trustee, Jeffrey Golden

    Attorney:

    Eric P. Israel
    LEVENE, NEALE, BENDER, YOO & GOLUBCHICK, L.L.P.
    2818 La Cienega Ave.
    Los Angeles, CA 90034
    EPI@LNBYG.com  .

2.  Party:  Creditor, Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates

    Attorney:

    D. Edward Hays
    MARSHACK HAYS WOOD LLP
    870 Roosevelt
    Irvine, CA 92620
    ehays@marshackhays.com

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒  Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign below**

Christopher L. Blank _____    Date: 04/14/2025
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

ES 865                          ES 865                          ES 865

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*):

### HOLOGRAPHIC SIGNATURE OF DEBTOR'S COUNSEL ON DEBTOR'S NOTICE OF APPEAL

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 4, 2025 Brief and April 15, 2025 Exhibit 1, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 15, 2025 | Christopher L. Blank | /S/Christopher L. Blank |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## SERVICE LIST

8:21-bk-11710-SC Notice will be electronically mailed to:

Bradford Barnhardt on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Christopher L Blank on behalf of Debtor Jamie Lynn Gallian
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

ES 867                              ES 867                              ES 867

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Laila Rais on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Rais on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Rais on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com,

lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

8:21-bk-11710-SC Notice will not be electronically mailed to:

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Janine Jasso
PO Box 370161
El Paso, CA 79937

Levene Neale Bender Yoo & Golubchik L.L.P.
2818 La Cienega Ave
Los Angeles, CA 90034

Michael D Poole on behalf of Creditor The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

FILED

APR 1 5 2025

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>JAMIE LYNN GALLIAN<br>aka JAMIE L. GALLIAN<br>dba J-SANDCASTLE CO., LLC<br>dba J-PAD, LLC<br><br><br>Debtor(s) | CASE NO.: 8:21-bk-11710-SC<br>ADVERSARY NO.: N/A<br>NOTICE OF APPEAL FILED:  04/14/2025<br>NOTICE OF CROSS APPEAL FILED :<br>BANKRUPTCY CASE FILED :  07/09/2021<br>APPEAL DOCKET ENTRY NO.:  600 |
| <br><br><br>vs.                    Plaintiff(s)<br><br><br><br><br><br>Defendant(s) | <br><br><br>**NOTICE OF REFERRAL OF APPEAL** |

To all parties in interest, and the:

☐ Bankruptcy Appellate Panel of the Ninth Circuit
☒ United States District Court, Central District of California

You are hereby notified that the following document(s) have been filed at the Bankruptcy Court.

☐ Motion for Leave to Appeal
☐ Answer in opposition to Motion for Leave to Appeal
☒ Notice of Appeal and Statement of Election
☐ Notice of Cross-Appeal
☐ Appellant's Statement of Election to Transfer Appeal to the District Court
☐ Other (*specify*):

By virtue of orders of the Judicial Council of the Ninth Circuit and the District Court for this District, the above appeal and related documents have been referred to the Bankruptcy Appellate Panel or U.S. District Court, as indicated above.

I certify that a true copy of the Notice of Appeal and Statement of Election, Notice of Referral of Appeal, Transcript Order Form, and Notice of Transcript were served on each of the parties listed in the Appeal, together with a copy of the Amended Order Continuing the Bankruptcy Appellate Panel of the Ninth Circuit, as applicable.

Kathleen J. Campbell
Clerk of Court

Date:  04/15/2025          By:    /s/ Nickie Bolte   _Nickie Bolte_
                                           Deputy Clerk

*July 2015*                                                              APPEAL.NOTICE.REFERRAL
**ES 870**                          **ES 870**                          **ES 870**

# NOTICE OF APPEAL SERVICE LIST

1. **SERVED BY THE BANKRUPTCY COURT BY NOTICE OF ELECTRONIC FILING (NEF):**

☐ Bankruptcy Appellate Panel of the Ninth Circuit at bapca09filings@ca9.uscourts.gov
☒ United States District Court at bkappeal_cacd@cacd.uscourts.gov

Office of the United States Trustee
☐ Los Angeles Division at ustpregion16.la.ecf@usdoj.gov
☐ Riverside Division at ustpregion16.rs.ecf@usdoj.gov
☒ Santa Ana Division at ustpregion16.sa.ecf@usdoj.gov
☐ San Fernando Valley Division at ustpregion16.wh.ecf@usdoj.gov
☐ Northern Division at ustpregion16.nd.ecf@usdoj.gov

Other parties served by NEF:
Bradford Barnhardt    bbarnhardt@marshackhays.com,
bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
Christopher L Blank    chris@chrisblanklaw.com
Aaron E. De Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com;
Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
Jeffrey I Golden (TR)    lwerner@go2.law, kadele@go2.law;C205@ecfcbis.com
D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;
cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
Brandon J. Iskander    biskander@goeforlaw.com, kmurphy@goeforlaw.com
Eric P Israel    epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

XX Service information continued on attached page

2. **SERVED BY THE BANKRUPTCY COURT BY UNITED STATES MAIL:**

Jamie Lynn Gallian
aka Jamie L Gallian; dba J-Sandcastle Co., LLC
dba J-PAD, LLC
16222 Monterey Lane, Unit 376
Huntington Beach, CA  92649

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

XX Service information continued on attached page

I.  **SERVED BY THE BANKRUPTCY COURT BY NOTICE OF ELECTRONIC FILING (NEF):**

- **Bradford Barnhardt**  bbarnhardt@marshackhays.com,
  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- **Christopher L Blank**  chris@chrisblanklaw.com
- **Aaron E. De Leest**  adeleest@marshackhays.com,
  adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **Robert P Goe**  kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com
- **Jeffrey I Golden (TR)**  lwerner@go2.law, kadele@go2.law;C205@ecfcbis.com
- **D Edward Hays**  ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Brandon J. Iskander**  biskander@goeforlaw.com, kmurphy@goeforlaw.com
- **Eric P Israel**  epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com
- **Shantal Malmed**  shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com
- **Shantal Malmed**  , cheryl.caldwell@gmlaw.com
- **Mark A Mellor**  mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com
- **Laila Rais**  lmasud@marshackhays.com,
  lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- **Valerie Smith**  claims@recoverycorp.com
- **United States Trustee (SA)**  ustpregion16.sa.ecf@usdoj.gov


II.  **SERVED BY THE COURT VIA U.S. MAIL**


Janine Jasso
PO Box 370161
El Paso, CA 79937

Levene Neale Bender Yoo & Golubchik L.L.P.
2818 La Cienega Avenue
Los Angeles, CA 90034

Michael D Poole
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Christopher L. Blank, SBN 115450<br>CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC<br>2973 Harbor Blvd. #506<br>Costa Mesa, CA 92626<br>chris@chrisblanklaw.com<br><br><br><br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor, Jamie Lynn Gallian | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br><br>JAMIE LYNN GALLIAN<br><br><br><br>Debtor(s). | CASE NO.: 8:21-bk011710-SC<br><br>ADVERSARY NO.: N/A<br>(*if applicable*)<br><br>CHAPTER: 7**Select Chapter** |
|---|---|
| N/A<br><br><br><br>Plaintiff(s) (*if applicable*).<br>vs.<br>N/A<br><br><br><br>Defendant(s) (*if applicable*). | **NOTICE OF APPEAL**<br>**AND STATEMENT OF ELECTION** |

**Part 1:  Identify the appellant(s)**

1.   Name(s) of appellant(s):  DEBTOR, JAMIE LYNN GALLIAN

2.   Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐ Plaintiff
☐ Defendant
☐ Other (*describe*):

For appeals in a bankruptcy case and not in an  adversary proceeding.
☒ Debtor
☐ Creditor
☐ Trustee
☐ Other (*describe*):

## Part 2: Identify the subject of this appeal

1. Describe the judgment—or the appealable order or decree—from which the appeal is taken:
   Order re Trustee's Motion for Sale, Turnover and Good Faith. Docket No. 593, Ent. 4/10/25, Exh. 1.
   Supplemental Order re Sale, Docket No. 598, Ent. 4/14/25, Exh. 2.
   Supplemental Order re Turnover, Docket No. 599, Ent. 4/14/25, Exh. 3.
2. State the date on which the judgment—or the appealable order or decree—was entered: 04/10/2025

## Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: Trustee, Jeffrey Golden

   Attorney:

   Eric P. Israel
   LEVENE, NEALE, BENDER, YOO & GOLUBCHICK, L.L.P.
   2818 La Cienega Ave.
   Los Angeles, CA 90034
   EPI@LNBYG.com

2. Party: Creditor, Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates

   Attorney:

   D. Edward Hays
   MARSHACK HAYS WOOD LLP
   870 Roosevelt
   Irvine, CA 92620
   ehays@marshackhays.com

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

 Christopher L. Blank _____     Date: 04/14/2025___
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

# EXHIBIT 1

# EXHIBIT 1

# EXHIBIT 1

FILED & ENTERED

APR 10 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

In re:

Jamie Lynn Gallian,

Debtor.

Case No.: 8:21-bk-11710-SC

CHAPTER 7

**ORDER RE:**

**(1) CHAPTER 7 TRUSTEE'S MOTION FOR ORDER COMPELLING DEBTOR AND ANY OTHER OCCUPANTS TO VACATE AND TURN OVER MANUFACTURED HOME AND AUTHORIZING ISSUANCE OF WRIT OF ASSISTANCE [DK. 538];**

**(2) TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION [DK. 539]; AND,**

**(3) GOOD FAITH FINDING PURSUANT TO SECTION 363(M).**

On March 4, 2025, the Court held hearings on the (1) *Chapter 7 Trustee's Motion For Order Compelling Debtor And Any Other Occupants To Vacate And Turn Over Manufactured Home And Authorizing Issuance Of Writ Of Assistance,* filed January 31, 2025 [Dk. 538] ("Turnover Motion"), and the (2) *Trustee's Motion To Authorize Sale Of*

*Manufactured Home Currently Located At 16222 Monterey Lane, Space 376,*
*Huntington Beach, CA 92649, Decal No. LBM1081, Free And Clear Of Liens And*
*Homestead Exemption* filed January 31, 2025 [Dk. 539] ("Sale Motion") (collectively,
"Motions"). Prior to the March 4, 2025, hearing, in response to the tentative rulings,
Debtor filed a *Motion to Stay Pending Appeal* on March 3, 2025 [Dk. 562]. Appearances
for the March 4, 2025, hearing are as noted in the record.

During the March 4, 2025, hearing, the Court permitted an auction to occur with
respect to the manufactured home located at 16222 Monterey Lane, Space 376,
Huntington Beach, CA 92649, Decal No. LBM1081 ("Property"), and an overbidding
party, Mr. Gregory A. Peplin ("Mr. Peplin" or "Buyer"), was the successful bidder. On the
evidence presented before it, however, the Court was not prepared to make a good faith
finding with respect to Mr. Peplin. The Court permitted the Chapter 7 Trustee to submit
a supplemental declaration in support of his request for a good faith finding under §
363(m) for the Court's review. Accordingly, the Declaration of Gregory A. Peplin was
filed on March 7, 2025 [Dk. 566], attesting to his good faith status to support a good
faith finding under 11 U.S.C. § 363(m). On March 12, 2025 [Dk. 568], Debtor filed an
Opposition to Mr. Peplin's declaration. The Opposition asserts that a single broker (who
was also the stalking horse bidder), Galaxy Homes LLC ("Galaxy") represented the two
potential buyers appearing at the March 4, 2025, sale auction. Although this Court
believed that the objection raised by Debtor was unmeritorious, instead of sustaining or
overruling the objection, the Court issued an order on March 13, 2025 [Dk. 569],
vacating the auction results and setting a new auction date of March 27, 2025. The
Trustee conducted a new auction at that time,[1] with appearances as noted in the record.
Mr. Peplin was again the successful bidder. The Court then set an evidentiary hearing
on the matter of the section 363(m) good faith purchaser determination, which was held

---

[1] At the March 27, 2025, auction, Mr. Peplin was no longer represented by Galaxy Homes, but instead
was represented by a different broker, Lori Alvarez of Real Estate Resolved. *See* Declaration of Lori
Alvarez filed 3/24/25 [Dk. 580].

on April 10, 2025.[2]  Appearances for the April 10, 2025, hearing are as noted in the record.

The Court, having considered the various Motions, all relevant pleadings, including the Motion for Stay Pending Appeal (which is denied by separate order but is incorporated into this Order by reference), the docket as a whole including those of the adversary proceedings of this case, and for the reasons set forth, finds good cause to GRANT the Motions for Sale, Turnover, and for a good faith purchaser finding under 11 U.S.C. § 363(m).

Following an evidentiary hearing held on April 10, 2025, on the sole subject of addressing the Trustee's request to consider and decide the good faith purchaser status of the Buyer, the Court finds that the successful purchaser was a good faith purchaser and finds that the factual and legal requirements of section 363(m) are met. The objections presented to the § 363(m) determination by Debtor are overruled.

The Trustee and the Buyer were required to present competent evidence of the status as a good faith purchaser of the Buyer, and they have met and exceeded their burden. Debtor has presented no evidence of her own, although she was permitted the opportunity to examine all declarants during the § 363(m) evidentiary hearing. She examined one declarant. Debtor has not disturbed Trustee's and Buyer's demonstrations of good faith.

## I.    Preliminary Statement

Before the filing of this voluntary Chapter 7 bankruptcy proceeding, Jamie Lynn Gallian ("Debtor" or "Gallian") engaged in certain fraudulent conduct with respect to the placement of a number of fraudulent liens on the Property in an attempt to shelter the Property from her creditors. She also submitted to this Court numerous false sworn statements under penalty of perjury throughout this case.

---

[2] § 363(m) provides that "[t]he reversal or modification or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

Debtor has the right to assert her homestead, which was awarded to her by the Bankruptcy Court. Her current problem is, by a combination of her own fraud and the Trustee's actions to avoid the fraudulent liens she originally placed on the mobile home, she put into motion the Trustee's duty to recover the fraudulent lien (in the amount of $225,000), the recovery of which by operation of law is positioned in front of (higher in priority) her homestead rights.

This result is seen often in bankruptcy courts, as the Bankruptcy Code and its recovery and avoidance statutes, specifically sections 551, 548 and 522(g)[3] *are designed to encourage debtors and others not to engage in fraudulent conduct before they file their bankruptcy petition.*[4] These sections of the Bankruptcy Code are also designed to provide recovery to the estate by a chapter 7 trustee's ability to avoid fraudulently or illegally placed liens onto property prior to the filing of the bankruptcy petition.

Additionally, when Debtor placed the fraudulent lien totaling $225,000[5] on the Property, purportedly held by the LLC, she also gave various family members and friends more liens on top of the $225,000 lien. These liens encumbered the Property without legitimate obligations and were avoided at considerable expense by the Trustee.[6] Ironically in this matter, Debtor's opposition and collateral attack of the earlier judgment is (as the Court interpreted it) "I know that it was a fraudulent lien, and even though I swore under oath to the value of $225,000 of the lien on several occasions,

---

[3] Based on the plain language of 11 U.S.C. § 551, any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. Further, Section 522(g) prohibits her from claiming an exemption in the equity in the Property which she voluntarily transferred but which Trustee recovered.

