# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

In re: JAMIE LYNN GALLIAN,
Debtor.

JAMIE LYNN GALLIAN,
Appellant,

v.

JEFFREY GOLDEN, Chapter 7 Trustee; and HOUSER BROS. CO.,
Appellees.

Appeal from the United States Bankruptcy Court in
Bankruptcy Case No.: 8:21-bk-11710-SC

# OPENING BRIEF FOR APPELLEES JEFFREY I. GOLDEN, TRUSTEE AND HOUSER BROS. CO.

ERIC P. ISRAEL (SBN 132426)
TODD M. ARNOLD (SBN 221868)
LEVENE, NEALE, BENDER, YOO &
GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: EPI@LNBYG.COM; TMA@LNBYG.COM

D. EDWARD HAYS (SBN 162507)
BRADFORD N. BARNHARDT (SBN 328705)
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778
Email: EHAYS@MARSHACKHAYS.COM;
BBARNHARDT@MARSHACKHAYS.COM

# TABLE OF CONTENTS

I. STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION ..........................2

II. STATEMENT OF ISSUES ON APPEAL AND STANDARD OF REVIEW ................................................................................4

    A.    STATEMENT OF ISSUES ON APPEAL .................4

    B.    APPLICABLE STANDARD OF APPELLATE REVIEW ..........................4

III. STATEMENT OF THE CASE AND RELEVANT FACTS ........................................5

    A.    BANKRUPTCY BACKGROUND AND THE DEBTOR'S SCHEDULES AND PROOF OF CLAIM....................5

    B.    THE PROPERTY THAT IS THE SUBJECT OF THE ORDERS UNDERLYING THIS APPEAL. ...................6

        1.    The Property. ..........................6

        2.    Liens Against The Property. ........................6

        3.    The Debtor's Homestead Exemption....................7

    C.    THE DENIAL OF THE DEBTOR'S BANKRUPTCY DISCHARGE....................8

    D.    TRUSTEE'S AVOIDANCE AND RECOVERY OF TRANSFERS OF TITLE AND PRESERVAION OF LIENS ON THE PROPERTY....................8

        1.    Stipulated Judgments. ......................9

        2.    Default Judgments. .........................9

    E.    TRUSTEE'S EFFORTS TO EMPLOY A REAL ESTATE BROKER TO SELL THE PROPERTY AND MARKETING EFFORTS....................11

    F.    THE DEBTOR'S EFFORTS TO THWART THE TRUSTEE'S SALE OF THE PROPERTY. ..................12

    G.    THE SALE MOTION, THE DEBTOR'S OPPOSITION THERETO, AND THE BANKRUPTCY COURT'S ORDERS THEREON. ....................13

IV. SUMMARY OF ARGUMENT ..................................22

V. ARGUMENT ..................................26

    A.    THIS APPEAL SHOULD BE DISMISSED AS MOOT. ....................26

B.     THE BANKRUPTCY COURT'S APPROVAL OF THE
SALE OF THE PROPERTY TO PEPLIN IS SUPPORTED
BY THE FACTS AND THE LAW. ..........................................................27

     1.    The Trustee Had A Sound Business Purpose For The
Sale Of The Property. ........................................................29

     2.    The Sale of the Property Was in the Best Interest of the
Estate, Because the Sale Price Was Fair and
Reasonable. ........................................................................30

     3.    The Trustee Provided Proper Notice of the Sale
Motion. ...............................................................................31

     4.    The Trustee Made the Sale of the Property in Good
Faith. ..................................................................................33

C.     THE BANKRUPTCY COURT'S DETERMINATION
THAT PEPLIN WAS A GOOD FAITH PURCHASER
UNDER 11 U.S.C. § 363(m) IS SUPPORTED BY THE
FACTS AND THE LAW ...............................................................34

D.     THE BANKRUPTCY COURT'S DETERMINATION
THAT THE J-PAD LIEN WAS AVOIDED AND
PRESERVED FOR THE BENEFIT OF THE ESTATE AND
WAS SENIOR TO THE DEBTOR'S HOMESTEAD
EXEMPTION AND ENTITLED TO PAYMENT FROM
THE PROCEEDS OF THE SALE OF THE PROPERTY IS
SUPPORTED BY THE FACTS AND THE LAW. ....................................39

E.     THE BANKRUPTCY COURT'S DETERMINATION
THAT THE PROPERTY COULD BE SOLD FREE AND
CLEAR OF THE DEBTOR'S HOMESTEAD EXEMPTION
WAS NOT NECESSARY BUT WAS NEVERTHELESS
FULLY SUPPORTED BY THE FACTS AND THE LAW. ......................48

VI. CONCLUSION ...........................................................................52

Jeffrey I. Golden, the Chapter 7 Trustee for the bankruptcy estate (the "Estate") of Jamie Lynn Gallian (the "Debtor" or "Appellant") and the appellee herein (the "Trustee" or "Appellee"), hereby files his Opening Brief in response to the opening brief (the "Brief") filed by the Appellant. All references to the "Debtor EOR" are to the Debtor's *Appendix Of Documents Designated For Appeal And Index*.[1]

## I.

## STATEMENT OF THE BASIS FOR APPELLATE JURISDICTION

The Debtor's Brief does not include a statement of the basis for appellate jurisdiction before this Court as required by Fed. R. Bankr. P. 8014(a)(4) and Fed. R. App. P. 28(a)(4) (applicable herein pursuant to Local Rule 8001). Therefore, the Trustee provides this statement of the basis for appellate jurisdiction before this Court.

Pursuant to 28 U.S.C. §§ 157 and 1334(b) and the reference made by the U.S. District Court for the Central District of California by General Order No. 13-05, the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") had jurisdiction to hear the proceeding from which this appeal is taken. This appeal is based on a notice of appeal of the following three orders (collectively, the "Orders") entered by the Bankruptcy Court:

---

[1] References to the Debtor EOR are in the form of X [Volume]:X [Tab or Docket No. referenced in EOR]:XX [Page Numbers or ¶ or §].

(A)     *Order Re: (1) Chapter 7 Trustee's Motion [the "Sale Motion"] For Order Compelling Debtor And Any Other Occupants To Vacate And Turn Over Manufactured Home And Authorizing Issuance Of Writ Of Assistance [Dk. 538]; (2) Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No. LBM 1081, Free And Clear Of Liens And Homestead Exemption [Dk. 539];(3) Good Faith Finding Pursuant To Section 363(M)* (the "Sale and Turnover Order") entered on April 10, 2025;[2]

(B)     *Supplemental Order Granting Trustee's Motion To Authorize Sale Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No. LBM 1081, Free And Clear Of Liens And Homestead Exemption* (the "Supplemental Sale Order") entered on April 14, 2025;[3] and

(C)     *Supplemental Order Granting Trustee's Motion For Order Compelling Turnover Of Manufactured Home Currently Located At 16222 Monterey Lane, Space 376, Huntington Beach, Ca 92649, Decal No. LBM 1081 (DOCKET NO. 538)* (the "Supplemental Turnover Order") entered on April 14, 2025.[4]

---

[2] Debtor EOR 2:Dkt.593:762-87 and 2:Dkt.600:822-62.
[3] Debtor EOR 2:Dkt.598:816-18 and 2:Dkt.600:822-62.
[4] Debtor EOR 2:Dkt.599:819-21 and 2:Dkt.600:822-62.

While the Debtor's Brief really only addresses the Sale and Turnover Order, all of the Orders are "final," and the Debtor's *Notice of Appeal and Statement of Election* was timely filed on April 14, 2025.[5] Fed. R. Bankr. P. 8002(a)(1) (providing that an appeal must be filed within 14 days of the entry of the order(s) appealed from). Based on the foregoing, this Court has jurisdiction to hear the within appeal pursuant to 28 U.S.C. § 158(a).

## II.

## STATEMENT OF ISSUES ON APPEAL AND STANDARD OF REVIEW

### A.    STATEMENT OF ISSUES ON APPEAL

The statement of issues on appeal in the Debtor's Brief matches the statement of issues on appeal filed by the Debtor pursuant to Fed. R. Bankr. P. 8006.

### B.    APPLICABLE STANDARD OF APPELLATE REVIEW

A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*. *Neilson v. United States (In re Olshan)*, 356 F.3d 1078, 1083 (9th Cir. 2004).

"When sitting as an appellate court in bankruptcy, the district court need not adopt the bankruptcy court's rationale and may affirm on any basis supported by the record." In re Winick, 610 B.R. 651, 657 (S.D. Cal. 2019) (citing *In re Frontier Properties, Inc.*, 979 F.2d 1358, 1364 (9th Cir. 1992).

---

[5] Debtor EOR 2:Dkt.600:822-62.

## III.

## STATEMENT OF THE CASE AND RELEVANT FACTS

## A.  BANKRUPTCY BACKGROUND AND THE DEBTOR'S SCHEDULES AND PROOF OF CLAIM.

On July 9, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code.[6] Appellee Jeffrey I. Golden accepted appointment as the Trustee for the Debtor's Estate and continues to serve in that capacity.[7]

The Debtor amended her Schedules of Assets and Liabilities (the "Schedules") *at least 13 times*. In her original Schedules, ***signed under penalty of perjury***, she (1) valued the Property located at 16222 Monterey Lane, Space #376, Huntington Beach, California 92649 (the "Property"), the sale of which is the subject of this appeal, at $235,000, and (2) disclosed that, as of the Petition Date, title to the Property was vested in J-Sandcastle Co, LLC ("J-Sandcastle"), and that she was its sole member and its managing member.[8]

In her Schedules, ***signed under penalty of perjury***, the Debtor also (1) disclosed that, as of the Petition Date, the Property was subject to a consensual lien in favor of J-Pad, LLC ("J-Pad") in the principal amount of $225,000 (the "J-Pad Lien") and that she was its managing member of J-Pad, and (2) asserted a homestead

---

[6] Debtor EOR 1:Dkt.539:100 and 121 at ¶ 1; 1:Dkt.554:311 at ¶ 8; 1:Dkt.565:445 at ¶ 1.
[7] Debtor EOR 1:Dkt.539:100 and 121 at ¶ 1; Brief at p. 2
[8] Debtor EOR 1:Dkt.539:100-101 (including at fn. 2), 121 at ¶ 4, 140-49.

exemption in the Property in the amount of $600,000 (the "Homestead Exemption").[9]

On October 2, 2024, the Debtor filed two Proofs of Claim (collectively the "Proof of Claim"), *signed under penalty of perjury*, asserting the J-Pad Lien in the amount of $225,000 was due and owing with no right of setoff.[10] The Proof of Claim attached a promissory note in the original principal sum of $150,000 and a security agreement.[11]

The Debtor's amended schedules – all filed under penalty of perjury, continued to disclose that title to the Property was vested in J-Sandcastle, subject to the lien in favor of J-Pad.[12]

## B. THE PROPERTY THAT IS THE SUBJECT OF THE ORDERS UNDERLYING THIS APPEAL.

### 1. The Property.

As noted above, on the Petition Date, J-Sandcastle was the title owner of the Property.

