CHRISTOPHER L. BLANK (SBN 115450)
CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
2973 Harbor Blvd. #506
Costa Mesa, CA 92626
Telephone:     (949) 250-4600
Email:          chris@chrisblanklaw.com

Attorney for Appellant Jamie Lynn Gallian

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re | ) |
| | ) **District Court Case No.** |
| | ) |
| | ) **8:25-cv-00827-CV** |
| JAMIE LYNN GALLIAN | ) |
| | ) **Bankruptcy Court Case No.** |
| | ) |
|                       Debtor. | ) **8:21-bk-11710-SC** |
| | ) |
| | ) **APPELLANT'S REPLY BRIEF** |
| | ) |
| JAMIE LYNN GALLIAN, Appellant | ) |
| | ) |
| vs. | ) |
| | ) |
| JEFFREY GOLDEN, TRUSTEE, Appellee | ) |
| | ) |
| | ) |
| | ) |

## Table of Contents

I. INTRODUCTION ................................................................................................2

II. THE TRUSTEE'S MOOTNESS ARGUMENT FAILS.................................................2

III. THE SALE TO PEPLIN WAS NOT MADE IN GOOD FAITH UNDER §363(m) ........4

IV. THE BANKRUPTCY COURT ERRED IN TREATING THE AVOIDED "J-PAD LIEN" AS A VALID ESTATE ASSET ................................................................................6

V. THE TRUSTEE COULD NOT SELL PROPERTY FREE AND CLEAR OF GALLIAN'S EXEMPT INTEREST .........................................................................................9

VI. THE BANKRUPTCY COURT ERRED IN AUTHORIZING A SALE WITH NO BENEFIT TO CREDITORS ..............................................................................................12

VII. THE BANKRUPTCY COURT ABUSED ANY DISCRETION IT MAY HAVE HAD IN THIS CASE BY CLEARLY ERRONEOUSLY EVALUATING THE EVIDENCE AND FAILING TO FOLLOW THE LAW ....................................................................................12

VIII. THE SUPPLEMENTAL ORDERS WERE ENTERED IN VIOLATION OF DUE PROCESS ......13

VIII. CONCLUSION ............................................................................................13

**I. INTRODUCTION**

Appellees' 59-page brief obscures the central truth: the Trustee sold a debtor's exempt homestead for less than one-half of her $600,000 exemption. He is presently holding the proceeds of that sale, and has left the debtor with nothing. The Bankruptcy Court authorized the sale on the erroneous premise that a previously avoided lien—the so-called "J-Pad Lien"—retained value after avoidance. That ruling contravenes both the Bankruptcy Code and California law.

Appellees attempt to justify the sale by invoking mootness and good faith protection under 11 U.S.C. §363(m). The argument does not withstand scrutiny. The appeal is not moot because the sale proceeds remain under the Trustee's control, and the purchaser's "good faith" finding was fatally compromised by his use of the stalking-horse bidder as his own broker.

**II. THE TRUSTEE'S MOOTNESS ARGUMENT FAILS**

Appellees claim that the appeal is "statutorily moot" under §363(m). But Ninth Circuit precedent limits that provision to valid sales to good-faith purchasers. *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002). Where, as here, the "good-faith" finding itself is challenged, appellate review is not moot.

Moreover, Section 363(m) protects only consummated transfers of property, not disputes over proceeds still held by the Trustee.

> "The bankruptcy court found that the sale to the purchasers was in good faith under § 363(m), and it has now closed. But because Klein's appeal concerns the distribution of the sale proceeds rather than seeking to unwind the sale itself, this appeal is not moot. *See Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)* 163 F.3d 570, 576-78 (9th Cir. 1998); *see also Roach v. Marshack (In re Roach)*, 2019 WL 408628, at *3 & n.2 (9th Cir. BAP Jan. 29, 2019) (holding that portion of appeals concerning sale approval was moot but portion of appeals concerning distribution of sale proceeds was not moot)."

*In re Klein*, No. 2:23-BK-10990-SK, 2025 WL 1724107, at *4 (Unpublished Decision, B.A.P. 9th Cir. June 20, 2025).