[4] It usually works like this: a potential individual debtor asks their potential bankruptcy lawyer "[w]hy can't I put a fake lien on my house in favor of my son or cousin so that the bankruptcy trustee won't sell my home?" The lawyer (at least a competent one) explains "[B]ecause if you do this, and the trustee avoids the lien, you might have your possible homestead subordinated to the avoided lien amount, whether the lien was actual or not. Don't do it."

[5] Debtor originally scheduled the obligation in favor of J-Pad as $175,000; she subsequently amended her schedules to falsely increase the amount to $225,000.

[6] Debtor's discharge was denied after a trial by a decision issued May 23, 2023, in which the Court found that Debtor had concealed her equity in the Property by issuing fraudulent liens, including the $225,000 J-Pad lien. *See* Adv. No. 8:21-ap-01097-SC, Dk. 81. That decision was affirmed on appeal and is now final.

since it was a fake lien, the Trustee recovered nothing." This Court notes that "nothing" would have resulted in a windfall payment of $225,000 to Debtor's company J-Pad LLC, of whom Debtor was the sole member.

The Court also notes that Debtor has maintained her ruse as to the validity of the lien up to, and even after, the Court avoided the fraudulent lien.

In summary, through costly adversary proceedings in this case, the Chapter 7 Trustee avoided, recovered and preserved both the fraudulent transfers of the Property and Debtor's fraudulent liens for the benefit of the estate. No party appealed those judgments, and they are final. The entirety of the opposition filed by Debtor on the present issue of the sale is a collateral attack on the previous avoidance actions.[7]

The Trustee now seeks to sell the Property and obtain its turnover, despite Debtor's objections. Although Debtor has, until this point, always maintained that the at-issue liens were legitimate, she now apparently contends that the liens lacked value.[8] Therefore, Debtor argues that, since the liens lacked value, Trustee cannot sell the Property over her objection. However, such a position would reward Debtor's fraudulent conduct, undermining the Bankruptcy Code's provisions that are designed to prevent such abuses and at the same time protect the interests of honest debtors and creditors alike.[9] In other words, Debtor's position is that a debtor, pre-petition, may place fraudulent liens on her property to obfuscate any equity, and after she is caught and a trustee avoids, recovers and preserves those fraudulent liens (in whatever amount they

---

[7] The Order on avoidance of the $225,000 lien is found at Adv. No. 8:23-ap-01064-SC, Dk. 79. The Order specifically sets forth the recovered value of the $225,000, which cannot now be challenged by a collateral attack in this proceeding.

[8] The Court observes that this attempted concession is being made by Debtor not to right her wrongs, but to circumvent the consequences of having a lien avoided, recovered, and preserved by the Trustee for the benefit of an estate. As set out in this Memorandum Opinion, this argument is (1) too clever by half, (2) permits this Court to directly infer the intentional wrongdoing and bad faith of the Debtor (where the earlier and common prevarications by the Debtor, until the last moment, have insisted that the lien in question was legitimate), and (3) is an impermissible collateral attack on a final (un-appealed) judgment of this Court.

[9] A central purpose of the Code is to provide individual debtors with a procedure to reorder their affairs and make peace with their creditors, but the Bankruptcy Code limits this opportunity of a "fresh start" to *honest* but unfortunate debtors. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).

were recorded or asserted to be at the time), she can turn around and admit that they were fraudulent and worthless. This is the argument that the trustee has not recovered anything of value. What's missing is that the transferee (her own company) of a fraudulent lien would have been paid $225,000 in the event of a sale. In the end, Debtor's counsel's argument is, she can commit fraud with impunity. Of course this is a collateral attack on the specific, un-appealed, and final judgment entered by the Court assigning value to the avoided lien.

## II.    General Relevant Background

Who is this Debtor? Her voluntary chapter 7 case was commenced on July 9, 2021 ("Petition Date"). This case is atypical given the number of disputes which have arisen surrounding Debtor's residence in what should have been a simple, straight forward case and, which as noted throughout this opinion, have resulted in the denial of Debtor's discharge.[10]

In her initial filing, Debtor scheduled an interest in the Property (a mobile home) at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649. She valued the Property at $235,000, stating: "title held by Debtor's single member LLC – J-Sandcastle Co., LLC," with a lien on it held by J-Pad, LLC in the amount of $175,000, which amount was later increased to $225,000. **Debtor subsequently amended her schedules or petition no less than 13 times.[11]** After significant litigation involving objections to her homestead, and appeals, Debtor now possesses an allowed homestead in the amount of approximately $600,000 on the Property.

On October 18, 2021, Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates ("Houser Bros.") initiated an adversary proceeding, Adv. No. 8:21-ap-01097-SC, against Debtor asserting claims under 11 U.S.C. §§ 523(a)(2) and (a)(6) and

---

[10] The disputes are, for the most part, in furtherance of Debtor's bid to keep the Property. For instance, Debtor has filed several motions to avoid the liens of Huntington Beach Gables Homeowners Association and of the Trustee, in place of J-Pad, a motion seeking to abandon the Estate's interest in her residence, an application to compel Trustee to cancel his transfer title to the Property, a motion to convert her case, and several appeals. The Court equates Debtor's oppositions to the sale of the Property in the same vein.

[11] *See* dockets 15, 16, 17, 22, 37, 38, 39, 42, 72, 75, 94, 444, 468, and 519.

1   11 U.S.C. § 727.[12] The Court bifurcated the claims and conducted a trial on the § 727

2   claim. After a trial, which occurred on April 26, 2023, and having considered post-trial

3   briefing, the Court issued a decision on May 23, 2023, as Docket No. 81 in Adv. No.

4   8:21-ap-01097-SC, **denying Debtor's discharge ("727 Decision")**. In the 727

5   Decision, the Court specifically found as follows:

> Additionally, facts were presented to the Court demonstrating that
> Defendant further concealed her equity in the property through the granting
> of liens to her business entities and family members, which liens existed
> during the relevant time period. For example, in late 2018, Defendant also
> executed a promissory note and security agreement on the mobile home by
> and between two entities that she managed, JSandcastle and J-Pad, LLC.
> ("J-Pad"). J-Sandcastle was the borrower and J-Pad the lender. The
> agreement required J-Sandcastle to pay J-Pad $225,000 for a purported
> loan; however, J-Pad did not loan any money to J-Sandcastle. Trial
> Transcript, Dk. 72, Pg. 66. Defendant herself made the loan to J-
> Sandcastle, though the loan was initially in the amount of $175,000
> Defendant did not fund the balance of the $225,000 loan until approximately
> 6 months later. Trial Transcript, Dk. 72, Pg. 65-66.10 None of the foregoing
> information regarding the timing of funding, or source of funding, was
> reflected in the executed documents. In her petition, Defendant scheduled
> J-Pad as a secured creditor, continuing the ongoing concealment of her true
> interest in the loan. Additionally, within the year prior to the petition, liens in
> favor of Defendant's two adult sons, Steven and Brian Gallian, were placed
> on the property, despite the fact that neither had paid any consideration.
> Trial Transcript, Dk. 72, Pg. 72-73.
>
> ….
>
> As noted previously, J-Pad was the holder of a $22[5],000 promissory note.
> Defendant herself executed the promissory note on J-Pad's behalf, knowing
> full well of the asset. It is this Court's view that $225,000 is a significant
> amount of money, and Defendant's failure to properly schedule her interest
> in J-Pad, the note and lienholder of a significant asset, is a material, false
> oath made knowingly and fraudulently. So too was Defendant's failure to

---

[12] The Court may take judicial notice of its own records in the same case. *See In re Abbatiello*, 484 B.R. 655, 658 (Bankr. M.D. Pa 2013) ("A bankruptcy judge may take judicial notice of his or her own docket"); *In re Martell*, 349 B.R. 233, 234 n.1 (Bankr. D. Idaho 2005) ("[T]he Court takes judicial notice of its file in this matter."). Further, the Court's rulings with respect to Debtor's behavior in connection with the Property, which form the basis for the 727 Decision, constitute law of the case. Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.) (cert. denied 508 U.S. 951 (1993).

schedule a value for JPad, who held a significant asset in the form of the aforementioned note and lien on the mobile home.

The foregoing, coupled with the evidence presented by Plaintiff of Defendant's other glaring omissions and false oaths, are sufficient to demonstrate that Plaintiff is entitled to judgment against Defendant on its § 727(a)(4) cause of action.

727 Decision, pgs. 11-12, 16. Debtor appealed this decision, which was affirmed by the United States District Court on July 31, 2024. *See* Adv. No. 8:21-ap-01097-SC, Dk. 131. After the denial of her discharge, Debtor sought to dismiss her case by a motion filed June 27, 2023 [Dk. 345], which was denied by an order entered July 26, 2023 [Dk. 368].

On June 30, 2023, Trustee commenced an adversary proceeding, Adv. No. 8:23-ap-01064-SC, by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and Recover Postpetition Transfers; (3) for Declaratory Relief; (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment* ("Avoidance Complaint") against Ronald J. Pierpont, J-Pad LLC, J-Sandcastle, LLC, Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E.J. Gallian (collectively, "Defendants"). Trustee recovered title to the Property (which pre-petition she had placed not in her name, but of her LLC) and avoided, recovered and preserved all of the consensual liens. The final judgment as to the J-Pad lien issued in Trustee's adversary on May 10, 2024, provides as follows:

The transfer to the Defendant of a lien on and security interest in the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB (the "Property") reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018 and lien on the Property in the amount of $225,000 in favor of the Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn Gallian.

See Adv. No. 8:23-ap-01064-SC, Dk. 79.

Following the recovery of the Property (from J-Sandcastle, LLC) along with the avoidance, recovery, and preservation of the consensual liens on the Property, Trustee

filed an application to retain a broker to market and sell the Property on June 1, 2024 [Dk. 395], which Debtor opposed [Dks. 401-403]. The motion was granted by an order entered September 5, 2024 [Dk. 431]. Of note, however, at the hearing on Trustee's application to retain a broker, Debtor admitted to listing the Property on her own, which resulted in the Court's issuance of an order to show cause for contempt on September 12, 2024 [Dk. 440], which was discharged after a hearing held on November 5, 2024, when Debtor removed her broker.

In addition, shortly after the Court's approval of Trustee's broker's employment, Debtor filed a motion to convert the case to Chapter 13 on September 11, 2025 [Dk. 438]. That motion was denied by an order entered October 29, 2024 [Dk. 491].

Debtor subsequently amended her schedules again on December 3, 2024 [Dk. 519] and asserted an exemption in the "pad" underneath the mobile home, to which Houser Bros. objected on January 2, 2025 [Dk. 529]. Houser Bros.' objection was sustained by an order entered February 20, 2025 [Dk. 555].

On January 31, 2025, the Turnover Motion and the Sale Motion were filed [Dks. 538 and 539]. The Court conducted hearings on both motions on March 4, 2025, and then, after noting possible issues with respect to the dual representation of the two competing buyers[13], vacating the auction as discussed above, and conducted another auction on March 27, 2025. At the March 27, 2025, auction, Mr. Peplin appeared, again overbid on the Property, and became the successful buyer. He was represented by a broker, Lori Alvarez of the real estate brokerage RE Resolved.

---

[13] The Court notes that the original auction was vacated by the Court, *sua sponte*, and re-performed on March 27, 2025, not because of any actual problem observed by the Court **but only in an abundance of caution regarding a disclosure that both active bidders were represented by the same real estate broker. The Court observed that there might be an appearance of impropriety (although the Court found no impropriety) and decided that the auction should be held again with no dual representation present.** It is noted that the Court finds no issues arising from that alleged dual representation. This matter is further discussed with this Court's analysis of the Fifth Circuit Court of Appeals' compelling decision, *Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019), which addressed almost exactly this situation. The Court also notes that the final bid for the Property was over the amount of the listed value of the Property by Debtor in her schedules.

## III.    Discussion – Summary of the Positions Presented

By these Motions, Trustee seeks approval of a sale under § 363 and turnover of the Property under § 542, free and clear of all liens and interests, including Debtor's $600,000 homestead.[14] Trustee asserts that there are no known encumbrances against the Property that have not been avoided, recovered, and preserved for the benefit of the Estate. Trustee asserts that any involuntary liens reflected by Abstract of Judgments were not properly perfected, and thus do not prevent the sale (and in any event are junior to the avoided consensual liens). Trustee further asserts that because all consensual liens have been avoided and recovered, the Estate will realize approximately $301,011.14 from the sales proceeds on account of such liens. With the result of the auction approved by this order, Debtor's homestead exemption is out of the money and most likely will not be paid unless there are sufficient funds. If any funds are available on account of her homestead after payment of the avoided consensual liens, they will be distributed in accordance with the Bankruptcy Code's priority system.

Debtor's opposition contends that Trustee may not sell the Property because she has not consented to such sale and the proposed sale price is insufficient to fully pay her allowed homestead. Debtor further asserts that it is indisputable that J-Pad never lent any money to anyone to support the imposition of a lien on the Property. Therefore, Debtor argues Debtor may benefit from her and that the J-Pad lien the Trustee holds is worth $0.

As set forth below, Debtor is incorrect that Trustee may not sell the Property. Her homestead exemption is junior in priority to the avoided consensual liens.[15] Further, to the extent Debtor claims that the fraudulent nature of the J-Pad lien she granted

---

[14] The sale does not include the ground lease for the underlying space, which was rejected long ago, but Houser Bros. asserts that it has agreed to give any qualified buyer - but not Debtor, a new ground lease.
[15] Consensual liens have priority over exemptions. *See* Cal. Code Civ. P. § 704.850(a) ("The levying officer shall distribute the proceeds of sale of a homestead in the following order: (1) To the discharge of all liens and encumbrances, if any, on the property. (2) To the judgment debtor in the amount of any applicable exemption of proceeds pursuant to Section 704.720."); *see also In re Bunn-Rodemann*, 491 B.R. 132, 136 (Bankr. E.D. Cal. 2013) (noting that exemptions may be claimed "only against involuntary liens").

means that it cannot serve as a basis for Trustee's sale of the Property, this argument also fails. Trustee avoided, recovered and preserved the J-Pad lien in the amount of $225,000. Based on the plain language of 11 U.S.C. § 551, any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate.[16] And, Section 522(g) prohibits her from claiming an exemption in the equity in the Property which she voluntarily transferred but which Trustee recovered.[17]

As such, the recovered liens are senior to her allowed homestead exemption and Trustee may sell the Property to realize such funds for the benefit of the Estate. Further, as the Property is one that Trustee may sell, as described below, the Trustee is entitled to turnover.