### 2. Liens Against The Property.

As of the Petition Date, by the Debtor's own admissions in her Schedules, Proof of Claim, and elsewhere, *under penalty of perjury*, the Property was subject to the consensual J-Pad Lien in favor of J-Pad (an entity owned and/or controlled by

---

[9] *Id.*
[10] Debtor EOR 1:Dkt.539:202-40. 1.
[11] *Id.*
[12] Debtor EOR 1:Dkt.539:100-101 (including at fn. 2), 121 at ¶ 4, 140-49.

the Debtor) in the amount of $225,000, plus interest, and other voluntary liens and transfers in favor of the Debtor's family members, ex-husband, and a former roommate as discussed below.[13]

The Debtor made a further admission under penalty of perjury regarding the J-Pad Lien and the value thereof. On January 13, 2023, Debtor filed her *Motion to Avoid Lien Under 11 U.S.C. § 522(f)* ("Lien Avoidance Motion"), in which she represented, **under penalty of perjury**, that J-Pad held the J-Pad Lien against in the Property in the original amount of $225,000.00.[14] The Lien Avoidance Motion sought to avoid the J-Pad Lien because it impaired (was senior in priority to) the Debtor's Homestead Exemption.[15]

### 3. The Debtor's Homestead Exemption.

As previously mentioned, the Debtor claimed a Homestead Exemption in the Property in the sum of $600,000. Houser Bros. Co. ("Houser") filed a timely objection to the Debtor's claimed Homestead Exemption.[16] The Bankruptcy Court entered an order sustaining that objection, but the Debtor then filed a motion to reconsider.[17] The Bankruptcy Court granted the motion to reconsider and allowed the homestead exemption.[18] Houser appealed to the District Court, which remanded

---

[13] *See* fn. 8 and 10, *supra*.
[14] Debtor EOR 1:Dkt.558:355, 365 at ¶ 10.
[15] *Id.*
[16] Debtor EOR 1:Dkt.539:102-03.
[17] *Id.*
[18] *Id.*

for further findings.[19]  The Bankruptcy Court entered amended findings by order entered on or about May 15, 2024.[20]  That order is final allowing the Debtor a $600,000 Homestead Exemption in the Property.[21]

## C.   THE DENIAL OF THE DEBTOR'S BANKRUPTCY DISCHARGE.

On or about October 18, 2021, Houser Bros. filed a complaint under 11 U.S.C.§ 727 to deny the Debtor's bankruptcy discharge based on, *inter alia*, her fraudulent concealment of her equity in the Property by issuing fraudulent liens, including the $225,000 J-Pad Lien.[22]  Pursuant to an order entered on or about May 23, 2023, the Court denied the Debtor's discharge (the "Discharge Judgment").[23]

The Debtor appealed that ruling to the United States District Court, which affirmed the Discharge Judgment.[24]  No further appeal was taken therefrom, so the Discharge Judgment is final.[25]

## D.   TRUSTEE'S AVOIDANCE AND RECOVERY OF TRANSFERS OF TITLE AND PRESERVAION OF LIENS ON THE PROPERTY.

On or about June 30, 2023, the Trustee commenced an adversary proceeding, Adv. No. 8:23-ap-01064-SC (the "Trustee Avoidance Action"), by filing a *Complaint: (1) to Avoid and Recover Fraudulent Transfers; (2) to Avoid and*

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] Debtor EOR 1:Dkt.539:106.
[23] *Id.*
[24] *Id.*
[25] *Id.*

*Recover Postpetition Transfers; (3) for Declaratory Relief (4) for Breach of Contract; (5) for Money Had and Received; and (6) Unjust Enrichment* against Ronald J. Pierpont, J-Pad, J- Sandcastle Co., Steven D. Gallian, Brian J. Gallian, Justin Barclay, Robert J. McLelland, and E. J. Gallian (collectively the "Defendants").[26]

### 1. Stipulated Judgments.

Pursuant to stipulations with Defendants Steven D. Gallian, Brian J. Gallian, Justin Barclay and E. J. Gallian (collectively the "Family Defendants"), a stipulated judgment (Adv. Docket No. 47) was entered against the Family Defendants, which avoided the liens on the Property in favor of the Family Defendants and preserved those liens for the benefit of the Debtor's estate pursuant to Section 551.[27]

Pursuant to a stipulation with defendant Robert J. McLelland ("Mr. McLelland"), a stipulated judgment (Adv. Docket No. 66) was entered against Mr. McLelland, which avoided his lien on the Property and preserved his lien for the benefit of the Debtor's estate pursuant to Section 551.[28]

### 2. Default Judgments.

Pursuant to motions for default judgment filed by the Trustee with respect to defendants, J-Pad, J-Sandcastle, and Ronald J. Pierpont (collectively, "Defaulting

---

[26] Debtor EOR 1:Dkt.539:103-06, 123 at ¶ 17.
[27] Debtor EOR 1:Dkt.539:103-06, 124 at ¶ 18, 150-52.  Unless otherwise stated all "Section" references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532.
[28] Debtor EOR 1:Dkt.539:103-06, 124 at ¶ 19, 154-56.

<u>Defendants</u>"), default judgments (Adv. Docket Nos. 79, 81, and 83) were entered against the Defaulting Defendants.[29]

The default judgment against J-Sandcastle (the "<u>J-Sandcastle Judgment</u>") avoided and preserved the Debtor's transfer of title of the Property to J-Sandcastle and recovered legal title to and the beneficial interest in the Property for the Debtor's bankruptcy estate in the name of the Trustee.[30]

The default judgment against J-Pad (the "<u>J-Pad Judgment</u>") avoided the J-Pad Lien on the Property in the amount of $225,000 and other liens on the Property in favor of J-Pad.[31] The J-Pad Judgment also preserved those liens for the benefit of the Debtor's bankruptcy estate pursuant to Section 551.[32] Specifically, the J-Pad Judgment, which is final and was not appealed, provides as follows:

> The transfer to the Defendant [J-Pad] of a lien on and security interest in the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB (the "<u>Property</u>") reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant [J-Pad] dated November 16, 2018 ***and lien on the Property <u>in the amount of $225,000</u> in favor of the Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy [Estate of the Debtor].***[33]

The default judgment against defendant Ronald J. Pierpont determined that

---

[29] Debtor EOR 1:Dkt.539:103-06, 124 at ¶ 20, 158-62.
[30] Debtor EOR 1:Dkt.539:103-06, 124 at ¶ 21, 158-62.
[31] Debtor EOR 1:Dkt.539:103-06, 124 at ¶ 22, 158-62.
[32] *Id.*
[33] *Id.* (emphasis added).

Mr. Pierpont did not have any interest in the Property.[34]  It also avoided his liens on the Property and preserved those liens for the benefit of the Debtor's estate pursuant to Section 551.[35]

**E.      TRUSTEE'S EFFORTS TO EMPLOY A REAL ESTATE BROKER TO SELL THE PROPERTY AND MARKETING EFFORTS.**

On July 28, 2022, the Trustee filed an application to employ Coldwell Banker Realty ("Coldwell Banker") as his real estate broker to list, market and aid the Trustee in selling the Property, with Coldwell Banker to be paid a commission equal to 3% of the purchase price paid for the Property (the "Broker Application").[36]  The Debtor opposed the Broker Application, arguing among other things that title was not vested in her name and that there were liens on the Property.  The Bankruptcy Court agreed that it was premature to market and sell the Property based on the state of title and liens and denied the Broker Application without prejudice.

After litigating the Trustee Avoidance Action to conclusion, the Trustee filed another application to employ Coldwell Banker.[37]  Over the Debtor's objection, on September 5, 2024, the Bankruptcy Court entered an order approving the Trustee's employment of Coldwell Banker as his real estate broker to list, market and aid the Trustee in selling the Property, with Coldwell Banker to be paid a commission equal

---

[34] Debtor EOR 1:Dkt.539:103-06, 124 at ¶ 20, 158-62.

[35] *Id.*

[36] Debtor EOR 1:Dkt.565:458 at ¶¶ 122-27;    Debtor EOR 2:Dkt.591:692.

[37] Debtor EOR 1:Dkt.539:100, 106, 121 at ¶ 3; 1:Dkt.558:367 at ¶ 21; EOR 2:Dkt.593:769-70,, 794, 832-33.

to 3% of the purchase price paid for the Property.[38]  Thereafter, Coldwell extensively marketed the Property.[39]

## F.     THE DEBTOR'S EFFORTS TO THWART THE TRUSTEE'S SALE OF THE PROPERTY.

After the Trustee, (1) at considerable cost to the Estate, recovered title to the Property and avoided the J-Pad Lien and other liens on the Property and recovered them for the benefit of the Estate, and (2) employed Coldwell Banker to assist in the sale of the Property, the Debtor tried to thwart such sale.