Because the Trustee retains the proceeds of the sale of Gallian's homestead, this Court retains full power to fashion relief, including disgorgement. The language of Section 363(m) reinforces this distinction.

> "(m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property *in good faith,* whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

If a bankruptcy court's finding of good faith, and the absence of a stay pending appeal, automatically mooted any appeal related to the sale, there would be no need for the introductory phrase about the "reversal or modification on appeal" because no reversal or modification could occur if the appeal were automatically moot. The finding of good faith can be challenged and is subject to review for clear error even in the absence of a stay pending appeal. *In re Thomas* at 785. Moreover, only the *validity* of the sale is protected if the finding of good faith is upheld on appeal. All other aspects of the order approving the sale are fair game and can be reversed or modified.

If this Court were to accept Appellee's mootness arguments, a hypothetically corrupt bankruptcy judge could insulate his clearly erroneous approval of a sale from review by compounding that error by erroneously finding the buyer purchased the property in good faith, and then erroneously denying a stay pending appeal. When a debtor (1) challenges the good faith finding of the Bankruptcy Court, (2) identifies effective relief that can be granted, even if the buyer gets to keep the property, and (3) sought a stay pending appeal from the bankruptcy court which was denied, the appeal is not moot. Furthermore, fundamental fairness dictates that the debtor should not be forced to incur the expense of also seeking a stay from the appellate court just to avoid statutory mootness, particularly under the facts and circumstances of this case. These principles have also been applied to cases where the Appellee has asserted equitable mootness. See, *In re M Cap. Corp.*, 290 B.R. 743, 746 (B.A.P. 9th Cir. 2003).

The Trustee's citation of *In re Griffin*, 261 B.R. 467 (N.D. Cal. 2001) and *In re Ewell*, 958 F.2d 276 (9th Cir. 1992) do not help him because both cases are distinguishable. In *Griffin*, the Debtor

only appealed the Bankruptcy Court's approval of the Trustee's sale of his home. His appeal sought no other relief, and he did not challenge the Bankruptcy Court's good faith finding. *Griffin* at 469.

*Ewell* is also distinguishable from the present case. In *Ewell,* the debtor/appellant had not obtained a stay on the Trustee's sale of property of the bankruptcy estate. The debtor did not even seek a stay pending appeal until after the sale had closed. *Ewell* at 279. The only relief sought was the undoing of the approved sale. The 9th Circuit affirmed the District Court's dismissal of the appeal as moot. However, the 9th Circuit also reviewed the merits of the debtor's argument that the purchase was not made in good faith. The 9th Circuit found that the Bankruptcy Court's factual findings supporting good faith were not clearly erroneous. *Id.* at 281, 282. On that basis, the 9th Circuit affirmed the order approving the sale.

In the present case, Gallian has raised a valid challenge to the Bankruptcy Court's good faith finding. She is also seeking to have the proceeds of the sale of her homestead, which are presently in the hands of the Trustee, disgorged and paid to her. This Court has the ability to grant effective relief to Gallian. Therefore, Gallian's appeal is not moot.

### III. THE SALE TO PEPLIN WAS NOT MADE IN GOOD FAITH UNDER §363(m)

The Bankruptcy Court's good-faith finding rests on clear factual error. Appellant showed that Peplin hired Galaxy Homes—the stalking-horse bidder—to act as his broker. That arrangement rendered competitive bidding impossible because Galaxy, bound by its fiduciary duty to Peplin, could not bid against its own client. California law is unambiguous: a broker may not assume a position adverse to its client. *Timmsen v. Forest E. Olson, Inc.*, 6 Cal.App.3d 860 (1970). "The relationship between a broker and his principal is fiduciary in nature, and imposes upon the broker the duty of acting in the highest good faith toward his principal. This duty of good faith precludes the broker from assuming a position adverse to that of his principal unless the principal consents." *Timmsen,* at 871 (Citations omitted.).