### A. Sale of the Property, Free and Clear of Liens

Under 11 U.S.C. § 704(a)(1), a trustee shall "collect and reduce to money the property of the estate…." Debtor's property is property of the Estate which Trustee may sell.[18] Under § 363(b), the Court may authorize a trustee to "use, sell, or lease, other than in the ordinary course of business, property of the estate," provided the movant establishes the following: "(1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and reasonable; (3) notice to creditors [and interested parties] was proper; and (4) the sale is made in good faith."

---

[16] Section 551 reads: "Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate."

[17] See *In re Bethea*, 275 B.R. 127, 129 (Bankr D.C. 2002) ("And, even if the exemption was claimed after the avoidance, the exemption would be invalid. Under 11 U.S.C.S. § 522(g)(1)(A), the debtor could only exempt a recovered lien if the transfer of the lien interest was not a voluntary transfer by the debtor. The avoided lien remained an encumbrance in favor of the estate, thus reducing the equity subject to the exemption.").

[18] *See e.g. In re Neal*, 424 B.R. 235,237 (Bankr. E.D. Mich 2010) (In discussing trustee's options to administer property with avoided lien, the court noted trustee's option to sell under § 363(b) or enforce trustee's rights as a lien creditor and when seeking to sell the property, trustee was acting as a trustee, and not a lien creditor). Further, while there is a general prohibition against selling a fully encumbered asset, trustee may rebut the presumption. In addressing whether to permit a carve-out, the court in *KVN Corp. v. Green (In re KVN Corp.),* 514 B.R. 1, 5-8 (9th Cir. BAP 2014) set forth a 3-part test to rebut presumption against trustee selling a fully encumbered asset. If applicable, this test is satisfied: (1) Trustee is fulfilling the trustee's basic duties; (2) Trustee has demonstrated "a benefit to the estate; i.e., prospects for a meaningful distribution to unsecured creditors"; and (3) and Trustee has fully disclosed the terms of the sale agreement to the bankruptcy court. *See KVN Corp.,* 514 B.R. at 8.

ES 886       ES 886       ES 886

*In re Slates*, 2012 WL 5359489 (B.A.P. 9th Cir. Oct. 31, 2012) (unpublished) (citing *In re Lionel*, 722 F.2d 1063, 1070 (2nd Cir. 1983); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal 1991)); *see also In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012); *WBQ Ptnr. v. Va. Dep't of Med. Assistance Servs. (In re WBQ Ptnr.)*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995).  As further discussed herein, Trustee has submitted adequate evidence that (a) a sound business purpose exists for the sale, which is realizing the fraudulently concealed equity for the benefit of the Estate's creditors; (2) the sale is in the best interest of the estate, i.e., the sale price is fair and reasonable, as demonstrated by not one, but two auctions; (3) notice to creditors [and interested parties] was proper; and (4) the sale is made in good faith.

Under 363(f), "[t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property" only if: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. Trustee asserts, and has provided evidence, that all known liens have been avoided.

### B.  Debtor's Homestead and the Avoided Liens

None of Debtor's arguments pertaining to the assertion of her homestead, or the fraudulent nature of the avoided liens, serve as a bar to Trustee's sale of the Property.[19]

Trustee successfully avoided the consensual liens on the Property, which were recovered for the benefit of the Estate, and which take priority over Debtor's homestead exemption. *See In re Roach*, 2019 Bankr. LEXIS 263 (B.A.P. 9th Cir. 2019); *see also In*

---

[19] Debtor raised another argument recently, that a successful buyer was required to be eligible to hold a lease in the mobile home park. That is incorrect. First, anyone could purchase the mobile home at auction from the Estate; being allowed to have a lease in the mobile home park was not a condition of the sale. Second, and more ironically, Debtor herself never had a lease with the mobile home park.

1    *re Bunn-Rodemann*, 491 B.R. 132, 134-35 (Bankr. E.D. Cal. 2013). Exemptions may be

2    claimed only against involuntary liens, such as judgments, attachments, and execution

3    liens, and then only if the procedures of section 522(f) are followed. *See In re Roach*,

4    2019 Bankr. LEXIS 263 (B.A.P. 9th Cir. 2019).[20]

5          Further, Debtor's argument that the value of the avoided lien is $0.00 is

6    misguided, inaccurate, and a collateral attack on a final judgment. As noted above, the

7    final judgment as to the J-Pad lien issued in Trustee's adversary on May 10, 2024,

8    provides as follows:

9          The transfer to the Defendant of a lien on and security interest in the
      manufactured home located at 16222 Monterey Lane, Space #376, Huntington
10     Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB
      (the "Property") reflected by the secured promissory note and security agreement
11     between J-Sandcastle Co., LLC and the Defendant dated November 16, 2018
      and lien on the Property in the **amount of $225,000** in favor of the Defendant are
12     avoided and preserved for the benefit of the Debtor's estate in the name of
      Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy estate of Jamie Lynn
13     Gallian.

14

15   See Adv. No. 8:23-ap-01064-SC, Dk. 79 (**emphasis added**). Thus, $225,000 in equity

16   was avoided and preserved. Debtor's admission now that the lien is fraudulent does not

17   help her.[21]  As set forth above, but merits repeating, Debtor's opposition and collateral

18

19   [20] *See also Polk v. Cty. of Contra Costa*, 2014 U.S. Dist. LEXIS 111713, at *22 (E.D. Cal. Aug. 11, 2014)
      ("Case law is clear that a homestead exemption is not superior to a consensual lien. *See In re Patterson*,
20   139 B.R. 229, 232 (B.A.P. 9th Cir. 1992) (stating that a consensual lien "cannot be defeated by a
      homestead exemption."); *see In re Pavich*, 191 B.R. 838, 847 (Bankr. E.D. Cal. 1996) ("[E]xemption laws
21   do not protect property from enforcement of consensual liens."); *see In re Bunn-Rodemann*, 491 B.R.
      132, 136 (Bankr. E.D. Cal. 2013) ("[T]he [d]ebtor cannot claim an exemption in the value of the property
22   subject to the creditor's consensual lien. Exemptions may be claimed only against involuntary liens, such
      as judgments, attachments, and execution liens."); and *Babaee v. Marshack (In re Babaee)*, 2023 U.S.
23   App. LEXIS 24253, at *3 (9th Cir. Sep. 13, 2023) ("California law provides that consensual liens must be
      paid ahead of homestead exemptions. *See* Cal. Civ. Proc. Code § 704.850; *see also Amin v. Khazindar*,
24   112 Cal. App. 4th 582, 588, 5 Cal. Rptr. 3d 224 (2003) (finding that homestead exemption has no
      effect on liens created voluntarily by property owners, nor does it have any effect on the claims of
25   creditors secured by liens with priority).").
      [21] Judicial estoppel also prevents Debtor from benefitting from her admission that the liens are fraudulent.
26   "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting
      one position, and then later seeking an advantage by taking a clearly inconsistent position. The doctrine
27   is aimed at not only preventing a party from gaining an advantage by asserting inconsistent positions, but
      also ensuring "the orderly administration of justice and . . . the dignity of judicial proceedings," and to
28   "protect against a litigant playing fast and loose with the courts."" *Daff v. Wallace (In re Cass)*, 2013
      Bankr. LEXIS 4653 (B.A.P. 9th Cir. 2013) (cleaned up).

1   attack of the earlier judgment is (as interpreted by this Court) "I know that it was a
2   fraudulent lien, and even though I swore under oath to the value of $225,000 of the lien
3   on several occasions, since it was a fake lien, the Trustee recovered nothing."  This
4   Court continues to observe that "nothing" would have resulted in a fraudulent payment
5   to Debtor's company of $225,000 had the Property been sold by the Trustee and had
6   the lien not been avoided. It is apparently only worth $0.00 if the creditors are entitled to
7   the money.

8          As a result of Trustee's avoidance of the fraudulent liens, equity in the Property
9   was created, which escalates to the benefit of the Estate. 11 U.S.C. § 551 provides that
10  any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of
11  the Estate. *See* 11 U.S.C. § 551 ("Any transfer avoided under section 522, 544, 545,
12  547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is
13  preserved for the benefit of the estate but only with respect to property of the estate.");
14  *see also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 518-20 (9th Cir. 1990)
15  (rejecting the argument that a trustee can preserve a transfer of a lien under § 551 only
16  to the extent that the interest is otherwise valid under state law); *accord Heintz v. Carey*
17  *(In re Heintz)*, 198 B.R. 581, 586 (9th Cir. B.A.P. 1996) ("§ 551 does not exclude
18  exempt property from preservation. An avoided interest or lien encumbering exempt
19  property is automatically preserved for the benefit of the estate under § 551."); *see also*
20  11 U.S.C. § 541(a)(3) (defining property of the estate to include any interest in property
21  that the trustee recovers under 11 U.S.C. § 550); 11 U.S.C. § 541(a)(4) (defining
22  property of the estate to include any interest in property preserved for the benefit of or
23  ordered transferred to the estate under 11 U.S.C. § 551).[22]

24

---

25  [22] Further, the Supreme Court's ruling in *Schwab v. Reilly,* 560 U.S. 770, 778-89 (2010) supports this
    assertion. In *Schwab*, the Supreme Court delineated between "in-kind" exemptions and "dollar amount"
26  exemptions. *Id.* The Court held that the "provisions in § 522(d) ... permit debtors to exempt certain
    property in kind or in full regardless of value." *Id.* at 784. In the federal exemption scheme, in-kind
27  exemptions include "professionally prescribed health aids, . . . disability benefits, [and] unmatured life
    insurance contracts." *Id.* Unlike in-kind exemptions, dollar-amount exemptions are exemptions that allow
28  the debtor to exempt some portion of the exempt property's value. *Id.* at 800, n.5. While the effect of an
    allowed in-kind exemption is to remove the exempt property from the estate, for an allowed dollar-amount
    exemption, as is the case here, "title to the asset will remain with the estate pursuant to § 541." *Id.* at 792.

"Section 551 is intended to prevent the windfall to junior lienors that would otherwise result when a trustee in bankruptcy successfully avoids a senior lien on property." *In re Appalachian Energy Indus., Inc.,* 25 BR. 515, 516 (Bankr. M.D. Tenn. 1982). "The section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided."[23]   The same results occur for homestead possessors (and in this case caused the fraudulent liens to be asserted in the first place, although that is not a requirement).

Finally, Debtor may not reach equity achieved by the estate, as under 11 U.S.C. § 522(g) a debtor may not claim any exemption in amounts recovered by a trustee after a debtor's voluntary transfer.

As explained by the court in *In re Bethea*:

Under § 522(c), property exempted generally remains liable for a debt secured by a lien. *In re Granati,* 271 B.R. 89, 95 (Bankr. E.D. Va. 2001) ("[V]alid liens, even against exempt property, pass through bankruptcy and may be enforced against the collateral ...."). Accordingly, § 522 treats a debtor's interest in real property as distinct from a mortgagee's lien on that property. Unless the debtor specifically listed the lien as being exempted, his exemption of the real property alone did not suffice to claim an exemption of the lien (that upon avoidance by the trustee would be property of the estate and exemptible under § 522(g) if the debtor met certain conditions).

*In re Bethea*, 275 BR. 127, 129-130 (Bankr. D.D.C. 2002). Similarly, in the present case, Debtor may not claim an exemption in the avoided equity and the assertion of her homestead does not prevent Trustee's sale.

### C.  Buyer as Good-Faith Purchaser Under § 363(m)[24]

§ 363(m) provides that:

The reversal or modification or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

---

[23] S. REP. No. 95-989, at 91 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5877; H.R. REP. No. 95-595, at 376 (1977), reprinted in 1978 U.S.C.C.A.N. 5963.
[24] On appeal, a good faith finding under § 363(m) is reviewed for clear error. *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002).

ES 890                          ES 890                          ES 890

Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys "in good faith" and "for value." *In re M Capital Corporation*, 290 B.R. 743, 746 (9th Cir. BAP 2003). *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3rd Cir.1986). Typically, lack of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (quoting *In re Suchy,* 786 F.2d 900, 902 (9th Cir.1985)); *In re M Capital Corp.,* 290 B.R. at 746-47, 752 ("Where good faith has been challenged, facts must be established to obtain the safety that section offers.").

"The choice of whether to make a finding of 'good faith' as part of the initial sale process belongs, in this circuit, to the bankruptcy court. Because findings of 'good faith' made at the time of the sale may be premature because they are made before the really interesting facts emerge, the Ninth Circuit does not require that a finding of 'good faith' be made at the time of sale." *In re Thomas*, 287 B.R. 782, 785 (9th Cir. B.A.P. 2002). The relevant focus of inquiry is good faith during the sale proceedings. *Cmty. Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985).

The original auction was conducted on March 4, 2025. The stalking horse bidder (the original bidder) and an over-bidder appeared. The over-bidder won the auction. The Court received an objection by Debtor to the Court's announced section 363(m) finding made at the sale hearing on March 4, 2025.  That objection asserted that a single broker represented the two potential buyers appearing at the sale auction, and in fact the broker was also the stalking horse bidder. The Court was first advised of the potential dual broker representation at the time of the hearing. Reviewing the objection and undertaking further research, the Court had several concerns and risks to consider, including (1) conflict of interest between buyers, (2) the duty of loyalty and confidentiality, (3) a

risk of auction manipulation, (4) a possible reduced leverage for the clients, (5) possible disclosure and legal risks, and (6) creditor considerations and court scrutiny requirements.

This Court has always insisted on full transparency and a competitive bidding process in Section 363 sales. While full disclosure & consent may have been provided to both buyers, the Court and other parties in interest must have that information earlier than provided to evaluate the efficacy of the sales process, and the Court should have been provided an opportunity to consider and make any necessary adjustments, if required.

In this instance, the after-the-fact solution to ensure undivided loyalty, avoid conflicts and to provide full transparency, was to vacate the auction results of March 4, 2025, and order a new, second auction to be held on March 25, 2025, with prior full disclosures of broker representations of any buyers.

On March 27, 2025, at 11:00 am, the Court held a continued hearing to permit the Chapter 7 Trustee to conduct a new auction, which was conducted by the Chapter 7 Trustee on that date and time.

During the new auction hearing, upon the Trustee's request for the finding of good faith of the successful buyer under section 363(m), Debtor through counsel objected to a finding of good faith and requested that Debtor be permitted to supplement the record and be provided with an opportunity to submit evidence that the buyer is not a good faith purchaser under that provision of the Bankruptcy Code.[25] The Court permitted Debtor to file and serve additional

---

[25] During the April 10, 2025 hearing, Debtor's counsel asserted that the evidentiary hearing was not requested by Debtor's counsel. However, a review of the transcript from the March 27, 2025 hearing, reflects the following:

      Mr. Blank: Your honor, I just want to make a record that you have not allowed me to a fulsome opportunity to present evidence and that I have asked for that opportunity and you have denied it  .....
      Court: Do you have any evidence?
      Mr. Blank: ... and I have more to say and yet you have cut me off....
      Court: Yes, Mr. Blank, I have a very busy ...
      Mr. Blank: ...which I understand...

briefing and evidence in support of her contention that the successful buyer is not one in good faith, *See* Order, Dk. 585, which provided additional time to further address their positions and present evidence on this subject. Debtor, through counsel, filed no evidence but stated that counsel would cross-examine any witnesses provided by the Trustee and Buyer, and further argued that the successful bidder at the March 25, 2025, auction be disqualified.