On or about September 9, 2024, and despite that she already had a bankruptcy case pending, the Debtor filed another bankruptcy case – that one under Chapter 13 of the Bankruptcy Code – which was assigned Case No. 8:24-11267-SC (the "Chapter 13 Case").[40]  The Bankruptcy Court dismissed the Chapter 13 Case on or about October 21, 2024.[41]

On or about September 11, 2024, the Debtor filed a motion to convert her pending Chapter 7 bankruptcy case to Chapter 13.[42]  On or about October 29, 2024, the Bankruptcy Court denied that motion.[43]

---

[38] *Id.*
[39] Debtor EOR 1:Dkt.539:117 at ¶ 8, 119 at ¶¶ 5-6; EOR 2:Dkt.593:785.
[40] Debtor EOR 1:Dkt.539:106 and 125 at ¶ 26; EOR 2:Dkt.593:770 and 794.
[41] *Id.*
[42] Debtor EOR 1:Dkt.539:106 and 125 at ¶ 27; EOR 2:Dkt.593:770 and 794.
[43] *Id.*

On or about September 12, 2024, the Court issued an *Order to Show Cause Why the Debtor Should not be Held in Contempt of Court* for interfering with the Trustee's marketing efforts (the "<u>OSC</u>").[44]  The OSC was based upon evidence that the Debtor had retained her own broker to list the Property, that listing was placed with the Multiple Listing Service (the "<u>MLS</u>"), and the Debtor was not cooperating with the Trustee's efforts to market the Property.[45]  After the Debtor promised on the record to terminate her listing with her own broker and that she would cooperate with the Trustee's marketing efforts, the Court vacated the OSC.[46]

## G.  THE SALE MOTION, THE DEBTOR'S OPPOSITION THERETO, AND THE BANKRUPTCY COURT'S ORDERS THEREON.

On January 31, 2025, the Trustee filed the Sale Motion seeking authority to sell the Property free and clear of liens and interests pursuant to Section 363(b) and (f).[47]  More specifically, by way of the Sale Motion, the Trustee sought (1) to sell the Property to Galaxy Homes, LLC ("<u>Galaxy</u>") for $275,000 (the "<u>Purchase Price</u>"), subject to overbids in $1,000 increments, free and clear of all liens and interests, including the Debtor's Homestead Exemption, because the Homestead Exemption was junior to the consensual J-Pad Lien avoided and preserved for the benefit of the Estate, and the value of the J-Pad Lien exceeded the Debtor's Homestead Exemption

---

[44] Debtor EOR 1:Dkt.558:359; EOR 2:Dkt.593:770; Dkt.594:794.
[45] *Id.*
[46] *Id.*
[47] Debtor EOR 1:Dkt.539:90-249.

such that there would be no sale proceeds to pay any amount on the Homestead Exemption, (2) a finding under Section 363(m) that the Buyer (or any successful overbid buyer) was a good faith purchaser entitled to the protections under Section 363(m), and (3) to disburse the Purchase Price to pay (a) commissions to Coldwell Banker as the Trustee's broker and Galaxy as buyer's broker, then (b) as much as possible on the Trustee's avoided and recovered J-Pad Lien, which would not be paid in full and, therefore, leave no funds to pay on the Debtor's junior Homestead Exemption.[48]

Attached to the Sale Motion and in support thereof were the declarations of the Trustee, Jeffrey I. Golden (the "Golden Declaration")[49] and Greg Bingham (one of the brokers at Coldwell Banker, the Trustee's brokers) (the "Bingham Declaration").[50] In the Golden Declaration, Golden stated that (1) he had entered into an agreement to sell the Property to Galaxy, (2) he had marketed the Property to the world at large since the Court approved application to employ Coldwell Banker, (3) he believed the Property was properly and sufficiently exposed to the market after the employment of Coldwell Banker, (4) marketing efforts included listing the Property on the MLS, (5) at that time, Galaxy's offer was the only one he had received, (6) in his business judgment, based on many years of experience as a

---

[48] *Id.*
[49] Debtor EOR 1:Dkt.539:116-17.
[50] Debtor EOR 1:Dkt.539:119-20.

bankruptcy trustee and many real property sales he had conducted, that the proposed sale of the Property on the terms of the agreement with Galaxy was in the best interests of the Estate and its creditors, (7) he believed that $275,000.00, subject to overbid, was a fair and reasonable price for the Property, (8) he had no independent knowledge or familiarity with the buyer, Galaxy, and (9) he was informed and believed that Galaxy had no connection with the Debtor, or anyone else associated with this Estate or the administration of the Estate.[51]

In the Bingham Declaration, Bingham stated that (1) he and Coldwell Banker marketed the Property by, *inter alia*, (a) listing the Property in the MLS, (b) sending an e-mail blast to approximately 1100 real estate agents working in the area where the Property was located, (c) advertising the Property on third party websites: Zillow, Trulia, Realtor.com, etc., (d) direct mail to targeted residents in the area where the Property is located, (e) contacting all active buyers agents in the mobile home communities and neighboring senior residential neighborhoods, (f) placing targeted advertising on social media: Facebook, Instagram, and (g) conducting tours of the Property, (2) in addition to the foregoing marketing actions, in order to encourage overbidding at the auction and hearing on the Sale Motion, the date and time thereof would be published in the MLS and follow up calls would be made to all agents and buyers inquiring about the Property, (3) based on his experience in the sale of

---

[51] Debtor EOR 1:Dkt.539:116-17.

properties in the area where the Property is located and his familiarity with the Property, he believed that the $275,000 price offered by Galaxy reflected the current fair market value of the Property, subject to overbid, and (4) he believed that Galaxy was not associated with the Debtor or any of the professionals employed by the Estate.[52]

Also on January 31, 2025, the Trustee filed his notice of the Sale Motion (the "Notice of Sale Motion") and served it on all creditors and parties in interest.[53]

Also on January 31, 2025, the Trustee filed a motion for turnover to evict the Debtor from the Property (the "Turnover Motion").[54]

On February 18, 2025, the Debtor filed her opposition to the Sale Motion (the "Sale Opposition") making essentially the same arguments that the Debtor makes in her Brief.[55]

On February 25, 2025, the Trustee filed his reply to the Sale Opposition (the "Sale Reply").[56]

On February 28, 2025, the Trustee filed a supplemental declaration of Greg Bingham (one of the brokers at Coldwell Banker, the Trustee's brokers) (the "Supplemental Bingham Declaration") in regard to the Sale Motion.[57]  In the

---

[52] Debtor EOR 1:Dkt.539:119-20.
[53] Debtor EOR 1:Dkt.542:250-261.
[54] Debtor EOR 1:Dkt.538:1-89.
[55] Debtor EOR 1:Dkt.554:293-344.
[56] Debtor EOR 1:Dkt.558:345-403.
[57] Debtor EOR 1:Dkt.554:414-21.

Supplemental Bingham Declaration, Mr. Bingham stated that, (1) even after receiving the stalking horse offer from Galaxy, Coldwell Banker continued to market the Property for overbids and (2) on or about February 26, 2025, he received an overbid for the Property in the amount of $276,000 (the "Overbid") from Gregory Peplin ("Peplin").[58]

On March 3, 2025, before the Court even ruled on the Sale Motion or the Turnover Motion, the Debtor filed a motion for a stay of the Sale and Turnover Order pending the appeal thereof (the "Appeal Stay Motion").[59]

On March 4, 2025, the Bankruptcy Court held a hearing on the Motion, at which time the Bankruptcy Court conducted an auction (the "First Auction") for the Property and acknowledged the Overbid by Peplin and that there were no other overbids from Galaxy or otherwise.[60]

On March 7, 2025, the Debtor filed the declaration of Peplin (the "Peplin Declaration") in support of a finding that Peplin was a good faith purchaser as defined under Section 363(m).[61] In the Peplin Declaration, Peplin stated that (1) on or about February 26, 2025, he made a $276,000 Overbid to Coldwell Banker for the Property, (2) he was represented by Galaxy as his broker and that Galaxy was also the stalking horse bidder for the Property, (3) he was advised by Galaxy that the

---

[58] Id.
[59] Debtor EOR 1:Dkt.562:422-35.
[60] See Debtor EOR 1:Dkt.569:501-03.
[61] Debtor EOR 1:Dkt.566:473-80.

Property was available for sale, and (4) there were no undisclosed terms of the sale.[62]

On March 12, 2025, the Debtor filed her opposition (the "Good Faith Opposition") to the Peplin Declaration and proposed good faith finding under Section 363(m) requested by the Trustee in the Sale Motion.[63] The Debtor's Good Faith Opposition was premised on the argument that it was improper for Galaxy to be both the stalking horse bidder and a broker to Peplin as a competing overbidder because that chilled bidding.[64]

On March 13, 2025, upon consideration of the Peplin Declaration and the Good Faith Opposition, the Bankruptcy Court entered an order (the "Second Auction Order") pursuant to which the Bankruptcy Court (1) vacated the results of March 4, 2025 First Auction for the Property, and (2) ordered that a second auction of the Property would be held on March 27, 2025 (the "Second Auction"), with prior full disclosures of broker representations of any buyers and supporting declarations regarding any conversations that have occurred between any buyer and/or broker.[65]

Consistent with the Second Auction Order, on March 20, 2025, the Trustee filed the supplemental declaration of Peplin (the "Supplemental Peplin Declaration") in support of a finding that Peplin was a good faith purchaser as defined under

---

[62] *Id.*
[63] Debtor EOR 1:Dkt.568:495-500.
[64] *Id.*
[65] Debtor EOR 1:Dkt.569:501-03.

Section 363(m).[66]  In the Supplemental Peplin Declaration, Peplin stated that (1) he originally found that the Property was for sale by looking on the MLS, (2) he saw that David Guarino ("Guarino") of Galaxy was the broker for other listing where the Property was located so he contacted Guarino to arrange a viewing of the Property, (3) Guarino helped him submit an overbid for the Property, but that he never had a written agreement actually retaining Galaxy as his broker, (4) to the extent Galaxy was ever his broker in connection with a purchase of the Property, he had since terminated that arrangement and retained Lori Alvarez at Real Estate Resolved to represent him in his purchase of the Property.[67]

Also consistent with the Second Auction Order, on March 20, 2025, the Trustee filed a supplemental declaration of Greg Bingham (one of the brokers at Coldwell Banker, the Trustee's brokers) (the "Second Supplemental Bingham Declaration") in regard to the Sale Motion.[68]  In the Second Supplemental Bingham Declaration, Mr. Bingham stated that, after the entry of the Second Auction Order, he changed the listing for the Property to "Active under Contract" on the MLS reflecting all of the original terms of the auction: $275,000 price, $276,000 minimum overbid, $1,000 minimum bidding increments, but with the date, time and place of the new auction hearing.[69]

---

[66] Debtor EOR 1:Dkt.577:520-45.
[67] *Id.*
[68] Debtor EOR 1:Dkt.579:546-614.
[69] *Id.*

On March 27, 2025, the Bankruptcy Court held the Second Auction for the Property and Peplin, then represented by Lori Alvares, a new broker independent of Galaxy, was again the successful bidder for the Property for a purchase price of $276,000.[70]

On March 28, 2025, the Bankruptcy Court entered its order setting an evidentiary hearing on whether Gregory Peplin was a good faith purchaser.[71] At that hearing, the Debtor chose not to offer any evidence but was given the opportunity to cross-examine all witnesses.[72] The Bankruptcy Court then took everything under submission.