Appellees, and Judge Clarkson, mischaracterized this conflict as immaterial dual representation. But the record shows that Galaxy's initial role as a stalking horse bidder, not its role as dual broker for itself and Peplin, led to chilled bidding. When Peplin hired Galaxy to represent him in his efforts to purchase Gallian's homestead, he took away Galaxy's ability to ethically bid against

him or solicit others to bid against him. By hiring Galaxy as his broker, Peplin effectively created a situation in which no party would bid against him. The Bankruptcy Court recognized the potential impropriety of Peplin hiring Galaxy as his broker when it vacated the first auction and ordered a second, yet at the second auction, Galaxy's prior involvement had already tainted the process and no other bidders appeared.

      Galaxy's good or bad faith is not at issue. It made a business decision that it would rather earn a commission as Peplin's broker than shoot for a profit by purchasing the Property for its own account. Once hired by Peplin, Galaxy did not breach its fiduciary duty to Peplin by trying to outbid him or soliciting other buyers to do so. Rather, Galaxy voluntarily gave up the fight to purchase the Property precisely to avoid breaching its fiduciary duty to its client Peplin. However, the result was the chilling of spirited bidding for the Property and that is the antithesis of the purpose of Trustee auctioning property of the estate. Peplin's action in hiring the Galaxy, the stalking horse bidder, as his broker neutralized the only other party who had expressed a serious interest in purchasing the Property.

      Gallian hasn't argued that Galaxy wanted to chill bidding. She argues that Peplin, the buyer, took action that chilled bidding. This is factually unassailable. The introduction of another broker to represent Peplin during the second auction did not relieve Galaxy of its fiduciary obligation to avoid harming Peplin. It did not free Galaxy to compete with Peplin and overbid him. Both Golden and his broker, Coldwell Baker evidently didn't care whether Peplin's actions chilled bidding. They were satisfied with his $1,000.00 overbid. They made the expedient choice, not the choice that would maximize the sale price for the Property.

      The Bankruptcy Court's subsequent hearings on Peplin's relationship with Galaxy did not develop evidence that Galaxy had Peplin's permission to bid against him or solicit others to do so. Nothing in the record supports a finding that Galaxy was not bound by its fiduciary duty to protect, rather than compete with Peplin. Because the good-faith finding was based on incomplete and erroneous facts, Section 363(m) protection fails, and the sale may be set aside.

## IV. THE BANKRUPTCY COURT ERRED IN TREATING THE AVOIDED "J-PAD LIEN" AS A VALID ESTATE ASSET

Appellees' justification for the sale rests on a fallacy: that after avoiding the J-Pad lien under Sections 544 and 551, the Trustee somehow acquired a secured claim against the Property. Section 551 provides for preservation, not enhancement, of the asset whose transfer was avoided. A lien avoided because it was fraudulent and unsupported by consideration cannot become a valid lien in the estate's favor.

Appellee has not disputed or countered Gallian's points and authorities explaining California law regarding the creation, attachment and valuation of secured interests in personal property. Rather, Appellee relies exclusively on the erroneous argument that Gallian is collaterally estopped from denying that the J-Pad lien did not attach to her property and has no value. That argument is erroneous for several reasons. First, the judgment in the J-Pad Lien Avoidance Action does not qualify for either claim or issue preclusion, nor is it law of the case. The Appellee's citation of *United States v. Lummi Nation*, 763 F.3d 1180, 1185 (9th Cir. 2014) is unhelpful to the Trustee's argument. That case holds that for law of the case to apply, the same issue must have been decided by the same court, or a higher court, in the same case where the doctrine is to be applied. The J-Pad Lien Avoidance Action is not the same case as Gallian's bankruptcy case. Gallian was attempt to intervene in the J-Pad Avoidance Action was denied by Judge Clarkson. Most importantly, the validity and value of the J-Pad Lien were NOT actually or necessarily determined in the J-Pad Lien Avoidance Action.

Second, Appellees misstate the evidence regarding Gallian's disclosures and assertions regarding the J-Pad lien made in various documents she filed with the Bankruptcy Court as a pro se litigant over the multi-year period that her case has been pending. Third, if anyone should be estopped from asserting a different set of facts regarding the J-Pad lien, it is the Trustee who should be estopped, not Gallian.