The Ninth Circuit Bankruptcy Appellate Panel has held that "[w]hile a finding of 'good faith' is not an essential element for approval of a sale under section 363(b), such a determination becomes important with respect to potential mootness when an appeal is taken from the order authorizing the sale." *Fitzgerald v. Ninn Worx SR, Inc. (In re Fitzgerald),* 428 B.R. 872, 880-81 (9th Cir. BAP 2010) (citing *Thomas v. Namba (In re Thomas),* 287 B.R. 782, 785 (9th Cir. BAP 2002)).

The BAP in *Fitzgerald* continues, "[t]he boilerplate 'good faith' finding in the Sale Order does not suffice under section 363(m), and the bankruptcy court should not have signed such an order without an evidentiary foundation. Id. at 881 (citing *T.C. Investors v. Joseph (In re M Capital Corp.*), 290 B.R. 743, 752 (9th Cir. BAP 2003)). "'Unless and until 'good faith' has been determined, the appeal is not moot under section 363(m).'" Id. (citing In re Thomas, 287 B.R. at 785).

In order to allow an appellate court to determine conclusively the mootness of any appeal, the record of the bankruptcy court must be very clear.

---

Court: Mr. Blank, I have a very busy calendar today and I understand that you file things without permission, without leave of Court constantly and I am asking you one more time do you have any evidence that you can tell me now with respect to countering the evidence that this Court has with respect to a 363(m) finding? Do you have any evidence?
Mr. Blank: The evidence before the Court, I believe, contradicts what the Court is saying about granting a 363(m) finding.
Court: Thank you very much. Do you have anything else?
Mr. Blank: No.
Hearing Transcript from 3/27/25 at 10:14:17 a.m. - 10:15:16 a.m.

ES 893                           ES 893                           ES 893

That is because, under § 363(m), when a "sale of assets is made to a good faith

purchaser, it may not be modified or set aside unless the sale was stayed

pending appeal." *Paulman v. Gateway Venture Partners III, LP (In re Filtercorp,*

*Inc.),* 163 F.3d 570, 576 (9th Cir. 1998); 11 U.S.C. § 363(m).

> An "[a]bsence of good faith is 'typically shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Adeli v. Barclay* (In re Berkeley Del. Court, LLC), 834 F.3d 1036, 1041 (9th Cir. 2016) (quoting *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.),* 163 F.3d 570, 577 (9th Cir. 1998)). And the relevant focus of inquiry is good faith during the course of the sale proceedings. *Cmty. Thrift & Loan v. Suchy (In re Suchy*), 786 F.2d 900, 902 (9th Cir. 1985).

*Lind v. Spacone (In re Lind),* 2019 Bankr. LEXIS 2052, *7-8 (9th Cir. BAP 2019).

This is the reason that the Court established and conducted an evidentiary

hearing on the request for a section 363(m) finding. Within its Order for the

conduct of an evidentiary hearing, the Court cautioned the parties that the

evidentiary hearing is expressly limited to the issue of whether a section 363(m)

good faith finding can be made as to the successful bidder of the Property, Mr.

Peplin. Notwithstanding this Order, Debtor's counsel continued to argue matters

outside the scope of the hearing, and the Court listened.

**The Findings and Conclusions regarding Good Faith of the Buyer**

**under Section 363(m).**

First, the determination of a finding of good faith under Section 363(m)

does not impact at all the determination of a sale result under Section 363. This

proceeding only addresses whether the buyer at the auction is a good faith

purchaser for purposes of implementing the provisions of Section 363(m). The

latest request of Debtor to disqualify the buyer is outside the scope of the

proceedings here.[26]

---

[26] *As set forth in the earlier footnote,* fn. 19, Debtor raised another argument recently, that a successful buyer was required to be eligible to hold a lease in the mobile home park. That is incorrect. First, anyone could purchase the mobile home at auction from the Estate; being allowed to have a lease in the mobile

1     Section 363 of the Bankruptcy Code generally allows the trustee to use, sell, or

2  lease property of an estate, other than in the ordinary course of business, after notice

3  and a hearing. 11 U.S.C. § 363. Under § 363(m), the validity of a "sale or lease of

4  property" executed under the terms of section 363 cannot be challenged on appeal

5  "unless [the bankruptcy court's] authorization and such sale or lease were stayed

6  pending appeal." *Id.* § 363(m). This is why, in almost all sales proceedings, the Trustee

7  asks for a good faith finding with respect to the successful purchaser. It is the Trustee's

8  burden to demonstrate good faith. The Trustee has presented significant evidence to

9  support the assertion and basis for a good faith finding under § 363(m).

10     For purposes of a full appreciation of this Court's understanding of its duties with

11  respect to its § 363(m) finding, the standards of review of its decision follow.

12     A reviewing court analyzes a bankruptcy court's determination of a good faith

13  purchaser pursuant to 11 U.S.C. § 363(m) under the clear error standard of review.

14  *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002). The "clear

15  error" standard of review is a deferential standard used by appellate courts when

16  reviewing findings of fact made by a trial court or lower tribunal, particularly in bench

17  trials (trials without a jury) or in certain administrative or bankruptcy proceedings.

18     It means that the appellate court will not overturn a factual finding unless it has a

19  "definite and firm conviction that a mistake has been committed." *In re Banks*, 263 F.3d

20  862, 869 (9th Cir. 2001) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).

21     The appellate court gives great deference to the trial court, which had the

22  opportunity to see the witnesses, hear the testimony, and evaluate credibility.

23     It applies to findings of fact, not legal conclusions (which are reviewed de novo).

24  It further does not mean the appellate court must be convinced the lower court was

25  correct — just that the finding wasn't clearly wrong, and it is often phrased like this:

26

27

28
_____

home park was not a condition of the sale. Second, and more ironically, Debtor herself never had a lease
with the mobile home park.

A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*United States v. U.S. Gypsum Co.,* 333 U.S. 364 (1948).

The Ninth Circuit has always adopted this standard of review. For example, and recently:

> [T]he bankruptcy court did not clearly err by finding that the purchaser of the real property was a bona fide good faith purchaser. *See Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.),* 846 F.2d 1170, 1173-74 (9th Cir. 1988) (discussing good faith requirement for operation of mootness rule in bankruptcy; explaining that good faith does not depend on value); *see also Decker v. Tramiel (In re JTS Corp.),* 617 F.3d 1102, 1109 (9th Cir. 2010) (standard of review for bankruptcy court's findings of fact).

*Lind v. Spacone (In re Lind),* 840 Fed. Appx. 988, 989 (9th Cir. 2021). This standard mandates that the bankruptcy court look to the facts to determine the good faith purchaser, which includes the sales process undertaken by the bankruptcy estate.

At the March 27, 2025, auction, Mr. Peplin overbid on the Property and was the successful buyer. The stalking horse bidder remained as the first bidder and it did not overbid Mr. Peplin's overbid. As noted above, Mr Peplin was represented by a separate broker.

On April 10, 2025, the Court conducted an evidentiary hearing on the issue of § 363(m). Eight declarations from five parties were offered into evidence and considered by this Court. Those declarations are as follows: Jeffrey Golden, Chapter 7 Trustee [Dk. 539], Greg Bingham [Dks. 539, 560, 579], Greg Peplin the successful buyer [Dks. 566, 577], Lauri Alvarez [Dk. 580], and Chris Houser [Dk. 591]. Combined, each of these declarations establish a prima facie case that the standards by the Ninth Circuit for a finding of good faith under § 363(m) have been met. Those standards are set forth above.

Debtor was offered the opportunity to cross-examine each of these declarants, but Debtor only requested that declarant Peplin be placed under oath and submit to cross-examination. Debtor's counsel inquired whether Mr. Peplin ever told Galaxy that they were free to overbid Mr. Peplin (paraphrased). Mr. Peplin responded, "not specifically." [27] The only other question Debtor's counsel posed was whether Mr. Peplin ever received anything from Galaxy, written, orally, or otherwise, stating that Galaxy waived any right to any commission that may have been earned by representing Mr. Peplin in the sale (paraphrased). Mr. Peplin responded, "no."

Trustee's attorney, Mr. Israel, questioned Mr. Peplin and asked whether Mr. Peplin had a conversation with David Guarino of Galaxy and advised him that he was no longer Mr. Peplin's broker (paraphrased). Mr. Peplin responded that he had that conversation and confirmed he told Guarino that he was no longer his broker. However, Debtor's counsel objected to Mr. Peplin's responses as "hearsay." The Court overruled the objection. Trustee's attorney also asked Mr. Peplin whether his statement, that he told Mr. Guarino that he was no longer his broker, was a correct one, which Mr. Peplin answered in the affirmative. Debtor's counsel again objected to the response asserting hearsay. The Court again overruled the objection and finds that they are party admissions (Mr. Peplin being a party to this § 363(m) finding). Nevertheless, the Court is not considering the responses to Trustee's questions of Mr. Peplin at the April 10, 2025 evidentiary hearing with respect to this decision, as they are irrelevant.

The Court is mindful that the original purpose of its evidentiary hearing was because of the March 27 demand of Debtor's counsel to offer evidence and argument.[28]

---

[27] Counsel did not object to his own questions as hearsay.
[28] *See* fn. 25.

The Court has carefully considered all of the evidence presented, and further has carefully considered all of the policy and economic arguments presented by Debtor with respect to the conduct of the auction and this Court's analysis under section 363(m).

Absence of good faith is "typically shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Filtercorp, Inc.,* 163 F.3d 570, 577 (9th Cir. 1998).

The Court has found the 2019 Fifth Circuit Court of Appeals decision *Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019) quite helpful, as it directly addressed the issue of dual broker representation of two potential buyers involved in a trustee section 363 sale. In reviewing a District Court's dismissal of a debtor's appeal, the Fifth Circuit set out what this Court believes are excellent guidelines to assist in consideration of Debtor's objections. Addressing the same objections as this Debtor presents, the Fifth Circuit said:

> Rai primarily argues that Hawkins, the real estate broker, violated ethical and fiduciary duties, which Rai believes precludes a finding of good faith. This allegation is based on Hawkins's representing the purchasers and, through an agent of his firm, another bidder, meaning that Hawkins would have earned a commission if either bidder bought the property. But Rai does not show that Hawkins failed to disclose this conflict or to obtain consent to represent both parties. More fundamentally, as the district court observed, that Hawkins's firm represented two bidders does not show collusion. Because Hawkins would receive a commission from the sale to either of these bidders, he had no incentive to collude and depress the price; a reduction in the sales price would have adversely affected his pocketbook. Neither evidence nor common sense supports Rai's collusion allegation.
>
> Rai next argues that Taylor inadequately marketed the auction, resulting in suppression of the bidding. It is true that some ads were ineffective, but that is typically true of marketing efforts; some strategies work better than others. That is why marketeers try different approaches, which Taylor did. The result was a well-attended and competitive auction. Rai complains that only bidders from Mississippi attended. But a host of reasons might explain why there was only local interest despite national marketing efforts. None of this undermines the compelling evidence that the real estate sold for a market price. It is brazen for Rai to contend otherwise

when the company he helped run tried to sell Tract 4 just a couple years earlier for less than 1/3 of what it sold for at auction.

Lastly, Rai argues that Taylor might not have been a disinterested auctioneer because the trustee's son works for him "[f]rom time to time." It is unclear how this additional conjecture amounts to fraud that undermines the competitive nature of the auction or otherwise casts doubt on the economic evidence that the land was sold for value at a competitive auction.

*Rai v. Henderson (In re VCR I, LLC),* 789 Fed. Appx. 992, 996 (5th Cir. 2019).

Based upon the evidence before the Court arising throughout this proceeding, the Court makes the following findings of fact and conclusions of law: The auction was properly and adequately marketed; the auction had adequate participation; the auction encouraged competitive bidding that increased the sale price; there was no collusion even though during the first auction (now vacated) one broker may have represented different auction bidders (this has now been corrected by the new auction with no dual representation); the sale was an arm's length transaction; the price was adequate under the circumstances (the price was over the amount of the value of the Property listed in Debtor's schedules); and the Buyer is a good-faith purchaser under 11 U.S.C. § 363(m).

The broker's dual representation at the first auction did not suggest collusion, because the bidding was competitive. There was no dual representation at the second auction. It is also noted that the final sale price was as high or higher than the value placed on the Property by Debtor in her schedules. This Court has received evidence of a fair, non-collusive, honest auction, and has not been presented with evidence of any collusion, dishonesty, or untoward actions in this process. The Buyer is determined to be in good faith under the standards within the Ninth Circuit.

## D. Waiver of Rule 6004(h) Stay

Bankruptcy Rule 6004(h) provides that an "order authorizing the ... sale ... of property ... is stayed until the expiration of 14 days after entry of the order, <u>unless the court orders otherwise</u>." The 1999 Advisory Committee Note to Bankruptcy Rule 6004 states that the rule is intended "to provide sufficient time for a party to request a stay pending appeal of an order authorizing the ... sale ... of property under § 363(b) of the Code before the order is implemented." *In re Verity Health Sys. of California, Inc.*, 598 B.R. 283, 296 (Bankr. C.D. Cal. 2018).

In this matter, the Court declines to waive the 6004(h) stay. Debtor has prematurely filed a Motion for Stay Pending Appeal, which will be resolved under separate order.

## E. Turnover

Trustee seeks turnover of the Property. Section 542(a) of the Bankruptcy Code requires: "Except as provided in subsection (c) or (d) of this section, an entity… shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a). Moreover, a debtor has an affirmative duty to cooperate with the Trustee and turn over all estate property to the Trustee. 11 U.S.C. § 521(a)(3)-(4).

Trustee asserts that he is not confident Debtor will timely vacate and requires an enforceable order granting possession to give assurances to the buyer that possession can be delivered upon the close of sale. Having reviewed the entire history of this case, the Court agrees. Bankruptcy courts have the power to authorize the issuance of a writ of execution or assistance authorizing and directing the Marshals to compel the surrender of real property. *See* Fed. R. Civ. P. 70 (made applicable to adversary proceedings by Fed. R. Bankr. P. 7070); *In re Kerlo*, 311 B.R. 256, 261 (Bankr. C.D. Cal. 2004) ("'a writ of assistance to deliver . . . possession [of real property] . . . was agreeable to the usages and principals of law' and 'clearly lies under the express terms of Fed. R. Civ. P. 70.'") (citing *Hamilton v. McDonald*, 503 F.2d 1138, 1148 (9th Cir.