On April 10, 2025, the Bankruptcy Court entered its Sale and Turnover Order pursuant to which it, among other things, (1) granted the Sale Motion, (2) pursuant to Sections 363(b) and (f), approved the sale of the Property to Peplin for his Overbid purchase price of $276,000, free and clear of liens and interests, including the Debtor's Homestead Exemption, because the Homestead Exemption was junior to the consensual J-Pad Lien avoided and preserved for the benefit of the Estate, and the value of the J-Pad Lien exceeded the Debtor's Homestead Exemption such that there would be no sale proceeds to pay any amount on the Homestead Exemption, and (3) finding that Peplin was a good faith purchaser entitled to the protections

---

[70] *See* Debtor EOR 2:Dkt.593:762-87; Debtor EOR 1:Dkt.580:615-22.

[71] Debtor EOR 2:Dkt.593:762-87.

[72] Debtor EOR 2:Dkt.593:778 at l. 14 – 779 at l. 6; 782 at l. 20 – 784 at l. 4. The audio recording of the evidentiary hearing is available as Docket No. 604 in the underlying bankruptcy case.

afforded under Section 363(m).[73]

Also on April 10, 2025, the Bankruptcy Court entered an order denying the Appeal Stay Motion.[74]

On April 14, 2025, the Bankruptcy Court entered its Supplemental Sale Order on the Sale Motion pursuant to which it, among other things, confirmed that (1) the Sale Motion was granted in its entirety, (2) the sale of the Property was free and clear of the Debtor's Homestead Exemption because it was out of the money, and (3) authorized payments from the purchase price to the brokers, the Trustee, and others as requested in the Sale Motion.[75]

Also on April 14, 2025, the Bankruptcy Court entered its Supplemental Turnover Order on the Sale Motion to make express findings and rulings required by the U.S. Marshall pursuant to Local Bankruptcy Rule 7064-1(e).[76] Among other things, the Supplemental Turnover Order authorized the U.S. Marshals Service to remove the Debtor and any occupants from the Property if she did not vacate by a date certain.[77]

***The Supplemental Sale Order and the Supplemental Turnover were both based on the Sale Motion, the Debtor's Sale Opposition thereto, and the Trustee's***

---

[73] Debtor EOR 2:Dkt.593:762-87.
[74] Debtor EOR 2:Dkt.594:788-802..
[75] Debtor EOR 2:Dkt.598:816-18..
[76] Debtor EOR 2:Dkt.599:819-21..
[77] *Id.*

*Sale Reply thereto, considered by the Bankruptcy Court and taken under submission, __not__ a separate motion.  As their names indicate, Supplemental Sale Order and the Supplemental Turnover merely supplemented, provided further detail, and effectuated the Sale Order.*

The Debtor vacated the Property, and, on June 30, 2025, the Trustee closed the sale of the Property to Peplin.

## IV.

## SUMMARY OF ARGUMENT

As discussed below in the Trustee's first argument in the "Argument Section" hereof, this appeal should be dismissed as moot, because, in its Sale and Turnover Order, the Bankruptcy Court found that Peplin was a "good faith" purchaser under Section 363(m), and the Debtor did not obtain a stay of the Sale and Turnover Order pending the appeal thereof.  Ninth circuit law provides that, under these circumstances, this appeal must be dismissed as moot.  *See In re Griffin*, 261 B.R. 467, 469-70 (N.D. Cal. 2001) (discussed *infra*); *In re Ewell*, 958 F.2d 276, 282 (9th Cir. 1992) (discussed *infra*).

Even if this appeal is not dismissed as moot (which it should be), it is clear that the Sale and Turnover Order, the Supplemental Sale Order, and the Supplemental Order should all be affirmed.  The Debtor raises a number of arguments in her Brief aimed at obfuscating the simple issues before the Court on

this appeal (1) was the Bankruptcy Court's approval of the sale of the Property to Peplin for a purchase price of $276,000 supported by the facts and law, (2) was the Bankruptcy Court's determination that Peplin was a good faith purchaser under Section 363(m) supported by the facts and law, (3) was the Bankruptcy Court's determination that the J-Pad Lien, which was avoided, recovered and preserved by the Trustee for the benefit of the Estate, was senior to the Debtor's Homestead Exemption such that it could be paid from the proceeds of the sale of the Property supported by the facts and law, (4) that the Debtor's opposition to the Sale Motion was an attempt to collaterally attack the final judgments in the Trustee's Avoidance Action, and (5) to the extent it was even necessary, was the Bankruptcy Court's determination that the Property could be sold free and clear of the Debtor's Homestead Exemption supported by the facts and law. As discussed below, the answer to each of these issues is a resounding yes.

Before getting to the merits of the foregoing issues, it bears mentioning that this appeal and the Debtor's inability to benefit from her Homestead Exemption is wholly the result of her own bad acts, all of which the Debtor conveniently ignores in her Brief. The Bankruptcy Court understood this when it stated the following in its Sale and Turnover Order:

> Before the filing of this voluntary Chapter 7 bankruptcy proceeding, [the Debtor] engaged in certain fraudulent conduct with respect to the placement of a number of fraudulent liens on the Property in an attempt to shelter the Property from her creditors. She

also submitted to this Court numerous false sworn statements under penalty of perjury throughout this case.

Debtor has the right to assert her homestead, which was awarded to her by the Bankruptcy Court. Her current problem is, by a combination of her own fraud and the Trustee's actions to avoid the fraudulent liens she originally placed on the mobile home, she put into motion the Trustee's duty to recover the fraudulent lien (in the amount of $225,000), the recovery of which by operation of law is positioned in front of (higher in priority) her homestead rights.

This result is seen often in bankruptcy courts, as the Bankruptcy Code and its recovery and avoidance statutes, specifically sections 551, 548 and 522(g)[78] *are designed to encourage debtors and others not to engage in fraudulent conduct before they file their bankruptcy petition.*[79] These sections of the Bankruptcy Code are also designed to provide recovery to the estate by a chapter 7 trustee's ability to avoid fraudulently or illegally placed liens onto property prior to the filing of the bankruptcy petition.

Additionally, when Debtor placed the fraudulent lien totaling $225,000[80] on the Property, purportedly held by the LLC, she also gave various family members and friends more liens on top of the $225,000 lien. These liens encumbered the Property without legitimate obligations and were avoided at considerable expense by the Trustee.[81] Ironically in this matter, Debtor's opposition and collateral attack of the earlier judgment is (as the Court interpreted it) "I know that it was

---

[78] Based on the plain language of 11 U.S.C. § 551, any transfer avoided under 11 U.S.C. § 548 is automatically preserved for the benefit of the Estate. Further, Section 522(g) prohibits [the Debtor] from claiming an exemption in the equity in the Property which she voluntarily transferred but which Trustee recovered.

[79] It usually works like this: a potential individual debtor asks their potential bankruptcy lawyer "[w]hy can't I put a fake lien on my house in favor of my son or cousin so that the bankruptcy trustee won't sell my home?" The lawyer (at least a competent one) explains "[B]ecause if you do this, and the trustee avoids the lien, you might have your possible homestead subordinated to the avoided lien amount, whether the lien was actual or not. Don't do it."

[80] Debtor originally scheduled the obligation in favor of J-Pad as $175,000; she subsequently amended her schedules to falsely increase the amount to $225,000.

[81] Debtor's discharge was denied after a trial by a decision issued May 23, 2023, in which the Court found that Debtor had concealed her equity in the Property by issuing fraudulent liens, including the $225,000 JPad lien. See Adv. No. 8:21-ap-01097-SC, Dk. 81. That decision was affirmed on appeal and is now final.

a fraudulent lien, and even though I swore under oath to the value of $225,000 of the lien on several occasions, since it was a fake lien, the Trustee recovered nothing." This Court notes that "nothing" would have resulted in a windfall payment of $225,000 to Debtor's company J-Pad LLC, of whom Debtor was the sole member.

The Court also notes that Debtor has maintained her ruse as to the validity of the lien up to, and even after, the Court avoided the fraudulent lien.

In summary, through costly adversary proceedings in this case, the Chapter 7 Trustee avoided, recovered and preserved both the fraudulent transfers of the Property and Debtor's fraudulent liens for the benefit of the estate. No party appealed those judgments, and they are final. The entirety of the opposition filed by Debtor on the present issue of the sale is a collateral attack on the previous avoidance actions.[82]

…

In other words, Debtor's position is that a debtor, pre-petition, may place fraudulent liens on her property to obfuscate any equity, and after she is caught and a trustee avoids, recovers and preserves those fraudulent liens (in whatever amount they were recorded or asserted to be at the time), she can turn around and admit that they were fraudulent and worthless. This is the argument that the trustee has not recovered anything of value. What's missing is that the transferee (her own company) of a fraudulent lien would have been paid $225,000 in the event of a sale. In the end, Debtor's counsel's argument is, she can commit fraud with impunity. Of course this is a collateral attack on the specific, un-appealed, and final judgment entered by the Court assigning value to the avoided lien.[83]

---

[82] The Order on avoidance of the $225,000 lien is found at Adv. No. 8:23-ap-01064-SC, Dk. 79. The Order specifically sets forth the recovered value of the $225,000, which cannot now be challenged by a collateral attack in this proceeding.
[83] Debtor EOR 2:Dkt.593:764-77  (footnotes and emphasis in original).