The Trustee's own complaint in the J-Pad Lien Avoidance Action alleged that the J-Pad lien was a sham created by the Debtor to shield equity. The Trustee alleged, and no one disputed, that J-Pad did not lend any money to J-Sandcastle or anyone else. The Trustee obtained a default judgment avoiding the J-Pad lien, but the Trustee makes too much of that judgment, arguing that Judge

Clarkson determined that J-Pad actually had a valid enforceable lien. No such finding is expressly made in the judgment. No such finding was necessary to the judgment. Any such finding would have been contrary to the allegations and evidence submitted by the Trustee.

Appellee's Opening Brief mentions a proof of claim filed by Gallian that was attached to the Trustee's Motion to Sell the Property as, Exhibit 11, ER 202 – 240. The proof of claim was filed by Jamie Gallian on behalf of Jamie Gallian, not J-Pad. ER 203. The Security Agreement attached to the proof of claim is in favor of Jamie Gallian, not J-Pad. ER 206 – 215. The Note attached to the proof of claim is in favor of Jamie Gallian, not J-Pad. ER 217 – 224. The proof of claim includes as an attachment a "Statement to Encumber" dated 8/20/20 indicating that J-Sandcastle Co, LLC released its "legal owner interest in the above-described unit to encumber the title in favor Ronald J. Pierpont and J-Pad LLC." ER 228 – 229.

Also attached to the proof of claim is a document titled "Lien Satisfied" dated 7/9/2021 indicating that the purported lien in favor of Ronald J. Pierpont and J-Pad LLC had been fully satisfied as of that date. ER 233. The proof of claim also includes a Registration Card from the California Department of Housing and Community Development issued on August 3, 2021 showing Jamie Lynn Gallian as the Registered Owner of the Property and showing no Legal Owners or Lienholders on the Property. ER 237.

If the Appellee is referencing the proof of claim as evidence that the J-Pad lien was a valid, enforceable lien against the Property as of the date that Gallian filed her bankruptcy petition, it is not. At most, the proof of claim shows that Gallian was confused about how to explain and disclose the historic facts regarding her interest, the interest of J-Sandcastle, the interest of J-Pad and the interest in Ron Pierpont in the Property. The proof of claim and its attachments actually show that J-Sandcastle, Ron Pierpont and J-Pad had released any interests they had in the Property to Gallian on July 9, 2021, the commencement date of her bankruptcy, and that those releases were recorded no later than August 3, 2021, less than a month later. The proof of claim and attachments show that Golden did not need to file adversary actions against J-Sandcastle, Pierpont or J-Pad to recover any interest they might have in the Property because those interests had already been released long

1  before he filed his adversary action against them on June 30, 2023.  Those interests were released on
2  the date Gallian's bankruptcy was commenced on July 9, 2021.

3  Ironically, the J-Pad lien, regardless of the Debtor's intent in creating it, at most encumbered
4  only the Debtor's exempt interest in the Property, since the entirety of any equity in the Property was
5  less than the amount of the automatic exemption to which the Debtor was entitled.  The amount and
6  validity of the Debtor's automatic exemption in the Property was determined by the Bankruptcy
7  Court (Judge Smith) to be up to $600,000.00.  That determination was indisputably upheld on appeal.

8  By avoiding the J-Pad Lien, the Trustee freed the Property, and Gallian's exempt interest in it
9  from any cloud the J-Pad Lien imposed on it.  The Bankruptcy Court's holding that the preserved lien
10 became "senior" to the homestead exemption misreads Section 551 and conflicts with numerous
11 cases holding that preservation does not create new rights greater than those originally held. See, *In*
12 *re Appalachian Energy Indus., Inc.,* 25 B.R. 515 (Bankr. M.D. Tenn. 1982), *In re Tri-Sonic, Inc.*, 1 B.R.
13 138 (Bankr. N.D. Tex. 1979), *Matter of Woodworks Contemp. Furniture, Inc.*, 44 B.R. 971 (Bankr. W.D.
14 Wis. 1984) and ), *Connelly v. Marine Midland Bank, N.A.*, 61 B.R. 748 (W.D.N.Y. 1986).