1974)); *In re Bolden*, 327 B.R. 657, 668 (Bankr. C.D. Cal. 2005) (determining that debtor was uncooperative and "trustee needs a turnover order to market and sell the property"). Indeed, the Court may issue any order that is necessary and appropriate to carry out the provisions of the Bankruptcy Code. *See* 11 U.S.C. § 105(a). Section 105 also authorizes the Court to grant a trustee's request for issuance of a writ of assistance. Specifically, orders for possession of property may be enforced through writs and orders under Section 105(a). *See In re Kerlo*, 311 B.R. at 262.

### IV.    Motion for Stay Pending Appeal

As noted above, one day prior to the March 4, 2025, hearings, Debtor filed a Motion to Stay Pending Appeal on March 3, 2025 [Dk. 562] ("Motion for Stay"). At the hearing, the Court treated the Motion for Stay as both a sur-reply and a Motion for Stay. Under separate order, this Court shall resolve the Motion for Stay Pending Appeal.

### V.    Conclusion

As set forth above, Trustee may sell the Property and obtain turnover of the Property. Debtor's objections are overruled. Mr. Peplin is the successful bidder and is awarded the finding of a good faith buyer under § 363(m).

Debtor has requested a denial of a 6004(h) waiver to give her time to preserve her appeal rights, which is the purpose of 6004(h). However, Debtor, prior to the issuance of this Memoraudum Opinion, has filed both a Notice of Appeal and Motion for a Stay Pending Appeal. The Motion for Stay Pending Appeal shall be addressed in a separate order. The Trustee's request for a waiver of rule 6004(h) is granted.

**IT IS SO ORDERED.**

Date: April 10, 2025

Scott C. Clarkson
United States Bankruptcy Judge

# EXHIBIT 2

# EXHIBIT 2

# EXHIBIT 2

1   ERIC P. ISRAEL (State Bar No. 132426)
    *EPI@LNBYG.COM*
2   LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
    2818 La Cienega Ave.
3   Los Angeles, CA 90034
    Telephone: (310) 229-1234
4   Facsimile: (310) 229-1244

5   Attorneys for Jeffrey I. Golden, Chapter 7 Trustee

6

| FILED & ENTERED |
| --- |
| APR 14 2025 |
| **CLERK U.S. BANKRUPTCY COURT**<br>**Central District of California**<br>**BY bolte     DEPUTY CLERK** |

7             **UNITED STATES BANKRUPTCY COURT**

8             **CENTRAL DISTRICT OF CALIFORNIA**

9                **SANTA ANA DIVISION**

| | |
| --- | --- |
| 10   In re | Case No. 8:21-bk-11710-SC |
| 11   JAMIE LYNN GALLIAN, | Chapter 7 |
| 12           Debtor. | |
| 13 | **SUPPLEMENTAL ORDER GRANTING TRUSTEE'S MOTION TO AUTHORIZE SALE OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM 1081, FREE AND CLEAR OF LIENS AND HOMESTEAD EXEMPTION** |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | Date:     April 10, 2025<br>Time:     9:30 a.m.<br>Crtrm.:   Courtroom "5C" |
| 19 | |

20        On April 10, 2025, 9:30 a.m., the Court held an evidentiary hearing on the Trustee's Motion

21   for Order Compelling Turnover of Manufactured Home Currently Located at 16222 Monterey

22   Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081 (Dk. 538); and the Trustee's

23   Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane,

24   Space 376, Huntington Beach, CA 92649 (Dk. 539). The Court on April 10, 2025, having entered

25   its Order re: (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other

26   Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of Writ of

27   Assistance [Dk. 538]; (2) Trustee's Motion to Authorize Sale of Manufactured Home Currently

28   Located at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081,

Free and Clear of Liens and Homestead Exemption [Dk. 539]; and, (3) Good Faith Finding

Pursuant to Section 363(M) on April 10, 2025 (Dk. 593) (the "Omnibus Order"), having read and

considered the Declaration of Eric P. Israel Requesting Supplemental Orders on: (1) Chapter 7

Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over

Manufactured Home and Authorizing Issuance of Writ of Assistance (Dk. 538); and (2) Trustee's

Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey Lane,

Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free and Clear of Liens and

Homestead Exemption (Dk. 539), good cause appearing, it is

ORDERED THAT:

1.     The Sale Motion (Dk. 539) is granted in its entirety.

2.     The proposed overbid procedures are approved.

3.     The sale by the Trustee of the entirety of the Manufactured Home Currently Located

at 16222 Monterey Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081 (the

"Property"), including the interests of J-Sandcastle, LLC, to Greg Peplin (the "Buyer") for

$276,000.00, is confirmed on the terms and conditions set forth in the Sale Motion and in the

Purchase and Sale Agreement attached as Exhibit "1" to the Sale Motion.

4.     The sale shall be free and clear of any and all liens, claims or interests pursuant to

11 U.S.C. § 363(b), (f) and (h), "as is," "where is," with no warranty or recourse whatsoever.  The

Trustee having avoided and preserved the senior lien on the Property, the sale proceeds are free and

clear funds of the estate.

5.     The Trustee is authorized to pay brokerage commissions, ordinary and customary

costs of sale (including title and escrow fees), and undisputed amounts owed to the Lender through

escrow.  Brokers commissions are allowed and authorized for payment as follows:

(b)     3% ($8,280.00) to Coldwell Banker Realty; and

(c)     3$ ($8,280.00) to Real Estate Resolved.

6.     The Buyer, Gregory A. Peplin, is found to be good faith purchaser within the

meaning of 11 U.S.C. § 363(m).

2

7. The Trustee is authorized to execute all documents and otherwise take all actions he deems necessary and appropriate to close the sale of the Property.

8. There shall be no liability to the Trustee, in any capacity, by virtue of the sale of the Property hereinabove approved. In the event the Trustee cannot consummate the sale for any reason, the sole remedy of the Buyer shall be limited to a return of the deposit.

9. Upon closing of the sale, the escrow company closing the sale shall turn over promptly to the Trustee the balance of the proceeds of sale remaining after payment of costs and allowed sums under this order, as appropriate.

10. The filing of this order with the California Department of Housing and Community Development shall constitute a discharge, termination and cancellation as to the Property of all liens, without the need for reconveyance or release of such liens, encumbrances, or other interests.

11. The 14-day stay imposed by FRBP 6004(h) is not waived, because the Trustee withdrew the request that it be waived at the initial hearing on March 4, 2025.

###

Date: April 14, 2025

Scott C. Clarkson
United States Bankruptcy Judge

3

ES 905                    ES 905                    ES 905

# EXHIBIT 3

# EXHIBIT 3

# EXHIBIT 3

ERIC P. ISRAEL (State Bar No. 132426)
*EPI@LNBYG.COM*
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Ave.
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Jeffrey I. Golden, Trustee

FILED & ENTERED

APR 14 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:21-bk-11710-SC |
| JAIME LYNN GALLIAN, | Chapter 7 |
| Debtor. | **SUPPLEMENTAL ORDER GRANTING TRUSTEE'S MOTION FOR ORDER COMPELLING TURNOVER OF MANUFACTURED HOME CURRENTLY LOCATED AT 16222 MONTEREY LANE, SPACE 376, HUNTINGTON BEACH, CA 92649, DECAL NO. LBM1081 (DOCKET NO. 538)** |
| | Date:    April 10, 2025 <br> Time:    9:30 a.m. <br> Place:   Courtroom "5C" <br>          411 W. 4th Street, <br>          Santa Ana, California |

On April 10, 2025, 9:30 a.m., the Court held an evidentiary hearing on the Trustee's Motion for Order Compelling Turnover of Manufactured Home Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No. LBM 1081 (Dk. 538). The Court on April 10, 2025, having entered its Order re: (1) Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and Turn Over Manufactured Home and Authorizing Issuance of

ES 907                    ES 907                    ES 907

1  Writ of Assistance (Dk. 538); (2) Trustee's Motion to Authorize Sale of Manufactured Home

2  Currently Located at 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No.

3  LBM 1081, Free and Clear of Liens and Homestead Exemption (Dk. 539); and, (3) Good Faith

4  Finding Pursuant to Section 363(M) on April 10, 2025 (Dk. 593) (the "Omnibus Order"), having

5  read and considered the Declaration of Eric P. Israel Requesting Supplemental Orders on: (1)

6  Chapter 7 Trustee's Motion for Order Compelling Debtor and Any Other Occupants to Vacate and

7  Turn Over Manufactured Home and Authorizing Issuance of Writ of Assistance (Dk. 538); and (2)

8  Trustee's Motion to Authorize Sale of Manufactured Home Currently Located at 16222 Monterey

9  Lane, Space 376, Huntington Beach, CA 92649, Decal No. LBM 1081, Free and Clear of Liens and

10  Homestead Exemption (Dk. 539) (Dk. 597), good cause appearing, it is

11     ORDERED THAT:

12     1.     The Turnover Motion (Dk. 538) is granted in its entirety.

13     2.     The Debtor and any other occupants of the Property must vacate and turn over all

14  possession, custody and control of the Property to the Trustee by April 24, 2025.

15     3.     The Debtor and any other occupants of the Property must leave the Property vacant

16  and in its present, good, broom-swept condition without any refuse, trash, or personal belongings

17  remaining.

18     4.     The Debtor and any occupants of the Property must provide the Trustee with all keys

19  to the Property, along with any security codes and garage door and/or gate openers, by April 24,

20  2025.

21     5.     The Trustee is authorized to prepare a writ of assistance consistent with this order for

22  issuance by the Clerk of the Court.  The Trustee may levy or execute on such writ should the Debtor

23  or any other occupants fail to timely vacate the Property as set forth in this order.

24     6.     The United States Marshals Service (the "U.S. Marshal") is authorized to effectuate

25  an eviction of all occupants and turn over possession of the Property to the Trustee or his agents

26  should any occupants fail to timely comply with the deadline stated in this order, including the use of

27  any reasonable force necessary to enforce this order.  Pursuant to Local Bankruptcy Rule 7064-1(e):

28

ES 908                    ES 908                    ES 908

2

Upon execution and entry of this Order, the United States Marshals Service [and any other executing officer authorized by the court] (collectively, the "U.S. Marshal") is immediately directed to assist Trustee to enforce the underlying order awarding possession. Trustee and his authorized agent(s) will act as substitute custodian of any and all items of personal property seized pursuant to this Order and the U.S. Marshal shall have no liability arising from any acts, incidents, or occurrences in connection with the seizure of the personal property located at the subject real property arising in the ordinary authorized scope of duties of the U.S. Marshal (which acts do not include acts arising from negligent or intentional tortious conduct), including any third party claims and the U.S. Marshal shall be discharged of his or her duties and responsibilities for safekeeping of the seized goods. The U.S. Marshal accomplishing such eviction or seizure shall use whatever reasonable force necessary to break open and enter the subject real property regardless of whether the premises or location is locked or unlocked, occupied or unoccupied and to inspect the contents of any room, closet, cabinet, vehicle, container, desk or documents. Anyone interfering with the execution of this Order is subject to arrest by law enforcement officials

7.    The Trustee is authorized without further Court order to remove or destroy any items of personal property remaining at the Property.  The Trustee and his agents are deemed to have satisfied all obligations they may have under applicable law relating to the removal and/or abandonment of the personal property.

###

Date: April 14, 2025

Scott C. Clarkson
United States Bankruptcy Judge

ES 909                    ES 909                    ES 909

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled: **NOTICE OF APPEAL AND STATEMENT OF ELECTION**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _04/14/2025_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☒ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 4/14/2025 | Christopher L. Blank | /S/Christopher L. Blank |
| *Date* | *Printed Name* | *Signature* |

## SERVICE LIST

8:21-bk-11710-SC Notice will be electronically mailed to:

Bradford Barnhardt on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Christopher L Blank on behalf of Debtor Jamie Lynn Gallian
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Laila Rais on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Rais on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Rais on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com,

lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

8:21-bk-11710-SC Notice will not be electronically mailed to:

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Janine Jasso
PO Box 370161
El Paso, CA 79937

Levene Neale Bender Yoo & Golubchik L.L.P.
2818 La Cienega Ave
Los Angeles, CA 90034

Michael D Poole on behalf of Creditor The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

CHRISTOPHER L. BLANK (SBN 115450)
CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2973 Harbor Blvd. #506
Costa Mesa, CA 92626
Telephone:    (949) 250-4600
Email:    chris@chrisblanklaw.com

Attorney for Debtor Jamie Lynn Gallian

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | ) BK Case No. 8:21-bk-11710-SC |
| | ) |
| | ) Chapter 7 |
| | ) |
| JAMIE LYNN GALLIAN | ) HOLOGRAPHIC SIGNATURE OF |
| | ) DEBTOR'S COUNSEL ON DEBTOR'S |
| | ) NOTICE OF APPEAL [Docket 600] |
| Debtor. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

   TO THE COURT AND INTERESTED PARTIES: Please see the attached holographic

signature of Debtor's Counsel on Debtor's Notice of Appeal.


Dated:  April 15, 2025                    CHRISTOPHER L. BLANK, ATTORNEY
                                          AT LAW, PC

                                          By:    /S/ *Christopher L. Blank*
                                          Christopher L. Blank, Attorney for Debtor
                                          Jamie Lynn Gallian

## Part 2: Identify the subject of this appeal

1. Describe the judgment—or the appealable order or decree—from which the appeal is taken:
   Order re Trustee's Motion for Sale, Turnover and Good Faith. Docket No. 593, Ent. 4/10/25, Exh. 1.
   Supplemental Order re Sale, Docket No. 598, Ent. 4/14/25, Exh. 2.
   Supplemental Order re Turnover, Docket No. 599, Ent. 4/14/25, Exh. 3.
2. State the date on which the judgment—or the appealable order or decree—was entered: 04/10/2025

## Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party:  Trustee, Jeffrey Golden

   Attorney:

   Eric P. Israel
   LEVENE, NEALE, BENDER, YOO & GOLUBCHICK, L.L.P.
   2818 La Cienega Ave.
   Los Angeles, CA 90034
   EPI@LNBYG.com  .

2. Party: Creditor, Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates

   Attorney:

   D. Edward Hays
   MARSHACK HAYS WOOD LLP
   870 Roosevelt
   Irvine, CA 92620
   ehays@marshackhays.com

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

Christopher L. Blank    Date: 04/14/2025

Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

ES 915    ES 915    ES 915

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled (*specify*):

### HOLOGRAPHIC SIGNATURE OF DEBTOR'S COUNSEL ON DEBTOR'S NOTICE OF APPEAL

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 4, 2025 Brief and April 15, 2025 Exhibit 1, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See Attached

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 15, 2025 | Christopher L. Blank | /S/Christopher L. Blank |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

## <u>SERVICE LIST</u>

8:21-bk-11710-SC Notice will be electronically mailed to:

Bradford Barnhardt on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Houser Bros. Co.
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Christopher L Blank on behalf of Debtor Jamie Lynn Gallian
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff Jeffrey I. Golden
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Interested Party The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Robert P Goe on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goef
orlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law, jig@trustesolutions.net;kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

**ES 917**            **ES 917**            **ES 917**

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com, kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com, danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal Malmed on behalf of Interested Party Courtesy NEF
, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Plaintiff Jeffrey I. Golden
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Shantal Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com, cheryl.caldwell@gmlaw.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party Courtesy NEF
mail@mellorlawfirm.com, mellormr79158@notify.bestcase.com

Laila Rais on behalf of Creditor Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Rais on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Rais on behalf of Plaintiff Houser Bros. Co.
lmasud@marshackhays.com,

lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Valerie Smith on behalf of Interested Party Courtesy NEF
claims@recoverycorp.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

8:21-bk-11710-SC Notice will not be electronically mailed to:

Greg Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Janine Jasso
PO Box 370161
El Paso, CA 79937

Levene Neale Bender Yoo & Golubchik L.L.P.
2818 La Cienega Ave
Los Angeles, CA 90034

Michael D Poole on behalf of Creditor The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| ☐ *Individual appearing without attorney*<br>☐ *Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - **SELECT DIVISION****

| In re: | |
|---|---|
| | CASE NO.: |
| | CHAPTER: **Select Chapter** |
| | ADVERSARY NO.:<br>(if applicable) |
| | DATE NOTICE OF APPEAL FILED: |
| | DATE NOTICE OF CROSS APPEAL FILED: |
| Debtor(s). | APPEAL DOCKET ENTRY NO.: |

vs.