# V.

## ARGUMENT

## A.   THIS APPEAL SHOULD BE DISMISSED AS MOOT.

As discussed above, the Sale and Turnover Order includes a good faith finding under Section 363(m) in favor of Peplin as the purchaser of the Property. The Debtor filed her Appeal Stay Motion seeking an order of the Bankruptcy Court staying the Sale and Turnover Order. The Bankruptcy Court denied the Appeal Stay Motion and, therefore, there is no stay of the Sale and Turnover Order in Place.

Under these circumstances and binding 9th Circuit law, this appeal should be denied as moot. As stated in *In re Griffin*, 261 B.R. 467 (N.D. Cal. 2001):

> The Trustee argues that Huddleston purchased the appellant's residence in good faith, and the authorization and sale were not stayed pending appeal, and thus the appellant's appeal is moot. The Bankruptcy court found that Huddleston was purchasing the appellant's residence in good faith pursuant to 11 U.S.C. § 363(m), and the appellant did not appeal this finding. The Bankruptcy court also denied the appellant's motion for a stay pending appeal; indeed, appellant did not even appear for the hearing. Under a plain reading of the statute, the appellant's appeal is therefore moot. The statute allows a reversal of an authorization of a sale to affect the validity of the sale only if the sale was stayed pending an appeal. Since the sale was not stayed pending appeal, the Court does not have the power to modify or set aside the sale. See In re Ewell, 958 F.2d 276, 280 (9th Cir.1992).

> ### III. CONCLUSION

> The appellant's appeal is moot. Because the buyer was a good faith purchaser, under 11 U.S.C. § 363(m) the sale may not

> be modified or set aside on appeal unless the sale was stayed pending appeal. It was not. Thus, the Court cannot grant the appellant any effective relief and the appeal is hereby DISMISSED as moot.

*In re Griffin*, 261 B.R. 467, 469-70 (N.D. Cal. 2001); *see also In re Ewell*, 958 F.2d 276, 282 (9th Cir. 1992) ("The Debtor's appeals are moot. Because the Buyer was a good faith purchaser, under 11 U.S.C. § 363(m) the sale may not be modified or set aside on appeal unless the sale was stayed pending appeal. It was not, and the court thus cannot grant any effective relief.").

Moreover, the buyer is not named as an appellee, so no relief may be had as to him and the sale of the Property cannot be reversed.

**B.    THE BANKRUPTCY COURT'S APPROVAL OF THE SALE OF THE PROPERTY TO PEPLIN IS SUPPORTED BY THE FACTS AND THE LAW.**

A trustee in bankruptcy has the duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest." 11 U.S.C. § 704(a)(1).

Section 363(b) provides that "[t]he trustee, after notice and a hearing, may … sell …, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b). On a motion under Section 363(b), the movant has to establish the following: "(1) a sound business purpose exists for the sale; (2) the sale is in the best interest of the estate, *i.e.*, the sale price is fair and reasonable; (3) notice to creditors

[and interested parties] was proper; and (4) the sale is made in good faith." *In re Slates*, 2012 WL 5359489 (B.A.P. 9th Cir. Oct. 31, 2012) (unpublished) (citing *In re Lionel*, 722 F.2d 1063, 1070 (2nd Cir. 1983); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal 1991)); *see also In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996); *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012); *WBQ Ptnr. v. Va. Dep't of Med. Assistance Servs. (In re WBQ Ptnr.)*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995).

Sale orders under Section 363 are reviewed for abuse of discretion. *In re Lahijani*, 325 B.R. 282, 287 (B.A.P. 9th Cir. 2005). An abuse of discretion is "a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Wing v. Asarco, Inc.*, 114 F.3d 986, 988 (9th Cir.1997) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir.1993)) (internal quotation marks omitted). The abuse of discretion standard requires that a reviewing court "not reverse a [lower court's] exercise of its discretion unless [the reviewing court has] a definite and firm conviction that the [lower court] committed a clear error of judgment in the conclusion it reached." *SEC v. Coldicutt*, 258 F.3d 939, 941 (9th Cir.2001).

In her Brief, the Debtor does not assert that any of the foregoing elements, including whether the sale of the Property was made in good faith for the purposes of Section 363(b), were not met. The Debtor separately challenges the good faith

finding in favor of Peplin under Section 363(m), which is a separate inquiry and discussed below. While the Debtor does not challenge the Sale Turnover Order with regard to the elements set forth above required for approval of a sale under Section 363(b), they are briefly discussed here, because they support the Bankruptcy Court's entry of the Sale and Turnover Order. As mentioned above, the Debtor has since vacated the Property, effectively mooting any basis for an appeal of the turnover relief in the Sale and Turnover Order and the Supplemental Turnover Order.

1. **The Trustee Had A Sound Business Purpose For The Sale Of The Property.**

The J-Sandcastle Judgment avoided and preserved the Debtor's transfer of title of the Property to J-Sandcastle and recovered legal title to and the beneficial interest in the Property for the Debtor's bankruptcy estate in the name of the Trustee. Further, the Debtor has asserted, and continues to assert, a Homestead Exemption in the Property and she can only do that if the Property is property of the Estate.

Since there is no dispute that, at the time the Sale Motion was filed and the Sale and Turnover Order was entered, the Property was property of the Estate, and because the Trustee was required to sell property of the Estate and reduce it to money, the Bankruptcy Court's conclusion that the Trustee had a sound business justification for selling the Property is supported by the facts and the law.

**2.** **The Sale of the Property Was in the Best Interest of the Estate, Because the Sale Price Was Fair and Reasonable.**

As discussed above, the Trustee employed Coldwell Banker, a large, competent, well-known real estate brokerage company to assist him in marketing and selling the Property. After it was employed on September 5, 2024, Coldwell extensively marketed the Property for many months. At the March 4, 2025 First Auction, Peplin made the highest offer for the Property, which was his Overbid in the amount of $276,000, which exceeded Galaxy's stalking horse offer in the amount of $275,000. While the Bankruptcy Court did not think there were any issues with the March 4, 2025 First Auction based on Galaxy being both a bidder and the purported broker for Peplin, out of an abundance of caution and to ensure transparency and that the highest and best price for the Property was obtained by the Estate, the Bankruptcy Court vacated the First Auction and conducted the Second Auction for the Property about three weeks later on March 27, 2025, which allowed for additional marketing of the Property by Coldwell.[84]

---

[84] As stated by the Bankruptcy Court in its Sale and Turnover Order:

> The Court notes that the original auction was vacated by the Court, *sua sponte*, and re-performed on March 27, 2025, not because of any actual problem observed by the Court **but only in an abundance of caution regarding a disclosure that both active bidders were represented by the same real estate broker. The Court observed that there might be an appearance of impropriety (although the Court found no impropriety) and decided that the auction should be held again with no dual representation present.** It is noted that the Court finds no issues arising from that alleged dual representation. This matter is further discussed with this Court's analysis of the Fifth Circuit Court of Appeals' compelling decision, *Rai v. Henderson (In re*

Notably, the Debtor has never asserted that Coldwell Banker or the Trustee had any conflicts of interests or that Coldwell Banker or the Trustee did not seek to obtain the highest price possible for the Property. Such arguments would lack merit, because both Coldwell Banker and the Trustee had a vested interest in getting the highest price possible for the Property. Coldwell Banker had such an interest, because its commission was to be calculated as 3% of the purchase price for the Property so that a higher purchase price would result in a higher commission for Coldwell Banker. As to the Trustee, he is a fiduciary to creditors charged with maximizing the value received for the Property for the benefit of the estate, and his fees are also based upon a percentage of funds he is able to obtain and disburse to creditors. 11 U.S.C. § 326(a).

Based on the foregoing, the Bankruptcy Court's conclusion that the sale was in the best interest of the estate, *i.e.*, the $276,000 paid by Peplin for the purchase of the Property was fair and reasonable, is supported by the facts and the law.

### 3. The Trustee Provided Proper Notice of the Sale Motion.

As noted above, Section 363(b)(1) provides that the Trustee, "after notice and a hearing," may sell property of the Estate outside of the ordinary course of business. 11 U.S.C. § 363(b)(1). Section 102(1) defines "after notice and a hearing" as after

---

*VCR I, LLC)*, 789 Fed. Appx. 992, 996 (5th Cir. 2019), which addressed almost exactly this situation. The Court also notes that the final bid for the Property was over the amount of the listed value of the Property by Debtor in her schedules.

such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances. 11 U.S.C. § 102(1)(A).

Fed. R. Bankr. P. 6004(a) provides, in pertinent part, that notice of a proposed sale not in the ordinary course of business must be given pursuant to Fed. R. Bankr. P. 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with Section 363(b)(2). Fed. R. Bankr. P. 6004(a). Fed. R. Bankr. P. 2002(a)(2) requires at least 21 days' notice by mail to the debtor, any trustee, and all creditors and indenture trustees of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court, for cause shown, shortens the time or directs another method of giving notice. Fed. R. Bankr. P. 2002(a)(2). Fed. R. Bankr. P. 2002(c)(1) requires that the notice of a proposed sale include the date, time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections; it also provides that the notice of sale or property is sufficient if it generally describes the property. Fed. R. Bankr. P. 2002(c)(1). Fed. R. Bankr. P. 2002(i) requires that the notice of a proposed sale be served on any committee elected under Section 705 or appointed under Section 1102. Fed. R. Bankr. P. 2002(i). Fed. R. Bankr. P. 2002(i) was inapplicable, because no committee was elected in the underlying bankruptcy case. Fed. R. Bankr. P. 2002(k) requires that the notice be given to the United States Trustee. Fed. R. Bankr. P. 2002(k).

Here, the Debtor did not dispute the adequacy of the Trustee's Notice of Sale Motion under the foregoing applicable provisions of the Federal Rules of Bankruptcy Procedures. Based on the foregoing, and because a review of the Notice of Sale Motion shows that it complied with all such Rules, the Trustee will not belabor the point. However, the foregoing supports the Bankruptcy Court's conclusion that the Trustee provided proper notice of the Sale Motion.

### 4. The Trustee Made the Sale of the Property in Good Faith.

The Bankruptcy Appellate Panel for the Ninth Circuit has held that "[w]hile a finding of 'good faith' is not an essential element for approval of a sale under section 363(b), such a determination becomes important with respect to potential mootness when an appeal is taken from the order authorizing the sale." *Fitzgerald v. Ninn Worx SR, Inc. (In re Fitzgerald)*, 428 B.R. 872, 880-81 (B.A.P. 9th Cir. 2010) (citing *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (B.A.P. 9th Cir. 2002)).