15 The Appellee's Brief misstates the holding in *In re Van de Kamp's Dutch Bakeries*, 908 F.2d
16 517, 518-20 (9th Cir. 1990).  The Court in that case did not hold that a lien that has been avoided and
17 preserved by a Trustee is immune from a challenge that it is invalid under state law.  Rather, it held
18 that the priority between two valid liens, one of which had been avoided and preserved, could not be
19 upset based on the other lienholder's hypothetical ability to have subordinated the avoided lien
20 under state law if it had chosen to do so prior to the debtor filing bankruptcy.

21 Additionally, the Appellees' argument that 11 U.S.C Section 522(g) precludes Gallian from
22 asserting her exemption in sale proceeds generated by whatever value the J-Pad lien might have is
23 incorrect.  Section 522(g) limits a Debtor's right to claim an exemption in an asset actually
24 "recovered" by the Trustee.  It places no limit on a Debtor's ability to claim an exemption in an asset
25 that was not actually recovered by the Trustee.

26 *In re Perez*, 628 B.R. 327 (B.A.P. 9th Cir. 2021) explains that a Debtor cannot be precluded
27 from asserting an exempt interest in property purportedly "recovered" by the Trustee for the benefit
28 of the bankruptcy estate, when the Trustee was not the actual cause of the recovery.  In *Perez* the

Debtor had granted his sister a lien on his residence a few months before filing bankruptcy. At the Section 341(a) meeting, the Trustee asked questions about the sister's deed of trust and indicated an interest in hiring a real estate broker to market the residence. Less than two weeks later, the Debtor hired a new attorney who advised him to have his sister reconvey her interest in the property, which she did. The Debtor also filed an amended Schedule C increasing his claimed homestead exemption to $175,000.00. The Trustee objected to the increased homestead exemption on the grounds that the Debtor was not entitled to apply the exemption to the equity that was freed by the sister's reconveyance pursuant to 11 U.S.C. Section 522(g)(1). The Bankruptcy Court overruled the Trustee's objection and the 9th Circuit BAP upheld the Bankruptcy Court, holding that the sister's reconveyance was not "recovered" by the Trustee, but was a voluntary reconveyance independent of any actions undertaken by the Trustee.

In this case, equitable title to the Property was Gallian's before she filed bankruptcy. Record title to the Property was Gallian's less than a month after she filed bankruptcy because Gallian caused J-Sandcastle to release its interest in the Property to her. The J-Pad lien was never validly attached to the Property and any interest that J-Pad or Ron Pierpont had in the Property had been released to Gallian before she filed bankruptcy. That is, the Trustee was not the procuring cause of any recovery of any interest in the Property and Gallian had an unassailable right to assert her automatic exemption in the entirety of the equity in the Property.

Because the J-Pad lien had no legal or economic substance, the estate had no secured interest to realize, and the sale yielded no benefit to creditors. Even if the J-Pad Lien was valid and had value, any such value was not property of the estate *recovered* by the Trustee. It was released the same day the bankruptcy was filed.. If the J-Pad Lien encumbered anything, it only encumbered Gallian's exempt interest in the Property and she is entitled to any proceeds attributable to it.

**V. THE TRUSTEE COULD NOT SELL PROPERTY FREE AND CLEAR OF GALLIAN'S EXEMPT INTEREST**

Appellees argue that the sale could proceed free and clear under Section 363(f) because the exemption was subordinate to the preserved lien. That theory collapses once the lien is recognized as void.

1. The Trustee also argues that Gallian's homestead rights should be treated as though they are the same as a junior lien on the Property: "it was not essential that the sale of the Property be free and clear of the Debtor's Homestead Exemption, because it was out of the money." Appellee's Opening Brief at 21. Gallian's homestead rights are much more robust than a junior lienor's rights. A junior lienor has no right to possession of homestead property. A junior lienor has no right to prevent an execution sale of property and dispossession. A junior lienor has no right to prevent a sale that will not generate sufficient proceeds to pay the junior lienor in full.