Plaintiff(s),

**NOTICE OF TRANSCRIPT(S) DESIGNATED FOR AN APPEAL**

Defendant(s).

Notice is given to the court and other parties in interest that the following action was taken:

☐   I do not intend to designate any portion of the transcript(s).

☐   I requested a copy of the transcript(s).

1.  Hearing date (*specify*) _____ and time (*specify*) _____ of transcript requested.
    Date (*specify*) _____ transcript was requested.

2.  Hearing date (*specify*) _____ and time (*specify*) _____ of transcript requested.
    Date (*specify*) _____ transcript was requested.

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

3. Hearing date (*specify*) _____ and time (*specify*) _____ of transcript requested.
   Date (*specify*) _____ transcript was requested.

4. Hearing date (*specify*) _____ and time (*specify*) _____ of transcript requested.
   Date (*specify*) _____ transcript was requested.

5. Hearing date (*specify*) _____ and time (*specify*) _____ of transcript requested.
   Date (*specify*) _____ transcript was requested.

☐  I intend to designate the following transcript(s) previously docketed:

1. Hearing date (*specify*) _____ of designated transcript.
   Docket entry number of designated transcript  (*specify*) _____

2. Hearing date (*specify*) _____ of designated transcript.
   Docket entry number of designated transcript  (*specify*) _____

3. Hearing date (*specify*) _____ of designated transcript.
   Docket entry number of designated transcript  (*specify*) _____

4. Hearing date (*specify*) _____ of designated transcript.
   Docket entry number of designated transcript  (*specify*) _____

5. Hearing date (*specify*) _____ of designated transcript.
   Docket entry number of designated transcript  (*specify*) _____

Date: _____

_____
Printed name of law firm

_____
Signature

_____
Printed name

_____
Attorney for (*specify*)

Instructions

This Notice <u>cannot</u> be used to order a transcript.  To order a transcript, use the court approved Transcript Order Form on the court's website at www.cacb.uscourts.gov/transcripts.

This Notice must be served on opposing counsel and filed with the court within 14 days of the filing of the Notice of Appeal.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2016*    ES 921              Page 2          ES 921          F 8004-1.1.NOTICE.TRANSCRIPT          ES 921

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:


A true and correct copy of the foregoing document entitled: **NOTICE OF TRANSCRIPT(S) DESIGNATED FOR AN APPEAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____    _____
*Date*                            *Printed Name*                        *Signature*

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# TRANSCRIPT ORDERING INSTRUCTIONS

## TRANSCRIPT REQUESTS
A separate form must be completed for each hearing date requested.  Select a Transcription Service Provider from the attached Court-approved list of transcribers and complete the *Transcript Order form*.

Five (5) types of transcript requests:

- **30 Days:** A transcript to be delivered within thirty (30) calendar days after receipt of deposit.

- **14 Days:** A transcript to be delivered within fourteen (14) calendar days after receipt of deposit.

- **7 Days:** A transcript to be delivered within seven (7) calendar days after receipt of deposit.

- **3 Days:** A transcript to be delivered within three (3) calendar days after receipt of deposit.

- **Next Day:** A transcript to be delivered within 24 hours after receipt of deposit.

## 341(a) MEETING OF CREDITORS:
The Meeting of Creditors is recorded by the Trustee. The Court does not keep or provide a copy of the recording.  For *341(a) Recording Request Procedures*, visit the U.S. Trustee website www.justice.gov/ust/r16.

## FILE THE TRANSCRIPT ORDER FORM
Parties with an ECF account must file the Transcript Order Form in CM/ECF on the related case docket. Use docket event "*Transcript Order Form (Public Request)*." As with all ECF filings, the completed PDF *Transcript Order Form* must be "flattened" before electronically filing through ECF (click here to view the procedure). Self-represented litigants and parties without an ECF account may hand-deliver or mail the form to the division where the hearing was held.

**\*NOTE: The Court does not accept transcript requests via fax, email or telephone.**

## TRANSCRIPT PROCESSING
The Court does not transcribe court proceedings. **The official record of court proceedings is transcribed by a court-approved transcriber from materials provided to that transcriber by the court.** When a *Transcript Order Form* is received, the Court will forward the hearing information to the Transcription Service Provider you designate on the Transcript Order Form. The Transcription Service Provider will contact you regarding receipt of the transcript. Thereafter, contact the Transcription Service Provider directly if you have questions regarding your transcript order. Transcripts cannot be picked up at the Court. For more information, go to www.cacb.uscourts.gov/track-transcript-status.

## TRANSCRIPT COSTS/FORMS OF PAYMENT
The Transcription Service Provider will contact you directly regarding transcript costs and forms of payment. Rates may vary but may not exceed maximum charges set by the Judicial Conference of the United States (maximum rates are listed at www.cacb.uscourts.gov/transcripts).

## COPIES OF TRANSCRIPTS
Once the *Transcript Order Form* requesting a transcript of a hearing is entered on the related case docket, a Transcription Service Provider is designated and materials for transcription are sent by the Court to the designated Transcription Service Provider. If more than one party files a *Transcript Order Form* for the same hearing, the first *Transcript Order Form* on the docket takes precedence. All other parties that wish to obtain a transcript of the same hearing are to contact the Transcription Service Provider designated on the case docket.

Completed transcripts are filed by the transcriber on the related case docket and restricted for 90 days from the filed date as set forth in the *Guide to Judiciary Policy* Vol. 6, §510.25.10. During the 90-day restriction period, the transcript may be viewed at the Clerk's Office on a public computer terminal or a copy purchased from the designated Transcription Service Provider that created the original transcript. For more information see *Transcript Ordering Instructions,* section 1.15 of the Court Manual at www.cacb.uscourts.gov/court-manual.

**ES 923**          **ES 923**                    **ES 923**

## COURT LOCATIONS

Self-represented litigants and parties without an ECF account may hand-deliver or mail the form to the division where the hearing was held.

| *DIVISION | ADDRESS |
|-----------|---------|
| **Los Angeles (LA)**<br><br>(855) 460-9641 | United States Bankruptcy Court<br>255 E. Temple Street Suite 940<br>Los Angeles, CA 90012<br>Attn: Transcript Orders (name of Judge who held the hearing) |
| **Northern (ND)**<br><br>(855) 460-9641 | United States Bankruptcy Court<br>1415 State Street<br>Santa Barbara, CA 93101<br>Attn: Transcript Orders (name of Judge who held the hearing) |
| **Riverside (RS)**<br><br>(855) 460-9641 | United States Bankruptcy Court<br>3420 Twelfth Street<br>Riverside, CA 92501<br>Attn: Transcript Orders (name of Judge who held the hearing) |
| **San Fernando Valley (SV)**<br><br>(855) 460-9641 | United States Bankruptcy Court<br>21041 Burbank Boulevard<br>Woodland Hills, CA 91367<br>Attn: Transcript Orders (name of Judge who held the hearing) |
| **Santa Ana (SA)**<br><br>(855) 460-9641 | United States Bankruptcy Court<br>411 West Fourth Street<br>Santa Ana, CA 92701<br>Attn: Transcript Orders (name of Judge who held the hearing) |

*NOTE: The Court does not accept transcript requests via fax, email or telephone.**



# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

## APPROVED TRANSCRIPTION SERVICE PROVIDERS

**BEN HYATT CERTIFIED DEPOSITION REPORTERS**
17835 Ventura Blvd., Suite 310
Encino, CA 91316
Ph: (888) 272-0022, ext. 201 or ext. 206
Fax: (818) 343-7116
Email: mhyatt@benhyatt.com
www.BenHyatt.com

**eSCRIBERS, LLC**
7227 N 16th Street, Suite 207
Phoenix, AZ 85020
Ph:(213) 943-3843
Fax: (973) 954-5619
Email: sales@escribers.net
www.eScribers.net

**BRIGGS REPORTING CO., INC.**
9711 Cactus Street
Suite B
Lakeside, CA 92040
Ph: (310) 410-4151
Fax: (858) 453-9625
Email: BriggsReporting@yahoo.com

**EXCEPTIONAL REPORTING SERVICES, INC.**
14633 S. Padre Island Drive, Suite 103
Corpus Christi, TX 78418
Ph:(361) 949-2988, ext. 0
Fax: (361) 949-7799
Email: transcripts@exceptionalreporting.com
www.ExceptionalReporting.com

**ECHO REPORTING, INC.**
9711 Cactus Street
Suite B
Lakeside, CA 92040
Ph:(858) 453-7590
Fax: (858) 453-9625
Email: echoreporting@yahoo.com

**J & J COURT TRANSCRIBERS, INC.**
268 Evergreen Avenue
Hamilton, NJ 08619
Ph: (609) 586-2311
Fax: (609) 587-3599
Email: JJcourt@JJcourt.com
www.JJcourt.com

ES 925                          ES 925                          ES 925



ORDER No. _____

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### **TRANSCRIPT ORDER FORM**

CHAPTER_____

APPEAL?  ☐ Yes ☐ No
APPEAL No. _____
<span>(if known)</span>

(File this form on the related case docket)

Ordering Party's Name:_____   Attorney Bar# _____

Law Firm: _____

Mailing Address: _____

_____

Person to Contact (**If Judge-ordered: Transcriber to contact Procurement\*\***):_____

Telephone: (_____)_____ E-mail: _____

Bankruptcy Case #: _____ Adversary Proceeding #/MP #: _____

Date of Hearing (**complete a SEPARATE form for EACH hearing date**): _____Time: _____

Debtor: _____

Adversary Proceeding Name: _____ vs. _____

Hearing Judge: SELECT_____   Courtroom #: SELECT_____  .

**TRANSCRIBER:** SELECT_____   **ALTERNATE:** SELECT_____
(Select from the Court-approved list of Transcription Service Providers. This provider will contact you regarding payment)

**341(a) MEETING OF CREDITORS:** The Meeting of Creditors is recorded by the Trustee. **DO NOT USE THIS FORM.** For *341(a) Recording Request Procedures*, visit the U.S. Trustee website www.justice.gov/ust/r16

| **Transcript Type:** | **NOTE:** The Court is not responsible for determining if a hearing has been previously transcribed. Check the case docket to determine if a filed transcript already exists or is being transcribed before filing this form. |
|---|---|

**Copy of Existing Transcript:** Contact the transcriber directly for a copy.

☐ 30 Days (Ordinary)     ☐ 3 Days          ☐ Entire Hearing
☐ 14 Days                ☐ Next Day (24 hours) ☐ Ruling/Opinion of Judge only
☐ 7 Days                                   ☐ Testimony of Witness _____
                                           ☐ Other*                    (name of witness)

\*Special Instructions: _____
**Transcript due dates** are computed from the date the deposit is received by the Transcriber. The cost of a transcript varies for each type. See *Transcript Ordering Instructions*, **Transcript Costs/Forms of Payment**.

### TO BE COMPLETED BY THE COURT

☐ **Judge Ordered Transcript\*\*:** Clerk must **docket this form**; CM/ECF will automatically notify Procurement.

Date Request Filed: _____Date Sent to Transcriber: _____ By ☐FDS ☐Mail ☐Messenger

Digital Recording (or Analog Tape Recording)

(Tape #:____)Time Start (Index #): _____Time End (Index #): _____Time Start: _____Time End: _____

(Tape #:____)Time Start (Index #): _____Time End (Index #): _____Time Start: _____Time End: _____

Court Recorder: _____Division:_____Processed by: _____

### **\*\*TRANSCRIBER INSTRUCTIONS**

**Judge-ordered transcripts:** email price quote & invoice to procurement@cacb.uscourts.gov.  Provide quote _prior_ to transcribing.

AMENDED ORDER CONTINUING

THE BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT


JUDICIAL COUNCIL OF THE NINTH CIRCUIT AMENDED ORDER CONTINUING THE BANKRUPTCY APPELLATE PANEL OF THE NINTH CIRCUIT


1.    **Continuing the Bankruptcy Appellate Panel Service.**

(a)  **Pursuant to 28 U.S.C. § 158(b)(1) as amended by the Bankruptcy Reform  Act of 1994, the judicial council hereby reaffirms and continues a bankruptcy appellate panel service which shall provide panels to hear and determine appeals from judgments, orders and decrees entered by bankruptcy judges from districts within the Ninth Circuit.**

(b)  **Panels of the bankruptcy appellate panel service may hear and determine appeals originating from districts that have authorized such appeals to be decided by the bankruptcy appellate panel service  pursuant to 28 U.S.C. § 158(b)(6).**

(c)  **All appeals originating from those districts shall be referred to bankruptcy appellate panels unless a party elects to have the appeal heard by the district court in the time and manner and form set forth in 28 U.S.C. § 158(c)(1) and in paragraph 3 below.**

(d)  **Bankruptcy appellate panels may hear and determine appeals from final judgments, orders and decrees entered by bankruptcy judges and, with leave of bankruptcy appellate panels, appeals from interlocutory orders and decrees entered by bankruptcy judges.**

(e)  **Bankruptcy appellate panels may hear and determine appeals from final judgments, orders, and decrees entered after the district court from which the appeal originates has issued an order referring bankruptcy cases and proceedings to bankruptcy judges pursuant to 28 U.S.C. § 157(a).**

2.    **Immediate Reference to Bankruptcy Appellate Panels.**

**Upon filing of the notice of appeal, all appeals are immediately referred to the bankruptcy appellate panel service.**

3.  **Election to District Court.**

**A party desiring to transfer the hearing of an appeal from the bankruptcy appellate panel**

service to the district court pursuant to 28 U.S.C. § 158(c)(1) shall timely file a written statement of election expressly stating that the party elects to have the appeal transferred from the bankruptcy appellate panel service to the district court.