Here, as is clear from the Debtor's Brief, she does not challenge whether the Trustee acted in "good faith" as required for approval of the sale of the Property under Section 363(b). Instead, the Debtor challenges whether Peplin was entitled to a finding under Section 363(m) that he purchased the Property in "good faith" and, therefore, whether the sale was entitled to the protections under Section 363(m). That issue is discussed at length in the section immediately below. However, the foregoing supports the Bankruptcy Court's conclusion that the Trustee acted in

"good faith" as required to grant the Sale Motion and approve the sale of the Property to Peplin pursuant to Section 363(b).

Based on the foregoing, the Bankruptcy Court's decision to approve the sale of the Property to Peplin is supported by the facts and the law and was not in error.[85]

**C.** **THE BANKRUPTCY COURT'S DETERMINATION THAT PEPLIN WAS A GOOD FAITH PURCHASER UNDER 11 U.S.C. § 363(m) IS SUPPORTED BY THE FACTS AND THE LAW.**

Section 363(m) provides that "[t]he reversal or modification or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

On appeal, a determination that a purchaser of property from a bankruptcy estate acted in good faith under Section 363(m) is reviewed for clear error. *Thomas v. Namba (In re Thomas)*, 287 B.R. 782,785 (B.A.P. 9th Cir. 2002). The "clear error" standard of review is a deferential standard used by appellate courts when reviewing findings of fact made by a trial court or lower tribunal, particularly in bench trials (trials without a jury) or in certain administrative or bankruptcy proceedings. It means that the appellate court will not overturn a factual finding unless it has a

---

[85] Debtor EOR 2:Dkt.593:772 at l. 11 – 773 at l. 19.

"definite and firm conviction that a mistake has been committed." *In re Banks*, 263

F.3d 862, 869 (9th Cir. 2001) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573

(1985)).

As noted by the Bankruptcy Court in its Sale and Turnover Order:

> Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys "in good faith" and "for value." *In re M Capital Corporation*, 290 B.R. 743, 746 (9th Cir. BAP 2003). *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3rd Cir.1986). Typically, lack of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Ewell*, 958 F.2d 276, 281 (9th Cir. 1992) (quoting I*n re Suchy*, 786 F.2d 900, 902 (9th Cir.1985)); *In re M Capital Corp.*, 290 B.R. at 746-47, 752 ("Where good faith has been challenged, facts must be established to obtain the safety that section offers.").

> "The choice of whether to make a finding of 'good faith' as part of the initial sale process belongs, in this circuit, to the bankruptcy court. Because findings of 'good faith' made at the time of the sale may be premature because they are made before the really interesting facts emerge, the Ninth Circuit does not require that a finding of 'good faith' be made at the time of sale." *In re Thomas*, 287 B.R. 782, 785 (9th Cir. B.A.P. 2002). The relevant focus of inquiry is good faith during the sale proceedings. *Cmty. Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985).[86]

As discussed above, the Debtor has not asserted that the Trustee or his broker,

Coldwell Banker, did not act in good faith. In fact, the Debtor does not assert that

Peplin did not act in good faith, which belies all of her arguments that Peplin is not

---

[86] Debtor EOR 2:Dkt.593:777.

entitled to a good faith finding under Section 363(m).  Instead, the Debtor argues that there was a lack of good faith in connection with the sale of the Property because Galaxy acted as a stalking horse bidder for the Property and, for a time, the broker for Peplin as an overbidder.  Myriad facts of the case and common sense clearly show that the Debtor's position is nonsense, as follows:

1.      If Galaxy really wanted to hinder competitive bidding and buy the Property for the lowest price possible, it would not have helped Peplin to make a competing Overbid for the Property.

2.      To the extent Peplin was ever represented by Galaxy, ultimately he was represented by Lori Alvares, a new broker independent of Galaxy, at the Second Auction, which removed any alleged implication concerning competitive bidding between Galaxy and Peplin.  This fact is key, because the Debtor's assertion that Peplin is not entitled to a good faith finding under Section 363(m) is wholly premised on the argument that there was allegedly dual representation of competing buyers at the First Auction.  The Bankruptcy Court made it clear that it did not believe that dual representation at the First Auction would have prevented a good faith finding in favor of Peplin.[87]  More importantly, as stated by the Bankruptcy Court in its Sale and Turnover Order, any alleged issues arising from purported dual representation

---

[87] Debtor EOR 2:Dkt.593:770 at fn. 13, 785.

were eliminated by holding the Second Auction where there was no dual representation.[88]

3.      Coldwell Banker extensively marketed the Property to the world at large leading up to the First Auction and continuing to the Second Auction.

4.      The court vacated the First Auction and held the Second Auction out of an abundance of caution.

5.      Despite the extensive marketing by Coldwell Banker and the Court conducting two auctions for the Property, no bidders other than Galaxy and Peplin ever made bids for the Property.

6.      Most notably, the $276,000 purchase price paid by Peplin exceeds the $235,000 fair market value the Debtor attributed to the Property in her multiple iterations of her Schedules. Again, she signed each of those schedules under penalty of perjury.

In addition to the foregoing, as noted by the Bankruptcy Court in its Sale and Turnover Order:

> Eight declarations from five parties were offered into evidence and considered by this Court. Those declarations are as follows: Jeffrey Golden, Chapter 7 Trustee [Dk. 539], Greg Bingham [Ds. 539, 560, 579], Greg Peplin the successful buyer [Dks. 566, 577], Lauri Alvarez [Dk. 580], and Chris Houser [Dk. 591]. Combined, each of these declarations establish a prima facie case that the standards by the Ninth Circuit for a finding of good faith under § 363(m) have been

---

[88] *Id.*

met. Those standards are set forth above.[89]

Upon consideration of the foregoing eight declarations and other facts related to the marketing of the property and the conduct of the First Auction and Second Auction, the Bankruptcy Court ruled as follows in its Sale and Turnover Order:

> Based upon the evidence before the Court arising throughout this proceeding, the Court makes the following findings of fact and conclusions of law: The auction was properly and adequately marketed; the auction had adequate participation; the auction encouraged competitive bidding that increased the sale price; there was no collusion even though during the first auction (now vacated) one broker may have represented different auction bidders (this has now been corrected by the new auction with no dual representation); the sale was an arm's length transaction; the price was adequate under the circumstances (the price was over the amount of the value of the Property listed in Debtor's schedules); and the Buyer is a good-faith purchaser under 11 U.S.C. § 363(m).

> The broker's dual representation at the first auction did not suggest collusion, because the bidding was competitive. There was no dual representation at the second auction. It is also noted that the final sale price was as high or higher than the value placed on the Property by Debtor in her schedules. This Court has received evidence of a fair, non-collusive, honest auction, and has not been presented with evidence of any collusion, dishonesty, or untoward actions in this process. The Buyer is determined to be in good faith under the standards within the Ninth Circuit.[90]

---

[89] Debtor EOR 2:Dkt.593:782. The foregoing declarations included the Bingham Declaration, the Golden Declaration, the Supplemental Bingham Declaration, the Peplin Declaration, the Supplemental Peplin Declaration, and the Second Supplemental Bingham Declaration discussed hereinabove.

[90] Debtor EOR 2:Dkt.593:785.

All of the foregoing makes it clear that the Bankruptcy Court considered a substantial amount of evidence in support of a good faith finding in favor of Peplin and that the Bankruptcy Court did not make that finding lightly or in a vacuum. On the other hand, in her Brief, the Debtor falls well short of establishing that the Bankruptcy Court's good faith finding in favor of Peplin was "clear error" or, stated differently, that there is any basis for this Court to have a "definite and firm conviction that a mistake [was] committed" by the Bankruptcy Court when it found that Peplin was a good faith purchaser within the meaning of Section 363(m).

**D.  THE BANKRUPTCY COURT'S DETERMINATION THAT THE J-PAD LIEN WAS AVOIDED AND PRESERVED FOR THE BENEFIT OF THE ESTATE AND WAS SENIOR TO THE DEBTOR'S HOMESTEAD EXEMPTION AND ENTITLED TO PAYMENT FROM THE PROCEEDS OF THE SALE OF THE PROPERTY IS SUPPORTED BY THE FACTS AND THE LAW.**

In Sections IV.C and D of her Brief, the Debtor argues that the Bankruptcy Court erred in determining that the J-Pad lien had value and was recovered by the estate and senior to the Debtor's Homestead exemption. As discussed below, these arguments were barred in connection with the Sale Motion and are barred here by the Debtor's judicial admissions to the contrary, under the doctrines of judicial estoppel and law of the case, and because such arguments constitute a collateral attack on a separate final order of the Bankruptcy Court.

In her Schedules, *signed under penalty of perjury*, the Debtor asserted that, as of the Petition Date, the Property was subject to the consensual J-Paid Lien in the

principal amount of $225,000 in favor of J-Pad and that she was its managing member of J-Pad.

Further, the Debtor filed her two Proofs of Claim, also **signed under penalty of perjury**, asserting the J-Pad Lien in the amount of $225,000 was due and owing with no right of setoff.

In addition, the Debtor filed her Lien Avoidance Motion, in which she represented, again **under penalty of perjury**, that J-Pad held the J-Pad Lien against in the Property in the original amount of $225,000.00 and that the J-Pad Lien was senior in priority to the amount of Debtor's Homestead Exemption.

Lastly, the Court sustained the Debtor's objection to the Trustee's Coldwell Banker employment application, finding that the existence of a third-party holding title and all the liens which exceed the value of the Property rendered it premature for the Trustee to be undertaking efforts to sell.[91]  In other words, if the Trustee could not avoid the liens, then there would be no benefit to the Estate from a sale of the Property.  The Debtor thus asserted the validity of the liens, which the Court adopted in denying the motion to employ a broker prior to resolution of the Trustee Avoidance Adversary Proceeding.