California's homestead statutes prohibit forced sales of a homestead unless the sale price exceeds the exemption amount. Cal. Civ. Proc. Code §§704.720(b), 704.800(a). The $276,000 sale price —less than half of the $600,000 exemption—was void as a matter of state law. and not supported by the authorities cited by the Trustee.

> "California's automatic homestead exemption confers two different types of protection on a debtor. First, the debtor is protected against a forced sale for an amount less than the aggregate of liens plus the exemption amount. Cal.Civ.Pro.Code §§ 704.720(a) and 704.800(a). Second, if the property is sold at a forced sale, the debtor is entitled to receive sales proceeds totaling the amount of the exemption. Cal.Civ.Pro.Code § 704.720(b). *See In re Anderson,* 824 F.2d 754, 760 (9th Cir.1987)."

*In re Arrol*, 207 B.R. 662, 665 (Bankr. N.D. Cal. 1997), *subsequently aff'd,* 170 F.3d 934 (9th Cir. 1999)

The Trustee cites *In re Reed*, 940 F.2d 1317 (9th Cir. 1991) and *In re Hyman*, 967 F.2d 1316, 1319 (9th Cir. 1992) to support his argument that exemption rights are no more robust than junior lien rights. However, both *Reed* and *Hyman* are distinguishable because in both of those cases, the properties were sufficiently valuable to cover the entirety of the Debtors' exempt interest in the properties. In those cases, California State law would allow a forced sale of the debtors' homesteads because they would each receive the entire amount of the exempt value of their properties. Therefore, the trustees in their cases were entitled to the value of their property in excess of their exempt values.

Because the Trustee in this case had no right to sell free and clear of Gallian's homestead rights, he lacked authority to sell the exempt property without her consent.

> "The Trustee cites no authority for the proposition that section 363(f) permits sale of property free and clear of exemption claims. Pursuant to section 363(f), "property under subsection (b) or (c) of this section" may be sold free and clear of "any interest in such property of an entity other than the estate"—the property that can be sold free and clear under section 363(f) is defined by subsections (b) and (c) of section 363 as "property of the estate." *Id.* Pursuant to section 541(a), "property of the estate" consists generally of all property in which the debtor had an interest on the date of bankruptcy, but section 522(b) provides that a debtor may exempt property from the estate. *See Robertson v. Alsberg* (*In re Alsberg*), 161 B.R. 680 (9th Cir. BAP 1993), *aff'd,* 68 F.3d 312 (9th Cir.1995), *cert. denied, Alsberg v. Robertson,* 517 U.S. 1168, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996**). In other words, if the property is exempt it may not be sold by the Trustee**; if it is not exempt, it may be sold. The threshold question, is it still property of the estate, must first be decided."

*In re Clark*, 266 B.R. 163, 172 (B.A.P. 9th Cir. 2001)(emphasis added).

Curiously, the Trustee argues that the Bankruptcy Code preempts state law under the Supremacy Clause when they conflict, citing *In re City of Stockton, California*, 526 B.R. 35, 50 (Bankr. E.D. Cal.), *aff'd in part*, dismissed in part, 542 B.R. 261 (B.A.P. 9th Cir. 2015), *In re Baker & Drake, Inc.*, 35 F.3d 1348, 1352 (9th Cir. 1994) and other cases. The Trustee argues that even if California homestead law would normally protect the Debtor's exempt interest in her homestead, Federal bankruptcy law provisions regarding avoided transfers and preserved liens take precedence.

While the Supremacy Clause does apply when state and federal laws directly conflict, courts have consistently recognized that exemptions, including homestead exemptions, are defined by state law under the Bankruptcy Code's own provisions in Section 522(b). Congress specifically deferred to state exemption schemes, and courts should be reluctant to find preemption where the Code itself incorporates state exemption laws. The Trustee fails to identify a specific provision of the Bankruptcy Code that explicitly overrides California's homestead protection in this situation.