(a)  Appellant: If the appellant wishes to make such an election, appellant must file a written statement of election with the clerk of the bankruptcy court at the time of filing the notice of appeal.  See Bankruptcy Rule 8005(a).  When such an election is made, the clerk of the bankruptcy court shall forthwith transfer the case to the district court.  The clerk of the bankruptcy court shall give notice to all parties and the clerk of the bankruptcy appellate panel of the transfer at the same time and in the same manner as set forth for serving notice of the appeal in Bankruptcy Rule 8003(c).

(b)  All Other Parties: In all appeals where appellant does not file an election, the clerk of the bankruptcy court shall forthwith transmit a copy of the notice of appeal to the clerk of the bankruptcy appellate panel.  If any other party wishes to have the appeal heard by the district court, that party must, within thirty (30) days after service of the notice of appeal, file with the clerk of the bankruptcy appellate panel a written statement of election to transfer the appeal to the district court.  Upon receipt of a timely statement of election filed under this section, the clerk of the bankruptcy appellate panel shall forthwith transfer the appeal to the appropriate district court and shall give notice of the transfer to the parties and the clerk of the bankruptcy court.  Any question as to the timeliness of an election shall be referred by the clerk of the bankruptcy appellate panel to a bankruptcy appellate panel motions panel for determination.

4.    MOTIONS DURING ELECTION PERIOD

All motions relating to an appeal shall be filed with the bankruptcy appellate panel service unless the case has been transferred to a district court.  The bankruptcy appellate panels may not dismiss or render a final disposition of an appeal within thirty (30) days from the date of service of the notice of appeal,  but may otherwise fully consider and dispose of all motions.

5.    PANELS

Each appeal shall be heard and determined by a panel of three judges from among those appointed pursuant to paragraph 6, provided however that a bankruptcy judge shall not participate in an appeal originating in a district for which the judge is appointed or designated under 28 U.S.C. § 152.  In addition, the panel may hear and determine appeals en banc under rules promulgated by and approved as provided in section 8 of this order.

6.    MEMBERSHIP OF BANKRUPTCY APPELLATE PANELS

The bankruptcy appellate panel shall consist of seven members serving seven-year terms (subject to reappointment to one additional three-year term).  The judicial council shall periodically examine the caseload of the bankruptcy appellate panel service to assess whether the number of bankruptcy judges serving should change.  Appointment of regular and pro tem bankruptcy judges to service on the bankruptcy appellate panel shall be governed by regulations promulgated by the Judicial Council.

(a)  When a three-judge panel cannot be formed from the judges designated under subparagraph (a) to hear a case because judges have recused themselves, are disqualified from hearing the case because it arises from their district, or are otherwise unable to participate, the Chief Judge of the  Ninth Circuit may designate one or more other bankruptcy judge(s) from the circuit to hear the case.

(b)  In order to provide assistance with the caseload or calendar relief, to constitute an en banc panel, or otherwise to assist the judges serving, or to afford other bankruptcy judges with the opportunity to serve on the bankruptcy appellate panels, the Chief Judge of the Ninth Circuit may designate from time to time one or more other bankruptcy judge(s) from the circuit to participate in one or more panel sittings.

7.    CHIEF JUDGE

The members of the bankruptcy appellate panel service by majority vote shall select one of their number to serve as chief judge.

8.    RULES OF PROCEDURE

(a)    Practice before the bankruptcy appellate panels shall be governed by Part VIII of the Federal Rules of Bankruptcy Procedure, except as provided in this order or by rule of the bankruptcy appellate panel service adopted under subparagraph (b).

(b)    The bankruptcy appellate panel service may establish rules governing practice and procedure before bankruptcy appellate panels not inconsistent with the Federal Rules of Bankruptcy Procedure.  Such rules shall be submitted to, and approved by, the Judicial Council of the Ninth Circuit.

9.    PLACES OF HOLDING COURT.

Bankruptcy appellate panels may conduct hearings at such times and places within the Ninth Circuit as it determines to be appropriate.

10.    **CLERK AND OTHER EMPLOYEES.**

(a) Clerk's Office.  The members of the bankruptcy appellate panel service shall select and hire the clerk of the bankruptcy appellate panel.  The clerk of the bankruptcy appellate panel may select and hire staff attorneys and other necessary staff.  The chief judge shall have appointment authority for the clerk, staff attorneys and other necessary staff.  The members of the bankruptcy appellate panel shall determine the location of the principal office of the clerk.

(b) Law Clerks.  Each judge on the bankruptcy appellate panel service shall have appointment authority to hire an additional law clerk.

11.    **EFFECTIVE DATE**

This Order shall be effective as to all appeals originating in those bankruptcy cases that are filed after the effective date of this Order.  For all appeals originating in those bankruptcy cases that were filed before October 22, 1994, the Judicial Council's prior Amended Order, as revised October 15, 1992, shall apply.  This Order, insofar as just and practicable, shall apply to all appeals originating in those bankruptcy cases that were filed after the effective date of the Bankruptcy Reform Act of 1994, October 22, 1994, but before the date of this Order.

**IT IS SO ORDERED.**

DATE: April 28, 1995; amended May 9, 2002, amended May 4, 2010, amended February 18, 2015.

For the Judicial Council:

**Sidney R. Thomas, Chief Judge**
**U.S. Court of Appeals**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE JAMIE LYNN GALLIAN | DISTRICT COURT CASE NUMBER:<br><br>8:25−cv−00827−CV |
| DEBTOR(S) | BANKRUPTCY COURT CASE NUMBER:<br><br>8:21−bk−011710−SC |
| JAMIE LYNN GALLIAN | ADVERSARY CASE NUMBER: |
| APPELLANT(S) | |
| v. | |
| HOUSER BROS. CO. | |
| APPELLEE(S). | **NOTICE REGARDING APPEAL**<br>**FROM BANKRUPTCY COURT** |

Because one of the parties has so requested, this appeal from the Bankruptcy Court will be heard in, and determined by, the United States District Court, Central District of California. The District Court has assigned to the appeal the case number shown above. Hereafter, *this District Court case number* **must** appear on all documents filed in this appeal, along with the Bankruptcy Court case number(s) and adversary case number(s) (if any) shown above.

The appeal has been assigned to _____ United States District Judge Cynthia Valenzuela _____, whose initials appear at the end of this District Court case number. Be advised that pursuant to Local Rules 7.1-1 and 83-1.3.1 and Local Bankruptcy Rule 2.1, parties are **required** (1) to file a certification of interested parties and (2) to notify the Court of any cases previously filed with the District Court that appear to be related to this bankruptcy appeal.

Unless exempted by the Court's local rules, all documents must be e-filed using the District Court's CM/ECF System. Unless otherwise ordered by the Court, pro se litigants shall continue to present all documents to the Clerk for filing in paper format. Documents received by the Clerk from pro se litigants under this rule will be scanned by the Clerk into the CM/ECF System.

Each party must comply with all applicable rules of the Federal Rules of Bankruptcy Procedure. As provided in said rules, within fourteen days after filing the notice of appeal, Appellant **must** file the following with the Clerk of the Bankruptcy Court:

**A designation of record**
**A statement of issues on appeal**
**A notice regarding the ordering of transcripts**

If the Appellee desires to designate further portions of the record, Appellee must file in the Bankruptcy Court within fourteen days after service of Appellant's designation a supplemental designation of record, supplemental statement of issues, and/or a notice regarding additional transcripts. Each counsel will include the designated excerpts of the record and all transcripts previously ordered by said counsel as an appendix to his or her brief(s).

ES 931                    ES 931                    ES 931

Please note that neither party may include or make reference to any excerpts of record other than those which have been properly and timely designated. The District Court, in the appeal, will review and consider only those documents in the case file that the parties have designated and thereafter reproduced.

Under Federal Rule of Bankruptcy Procedure 8010(a), the court reporter/recorder is required to file all transcripts ordered by either side within 30 days of the order (**with payment tendered in advance**) unless an extension has been granted.

**The failure of either party to comply with time requirements as stated in this notice and applicable rules may result in the dismissal of the appeal or the right to oppose the appeal.**

After the designated record is complete, the Clerk of the Bankruptcy Court will transmit to the Clerk of the District Court either the record for this appeal or notice that the record is available electronically. The Clerk of the District Court will then issue a Notice Re: Bankruptcy Record Complete, which will constitute notice, pursuant to Federal Rule of Bankruptcy Procedure 8010(b)(3), that the record has been received by the District Court. The date of filing of this Notice Re: Bankruptcy Record Complete will be the starting date for the calculation of all deadlines pursuant to Federal Rule of Bankruptcy Procedure 8018, and, if applicable, Federal Rule of Bankruptcy Procedure 8016. Only the District Court may grant a request for an extension of the time for filing briefs as set forth in those Rules. Any such request must be filed well in advance of the due date and must specify good cause for the requested extension.

Once briefing is complete, the Courtroom Deputy Clerk of the assigned District Judge will advise parties of the date for oral argument, unless the District Judge determines that oral argument is not needed.

Clerk, U.S. District Court

\_\_April 21, 2025\_\_
Date

By \_/s/ *Shaunte M Hunter*\_\_
Deputy Clerk

*CC:  Bankruptcy Court Judge*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE JAMIE LYNN GALLIAN | DISTRICT COURT CASE NUMBER: |
| | 8:25−cv−00827−CV |
| DEBTOR(S) | BANKRUPTCY COURT CASE NUMBER: |
| | 8:21−bk−011710−SC |
| JAMIE LYNN GALLIAN | ADVERSARY CASE NUMBER: |
| APPELLANT(S) | |
| v. | |
| HOUSER BROS. CO. | |
| APPELLEE(S). | **NOTICE REGARDING APPEAL FROM BANKRUPTCY COURT** |

Because one of the parties has so requested, this appeal from the Bankruptcy Court will be heard in, and determined by, the United States District Court, Central District of California. The District Court has assigned to the appeal the case number shown above. Hereafter, *this District Court case number* **must** appear on all documents filed in this appeal, along with the Bankruptcy Court case number(s) and adversary case number(s) (if any) shown above.

The appeal has been assigned to _____United States District Judge Cynthia Valenzuela_____, whose initials appear at the end of this District Court case number. Be advised that pursuant to Local Rules 7.1-1 and 83-1.3.1 and Local Bankruptcy Rule 2.1, parties are **required** (1) to file a certification of interested parties and (2) to notify the Court of any cases previously filed with the District Court that appear to be related to this bankruptcy appeal.

Unless exempted by the Court's local rules, all documents must be e-filed using the District Court's CM/ECF System. Unless otherwise ordered by the Court, pro se litigants shall continue to present all documents to the Clerk for filing in paper format. Documents received by the Clerk from pro se litigants under this rule will be scanned by the Clerk into the CM/ECF System.

Each party must comply with all applicable rules of the Federal Rules of Bankruptcy Procedure. As provided in said rules, within fourteen days after filing the notice of appeal, Appellant **must** file the following with the Clerk of the Bankruptcy Court:

**A designation of record**
**A statement of issues on appeal**
**A notice regarding the ordering of transcripts**

If the Appellee desires to designate further portions of the record, Appellee must file in the Bankruptcy Court within fourteen days after service of Appellant's designation a supplemental designation of record, supplemental statement of issues, and/or a notice regarding additional transcripts. Each counsel will include the designated excerpts of the record and all transcripts previously ordered by said counsel as an appendix to his or her brief(s).

Please note that neither party may include or make reference to any excerpts of record other than those which have been properly and timely designated. The District Court, in the appeal, will review and consider only those documents in the case file that the parties have designated and thereafter reproduced.

Under Federal Rule of Bankruptcy Procedure 8010(a), the court reporter/recorder is required to file all transcripts ordered by either side within 30 days of the order (**with payment tendered in advance**) unless an extension has been granted.

**The failure of either party to comply with time requirements as stated in this notice and applicable rules may result in the dismissal of the appeal or the right to oppose the appeal.**

After the designated record is complete, the Clerk of the Bankruptcy Court will transmit to the Clerk of the District Court either the record for this appeal or notice that the record is available electronically. The Clerk of the District Court will then issue a Notice Re: Bankruptcy Record Complete, which will constitute notice, pursuant to Federal Rule of Bankruptcy Procedure 8010(b)(3), that the record has been received by the District Court. The date of filing of this Notice Re: Bankruptcy Record Complete will be the starting date for the calculation of all deadlines pursuant to Federal Rule of Bankruptcy Procedure 8018, and, if applicable, Federal Rule of Bankruptcy Procedure 8016. Only the District Court may grant a request for an extension of the time for filing briefs as set forth in those Rules. Any such request must be filed well in advance of the due date and must specify good cause for the requested extension.

Once briefing is complete, the Courtroom Deputy Clerk of the assigned District Judge will advise parties of the date for oral argument, unless the District Judge determines that oral argument is not needed.

Clerk, U.S. District Court

 April 21, 2025 
Date

By  /s/ *Shaunte M Hunter* 
Deputy Clerk

*CC:  Bankruptcy Court Judge*



ORDER No. _____

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### TRANSCRIPT ORDER FORM

CHAPTER 7.00

APPEAL? ☒Yes ☐No
APPEAL No. 8:25-cv-00827-CV
(if known)

(File this form on the related case docket)

Ordering Party's Name: Christopher L. Blank    Attorney Bar# 115450

Law Firm: Christopher L. Blank, Attorney at Law, PC

Mailing Address: 2973 Harbor Blvd. #506, Costa Mesa, CA 92626

Person to Contact (**If Judge-ordered: Transcriber to contact Procurement\*\***): Christopher L. Blank

Telephone: (714) 856-4626    E-mail: chris@chrisblanklaw.com

Bankruptcy Case #: 8:21-bk-11710-SC    Adversary Proceeding #/MP #: _____

Date of Hearing (**complete a SEPARATE form for EACH hearing date**): 3/4/25   Time: 11:00 AM

Debtor: Jamie Lynn Gallian

Adversary Proceeding Name: _____ vs. _____

Hearing Judge: S. Clarkson    Courtroom #: SA 5C

**TRANSCRIBER:** Briggs Reporting    **ALTERNATE:** J & J Court Transcribers

(Select from the Court-approved list of Transcription Service Providers. This provider will contact you regarding payment)

**341(a) MEETING OF CREDITORS:** The Meeting of Creditors is recorded by the Trustee. **DO NOT USE THIS FORM.** For *341(a) Recording Request Procedures click here*, visit the U.S. Trustee website

| **Transcript Type:** | **NOTE:** The Court is not responsible for determining if a hearing has been previously transcribed. Check the case docket to determine if a filed transcript already exists or is being transcribed before filing this form. |
|---|---|

**Copy of Existing Transcript:** Contact the transcriber directly for a copy.

☒ 30 Days (Ordinary)   ☐ 3 Days   ☒ Entire Hearing
☐ 14 Days   ☐ Next Day (24 hours)   ☐ Ruling/Opinion of Judge only
☐ 7 Days            ☐ Testimony of Witness _____
          ☐ Other\* _____ (name of witness)

\*Special Instructions: _____

**Transcript due dates** are computed from the date the deposit is received by the Transcriber. The cost of a transcript varies for each type. See *Transcript Ordering Instructions*, **Transcript Costs/Forms of Payment**.