Judicial estoppel is an equitable doctrine "that prevents parties from abusing the legal system by taking a position in one legal proceeding that is inconsistent with

---

[91]  Debtor EOR 1:Dkt.565:458 at ¶¶ 122-27; Debtor EOR 2:Dkt.591:692.

a position taken in an earlier proceeding." *Swenson v. Bushman Inv. Props.*, 2013 U.S. Dist. LEXIS 104002, at *61 (D. Idaho July 22, 2013) (quoting *Data Mountain Solutions, Inc. v. Giordano*, 680 F. Supp. 2d 110, 125 (D.D.C. 2010) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)); *Elemary v. Holzmann A.G.*, 533 F. Supp. 2d 116, 125 n.6 (D.D.C. 2008). The doctrine of judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Elemary*, 533 F. Supp. 2d at 125 n.6 (quoting *New Hampshire v. Maine*, 532 U.S. at 749-50) (internal quotation marks omitted). Here, the Bankruptcy Court actually relied upon the Debtor's repeated positions concerning title and liens, among other things, when the Court denied the Trustee's first application to employ Coldwell Banker as the Trustee's real estate broker.

In consideration of the foregoing, the Bankruptcy Court rightfully found that judicial estoppel prevented the Debtor from asserting that the J-Pad Lien had no value when earlier in the bankruptcy case she had asserted under penalty of perjury in multiple instances pursuant to her Schedules, Proof of Claim, and Lien Avoidance Motion that the J-Pad Lien was valid and secured a claim in the amount of $225,000.[92]

---

[92] Debtor EOR 2:Dkt.593:774 at fn. 21.

The Debtor's multiple representations in her Schedules, Proof of Claim, and Lien Avoidance Motion that the J-Pad Lien was valid and secured a claim in the amount of $225,000 were also binding on the Debtor as judicial admissions. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (defining "judicial admissions" as factual assertions in pleadings and pretrial orders that, unless amended, are conclusively binding on the party who made them).

In addition to the foregoing admissions of the Debtor, at the time the Bankruptcy Court entered its Sale and Turnover Order, law of the case had established that the Trustee held the J-Pad Lien and that such lien was valued at $225,000. That is, the J-Pad Judgment, which is final, avoided the J-Pad Lien on the Property in the amount of $225,000 and preserved those liens for the benefit of the Debtor's bankruptcy estate pursuant to Section 551. Specifically, J-Pad Judgment provides as follows:

> The transfer to the Defendant [J-Pad] of a lien on and security interest in the manufactured home located at 16222 Monterey Lane, Space #376, Huntington Beach, CA 92649, Decal # LBM1081, Serial # AC7V710394GA, AC7V710394GB (the "Property") reflected by the secured promissory note and security agreement between J-Sandcastle Co., LLC and the Defendant [J-Pad] dated November 16, 2018 **and lien on the Property <u>in the amount of $225,000</u> in favor of the Defendant are avoided and preserved for the benefit of the Debtor's estate in the name of Jeffrey I. Golden, Chapter 7 Trustee for the bankruptcy [Estate of the Debtor].**

The foregoing finding was law of the case at the time the Bankruptcy Court entered its Sale and Turnover Order. *United States v. Lummi Nation*, 763 F.3d 1180, 1185 (9th Cir. 2014) (indicating that under the doctrine of law of the case, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case). Therefore, as noted by the Bankruptcy Court in its Sale and Turnover Order, the "Debtor's argument that the value of the avoided lien [J-Pad] is $0.00 is misguided, inaccurate, and a collateral attack on a final judgment under the J-Pad Judgment."[93] *See also In re Van de Kamp's Dutch Bakeries*, 908 F.2d 517, 518-20 (9th Cir. 1990) (rejecting the argument that a trustee can preserve a transfer of a lien under § 551 only to the extent that the interest is otherwise valid under state law).

Based on the foregoing, it is indisputable that, at the time of the sale of the Property, the Trustee held the $225,000 J-Pad Lien for the benefit of the estate. The law is clear that the voluntary J-Pad Lien was senior to the Debtor's Homestead Exemption in order of payment. Specifically, the J-Pad Lien, which was avoided, recovered and preserved by the Trustee for the benefit of the estate pursuant to the J-Pad Judgment, was a consensual lien, not a judicial lien or other involuntary lien. Consensual liens have seniority over exemptions. Cal. Code Civ. P. § 704.850(a) ("The levying officer shall distribute the proceeds of sale of a homestead in the

---

[93] Debtor EOR 2:Dkt.593:774 at l. 5 – 775 at l. 7.

following order: (1) To the discharge of all liens and encumbrances, if any, on the property. (2) To the judgment debtor in the amount of any applicable exemption of proceeds pursuant to Section 704.720."); *see also In re Bunn-Rodemann*, 491 B.R. 132, 136 (Bankr. E.D. Cal. 2013) (noting that exemptions may be claimed "only against involuntary liens").

Applicable case law further confirms that the J-Pad Lien is senior to the Debtor's Homestead Exemption and that the Property could be sold to pay the J-Pad Lien even with no payment being made on the Homestead Exemption. In *Roach v. Marshack (In re Roach)*, 2019 Bankr. LEXIS 263 (B.A.P. 9th Cir. Jan. 29, 2019), the Bankruptcy Appellate Panel affirmed an order entered by the Hon. Judge Theodor C. Albert, that approved a trustee's sale of a debtor's home to realize the benefit of a consensual lien recovered by the estate where the debtor received no proceeds on account of her allowed homestead exemption. There, Elaine Marie Roach ("Ms. Roach") filed a Chapter 7 bankruptcy petition in May 2017, with the property of the estate including real property encumbered by a third deed of trust in favor of Mutual of Omaha Bank ("*Omaha Bank*"). *Id.* at *1-2. The Chapter 7 trustee obtained court approval of a compromise with Omaha Bank that, *inter alia*, subordinated one-half of Omaha Bank's claim that was secured by the deed of trust. Under Section 510(c)(2), a lien securing a subordinated claim is transferred to the estate. As such, the court approved the trustee's sale to realize the benefit of 50%

of the funds otherwise subject to the deed of trust.

No proceeds of sale were paid to the debtor because the voluntary liens exceeded the value of the property. *Id.* at *5-6. Ms. Roach objected to the trustee's motions on the grounds, among others, that the trustee was improperly trying to sell the property without paying her on account of her homestead exemption. *Id.* at *6. The bankruptcy court granted the trustee's motions, noting that homesteads are junior in priority to voluntary liens, even where the lien is recovered by the estate. *Id.* at *7. The bankruptcy court highlighted that there was no legal or equitable reason for Ms. Roach to receive proceeds on account of her homestead exemption at the expense of her creditors when she consented to a lien against the property for more than its value. *Id.* at *7-8.

Ms. Roach appealed the rulings on both motions to the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP"). *Id.* at *8. After finding that the appeal of the sale order regarding the actual sale transaction was moot following the sale to a good faith purchaser, the BAP affirmed the bankruptcy court's decision that Ms. Roach was not entitled to claim a homestead exemption in the proceeds of sale. *Id.* at *9-10.

In this case, just as in *Roach*, the Trustee could sell the Property with no distribution to the Debtor on account of her homestead exemption, because Debtor

had granted J-Pad a consensual lien against the Property.[94] That consensual lien was avoided, recovered and preserved for the benefit of the Estate by the Bankruptcy Court.[95]

Under Section 522(g),[96] the Debtor may not claim any exemption in the amounts subject to the avoided and recovered liens where such liens were provided voluntarily by the Debtor, as was the case with the J-Pad Lien. *See* 5 COLLIER ON BANKRUPTCY ¶ 551.02[2] (2024) ("[Section 522(g)], however, does not allow a debtor to exempt property subject to the trustee's preserved lien position, unless such preserved lien was otherwise avoidable under section 522. ***Thus, generally, property that was voluntarily transferred by the debtor and recovered by the trustee under***

---

[94] The Debtor further filed a voluntary Chapter 7 bankruptcy case in which the Trustee was appointed, with a statutory duty to administer assets for the benefit of creditors. 11 U.S.C. § 704(a)(1).

[95] To the extent that the Debtor claims that the lien was a sham and therefore unenforceable, the California Supreme Court held, in *Moore v. Schneider*, 196 Cal.380, 385 (1925): "The grantor in a deed made for the purpose of defrauding, hindering, or delaying his creditors cannot be relieved against its operation. As to him, it is valid." Further, the Trustee preserves the rights of the transferee under 11 U.S.C. § 551 and *Moore v. Bay*, 284 U.S. 4 (1931).

[96] Section 522(g) provides that:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section ***if such property had not been transferred, if—***
> ***(1)***
>> ***(A) such transfer was not a voluntary transfer of such property by the debtor;*** and
>> (B) the debtor did not conceal such property; or
> (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

11 U.S.C. 522(g) (emphasis added).

***section 550 and preserved under section 551 cannot be exempted.***") (emphasis added). Because Debtor has no claim of exemption in the proceeds from the sale of the Property subject to the avoided and recovered liens, her arguments that California law prohibits the sale unless the proceeds will be sufficient to pay the entirety of her Homestead Exemption or that Section 363(f) prohibits a sale free and clear of her exempt interest fail.

Clearly, the Bankruptcy Code applies if state law is inconsistent. *See* U.S. Constitution, Art. VI, Cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); *In re City of Stockton, California*, 526 B.R. 35, 50 (Bankr. E.D. Cal.), *aff'd in part*, dismissed in part, 542 B.R. 261 (B.A.P. 9th Cir. 2015) ("The Supremacy Clause operates to cause federal bankruptcy law to trump state laws, including state constitutional provisions, that are inconsistent with the exercise by Congress of its exclusive power to enact uniform bankruptcy laws."); *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1352 (9th Cir. 1994) ("It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that interfere with, or are contrary to, federal law.") (internal cites and quotes omitted).

**E. THE BANKRUPTCY COURT'S DETERMINATION THAT THE PROPERTY COULD BE SOLD FREE AND CLEAR OF THE DEBTOR'S HOMESTEAD EXEMPTION WAS NOT NECESSARY BUT WAS NEVERTHELESS FULLY SUPPORTED BY THE FACTS AND THE LAW.**

In the Sale Motion the Trustee sought to sell the Property free and clear of liens and interests, including the Debtor's Homestead Exemption pursuant to Section 363(f), which provides that a "[t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property" only if: (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Here, it likely was not necessary for the Trustee to seek to sell the Property free and clear of the Debtor's Homestead Exemption or for the Bankruptcy Court to order that the sale was free and clear of the Debtor's Homestead Exemption, because it could have attached to the proceeds of the sale of the Property with the same extent, validity, and priority it had before the sale. However, in that case, as discussed above, the Debtor's Homestead Exemption would not attach to any proceeds because the J-Pad Lien voluntarily placed on the Property by the Debtor and avoided and

recovered by the Estate, which is senior to the Debtor's Homestead Exemption, would be paid first and leave no funds to pay on the Debtor's Homestead Exemption.