## VI. THE BANKRUPTCY COURT ERRED IN AUTHORIZING A SALE WITH NO BENEFIT TO CREDITORS

Appellees repeat that the Trustee acted with sound business judgment. But Section 363(b) authorizes sales only when they benefit the estate. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). Gallian has asserted that there was no non-exempt equity in the Property for the Trustee to sell. This is a direct challenge to the sound business purpose of the sale. A sale for a fair and reasonable price but that generates no proceeds for the estate is not in the best interest of the estate. Here, every dollar of sale proceeds was consumed by commissions, costs, and payment on the fabricated J-Pad lien which is subject to Gallian's claim of exemption, leaving nothing for unsecured creditors. Selling an exempt home solely to satisfy an invalid lien cannot constitute sound business judgment.

## VII. THE BANKRUPTCY COURT ABUSED ANY DISCRETION IT MAY HAVE HAD IN THIS CASE BY CLEARLY ERRONEOUSLY EVALUATING THE EVIDENCE AND FAILING TO FOLLOW THE LAW

In the section of their brief asserting that the Bankruptcy Court's approval of the sale of Gallian's homestead was supported by the facts and law, Appellee cites *In re Lahijani*, 325 B.R. 282 (B.A.P. 9th Cir. 2005) for the proposition that orders regarding sales under 11 U.S.C. Section 363(b) are reviewed for abuse of discretion. Appellee goes on to cite various cases that discuss the abuse of discretion standard. Appellee's Opening Brief at 28. However, Appellee fails to explain the most fundamental aspects of this rule – that 'a bankruptcy court necessarily abuses its discretion if it bases its ruling 'on an erroneous view of the law or on a clearly erroneous assessment of the evidence.' *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)" *In re Staffer*, 262 B.R. 80, 82 (B.A.P. 9th Cir. 2001), *aff'd,* 306 F.3d 967 (9th Cir. 2002).

The abuse of discretion standard requires the reviewing court to first determine if the circumstances provide some discretion to the Bankruptcy Court in making its decision. Then the reviewing court must still review the Bankruptcy Court's legal determinations de novo, and its factual determinations for clear error.

In the present case, Judge Clarkson abused his discretion when he based his decision on his personal assessment of Gallian's character, rather than the evidence submitted by the parties and the law applicable to sales under Section 363. He abused his discretion when he ignored California law regarding the creation, attachment and validity of security interests in personal property. He abused his discretion when he ignored the effect Buyer Peplin had on the sale process by hiring Galaxy, the only other bidder interested in the Property, to be his broker. Judge Clarkson abused his discretion when he ignored bankruptcy law establishing that only property of the estate can be sold by the Trustee under Section 363, and that a sale free and clear of a Debtor's exemption rights is not allowed. No deference is appropriate under the circumstances of the present case. Because Judge Clarkson based his decision on erroneous interpretations of the law and clearly erroneous factual determinations, his orders must be reversed.

**VIII.   THE SUPPLEMENTAL ORDERS WERE ENTERED IN VIOLATION OF DUE PROCESS**

Appellees do not dispute that the Supplemental Sale and Turnover Orders were entered based solely on counsel's declaration without notice or an opportunity to respond. Due process requires that litigants be heard before their property and possession are taken. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). The absence of notice renders those orders void.

**VIII. CONCLUSION**

The Bankruptcy Court erred by:

1. Treating a void "J-Pad lien" as a valid, senior estate asset;

2. Authorizing a sale free and clear of Appellant's allowed homestead exemption;

3. Finding Peplin a good-faith purchaser despite his disqualifying relationship with Galaxy; and

4. Entering supplemental orders without due process.

Appellant respectfully requests that this Court reverse the Sale and Turnover Orders, vacate the good-faith finding under Section 363(m), and remand with instructions to return the sale proceeds to Appellant's exempt estate.

DATED: December 1, 2025                /Christopher L. Blank
                                                            CHRISTOPHER L. BLANK, Attorney for
                                                            Appellant Jamie Lynn Gallian