### TO BE COMPLETED BY THE COURT

☐ **Judge Ordered Transcript\*\*:** Clerk must **docket this form**; CM/ECF will automatically notify Procurement.

Date Request Filed: _____ Date Sent to Transcriber: _____ By ☐FDS ☐Mail ☐Messenger

Digital Recording (or Analog Tape Recording)

(Tape #:____)Time Start (Index #): _____ Time End (Index #): _____Time Start: _____Time End: _____

(Tape #:____)Time Start (Index #): _____ Time End (Index #): _____Time Start: _____Time End: _____

Court Recorder: _____ Division: _____ Processed by: _____

### \*\*TRANSCRIBER INSTRUCTIONS

**Judge-ordered transcripts:** email price quote & invoice to procurement@cacb.uscourts.gov. Provide quote *prior* to transcribing.

*Rev. October 2023 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.*

F 8935       F 8935       F 8935



ORDER No. _____

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### TRANSCRIPT ORDER FORM

CHAPTER 7.00

APPEAL? ☒ Yes ☐ No
APPEAL No. 8:25-cv-00827-CV
(if known)

(File this form on the related case docket)

Ordering Party's Name: Christopher L. Blank        Attorney Bar # 115450

Law Firm: Christopher L. Blank, Attorney at Law, PC

Mailing Address: 2973 Harbor Blvd. #506, Costa Mesa, CA 92626

Person to Contact (**If Judge-ordered: Transcriber to contact Procurement\*\***): Christopher L. Blank

Telephone: ( 714 ) 856-4626        E-mail: chris@chrisblanklaw.com

Bankruptcy Case #: 8:21-bk-11710-SC        Adversary Proceeding #/MP #: _____

Date of Hearing (**complete a SEPARATE form for EACH hearing date**): 3/27/25    Time: 11:00 AM

Debtor: Jamie Lynn Gallian

Adversary Proceeding Name: _____ vs. _____

Hearing Judge: S. Clarkson        Courtroom #: SA 5C

**TRANSCRIBER:** Briggs Reporting        **ALTERNATE:** J & J Court Transcribers

(Select from the Court-approved list of Transcription Service Providers. This provider will contact you regarding payment)

**341(a) MEETING OF CREDITORS:** The Meeting of Creditors is recorded by the Trustee. **DO NOT USE THIS FORM.** For *341(a) Recording Request Procedures click here*, visit the U.S. Trustee website

| Transcript Type: | NOTE: The Court is not responsible for determining if a hearing has been previously transcribed. Check the case docket to determine if a filed transcript already exists or is being transcribed before filing this form. |
|---|---|

**Copy of Existing Transcript:** Contact the transcriber directly for a copy.

☒ 30 Days (Ordinary)    ☐ 3 Days        ☒ Entire Hearing
☐ 14 Days            ☐ Next Day (24 hours)  ☐ Ruling/Opinion of Judge only
☐ 7 Days                            ☐ Testimony of Witness _____
                                ☐ Other\* _____ (name of witness)

\*Special Instructions: _____

**Transcript due dates** are computed from the date the deposit is received by the Transcriber. The cost of a transcript varies for each type. See *Transcript Ordering Instructions*, **Transcript Costs/Forms of Payment**.

### TO BE COMPLETED BY THE COURT

☐ **Judge Ordered Transcript\*\*:** Clerk must **docket this form**; CM/ECF will automatically notify Procurement.

Date Request Filed: _____ Date Sent to Transcriber: _____ By ☐ FDS ☐ Mail ☐ Messenger

Digital Recording (or Analog Tape Recording)

(Tape #: ____ )Time Start (Index #): _____ Time End (Index #): _____ Time Start: _____ Time End: _____

(Tape #: ____ )Time Start (Index #): _____ Time End (Index #): _____ Time Start: _____ Time End: _____

Court Recorder: _____ Division: _____ Processed by: _____

### \*\*TRANSCRIBER INSTRUCTIONS

**Judge-ordered transcripts:** email price quote & invoice to procurement@cacb.uscourts.gov. Provide quote *prior* to transcribing.

*Rev. October 2023 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.*

F 5 936            F 5 936            F 5 936

ORDER No. _____



# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### **TRANSCRIPT ORDER FORM**

CHAPTER 7.00

APPEAL?    ☒Yes ☐No
APPEAL No. 8:25-cv-00827-CV
(if known)

(File this form on the related case docket)

Ordering Party's Name: Christopher L. Blank      Attorney Bar # 115450

Law Firm: Christopher L. Blank, Attorney at Law, PC

Mailing Address: 2973 Harbor Blvd. #506, Costa Mesa, CA 92626

Person to Contact (**If Judge-ordered: Transcriber to contact Procurement\*\***): Christopher L. Blank

Telephone: ( 714 ) 856-4626      E-mail: chris@chrisblanklaw.com

Bankruptcy Case #: 8:21-bk-11710-SC      Adversary Proceeding #/MP #: _____

Date of Hearing (**complete a SEPARATE form for EACH hearing date**): 4/10/25    Time: 9:30 AM

Debtor: Jamie Lynn Gallian

Adversary Proceeding Name: _____ vs. _____

Hearing Judge: S. Clarkson      Courtroom #: SA 5C

**TRANSCRIBER:** Briggs Reporting      **ALTERNATE:** J & J Court Transcribers

(Select from the Court-approved list of Transcription Service Providers. This provider will contact you regarding payment)

**341(a) MEETING OF CREDITORS:** The Meeting of Creditors is recorded by the Trustee. **DO NOT USE THIS FORM.** For *341(a) Recording Request Procedures click here*, visit the U.S. Trustee website

| Transcript Type: | NOTE: The Court is not responsible for determining if a hearing has been previously transcribed. Check the case docket to determine if a filed transcript already exists or is being transcribed before filing this form. |
|---|---|

**Copy of Existing Transcript:** Contact the transcriber directly for a copy.

☒ 30 Days (Ordinary)    ☐ 3 Days    ☒ Entire Hearing
☐ 14 Days    ☐ Next Day (24 hours)    ☐ Ruling/Opinion of Judge only
☐ 7 Days    ☐ Testimony of Witness _____
☐ Other* _____ (name of witness)

*Special Instructions: _____

**Transcript due dates** are computed from the date the deposit is received by the Transcriber. The cost of a transcript varies for each type. See *Transcript Ordering Instructions*, **Transcript Costs/Forms of Payment**.

### TO BE COMPLETED BY THE COURT

☐ **Judge Ordered Transcript\*\*:** Clerk must **docket this form**; CM/ECF will automatically notify Procurement.

Date Request Filed: _____ Date Sent to Transcriber: _____ By ☐FDS ☐Mail ☐Messenger

Digital Recording (or Analog Tape Recording)

(Tape #:____)Time Start (Index #): _____Time End (Index #): _____Time Start: _____Time End: _____

(Tape #:____)Time Start (Index #): _____Time End (Index #): _____Time Start: _____Time End: _____

Court Recorder: _____Division: _____Processed by: _____

### **\*\*TRANSCRIBER INSTRUCTIONS**

**Judge-ordered transcripts:** email price quote & invoice to procurement@cacb.uscourts.gov.  Provide quote **prior** to transcribing.

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Christopher L. Blank, SBN 115450<br>Christopher L. Blank, Attorney at Law, PC<br>2973 Harbor Blvd. #506<br>Costa Mesa, CA 92626<br>949-250-4600<br>chris@chrisblanklaw.com | FOR COURT USE ONLY |
|---|---|

☐ *Individual appearing without attorney*
☒ *Attorney for:* Debtor, Jamie Lynn Gallian

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br>Jamie Lynn Gallian | |
|---|---|
| | CASE NO.: 8:21-bk-11710-SC<br><br>CHAPTER: 7<br><br>ADVERSARY NO.:<br>(if applicable)<br><br>DATE NOTICE OF APPEAL FILED: 04/14/2025<br><br>DATE NOTICE OF CROSS APPEAL FILED:<br><br>APPEAL DOCKET ENTRY NO.: 600 |
| Debtor(s). | |
| vs.<br><br>Plaintiff(s),<br><br><br>Defendant(s). | **NOTICE OF TRANSCRIPT(S) DESIGNATED FOR AN APPEAL** |

Notice is given to the court and other parties in interest that the following action was taken:

☐    I do not intend to designate any portion of the transcript(s).

☒    I requested a copy of the transcript(s).

1.    Hearing date (*specify*) __03/04/2025__ and time (*specify*) __11:00 am__ of transcript requested.
        Date (*specify*) __04/28/2025__ transcript was requested.

2.    Hearing date (*specify*) __03/27/2025__ and time (*specify*) __11:00 am__ of transcript requested.
        Date (*specify*) __04/28/2025__ transcript was requested.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2016*  ES 938                                Page 1                    **F 8004-1.1.NOTICE TRANSCRIPT**  ES 938

3. Hearing date (*specify*) _04/10/2025_ and time (*specify*) _9:30 am_ of transcript requested.
Date (*specify*) _04/28/2025_ transcript was requested.

4. Hearing date (*specify*) _____ and time (*specify*) _____ of transcript requested.
Date (*specify*) _____ transcript was requested.

5. Hearing date (*specify*) _____ and time (*specify*) _____ of transcript requested.
Date (*specify*) _____ transcript was requested.

☐ I intend to designate the following transcript(s) previously docketed:

1. Hearing date (*specify*) _____ of designated transcript.
Docket entry number of designated transcript (*specify*) _____

2. Hearing date (*specify*) _____ of designated transcript.
Docket entry number of designated transcript (*specify*) _____

3. Hearing date (*specify*) _____ of designated transcript.
Docket entry number of designated transcript (*specify*) _____

4. Hearing date (*specify*) _____ of designated transcript.
Docket entry number of designated transcript (*specify*) _____

5. Hearing date (*specify*) _____ of designated transcript.
Docket entry number of designated transcript (*specify*) _____

Date: _04/28/2025_

Christopher L. Blank, Attorney at Law, PC
_____
Printed name of law firm

/S/Christopher L. Blank
_____
Signature

Christopher L. Blank
_____
Printed name

Debtor/Appellant Jamie Lynn Gallian
_____
Attorney for (*specify*)

<u>Instructions</u>

This Notice <u>cannot</u> be used to order a transcript.  To order a transcript, use the court approved Transcript Order Form on the court's website at www.cacb.uscourts.gov/transcripts.

This Notice must be served on opposing counsel and filed with the court within 14 days of the filing of the Notice of Appeal.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2016*    ES 939    Page 2    F 8004-1.1.NOTICE.TRANSCRIPT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2973 Harbor Blvd. #506, Costa Mesa, CA 92626

A true and correct copy of the foregoing document entitled: **NOTICE OF TRANSCRIPT(S) DESIGNATED FOR AN APPEAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __4/28/2025__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

 See Attached

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 4/28/2025 | Christopher L. Blank | /S/Christopher L. Blank |
| *Date* | *Printed Name* | *Signature* |

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## SERVICE LIST

8:21-bk-11710-SC Notice will be electronically mailed to:
Bradford  Barnhardt on behalf of Creditor   Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
bbarnhardt@marshackhays.com,  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford  Barnhardt on behalf of Interested Party   Courtesy NEF
bbarnhardt@marshackhays.com,  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford  Barnhardt on behalf of Plaintiff   Houser Bros. Co.
bbarnhardt@marshackhays.com,  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Christopher L Blank on behalf of Attorney   Christopher L. Blank, Attorney at Law, PC
chris@chrisblanklaw.com

Christopher L Blank on behalf of Debtor Jamie Lynn Gallian
chris@chrisblanklaw.com

Aaron E. De Leest on behalf of Plaintiff   Jeffrey I. Golden
adeleest@marshackhays.com,  adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Aaron E. De Leest on behalf of Trustee Jeffrey I Golden (TR)
adeleest@marshackhays.com,  adeleest@marshackhays.com,alinares@ecf.courtdrive.com

Robert P Goe on behalf of Creditor   The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Interested Party   The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Robert P Goe on behalf of Plaintiff   The Huntington Beach Gables Homeowners Association
kmurphy@goeforlaw.com,
rgoe@goeforlaw.com;goeforecf@gmail.com;Goe.RobertP.R@notify.bestcase.com;ajohnston@goeforlaw.com

Jeffrey I Golden (TR)
lwerner@go2.law,  kadele@go2.law;C205@ecfcbis.com

D Edward Hays on behalf of Creditor   Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

ES 941                              ES 941                              ES 941

D Edward Hays on behalf of Interested Party   Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

D Edward Hays on behalf of Plaintiff   Houser Bros. Co.
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendo
za@ecf.courtdrive.com

Brandon J. Iskander on behalf of Creditor   The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com,  kmurphy@goeforlaw.com

Brandon J. Iskander on behalf of Plaintiff   The Huntington Beach Gables Homeowners Association
biskander@goeforlaw.com,  kmurphy@goeforlaw.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com,  danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Eric P Israel on behalf of Trustee Jeffrey I Golden (TR)
epi@lnbyg.com,  danninggill@gmail.com;eisrael@ecf.inforuptcy.com

Shantal  Malmed on behalf of Interested Party   Courtesy NEF
,  cheryl.caldwell@gmlaw.com

Shantal  Malmed on behalf of Plaintiff   Jeffrey I. Golden
shantal.malmed@gmlaw.com,  cheryl.caldwell@gmlaw.com

Shantal  Malmed on behalf of Trustee Jeffrey I Golden (TR)
shantal.malmed@gmlaw.com,  cheryl.caldwell@gmlaw.com

Mark A Mellor on behalf of Defendant Randall L Nickel
mail@mellorlawfirm.com,  mellormr79158@notify.bestcase.com

Mark A Mellor on behalf of Interested Party   Courtesy NEF
mail@mellorlawfirm.com,  mellormr79158@notify.bestcase.com

Laila  Rais on behalf of Creditor   Houser Bros. Co. dba Rancho Del Rey Mobile Home Estates
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila  Rais on behalf of Interested Party   Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila  Rais on behalf of Plaintiff   Houser Bros. Co.

lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Valerie  Smith on behalf of Interested Party  Courtesy NEF
claims@recoverycorp.com

 United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov


8:21-bk-11710-SC Notice will not be electronically mailed to:
Greg  Bingham
Coldwell Banker Residential
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

 Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA

William  Friedman
Coldwell Banker Realty
840 Newport Center Dr Ste 100
Newport Beach, CA 92660

Janine  Jasso
PO Box 370161
El Paso, CA 79937

 Levene Neale Bender Yoo & Golubchik L.L.P.
2818 La Cienega Ave
Los Angeles, CA 90034

Michael D Poole on behalf of Creditor  The Huntington Beach Gables Homeowners Association
Feldsott & Lee, ALC
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653

Michael D Poole on behalf of Plaintiff  The Huntington Beach Gables Homeowners Association
Feldsott & Lee
23161 Mill Creek Dr Ste 300
Laguna Hills, CA 92653