The foregoing argument was essentially made by the Trustee in his Sale Motion, as follows:

> The Trustee seeks to sell the Property free and clear of any and all liens and interests, including the Debtor's homestead exemption. Because the consensual liens have been avoided, recovered and preserved, the Estate will realize the first approximate $301,011.14 from the sales proceeds on account of such liens. Involuntary liens were not properly perfected, and in any event are junior to the avoided consensual liens. Absent a significant increase in the sale price, the Debtor's homestead exemption is out of the money and will not be paid. [97]

Based on the foregoing, it was not essential that the sale of the Property be free and clear of the Debtor's Homestead Exemption, because it was out of the money. Therefore, any reversal on the issue of whether the sale of the Property was free and clear of the Debtor's Homestead Exemption under Section 363(f) would not affect the validity of the actual sale of the Property under Section 363(b) or the good faith finding in favor of Peplin under Section 363(m). Reversal on this issue would simply mean that the Debtor's Homestead Exemption attaches to nothing and gets paid nothing.

Notwithstanding the foregoing, the Bankruptcy Court did not make an error of law in determining that the Property could be sold free and clear of the Debtor's

---

[97] Debtor EOR 1:Dkt.539:96 ll. 11-16.

Homestead Exemption pursuant to Section 363(f). As stated in *In re Reed*, 940 F.2d 1317, 1321 (9th Cir. 1991):

> The language of the relevant statutes makes it clear that the "homestead exemption" in California is merely a debtor's right to retain a certain sum of money when the court orders sale of a homestead in order to enforce a money judgment; ***it is not an absolute right to retain the homestead itself.*** *See, e.g.*, Cal.Civ.Proc.Code § 704.720(b), which states, ***"If a homestead is sold under this division ... the proceeds of sale ... are exempt in the amount of the homestead exemption provided in Section 704.730."*** (Emphasis added). *See In re Hyman*, 123 B.R. 342, 345–48 (9th Cir.BAP 1991).

*In re Reed*, 940 F.2d at 1321 (first emphasis added; second emphasis in original).

Further in the *In re Hyman*, 123 B.R. 342 (B.A.P. 9th Cir. 1991), which was cited by the Ninth Circuit in its *Reed* decision quoted above, the BAP stated that:

> ***Appellants' suggestion that homestead protection attaches to physical property rather than to a debtor's economic interest in the property is undermined by the California Constitution, California homestead statutes and interpreting case law.***
>
> …
>
> The cases [cited at length by the court above] could not come to any other conclusion. ***It is not logically possible to reconcile the explicit limitation on exemption value with a notion that the property itself is exempt except by requiring the debtor to reimburse the estate for the excess value of a retained homestead dwelling.*** No California case suggests such a solution. ***Rather, by setting a maximum on what can be claimed the legislature recognized that the property may be subjected to a forced sale.*** The procedure for such forced sales is set forth in the exemption statutes at Cal.Code Civ.Proc. §§ 704.740–.850.

> **Appellants' error is to confuse the policy of preserving family life and preventing homelessness with protection of a specific residence from creditors.** This distinction is underscored by related statutory provisions. Where a forced sale has occurred, the proceeds of the exemption, in this case $45,000, may not be reached by creditors for a period of six months. Cal.Civ.Proc. Code §§ 704.720(b), 704.960. This permits the debtor time to settle into a substitute dwelling. *See Ortale v. Mulhern*, 58 Cal.App.3d 861, 864, 130 Cal.Rptr. 277 (1976); *Thorsby v. Babcock*, 36 Cal.2d 202, 205, 222 P.2d 863 (1950).

*In re Hyman*, 123 B.R. at 345–46, *aff'd*, 967 F.2d 1316 (9th Cir. 1992) (emphasis added); *see also In re Jacobson*, 676 F.3d 1193, 1199–200 (9th Cir. 2012) ("The homestead exemption merely gave the Jacobsons a conditional right to a portion of the proceeds from the sale of the Kensington property. There was no exemption in the Kensington property itself. To the contrary, the exemption explicitly allowed Cunningham to force a judicial sale of the Kensington property."); *In re Arrol*, 207 B.R. 662, 665 (Bankr. N.D. Cal. 1997), *subsequently aff'd*, 170 F.3d 934 (9th Cir. 1999) ("California's automatic homestead exemption, as consistently construed by the governing case law, does not confer any equity interest in real property upon a debtor who claims the exemption.")

In this case, the Debtor makes the same mistake that the debtors in the cases cited above made: she mistakenly asserts that her Homestead Exemption was an ownership interest in the Property rather than a mere right to payment from the proceeds of the Property if, and only if, there was sufficient equity to pay her

Homestead Exemption (or a portion of it) after paying senior liens, such as the J-Pad Lien that was avoided, recovered and preserved for the benefit of the estate.[98]

All of the foregoing shows that it was not error for the Bankruptcy Court to hold that the Property could be sold free and clear of the Debtor's Homestead Exemption under either (1) Section 363(f)(1), which allows a sale free and clear of an interest in property where "applicable nonbankruptcy law permits sale of such property free and clear of such interest" or Section 363(f)(2), which allows a sale free and clear of an interest in property where such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

## VI.

## CONCLUSION

**WHEREFORE**, Appellee respectfully requests that the Court enter an order (1) **AFFIRMING** the Sale and Turnover Order, the Supplemental Sale Order, and the Supplemental Turnover Order, and (2) affording such other relief as is warranted under the circumstances.

Dated:  October 30, 2025

LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.


By:_ */s/ Todd M. Arnold*_____
    ERIC P. ISRAEL
    TODD M. ARNOLD
Counsel for Appellee Jeffrey I. Golden,
Chapter 7 Trustee

---

[98]  The Trustee further notes that 11 U.S.C. § 542 applies to property which a debtor claims for exemption.

Dated:  October 30, 2025

MARSHACK HAYS WOOD LLP

By: *D. Edward Hays*

    D. EDWARD HAYS
    BRADFORD N. BARNHARDT
Counsel for Appellee Houser Bros. Co.
dba Rancho del Rey Mobile Home Estates

## CERTIFICATION AS TO INTERESTED PARTIES (L.R. 7.1-1)

The undersigned, counsel of record for the Appellee, certifies that the following listed parties may have a pecuniary interest in the outcome of this case. These representations are made to enable the Court to evaluate possible disqualification or recusal.

- The Trustee

- The Debtor

- Galaxy

- Coldwell

- The Buyer

- Creditors of the Debtor's Estate.

Dated: October 30, 2025        LEVENE, NEALE, BENDER, YOO
                                   & GOLUBCHIK L.L.P.

                                   By:    */s/ Todd M. Arnold*
                                      ERIC P. ISRAEL
                                      TODD M. ARNOLD
                                 Counsel for Appellee Jeffrey I. Golden,
                                 Chapter 7 Trustee

**<u>NOTICE OF RELATED CASES (L.R. 83-1.3.1)</u>**

The undersigned, counsel of record for the Appellee, certifies that, to the best

of his knowledge, the following previously filed or currently pending cases

constitute related cases (as described in L.R. 83-1.3.1) to the instant appeal:

| Case No. | Court | Title | Filed | Status |
|---|---|---|---|---|
| 8:22-cv-01454-ODW | USDC CD Cal. | *In Re Jamie Lynn Gallian* | 8/5/22 | Closed 08/30/22 |
| 8:22-cv-01462-RGK | USDC CD Cal | *In Re Jamie Lynn Gallian* | 8/5/22 | Closed 09/01/22 |
| 8:23-cv-00001-DSF | USDC CD Cal | *In Re Jamie Lynn Gallian* | 1/3/23 | Closed 11/01/23 |
| 8:23-cv-00122-PA | USDC CD Cal | *In Re Jamie Lynn Gallian* | 1/20/23 | Closed 04/17/23 |
| 8:23-cv-00961-WLH | USDC CD Cal | *In Re Jamie Lynn Gallian* | 6/1/23 | Closed 07/31/24 |
| 8:24-cv-02333-FLA | USDC CD Cal | *In Re Jamie Lynn Gallian* | 10/28/24 | Closed 09/09/25 |
| 8:24-cv-02445-MRA | USDC CD Cal | *In Re Jamie Lynn Gallian* | 11/8/24 | Closed 03/28/25 |

Dated: October 30, 2025            LEVENE, NEALE, BENDER, YOO
                                   & GOLUBCHIK L.L.P.

                                   By:   */s/ Todd M. Arnold*
                                        ERIC P. ISRAEL
                                        TODD M. ARNOLD
                                   Counsel for Appellee Jeffrey I. Golden,
                                   Chapter 7 Trustee

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)

The foregoing *Opening Brief For Appellees Jeffrey I. Golden, Trustee And Houser Bros. Co.* is in compliance with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Ninth Circuit Rule 32-1(a), because the brief contains 13,002 words, excluding the items exempted by Fed. R. App. P. 32(f).

Dated: October 30, 2025

LEVENE, NEALE, BENDER, YOO
   & GOLUBCHIK L.L.P.

By: <u>  */s/ Todd M. Arnold*          </u>
    ERIC P. ISRAEL
    TODD M. ARNOLD
Counsel for Appellee Jeffrey I. Golden,
Chapter 7 Trustee

# CERTIFICATE OF SERVICE

I am over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2818 La Cienega Avenue, Los Angeles, California 90034

On October 30, 2025, I caused service of the foregoing document(s) described as **OPENING BRIEF FOR APPELLEES JEFFREY I. GOLDEN, TRUSTEE AND HOUSER BROS. CO.** on all interested parties by electronically filing the document with the Clerk of the Court using its CM/ECF System. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 30, 2025, at Los Angeles, California.


    */s/ Todd M. Arnold*
TODD M. ARNOLD